STATE OF FLORIDA  
COUNTY OF ORANGE

CASE NOS. 6:08-bk-4327-KSJ  
6:08-bk-4328-KSJ  
6:08-bk-4681-KSJ

## AFFIDAVIT

I, Jay Stollenwerk, being duly sworn state the following:

1. I was a member of the board of directors of the following companies for the following time periods:

| Company | Time Period |
| --- | --- |
| Mirabilis Ventures, Inc. | March 14, 2007 to May 23, 2008 |
| AEM, Inc. | April 27, 2008 to May 1, 2008 |
| Nexia Strategy Corporation | October 11, 2007 to May 23, 2008 |
| Tenshi Leasing, Inc. | May 4, 2007 to March 26, 2008 |
| Titanium Technologies, Inc. | February 26, 2007 to April 13, 2007 |

2. I know the information contained in the following paragraphs through conversations with Frank L. Amodeo (Amodeo); Shane Williams (Williams); Jodi Jaiman (Jaiman); Scott Shuker, Esq. (Shuker) and Elizabeth Green, Esq. (Green), who are partners with the law firm of Lantham, Shuker, et al.; and/or Aaron Bates, Esq. (Bates) and Matthew Mokwa, Esq. (Mokwa). Bates and Mokwa were previously

1

GOVERNMENT EXHIBIT  
B

in-house counsel at Mirabilis Ventures, Inc. (Mirabilis) and are partners in the firm of Bates and Mokwa. Once they formed their firm, almost all of Bates and Mokwa's work consisted of representing Mirabilis at the behest of Amodeo.

3. Amodeo was the person who controlled the above-referenced companies, as well as Hoth Holdings, Inc. and others.

4. One of my responsibilities was to gather documents so that Amodeo and his defense attorneys could provide documents to the United States pursuant to grand jury subpoenas which were executed in late 2006.

5. Another one of my responsibilities as an officer of the above-referenced companies was to liquidate assets of the companies so that the funds could be paid to the Internal Revenue Service (IRS) to pay back the IRS for payroll tax monies (trust fund taxes) for which a combination of Amodeo, other individuals, AEM, and Professional Benefits Solutions were responsible but which were not remitted to the IRS. Amodeo knew that he was the target of a federal grand jury and was attempting to cooperate with the United States in order to receive a reduced sentence. Amodeo told me that the reason he wanted to pay back the IRS was that it would illustrate that there was never an intent to defraud the IRS. I surmised from this that Amodeo would use these payments to seek leniency from a sentencing judge.

6.  I was further responsible for paying as many creditors as possible. It was my understanding that almost all of the creditors had been paid prior to the institution of the bankruptcy proceedings. Other than creditors who had claims which were disputed by Amodeo, I know of only one or two creditors who were not paid as of the time the bankruptcies were filed because they would not accept a settlement offer (LexisNexis and American Express).

7.  At the time that the bankruptcy petitions were filed, lawsuits which Mirabilis had instituted against other companies and individuals comprised almost all of the assets of the companies.

8.  When seizure warrants were served on law firms which handled legal matters for the above-referenced companies, there was a concern about how to save the litigation cases to make sure the IRS received the funds referenced above for Amodeo's benefit in the potential criminal case.

9.  It is my understanding that Green proposed the bankruptcy proceedings. Green believed that filing bankruptcy was the best way to save the litigation. Amodeo then directed Mirabilis to file for bankruptcy protection.

10. I was present at a meeting with Bates, Mokwa, Jaiman, Williams, Green and Shuker at Green and Shuker's office in which Shuker and Green discussed how to handle the bankruptcy. They talked about their experience in what they referred to as

the "Church Street case." Jaiman, Williams, and I would resign as officers and directors. We were to appoint Michael E. Moecker (Moecker) as a member of the board of directors. Moecker would then appoint R. W. (Bill) Cuthill, Jr. (Cuthill) as president of Mirabilis. They wanted to talk with the office of the United States Trustee, as they believed that they had found a loophole which would allow them to proceed without a trustee. Green was concerned that the United States would seize attorney fees, but they decided that they could use the money received from the settlement of two cases with RKT Constructors, Inc. to fund the bankruptcies.

11. Although I have not spoken with Green directly about paying back the trust funds to the IRS for Amodeo's benefit in the criminal matter, it was clear that any funds recovered were to go to the IRS, no matter the source of the funds, for Amodeo's benefit in the possible criminal case.

12. At the time the bankruptcies were filed, there were no remaining employees of Mirabilis, AEM, or Hoth Holdings. Hoth Holding contained only one asset, i.e., a piece of property in Virginia.

Further your Affiant sayeth not.

Jay Stollenwerk

Sworn to and subscribed before me this 22nd day of September, 2008

Notary Public State of Florida
Stacey A Frye
My Commission DD480338
Expires 10/11/2009