# *TRANSCRIPT OF PROCEEDINGS*

**COPY**

RECEIVED
U.S. ATTORNEY'S OFFICE
SEP 0 4 2008
MIDDLE DISTRICT OF FLORIDA
ORLANDO

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO:  2008-4327, CHAPTER 11

IN RE:  MIRABILIS VENTURES, INC.,

CASE NUMBER 2008-4328, CHAPTER 11

IN RE:  HOTH HOLDINGS

HEARING

BEFORE:          KAREN JENNEMANN,
                 U.S. BANKRUPTCY JUDGE

DATE:            JUNE 4, 2008

APPEARANCES:

ON BEHALF OF DEBTORS:          ELIZABETH GREEN, ESQUIRE
                               JIMMY PARRISH, ESQUIRE

ON BEHALF OF  UNITED STATES:   RANDY GOLD, ESQUIRE

ON BEHALF OF U.S. TRUSTEE:     KEN MEEKER, ESQUIRE



# Realtime Reporters, Inc.

Registered Professional Reporters
Certified Video Technicians

1188 Fox Forrest Circle • Apopka, Florida 32712 • (407) 884-4662 • FAX (407) 884-4664
*Sandra A. Dawkins, President • Professional Reporting Since 1977*


Registered
Professional
Reporter


NATIONAL COURT REPORTERS
NCRA
ASSOCIATION


**OrlandO**™
YOU NEVER OUTGROW IT
Orlando/Orange County
Convention & Visitors Bureau, Inc.


Florida Court Reporters
FCRA
Association


GOVERNMENT EXHIBIT

1  P R O C E E D I N G S

2

3  THE CLERK:  CASE NUMBER 2008-4327, CHAPTER 11,

4  MIRABILIS VENTURES, INC., ALSO CASE NUMBER 2008-4328,

5  CHAPTER 11, HOTH HOLDINGS.  ALL INTERESTED PARTIES,

6  PLEASE COME FORWARD AND ENTER YOUR APPEARANCES.

7  MS. GREEN:  YOUR HONOR, ELIZABETH GREEN AND

8  JIMMY PARRISH ON BEHALF OF MIRABILIS VENTURES.  I

9  HAVE MR. BILL CUTHILL AT COUNSEL TABLE PRESENT IN

10  MIRABILIS.

11  MR. MEEKER:  MAY IT PLEASE THE COURT.  KEN

12  MEEKER FOR THE U.S. TRUSTEE.

13  MR. GOLD:  YOUR HONOR, MAY IT PLEASE THE COURT.

14  ALTHOUGH THE UNITED STATES IS NOT PARTY, RANDY GOLD

15  ON BEHALF OF THE UNITED STATES.  WE'RE HERE STRICTLY

16  THAT WE MAY HAVE INFORMATION THAT THE COURT WOULD

17  FIND RELEVANT.  IF YOU DON'T, THAT'S FINE TOO.

18  THE COURT:  VERY GOOD.

19  MR. GOLD:  WE'LL HEAR THE CASE IF YOU HAVE ANY

20  QUESTIONS.

21  THE COURT:  VERY GOOD.  DOES ANYONE ELSE CARE

22  TO MAKE AN APPEARANCE?

23  THEN THESE TWO RELATED CHAPTER 11 CASES

24  WERE FILED ON MAY THE 27TH AND MY NORMAL PRACTICE IS

25  SIMPLY TO HAVE A STATUS CONFERENCE EARLY IN THE CASE;

1   PARTICULARLY IF THERE'S CREDITOR INTEREST, TO JUST SEE

2   WHERE WE'RE GOING AND UNDERSTAND THE DEBTOR SO I CAN

3   PLAN HEARINGS AND SUCH.

4           THAT IS THE PURPOSE AND ONLY PURPOSE OF

5   TODAY.  THERE'S NO PENDING MOTIONS OR MATTERS AND THE

6   DEBTOR DID RECENTLY FILE SUMMARIES OF THE CASE WHICH

7   MAY BE USEFUL OR HELPFUL FOR PEOPLE THAT WANT TO

8   MONITOR THE CASE.  BUT MISS GREEN IF YOU COULD GIVE

9   ME SOME ADDITIONAL BACKGROUND AND TELL ME WHY WE'RE

10  HERE AND WHERE WE'RE GOING.

11          MS. GREEN:  YES, YOUR HONOR.  AS YOU'RE

12  PROBABLY WELL AWARE FROM JUST THE MERE FACT THAT

13  MIRABILIS VENTURES HAS BEEN IN THE NEWSPAPER FOR

14  QUITE SOME PERIOD OF TIME, MIRABILIS VENTURES WAS A

15  NEVADA CORPORATION THAT WAS ESTABLISHED IN OCTOBER OF

16  2004 AS A PRIVATE EQUITY COMPANY.  IT WAS ESTABLISHED

17  ESSENTIALLY TO ACQUIRE OTHER COMPANIES, AND AT ONE

18  POINT IT HAD 100 SUBSIDIARIES.

19          WE BELIEVE THAT AT THIS POINT IN TIME

20  MIRABILIS VENTURES HAS APPROXIMATELY 40 WHOLLY OWNED

21  SUBSIDIARIES.  AND ONE OF THE THINGS THAT'S HAPPENING

22  RIGHT NOW IS WE'RE ANALYZING THOSE SUBSIDIARIES TO

23  DETERMINE WHETHER OR NOT ANY OF THOSE SUBSIDIARIES

24  SHOULD BE BROUGHT INTO THE BANKRUPTCY CASE TO ADD

25  VALUE TO THE MIRABILIS VENTURES CASE.

