# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

IN RE:                                     **CASE NO. 6:08-bk-04327-KSJ**
                                           **CASE NO. 6:08-bk-04328-KSJ**
**MIRABILIS VENTURES, INC.,**              **CASE NO. 6:08-bk-04681-KSJ**
*et al.,*
                 **Debtor.**
_____/          **CHAPTER 11**


## JOINT DISCLOSURE STATEMENT PURSUANT TO
## 11 U.S.C. § 1125 FOR MIRABILIS VENTURES, INC.,
## <u>HOTH HOLDINGS, LLC, AND AEM, INC.</u>


COUNSEL FOR DEBTORS

ELIZABETH A. GREEN, ESQ.
JUSTIN M. LUNA, ESQ.
LATHAM, SHUKER, EDEN & BEAUDINE, LLP
390 N. ORANGE AVENUE, SUITE 600
ORLANDO, FLORIDA, 32801


June 1, 2009

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:

MIRABILIS VENTURES, INC.,
*et al,*

     **Debtor.**

_____/

CASE NO. 6:08-bk-04327-KSJ
CASE NO. 6:08-bk-04328-KSJ
CASE NO. 6:08-bk-04681-KSJ

CHAPTER 11

JOINT DISCLOSURE STATEMENT PURSUANT TO
11 U.S.C. § 1125 FOR MIRABILIS VENTURES, INC.,
HOTH HOLDINGS, LLC, AND AEM, INC.

## I.  INTRODUCTION AND SUMMARY.

This Disclosure Statement ("Disclosure Statement") is filed pursuant to the requirements of §1125 of Title 11 of the United States Code (the "Code" or "Bankruptcy Code"). This Disclosure Statement is intended to provide adequate information to enable holders of claims in the above-captioned bankruptcy case ("Bankruptcy Case") to make informed judgments about the Plan of Liquidation (the "Plan") submitted by Mirabilis Ventures, Inc. ("Mirabilis"), AEM, Inc. ("AEM") and Hoth Holdings, LLC ("Hoth")(collectively, the "Debtors"). The overall purpose of the Plan is to maximize recoveries to all stakeholders. The Debtor believes the Plan is reasonably calculated to lead to the best possible outcome for all creditors in the shortest amount of time and is preferable to all other alternatives.

**THIS DISCLOSURE STATEMENT AND ITS RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT THE PLAN. THIS INTRODUCTION AND**

2

SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT, AND THIS DISCLOSURE STATEMENT IN TURN IS QUALIFIED IN ITS ENTIRETY BY THE PLAN. THE PLAN IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND ANY HOLDER OF ANY CLAIM OR INTEREST SHOULD READ AND CONSIDER THE PLAN CAREFULLY IN LIGHT OF THIS DISCLOSURE STATEMENT IN MAKING AN INFORMED JUDGMENT ABOUT THE PLAN. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS. ALL CAPITALIZED TERMS USED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE DEFINITIONS ASCRIBED TO THEM IN THE PLAN UNLESS OTHERWISE DEFINED HEREIN.

NO REPRESENTATION CONCERNING THE DEBTORS IS AUTHORIZED OTHER THAN AS SET FORTH HEREIN. ANY REPRESENTATIONS OR INDUCEMENTS MADE WHICH ARE OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION ABOUT THE PLAN.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AUDIT. FOR THAT REASON, AS WELL AS THE COMPLEXITY OF THE DEBTORS' BUSINESSES AND FINANCIAL AFFAIRS AND THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES, AND PROJECTIONS WITH COMPLETE ACCURACY, THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT INACCURACY, ALTHOUGH A REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THIS DISCLOSURE STATEMENT INCLUDES FORWARD LOOKING STATEMENTS BASED LARGELY ON THE DEBTORS' CURRENT EXPECTATIONS AND PROJECTIONS ABOUT FUTURE EVENTS AND FINANCIAL TRENDS AND ARE SUBJECT TO A NUMBER OF RISKS, UNCERTAINTIES AND ASSUMPTIONS.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, CAUSES OF ACTION, AND OTHER ACTIONS, THE DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.**

Mirabilis, AEM and Hoth are debtors under Chapter 11 of the Code in bankruptcy cases pending in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division (the "Bankruptcy Court").

As prescribed by the Code and the Rules, Claims asserted against and Equity Interests in the Debtor are placed into "Classes". The classification of Claims and the treatment of each Class are discussed in detail below.

To the extent the legal, contractual, or equitable rights with respect to any Claim or Interest asserted against the Debtors are altered, modified, or changed by treatment proposed under the Plan, such Claim or Interest is considered "Impaired," and the holder of such Claim or Interest is entitled to vote in favor of or against the Plan. A Ballot for voting in favor of or against the Plan ("Ballot") will be mailed along with the order approving this Disclosure Statement.

**THE VOTE OF EACH CREDITOR OR INTEREST HOLDER WITH AN IMPAIRED CLAIM OR INTEREST IS IMPORTANT. TO BE COUNTED, YOUR BALLOT MUST BE <u>RECEIVED</u> AT THE ADDRESS AND BY THE DATE SET FORTH IN THE BALLOT.**

Upon receipt, the Ballots will be tabulated and the results of the voting will be presented to the Bankruptcy Court for its consideration. As described in greater detail in Section IV of this

4

Disclosure Statement, the Code prescribes certain requirements for confirmation of a plan. The Court will schedule a hearing (the "Confirmation Hearing") to consider whether Debtor has met those requirements.

The Code permits a court to confirm a plan even if all Impaired Classes have not voted in favor of a plan. Confirmation of a plan over the objection of a Class is often called "cramdown." As described in greater detail in Section IV of this Disclosure Statement, the Debtors have expressly reserved the right to seek "cramdown" in the event that all Impaired Classes do not vote in favor of the Plan.

## II.    DESCRIPTION OF DEBTORS' BUSINESSES.

A.    In General.

Mirabilis is a Nevada corporation, which was established on October 28, 2004 when Stellar Industries, Inc. ("Stellar") amended its articles of incorporation to change its name to Mirabilis. Mirabilis is a private equity company, which acquired companies that had a strategic fit into its unique business model. Acquired companies either fit into the four primary specialization categories – real estate, construction, chain store development, and human resources – or they provided necessary goods and services to the core companies. At its inception, Mirabilis had only one shareholder (Yaniv Amar) and only one director (Gailie Hartman). Mirabilis is operated from and had its principal place of business in Orlando, Florida.

AEM is a Florida corporation, which was established on October 15, 2001 when it filed its articles of incorporation with the State of Florida. AEM registered Mirabilis HR, as a fictitious name with the State of Florida on August 4, 2005 and began operating under that name.

5

AEM operated as a professional employer organization ("PEO") until 2007. AEM is a wholly owned subsidiary of Mirabilis. Hoth is a Nevada limited liability company, which was formed on July 24, 2006 to own certain real property located in Henrico County, Virginia (the "Virginia Property"). The Virginia Property consisted of a building, which operated as a distribution center. The Virginia Property was the subject of litigation in Henrico County, Virginia, which sought to require Hoth to deliver the deed to the Virginia Property to Coastal Equity Partners, LLC ("Coastal"). Subsequent to this time, title to the Virginia Property was transferred while Hoth was insolvent and without value.

