# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### Orlando Division

IN RE:

MIRABILIS VENTURES, INC.

Debtor.

_____/

CASE NO. 6:08-bk-04327-KSJ
CHAPTER 11

## RACHLIN COHEN & HOLTZ LLP, LAURIE S. HOLTZ AND JOSE I. MARRERO'S MEMORANDUM ON THE LEGAL STANDARDS AND EVIDENCE GOVERNING STANDING AND BAD FAITH FOR THE JUNE 30, 2009 HEARING

Rachlin Cohen & Holtz LLP, Laurie S. Holtz and Jose I. Marrero (collectively "Rachlin Defendants"), file this Hearing Memorandum in advance of the June 30, 2009 hearing on the Rachlin Defendants' Partial Joinder in Forge and Affiliated Creditors' Motion to Dismiss Mirabilis Ventures, Inc.'s Chapter 11 Filing ("Motion to Dismiss"). This Memorandum addresses the applicable legal standards and evidence related to the issues of standing and bad faith that will be addressed at the hearing.

### I. Introduction

The matters to be determined and the conclusions that need to be reached in connection with the Motion to Dismiss are straightforward. The ultimate determination that must be made is whether the Bankruptcy Petition was filed by Mirabilis in good faith. Counsel for Mirabilis has raised a preliminary issue with respect to the adversary defendants who have joined in the motion to dismiss, and therefore, a determination must be made whether the Rachlin Defendants (and other adversary defendants) are parties in interest to the Motion to Dismiss.

1

The Rachlin Defendants are parties in interest and have standing because they have a practical stake in the outcome of the proceeding to dismiss the Chapter 11 filing. The standing concept in this case is very simple – if the case should not be in bankruptcy, there should not be an adversary proceeding against the Rachlin Defendants. Any adversary defendant has an interest in addressing whether or not the bankruptcy proceeding was properly filed because without a lawful bankruptcy proceeding, the adversary proceeding cannot continue.[1]

The next step is to determine whether the Petition for Bankruptcy was *filed* in good faith. We expect that counsel for Mirabilis will attempt to shift the Court's focus from the time of the filing of the Petition to the current state of the bankruptcy proceeding. Mirabilis will contend that it has now, finally, filed a plan – not of reorganization, but of liquidation. Counsel will contend that it should be permitted to bring claims against professionals in order to fund the proposed liquidation plan.

But as we show below, the only proper focus is whether the Petition was filed in good faith at the time of filing (May 27, 2008), and therefore, only the facts and circumstances existing at the time of filing should be analyzed. It is inappropriate to consider the current status of the bankruptcy proceeding in an effort to save a Petition that was filed in bad faith. Even if a legitimate plan of reorganization could be presented to the Court at this time, binding Eleventh Circuit case law mandates the dismissal of this proceeding if the Court finds that it was not filed for a proper purpose under the Bankruptcy Code. As the record shows, this Chapter 11

---

[1] While we expect that counsel for Mirabilis will seek to bifuracate the standing issue from the bad faith issue, the Rachlin Defendants respectfully request the right to be heard on both issues. Undersigned counsel is very familiar with the record that supports the Motion to Dismiss and the interests of justice will be served by the Court hearing this argument presented by counsel who has developed it. As shown below, the bad faith standard prevents the Court from fraud and abuse. Thus, the Court should entertain argument from any officer of the Court who can present material points in support of, or opposition to, the Motion.

Tew Cardenas LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

proceeding was filed for the improper purposes of blocking a foreclosure proceeding and assisting a defendant in a criminal case – not to reorganize a legitimate business. The Petition was filed in violation of the Bankruptcy Code and must be dismissed.

## II.     Relevant Facts

Mirabilis and its principal, Frank Amodeo, were both indicted (and Amodeo convicted and sentenced to 22½ years in prison) for multiple counts of federal tax law violations. The record in this case establishes that at the time the Petition was filed, Mirabilis was not conducting business, did not have employees, and was not generating income from operations. There was no business to reorganize when the Petition was filed. The evidence also confirms that the purpose of the filing of the Petition was to use the bankruptcy case to stall a foreclosure proceeding and to continue civil litigation, which if settled or won, could provide funds for Amodeo to pay the Internal Revenue Service ("IRS") some of the $181 million that he owed for his tax evasion. Amodeo's hope was that a payment to the IRS would persuade the District Court judge to be more lenient at the time of sentencing. The evidence shows that the scheme to file this Chapter 11 was orchestrated by Frank Amodeo and set in motion by counsel for Mirabilis.

### A.     The Record Evidence Should be Considered by this Court

The evidence in support of the Motion consists of Amodeo's own admissions in proceedings in the District Court related to his sentencing. During Amodeo's sentencing hearing held on May 12, 13, 14 and 16, 2009, Amodeo made admissions that go to the heart of Mirabilis' bad faith in filing this Petition. The evidence also consists of affidavits from persons who were witnesses to the discussions regarding why the Petition was filed. The Court will see that

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

Amodeo's admissions and the three affidavits provide corroborating evidence that the Petition was filed in bad faith.

