# TRANSCRIPT OF PROCEEDINGS

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO: 08-4328
IN RE: HOTH HOLDINGS, LLC.

ADVERSARY CASE 08-148
HOTH HOLDINGS, LLC VERSUS COASTAL EQUITY PARTNERS, ET AL.

ORIGINAL
FILED

JUL 1 5 2009

CLERK U.S. BANKRUPTCY
ORLANDO DIVISION

CASE NO. 08-4681,
IN RE: AEM INCORPORATED

CASE NO. 08-4327
IN RE: MIRABILIS VENTURES

| | |
|---|---|
| HEARING BEFORE: | KAREN JENNEMANN, U.S. BANKRUPTCY JUDGE |
| DATE: | JUNE 30, 2009 |

APPEARANCES:

| | |
|---|---|
| ON BEHALF OF DEBTORS: | ELIZABETH GREEN, ESQUIRE<br>JUSTIN LUNA, ESQUIRE |
| ON BEHALF OF FORGE CAPITAL, ATLANTIC AMERICAN, ET AL: | BART VALDES, ESQUIRE |
| ON BEHALF OF RACHLIN COHEN: | JOE DIMARIA, ESQUIRE |
| ON BEHALF OF SAXON, GILMORE, AND HANS BEYER: | JOE VARNER, ESQUIRE |
| ON BEHALF OF BERMAN, KEAN | BRAD SAXTON, ESQUIRE |
| ON BEHALF OF MOORE AND HUTTO: | JANELLE BRONSON, ESQUIRE<br>CHUCK MELTZ, ESQUIRE |

# Realtime Reporters, Inc.

Registered Professional Reporters
Certified Video Technicians

1188 Fox Forrest Circle • Apopka, Florida 32712 • (407) 884-4662 • FAX (407) 884-4664
Sandra A. Dawkins, President • Professional Reporting Since 1977


Registered
Professional
Reporter


NATIONAL COURT REPORTERS
NCRA
ASSOCIATION


OrlandO
YOU NEVER OUTGROW IT
Orlando/Orange County
Convention & Visitors Bureau, Inc.


Florida Court Reporters
FCRA
Association

```
 1                    P R O C E E D I N G S

 2

 3            THE CLERK:  ALL RISE.  COURT IS BACK IN

 4       SESSION.  THE HONORABLE KAREN S. JENNEMANN PRESIDING.

 5       YOU MAY BE SEATED.

 6            CASE NUMBER 08-4328, HOTH HOLDINGS, LLC.;

 7       ADVERSARY CASE 08-148, HOTH HOLDINGS, LLC VERSUS

 8       COASTAL EQUITY PARTNERS, ET AL.; CASE NO. 08-4681,

 9       AEM INCORPORATED; CASE NO. 08-4327 MIRABILIS VENTURES

10       AND ALL RELATED ADVERSARY CASES. ALL INTERESTED

11       PARTIES, PLEASE COME FORWARD AND ENTER YOUR

12       APPEARANCES.

13            MS. GREEN:  GOOD AFTERNOON, YOUR HONOR.

14       ELIZABETH GREEN ON BEHALF OF THE DEBTORS HOTH, AEM

15       AND MIRABILIS VENTURES.  I HAVE WITH ME MR. CUTHILL,

16       PRESIDENT OF MIRABILIS VENTURES.  ALSO SEATED AT

17       COUNSEL TABLE IS JENNIFER EDEN OF OUR OFFICE WHO WILL

18       BE ARGUING THE MOTION TO DISMISS IN THE ADVERSARY

19       PROCEEDING -- THE SAXON GILMORE ADVERSARY PROCEEDING

20       WHICH IS SET FOR TODAY.  AND JUSTIN LUNA OF OUR

21       OFFICE.  MR. PARISH IS GOING TO JOIN US AFTER AN IDI

22       UPSTAIRS.

23            MR. VALDES:  GOOD AFTERNOON, YOUR HONOR.  BART

24       VALDES WITH DEBEAUBIEN, KNIGHT, SIMMONS, MANTZARIS

25       AND NEAL.  WE REPRESENT MULTIPLE CREDITORS AND ALSO
```

| | |
|---|---|
| 1 | DEFENDANTS IN THE ADVERSARY ACTION FORGE CAPITAL, ATLANTIC |
| 2 | AMERICAN -- I'LL GO THROUGH THEM ALL AS PART OF THE |
| 3 | MOTION TO DISMISS THAT WE HAVE SET FOR TODAY. |
| 4 | THE COURT: VERY GOOD, THANK YOU. |
| 5 | MR. DEMARIA: GOOD AFTERNOON, YOUR HONOR. JOE |
| 6 | DEMARIA OF TWO CARDNESS ON BEHALF OF THE RACHLIN |
| 7 | DEFENDANTS IN THE ADVERSARY. |
| 8 | MR. VARNER: GOOD AFTERNOON, YOUR HONOR. JOE |
| 9 | VARNER WITH HOLLAND AND KNIGHT ON BEHALF OF SAXON, |
| 10 | GILMORE, AND HANS BEYER, DEFENDANTS IN THE ADVERSARY |
| 11 | PROCEEDINGS. AND WITH ME SEATED IN THE FIRST ROW |
| 12 | TODAY IS MR. BEYER. |
| 13 | MR. SAXTON: GOOD AFTERNOON, JUDGE, BRAD SAXTON |
| 14 | ON BEHALF OF BERMAN, KEAN AND RIGUERA FIRM, AND THE |
| 15 | INDIVIDUAL DEFENDANTS IN THE ADVERSARY PROCEEDING. |
| 16 | ALSO WITH ME IS CO-COUNSEL, DAVID KELLER. |
| 17 | MR. MELTZ: JUDGE, I'M CHUCK MELTZ ON BEHALF OF |
| 18 | THE JAMES MOORE AND E.J. HUTTO DEFENDANTS WHICH IS |
| 19 | THE 228 CASE IN THE ADVERSARIAL PROCEEDINGS. AND FOR |
| 20 | THE SAKE OF SPACE I'M SITTING IN THE FRONT ROW WITH |
| 21 | JANELLE BRONSON WHO IS ALSO CO-COUNSEL IN THE CASE. |
| 22 | THE COURT: VERY GOOD. ANY OTHER PARTY CARE TO |
| 23 | MAKE AN APPEARANCE? |
| 24 | IF I COULD GET MS. GREEN TO INITIALLY JUST |
| 25 | GIVE ME AN IDEA AS TO THE MOST EFFICIENT WAY THAT THE |

1    DEBTOR WOULD PROPOSE -- DEBTORS WOULD PROPOSE HANDLING THE

2    VARIOUS.  WE HAVE THE BIG MOTION TO DISMISS IN THE

3    TWO MAIN CASES AS WELL AS VARIOUS MOTIONS IN THE

4    RELATED ADVERSARY PROCEEDINGS.

5    MS. GREEN:  YOUR HONOR, I THINK IT WOULD BE

6    APPROPRIATE TO START WITH THE BIG MOTION TO DISMISS,

7    AS YOU REFER TO IT.  SINCE THAT'S REALLY THE

8    OPERATIVE MOTION HERE TODAY.  AND THEN AFTER THAT GO

9    ON TO THE MOTION TO DISMISS THE SAXON GILMORE

10   ADVERSARY PROCEEDING WHICH IS THE ONLY ONE PENDING.

11   THERE ARE SOME HOUSEKEEPING MATTERS.  MR.

12   DEMARIA, ON BEHALF OF RACHLIN, HAS FILED A MOTION TO

13   PERMIT CERTAIN DOCUMENTS TO BE USED AS EVIDENCE.  IF

14   YOU RECALL WHEN WE WERE HERE LAST TIME, AND I'D

15   REALLY LIKE TO DEAL WITH THIS AS A HOUSEKEEPING

16   MATTER, TO FIGURE OUT WHAT THE GROUND RULES ARE OF

17   THIS HEARING.

18   YOU INDICATED THAT IT WAS A NON-

19   EVIDENTIARY HEARING ON PENDING MOTIONS TO DISMISS AND

20   IF THE PARTIES STIPULATED AS TO DOCUMENTARY OR OTHER

21   EVIDENCE YOU DID NOT MIND.  BUT WE ARE NOT HAVING

22   WITNESSES, THIS IS NOT GOING TO BE AN EVIDENTIARY

23   HEARING.

24   I HAVE A PROBLEM WITH THE NUMBER OF PIECES

25   OF EVIDENCE THAT THEY WISH TO SUBMIT FOR THE COURT'S

```
 1    CONSIDERATION.  AMONG OTHER THINGS IS HEARSAY.  A NUMBER

 2    OF THEM ARE NOT ADMISSIBLE AS EITHER BEING ATTORNEY-

 3    CLIENT PRIVILEGE OR HEARSAY AFFIDAVITS WHICH CONTAIN

 4    CONCLUSIONS OF LAW.

 5              I DON'T BELIEVE THAT THEY'RE ADMISSIBLE

 6    AND I BELIEVE THAT THAT WILL TURN THIS INTO WHAT

 7    NEEDS TO BE AN EVIDENTIARY HEARING IN ORDER FOR US TO

 8    REBUT THAT EVIDENCE THAT THEY WOULD BE SUBMITTING.

 9    WE WOULD NEED TO DEPOSE THOSE PEOPLE OR HAVE THEM

10    HERE AVAILABLE TO CROSS-EXAMINE AND WOULD HAVE TO PUT

11    ON OUR OWN WITNESSES.

12              SO, I'D LIKE TO SORT OF FIGURE OUT WHERE

13    THIS HEARING IS GOING TO BE SET UP IN THAT REGARD.

14              THE COURT:  VERY GOOD.  THANK YOU.  LET ME

15    FIRST ASK THE MOVANTS IF THEY AGREE THAT THE PROPER

16    MOTION TO START IS THE MOTION TO DISMISS THE MAIN

17    CASES OF THE DEBTORS.

18              MR. VARNER:  JUDGE THAT'S OUR MOTION SO WE'RE

19    HAPPY TO START WITH THAT.  AS IT RELATES TO THE

20    EVIDENTIARY ISSUES THAT MS. GREEN RAISED, YOUR HONOR

21    MAY RECALL THAT THE FIRST PARTY TO FILE A MOTION TO

22    DISMISS IN THIS CASE WAS UNITED STATES OF AMERICA.

23    THE SECOND MOTION TO DISMISS WAS FILED BY MY CLIENTS.

24              WE WERE THEN FAST TRACKED FOR AN

25    EVIDENTIARY HEARING AND SO WE DID ENGAGE IN DISCOVERY
```

| | |
|---|---|
| 1 | WITH THE DEBTOR AND TOOK DEPOSITIONS AND EVERYTHING ELSE. |
| 2 | JUDGE I UNDERSTAND THAT THIS IS NOT AN EVIDENTIARY |
| 3 | HEARING. WE BROUGHT OUR EXHIBITS WITH US. I HAVE AN |
| 4 | EXHIBIT LIST. WE'D LIKE TO AT LEAST MAKE A PROFFER |
| 5 | TO THE COURT JUST BY DELIVERING THE EXHIBIT LIST. |
| 6 | SOME OF THE OTHER ITEMS THAT MY COLLEAGUES |
| 7 | AT THE TABLE SIT HERE AND HAVE RAISED IN THEIR MOTION |
| 8 | -- I'LL LET THEM ADDRESS IT. BUT WE CERTAINLY THINK |
| 9 | YOUR HONOR CAN TAKE JUDICIAL NOTICE OF IT. AND |
| 10 | ANYTHING THAT'S IN THE RECORD IN THIS PROCEEDING, WE |
| 11 | THINK YOUR HONOR CAN CONSIDER AS PART OF THIS |
| 12 | PROCEEDING -- ANY ATTACHMENTS TO MOTIONS AND WHAT |
| 13 | NOT. |
| 14 | THE COURT: THANK YOU. |
| 15 | MR. DIMARIA: YOUR HONOR BRIEFLY, I THINK THAT |
| 16 | SINCE FORGE HAS FILED THE MOTION AND DOESN'T HAVE A |
| 17 | STANDING ISSUE, THEY SHOULD GO FIRST. WE HAVE A |
| 18 | STANDING ISSUE OF COURSE. |
| 19 | AND AS FAR AS THE DOCUMENTS I HAVE |
| 20 | SUBMITTED, WE FOLLOWED YOUR SUGGESTION, TO TRY TO GET |
| 21 | A STIPULATION. COUNSEL SAID THAT THEY DIDN'T WANT US |
| 22 | TO DO IT. THAT'S FINE. I'VE SUBMITTED TO YOUR HONOR |
| 23 | WHY I BELIEVE UNDER JUDICIAL NOTICE, PUBLIC RECORDS, |
| 24 | THEY'RE AUTHENTIC, I DON'T THINK THERE'S ANY |
| 25 | CHALLENGE TO AUTHENTICITY, ON THE HEARSAY EXCEPTIONS, |

```
 1    I'VE CITED THE EXCEPTIONS I BELIEVE CLEARLY APPLY.

 2              YOU KNOW, I UNDERSTAND WE WANT TO DO THIS

 3    IN AN EXPEDITED MANNER, AND WE FOLLOWED YOUR HONOR'S

 4    ORDER.  WE HAVEN'T SOUGHT TO BRING WITNESSES HERE,

 5    BUT COUNSEL STOOD BEFORE YOU ON MAY 20 AND SAID I

 6    DON'T WANT A FULL BLOWN EVIDENTIARY HEARING.  YOU

 7    CAN'T BOTH OPPOSE OUR REQUEST FOR AN EVIDENTIARY

 8    HEARING AFTER YOUR HONOR ORIGINALLY SET IT WITH THE

 9    UNITED STATES' MOTION, AND THEN TURN AROUND AND SAY,

10    OH SORRY, NOW YOU CAN'T PUT ANY EVIDENCE IN.

11              SO WE HAVE OUR EVIDENCE WE'VE PUT IN.

12    COUNSEL HAD EVERY OPPORTUNITY TO REFUTE IT.  TO THIS

13    DAY HAS NOT REFUTED IT WITH EVIDENCE.  I THINK WE

14    SHOULD GO FORWARD.

15              THE COURT:  THANK YOU.  ANY OTHER --

16              MR. SAXTON:  JUDGE, OTHER THAN THAT WE JOIN IN

17    THOSE POSITIONS.

18              THE COURT:  VERY GOOD.  I'M ALWAYS NEVER CLEAR

19    ENOUGH FROM PRIOR HEARINGS TO THIS HEARING.  THIS IS

20    NOT AN EVIDENTIARY HEARING, THERE'S NOT AN ISSUE AS

21    TO ADMISSION OF EXHIBITS BECAUSE NO EXHIBITS WILL BE

22    ADMITTED.  IF, AFTER MAKING YOUR PROFFER, THAT YOU --

23    IF --

24              WHAT I TRIED TO CONVEY AT THE LAST HEARING

25    WAS THAT WE WERE GOING TO HAVE A LEGAL ARGUMENT TODAY
```

1   AND THE PARTIES CAN CERTAINLY SUBMIT THE FACTS AS THEY SEE

2   THEM.  AND IF I FIND THAT THERE'S SUFFICIENT EITHER

3   FACTUAL DISPUTE OR SUFFICIENT FACTUAL BASIS TO GO

4   FORWARD TO AN EVIDENTIARY HEARING, ONE CAN BE SET.

5   SO I AM IN NO WAY DENYING THE ABILITY TO PROCEED WITH

6   THE FINAL EVIDENTIARY HEARING.

7            BUT IF YOU CANNOT ARTICULATE SUFFICIENT

8   FACTS TO MAKE US GO THROUGH THAT EXERCISE, THEN WE'RE

9   NOT GOING TO GO THROUGH THAT EXERCISE.  AND WE'RE NOT

10  GOING TO DO IT HALF WAY.

11           I DON'T THINK IN ANY WAY I TOLD YOU TO GO

12  SUBMIT OR STIPULATE TO FACTS.  BECAUSE THIS IS A NON-

13  EVIDENTIARY HEARING WHICH MEANS NO EXHIBITS, NO

14  WITNESSES.  IT'S ARGUMENT.  IT'S LEGAL ARGUMENT.

15           AND YOU CAN CERTAINLY BRING UP WHATEVER

16  FACTS YOU BELIEVE YOU CAN PROVE.  AND IF I FIND THAT

17  IS SUFFICIENT, AS I SAID, WE WILL GO FORWARD WITH

18  THAT EXERCISE.  IF YOU DON'T, HOWEVER, THEN WE WON'T

19  EVER HAVE TO SPEND WHAT I WOULD THINK WOULD BE A

20  SUBSTANTIAL ENDEAVOR OF JUDICIAL TIME AS WELL AS

21  PARTIES' TIME AND EXPENSE TO DO SO.

22           SO, IF I WAS IN ANY WAY UNCLEAR, I

23  APOLOGIZE.  IF I'VE MADE YOU ALL SPEND A LOT OF

24  EFFORT, I AGAIN APOLOGIZE.  BUT FIRST OF ALL, YOU DO

25  NOT HAVE TIME TO PRESENT EVIDENCE TODAY.  THIS WAS

1    NEVER INTENDED TO BE AN EVIDENTIARY HEARING AND WILL NOT

2    BE ONE.

3              BUT I WELCOME ORAL ARGUMENT AS WELL ALONG

4    THOSE LINES. SO THAT'S WHY WE'RE HERE. SO, IF YOU

5    WANT TO GO FIRST, MR. VALDES.

6              MR. VALDES: THANK YOU, YOUR HONOR. AND YOUR

7    HONOR, I'VE PREPARED A LEGAL NOTEBOOK THAT HAS OUR

8    MEMORANDA AS WELL AS THE CASES UPON --

9              THE COURT: NOT A PROBLEM.

10             MR. VALDES: AND YOUR HONOR, I KNOW WE HAVE

11   MULTIPLE PARTIES HERE AND I DON'T WANT TO CUT ANYBODY

12   SHORT ON TIME. IS TWENTY MINUTES ACCEPTABLE?

13             THE COURT: OH, THAT'S FINE. THAT'S FINE.

14             MR. VALDES: IT MAY GO A LITTLE BEYOND, YOUR

15   HONOR, BUT THAT'S WHAT I'M GOING TO TRY TO KEEP IT TO

16   RIGHT NOW.

17             YOUR HONOR, AS WE BEGIN THE HEARING, I

18   THINK IT'S VERY IMPORTANT TO EXPLAIN AND GO OVER AT

19   LEAST A FEW OF THE DIFFERENT CLIENTS THAT I

20   REPRESENT, HOW THEY'RE INVOLVED IN THIS CASE BECAUSE

21   I BELIEVE THAT YOU MAY HEAR A CHALLENGE TO THEIR

22   STANDING. AND I BELIEVE THAT IN INDIVIDUAL ARGUMENTS

23   YOU MAY HEAR A CHALLENGE TO THE STANDING.

24             THE COURT: AND LET ME -- AND BEFORE YOU

25   PROCEED. I KEEP ALL MY NOTES ON THE COMPUTER SO IF

1    YOU NOTICE ME TYPING OR NOT LOOKING AT YOU, IT'S NOT THAT

2    I'M NOT LISTENING.  I KNOW THERE'S SEVERAL OF YOU

3    THAT DON'T COME OVER OFTEN, THE REGULARS ARE USED TO

4    IT.  BUT I DON'T WANT TO -- I DON'T WANT TO INFRINGE

5    UPON YOUR ARGUMENTS SO.  GO AHEAD MR. VALDES.

6         MR. VALDES:  SURE.  YOUR HONOR, FIRST OF ALL,

7    FORGE CAPITAL PARTNERS AND ATLANTIC AMERICAN ARE

8    CREDITORS IN THIS CASE.  THEY BOTH FILED PROOFS OF

9    CLAIM, AND SO WE DON'T BELIEVE -- AND I DON'T BELIEVE

10   MS. GREEN CHALLENGES THEIR ABILITY, THEIR STANDING TO

11   RAISE THIS MOTION TO DISMISS.  I KNOW THAT MAY BE AN

12   ISSUE WITH OTHERS BECAUSE THEY'RE NOT ACTUAL

13   CREDITORS IN THIS CASE.  THOSE ENTITIES ARE CREDITORS

14   IN THIS CASE.

15        THE COASTAL EQUITY PARTNERS AND BISON ARE

16   DEFENDANTS IN THE HOTH ADVERSARY ACTION.  AND SO THEY

17   DO HAVE A DIRECT STAKE IN THE HOTH ACTION, WE

18   BELIEVE.

19        AND FINALLY, YOUR HONOR, ROBERT MARIA,

20   INDIVIDUALLY, ACCORDING TO THE SCHEDULE TO THE

21   PETITION THAT WAS FILED BY MIRABILIS, THEY CLAIM THAT

22   MR. MARIA IS A SHAREHOLDER OF MIRABILIS.  AND THAT'S

23   GOING TO BECOME CRITICAL LATER ON, YOUR HONOR,

24   BECAUSE WE ARE GOING TO EXPLAIN HOW THE WHOLE FILING

25   WAS AN ULTRAVIRUS ACT AND DID NOT COMPLY WITH THE

1 | BYLAWS.

2 | AND MR. MARIA, BASED UPON THE ALLEGATION

3 | THAT MIRABILIS HAS, HE'S A SHAREHOLDER, CERTAINLY HAS

4 | STANDING TO COME IN AND CHALLENGE AN ULTRAVIRUS ACT

5 | OF MIRABILIS.

6 | YOUR HONOR, I'M NOT GOING TO GO OVER ALL

7 | THE FACTUAL AND PROCEDURAL HISTORY OF THIS CASE OTHER

8 | THAN WHAT I'VE EXPLAINED HERE. IF YOU HAVE ANY

9 | QUESTIONS AT ANY TIME, PLEASE ASK ME. I'LL BE HAPPY

10 | TO GO BACK. I KNOW THERE'S A LOT OF DIFFERENT

11 | PARTIES THAT ARE INVOLVED HERE.

12 | YOUR HONOR, THE FIRST ARGUMENT THAT WE

13 | RAISED IN OUR MOTION TO DISMISS IS THAT MIRABILIS IS

14 | NOTHING MORE THAN A SHAM COMPANY. A COMPANY THAT WAS

15 | CREATED AS A LITERAL FICTION BY FRANK AMODEO TO

16 | COMMIT A FRAUD. AND MAINLY TO COMMIT A FRAUD ON THE

17 | UNITED STATES OF AMERICA BY WITHHOLDING TAXES AND NOT

18 | PAYING THE PAYROLL AND OTHER TAXES THAT HE WAS

19 | REQUIRED TO PAY, AND USING HIM TO -- USING THOSE

20 | PROCEEDS TO GO AND COMMIT OTHER ILLEGAL ACTS.

