UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
Orlando Division

IN RE:

CASE NO. 6:08-bk-04327-KSJ
CHAPTER 11

MIRABILIS VENTURES, INC.

    Debtor.
_____/

RACHLIN COHEN & HOLTZ LLP, LAURIE S. HOLTZ AND
JOSE I. MARRERO'S SUPPLEMENTAL MEMORANDUM IN
ANTICIPATION OF THE AUGUST 26, 2009 HEARING ON THE
MOTION TO DISMISS THIS CHAPTER 11 PROCEEDING

Rachlin Cohen & Holtz LLP, Laurie S. Holtz and Jose I. Marrero (collectively, "Rachlin Defendants"), file this Supplemental Memorandum in advance of the August 26, 2009 hearing on the Rachlin Defendants' Partial Joinder in Forge and Affiliated Creditors' Motion to Dismiss Mirabilis Ventures, Inc.'s Chapter 11 Filing ("Motion to Dismiss"). This Memorandum addresses the issues raised by this Court at the June 30, 2009 hearing and arguments presented by Counsel for the Debtor. The Rachlin Defendants are submitting this Supplemental Memorandum pursuant to the Court's instructions at the June 30, 2009 hearing. *See* Transcript of June 20, 2009 Hearing, page 77, lines 9-20.

I.    **Courts Have Specifically Noted that Bad Faith Filings Apply to More than Just Single Asset Cases**

The Court noted at the June 30 hearing on the Motion to Dismiss that the majority of the cases cited by the Rachlin Defendants in support of dismissal were single asset real estate cases. *See* Transcript of June 20, 2009 Hearing, at page 44, lines 4-5. Counsel for the Debtor then attempted to seize on the Court's comments arguing in opposition to the Motion to Dismiss. *See*

Transcript of June 20, 2009 Hearing, at page 66, lines 8-19. However, the cases cited by the Rachlin Defendants simply represented the fact that the "majority of the published decisions involving bad faith allegations are single asset real estate cases in which the petitions are filed near or at the end of the foreclosure process." *In re Moog*, 159 B.R. 357, (Bankr. S.D. Fla. 1993). Therefore, the leading Eleventh Circuit cases applying the good faith standard (which were cited by the Rachlin Defendants) are single asset real estate cases. *See, e.g., In re Phoenix Piccadilly*, 849 F.2d 1393 (11th Cir. 1988); *In re Natural Land Corp. v. Baker Farms, Inc.*, 825 F.2d 296, 297 (11th Cir. 1987).

However, this decisional law does not stand for the proposition that only single asset real estate cases are appropriate for dismissal – those cases are simply the most obvious examples of bad faith filings. *See In re Moog*, 159 B.R. 357, 361 (Bankr. S.D. Fla. 1993) (specifically noting that 11 U.S.C. § 1112(b)(1) applies to more than just single real estate cases and providing examples of cases that have so held) (citing to *In re Dixie Broadcasting, Inc. v. Radio WBHP, Inc.*, 871 F.2d 1023, 1027 (11th Cir. 1989) and *In re HBA East, Inc.*, 87 B.R. 248 (Bankr. E.D.N.Y. 1988)). The Court in *In re Moog* dismissed the Chapter 11 petition in that case because it was filed "to improperly use the bankruptcy court as a forum to renegotiate [a] divorce." *Id.* at 358.

In fact, the cases cited to in *Moog* are among the second largest group of cases dismissing a Chapter 11 petition when it was filed in bad faith – those cases where a Debtor files a petition under the Bankruptcy Code as a "diversionary tactic." *See In re Dixie Broadcasting*, 871 F.2d at 1027; *see also In re Marsch*, 36 F.3d 825, (9th Cir. 1994) (dismissing a Chapter 11 petition because it was filed to avoid posting an appeal bond); *In re HBA East, Inc.*, 87 B.R. 248 (Bankr. E.D.N.Y. 1988) (dismissing a Chapter 11 petition because it was not filed with the intent to

reorganize); *In re Moog*, 159 B.R. 357, (Bankr. S.D. Fla. 1993) (dismissing a Chapter 11 petition as it sought objectives outside of the Bankruptcy proceedings); *In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3d Cir. 1999) (dismissing a Chapter 11 petition because it lacked a valid reorganizational purpose). In those cases, the Chapter 11 petition was filed in order to provoke a result or effect on some other proceeding outside of and unrelated to the Bankruptcy proceedings. The Debtors in those cases never had any intent to reorganize, but rather attempted to take advantage of the Bankruptcy Code. The instant case falls into this category.

The Bankruptcy Court in *HBA East* evaluated a number of factors and ultimately held that because the totality of the facts and circumstances compel a "conclusion that the reorganization process is being perverted, [the Court] is constrained to dismiss the Chapter 11 petitions as not being filed and maintained in good faith." *In re HBA East, Inc.*, 87 B.R. at 262 (cited by *In re Moog*, 159 B.R. at 361). The factors the Bankruptcy Court considered in *HBA East* included the lack of intent and ability to reorganize, the inextricable relationship between the Debtor and the principal of the Debtor, the use of the Bankruptcy filing as a means of forum shopping, and the fact that payments to creditors would not likely increase due to the filing of the bankruptcy proceeding. *Id.* These factors from *HBA East* are the same factors present in this case that call for the Plaintiff's Chapter 11 Petition to be dismissed.

