# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

IN RE:

MIRABILIS VENTURES, INC.,
*et al.*,
                    Debtor.

_____/

CASE NO. 6:08-bk-04327-KSJ
CASE NO. 6:08-bk-04328-KSJ
CASE NO. 6:08-bk-04681-KSJ

CHAPTER 11


## JOINT AMENDED PLAN OF LIQUIDATION PURSUANT TO 11 U.S.C. § 1125 FOR MIRABILIS VENTURES, INC., HOTH HOLDINGS, LLC, AND AEM, INC.


COUNSEL FOR DEBTORS

ELIZABETH A. GREEN, ESQ.
JUSTIN M. LUNA, ESQ.
LATHAM, SHUKER, EDEN & BEAUDINE, LLP
390 N. ORANGE AVENUE, SUITE 600
ORLANDO, FLORIDA, 32801


August 14, 2009

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:

MIRABILIS VENTURES, INC.,
*et al.,*

        Debtor.

_____/

CASE NO. 6:08-bk-04327-KSJ
CASE NO. 6:08-bk-04328-KSJ
CASE NO. 6:08-bk-04681-KSJ

CHAPTER 11

## JOINT AMENDED PLAN OF LIQUIDATION PURSUANT TO 11 U.S.C. § 1125 FOR MIRABILIS VENTURES, INC., HOTH HOLDINGS, LLC, AND AEM, INC.

Mirabilis Ventures, Inc. ("Mirabilis"), Hoth Holdings, LLC ("Hoth"), and AEM, Inc. ("AEM")(collectively, "Debtors") hereby propose this Joint Amended Plan of Liquidation (the "Plan" (as further defined below)), pursuant to Chapter 11 of the United States Code, 11 U.S.C. §101, *et seq.,* (the "Code").

PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, NOTHING CONTAINED IN THIS PLAN SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THIS PLAN UNTIL SUCH TIME AS THE DEBTORS' DISCLOSURE STATEMENT (AS DEFINED HEREIN) HAS BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION, AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF IMPAIRED CLAIMS AGAINST AND IMPAIRED EQUITY INTERESTS IN THE DEBTORS ENTITLED TO VOTE ON THIS PLAN. THE PLAN PROPONENTS RESERVE THE RIGHT TO FILE AN AMENDED OR AN AMENDED AND RESTATED PLAN AND DISCLOSURE STATEMENT FROM TIME TO TIME HEREAFTER. REFERENCE IS MADE TO SUCH DISCLOSURE STATEMENT FOR A DISCUSSION OF VOTING INSTRUCTIONS, THE DEBTORS' HISTORY, BUSINESS, AND RESULTS OF OPERATIONS, A SUMMARY OF SIGNIFICANT EVENTS WHICH HAVE OCCURRED TO DATE IN THE REORGANIZATION CASE AND THE MEANS OF FUNDING THIS PLAN. ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE HEREBY ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THIS PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

2

THIS PLAN AND THE DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.   PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING SECURITIES OF THE DEBTORS SHOULD EVALUATE THIS PLAN IN LIGHT OF THE PURPOSES FOR WHICH IT WAS PREPARED.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS PLAN AND THE DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

## I.    INTRODUCTION.

A.    In General.

Mirabilis is a Nevada corporation, which was established on October 28, 2004 when Stellar Industries, Inc. ("Stellar") amended its articles of incorporation to change its name to Mirabilis.   Mirabilis is a private equity company, which acquired companies that had a strategic fit into its unique business model.   Acquired companies either fit into the four primary specialization categories – real estate, construction, chain store development, and human resources – or they provided necessary goods and services to the core companies.   At its inception, Mirabilis had only one shareholder (Yaniv Amar) and only one director (Gailie Hartman).   Mirabilis is operated from and had its principal place of business in Orlando, Florida.

AEM is a Florida corporation, which was established on October 15, 2001 when it filed its articles of incorporation with the State of Florida.   AEM registered Mirabilis HR, as a fictitious name with the State of Florida on August 4, 2005 and began operating under that name. AEM operated as a professional employer organization ("PEO") until 2007.   AEM is a wholly owned subsidiary of Mirabilis.

Hoth is a Nevada limited liability company, which was formed on July 24, 2006 to own certain real property located in Henrico County, Virginia (the "Virginia Property").   The

3

Virginia Property consisted of a building, which operated as a distribution center. The Virginia Property was the subject of litigation in Henrico County, Virginia, which sought to require Hoth to deliver the deed to the Virginia Property to Coast Equity Partners, LLC. Subsequent to this time, title to the Virginia Property was transferred while Hoth was insolvent and without value.

B.    Events Leading to Chapter 11 Filing.

In late November 2006, Mirabilis executives were notified that a federal grand jury investigation had commenced with regard to the operations of Mirabilis and its related entities. The grand jury investigations related to payroll taxes of another entities used by Mirabilis for other investments. By January 2007, Mirabilis and AEM had laid off all non-key employees, including a number of officers and managers, and had closed a majority of its businesses. This allowed Mirabilis to sustain operations and remain current with its taxes. News of the federal grand jury investigation and nonpayment of payroll taxes leaked to the press, resulting in several negative articles, which decimated the PEO book of business and destroyed the operations of Mirabilis. On or about May 1, 2007, Mirabilis was forced to liquidate its operations and sold the PEO book of business to O2HR, LLC for approximately Fifteen Million Dollars ($15,000,000.00).

From May 2007 through April 2008 Mirabilis continued to wind down its operations in a self liquidating process. Then, on April 25, 2008, the United States of America ("USA") filed an *in rem* Civil Forfeiture Complaint, Case No. 6:08-cv-00067-MSS-KRS, in the District Court for the Middle District of Florida, Orlando Division ("Civil Complaint") against certain property owned by Mirabilis. (Civil Complaint Doc No. 1). The *in rem* civil forfeiture action was filed based upon the criminal investigation of Mr. Frank Amodeo. Mr. Amodeo was

4

not an officer or director of the Debtors. The government sought forfeiture of the Debtors' assets based upon the assertion that Mr. Amodeo exercised some degree of control over the Debtors.

Shortly thereafter, on May 27, 2008, the directors of Mirabilis added Michael E. Moecker ("Moecker") as a Director, and subsequently, the two existing directors of Mirabilis resigned together with the President of Mirabilis. By an Action of the Sole Director of Mirabilis, dated May 27, 2008, Moecker appointed R.W. Cuthill ("Cuthill"), as president of Mirabilis. This same date, Cuthill approved the filing of the bankruptcy petitions for the Debtors.

On May 27, 2008, the Debtors filed their voluntary petitions for relief with the Middle District of Florida Bankruptcy Court (the "Petition Date"). The Chapter 11 filings came primarily as a result of an *in rem* civil forfeiture action. In an effort to preserve equity for all of its creditors and other potential creditors, Mirabilis deemed a Chapter 11 liquidation plan as in the best interest of all its creditors.

In addition, Hoth's Virginia Property was the subject of litigation in Henrico County, Virginia, which sought to require Hoth to deliver the deed to the property to Coastal. The litigation was set for trial on May 28, 2009. The proceeds of the Virginia Property were the subject of the *in rem* forfeiture action by the USA. However, the Virginia Property had not been sold, and hence there were no proceeds from the Virginia Property. In an effort to preserve the value of the asset, the Chapter 11 petition was filed.

