# *TRANSCRIPT OF PROCEEDINGS*

**FILED**

~~ORIGINAL~~

UNITED STATES BANKRUPTCY COURT   SEP 1 4 2009
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION        CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

CASE NO.: 08-4327

IN RE:

MIRABILIS VENTURES, INC.,

    DEBTOR.

_____/

STATUS CONFERENCE

| | |
|---|---|
| BEFORE: | THE HONORABLE KAREN S. JENNEMANN |
| DATE: | AUGUST 26, 2009 |
| TIME: | 2:06 P.M. |

APPEARANCES:

| | |
|---|---|
| ON BEHALF OF THE DEBTOR: | ELIZABETH GREEN, ESQUIRE |
| ON BEHALF OF BERMAN, KEENE: | BRAD SAXTON, ESQUIRE |
| | DAVID KELLER, ESQUIRE |
| ON BEHALF OF HANS BYER, ET AL: | JOSEPH VARNER, ESQUIRE |
| ON BEHALF OF JAMES MOORE: | CHARLES MELTZ, ESQUIRE |
| ON BEHALF OF FORGE CAPITAL: | BART VALDEZ, ESQUIRE |
| ON BEHALF OF RACKLIN COHEN DEFENDANTS: | JOSEPH DEMARIA, ESQUIRE |

# Realtime Reporters, Inc.

Registered Professional Reporters
Certified Video Technicians

1188 Fox Forrest Circle • Apopka, Florida 32712 • (407) 884-4662 • FAX (407) 884-4664
*Sandra A. Dawkins, President • Professional Reporting Since 1977*






1        PROCEEDINGS

2        THE CLERK: ALL RISE.  THE COURT IS IN SESSION.  THE

3    HONORABLE KAREN S. JENNEMANN PRESIDING.  YOU MAY BE

4    SEATED.

5        CASE NUMBER 08-4327, MIRABILIS VENTURES, INC., AND ALL

6    RELATED CASES AND ADVERSARIES PROCEEDINGS.  ALL

7    INTERESTED PARTIES, PLEASE COME FORWARD AND ENTER YOUR

8    APPEARANCES.

9        MS. GREEN:  YOUR HONOR, ELIZABETH GREEN AND JUSTIN

10   LUNA, ON BEHALF OF THE DEBTORS.

11       MR. SAXTON:  JUDGE, BRAD SAXTON AND DAVID KELLER ON

12   BEHALF OF BERMAN, KEENE AND REGARIA, DEFENDANTS IN ONE

13   OF THE ADVERSARY PROCEEDINGS.

14       MR. VARNER:  GOOD AFTERNOON, JUDGE, JOE VARNER HERE

15   FOR HANS BYER AND SAXTON, GILMER.

16       MR. MELTZ:  JUDGE, CHUCK MELTZ ON BEHALF OF JAMES

17   MOORE AND COMPANY.

18       MR. VALDEZ:  GOOD AFTERNOON, YOUR HONOR, BART

19   VALDEZ, ON BEHALF OF FORGE CAPITAL PARTNERS, ARGON

20   CAPITAL ADVISORS, ATLANTIC AMERICAN, ROBERT RAY, PETER

21   COHEN, VICE AND MORTGAGE AND SOLUTIONS FUNDING.

22       MR. DEMARIA:  GOOD AFTERNOON, YOUR HONOR, JOE

23   DEMARIA ON BEHALF OF THE RACKLIN COHEN DEFENDANTS.

24       THE COURT:   AND ANYBODY ELSE CARE TO MAKE AN

25   APPEARANCE?

3

1          WE'RE GOING TO START OFF THIS AFTERNOON'S HEARING.

2     I'M GOING TO RENDER AN ORAL RULING IN CONNECTIONS WITH

3     THE VARIOUS MOTIONS TO DISMISS, AND IF YOU'LL GIVE ME A

4     SECOND, I'LL DO THAT.

5          I WILL MAKE THE FOLLOWING FINDINGS OF FACT AND

6     CONCLUSIONS OF LAW PURSUANT TO BANKRUPTCY RULE 7052,

7     RESERVING THE RIGHT TO SUPPLEMENT THE ORAL FINDINGS OF

8     FACT AND CONCLUSIONS OF LAW PURSUANT TO THE 11TH CIRCUIT

9     DECISION OF IN RE: MOSLEY AT 494 F. 3D, 1320, DECIDED BY THE

10    11TH CIRCUIT IN 2007, IF NEED B.

11         THE MATTERS UPON WHICH I WILL RENDER A RULING

12    INCLUDING THE FOLLOWING, FORGE'S MOTION TO DISMISS FILED

13    IN MIRABILIS VENTURES, CASE DOCUMENT NUMBER 88, THE

14    PARTIAL JOINDER BY VARIOUS ADVERSARY DEFENDANTS IN

15    DOCUMENT NUMBER 83, AND THE PARTIAL JOINDER AGAIN BY

16    OTHER ADVERSARY DEFENDANTS IN DOCUMENT NUMBER 184.

17    THOSE ARE IN MIRABILIS VENTURES, INC. IN THE HOTH HOLDINGS

18    CASE, CASE NUMBER 8-4328. THERE IS ONLY THE ONE MOTION

19    FILED BY FORGE AND AFFILIATED CREDITORS, DOCUMENT NUMBER

20    47.

