UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


In re:                                                         CASE NO. 6:08-bk-04327-KSJ

MIRABILIS VENTURES, INC.,                      CHAPTER 11

        Debtor.
_____/

MIRABILIS VENTURES, INC.'S OBJECTION
TO MOTIONS FOR LEAVE TO APPEAL INTERLOCUTORY
ORDER DENYING MOTIONS TO DISMISS CHAPTER 11 BANKRUPTCY
CASE AND INCORPORATED MEMORANDUM OF LAW

**MIRABILIS VENTURES, INC.** ("Mirabilis" or "Debtor"), by and through its

undersigned counsel, hereby files its objection to the Motions for Leave to Appeal Interlocutory

Order Denying Motion to Dismiss Chapter 11 Bankruptcy Case ("Motions for Leave")(Doc.

Nos. 286 and 288) filed respectively by RACHLIN COHEN & HOLTZ LLP, LAURIE S.

HOLTZ and JOSE I. MARRERRO (collectively, "Rachlin") and FORGE CAPITAL

PARTNERS, LLC f/k/a MORECO PARTNERS, LLC, ARGENT CAPITAL ADVISORS, LLC

f/k/a ATLANTIC AMERICAN CAPITAL ADVISORS, LLC, ARGENT BD, LLC, ARGENT

BD TRANITION, LLC, ROBERT MOREYRA, PETER COLLINS, BISON MORTGAGE

CORP., and SOLUTIONS FUNDING, INC. (collectively, "Forge Creditors"), and in support

thereof, states as follows:

FACTUAL AND PROCEDURAL HISTORY

I.      PRE-BANKRUPTCY PROCEDURAL BACKGROUND

1.      In 2004, Presidion Corporation ("Presidion") entered into a consulting agreement

with AQMI Strategy Corporation ("AQMI") to provide consulting work regarding the divestiture

and liquidation of certain wholly owned subsidiaries of Presidion.  The deal was an arms-length transaction and both parties were represented by counsel.

2.      AQMI is wholly owned by Mr. Frank L. Amodeo ("Amodeo").

3.      On October 28, 2004, the entity known as Stellar Industries, Inc. changed its name to Mirabilis Ventures, Inc.  Mirabilis had only one shareholder (Yaniv Amar) and only one director (Gailie Hartman).

4.      Mirabilis was a private equity company, which acquired companies that had a strategic fit into its unique business model.  Acquired companies either fit into the four primary specialization categories – real estate, construction, chain store development, and human resources – or they provided necessary goods and services to the core companies.

5.      In May 2005, AQMI was approached again by Presidion to develop a plan of reorganization and to maximize the value of its professional employer organization ("PEO") assets of its wholly-owned subsidiaries.

6.      AQMI proposed a reorganization that would utilize Mirabilis to accomplish the reorganization of Presidion ("PBS Plan").

7.      During this time, Jason Carlson, Robert Pollack and Edie Curry were the only Directors for Mirabilis.  Amodeo was not a director or officer of Mirabilis.

8.      During this time and to further determine the practicality and legality of the PBS plan, Mirabilis retained a variety of professionals to discuss, among other things, the tax and insolvency implications of the plan.

9.      In January 2006, after discussing the implication with its tax and legal professionals, the management of the Presidion book of business was transferred to AEM, Inc. ("AEM"), a wholly owned subsidiary of Mirabilis.  During this same time Mirabilis set up

independent committees to determine and oversee audit risk, investment risk and global development.

10.     In late November 2006, Mirabilis executives were notified that a federal grand jury investigation had commenced with regard to the operations of Presidion and Mirabilis. Subsequent to this time, the United States of America filed an *in rem* civil forfeiture action against the assets of Mirabilis.

11.     During this time, the Directors of Mirabilis were Laurie Holtz, James Sadrianna, Jason Carlson, Frank Hailstones, Robert Pollack and Richard Berman.  Frank Amodeo was not a director or officer of Mirabilis or its subsidiaries.