1    THE COURT:  ARE ANY OF THEM OPERATING SUBSIDIARIES

2    THAT YOU KNOW OF?

3    MS. GREEN:  NOT TO MY KNOWLEDGE.  THERE'S A

4    COUPLE OF THEM ACTUALLY IN BANKRUPTCY COURTS ACROSS

5    THE COUNTRY, AND THEN THERE'S SOME THAT ARE JUST SORT

6    OF OUT THERE AS SUBSIDIARIES THAT HAVE PROBABLY MOST

7    VALUE IN FRAUDULENT TRANSFER ACTIONS AND IN

8    LITIGATION.

9    ON MAY 27, THE DIRECTORS OF MIRABILIS

10   VENTURES, WHO AT THAT TIME WERE JAY STOLLENWERK AND

11   SHANE WILLIAMS, WAS APPOINTED MICHAEL MOECKER AS A

12   DIRECTOR.  THEY THEN RESIGNED, AS DID THE PRESIDENT

13   OF MIRABILIS WHOSE NAME WAS JODI JAIMAN.

14   MR. MOECKER HAS APPOINTED MR. CUTHILL TO

15   SERVE AS PRESIDENT UNTIL SUCH TIME AS HE'S EITHER

16   REMOVED BY THE COURT UNTIL THE CASE IS CONVERTED OR

17   DISMISSED, OR A TRUSTEE IS APPOINTED.  SO THAT THERE

18   CAN BE NO ABILITY FOR ANY OTHER THIRD PARTY TO

19   ATTEMPT TO REMOVE THE PRESIDENT OF THIS ENTITY.

20   AS THE COURT IS WELL AWARE BOTH MR.

21   MOECKER AND MR. CUTHILL ARE WELL VERSED IN THE

22   BANKRUPTCY FIELD AND NEITHER HAVE HAD ANY PREVIOUS

23   RELATIONSHIP WITH MIRABILIS VENTURES OR ITS OFFICERS

24   OR DIRECTORS OR EMPLOYEES.

25   THE COURT:  DID THEY RECEIVE ANY COMPENSATION

1   OTHER THAN THEIR ANTICIPATED HOURLY COMPENSATION?

2      MS. GREEN:  JUST THEIR ANTICIPATED HOURLY

3   COMPENSATION.  THEY DID NOT RECEIVE ANY PREPETITION

4   COMPENSATION AT ALL.

5         THIS CASE WAS FILED REALLY IN RESPONSE TO

6   A NUMBER OF THINGS.  ONE OF WHICH WAS AN INREM

7   FORFEITURE ACTION THAT WAS FILED BY THE UNITED

8   STATES, MR. GOLD IS HERE TODAY.  THAT INREM

9   FORFEITURE ACTION SOUGHT FORFEITURE OF ESSENTIALLY

10  ATTORNEYS FEES, FUNDS THAT WERE HELD ON ACCOUNT IN

11  TRUST ACCOUNTS WITH VARIOUS ATTORNEYS THAT WERE

12  LITIGATING LITIGATION THAT BELONGED TO MIRABILIS

13  VENTURES.

14         AS A RESULT, MIRABILIS VENTURES IS UNABLE

15  TO PARTICIPATE IN THESE LITIGATIONS, OBVIOUSLY

16  ATTORNEYS WERE WITHDRAWING.  WE BELIEVE THAT THERE

17  WERE SIGNIFICANT ASSETS THAT COULD BE OBTAINED IF

18  MIRABILIS PURSUED THIS LITIGATION, INCLUDING

19  LITIGATION AGAINST FORMER PROFESSIONALS, LITIGATION

20  FOR FRAUDULENT TRANSFERS, AND LITIGATION AGAINST

21  PEOPLE WHO TOOK ASSETS OF MIRABILIS AFTER MID-2007.

22  AND IN AN EFFORT TO DO THAT, THIS BANKRUPTCY CASE WAS

23  FILED.

24         THERE IS NO PENDING LITIGATION AGAINST

25  MIRABILIS VENTURES BY THE UNITED STATES IN, AS FAR AS

1   I KNOW, IN THE DISTRICT COURT IN THE MIDDLE DISTRICT OF

2   FLORIDA, OR ANY OTHER COURT.  THE IRS, WHICH IS

3   REALLY WHERE A LOT OF THE UNITED STATES INTEREST

4   COMES FROM REGARDING 941 TAX LIABILITY, HAS NOT

5   ASSESSED MIRABILIS NOR HAS IT FILED A TAX LIEN.

6   THERE WAS SOME TAX LITIGATION FILED IN THE DISTRICT

7   COURT WHICH WAS DISMISSED WITHOUT PREJUDICE ABOUT A

8   YEAR AGO.

9            THE IDEA BEHIND THE CASE IS TO ANALYZE THE

10  ASSETS, DETERMINE THE ACTUAL CREDITORS OF MIRABILIS.

11  THERE ARE, AS FAR AS WE KNOW SO FAR, WE HAVE ABOUT 25

12  MILLION IN GENERAL UNSECURED CLAIMS THAT ARE NOT

13  INSIDER CLAIMS AND THERE MAY BE MORE.  MR. CUTHILL,

14  YESTERDAY, WAS AT THE DOCUMENT DEPOSITORY WHICH IS

15  BEING HELD AT A WAREHOUSE IN THE CUSTODY OF, I

16  BELIEVE, MR. BUTCH SLAUGHTER'S FIRM, IN RESPONSE TO

17  AN IRS SUBPOENA.  HE'S STARTED THE REVIEW OF THOSE

18  DOCUMENTS IN ORDER TO DETERMINE THE OTHER CREDITORS.

19           THE COURT:  WHAT NON-IRS LITIGATION IS PENDING?

20  JUST GENERALLY, IS THERE TEN CASES, FIFTY CASES,