B.      Events Leading to Chapter 11 Filing.

In late November 2006, Mirabilis executives were notified that a federal grand jury investigation had commenced with regard to the operations of Mirabilis and its related entities. The grand jury investigations related to payroll taxes of another entities used by Mirabilis for other investments. By January 2007, Mirabilis and AEM had laid off all non-key employees, including a number of officers and managers, and had closed a majority of its businesses. This allowed Mirabilis to sustain operations and remain current with its taxes. News of the federal grand jury investigation and nonpayment of payroll taxes leaked to the press, resulting in several negative articles, which decimated the PEO book of business and destroyed the operations of Mirabilis. On or about May 1, 2007, Mirabilis was forced to liquidate its operations and sold the PEO book of business to O2HR, LLC for approximately Fifteen Million Dollars ($15,000,000.00).

6

From May 2007 through April 2008 Mirabilis continued to wind down its operations in a self liquidating process. Then, on April 25, 2008, the United States of America ("USA") filed an *in rem* Civil Forfeiture Complaint, Case No. 6:08-cv-00067-MSS-KRS, in the District Court for the Middle District of Florida, Orlando Division ("Civil Complaint") against certain property owned by Mirabilis. (Civil Complaint Doc No. 1). The *in rem* civil forfeiture action was filed based upon the criminal investigation of Mr. Frank Amodeo. Mr. Amodeo was not an officer or director of the Debtors. The government sought forfeiture of the Debtors' assets based upon the assertion that Mr. Amodeo exercise some degree of control over the Debtors.

Shortly after the filing of the civil forfeiture action, on May 27, 2008, the directors of Mirabilis added Michael E. Moecker ("Moecker") as a Director, and subsequently, the two existing directors of Mirabilis resigned together with the President of Mirabilis. By an Action of the Sole Director of Mirabilis, dated May 27, 2008, Moecker appointed R.W. Cuthill ("Cuthill"), as president of Mirabilis.

On May 27, 2008, the Debtors filed their voluntary petitions for relief with the Middle District of Florida Bankruptcy Court (the "Petition Date"). The Chapter 11 filings came primarily as a result of an *in rem* civil forfeiture action. In an effort to preserve equity for all of its creditors and other potential creditors, Mirabilis deemed a Chapter 11 liquidation plan as in the best interest of all its creditors.

In addition, Hoth's Virginia Property was the subject of litigation in Henrico County, Virginia, which sought to require Hoth to deliver the deed to the property to Coastal. The litigation was set for trial on May 28, 2009. The proceeds of the Virginia Property were the

7

subject of the *in rem* forfeiture action by the USA.  However, the Virginia Property had not been sold, and hence there were no proceeds from the Virginia Property. In an effort to preserve the value of the asset, the Chapter 11 petition was filed.

**C.**    Events Subsequent to Chapter 11 Filing.

Since the Petition Date, the Debtors have continued to operate their businesses as debtors-in-possession under sections 1101(a) and 1108 of the Bankruptcy Code.  Pursuant to section 327 of the Bankruptcy Code, the Debtors sought and obtained an order from the Bankruptcy Court authorizing the Debtors to retain Latham, Shuker, Eden & Beaudine, LLP as Debtors' counsel.   The Debtors have also sought to employ a variety of legal, accounting and investigation professionals to assist them with the administration and preservation of the Debtors' estates.  (Doc. No. 21, 24, 60, 97, 123, 149, 171, 177).

On August 6, 2008, the United States of America ("USA") indicted Frank L. Amodeo ("Amodeo"), for conspiracy, failure to remit payroll taxes, wire fraud, and obstruction of an agency investigation.  *See United State of America v. Frank L. Amodeo*, Case No.: 08-cr-176-Orl-28-GJK (Dist. Court Doc. No. 1).   The indictment contained criminal forfeiture provisions, which sought the forfeiture, *inter alia*, of all assets of the estates of the Debtors and their related entities.  On August 14, 2008, USA filed a motion to intervene and to stay the Debtors' bankruptcy cases with this Court ("Intervener Motion")(Bankr. Doc. No. 48).  In the Motion, USA sought to stay the Bankruptcy Case in an effort to pursue a forfeiture action against property of the Debtors including, but not limited to, proceeds seized in the various law firm trust

8

accounts, vehicles, real estate, and other personal property. (Bankr. Doc. No. 48). On September 4, 2008, the USA amended the Civil Complaint to add additional property, including property owned by Mirabilis (Civil Complaint Doc. No. 67).

On September 23, 2008, Amodeo plead guilty to five counts of the indictment. (Dist. Court Doc. No. 28 and 33). The plea agreement included an agreement by Amodeo to forfeit all of the proceeds of his conspiracy charged in Count One, including the assets of the Debtors' bankruptcy estates.

On the same date that Mr. Amodeo pled guilty, September 23, 2008, the USA filed a Motion to Dismiss the Bankruptcy Case based upon its bad faith filing alleging that the sole purpose of the filing was for Mr. Amodeo's personal benefit (the "Dismissal Motion")(Bankr. Doc. No. 71). The Debtors deny that the petitions were filed in bad faith. On September 29, 2008, the Intervener Motion was scheduled to be heard before this Court. However, the hearing was postponed by joint stipulation of both parties, and the Dismissal Motion and the Intervener Motion were continued.

On September 29, 2008 the USA filed a motion in the Amodeo Criminal Case for entry of a Preliminary Order of Forfeiture ("Forfeiture Motion")(District Court Case Doc. No. 40). In its Motion, the USA sought the forfeiture of a significant number of assets, including the Debtors' assets, and authority to seize of all of the assets sought for forfeiture. On October 2, 2008, the District Court entered a Preliminary Order of Forfeiture ("Preliminary Forfeiture Order"). (Dist. Court Doc. No. 46). Pursuant to the Preliminary Forfeiture Order, the USA may seize property forfeited under the Order immediately, regardless of the Debtors' appeal. On

9

October 3, 2008, the Debtors filed an Emergency Motion to Enforce Automatic Stay and for Sanctions in the Bankruptcy Case ("Sanctions Motion"). (Bankr. Doc. No. 89). On October 30, 2008 the USA indicted Mirabilis and AEM, alleging conspiracy to divert payroll taxes. The Mirabilis and AEM indictments include criminal forfeiture counts. A trial is set for July 1, 2009 in the Mirabilis and AEM criminal cases and both entities are involved in discussions related to the indictments with the USA.

On October 8, 2008, and subsequent to this date, Debtors counsel and USA met to discuss possible global resolutions of all issues which have been raised, or could be raised, between USA and the Debtors, including the resolution of the Intervener Motion, Dismissal Motion, Forfeiture Motion and Sanctions Motion. In full and final resolution of these issues, claims and demands, the parties agreed that it is in the best interest of all parties to reach an agreement related to the administration of assets of the Debtors. On November 25, 2008, the Debtors filed a Motion to Approve Compromise of Controversy regarding the aforementioned dispute. (Doc. No. 101). On March 4, 2009, the Court entered an order approving the Compromise Motion. (Doc. No. 145).