The Rachlin Defendants are submitting, as Exhibits to this Memorandum, the relevant portions of the transcript of Amodeo's sentencing hearing in U.S. v. Amodeo, Case No. 6:08-cr-00176-JA-GJK-1, M.D. Fla., before the U.S. District Judge Antoon ("Transcript") ("Exhibit 1")[2] and three affidavits that were previously submitted by the U.S. government to this Court in support of a motion to dismiss this proceeding ("Exhibits 2, 3 and 4"). At the hearing before this Court on May 20, 2009, the Court suggested that counsel stipulate to documentary evidence that would be proposed at the June 30 hearing. On June 12, 2009, undersigned counsel proposed a stipulation of authenticity and non-hearsay as to the transcripts of Amodeo's criminal proceeding and the affidavits. On June 24, 2009, counsel for Mirabilis rejected the proposed stipulation on the grounds that the documents constitute inadmissible hearsay and are otherwise inadmissible. Because counsel refused to enter the stipulation, the Rachlin Defendants formally move for the admission into evidence of the relevant portions of the transcript from Amodeo's sentencing hearing and the three affidavits.

The Court must address two issues with respect to the admissibility of the transcript: whether it is authentic and whether it constitutes inadmissible hearsay. Both questions are easily resolved. F.R.E. 901 sets forth the requirement for authentication.[3] Rule 901(b)(4) provides that public records are authentic. The transcript is a public record from Amodeo's criminal proceeding. Further, Rule 901(b)(10) looks to other rules to permit authentication. F.R.E. 201

---

[2] The complete transcript of Amodeo's sentencing hearing was provided to counsel for Mirabilis on June 12, 2009. The complete transcript was not attached in its entirety to this Memorandum due to its extensive length, but can be provided to the Court upon request.

[3] Federal Rule of Bankruptcy Procedure 9017 implements the Federal Rules of Evidence for bankruptcy proceedings.

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

requires judicial notice of adjudicative facts. The Rachlin Defendants have provided the Court with the record from the Amodeo criminal proceedings and Rule 201(d) requires the Court to take notice of those records. Under both provisions of F.R.E. 901, this Court should find that Exhibit 1 is authentic.

With respect to hearsay, F.R.E. 804(b)(3) provides that statements against an individual's interest are not hearsay. The statements set forth in Amodeo's sentencing hearing were against his interest and are therefore admissible. Thus, the Transcript is not hearsay.[4]

The Affidavits of Jodi Jaiman, Jay Stollenwerk, and Steven McCabe were attached as Exhibits A, B and C to the Partial Joinder and are resubmitted with this Memorandum for the convenience of the Court. Counsel for Mirabilis contends that those affidavits constitute inadmissible hearsay. However, it was counsel for Mirabilis who opposed the Rachlin Defendants' request for an evidentiary hearing. Transcript of May 20, 2009 Hearing, p. 22, lines 16-17 ("It is improper to have a full blown evidentiary hearing."). Counsel cannot succeed in achieving a ruling that prevents the presentation of testimony in support of this Motion and then object that the proposed affidavits constitute hearsay. Counsel knew full well that the Rachlin Defendants would seek to use those affidavits prior to the May 20, 2009 hearing. The Court cannot close its eyes to this probative evidence especially when the substance of the affidavits goes to the heart of the actions that led to the filing of the Petition by counsel.

The affidavits directly implicate Mirabilis' counsel in the action that constitutes the bad faith filing of the Petition. If counsel wishes to deny her attendance at the meetings identified in

---

[4] Counsel for Mirabilis may contend that the Court is required to bring Amodeo before it to testify to avoid the hearsay prohibition – and the Court has within its power the authority to seek the issuance of a Writ of Habeas Corpus Ad Testificandum to compel Amodeo's transfer to this Court from the Orange County jail. However, the Court, at the May 20, 2009 hearing, stated that the Court did not intend to hear testimony at the June 30 hearing. Based on that instruction, Amodeo is unavailable and F.R.E 804(b)(3) supports the admissibility of his statements.

5

the affidavits, she should do so. If counsel wishes to deny the statements attributed to her at those meetings, as well as the statements attributed to her by Amodeo, she should do so. And if counsel so denies the material assertions in the affidavits and by Amodeo, the Court can examine the substance of the conflicting statements in determining whether the Petition was filed in bad faith.[5]

The Court will find remarkable credibility in the affidavits based upon the very specific statements made related to the strategy for the filing of the Petition designed by counsel for Mirabilis. Both the Jaiman Affidavit and Stollenwerk Affidavit discuss the "Church Street case" that counsel for Mirabilis referred to in the meetings to coordinate this Chapter 11 filing. See Exhibit 2 at ¶ 11; Exhibit 3 at ¶ 10. The Church Street case refers to another Chapter 11 proceeding filed by Mirabilis' counsel. (In re F.F. Station, LLC, Bankruptcy Petition No.: 6:07-bk-00575-ABB, M.D. Fla. 2007) ("Church Street case"). In the Church Street case, counsel devised a plan that avoided the appointment of a trustee and allowed her to represent the debtor-in-possession – the same suggestion she made in this Chapter 11 proceeding. The principal of F.F. Station, Louis Pearlman, stole $300 million from banks and investors, absconded to Bali, and was eventually extradited back to the United States. Upon Pearlman's return, counsel devised a plan to avoid the appointment of a trustee by replacing the board with a non-lawyer friend of her firm.