21 | AND, A CORPORATION MUST BE A LEGITIMATE

22 | BUSINESS ENTITY TO TAKE ADVANTAGE OF THE BANKRUPTCY

23 | SYSTEM. AND, THE LEAD CASE THAT WE'VE CITED TO YOUR

24 | HONOR IS UNDER TAB NUMBER THREE IN THE NOTEBOOK AND

25 | IT'S THE FELTMAN CASE OUT OF THE SOUTHERN DISTRICT OF

1  FLORIDA.

2            AND, IN THAT CASE, YOUR HONOR, IT'S VERY

3  SIMILAR.  VERY FACTUALLY SIMILAR TO THE CASE WE HAVE

4  HERE AT BAR.  IT WAS A CHAPTER 11 CASE.  THERE WERE

5  TWO BANKRUPT SHAM CORPORATIONS AS THE COURT NOTES

6  UNDER THE OPERATIVE FACTS ON PAGE FOUR OF THE

7  OPINION.  AND THE PRINCIPAL OFFICER OF THE

8  CORPORATION WAS AN INCARCERATED EMBEZZLER WHO

9  DEFRAUDED INVESTORS OUT OF AT LEAST NINE POINT SEVEN

10 MILLION.

11            AND AS YOUR HONOR -- I'M SURE YOUR HONOR

12 IS WELL AWARE OF THE FACT THAT NOW MR. AMODEO HAS

13 BEEN CONVICTED AND, EVEN THOUGH WE UNDERSTAND HE HAS

14 FILED AN APPEAL, THAT CONVICTION STILL STANDS AS WE

15 SIT HERE TODAY, YOUR HONOR.

16            AND SO, THE FELTMAN COURT WENT THROUGH THE

17 ANALYSIS AS TO WHETHER OR NOT THE PROCEEDINGS COULD

18 BE MAINTAINED.  AND, WHAT THE COURT SAID ON PAGE TEN

19 OF THE OPINION SAYS THAT ALL CORPORATIONS ARE LEGAL

20 FICTIONS.  IN THIS CASE, HOWEVER, FIP AND FFP WERE

21 SIMPLY FICTITIOUS.

22            THE COMPLAINT ALLEGES THAT FIP AND FFP

23 WERE SHAM CORPORATIONS, ALTER EGOS WITH NO CORPORATE

24 IDENTITY SEPARATE FROM HENRY GERMAN.  AS THE

25 CORPORATIONS WERE ESSENTIALLY ONLY CONDUITS FOR

1   STOLEN MONEY, ANY INJURY TO THE DEBTORS IN THIS CASE MUST

2   BE SUBSTANTIALLY COTERMINOUS WITH THE INJURY TO THE

3   DEFRAUDED CREDITORS.  EVERYTHING GERMAN STOLE FROM

4   THE DEBTOR CORPORATIONS, THE DEBTORS HAD STOLEN FROM

5   THE CREDITORS.  THUS ANY ALLEGED INJURY TO THE

6   DEBTORS IS AS ILLUSORY AS WAS THEIR CORPORATE

7   IDENTITY.

8               AND, JUDGE, WE HAVE IN THIS CASE, AND THE

9   EVIDENCE WOULD CERTAINLY SHOW AND IT'S ATTACHED TO

10  OUR MOTIONS, THAT THERE'S ALREADY BEEN A PLEA

11  AGREEMENT THAT'S BEEN ENTERED INTO BETWEEN MR.

12  AMODEO, OBVIOUSLY, AND THE UNITED STATES.

13              AND IN THAT PLEA AGREEMENT, MR. AMODEO

14  ADMITS THAT HE CONTROLLED THE DEBTOR CORPORATIONS.

15  HE ADMITS THAT HE TOOK MONEY FROM THESE DEBTOR

16  CORPORATIONS, AND THAT MIRABILIS AND THESE OTHER

17  CORPORATIONS WERE FORMED FOR THE SOLE PURPOSE OF

18  DEFRAUDING OTHERS.

19              AND JUDGE, AS WE'VE SAID BEFORE, FOR

20  PURPOSES OF CONSIDERING THESE THINGS, WE CERTAINLY

21  BELIEVE YOU CAN TAKE JUDICIAL NOTICE OF THESE.  BUT,

22  IMPORTANTLY YOUR HONOR, IF YOU LOOK UNDER TAB NUMBER

23  TWENTY-ONE AND TWENTY-TWO OF THE NOTEBOOK, THESE

24  ADMISSIONS ARE BINDING UPON MIRABILIS IN THIS CASE.

25              AND, A CONTROLLING PERSON FOR A

1  CORPORATION SUCH AS MIRABILIS, THEIR STATEMENTS AND THEIR

2  ADMISSIONS ARE GOING TO BE BINDING UPON MIRABILIS.

3  AND WE BELIEVE YOU'RE GOING TO HEAR ARGUMENT THAT

4  THAT IS NOT THE CASE.

5  BUT IF YOUR HONOR LOOKS AT TAB NUMBER

6  TWENTY-ONE WHICH IS THE FDIC V. HEMMERLY CASE, AND ON

7  PAGE NINE OF THAT OPINION, IN THE VERY BOTTOM RIGHT

8  HAND CORNER BEFORE IT GETS TO DIRECTED VERDICT, IT

9  SAYS WE HOLD THAT THE TRIAL COURT'S RULINGS IN THE

10  FORECLOSURE ACTION BOUND SUN ISLAND BY VIRTUE OF LAW

11  OF THE CASE DOCTRINE. FURTHERMORE, A RULING ADVERSE

12  TO A CONTROLLING PERSON OF A CORPORATION ON A GIVEN

13  CLAIM, PRECLUDES THE CORPORATION FROM LITIGATING THAT

14  CLAIM IN A SUBSEQUENT ACTION.

15  AND SO, JUDGE, THERE IS NO DISPUTE THAT I

16  DON'T THINK EVEN MIRABILIS CAN COME IN AND CLAIM THAT

17  AMODEO DIDN'T CONTROL THIS COMPANY. AND CERTAINLY IF

18  WE WERE ALLOWED TO PRESENT EVIDENCE WE BELIEVE THAT

19  THAT IS EXACTLY WHAT THE EVIDENCE WOULD SHOW.

20  IS THAT HE WAS THE SOLE CREDITOR, HE WAS

21  THE ONE THAT CONTROLLED IT, HE WAS THE STRAW THAT

22  STIRRED THE DRINK, SO TO SPEAK. THE BUCK STOPPED

23  THERE FOR HIM. THERE WAS NOBODY THAT CONTROLLED

24  MIRABILIS OTHER THAN HIM. HE SET THE DIRECTORS, HE

25  CONTROLLED WHO WAS IN WHAT POSITIONS, HE WAS THE ONE

| | |
|---|---|
| 1 | THAT WAS IN ULTIMATE CONTROL OF THE CORPORATION. |
| 2 | AND SO, ANY STATEMENTS THAT HE MADE IN HIS |
| 3 | PLEA AGREEMENT AND ANYTHING THAT OCCURRED AS A RESULT |
| 4 | OF HIS GUILTY PLEA, WOULD CONCLUSIVELY ESTABLISH THAT |
| 5 | MIRABILIS WAS NOTHING MORE THAN A FRAUDULENT ENTITY |
| 6 | THAT WAS MERELY A FICTITIOUS SHAM. |
| 7 | AND, JUDGE, AS TO THE ISSUE OF FRAUD, WE |
| 8 | HAVE CITED SEVERAL CASES AND THEY START AT TAB FOUR |
| 9 | OF THE NOTEBOOK, THAT A CRIMINAL CONVICTION OF A |
| 10 | DEBTOR CONCLUSIVELY ESTABLISHES A FRAUDULENT INTENT. |
| 11 | NOW, EVEN THOUGH MIRABILIS IS CURRENTLY UNDER |
| 12 | INDICTMENT, I UNDERSTAND THAT THEY HAVE NOT ENTERED |
| 13 | INTO ANY KIND OF PLEA AGREEMENT. SO THESE CASES TALK |
| 14 | ABOUT THE DEBTOR. |
| 15 | BUT THE REALITY IS, THAT SINCE MR. AMODEO |
| 16 | HAS ALREADY BEEN CONVICTED, AND SINCE HE'S THE |
| 17 | CONTROLLING PERSON OF MIRABILIS, AND SINCE HE HAS |
| 18 | ADMITTED AS TO ALL OF THESE THINGS THAT WE HAVE |
| 19 | ALLEGED IN OUR MOTION, THEN THOSE ACTS -- THOSE |
| 20 | STATEMENTS AND THOSE ADMISSIONS ARE BINDING UPON |
| 21 | MIRABILIS. |
| 22 | AND SO, FOR THOSE REASONS, YOUR HONOR, WE |
| 23 | DON'T BELIEVE UNDER THE FELTMAN CASE THAT THEY HAVE |
| 24 | ANY RIGHT TO COME IN HERE BECAUSE MIRABILIS IS MERELY |
| 25 | A SHAM CORPORATION AS MR. AMODEO, WHO COMBINED |

1    MIRABILIS, HAS TESTIFIED AND HAS ADMITTED AS PART OF HIS
2    GUILTY PLEA.
3              THE NEXT ISSUE, YOUR HONOR, GOES TO A
4    STANDING ISSUE.  AND, THERE'S TWO KIND OF INTER-
5    RELATED ISSUES HERE.  ONE OF THEM YOU'RE GOING TO
6    HEAR, I'M SURE MS. GREEN TALK ABOUT, IS THE *IMPERI*
7    *DELICTO*.  BUT THIS IS -- THAT'S NOT A STANDING
8    DEFENSE.  THAT'S AN AFFIRMATIVE DEFENSE.  THAT'S A
9    DOCTRINE FOR THE COURT TO CONSIDER AND IT'S
10   APPROPRIATE TO CONSIDER AT THIS TIME.
11             BUT, THE REALITY IS FROM ALL OF THE PLEA
12   AGREEMENTS, FROM THE AFFIDAVITS THAT HAVE BEEN
13   ATTACHED TO ALL OF THE MOTIONS TO DISMISS IN THIS
14   CASE, THE DEBTOR DID NOT HAVE A SEPARATE IDENTITY
15   FROM MR. AMODEO.  THERE WAS NO SEPARATE IDENTITY
16   BETWEEN THE TWO.
17             AND THE CASES SAY THAT YOU SHOULD
18   DISREGARD THE CORPORATE STATUS OF AN ENTITY IN THE
19   EVENT THAT IN THIS CASE THE CORPORATE ENTITY IS
20   NOTHING BUT SOMETHING THAT WAS USED FOR AN
21   ILLEGITIMATE PURPOSE OR A FRAUD.
22             AND THE LEAD CASE UNDER THAT IS THE BENDIX
23   CASE WHICH IS UNDER TAB NUMBER SEVEN, YOUR HONOR.
24   AND THIS CASE TALKS ABOUT THE FACT THAT THE SEPARATE
25   IDENTITIES OF CORPORATIONS WILL BE DISREGARDED TO

1 | SHOW THAT ONE -- IF THERE'S A SHOWING THAT ONE
2 | CORPORATION IS A MERE INSTRUMENTALITY OF ANOTHER, IN
3 | THIS CASE IT'S TWO CORPORATIONS, BUT THE ANALOGY IS
4 | STILL THE SAME. IF AN INDIVIDUAL USES A CORPORATION
5 | AS A MERE INSTRUMENTALITY OR DEVICE TO MISLEAD
6 | CREDITORS OR FOR A FRAUDULENT PURPOSE, THEN THAT
7 | CORPORATION HAS NO SEPARATE EXISTENCE.

8 | WELL, IN THIS CASE JUDGE, WHAT HAS
9 | HAPPENED IS WE DON'T BELIEVE THERE IS ANY SEPARATE
10 | CORPORATE EXISTENCE UNDER THE FACTS IN THIS CASE. IF
11 | THERE'S NO SEPARATE CORPORATE EXISTENCE, MR. AMODEO
12 | HAS ALREADY FORFEITED TO THE UNITED STATES OF
13 | AMERICA, ALL OF HIS ASSETS INCLUDING THE CAUSES OF
14 | ACTION -- SOME OF THE CAUSE OF ACTION THAT WE BELIEVE
15 | ARE AT ISSUE HERE. AND CERTAINLY SOME OF THE CLAIMS,
16 | IF NOT ALL OF THE CLAIMS, THAT ARE AT ISSUE HERE.

17 | AND THEREFORE, MIRABILIS DOES NOT HAVE ANY
18 | STANDING AS A MERE ALTER EGO THAT SHOULD BE
19 | DISREGARDED TO PURSUE THESE ACTIONS.

20 | THE NEXT ISSUE, YOUR HONOR, IS THIS *IMPERI*
21 | *DELICTO* TYPE DEFENSE. AND THAT SAYS THAT EVEN IF THE
22 | CORPORATION HAS A SEPARATE EXISTENCE, THEN IF IT
23 | COMMITTED A FRAUD, IT CANNOT MAINTAIN THE ACTION.
24 | AND THE LEAD CASE ON THIS, YOUR HONOR, THAT WE CITED
25 | IS UNDER TAB NUMBER ELEVEN, IT'S THE OFFICIAL

1  | COMMITTEE OF UNSECURED CREDITORS OF PSA. AND THIS IS A

2  | 2006 CASE OUT OF THE ELEVENTH CIRCUIT.

3  | AND IF YOUR HONOR GOES TO PAGE FIVE OF THE

4  | OPINION, YOUR HONOR WILL SEE THAT THIS IS A SITUATION

5  | WHERE EPS OPERATED A MASSIVE PONZI SCHEME AND

6  | DEFRAUDED THOUSANDS OF INVESTORS. AND THE SOLE

7  | SHAREHOLDER WAS ONE INDIVIDUAL, A PERSON NAMED

8  | EDWARDS. AND THEY FILED FOR BANKRUPTCY.

9  | AND ONE OF THE CLAIMS THEY BROUGHT SOME

10 | ADVERSARY ACTIONS -- ONE OF THEM WAS AVOIDANCE CLAIMS

11 | WHICH ARE SIMILAR TO SOME OF THE FRAUDULENT TRANSFER

12 | CLAIMS THAT HAVE BEEN BROUGHT IN THE HOTH CASE

13 | SPECIFICALLY.

14 | AND THERE WAS A MOTION TO DISMISS IN THE

15 | ADVERSARY ACTION. AND THE COURT WENT THROUGH THE

16 | ANALYSIS, AND IMPORTANTLY, THE COURT SAID, THIS IS ON

17 | PAGE NUMBER SIX, YOUR HONOR, IN THE LOWER RIGHT HAND

18 | CORNER, IT SAYS THE ARGUMENT OF THE IRA CUSTODIANS

19 | THAT THE WRONGDOING OF EPS DEPRIVES ALADDIN OF

20 | STANDING TO ASSERT CLAIMS AGAINST THEM FAILS BECAUSE

21 | AN ANALYSIS OF STANDING DOES NOT INCLUDE AN ANALYSIS

22 | OF EQUITABLE DEFENSES SUCH AS *IMPERI DELICTO*.

23 | AND SO, THESE ARE TWO SEPARATE AND

24 | DISTINCT THINGS. THE FIRST ONE IS STANDING WHETHER

25 | MIRABILIS, BECAUSE IT'S A MERE ALTER EGO OF FRANK

1    AMODEO AND BECAUSE IT WAS FORMED SOLELY FOR A FRAUDULENT

2    PURPOSE EVEN HAS STANDING TO PURSUE IT.  AND EVEN IF

3    YOUR HONOR SAYS WELL YES, IT DOES HAVE STANDING, OR I

4    DON'T FIND THAT FRANK AMODEO AND MIRABILIS ARE REALLY

5    ALTER EGOS OR HAD SOME PURPOSE OTHER THAN BEING AN

6    INSTRUMENTALITY OF FRAUD, YOUR HONOR CAN STILL GRANT

7    OUR MOTION TO DISMISS ON THIS ISSUE.

8                 AND SO, YOUR HONOR, IT GOES ON TO SAY, AND

9    IT'S INTERESTING BECAUSE ON PAGE SEVEN OF THE OPINION

10   IS SIMILAR TO THE ARGUMENT THAT THE DEBTOR RAISES IN

11   THIS CASE.  IT SAYS ALADDIN ARGUES THAT HIS RECOVERY

12   WOULD ULTIMATE INURE TO THE BENEFIT OF INNOCENT

13   CREDITORS INSTEAD OF THE WRONGFUL DEBTOR.

14                 BUT HE FAILS TO ACCOUNT FOR THE LIKELIHOOD

15   THAT INDIVIDUAL CREDITORS DAMAGED BY THE DEBTOR'S

16   PONZI SCHEME CAN SEPARATELY PURSUE CLAIMS AGAINST THE

17   IRA CUSTODIANS FREE FROM THE BAR OF *IMPERI DELICTO*.

18                 AND SO, YOUR HONOR, IF THE ARGUMENT IS

19   MADE WELL FRANK AMODEO MAY HAVE DONE SOME BAD THINGS,

20   BUT WE'RE MIRABILIS AND WE'RE SEPARATE FROM HIM AND

21   WE'RE GOING TO COME IN HERE AND WE'RE GOING TO CLEAN

22   THINGS UP.

23                 JUDGE, IF THE CORPORATION WAS NOTHING MORE

24   THAN AN INSTRUMENTALITY OF FRAUD AND WAS OUT THERE

25   ONLY TO DEFRAUD OTHERS, IF SOMEONE HAS CLAIMS AGAINST

1    MIRABILIS OR WHATEVER, THEY'LL BE ABLE TO PURSUE THOSE

2    CLAIMS.  IF PEOPLE HAVE CLAIMS AGAINST EACH OTHER,

3    THEY CAN GO THROUGH THE FORFEITURE ACTION, MAKE A

4    CLAIM IN THE CRIMINAL FORFEITURE CASE OR IN THE CIVIL

5    FORFEITURE CASE AND GO THROUGH THAT PROCESS.  THEY

6    DON'T NEED THIS BANKRUPTCY PROCESS.

7                AND SO, YOUR HONOR, IT GOES ON TO PAGE

8    NUMBER NINE.  IT SAYS THE DOCTRINE OF *IMPERI DELICTO*

9    IS AN EQUITABLE DOCTRINE THAT STATES A PLAINTIFF WHO

10   HAS PARTICIPATED IN A WRONGDOING MAY NOT RECOVER

11   DAMAGES RESULTING FROM THE WRONGDOING.  THE DOCTRINE

12   OF *IMPERI DELICTO* IS BASED ON THE POLICY THE COURT

13   SHOULD NOT LEND THEIR GOOD OFFICES TO MEDIATING

14   DISPUTES AMONG WRONGDOERS, AND DENYING JUDICIAL

15   RELIEF TO AN ADMITTED WRONGDOER IS AN EFFECTIVE MEANS

16   OF DETERRING ILLEGALITY.

17                AND SO, JUDGE, WE BELIEVE THE RECORD IS

18   ABSOLUTELY CLEAR THAT, AND THERE CAN BE NO DISPUTE,

19   THAT MIRABILIS ENGAGED IN WRONGDOING.  THE FACT THAT

20   IT'S BEEN INDICTED.  THE FACT THAT FRANK AMODEO HAS

21   ADMITTED TO IT.  THE FACT THAT THERE'S BEEN

22   AFFIDAVITS THAT THE GOVERNMENT HAS PROVIDED AS PART

23   OF ITS MOTION THAT ARE IN THE RECORD TODAY, THAT ALL

24   SHOW WRONGDOING.

25                THIS IS AN ADDITIONAL BASIS FOR THE COURT

1    TO DETERMINE THAT MIRABILIS, AND SPECIFICALLY HOTH AS IT

2    RELATES TO MY CLIENT, SHOULD NOT BE PERMITTED TO

3    MAINTAIN THIS BANKRUPTCY PROCEEDING.

4              THE NEXT ISSUE THAT WE RAISE, YOUR HONOR,

5    AND REMEMBER I SAID THAT ROBERT MARIA WAS LISTED BY

6    MIRABILIS AS A SHAREHOLDER. AND SO, THE NEXT ISSUE

7    IS WHETHER OR NOT MIRABILIS EVEN HAD THE PROPER

8    AUTHORITY -- EVEN HAD THE PROPER BOARD TO PUT THIS

9    COMPANY INTO BANKRUPTCY IN THE VERY FIRST PLACE.

10             AND, YOUR HONOR, IN THE FRONT OF THE

11   NOTEBOOK UNDER TAB NUMBER A IN THE NOTEBOOK, THERE'S

12   TWO GREEN TABS THAT YOUR HONOR WILL FIND. AND THESE

13   ARE THE BYLAWS OF MIRABILIS. NOW WHAT WAS HAPPENING,

14   YOUR HONOR, IS AS MIRABILIS WAS UNRAVELING AS THE

15   GOVERNMENT WAS COMING AFTER THEM, THEY WERE DOWN TO

16   BASICALLY NO EMPLOYEES. THEY DIDN'T HAVE ANY

17   OPERATIONS. THEY HAD NO ORGANIZATIONAL STRUCTURE.

18             AND SO THERE WAS THIS MEETING OF --

19   ALLEGEDLY A MEETING OF THE BOARD OF DIRECTORS AT

20   WHICH TIME A NEW DIRECTOR WAS PUT INTO PLACE AND THEN

21   THERE WAS THE SUBSEQUENT MEETINGS AND EVERYTHING

22   ELSE.

23             FOR PURPOSES OF THIS ARGUMENT, JUDGE, NONE

24   OF THAT AFTER THE MEETING OF THE BOARD OF DIRECTORS

25   IS MATERIAL. NOW, WE'RE NOT SAYING THAT ANYBODY

1  COMMITTED ANY ACTS OR ANYTHING ELSE FOR PURPOSES OF THIS
2  PARTICULAR ARGUMENT, ANY BAD ACTS.  IT MAKES NO
3  DIFFERENCE.

4          BECAUSE WHAT THE BYLAWS STATE IS THERE'S A
5  VERY SPECIFIC PROCEDURE THAT HAS TO BE GONE THROUGH
6  TO APPOINT A BOARD.  AND THIS IS WHAT THE PROCEDURE
7  SAYS, AND IT'S ON -- IT'S UNDER THE FIRST GREEN TAB
8  UNDER VACANCY.  IT SAYS ANY VACANCY OCCURRING ON THE
9  BOARD OF DIRECTORS INCLUDING A VACANCY CREATED BY
10 REASON OF AN INCREASE IN THE NUMBER OF DIRECTORS, MAY
11 BE FILLED BY THE AFFIRMATIVE VOTE OF TWO THIRDS OF
12 THE ISSUED AND OUTSTANDING SHARES OF THE CORPORATION.

13         SO THE ONLY WAY THAT A NEW BOARD OF
14 DIRECTOR CAN BE PUT ON THE BOARD IS NOT BY A VOTE OF
15 TWO-THIRDS OF THE BOARD OF DIRECTORS, IT'S ONLY BY A
16 VOTE OF TWO-THIRDS OF THE ISSUED AND OUTSTANDING
17 SHARES OF THE CORPORATION.