A.   **The Primary Reason for Dismissal in *HBA East* is Directly on Point to the Instant Chapter 11 Filing**

The Court in *HBA East* dismissed the debtor's Chapter 11 filing because the debtor did not file the petition with the <u>intent</u> of reorganizing a business. The Bankruptcy Court noted that the Congressional intent in enacting Chapter 11 was to provide a "means of avoiding premature or unnecessary liquidation – thereby maximizing payments to creditors, saving jobs and, if

3

possible, preserving shareholder interests." *Id.* at 258-59. "The key phrases in [Congress's] explanation of the Chapter 11 purpose are 'restructure a business's finances' and 'business reorganization.'" *Id.* at 259. "The absence of a realistic probability of successful reorganization is grounds for dismissal of a Chapter 11 petition as not being filed in good faith ... Neither the bankruptcy courts nor creditors should be subject to the costs and delays of reorganization proceedings when there is little more than visionary hopes of rehabilitation." *Id.* at 261.

In the instant case, there was <u>never</u> any intent or ability to avoid liquidation in accordance with the legitimate aims and objectives of Chapter 11. Counsel for the Debtor stated this herself at the June 30 hearing: "Here, this has always been a liquidating case. I don't think that there's anybody who would argue that this has not come into this Court as a liquidating case." *See* June 30, 2009 Hearing Transcript, page 66, lines 20-23. Yet, Counsel for the Debtor also acknowledged that if there is no possibility of reorganization, the case should be dismissed as a bad faith filing. See Transcript of June 20, 2009 Hearing, at page 66, lines 12-16 (stating that in single asset cases when "there is no possibility of a reorganization, [] that's why the Courts have dismissed those cases based upon bad faith"). Filing a Chapter 11 petition without any intent to reorganize is wholly improper. Intentions inconsistent with reorganization constitute "cause" for dismissal of Chapter 11 petitions. *In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3d Cir. 1999).[1]

The Debtor maintains that because liquidation <u>plans</u> are allowed under Chapter 11, it is acceptable to <u>file</u> a Chapter 11 petition with the intention of liquidating the business. *See* June 30, 2009 Hearing Transcript, pages 66-67, lines 23-25 and 1-3. As this Court well knows, the

---

[1] *In re SGL Carbon* is one of the leading cases on Chapter 11 bad faith filings and is another example of a non-single asset real estate case. The Rachlin Defendants relied on this case in their earlier filings related to the Motion to Dismiss and during oral arguments at the June 30 hearing. The Rachlin Defendants will not again discuss it here in an effort to avoid repetition.

4

Bankruptcy Code does not permit such a cynical use of this Court and the case law clearly undermines this argument. The Debtor is attempting to seize on an apparent conflict between Chapter 11 and other provisions of the Bankruptcy Code. *See, e.g.*, 11 U.S.C. § 363(b) (allowing the sale of debtor's assets); 11 U.S.C. § 1129(a)(11) (allowing plans of liquidation). However, Courts have addressed this apparent tension and have held that resolving the conflict "does not require an all or nothing approach." *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 2001). Sometimes good business reasons require certain liquidation procedures to be used in Chapter 11 cases, which ensure good results in the administration of the Chapter 11. *Id.* But, Courts cannot ignore equity interests in so allowing such liquidation proceedings. *Id.* (disallowing a § 363(b) sale because the reasons advanced for granting the request "ignore[d] the equity interests required to be weighed and considered under Chapter 11"). Therefore, while Chapter 11 proceedings may <u>evolve</u> into liquidation proceedings over time, Chapter 11 petitions may not be filed with the <u>intent</u> to liquidate.

### B. The Additional Factors Considered by the Court in *HBA East* are Also Applicable to this Chapter 11 Filing

The Court in *HBA East* also held that the "the inextricable relationship and virtual identity between" the principal of the Debtor and the Debtor must be recognized. *Id.* at 256 (looking to an affidavit of the principal of the Debtor to determine the reason for the filing of the bankruptcy petition). In this case, the relationship between Frank Amodeo and Mirabilis cannot be ignored. Frank Amodeo controlled the Debtor up through its pre-bankruptcy filing winding down of operations. Amodeo decided that the Debtor should be put into Bankruptcy. The fact that Amodeo controlled Mirabilis at the time this Chapter 11 Petition was filed and admitted at his sentencing hearing that he decided that the company should be put into bankruptcy cannot be

5

ignored. *See* Transcript of Sentencing Hearing of Frank Amodeo, attached as Exhibit 1 to the Rachlin Defendants Memorandum on the Legal Standards and Evidence Governing Standing and Bad Faith for the June 30, 2009 Hearing [D.E. 205], pages 81-82. These indisputable facts must be considered in determining the intent of the Debtor in filing the Chapter 11 Petition.