## II.    RULES OF CONSTRUCTION AND DEFINITIONS

A.    Rules of Construction.

For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or

document being in a particular form or on particular terms and conditions means that such contract, instrument, release, indenture or other agreement or document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit means such document or Exhibit as it may have been or may be amended, modified or supplemented; (d) if the Plan's description of the terms of an Exhibit is inconsistent with the terms of the Exhibit, the terms of the Exhibit shall control; (e) unless otherwise specified, all references in the Plan to Articles and Exhibits are references to Articles and Exhibits of or to the Plan; (f) unless the context requires otherwise, the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular Article or section or subsection of the Plan; (g) any phrase containing the term "include" or "including" shall mean including without limitation; (h) all of the Exhibits referred to in the Plan shall be deemed incorporated herein by such reference and made a part hereof for all purposes; and (i) the rules of construction set forth in Section 102 of the Code shall apply in the construction of the Plan, to the extent such rules are not inconsistent with any other provision set forth herein.

B.    <u>Definitions</u>.    For the purposes of the Plan the following terms will have the meanings set forth below:

**Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in § 503(b) of the Code, and of a kind referred to in § 507(a)(1) of the Code, including without limitation, the actual, necessary costs and expenses incurred after the commencement after the Chapter 11 case but preserving the estate of the Debtors in operating the business of the Debtors, including wages, salaries, or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under Code

§§330(a) or 331, and all fees and charges assessed against the estate under Chapter 123 of Title 28 of the United States Code.

**Administrative Claims Bar Date** shall mean the date by which all Administrative Claims must be filed with the Court to be allowed. The administrative Claims Bar Date will be established by the Court as a specific date prior to the Confirmation Date.

**Allowed Administrative Claim** shall mean any Administrative Claim or any portion of such claim which has been or becomes allowed by Order of the Court.

**Allowed Amount** shall mean the amount of any Claim which becomes an Allowed Claim either through negotiations with the Debtors or through the entry of a Final Order.

**Allowed Claim** (or "Allowed Class __ Claim") shall mean either (a) a Claim with respect to which a proof of Claim has been filed with the Court pursuant to Code §501 and Rule 3001 filed within an applicable period of limitation fixed by Rule 3003 or any Order of the Court; (b) a Claim which is deemed filed pursuant to Code §1111(a) by virtue of such Claim having been scheduled in the list of Creditors prepared, filed, and amended by the Debtor or the Trustee with the Court pursuant to Code §521(1) and Rule 1007(b) and not listed as disputed, contingent or unliquidated; or (c) a Claim which is deemed an Allowed Claim pursuant to the provisions of the Plan or any Order of the Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Order of the Court, an Allowed Claim shall not include any Claim as to which an objection or proceeding challenging the allowance thereof has been interposed by the Debtors, within any applicable period of limitation fixed pursuant to the Plan, by Rule 3003, or any Order of the Court, until such objection or proceeding has been overruled, or dismissed or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the commencement of any such

proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a). Unless otherwise specified in the Plan or any Order of the Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim arising subsequent to the Petition Date.

**Allowed Priority Tax Claim** shall mean a Priority Claim under Code §507(a)(viii), to the extent such Priority Claim is or performs an Allowed Claim.

**Allowed Secured Claim** shall mean either (1) a Secured Claim to the extent that neither the security interest underlying the Claim is challenged nor the amount of the Secured Claim is challenged as provided for herein or (2) a Secured Claim which has become an Allowed Claim by order of the Court.

**Allowed Unsecured Claim** shall mean an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

**Bankruptcy Estates** shall mean the estates created pursuant to Code §541 by the commencement of Debtors' Chapter 11 case and shall include all property of the Estate as set forth in the Code. For all periods after the Confirmation Date, the term Bankruptcy Estate as used herein shall be deemed to refer to the Liquidation Trust Account maintained for the benefit of the Holders of Allowed Class 1 Claims, Allowed Administrative Claims and Allowed Priority Tax Claims.

**Bar Date** shall mean the date fixed by Order of the Court as the last date for the filing of Claims in this Case.

**Business Day** shall mean a day other than a Saturday or Sunday or any other day on which the majority of commercial banks located in Orlando, Florida, are required or authorized to close.

8

**Cash** shall mean cash or cash equivalents, including, but not limited to, checks, bank deposits, or other similar items.

**Causes of Action** shall mean any and all of the Debtors', Liquidated Debtors' or the Liquidating Agent's actions, claims, demands, rights, defenses, counterclaims, suits, and causes of action, whether now known or unknown, in law, equity, or otherwise, including, without limitation, all avoidance actions and rights to recover transfers voidable or recoverable under Sections 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, and any and all other claims or rights of any value whatever, at law or in equity, against any Creditor, third party, or former Insider of the Debtors.

**Claim** shall mean any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, mature, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to any equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**Class** shall mean any class into which Claims or Interest are classified under the Plan.

**Class 1 Claim, Class 2 Claim, Class 3 Claim, etc.,** shall mean a specific Class into which Claims or Interests are classified under Article II of the Plan.

**Code** shall mean the United States Bankruptcy Code, 11 U.S.C. §101, *et seq.*, and any amendments thereof.

**Confirmation** shall mean the process leading to and including the entry of the Confirmation Order pursuant to Code §1129.

**Confirmation Date** shall mean the date of entry of the Confirmation Order by the Court.

9

**Confirmation Order** shall mean the Order entered by the Court confirming the Plan in accordance with the provisions of the Code.

**Court** or **Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which the Case is pending together with any court having jurisdiction to hear appeals in certiorari proceedings from that bankruptcy court to the extent any such appeals are taken in connection with the Case.

**Creditor** shall have the same meaning as set forth in Code §101(1).

**Debtors** shall have the same meaning as Mirabilis Ventures, Inc., Hoth Holdings, LLC and AEM, Inc. for all periods after the Petition Date. For purposes of the Plan, any references to the Debtors in connection with actions which must be taken shall be deemed to be references to the Liquidated Debtors, as appropriate.

**Director** shall mean the sole director of the Liquidated Debtors. The Director shall be the Liquidating Agent (except in the special circumstances provided for herein pertaining to an interim Director) and shall be appointed, removed, or replaced as provided for herein.

**Disclosure Statement** shall mean the Joint Disclosure Statement approved (or to be approved) for distribution by the Court pursuant to Code §1125 together with any amendments or modifications thereto.

**Disputed Claim** shall mean a Claim against the Debtors which are not an Allowed Claim and which has not been disallowed by a Final Order of the Court.

**Effective Date** shall mean a date which is the later of the date occurring eleven (11) days after the Confirmation Date provided that no appeal is taken of the Confirmation Order in the previous ten (10) days, the date upon which any appeal of the Confirmation Order is finally

10

resolved by a court of competent jurisdiction, or the date upon which the last of the Conditions Precedent has been met as provided for in the Plan.

**Extraordinary Income** shall mean all income of the Debtors received after the Petition Date including, without limitation, any funds recovered in connection with (a) any and all legal actions, or threatened legal actions, commenced pursuant to Code §§ 541 through 554 or pursuant to comparable provisions of the laws of any jurisdiction, whether federal, state or foreign; (b) any and all Causes of Actions or threatened legal actions based on theories of fraud, embezzlement, civil theft, fraudulent misrepresentation, negligent misrepresentation, breaches of fiduciary duty, negligence, fraudulent transfers, preferences, turnover, violations of the Racketeer Influenced and Corrupt Organizations Act, or any other civil case or action under Federal and State law; (c) any and all Causes of Action pertaining to the securities laws of any jurisdiction; and (d) any payments on the Promissory Notes. Extraordinary Income includes not only actual recoveries from legal proceedings but also any funds paid to settle such legal proceedings, whether or not any legal proceedings have been filed. Extraordinary Income shall only be used as provided for in the Plan. Since the Debtors are no longer engaged in its ordinary business operations, all income received by the Debtors after the Petition Date will be Extraordinary Income.