21         THE INITIAL ISSUE I WILL ADDRESS IN THE MOTIONS TO

22    DISMISS AND THESE ARE MOTIONS TO DISMISS THE MAIN CASE.

23         INITIALLY, FORGE AND ONLY FORGE AND THE AFFILIATED

24    CREDITORS CHALLENGED THE CORPORATE AUTHORITY OF THE

25    DEBTOR TO FILE DEBTOR'S FILE, ARGUING THAT MR. CUTHILL,

1    PRESIDENT OF MIRABILIS, WHO WAS APPOINTED BY MR. MECKER,

2    THE SOLE REMAINING DIRECTOR OF MIRABILIS, LACKED THE

3    CORPORATE AUTHORITY TO FILE A BANKRUPTCY PETITION ON

4    BEHALF OF THE DEBTOR AND TO HIRE --- AND LACKED THE

5    AUTHORITY TO HIRE COUNSEL TO REPRESENT MIRABILIS IN

6    CONNECTION WITH THE BANKRUPTCY.

7         SPECIFICALLY, THE MOVANTS ARGUMENT THAT MR. MECKER

8    IS NOT A DULY ELECTED DIRECTOR OF MIRABILIS AND FOR THIS

9    REASON, HIS APPOINTMENT OF MR. CUTHILL WAS EQUALLY

10   IMPROPER AND WITHOUT CORPORATE AUTHORITY.

11        PURSUANT TO SECTION 3.04, OF MIRABILIS' BYLAWS, FORGE

12   ARGUES THAT THE FILLING OF A DIRECTOR VACANCY REQUIRES A

13   TWO-THIRDS VOTE OF THE OUTSTANDING SHARES OF THE

14   CORPORATION AND SUCH A VOTE NEVER OCCURRED.

15        AND IT JUST CROSSED MY MIND, I MAY NEED TO ASK, HAS

16   THERE BEEN ANY RESOLUTION I NEED TO KNOW ABOUT BEFORE I

17   RENDER THE RULING?

18        MR. VALDEZ:  YOU MEAN, SETTLEMENT, YOUR HONOR OR

19   ADDITIONAL INFORMATION?

20        THE COURT:  I'M NOT CONSIDERING ADDITIONAL

21   INFORMATION, BUT HAS THERE BEEN ANY SETTLEMENT?

22        MR. VALDEZ:  NOT BETWEEN US AND MS. GREEN.

23        THE COURT:  BECAUSE SOMETIMES I GET GOING AND I

24   THOUGHT WELL, IF YOU WORKED IT OUT, THEN THAT'S A

25   DIFFERENT ISSUE.  I SHOULD SHUT UP, BUT I WON'T.

5

1    ADDITIONALLY, MIRABILIS' BYLAWS PROVIDE PURSUANT TO

2    SECTION 9.02B OF THAT, IN ORDER TO AMEND THE BYLAWS, THE

3    DIRECTORS MUST PROPOSE THE AMENDMENT TO THE

4    STOCKHOLDERS AND PROVIDE 30 DAYS FOR THE STOCKHOLDERS

5    TO OBJECT, AND IN THIS CASE, NO SUCH 30 DAY OBJECTION AND

6    NOTICE PERIOD WAS PROVIDED.

7    THE FORGE AND THE AFFILIATED CREDITORS RAISED THIS

8    BECAUSE ONE OF THE AFFILIATED CREDITORS IS A GENTLEMAN BY

9    THE NAME OF MR. MOREYRA, I'M NOT SURE I PRONOUNCED THAT

10   RIGHT, BUT I'LL SPELL IT, M-O-R-E-Y-R-A, AND IT'S ONE OF THE

11   FORGE CREDITORS, WHO IS ALSO A STOCKHOLDER OF MIRABILIS,

12   AND I GUESS TO THE EXTENT YOU NEED A STANDING ARGUMENT,

13   HE WOULD HAVE THE STANDING TO RAISE THIS ARGUMENT.

14   I WILL FIND, HOWEVER, THAT HIS ARGUMENT FAILS AND I

15   WILL EXPLAIN WHY. ARTICLE 8 OF MIRABILIS' ARTICLES OF

16   INCORPORATIONS, WHICH IS ENTITLED AMENDMENTS AND DEFINES

17   HOW THE CORPORATION AND ACTS AND AMENDMENTS OR

18   CHANGES OF ITS OFFICERS OR DIRECTORS, PROVIDE THAT

19   "CORPORATION RESERVES TO THE --- THE COOPERATION RESERVES

20   THE RIGHT TO AMEND, ALTER, CHARGE OR REPEAL ANY PROVISION

21   CONTAINED IN THESE ARTICLES OF CORPORATION, OR ITS BYLAWS

22   IN THE MANNER NOW OR HEREBY PRESCRIBED." AND THIS IS THE

23   SIGNIFICANT PART, BY STATUTE OR BY THESE ARTICLES OF

24   INCORPORATION, OR BY THE CORPORATION'S BYLAWS.

25   SO THERE ARE THREE DIFFERENT WAYS IN WHICH THE

1  CORPORATION CAN LEGALLY AMEND ITS BYLAWS, EITHER BY

2  STATUTE OR ARTICLE OF INCORPORATION BY THE BYLAWS.

3       AS AN INITIAL MATTER, IT IS IMPORTANT TO NOTE THAT

4  MIRABILIS' BYLAWS WERE NEVER ADOPTED BY THE

5  STOCKHOLDERS OR THE CORPORATION.  THEY WERE ADOPTED BY

6  THE BOARD OF DIRECTORS OF MIRABILIS IN 2005.

7       SECTION 2 OF SECTION 78.120 OF THE NEVADA REVISED

8  STATUTES PROVIDES THAT QUOTE, UNLESS OTHERWISE

9  PROHIBITED BY LAW, ADOPTED BY STOCKHOLDERS, THE DEBTOR

10  MAY ADOPT, AMEND, REPEAL ANY BYLAW, INCLUDING ANY

11  BYLAW ADOPTED BY STOCKHOLDERS.

12       MIRABILIS' BYLAWS WERE NOT ADOPTED BY THE

13  STOCKHOLDERS, CONSEQUENTLY, THIS PROVISION OF THE NEVADA

14  LAW PERMITS MIRABILIS' DIRECTORS TO DO EXACTLY WHAT IT

15  DID, WHICH WAS TO AMEND THE BYLAWS UNILATERALLY

16  REGARDLESS OF WHAT THE BYLAWS PROVIDED.

17       FURTHER, ARTICLE 9 OF MIRABILIS' ARTICLES OF

18  INCORPORATION ENTITLED POWERS OF DIRECTORS, EXPRESSLY

19  AUTHORIZES THE BOARD OF DIRECTORS, AGAIN, QUOTE, SUBJECT

20  TO THE BYLAWS, IF ANY, ADOPTED BY THE STOCKHOLDERS TO

21  MAKE, ALTER OR REPEAL THE BYLAWS OF THE CORPORATION.

22       AGAIN, THE BYLAWS WERE NEVER ADOPTED BY THE

23  STOCKHOLDERS, AND CONSEQUENTLY, ARTICLE 9 ALSO PROVIDES

24  THE DIRECTORS WITH THE EXPRESS AUTHORITY TO AMEND THE

25  BYLAWS REGARDLESS OF WHAT THE BYLAWS PREVIOUSLY

1    PROVIDED.

2        LASTLY, MIRABILIS' DIRECTOR AMENDED THE BYLAWS ON

3    MAY 27, 2008 TO ALLOW THE DIRECTORS TO FILL VACANCIES ON

4    THE BOARD AND TO MORE CLEARLY ALLOW THE DIRECTORS TO

5    AMEND THE BYLAWS. THE DIRECTORS THEN APPOINTED MR.

6    MECKER AS A DIRECTOR TO FILL A VACANCY ON THE BOARD.

7    SUBSEQUENTLY, THE OTHER TWO DIRECTORS RESIGNED, LEAVING

8    MR. MECKER AS THE SOLE REMAINING DIRECTOR AND MR. MECKER

9    THAN APPOINTED MR. CUTHILL AS PRESIDENT OF MIRABILIS.

10        THE COURT FINDS THAT MR. MECKER'S APPOINTMENT AS A

11    DIRECTOR AND MR. CUTHILL'S LATER APPOINTMENT AS PRESIDENT

12    WERE CONSISTENT WITH CORPORATE FORMALITIES AND MR.

13    CUTHILL DID NOT LACK THE REQUISITE CORPORATE AUTHORITY

14    TO SIGN THE BANKRUPTCY PETITION THAT INITIATED THIS CASE

15    ON BEHALF OF MIRABILIS. SO AS TO THAT CORPORATE AUTHORITY

16    GROUND, I WILL FIND THAT IT HAS NO MERIT.

17        I'M GOING TO TURN NEXT TO THE STANDING ISSUE THAT

18    WAS RAISED PRIMARILY BY THE DEBTOR IN THIS CASE ASSERTING

19    THAT THE VARIOUS MOVANTS OR AT LEAST THOSE WHO FILED THE

20    PARTIAL JOINDER IN THE MOTION TO DISMISS LACKED STANDING.

21    NONE OF THEM TO MY KNOWLEDGE HAVE FILED A PROOF CLAIM,

22    ALTHOUGH, I GUESS IT'S POSSIBLE THAT THEY MAY HAVE. I'M NOT

23    BASING THE RULING UPON ANY SUCH PROOF OF CLAIM.

24        RATHER 1109B OF THE BANKRUPTCY CODE PROVIDES THAT

25    WITH RESPECT TO WHETHER AN ADVERSARY PROCEEDING,

1    DEFENDANT HAS STANDING TO JOIN IN CREDITORS, AND THERE'S

2    NO QUESTION FORD IS A CREDITOR, HAS A MOTION TO DISMISS THE

3    MAIN CASE.

4          AND SECTION 1009 DEFINES WHO HAS THE RIGHT TO BE

5    HEARD IN A CHAPTER 11 CASE, AND SUBSECTION B IDENTIFIES A

6    PARTY IN INTEREST AS ANYONE, INCLUDING THE DEBTOR, THE

7    TRUSTEE, A COMMITTEE, AN EQUITY SECURITY HOLDER'S

8    COMMITTEE A CREDITOR, AN EQUITY SECURITY HOLDER, AN

9    INDENTURED TRUSTEE, MAY RAISE AND MAY APPEAR AND BE

10   HEARD ON ANY ISSUE IN THE CASE.

11         AND THE DEBTOR ARGUES THAT THIS DOES NOT EXTEND TO

12   THE ADVERSARY PROCEEDING DEFENDANTS BECAUSE THEY'RE

13   NOT CREDITORS AND THE OUTCOME OF THE BANKRUPTCY IN THIS

14   CASE DOES NOT, PERHAPS, DIRECTLY AFFECT THEIR INTEREST.

15         MIRABILIS FURTHER CONTENDS THAT THEY HAVE NEITHER A

16   PECUNIARY INTEREST NOR A DIRECT LEGAL INTEREST IN THE MAIN

17   CASE, CITING SUCH CASES AS ES BANK FEST AT 321 B.R. 590,

18   DECIDED BY THE SOUTHERN DISTRICT, BANKRUPTCY COURT IN

19   FLORIDA IN 2005, AND THAT THE ADVERSARY PROCEEDING

20   DEFENDANTS ARE MERELY SEEKING DISMISSAL IN ORDER TO

21   ANOTHER TOOL IN THE LITIGATION TOOLBOX TO PERHAPS DELAY

22   OR HINDER THE PROSECUTION OF THE CASES AGAINST THEM --- THE

23   ADVERSARY PROCEEDINGS AGAINST THEM.

24         THE PARTIAL JOINDER ADVERSARY PROCEEDING

25   DEFENDANTS ARGUE THAT THEY CERTAINLY HAVE A PRACTICAL

1  STAKE IN THE OUTCOME OF THE MAIN BANKRUPTCY CASE.

2  CERTAINLY, THAT'S LOGICAL IF THE CASE IS DISMISSED, SO ARE

3  THE ADVERSARY PROCEEDINGS AND THEY CITE TO IN RE:  WELLS

4  DECIDED BY THE MIDDLE DISTRICT OF FLORIDA AT 227

5  BANKRUPTCY 4553, 1998, FOR THE PROPOSITION THAT IN ORDER TO

6  BE A PARTY IN INTEREST, ONE NEEDS EITHER A PECUNIARY

7  INTEREST, A PRACTICAL STAKE OR SOME SORT OF LEGALLY

8  PROTECTED INTEREST THAT COULD BE AFFECTED BY THE

9  BANKRUPTCY.

10  AND AFTER READING THE VARIOUS PARTIES' ARGUMENTS

11  FOR THE PURPOSES OF RULING UPON THE MOTION TO DISMISS, AND

12  NOT ANY SPECIFIC ISSUE THAT MAY IN THE FUTURE COME BACK TO

13  HAUNT ALL OF US, INCLUDING ME, I WOULD FIND THAT THE