12.     On or about May 1, 2007, Mirabilis was forced to liquidate its operations and sold the PEO book of business to O2HR, LLC for approximately Fifteen Million Dollars ($15,000,000.00).

## II.     POST-BANKRUPTCY PROCEDURAL BACKGROUND

13.     On May 27, 2008, the Debtor filed its voluntary petition for relief with the Middle District of Florida Bankruptcy Court (the "Petition Date").

14.     The Chapter 11 filing came primarily as a result of an *in rem* civil forfeiture action filed by the United States of America against certain assets of Mirabilis, which effectively caused Mirabilis to be unable to pursue claims and litigation against various third parties.  The *in rem* civil forfeiture action was filed based upon the criminal investigation of Mr. Amodeo. In an effort to preserve equity for all of its creditors and other potential creditors, Mirabilis deemed a Chapter 11 liquidation plan as in the best interest of all its creditors.

15.     On August 14, 2008, the United States of America filed a motion in the Bankruptcy to intervene and to stay the Debtor's bankruptcy case ("Stay Motion") (Doc. No. 48).

16.     In the Stay Motion, the United States of America sought to stay the Debtor's bankruptcy case in order to pursue a forfeiture and seizure action against property of the Debtor's bankruptcy estate.  If granted, the United States might have been able to seize substantially all of Mirabilis' assets.

17.     On September 24, 2008, the United States of America filed a Motion to Dismiss the Bankruptcy case based upon its alleged bad faith filing (the "USA Dismissal Motion") (Doc. No. 41).

18.     On October 3, 2008, the Forge Creditors joined in the USA Dismissal Motion (the "Forge Dismissal Motion") (Doc. No. 88).

19.     On November 25, 2008, Mirabilis and the USA reached an accord and filed a Joint Motion to Approve Compromise of Controversy with respect to the USA Dismissal Motion ("Compromise") (Doc. No. 101).

20.     Under the terms of the compromise, the USA was to acquire personal and real property owned by Mirabilis, but Mirabilis was to retain, among other things, the proceeds and the rights to the lawsuits against various third party professionals relating to their substandard legal and financial advice.

21.     Shortly thereafter, on December 5, 2008, and as a result of the Compromise, Mirabilis filed four (4) simultaneous adversary proceedings against Mirabilis' legal and financial advisors for the negligence in advising Mirabilis concerning the PBS plan.  (Doc. No. 107, Doc. No. 108, Doc. No. 112, Doc. No. 113).

22.    On December 15, 2008, the Forge Creditors filed an Objection to the Compromise, but failed to provide any reason for their objection regarding the same.  (Doc. No. 118).

23.    In February 2009, the Forge Creditors withdrew their Objection to the Compromise and the Court approved the Compromise.

24.    On April 23, 2009, Rachlin also filed a Motion to Dismiss the Bankruptcy Case (the "Rachlin Dismissal Motion") (Doc. No. 183).  The Forge Dismissal Motion and the Rachlin Dismissal Motion raise substantially the same factual and legal arguments.

25.    On August 26, 2009, the Bankruptcy Court, pursuant to Federal Rule of Bankruptcy Procedure 7052, stated orally in open court the findings of fact and conclusions of law denying the Forge Dismissal Motion and the Rachlin Dismissal Motion.

26.    Specifically, the Bankruptcy Court made the following findings of fact and conclusions of law with respect to: (i) the Debtor had the corporate authority to file the Chapter 11 petition; (ii) the Chapter 11 Petition was not filed in "bad faith;" and (iii) the allegations regarding the relationship between Amodeo and the Debtor were not relevant in ruling on the Forge Dismissal Motion and the Rachlin Dismissal Motion.

27.    On September 2, 2009, the Bankruptcy Court entered an order denying the Forge Dismissal Motion and the Rachlin Dismissal Motion ("Order Denying Motions to Dismiss Chapter 11 Bankruptcy Case") (Doc. No. 268).