21  WHERE ARE THEY?

22           MS. GREEN:  THERE ARE -- THERE'S A NUMBER OF

23  CASES REGARDING PROFESSIONALS, PROBABLY FIVE OR SIX,

24  MR. MIKE MAYNARD IS HERE IN THE COURTROOM TODAY.  HIS

25  FIRM HAD BEEN RETAINED TO PURSUE SOME OF THAT

1    LITIGATION.

2            THERE IS ALSO LITIGATION INVOLVED IN

3    BANKRUPTCY CASE IN CHATTANOOGA REGARDING A PIECE OF

4    PROPERTY AND THE PROCEEDS OF THAT PROPERTY.  THERE IS

5    LITIGATION IN ORLANDO RELATED TO A ATLANTIC, AND

6    THERE'S LITIGATION RELATED TO SUBSIDIARIES.

7            I WOULD SAY THERE'S PROBABLY TEN MAJOR

8    PIECES OF LITIGATION IN ADDITION TO THE PROFESSIONAL

9    LITIGATION.  AND THERE'S LITIGATION WHICH BELONGS TO

10   SOME OF THE SUBSIDIARIES.

11           THE ONE MOTION THAT I DO INTEND TO FILE

12   SOONER RATHER THAN LATER, IS A MOTION TO STAY ALL

13   PENDING LITIGATION IN WHICH MIRABILIS IS A PLAINTIFF,

14   BECAUSE THAT IS NOT STAYED UNDER 362.  AND ALL

15   PENDING LITIGATION IN WHICH THE SUBSIDIARIES ARE A

16   PLAINTIFF OR A DEFENDANT FOR A PERIOD OF 60 DAYS.

17           THERE ARE SOME LAWSUITS OUT THERE THAT ARE

18   BEING BROUGHT BY SUBSIDIARIES WHERE FIRMS ARE

19   ATTEMPTING TO WITHDRAW AND WE'D LIKE TO GET A HANDLE

20   ON THAT TO ANALYZE THAT LITIGATION TO DETERMINE IF

21   THAT'S AN ASSET THAT MAKES SENSE FOR THE ESTATE TO

22   PURSUE, OR NOT.  AND SO THAT'S THE PLAN WITH REGARD

23   TO LITIGATION.

24           WE ALSO PLAN TO FILE MOTIONS TO EMPLOY

25   ACCOUNTANTS, THEY'RE BEING PREPARED RIGHT NOW.  AND

1    WE WILL MOST LIKELY BE FILING MOTIONS TO EMPLOY SPECIAL

2    COUNSEL WITH REGARD TO THE LITIGATION.

3         THE COURT:  THE SUMMARIES REFLECT ANTICIPATED

4    LIABILITIES OF SUBSTANTIAL AMOUNTS TO THE SERVICE.

5    IS THAT -- WHERE DID YOU GET THAT NUMBER FROM?

6         MS. GREEN:  I ACTUALLY GOT THAT NUMBER FROM, I

7    BELIEVE, A MEETING WITH MR. GOLD AND ALSO FROM THE

8    NEWSPAPER.

9         THE COURT:  VERY GOOD.  BUT THERE'S BEEN -- SO

10   IT'S NOT BASED ON RETURNS AND IT'S NOT BASED ON

11   ASSESSMENTS.  IT'S JUST BASED ON --

12        MS. GREEN:  NO, IT IS A 941 TAX LIABILITY.  I

13   BELIEVE APPROXIMATELY 120 MILLION DOLLARS OF THAT IS

14   A TRUST FUND AMOUNT, AND THE OTHER IS THE 189

15   MILLION.  I'M SURE MR. GOLD WILL CORRECT ME IF I --

16        THE COURT:  NO PROBLEM, I'LL ASK HIM.  YOU ALSO

17   LISTED A SUBSTANTIAL SECURED CREDITOR, LET ME SEE IF

18   I CAN FIND THE NAME.

19        MS. GREEN:  ACME STRATEGY CORPORATION HAS FILED

20   A UCC.  THAT I LISTED AS AN AFFILIATED ENTITY THAT

21   MAY ASSERT A SECURITY INTEREST BECAUSE THAT SECURITY

22   INTEREST MAY OR MAY NOT BE VALID.  SO AT THIS POINT

23   IT'S JUST OUT THERE.

24             IT'S A COMPANY OWNED BY MR. FRANK AMODEO

25   WHO WAS NOT AN OFFICER OR DIRECTOR OF MIRABILIS.

1   HOWEVER, THE GOVERNMENT HAS ALLEGATIONS IN THE FORFEITURE

2   COMPLAINT RELATING TO CERTAIN ACTIVITIES OF MR.

3   AMODEO THAT WOULD BE CONSIDERED TO BE CRIMINAL.

4   THE COURT:  WHAT KIND OF SECURITY -- HAVE YOU

5   EVEN LOOKED AT THOSE DOCUMENTS OR --

6   MS. GREEN:  I DON'T HAVE ALL OF THE DOCUMENTS

7   RELATED TO THE SECURITY INTEREST.  I JUST WANTED TO

8   DISCLOSE TO THE COURT THAT THAT WAS OUT THERE.

9   THE COURT:  AND AT THIS JUNCTURE, AS FAR AS

10   WITH MR. CUTHILL AND MR. MOECKER'S INVOLVEMENT, MR.

11   AMODEO AND THE FORMER OFFICERS AND DIRECTORS ARE NOT

12   IN ANYWAY IN CONTROL OF ANY ASSETS OR BOOKS OR

13   RECORDS OF THE DEBTOR?  IS THAT CORRECT?