The Debtors' assets are divided between those that will continue to be administered by the Debtors' bankruptcy estate and those forfeited to the USA. The following assets, as more fully set forth in **Exhibit "A,"** have been forfeited to the USA:

a.    The equity interest of Mirabilis and the Unsecured Claims of Mirabilis and its related entities in the WinPar bankruptcy estate, Case No. 07-11908, pending in the Eastern District of Tennessee, shall be forfeited to the USA.

10

b.    The note in the principal amount of $5,500,000.00 dated May 27, 2007 payable to Mirabilis from Conrad D. Eigenmann, Jr. ("Eigenmann Note") shall be forfeited to the USA, however, the payment due on the note in January 2009, which is based upon a formula and will be not less than $100,000.00, shall be paid to the Mirabilis bankruptcy estate and administered by the Mirabilis bankruptcy estate.    The USA agrees that for a period of 12 months, it will delay sale of the Eigenmann Note and will allow the Mirabilis estate to market for sale or otherwise attempt to compromise the Eigenmann Note, subject to approval by the USA.

c.    All retainers seized from attorney's trust accounts, pursuant to warrants issued by the USA, which are the subject of the Civil and Criminal forfeiture actions shall be forfeited to the USA.

Assets to be retained and administered by the Debtors bankruptcy estates, as more fully set forth in **Exhibit "B"** are as follows:

a.    Any causes of action of the Debtors against insurance carriers, or for malpractice against professionals shall be retained by the Debtors estates.

b.    All causes of action, including but not limited to fraudulent transfer causes of action shall be retained by the Debtors, provided however, that the Debtors will not bring fraudulent transfer actions to recover assets set forth on **Exhibit "A"**.

c.    The fraudulent transfer action filed by Hoth Holdings against Coastal Equity Partners, LLC et. al. on August 1, 2008. ("Hoth Adversary") (Hoth Adv Doc. No. 1) shall remain an asset of the Hoth bankruptcy estate, and any proceeds from the Hoth Adversary shall

11

remain property of the bankruptcy estate.   The USA agrees not to directly forfeit the property located at 3801 Carolina Ave, Richmond, Virginia, which is the subject of the Hoth Adversary.

      d.    The note payable to AEM from O2HR dated June 1, 2007 in the amount of $2,235,800.00 shall be an asset of the AEM bankruptcy estate.   The note payable to National Med-Staff, Inc. dated June 1, 2007 in the amount of $188,300.00 shall be an asset of the Mirabilis bankruptcy estate ("O2HR Notes").

      Any and all property of the Debtors' estates not specifically set forth herein shall remain property of the bankruptcy estates.  Likewise, any and all property set forth on **Exhibit "A"**, and not specifically set forth above, was forfeited to the USA.   In addition, and under the Compromise, the Debtors were required amend the schedules to include an unsecured forfeiture claim in the Mirabilis and AEM cases for USA in the amount of $200,000,000.00 ("Forfeiture Claim").   As a result of the Compromise, Mirabilis filed four (4) simultaneous adversary proceedings against Mirabilis' legal and financial advisors for the negligence in advising Mirabilis. (Doc. No. 107, Doc. No. 108, Doc. No. 112, Doc. No. 113).

      The Debtors have already begun to bring funds back into their estates for the benefit of its creditors.  North American Communications, Inc. ("NACI") filed its Petition for Chapter 7 liquidation in the Bankruptcy Court of Utah. *See In re North American Communications, Inc.*, Case No. 07-24900 (Doc. No. 1).  Mirabilis is the only equity interest holder in North American Communications, Inc.  Mirabilis anticipates that there will be a distribution to Mirabilis upon NACI's final liquidation within the next year.  Furthermore, Mirabilis has reached compromises with Floyd Road, LLC and Robi A. Roberts, *et al.* that

settles separate lawsuits that Mirabilis had against Floyd and Roberts.  (Doc. No. 172, 187).  As a result of the compromises, Debtors' estates will recover approximately One Hundred Twenty Five Thousand Dollars ($125,000.00) for its creditors.   In addition, Hoth filed a fraudulent transfer action against Coastal and other entities in order to set aside the fraudulent transfer of the Virginia Property.  The Debtors will continue to pursue causes of action against Mirabilis' legal and accounting professionals, as well as other causes of action, including but not limited to fraudulent transfer actions for the benefit of its creditors.

There is a still a motion to dismiss the Mirabilis and Hoth cases pending by virtue of the Forge Creditors jointed in the Dismissal Motion (Doc. No. 88).   In addition, two defendants in other adversary proceedings have jointed in the motion to dismiss.  The Debtors believe that the motions to dismiss were filed to gain advantages in the adversary litigation and that the motions will be denied.  A hearing is set on June 30, 2009 before the Court.

### III.    THE PLAN.

**THE FOLLOWING SUMMARY IS INTENDED ONLY TO PROVIDE AN OVERVIEW OF DEBTOR'S PLAN. ANY PARTY-IN-INTEREST CONSIDERING A VOTE ON THE PLAN SHOULD CAREFULLY READ THE PLAN IN ITS ENTIRETY BEFORE MAKING A DETERMINATION TO VOTE IN FAVOR OF OR AGAINST THE PLAN. THIS SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN.**

A.      <u>Overview</u>.

In summary, the Plan provides for the liquidation of all of the Debtors' assets and the cessation of its business. The Debtors' only assets are its cash on hand, its Causes of Action, and the Promissory Notes. The Allowed Priority Claims will be paid in full from the Liquidated Debtors from the proceeds from the Causes of Actions and Promissory Notes. The Allowed Unsecured Claims will receive their pro rata distribution of payments from the Liquidated Debtors after the Allowed Priority Claims have been paid in full. Equity Interests will be cancelled.

The Liquidating Agent will be responsible for the operations of the Liquidated Debtors for the benefit of the Allowed Priority Claims and Allowed Unsecured Claims. The Liquidating Agent will perform his duties in accordance with the provisions of the Plan.

B.      <u>Classification and Treatment of Claims</u>.

1.      <u>Priority Claims</u>

a.      <u>Administrative Expense Claims</u>.

Holders of all Allowed Administrative Expense Claims will be paid in full at Confirmation from cash on-hand or as agreed otherwise.

b.      <u>Priority Tax Claims</u>.

In full satisfaction of its Allowed Claims, Holders of Allowed Priority Tax Claims will be paid in full by the Liquidating Agent from the Liquidated Debtors. The Debtors believe Allowed Priority Tax Claims will be approximately $473,000.00, consisting of state revenue tax claims. Each holder of an Allowed Priority Tax Claims shall receive Cash

14

equal to the amount of such Allowed Claim on the Effective Date in accordance with §1129(a)(9)(C). In the event that there is insufficient Cash upon Effective Date to pay all Allowed Priority Tax Claims, any unpaid portion of such Allowed Priority Tax Claim will be payable in quarterly payments beginning on the later of three (3) months after the Effective Date or after the entry of any respective Final Order allowing such Claims and ending with a final quarterly payment on the last date which occurs before the fifth anniversary of the date of the Petition Date with interest accruing on all unpaid portions of such Allowed Claims at an annual rate equal to the Prime Rate plus two percent (2%).