---

[5] To challenge these affidavits, or Amodeo's sworn statements, counsel must present evidence and not unsworn statements. On two occasions before this Court, counsel for Mirabilis has made unsworn statements in an effort to separate herself from this bad faith filing. See Transcript of Feb. 19, 2009 Hearing, p. 19, lines 16-14 ("So, I do want to correct that I was not employed by Mr. Amodeo."); see also Transcript of May 20, 2009 Hearing, p. 22, lines 20-24 ("There was never a meeting between myself and Mr. Amodeo...I did not meet with Mr. Amodeo...I didn't meet with him and I want to put that on the record."). Counsel's arguments are not evidence. Exeter Corp., Inc. v. Kemper Securities Group, Inc., 58 F.3d 1306, 1312 (8th Cir. 1995) ("'[S]tatements of counsel are not evidence' and do not create issues of fact.") (citing to U.S. v. Fetlow, 21 F.3d 243, 248 (8th Cir. 1994)).

.6

This is exactly the same plan that counsel set into motion in this case with the appointment of Cuthill. The veracity of the affidavits is supported by the reference to counsel's strategy in the Church Street case. The affiants did not create the strategy of the Church Street case out of thin air. It was a strategy conceived by the same counsel in both cases – a strategy three lay persons would have no way of knowing. The veracity of these affidavits is further supported by Amodeo's testimony. As described in more detail below, Amodeo testified that counsel for Mirabilis came up "with an idea that her firm used under the new Chapter 11 law." Transcript, p. 82, lines 6-7. That idea was the strategy from the Church Street case.

Additionally, the manner in which the affidavits were procured and presented to the Court adds to their veracity. The affidavits were procured by a federal prosecutor, and affiant McCabe was one of the IRS special agents assigned to the criminal investigation of Amodeo and Mirabilis. The other two affiants were a former president and director of Mirabilis. Counsel for the Rachlin Defendants was not involved in the procuring of these affidavits, and there is no relationship between the three affiants and the Rachlin Defendants that would undermine the credibility of their sworn statements. The independent manner in which these affidavits were obtained by a federal prosecutor adds further trustworthiness to the statements. Therefore, pursuant to F.R.E. 807, these affidavits do not constitute hearsay because the content of the statements have guaranties of trustworthiness that are the equivalent of the exceptions set forth in Rules 803 and 804.[6]

---

[6] Once this Court determines that the affidavits are admissible pursuant to F.R.E. 807, the underlying statements attributed to Mirabilis' counsel clearly do not constitute hearsay statements because they were the statements of Mirabilis' agent, admissible pursuant to F.R.E. 801(d)(2).

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

**B.  What the Record Evidence Shows**

The record evidence establishes the bad faith purpose for the filing of the Petition. The Petition was filed to accomplish two improper objectives: to block a foreclosure proceeding and to assist Amodeo in his criminal case. And, the proceeding was not commenced to reorganize an ongoing, legitimate business. During Amodeo's sworn testimony on May 13, 2009, Amodeo directly stated the reasons why Petition was filed and that he discussed these motivations with Mirabilis' counsel:

> Q:   In fact, wasn't the reason for the bankruptcy or one of the discussions that you had is this was for the benefit of the United States - - well, benefit of Frank Amodeo so if there was a sentencing that down the road you'd be able to say we've got this money?
>
> A:   Absolutely.
>
> Q:   That was the real purpose of the bankruptcy?
>
> A:   No. I mean that, yes. The purpose of the bankruptcy was to get the money so it would help me get it collected, but the bankruptcy proceeding was filed to prevent the foreclosure. Had there been no foreclosure, there would have been no bankruptcy.
>
> Q:   It's clear that you discussed this with Mrs. Green?
>
> A:   I did.

Transcript, p. 182, lines 6-21.

By May of 2007, Mirabilis had stopped operating and there was no business being conducted. Transcript, p. 79, lines 9-24 (stating that "Mirabilis had lost any semblance of control in that all of the officers and directors were gone by then" and that Amodeo was winding up Mirabilis); see also Jaiman Affidavit, pp. 2 and 4, ¶¶ 7 and 13 (stating that Mirabilis had no employees when the bankruptcy was filed and almost all of the creditors were paid prior to the

8

institution of the bankruptcy proceedings); <u>see also</u> Stollenwerk Affidavit, pp. 2 and 4, ¶¶ 6 and 12 (same).