18         YOUR HONOR, I'LL PROFFER TO YOU, BECAUSE
19 WE TOOK THE DEPOSITION OF MR. CUTHILL WHO WAS THE
20 ONLY PERSON LEFT TO DEPOSE AS WE WERE PREPARING FOR
21 THE EVIDENTIARY HEARING IN THIS CASE.  AND I PROFFER
22 TO YOUR HONOR, THAT MR. CUTHILL WHO CAME IN AFTER THE
23 FACT, TESTIFIES THAT HE'S NOT AWARE OF ANY
24 SHAREHOLDER CONSENT TO ANY AMENDMENT OF THESE BYLAWS,
25 NOR IS HE AWARE OF ANY NOTICE OR VOTE OF THE SHARES

```
1    AS REQUIRED IN THESE BYLAWS TO APPOINT A DIRECTOR.

2              SO THE ONLY ONE LEFT AT MIRABILIS WOULD

3    NOT EVEN BE ABLE TO TESTIFY THAT THESE WERE COMPLIED

4    WITH.  AND EVEN IF MIRABILIS WERE TO TAKE THE

5    POSITION, YOUR HONOR, WELL WE AMENDED THESE BYLAWS.

6    WELL, YOUR HONOR HAS TO LOOK AT THE AMENDMENT

7    PROVISION.  AND THAT IS THE SECOND GREEN TAB THAT I

8    PUT IN THE NOTEBOOK FOR YOU.

9              AND IF YOU LOOK JUST BEFORE, YOUR HONOR,

10   YOU'LL SEE THAT ON PAGE NINETEEN OF THE BYLAWS, IT

11   SAYS AMENDMENT OF BYLAWS.  BUT THE OPERATIVE LANGUAGE

12   IS WHAT I'VE TABBED AND HIGHLIGHTED THERE UNDER C.

13   IT SAYS NOTWITHSTANDING ANYTHING CONTAINED IN THESE

14   BYLAWS TO THE CONTRARY, THE CORPORATION'S

15   SHAREHOLDERS -- SHAREHOLDERS, NOT DIRECTORS, MAY

16   AMEND OR REPEAL THE CORPORATION'S BYLAWS.  PROVIDED,

17   HOWEVER, THAT ANY SUCH AMENDMENT OR REPEAL SHALL

18   REQUIRE AN EIGHTY PERCENT VOTE OF ALL ISSUED AND

19   OUTSTANDING SHARES IN WRITING.

20             YOUR HONOR, THERE IS NO EVIDENCE IN THIS

21   RECORD.  IN FACT, WE WOULD PROFFER TO YOUR HONOR THAT

22   THE ONLY PERSON THAT COULD TESTIFY ON BEHALF OF

23   MIRABILIS, HAS ALREADY ADMITTED THAT THERE HAS NEVER

24   BEEN AN EIGHTY PERCENT VOTE OF ALL ISSUED AND

25   OUTSTANDING SHARES IN WRITING SO AS TO AMEND THESE
```

1    BYLAWS.

2              AND IF THESE BYLAWS HAVE NOT BEEN PROPERLY

3    AMENDED, WHICH THERE'S NO EVIDENCE THAT THEY HAVE AND

4    WE DON'T BELIEVE THEY COULD HAVE BEEN, THEN THERE HAD

5    TO BE A TWO-THIRDS VOTE TO PUT IN THE DIRECTOR THAT

6    ULTIMATELY HIRED MR. CUTHILL, THAT ULTIMATELY HIRED

7    MS. GREEN, THAT ULTIMATELY BROUGHT THIS CASE.

8              AND JUDGE, THE REALITY IS, THAT THE

9    DIRECTOR WHO VOTED TO MOVE FORWARD WITH THIS

10   BANKRUPTCY, WAS NOT A DULY ELECTED AND PROPERLY

11   ELECTED DIRECTOR OF THE COMPANY.  HAD NO AUTHORITY.

12   AND THE FILING OF THIS BANKRUPTCY WAS AN ULTRAVIRUS

13   ACTION BECAUSE IT WAS NOT DONE BY A DULY ELECTED

14   BOARD OF DIRECTORS.

15             AND SO, JUDGE, WE BELIEVE THAT'S AN

16   ADDITIONAL REASON.  AND WE CERTAINLY HAVE STANDING TO

17   BRING THAT EVEN ROBERT MARIA -- BASED ON THEIR

18   ALLEGATION THAT HE'S A SHAREHOLDER, WOULD HAVE THE

19   RIGHT TO COME IN AND CHALLENGE THAT.  EVEN IF THEY

20   WOULD CONTEST OUR STANDING TO CHALLENGE THAT UNDER

21   SOME OTHER BASIS, WE WOULD CERTAINLY HAVE STANDING TO

22   CHALLENGE THAT AS A SHAREHOLDER.

23             LASTLY, YOUR HONOR, AND I KNOW THAT MY

24   COLLEAGUES OVER HERE ARE GOING TO SPEND MORE TIME IN

25   THIS ISSUE.  WE CERTAINLY ADOPT AND JOIN IN THEIR

1     REASONING AND THEIR MOTIONS AS WELL, YOUR HONOR, AND

2     CERTAINLY THE RELIEF THEY SEEK.

3          BUT, THE REALITY IS, THE UNDISPUTED

4     EVIDENCE WE BELIEVE WOULD BE PROFFERED TO YOUR HONOR,

5     AND I'VE GOT AN EXHIBIT LIST I'D JUST LIKE TO PROFFER

6     TO THE COURT.  BECAUSE, AGAIN, WE WERE PREPARING FOR

7     THIS HEARING AWHILE BACK.  IS THAT MR. AMODEO

8     DIRECTED THE FILING IN THIS ACTION TO NUMBER ONE

9     AVOID WHAT HE CALLS A FORECLOSURE.

10         BUT WE BELIEVE THAT EVIDENCE SHOWS IT'S

11    REALLY WHY HOTH FILED.  OUR CLIENTS UP IN VIRGINIA

12    WERE ENTITLED TO A PIECE OF PROPERTY THAT WAS

13    SUPPOSED TO BE COLLATERAL FOR A CERTAINLY LOAN.  AND

14    THERE WAS A SUMMARY JUDGMENT HEARING THAT WAS SET FOR

15    THE NEXT DAY AFTER THE FILING.

16         AND SO WE BELIEVE THAT THE FILING WAS --

17    AT LEAST AS IT RELATES TO HOTH, WAS CERTAINLY AN

18    ATTEMPT TO AVOID THAT SUMMARY JUDGMENT.  ONE OF THE

19    PARTIES, WHO IS NOT A DEBTOR IN THIS CASE, HAD

20    SUMMARY JUDGMENT ENTERED AGAINST IT.  AND SO, WHEN

21    THE EVIDENCE OR THE AFFIDAVITS TALK ABOUT A

22    FORECLOSURE, WE BELIEVE THAT'S WHAT -- EXACTLY WHAT

23    THEY'RE TALKING ABOUT.  WAS MY CLIENT'S ACTION UP IN

24    VIRGINIA.

25         AND, OF COURSE, WHAT THE STATEMENTS OF MR.

1    AMODEO MADE OR THE STATEMENTS THAT MR. AMODEO MADE AT HIS

2    SENTENCING AND EVERYTHING ELSE, AS WELL -- BOTH THE

3    SENTENCING HEARING WHICH WAS JUST RECENTLY AS WELL

4    WHEN HE WAS GOING THROUGH HIS PLEA PROCEEDINGS, WAS

5    THAT THE MAIN PURPOSE AND FOCUS OF THE BANKRUPTCY WAS

6    SIMPLY TO BE ABLE TO MARSHALL ASSETS FOR THE

7    GOVERNMENT TO GET HIM A MORE LENIENT SENTENCE.

8         HE THOUGHT THE JUDGE WAS GOING TO DO THE

9    SAME THING THE JUDGE DID IN THE PEARLMAN CASE WHICH

10   SAYS FOR EVERY MILLION DOLLARS YOU GET OR SOMETHING

11   LIKE THAT, THEN WE'LL TAKE A MONTH OFF YOUR SENTENCE,

12   SOMETHING LIKE THAT. HE DIDN'T USE THOSE WORDS, YOUR

13   HONOR, BUT YOU CAN CLEARLY GLEAN FROM WHAT HE WAS

14   SAYING THAT'S WHAT HE WAS TALKING ABOUT.

15        THERE'S NO HOPE OF REORGANIZATION FOR THIS

16   COMPANY. THERE'S WAS NO HOPE AS OF THE DATE OF

17   FILING, WHICH WE BELIEVE IS THE OPERATIVE DATE THAT

18   YOU LOOK AT. THEY ONLY HAD ONE EMPLOYEE AND THAT WAS

19   MR. CUTHILL. THEY HAD NO OPERATIONS. THEY HAD NO

20   ASSETS. THEY HAD NO EMPLOYEES. THEY HAD NO BUSINESS

21   OPERATIONS. THEY HAD NO HOPE OF REORGANIZATION AS OF

22   THE DATE OF FILING.

23        AND SO WE ALSO INCLUDED IN OUR MOTION, A

24   MOTION TO CONVERT TO CHAPTER SEVEN, WE BELIEVE THE

25   CASE SHOULD CERTAINLY BE DISMISSED, YOUR HONOR. BUT,

1  IN THE ALTERNATIVE, WE BELIEVE IT SHOULD BE CONVERTED TO

2  A CHAPTER SEVEN.

3  AND WITH THAT, YOUR HONOR, I'LL YIELD THE

4  BALANCE OF MY TIME TO MY COLLEAGUES AND THE OTHERS

5  UNLESS YOUR HONOR HAS ANY QUESTIONS FOR ME.

6  THE COURT: NO, THANK YOU. THANK YOU VERY MUCH

7  MR. VALDES. WHO WOULD LIKE TO GO NEXT?

8  MR. DIMARIA: I DON'T KNOW IF MS. GREEN WANTS

9  TO RESPOND --

10  THE COURT: NO, NO, NO. SHE'LL RESPOND AFTER

11  ALL OF YOU ARE ALREADY DONE.

12  MR. DIMARIA: YOUR HONOR, AGAIN, JOE DIMARIA

13  FOR THE RACHLIN DEFENDANTS. WE'VE JOINED IN THE

14  CREDITORS MOTION AND THERE'S TWO ISSUES THAT I

15  BELIEVE ARE PERTINENT BASED UPON THE OPPOSITION

16  MEMORANDUM FILED BY MIRABILIS' COUNSEL. ONE ISSUE IS

17  ONE OF STANDING, AND ONE ISSUE IS THE ISSUE OF THE

18  BAD FAITH. SO I'LL TAKE THEM IN THAT ORDER BECAUSE I

19  THINK IT IS MOST LOGICAL.

20  I THINK THE STANDING IS PRETTY CLEAR CUT

21  AND I'LL TALK ABOUT THE ONE CASE THEY CITED IN

22  OPPOSITION, THE BANK S. AND I KNOW I FILED MY

23  SUPPLEMENTAL MEMORANDUM LATE, I DON'T KNOW IF YOU

24  HAVE HAD A CHANCE TO REVIEW IT.

25  THE COURT: I HAVEN'T LOOKED AT IT BUT I DID

1    RECEIVE IT.

2         MR. DIMARIA:  OKAY.  AND, I LAID IT OUT ALL IN

3    THERE SO I'LL TRY TO BE BRIEF BECAUSE I KNOW YOUR

4    HONOR HAS THAT AND IT'S LAID OUT IN THERE.

5         BUT, I THINK THE LAW IS PRETTY CLEAR.  AND

6    THE WELLS CASE OUT OF THIS DISTRICT FROM 1998 SET

7    FORTH, JUDGE PROCTOR HAD DECIDED A CASE ON STANDING,

8    AND TALKED ABOUT THE PRACTICAL STAKE THAT NEEDS TO BE

9    INVOLVED FOR SOMEONE TO HAVE STANDING.

10        AND COURTS HAVE RECOGNIZED THAT THE TERM

11   PARTY IN INTEREST SHOULD HAVE -- SHOULD BE CONSTRUED

12   BROADLY TO ALLOW ALL PARTIES EFFECTED BY A CHAPTER 11

13   PROCEEDING TO BE HEARD.  I THINK IT SHOULD BE PRETTY

14   SIMPLE TO NOTE THAT IF THIS BANKRUPTCY CASE IS NOT

15   HERE THE ADVERSARY CAN'T BE HERE AS WELL.

16        THAT'S NOT A PRACTICAL STATE FOR MY

17   CLIENTS AND OBVIOUSLY COUNSEL TRIES TO TURN ON ITS

18   HEAD AND SAY WELL, THEY DON'T WANT TO BE SUED.  I

19   DON'T WANT TO BE IN THIS BANKRUPTCY PROCEEDING

20   BECAUSE IT SHOULDN'T BE HERE AND I HAVE A STAKE.  AND

21   IF THE BANKRUPTCY PROCEEDING WAS IMPROPER, THEN THE

22   ADVERSARY CAN'T FLOW FROM IT, THEN I HAVE A PRACTICAL

23   STAKE.

24        THE WELLS CASE MAKES IT CLEAR.  THE

25   PEACHTREE CASE WHICH COMES OUT OF THE NORTHERN

1    DISTRICT OF ILLINOIS WHICH IS PROBABLY THE SEMINAL CASE

2    ON THIS AND THESE ARE CASES WHERE ADVERSARY

3    DEFENDANTS WERE THE ONES RAISING THE ISSUE, SAYING

4    THAT IT WAS IMPROPER TO HAVE THE ADVERSARY BECAUSE IT

5    WAS IMPROPER TO HAVE THE BANKRUPTCY.

6             AND THE PEACHTREE CASE LET IT OUT AND SAID

7    DETERMINING WHETHER A GIVEN PARTY IS A PARTY IN

8    INTEREST IS A RECURRING PROBLEM IN THE BANKRUPTCY

9    ARENA.  WHICH IS IMPORTANT BECAUSE YOU'VE GOT TO DO

10   IT ON A CASE BY CASE BASIS.

11            SO THAT'S WHY ONE OF THE THINGS I DID WAS

12   AFTER THE MAY HEARING IS I WENT BACK AND I READ THE

13   THROUGH THE FILE IN THE BANK S CASE TO SEE WHAT WAS

14   REALLY GOING ON.  BECAUSE SOMETIMES OPINIONS DON'T

15   TELL YOU EVERYTHING, AND I WENT AND I READ THE

16   TRANSCRIPTS THAT WERE AVAILABLE ON PACER AND I READ

17   EXACTLY WHAT WAS GOING ON.

18            AND I THINK IT'S IMPORTANT.  YOU LOOK AT

19   EVERY CASE INDIVIDUALLY.  AND TAKE INTO

20   CONSIDERATIONS AS A SENATOR DECONSINI AT THE TIME

21   SAID THE PARTICULAR PURPOSES OF THE PROVISION IN

22   QUESTION AS ONE BANKRUPTCY COURT HAS OBSERVED

23   EXPLICITLY AN ENTITY MAY BE A REAL PARTY IN INTEREST

24   AND HAVE STANDING IN ONE RESPECT, WHILE HE MAY LACK

25   STANDING FOR ANOTHER PURPOSE.

1            AND IT GOES ON TO DESCRIBE IN GENERAL IN THE

2    PEACHTREE CASE WHICH IS 188 B.R. 815 (1507-08) OF THE

3    DECISION, THE EASIEST WAY TO FIND IT, AND THEY LAY

4    OUT THE LAW THAT JUDGE PROCTOR FOLLOWED IN THE WELLS

5    CASE, WHICH IS 227 B.R. 553 (1998) AND THAT IS THE

6    LEADING CASE.

7            SO, COUNSEL FOR MIRABILIS COMES BACK AT US

8    AND SAYS WELL THIS IS REALLY MORE LIKE THE BANK S

9    CASE IT'S NOT LIKE THOSE CASES.  IT'S LIKE THE BANK S

10   CASE WHERE THE GUNSTER OAKLEY FIRM HAD BEEN

11   DETERMINED TO LACK STANDING AND JUDGE CRYSTAL IN HIS

12   UNIQUE WAY, TALKED ABOUT THEM ACTING IN BAD FAITH

13   THEMSELVES AND HAVING LITIGATION TACTICS.

14           SO I WENT BACK AND I READ THE TRANSCRIPTS

15   OF WHAT HAPPENED IN THAT HEARING.  AND WHAT WAS GOING

16   ON WAS THEY WERE TRYING TO KNOCK LOU FREEMAN OUT.

17   YOU KNOW, LOU FREEMAN IS A PRETTY NOTED AND

18   AGGRESSIVE TRUSTEE.  HE WORKS UP HERE AS WELL AS DOWN

19   IN MIAMI.  EVERYBODY KNOWS HIM.  AND THEY WANTED TO

20   KNOCK HIM OUT.

21           AND ONE OF THE REASONS YOU KNOW THAT IT'S

22   DIFFERENT FROM THIS CASE, THEY WERE MOVING TO

23   CONVERT.  WHAT THEY WERE TRYING TO DO IS GET LOU

24   FREEMAN THROWN OUT.  THEY MADE ALL KINDS OF

25   ALLEGATIONS AGAINST HIM TO TRY TO GO TO A PANEL

1    TRUSTEE AND START ANEW.

2              AS YOU NOTICED IN OUR PARTIAL JOINDER, WE

3    HAVE NOT SOUGHT CONVERSION. WE BELIEVE THIS CASE WAS

4    IMPROPER AND THAT SHOULD BE THE FOCUS AND WE ARE NOT

5    -- AND THEREFORE WE DO HAVE DIRECT STANDING BECAUSE

6    AS JUDGE CRYSTAL SAID IN THE GUENSTER CASE, IT

7    APPEARED THAT GUENSTER WHICH LACKED ANY DIRECT

8    INTEREST IN THE RELIEF SOUGHT IN THE MOTION TO

9    CONVERT, WAS SEEKING TO PROTECT WHAT IT DEEMED TO BE

10   THE INTEREST OR RIGHTS OF OTHERS.

11             WELL THAT SHOULD BE PRETTY OBVIOUS THAT

12   YOU CAN'T STAND ON THE RIGHTS OF OTHERS TO HAVE YOUR

13   OWN STANDING. AND WHAT HAPPENED IN THAT CASE WAS, AS

14   JUDGE CRYSTAL FOUND, WAS THAT THE ONLY INTEREST THAT

15   GUENSTER WAS IDENTIFYING ITS MOTION TO CONVERT WAS

16   THEY WERE TRYING TO PROTECT SOME DEFENSES IN SOME

17   WAY. AND THEY THOUGHT THAT THEY NEEDED TO FILE THAT

18   MOTION TO PROTECT THOSE DEFENSES.

19             SO I DON'T THINK THAT THE BANK S CASE

20   DEPRIVES US OF THE STANDING THAT WE HAVE UNDER

21   SECTION 1109. BUT, THERE WAS ANOTHER IMPORTANT CASE

22   THAT CAME ALONG WHICH IS THE FACHETTI VERSUS SCARPONE

23   CASE, WHICH IS A DISTRICT COURT DECISION FROM NEW

24   JERSEY 2008 WL 877853. A VERY RECENT CASE, MAY OF

25   2008.

1                   AND IN THAT CASE THE COURT WENT ON AND CITING

2    OTHER LAW TALKED ABOUT THE FACT THAT UNDER BANKRUPTCY

3    CODE 1109 A PARTY MAY BE HEARD ON ANY ISSUE IN A CASE

4    UNDER THIS CHAPTER.  AND GOES ON TO SAY BESIDES

5    TALKING ABOUT THE CASE BY CASE BASIS, THAT EVEN IF

6    FACHETTI DIDN'T HAVE AN ACTUAL STAKE IN THE

7    PROCEEDING, HE WAS A DEFENDANT IN THE RELATED

8    ADVERSARY PROCEEDING, WHICH MY CLIENTS ARE.

9                   WE HAVE THAT.  AND HE RAISED AN ISSUE

10   DEALING WITH A CONFLICT OF INTEREST, AN ETHICAL

11   CONCERN, HE RAISED SERIOUS ISSUES THAT WENT TO THE

12   HEART OF WHAT WAS HAPPENING BEFORE THE COURT.  AND

13   THE DISTRICT COURT SAID IN CITING CASE LAW SAID THAT

14   THAT GAVE FACHETTI STANDING.

15                SO EVEN WE DIDN'T HAVE THE PRACTICAL STAKE

16   STANDING THAT WELLS TALKS ABOUT, THAT PEACHTREE TALKS

17   ABOUT, THE DISTRICT OF NEW JERSEY IN CITING THIRD

18   CIRCUIT CASE LAW, AND OTHER THIRD CIRCUIT CASE LAW

19   FOUND THAT EVEN IF YOU WEREN'T A CREDITOR, FOR

20   EXAMPLE, THEY HAD STANDING TO RAISE THESE KIND OF

21   SERIOUS ISSUES.

22               AND THAT'S WHAT WE RAISE HERE BECAUSE WE

23   RAISE ISSUES THAT GO TO THE HEART OF WHAT THIS

24   BANKRUPTCY PROCEEDING WAS TO BE ALL ABOUT.  SO I'D

25   LIKE TO NOW SHIFT TO THAT AND AS A WAY OF PROFFER, I

```
1    THINK THE EASIEST WAY TO DO IT YOUR HONOR, IS I WILL --

2    I'M NOT MOVING INTO EVIDENCE, I'M JUST PROFFERING

3    WHAT I LAID OUT --

4         THE COURT: RIGHT, WHICH IS WHAT I ASKED YOU TO

5    DO.

6         MR. DIMARIA: YES, AND I'M JUST PROFFERING WHAT

7    I LAID OUT IN PAGES EIGHT THROUGH ELEVEN OF MY

8    MEMORANDUM. BUT LET ME SUMMARIZE IT FOR YOU AND GIVE

9    YOU AN OVERVIEW OF WHAT WAS GOING ON HERE.

10        FRANK AMODEO IS TOLD IN LATE 2006 THAT

11   HE'S A TARGET OF A GRAND JURY INVESTIGATION. AND AS

12   COUNSEL TALKED ABOUT, HE HAD THESE ORGANIZATIONS HE

13   CREATED, THESE CRIMINAL ORGANIZATIONS WHICH WERE ALL

14   PART OF THIS CRIMINAL ACTIVITY HE WAS INVOLVED IN.

15        SO WHAT AMODEO AT SOME POINT DOES IS HE

16   BEGINS TO NEGOTIATE WITH HIS CRIMINAL DEFENSE

17   COUNSEL, WITH MR. GOLD, TO TRY TO NEGOTIATE A PLEA.

18   AND AT FIRST AMODEO'S FEELING IS IT WOULD BE A BAD

19   THING TO GO INTO RECEIVERSHIP.

20        HE HAD AN OLD BANKRUPTCY ATTORNEY -- WELL

21   NOT OLD, FORMER, BANKRUPTCY ATTORNEY WHO SAID WELL

22   LET'S GO INTO BANKRUPTCY COURT. NO, HE DIDN'T WANT

23   THAT. HE WANTED TO KEEP CONTROL FOR HIMSELF. SO AT

24   ONE POINT HE TOLD MR. GOLD WELL, I'M GOING TO WIND UP

25   THE AFFAIRS. AND THIS IS ALL AMODEO'S OWN WORDS
```