Additionally, the Court in *HBA East* noted the Debtor's desire to litigate its claims in Bankruptcy Court rather than in state court. The Debtors in *HBA East* were able to shift the forum of their disputes to the Bankruptcy Court, "a forum they believed might be more favorable to their plight." *Id.* at 259. Similarly, the Debtor in this case is also using the Chapter 11 Petition as means to forum shop. In this case, the Debtor desired to litigate in Bankruptcy Court because there was no way the litigation in state court could proceed. The Debtors' attorneys were not getting paid and were, therefore, resigning. *See* Transcript of Amodeo's Sentencing Hearing, page 81, lines 8-14 (stating that "the lawsuits were going to be defaulted on if the stay wasn't put in place since the attorneys were resigning. Mirabilis, or AQMI's attorney, as the case may be were quitting because they didn't have any more money, their money had just got taken and they were just going to resign, and all these lawsuits we were going to lose, good claims were going to be lost by default"). "Chapter 11 relief should not be available to entities filing to obtain a perceived advantage in litigation with others or to provide an alternate judicial forum." *Id.* at 260.

Further, like in *HBA East*, the payments to the creditors of Mirabilis are not likely to be increased by the filing of this Chapter 11 petition. Instead, the only claims being increased in this case are the legal bills to Mirabilis and payments to its only "employee," Robert Cuthill as

6

set forth in the Debtor's Monthly Financial Reports.[2] The Debtor is conducting no business, yet is generating legal fees and incurring expenses. Such actions by the Debtor are only reducing the amount of funds ultimately available to pay creditors.

Finally, the standard for determining whether a Chapter 11 Petition was filed in bad faith is not a narrow or one dimensional standard. And, one set of facts is not determinative of whether or not a Chapter 11 petition was filed in bad faith. Rather, the appropriate consideration is "the cumulative effect of all of the evidence." *See In re Dixie Broadcasting, Inc. v. Radio WBHP, Inc.*, 871 F.2d 1023, 1027 (11th Cir. 1989) (dismissing a Chapter 11 filing because it was filed as a "diversionary tactic"). Therefore, the Court is not required, nor should it, close its eyes to the totality of the facts and circumstances presented in this case. In fact, it is legally improper to seize on one fact or absence of fact, as counsel has urged, in determining a motion to dismiss a Chapter 11 filing. *See In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994) (stating that "[t]he existence of good faith depends on an amalgam of factors and not upon a specific fact"). When the Court reviews all of the material facts, the Court should conclude that ample cause exists to dismiss this proceeding.

## II.    Conclusion

To date, the Debtor has failed to address whether or not the petition was *filed* in good faith, and instead, continues to focus on the current state of this Bankruptcy Proceeding. Counsel for the Debtor is desperately trying to justify the bad faith filing by presenting a liquidation plan – a liquidation plan that was more than a year after the Chapter 11 Petition was initially filed. However, the post-filing actions are legally irrelevant in the determination of what the Debtor's

---

[2] The Rachlin Defendants previous memorandum filed in anticipation of the June 30, 2009 hearing [D.E. 205] provides a more detailed explanation of the financial activity described in the Debtor's financial reports.

7

intent was when it filed the Chapter 11 Petition. "The possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith." In re Phoenix Piccadilly, Ltd., 849 F.3d 1393 (11th Cir. 1988).

The totality of the facts and circumstances plainly show that this Chapter 11 Petition was filed without the intent to reorganize and as another component of an elaborate scheme orchestrated by Frank Amodeo. Accordingly, the Rachlin Defendants request that this Court enter an order dismissing this Bankruptcy Proceeding.

TEW CARDENAS LLP
Attorneys for Defendants
Four Seasons Tower, 15th Floor
1441 Brickell Avenue
Miami, Florida 33131
Tel: (305) 536-1112
Fax: (305) 536-1116


By    s/ Joseph A. DeMaria
      C. Thomas Tew, P.A.
      Florida Bar No. 098160
      Joseph A. DeMaria
      Florida Bar No. 0764711

8

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 31st day of July, 2009, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, and a true copy of the foregoing, together with any exhibits, has been furnished via the CM/ECF system to all parties in interest receiving electronic notice as per the attached matrix. Additionally, the following parties were also served by U.S. Mail: Debtor, Mirabilis Ventures, Inc., c/o R.W. Cuthill, Jr., President, 341 N. Maitland Ave., Suite 210, Maitland, Florida 32751; Debtor's Counsel, Elizabeth A. Green, Esq. (Egreen@lseblaw.com), Latham, Shuker, Eden & Beaudine, LLP, 390 North Orange Avenue, Suite 600, Orlando, Florida 32801; Randy Gold, Esq., Assistant U.S. Attorney, United States Attorney's Office, 501 West Church Street, Suite 300, Orlando, Florida 32805.

By    s/ Joseph A. DeMaria
Counsel

528296_1