**Extraordinary Income Expenses** shall mean all expenses, including, without limitation, professional fees, incurred by the Liquidating Agent after the Effective Date pursuant to the Plan to recover Extraordinary Income for the benefit of the Estate or otherwise to administer the Estate for the benefit of its creditors.

**Final Order** shall mean an Order or judgment of the Court which is no longer subject to appeal certiorari proceedings and as to which no appeal or certiorari proceeding is pending.

11

**Holders of Allowed Claims** shall mean all persons or entities holding Allowed Claims against Debtors.

**Impaired Class** shall mean any Class whose members are holders of Claims or Interests which are impaired within the meaning of Code § 1124.

**Insider** shall have the same meaning as set forth in § 101(31) of the Code and shall include, without limitation, all present and former equity holders, officers, or directors of the Debtors.

**Interest** shall mean any outstanding share or shares of common stock, a warrant for the issuance of such share or shares, other stock, stock equivalents, limited partnership interest, beneficial interest, or other equity instruments in the Debtors.

**Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of Debtors but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by the Liquidating Agent, or any other party with standing to bring such a challenge.

**Liquidating Agent** shall mean R.W. Cuthill, Jr., or any other person appointed by the Court pursuant to the terms of the Plan to recover Extraordinary Income for the benefit of creditors with Allowed Claims. The Liquidating Agent shall have the duties and responsibilities as set forth in the Plan and shall be retained, and may be terminated or replaced, as provided for in the Plan. The Liquidating Agent shall also serve as the President and as the Director, as those terms are defined herein.

**Liquidated Debtors** shall refer to the same entity as the term "Debtors" for all periods following the Effective Date and shall be deemed to have the same meaning as "Debtors" for all

12

periods prior to the Effective Date for purposes of interpreting the Plan. The Liquidated Debtors shall have only a single officer (unless additional officers are required for it to pursue the recovery of Extraordinary Income as provided for herein) who shall be the President and a single director (unless additional officers are required for it to pursue the recovery of Extraordinary Income as provided for herein) who shall be the Director.

**Liquidation Trust Account** shall mean the one account established by the Liquidated Debtor for the benefit of Debtors' creditors with Allowed Claims; the Liquidating Agent shall be the only authorized signatory on the Liquidation Trust Account. All Extraordinary Income recovered pursuant to this Plan shall be deposited in such accounts until distributed to creditors or used to pay Extraordinary Income Expenses or other expenses approved for payment by the Court, all as provided for herein.

**Order** shall mean a determination, decree, adjudication or a judgment issued or entered by the Court.

**Payment** shall mean the Cash to be paid under the Plan to the holders of Allowed Claims as provided for herein.

**Payment Date** shall mean any date upon which Payments are made pursuant to the Plan.

**Person** shall mean an individual, corporation, exempt companies, limited liability companies, partnership, joint venture, trust, estate, unincorporated organization or a government or agency or political subdivision thereof.

**Petition Date** shall mean May 27, 2008, the date on which Debtors filed their voluntary petition for relief under Chapter 11 of the Code.

**Plan** shall mean this Chapter 11 plan of liquidation, as amended or modified in accordance with the terms hereof and with the Code and Rules.

13

**President** shall mean the sole officer of the Liquidated Debtor. The President shall be the Liquidating Agent (except in the special situation pertaining to interim Presidents provided for herein) and his appointment, duties, and removal shall be as provided for herein.

**Prime Rate** shall be the prime rate of interest as published in the *WALL STREET JOURNAL* on the Confirmation Date.

**Priority Claim** shall mean a Claim other than an Administrative Claim to the extent such claim is entitled to priority in payment under Code § 507.

***Pro Rata* Share** shall mean, with respect to any distribution to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which shall be the amount of such Holder's Allowed Claim and the denominator of which shall be the sum of all Allowed Claims and all Reserved Claims in such Class and, if applicable, other Classes, all determined as of the applicable Distribution Date. The term "*Pro Rata* Share" shall also be applied in respect of Administrative Claims, Priority Tax Claims, and Priority Claims as the context requires in the Plan.

**Professional** shall mean, for all periods prior to the Effective Date, any professional employed in the Case with the approval of the Bankruptcy Court pursuant to Section 327 or 1103 of the Code and, for all periods after the Effective Date, any professional employed by the Liquidating Agent.

**Promissory Notes** shall mean all promissory notes currently held by the Debtors and entitled to payment therein.

**Proponent** shall mean Mirabilis Ventures, Inc., Hoth Holdings, LLC and AEM, Inc.

**Proof of Claim** shall mean a proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rule 3001, 3002, or 3003.

14

**Reserved Claims** shall mean all Disputed Claims as of the applicable Payment Date in the full amount listed in the schedules filed by the Debtors, unless a proof of claim was timely filed with respect to such Claim, in which case in the face amount of such proof of claim, or unless such Claim has been estimated by the Bankruptcy Court for the purpose of allowance pursuant to Section 502(c) of the Code, in which case in such estimated amount. Unless any order of the Bankruptcy Court estimating a Claim provides otherwise, the amount so estimated shall apply both for voting purposes and for purposes of computing Reserved Claim. Notwithstanding any other language in the Plan, Reserved Claims shall not include any Disallowed Claims.

**Rule** or **Rules** shall mean the *Federal Rules of Bankruptcy Procedure*, as supplemented by the *Local Bankruptcy Rules* as adopted by the Court.

**Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Code or other applicable non-bankruptcy laws. A Secured Claim which is challenged by the Liquidating Agent, shall only be an Allowed Secured Claim to the extent that the underlying security interest is recognized as valid by the Court and the difference in amount between such a creditor's Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

**Tax Claim** shall mean an Unsecured Claim for taxes entitled to priority under Code §507(a)(8).

**Termination Date** shall mean the date upon which the Liquidating Agent determines, in its sole discretion that all reasonable prospects for recovering Extraordinary Income have been exhausted and provides written notice to that effect to all holders of unpaid Allowed Claims as of the date of that determination.

**Unimpaired Class** shall mean any Class the members of which are the holders of Claims or Interest which are not impaired within the meaning of Code § 1124.

**Unsecured Claim** shall mean a Claim that arose or is deemed to have arisen prior to the Petition Date and is not a Secured Claim or an Administrative Claim.

### III.    CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Interest treated under the Plan are divided into the following Classes, which shall be mutually exclusive:

A.    Class 1.  General Unsecured Claims   Class 1 consists of all Allowed Unsecured Creditors.

B.    Class 2.  Equity Interests in Debtors.   Class 2 consists of all Interests in the Debtors.

### IV.    ADMINISTRATIVE EXPENSES.

A.    Administrative Expense Claims.  Any person, including any Professional who has rendered services to the Debtors during the course of the Case or otherwise incurred a valid Administrative Expense and who asserts an Administrative Claim arising before the Confirmation Date, including Claims under Code § 503(b), shall, on or before the Administrative Claims Bar Date or such other date as set by the Court, file an application, motion or request, as called for by the Rules, with the Court for allowance of such Claims as Administrative Claims specifying the amount of and basis for such claim; *provided, however,* that applicants or movants who have previously filed applications, motions or requests with the Court need not file another such paper for the same Claim.  Failure to file a timely application, motion, or request for allowance pursuant to this Section by any holder of an Administrative Expense Claim, other than

such a holder engaged in actions to recover Extraordinary Income, shall bar such a Claimant from seeking recovery on account of such Claim.