14  ADVERSARY PROCEEDING DEFENDANTS DO HAVE REQUISITE

15  STANDING TO RAISE THIS MOTION AND TO JOIN IN THE MOTIONS TO

16  DISMISS.

17  I UNDERSTAND THAT IT COULD CERTAINLY BE A LITIGATION

18  TACTIC, BUT THAT'S WHAT LITIGATION IS.  I MEAN, WHAT'S TO SAY

19  WHAT'S WRONG AND WHAT'S RIGHT.  THEY CERTAINLY ARE

20  AFFECTED BY THE PENDENCY OF THIS CASE AND I DO NOT FIND IT

21  NECESSARILY IMPROPER FOR THEM TO JOIN IN THE MOTION.  I FIND

22  THEY HAVE SUFFICIENT STANDING TO BRING THE MOTION.

23  WHICH GETS TO THE REAL MERITS OF THE ISSUES.  THOSE

24  ARE THE TWO PRELIMINARY MATTERS.

25  AS TO THE PRIMARY ISSUE, THE BAD FAITH FILING ISSUES,

10

1   THE PARTIES ARGUE THAT THIS CASE SHOULD BE DISMISSED

2   UNDER SECTION 1112B1 OF THE BANKRUPTCY CODE OR

3   CONVERTED TO CHAPTER 7 IF SUFFICIENT CAUSE IS

4   DEMONSTRATED BECAUSE THE DEBTOR LACKS GOOD FAITH IN

5   FILING THE CHAPTER 11 CASE.

6        AND THEY CITE THE VARIOUS CASES AND THE VARIOUS

7   MOTIONS AND I'M NOT GOING TO GO INTO NUANCES OF CASES

8   BECAUSE THIS IS A FAIRLY UNIQUE SITUATION.

9        BUT I AM GOING TO BE GUIDED BY THE 11TH CIRCUIT

10  DECISION OF PRIMARY IN RE:  ALBANY PARTNERS LIMITED, AT 749

11  FED 2D THAT STATES THAT BAD FAITH IS SUBJECT TO

12  DETERMINATION BY JUDICIAL DISCRETION UNDER THE

13  CIRCUMSTANCES OF EACH CASE.

14       MOST OF THESE CASES WE ALL KNOW USUALLY ARE

15  BROUGHT UP IN THE SINGLE ASSET REAL ESTATE CASES, AND

16  INVOLVE A TWO-PARTY DISPUTE AND ARE GOVERNED BY THE

17  OVERARCHING STANDARD OF WHETHER THE FILING WAS AN

18  ATTEMPT BY THE DEBTOR TO FRUSTRATE LEGITIMATE

19  COLLECTION EFFORTS OF CREDITORS.

20       THAT STANDARD REALLY IS NOT VERY APPLICABLE IN THIS

21  PARTICULAR CASE, SO REALLY I HAVE TO LOOK TO SEE WHAT IS

22  GOOD FAITH OR BAD FAITH.

23       THE MOVANTS ARGUE THAT THE FILING WAS A

24  DIVERSIONARY TACTIC AIMED SOLELY TO RECOVER DAMAGES

25  FROM THEM, THE FARMA PROFESSIONAL ADVISORS OF THE

1    DEBTOR, IN CONNECTION WITH AN ASSISTANCE TO OR PERHAPS A

2    PRINCIPLE OR CERTAINLY PERHAPS A RELATED PARTY TO THE

3    DEBTOR TO HELP MR. FRANK AMADEO GET A BETTER TREATMENT

4    IN HIS CRIMINAL PROCEEDINGS AND TO CONVINCE THE SITTING

5    JUDGE TO PERHAPS BE MORE LENIENT WITH MR. AMADEO'S

6    ULTIMATE TERM OF INCARCERATION.

7         ACCORDING TO THE ADVERSARY PROCEEDING DEFENDANTS,

8    THE MOVANTS, THEY ARGUE THAT MIRABILIS NEVER HAD ANY

9    INTENTION TO REORGANIZE, THAT'S TRUE MIRABILIS NEVER HAD

10   ANY INTENTION TO REORGANIZE, BUT THEY CONTENT THAT THE

11   FILING WITH THE INTENT TO LIQUIDATE IS SOMEHOW AN INDICIA

12   OF BAD FAITH.  ON THAT, I STRONGLY DISAGREE.

13        THE ADVERSARY PROCEEDING DEFENDANTS' PETITION IS

14   CLEARLY INCORRECT.  THERE ARE MANY CASES THAT STATE THAT

15   LIQUIDATION IS PERFECTLY APPROPRIATE REASON FOR FILING A

16   CHAPTER 11 CASE, AND I'M JUST GOING TO CITE ONE OF THOSE.  IT

17   HAPPENS TO BE A BANKRUPTCY CASE OUT OF THE MIDDLE

18   DISTRICT OF GEORGIA, IN RE:  HOLMES AT 298 BANKRUPTCY, 4477.

19        BUT IN THAT CASE, THE BANKRUPTCY COURT OPINED THAT A

20   DEBTOR'S CONTINUING PARTICIPATION IN A PLANNED ORDERLY,

21   CHAPTER 11 LIQUIDATION MAY IN FACT BE NECESSARY TO BRING

22   ABOUT THE MAXIMUM RECOVERY FOR THE CREDITORS AS

23   OPPOSED TO THE AMOUNT THEY'RE ASKING FOR SALE.

24        THE BANKRUPTCY CODE RECOGNIZES THAT UNDER SECTION

25   1129A BY PROVIDING LIQUIDATION AS SPECIFICALLY

1    CONTEMPLATED BY THE BANKRUPTCY CODE, AND DESPITE THE

2    TERM WE ALWAYS USE, REORGANIZATION, LIQUIDATION IS

3    FREQUENTLY NOT THE MORE FREQUENT OUTCOME IN CHAPTER 11

4    CASES.

5         AND ALTHOUGH THE WORD WE CONTINUALLY USE IS

6    REORGANIZATION, MIGHT COMMONLY BRING TO MIND, ONGOING

7    OPERATION, CONGRESS EXPLICITLY PLACED LANGUAGE PROVIDED

8    FOR LIQUIDATION WITHIN CHAPTER 11.

9         IF CONGRESS HAD INTENDED TO EXCLUDE LIQUIDATION AS

10   AN ACCEPTABLE TYPE OF PLAN UNDER CHAPTER, THEN THEY

11   COULD HAVE DONE IT.  THEY DIDN'T.  THEY SPECIFICALLY

12   ALLOWED LIQUIDATION AND WE ASSUME BY CONDONING THAT,

13   THAT IT'S PERFECTLY APPROPRIATE TO GO FORWARD.  OF COURSE,

14   THAT'S NOT A DIRECT QUOTE.  I WENT OFF ON THE QUOTE, BUT THE

15   CASE CITE STANDS FOR THE PROPOSITION.

16        IN THIS CASE, THERE IS UNDISPUTED IN THE SCHEDULES AND

17   THROUGHOUT THE CASE FILE, THAT MIRABILIS HAS A NUMBER OF

18   CREDITORS IN ADDITION TO THE UNITED STATES OF AMERICA TO

19   THE TUNE OF MANY MILLIONS OF DOLLARS.  THIS IS A CASE WITH

20   REAL CREDITORS, WITH REAL ASSETS AND WITH A COLLECTIBLE

21   BOOK OF VARIOUS TYPES OF TANGIBLE AND INTANGIBLE

22   PROPERTY THAT MIGHT RESULT IN A SUBSTANTIAL DISTRIBUTION

23   TO THOSE CREDITORS.

24        THE DEBTOR HAS WORKED OUT AN AGREEMENT THAT'S

25   GOING TO ACCRUE BETWEEN THE DEBTOR AND THE UNITED

1     STATES THAT WOULD RESULT IN CREDITORS ACTUALLY GETTING A

2     DISTRIBUTION IN THIS CASE.  NOW, OF COURSE, ONE OF THOSE

3     ASSETS UNDERSTANDABLY IS THAT MAY BE BROUGHT BY THESE

4     ADVERSARY PROCEEDINGS, AND I UNDERSTAND THAT THE

5     MOVANTS WOULD LIKE NOT TO HAVE TO GO THROUGH THAT

6     PAINFUL PROCESS.  THAT'S NOT A BASIS, HOWEVER, FOR FINDING

7     BAD FAITH BY THE DEBTOR.  IT IS SIMPLY ONE OF THE THINGS THEY

8     NEED TO ACCOMPLISH IN ORDER TO ORDERLY LIQUIDATE THIS

9     CASE AS PERMITTED BY CHAPTER 11 OF THE BANKRUPTCY CODE.

10          SO I DO FIND THAT THERE IS NO BASIS GIVEN FOR A FINDING

11     OF BAD FAITH AND THAT I WILL NOT DISMISS THE CASE UNDER

12     THAT.

13          LASTLY, THERE WAS SOME ARGUMENT THAT THE FORGE

14     CREDITORS BROUGHT THAT MIRABILIS WAS MERELY A SHAME

15     CORPORATION WITH NO SEPARATE CORPORATE IDENTIFY FROM

16     MR. AMADEO PERSONALLY.  PRIMARILY THEY RELY UPON VARIOUS

17     STATEMENTS MR. AMADEO MADE TO THE GOVERNMENT IN

18     CONNECTION WITH THE CRIMINAL PROCEEDINGS AND THE

19     *SENTENCING PROCEEDINGS.*

20          AND THAT THE DEBTOR WAS CONTROLLED BY MR. AMADEO

21     IN ORDER TO COMMIT MATS OF CRIMINAL TAX FRAUD, AND THAT

22     IN CITING TO THE DECISION OF FELDMAN VERSUS PRUDENTIAL

23     BASE SECURITY FOR THE PROPOSITION THAT COMPANY USE

24     CHIEFLY AS A SHAME FOR AN INDIVIDUAL TO PERPETRATE THESE

25     TYPES OF FRAUD ON CREDITORS DOES NOT MEET THE GOOD FAITH

14

1     STANDARD UNDER BANKRUPTCY CODE SECTION 1112.

2          AND THE COURT DOESN'T DISAGREE, ALTHOUGH WE WOULD

3     LISTEN FOR PROBABLY DAYS, IF NOT WEEKS ON THE VARIOUS

4     STATEMENTS THAT MR. AMADEO HAS FILED BOTH WITH THE

5     GOVERNMENT AND EVEN IN THIS CASE, BUT WHAT THE MOVANTS

6     ARE ASKING ME TO DO IS TO TAKE THOSE STATEMENTS

7     UNIMPEDED BY RATIONALITY, ANALYSIS, CRITICISM OR ANY TYPE

8     OF TRUTH FINDING EXERCISE.  YOU CERTAINLY COULD PIN-POINT

9     THINGS MR. AMADEO SAID IN HIS MASSIVE STATEMENTS THAT HE

10    HAS MADE, BUT THE COURT CANNOT IGNORE THE FACT THAT

11    THERE WERE SIGNIFICANT QUESTIONS OF MR. ADAMEO'S MENTAL

12    CAPACITY.  THERE'S SIGNIFICANT ISSUES RELATING TO HIS

13    CONTRADICTORY STATEMENTS, SAY ONE THING ONE DAY,

14    SOMETHING ELSE THE NEXT DAY, A THIRD THING THE THIRD DAY.

15          AND TO JUST PIN-POINT A FEW THINGS TO SAY THAT THIS

16    PARTICULAR DEBTOR IS A SHAME CORPORATION, I THINK IS

17    DISINGENUOUS.

18          IT MAY BE FACTUALLY AT SOME POINT WE WILL GET TO THE

19    PROOF OF WHETHER THE DEBTOR IS A SHAME CORPORATION OR

20    NOT, BUT TO DO SO JUST BASED SOLELY UPON MR. AMADEO'S

21    STATEMENT IS FACTUALLY UNPERSUASIVE AND NOT ONE UPON

22    WHICH I WOULD BASE THE DISMISSAL OF A CASE WHEN THERE IS

23    THE POTENTIALITY OF SIGNIFICANT DISTRIBUTION TO A GROUP OF

24    VERY LEGITIMATE CREDITORS, SOME OF WHICH, INDEED, MAY BE

25    FUNDED BY JUDGMENTS IN THE ADVERSARY PROCEEDINGS.

1      SO IN RESOLVING THE MOTIONS TO DISMISS, I WILL DENY

2    THE MOTIONS.  I WOULD FIND THAT THERE ARE CERTAINLY

3    FACTUAL ISSUES AS TO WHETHER THE DEBTOR WAS INDEED AN

4    ALTER EGO OR SOME SORT OF SHAME CORPORATION,

5    SUBSTITUTION FOR MR. AMADEO, BUT THAT FACTUAL ISSUE IS NOT

6    ONE THAT I NEED TO RESOLVE AT THIS JUNCTURE BECAUSE WITH