28.    On September 14, 2009, Rachlin and the Forge Creditors filed Notices of Appeal of the Order Denying Motions to Dismiss Chapter 11 Bankruptcy Case (Doc. No. 283 and 287) and the Motions for Leave.

29.    For the reasons set forth below, the Debtor opposes the Motions for Leave and urges the Court to deny leave to appeal.

## MEMORANDUM OF LAW

30.    Pursuant to 28 U.S.C. §158(a), the district court is granted jurisdiction to hear "… appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to bankruptcy judges under section 157 of this title …"  While neither §158(a) nor the Bankruptcy Rules provide any specific standards for evaluating interlocutory appeals, district courts typically utilize the standards that govern appeals of interlocutory orders from district courts to courts of appeal pursuant to 28 U.S.C. §1292(b).  *Celotex Corp. v. AIU Ins. Co. (In re Celotex Corp.*, 187 B.R. 746, 749 (M.D. Fla. 1995).  As such, the standard adopted for determining whether to grant leave for an interlocutory appeal is: (i) whether the issue involves a controlling issue of law; (ii) whether there is substantial ground for difference of opinion on that issue of law; and (iii) whether an immediate appeal from the order will materially advance the ultimate termination of the litigation.  *Id*.  Leave must be denied if the party seeking leave to appeal fails to establish any one of the three elements.  *Id*.

### I.    CONTROLLING ISSUE OF LAW

31.    An issue is characterized as a controlling question of law if it deals with a question of "pure" law, or deals with matters that can be decided quickly and cleanly without having to study the record.  *McFarlin v. Conseco Servs.*, *LLC*, 381 F. 3d 1251, 1258, 1260-62 (11th Cir. Cir. 2004) (holding that because the issues presented involved the application of the facts to the law, the movant could not prove a "controlling question of law") (quoting *Ahrenholz v. Bd. Of Tr. Of the Univ. of IL*, 219 F 3d 674, 677 (7th Cir. 2000)).

32.     The Rachlin and Forge Creditors' issue of whether the Debtor filed the Chapter

11 Petition in good faith is not one of pure law. *In re Warner*, 94 B.R. 734, 738-39 (M.D. Fla.

1988).  "Whether the good faith requirement has been satisfied is a fact intensive inquiry in

which the court must examine the totality of the circumstances and determine where a petition

falls along the spectrum ranging from the clearly acceptable to the patently abusive." *In re 15375

Memorial Corp.*, 400 B.R. 420, 427 (D. Del. 2009).  In the instant proceeding, the Bankruptcy

Court specifically found that "Mirabilis has a number of creditors in addition to the United States

of America to the tune of many millions of dollars.  This is a case with real creditors, with real

assets and with a collectible book of various types of tangible and intangible property that might

result in a substantial distribution to those creditors." *August 26, 2009 Transcript*, p. 12 ln. 17-

23. The Bankruptcy Court's finding that dismissal of the bankruptcy petition would not be in the

best interests of creditors and the estate was primarily a finding of fact.

33.     In addition, the Bankruptcy Court's finding of fact that the Debtor possessed the

requisite corporate authority to file the chapter 11 petition does not present a "controlling

question of law," but rather depends upon the Bankruptcy Court's interpretation of the Debtor's

organizational documents. *August 26, 2009 Transcript*, pp. 5-7.

34.     Furthermore, the Bankruptcy Court did not consider the factual issues raised by

Rachlin and the Forge Creditors with respect to the alleged relationship between the Debtor and

Amodeo.  Specifically, the Bankruptcy Court found that the allegations had no relevancy to the

Forge Dismissal Motion and the Rachlin Dismissal Motion.  "[T]hat factual issue is not one that

I need to resolve at this juncture because with the appointment of Mr. Cuthill and the actions that

have been taken in the Chapter 11 case, and considering that we are on the cusp of potentially

confirming the plan in less than a month, dismissal will not be the avenue that we will be

pursuing." *August 26, 2009 Transcript*, p. 15, ln. 5-11.