14   MS. GREEN:  THE BOOKS AND RECORDS ARE LOCATED

15   IN THE WAREHOUSE.

16   THE COURT:  YOU SAID OF THE LAWYER.

17   MS. GREEN:  WHICH I BELIEVE ARE SUPPOSED TO BE

18   IN THE CUSTODY OF MR. SLAUGHTER.  I'M SURE THAT MR.

19   GOLD CAN CONFIRM THAT.  AT THIS POINT I THINK THE

20   RENT MAY BE BEING PAID BY MR. AMODEO AND THAT'S

21   SOMETHING THAT WE'RE LOOKING AT WITH A WAY TO REMEDY

22   THAT.

23   WHAT I'D LIKE TO DO IS BECAUSE SOME OF THE

24   DOCUMENTS, THEY WERE COMPILED UNDER THE SUBPOENAS, I

25   WOULD AT LEAST LIKE TO BE ABLE TO FIGURE OUT A WAY TO

1    HOLD THOSE DOCUMENTS AND MAKE EVERYBODY HAPPY AND STILL

2    ALLOW US TO HAVE THE CONTROL OVER THEM.

3          NO, MR. AMODEO IS NOT INVOLVED IN THE

4    OPERATIONS OF THE BUSINESS OR THE OPERATIONS OF THE

5    BANKRUPTCY.  I HAVE HAD SOME PHONE CALLS WITH

6    MIRABILIS COUNSEL WHO ALSO REPRESENTS SOME COMPANIES

7    OF MR. AMODEO FOR FACT FINDING MISSIONS, ESSENTIALLY,

8    TO DETERMINE THE EXTENT AND THE STATUS OF SOME OF

9    THIS LITIGATION.

10         THE COURT:  HOW DID YOU GET PAID?

11         MS. GREEN:  WE WERE PAID BY A DEPARTMENT OF

12   TRANSPORTATION CHECK IN THE SETTLEMENT OF A LAWSUIT

13   THAT RFK, ONE OF THE MIRABILIS SUBSIDIARIES, HAD

14   AGAINST THE DOT FOR BREACH OF CONTRACT.

15         THE COURT:  AND THERE'S ESSENTIALLY NO CASH

16   ASSETS, BANK ACCOUNTS? THERE MAY BE BANK ACCOUNTS BUT

17   THERE'S NO CASH --

18         MS. GREEN:  THERE MAY BE BANK ACCOUNTS BUT AS

19   FAR AS WE KNOW, NO.

20         THE COURT:  VERY GOOD.  VERY GOOD.

21         MS. GREEN:  DO YOU WANT ME TO ADDRESS HOTH OR

22   DO YOU WANT TO DO IT?

23         THE COURT:  YEA, LET'S DEFINITELY ADDRESS HOTH

24   BUT BEFORE WE MOVE ON I DID HAVE ONE MORE QUESTION.

25   YOU'RE GOING TO FILE THE MOTION FOR THE STAY AND

1    WE'LL SET THAT.  ANY OTHER EMERGENCY MOTIONS OR ANY OTHER

2    QUICK MATTERS THAT I NEED TO PARTICIPATE --

3            MS. GREEN:  I THINK THE ONLY OTHER QUICK

4    MATTERS WILL RELATE TO THE RETENTION OF PROFESSIONALS

5    IN THE FORM OF ACCOUNTANTS.

6            THE COURT:  VERY GOOD.  YEA, GO AHEAD AND

7    PROCEED TO HOTH.

8            MS. GREEN:  YES, YOUR HONOR.  HOTH HOLDINGS,

9    LLC IS AN ENTITY WHICH OWNS A PIECE OF PROPERTY IN

10   HENRICO COUNTY VIRGINIA.  WE BELIEVE THE VALUE OF THE

11   PROPERTY IS 1.25 MILLION DOLLARS.  THAT PROPERTY WAS

12   THE SUBJECT OF LITIGATION WHICH WAS PENDING IN

13   HENRICO COUNTY WHEREIN THE PARTIES WERE SEEKING

14   SPECIFIC PERFORMANCE.  IN OTHER WORDS, REQUIRING HOTH

15   TO TRANSFER THE DEED TO THE REAL ESTATE.

16            THIS PROPERTY WAS THE SUBJECT OF ONE OF

17   THE CIVIL FORFEITURE ACTIONS HOWEVER THE JUDGE IN THE

18   VIRGINIA COURT REFUSED TO STAY THAT LITIGATION BASED

19   UPON THE CIVIL FORFEITURE ACTION AND WAS GOING

20   FORWARD WITH THE TRIAL.

21            UNFORTUNATELY, THERE WAS NOBODY TO

22   REPRESENT HOTH HOLDINGS AT THAT TRIAL AND IN AN

23   EFFORT TO RETAIN THE VALUE OF THAT PROPERTY FOR

24   WHOMEVER THE APPROPRIATE CREDITOR MAY BE, WE FILED

25   THE BANKRUPTCY FOR HOTH.

1        THE COURT:  AND THIS IS ONE OF THE SUBSIDIARIES,

2    SIMILAR TO OTHER SUBSIDIARIES?

3        MS. GREEN:  IT'S ACTUALLY NOT WHOLLY OWNED.

4    IT'S AN LLC, 90 PERCENT MEMBERSHIP INTEREST IS WITH

5    MIRABILIS VENTURES WHO IS ALSO THE MANAGING MEMBER.

6        THE COURT:  AND WHO IS THE OTHER TEN PERCENT IF

7    YOU KNOW?

8        MS. GREEN:  IT'S EXIA, LLC WHICH IS A COMPANY

9    CONTROLLED BY MR. AMODEO, I BELIEVE.