2. <u>Class 1 – General Unsecured Claims</u>.

Class 1 is impaired. Class 1 consists of the Allowed Unsecured Claims of the General Unsecured Creditors. Holders of Allowed Class 1 Claims will receive pro rata payments on account of their Allowed Class 1 Claims from the Liquidated Debtors after the Allowed Priority Tax Claims have been paid in full. The proceeds of all Causes of Action and all proceeds from the Promissory Notes will be held in an account created by the Liquidated Debtors ("Liquidation Trust Account"). The Liquidating Agent shall make Payments in Cash to the holders of Allowed Class 1 Claims from the Liquidation Trust Account after all Allowed Priority Tax Claims have been paid in full, and at such times as the Liquidating Agent, in his able discretion, deems prudent.

3.    <u>Class 2 - All Equity Interests</u>.

Class 2 is impaired.  Class 2 consists of all equitable interests in the Debtors.  The Class is impaired under the Plan because on the Effective Date of the Plan all equity interests in the Debtors shall be cancelled.

C.    <u>Means of Implementation</u>.  As described in greater detail below, recoveries for creditors in this case will come from the income generated from the liquidation of the Debtors' assets owned (either directly or indirectly) on the Petition Date, the proceeds from litigation, the proceeds from settlements, and payments made on promissory notes currently held by the Debtors.  The most significant source of assets for creditors of the Debtors is likely to be the proceeds from litigation.  Although detailed information regarding such litigation cannot be disclosed in this Disclosure Statement or the Plan due to the negative impact such disclosure might have on the pending or contemplated litigation, it should be noted that the Proponents have previously filed suit against or have identified over a dozen potential defendants, some of which are large, successful corporations.  These litigations are projected to be contested, and recovery regarding the same remains uncertain.  It is difficult to provide an estimate of the timing or amount of such recoveries or the timing or amounts of distributions to Class 1 Claims.  Distribution to Class 1 Claims are speculative in nature and depend upon the success in litigation and the collection of notes receivable.

16

1.    <u>Parties Responsible for Recovering Extraordinary Income</u>.

The Plan provides for the creation of an entity, known as the Liquidating Agent, who is responsible for the recovery of Extraordinary Income for the benefit of Debtors' creditors with Allowed Claims.  The Liquidated Debtors will maintain the corporate existence of the Debtors for as long as such existence is beneficial to the recovery of Extraordinary Income and shall continue their efforts to collect Extraordinary Income until the Termination Date, as defined in the Plan.  The Liquidated Debtors shall be administered by a Liquidating Agent whose duties are outlined below.

a.    <u>Liquidating Agent</u>.

The Plan provides for the appointment of an agent (the "Liquidating Agent") to recover Extraordinary Income for the benefit of creditors with Allowed Claims.  The Liquidating Agent shall have the duties and responsibilities as set forth in the Plan and shall be retained, and may be terminated, as provided for in the Plan.

b.    <u>Timing</u>.   Upon the Effective Date, the position of Liquidating Agent shall be created.

c.    <u>Identity and Appointment</u>.  The initial Liquidating Agent shall be R.W. Cuthill, Jr., who shall cease being the President of the Debtors when he becomes the Liquidating Agent.  Subsequent Liquidating Agents, if any, shall be selected and appointed by the Court or as otherwise agreed.

d.    <u>Tenure</u>.  Any Liquidating Agent shall continue to serve in that capacity until the earlier of (1) his or her resignation, (2) his or her inability or failure to perform

17

the duties of Liquidating Agent for a period of thirty (30) consecutive days or more, (3) his or her death, (4) his or her removal by the Court, or (5) the Termination Date, as defined in the Plan.

    e. <u>Compensation</u>. As of the date of his or her appointment as Liquidating Agent pursuant to the Plan, any Liquidating Agent shall be entitled to compensation only as set forth in the Plan. This compensation structure can be summarized as follows:

    (1) <u>Base Hourly Rate</u>. The Liquidating Agent shall be entitled to a base hourly rate of compensation equal to his or her standard hourly rate of compensation for similar services, if such a rate exists, or $150 per hour, whichever is higher, for all hours actually worked. For his service as the initial Liquidating Agent, R.W. Cuthill, Jr. has agreed to reduce his standard hourly rate for professional services to four hundred dollars ($400.00) per hour. Such compensation shall only be payable after the Office of the United States Trustee and all Allowed Claim holders have received notice that compensation has been sought and have had at least twenty (20) days to object to the fees sought. In the event that any party objects to such fees being paid, the Liquidating Agent shall file a fee application with the Court and no payments shall be made until approved by the Court at a properly noticed hearing. The Liquidating Agent shall not seek payment more frequently than every month.

    (2) <u>Reimbursement of Costs</u>. The Liquidating Agent shall be entitled to reimbursement from the Liquidation Trust Account on a monthly basis of all reasonable out-of-pocket expenses incurred for the benefit of the Bankruptcy Estates. All requests for reimbursement shall be submitted to the Court. All requests submitted to the Court

18

shall be approved if no objection is received within ten (10) days.  Such requests shall be paid from the Liquidation Trust Account.  Any disputes regarding the reasonableness of such expenses shall be resolved by the Court.

(3)    Excess Recovery Payment.    In addition to the hourly compensation and the reimbursement of expenses provided for in the Plan, the Liquidating Agent shall be entitled to additional compensation based upon the amount of Extraordinary Income recovered by that Liquidating Agent after the Effective Date for the benefit of the Bankruptcy Estate (the "Excess Recovery Payments") calculated based upon the percentages set forth in Code § 326(a) as follows:

- 25% of the first $5,000 of Extraordinary Income recovered and distributed;

- 10% of Extraordinary Income recovered and distributed in excess of $5,000 but less than $50,000;

- 5% of Extraordinary Income recovered and distributed in excess of $50,000 but less than $1,000,000; and

- 3% of Extraordinary Income recovered and distributed in excess of $1,000,000.