Amodeo further testified that initially he believed that "it would be bad for a receiver to be appointed or bad for a Chapter 11 to be filed." Transcript, p. 70, lines 20-23. Therefore, Amodeo initially undertook the winding up of Mirabilis' affairs. However, when the U.S. government seized assets of Mirabilis pursuant to its forfeiture powers, and when Mirabilis did not have funds to hire counsel to pursue lawsuits, the strategy changed and the Mirabilis Petition was filed in an effort to use this Court's process to pursue the lawsuits for the benefit of the criminal defendant.

While winding up the affairs of Mirabilis, Amodeo's primary goal was to recover as much money as possible through multiple civil lawsuits he filed and use that money to pay back the IRS. Transcript, p. 85, lines 7-10; Stollenwerk Affidavit, p. 2, ¶5. Amodeo believed that the more money recovered, the less jail time he would face. Transcript, p. 88, lines 19-21 ("I believed, as part of this, that the money I collected would actually reduce the time, just straight out time reduction on money.").

These lawsuits were being funded by a settlement with Sunz Insurance negotiated by Amodeo. Transcript, p. 83, lines 14-17. However, in March of 2008, seizure orders related to the Sunz Insurance settlement funds were issued by the U.S. government and there were no longer funds to pursue the civil litigation. Transcript, p. 82, lines 1-16. This also meant Amodeo could no longer pursue the recovery of funds to help his criminal case. So a plan was devised to put Mirabilis in bankruptcy so that a stay would be issued and the litigation could continue. Transcript, p. 87, lines 5-14 ("The Bankruptcy was a consequence of the seizure...[b]ecause the lawsuits were going to be defaulted on if the stay wasn't put in place since the attorneys were

9

resigning."). Counsel for Mirabilis suggested this plan to Amodeo (the same plan employed in the Church Street Station case). Transcript, p. 82, lines 6-13 (stating that counsel for Mirabilis came up with an idea she had used in another case that would allow the officers and directors of Mirabilis to resign since they were not getting paid and the winding up of Mirabilis would be completed in the bankruptcy proceeding). Amodeo testified as follows:

> Q:    So that's clear, you had a meeting with Miss Green and you decided that strategy?
> A:    Yes. Let me make this clear.  I talked on the phone, I didn't meet with her.

Transcript, p. 181, lines 21-24.

At the time of filing, Amodeo was faced with an inability to fund his litigation, and in addition Mirabilis was on the eve of having a foreclosure entered against one of its assets. As Amodeo explained:

> Only critical part about it was there was an asset, a real estate asset which was about to be foreclosed upon, and because we couldn't pay them, the attorney that was representing us had withdrawn.  So we filed a bankruptcy to get somebody appointed and the Court to oversee the rest of the liquidation.

Transcript, at page 82, lines 13-18.  Amodeo's admissions provide indisputable record evidence of the improper purposes for the filing of the bankruptcy Petition.  There was never a realistic possibility to reorganize Mirabilis, when it was on the verge of criminal indictment from the U.S. government.  Amodeo intended the bankruptcy to be used to stop the foreclosure proceeding and in an effort to fund litigation to benefit himself at his criminal sentencing.  Both purposes for the filing of the bankruptcy violated the good faith principle of the Bankruptcy Code.

Amodeo's plan to file a bankruptcy proceeding to help his criminal case, and counsel's acquiescence in his plan, are confirmed by the Affidavits. At a meeting on May 14, 2008 at the

10

Office of the United States Trustee, "[d]ebtor's counsel explained that they had been hired by Frank L. Amodeo." McCabe Affidavit, p. 1, ¶ 3. "At that time, debtor's counsel stated that the sole reason for the filing of the bankruptcy in the instant case and related cases was to use the bankruptcy to continue civil litigation which, if settled or won, would provide funds for Frank Amodeo to pay the Internal Revenue Service some of the payroll taxes he owed the IRS." McCabe Affidavit, p. 1-2, ¶ 3. Counsel "believed that filing bankruptcy was the best way to save the litigation." Jaiman Affidavit, p. 2, ¶ 10. "It was represented that the logic behind paying the IRS with the bankruptcy assets was to allow Amodeo to present this information to the sentencing judge in a potential criminal case against Amodeo, hopefully so that he could receive a more lenient sentence." McCabe Affidavit, p. 2, ¶ 3.

The evidence before the Court establishes that blocking a foreclosure proceeding and helping Amodeo's criminal case were the reasons for the Chapter 11 filing rather than a valid reorganizational purpose. Therefore, the Chapter 11 proceeding was not filed in good faith and must be dismissed.