1    DESCRIBED IT.  THE UNITED STATES HAS DESCRIBED IT.

2           I THINK IT'S INDISPUTABLE.  I'M GOING TO

3    WIND UP THE AFFAIRS.  THERE WERE NO BUSINESS

4    ACTIVITIES GOING ON BECAUSE ONE OF THE FACTORS YOU

5    LOOK AT UNDER THE TEST I'M GOING TO TELL YOU ABOUT IN

6    A MOMENT, THE PICCADILLY TEST AND THE NATURAL LAND

7    TEST, IS YOU LOOK AT THE EXISTENCE OF BUSINESS

8    ACTIVITY AT THE TIME.  AND THERE WAS NONE.

9           AS MR. AMODEO HAS SAID, AS THE RECORD

10   SHOWS, AS OTHER AFFIANTS HAVE SAID WHO WERE THE

11   OFFICERS AND DIRECTORS AT THE TIME.  THEY LOST ANY

12   SEMBLANCE OF CONTROL.  THEY WERE WINDING IT UP.  THEY

13   HAD NO EMPLOYEES.  THEY BASICALLY HAD PAID OFF MOST

14   OF THEIR CREDITORS WITH THE EXCEPTION PRIMARILY OF

15   THE BIG CREDITOR, THE IRS, THAT HE OWED.  AND HE WAS

16   TRYING TO WIND IT UP AND KEEP CONTROL.

17          BUT THEN TWO THINGS HAPPENED THAT MADE HIM

18   CHANGE HIS MIND AND GO INTO THE PROCEDURE THAT LED US

19   TO THE BANKRUPTCY OF MAY 2008.

20          THE FIRST THING WAS THAT MR. AMODEO HAD

21   NEGOTIATED A VERY SUBSTANTIAL SETTLEMENT WITH AN

22   INSURANCE COMPANY.  BUT HE DIDN'T BOTHER TO TELL MR.

23   GOLD ABOUT THAT.  NOW SOMETHING THAT, I THINK HIS OWN

24   CRIMINAL DEFENSE ATTORNEY DIDN'T KNOW ABOUT IT, IS

25   SOMETHING YOU NORMALLY DON'T DO WHEN YOU'RE

1    NEGOTIATING WITH THE UNITED STATES DEPARTMENT OF JUSTICE

2    IS NOT TELL THEM ABOUT A MULTI-MILLION ASSET YOU JUST

3    PULLED INTO YOUR COMPANY.

4            AND MR. GOLD REACTED AS ANY RESPONSIBLE

5    FEDERAL PROSECUTOR WOULD.  HE ISSUED SEIZURE ORDERS

6    OUT.  BECAUSE WHAT MR. AMODEO HAD DONE IS HE HAD

7    TAKEN THE MONIES FROM THE PROCEEDS AND WENT AND TRIED

8    TO BASICALLY HIRE A HOST OF LAW FIRMS, SOME OF THE

9    BIGGEST LAW FIRMS IN THIS STATE.  I THINK ABOUT TEN

10   LAW FIRMS WHERE HE GAVE THEM THESE RETAINERS TO HIRE

11   THEM AND MR. GOLD WENT IN AND GRABBED ALL THE

12   RETAINERS AND THEREFORE PUT A STOP TO MR. AMODEO'S

13   ABILITY TO TRY TO CONTROL THIS LITIGATION.

14           BECAUSE ONE ASPECT HE WANTED TO CONTROL

15   WAS HE WANTED TO START LITIGATION AGAINST HIS FORMER

16   PROFESSIONALS.  AND DESPITE THE FACT THAT HE

17   ADMITTED, AS HE'S BEEN CONVICTED OF, THAT HE FULL

18   WELL KNEW WHAT HE WAS DOING UNDER THE TAX LAWS, HE

19   TRIED TO COOK UP THIS CLAIM TO SAY -- WELL, YOU MR.

20   ACCOUNTANT SHOULD HAVE TOLD ME.  YOU MR. LAWYER

21   SHOULD HAVE TOLD ME.  YOU HAVE RESPONSIBILITY.  BUT

22   HE LOST CONTROL.

23           THE SECOND THING THAT HAPPENED IS YOU HAD

24   THAT PIECE OF PROPERTY UP IN VIRGINIA WHERE

25   FORECLOSURE WAS STARING HIM IN THE FACE AND HE WANTED

1     TO STOP THE FORECLOSURE.

2                    AND AS HE ADMITTED, THE PURPOSE OF HIS

3     BANKRUPTCY WAS TWO FOLD.  ONE WAS TO STOP THE

4     FORECLOSURE, WHICH IS AN ISSUE WHICH THE COURTS TIME

5     AND AGAIN HAVE SAID IS AN IMPROPER FOR BANKRUPTCY.

6     AND SECOND, AND THIS IS THE CYNICAL PART OF THIS CASE

7     AND THE MOST ABUSIVE PART OF THE BANKRUPTCY CODE, HE

8     WANTED TO USE THE BANKRUPTCY AS A WAY TO CONTINUE TO

9     FUND THIS LITIGATION TO TRY TO BRING MONEY IN SO HE

10    COULD GO BACK TO MR. GOLD AND JUDGE ANTOON AND SAY

11    GIVE ME A BREAK.  WHETHER IT'S A MONTH FOR EVERY

12    MILLION DOLLARS OR MORE DISCRETIONARY, HE WANTED TO

13    GET A BREAK AT SENTENCING.

14                   AND WHAT HAD HAPPENED WAS HE HAD ATTORNEYS

15    THAT HE HAD HIRED FOR HIMSELF AND FOR MIRABILIS, MR.

16    MAYER, MR. SCOROLA, WHO HAD COME TO MY CLIENT BEFORE

17    LITIGATION DEMANDING INSURANCE POLICIES.  AND HAD

18    GONE TO OTHER CLIENTS.  WE TOLD THEM NO.  WE TOLD

19    THEM YOU HAVE NO CASE GO AWAY.

20                   BUT GUESS WHAT, HE THEN DID THIS

21    INTERESTING SPLIT MOVE.  HE HAD HIMSELF SUE US IN

22    STATE COURT.  SO MY CLIENT HAS BEEN SUED IN PALM

23    BEACH COUNTY, OTHERS HAVE BEEN SUED IN ORANGE COUNTY.

24    SO HE FILED ONE SUIT UNDER THE FRANK AMODEO NAME AND

25    THEN HE CYNICALLY CREATES THE BANKRUPTCY KNOWING THAT

1  BANKRUPTCY HAS SOME ASSETS IN IT ALREADY, BECAUSE THEY

2  HAD SOME RECEIVABLES.  THEY HAD SOME MONEY.

3         AS THE DEBTOR'S REPORT SHOW YOU, THERE WAS

4  ABOUT A HALF A MILLION DOLLARS OR MORE OF MONEY.  AND

5  HE FIGURES, I'LL USE THE ASSET OF THE BANKRUPTCY TO

6  BASICALLY MAKE IT A LIQUIDATION BANKRUPTCY FROM THE

7  GET GO AND I'LL HAVE MIRABILIS -- LIKE A PENZER MOVE,

8  I'LL HAVE MIRABILIS SUE THESE GUYS IN BANKRUPTCY

9  COURT AND I'LL HAVE -- I'LL SUE THEM IN STATE COURT.

10        SO ONE OF THE NOTIONS, YOUR HONOR, IS HE

11 COULD HAVE SUED US IN STATE COURT UNDER BOTH

12 MIRABILIS AND AMODEO BUT HE COOKED UP THIS STRATEGY.

13 AND ONE OF THE REASONS HE COOKED THE STRATEGY UP WAS

14 HE DIDN'T HAVE ENOUGH MONEY TO PAY THE ATTORNEYS.

15        AS HE SAID, HE HAD NO MONEY.  AND SO THERE

16 WAS ONLY SO MUCH HE COULD DO IN TRYING TO ENCOURAGE

17 PLAINTIFF'S ATTORNEYS TO TAKE IT OUT OF CONTINGENCY.

18 SO INSTEAD HE SAID, LET ME USE THE ASSETS OF THE

19 CREDITORS.  LET ME BRING MONEY INTO THE ESTATE FROM

20 THESE RECEIVABLES, LET ME USE THE ASSETS OF THE

21 CREDITORS.

22        AND THAT WAS HIS GOAL FROM DAY ONE.  SO

23 NOW WHAT'S HAPPENED -- AND NOBODY SAT BACK AND WAITED

24 ON THIS.  THE UNITED STATES FILED THIS MOTION AS SOON

25 AS THEY COULD.  THE UNITED STATES DID SOMETHING ELSE,

1    AND THINK ABOUT THIS.

2              IF YOU'RE A COUNSEL FOR A COMPANY AND YOU

3    SAY MY DUTIES ARE TO THE COMPANY, MY DUTIES ARE NOT

4    TO FRANK AMODEO. COUNSEL IS GOING TO SAY FRANK

5    AMODEO HAD NOTHING TO DO WITH ME I WAS THERE FOR THE

6    COMPANY. WHAT COUNSEL TELLS THE U.S. GOVERNMENT

7    THEY'RE GOING TO DO SOMETHING THE U.S. GOVERNMENT

8    DOESN'T WANT YOU TO DO AND GET YOUR CLIENT INDICTED?

9    BECAUSE THAT'S WHAT HAPPENED IN THIS CASE.

10             MR. GOLD DID NOT WANT THE -- THE

11   GOVERNMENT DID NOT WANT THIS BANKRUPTCY GOING FORWARD

12   BECAUSE HE KNEW WHAT WOULD HAPPEN. IT WOULD BE

13   WASTING. BECAUSE IN THE FORFEITURE PROCEEDINGS, AS

14   THE FORGE CREDITOR SAID, THEY CAN GO IN AS AN

15   INNOCENT OWNER. THEY CAN GO INTO A VERY EFFICIENT

16   PROCEEDING IN A FORFEITURE PROCEEDING UNDER THE CIVIL

17   FORFEITURE LAWS; THEY CAN STAKE THEIR CLAIM AS AN

18   INNOCENT OWNER AND THEY CAN HAVE THEIR DAY IN COURT.

19             INSTEAD OF BANKRUPTCY, WE ALL KNOW WHAT

20   THE FIRST CLAIM THAT'S PAID IN BANKRUPTCY IS, THE

21   ADMINISTRATIVE EXPENSES. THE LAWYERS AND

22   PROFESSIONALS GET PAID. AND THE GOVERNMENT DIDN'T

23   WANT THAT.

24             AND COUNSEL -- IF COUNSEL IS GOING TO TELL

25   YOU, WELL I WAS ACTING IN THE BEST INTEREST OF THE

1   COMPANY -- WHO ACTS IN THE BEST INTEREST OF THE COMPANY

2   BY FILING A BANKRUPTCY WHEN YOU KNOW WHAT THE RESULT

3   IS GOING TO BE?   THE GOVERNMENT INDICTED THIS

4   COMPANY.

5            THIS BANKRUPTCY LED DIRECTLY TO THE

6   INDICTMENT OF MIRABILIS.  SO LET'S TALK ABOUT WHAT

7   THE LAW SAYS WITH THE FACTS THAT I PROFFER TO YOU

8   WOULD BE THESE FACTS.  AND WOULD BE UNCONTROVERTED.

9            THE NATURAL LAND CASE UNDER THE ELEVENTH

10  CIRCUIT, FROM 1987, AND THAT IS 825 F.2D 296, HAD SET

11  FORTH THE STANDARD IN THE PRE-2005 CODE.  AND THERE'S

12  A BIG CHANGE IN SECTION 1112(B) IN 2005.  MAY GETS

13  CHANGED TO SHALL.

14            IN THE OLD DAYS BEFORE CONGRESS TIGHTENED

15  IT UP, BECAUSE CONGRESS TIGHTENED A FEW PROVISIONS.

16  ONE IS THEY CHANGED THIS PROVISION.  THEY ALSO

17  CHANGED OTHER PROVISIONS SAYING THE U.S. TRUSTEE

18  SHALL FILE MOTIONS.  CONGRESS WANTED THIS PUT TO A

19  STOP AND THE MAY GOT TURNED INTO A SHALL.

20            BUT EVEN UNDER THE MAY PROVISIONS, THE

21  ELEVENTH CIRCUIT TALKED ABOUT WHEN A DISMISSAL IS

22  APPROPRIATE.  AND TALKED ABOUT SECTION -- AND TALKED

23  ABOUT, AND THIS IS IMPORTANT, YOU CAN'T TRY TO CLEAN

24  UP AND JUSTIFY A BAD PETITION FROM MAY 2008 WITH A SO

25  CALLED GOOD LIQUIDATION PLAN, IF IT IS ONE, IN 2009.

1              WHAT THE ELEVENTH CIRCUIT SAID IS THAT

2    SECTION 1129 FORBIDS A COURT FROM ACCEPTING A

3    REORGANIZATION PLAN WHICH HAS NOT BEEN PROPOSED IN

4    GOOD FAITH.  IT SEEMS UNQUESTIONABLE TO US THAT THE

5    TAINT OF A PETITION FILED IN BAD FAITH MUST NATURALLY

6    EXTEND TO ANY SUBSEQUENT REORGANIZATION -- AND I'LL

7    JUST SUBSTITUTE THE WORD, LIQUIDATION PROPOSAL HERE.

8              THUS, ANY PROPOSAL SUBMITTED BY A DEBTOR

9    WHO FILED HIS PETITION IN BAD FAITH WOULD FAIL TO

10   MEET SECTION 1129'S GOOD FAITH REQUIREMENT.

11             IN LIGHT OF THIS CONCLUSION WE CANNOT SAY

12   THAT CONGRESS INTENDED THAT A CREDITOR'S RIGHTS BE

13   DELAYED MERELY TO ALLOW BAD FAITH DEBTOR TO PRESENT A

14   REORGANIZATION PLAN WHICH, AS A MATTER OF LAW, CANNOT

15   BE APPROVED BY A COURT.

16             PUT ASIDE FROM THE FACT THAT IF YOU EVER

17   GOT THAT FAR, YOU'D HAVE TO EVALUATE THIS LIQUIDATION

18   PLAN BY LOOKING AT THE ISSUES OF THE VALIDITY OF

19   THESE LAW SUITS.  WE'RE NOT HERE TODAY FOR THAT.

20             WHAT THE ELEVENTH CIRCUIT TELLS US,

21   BINDING LAW, IS YOU CAN'T CLEAN UP YOUR BAD PETITION

22   BY SAYING, WELL GUESS WHAT, THIRTEEN MONTHS LATER I

23   FILED A LIQUIDATION PLAN AND YOU SHOULD LET ME GO

24   CHASE THESE LAW SUITS UNDER THIS LIQUIDATION PLAN.

25             THE NATURAL LAND CASE CITING TO THE ALBANY

```
1    PARTNERS CASE IN THE ELEVENTH CIRCUIT SET FORTH THE

2    STANDARD YOU LOOKED AT.  AND SAID THERE'S NO TEST.

3    YOU HAVE TO LOOK AT A VARIETY OF STANDARDS.

4              ONE OF WHICH WAS, FOR EXAMPLE, ARE YOU ON

5    THE VERGE OF A FORECLOSURE?  THAT'S ONE OF THE GOOD

6    STANDARDS, AND THAT'S THE ONE YOU SEE IN CASE AFTER

7    CASE.  AND AS COUNSEL TOLD YOU, AND AS MR. AMODEO

8    ADMITTED, I PROFFER TO YOU, THAT'S WHAT HAPPENED.

9              NOW, THE SECOND CASE I CITED -- I ONLY

10   HAVE TWO MORE CASES AFTER THIS, IS THE ELEVENTH

11   CIRCUIT'S PHOENIX PICCADILLY CASE.  THESE ARE ALL IN

12   MY MEMO BUT I WANT TO GO OVER A COUPLE OF THEM.  849

13   F.2D 1393.  AGAIN THE BAD FAITH DISMISSAL WAS

14   DISMISSED SUPPORTED BY THE EVIDENCE.  AND THE COURT

15   IN CITING NATURAL LAND AND TALKING ABOUT THE CASE

16   ALSO SAID THE COURT MAY CONSIDER ANY FACTOR WHICH

17   EVIDENCES AN INTENT TO ABUSE THE JUDICIAL PROCESS.

18              AND THE COURT SAYS, THERE'S NO SET

19   STANDARD OF WHAT THAT EVIDENCE MAY BE.  WHAT I'M

20   TELLING YOUR HONOR IS, THE PROFFER I'M MAKING TO YOU

21   -- WE HAVE AN UNPRECEDENTED ABUSE OF A JUDICIAL

22   PROCESS.  THIS ISN'T EVEN LIKE SOME OF THOSE CASES,

23   EVEN LIKE PERLMAN WHERE THEY TRIED TO PUT IN A

24   TRUSTEE OF THEIR OWN CHOOSING AND NOT HAVE THE U.S.

25   TRUSTEE APPOINT THE TRUSTEE, BUT AT LEAST PERLMAN
```

1    WASN'T TRYING TO CONTROL STUFF.

2         WHERE YOU HAVE WITH AMODEO BY HIS OWN

3    ADMISSION, BY THE IRREFUTABLE RECORD, WAS HE WANTED

4    THIS BANKRUPTCY FOR THE PURPOSE OF BENEFITTING

5    HIMSELF IN THE SENTENCING. AND EVEN THOUGH HE'S BEEN

6    SENTENCED, YOUR HONOR, UNDER RULE 35 OF THE FEDERAL

7    RULES OF CRIMINAL PROCEDURE, HE HAS A YEAR FROM HIS

8    SENTENCING -- A FULL YEAR MORE, WHERE IF HE CAN GET

9    ANY BENEFIT, HE CAN GO BACK TO THE GOVERNMENT AND SAY

10   I GOT SOME BENEFIT HERE.

11        SO THIS BANKRUPTCY IS BEING -- ATTEMPTED

12   TO BE FULFILLED FOR THE EXPRESS PURPOSE FRANK AMODEO

13   SET IT UP. TO BENEFIT HIMSELF. IF THAT'S NOT AN

14   INTENT -- ABUSE OF THE PROCEEDING, WHEN YOU HAVE A

15   CRIMINAL AND A CRIMINAL ENTERPRISE USING YOUR HONOR'S

16   COURT, I DON'T KNOW WHAT IS.

17        IN THE JOYCE DON CASE FROM THIS DISTRICT,

18   ONE OF THE KEY FACTORS WAS THAT, AGAIN, ON THE EVE OF

19   A FORECLOSURE, BANKRUPTCY FILED. AND THAT CASE WAS

20   DISMISSED.

21        AND THE LAST CASE I WANT TO TALK ABOUT,

22   BECAUSE I THINK THIS GOES TO WHAT YOUR HONOR NEEDS TO

23   LOOK AT IS THE SGL CARBON CORPORATION CASE OUT OF THE

24   THIRD CIRCUIT FROM 1999, 200 F.3D 154. AND BY THE

25   WAY IN THE JOYCE DON CASE THAT'S A RECENT CASE FROM

1  THIS DISTRICT, 2008 WL 343265, AND THAT'S UNDER THE NEW

2  POST 2005 STANDARD SO THEREFORE AS JUDGE BRISKMAN

3  SAID, DISMISSAL OF A CHAPTER 11 BANKRUPTCY IS

4  REQUIRED UNDER 1112(B)(1) WHERE THE MOVANT

5  ESTABLISHES CAUSE AND UNUSUAL CIRCUMSTANCES

6  SPECIFICALLY IDENTIFIED BY THE COURT ARE NOT THERE.

7  SO WE'RE AT THE REQUIRED STAGE -- THE SHALL NOT THE

8  MAY.

9          AND THEN GOING BACK TO THE SGL CARBON

10  CASE, WE'RE A COURT OF EQUITY HERE. AND WHAT IS THE

11  THIRD CIRCUIT TELL US ABOUT THAT IN DISMISSING FOR

12  BAD FAITH? I THINK IT'S A VERY IMPORTANT POINT.

13  WHICH IS THAT THE GOOD FAITH STANDARD PROTECTS THE

14  JURISDICTIONAL INTEGRITY OF THE BANKRUPTCY COURTS BY

15  RENDERING THEIR EQUITABLE WEAPONS. AND THOSE WEAPONS

16  ARE PRETTY STRONG, AVAILABLE ONLY TO THOSE DEBTORS

17  AND CREDITORS WITH CLEAN HANDS.

18          ANOTHER BASIC UNDERPINNING OF THE GOOD

19  FAITH DOCTRINE IS THE EQUITABLE CONCEPT OF CLEAN

20  HANDS AS A GENERAL MATTER. BANKRUPTCY RELIEF IS

21  EQUITABLE IN NATURE AND AS A GENERAL RULE, EQUITABLE

22  REMEDIES ARE NOT AVAILABLE TO ANY PARTY WHO FAILS TO

23  ACT IN AN EQUITABLE FASHION. AND THAT IS AT PAGE 161

24  OF THE OPINION.

25          YOUR HONOR, THERE WAS NO GOOD FAITH BY

1    FRANK AMODEO IN MANIPULATING AND SETTING THIS UP. THERE

2    WAS NO BASIS TO BE IN THIS BANKRUPTCY COURT. THIS

3    CASE SHOULD BE DISMISSED.

4         THE COURT: ARE ANY OF YOUR CASES ANYTHING

5    OTHER THAN SINGLE ASSET REAL ESTATE CASES?

6         MR. DIMARIA: THE KEY ONES ARE SINGLE ASSET.

7    YOU'RE RIGHT. I MEAN THE -- THE MIDDLE DISTRICT CASE

8    WAS A SINGLE ASSET CASE. BUT --

9         THE COURT: AND ALL THE ELEVENTH CIRCUIT CASES

10   ARE? I'M NOT FAMILIAR WITH SGL --

11        MR. DIMARIA: YES, NO THAT ONE WAS A LITTLE BIT

12   BROADER BUT YES, THOSE ARE SINGLE ASSET CASES. AND I

13   ADMIT THOSE ARE THE CASES THAT SEEM TO COME UP MOSTLY

14   BECAUSE THOSE ARE THE CLEAR CUT.

15            AND I WILL TELL YOU, MY POSITION IS I'M

16   TAKING THE WORDS ABUSE OF JUDICIAL PROCESS AND I'M

17   SAYING, WE HAVE A CASE THAT'S UNPRECEDENTED. AND I

18   WILL TELL YOU, I'VE NOT FOUND ANOTHER CASE LIKE THIS

19   ONE OUT THERE. BUT I THINK THIS ONE IS PRETTY

20   UNIQUE.

21        THE COURT: HAVE YOU LOOKED AT ALL THE CASES IN

22   WHICH THE PRINCIPALS OF DEBTORS WERE CRIMINALLY

23   CONVICTED?

24        MR. DIMARIA: NO. I MEAN --

25        THE COURT: HAVE YOU FOUND ANY COURT THAT

| | |
|---|---|
| 1 | SUSTAINED THE ARGUMENT BASED UPON WHAT YOU'RE ARGUING? |
| 2 | MR. DIMARIA: IT HASN'T COME UP. I MEAN, I |
| 3 | THINK WHAT'S UNPRECEDENTED IS THAT -- |
| 4 | THE COURT: AND WHY DO YOU THINK THAT WOULD BE |
| 5 | SINCE THERE'S NUMEROUS CRIMINAL PRINCIPLES IN |
| 6 | BANKRUPT CORPORATIONS THAT COME IN AT -- I MEAN, IT |
| 7 | COMES UP, UNFORTUNATELY FREQUENTLY. |
| 8 | MR. DIMARIA: IT COMES UP A DIFFERENT WAY |
| 9 | THOUGH. IT COMES UP THE WAY THE ELEVENTH CIRCUIT |
| 10 | SHOWED IT CAME UP IN THE PEEZZA CASE, THE OFFICIAL |
| 11 | COMMITTEE CASE. THE WAY IT NORMALLY COMES UP IS THE |
| 12 | BAD GUY'S COMPANY GOES INTO BANKRUPTCY AND THE U.S. |
| 13 | TRUSTEE APPOINTS A TRUSTEE. OR THE SEC WILL FIRST |
| 14 | COME IN AND SHUT THEM DOWN WITH A RECEIVER AND THE |
| 15 | U.S. TRUSTEE APPOINTS A COMPANION TRUSTEE. |
| 16 | THE COURT: RIGHT. |
| 17 | MR. DIMARIA: SO YOU NEVER HAD THE SITUATION OF |
| 18 | THE SELF APPOINTED TRUSTEE. IT DOES COME UP IN THE |
| 19 | ELEVENTH CIRCUIT'S CASE IS THE BEST EXAMPLE OF IT, IT |
| 20 | COMES UP IN AN *IMPERI DELICTO* DEFENSE. |
| 21 | NOW, I'LL TELL YOU THE OTHER WAY IT COMES |
| 22 | UP. AND IT'S GOING TO COME UP HERE, WHICH IS THE |
| 23 | OTHER REASON WHY THIS IS A WASTE OF TIME. IT COMES |
| 24 | UP AS COLLATERAL ESTOPPEL. THE MONTELBANO CASE WHICH |
| 25 | I GAVE YOU AT THE LAST HEARING. |