Each holder of an Administrative Claim who complies with the requirements set forth herein shall be paid by Debtors 100% of the portion of such Claim which becomes an Allowed Claim in Cash unless otherwise ordered by the Court or agreed to by such holder, on or before the Effective Date, or such later date as may be agreed to by such holder. If any such Claim does not become an Allowed Claim prior to the Effective Date, on the date that any portion of such Claim becomes an Allowed Claim such portion shall become immediately payable in Cash by the Liquidated Debtors. As provided for in the Plan, Extraordinary Income shall be first used to pay Administrative Claims. However, nothing in this provision of the Plan shall preclude Debtor from paying any holder of an Administrative Claim less than 100% of its Allowed Claim in Cash on the Effective Date provided that such Claim holder consents to payment terms other than as set forth herein.

## V.    PRIORITY TAX CLAIMS

In full satisfaction of its Allowed Claims, Holders of Allowed Priority Tax Claims will be paid in full by the Liquidating Agent from the Liquidated Debtors. Debtors believe Allowed Priority Tax Claims will be approximately $473,000.00, consisting of state revenue tax claims. Each holder of an Allowed Priority Tax Claims shall receive Cash equal to the amount of such Allowed Claim on the Effective Date in accordance with §1129(a)(9)(C). In the event that there is insufficient Cash upon Effective Date to pay all Allowed Priority Tax Claims, any unpaid portion of such Allowed Priority Tax Claim will be payable in quarterly payments beginning on the later of three (3) months after the Effective Date or after the entry of any respective Final Order allowing such Claims and ending with a final quarterly payment on the last date which

occurs before the fifth anniversary of the Petition Date with interest accruing on all unpaid portions of such Allowed Claims at an annual rate equal to the Prime Rate plus two percent (2%).

## VI.    TREATMENT OF IMPAIRED CLASSES

The Classes of Allowed Claims and Interest which are impaired under the Plan are Classes 1 and 2. Treatment for these classes shall be as follows:

1.    <u>Determination of Allowed Amounts</u>.

a.    The treatment prescribed for Claims in this Article VI shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of the Allowed Amount of such Claim by agreement or through the entry of a Final Order. Notwithstanding Confirmation of the Plan, the Liquidating Agent, as appropriate, shall have the right to object to any Claim for any reason authorized by applicable bankruptcy and non-bankruptcy law as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.

2.    <u>Class 1 – Hendricks Secured Claim</u>.

Class 1 is impaired. Class 1 consists of the Allowed Secured Claim of Hendricks. In full satisfaction of their Allowed Claim, holders of Allowed Class 1 Claims shall receive payments under the O2HR Notes . However, in the event that the Court determines that Hendricks does not have a claim secured by the O2HR Notes, this class 1 claim shall be treated as a Class 2 claim.

3.    Class 2 – General Unsecured Claims.

Class 2 is impaired.  Class 2 consists of the Allowed Unsecured Claims of the General Unsecured Creditors.  Holders of Allowed Class 1 Claims will receive pro rata payments on account of their Allowed Class 2 Claims from the Liquidated Debtors after the Allowed Priority Tax Claims have been paid in full.  The proceeds of all Causes of Action and all proceeds from the Promissory Notes will be held in an account created by the Liquidated Debtors ("Liquidation Trust Account").  The Liquidating Agent shall make Payments in Cash to the holders of Allowed Class 2 Claims from the Liquidation Trust Account after all Allowed Priority Tax Claims have been paid in full, and at such times as the Liquidating Agent, in his able discretion, deems prudent.

4.    Class 3 - All Equity Interests.

Class 3 is impaired.  Class 3 consists of all equitable interests in the Debtors.  The Class is impaired under the Plan because on the Effective Date of the Plan all equity interests in the Debtors shall be cancelled.

5.    Source of Payments.

The greatest proportion possible of all Allowed Class 1 Claims shall be paid by the Liquidating Agent in Cash derived from Extraordinary Income derived from the sources identified herein.  Due to the uncertain timing associated with the recovery of Extraordinary Income, it is not possible to project exactly when such payments will be made or what the aggregate amount of such repayments will total.

6.    Term of Payments.

The Liquidating Agent shall continue to collect Extraordinary Income for the benefit of the holders of Allowed Class 1 Claims until the Termination Date.

7.    Timing of Payments.

Payments to holders of unpaid Allowed Class 1 Claims shall be made from time to time in Cash by the Liquidating Agent.  There shall not be any fixed payment intervals or payment due dates for such Payments; instead, such Payments shall be made by the Liquidating Agent when it determines that the amount of all Extraordinary Income recovered less the sum of any Administrative Expenses, Allowed Priority Tax Claims, , and Extraordinary Income Expenses paid (together with those then due) is sufficient to warrant a Payment to Holders of such Allowed Claims and provided further that the Payment will not reduce the balance in the Liquidation Trust Account to such an extent as to impair further efforts to recover Extraordinary Income.

8.    Amount of Payments.

There shall be no schedule of fixed Payments to holders of unpaid Allowed Class 1 Claims; rather, all Payments shall be in an amount determined by the Liquidating Agent, in its sole discretion, to be appropriate in light of (i) the current balance of the Liquidation Trust Account, (ii) the current and anticipated level of Extraordinary Income Expenses, and (iii) the maintenance of a prudent reserve in the Liquidation Trust Account to cover unforeseen circumstances.  All Payments to holders of unpaid Allowed Class 1 Claims shall be made on a *Pro Rata* Share basis based on the respective outstanding Allowed Claim of each holder as of the date of the Payment.

9.    Disputed Claims Reserve.

Any Claim, or portion thereof, which is to be paid in Cash under the Plan and which is challenged, shall be protected by requiring the Liquidating Agent, as appropriate, to segregate and set aside in an escrow account a reserve sufficient to treat such Claim in the same

fashion as though the objection had been denied.  The reserve so segregated shall be distributed in accordance with the provisions of the Plan in the event that the objection is overruled or a dispute is resolved in favor of the claimant.  In the event the disputed Claim is disallowed by Final Order of the Court, the retained Cash so segregated shall become Extraordinary Income and shall be distributed in accordance with the provisions of the Plan with the holder of the disallowed Claim being excluded in the amount of the disallowed Claim from participating on a *Pro Rata* Share basis in future payments.

10.   Order of Payments.

As of the Effective Date, all Allowed Administrative Claims and Allowed Priority Tax Claims should be fully satisfied and all Interests shall be extinguished.  In the event that any Allowed Priority Tax Claim remain unpaid after the Effective Date, the Liquidating Agent shall insure that such Allowed Claims are paid prior to making any payments on account of Allowed Class 1 Claims.