7    THE APPOINTMENT OF MR. CUTHILL AND THE ACTIONS THAT HAVE

8    BEEN TAKEN IN THE CHAPTER 11 CASE, AND CONSIDERING THAT

9    WE ARE ON THE CUSP OF POTENTIALLY CONFIRMING THE PLAN IN

10    LESS THAN A MONTH, DISMISSAL WILL NOT BE THE AVENUE THAT

11    WE WILL BE PURSUING.

12      SO I WILL DENY THE MOTIONS TO DISMISS.  AGAIN,

13    RESERVING THE RIGHT OR FORCED TO WRITE A WRITTEN OPINION,

14    BUT WOULD PREFER NOT TO ON THE MOTION.

15      SO THE MOTIONS ARE DENIED.  I DON'T NEED ANY MORE

16    QUESTIONS UNLESS THERE'S ANY DISPUTE ABOUT WHAT I JUST

17    DID, WHICH WAS DENY THE MOTIONS TO DISMISS.

18      GOOD.  THEN LET ME MS. GREEN FILL ME IN ON WHERE WE'RE

19    AT.  I DON'T THINK THERE'S --- LET'S SEE, IS THERE ANYTHING IN

20    THE MAIN TWO CASES, HOTH AND MIRABILIS OR A&E THAT I NEED

21    TO KNOW ABOUT, AND THEN WE CAN TURN TO THE ADVERSARY

22    PROCEEDINGS.

23      MS. GREEN:  YOUR HONOR, IN THE MAIN CASES, THE DEBTOR

24    IS GOING TO FILE TO FILE TWO CLAIM OBJECTIONS THAT ARE

25    GOING TO HAVE TO BE SET WITH CONFIRMATION.

1        THE COURT: OKAY.

2        MS. GREEN: ONE OF WHICH IS TO THE SECURED CLAIMS

3    FILED BY ONE OF MR. AMADEO'S ENTITIES AND ONE OF WHICH

4    RELATED AN O2HR NOT, WHICH IS THE ESTATE OF HENDIX. I'VE

5    BEEN TALKING WITH MR. CARSON, WHO REPRESENTS THE ESTATE

6    OF HENDIX, THAT ONE MAY BE RESOLVED. BUT I WANTED TO

7    ALERT YOU THAT THOSE CLAIMS OBJECTIONS SHOULD BE FILED BY

8    TOMORROW.

9        THE COURT: AND WE HAVE CONFIRMATION ON SEPTEMBER

10    THE 16TH, SO THAT'S NOT GOING TO BE 30 DAYS, SO THERE'S NOT

11    GOING TO BE TIME TO DO THAT BEFORE THE SET SCHEDULED

12    CONFIRMATION HEARING.

13        MS. GREEN: SO THE QUESTION IS: SHOULD WE MOVE THE

14    CONFIRMATION HEARING?

15        THE COURT: VERY GOOD. LET'S SEE.

16        MS. GREEN: I THINK WE NEED TO DO THAT BECAUSE THEY

17    ARE CLAIMS THAT ARE FILED AND THEY'RE GOING TO HAVE TO BE

18    OBJECTED TO.

19        *THE COURT: ARE THE CLAIMS ON BEHALF OF MR. AMADEO'S*

20    ENTITIES, DO THEY HAVE COUNSEL?

21        MS. GREEN: NO, THEY DON'T, ALTHOUGH, IT'S ACTUALLY

22    THE DEBTOR'S CONTENTION THAT THOSE CLAIMS ARE OWNED BY

23    THE UNITED STATES BECAUSE ALL OF HIS ASSETS IN THOSE

24    ENTITIES WERE PART OF THE CRIMINAL PROCEEDINGS.

25        THE COURT: DO YOU HAVE ANYBODY TO SERVE OR

1        ANYBODY YOU'RE TALKING TO ON THOSE? I KNOW YOU CAN

2        EFFECT SERVICE, BUT ---

3            MS. GREEN:  RIGHT.  I CAN EFFECT SERVICE, BUT I ACTUALLY

4        PLAN TO TALK WITH MR. GOLDEN ABOUT THAT.  WE JUST HAVEN'T

5        GOTTEN THERE YET.

6            THE COURT:  OKAY.  VERY GOOD.  IS THERE ANYTHING ELSE

7        IN THE MAIN CASE?

8            MS. GREEN:  THAT'S IT.  WHERE WE'RE AT NOW IN TERMS OF

9        THE CONFIRMATION, WHAT DO YOU ANTICIPATING IN TERMS OF

10       THE TIME YOU WOULD NEED FOR CONFIRMATION?

11           MS. GREEN:  PROBABLY --- I THINK WE SHOULD AT LEAST

12       SCHEDULE THE AFTERNOON ONLY BECAUSE WHAT CAN HAPPEN

13       WILL HAPPEN.

14           THE COURT:  OKAY.  AND BEFORE WE TURN TO THE

15       INDIVIDUAL ADVERSARY PROCEEDINGS, IS THERE ANYTHING FROM

16       AN OVERALL CASE PERSPECTIVE THAT I NEED TO KNOW ABOUT?

17       ANYBODY OBJECT TO CONTINUING THE CONFIRMATION HEARING?

18       IT WON'T BE CONTINUED FOR LONG UNLESS YOU NEED --- DO YOU

19       NEED ANY DISCOVERY OR OTHERWISE ON THE OBJECTIONS?

20           MS. GREEN:  OKAY.

21           MR. VARNER:  JUDGE, ARE YOU ABOUT TO TURN TO THE

22       ADVERSARY CASES?

23           THE COURT:  I'M GOING TO GIVE A DATE FOR THE CONTINUED

24       CONFIRMATION HEARING AND THEN WE WILL TURN TO THE

25       ADVERSARY CASES.

18

1       MR. VARNER: I'D LIKE TO MAKE ONE STATEMENT BEFORE

2    YOU DO.

3       THE COURT: NO, CERTAINLY, PLEASE. THAT'S WHAT I WAS

4    WELCOMING.

5       MR. VARNER: JUDGE, JOE VARNER AGAIN FOR HANS, GILMER.

6    I UNDERSTAND THE COURT'S RULING. I'M NOT HERE TO ARGUE

7    WITH IT. I DO WANT TO MAKE IT CLEAR ON THE RECORD THOUGH,

8    JUST SO THERE'S NO DISPUTE FOR THE RECORD BECAUSE THE

9    MOVANT AND THE ADVERSARY PARTIES HAVE JOINED IN, IT

10   ACTUALLY ASKED FOR AN EVIDENTIALLY HEARING ON ALL OF

11   THESE MATTERS.

12      ONE THING THE COURT SAID THAT CONCERNED ME THAT WE

13   ASKED THE COURT TO TAKE MR. AMADEO'S SENTENCE AT FACE

14   VALUE. WE ACTUALLY ASKED FOR A SEVERAL EVIDENTIARY

15   HEARING ON ALL OF THESE POINTS THAT WE THOUGHT WAS

16   NECESSARY FOR THE COURT TO REACH IT POINT.

17      THE COURT: THANK YOU VERY MUCH. AND I'M GLAD THAT

18   YOU BROUGHT THAT UP BECAUSE I WOULD FIND THAT EVEN IF

19   THOSE STATEMENTS WERE MADE, GIVEN THE PURPOSE THAT THIS

20   PARTICULAR DEBTOR UNDER MR. CUTHILL'S MANAGEMENT IS

21   GOING FORWARD ON AND GIVEN THE POSITIONING OF THE

22   VARIOUS PARTIES, I WOULD NOT DISMISS THIS CASE BASED UPON

23   MR. AMADEO'S STATEMENTS, SO IT WOULD NOT BE A BASIS UPON

24   WHICH I WOULD DO SO.

25      SO THANK YOU. I APPRECIATE IT, BUT THAT WOULD NOT BE

19

1    A FRUITFUL USE OF OUR TIME.  SO I WOULD STILL HAVE DENIED

2    THE MOTION TO DISMISS.

3        MR. VARNER:  I UNDERSTAND, JUDGE.  JUST TO MAKE SURE

4    THAT I SAID MY POINTS CLEARLY.

5        THE COURT: ABSOLUTELY.

6        MR. VARNER:  WE WANT ON EVERY POINT YOU CONSIDERED,

7    INCLUDING CORPORATE AUTHORITY, WE BELIEVE AN

8    EVIDENTIARY HEARING WAS NECESSARY ON ALL THOSE POINTS.  I

9    JUST WANT TO MAKE SURE THE RECORD IS CLEAR ON THAT.

10       THE COURT:  YOUR CLIENT DIDN'T JOIN IN THAT PORTION OF

11   THE ARGUMENT, MR. VARNER.

12       MR. VARNER:  JUDGE, WE JOINED IN THE MOTION IN ITS

13   ENTIRETY.

14       THE COURT:  IT WAS A PARTIAL JOINDER.

15       MR. VARNER:  THE ONLY PART THAT WE DID NOT JOIN IN WAS

16   THE CONVERSION OF CHAPTER 7.  WE JOINED IN ALL THE BASES

17   FOR DISMISSING THE CHAPTER 11.

18       THE COURT:  DO YOU REPRESENT A SHAREHOLDER OF THE

19   DEBTOR?

20       MR. VARNER:  NO, MA'AM, I DON'T.

21       THE COURT:  THANK YOU.

22       MR. VARNER:  I REPRESENT THE ADVERSARY DEFENDANTS

23   WHO HAVE STANDING AS YOU JUST RULED TO JOIN IN THE

24   MOTIONS TO DISMISS AND WE JOINED IN IT IN ITS ENTIRETY.

25       THE COURT:  THANK YOU.  LET'S SEE.  HOW ABOUT OCTOBER

1    THE 13TH AT 2:00 P.M., OCTOBER THE 13TH, DO YOU KNOW IF THERE'S

2    ANY CONFLICT WITH THAT?

3            WELL, LET ME EXPLAIN, YOU CAN ACTUALLY HAVE THE ALL

4    DAY IF YOU WANT IT.  THAT'S THE DAY FOLLOWING COLUMBUS

5    DAY.  SO I MEAN, WE TYPICALLY DON'T SET COURT THE DAY AFTER

6    A HOLIDAY, BUT IT'S NOT A HOLIDAY IN WHICH A LOT OF PEOPLE ---

7            MS. EYE:  YOUR HONOR, IF I MAY, CAROL EYE FOR THE

8    UNITED STATES, REPRESENTING THE INTERNAL REVENUE SERVICE.

9            THE COURT:  YES.

10           MS. EYE:  THE INTERNAL REVENUE SERVICE WILL BE

11   OBJECTING TO CONFIRMATION, AND I WOULD VERY MUCH LIKE TO

12   APPEAR AT THE HEARING, BUT I HAVE A COMMITMENT ON THE 13TH

13   AND 14TH OF OCTOBER.  SO IF WE'RE PICKING DATES, SOMETHING

14   OTHER THAN THOSE TWO WOULD BE GOOD.

15           THE COURT:  HOW ABOUT THE 16TH, THAT'S A FRIDAY AND WE

16   CAN START IN THE MORNING ON THAT ONE.

17           MS. EYE:  THAT WOULD BE FINE, YOUR HONOR.  THANK YOU.

18           THE COURT:  MR. LUNA, IS THERE A CONFLICT THAT WE NEED

19   *TO KNOW ABOUT?*

20           MR. LUNA:  YOUR HONOR, ARE WE SAYING SEPTEMBER 16TH?

21           THE COURT:  NO, OCTOBER.

22           MR. LUNA:  I BELIEVE THAT THERE IS A BENCH SCHEDULED

23   THAT DAY, YOUR HONOR.

24           THE COURT:  ISN'T THAT IN MIAMI.  ARE YOU ALL

25   PARTICIPATING IN THE MIAMI ONE?  I THOUGH THE ONE IN TAMPA

1    WAS THE 15TH. I CAN DOUBLE CHECK THAT REAL QUICK. LET ME

2    MAKE POSITIVE HERE. BUT I THOUGHT THAT WAS THE MIAMI

3    DATE.

4          MS. GREEN: IT IS THE MIAMI DATE. I ACTUALLY JUST

5    LOOKED AT THAT YESTERDAY.

6          THE COURT: SO YOU'LL HAVE TO GO TO TAMPA IF YOU

7    WANT TO GO ON THE 15TH. ANY OTHER OBJECTIONS TO THE 16TH

8    THAT ANYBODY KNOWS ABOUT?