35.    Due to the conjunctive requirements listed in 28 U.S.C. §1292(b), and the absence

of a controlling question of law, the Court should deny interlocutory review.

**II.    SUBSTANTIAL GROUND FOR DIFFERENCE**

36.    To satisfy the second element, whether there is substantial ground for difference

of opinion among courts, Rachlin and the Forge Creditors must show that at least two courts

interpret the relevant principle differently. *Colonial Bank v. Freeman, (In re Pac. Forest Prods.*

*Corp.)*, 335 B.R. 910, 922 (S.D. Fla. 2005). If the jurisdiction where the bankruptcy order was

rendered has decided the issue, a substantial difference of opinion cannot exist. *Id*. If there is no

controlling authority, the district court may consider authority from other circuits. *Id*.

Demonstrating a lack of authority on the legal issue is not sufficient. *Id*.

37.    In the Motions for Leave, Rachlin and the Forge Creditors merely point out a lack

of authority on the narrow legal issue of whether it constitutes "bad faith" for a putative Chapter

11 Debtor to file a petition for relief for the sole purpose of liquidation. Rachlin and the Forge

Creditors intentionally misconstrue the vast majority of courts which hold that liquidation is an

appropriate vehicle under Chapter 11.

38.    Specifically, the Debtor has not been able to locate any appellate court cases

prohibiting liquidation in Chapter 11 proceedings, and the clear weight of authority permits such

liquidation. *See Loop Corp. v. United States Trustee*, 379 F. 3d 511, 517 (8th Cir. 2004). Many

courts have made clear that where debtors are not attempting to preserve going concern, for

example when a liquidation plan will be filed, they can still satisfy the good faith requirement of

11 U.S.C. §1112(b), provided that the filing preserves "some value that otherwise would be lost

outside of bankruptcy." *15375 Memorial Corp.*, 400 B.R. at 427. (quoting *In re Integrated Telecom Express, Inc.*, 384 F. 3d 108, 120 (3d Cir. 2004)). "Reorganization … is not the only appropriate use of Chapter 11 since the Code clearly contemplates liquidating plans under 11 U.S.C. §1123(b)(4)." *Integrated Telecom*, 384 F. 3d at 120; *see also Sandy Ridge Dev. Corp. v. Louisiana Nat'l Bank (In re Sandy Ridge Dev. Corp.)*, 881 F. 2d 1346, 1352 (5th Cir. 1989) ("It is clear … that although Chapter 11 is titled 'Reorganization,' a plan may result in liquidation of the debtor"). Thus, so long as the liquidation plan is maximizing the value of the debtor's estate, it serves a valid bankruptcy purpose and meets the good faith requirement. *Integrated Telecom*, 384 F. 3d at 120.

39.    The weight of authority also permits liquidation under Chapter 11 prior to the acceptance of a Chapter 11 plan of liquidation. *In re WF-DR, Inc.*, 10 B.R. 109 (Bankr. N.D. Ga. 1981); *In re WHET, Inc.*, 12 B.R. 743 (Bankr. D. Mass. 1981); *In re Boogaart of Florida Inc.,* 17 B.R. 480 (Bankr. S.D. Fla. 1981); and *In re AlvesPhoto Service, Inc.* 6 B.R. 690 (Bankr. D. Mass. 1980).

40.    As the requirements listed in 28 U.S.C. §1292(b) are conjunctive, and there is no substantial ground for difference of opinion from the overall weight of authority on this issue, the Court should deny interlocutory review.

### III.    ADVANCE ULTIMATE TERMINATION OF THE LITIGATION

41.    The third requirement for granting leave to appeal is met if resolution of the controlling question of law substantially reduces the amount of litigation left in the case. *McFarlin*, 381 F. 3d at 1259.