10        THE COURT:  ANY EMERGENCY MATTERS IN THAT?

11    IT'LL BE, YOU'LL FILE A SIMILAR -- WELL, YOU'RE A

12    DEFENDANT IN THAT PROCEEDING.

13        MS. GREEN:  WE'RE A DEFENDANT IN THAT

14    PROCEEDING SO I THINK WE WON'T HAVE ANY EMERGENCY

15    MATTERS UNLESS THOSE MATTERS ARE BROUGHT BY OTHER

16    PARTIES.

17        THE COURT:  VERY GOOD.  THANK YOU.  I GUESS,

18    MR. GOLD IF YOU COULD BRING ME, YOU CERTAINLY HAVE

19    PROBABLY AT LEAST AS MUCH, IF A DIFFERENT TYPE OF

20    KNOWLEDGE THAN MISS GREEN.  BUT PROBABLY FAIRLY

21    SUBSTANTIAL.

22        MR. GOLD:  MS. GREEN IS CORRECT.  THERE ARE A

23    NUMBER OF ACTIONS SPINNING AT THE SAME TIME.  THERE

24    IS A CRIMINAL INVESTIGATION THAT HAS BEEN ONGOING FOR

25    A LITTLE LESS THAN TWO YEARS.  IT IS VERY EXTENSIVE.

1          WE DID FILE A CIVIL FORFEITURE ACTION AGAINST

2     CERTAIN HOMES AS WELL AS [INAUDIBLE] AND A PLANE.

3     AND THEN THERE WERE SEIZURE WARRANTS ISSUED TO

4     SEVERAL LAW FIRMS WHO HAD FUNDS WE BELIEVE CAME FROM

5     TAINTED MONEY AND IT WAS IN THEIR TRUST ACCOUNTS.

6          THE COURT:  AND I DON'T WANT TO IMPEDE UPON THE

7     CRIMINAL INVESTIGATION BUT JUST GENERALLY, WERE THE

8     FORFEITURE ACTIONS RELATED TO THE DEBTORS' PROPERTY,

9     THESE TWO DEBTORS' PROPERTIES, OR WERE THEY RELATED

10    TO EITHER THE OTHER SUBSIDIARIES OR MR. AMODEO'S

11    PERSONAL PROPERTIES?

12         MR. GOLD:  IT IS PROBABLY RELATED TO

13    EVERYTHING.

14         THE COURT:  ALL OF THEM, OKAY.

15         MR. GOLD:  AND, AS A MATTER OF FACT, WHAT ONE

16    OF THE THINGS THAT I WAS GOING TO RELATE TO THE COURT

17    IS WE ARE CONSIDERING, PROBABLY WILL FILE, A MOTION

18    TO WITHDRAW THE REFERENCE AND BRING IT OVER TO JUDGE

19    ANTONE, SO THAT HE CAN HEAR THE BANKRUPTCY OR PARCEL

20    ITEMS THAT YOUR HONOR, CERTAIN ASPECTS SO THAT IT'S

21    ALL OVER THE DISTRICT COURT.

22         THE COURT:  AND HE'S HANDLING ALL THE CIVIL

23    FORFEITURE?

24         MR. GOLD:  CIVIL FORFEITURE PROCEEDINGS, THAT'S

25    CORRECT.

1       THERE ARE SEVERAL OTHER ISSUES WE JUST WANT

2   TO BRING TO THE COURT'S ATTENTION.  IF THE COURT

3   WANTS DETAILS I CAN GO INTO THEM.

4       BUT, THERE ARE ISSUES, PROBABLY

5   UNBEKNOWNST TO MS. GREEN, ABOUT THE WAY THIS

6   BANKRUPTCY CAME ABOUT.  AND THERE MAY BE AN ISSUE AS

7   TO MR. AMODEO'S COMPETENCE WHICH MAY FIGURE INTO HOW

8   THIS CASE WAS FILED.

9       THE ONE ITEM THEY WERE TALKING ABOUT BEING

10  PAID, THE MONEY FOR THE RFK, WE BELIEVE [INAUDIBLE]

11  WILL BE SUBJECT TO FORFEITURE.  THERE ARE NO OTHER

12  ASSETS AS WE UNDERSTAND IT.

13      WE DID HAVE A DISCUSSION WITH MR. MEEKER,

14  MS, GREEN WITH MR. SCHUKER AND SOME FOLKS FROM MY

15  OFFICE AS WELL AS THE IRS ABOUT HOW THEY WERE GOING

16  TO FUND THIS.  ORIGINALLY THEY THOUGHT THEY HAD FOUR

17  THOUSAND DOLLARS IN CASH, WHICH WE GOT.  MR. AMODEO

18  AND MIRABILIS DOES NOT.

19      AS TO THE 1.2 MILLION, WE MAY BE ABLE TO

20  TRACE THAT TO THE TAINTED FUNDS.  SO IT MAY BE THAT

21  THE 1.2 MILLION DOLLARS IS GOING TO BE SUBJECT TO

22  FORFEITURE.  AS MS. GREEN KNOWS, WE'VE ALREADY WITH A

23  SEIZURE WARRANT TAKEN SOME MONEY FROM HER FIRM.

24      AS TO THE RECORDS, THE RECORDS WE RECEIVED

25  PURSUANT TO A GRAND JURY SUBPOENA.  AND WHILE THERE

1   IS A WAREHOUSE THAT'S UNDER THE CONTROL OF THE CRIMINAL

2   DEFENSE ATTORNEY AND/OR POTENTIALLY SOME OTHER

3   ATTORNEYS, I THINK WE WILL WIND UP RETAINING CONTROL

4   OF THE DOCUMENTS.