All funds paid to any Liquidating Agent in connection with the Case, other than Excess Recovery Payments, through the date of distributing such an Excess Recovery Payment shall be deducted from any Excess Recovery Payments which such Liquidating Agent may be entitled to under the Plan.

f.    Duties.    The Liquidating Agent shall be responsible (1) for implementing all strategies for the recovery of Extraordinary Income and handling the day-to-

19

day management of any litigation or other activity commenced for that purpose including, without limitation, the negotiations of any settlements in connection with such litigation; (2) for retaining and paying such Professionals as may be required to implement such strategies, and reviewing any requests for payment or reimbursement of expenses to any Professionals; (3) for the orderly and efficient completion of the claims objection process; (4) for complying with all corporate responsibility and duties under applicable laws of Nevada and Florida; and (5) for providing the Court quarterly written litigation summaries and operating reports which shall set forth the status of all litigation.  A copy of a proposed post-confirmation Liquidating Agent's report is attached hereto as **Exhibit "C".**  Although the Liquidating Agent shall have authority to negotiate settlements for any litigation or other action pertaining to the recovery of Extraordinary Income, notice of such settlement shall be submitted to all creditors, the Office of the United States Trustee and the Court.  If no objection to the settlement is received by the Liquidating Agent within twenty (20) days from the date the Liquidating Agent provided notice to the creditors, then the settlement will be deemed accepted.  Any timely objection to such settlement will be resolved by the Court.

g.    Liquidation Trust Account.  The Liquidating Debtors shall open a Liquidation Trust Account.  The Liquidation Trust Account shall be maintained by the Liquidating Agent.  The Liquidating Agent shall deposit any and all Extraordinary Income, including all proceeds from Causes of Action and proceeds from payments on the Promissory Notes into the Liquidation Trust Account.  The Liquidating Agent shall make payments to the holders of all Allowed Priority Tax Claims until their Allowed Claims are paid in full.

Subsequently, the Allowed Class 1 Claim holders will receive their pro rata distribution from subsequent proceeds from the Extraordinary Income, including but not limited to proceeds from the Promissory Notes and Causes of Action.  The Liquidation Trust Account shall be closed on the Termination Date.

 D. <u>Other Provisions</u>.

  1. <u>Leases and Executory Contracts</u>

   To the extent the Debtors reject any executory contract or unexpired lease prior to the Confirmation Date, any party asserting a Claim pursuant to Section 365 of the Code arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease.  Allowed Claims resulting from rejection shall be Class 1 General Unsecured Claims, except as otherwise provided herein.  The Debtors shall have until the completion of the hearing on Confirmation to assume or reject any unexpired lease or executory contract.  In the event any such unexpired lease or executory contract is not assumed (or subject to a pending motion to assume) by such date, such unexpired lease or executory contract shall be deemed rejected as of the Confirmation Date.  The Plan also provides for the Bankruptcy Court to retain jurisdiction as to certain matters as stated in the Plan, including, without limitation, prosecution of all Causes of Action and objection to Claims.

  2. <u>Procedures For Resolving Disputed Claims</u>

   a. <u>Prosecution of Objections to Claims</u>

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, the Debtors shall have the exclusive right to make and file objections to all Claims. All objections commenced prior to Confirmation Date shall be finished by Liquidating Agent.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims and Equity Interests shall be Filed with the Court and served upon the Holders of each of the Claims and Equity Interests to which objections are made within 180 days after the Confirmation Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that, any Debtors have immediately prior to the commencement of the Chapter 11 Cases, against or with respect to any Claim or Equity Interest. Except as set forth in the Plan, upon Confirmation, the Debtors shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses that any Debtors had immediately prior to the commencement of the Chapter 11 Cases as if the Chapter 11 Cases had not been commenced.

b.      Estimation of Claims

Pursuant to the Plan, the Debtors may, at any time, request that the Bankruptcy Court estimate any contingent, disputed or unliquidated Claim pursuant to

Section 502(c) of the Bankruptcy Code regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, disputed or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

> c.    Cumulative Remedies

In accordance with the Plan, all of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.  Until such time as an Administrative Claim, Claim or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim or Disputed Equity Interest for purposes related to allocations, Distributions, and voting under the Plan.

> d.    Payments and Distributions on Disputed Claims

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid from the Reorganized Debtors' Cash and Assets, such

that the Holder of such Allowed Claim receives all payments and Distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question.  Except as otherwise provided in the Plan, no partial payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order.  Unless otherwise agreed by the Reorganized Debtors or as otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a Distribution until such dispute is resolved by settlement or Final Order.

   e.   <u>Allowance of Claims and Interests</u>

     (i).  Disallowance of Claims.

     According to the Plan, all Claims held by Entities against whom any Debtor has obtained a Final Order establishing liability for a cause of action under Sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that Entity have been settled or resolved by a Final Order and all sums due the related Debtor by that Entity are turned over to such Debtor.  Debtors reserve and shall have the exclusive right and authority to bring any Causes of Action.

     (ii). Allowance of Claims.

24

Except as expressly provided in the Plan, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Chapter 11 Cases, unless and until such Claim or Equity Interest is deemed Allowed under the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim or Equity Interest.

f.    Controversy Concerning Impairment.

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date.  If such controversy is not resolved prior to the Effective Date, the Debtors' interpretation of the Plan shall govern.

## IV.  **CONFIRMATION**

A.    Confirmation Hearing.

Section 1128 of the Code requires the Court, after notice, to hold a Confirmation Hearing on the Plan at which time any party in interest may be heard in support of or in opposition to Confirmation.  The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement to be made at the Confirmation Hearing.  Any objection to Confirmation must be made in writing and filed with the Clerk, and must be delivered to the following persons at least seven (7) days prior to Confirmation Hearing:

25

Counsel for the Debtors:

Elizabeth A. Green, Esquire
Latham, Shuker, Eden & Beaudine, LLP
390 N. Orange Avenue, Suite 600
Orlando, Florida 32801

Mirabilis Ventures, Inc.
Hoth Holdings, LLC
AEM, Inc.
c/o R.W. Cuthill, Jr.
341 N. Maitland Ave., Ste. 210
Maitland, FL 32751

United States Trustee:
135 West Central Blvd, Suite 620
Orlando, Florida 32801

B.    Financial Information Relevant to Confirmation.

Creditors of the Debtors will fair materially poorer in the event the Debtors are forced into Chapter 7 as compared to the Plan due to the additional layers of administrative expenses resulting from the administrative costs associated with a Chapter 7 case, and Debtors will not be able to continue to pursue the Causes of Action against various third parties, which the Debtors anticipate will make up the vast majority of the payments to its creditors.

C.    Confirmation Standards.

For a plan of reorganization to be confirmed, the Code requires, among other things, that a plan be proposed in good faith and that it comply with the applicable provisions of Chapter 11 of the Code.  Section 1129 of the Code also imposes requirements that at least one class of Impaired Claims accepts the plan, that confirmation of the plan is not likely to be followed by the need for further financial reorganization, that the plan be in the best interests of

26

creditors, and that the plan be fair and equitable with respect to each class of Claims or Interests which is Impaired under the plan.

The Bankruptcy Court shall confirm a plan only if it finds that all of the requirements enumerated in Section 1129 of the Code have been met. Debtors believe that the Plan satisfies all of the requirements for Confirmation.

1.   Best Interests Test.

Before a Plan may be confirmed, the Court must find (with certain exceptions) that the Plan provides, with respect to each impaired class of claims, that each holder of an Allowed Claim or Interest of such Class either (a) has accepted the Plan or (b) will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would have received or retained if the Debtors have liquidated under Chapter 7 of the Code on the Effective Date. Debtors believe that it has satisfied this test.

To determine what holders of Claims and Equity Interests would have received if Debtor liquidated, the Bankruptcy Court must determine how the assets and properties of Debtor would have been liquidated and distributed in the context of a Chapter 7 liquidation case.