### III. The Rachlin Defendants Have Standing Because They are Directly Affected by the Granting or Denial of a Motion to Dismiss the Chapter 11

11 U.S.C. § 1109(b) provides that a party in interest may raise and may appear and be heard on any issue in a case under Chapter 11. Party in interest standing is to be interpreted broadly. In re Wells, 227 B.R. 553, 559 (Bankr. M.D. Fla. 1998). As stated by the Bankruptcy Court in the Middle District of Florida, "anyone who has a pecuniary interest, practical stake, or legally protected interest that could be affected by the bankruptcy proceeding is entitled to assert that interest to any issue to which it pertains." Id. Accordingly, the definition and determination of party in interest standing is not limited to whether or not the party has a pecuniary interest in the proceeding. Rather, whether a given party is considered a party in interest depends on a fact-

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

driven, context-specific, case by case analysis. In re Peachtree Lane Associates, Ltd., 188 B.R. 815, 827 (N.D. Ill. 1995); In re Amatex Corp., 755 F.2d 1034, 1041 (3d Cir. 1985).

In Peachtree, one of the leading cases on party in interest standing, the Court discussed why the adversary defendant's *practical stake* in the outcome of the proceeding should be considered in determining whether the adversary defendants had standing. Most cases deciding party in interest standing that focus on a party's pecuniary stake in the outcome of the proceeding, deal with contexts that lie at the heart of the reorganization process (i.e. the process of allowing or disallowing claims, of collecting and apportioning the debtor's assets, etc.). Peachtree, 755 F.2d at 827. However, where the context of the proceeding does not involve the process of reorganization *per se*, and instead has ramifications that extend beyond the creditors, "fundamental fairness requires that those who have a practical stake in the proceedings be afforded an opportunity to be heard on the issues that affect them." Id. The Court granted the adversary defendants party in interest standing because "very real practical consequences [exist] for those who may be dragged into the bankruptcy process through adversary proceedings." Id.

In opposition to the Rachlin Defendants' partial Joinder, on May 18, 2009, counsel for Mirabilis filed Mirabilis Ventures, Inc.'s Response to Partial Joinder in Motions to Dismiss Chapter 11 Filing and Incorporated Memorandum of Law (D.E. 185) ("Response"). Counsel's response challenged the Rachlin Defendants' standing to join in the Motion to Dismiss and relied heavily on a decision from the U.S. Bankruptcy Court for the Southern District of Florida. In re E.S. Bankest, L.C., 321 B.R. 590, 595 (Bankr. S.D. Fla. 2005). Mirabilis contended that a party's motivation in seeking party in interest standing is a key component in the determination of standing. Response, D.E. 185, pp. 3-6. The Rachlin Defendants agree with that legal principle. See In re E.S. Bankest, L.C., 321 B.R. at 595. The dispute between Mirabilis and the

TEW CARDENAS LLP

Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

Rachlin Defendants is whether the Rachlin Defendants' motivation deprives them of having party in interest standing.

A party's motivation is generally closely related to whether the party has a stake in the outcome of the proceeding – i.e. if a party has a stake in the outcome of the proceeding, naturally that is their motivation in seeking party in interest standing, and not some other improper purpose. For example, in E.S. Bankest, the adversary defendant's improper motivations were clearly demonstrated by the fact that they had no stake in the outcome of the proceedings in which they sought standing – a motion to convert. The conversion of the Chapter 11 proceeding to a Chapter 7 proceeding would have no repercussions on the adversary defendant, the Gunster law firm, or on the adversary proceeding in general. Id. In this case, exactly the opposite is true. The relief sought by Rachlin – dismissal of the Chapter 11 proceeding – has a direct effect on the adversary proceeding and the Rachlin Defendants. This is why Rachlin only filed partial joinder in Forge's Motion to Dismiss and did not seek joinder in the Motion to Convert.

A thorough review E.S Bankest further illustrates the reasons why those adversary defendants sought only conversion of the Chapter 11 proceeding. The adversary defendants did not assert that the outcome of a conversion from a Chapter 11 to Chapter 7 proceeding would have any effect at all on them. Rather, the adversary defendants argued that they had standing even though they did not have an interest in the proceeding because they had filed a claim and qualified as a creditor. See Transcript of Jan. 13, 2005 Hearing on Motion by Interested Party Lewis B. Freeman to Strike Gunster Yoakley & Stewart, P.A.'s Motion to Convert Chapter 11 to Chapter 7, Bankruptcy Petition No. 04-17602-AJC, S.D. Fla., D.E. 120, pp. 30-31. However, contrary to Gunster's contention, a party could not be in interest yet have no interest in the proceeding. Accordingly, the Court in E.S. Bankest denied those adversary defendants party in

13

interest standing. 321 B.R. at 595 (citing to In re Ofty Corp., 44 B.R. 479, 481 (Bankr. D. Del. 1984)) ("An entity may be [a] real party in interest and have standing on one respect while he may lack standing in another respect."). As the Court noted, "Gunster, which lacks any direct interest in the relief sought in the Motion to Convert, is seeking to protect what it deems to be the interests or rights of others" and not their own. In re E.S. Bankest, 321 B.R. at 599. In this case, the Rachlin Defendants seek to protect their own rights and interests.