1           WHEN YOU HAVE SOMEBODY WHO IS BASICALLY

2    CONTROLLING THE COMPANY, IS THE ALTER-EGO OF THE

3    COMPANY THE AMODEO WAS, YOU NOT ONLY HAVE *IMPERI*

4    *DELICTO* WHICH IS AVAILABLE ON A MOTION TO DISMISS, SO

5    WE'LL BE BACK ON THAT ONE IF WE'RE STILL HERE.

6           THE COURT:  RIGHT, I UNDERSTAND THAT.  AND I --

7           MR. DIMARIA:  AND THEN YOU HAVE COLLATERAL

8    ESTOPPEL.  BUT TO ANSWER YOUR QUESTION DIRECTLY, THE

9    REASON IT DOESN'T COME UP IN THESE CRIMINAL CASES.

10          FOR EXAMPLE, LET'S TALK ABOUT MAIDOFF.

11   YOU KNOW, THIS -- LET'S USE MAIDOFF AND SAY THAT

12   MAIDOFF WAS THIS CASE.

13          THE COURT:  RIGHT.

14          MR. DIMARIA:  IT WOULD BE AS IF MAIDOFF SAID,

15   YOU KNOW WHAT, I'M A BAD GUY.  AND IF I FILE THIS

16   BANKRUPTCY FOR MY COMPANIES, THE FIRST THING THAT'S

17   GOING TO HAPPEN UNDER THE CODE IS THE U.S. TRUSTEE

18   MUST FILE A MOTION FOR A TRUSTEE.  HE'LL DO THAT.

19   AND A TRUSTEE WILL BE APPOINTED.

20          BUT I DON'T WANT TO LOSE CONTROL SO I'M

21   GOING TO STEP BACK AND APPOINT ONE OF MY FRIENDS

22   WHO'S NOT A BAD GUY OR A COLLEAGUE OR SOMEBODY IN THE

23   COMMUNITY TO BE THE NEW -- THE NEW DIRECTOR OF MY

24   COMPANY OR PRESIDENT AND I'M GOING TO GO DOWN THAT

25   PATH.

| | |
|---|---|
| 1 | THE REASON, YOUR HONOR, YOU HAVEN'T SEEN IT |
| 2 | IN THE CASES, WHAT'S HAPPENING HERE, AND CHURCH |
| 3 | STREET STATION I HAVE IN MY PAPERS -- WHAT'S |
| 4 | HAPPENING IS THIS UNPRECEDENTED MOVE TO TAKE THE |
| 5 | POWER AWAY FROM THE U.S. TRUSTEE'S OFFICE AND HAVE |
| 6 | YOUR OWN SELF-APPOINTED TRUSTEE. AND THAT'S THE |
| 7 | REASON YOU DON'T SEE IT IN THE CASES. |
| 8 | BUT, IT'S THE SAME EFFECT, WHICH IS A BAD |
| 9 | GUY CAN'T PUT HIMSELF IN BANKRUPTCY. AND EVENTUALLY |
| 10 | IT'S GOING TO COME HOME TO ROOST WHETHER IT'S IN THIS |
| 11 | MOTION, IN *IMPERI DELICTO* OR COLLATERAL ESTOPPEL. |
| 12 | BUT IT'S NOT IN THE CASES YET. |
| 13 | THE COURT: AND IS THAT REALLY THE |
| 14 | ARGUMENT THAT PRACTICALLY IT MAKES NO SENSE TO |
| 15 | PROCEED BECAUSE THE *IMPERI DELICTO* IS GOING TO BOOT |
| 16 | OUT THE A PIECE? IS THAT REALLY WHAT YOU'RE ARGUING? |
| 17 | BECAUSE I REALLY AM TRYING TO LISTEN AND UNDERSTAND |
| 18 | WHAT YOU'RE SAYING. |
| 19 | BUT I'M TRYING TO ALSO FIND A LEGITIMATE |
| 20 | BASIS FOR THE ARGUMENT. AND IF THAT'S WHAT YOU'RE |
| 21 | ARGUING PLEASE ARGUE THAT. BUT -- |
| 22 | MR. DIMARIA: I BELIEVE THERE'S A LEGITIMATE |
| 23 | BASIS LOOKING AT THE EQUITABLE LAW THAT SAYS YOU MUST |
| 24 | HAVE CLEAN HANDS TO COME INTO THE COURT. I STAND BY |
| 25 | THAT. IF YOU ASK ME WHAT MY MOTIVE IS FOR IT, I |

1  BELIEVE IT'S WRONG FOR ALL THE CREDITORS' MONEY AND ALL

2  THE DEFENDANT'S MONEY TO BE USED TO PAY A BUNCH OF

3  ATTORNEYS FOR A CASE THAT CAN'T GO ANYWHERE.

4  SO MY MOTIVE IS -- YEA, I BELIEVE IT'S

5  WRONG.  I DON'T BELIEVE THIS CASE SHOULD GO ANYWHERE.

6  AND SO THE FACT OF THE MATTER IS IT'S A WASTE OF THE

7  COURT'S TIME.  BUT MY LEGAL PRINCIPLE IS I -- AND I

8  AGREE WITH YOU -- IT'S NOT COME UP BEFORE THE

9  ELEVENTH CIRCUIT BECAUSE AGAIN, I THINK IT'S

10  UNPRECEDENTED TO HAVE THESE SELECTED TRUSTEES TO TRY

11  TO DO WHAT THEY'RE --

12  AND MAYBE, YOU KNOW WHAT, IN SOME CASES

13  MAYBE THE SELECTED TRUSTEE SITUATION SHOULD WORK.

14  MAYBE THE U.S. TRUSTEE DOESN'T HAVE A PROBLEM WITH

15  THAT.  MAYBE THAT'S THE WAY IT'S GOING UNDER THE

16  BANKRUPTCY CODE -- FINE.

17  BUT IN THIS CASE WHEN FRANK AMODEO'S

18  CONTROLLING IT THE WAY HE DID, I THINK YOU'VE GOT A

19  DIFFERENT PROBLEM.  SO THAT'S MY LEGAL POSITION.

20  THE COURT:  GOT IT.  THANK YOU VERY MUCH.  AND,

21  ON BEHALF OF THE OTHER PARTIES IF YOU CARE TO JOIN

22  IN.

23  MR. VARNER:  JUDGE, AGAIN, I'M JOE VARNER FOR

24  SAXTON GILMORE AND HANS BEYER.  I WILL BE BRIEF AND I

25  HOPE NOT REPETITIVE.  BRIEFLY ON THE ISSUE OF

1   STANDING.  WE FILED A MEMO -- I HOPE THE COURT HAS HAD A

2   CHANCE TO REVIEW THAT.

3          I JUST WANT TO TOUCH ON ONE CASE THAT MR.

4   DIMARIA DID NOT MENTION.  AND WE JOIN IN ALL OF THE

5   ARGUMENTS THAT BOTH MR. VALDES AND MR. DIMARIA HAVE

6   MADE.

7          THE CASE I WANT TO TALK ABOUT ON STANDING

8   IS THE IN RE BARRON STEWART CASE, 390 B.R. 734,

9   SOUTHERN DISTRICT OF FLORIDA 2008.  I THINK IT'S

10  DIRECTLY ON POINT AS TO WHY THE RACHLIN COHEN

11  DEFENDANTS AND WHY MY CLIENTS HAVE STANDING TO JOIN

12  THIS MOTION TO DISMISS.

13         IN BARRON, YOUR HONOR, A CHAPTER 11 DEBTOR

14  MOVED TO REOPEN A CASE AFTER CONFIRMATION BASED ON

15  ALLEGED FRAUD BY THE DEBTOR'S ATTORNEYS.  THE

16  DEBTOR'S OPPOSED THAT MOTION -- THE DEBTOR'S

17  ATTORNEYS OPPOSED THAT MOTION RATHER.

18         THE DEBTOR SAID THEY HAVE NO STANDING TO

19  OPPOSE THAT MOTION.  THE COURT DISAGREED AND SAID

20  THEY ARE PARTIES IN INTEREST.  NOTED THAT IT'S WELL

21  ESTABLISHED THAT THE TERM PARTY IN INTEREST SHOULD BE

22  CONSTRUED BROADLY IN ORDER TO ALLOW PARTIES AFFECTED

23  BY A CHAPTER 11 CASE TO APPEAR AND BE HEARD.

24         AND THEN SAID THE FOLLOWING: "THE ISSUE

25  PRESENTED HERE IS WHETHER THE ATTORNEYS ARE PARTIES

```
1    IN INTEREST WITH STANDING TO OPPOSE THE MOTIONS.  IF THE

2    COURT WERE TO CONDUCT AN EVIDENTIARY HEARING THE

3    ATTORNEYS WOULD BE COMPELLED TO DEFEND THE

4    ALLEGATIONS AGAINST THEM AND TO INCUR THE COST OF

5    ADDITIONAL LITIGATION.  THEREFORE THE COURT FINDS THE

6    ATTORNEYS ARE PARTIES IN INTEREST WITH STANDING TO

7    OPPOSE THE MOTIONS."

8         IN THIS CASE, JUDGE JENNEMANN, PART OF THE

9    MOTION TO DISMISS AS YOU'VE HEARD, IS THIS PROCEEDING

10   WAS BROUGHT IN BAD FAITH FOR THE PURPOSE OF FILING

11   THESE LAW SUITS TO TRY TO HELP MR. AMODEO'S CRIMINAL

12   STANDING.  IT IS HARD TO IMAGINE A PARTY WITH A

13   GREATER INTEREST -- WITH GREATER STANDING TO

14   CHALLENGE THAT, THAN ONE OF THE TARGETS OF ONE OF

15   THOSE LAW SUITS.  THAT'S ALL I WANT TO SAY ABOUT

16   STANDING.

17        AND BRIEFLY, JUDGE, ON THE UNDERLYING

18   ISSUE OF BAD FAITH, I GUESS WHAT I WOULD LIKE TO

19   PROFFER IS PART OF THE LAST DAY OR TWO OF MR.

20   AMODEO'S SENTENCING HEARING.

21        WHEN HIS ATTORNEYS, WHO ARE HIS AGENTS,

22   ARGUED VEHEMENTLY THE FOLLOWING: "MR. AMODEO KNEW

23   WHAT HE WAS DOING WAS WRONG.  HE DID NOT NEED

24   ATTORNEYS OR ACCOUNTANTS TO TELL HIM HE COULD NOT

25   MISUSE IS PAYROLL TAXES."
```

1              TWO, AND THIS IS OF GREAT INTEREST, "THE ONLY

2      DAMAGED PARTY IS THE UNITED STATES." NOT MIRABILIS,

3      NOT FRANK AMODEO, NOT ANY OF THESE OTHER COMPANIES,

4      THE ONLY DAMAGED PARTY IS THE UNITED STATES.

5              AND THREE, "THE PURPOSE OF THESE LAWSUITS

6      IS TO RETURN MONEY TO THE GOVERNMENT." WHICH BRINGS

7      US BACK TO MR. AMODEO'S MOTIVE IN FILING THIS

8      BANKRUPTCY AND FILING THESE LAWSUITS WHICH IS TO

9      ASSIST HIM AND/OR MIRABILIS IN THEIR CRIMINAL

10     PROCEEDINGS. WE THINK THAT'S WRONG, YOUR HONOR, AND

11     WE THINK THE CASE SHOULD BE DISMISSED.

12              THE COURT: THANK YOU. AND MR. SAXTON.

13              MR. SAXTON: I WON'T TAKE MUCH TIME, YOUR

14     HONOR, BUT MR. KELLER AND I BOTH REPRESENT THE BERMAN

15     KEAN AND RIGUERA FIRM. JUST, AS YOU MAY RECALL, AND

16     WE HAVE AN ADVERSARY PROCEEDING STATUS CONFERENCE

17     COMING UP IN THIS AFTERWARDS.

18              BUT, WE ARE PRESENTLY -- OUR POSTURE IS AS

19     A ONCE SUED DEFENDANT IN AN ADVERSARY PROCEEDING WITH

20     NO PENDING COMPLAINT. THE COMPLAINT HAS BEEN

21     DISMISSED WITH LEAVE TO REFILE.

22              THERE WAS AN ORDER ENTERED DIRECTING THE

23     PLAINTIFF, MS. GREEN TO REFILE. SHE'S HAD

24     NEGOTIATIONS WITH MR. KELLER AND FOR A NUMBER OF

25     MONTHS THE TWO OF THEM HAVE BEEN TRYING TO GET

```
1    TOGETHER.  MR. KELLER HAS BEEN PUTTING TOGETHER AN

2    ACCOUNTING.

3             HER AMENDED COMPLAINT INCLUDED AN

4    ALLEGATION FOR TURN OVER OF TRUST FUNDS.  WE SAID,

5    THERE'S NOT TRUST FUNDS THAT THE BERMAN KEAN RIGUERA

6    FIRM HOLDING.  LET'S PROVE THAT TO YOU.

7             THERE WERE A LOT OF MONIES THAT WENT

8    THROUGH THE ACCOUNT OVER THE YEARS THAT THE BERMAN

9    KEAN RIGUERA FIRM DID WORK.  SO MR. KELLER HAS BEEN

10   IN THE PROCESS OF GETTING THAT INFORMATION.

11            OF COURSE WE ARE HOPEFUL THAT ONCE MS.

12   GREEN GETS THAT INFORMATION AND ONCE SHE ASSESSES

13   THAT COUNT AND PUTS IT TOGETHER WITH THE RESPONSES

14   SHE HAS HAD FROM US AND FROM THE OTHER DEFENDANTS

15   ABOUT WHAT MR. VARNER JUST TOLD YOU, WHAT MR. AMODEO

16   TESTIFIED TO AND WHAT HE PLED IN HIS PLEA AGREEMENT

17   THAT HE KNEW EVERYTHING, THAT WOULD HOPEFULLY LEAD

18   HER TO THE DECISION NOT TO CONTINUE THE LITIGATION.

19            SO THAT'S OUR POSTURE.  THAT PUTS US --

20            THE COURT:  SO YOU'RE RIGHT IN THE MIDDLE OF

21   WHAT TO DO TODAY.

22            MR. SAXTON:  EXACTLY.  AND I HAVEN'T -- I

23   DIDN'T TAKE -- WE DID NOT TAKE AN ACTIVE ROLE IN

24   CONNECTION WITH THIS.  BUT I FEEL THAT IT'S

25   APPROPRIATE AND NECESSARY TO TELL YOUR HONOR WHERE WE
```

1    COME DOWN.

2              OBVIOUSLY AND INITIALLY I RECOGNIZE THE

3    HURDLE THAT THE PARTIES SEEKING TO DISMISS THE CASE

4    WOULD HAVE TO OVERCOME.  PARTICULARLY, THE DEFENDANTS

5    LIKE US.  OBVIOUSLY WE'D BE VIEWED AS SIMPLY TRYING

6    TO TAKE ADVANTAGE OF SOME SITUATION AND HAVE THE CASE

7    DISMISSED.

8              BUT WE HAVE COMMUNICATED WITH THE OTHER

9    PARTIES, YOUR HONOR.  I HAVE FOLLOWED THE PLEADINGS.

10   AND I WOULD ENCOURAGE YOUR HONOR TO READ THE MOTION -

11   - THE SUPPLEMENTAL MEMORANDUM THAT MR. DIMARIA FILED

12   YESTERDAY.  BECAUSE IT IS COMPELLING IN MANY

13   RESPECTS.  I THINK IT IS VERY WELL WRITTEN AND I

14   THINK IT'S VERY WELL TAKEN.  I WOULD ENCOURAGE YOUR

15   HONOR TO READ THAT BEFORE MAKING A DECISION.

16             AND WHAT I WOULD ADD, YOUR HONOR, WHAT I

17   THINK WE'RE SEEING IS -- AND I THINK YOU'RE GOING TO

18   HAVE TO MAKE THE DECISION AS TO WHETHER IT GIVES RISE

19   TO THE DISMISSAL AND BAD FAITH.  BUT THERE HAVE BEEN

20   A NUMBER OF CASES IN THE ORLANDO DIVISION THAT HAVE

21   BEEN ATTEMPTS TO CIRCUMVENT THE U.S. TRUSTEE'S FILING

22   OF THE MOTION FOR CURRENT -- FOR FRAUD AND

23   MALFEASANCE AND BAD ACTS AND MISCONDUCT OF CURRENT

24   MANAGEMENT.

25             AND I THINK WHAT WE'RE SEEING HERE IS THE

1     SLIPPERY SLOPE EDGES OF THE RESPONSE TO THAT

2     UNFORTUNATELY DRAFTED LEGISLATION THAT REFERS TO ONLY

3     CURRENT MANAGEMENT AND THE RESPONSE TO SAY, OKAY,

4     IT'S NOT CURRENT MANAGEMENT. I DON'T KNOW WHERE THE

5     LINES NEED TO BE DRAWN.

6     BUT I THINK THAT THE REASON WE'RE ALL HERE

7     NOW AND THE REASON WE'RE PROBABLY GOING TO END UP IN

8     A LENGTHY -- OR POTENTIALLY END UP IN A LENGTHY

9     EVIDENTIARY HEARING IF YOU DECIDE TO GO FORWARD WITH

10     AN EVIDENTIARY HEARING ON THAT, IS BECAUSE OF THE

11     CREATIVITY OF LAWYERS IN RESPONDING TO THAT.

12     AND I THINK THAT YOUR HONOR NEEDS TO -- I

13     DON'T KNOW WHERE THE RESOLUTION IS AND WHETHER THIS

14     CASE IS ONE TO MAKE A RESOLUTION. BUT I WOULD

15     CONCLUDE BY SAYING WE SUPPORT THE ARGUMENTS OF THE

16     MOVANTS, YOUR HONOR. THANK YOU.

17     THE COURT: THANK YOU. AND MS. GREEN.

18     MS. GREEN: YES, YOUR HONOR, AND I'LL TRY TO BE

19     SOMEWHAT ORGANIZED. IT WAS KIND OF A LOT THERE FROM

20     A LOT OF -- A NUMBER OF DIFFERENT PEOPLE.

21     I'D LIKE TO START OUT -- SORT OF WHERE MR.

22     VALDES DID. WHICH IS WHO ARE WE AND WHO ARE THE

23     PEOPLE WHO HAVE FILED THIS MOTION TO DISMISS?

24     MR. VALDES' CLIENTS DID INDEED FILE PROOF

25     OF CLAIMS, AT LEAST THEY'VE AGREED TO SUBMIT

1   THEMSELVES TO THE JURISDICTION OF THIS COURT. HOWEVER,

2   THEY ARE THE DEFENDANTS IN THE HOTH ADVERSARY

3   PROCEEDING AND THEY ARE ON NOTICE THAT THERE A NUMBER

4   OF FRAUDULENTLY TRANSFER ACTIONS THAT THE DEBTOR

5   INTENDS TO BRING AGAINST THE FORGE ENTITIES -- FOR

6   DEALINGS THAT THE FORGE ENTITIES HAD WITH MIRABILIS

7   DURING THE TIME THAT THEY DID BUSINESS TOGETHER. AND

8   THAT'S WHO THE FORGE ENTITIES ARE.

9                THEN WE HAVE MR. DIMARIA'S CLIENT, RACHLIN

10  COHEN AND -- RACHLIN COHEN. WE FILED AN ADVERSARY

11  PROCEEDING, WE'VE DISMISSED IT. WE HAVE NOT YET

12  REFILED IT. AND MR. MORY HOLTZ WHO WAS A SENIOR

13  RACHLIN COHEN ACCOUNTANT, WAS ON THE BOARD OF

14  DIRECTORS OF MIRABILIS.

15               AND THEN WE HAVE THE SAXON GILMORE HANS

16  BEYER DEFENDANTS, WHO WE DO HAVE A PENDING ADVERSARY

17  PROCEEDING AGAINST. BUT WHO ALSO HAVE NOT FILED

18  CLAIMS IN THIS CASE. WHO, BY THE WAY, HAVE MOVED TO

19  REMOVE THIS ACTION TO THE DISTRICT COURT AND ARE

20  TRYING NOT TO SUBMIT THEMSELVES TO JURISDICTION OF

21  THIS COURT AS THE SAME WITH THE RACHLIN DEFENDANTS.

22               MR. BEYER --

23         MR. VARNER: JUDGE, THAT'S NOT CORRECT. I

24  THINK ALL THE OTHER DEFENDANTS HAVE, WE HAVE NOT.

25         MS. GREEN: I APOLOGIZE. I APOLOGIZE. I'M

1     SORRY.   IT'S THE RACHLIN DEFENDANTS WHO DIDN'T FILE THE

2     REMOVAL MOTION.   THEY DID NOT, HOWEVER, FILE A PROOF

3     OF CLAIM AND MR. BEYER ALSO SAT ON THE BOARD OF

4     DIRECTORS OF MIRABILIS.

5                 SO THAT'S WHO THESE DEFENDANTS ARE.   THESE

6     DEFENDANTS ARE NOT THE 26 MILLION DOLLARS OF

7     CREDITORS IN THE MIRABILIS CASE.   THAT'S EXCLUSIVE OF

8     THE GOVERNMENT AND EXCLUSIVE OF ANY INSIDER CLAIMS OF

9     MR. AMODEO.

10                THEY'RE NOT THE FOUR MILLION DOLLARS IN

11    CLAIMS IN THE AEM CASE.   THERE'S, IN FACT, NO REAL

12    CREDITOR IN THIS CASE WHO IS STANDING BEFORE YOU

13    ASKING FOR THIS CASE TO BE DISMISSED.   YOU

14    ESSENTIALLY HAVE THE DEFENDANTS IN THE ADVERSARY

15    PROCEEDINGS WHO ARE SEEKING TO HAVE THIS CASE

16    DISMISSED.

17                THERE WERE A NUMBER OF ARGUMENTS MADE BY

18    MR. VALDES.   AND A NUMBER OF THEM RELATED TO THE SHAM

19    COMPANY IDEA, MR. AMODEO AND CONTROL OF MIRABILIS.

20    THAT MIRABILIS WASN'T REALLY AN ENTITY AND THAT IT

21    REALLY DID NO BUSINESS.   WE'VE DONE A SOURCES AND

22    USES OF FUNDS FOR MIRABILIS AND MIRABILIS DID, IN

23    FACT, BUY AND SELL A NUMBER OF BUSINESSES.   IT DID DO

24    BUSINESS.   IT, IN FACT, DID BUSINESS WITH MR. VALDES'

25    CLIENT.

1    IT HAD OVER 20 DIRECTORS MEETINGS THAT ARE ON
2    VIDEO.  AND AT THOSE MEETINGS THERE WERE OFFICERS AND
3    DIRECTORS PRESENT WHO DEBATED AND DISCUSSED THE
4    MEETINGS.  AND, IN FACT, MR. AMODEO HIMSELF WAS NOT
5    AN OFFICER AND DIRECTOR.

6    THE IDEA THAT A CORPORATION CANNOT FILE A
7    BANKRUPTCY PETITION SIMPLY BECAUSE THERE WAS SOME
8    ILLEGAL ACTIVITY IS NOT SUPPORTED BY ANY CASE THAT I
9    CAN FIND IN THE ENTIRE BANKRUPTCY SYSTEM, EITHER IN
10   DISTRICT COURT, BANKRUPTCY COURT, OR IN THE APPELLATE
11   COURTS.  THE CASES THAT ARE CITED BY THE -- BY MR.
12   VALDES, INCLUDING THE FELTMAN CASE, ARE CASES OF
13   DISMISSAL OF THE ADVERSARY PROCEEDING BASED ON THE
14   IMPERI DELICTO DOCTRINE.

15   FELTMAN DEALT SPECIFICALLY WITH AN
16   ADVERSARY PROCEEDING AND A MOTION TO DISMISS AND THE
17   COURT RULED IN THAT CASE THAT BECAUSE OF THE IMPERI
18   DELICTO DOCTRINE THAT THE CASE COULD NOT GO FORWARD.
19   IT WAS NOT A DISMISSAL OF THE MAIN BANKRUPTCY CASE
20   BASED UPON ANY SORT OF UNCLEAN HANDS OR FRAUD.