11.   Final Payment.

Upon the occurrence of the Termination Date, the Liquidating Agent shall, as rapidly as practical in light of any ongoing Extraordinary Income recovery activities, distribute all remaining funds in the Liquidation Trust Account as provided for herein.  In the event that the amount of such Final Payment exceeds the aggregate unpaid balance of all remaining Allowed Claims, then any excess Extraordinary Income above such level shall be divided among all Holders of Allowed Claims on a *pro rata* basis.  All payments made prior to the time at which all Allowed Claims have been satisfied shall be payments from the Liquidation Trust Account as repayment of Allowed Claims by the Liquidated Debtors.  After making the Final Payment, the

Liquidating Agent shall close the Liquidation Trust Account and cause the Liquidated Debtors' affairs to be wound-up.

    12.    <u>Unclaimed Payments</u>.

        a.    If the holder of an Allowed Claim fails to negotiate a check issued to such holder pursuant to the Plan within ninety (90) days of the relevant Payment Date on which such check was issued, then the Liquidating Agent shall provide written notice to such holder at the holder's last address as set forth in the Bankruptcy Court's records stating that unless such holder negotiates such check within thirty (30) days of the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such holder's Claim shall no longer be deemed to be Allowed, and such holder shall be deemed to have no further Claim in respect of such check and shall not participate in any further distributions under the Plan.

        b.    If a distribution pursuant to the Plan to any Holder of an Allowed Claim is returned to the Liquidating Agent due to an incorrect or incomplete address for the holder of such Allowed Claim, and no claim is made to the Liquidating Agent as to such distribution within one hundred twenty (120) days of the return of such distribution, then the amount of Cash attributable to such distribution shall be deemed to be unclaimed and such holder shall be deemed to have no further Claim in respect of such distribution and shall not participate in any further distributions under the Plan.

        c.    Any unclaimed Cash distribution as described above shall be retained by the Liquidating Agent for future distribution to the Holders of Allowed Class 5 Claims as provided for herein or for inclusion in the Final Payment described above, as appropriate.

13.    Treatment of *De Minimis* Claims.

To avoid the disproportionate expense and inconvenience associated with making distributions in amounts of less than $50.00 each with respect to Allowed Class 1 Claims, the Liquidating Agent shall not be required to make, and shall be excused from making, distributions or payments in amounts of less than $50.00 to any holders of Allowed Class 1 Claims. However, any payment not made due to its *de minimis* nature shall accrue for the benefit of the holder of the respective Claim and shall be added to any additional payments due to such claimant if a subsequent payment is made by the Liquidating Agent.

14.    Determination of Claims.

a.    Unless otherwise ordered by the Bankruptcy Court, and except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court on or before one hundred eighty (180) days following the Effective Date (unless such period is extended by the Bankruptcy Court) and the Confirmation Order shall contain appropriate language to that effect.

b.    Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Case, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and distribution. Upon receipt of a timely-filed Proof of Claim, the Liquidating Agent, as appropriate, or any other party in interest may file a request for estimation along with its objection to the Claim set forth therein. The determination of Claims in estimation hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and distribution. Procedures for specific estimation hearings,

including provisions for discovery, shall be set by the Court giving due consideration to applicable Rules and the need for prompt determination of the Disputed Claim.

15.    Setoff.

Subject to the limitations provided in Section 553 of the Code, the Liquidating Agent may, but shall not be required to, set off against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever the Debtor, the Liquidated Debtors, or the Liquidating Agent may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim against such holder.

## VI.    TREATMENT OF EQUITY INTERESTS IN THE DEBTORS

Upon the Effective Date or as soon thereafter as practical, all existing equity interests in the Debtors shall be cancelled.  At the same time, the Liquidating Agent shall take all necessary actions to issue new common stock in the Liquidated Debtors and the ownership of such stock shall vest in the Liquidation Trust Account to be held in trust for the benefit of the Holders of Allowed Claims so long as any Extraordinary Income recovery efforts remain ongoing.  Upon the Confirmation Date, the Liquidating Agent, as President and Director, shall be the only officer and director of the Liquidated Debtors and shall have, full authority to bind the Liquidated Debtors.  Upon the Termination Date or as soon thereafter as practical, the Liquidating Agent shall take all necessary actions to insure that the Liquidated Debtors is struck off of the corporate register maintained by the government(s) of the State of Florida and State of Nevada (and any other applicable jurisdictions).  The holders of Class 2 equity interests in the Debtor shall not receive any compensation or Payment on account of such Interests.

## VII.    UNEXPIRED LEASES AND EXECUTORY CONTRACTS.

The Liquidating Agent, as appropriate, reserves the right, at any time prior to the Effective Date, to move for authority to reject or assume any executory contract or unexpired lease. Any party asserting a Claim pursuant to Section 365 of the Code arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of a Final Order rejecting such contract or lease.

Any executory contract or unexpired lease not specifically assumed pursuant to authorization by the Court on or before the Effective Date shall be deemed to have been rejected as of the Confirmation Date with resulting Claims treated as though they arose as of twenty-four (24) hours prior to the Petition Date.

## VIII.    MEANS OF IMPLEMENTING THE PLAN.

1.    <u>No Continuation of Business Operations</u>.

The Debtors' pre-petition business is not recoverable and no attempt will be made to revive or reorganize the pre-petition business operations of the Debtor. The Liquidated Debtors' sole business focus, through the activities of the Liquidating Agent, shall be the recovery of Extraordinary Income and the repayment of the Holders of Allowed Claims. Based on the information developed by the Debtors to date, it is likely that the Extraordinary Income recovery process will take several years to complete. Distributions to Allowed Class 1 Claims are speculative in nature and depend upon the success in litigation and the collection on the Promissory Notes. At the conclusion of that period, the affairs of the Liquidated Debtors will be wound-up by the Liquidating Agent and the Liquidating Agent shall have the Liquidated Debtors struck off as a corporation, international business company, or other entity in all applicable jurisdictions.

2.     Corporate Organization.

As soon after the Effective Date as possible, the Liquidating Agent shall take all actions necessary to insure that the Debtors continue as a corporation in good standing under all applicable laws including, without limitation, the laws of the State of Florida and Nevada where the Debtors are currently incorporated.  As of the Effective Date, all currently existing stock in the Liquidated Debtors shall be cancelled and new stock in the Liquidated Debtors shall be issued.  One hundred percent (100%) of the new stock in the Liquidated Debtors shall immediately be transferred to the Liquidation Trust Account to be held for the benefit of all Creditors with Allowed Claims against the Bankruptcy Estate.  The Liquidated Debtors shall have a single officer, the President, and a single director, the Director.  The Liquidating Agent shall at all times be the President and the Director (except when an interim President or Director serves as provided for herein); during any period where no Liquidating Agent is appointed hereunder, the Court shall appoint an interim President and Director until a new Liquidating Agent is appointed if such an interim appointment is required to keep the Liquidated Debtors in good standing under the laws of the jurisdiction in which it is incorporated or to preserve ongoing Extraordinary Income recovery activities.  If the Liquidating Agent is removed or replaced as provided for herein the President and the Director shall be deemed to have been removed or replaced, as appropriate, at the same time as the Liquidating Agent unless such removal or replacement endangers the corporate good standing of the Liquidated Debtors or the standing of the Liquidated Debtors to continue any litigation which is currently pending in which case the President and Director will not be deemed to have been replaced until an interim President and Director are appointed as provided for herein or a new Liquidating Agent has been provided.