9          OKAY. WE'LL START AT 10:00 A.M. ON OCTOBER THE 16TH.

10   AND WE'LL HAVE --- I ASSUMED THAT YOU'VE ALREADY SENT OUT

11   THE SOLICITATIONS?

12         MS. GREEN: I DID.

13         THE COURT: SO WE WILL JUST ANNOUNCE IT --- WE'LL

14   NOTICE IT TO ALL CREDITORS AND PARTIES IN INTEREST FOR JUST

15   THE CONTINUATION OF THE DATE, OCTOBER THE 16TH AT 10:00 A.M.

16         AND IF I COULD GET JUST MS. EYE'S JUST TO TELL ME HOW

17   LONG I NEED TO RESERVE, WOULD YOU ANTICIPATE, WILL IT BE

18   LEGAL ARGUMENT?

19         MS. EYE: AT THIS POINT, YOUR HONOR, I REALLY DON'T

20   KNOW. I LOOKED AT THE PLAN FRIDAY. I DON'T THINK IT WILL BE

21   TOO LONG. IT'S FAIRLY STRAIGHTFORWARD.

22         THE COURT: VERY GOOD. THANK YOU. VERY GOOD.

23   ANYTHING ELSE IN THE MAIN CASE? MR. SAXON.

24         MR. SAXON: JUST TO CLARIFY, JUDGE, IN THE ORDER THAT

25   EXTENDS ALL DEADLINES FROM THE PRIOR ORDER.

1     THE COURT: I NEED TO CRAFT A SEPARATE. WHAT I'LL DO IS

2     I'LL DO A SHORTENED ORDER, AMENDED ORDER SETTING THE

3     CONFIRMATION HEARING DATE THAT DOESN'T REQUIRE --- AND IF

4     WE'RE GOING TO EXTEND THE DEADLINES THEN WE'VE GOT TO

5     EXTEND --- IT NEEDS TO, MR. SAXON IS THE ANSWER. WE'LL

6     EXTEND ALL THE DEADLINES. I JUST DON'T KNOW HOW I'M QUITE

7     GOING TO. I TYPICALLY DON'T CONTINUE THESE OVER LIKE THIS.

8     WE WILL, AND THE DEADLINES WILL BE EXTENDED.

9     ANYTHING ELSE? THANK YOU. WHICH ADVERSARY IS THE

10    EASIEST TO RESOLVE? I WANT TO GET WHOMEVER I CAN GET OUT

11    OF HERE THE QUICKEST GONE. COME ON UP, MR. KELLER.

12    MR. KELLER: GOOD AFTERNOON, YOUR HONOR, I'M DAVID

13    KELLER. I'M HERE FOR THE BERMAN KEENE, RICHARD BERMAN

14    AND HIS LAW FIRM, BERMAN, KEENE AND BERGARA.

15    A COUPLE OF THINGS. I'M TRYING TO FIGURE OUT AND

16    MAYBE BECAUSE I'M NOT IN YOUR COURT THAT OFTEN WHETHER

17    OR NOT WE WERE SUPPOSED TO HAVE HAD A PRE-TRIAL

18    CONFERENCE SET FOR SEPTEMBER 24TH OR SEPTEMBER 16TH OR

19    *WHETHER THERE WAS ANYTHING ON THE DOCKET AT ALL IN THIS*

20    CASE, BECAUSE I HAVE MY NOTES FROM THE LAST HEARING,

21    SEPTEMBER 24TH, BUT I COULDN'T FIND THAT ON THE DOCKET.

22    THE COURT: AND I'M SORRY, I DON'T UNDERSTAND YOUR

23    QUESTION.

24    MR. KELLER: WELL, I DON'T KNOW IF THERE'S ANYTHING

25    SET, AND THEN I WAS GOING TO ---

1      THE COURT: NO, IT'S JUST A PRE-TRIAL CONFERENCE AS FAR

2  AS I KNOW.

3      MR. KELLER: TODAY OR IN SEPTEMBER?

4      THE COURT: WE NORMALLY JUST CONTINUE THEM OVER.

5      MR. KELLER: OKAY.

6      THE COURT: I DON'T KNOW. WE TRY TO TRACK EVERYTHING

7  SO EVERYBODY MOVES ALONG AT THE SAME PACE.

8      MR. KELLER: WELL, HERE'S WHERE WE ARE.

9      THE COURT: OKAY.

10      MR. KELLER: ON MARCH 4TH, I THINK IT WAS, THE COURT BY

11  AGREEMENT OF THE PARTIES, ENTERED AN ORDER DISMISSING AN

12  AMENDED COMPLAINT IN THE ADVERSARY PROCEEDINGS AGAINST

13  MY CLIENTS. THERE WAS A TIME PROVIDED IN THE ORDER WITHIN

14  WHICH AN AMENDED COMPLAINT WAS TO HAVE BEEN FILED. BY

15  AGREEMENT THAT WASN'T DONE BECAUSE AS I EXPLAINED TO THE

16  COURT, I THINK THE LAST TWO TIMES I'VE BEEN HERE, THERE IS AN

17  ISSUE REGARDING A REQUEST FOR AN ACCOUNTING ON THE TRUST

18  ACCOUNT FOR MY CLIENT'S LAW FIRM.

19      *I HAVE, AS I REPRESENTED TO THE COURT THE LAST TIME,*

20  TURNED OVER A LIST OF ALL FILES ON WHICH THERE WERE TRUST

21  ACCOUNT TRANSACTIONS TO MS. GREEN ON AUGUST 6TH. WITH

22  THAT, I HAVE ALSO GIVEN HER A COMPLETE LIST OF EVERY TRUST

23  ACCOUNT TRANSACTION.

24      I HAVE ADVISED HER THAT IN ADDITION, WE HAVE THE HARD

25  COPY BACK-UP DOCUMENTATION AVAILABLE FOR HER

1    EXAMINATION AND REVIEW AT HER CONVENIENCE. I'VE OFFERED

2    TO COME UP HERE FORM SOUTH FLORIDA WITH THAT MATERIAL

3    AND SHE HASN'T MADE THAT REQUEST YET. I DON'T KNOW IF SHE

4    NEEDS ANYTHING MORE THAN WHAT I'VE GIVEN HER.

5         WITH THAT, I THINK IT'S APPROPRIATE NOW, HAVING

6    TURNED THAT MATERIAL OVER ON THE ONE COUNT RELATING TO

7    A CLAIM FOR AN ACCOUNTING AND A SECOND COUNT FOR A

8    TURNOVER, FOR THE COURT TO SET A DEADLINE WITHIN WHICH A

9    SECOND AMENDED COMPLAINT SHOULD BE FILED.

10        THE OTHER THING I WANTED TO MENTION TO THE COURT IS

11   THAT --- AND BY THE WAY, BEFORE I GET TO THE OTHER POINT ---

12   THAT ALSO IS IMPORTANT WITH RESPECT TO A MOTION TO

13   WITHDRAW THE REFERENCE THAT WE FILED. WE HAVE HAD TO

14   FILE STATUS REPORTS WITH JUDGE PRESNELL. THE MOST RECENT

15   OF WHICH WAS YESTERDAY INFORMING HIM ABOUT THE STATUS

16   OF THIS BECAUSE THERE'S NOTHING FOR US TO FILE ON THAT

17   ISSUE BECAUSE WE DON'T HAVE A PENDING COMPLAINT, SO IT'S

18   IMPORTANT FOR US TO SET A DATE IN THAT REGARD.

19        THE SECOND THING I WANTED TO BRING UP TO THE COURT IS,

20   AS I THINK YOU KNOW, MY CLIENTS AND RACKLIN DEFENDANTS

21   ARE NOT ONLY DEFENDING CASES HERE IN YOUR COURT, BUT ALSO

22   IN STATE COURT BEFORE JUDGE SMITH IN MY CLIENT'S CASE AND

23   IN PALM BEACH COUNTY, IN THE RACKLIN CASE.

24        YOU MAY RECALL THAT THE LAST TIME I WAS HERE ---

25        THE COURT: I'VE READ THE ORDER.

1          MR. KELLER: THERE WAS AN ORDER, A CASE MANAGEMENT

2    ORDER FROM JUDGE SMITH.  WE ARE NOW SUBJECT TO A CASE

3    MANAGEMENT ORDER FROM JUDGE SMITH IN THE STATE COURT

4    CASE IN WHICH ESSENTIALLY THE SAME CLAIMS ARE BEING MADE

5    AS THE ONES ASSERTED BY MIRABILIS AT LEAST IN ITS PRIOR

6    COMPLAINT, AMENDED COMPLAINT HERE, BUT BY MR. AMADEO,

7    INDIVIDUALLY.

8          WE'RE SET FOR TRIAL IN JANUARY OF 2011.  WE'VE BEEN

9    ORDERED TO GO TO MEDIATION.  WITHOUT SUGGESTING TO THE

10   COURT OR TO MS. GREEN OR TO ANYONE ELSE WHO MIGHT READ

11   THIS TRANSCRIPT OR HEAR WHAT I'M SAYING, THAT MY CLIENTS

12   HAVE ANY MIND WHATSOEVER TO PAY ON MONEY ON THESE

13   CASES BECAUSE WE BELIEVE THEY'RE FRIVOLOUS, IT SEEMS KIND

14   OF WASTEFUL AND FOOLISH FOR US TO GO TO A MEDIATION WITH

15   MR. AMADEO AND WITHOUT MIRABILIS TO PARTICIPATE.

16        MIRABILIS WAS PRIOR TO THE INDICTMENTS AND PRIOR TO

17   THE BANKRUPTCY, REPRESENTED BY THE SAME COUNSEL, BUT NO

18   LONGER --- THAT'S NO LONGER THE CASE.

19        SO EVEN THOUGH WE'RE NOT SET FOR TRIAL, EVEN THOUGH

20   WE DON'T HAVE A COMPLAINT, I WOULD REQUEST SOME

21   COORDINATION EFFORT WITH THE COURT AND MS. GREEN TO

22   ENSURE THAT IF WE GO TO A MEDIATION, WE DON'T GO TO ONE

23   THAT CAN'T POSSIBLY HAVE ANY POSITIVE RESULT WITHOUT

24   MIRABILIS PARTICIPATING.

25        I HAVE TRIED TO CALLED MS. GREEN AND MS. EDEN ABOUT

1   THIS. THEY'VE BEEN KIND OF BUSY TIED UP WITH SOME OTHER

2   THINGS. I DID GET MESSAGES BACK FROM THEM. I TRIED TO TALK

3   TO HER TODAY BEFORE THE HEARING, BUT YOU CAME IN RIGHT AS

4   I WAS ABOUT TO ADDRESS THIS, SO I DON'T KNOW WHAT THE

5   DEBTOR'S POSITION IS ON THAT, BUT IT MAKES ABSOLUTELY NO

6   SENSE TO ME TO GO TOA  MEDIATION WITHOUT AMADEO WITHOUT

7   MIRABILIS PARTICIPATING SINCE WE'RE CONTENDING THAT THE

8   CLAIMS ARE THE SAME.

9       AND FRANKLY, THEY'RE SEEKING THE SAME MONEY FROM

10  THE SAME DEFENDANTS. IT'S THE SAME POT.

11      I THINK ALSO IN THAT REGARD IT WOULD BE APPROPRIATE

12  FOR THE COURT TO SET A HEARING WHERE MR. AMADEO'S

13  COUNSEL IS FORMALLY INVITED TO ATTEND TO ADDRESS SOME OF

14  THESE ISSUES. HE WAS HERE AT THE LAST HEARING AND

15  DECLINED TO MAKE AN APPEARANCE AND I DON'T --- I KNOW YOU

16  MAY NOT HAVE JURISDICTION OVER HIM, BUT I THINK IF THE

17  COURT INVITED HIM TO SOME KIND OF A STATUS CONFERENCE,

18  HE'D PROBABLY PARTICIPATE.

19      THE COURT: WHEN IS THE NEXT HEARING IN JUDGE SMITH'S

20  CASE, DO YOU RECALL OF THE TOP OF YOUR, MR. KELLER?

21      MR. KELLER: I DO. WE DON'T HAVE ANY HEARINGS SET AT

22  THIS TIME. I HAVE REQUESTED A HEARING ON A RENEWED MOTION

23  TO DISMISS BASED ON COLLATERAL ESTOPPEL GROUNDS. THE

24  RESPONSE ISN'T DUE YET AND THE COURT HASN'T INDICATED

25  WHETHER IT WILL EVEN ENTERTAIN MY REQUEST FOR A HEARING,

1    WHICH IS ORDINARILY NOT GRANTED IN THE BUSINESS COURT.

2          THE COURT: OKAY. SO THERE'S NO MEDIATION ORDER AT

3    THIS JUNCTURE?

4          MR. KELLER: NO, THAT'S NOT ACCURATE. IN THE TRIAL