42.    In the instant case, an appeal will not advance the ultimate termination of the litigation. Even if this Court were to determine that the bankruptcy case was not properly filed

as a Chapter 11, the Debtor could still convert to a Chapter 7, as Rachlin and the Forge Creditors requested, and the litigation between the parties, as well as the bankruptcy proceedings, would still ensue.  An appeal would only delay in the ultimate outcome of the litigation, it would not terminate the litigation.

43.     The Order Denying Dismissal of Chapter 11 Bankruptcy Case does not involve a controlling question of law, there is no substantial ground for difference of opinion and an immediate appeal would not materially advance the ultimate termination of the litigation.  For these reasons, the Debtor requests the Court deny the Motions for Leave.

**WHEREFORE**, Mirabilis Ventures, Inc. requests that this Court enter an order: (i) denying the Motions for Leave to Appeal Interlocutory Order Denying Motion to Dismiss Chapter 11 Bankruptcy Case  ; and (ii) granting such further relief as this Court deems just and proper.

**DATED** this 28th day of September, 2009.

/s/ R. Scott Shuker
R. Scott Shuker
Florida Bar No. 984469
Mariane L. Dorris
Florida Bar No. 0173665
Latham, Shuker, Eden & Beaudine, LLP
390 N. Orange Avenue, Suite 600
Orlando, FL 32801
Telephone: (407) 481-5800
Facsimile: (407) 481-5801
rshuker@lseblaw.com
mdorris@lseblaw.com
Attorneys for Mirabilis Ventures, Inc.

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:                                                    **CASE NO. 6:08-bk-04327-KSJ**

**MIRABILIS VENTURES, INC.,**                            **CHAPTER 11**

        **Debtor.**

_____/

**Certificate of Service**

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by electronic transmission and/or U.S. First Class mail, postage prepaid, to: Mirabilis Ventures, Inc., c/o R.W. Cuthill, Jr., President, 341 N. Maitland Ave, Suite 210, Maitland, Florida 32751; Joseph A. DeMaria, Tew Cardenas LLP, Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131; Bart R. Valdes, Esq., deBeubien, Knight, Simmons, Mantzaris & Neal, LLP, 609 W. Horatio Street, Tampa, FL 33606; David H. Simmons, Esq., deBeubien, Knight, Simmons, Mantzaris & Neal, LLP , 322 North Magnolia Avenue, P.O. Box 87, Orlando, Florida 32801; the Local Rule 1007-2 Parties in Interest matrix attached hereto; and the United States Trustee, 135 W. Central Blvd., Suite 620, Orlando, FL 32801 on this 28th day of September 2009.

                                     /s/ R. Scott Shuker
                                     R. Scott Shuker, Esq.

Label Matrix for local noticing
113A-6
Case 6:08-bk-04327-KSJ
Middle District of Florida
Orlando
Mon Sep 28 16:16:16 EDT 2009

Advantage Collection Prof
2775 Jade Street
Mora, MN 55051-6240

American Express
2965 West Corporate Lakes Bl
Weston, FL 33331-3626

BNA Tax Management
9435 Key West Ave.
Rockville, MD 20850-3339

Kimberly Bartley
Waldron & Schneider LLP
15150 Middlebrook Drive
Houston, TX 77058-1226

Brandywine Grande C. LP
c/o Cantor Arkema, PC
1111 East Main Street
Richmond, VA 23219-3531

Buchanan Ingersoll & Rodney
401 E Jackson St.
Suite 2500
Tampa, FL 33602-5236

Corporate Personnel Network, Inc
c/o David T. Ward
15615 Alton Pkwy #175
Irvine, CA 92618-7303

Joseph A DeMaria
Tew Cardenas LLP
1441 Brickell Avenue
Suite 1500
Miami, FL 33131-3431

Denise D Dell-Powell
Akerman, Senterfitt
Post Office Box 231
Orlando, FL 32802-0231