5          THAT'S NOT TO SAY THAT THEY MAY NOT BE

6   ABLE TO LOOK AT THEM, BUT I DON'T THINK THAT WE'RE

7   GOING TO BE IN A POSITION WHERE WE'RE GOING TO BE

8   WILLING TO GIVE UP THE CONTROL OF THOSE DOCUMENTS.

9          THE COURT:  DO YOU HAVE CONTROL OF THEM AT THIS

10  POINT?

11         MR. GOLD:  BASICALLY THE ANSWER IS YES.

12  THROUGH MR. SLAUGHTER'S OFFICE, AND THEY SPENT A

13  GREAT DEAL OF TIME COMPUTERIZING THINGS.  BUT

14  BASICALLY THEY BELONG TO THE GRAND JURY.

15         AS I UNDERSTAND IT FROM MS. GREEN NOW,

16  APPARENTLY THERE ARE NO ASSETS OTHER THAN THESE

17  LAWSUITS.  I'M NOT QUITE SURE WHY WE ARE IN AN ELEVEN

18  RATHER THAN A SEVEN, BECAUSE AS I UNDERSTAND IT

19  MIRABILIS IS NOT GOING TO GO FORWARD AS AN ENTITY NOR

20  ARE ANY OF THE SUBSIDIARIES.  FOR THE MOST PART

21  THEY'RE ALREADY OUT OF BUSINESS.

22         WE'RE ALSO A LITTLE BIT TROUBLED IN SEEING

23  THE PETITION ITSELF, IN TERMS OF THE LIST OF THE

24  CREDITORS AND SHAREHOLDERS.  WE BELIEVE THERE ARE

25  SOME INSIDERS ON THE LIST OF CREDITORS INCLUDING

1    TITANIUM TECHNOLOGIES, TENSHEE, JOHN BIRCHAM --

2          THE COURT:  THESE ARE THE LIST OF THE 20

3    LARGEST CREDITORS?

4          MR. GOLD:  YES, YOUR HONOR.

5          THE COURT:  AND WHEN YOU SPEAK OF INSIDERS,

6    THEY WERE --

7          MR. GOLD:  WELL, TITANIUM AND TENSHEE ARE

8    BASICALLY MR. AMODEO'S COMPANIES.  AND AS FOR THE

9    SHAREHOLDERS, I DON'T BELIEVE THERE ARE ANY

10   SHAREHOLDERS OTHER THAN MR. AMODEO.  AND WE'RE IN THE

11   PROCESS OF GETTING AFFIDAVITS TO THAT EFFECT.  THEY

12   MAY HAVE BEEN ELIGIBLE TO BE SHAREHOLDERS BUT NOBODY

13   EVER GOT STOCK CERTIFICATES, NOBODY EVER DEEMED

14   THEMSELVES TO BE A CREDITOR -- OR A SHAREHOLDER.

15          AND LAST, BUT NOT LEAST, WE ARE CONCERNED

16   ABOUT MOTIVE FOR THE FILING OF THIS BANKRUPTCY.  WHEN

17   WE HAD A MEETING IN MR. MEEKER'S OFFICE, ONE OF THE

18   THINGS THAT WAS REPRESENTED TO US BY MR. SCHUKER WAS

19   THAT THE MAIN REASON FOR FILING THE BANKRUPTCY, THIS

20   WAS BEFORE THEY FILED IT, WAS THAT THEY WERE TRYING

21   TO GET ENOUGH MONEY BACK TO PAY THE IRS SO THAT IT

22   WOULD LOOK BETTER FOR AMODEO AT SENTENCING.

23          I DON'T THINK THAT'S A PROPER MOTIVE FOR

24   BANKRUPTCY.  AND WE'RE CONCERNED THAT THAT IS THE

25   UNDERLYING ISSUE.  AS THE MATTER OF FACT, IF YOU

1    LOOK, MIRABILIS IS NOT LISTED -- OR THE IRS IS NOT LISTED

2    AS A CREDITOR.  THERE IS ABOUT 182 MILLION DOLLARS

3    THAT WE HAVE ALLEGED WAS STOLEN, IN FACT, FROM THE

4    IRS.  SOME PORTION OF THAT IS TRUST FUND MONEY AS

5    WELL.

6        THE COURT:  AND ABOUT TWO THIRDS OF IT IS TRUST

7    FUND MONEY, IS THAT APPROXIMATELY?

8        MR. GOLD:  I GUESS, APPROXIMATELY.  BUT, SO

9    WE'VE GOT A NUMBER OF CONCERNS ABOUT THE BANKRUPTCY.

10   BUT WE'RE NOT HERE TO LITIGATE IT, WE JUST WANTED TO

11   BRING THOSE TO THE COURT'S ATTENTION.

12       THE COURT:  VERY GOOD.  THANK YOU VERY MUCH.

13           AND MR. MEEKER, DOES THE U.S. TRUSTEE'S

14   OFFICE CARE TO MAKE A STATEMENT OR GIVE ME ANY

15   FURTHER INFORMATION THIS MORNING?

16       MR. MEEKER:  AS MR. GOLD ALLUDED TO, WE HAD

17   SOME INVOLVEMENT, KIND OF A GO BETWEEN ROLE I GUESS

18   YOU WOULD CALL IT, FOR A COUPLE OF WEEKS, AND HAVEN'T

19   REALLY STAKED OUT ANY POSITION.

20           ONE OF THE THINGS WE WILL PROBABLY TAKE A

21   LOOK AT, I'M NOT SURE HOW WE WILL RESOLVE IT, IS THIS

22   WHOLE 1104 ISSUE OF WHO REALLY CONTROLLED THE WHOLE

23   THING AND CAN YOU SANITIZE IT.  WE'VE BEEN HERE