Debtors' costs of liquidation under Chapter 7 would include the fees payable to a trustee in bankruptcy and the fees payable to attorneys, accountants, and other professionals engaged by such trustee. The costs would also include the fees payable for other unpaid expenses incurred by Debtors during the Bankruptcy Case. The additional costs and

27

expenses incurred by a trustee in a Chapter 7 liquidation could be substantial and, to the extent that such costs and expenses are incurred, would decrease the distribution that Unsecured Creditors and holders of Equity Interests would receive.  The foregoing types of Claims arising from Chapter 7 administration and such other Claims as may arise in Chapter 7 or result from the pending Bankruptcy Case would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay the Claims of Unsecured Creditors. Liquidation in Chapter 7 might also substantially delay the date at which Creditors would receive any Payment.

Debtor has carefully considered the potential effects of liquidation under Chapter 7 on the proceeds available for distribution to Creditors and holders of Equity Interests, including the following:

a.    the possible costs and expenses of the Chapter 7 trustee or trustees;

b.    the possible adverse effect on recoveries by Creditors under Chapter 7 due to failure to pursue the Causes of Action; and

c.    the possible substantial increase in Claims which would rank prior to or on a par with those of General Unsecured Creditors.

Because liquidation under Chapter 7 would not improve the distribution to any creditor, the Best Interests standard is met.

2. <u>Financial Feasibility</u>.

The Code requires, as a condition to Confirmation, that Confirmation of a plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of Debtor unless the liquidation is proposed in the Plan. Because the Plan proposes liquidation, this standard is satisfied. Nevertheless, the Plan is based on the Debtors ability to receive Extraordinary Income from the Causes of Action and Promissory Notes. Many of the Causes of Action, including but not limited to the action against Mirabilis' legal and accounting professionals are contested. Thus, it is unclear whether the Liquidating Agent will definitively recover under each cause of action, the time of recovery, and the cost and expense to recover the same. However, the Debtors believe that it is in the best interest of its creditors to pursue the Causes of Action that would potentially result in a large recovery to the Holders of Allowed Claims. As such, Debtors believe the Financial Feasibility Test is satisfied.

3. <u>Acceptance by Impaired Classes</u>.

The Code requires as a condition to Confirmation that each Class of Claims or Interests that is Impaired under the Plan accept such plan, aside from the exception described in the following section. A class of claims has accepted a plan if such plan has been accepted by creditors that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims of such class held by creditors that have accepted or rejected the plan.

A Class of Interests has accepted the Plan if such plan has been accepted by holders of such interests that hold at lead two-thirds (2/3) in amount of the allowed interests of such class held by holders of such interests that have accepted or rejected such plan.

A Class that is not Impaired under a Plan is deemed to have accepted such Plan; solicitation of acceptances with respect to such Classes is not required. A Class is Impaired unless (i) the legal, equitable and contractual rights to which the Claim or Interest entitles the holder of such Claim or Interest are not modified; (ii) with respect to Secured Claims, the effect of any default is cured and the original terms of the obligation are reinstated; or (iii) the Plan provides that on the Effective Date the holder of the Claim or Interest receives on account of such claim or interest, Cash equal to the Allowed Amount of such Claim or, with respect to any Interest, any fixed liquidation preference to which the holder is entitled.

    4.    <u>Confirmation without Acceptance by all<br>Impaired Classes; "Cramdown."</u>

The Code contains provisions that enable the Bankruptcy Court to confirm the Plan even though the Plan has not been accepted by all Impaired Classes, provided that the Plan has been accepted by at least one Impaired Class of Claims. Section 1129(b)(1) of the Code states:

> "Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."

30

This section makes clear that the Plan may be confirmed, notwithstanding the failure of an Impaired Class to accept the Plan, so long as the Plan does not discriminate unfairly and is fair and equitable with respect to each Class of Claims that is Impaired under, and has not accepted, the Plan.

**DEBTORS BELIEVE THAT, IF NECESSARY, IT WILL BE ABLE TO MEET THE STATUTORY STANDARDS SET FORTH IN THE CODE WITH RESPECT TO THE NONCONSENSUAL CONFIRMATION OF THE PLAN AND WILL SEEK SUCH RELIEF.**

D.      Consummation.

The Plan will be consummated and Payments will be made if the Plan is Confirmed pursuant to a Final Order of the Bankruptcy Court and the Effective Date occurs. It will not be necessary for the Debtors to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan. The Plan will be implemented pursuant to its provisions and the Code.

E.      Effects of Confirmation.

1.      Authority to Effectuate the Plan

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides that all matters provided for under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Debtor shall be authorized, without further application for an order of the Bankruptcy Court, to take whatever action is necessary to achieve consummation and carry out the Plan in accordance with this Plan and the Code.

2.    <u>Binding Effect of Confirmation</u>

Confirmation of the Plan will legally bind the Debtors, Creditors, Interest Holders, and other Parties in Interest to the provisions of the Plan whether or not the Claim or Interest Holder is impaired under the Plan and whether or not such Creditor or Interest Holder voted to accept the Plan.

## V.    **ALTERNATIVE TO THE PLAN**

If the Plan is not confirmed and consummated, the Debtors believe that the most likely alternative is a liquidation of the Debtors under Chapter 7 of the Code.  The Debtors believe that liquidation of its assets in a Chapter 7 scenario would substantially reduce the total amount available to Creditors.

## VI.    **CONCLUSION**

Debtors recommend that holders of Claims and Interests vote to accept the Plan.

**DATED** this 1st day of June 2009 in Orlando, Florida.

**MIRABILIS VENTURES, INC.**                    **COUNSEL FOR THE DEBTORS**

By: _____                 s/ Elizabeth A. Green
    R.W. Cuthill, Jr.                           Elizabeth A. Green, Esquire
    President                                   Florida Bar No. 0600547
                                          Justin M. Luna, Esquire
                                          Florida Bar No. 0037131
                                          **LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
                                          390 N. Orange Ave., Suite 600
                                          Orlando, Florida 32801
                                          Telephone:  (407) 481-5800
                                          Attorneys for the Debtors

**HOTH HOLDINGS, LLC**

By: _____
    R.W. Cuthill, Jr.
    President of Mirabilis Ventures,
    Inc., Managing Member

**AEM , INC.**

By: _____
    R.W. Cuthill, Jr.
    President

## Government Asset List

The properties subject to forfeiture in the pending criminal and/or civil forfeiture cases are:

(a)    614 Lake Avenue, Orlando, FL;

(b)    709 Euclid Avenue, Orlando, FL;

(c)    1159 Delaney Avenue, Orlando, FL;

(d)    Proceeds from the sale of 509 Riverfront Parkway, Chattanooga, TN – Mirabilis Equity interest and unsecured claims of Mirabilis and its affiliates;

(e)    4905 Research Drive, Huntsville, AL;

(f)    102 West Whiting Street, Tampa, Florida;

(g)    2006 BMW 750Li, VIN #WBAHN8353GDT30059;