Further, as the Court found in E.S. Bankest, the sole basis for Gunster's assertion of party-in-interest status in the debtor's main case was a litigation tactic to derail the bankruptcy for illegitimate purposes. The adversary defendant's litigation tactic was to attempt to replace *who* was pursuing the claim against them by filing a pleading in which they had no interest. If the receiver in E.S. Bankest, who had been prosecuting the claim for eighteen months, was replaced by a trustee, the trustee would have to climb a very steep learning curve and expend additional administrative expenses to get up to speed on the matter. See Transcript of Jan. 13, 2005 Hearing on Motion by Interested Party Lewis B. Freeman to Strike Gunster Yoakley & Stewart, P.A.'s Motion to Convert Chapter 11 to Chapter 7, D.E. 120, pp. 7-8; see also Motion of Lewis B. Freeman to Strike Gunster Yoakley & Stewart, P.A.'s Motion to Convert Chapter 11 to Chapter 7, D.E. 74, pp. 12-13. Essentially, the adversary defendants hoped that a trustee would be unwilling to put forth those efforts and therefore pursue the claim against them with less vigor or perhaps not at all. Id. In E.S. Bankest, there was no claim that the debtor should not be in bankruptcy, there was no issue of bad faith, and most importantly, there was no claim that the adversary defendants had an interest in the outcome of the proceeding. In the instant case, all of the aforementioned factors are present.

Tew Cardenas LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

Furthermore, the effects of granting standing in <u>E.S. Bankest</u> were dramatically different than the effects of granting the Rachlin defendants standing. If the adversary defendants were granted party in interest standing in <u>E.S. Bankest</u>, it would cause significant disruption and delay in the Chapter 11 proceedings at the expense and detriment of the estate. In this case, no such consequences will result. Instead, there are only two possibilities if the Court grants the Rachlin Defendants standing: either (a) the Court will determine that the Petition was not filed in good faith, in which case there is no room to consider the effect on the estate because there should be no estate, or (b) the Court will determine that the Petition was filed in good faith and the Chapter 11 proceeding will continue in its current course. Rachlin will then continue to defend the adversary proceeding but will not otherwise be involved in the bankruptcy proceeding.

The Rachlin Defendants also have standing because an ethical concern is at issue in this case – an abuse of the bankruptcy process and this Court. As officers of the Court, it is the undersigned's duty and obligation to bring such ethical concerns to the Court's attention. Similarly, in <u>Fischetti v. Scarpone</u>, 2008 WL 877853, Civ. A. No. 06-4838 (SRC) (D. N.J. Mar. 28, 2008), the adversary defendants challenged the appointment of the trustee due to a conflict of interest. The trustee argued that the adversary defendants did not have standing to challenge the appointment of the trustee because the adversary defendants had no actual stake in the outcome of the proceeding. <u>Id</u>. at *1. However, the Court ruled that "the adversary defendants should be permitted to present any ethical concerns to the Court" because, if correct, such concerns should be addressed. <u>Id</u>. at *2. In this case, not only do the Rachlin Defendants have an actual stake in the outcome of the proceeding, but if the petitioner in this case lacked good faith in filing the Chapter 11 proceeding, that ethical concern must be addressed.

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

In this case, simple logic dictates why the Rachlin Defendants have standing. If the Chapter 11 petition was not filed in good faith, then it should not be in bankruptcy. If the case should not be in bankruptcy, then obviously there should not be adversary proceedings. It is not possible that the adversary defendants lack a practical stake in a proceeding to determine whether or not there should be an adversary proceeding against them. Mirabilis' challenge to the Rachlin Defendants standing should be rejected.

## IV.     The Motion to Dismiss Should be Granted Because the Petition was Not Filed for a Valid Reorganizational Purpose

The Code provides that "on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court *shall* convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause." 11 U.S.C. § 1112(b)(1) (emphasis added).[7]  A lack of good faith in filing a Chapter 11 petition constitutes "cause" and in finding a lack of good faith, courts have emphasized an intent to abuse the judicial process and the purposes of the reorganization provisions.  See, e.g., In re Natural Land Corp. v. Baker Farms, Inc. (In re Natural Land Corp.), 825 F.2d 296, 297 (11th Cir. 1987).

Therefore, "[c]ourts have implied [] limitations to deter filings that seek objectives outside the legitimate scope of the bankruptcy laws." In re SGL Carbon Corp., 200 F.3d 154, 165 (3d Cir. 1999). "[T]he 'good faith' filing requirement encompasses several, distinct

---

[7] In 2005, this section of the Bankruptcy Code was amended under the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") – an act designed to improve the integrity, effectiveness, and efficiency of the nation's bankruptcy system. The amendment to Section 1112 replaced the discretionary "may" dismiss language with the obligatory "shall" dismiss language. Therefore, now courts *must* dismiss Chapter 11 petitions when cause is shown precisely for the reasons set forth in this case – to prevent the abuse of the bankruptcy system.