21   AND I THINK THE QUESTION THAT YOU ASKED IS
22   APPROPRIATE.  IS THERE ANY CASE OUT THERE WHERE A
23   DEBTOR IS NOT PERMITTED TO BE A DEBTOR UNDER THE
24   BANKRUPTCY CODE BECAUSE THERE WAS SOME ILLEGAL
25   ACTIVITY?  AND THE ANSWER IS NO.  AT LEAST NOT THAT I

1   CAN FIND.

2   THERE ARE A NUMBER OF INSTANCES IN WHICH

3   DEBTORS ARE, IN FACT, DEBTORS UNDER THE BANKRUPTCY

4   CODE AS THIS COURT IS WELL FAMILIAR. WE HAVE THE

5   MAIDOFF CASE, YOU HAVE THE ENRON CASE, YOU HAVE THE

6   EVERGREEN CASE. YOU HAVE A NUMBER OF OTHER CASES.

7   THEN, PART OF THE ARGUMENT RELATED TO MR.

8   AMODEO BEING THE CONTROLLING OR BINDING PERSON AND HE

9   MADE A PLEA AGREEMENT AND IN HIS PLEA AGREEMENT HE

10  SAID CERTAIN THINGS THAT SHOULD BE BINDING UPON THIS

11  DEBTOR.

12  AGAIN, MR. AMODEO WAS NOT AN OFFICER OR

13  DIRECTOR OF THIS DEBTOR. WHEN HE MADE HIS PLEA

14  AGREEMENT HE WAS NOT ACTING IN ANY SCOPE OF ANY

15  AGENCY THAT HE MAY HAVE HAD PRE-PETITION OR BEFORE

16  THE BANKRUPTCY WAS FILED.

17  HE MADE THE PLEA AGREEMENT POST-PETITION

18  IN ORDER FOR THAT TO BE AN ADMISSION AND BINDING UPON

19  THIS DEBTOR, HE WOULD HAVE HAD TO HAVE BEEN ACTING

20  WITHIN THE SCOPE OF HIS AGENCY WHEN HE MADE THOSE

21  STATEMENTS AT HIS PLEA AGREEMENT. AND HE WAS NOT.

22  SO, THE STATEMENTS BY MR. AMODEO ARE NOT

23  BINDING UPON MIRABILIS. AND I THINK THE EVIDENCE

24  WILL SHOW, AND IF THE COURT LOOKS AT THE PLEA

25  AGREEMENT, IT'S PRETTY CAREFULLY WORDED. THE PLEA

1    AGREEMENT DOES NOT SAY MR. AMODEO WAS IN CHARGE OF ALL

2    THINGS MIRABILIS.  IT SAYS THAT HE EXERCISED SOME

3    DEGREE OF CONTROL OVER MIRABILIS AND IT LEAVES IT AT

4    THAT.

5                   AND, AS I SAID, THERE ARE A NUMBER OF

6    HOURS OF VIDEO TAPES.  THERE ARE A NUMBER OF

7    DIRECTORS OF THIS CORPORATION.  THERE WERE LAWYERS.

8    THERE WERE CPAS.  THERE WERE IRS FRAUD EXPERTS.  THEY

9    HAD BOARD MEETINGS AND THEY ACTED WITHIN THE SCOPE OF

10   A CORPORATION.  AND BASED UPON THAT, ALL OF MR.

11   AMODEO'S STATEMENTS ARE NOT BINDING UPON THIS

12   PARTICULAR DEBTOR.

13                   I'D LIKE TO ADDRESS THE ISSUE OF STANDING

14   BEFORE I GET TO THE BAD FAITH AND CORPORATE ARGUMENT.

15   FIRST OF ALL, THE STANDING ISSUE -- 1109(B) PROVIDES

16   THAT A PARTY IN INTEREST MAY MAKE A MOTION TO

17   DISMISS.  AND THE COURTS HAVE LOOKED AT WHETHER

18   THERE'S PECUNIARY INTEREST, WHETHER THERE'S A

19   SUFFICIENT STAKE IN THE OUTCOME, AND WHETHER THERE'S

20   A DIRECT LEGAL INTEREST.

21                   AND IN FACT, WE DID CITE THE BANKHOUSE

22   CASE WHICH IS AT 321 B.R. 590, AND THAT'S BECAUSE

23   IT'S FACTS ARE ALMOST IDENTICAL TO THESE FACTS.

24   GUSTER YOKELY WAS A DEFENDANT IN A MALPRACTICE CASE.

25   THEY ALLEGE BREACH OF DUTY AND THE GUSTER FIRM

1    CONTESTED JURISDICTION IN THAT CASE BY NOT SUBMITTING

2    THEMSELVES TO JURISDICTION; NOT FILING A PROOF OF

3    CLAIM, VERY SIMILAR TO THE TWO JOINDER PARTIES IN

4    THIS CASE.

5              AND THE COURT FOUND THAT THERE WAS NOT A

6    PECUNIARY INTEREST.  THAT IT'S INTEREST IS IN

7    DEFENDING ITSELF IN THE ADVERSARY PROCEEDINGS.  AND

8    THIS IS ANTITHICAL TO THE INTEREST OF LEGITIMATE

9    CREDITORS WHO HAVE A DIRECT INTEREST IN MAXIMIZING

10   RECOVERY FROM GUNSTER.  AND THAT THERE WAS THEREFORE

11   NO LEGALLY PROTECTABLE INTEREST THAT THE DEFENDANTS

12   IN THE ADVERSARY PROCEEDING HAD.

13             AND THE WELLS CASE, WHICH DOES ALLOW

14   STANDING, AND FOUND AT 227 B.R. 553 IS COMPLETELY

15   DISTINGUISHABLE FROM THIS CASE.  BECAUSE IN THAT CASE

16   THE PARTY WHO WAS SEEKING STANDING HAD A CONTRACT TO

17   PURCHASE REAL PROPERTY PRE-PETITION FROM THE DEBTOR.

18   SO THERE WAS AN EXECUTORY CONTRACT BETWEEN THE DEBTOR

19   AND THE PARTY SEEKING TO PURCHASE THAT.  AND, IN

20   FACT, THERE WAS A CLAIM FILED IN THE WELLS CASE.  SO

21   THE COURT FOUND THAT IN THAT CASE THE PURCHASER OF

22   THE REAL PROPERTY FROM THE DEBTOR DID HAVE STANDING.

23             AND THEN WE HAVE THE PEACHTREE CASE, WHICH

24   IS AT 188 B.R. 815.  THAT CASE DEALS ESSENTIALLY WITH

25   VENUE.  AND WHAT THE COURT FOUND WAS THAT THE

1    DEFENDANT IN THE ADVERSARY PROCEEDING COULD BRING A

2    MOTION TO CHANGE VENUE, BECAUSE THE ONLY EFFECTIVE

3    WAY TO CHALLENGE VENUE OF AN ADVERSARY PROCEEDING IS

4    TO CHALLENGE THE VENUE OF THE BANKRUPTCY CASE.

5            SO IT WAS A VERY LIMITED RULING ON HOW

6    THAT ADVERSARY DEFENDANT HAD STANDING.  AND TO SAY

7    THAT THAT CASE GIVES STANDING TO AN ADVERSARY

8    DEFENDANT TO DISMISS THE MAIN CASE IS JUST SIMPLY NOT

9    A PROPER READING OF THAT CASE.  THAT CASE CLEARLY

10   DEALS WITH VENUE AND THE COURT CLEARLY FOUND AT PAGE

11   827 THAT THE ONLY WAY TO CHALLENGE VENUE WOULD BE BY

12   THE ADVERSARY DEFENDANTS.

13           SO, IT IS OUR POSITION THAT THERE IS NO

14   STANDING ON BEHALF OF THE RACHLIN COHEN DEFENDANTS OR

15   THE SAXON GILMORE DEFENDANTS TO EVEN RAISE THE MOTION

16   TO DISMISS.

17           THE COURT:  WHAT DIFFERENCE DOES IT MAKE SINCE

18   FORTUNE ATLANTIC AND AMERICAN DO HAVE STANDING,

19   UNLESS YOU CONTEST THEIR STANDING.

20           MS. GREEN:  I ACTUALLY DO NOT CONTEST -- THEY

21   DID FILE A PROOF OF CLAIM.  THEY DON'T HAVE STANDING

22   IN THE HOTH CASE.

23           THE COURT:  RIGHT.

24           MS. GREEN:  BECAUSE IN THE HOTH CASE THEY HAVE

25   NOT FILED A PROOF OF CLAIM.  BUT THEY DO HAVE

1    STANDING IN THE <u>MIRABILIS</u> CASE.  THE REASON BEING IS THAT

2    THEY HAVE MADE ADDITIONAL ARGUMENTS THAT ARE NOT

3    EXACTLY LIKE THE ARGUMENTS THAT THE FORGE DEFENDANTS

4    MADE.  PARTICULARLY, THE BAD FAITH ARGUMENTS.  SO I

5    DON'T BELIEVE THEY HAVE STANDING TO MAKE THEM.

6         THE FORGE DEFENDANTS RAISE AN ISSUE OF

7    CORPORATE AUTHORIZATION OF THIS BANKRUPTCY CASE.  AND

8    IF YOU LOOK AT THE -- I THINK IT'S AT TAB THREE IN

9    THE DOCUMENT THAT THE FORGE DEFENDANTS PASSED OUT,

10   THE BYLAWS OF THE CORPORATION WERE ADOPTED ON OCTOBER

11   1, 2005.

12        AND THEY WERE ADOPTED THEN -- AND THIS IS

13   IMPORTANT, BY THE BOARD OF DIRECTORS AND NOT THE

14   STOCKHOLDERS.  AND THAT'S FOUND IN THE LAST LINE OF

15   THE 2005 BYLAWS WHICH THE FORGE DEFENDANTS POINTED

16   OUT SEVERAL SECTIONS OF THOSE BYLAWS TO THIS COURT.

17        SECTION 903 OF THOSE BYLAWS PROVIDES THAT

18   THE BYLAWS SHALL BE SUBJECT TO AND GOVERNED BY THE

19   ARTICLES OF INCORPORATION.  SECTION EIGHT OF THE

20   ARTICLES PROVIDES THAT THE CORPORATION RESERVES THE

21   RIGHT TO AMEND PROVISIONS IN THE ARTICLES OR IN THE

22   BYLAWS IN A MANNER NOW OR HEREAFTER PRESCRIBED BY

23   STATUTE, OR BY THE ARTICLES, OR BY THE BYLAWS.  ALL

24   RIGHTS CONFERRED UPON STOCKHOLDERS ARE GRANTED THE

25   SUBJECT TO THIS RESERVATION.

1    SO ESSENTIALLY WHAT THESE INITIAL BYLAWS DID

2    WAS, THEY WERE ADOPTED BY THE DIRECTORS AND THEY GAVE

3    CERTAIN RIGHTS TO THE STOCKHOLDERS WHICH THE

4    DIRECTORS RESERVED THE RIGHT TO REMOVE BY VIRTUE OF

5    THE FACTS THAT THEY WERE DIRECTOR APPROVED BYLAWS.

6    THAT ARTICLE NINE PROVIDES THAT: IN

7    FURTHERANCE AND NOT IN LIMITATION OF THE POWERS

8    CONFERRED BY STATUTE, THE BOARD OF DIRECTORS IS

9    SPECIFICALLY AUTHORIZED, SUBJECT TO THE BYLAWS OF ANY

10   ADOPTED BY STOCKHOLDERS, (WHICH THERE WEREN'T ANY,

11   BECAUSE THERE WERE NO BYLAWS ADOPTED BY THE

12   STOCKHOLDERS) TO MAKE, ALTER OR REPEAL THE BYLAWS OF

13   THE CORPORATION.  THAT GIVES THE BOARD THE ABILITY TO

14   MAKE OR ALTER THE BYLAWS OF THE CORPORATION.

15   AND THEN SECTION 78.120 OF THE NEVADA

16   REVISED STATUTE PROVIDES THAT UNLESS OTHERWISE

17   PROHIBITED BY ANY BYLAW ADOPTED BY THE STOCKHOLDERS

18   (WHICH THERE IS NO BYLAW IN THIS CASE ADOPTED BY THE

19   STOCKHOLDERS) THAT THE DIRECTORS MAY ADOPT, AMEND OR

20   REPEAL ANY BYLAW.

21   AND SO, ACTING ON THAT AUTHORITY IS THE

22   BOARD OF DIRECTORS EXERCISES AUTHORITY TO FILE THE

23   BANKRUPTCY AND AMEND THE BYLAWS IN ORDER TO APPOINT

24   MR. MECKER AS A DIRECTOR AND THEN APPOINT MR. CUTHILL

25   AS PRESIDENT.

```
1            AND SO IT'S OUR POSITION THAT UNDER NEVADA
2    LAW AND IN COMPLIANCE WITH THE ARTICLES OF
3    INCORPORATION AND THE BYLAWS, THE BYLAWS WERE AMENDED
4    AND THAT THIS BANKRUPTCY WAS PROPERLY AUTHORIZED BY
5    THE PARTIES.
6            GETTING TO THE POINT OF PROPER
7    AUTHORIZATION. EVERYONE IN THIS CASE HAS SAID THAT
8    MR. AMODEO AUTHORIZED THIS BANKRUPTCY CASE AND MR.
9    AMODEO FILED THIS BANKRUPTCY CASE, AND MR. AMODEO
10   CONTROLS THIS BANKRUPTCY CASE.
11           MR. AMODEO DID NOT SIGN THE DIRECTOR'S
12   RESOLUTION OR THE AUTHORIZATION TO FILE THE
13   BANKRUPTCY. MR. CUTHILL SIGNED THE PETITION TO FILE
14   THIS CASE. MR. CUTHILL WAS, IN FACT, AN SEC FRAUD
15   EXAMINER AND MR. MECKER, WHO WAS APPOINTED AS A
16   DIRECTOR, IS A THIRTY YEAR EXPERT IN THE INSOLVENCY
17   AREA.
18           IT IS INCONGRUOUS TO ARGUE THAT THAT WAS
19   DONE IN BAD FAITH. THESE PEOPLE ARE APPOINTED AND
20   THEY WERE APPOINTED IN ORDER TO DO A JOB THAT -- TO
21   TAKE THIS CORPORATION INTO BANKRUPTCY. TO TAKE IT
22   INTO BANKRUPTCY IN GOOD FAITH. AND IN ORDER TO DO
23   THAT, THAT IS WHY THEY WERE APPOINTED.
24           I THINK IT'S -- IT MAKES NO SENSE TO ARGUE
25   THAT MR. AMODEO WAS CONTROLLING WHO FILED THE
```

```
1    BANKRUPTCY. I THINK THE EVIDENCE WOULD SHOW, IF WE

2    DECIDED TO TAKE EVIDENCE, THAT MR. CUTHILL NEVER EVEN

3    SPOKE TO MR. AMODEO BEFORE THE FILING OF THE

4    BANKRUPTCY PETITION. HE ON HIS OWN ANALYZED THE

5    SITUATION, DETERMINED WHAT WAS IN THE BEST INTEREST

6    OF THE CORPORATION, AND HE SIGNED AND FILED THE

7    PETITION.

8              MR. AMODEO HAS HAD NO CONTROL OVER THESE

9    PROCEEDINGS. HE'S HAD NO INPUT INTO HOW THIS CASE

10   GOES. HE'S HAD NO INPUT INTO ANYTHING.

11             NOW, EVERYBODY ARGUES THAT WHILE MR.

12   AMODEO MIGHT RECEIVE, OR MAY EVENTUALLY BELIEVED THAT

13   HE COULD RECEIVE A BENEFIT IF FUNDS WENT TO THE IRS

14   THROUGH THE FILING OF THIS BANKRUPTCY CASE. WHETHER

15   MR. AMODEO BELIEVED THAT OR KNEW THAT OR THOUGHT

16   THAT, REALLY ISN'T RELEVANT TO WHY THIS CASE WAS

17   FILED.

18             THIS CASE WAS FILED, AND I THINK THE THAT

19   THE FIRST DAYS SUMMARIES IN THIS CASE ARE CLEAR.

20   THERE WAS A FORECLOSURE ACTION IN THE HOTH CASE. AND

21   THERE WAS A CIVIL FORFEITURE RELATED TO MR. AMODEO

22   WHICH WAS NOT RELATED TO MIRABILIS.

23             AND THIS CASE WAS FILED IN ORDER TO

24   PROTECT THOSE ASSETS AND TO PROTECT THE NUMBER OF

25   CREDITORS THAT THERE WERE OUT THERE AT THE TIME,
```

| | |
|---|---|
| 1 | WHICH AS NOW HAVE 26 MILLION DOLLARS IN CLAIMS THAT ARE |
| 2 | NON-GOVERNMENT CLAIMS. WE ALSO HAVE TWO HUNDRED |
| 3 | MILLION DOLLARS IN A GOVERNMENT FORFEITURE CLAIM. |
| 4 | IN ORDER TO ADDRESS THE BAD FAITH |
| 5 | STANDARD, I'D LIKE TO POINT THE COURT TO 1112(B) |
| 6 | WHICH PROVIDES THAT THE BURDEN IS ON THE MOVING PARTY |
| 7 | IN ORDER TO PROVIDE THAT A BANKRUPTCY CASE WAS FILED |
| 8 | IN BAD FAITH. AS THIS COURT POINTED OUT, THE ALBANY |
| 9 | PARTNERS CASE, THE PHOENIX PICCADILLY CASE, THE |
| 10 | WELLWOOD CASE, ALL ARE VERY SIGNIFICANT BANKRUPTCY |
| 11 | CASES THAT DEAL WITH SINGLE ASSET REAL ESTATE CASES. |
| 12 | THEY DEAL WITH TWO PARTY DISPUTES IN WHICH |
| 13 | THERE IS A SECURED CREDITOR AND VERY LITTLE SECURED |
| 14 | THAT. AND THERE IS NO POSSIBILITY OF A |
| 15 | REORGANIZATION, AND THAT'S WHY THE COURTS HAVE |
| 16 | DISMISSED THOSE CASES BASED UPON BAD FAITH. AND |
| 17 | THEY'RE PRETTY TEXTBOOK CASES OF BAD FAITH FILINGS |
| 18 | AND THEY'RE CITED ROUTINELY IN BAD FAITH FILING |
| 19 | CASES. |
| 20 | HERE, THIS HAS ALWAYS BEEN A LIQUIDATING |
| 21 | CASE. I DON'T THINK THAT THERE'S ANYBODY WHO WOULD |
| 22 | ARGUE THAT THIS HAS NOT COME INTO THIS COURT AS A |
| 23 | LIQUIDATING CASE. OF COURSE, THE BANKRUPTCY CODE |
| 24 | CONTEMPLATES THAT THERE BE LIQUIDATING CHAPTER 11'S. |
| 25 | 1129(A)(11) IN FACT, THE CONFIRMATION STANDARDS, |

1    PROVIDE THAT THE PLAN IN ORDER TO BE CONFIRMED, NEED NOT

2    BE FOLLOWED BY FURTHER LIQUIDATION, UNLESS SUCH PLAN

3    PROVIDES FOR THE LIQUIDATION.

4                    AND IT'S COMMON PLACE FOR LIQUIDATING

5    CHAPTER 11'S TO BE FILED.  THEY'RE PERMITTED BY THE

6    ELEVENTH CIRCUIT CASE LAW, AND THEY'RE PERMITTED BY

7    THE BANKRUPTCY CODE.

8                    WHEN WE LOOK TO WHAT THE SIGNS OF BAD

9    FAITH ARE, FIRST, THIS IS NOT A SINGLE ASSET CASE.

10   THERE ARE A NUMBER OF ASSETS.  TO DATE, MR. CUTHILL

11   HAS RECOVERED OVER A MILLION DOLLARS IN CASH.  HE HAS

12   IDENTIFIED OTHER NOTES RECEIVABLE AND OTHER ASSETS OF

13   THE CASE, WHICH APPROXIMATELY TOTAL ANOTHER FIVE

14   MILLION DOLLARS.

15                   IN FACT TODAY, TWO LAWSUITS WERE FILED ON

16   THE NOTES RECEIVABLE WITH THIS COURT.  ONE FOR

17   RABYROLL LAND TRUST AND ONE AGAINST O2HR.  THERE ARE

18   OTHER SOURCES OF FUNDS IN THIS CASE INCLUDING

19   COLLATERAL FOR A WORKMAN'S COMP CLAIM.  THERE'S THE

20   ADVERSARY PROCEEDING FOR FRAUDULENT TRANSFER WHICH IS

21   AGAIN, NOT SUBJECT TO *IMPERI DELICTO* DEFENSE AGAINST

22   THE FORGE ENTITIES IN THE HOTH CASE.  THERE'S OTHER

23   FRAUDULENT TRANSFER LITIGATION THAT HAS NOT YET BEEN

24   FILED.  AND THERE ARE THE PROFESSIONAL LIABILITY

25   LAWSUITS.

1          SO, IN ADDITION TO THESE LAWSUITS THERE ARE A

2   NUMBER OF OTHER ASSETS IN THE CASE WHICH WE ESTIMATE

3   COULD TOTAL SOMEWHERE AROUND THIRTY MILLION DOLLARS.

4   AND THAT'S NOT INCLUDING THE PROFESSIONAL LIABILITY

5   LAWSUITS.

6          ANOTHER HALLMARK OF A SINGLE ASSET REAL

7   ESTATE BAD FAITH FILING CASE IS THAT THERE ARE VERY

8   LITTLE OR NO CLAIMS IN THE CASE.  IN THIS CASE THERE

9   ARE 26 MILLION DOLLARS IN CLAIMS FILED IN MIRABILIS

10  WHICH ARE AGAIN NOT AMODEO CLAIMS, NOT INSIDER

11  CLAIMS, THEY'RE CLAIMS FILED IN THIS CASE.  THERE'S

12  FOUR MILLION IN THE AEM CASE.

13          AND PURSUANT TO THE COMPROMISE THAT WE

14  REACHED WITH THE UNITED STATES OF AMERICA, THEY HAVE

15  A TWO HUNDRED MILLION DOLLAR FORFEITURE CLAIM IN THIS

16  CASE.  I WOULD HARDLY SUBMIT TO THIS COURT THAT THOSE

17  ARE INSIGNIFICANT CLAIMS GIVEN THE POSTURE OF THIS

18  CASE.  AND I WOULD HARDLY SUBMIT THAT THERE ARE

19  INSIGNIFICANT ASSETS TO BE COLLECTED IN CONNECTION

20  WITH THIS CASE.

21          THERE ARE -- A NUMBER OF DEFENDANTS HAVE

22  ARGUED -- REALLY ALMOST TO THE APPOINTMENT OF TRUSTEE

23  PROVISIONS UNDER 1104.  WHAT'S INTERESTING IS THAT

24  THE UNITED STATES TRUSTEE DID NOT MAKE A MOTION TO

25  APPOINT A TRUSTEE IN THIS CASE.  AND THAT ISN'T WHAT

1    WE'RE HERE ARGUING.

2              HOWEVER, THE CASES HAVE HELD --

3    PARTICULARLY THE 131 TAX GROUP CASE, WHICH IS AT 374

4    B.R. 78, THAT WHEN THE WRONGDOER IS REMOVED AND

5    REPLACED BY SOMEONE WHO IS NOT THE WRONGDOER, WHO HAS

6    NOT ENGAGED IN ANY ILLEGAL CONDUCT, WHO HAS NOT

7    ENGAGED IN ANY FRAUDULENT CONDUCT, THAT IT IS NOT

8    APPROPRIATE TO APPOINT A TRUSTEE.  THAT COURT ALSO

9    FOUND THAT IT WAS NOT APPROPRIATE TO CONVERT OR

10   DISMISS UNDER 1112(B).

11             AND I BELIEVE THAT THIS COURT, ACTUALLY,

12   HAS ALSO FOUND UNDER THAT SAME 1104 STANDARD IN THE

13   ORLANDO CITY PLACE CASE, THAT IT WAS NOT

14   INAPPROPRIATE TO REMOVE THE WRONGDOERS.  AND I

15   BELIEVE THAT JUDGE BRISKMAN IN THE PLATINUM CASE ALSO

16   FOUND THE SAME.  THAT IF THE NEW PARTIES WHO ARE HERE

17   BEFORE THE COURT ARE PARTIES WHO ARE CAPABLE AND ABLE

18   TO RUN THE CHAPTER 11 CASE, THAT IT IS INAPPROPRIATE

19   TO REMOVE THEM.  AND I SUBMIT TO YOU, INAPPROPRIATE

20   TO DISMISS THE CASE.

21             THE COURT:  AND YOUR RESPONSE.

22             MR. VALDES:  YES, YOUR HONOR.  AND I'LL BE

23   BRIEF.  ON THE ISSUE OF MS. GREEN'S STATEMENTS TO THE

24   COURT THAT, YOU KNOW, THIS COMPANY HAD DIRECTORS

25   MEETINGS AND THIS COMPANY HAD -- THAT MR. AMODEO WAS

1    NOT AN OFFICER OR DIRECTOR.

2              THAT GOES PRECISELY TO THE EVIDENTIARY

3    ISSUES.  AND JUDGE I HAD THE FUN OF ACTUALLY WATCHING

4    THESE DIRECTORS MEETINGS.  AND IN PREPARING FOR THE

5    EVIDENTIARY HEARING THAT WE WERE SET TO HAVE.

6              IF YOUR HONOR WOULD HAVE WATCHED THOSE YOU

7    WOULD SEE FRANK AMODEO SITTING AT THE TABLE MAKING

8    STATEMENTS LIKE "I AM THE SOLE CREDITOR.  YOU OWE

9    YOUR FIDUCIARY DUTY TO ME.  AND WE'RE GOING TO

10   APPOINT THESE FOLLOWING PEOPLE AS THE BOARD OF

11   DIRECTORS."  AND WE'RE GOING TO DO THIS AND WE'RE

12   GOING TO DO THAT.  AND HE GETS UP AND LEAVES THE

13   ROOM, THEY DO EXACTLY WHAT THEY TELL HIM TO DO.

14             AND SO, THE STATEMENT THAT MR. AMODEO WAS

15   NOT AN OFFICER OR DIRECTOR AND THEREFORE NOT A

16   CONTROLLING PERSON.  THE CASE LAW SAYS CONTROLLING

17   PERSON, NOT OFFICER AND DIRECTOR.  SOMEBODY'S GOING

18   TO ACT IN A CRIMINAL MANNER -- THEY MAY DECIDE THAT

19   THEY DON'T WANT TO BE AN OFFICER AND DIRECTOR.

20             AND LET'S ALSO NOT FORGET, YOUR HONOR,

21   THAT MR. AMODEO WAS A CONVICTED FELON AND SO HE HAD

22   THIS PRIOR CONVICTION OUT OF THE STATE OF GEORGIA.

23   SO IF HE DECIDED HE WAS GOING TO KEEP HIMSELF OUT OF

24   THE CORPORATE DOCUMENTS, FOR WHATEVER REASON HE

25   DECIDED, THAT DOESN'T MEAN THAT HE DIDN'T EXERCISE

1 | COMPLETE CONTROL OVER THE COMPANY.