Neither the President nor the Director shall receive any compensation apart from that of the Liquidating Agent. The President may request that the terms of his or her employment in that office be summarized in an employment agreement. Irrespective of whether the President requests an employment agreement, the Liquidating Agent or any interim President or interim Director shall be indemnified by the Liquidated Debtors (in an amount not to exceed the total asset value of the Liquidated Debtors at the time any relevant claim is made) for all acts of the President or the Director which are properly taken in their respective capacities as President or Director of the Liquidated Debtors. Acts which could result in the termination of the President or Director for breach of fiduciary duty, gross negligence, fraud, or material breach of their respective duties as set forth herein (and in any employment agreement which may be entered into) shall not be considered valid grounds for indemnification hereunder. Both the President and the Director shall have the full powers of a corporate president and of a corporate director, respectively, granted under the applicable laws of the States of Florida and Nevada to the extent that such powers are not inconsistent with the provisions of the Plan.

3.    Duties of President and Director.

The duties of the President and Director shall be limited to (1) taking all actions necessary and appropriate hereunder to maximize the recovery of Extraordinary Income, and (2) taking all actions necessary to maintain the Liquidated Debtors in good standing in its jurisdiction of incorporation until its affairs are wound down as provided for herein.

4.    Sources of Extraordinary Income.

The Proponents anticipate that Extraordinary Income will be generated primarily from the following sources:

27

5.    <u>Litigation, Settlements, and Liquidation of Assets</u>.

a.    <u>Overview</u>.  To date, Debtors have identified and sued a variety of entities in an effort to recover Extraordinary Income.  In the interest of preserving the maximum value from this potential litigation for the benefit of the Bankruptcy Estates, no further information regarding potential litigation targets or the relevant Causes of Action will be disclosed herein.  The Debtors has already filed a number of lawsuits in connection with the Case (see exhibits to the Disclosure Statement).

b.    <u>Causes of Action to be Pursued for the Benefit of the Estate</u>.  On the Effective Date, the Liquidated Debtors shall receive, retain, and pursue through its Liquidating Agent, and for the benefit of holders of Allowed Claims, any and all Causes of Action belonging to the Debtors.  Any rights to claim any legal privileges previously enjoyed by the Debtors shall also vest in the Liquidated Debtors to be exercised by the Liquidating Agent.  For purposes of the Plan, the Liquidated Debtors, through its Liquidating Agent acting in his or her official capacity, shall be designated as the representative of the Bankruptcy Estates for the retention and enforcement of any Claim or Interest belonging to the Debtors or the Bankruptcy Estates pursuant to 11 U.S.C. § 1123(b)(3)(B).  Any recovery from the Causes of Action will be paid to the holders of Allowed Claims as provided for herein, less the costs of recovering or attempting to recover Extraordinary Income through the Causes of Action and other means.

c.    <u>DEFENDANTS' CONSENT TO PLAN TREATMENT</u>.  THE PLAN CONTAINS VARIOUS PROVISIONS PERTAINING TO THE RECOVERY OF EXTRAORDINARY INCOME THROUGH LITIGATION AND SETTLEMENTS.  ANY DEFENDANT IN ANY LEGAL ACTION BROUGHT IN CONNECTION WITH THE CASE, WHETHER BEFORE THE COURT OR ANOTHER COURT OF COMPETENT

JURISDICTION AND WHETHER BROUGHT IN THE UNITED STATES OR ELSEWHERE, WHO FAILS TO FILE A TIMELY OBJECTION TO THE PLAN SPECIFICALLY IDENTIFYING ANY SUCH PROVISIONS TO WHICH SUCH DEFENDANT OBJECTS SHALL BE DEEMED UNDER THE PLAN TO HAVE CONSENTED TO ALL SUCH PROVISIONS (OR, IN THE CASE OF AN OBJECTING DEFENDANT, ALL SUCH PROVISIONS TO WHICH SUCH DEFENDANT HAS NOT OBJECTED).

d.    <u>Promissory Notes</u>.  In addition to, and potentially in connection with, the recovery of Extraordinary Income through litigation and attendant settlements, the Liquidating Agent will also attempt to generate Extraordinary Income through the collection from proceeds of the Promissory Notes held by the Debtors.  A list of Promissory Notes of the Debtors is set forth in the Disclosure Statement filed contemporaneously herewith.  The Liquidating Agent may make reasonable efforts to sell the Promissory Notes for the benefit of the Allowed Claims.

6.    <u>Parties Responsible for Recovering Extraordinary Income</u>.

As previously noted, the Liquidated Debtors will have no business operations. Instead, the entities identified below will maintain the corporate existence of the Debtors for as long as such existence is beneficial to the recovery of Extraordinary Income and shall continue their efforts to collect such Extraordinary Income until the Termination Date.

a.    <u>Liquidating Agent</u>.

(1)    <u>Timing</u>.  Upon the Effective Date, the position of Liquidating Agent shall be created.

(2)    <u>Identity and Appointment</u>.  The initial Liquidating Agent shall be R.W. Cuthill, Jr.  Subsequent Liquidating Agents, if any, shall be selected by Court as provided for herein.

(3)    Tenure.  Any Liquidating Agent shall continue to serve in that capacity until the earlier of (1) his or her resignation, (2) his or her inability or failure to perform the duties of Liquidating Agent for a period of thirty (30) consecutive days or more, (3) his or her death, or (4) the Termination Date.  The mechanics for the removal or replacement of a Liquidating Agent shall be as provided for herein.

(4)    Compensation.

(a)    Liquidating Agent.    As of the date of his or her appointment as Liquidating Agent pursuant to the Plan, any Liquidating Agent shall be entitled to compensation only as provided for herein:

(b)    Base Hourly Rate.  The Liquidating Agent shall be entitled to a base hourly rate of compensation equal to his or her standard hourly rate of compensation for similar services, if such a rate exists, or $150 per hour, whichever is higher, or such other rate as may be agreed upon by the Liquidating Agent, for all hours actually worked.  For his service as Liquidating Agent, R.W. Cuthill, Jr. has agreed to his standard hourly rate for professional services to four hundred dollars ($400.00) per hour.  Such compensation shall only be payable after the creditors has received notice of a request for compensation to be paid to the Liquidating Agent as provided for herein.   The Liquidating Agent shall seek payment of hourly compensation on a monthly basis and no monthly fees shall accrue from month to month except for any month in which the Liquidated Debtors is not able to meet its current expenses.

(c)    Reimbursement of Costs.  The Liquidating Agent shall be entitled to reimbursement from the Liquidation Trust Account on a monthly basis of all reasonable out-of-pocket expenses incurred for the benefit of the Bankruptcy Estate.   All requests for reimbursement shall only be payable after the Office of the United States Trustee

and all Allowed Claim holders have received notice that compensation has been sought and have had at least twenty (20) days to object to the expenses sought. In the event that any party objects to such expenses being paid, the Liquidating Agent shall file an expense application with the Court and no payments shall be made until approved by the Court at a properly noticed hearing.

(5)     Excess Recovery Payment. In addition to the hourly compensation and the reimbursement of expenses and costs provided for herein, the Liquidating Agent shall be entitled to additional compensation based upon the amount of Extraordinary Income recovered by that Liquidating Agent after the Effective Date for the benefit of the Bankruptcy Estate (the "Excess Recovery Payments") calculated based upon the percentages set forth in Code § 326(a). All funds paid to any Liquidating Agent other than Excess Recovery Payments in connection with the Case through the date of distributing such an Excess Recovery Payment shall be deducted from any entitlement to Excess Recovery Payments which such Liquidating Agent may have.

(6)     Duties. The Liquidating Agent shall be responsible for the following:

(a)     The implementation of all strategies for the recovery of Extraordinary Income and the handling of the day-to-day management of any litigation or other activity commenced for that purpose including, without limitation, the negotiations of any settlements in connection with such litigation.