5    ORDER, THE CASE MANAGEMENT ORDER SETTING THE TRIAL ON

6    JANUARY OF '11, WE WERE ORDERED TO GO TO MEDIATION BY

7    DECEMBER 1ST. IF, BECAUSE OF COORDINATION WITH MIRABILIS,

8    WE COULDN'T DO IT BY DECEMBER 1ST, I DON'T THINK I'M BEING

9    TOO PRESUMPTUOUS BY SAYING WE COULD REQUEST, AND I THINK

10   THE COURT WOULD BE INCLINED TO GRANT SOME RELIEF,

11   BECAUSE THAT'S MORE THAN A YEAR IN ADVANCE OF THE TRIAL

12   DATE, SO IF WE HAD TO PUT IT OVER TO LATER IN DECEMBER OR

13   JANUARY, YOU KNOW, IF EVERYBODY WOULD AGREE, I THINK

14   THAT WOULD MAKE SENSE IF THAT WAS NECESSARY. BUT WE'RE

15   PREPARED TO DO IT IN NOVEMBER AND WE HAVE SOME DATES. I

16   JUST DON'T KNOW IF MIRABILIS IS AVAILABLE AND CAN

17   PARTICIPATE.

18         THE COURT: VERY GOOD. AND MS. GREEN.

19         MS. GREEN: FIRST, WITH REGARD TO SETTING A TIME TO FILE

20   A COMPLAINT, I AGREE IF THE COMPLAINT NEEDS TO BE REFILED,

21   WE DID TALK ABOUT THIS BACK IN MARCH. ALTHOUGH, I JUST

22   RECEIVED THE DOCUMENTATION ON AUGUST THE 8TH, AND MR.

23   CUTHILL IS OUT OF THE COUNTRY, SO NOBODY IS GOING TO BE

24   ABLE TO REVIEW IT AT THIS POINT IN TIME, BUT I DO THINK THAT

25   IT MAKES SENSE THAT IF THESE COMPLAINTS ARE GOING TO BE

28

1    REFILED, THAT THEY GET REFILED ON SOME SORT OF TIMELY

2    BASIS.

3           WITH REGARD TO THE MEDIATION, I BELIEVE THAT MS. EDEN

4    REACHED OUT TO MR. KELLER IN AN ATTEMPT TO DISCUSS THE

5    MEDIATION.  I REACHED OUT TO MR. SAXON YESTERDAY, AND

6    INDICATED THAT WE HAVE DISCUSSED THE MEDIATION WITH MR.

7    CUTHILL.  HE IS NOT ADVERSE TO MEDIATING.  ONE OF OUR

8    CONCERNS IS THAT WE DON'T BELIEVE THAT THE CAUSES OF

9    ACTION FILED BY MR. MAYER AND THE CAUSES OF ACTION FILED

10   MIRABILIS ARE THE SAME.  IN FACT, WE THINK THEY'RE VERY

11   DIFFERENT.

12          AND IN ADDITION TO THAT, WE HAVE SOME ISSUES

13   REGARDING HOW THE MAYER FIRM IS BEING COMPENSATED AND

14   WHAT THAT WOULD DO TO SOME TYPE OF SETTLEMENT PROPOSAL

15   AND THEREFORE, WE WOULD LIKE TO DISCUSS THAT WITH MR.

16   MAYER BEFORE WE ACTUALLY SIGN ON TO DO THIS MEDIATION.

17          BUT WE AGREE THAT IT COULD BE BENEFICIAL AND THAT

18   WE'RE LOOKING AT DOING IT.

19          THE COURT:  VERY GOOD.  THANK YOU. AND  ANYTHING ELSE

20   YOU NEED TO MENTION, MR. KELLER?

21          MR. KELLER:  NO, YOUR HONOR, NOT AT THIS TIME.

22          THE COURT:  THIS IS HOW WE WILL GO FORWARD.  AND JUST

23   SO THAT YOU'RE NOT CONFUSED, WHAT WE TRY TO DO AT THE END

24   OF EVERY HEARING, MR. KELLER, IS --- HAVE A PROCEEDING MEMO

25   THAT INDICATES THE NEXT PRE-TRIAL CONFERENCE, SO THAT WILL

1  --- UNLESS WE MAKE A MISTAKE, WHICH WE DO, THAT'S WHEN IT

2  WILL BE NOTED WHEN WE WILL RECONVENE, WHICH WAS

3  CONSISTENT WITH COMING BACK TODAY.

4       IN CONNECTION WITH THE DEADLINE TO FILE THE SECOND

5  AMENDED COMPLAINT, I WILL SET A DEADLINE OF SEPTEMBER 11TH,

6  IS THAT SUFFICIENT TIME? SEPTEMBER THE 11TH.

7       IN CONNECTION WITH THE SUGGESTION THAT MEDIATION IN

8  CONJUNCTION WITH THE PENDING STATE COURT MATTER FILED BY

9  MR. AMADEO AND HIS ENTITIES, I THINK WITH ALL DUE RESPECT

10  TO MR. KELLER ON THE ISSUES, YOU NEED TO SIT DOWN AT THE

11  SAME TABLE AND FIGURE IT OUT.  SO I WILL GRANT THE REQUEST

12  FOR MEDIATION.  I WILL DIRECT THAT THE MEDIATION --- I DON'T

13  WANT TO INTERFERE WITH JUDGE SMITH'S TIME SCHEDULE, IS IT

14  TO DISCUSS MEDIATION? OR TO CONCLUDE IT BY DECEMBER 1ST?

15       MR. KELLER:  WE'RE SUPPOSED TO HAVE CONDUCTED AND

16  COMPLETED A MEDIATION BY DECEMBER 1ST.

17       THE COURT:  WE'LL KEEP THE SAME TIMELINE.

18       MR. KELLER:  I'LL PROVIDE THE DATES WE'RE LOOKING AT

19  *WITH MR. MAYER'S FIRM TO MS. GREEN AND SEE WHAT WE CAN*

20  WORK OUT.

21       THE COURT:  YOU'LL HAVE TO WORK IT OUT ON A TRIAL

22  PARTY BASIS, BUT I THINK IT DOES --- AND I HAVE THE STYLE AND

23  SUCH.

24       MS. GREEN:  YOUR HONOR?

25       THE COURT:  YES.

1    MS. GREEN: MAY BE MAKE IT THE 17TH. MR. CUTHILL

2    DOESN'T GET BACK UNTIL THE 8TH, SO I'D LIKE HIM TO BE ABLE TO

3    REVIEW THE COMPLAINT BEFORE WE FILE THEM.

4    THE COURT: SEPTEMBER THE 18TH. ANY OBJECTION TO

5    THAT?

6    MR. KELLER: I THINK THE 17TH IS A FRIDAY.

7    THE COURT: THE 18TH IS A FRIDAY.

8    MR. KELLER: NO, YOUR HONOR. AND BY THE WAY, BY

9    ASKING FOR THIS DEADLINE, I'M NOT SUGGESTING THAT THE

10    COMPLAINT NEEDS TO BE FILED. I'VE SUGGESTED THE OPPOSITE

11    TO MS. GREEN.

12    THE COURT: IT'S GOOD TO HAVE A DEADLINE.

13    AND IN RESPONSE TO, AND I'M TRYING TO FIND THE

14    DOCUMENT NUMBER. I DON'T SEE IT. IT'S NOT POPPING UP TO ME

15    RIGHT NOW.

16    MR. KELLER: IT'S ON THE DATE OF THE ORDER, IF THAT

17    HELPS YOU FIND IT, EVEN THOUGH IT WAS DOCKETED IN JUNE. IT

18    GOES BACK TO MARCH 26TH.

19    *THE COURT: THANK YOU. THAT WILL HELP. THERE IT IS.*

20    MR. KELLER: I WANT TO SAY 24 OR 27, SOMETHING LIKE

21    THAT.

22    THE COURT: THE 27TH. WOULD SHE SUGGEST --- ANY

23    SUGGESTIONS? BECAUSE OF THE DISSIMILARITIES, I DON'T --- I'M

24    NOT GOING TO ABATE THIS ACTION. I'M NOT GOING TO

25    CONSOLIDATE THE ACTIONS. WE'VE GOT TO TRACK THEM

1    SEPARATELY.  BUT I CERTAINLY DO THINK WE DO NEED TO FIGURE

2    OUT SOME WAY TO AVOID INCONSISTENT RESULTS.  MEDIATION IS

3    ONE, OBVIOUSLY.

4         BUT I WILL CERTAINLY KEEP THE COUNSEL INVOLVED WITH

5    THE STATE COURT ACTION, INFORMED.  WE'LL ADD THEM TO THE

6    SERVICE LIST.  THEY SHOULD BE ADDED TO THE SERVICE LIST AND

7    TO THE EXTENT THAT THERE'S ANY DATES OR TIMES THAT WE

8    COULD HOLD HEARINGS IN CONJUNCTION, I DON'T MIND DOING

9    THAT.  I'M NOT SURE PRACTICALLY WHAT GOOD IT DOES, OTHER

10   THAN MAKE IT MORE DIFFICULT FOR YOU GUYS.

11        MR. KELLER:  WELL, I THINK TO SOME EXTENT, THIS COURT

12   MAY HAVE SOME POWER OVER --- OVER THE ISSUE OF WHETHER OR

13   NOT THAT CASE CAN EVEN PROCEED.  I MEAN, DON'T FORGET THAT

14   THIS COURT IN MANAGING THE DEBTOR'S AFFAIRS, HAS TO BE

15   CONCERNED WITH AVAILABLE RECOVERY.  AND TO THE EXTENT

16   THAT WE CONTINUE TO DEFEND THE STATE COURT CASE, THE

17   AVAILABLE POT TO RESPOND TO ANY CLAIMS CONTINUES TO

18   DIMINISH BECAUSE IT'S PURSUANT TO PROFESSIONAL LIABILITY

19   POLICIES, WHICH ARE DIMINISHING LIMITS POLICIES.

20        THE COURT:  THAT'S GREAT.  BUT THOSE JUST DON'T COME

21   OUT SU SPONTE.

22        MR. KELLER:  NO, I UNDERSTAND THAT.

23        THE COURT:  IF THERE'S A MOTION, SOMEBODY WILL NEED

24   TO FILE IT.

25        MR. KELLER:  YES, MA'AM.  I UNDERSTAND THAT.

32

1   THE COURT:  BUT I WILL BE GLAD TO KEEP BOTH JUDGE

2   SMITH AND THE PARTIES INVOLVED IN THAT CASE ADVISED OF

3   WHAT WE'RE DOING.  AND IF THERE'S WAYS WE CAN WORK

4   TOGETHER, I WOULD WELCOME THAT.

5   MR. KELLER:  THANK YOU, YOUR HONOR.

6   THE COURT:  AND I WILL SET A CONTINUED PRE-TRIAL

7   CONFERENCE FOR --- LET'S SEE.  JANUARY THE 21ST AT 10:00 A.M., SO

8   THAT WILL BE AFTER MEDIATION CONCLUDES, HOPEFULLY.

9   MR. KELLER:  THANK YOU, YOUR HONOR.

10   THE COURT:  AND I'LL DO AN ORDER ON THAT.

11   ANYTHING ELSE IN ADVERSARY 8222?

12   THANK YOU VERY MUCH.

13   LET'S SEE, IN CONNECTION WITH ADVERSARY 8227, MR.

14   VARNER AND THE SAXTON, GILMER FIRM.

15   MR. LUNA:  JUDGE, I THINK THE ONLY BUSINESS TO DISCUSS

16   HERE TODAY IN OUR CASE IS I HAVE BEEN ATTEMPTING SINCE JULY

17   THE 7TH TO HAVE A RULE 26 DISCOVERY CONFERENCE.  I SENT AN E-

18   MAIL REQUEST THAT DAY TO MS. GREEN, MR. LUNA AND MS. EDEN

19   AND GOT NO RESPONSE.  I SENT A FOLLOW UP ON JULY 21ST AND

20   GOT NO RESPONSE.

21   I SENT A FOLLOW UP ON AUGUST 10TH, AND LAST FRIDAY, MS.

22   EDEN WAS KIND ENOUGH TO E-MAIL ME TO LET ME KNOW THAT

23   SHE WOULD GIVE ME A CALL A WEEK AGO MONDAY.  BUT THAT

24   HASN'T OCCURRED YET.

25   AND WHAT I HAD SUGGESTED WAS THAT WE SET ONE YEAR

1    TO CONDUCT DISCOVERY IN THE CASE.  THAT WE PROCEED

2    ACCORDING TO THE RULES, BUT THAT WE WAIVE THE TEN

3    DEPOSITION LIMIT BECAUSE FROM THE RECORD IN THIS CASE, IT'S

4    OBVIOUSLY MORE THAN A TEN DEPOSITION CASE, SO.