Elena L Escamilla
United States Trustee
135 W Central Blvd  Suite 620
Orlando, FL 32801-2440

First Commercial Ins. Corp.
POB 126160
Hialeah, FL 33012-1602

Forge Capital Partners LLC
c/o Bart Valdes
609 W Horatio St
Tampa FL 33606-2272

Frank L. Amodeo
3875 South Orange Ave
Suite 500 -PMB 1810
Orlando, FL 32806

Fred Sandlin
161 Mallard Lane
Daytona Beach, FL 32119-8331

Gill R Geldreich
Tennessee Attorney General's Office
Post Office 20207
Nashville, TN 37202

Gilbert Weisman
c/o Becket and Lee LLP
POB 3001
Malvern PA 19355-0701

I Randall Gold
United States Attorney's Office
501 West Church Street
Suite 300
Orlando, FL 32805-2281

Elizabeth A Green
Latham Shuker Eden & Beaudine LLP
390 North Orange Avenue
Suite 600
Orlando, FL 32801-1684

Horton Johnson
3211 Northglenn Drive
Orlando, FL 32806-6371

Humana/RMS
77 Hartland Street
Suite 401
East Hartford, CT 06108-3253

Jackson Lewis
Attn:Anne Krupman
One North Broadway
White Plains, NY 10601-2310

Jeffrey Reichel
c/o Gary Barnes
3414 Peachtree Rd #1600
Atlanta, GA 30326-1164

Jeffrey Reichel
c/o Jill E. Kelso, Esquire
Akerman Senterfitt
PO Box 231
Orlando FL 32802-0231

Kenneth & Diane Hendricks
One ABC Parkway
Beloit, WI 53511-4466

Gordon L Kiester
Florida Department of Revenue
P O Box 2299
Mango, FL 33550-2299

LeClair Ryan Trust
P.O. Box 2499
Richmond, VA 23218-2499

LexisNexis
P.O. Box 7247-7090
Phildelphia, PA 19170-0001

On Target Solutions
3491 Woodley Park Place
Oviedo, FL 32765-5104

PaySource USA VII, Inc.
650 Poe Ave.
Dayton, OH 45414

Saxon Gilmore, PA
201 E. Kennedy Blvd.
Suite 600
Tampa, FL 33602-5819

R Scott Shuker
Latham Shuker Eden & Beaudine LLP
Post Office Box 3353
Orlando, FL 32802-3353

Tennessee Dept of Labor & Workforce
Dev-Unemployment Ins
c/o TN Atty General Ofc Bankruptcy Div
PO Box 20207
Nashville TN 37202-4015

Tenshi Leasing
2875 S. Orange Ave.
Suite 500 PMB 1810
Orlando, FL 32806-5455

Titanium Technologies
2875 S. Orange Ave.
Suite 500 PMB 1810
Orlando, FL 32806-5455

United States Trustee - ORL
135 W. Central Blvd., Suite 620
Orlando, FL 32801-2440

Bart R Valdes
deBeaubien Knight Simmons Mantzaris Neal
332 North Magnolia Avenue
Orlando, FL 32801-1609

Joseph H Varner III
Holland & Knight, LLP
101 North Tampa Street, Suite 4100
Tampa, FL 33602

David T Ward
15615 Alton Pkwy #175
Irvine, CA 92618-7303

C Brent Wardrop
deBeubien Knight Simmons Mantzaris  Neal
332 North Magnolia Avenue
Orlando, FL 32801-1609

Gilbert Barnett Weisman
Becket & Lee LLP
16 General Warren Blvd
P O Box 3001
Malvern, PA 19355-0701

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)Corporate Personnel Network, Inc
c/o David T. Ward
15615 Alton Pkwy #175
Irvine, CA 92618-7303

(u)John Burcham
undeliverable

(u)Mark J. Bernet
no city
no state

End of Label Matrix
Mailable recipients    40
Bypassed recipients     3
Total                  43