24   BEFORE WITH A SIMILAR ISSUE.  WE THINK MAYBE THE

25   FACTS ARE ENOUGH DIFFERENT HERE THAT WE ARE AT LEAST

1    TAKING ANOTHER LOOK AT IT.

2              I THINK THE FIRST MEETING IS LATER THIS

3    MONTH.  I DOUBT THAT WE'LL DO ANYTHING PRIOR TO THAT

4    FIRST MEETING.

5         THE COURT:  RIGHT.

6         MR. MEEKER:  AND SEE WHAT'S THERE.  THE ONLY

7    OTHER THING I WOULD JUST COMMENTARY, YOU KNOW, IT'S

8    KIND OF A STRANGE CASE WHERE THE CREDITOR, THE

9    LARGEST CREDITOR WHO OWNS ABOUT 90 TO 95 PERCENT OF

10   THE CLAIMS DOESN'T WANT TO BE HERE.  I GUESS WE'VE

11   HAD THOSE CASES BEFORE, BUT CERTAINLY NOT AT THIS

12   LEVEL AND THIS SCOPE.

13        THE COURT:  NO, IT CERTAINLY IS A UNIQUE CASE.

14   AND MS. GREEN?

15        MS. GREEN:  FIRST, THE REASON THE IRS ISN'T

16   LISTED AS A CREDITOR IS BECAUSE IN THE BARE BONES

17   PETITION THE IRS WOULD BE A PRIORITY CREDITOR.

18        THE COURT:  A PRIORITY CREDITOR, YES THEY'RE

19   JUST UNSECURED.

20        MS. GREEN:  IT'S NOT THAT THEY'RE BEING

21   IGNORED.  I THINK I DISCLOSED IN THE CASE SUMMARY

22   THAT WE CONSIDER THAT THE IRS MAY BE A CREDITOR.

23   EVEN THOUGH, LIKE I SAID, THERE'S BEEN NO ASSESSMENT

24   OR NO LITIGATION OR NO LIEN FILED.

25              WITH REGARD TO THE MEETING THAT WE HAD AND

1    THE STATEMENT ALLEGEDLY MADE BY MR. SCHUKER, I'D LIKE TO

2    ELABORATE ON THE FACT THAT THE GOAL OF THIS

3    BANKRUPTCY WAS TO MARSHALL THE ASSETS, ANALYZE THEM,

4    DETERMINE WHAT THOSE ASSETS WERE AND DISTRIBUTE THEM

5    TO CREDITORS WHOEVER THOSE CREDITORS MAY BE.

6           I BELIEVE THE RESPONSE THAT MR. SCHUKER

7    MADE WAS IN RESPONSE TO WELL WHAT WILL MR. AMODEO

8    GET.  AND THE ANSWER IS NOTHING.  MR. AMODEO ISN'T

9    RELATED TO THIS BANKRUPTCY.  IT WAS ALLEGEDLY

10   POSSIBLE THAT IF MONEY WENT BACK TO THE SERVICE THAT

11   MIGHT BENEFIT HIM, BUT THAT WASN'T THE REASON FOR THE

12   FILING.

13          THE REASON FOR THE FILING IS THAT IN

14   ADDITION TO THE IRS THERE ARE OTHER CREDITORS AND THE

15   IRS MAY OR MAY NOT BE A CREDITOR.  WE BELIEVE THAT

16   THEY ARE, BUT I THINK THE IRS IS ACTUALLY THEMSELVES

17   TAKEN A DIFFERING POSITION AS TO WHETHER THEY'RE A

18   CREDITOR OF MIRABILIS OR SOME OTHER COMPANY.  SO THE

19   IDEA IS TO ANALYZE THE ASSETS, MARSHALL THEM AND

20   DISTRIBUTE THEM TO THE CREDITORS THE WAY THAT THEY

21   SHOULD BE DISTRIBUTED.

22       THE COURT:  VERY GOOD.  THANK YOU.

23          I WILL SET A FURTHER STATUS CONFERENCE IN

24   THIS CASE TO CONSIDER THE MOTIONS TO BE FILED -- WHEN

25   DO YOU ANTICIPATE FILING THOSE MS. GREEN?

1    MS. GREEN:  I WOULD LIKE TO GET THEM FILED IN A

2  DAY OR TWO.  I'M TRYING TO GET A REAL GOOD LOOK AT

3  THE SUBSIDIARIES SO WE DON'T ACCIDENTALLY STAY

4  SOMEBODY ELSE'S LITIGATION.

5    THE COURT:  AND WHAT IS THE EXPEDIENCY THAT YOU

6  THINK THAT IT -- I DON'T KNOW MUCH ABOUT THE

7  UNDERLYING LITIGATION.  I DON'T KNOW IF THERE'S

8  SOMETHING IMMINENT THAT I NEED --

9    MS. GREEN:  I THINK THAT ABOUT TEN DAYS WOULD

10  BE GOOD.

11    THE COURT:  WE WILL SET A FURTHER STATUS

12  CONFERENCE FOR JUNE 18TH AT 2:00.  THAT WILL GIVE TIME

13  FOR THE -- YES MA'AM.

14    MS. GREEN:  YOUR HONOR, I'M NOT GOING TO BE

15  AVAILABLE THAT DAY.  AND ACTUALLY MR. SCHUKER ISN'T

16  EITHER.

17    THE COURT:  OKAY.  IS IT THE WHOLE WEEK OR JUST

18  THAT DAY OR?

19    MS. GREEN:  I'M UNAVAILABLE THE 16TH UNTIL THE

20  18TH, BUT I'M AVAILABLE THE 19TH AND 20TH.  [INAUDIBLE]