(h)    2006 Black Harley Davidson, VIN #1HD1BWB156Y077592;

(i)    2006 Mercedes Benz CLS 500C Coupe, VIN #WDDDJ75X46A032858;

(j)    2006 Mercedes Benz CLS 55AMG, VIN # WDDDJ76X66A055945;

(k)    Gates Learjet Model 25D Aircraft No. 4488W;

(l)    $253,487.45.00 in proceeds seized from the Trust Account of the law firm of Balch Bingham LLP;

(m)    $101,393.86 in proceeds seized from the Trust Account of the law firm of Shutts & Bowen;

(n)    $42,419.72 in proceeds seized from the Trust Account of the law firm of Mateer and Harbert;

(o)    $100,000.00 in proceeds seized from the Trust Account of the law firm of Maher, Guily, Maher PA;

(p)    $105,922.96 in proceeds seized from the Trust Account of the law firm of Martin, Pringle, Oliver, Wallace, & Baur LLP;

(q)    $50,000 In proceeds seized from the Trust Account of the law firm of Bieser, Greer & Landis LLP;

(r)    $8,518.30 in proceeds seized from the Trust Account of the law firm of Allen, Dyer, Doppelt, Milbrath & Gilchrist PA;

(s)    $25,000 in proceeds seized from the Trust Account of the law firm of Valenti, Hanley & Robinson PLLC;

(t)    $10,000 in proceeds seized from the Trust Account of the law firm of Brown, Stone, & Nimeroff LLC;

(u)     $21,900 in proceeds seized from the Trust Account of the law firm of Hunt Rudd PA;

(v)     $41,029.54 in proceeds seized from the Trust Account of the law firm of Ford & Harrison PA;

(w)     $12,528.51 in proceeds seized from the Trust Account of the law firm of Broad & Cassel;

(x)     $20,754.19 in proceeds seized from the Trust Account of the law firm of Latham, Shuker, Barker, Eden, & Beaudine LLC;

(y)     $13,100.99 in proceeds seized from Fifth Third Bank Account No. 7440599020 in the Name of Soone Business Development;

(z)     $37,629.16 in proceeds seized from the trust account of the law firm of Charles W. McBurney, Jr.;

(aa)    A promissory note in the amount of $3,500,000.00 dated on or about May 7, 2007 between Wellington Capital and Worker's Temporary Staffing, Inc., including payments of $63,000.00 per month;

(bb)    All payments due under the promissory note in the amount of $5,500,000.00 dated May 27, 2007 between Mirabilis Ventures, Inc. and Conrad D. Eigenmann, Jr. after the January 2009 payment;

(cc)    The assets of the following corporations, including but not limited to the below listed lawsuits and/or settlements:

Anthony T. Sullivan v. AQMI Strategy (07-CA-0015981-0);
Michael Mapes, et al. v. Wellington Capital Group, Inc.(8:07cv77);
Dutko Global Advisors LLC v. AQMI Strategy Corporation (48-2007-CA-018164-0);
Providence Property & Casualty Insurance Co, et al. v. Paradyme, Inc., d/b/a Presidion Solutions VI (4:07-CV-202)
Presidion Corporation v. Arrow Creek, Inc., et al. (50-2006-CA-0014170)

Corporations:

AQMI Strategy Corporation,
Nexia Strategy Corporation,
Presidion Solutions, Inc.,
Professional Benefit Solutions, Inc.,
    d/b/a Presidion Solutions VII, Inc.
Quantum Delta Enterprises, Inc.,
        d/b/a Siren Resources, Inc.,
            Titanium Technologies, Inc.,
            f/k/a Titanium Consulting Services, Inc.,
        Tenshi Leasing, Inc.
        Wellington Capital Group, Inc.

F:\CME\CF\SCANNED PDF DOCUMENT S\JUDICIAL ASSISTANT\JUDGE JENNEMANN'S JA\MIRABILIS\08-BK-4327-KSJ-ORDER_APPROVING_COMPROMISE_OF_CONTROVERSY-IPVASYP2WJ.DOC

4

## Debtor's Asset List

The properties subject to forfeiture in the pending criminal and/or civil forfeiture cases are:

(a)     3801 Carolina Avenue, Richmond, VA;

(b)     The funds, if any, generated by the fraudulent transfer lawsuit from the sale of 509 Riverfront Parkway, Chattanooga, TN;

(c)     January 2009 payment due under a promissory note in the amount of $5,500,000.00 dated on or about May 27, 2007 between Mirabilis Ventures, Inc. and Conrad D. Eigenmann, Jr.;

(d)     The assets of the following corporations, including but not limited to the below listed lawsuits and/or settlements:

Corporations:

AEM, Inc., d/b/a Mirabilis HR,
Hoth Holdings, LLC,
Mirabilis Ventures, Inc.,

Lawsuits:

| Style of case | Location | Case No. |
|---|---|---|
| Mirabilis Ventures, Inc. v. Jeffrey Reichel | Broward County, Florida | CACE 07011827 |
| Mirabilis Ventures, Inc, and Nexia Strategy Corp. v. Palaxar Group, LLC, et al. | Orange County, Florida | 07-co-13191 (37) |
| Mirabilis Ventures, Inc. v. Forge Capital Partners, LLC, et al. | Orange County, Florida | 07-CA-13828 (33) |
| Mirabilis Ventures, Inc. v. J.C. Services, Inc., et al. | U.S.D.C., M.D. Fl. | 6:06-cv-1957-Orl-22KRS |
| AEM, Inc. d/b/a Mirabilis HR v. Sheryl Okken, Progressive Employer Services, LLC, et al. | Brevard County, Florida | 05-2007-CA-006526 |

| Style of case | Location | Case No. |
|---|---|---|
| RKT Constructors, Inc. v. Del Kelley and Robi Roberts | Orange County, Florida | 2007-CA-012599-0 |
| Mirabilis Ventures, Inc. v. Stratis Authority, Inc., et al. | Orange County, Florida | 07-ca-13826 (37) |
| Mirabilis Ventures, Inc. v. Premier Servicing, LLC and Robert Konicki | Orange County, Florida | 07-ca-33197 (34) |
| Mirabilis Ventures, Inc. v. Robert Lowder, et al. | Orange County, Florida | 2006-CA-005742-0 |
| Kenneth Hendricks, et al. v. Mirabilis Ventures, Inc., et al. (Counterclaim) | U.S.D.C., M.D.Fl. | 8:07-cv-661-T17EAJ |
| Kenneth Hendricks, et al. v. Mirabilis Ventures, Inc., et al. (Counterclaim) | Hillsborough County, Florida | DC-07-014201J |
| Berman, Kean & Riguera, P.A. v. Mirabilis Ventures, Inc., et al. (Counterclaim) | Broward County, Florida | 07-024968 (21) |
| Paysource, Inc. And Robert Sacco v. Mirabilis Ventures, Amodeo, et al. (Counterclaim) | U.S.D.C., S.D. Ohio | 3:07cv0129 |
| Prime Acquisition Group, LLC v. Ionic Services, Inc., et al. (Counterclaim) | Palm Beach County, Florida | 502007CA02242 |
| Briarcliff Village, LLC v. Mirabilis Ventures, Inc. | Clay County, Missouri | 07CY-CV09414 |
| William Gregory v. Floyd Road v. Mirabilis Ventures, Inc. (Counterclaim) | Hillsborough County, Florida | 07-CA-010780 |
| Coastal Equity Partners, LLC v. Pacific Atlantic Capital Corp., et al. (Counterclaim) | Henrico County, Virginia | CL07-1960 |