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

equitable limitations." In re SGL Carbon Corp., 200 F.3d at 161. A "basic underpinning of the good faith doctrine is the equitable concept of 'clean hands.' As a general matter, bankruptcy relief is equitable in nature, and, as a general rule, equitable remedies are not available to any party who fails to act in an equitable fashion." 7 COLLIER ON BANKRUPTCY 1112-68. This "good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their equitable weapons ... available to only those debtors and creditors with 'clean hands'" Little Creek Dev. Co. v. Commonwealth Mortgage Corp., 779 F.2d 1068, 1072 (5th Cir. 1986). These "weapons" (including the automatic stay, the exclusive right to propose a reorganizational plan and the discharge of debts) should only be available to parties seeking to accomplish the purposes for which Chapter 11 was designed. In re SGL Carbon Corp., 200 F.3d at 165-66. "When financially troubled petitioners seek a chance to remain in business, the exercise of those powers is justified. But this is not so when a petitioner's aims lie outside those of the Bankruptcy Code." Id.

The evidence in this case illustrates that the bankruptcy was filed for two improper reasons: to block a foreclosure proceeding and in an effort to generate money from litigation to pay the IRS to seek a reduction of a criminal defendant's sentence. Transcript, p. 182, lines 6-21. Even just one of the reasons alone provides grounds for the dismissal of this Chapter 11 proceeding. The Motion to Dismiss adequately establishes that both grounds justify dismissal.

With respect to the improper purpose of seeking to stop a foreclosure proceeding, Bankruptcy Judge Briskman dismissed a bankruptcy proceeding on similar grounds. In the matter of Joyce, Don & Associates, Inc., 2008 WL 343265 *1, the debtor filed a petition in bankruptcy for the sole purpose of delaying a foreclosure, and the Bankruptcy Court dismissed the Chapter 11 petition. No. 6:07-bk-04878-ABB (Bankr. M.D. Fla. Jan. 30, 2008). As Judge

17

Briskman explained, "[t]he bankruptcy laws are intended to give a fresh start to the honest, but unfortunate debtor." Id. Where the filing is an abuse of the judicial system and the purposes of Chapter 11, the case is due to be dismissed. Id. at *3.[8] This Court should follow Judge Briskman's reasoning and should dismiss this Petition based on the improper purpose of filing the proceeding to stop the foreclosure. Accordingly, dismissal of this Chapter 11 Petition is required.

The second independent basis to dismiss the Petition is supported by the unrefuted record evidence that Amodeo's purpose in causing the bankruptcy to be filed was to seek to generate money from litigation to pay the IRS and to argue for a more lenient criminal sentence. Mirabilis' counsel has cited no legal authority for the proposition that the Bankruptcy Code justifies the filing of the Petition for this purpose – and there is no such authority. Mirabilis' counsel would seek to have this Court participate in a remarkably cynical and abusive use of the Bankruptcy Code. There is no lawful reason to support this bankruptcy.

Mirabilis' counsel, at the May 20, 2009 hearing, tried to focus the bad faith question on whether a proper purpose could now be created to sustain the bankruptcy. Thus, counsel contended that this case is not only about the Rachlin Defendants' rights, but also the rights of creditors. Transcript of May 20, 2009 Hearing, p.23, lines 7-18. Subsequent to the hearing – some thirteen months after the Petition was filed – Mirabilis' counsel filed a plan, not of reorganization, but of liquidation. The simple fact is that reorganization was never the plan for

---

[8] The evidence also confirms that there was no business to reorganize. Mirabilis was under criminal investigation and subsequently indicted. Amodeo spent months "winding down" Mirabilis. Transcript, p. 79, lines 9-24. Most of the creditors had been paid by the time the bankruptcy was filed. Jaiman Affidavit, p. 2, ¶ 7; Stollenwerk Affidavit, p. 2, ¶ 6. Mirabilis had no employees. Jaiman Affidavit, p. 4, ¶ 13; Stollenwerk Affidavit, p. 4, ¶ 12. It is impossible that under these circumstances the Petition was filed "to seek a chance to remain in business" as stated by the Court in SGL Carbon. 200 F.3d at 165-66.

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

this proceeding. Amodeo explained his liquidation intention and Mirabilis' counsel is now attempting to fulfill that intention.

Furthermore, it is clear from a review of the Debtor's monthly operating reports that the only activity the Debtor has engaged in for the past thirteen months has been to spend money received from a receivable which is now been finally forfeited the United States. Thus, the Debtor's initial operating report for the period May 27 through 31, 2008 filed on July 21, 2008 (D.E. 42) reflected on its notes receivable schedule a $5.5 million note by Conrad D. Eigenmann, Jr., which included twenty semi-annual payments that had commenced on January 1, 2008. The Debtor's report for July 1 through 31, 2008 filed on August 27, 2008 (D.E. 52) reflected a payment of $252,695.60 on that note. The Debtor's report for January 1 through 31, 2009, filed on February 23, 2009 (D.E. 139) reflected additional payments of $173,679.40 on the note and $125,953.55 in interest income on the note. Other than the payments on that receivable, the only other material funds available for operations were from a receivable owed by a company named Creative Risk Management. However, that receivable was required to be paid in monthly installments, and after a few payments at the commencement of the bankruptcy, no funds have been received from that account in the past ten months. And, Mirabilis' only remaining material income stream – the Eigenmann receivable – was eliminated by the U.S. government in a final order of forfeiture signed by District Judge Antoon on May 24, 2009. (A copy of the Final Order of Forfeiture is attached as Exhibit 5 to this Memorandum.)