2 | AND IF WE WERE TO HAVE AN EVIDENTIARY

3 | HEARING, YOUR HONOR, THERE'S ALL SORTS OF DOCUMENTS

4 | THAT WE HAVE WHERE FRANK AMODEO SIGNED OFF AS AN

5 | AUTHORIZED AGENT OF THE COMPANY. I'VE GOT ANOTHER

6 | DOCUMENT THAT WE HAD PRODUCED THAT WE'D SHOW THAT HE

7 | WAS A SECRETARY. AND ANOTHER DOCUMENT WHERE HE WAS -

8 | - WHERE NEXIUS STRATEGY AND MIRABILIS VENTURES ARE

9 | BUSINESS CONSULTING ACQUISITION COMPANIES UNDER FRANK

10 | AMODEO'S OWNERSHIP.

11 | THAT IS WHAT THE EVIDENCE WOULD SHOW, YOUR

12 | HONOR. THAT'S WHY MR. AMODEO WAS THE TARGET OF THE

13 | 200 MILLION DOLLAR TAX FRAUD CASE THAT THE GOVERNMENT

14 | HAS BROUGHT.

15 | SO, THIS ISSUE OF MR. AMODEO CONTROLLING

16 | IT -- IF WE GO INTO AN EVIDENTIARY HEARING, YOUR

17 | HONOR, WE BELIEVE THE EVIDENCE WILL BE OVERWHELMING

18 | THAT HE WAS THE CONTROLLING PERSON. AND THERE'S

19 | NOBODY WITHIN MIRABILIS THAT CAN TESTIFY TO THE

20 | CONTRARY.

21 | AS MS. GREEN SAID, MR. CUTHILL ONLY CAME

22 | IN AFTERWARD. AND HE'S NOT GOING TO BE ABLE TO

23 | TESTIFY AS TO WHO CONTROLLED IT. AND ALL THE

24 | AFFIDAVITS THAT WERE FILED AS PART OF THE MOTIONS IN

25 | THIS CASE SHOW THAT MR. AMODEO CONTROLLED THE

| | |
|---|---|
| 1 | COMPANY. |
| 2 | THE NEXT ISSUE THAT WAS RAISED GOES BACK |
| 3 | TO THE BYLAWS. AND MS. GREEN MADE THE STATEMENT, |
| 4 | WELL THE BYLAWS WERE AMENDED. AND YOUR HONOR, I |
| 5 | THINK I SAID THAT. THAT THAT WAS GOING TO BE THE |
| 6 | ARGUMENT. |
| 7 | THE AMENDMENT TO THE BYLAWS WAS DONE BY |
| 8 | THE BOARD OF DIRECTORS. NOT THE SHAREHOLDERS. WELL, |
| 9 | THEN MIRABILIS TAKES THE POSITION WELL, THESE |
| 10 | CORPORATE BYLAWS WERE PASSED BY THE CORPORATION NOT |
| 11 | BY THE SHAREHOLDERS. |
| 12 | THE ARTICLES OF INCORPORATION OF MIRABILIS |
| 13 | DEAL WITH THIS VERY ISSUE. IT SAYS THIS CORPORATION |
| 14 | RESERVES THE RIGHT TO AMEND, ALTER, CHANGE OR REPEAL |
| 15 | ANY PROVISION CONTAINED IN THESE ARTICLES OF |
| 16 | INCORPORATION OR ITS BYLAWS IN THE MANNER NOW OR |
| 17 | HEREAFTER PRESCRIBED BY STATUTE OR BY THESE ARTICLES |
| 18 | OF INCORPORATION OR BY THE CORPORATION'S BYLAWS. SO |
| 19 | THE CORPORATION'S BYLAWS. |
| 20 | THERE'S NO DISPUTE THAT WHAT I SHOWED YOUR |
| 21 | HONOR ARE THE BYLAWS OF THE CORPORATION. IT EVEN |
| 22 | SAYS, BYLAWS OF MIRABILIS VENTURES, INC. THE |
| 23 | CORPORATION. THAT'S SPECIFICALLY WHAT IT SAYS, YOUR |
| 24 | HONOR. AND SO THESE BYLAWS WERE PASSED BY THE |
| 25 | CORPORATION. THEY CAN ONLY BE AMENDED AS SET FORTH |

1    IN THE BYLAWS.  THEY CANNOT BE AMENDED AS SET FORTH --

2    THEY WANT TO TAKE THE POSITION WELL THE STATUTE SAYS

3    YOU CAN AMEND THEM BY THE DIRECTORS.

4              ONCE THE ARTICLES OF INCORPORATION AND THE

5    BYLAWS SET FORTH THE EXCLUSIVE METHOD BY WHICH THEY

6    CAN BE AMENDED, THEN THE CORPORATION HAS TO FOLLOW

7    THOSE SPECIFIC DIRECTIONS SET FORTH IN THE BYLAWS.

8    AND THE REALITY IS, AND THIS IS WELL DOCUMENTED

9    JUDGE, WHAT HAPPENED WAS THE EMPLOYEES RESIGNED.

10             THE BOARD OF DIRECTORS BY ACTION OF

11   WRITTEN CONSENT OF THE DIRECTORS, THE DAY BEFORE

12   MIRABILIS FILED BANKRUPTCY, ELECTED MICHAEL MOCKER TO

13   SERVE AS THE THIRD DIRECTOR.  THE TWO PRIOR DIRECTORS

14   RESIGNED AND THEN MR. CUTHILL WAS APPOINTED BY MR.

15   MOCKER AND THEN THE FILING OCCURRED.

16             AND SO, YOUR HONOR, OUR STATEMENT TO YOU

17   IS THAT MR. MOCKER'S APPOINTMENT BY THE BOARD OF

18   DIRECTORS, WAS INVALID BECAUSE IT REQUIRED A TWO

19   THIRDS VOTE OF THE SHAREHOLDERS, NOT OF THE

20   DIRECTORS.  AND THERE WAS NO AMENDMENT THAT COULD

21   HAVE BEEN DONE BECAUSE THAT WOULD HAVE REQUIRED THE

22   APPROVAL OF EIGHTY PERCENT OF THE SHAREHOLDERS.

23             SO THERE PURPORTED AMENDMENT OF THE BYLAWS

24   WAS INVALID BECAUSE THE BYLAWS SPECIFICALLY SET FORTH

25   HOW THEY'RE AMENDED AND THERE'S NO WAY THAT THAT

1　　COULD HAVE BEEN COMPLIED WITH. AND THERE'S NO EVIDENCE

2　　THAT IT WAS COMPLIED WITH.

3　　　　　THE COURT: WHAT IS THE PERCENTAGE OF SHARE

4　　THAT MR. MARIA HAS -- MARIA?

5　　　　　MR. VALDES: WELL, YOUR HONOR, LET ME PULL THE

6　　FILING ON THAT. AND YOUR HONOR, I'M GOING OFF WHAT

7　　MIRABILIS HAS INCLUDED IN ITS SCHEDULES.

8　　　　　　　　AND THIS IS OFF THEIR LIST OF EQUITY,

9　　SECURITY HOLDERS -- IT PURPORTS THAT MR. MARIA HAS

10　　SECURITY CLASS B, NUMBER OF SHARES 500.

11　　　　　THE COURT: AND WHAT ARE THE ISSUED SHARES, THE

12　　VOTING SHARES?

13　　　　　MR. VALDES: YOUR HONOR, I'D HAVE TO ADD THIS

14　　UP. I'M NOT --

15　　　　　THE COURT: NO PROBLEM.

16　　　　　MR. VALDES: THERE'S SEVERAL PAGES.

17　　　　　THE COURT: NO PROBLEM. I DON'T WANT TO PUT

18　　YOU ON THE SPOT.

19　　　　　MR. VALDES: YEAH, I DON'T KNOW I'D HAVE TO ADD

20　　THEM UP. AND CERTAINLY -- AND LIKE I SAID THIS IS

21　　WHAT -- THIS IS MIRABILIS' POSITION IS THAT HE WAS A

22　　SHAREHOLDER.

23　　　　　THE COURT: RIGHT.

24　　　　　MR. VALDES: YOU KNOW, WHAT THE EVIDENCE WOULD

25　　SHOW -- I DON'T KNOW IF MR. MARIA WOULD COME IN AND

1    TESTIFY THAT HE'S GOT THE ORIGINAL CERTIFICATES OR

2    ANYTHING ELSE LIKE THAT. BUT THE RECORD BEFORE YOUR

3    HONOR IS, HE'S A SHAREHOLDER. AND BASED UPON THE

4    FILING THAT MIRABILIS MADE, HE WOULD HAVE THE RIGHT

5    [INAUDIBLE] THIS ARGUMENT.