(b)     The retention and payment of such Professionals as may be required to implement such asset recovery strategies.

(c)     The orderly and efficient completion of the claims objection process.

(d)    Acting as the President as provided for herein and in accordance with the applicable laws of Florida and Nevada.

(e)    Acting as the Director as provided for herein and in accordance with the applicable laws of Florida and Nevada.

(f)    Providing the Court and all creditors with all information it may request regarding Extraordinary Income recovery efforts, the fees or expenses incurred by the Liquidating Agent or any Professionals or others retained by the Liquidating Agent, any disbursement of funds held for the benefit of Debtors' Creditors with Allowed Claims which exceed five thousand dollars ($5,000.00), and the status of the Liquidation Trust Account.  The Liquidating Agent shall provide the Court and all creditors with quarterly written litigation summaries which shall set forth the status of all litigation, the fees and expenses expended in connection with each piece of litigation, the anticipated recovery to be generated by each piece of litigation, and a calendar of future events in each piece of litigation..

(g)    Negotiating settlements.  The Liquidating Agent shall have authority to negotiate settlements for any litigation or other action pertaining to the recovery of Extraordinary Income.  The Liquidating Agent shall provide all creditors and the Office of the United States Trustee with notice of any settlement.  If no objection is received by the Liquidating Agent within twenty (20) days, the Liquidating Agent shall be permitted to execute and perform the obligations of such settlement for the benefit of its creditors.  If a timely objection is received, it will be determined by the Court.

7.    <u>Miscellaneous</u>.

a.    <u>Discharge and Release</u>.  Since the Debtors' business has not continued after the Petition Date and the sole goal of the Plan is to generate the maximum amount of

Extraordinary Income possible for the benefit of the Holders of Allowed Claims, the Plan does not provide for the discharge of any claims or liabilities.

      b.    <u>Transfers of Claims</u>.  In the event that the holder of any Claim shall transfer such Claim on or after the Effective Date, it shall immediately advise the Liquidating Agent in writing of such transfer.  The Liquidated Debtors shall be entitled to assume that no transfer of any Claim has been made by any holder unless and until the Liquidating Agent shall have received written notice to the contrary.  Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Liquidating Agent shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Plan.

      c.    <u>Term of Injunction or Stays</u>.  Unless otherwise provided in the Confirmation Order, all injunction or stays provided for Chapter 11 cases pursuant to sections 105 or 362 of the Code or previously imposed in this case by the Court or otherwise in existence on the Confirmation Date shall remain in full force and effect until the entry of a final decree dismissing this case.

      d.    <u>Retention of Jurisdiction</u>.  The Court shall retain, and shall exercise, jurisdiction in this proceeding (i) to adjudicate the validity of all Claims which have not been disposed of prior to the entry of the Confirmation Order; (ii) to make final determinations with respect to any Causes of Action belonging to the Debtors or the Liquidating Agent; (iii) to consider any applications for professional fees or reimbursement of expenses pursuant to the provisions of this Plan; (iv) to consider and resolve any issues arising under the Plan in connection with the termination or replacement of a Liquidating Agent, President, or Director;

33

(v) to consider and resolve any disputes pertaining to settlements or disbursements by the Liquidating Agent arising under the Plan; and (vi) to consider and rule on any other matters which may affect the Estates, the Liquidated Debtors, or the consummation of this Plan. This general reservation of jurisdiction shall include, without limitation, the following specific items:

e.    <u>Jurisdiction</u>.  Until this case is closed through the entry of a final decree, the Court shall retain jurisdiction pursuant to Rule 3020(d) to ensure that the provisions and the intent of the Plan are carried out.  The Court shall also retain jurisdiction to hear and determine all claims against the Debtor; to hear, determine, and enforce all Causes of Action arising in, arising under, or related to this Case and which may exist on behalf of the Debtors, or the Liquidating Agent; to hear and resolve all objections to the fees or expenses of Professionals or others as provided for in the Plan; and to confirm, after proper notice and hearing, any proposed sale of assets (although after the Effective Date no such sale of assets would require Bankruptcy Court approval).  Nothing contained herein shall prevent the Debtors or the Liquidating Agent from taking such action as may be necessary in the prosecution of any cause of action which may exist on its or on the Debtors' behalf and nothing contained herein shall prevent any creditor from enforcing any claim it may have against third parties who may be liable as a result of the Debtors' obligation to such creditor except as specifically provided for herein.

f.    <u>Causes of Action</u>.  Notwithstanding the vesting of assets in the Liquidated Debtors (under the control of the Liquidating Agent as its sole officer) upon the confirmation and consummation of the Plan, all rights and standing to assert Causes of Action together with any other rights to commence litigation which may exist on behalf of the Debtors which accrued and were asserted or capable of assertion by the Debtors as a debtors-in-possession as of the Petition Date shall vest in the Liquidated Debtors to be exercised by the Liquidating Agent.

34

Additionally, the Liquidating Agent shall have the sole and exclusive right to commence, pursue, settle, compromise, abandon, waive, or release any claim or cause of action which may exist on behalf of the Debtor which accrued and was asserted or capable of being asserted by the Debtors as a debtors-in-possession as of the Petition Date or at any time thereafter.

        g.    <u>Settlements</u>.  The Liquidating Agent shall have the power and authority to settle all litigation or threatened litigation pertaining to the Causes of Action.  Through the confirmation of this Plan, all such settlements shall be deemed to be binding upon all holders of Allowed Claims as a complete and final settlement of all matters giving rise to or otherwise pertaining to such Claims.  As provided for above, the Liquidating Agent may file a motion seeking Court approval of any settlement which the creditors or Office of the United States Trustee has timely submitted an objection.

        h.    <u>Employment Contract</u>.  In connection with his or her service as the sole officer of the Liquidated Debtors, the Liquidating Agent shall be provided with an employment contract the terms of which shall be consistent with this Plan.  In the event of any discrepancy between such employment contract and the Plan, the Plan shall control.

        i.    <u>Specific Retention of Powers</u>.  In addition to the general provisions set forth above, the Court shall retain sole jurisdiction of this Case pursuant to the provisions of Chapter 11 of the Code for the following purposes, among others:

        (1)    to classify, allow, or disallow Claims and Interests, to direct distributions of funds under the Plan, and to hear and resolve any controversies pertaining thereto;

        (2)    to hear and determine any and all applications, adversary proceedings, or other matters arising out of or related to the Plan;

(3)    to enter and implement such orders as may be appropriate in the event that the Confirmation Order is reversed, stayed, revoked, or vacated for any reason;

(4)    to liquidate or estimate the amount of any Claim, or to determine the manner and time for such liquidation or estimation, in connection with any contingent or unliquidated Claim;

(5)    to adjudicate all disputes with respect to Claims or any Liens on any property of the Debtors or proceeds from the sale or other disposition thereof;

(6)    to adjudicate all claims or controversies arising in connection with this Case or the Debtors' estates to the extent provided for herein prior to the entry of a final decree in this case;

(7)    to recover all assets and properties of the Debtors, wherever located, including recoveries on all claims and Causes of Action brought by the Debtors prior to the Effective Date or which could have been brought by the Debtors or the Liquidating Agent prior to or subsequent to the Effective Date which are not released, settled or otherwise compromised by the terms of this Plan;