5        WHAT I WOULD LIKE TO DO IS REACH SOME AGREEMENT ON

6    THAT SO THAT WE COULD CONDUCT DISCOVERY AND DETERMINE

7    IF THESE PLAINTIFFS HAVE ANY FACTS TO SUPPORT THEIR CLAIMS.

8        THE COURT:  OKAY.  THANK YOU.

9        MR. LUNA:  WHICH WE HAVEN'T SEEN YET.

10        THE COURT:  MS. GREEN.

11        MS. GREEN:  YES, YOUR HONOR.  AS YOU KNOW, THIS WAS

12    THE CASE IN WHICH THE MOTION TO DISMISS WAS FILED BY MR.

13    BYER.  IT WAS ARGUED ON THE SAME DAY AS THE MOTION TO

14    DISMISS THE MAIN CASE.  YOUR RULING CAME OUT, I BELIEVE TEN

15    DAYS.

16        THE COURT:  THE ANSWER IS DUE SEPTEMBER 2ND.

17        MS. GREEN:  CORRECT.  SO THE ANSWER HASN'T BEEN FILED

18    YET.  AND ONE OF THINGS WE WERE WAITING FOR WAS THE

19    RULING ON THE MOTION TO DISMISS OBVIOUSLY BEFORE WE

20    DECIDED TO GET INTO A HUGE DISCOVERY ISSUE.  SO NOW THAT

21    THAT RULING HAS BEEN MADE, I THINK THAT IT IS CORRECT THAT

22    WE SHOULD HAVE A DISCOVERY PLAN IN THIS CASE.

23        I WOULD LIKE TO COORDINATE IT WITH THE DISCOVERY

24    PLANS IN THE OTHER CASES.  I THINK THAT THERE'S GOING TO BE A

25    LOT OF OVERLAPPING.  AS YOU KNOW, THERE'S AN ENTIRE

1   WAREHOUSE FULL OF DOCUMENTS THAT YOU'VE HEARD ABOUT A

2   NUMBER OF TIMES.  WE'VE SET UP A ROOM IN THAT WAREHOUSE

3   FOR ATTORNEYS TO REVIEW DOCUMENTS AND WE'RE TRYING TO

4   SET UP A PROCEDURE TO DO THAT BECAUSE OBVIOUSLY, WE NEED

5   TO KNOW WHAT WE NEED TO DEAL WITH IN DISCOVERY.

6        I WILL ALSO TELL YOU THAT MS. EDEN ACTUALLY IS

7   HANDLING THIS ADVERSARY PROCEEDINGS.  I'M HANDLING THE

8   MAIN CASE AND SO, I DON'T KNOW WHAT HER TIMING IS IN TERMS

9   OF WHERE SHE WANTS TO DO HER DISCOVERY.

10       THE COURT: I'M NOT GOING TO SET A DISCOVERY CUTOFF AT

11   THIS JUNCTURE.  I CAN BRING YOU BACK QUICKER IF THAT WILL

12   FACILITATE AN OVERALL DISCOVERY SCHEDULE.  I CAN BRING

13   YOU BACK IN JANUARY.  MY INCLINATION IS TO BRING YOU BACK

14   IN JANUARY.

15       MR. VARNER:  JUDGE, I'M NOT AS CONCERNED WITH A

16   SCHEDULE AND A CUTOFF AS BEING ABLE TO PROCEED, BECAUSE

17   THE RULES DON'T ALLOW US TO PROCEED UNTIL WE'VE HAD A

18   CONFERENCE AND I ACTUALLY AGREE WITH MS. GREEN THAT

19   THERE WILL BE SOME COORDINATION NECESSARY IN THESE CASES.

20       BUT I WOULD LIKE TO START SOME CASE SPECIFIC

21   DISCOVERY, SOME DOCUMENT REQUESTS, AND INTERROGATORIES,

22   SOME REQUEST FOR ADMISSION, PERHAPS A 30B6 DEPOSITION OF

23   MR. CUTHILL.  SO IF I CAN JUST PROCEED WITH DISCOVERY UNIQUE

24   TO MY CASE, THAT'S MY MAIN CONCERN HERE TODAY.

25       THE COURT:  AND YOUR RESPONSE TO THAT?

1    MS. GREEN: YES, YOUR HONOR. I DON'T THINK THERE'S

2    BEEN AN ANSWER FILED YET. SO I THINK ALL THIS IS A LITTLE

3    PREMATURE.

4    MR. VARNER: I DON'T KNOW OF ANY RULE THAT SAYS YOU

5    HAVE TO ANSWER BEFORE YOU SERVE DISCOVERY REQUESTS, BUT

6    THE ANSWER WILL BE FILED NEXT WEEK IN ACCORDANCE WITH

7    YOUR ORDER, JUDGE.

8    THE COURT: RIGHT. WHAT I WILL DO IS PROVIDE THAT

9    DISCOVERY CAN COMMENCE OCTOBER THE 1ST, AND THAT WAY

10   YOU'LL HAVE A FULL MONTH TO TALK ABOUT DISCOVERY

11   SCHEDULES, COORDINATION'S, WHATEVER, BUT I WILL SIMPLY

12   JUST SET THIS OVER FOR A PRE-TRIAL CONFERENCE FOR THE SAME

13   DATE AND TIME. I DON'T SEE ANY REASON TO BRING YOU BACK

14   UNLESS THERE'S AN ISSUE UNTIL JANUARY.

15   MS. GREEN: AND YOUR HONOR, WHAT I WOULD ENVISION IS

16   DOING A DISCOVERY ORDER THAT BOTH DEALS WITH CASE

17   SPECIFIC AND WITH GENERAL DISCOVERY ISSUES, JUST TO TRY TO

18   STREAMLINE THE ISSUES.

19   THE COURT: I THINK YOU WOULD ALL BE ALL WELL

20   BENEFITTED BY DOING THAT. BUT IN TERMS OF ALLOWING THIS

21   PARTICULAR SET OF DEFENDANTS TO PROCEED, THEY CAN

22   PROCEED WITH DISCOVERY DECEMBER 1ST, WITH OR WITHOUT A

23   DISCOVERY ORDER PLAN. THAT'S FINE.

24   MR. VARNER: DECEMBER OR OCTOBER?

25   THE COURT: OCTOBER. OCTOBER 1ST.

36

1      MR. LUNA: THANK YOU, YOUR HONOR.

2      MS. GREEN: THANK YOU.

3      THE COURT: AND LET ME CHANGE THE DATE AND TIME, AND

4  THIS WILL APPLY TO YOU TOO, MR. KELLER. I KEEP FORGETTING

5  HOW LONG EVERY TIME WE GET TOGETHER THIS TAKES. I'M JUST

6  GOING TO CHANGE THE TIME TO 2:00 P.M. IT WILL STILL BE

7  JANUARY 21ST, BUT IT WILL BE 2:00 P.M.

8      MR. LUNA: INSTEAD OF 10:00 A.M.?

9      THE COURT: YES.

10     AND THEN ON --- JUST TAKING THE NEXT ONE DOWN, THE

11  CASE OF MIRABILIS VS. JAMES MOORE.

12     MR. MELTZ: JUDGE, ONCE AGAIN, CHUCK MELTZ ON BEHALF

13  OF JAMES MOORE. I BELIEVE WHERE MS. GREEN AND I HAVE LEFT

14  OFF IS I'M ANTICIPATING UNLESS I'VE SUCCESSFULLY TALKED

15  THEM OUT OF IT, ANOTHER AMENDED COMPLAINT FORTHCOMING.

16  I DON'T HAVE ANY PROBLEM ADOPTING THAT SEPTEMBER 18TH

17  DEADLINE JUST AS A STOPPING POINT JUST TO MAKE SURE OF SOME

18  THINGS ON THEIR WAY, AND THEN AT THAT TIME WE WILL

19  *EVALUATE THE NEWEST AMENDED COMPLAINT AND MOVE*

20  FORWARD WAS THERE.

21     THE COURT: VERY GOOD. AND IS SEPTEMBER THE 18TH

22  SATISFACTORY?

23     MS. GREEN: THAT IS FINE, YOUR HONOR.

24     THE COURT: AND WE'LL SET A DEADLINE TO DO THAT, MR.

25  MELTZ.

37

1       MR. MELTZ: THANK YOU.

2       THE COURT: ON THE SAME PRE-TRIAL CONFERENCE DATE IN

3    JANUARY.

4       MR. MELTZ: YES, YOUR HONOR.

5       THE COURT: UNLESS JUDGE PRESNELL DECIDES HE WOULD

6    LIKE TO DO THIS INSTEAD OF ME.

7       MR. MELTZ: EITHER OR, JUDGE.

8       THE COURT: EITHER OR. HE'S MORE THAN WELCOME.

9       LET'S SEE, AND THEN IN THE HOTH HOLDING CASES, THERE IS

10   THE ADVERSARY PROCEEDING 08-148.

11      MR. VALDEZ: YES, YOUR HONOR. BUD VALDEZ ON BEHALF

12   OF COASTAL EQUITY PARTNERS AND BYSON MORTGAGE.

13      YOUR HONOR, I WENT BACK AND LOOKED THROUGH THE

14   FILE. YOU HAD ALREADY ENTERED AN ORDER A WHILE BACK

15   SAYING THAT WE WOULD HAVE TEN DAYS AFTER YOUR HONOR

16   RULED ON THE MOTION TO DISMISS. I WOULD JUST LIKE TO ASK

17   FOR 20 DAYS, YOUR HONOR. WE'VE GO THE HOLIDAY COMING UP

18   HERE.

19      THE COURT: NO PROBLEM.

20      MR. VALDEZ: OKAY.

21      THIS CASE, I DON'T BELIEVE IS NEARLY AS COMPLICATED AS

22   THE OTHER CASES THAT YOU'VE HAD BEFORE YOU. THIS HOTH

23   HOLDINGS CASE, IT'S A SINGLE ASSET CASE WITH ONLY OUR

24   CLIENT AND HOTH HOLDING. YOU KNOW, WE, TOO, WOULD LIKE

25   TO PROCEED WITH DISCOVERY IN THIS CASE, AND PROCEED UNDER

1    THE RULES.  I DON'T THINK WE NEED A YEAR OR ANYTHING LIKE

2    THAT, YOUR HONOR, BUT WE CAN ADDRESS AS WE GO FORWARD.  I

3    THINK WE CAN GET ALL OUR DISCOVERY DONE A LOT QUICKER

4    THAN THAT.

5        THE COURT:  VERY GOOD.  AND MS. GREEN, ANYTHING IN

6    SPECIFIC TO THIS?

7        MS. GREEN:  YOUR HONOR, I COMPLETELY AGREE THAT THIS

8    CASE IS LESS COMPLICATED THAN THE OTHERS.  IT'S BASICALLY A

9    FRAUDULENT TRANSFER CASE, AND SO IT SHOULD BE SET FOR

10   DISCOVERY AND GET MOVING AS SOON AS THE ANSWER IS FILED.

11       THE COURT:  DO WE NEED TO TREAT THIS --- TAKE IT SORT OF

12   OUT OF THE PACK, SO TO SPEAK?

13       MS. GREEN:  IT'S NOT THE SAME TYPE OF ALLEGATIONS.

14       THE COURT:  WHEN DO YOU THINK IT WOULD BE PRUDENT TO

15   GET BACK TOGETHER?  I DON'T WANT TO DRAG YOU BACK UNTIL

16   YOU'RE READY, AND I'LL BE GLAD TO SET A DISCOVERY IF YOU

17   THINK THAT WILL FACILITATE.

18       MR. VALDEZ:  I THINK THAT WE CAN GET DISCOVERY DONE

19   IN 180 DAYS.  I REALLY DO.  IF WE FILE OUR ANSWER IN 20 DAYS

20   AND GO THROUGH SOME INITIAL DISCLOSURES AND START

21   DISCOVERY ON OCTOBER 1ST AS YOU SAID IN THE OTHER CASES, I

22   THINK WE CAN ---

23       MS. GREEN:  I'M FINE WITH THAT.

24       MR. VALDEZ:  --- QUICKLY MOVE FORWARD.

25       THE COURT:  VERY GOOD.  WHEN I SET A DISCOVERY CUTOFF

1  THIS EARLY IN A CASE, I'M OFTEN AM PERSUADED TO CHANGE IT,

2  BUT I WILL DO SO BECAUSE I KNOW THAT --- SO 180 DAYS WOULD

3  BE FEBRUARY THE 23RD.  DISCOVERY CAN COMMENCE REALLY ANY

4  TIME YOU'D LIKE, BUT I --- DISCOVERY CAN COMMENCE NOW.

5      MR. VALDEZ:  OKAY.

6      THE COURT:  WELL, LET'S SAY --- YOU ASKED FOR AN

7  ANSWER EXTENSION.  SEPTEMBER 18TH WOULD BE THE ANSWER.

8  DISCOVERY CAN COMMENCE UPON FILING THE ANSWER.  AND WE