21    THE COURT:  JUNE THE 23RD AT 2:00 P.M. WILL BE

22  THE NEXT STATUS CONFERENCE.  AT THAT TIME IF THE

23  MOTIONS REQUESTING THE STAY ARE TIMELY FILED AND CAN

24  BE NOTICED SO THAT AT LEAST TEN DAYS NOTICE IS GIVEN

25  THEY'LL BE HEARD AT THAT TIME, ON JUNE THE 23RD AT 2.

1    AS WELL AS ANY OTHER TIMELY FILED MOTIONS WE CAN ADD.

2            MR. MEEKER, YOU HAD A QUESTION?  WHEN IS

3    THE 341 MEETING?

4            MR. MEEKER:  I THINK --

5            THE COURT:  THAT DAY.  WHAT TIME?  WHAT TIME

6    THAT DAY?

7            MR. MEEKER:  NINE O'CLOCK.

8            THE COURT:  OKAY, SO THAT SHOULD BE OKAY.

9            MR. MEEKER:  ONE THING I PROBABLY SHOULD BRING

10   TO THE COURT'S ATTENTION AND I DON'T KNOW WHETHER THE

11   COURT'S AWARE OF THIS OR NOT.  BUT THERE WAS TALK OF

12   OTHER LITIGATION IN PLACES.

13            AND WHAT WE'RE ALMOST RUNNING UP AGAINST

14   IS THE GURLY SITUATION.  THERE IS A CASE IN

15   CHATTANOOGA AT WINFAR MANAGEMENT THAT THE FORFEITURE

16   ACTION IS BEING ASSERTED THERE.  THE CHAPTER SEVEN

17   TRUSTEE IS TESTING VARIOUS THINGS, AND NOW MS. GREEN

18   HAS FILED A SUGGESTION OF BANKRUPTCY AND THE

19   APPLICATION OF 362.  SO, THERE IS A HEARING IN THAT

20   CASE THIS AFTERNOON.  I DON'T KNOW HOW IT'S GOING TO

21   PLAY OUT, VIS-À-VIS THIS MATTER, BUT IT'S VERY

22   INVOLVED AT THIS POINT.

23            THE COURT:  I HAVE A FEELING A LOT OF THE

24   LITIGATION IS GOING TO BE VERY INVOLVED AND WHERE IT

25   ALL ENDS UP AND HOW IT ALL WORKS OUT, WILL PROBABLY

1    BE SOME TIME IN THE FUTURE BEFORE WE'LL KNOW.  BUT WE'LL

2    DO OUR BEST AND AS LONG AS THE PROCEEDING IS HERE.

3         AND ON THAT LINE, THE CONNECTION WITH THE

4    MOTION TO WITHDRAW REFERENCES OBVIOUSLY THEY'RE

5    UNUSUAL.  I UNDERSTAND THE JUSTIFICATION.  I ALSO

6    JUST WANT TO MAKE SURE THE PARTIES ALL KNOW THAT THEY

7    WILL BE TREATED -- ANY MOTION TO WITHDRAW IS TREATED

8    AS AN APPEAL.  SO IT WILL BE DECIDED BY THE DISTRICT

9    COURT NOT BY ME.

10         AND IT WILL NEED TO BE BRIEF ON AN

11   EXPEDITIOUS BASIS -- THERE IS, I HAVEN'T LOOKED AT

12   THE RULE IN QUITE AWHILE BUT I WOULD ASK YOU ALL TO

13   DO THAT.  WE WILL BE GLAD TO TRANSMIT IT QUICKLY, BUT

14   IT WILL ONLY GO OVER AFTER THE BRIEFS ARE DONE AND

15   SUCH.  SO, YOU MAY WANT TO TALK ABOUT THAT BETWEEN

16   YOURSELVES.

17        MR. GOLD:  YOUR HONOR, WE ANTICIPATE FILING A

18   MOTION [INAUDIBLE].

19        THE COURT:  YEA, BUT IN TERMS OF BRIEFING AND

20   SUCH, THE QUICKER YOU GET IT OVER THE QUICKER IT'LL

21   GET RESOLVED.  JUST SO EVERYBODY DOESN'T ANTICIPATE.

22   YOU ALL KNOW THE RULES BUT FOR EVERYBODY ELSE IN THE

23   COURTROOM, JUST SO THAT THEY UNDERSTAND THAT THE

24   DISTRICT COURT WILL DETERMINE WHETHER THE BANKRUPTCY

25   CASE STAYS HERE OR WHETHER ALL OR A PART OF IT GOES

1  BACK TO THE DISTRICT COURT.  IT MAY OR MAY NOT.

2           AND, ANYTHING ELSE THAT WE NEED TO DO

3  TODAY OR SHOULD?  NO?  THANK YOU ALL VERY MUCH FOR

4  YOUR PROMPT ATTENTION AND I WILL SEE YOU JUNE 23RD.

5  I'M GOING TO FINISH MY NOTES BUT COURT'S IN RECESS.

6           [COURT RECESSED AT 11:32 A.M.]

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF OATH

STATE OF FLORIDA:

COUNTY OF SEMINOLE:

      I, SANDRA A. MOSER, NOTARY PUBLIC, CERTIFY THAT I WAS AUTHORIZED TO AND DID TRANSCRIBE, FROM CD, THE FOREGOING PROCEEDINGS AND THAT THE TRANSCRIPT IS A TRUE RECORD.

      I FURTHER CERTIFY THAT I AM NOT A RELATIVE, EMPLOYEE, ATTORNEY OF RECORD FOR ANY OF THE PARTIES, NOR AM I FINANCIALLY INTERESTED IN THE OUTCOME OF THIS MATTER.

      DATED THIS 12TH DAY OF JUNE, 2008.

                        _____

                        SANDRA A. MOSER, RPR, FPR, PRESIDENT
-                       STATE OF FLORIDA
                        REALTIME REPORTERS, INC.
                        407-884-4662
                        Fax: 407-884-4664

MY COMMISSION NO: DD115338

MY COMMISSION EXPIRES: MAY 6, 2010