F:\CM\ECF\SCANNED PDF DOCUMENTS\JUDICIAL ASSISTANTS\JUDGE JENNEMANN'S JA\MIRABILIS\08-BK-4327-KSJ-ORDER_APPROVING_COMPROMISE_OF_CONTROVERSY-IPVASYP2WJ.DOC

6

| Style of case | Location | Case No. |
|---|---|---|
| Liberty Property Limited Partnership v. Mirabilis Ventures, Inc., et al. (Counterclaim, settled) | Duval County, Florida | 162007CA003642 |
| Tranmere Rovers Football Club v. Mirabilis Ventures, Inc. (Counterclaim, settled) | Liverpool, England | 7LV30022 |
| Mark Lang v. Mirabilis Ventures, Inc. (Counterclaim, settled) | Orange County, Florida | 48-2007-CA-002929-0 |
| David Chaviers, Norman Chaviers, Kellie Ledbetter and Tom Hancock v. Mirabilis Ventures, Inc. And Frank Amodeo, et al. (Counterclaim, settled) | U.S.D.C., N.D. Ala. | CV-07-0442-cls |
| Carlton Fields v. Mirabilis Ventures, Inc. (Counterclaim, settled) | Hillsborough County, Florida | 07-CC-038145 |
| Brevard County v. RKT Constructors, Inc. (Counterclaim, settled) | Brevard County, Florida | 05-2007-CA-12251 |
| Bellsouth v. RKT Constructors, Inc., et al. (Counterclaim, settled) | Orange County, Florida | 05-2007-CA-9660-0 |
| Capital Office Products of Volusia County, Inc., v. Mirabilis Ventures, Inc. (Counterclaim, settled) | Volusia County, Florida | 2007-34950 COCI |
| CDW Corporation, Inc. v. Information Systems, Inc. (Counterclaim, settled) | Cook County, Illinois | 2007-L-002446 |
| RKT Constructors, Inc. v. Florida Department of Transportation (Settled) | Broward County, Florida | 05-2003-CA-047397 |

F:\CMECF\SCANNED PDF DOCUMENTS\JUDICIAL ASSISTANTS\JUDGE JENNEMANN'S JA\MIRABILIS 6-08-BK-4327-KSJ-ORDER_APPROVING_COMPROMISE_OF_CONTROVERSY-IPVASYP2WJ.DOC

7

| Style of case | Location | Case No. |
|---|---|---|
| RKT Constructors, Inc. v. Florida Department of Transportation (Settled) | Broward County, Florida | 05-2006-CA-060518 |

  (e) Any and all property of the following bankruptcy estates, including funds which now constitute or have constituted funds of the estate:

| Style of case | Location | Case No. |
|---|---|---|
| Sam Hopkins, Trustee v. Todd Pattison and Mirabilis Ventures, Inc. | U. S. Bankruptcy Court, D. Idaho | 08-08005-JDP |
| In Re: Mirabilis Ventures, Inc. | U. S. Bankruptcy Court, M.D. Fl. | 6:08-bk-04327-KSJ |
| In Re: Hoth Holdings, LLC | U. S. Bankruptcy Court, M.D. Fl. | 6:08-bk-04328-KSJ |
| In Re: AEM, Inc. | U. S. Bankruptcy Court, M.D. Fl. | 6:08-bk-04681 |
| In Re: North American Communications | U. S. Bankruptcy Court, D. Utah | 2:07-bk-24900 |

F:\CMECF\SCANNED PDF DOCUMENTS\JUDICIAL ASSISTANTS\JUDGE JENNEMANN'S JA\MIRABILIS\08-BK-4327-KSJ-ORDER_APPROVING_COMPROMISE_OF_CONTROVERSY-IPVASYP2WJ.DOC

8

EXHIBIT C

Case 6:08-bk-04327-KSJ    Doc 192    Filed 06/01/09    Page 40 of 43

# LIQUIDATING AGENT'S REPORT FOR MIRABILIS VENTURES, INC., AEM, INC., AND HOTH HOLDINGS, LLC

## CASH RECEIPTS AND DISBURSEMENTS

### DATE

| | CUMULATIVE | QUARTER ENDED |
|---|---|---|
| **RECEIPTS:** | | |
| Beginning cash recovered | $  - | $  - |
| Interest income | - | - |
| Collection of notes receivable | - | - |
| Reimbursement of legal expense | - | - |
| Reimbursement of other expense | - | - |
| Sale of Property | - | - |
| Lawsuit settlement income | - | - |
| TOTAL | - | - |
| | | |
| **DISBURSEMENTS:** | | |
| US Trustee quarterly fees | - | - |
| Taxes | - | - |
| Office expenses | - | - |
| Other expenses | - | - |
| Bank Service charges | - | - |
| Distributions to creditors | - | - |
| Distributions to creditors held in escrow | - | - |
| President's salary & expenses | - | - |
| Professional fees | - | - |
| Lawsuit settlement expenses | - | - |
| Warehouse expense | - | - |
| | | |
| RECEIPS IN EXCESS OF DISBURSEMENTS | $  - | $  - |

EXHIBIT "C"

**MIRABILIS VENTURES, INC.**
**AEM, INC.**
**HOTH HOLDINGS, INC.**
**STATUS OF ASSETS**

| DESCRIPTION OF ASSET | CURRENT VALUE | CURRENT OWNERSHIP | DATE WHEN RECOVERY | RECOVERY COST | TIME MEANS DISPOSITION |
|---|---|---|---|---|---|
| Cash in bank | | | | | |
| Lawsuit settlement receivables | | | | | |
| Notes Receivable | | | | | |

EXHIBIT "C"

**MIRABILIS VENTURES, INC.**
**AEM, INC.**
**HOTH HOLDINGS, LLC**
**STATUS OF LITIGATION**
**DATE**

| NAME OF PENDING SUIT | CASE NO. | DEFENDANTS | LEGAL THEORIES | RESOURCES REQUIRED | EST DATE COMPLETE | MILESTONES |
|---|---|---|---|---|---|---|
| | | | | | | |

FOOTNOTES:
1. Fraudulent transfer
2. Negligence
3. Negligent misrepresentation
4. Malpractice
5. Fraud
6. Overseas counsel
7. Experts
8. Travel

EXHIBIT "C"

MIRABILIS VENTURES, INC.
AEM, INC.
HOTH HOLDINGS, LLC
STATUS OF SETTLEMENTS
DATE

| DEFENDANT | DEFENDANT'S CONSIDERATION | DEBTORS' CONSIDERATION | WHEN COMPLETE | MATERIAL TERMS |
|---|---|---|---|---|