It is also clear that the funds that the Debtor has been using from this now forfeited receivable have been almost exclusively used to pay Mr. Cuthill and professional fees. The last filed Debtor's Monthly Report, for the period April 1 through 30, 2009, filed on May 18, 2009 (D.E. 186) reflects payments of $222,599.00 to Mr. Cuthill, $38,435.81 for professional fees and

19

$74,778.54 for document management fees. This bankruptcy proceeding has fulfilled Amodeo's intention. It is being improperly used to pay Cuthill and his professionals to review litigation documents in an effort to pursue claims against professionals.

The final chapter for Mirabilis is now being scheduled with the District Court and this Court. Mirabilis was scheduled for trial on its criminal indictment commencing on July 6, 2009, See Case No.: 6:08-cr-231-Orl-28KRS. Two days ago, the United States and Mirabilis filed a motion to continue the trial and stated that:

> The Government and the Defendants have tentatively reached plea agreements which must also be coordinated with the United States Bankruptcy Court, Middle District, Orlando Division, Case No. 6:08-bk-04327-KSJ, The Honorable Karen S. Jennemann presiding.[9]

This is a bankruptcy proceeding that never should have been commenced. The Rachlin Defendants respectfully request that it is not only grossly improper, but unprecedented, that the Bankruptcy Court could be used as a haven for a criminal defendant and his criminal enterprise. And there is no strategy, whether it is known as the "Church Street strategy," or any other manipulation of the Bankruptcy Code, that can justify the continuation of this proceeding.

Finally, Mirabilis' counsel cannot save the bad faith filing of this bankruptcy by filing a belated plan of liquidation. Whether or not a bankruptcy that was properly commenced with a valid reorganization purpose, can be concluded with a liquidation plan, is not this case. This case was never commenced with an intent to reorganize, and the focus of the bad faith inquiry must be on the date that the Petition was filed. The Eleventh Circuit has held that even the prospect of a successful reorganization does not override a finding of bad faith. In re Phoenix Piccadilly, Ltd., 849 F.3d 1393 (11th Cir. 1988) (affirming dismissal of the Chapter 11

---

[9] A copy of the Unopposed Motion to Continue Trial is attached as Exhibit 6 to this Memorandum.

Tew Cardenas LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

proceeding that was filed to fight a foreclosure action even though there was a potential to successfully reorganize). Simply stated, the Court held that "[t]he possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith." Id.; see also In re Natural Land Corp., 825 F.2d 296, 298 (11th Cir. 1987) (stating that the "taint of a petition filed in bad faith must naturally extend to any subsequent reorganization proposal; thus any proposal submitted by a debtor who filed his petition in bad faith would fail to meet section 1129's good faith requirement"). There was never a legitimate prospect of a successful reorganization for a company on the verge of federal criminal indictment. The bankruptcy Petition was filed for improper purposes and binding Eleventh Circuit case law mandates the dismissal of this proceeding.

## CONCLUSION

The bankruptcy filing is just another component of an elaborate and cynical scheme orchestrated by Frank Amodeo. The Rachlin Defendants have been named in an adversary proceeding in Bankruptcy Court as a result of this Chapter 11 filing that was filed in bad faith. The Rachlin Defendants request that this Court enter an order dismissing this bankruptcy proceeding.

TEW CARDENAS LLP
Attorneys for Defendants
Four Seasons Tower, 15th Floor
1441 Brickell Avenue
Miami, Florida 33131
Tel: (305) 536-1112
Fax: (305) 536-1116

By ___ s/ Joseph A. DeMaria ___
C. Thomas Tew, P.A.
Florida Bar No. 098160
Joseph A. DeMaria
Florida Bar No. 0764711

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 29th day of June, 2009, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, and a true copy of the foregoing, together with any exhibits, has been furnished via the CM/ECF system to all parties in interest receiving electronic notice as per the attached matrix. Additionally, the following parties were also served by U.S. Mail: Debtor, Mirabilis Ventures, Inc., c/o R.W. Cuthill, Jr., President, 341 N. Maitland Ave., Suite 210, Maitland, Florida 32751; Debtor's Counsel, Elizabeth A. Green, Esq. (Egreen@lseblaw.com), Latham, Shuker, Eden & Beaudine, LLP, 390 North Orange Avenue, Suite 600, Orlando, Florida 32801; Randy Gold, Esq., Assistant U.S. Attorney, United States Attorney's Office, 501 West Church Street, Suite 300, Orlando, Florida 32805.

By _____ s/ Joseph A. DeMaria ___
Counsel

526649_1

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112