6        THE COURT: OKAY, THANK YOU. ANYTHING FURTHER

7    FROM ANYBODY ELSE IN RESPONSE?

8        MR. KELLER: YOUR HONOR, THE ONLY THING I WAS

9    GOING TO SAY, YES THERE WAS A SINGLE ASSET IN THE SGL

10   CARBON CORPORATION. IT WAS A MASSIVE COMPANY WITH A

11   LOT OF ASSETS. AND, I'LL LOOK, BECAUSE I HAVE NOT

12   LOOKED AT ALL OUT OF THE NON-ELEVENTH CIRCUIT CASES,

13   BUT THERE'S PROBABLY 20 CASES OUT THERE. AND IF I

14   FIND THAT IF THERE ARE OTHERS I CAN ALWAYS SUBMIT

15   THEM. I JUST WANTED YOU TO KNOW THAT THAT THIRD

16   CIRCUIT CASE, WHICH I THINK IS A PRETTY CRUCIAL CASE

17   TO REVIEW, I WOULD ASK YOU TO LOOK AT THAT.

18       THE COURT: YEAH, AND I HAVEN'T, AND I WILL DO

19   THAT. ANYTHING ELSE ON THE MOTION TO DISMISS?

20       MR. KELLER: NOTHING FURTHER.

21       THE COURT: THANK YOU. IN CONNECTION WITH THE

22   ISSUES RAISED, I AM NOT GOING TO REQUIRE FURTHER

23   EVIDENTIARY HEARING ALTHOUGH I WOULD LIKE

24   SUPPLEMENTAL BRIEFING ON THE CORPORATE AUTHORITY

25   ISSUE. I DON'T HAVE SUFFICIENT DETAIL. I HAVE A

1    COPY OF THE BYLAWS.  I MAY OR MAY NOT SOMEWHERE IN HERE

2    HAVE THE ARTICLES, BUT I WOULD LIKE A BRIEFING ON

3    THAT SPECIFIC ISSUE.  AND ONLY THAT ISSUE.

4            I AM NOT GOING TO FURTHER HOLD ANY

5    EVIDENTIARY HEARINGS.  I UNDERSTAND THE PARTIES

6    POSITIONS AND I WILL SIMPLY ASSUME THAT THEY ARE WHAT

7    THEY SAY.  THAT THE PARTIES AND THEIR ARGUMENTS

8    COULD, IF GIVEN THE OPPORTUNITY ESTABLISHED, THAT IN

9    RULE APPOINTED ACCORDINGLY.

10           I WANT TO READ EVERYTHING.  BUT I DON'T

11   WANT TO PUT TOO MUCH PRESSURE ON, REALLY THE TWO OF

12   YOU, FORGE AND THE DEBTOR, TO DO THIS SUPPLEMENTAL

13   BRIEFING.  HOW MUCH TIME WILL YOU NEED FOR THAT?

14           MR. VALDES:  WELL, YOUR HONOR, WE'VE GOT THE

15   HOLIDAY BUT MAYBE --

16           THE COURT:  AND THAT'S WHAT I'M SAYING.  I'VE

17   GOT A HOLIDAY COMING UP TOO SO IT'S NOT --

18           MR. VALDES:  IF I DID OUR BRIEF IN TWO WEEKS.

19   DOES THAT SOUND FAIR TO YOU?

20           MS. GREEN:  I'M ACTUALLY GOING TO BE GONE.  SO

21   MAYBE THE 31ST, DOES THAT WORK?

22           THE COURT:  THAT'S FINE WITH ME.

23           MR. VALDES:  SO, YEAH, DO YOU WANT US TO FILE

24   OURS FIRST AND THEN DO A RESPONSE OR JUST WE BOTH

25   FILE THEM ON THE 31ST?

1          THE COURT:  I WOULD THINK IT WOULD BE BETTER TO

2     FILE YOURS FIRST AND THEN DO A RESPONSE.  AND THEN IF

3     YOU WANT TO DO A -- YOU'RE WELCOME TO.

4          MR. VALDES:  ALL RIGHT.  JULY 31ST YOU'LL FILE

5     AND THEN TEN DAYS --

6          MS. GREEN:  THAT'S FINE TEN DAYS IS ALL I NEED.

7          THE COURT:  YEAH, THAT WOULD BE FINE.

8          MR. VALDES:  ALL RIGHT, THANK YOU, YOUR HONOR.

9          THE COURT:  YOU'RE WELCOME.  THAT WILL GIVE ME

10    MORE TIME TO ACTUALLY READ THAT OR ANY OTHER CASE LAW

11    IF MR. DIMARIA IF YOU FIND ANYTHING ELSE YOU WANT ME

12    TO LOOK AT.  I WILL ACCEPT ANY ADDITIONAL -- PLEASE,

13    I'M NOT ASKING FOR MORE VOLUMINOUS ANYTHING.

14          BUT IF YOU FIND ANYTHING SPECIFIC THAT YOU

15    WOULD LIKE ME TO LOOK AT IN LIGHT OF THE ARGUMENTS

16    TODAY, I WOULD ASK THAT ALL THE MOVANTS DO SO AND

17    FILE THEM ON OR BEFORE JULY 31ST.  I WOULD ASK THAT

18    ANY RESPONSE TO BE FILED ON OR BEFORE AUGUST THE 14TH.

19    AND THEN I WILL TAKE IT UNDER ADVISEMENT AT THAT

20    POINT.  BUT DON'T GEAR UP FOR ANY FURTHER EVIDENTIARY

21    HEARING BECAUSE IT AIN'T GOING TO HAPPEN.

22          I WILL SET A FURTHER RULING -- I WOULD

23    LIKE -- I DON'T KNOW IF I'M GOING TO WRITE OR NOT,

24    QUITE HONESTLY.  WE'LL SEE HOW WE GO ON THE OTHER

25    MATTERS AND THEN WE'LL COME BACK TO A TIMING ISSUE.

1 ON THE OTHER MATTERS LET'S GO OVER THOSE.

2 IN HOTH AND THE MAIN CASE WE HAVE JUST THE

3 MOTION TO DISMISS. THERE IS THE PRETRIAL CONFERENCE,

4 IN WHICH I DON'T THINK THERE'S ANYTHING PENDING AT

5 THIS JUNCTURE, IN THE EQUITY -- IN THE COASTAL EQUITY

6 AND BISON MORTGAGE CORPORATION ADVERSARY PROCEEDING.

7 MR. VARNER: WE DON'T HAVE ANYTHING PENDING.

8 WE HAVEN'T FILED OUR RESPONSE TO THE COMPLAINT YET.

9 WE'VE BEEN PUTTING IT OFF AS WE DEALT WITH THIS

10 ISSUE.

11 THE COURT: CERTAINLY. IS THERE ANYTHING FROM

12 THE DEBTOR'S PERSPECTIVE WEE NEED TO DO OTHER THAN

13 SET A CONTINUED PRETRIAL CONFERENCE?

14 IN A&M THERE ARE TWO MOTIONS BOTH RELATE

15 TO MS. HENDRICKS AS THE TRUSTEE FOR SOME TRUST -- I

16 DON'T HAVE THE NAME OF THE TRUST IN FRONT OF ME. BUT

17 SHE HAS MOVED FOR EXAMINATION -- A 2004 EXAM. AND

18 THEN TO FILE A LATE FILED CLAIM.

19 MS. GREEN: YOUR HONOR, I ACTUALLY SPOKE WITH

20 MR. CARLSON THE ATTORNEY FOR HENDRICKS. AND WE HAVE

21 AGREED TO PERMIT THEM TO FILE A LATE FILED CLAIM

22 SUBJECT ONLY TO OBJECTIONS THAT RELATE TO THE CLAIM

23 ITSELF. WE WON'T OBJECT TO IT BECAUSE IT'S LATE

24 FILED.

25 AND WITH REGARD TO THE 2004 EXAM, WE WERE

1    GOING TO PUT THAT OFF, WE'RE EXCHANGING SOME DOCUMENTS

2    WITH THEM IN ORDER TO GET TO THE BOTTOM OF WHAT THEIR

3    ISSUES ARE. IN THE EVENT THAT THEY NEED A 2004 EXAM,

4    I TOLD THEM THEY COULD REFILE IT AND SUBMIT AN ORDER.

5    BUT I THINK THAT WE'RE GOING TO BE FINE.

6           THE COURT: OKAY. DOES ANY OTHER PARTY CARE TO

7    BE HEARD ON EITHER OF THOSE MATTERS?

8           THEN IN CONNECTION WITH THE MOTION FOR THE

9    2004 EXAM, AT THIS POINT I WILL DENY THAT WITHOUT

10   PREJUDICE. AND I WILL GRANT THE MOTION TO ALLOW THE

11   LATE FILED CLAIM. HAS IT ALREADY BEEN FILED OR IS IT

12   READY TO FILE?

13          MS. GREEN: IT HAS NOT BEEN FILED.

14          THE COURT: DO YOU KNOW WHEN SHE ANTICIPATES --

15   OR WHEN THE ATTORNEY ANTICIPATES FILING?

16          MS. GREEN: SHE SAID THIRTY DAYS.

17          THE COURT: FROM TODAY?

18          MS. GREEN: RIGHT, THIRTY DAYS.

19          MR. VARNER: YEAH, WE GAVE THEM INFORMATION

20   YOUR HONOR, THAT THEY ASKED FOR WHICH SHOULD AVOID

21   THE 2004 EXAM AND SAVE THE ESTATE SIGNIFICANT AMOUNT

22   OF MONEY AS WELL AS THE [INAUDIBLE]. SO THEY HAVE

23   THE INFORMATION TO FILE THE CLAIM. ACTUALLY ON THE

24   INFORMATION I GAVE THEM I DO NOT THINK THEY WILL FILE

25   THE CLAIM.

1    THE COURT:  BUT I WILL, AS I SAID, DENY THE MOTION

2    FOR A 2004 AT THIS JUNCTURE WITHOUT PREJUDICE.  I

3    WILL GRANT THE MOTION TO ALLOW THE LATE FILED CLAIM

4    AND JUST ASK THAT IT BE FILED, IF DESIRED, ON OR

5    BEFORE JULY 31ST.

6             AND, IF EITHER YOU OR THE ATTORNEY FOR MS.

7    HENDRICKS WOULD SUPPLY THE ORDER.  WHICH ONE WILL BE

8    DOING IT?

9        MS. GREEN:  IT'LL PROBABLY BE MR. HENRY,

10   ATTORNEY -- IT'S MR. CARLSON.

11       THE COURT:  NO PROBLEM.  IN MIRABILIS WE HAVE,

12   I THINK JUST THE MOTION TO DISMISS AND ALL OF THE

13   RELATED PLEADINGS.  AND THE ADVERSARY PROCEEDING

14   RELATED TO MR. BERMAN.  THERE WAS NO AMENDED

15   COMPLAINT FILED WE JUST NEED TO SET THAT OVER FOR A

16   PRETRIAL CONFERENCE, IS THAT RIGHT MR. KELLER?

17   UNLESS YOU HAVE SOMETHING ELSE I'M NOT AWARE OF.  AND

18   I WOULD ASK, HAS THE DISTRICT COURT TAKEN ANY ACTION

19   YET?

20       MR. KELLER:  NO, YOUR HONOR, AND I'M HAPPY TO

21   ADDRESS THAT.  I'M DAVID KELLER, I'M HERE ON BEHALF

22   OF MR. BERMAN AND HIS LAW FIRM, ALONG WITH MR.

23   SAXTON, WHO'S MY CO-COUNSEL.

24            WITH RESPECT TO THE MOTION TO WITHDRAW

25   REFERENCE, WE HAVE RECENTLY FILED AN AGREED MOTION TO

1    CONTINUE OR EXTEND TIME TO FILE FURTHER PAPERS BECAUSE OF

2    THE FACT THAT IN THE ADVERSARY PROCEEDING NO AMENDED

3    COMPLAINT -- SECOND AMENDED COMPLAINT HAS YET BEEN

4    FILED.

5            THE FIRST AMENDED COMPLAINT WAS DISMISSED

6    IN JUNE BY AGREEMENT --

7            THE COURT:  RIGHT.

8            MR. KELLER:  WE HAVE AGREED TO EXTEND THE TIME

9    FOR REFILING BASED ON AN ACCOUNTING ISSUE AND I'M

10   HAPPY TO REPORT, JUDGE, ALTHOUGH IT TOOK QUITE A BIT

11   OF TIME, THAT I HAVE AN ACCOUNTING THAT I'M PREPARED

12   TO DELIVER TO MS. GREEN TODAY.  I'VE ALREADY SPOKEN

13   TO HER ABOUT IT.  AND FOLLOWING THE HEARING WE PLAN

14   TO MEET AND DEAL WITH THAT ISSUE.

15           AS A RELATED MATTER, BRENT SMITH IS HERE

16   IN THE BACK OF THE COURTROOM.  HE MAY HAVE WALKED IN

17   AFTER YOU ASKED PEOPLE TO ANNOUNCE THEIR APPEARANCE,

18   I DON'T KNOW IF HE WANTS TO MAKE AN APPEARANCE TODAY.

19   BUT HE REPRESENTS MR. AMODEO INDIVIDUALLY ALONG WITH

20   THE MAYOR LAW FIRM AND THE SEARSY DENNY LAW FIRM IN

21   THE ORANGE COUNTY CIRCUIT COURT CASE.

22           NOW I WANTED TO BRING THAT UP BECAUSE I

23   DON'T KNOW IF IT'S ON YOUR RADAR SCREEN.  YOU MAY

24   HAVE SEEN IT BUT IT WAS SEVERAL MONTHS AGO.  THERE

25   WAS AN ORDER ENTERED IN THAT CASE THAT WAS

1    TRANSMITTED TO YOU BY JUDGE SMITH.  ARE YOU AWARE OF

2    THAT?

3           THE COURT:  NO I WAS NOT.  NO ONE HAS BROUGHT

4    IT TO MY ATTENTION.

5           MR. KELLER:  WELL, IT MAY BE MOOT.  AND I

6    TALKED WITH BRENT SMITH ABOUT IT TODAY BUT I THINK AT

7    THE VERY LEAST I SHOULD PROVIDE YOUR HONOR WITH A

8    COPY OF IT.

9           THE COURT:  PLEASE DO.  AND SOMEONE DID MENTION

10   IT IN THAT HEARING BUT I'VE NEVER SEEN THE ORDER AND

11   IT'S NEVER COME UP.

12          MR. KELLER:  ALL RIGHT.  IF IT PLEASE THE

13   COURT.  THE CASE MANAGEMENT ORDER ENTERED BY JUDGE

14   SMITH IN THE ORANGE COUNTY CIRCUIT COURT CASE ON

15   MARCH 26, 2009, RAISES AND ADDRESSES SOME OF THE

16   ISSUES THAT FRANKLY, ARE BEFORE THE COURT ON THE

17   MOTION TO DISMISS.

18              AND THEY ARE AS FOLLOWS.  THE DEFENDANTS

19   CONTEND, HE SAYS, THAT THE CLAIMS IN THIS CASE --

20   THAT IS THE STATE COURT CASE, SUBSTANTIALLY OVERLAP

21   THOSE ASSERTED BY MIRABILIS VENTURES IN THE ADVERSARY

22   PROCEEDING, WHICH IS THE ONE ON WHICH I AM NOW

23   ADDRESSING THE COURT WITH RESPECT TO THE STATUS, NOW

24   PENDING BEFORE JUDGE JENNEMANN, HE DOESN'T SAY THAT.

25              THIS RAISES THE FOLLOWING CONCERNS IN MY

1  MIND -- THIS IS THE CIRCUIT COURT JUDGE, THERE MAY BE A

2  NEEDLESS EXPENDITURE OF ATTORNEY AND JUDICIAL

3  RESOURCES TO LITIGATE THE SAME ISSUES IN TWO COURTS.

4  I SHARE THAT CONCERN, YOUR HONOR, ON BEHALF OF MY

5  CLIENTS.

6  TWO, THE POSSIBILITY OF INCONSISTENT

7  RESULTS. I SHARE THAT CONCERN WITH THE COURT IN

8  ORANGE COUNTY.

9  THREE, THE POSSIBILITY THAT SOME OR ALL OF

10  THE RECOVERY IN THIS CASE MAY BE THE PROPERTY OF THE

11  BANKRUPTCY ESTATE. I SHARE THAT CONCERN ALTHOUGH I

12  ADD TO THAT CONCERN THAT I'VE BEEN TOLD BY COUNSEL,

13  BOTH IN THE ADVERSARY CASE AND IN THE STATE COURT

14  CIRCUIT CASE, THAT WITH THE EXCEPTION OF PAYING

15  ATTORNEYS, ALL THE MONEY GOES TO THE GOVERNMENT.

16  WHICH IS AS ONE OF THE COUNSEL SAID, THE ONLY

17  ALLEGEDLY INJURED PARTY ACCORDING TO MR. AMODEO.

18  AND THEREFORE, HE DIRECTED US TO SEEK

19  GUIDANCE FROM YOU, INCLUDING DISCUSSING CONSOLIDATING

20  THE ACTIONS IN ONE COURT. I'M NOT SURE THERE IS A

21  PROCEDURAL VEHICLE TO DO THAT. ONE COURT ABSTAINING

22  AND EITHER MR. AMODEO REFILING IN BANKRUPTCY COURT OR

23  MIRABILIS REFILING IN STATE COURT.

24  I'M NOT SURE THAT ANYONE CAN COMPEL EITHER

25  OF THE PARTIES TO DO THAT UNLESS OF COURSE YOU

```
1    DISMISS THE BANKRUPTCY.  IN WHICH CASE MIRABILIS WOULD BE
2    FREE TO PURSUE ITS VENTURE IN STATE COURT ALONG SIDE
3    WITH AND IN LOCK STEP WITH MR. AMODEO, WHICH WE
4    FRANKLY BELIEVE IS AT LEAST HOW THIS STARTED OUT, IF
5    IT'S NOT HOW IT'S PROCEEDING AT THIS TIME.
6              AND THIRD, THE STAYING OF ONE ACTION WITH
7    THE UNDERSTANDING THAT ALL PARTIES WILL BE BOUND BY
8    THE DECISION IN THE OTHER ACTION OR SOME OTHER
9    APPROACH.  NOW, I WILL TELL YOU THAT I HAVE A GREAT
10   CONCERN BECAUSE SINCE THE ENTRY OF THIS ORDER MR.
11   SMITH AND I ATTENDED A CASE MANAGEMENT CONFERENCE
12   WITH JUDGE SMITH.
13             I HAD HOPED WE WOULD ADDRESS THIS ON MAY
14   21ST WHICH WAS BEFORE OUR STATUS CONFERENCE WITH JUDGE
15   SMITH, BUT IN FACT ON MAY 20TH WHEN YOU HAD THE FIRST
16   HEARING ON THIS MOTION TO DISMISS YOU PUT THAT OVER
17   TO TODAY.
18             THE COURT:  RIGHT.  SO WHAT HAPPENED?
19             MR. KELLER:  SO WE HAD -- WE HAVEN'T HAD A
20   CHANCE TO ADDRESS IT WITH YOU.
21             AT THE CASE MANAGEMENT CONFERENCE JUDGE
22   SMITH SAID WELL I DON'T THINK THERE'S ANYTHING ELSE
23   FOR ME TO DO OTHER THAN PUT THIS CASE ON A TRIAL
24   DOCKET AND MOVE IT FORWARD.
25             SO WHAT WE'RE NOW DEALING WITH IS THE
```

1   ISSUE OF DISCOVERY IN THE STATE COURT CASE, WHICH OF

2   COURSE OVERLAPS WITH ANY CASE THAT ULTIMATELY WILL BE

3   FILED IN THIS CASE.  WHICH WILL CONCEIVABLY, UNLESS

4   THE PARTIES CAN AGREE, INVOLVE MULTIPLE DEPOSITIONS

5   OF MY CLIENT AND OTHER WITNESSES IN AT LEAST FOUR

6   DIFFERENT ADVERSARY PROCEEDINGS.

7   ONE AGAINST MY CLIENTS, ONE AGAINST

8   RACHLIN COHEN DEFENDANTS, ONE AGAINST JAMES MOORE,

9   AND ONE AGAINST HANS BEYER, AND IN TWO DIFFERENT

10  STATE COURT PROCEEDINGS.

11  ONE AGAINST MY CLIENTS, ALTHOUGH BY THE

12  WAY THE DEFENDANTS ARE DIFFERENT IN THE ADVERSARY

13  PROCEEDING.  THERE ARE TWO ADDITIONAL DEFENDANTS IN

14  THE ADVERSARY PROCEEDING NAMED WITH MY CLIENT LAW

15  FIRM, WHO ARE NOT NAMED AS INDIVIDUAL DEFENDANTS IN

16  THE STATE COURT CASE.  AND, WITH ALL OF THE OTHER

17  CASES.

18  SO, I'M CONCERNED ABOUT ALL OF THOSE

19  THINGS AND I AM, AT THE DIRECTION OF JUDGE SMITH,

20  REQUESTING SOME GUIDANCE.  IF THE COURT HAS ANY TO

21  PROVIDE.

22  THE COURT:  HAS SOME SUGGESTIONS.  YES.  IT'S A

23  LAUDABLE CONCERN, I JUST DON'T KNOW QUITE HOW TO

24  ADDRESS IT.

25  MR. KELLER:  WELL, AND IN MY DISCUSSIONS WITH MR.

1    SMITH, IN FAIRNESS, HE SAID TO ME IN LIGHT OF THE RECENT

2    CASE MANAGEMENT ORDER -- THE MORE RECENT ONE --

3         THE COURT:  WHERE YOU GOT ON THE TRIAL DOCKET.

4         MR. KELLER:  WHERE WE'RE ON THE TRIAL DOCKET,

5    YOU KNOW, HE THINKS IT'S MOOT.

6              I DON'T THINK THAT THESE CONCERNS,

7    HOWEVER, ARE MOOT.  I THINK THEY'RE ANYTHING BUT

8    THAT.  I THINK THE CONCERNS HERE ARE THAT BEFORE MR.

9    AMODEO WAS INDICTED, AS MR. DIMARIA POINTED OUT, OUR

10   CLIENTS AND HIS CLIENTS WERE APPROACHED WITH DEMANDS.

11   WE MET.  WE DIDN'T RESOLVE THE CLAIMS.

12             WE CERTAINLY CONSIDERED AND ADDRESSED THE

13   LIKELIHOOD OF THE CURRENT STATUS OF EVENTS BECAUSE

14   BEFORE I EVER HEARD OF THIS CASE, MR. AMODEO, AND

15   BEFORE HE FILED THE BANKRUPTCY CASE, HAD RECEIVED

16   TARGET LETTERS.

17             I THINK MIRABILIS MAY HAVE ALSO RECEIVED A

18   TARGET LETTER ALTHOUGH, YOUR HONOR, I'M NOT CERTAIN

19   ABOUT THAT.  I KNOW A NUMBER OF TARGET LETTERS WERE

20   SENT OUT IN LATE '06.

21             THIS -- THE ULTIMATE GUILTY PLEA OF MR.

22   AMODEO AND HIS CONVICTION ARE CERTAINLY NO SURPRISE.

23   I PREDICTED THAT OVER A YEAR AGO WHEN I FIRST HEARD

24   ABOUT THIS CASE.  THE PENDING CRIMINAL INDICTMENT OF

25   MIRABILIS IS NO SURPRISE.  THE FILING OF A MOTION TO

1    CONTINUE THE TRIAL ON THE BASIS, IN THE MIRABILIS

2    CRIMINAL CASE WHICH IS ALSO BY THE WAY AGAINST AEM

3    AND SEVERAL OTHER CORPORATE ENTITIES, WITH THE

4    REPRESENTATION BY COUNSEL -- HELP ME WITH HIS NAME.

5            MR. DIMARIA:  LEE BARRETT.

6            MR. KELLER:  LEE BARRETT.  THAT THE PARTIES,

7    THE GOVERNMENT AND THE CORPORATIONS HAD REACHED A

8    TENTATIVE PLEA AGREEMENT IS NO SURPRISE.  THE

9    LIKELIHOOD THAT MIRABILIS ULTIMATELY WILL PLEAD

10   GUILTY TO SOME CRIMES AND BE CONVICTED IS NOT GOING

11   TO BE A SURPRISE.  AND ALL OF THESE CONCERNS REALLY

12   LEAD ME BACK TO ONE THING.

13           THE FOCUS OF THE BANKRUPTCY COURT IS TO

14   CONSERVE ASSETS, AND I DON'T VIEW THAT AS UNIQUE TO

15   THE DEBTOR.  MY CLIENT, AND HIS INSURERS, ARE

16   SPENDING ENORMOUS SUMS TO DEFEND THESE CASES.  AND

17   I'D LIKE TO HELP THE COURT FIND A WAY TO STREAMLINE

18   THIS.

19           BECAUSE I DON'T SEE HOW GIVEN THE LEGAL

20   IMPLICATIONS OF MR. AMODEO'S PLEA AND HIS CONVICTION,

21   AND GIVEN THE LIKELY OUTCOME OF THE MIRABILIS CASE,

22   HOW ANYONE CAN REASONABLY EXPECT THAT APART FROM A

23   CAPITULATION BY INSURERS AND PARTIES WHO ARE TIRED OF

24   PAYING LAWYER FEES, THAT THE OUTCOME CAN BE IN DOUBT.

25           SO, WITH THAT SAID, YOUR HONOR, THERE IS

```
 1      NO COMPLAINT CURRENTLY AGAINST MY CLIENTS IN THE
 2      ADVERSARY PROCEEDING.  I'M HOPING I CAN CONVINCE MS.
 3      GREEN AND MS. EDEN, AT LEAST NOT TO FILE THE
 4      ACCOUNTING AND MAYBE NOT TO FILE ANY OF IT BECAUSE
 5      FRANKLY, I JUST DON'T SEE HOW THE OUTCOME IS REALLY
 6      IN DOUBT.
 7           THE COURT:  AND I HOPE THAT'S THE CASE.
 8      CERTAINLY THERE IS NO PENDING COMPLAINT AT THIS
 9      POINT.  I WAS LOOKING FOR THE -- IN THE DOCKET TO SEE
10      PERHAPS JUDGE SMITH'S ORDER ENDED UP IN THE MAIN
11      CASE.
12           MR. KELLER:  WE --
13           THE COURT:  I DON'T SEE IT.
14           MR. KELLER:  I HAVE TO CONFESS TO YOUR, YOUR
15      HONOR, THAT WE ORIGINALLY THOUGHT THIS WAS BEING
16      RESET FOR SOME TIME IN MID-JUNE, I THINK ON THE
17      SEVENTEENTH.  I THINK THAT MAY HAVE BEEN MENTIONED
18      ORALLY AT THE MAY 20^{TH} HEARING WHICH I DIDN'T ATTEND.
19      WE NEVER SAW AN ORDER.
20           THEN I WAS TOLD IT WAS ON THE DOCKET FOR
21      TODAY, BUT WE NEVER SAW AN ORDER.  AND I --
22      BELATEDLY, AND I ACKNOWLEDGE THIS TO YOU AND TO MR.
23      SMITH, ONLY TALKED TO HIM ABOUT IT TODAY.  FOR NO
24      PARTICULAR REASON OTHER THAN I JUST DIDN'T GET AROUND
25      TO IT.
```

```
 1              BUT HE WAS KIND ENOUGH TO COME DOWN AND I

 2   DON'T KNOW IF HE HAS ANYTHING HE WANTS TO ADD OR

 3   SUBMIT TO THE COURT ON BEHALF OF HIS CLIENT, MR.

 4   AMODEO.

 5         THE COURT:  YOU HAVEN'T MADE AN APPEARANCE YET

 6   SO I'M ASSUMING NOT.

 7         MR. KELLER:  THANK YOU, YOUR HONOR.

 8         THE COURT:  BUT, IF YOU WOULD, WHEN YOU DO GO

 9   BACK TO JUDGE SMITH TELL HIM, I JUST SAW IT FOR THE

10   FIRST TIME TODAY.

11         MR. KELLER:  YES, YOUR HONOR.  HE SAYS HE SENT

12   IT TO EVERYONE AND I -- YOU KNOW, I --

13         THE COURT:  IT'S NOT ON EITHER DOCKET.  IT

14   CERTAINLY NEVER CAME TO ME DIRECTLY.

15         MR. KELLER:  I UNDERSTAND AND I DON'T KNOW HOW

16   IT WAS TRANSMITTED.

17         THE COURT:  I DON'T KNOW HOW IT WAS

18   TRANSMITTED.  I DON'T KNOW WHERE IT COULD HAVE WENT

19   OR WHAT MIGHT HAVE HAPPENED TO IT BUT I NEVER SAW IT.

20   AND I JUST DON'T WANT HIM TO THINK I WOULD IGNORE THE

21   REQUEST IF IT HAD GOTTEN TO ME EARLIER.

22         MR. KELLER:  AS A PRACTICAL MATTER, YOUR HONOR

23   --

24         THE COURT:  I DON'T KNOW WHAT I COULD HAVE DONE

25   ANYWAY.
```

1     MR. KELLER:  WELL, AS A PRACTICAL MATTER I THINK

2     YOU PERHAPS COULD CONSULT WITH JUDGE SMITH AND

3     TOGETHER WE COULD PERHAPS HAVE SOME ORDERS STAYING --

4          THE COURT:  WHEN ARE YOU ON THE TRIAL DOCKET?

5          MR. KELLER:  JANUARY OF 2011.  IT'S A PRETTY

6     LONG REACH.

7          THE COURT:  YOU'VE GOT A WAYS.  THIS IS WHAT I

8     PROMISE WILL BE DONE WAY BEFORE THAT.

9          MR. KELLER:  IT'S NOT BANKRUPTCY COURT WHERE

10    EVERYONE HAS TO GET THEIR ROLLER SKATES ON.  I

11    UNDERSTAND THAT.

12         THE COURT:  EXACTLY.

13         MR. KELLER:  BUT, PERHAPS IN CONSULTATION WITH

14    THE CIRCUIT JUDGE, WE COULD FASHION PARALLEL ORDERS

15    STAYING DISCOVERY SO WE COULD ADDRESS THESE LEGAL

16    ISSUES.

17         THE COURT:  SURE.

18         MR. KELLER:  BECAUSE THE DISCOVERY OF TAKING

19    DEPOSITIONS OF MY CLIENT AND LORI HOLTZ AND ALL THESE

20    OTHER PEOPLE, ISN'T GOING TO IMPACT THE COLLATERAL

21    ESTOPPEL ISSUES OR THE *IMPERI DELICTO* ISSUES.

22         THE COURT:  RIGHT.  I AGREE.

23         MR. KELLER:  IT'S IRRELEVANT.

24         THE COURT:  I AGREE.  OKAY, I'M GOING TO STOP

25    YOU THERE.  I AM GOING TO FILE THE ORDER IN THE

1    ADVERSARY PROCEEDING JUST SO I'LL REMEMBER AND WE'LL HAVE

2    IT IN THE RECORD FOR THE NEXT HEARING, BUT I WILL

3    JUST SET CONTINUED PRETRIAL CONFERENCE.  THIS

4    ADVERSARY PROCEEDING MAY NOT BE PENDING HERE.  AND

5    THEN YOU MAY HAVE NO NEED TO WORRY WITH ME AT ALL.

6             IN CONNECTION WITH ADVERSARY PROCEEDING

7    08-227, WE HAVE THE ONE MOTION TO DISMISS THE

8    ADVERSARY PROCEEDING.  AND THEN, BEFORE WE GET THERE

9    IS THERE ANYTHING TO REPORT IN 08-228?  THAT'S THE

10   ADVERSARY PROCEEDING AGAINST MR. MOORE AND MR. HUTTO.

11   AND YOU'VE BEEN WAITING SO PATIENTLY IN THE FRONT

12   ROW.

13            MR. MELTZ:  JUDGE, ONCE AGAIN, CHUCK MELTZ.  I

14   THINK WHERE WE CURRENTLY ARE IS THERE WAS AN AMENDED

15   COMPLAINT FILED AND MS. GREEN AND I HAVE TALKED ABOUT

16   IT.  AND I BELIEVE SHE'S AGREED THAT SHE'S GOING TO

17   FILE A SECOND AMENDED COMPLAINT THAT'S GOING TO

18   ADDRESS SOME OF THE CONCERNS WE RAISED WITH THE LAST

19   EFFORT.

20            I DON'T KNOW THAT WE'VE NECESSARILY SET A

21   TIME DEADLINE FOR HER TO DO THAT.  I WAS GOING TO

22   SPEAK WITH HER ABOUT THAT. BUT --

23            THE COURT:  AND IT'S TIED UP ON THE WITHDRAWAL

24   OF REFERENCE TOO, ALSO, CORRECT?

25            MR. MELTZ:  IT IS JUDGE ALTHOUGH THERE'S AN

```
 1    INTERESTING WRINKLE WITH THAT.  WHICH IS, EVERY TIME AN
 2    AMENDED COMPLAINT COMES, THEN THE DISTRICT COURT
 3    WANTS ME TO THEN RESUBMIT A WITHDRAWAL OF THE
 4    RECORDS.  BECAUSE IT DEPENDS ON THE SPECIFIC CLAIMS
 5    BEING ASSERTED WHETHER OT NOT THEY'RE GOING TO --
 6          THE COURT:  IT DOES, IT DOES.
 7          MR. MELTZ:  SO IT'S A LITTLE BIT CIRCULAR.
 8    WE'RE HOPEFULLY GETTING TOWARDS THE FINALIZED VERSION
 9    THAT WE CAN ADDRESS FULLY, ONE WAY OR THE OTHER.
10          THE COURT:  BUT AT THIS JUNCTURE IS THERE
11    ANYTHING TO DO OTHER THAN JUST TO SET A CONTINUED
12    PRETRIAL TO SEE WHAT HAPPENS?
13          MS. GREEN:  I THINK WE'LL SET A PRETRIAL AND
14    THEN WE'LL SET A DATE.
15          MR. MELTZ:  YES.
16          THE COURT:  VERY GOOD.  OKAY.  I AM GOING TO
17    GET TO THE MOTION TO DISMISS BUT I'M THINKING A LOT
18    OF YOU MAY JUST NOT NEED TO STAY FOR THAT.  YOU'RE
19    WELCOME TO STAY FOR THE MOTION TO DISMISS.  BUT I AM
20    GOING TO GO AHEAD AND GIVE SOME DATES.
21                ON THE OVERALL MOTION TO DISMISS IN THE
22    MAIN CASES, THE RESPONSIVE PLEADINGS WILL BE AT ISSUE
23    ON OR BEFORE AUGUST THE 14TH.  I'M GOING TO SET A
24    CONTINUED HEARING AT WHICH, IF I AM READY AND FEEL
25    IT'S APPROPRIATE WHICH I DON'T KNOW NOW WHETHER THAT
```

1    WILL BE THE CASE OR NOT, I'LL ISSUE AN ORAL RULING.  IF

2    NOT, YOU'LL GET A BRIEF RULING AND I'LL DO A WRITTEN

3    OPINION.  SO I'M NOT GOING TO -- I'M NOT GOING TO

4    DELAY YOU MUCH BEYOND THE RESPONSE DATE ON THAT.

5           I WILL SET A CONTINUED HEARING FOR AUGUST

6    THE 26TH.  AUGUST THE 26TH, I WILL SET IT AT TWO P.M.

7    YOU'LL BE THE ONLY THING ON THE DOCKET.  AND AT THAT

8    POINT I WILL CERTAINLY RENDER A RULING.  IT MAY BE

9    SUPPLEMENTED BY A WRITTEN ORDER, IT MAY OR MAY NOT

10    BE, ON THE MOTIONS TO DISMISS.  ALL THE ADVERSARY

11    PRETRIAL CONFERENCES WILL ALSO BE CONTINUED TO THAT

12    DATE, AUGUST 26TH AT TWO.

13           SO FOR THOSE OF YOU WHO WANT TO STAY,

14    YOU'RE WELCOME TO DO SO.  FOR THOSE OF YOU WHO DON'T,

15    THE ONLY OTHER THING I'M GOING TO DO TODAY, UNLESS

16    I'M MISSING SOMETHING, IS THE MOTION TO DISMISS IN

17    ADVERSARY PROCEEDING 08-227.

18           ANY QUESTIONS, THOUGH, BEFORE I TURN TO

19    THAT MOTION TO DISMISS?  VERY GOOD.  THANK YOU.

20           [COURT RECESSED AT 4:01 P.M.]

21

22

23

24

25

26

```
1                        CERTIFICATE OF OATH

2

3       STATE OF FLORIDA:

4       COUNTY OF SEMINOLE:

5

6            I, SANDRA A. MOSER, NOTARY PUBLIC, CERTIFY THAT

7       I WAS AUTHORIZED TO AND DID TRANSCRIBE, FROM CD, THE

8       FOREGOING PROCEEDINGS AND THAT THE TRANSCRIPT IS A

9       TRUE RECORD.

10

11           I  FURTHER  CERTIFY  THAT  I  AM  NOT  A  RELATIVE,

12      EMPLOYEE, ATTORNEY OF RECORD FOR ANY OF THE PARTIES,

13      NOR AM I FINANCIALLY INTERESTED IN THE OUTCOME OF THIS

14      MATTER.

15

16           DATED THIS 11TH DAY OF JULY, 2009.

17                         Sandra a. moser

18           _____

19                    SANDRA A. MOSER, RPR, FPR, PRESIDENT

20                    STATE OF FLORIDA

21                    REALTIME REPORTERS, INC.

22                    407-884-4662

23                    Fax: 407-884-4664

24

25      MY COMMISSION NO:  DD115338

26      MY COMMISSION EXPIRES:  MAY 6, 2010
```

SANDRA A. MOSER
Comm# DD0525811
Expires 5/6/2010
Bonded thru (800)432-4254
Florida Notary Assn., Inc