(8)    to hear and determine matters covering federal, state, and local taxes pursuant to Sections 346, 1146, 505, and 525 of the Code;

(9)    to allow fees and the reimbursement of expenses of professional persons employed during this case or any other person or entity applying for compensation for services rendered prior to the Effective Date and to resolve any disputes pertaining to the payment of professional fees for services rendered after the Effective Date as provided for herein;

36

(10)    to construe or enforce the Plan so as to effectuate payments thereunder or to compel performance by any person reasonably necessary to implement the terms and intent of this Plan;

(11)    to make and enforce such orders as are necessary or appropriate to carry out the provisions and intent of this Plan;

(12)    to enter such orders as may be necessary and proper for the orderly administration of the Debtors and Liquidated Debtors' affairs; and

(13)    to decide such other matters as may be provided for in the Confirmation Order including, without limitation, matters related to the recovery of Extraordinary Income.

j.    Consent to Jurisdiction.  By accepting any distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by voting on the Plan, or by entering an appearance in the Case, all Creditors and other parties in interest, including foreign Creditors and foreign parties in interest, have consented, and shall be deemed to have expressly consented, to the jurisdiction of the Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Plan or the Case.  The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in the jurisdictional provisions of this Plan.

8.    Section 1146 Exemption.  Pursuant to Section 1146(c) of the Code, the making or delivery of any instrument of transfer pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or the revesting, transfer or sale of any real or personal Property (including the Real Property) of, by or in the Debtors or the Liquidated Debtors pursuant to, in

implementation of or as contemplated by the Plan or any Plan Document, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.

9.    Corporate Actions.  All matters provided for under the Plan involving the corporate structure of the Debtors or the Liquidated Debtors, or any corporate action to be taken by or required of the Debtors or the Liquidated Debtors or the Liquidating Agent, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by any entity.

10.    Successors and Assigns.  The rights, benefits, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

11.    No Liability for Certain Tax Claims.  Unless a taxing governmental authority has asserted a Claim against the Debtors before the Bar Date or Administrative Claims Bar Date established therefore, no Claim of such governmental authority shall be Allowed against the Debtors or Liquidated Debtors for taxes, penalties, interest, additions to tax or other charges arising out of the failure, if any, of the Debtors, any of its Affiliates, or any other Person or entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period, or arising out of an audit of any return for a period, before the Petition Date.

12.    Conditions Precedent to Occurrence of Effective Date.  The Effective Date shall not occur until each of the following conditions has been satisfied, waived by the Proponents, or deemed to have been satisfied by the Court:

a.    The entry of the Confirmation Order by the Court and all other necessary Orders of any court having jurisdiction for confirmation of the Plan.

38

  b. The initial Liquidating Agent has been selected.

  c. The expiration of the appeal period with respect to the Confirmation Order and with respect to all other Orders necessary for the implementation of the Plan, provided that, if an appeal of the Confirmation Order or any other such Order is filed but no stay is granted in connection with such an appeal, the Proponents may elect to permit the Effective Date to occur notwithstanding the pendency of the appeal.

  13. <u>Provisions for Impaired Creditors not accepting the Plan / Cramdown</u>.  The Proponents reserve the right to seek confirmation of the Plan pursuant to Section 1129(b) of the Code, notwithstanding the failure of any impaired Class to accept this Plan.  With respect to any Class of creditors which is composed of Impaired Claims that does not accept this Plan by the requisite majority in number of members and two-thirds (2/3) in dollar amount of those casting ballots, adequate protection for the realization by them of the value of their claim shall be provided in the Confirmation Order by such method as will, in the opinion of the Court and consistent with the circumstances of the case, fairly and equitably provide such protection in accordance with the applicable provisions of the Code.

  14. <u>Provisions for Amendment of Plan</u>.  The Debtors may seek to amend or modify this Plan in accordance with § 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such a manner as may be necessary to carry out the purpose and intent of this Plan.

  15. <u>Further Assurances</u>.  The Liquidating Agent, as appropriate, is authorized to execute and deliver any and all papers, documents, contracts, agreements and instruments which may be necessary to carry out and implement the terms and conditions of the Plan.

16.    <u>Exculpation.</u>  Neither the Debtors or the Liquidating Agent nor any of their respective members, employees, advisors, attorneys, accountants, consultants, other professionals, or agents shall have or incur any liability for or to any holder of a Claim or Interest for any act or omission in connection with, or arising out of, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan except in the case of willful misconduct or gross negligence.  Such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

17.    <u>Barton Doctrine.</u>  The "Barton Doctrine", arising from the case of *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881) (Supreme Court held that a trustee cannot be sued without leave of the bankruptcy court) and prohibiting a party from suing either a trustee, the officers of a debtor-in-possession, or their attorneys, in a non-appointing court for acts done in their official capacity, shall pertain to the provisions of this Plan as they apply to the Liquidating Agent and shall stand as one of the bases for enforcement of the provisions herein.  *See, e.g., In the Matter of Linton*, 136 F.3d 544, 545 (7th Cir. 1998); *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240-41 (6th Cir. 1993) ("[i]t is well settled that leave of the appointing forum must be obtained by any party wishing to institute an action in a non-appointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court .... counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee"); *Mangun v. Bartlett (In re Balboa Improvements, Ltd.)*, 99 B.R. 966, 970 (9th Cir. BAP 1989) (holding that permission to sue debtor's attorney for alleged misconduct in the administration of an estate must be obtained from the bankruptcy court); *Matter of Krikava*, 217 B.R. 275, 279 (Bankr.D.Neb. 1998) ("[c]onsent of

the appointing bankruptcy court is required even when the plaintiff seeks to sue in another federal court").

18.    Notices.  Any notice required to be provided to parties in interest under the Code or Rules or pursuant to the Plan shall be in writing, addressed to the appropriate party, and served by (a) regular mail, postage prepaid, (b) hand delivery, or (c) overnight courier service. Correct copies of any such notice shall be also be sent the Liquidating Agent, as appropriate. The following are correct mailing addresses for certain parties in interest although such addresses are subject to change from time to time; the Liquidating Agent, as appropriate, shall retain an up to date list of addresses for, at a minimum, the following entities:

> Liquidating Agent for Debtors
> c/o R.W. Cuthill, Jr.
> 341 N. Maitland Ave., Ste. 210
> Maitland, FL 32751
>
> With a copy to:
>
> Elizabeth A. Green, Esquire
> Latham, Shuker, Eden & Beaudine, LLP
> 390 N. Orange Avenue, Suite 600
> Orlando, FL  32801
>
> United States Trustee:
> 135 West Central Blvd, Suite 620
> Orlando, Florida 32801

19.    Headings.  Article, section, and paragraph headings have been used herein for ease of reference only and shall not affect the interpretation or the construction of any provision of this Plan.

20.    Governing Law.  Except to the extent that federal law (including the Code or the Rules) is applicable, or where the Plan or the provision of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan provides

otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

21.    <u>Entire Agreement</u>.    The Plan and the Disclosure Statement set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions and documents.    No Person shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

**DATED** this 14th day of August 2009 in Orlando, Florida.

**COUNSEL FOR DEBTORS**
s/ Elizabeth A. Green
Elizabeth A. Green, Esquire
Florida Bar No. 0600547
Justin M. Luna, Esquire
Florida Bar No. 713481
**LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
390 N. Orange Ave., Suite 600
Orlando, Florida 32801
Telephone:  (407) 481-5800
Attorneys for the Debtors