9  WILL SET A CONTINUED PRE-TRIAL CONFERENCE FOR THE SAME

10  DATE AND TIME, JANUARY 24TH AT 2:00.  THAT WILL BE SLIGHTLY

11  BEFORE THE DISCOVERY CUTOFF, BUT YOU'LL KNOW WHERE

12  YOU'RE GOING BY THAT POINT.

13      MS. GREEN:  THAT'S FINE.

14      THE COURT:  IS THAT GOOD?

15      MR. VALDEZ:  THAT'S ALL.

16      THE COURT:  THANK YOU.  THERE WERE TWO APPLICATIONS

17  PENDING IN THE HOTH HOLDINGS CASE AND I THINK THEY WERE

18  PENDING, BUT THEY MAY HAVE BEEN RESOLVED.  THEY WERE

19  RESOLVED.  THEY SHOULD NOT HAVE BEEN --- THEY WERE

20  CONTINUED OVER UNTIL SEPTEMBER THE 16TH.  THAT WAS OUR

21  ERROR.

22      MR. DEMARIA:  IF I MAY, YOUR HONOR, YOU'RE NOT SEEING

23  CASE 223, THE RANKLIN COHEN CASE.

24      THE COURT:  YES.

25      MR. DEMARIA:  I WOULD LIKE TO THINK BECAUSE IT IS ALL

1      OVER.

2          THE COURT:  AND IT'S NOT AND I WAS WONDERING WHAT

3      HAPPENED.

4          MR. DEMARIA:  WELL, IT GOT CLOSED OUT BY THE CLERK OF

5      COURT, SO I DON'T EXIST.  BUT I HAVE A FEELING IN LIGHT OF THE

6      PLAN THAT MS. GREEN WANTS MY CASE TO CONTINUE TO EXIST.  I

7      THINK WE HAVE SOME PROCEDURAL ISSUES TO TALK ABOUT,

8      THAT'S WHY I DON'T THINK YOU CALLED US.

9          THE COURT:  WHAT IN THE WORLD HAPPENED?  I'M PULLING

10     IT UP.

11         MR. DEMARIA:  RIGHT.  I SAW SOME STRANGE ORDER

12     CLOSING US OUT, BUT MY CLIENT WAS INITIALLY HAPPY, BUT I

13     TOLD HIM IT DIDN'T MEAN NOTHING.

14         THE COURT:  YEAH.

15         MR. DEMARIA:  AND OF COURSE, LIKE THE OTHERS, AFTER

16     YOU DISMISSED THE COMPLAINT IN MARCH, IT WAS SUPPOSED TO

17     BE REFILED, IF AT ALL, I GUESS, IN APRIL ---

18         THE COURT:  IT WAS ENTERED IN MARCH.

19         MR. DEMARIA:  WE'VE MET WITH COUNSEL, EXPLAINED WHY

20     THEY SHOULDN'T BE REFILING.  THEY WERE SUPPOSED TO BE

21     REFILE BY AUGUST.  I'VE GOT JUDGE PRESNELL TELLING ME HE'S

22     GOING TO DISMISS AS MOOT MY MOTION TO WITHDRAW THE

23     REFERENCE; SO FRANKLY, I'M WASTING A LOT OF MONEY, MY

24     CLIENT'S MONEY.  I'M TRYING TO TEE THIS CASE UP, AND IT'S A

25     PROCEDURAL NIGHTMARE AND WE NEED TO EITHER GO AWAY OR

41

1      GET IT ON TRACK.

2              THE COURT:  YES.

3              MR. DEMARIA:  I DON'T THINK ITS FAIR TO RANKLIN COLON

4      TO HAVE THIS BE HAPPENING.

5              THE COURT:  I DON'T DISAGREE.

6              MR. DEMARIA:  JUDGE PRESNELL HAS NOT BEEN AS PATIENT

7      WITH OUR CASE AS HE HAS BEEN WITH MR. BERMAN WHERE HE

8      KEEPS GIVING THEM STATUS CONFERENCES AND LET'S THE CASE

9      STAY ALIVE.  MY CASE IS GOING TO GET --- I'M GOING TO HAVE TO

10     REFILE EVERYTHING, NEW FILING FEES, NEW ATTORNEYS' FEES,

11     IT'S JUST NOT REALLY FAIR THAT WE'RE HANGING HERE.

12             THE COURT:  SO WHAT'S THE STATUS ACROSS THE STREET,

13     ARE YOU JUST ---

14             MR. DEMARIA:  HIS LAST ORDER --- WE FILED A RESPONSE

15     BASED ON THE REPRESENTATIONS BY MS. GREEN'S OFFICE THAT IF

16     THERE WAS GOING TO BE AN AMENDED COMPLAINT, WE HAVE

17     UNTIL AUGUST 11TH.  THAT'S NOW PASSED.  THERE'S NO AMENDED

18     COMPLAINT AND I THINK JUDGE PRESNELL IS READY TO KICK MY

19     MOTION OUT THE DOOR, WHICH MEANS I'VE GOT TO START ALL

20     OVER.

21             BUT THE CONCERN I HAVE, MS. GREEN IS EXACTLY RIGHT,

22     THERE IS GOING TO BE CORE ISSUES, SUCH AS WE'RE ALL GOING TO

23     HAVE TO TRUCK OFF TO PRISON TO GO TAKE MR. AMADEO'S

24     DEPOSITION.

25             THE COURT:  EXACTLY.

1    MR. DEMARIA:  BECAUSE EVEN THOUGH IT MAY NOT BE

2    APPROPRIATE IN YOUR HONOR'S VIEW AS A MOTION TO DISMISS, IT

3    WILL BE A VERY BIG PART OF ALL OF OUR CASES.

4        THE COURT:  I DON'T DISAGREE WITH THAT.

5    MR. DEMARIA:  I WOULD THINK THAT THE BUREAU OF

6    PRISONS DOESN'T WANT TO SEE US COME FOUR SEPARATE TIMES,

7    SO THAT'S A CONCERN --- SO I'M SITTING HERE NOT EVEN WITH A

8    LIVE CASE.  WE HAVE MEDIATION GOING ON WITH ONE.  WE HAVE

9    DISCOVERY GOING ON WITH ANOTHER.  I JUST THINK UNLESS THE

10    WHOLE IDEA OF THESE PROCEEDINGS IS TO RUN UP ATTORNEY'S

11    FEES, WE'VE GOT TO HAVE SOME COORDINATION.  FRANKLY, SHE

12    COULD HAVE FILED THIS ALL IN ONE CASE, BUT WE'RE ALL OVER

13    THE PLACE, AND I'M REALLY PREJUDICED BECAUSE I'M NOT EVEN

14    AT THE STARTING GATE.  SO I'D LIKE TO BE AT THE STARTING GATE

15    OR GO HOME.

16        THE COURT:  WELL, I WILL TELL YOU THE CLERK'S OFFICE,

17    THEY DID ENTER THE DOCKET ENTRY CLOSING IT BECAUSE

18    NOTHING HAD BEEN FILE THAT EXTENDED THE DATES TO DO

19    ANYTHING, AND THAT'S WHY IT WAS CLOSED.  I'M NOT EVEN SURE

20    IT WAS INAPPROPRIATELY CLOSED.

21        MR. DEMARIA:  NO, NO, I'D LOVE TO BE CLOSED, BUT I THINK

22    IN LIGHT OF THE BANKRUPTCY CODE, THE STATUTE OF

23    LIMITATIONS HAS NOT EXPIRED.  IT CAN BE REOPENED.

24        THE COURT:  NOBODY HAS FILED ANY EXTENSION, SO THEY

25    CLOSED IT IN THE NORMAL COURSE.

43

1    MR. DEMARIA: I THINK REALLY MS. GREEN CONTROLS WHAT

2    GOES ON WITH MY CLIENT, BUT I WOULD LIKE SOME FAIRNESS

3    HERE.

4    MS. GREEN: YOUR HONOR, I THINK WE'VE BEEN PERFECTLY

5    FAIR. WE'VE BEEN TALKING WITH THEM THE WHOLE TIME AND

6    GETTING SEPARATE EXTENSIONS. I MEAN, PART IS THE PROBLEM IS

7    THAT WE HAD A MOTION TO DISMISS THE ENTIRE CASE PENDING,

8    WHICH YOU RULED ON TODAY.

9    SO IT MADE NO SENSE FOR ME TO SPEND MORE MONEY AND

10    ATTORNEY'S FEES. IF I HAD FILED THAT AND YOU HAD RULED

11    THAT THE CASE WOULD BE DISMISSED, MR. DEMARIA WOULD BE

12    STANDING HERE SAYING I WASTED ALL OF HIS MONEY BECAUSE I

13    FILED THE CASE AND HE HAD TO RESPOND TO IS. SO NO MATTER

14    WHAT I DO IT'S THE WRONG ANSWER. BUT THE ANSWER IS THAT

15    WE'LL FILE THE COMPLAINT BY THE 17TH AND WE'LL GO FROM

16    THERE.

17    THE COURT: THE 18TH. I'M GOING TO REOPEN THE

18    ADVERSARY PROCEEDING.

19    MR. DEMARIA: JUDGE, I WOULD SAY I DON'T THINK IT'S NOT

20    REALLY TRUE TO SAY WHAT COUNSEL JUST SAID BECAUSE WE

21    HAVE LITIGATION ON A MOTION TO DISMISS ON ONE DEFENDANT,

22    WE HAVE A COMPLAINT ON ANOTHER DEFENDANT. YOU KNOW,

23    FOR WHATEVER REASON, THE PROPER SHOULD BE THAT THEY

24    SHOULDN'T SUE MY CLIENT. THAT'S THE PROPER REASON, BUT IF

25    THEY WANT TO WASTE A LOT OF MONEY TO GET TO THE END OF

44

1    THIS CASE AND HAVE NOTHING, THEY CAN DO.  LET'S JUST GET

2    STARTED.  I MEAN, IT'S JUST NOT RIGHT BECAUSE I'VE GOT JUDGE

3    PRESNELL BREATHING DOWN MY NECK TO THROW MY CASE OUT.

4          THE COURT:  THE AMENDED COMPLAINT WILL BE FILED ON

5    OR BEFORE SEPTEMBER THE 18TH.  DISCOVERY CAN COMMENCE

6    OCTOBER THE 1ST.  I KEEP SAYING DECEMBER, OCTOBER THE 1ST.

7    I'LL GIVE YOU 30 DAYS TO COME UP WITH A COORDINATED

8    DISCOVERY SCHEDULE, WHICH I HIGHLY ENCOURAGE YOU TO DO.  I

9    AGREE WITH YOU.

10          MR. DEMARIA:  JUDGE, DID YOU SAY OCTOBER THE 1ST?

11          THE COURT:  OCTOBER 1ST.

12          MR. DEMARIA:  OKAY.  THANK YOU.

13          THE COURT:  THE PRE-TRIAL CONFERENCE IS JANUARY THE

14    21ST AT 2:00.

15          MR. DEMARIA:  THANK YOU, YOUR HONOR.

16          THE COURT:  AND I'LL ISSUE AN ORDER THAT REOPENS IT SO

17    YOU CAN SEND THAT OVER ACROSS THE STREET SO YOU DON'T

18    HAVE TO DO ANYTHING.

19          *ARE THERE ANYTHING ELSE THAT WE NEED TO DO IN*

20    CONNECTION WITH THE OTHER CASES OR MATTERS?

21          I WILL DO ALL OF THE ORDERS.  THANK YOU VERY MUCH.

22          (WHEREUPON, THE HEARING WAS CONCLUDED AT 2:59 P.M.)

23

24

25

45

CERTIFICATE OF OATH

STATE OF FLORIDA

COUNTY OF SEMINOLE

     I, MARGIE A. GREEN, NOTARY PUBLIC, CERTIFY THAT I WAS

AUTHORIZED TO AND DID TRANSCRIBE, FROM CD-R, THE FOREGOING

PROCEEDINGS AND THAT THE TRANSCRIPT IS A TRUE RECORD

     I FURTHER CERTIFY THAT I AM NOT A RELATIVE, EMPLOYEE,

ATTORNEY OF COUNSEL OF ANY OF THE PARTIES, NOR AM I FINANCIALLY

INTERESTED IN THE ACTION.

     DATED THE 9TH DAY OF SEPTEMBER 2009.

               MARGIE A. GREEN

               NOTARY PUBLIC – STATE OF FLORIDA

               MY COMMISSION NO.:  DD0714428

               MY COMMISSION EXPIRES:  9/13/2011