## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

IN RE:

MIRABILIS VENTURES, INC.,
*et al.,*

          Debtor.

_____/

CASE NO. 6:08-bk-04327-KSJ
CASE NO. 6:08-bk-04328-KSJ
CASE NO. 6:08-bk-04681-KSJ

CHAPTER 11

**Confirmation Hearing scheduled for
Friday, October 16, 2009 at 10:00 a.m.**

## MODIFICATIONS TO JOINT AMENDED PLAN OF LIQUIDATION PURSUANT TO 11 U.S.C. § 1125 FOR MIRABILIS VENTURES, INC., HOTH HOLDINGS, LLC, AND AEM, INC.

COUNSEL FOR DEBTORS

R. SCOTT SHUKER, ESQ.
MARIANE DORRIS, ESQ.
LATHAM, SHUKER, EDEN & BEAUDINE, LLP
390 N. ORANGE AVENUE, SUITE 600
ORLANDO, FLORIDA, 32801

OCTOBER 15, 2009

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| IN RE: | **CASE NO. 6:08-bk-04327-KSJ** |
| | **CASE NO. 6:08-bk-04328-KSJ** |
| **MIRABILIS VENTURES, INC.,** | **CASE NO. 6:08-bk-04681-KSJ** |
| *et al.,* | |
| Debtor. | **CHAPTER 11** |
| _____/ | |

## MODIFICATIONS TO JOINT AMENDED PLAN OF LIQUIDATION, PURSUANT TO 11 U.S.C. § 1125, SUBMITTED BY MIRABILIS VENTURES, INC., HOTH HOLDINGS, LLC, AND AEM, INC.

Mirabilis Ventures, Inc. ("Mirabilis"), Hoth Holdings, LLC ("Hoth"), and AEM, Inc. ("AEM")(collectively, "Debtors"), hereby file the below modifications (the "Modifications") to their joint amended plan of liquidation ("Plan"), filed on August 14, 2009 (Doc No. 234), pursuant to Chapter 11 of the Code, 11 U.S.C. § 101, *et seq.* All terms not altered by the Modifications shall remain as set forth in the Plan.

### ARTICLE I. - DEFINITIONS.

For the purpose of the Plan, the following terms will have the meanings set forth below:

Liquidating Agent this defined term is hereby deleted from the Plan. At Confirmation, the Debtors will be Substantively Consolidated into the Liquidating Debtor. The Liquidating Debtor will have one director and three officers (president, secretary, and treasurer). Mr. Cuthill will serve as the initial director and fill each of the officer roles. Any reference to the term Liquidating Agent shall be replaced with the term Liquidating Debtor or, as the case may be, President.

Liquidating Debtors this defined term is hereby deleted and replaced with Liquidating Debtor.

Liquidating Debtor shall mean Mirabilis Ventures, Inc., and both AEM and Hoth shall be deemed Substantively Consolidated into the Liquidating Debtor.

Liquidating Trust Account is hereby deleted.  The President shall be authorized to maintain the existing Mirabilis debtor-in-possession account as a post confirmation operating account (though such will not be labeled as a debtor-in-possession account).

President shall mean the President of Mirabilis.  The initial President shall be Mr. Cuthill who will serve until he resigns or is replaced pursuant to the terms of the Plan.

Stock Trust shall mean the trust established to hold the common shares of the Liquidating Debtor. The Stock Trust will hold no other assets nor receive any income.  The President will be the trustee and the holders of Allowed Class 2 Claims will be the the beneficiaries.

## ARTICLE III – CLASSIFICATION OF CLAIMS AND INTEREST

All Claims and Interests treated under the Plan are divided into the following Classes, which shall be mutually exclusive:

A.     Class 1 Hendricks

Class 1 shall consist of the Allowed Claim of Hendricks.

B.     Class 2 General Unsecured Claims

Class 2 shall consist of Allowed Unsecured Claims in each of the three cases of Debtors.

C.     Class 3 Equity

Class 3 consists of the equity interests in each of the three cases of Debtors.

## ARTICLE V - PRIORITY TAX CLAIMS

In full satisfaction of its Allowed Claims, Holders of Allowed Priority Tax Claims will be paid in full by the Liquidating Debtor.  Debtors believe Allowed Priority Tax Claims will be approximately $140,000.00, consisting of state revenue tax claims. However, the IRS has filed Priority Claims in AEM and Mirabilis which combine to approximately $2,800,000.  Debtors have

objected to such claims but no hearing has been set. Each holder of an Allowed Priority Tax Claims shall receive Cash equal to the amount of such Allowed Claim on the Effective Date in accordance with §1129(a)(9)(C). In the event that there is insufficient Cash upon Effective Date to pay all Allowed Priority Tax Claims, any unpaid portion of such Allowed Priority Tax Claim will be payable in quarterly payments beginning on the later of three (3) months after the Effective Date or after the entry of any respective Final Order allowing such Claims and ending with a final quarterly payment on the last date which occurs before the fifth anniversary of the Petition Date with interest accruing on all unpaid portions of such Allowed Claims at an annual rate equal to the Prime Rate plus two percent (2%). Until the Objection as to the IRS Priority Claims is resolved, the Liquidating Debtor will not make distribution to Holders of Allowed Class 2 Claims until it has fully reserved for the Claimed amount of the IRS Priority Claims.

## **ARTICLE VI - TREATMENT OF IMPAIRED CLASSES**

All Classes of Allowed Claims and Interest are impaired under the Plan. Treatment for these classes shall be as follows:

1.    Determination of Allowed Amounts.

The treatment prescribed for Claims in this Article VI shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of the Allowed Amount of such Claim by agreement or through the entry of a Final Order. Notwithstanding Confirmation of the Plan, the Liquidating Agent, as appropriate, shall have the right to object to any Claim for any reason authorized by applicable bankruptcy and non-bankruptcy law as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other

4

equitable relief.

2.    Class 1 – Hendricks Secured Claim.

Class 1 is impaired. Class 1 consists of the Allowed Secured Claim of Hendricks. In full satisfaction of their Allowed Class 1 Claim, the Claim holder shall receive treatment according to the settlement agreement attached hereto as **Exhibit "1"**.

3.    Class 2 – General Unsecured Claims.

Class 2 is impaired. Class 2 consists of the Allowed Unsecured Claims of the General Unsecured Creditors. Holders of Allowed Class 2 Claims will receive pro rata payments on account of their Allowed Class 2 Claims from the Liquidating Debtor after the Allowed Priority Tax Claims have been paid in full. The proceeds of all Causes of Action and all proceeds from the Promissory Notes will be held in an account of the Liquidating Debtor. The Liquidating Debtor shall make Payments in Cash to the holders of Allowed Class 2 Claims after all Allowed Priority Tax Claims have been paid in full, and at such times as the President, in his sole discretion, deems prudent.

4.    Class 3 - All Equity Interests.

Class 3 is impaired. Class 3 consists of all equitable interests in the Debtors. The Class is impaired under the Plan because on the Effective Date of the Plan all equity interests in the Debtors shall be cancelled. The equity interest in Liquidating Debtor shall be held by the Stock Trust.

5.    Source of Payments.

The greatest proportion possible of all Allowed Class 2 Claims shall be paid by the Liquidating Debtor in Cash derived from Extraordinary Income derived from the sources identified herein. Due to the uncertain timing associated with the recovery of Extraordinary Income, it is not possible to project exactly when such payments will be made or what the aggregate amount of such

repayments will total.

      6.    Term of Payments.

      The Liquidating Debtor shall continue to collect Extraordinary Income for the benefit of the holders of Allowed Class 2 Claims until the Termination Date.

      7.    Timing of Payments.

      Payments to holders of unpaid Allowed Class 2 Claims shall be made from time to time in Cash by the Liquidating Debtor.  There shall not be any fixed payment intervals or payment due dates for such Payments; instead, such Payments shall be made by the Liquidating Debtor when it determines that the amount of all Extraordinary Income recovered less the sum of any Administrative Expenses, Allowed Priority Tax Claims, , and Extraordinary Income Expenses paid (together with those then due) is sufficient to warrant a Payment to Holders of such Allowed Claims and provided further that the Payment will not reduce the balance in the operating account to such an extent as to impair further efforts to recover Extraordinary Income.  However, the Liquidating Debtor agrees to make an initial distribution of $1,000,000 at such time as the balance of the operating account equals $2,000,000.

      8.    Amount of Payments.

      There shall be no schedule of fixed Payments to holders of unpaid Allowed Class 2 Claims; rather, all Payments shall be in an amount determined by the President, in its sole discretion, to be appropriate in light of (i) the current balance of the operating account, (ii) the current and anticipated level of Extraordinary Income Expenses, and (iii) the maintenance of a prudent reserve in the operating account to cover unforeseen circumstances.  All Payments to holders of unpaid Allowed Class 2 Claims shall be made on a *Pro Rata* Share basis based on the respective outstanding Allowed Claim of each holder as of the date of the Payment.

9.    Disputed Claims Reserve.

Any Claim, or portion thereof, which is to be paid in Cash under the Plan and which is challenged, shall be protected by requiring the Liquidating Debtor, as appropriate, to segregate and set aside in an escrow account a reserve sufficient to treat such Claim in the same fashion as though the objection had been overruled. The reserve so segregated shall be distributed in accordance with the provisions of the Plan in the event that the objection is overruled or a dispute is resolved in favor of the claimant. In the event the disputed Claim is disallowed by Final Order of the Court, the retained Cash so segregated shall become Extraordinary Income and shall be distributed in accordance with the provisions of the Plan with the holder of the disallowed Claim being excluded in the amount of the disallowed Claim from participating on a *Pro Rata* Share basis in future payments.

10.    Order of Payments.

As of the Effective Date, all Allowed Administrative Claims and Allowed Priority Tax Claims should be fully satisfied and all Interests shall be extinguished. In the event that any Allowed Priority Tax Claim remains unpaid after the Effective Date, the Liquidating Debtor shall insure that such Allowed Claims are paid prior to making any payments on account of Allowed Class 2 Claims.

11.    Final Payment.

Upon the occurrence of the Termination Date, the Liquidating Debtor shall, as rapidly as practical in light of any ongoing Extraordinary Income recovery activities, distribute all remaining funds in the operating account as provided for herein. In the event that the amount of such Final Payment exceeds the aggregate unpaid balance of all remaining Allowed Claims, then any excess Extraordinary Income above such level shall be divided among all Holders of Allowed Claims on a *pro rata* basis. After making the Final Payment, the President shall close the operating account and

cause the Liquidated Debtor's affairs to be wound-up.

    12.    <u>Unclaimed Payments</u>.

    a.    Except as to any Allowed Claim held by the IRS or the United States, if the holder of an Allowed Claim fails to negotiate a check issued to such holder pursuant to the Plan within ninety (90) days of the relevant Payment Date on which such check was issued, then the Liquidating Debtor shall provide written notice to such holder at the holder's last address as set forth in the Bankruptcy Court's records stating that unless such holder negotiates such check within thirty (30) days of the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such holder's Claim shall no longer be deemed to be Allowed, and such holder shall be deemed to have no further Claim in respect of such check and shall not participate in any further distributions under the Plan.

    b.    If a distribution pursuant to the Plan to any Holder of an Allowed Claim is returned to the Liquidating Debtor due to an incorrect or incomplete address for the holder of such Allowed Claim, and no claim is made to the Liquidating Debtor as to such distribution within one hundred twenty (120) days of the return of such distribution, then the amount of Cash attributable to such distribution shall be deemed to be unclaimed and such holder shall be deemed to have no further Claim in respect of such distribution and shall not participate in any further distributions under the Plan.

    c.    Any unclaimed Cash distribution as described above shall be retained by the Liquidating Debtor for future distribution to the Holders of Allowed Class 2 Claims as provided for herein or for inclusion in the Final Payment described above, as appropriate.

    d.    As to any Allowed Claim held by the IRS or United States, if any check is returned or uncashed for ninety (90) days, the President will notify Ms. Carole Koehler Ide by U.S.

Mail and email.  Thereafter, the President will issue a replacement check and if such check is not negotiated within ninety (90) days, the check will be voided and the respective distribution deemed satisfied.

## ARTICLE VII - TREATMENT OF EQUITY INTERESTS IN THE DEBTORS

Upon the Effective Date or as soon thereafter as practical, all existing equity interests in the Debtors shall be cancelled.  At the same time, the Liquidating Debtor shall take all necessary actions to issue new common stock in the Liquidating Debtor and the ownership of such stock shall vest in the Stock Trust to be held in trust for the benefit of the Holders of Allowed Claims so long as any Extraordinary Income recovery efforts remain ongoing.  Upon the Confirmation Date, the President shall have, full authority to bind the Liquidating Debtor.  Upon the Termination Date or as soon thereafter as practical, the President shall take all necessary actions to insure that the Liquidating Debtor is struck off of the corporate register maintained by the government(s) of the State of Florida and State of Nevada (and any other applicable jurisdictions).  The holders of Class 3 equity interests in the Debtors shall not receive any compensation or Payment on account of such Interests.

## ARTICLE IX - MEANS OF IMPLEMENTATION.

1.    No Continuation of Business Operations.

The Liquidating Debtor's sole business focus shall be the recovery of Extraordinary Income and the repayment of the Holders of Allowed Claims.  Based on the information developed by the Debtors to date, it is likely that the Extraordinary Income recovery process will take several years to complete.  Distributions to Allowed Class 2 Claims are speculative in nature and depend upon the success in litigation and the collection on the Promissory Notes. After the efforts to collect Extraordinary Income have ceased, the affairs of the Liquidating Debtor will be wound-up and the President shall have the Liquidating Debtor struck off as a corporation, international business

company, or other entity in all applicable jurisdictions.

    2.    <u>Corporate Organization</u>.

      As soon after the Effective Date as possible, the President shall take all actions necessary to insure that the Liquidating Debtor continues as a corporation in good standing under all applicable laws including, without limitation, the laws of the State of Florida and Nevada. As of the Effective Date, all currently existing stock in the Debtors shall be cancelled and new stock in the Liquidating Debtor shall be issued. One hundred percent (100%) of the new stock in the Liquidating Debtor shall immediately be transferred to the Stock Trust to be held for the benefit of Holders of Allowed Claims. The Liquidating Debtor shall have a president, secretary, treasurer, and a single director. If Mr. Cuthill ceases to be an officer or director, the Court shall appoint an interim officer and director until a new officer and director is appointed if such an interim appointment is required to keep the Liquidating Debtor in good standing under the laws of the jurisdiction in which it is incorporated or to preserve ongoing Extraordinary Income recovery activities.

      The President shall receive the compensation set forth in Article IX 6(a) herein. The President may request that the terms of his or her employment in that office be summarized in an employment agreement. Irrespective of whether the President requests an employment agreement, the President or Director shall be indemnified by the Liquidating Debtor (in an amount not to exceed the total asset value of the Liquidating Debtor at the time any relevant claim is made) for all acts of the President or the Director which are properly taken in their respective capacities as President or Director of the Liquidating Debtor. Acts which could result in the termination of the President or Director for breach of fiduciary duty, gross negligence, fraud, or material breach of their respective duties as set forth herein (and in any employment agreement which may be entered into) shall not be considered valid grounds for indemnification hereunder. Both the President and the Director shall

have the full powers of a corporate president and of a corporate director, respectively, granted under the applicable laws of the States of Nevada to the extent that such powers are not inconsistent with the provisions of the Plan.

3.    Duties of President and Director.

The duties of the President and Director shall be limited to (1) taking all actions necessary and appropriate hereunder to maximize the recovery of Extraordinary Income and perform alla acts required under the Plan, and (2) taking all actions necessary to maintain the Liquidating Debtor in good standing in its jurisdiction of incorporation until its affairs are wound down as provided for herein.

5.    Litigation, Settlements, and Liquidation of Assets.

a.    Overview. To date, Debtors have identified and sued a variety of entities in an effort to recover Extraordinary Income. In the interest of preserving the maximum value from this potential litigation for the benefit of the Bankruptcy Estates, no further information regarding potential litigation targets or the relevant Causes of Action will be disclosed herein. However, the Liquidating Debtor will provide monthly reports to the IRS and U.S. Attorney as further described in Article IV, 6(5). The Debtors has already filed a number of lawsuits in connection with the Case (see exhibits to the Disclosure Statement).

b.    Causes of Action to be Pursued for the Benefit of the Estate. On the Effective Date, the Liquidating Debtor shall receive, retain, and pursue for the benefit of holders of Allowed Claims, any and all Causes of Action belonging to the Debtors. Any rights to claim any legal privileges previously enjoyed by the Debtors shall also vest in the Liquidating Debtor to be exercised by the President. For purposes of the Plan, the Liquidating Debtor, through its President acting in his or her official, shall be designated as the representative of the Bankruptcy Estates for the retention

and enforcement of any Claim or Interest belonging to the Debtors or the Bankruptcy Estates pursuant to 11 U.S.C. § 1123(b)(3)(B). Any recovery from the Causes of Action will be paid to the holders of Allowed Claims as provided for herein, less the costs of recovering or attempting to recover Extraordinary Income through the Causes of Action and other means.

      c.     <u>Consent to Juridiction</u>  Deleted.

      d.     <u>Promissory Notes</u>.  In addition to, and potentially in connection with, the recovery of Extraordinary Income through litigation and attendant settlements, the Liquidating Debtor will also attempt to generate Extraordinary Income through the collection from proceeds of the Promissory Notes held by the Debtors.  A list of Promissory Notes of the Debtors is set forth in the Disclosure Statement.  The President may make reasonable efforts to sell the Promissory Notes for the benefit of the Allowed Claims.

      e.     <u>Payments to Professionals</u>.  All payments in excess of $5000 to experts or professionals employed by the Liquidating Debtor may be made only after twenty (20) days notice to the IRS, U.S. Attorney, and the United States Trustee.  Irf there is any objection to such fees within the twenty (20) days, such objectionable amount may not be made absent application and Court approval.

    6.     <u>President</u>.

      (a)     Mr. Cuthill shall be the initial President of the Liquidating Debtor.

      (b)     <u>Tenure</u>.  Any President shall continue to serve in that capacity until the earlier of (1) his or her resignation, (2) his or her inability or failure to perform the duties of President for a period of thirty (30) consecutive days or more, (3) his or her death, or (4) the Termination Date. The mechanics for the removal or replacement of a President shall be as provided for herein.

(c)    Tax Treatment    The Debtor and Liquidating Debtor agree that the compensation for Mr. Cuthill, both pre and post confirmation, shall be treated as employee compensation pursuant to 26 U.S.C. §3121(d)(1). The Liquidating Debtor and Debtors shall have sixty (60) days following Confirmation to prepare and file appropriate tax returns and to have the Liquidating Debtor to pay the required payroll tax. Mr. Cuthill will reimburse the Liquidating Debtor for any refunds he receives related to payroll taxes he previously paid for his services to Debtors.

(d)    Compensation.

(i)    Overview. As of the date of his or her appointment pursuant to the Plan, any President shall be entitled to compensation only as provided for herein.

(ii)    Base Hourly Rate. The President shall be entitled to a base hourly rate of compensation equal to his or her standard hourly rate of compensation for similar services, if such a rate exists, or $250 per hour, whichever is higher, or such other rate as may be agreed upon by the President, for all hours actually worked. For his service as President, R.W. Cuthill, Jr. has agreed to his standard hourly rate for professional services of four hundred dollars ($400.00) per hour. Such compensation shall only be payable twenty (20) days notice to the IRS, U.S. Attorney, and United States Trustee and only if no objection is made. The President shall seek payment of hourly compensation on a monthly basis and no monthly fees shall accrue from month to month except for any month in which the Liquidating Debtor is not able to meet its current expenses. Notice shall be given to the IRS, U.S. Attorney, and the United States Trustee. If an objection is made within twenty (20) days, no objectionable amount shall be paid absent application and Court approval.

(e)    Reimbursement of Costs. The President shall be entitled to reimbursement from the Liquidating Debtor on a monthly basis of all reasonable out-of-pocket

13

expenses incurred for the benefit of the Liquidating Debtor. All requests for reimbursement shall

only be payable after the IRS, U.S. Attorney, and the United States Trustee have received notice that

compensation has been sought and have had at least twenty (20) days to object to the expenses

sought. In the event that any party objects to such expenses being paid, the President shall file an

expense application with the Court and no objectionable payments shall be made until approved by

the Court at a properly noticed hearing.

(f)    Excess Recovery Payment. The President shall be entitled to

compensation based upon the amount of Extraordinary Income recovered by that Liquidating Agent

after the Effective Date for the benefit of the Bankruptcy Estate (the "Excess Recovery Payments")

calculated based upon the percentages set forth in Code § 326(a). All hourly funds paid to the

President other than Excess Recovery Payments in connection with the Case through the date of

distributing such an Excess Recovery Payment shall be deducted from any entitlement to Excess

Recovery Payments which such President may have; however, if the hourly amounts previously paid

exceed what would otherwise be due under the Excess Recovery Payment calculation, such excess

will not be disgorged or returned by the President.

(g)    Duties. The President shall be responsible for the following:

(i)    The implementation of all strategies for the recovery of

Extraordinary Income and the handling of the day-to-day management of any litigation or other

activity commenced for that purpose including, without limitation, the negotiations of any

settlements in connection with such litigation.

(ii)    The retention and payment of such Professionals as may be

required to implement such asset recovery strategies.

(iii)    The orderly and efficient completion of the claims objection

process.

(iv)    Acting as the President as provided for herein and in accordance with the applicable laws of Florida and Nevada.

(v)    Acting as the Director as provided for herein and in accordance with the applicable laws of Florida and Nevada.

(vi)    Providing the Court and all creditors with all information it may request regarding Extraordinary Income recovery efforts, the fees or expenses incurred by the President or any Professionals or others retained by the Liquidating Debtor, any disbursement of funds held for the benefit of Debtors' Creditors with Allowed Claims which exceed five thousand dollars ($5,000.00), and the status of the operating account. The President shall provide the IRS and U.S. Attorney with monthly written litigation summaries which shall set forth the status of all litigation, the fees and expenses expended in connection with each piece of litigation, the anticipated recovery to be generated by each piece of litigation, and a calendar of future events in each piece of litigation.

(vii)    Negotiating settlements. The President shall have authority to negotiate settlements for any litigation or other action pertaining to the recovery of Extraordinary Income. The Liquidating Debtor shall provide the IRS and U.S. Attorney at least thirty (30) days notice of any proposed settlement and seek Court approval of such settlement with additional notice to the United States Trustee and the 1007-2 creditor list. However, if the IRS and U.S. Attorney agree in writing to the settlement, the Liquidating Debtor may consummate such settlement immediately without additional notice or Court approval.

(viii)    As noted above, the President shall provide monthly reports to the IRS and U.S. Attorney and provide at least thirty (30) days prior notice of any settlement.

15

Additionally, the President will participate in phone conferences to provide oral updates at any time upon the request of the IRS or U.S. Attorney provided that the President receives at least ten (10) days notice of such meeting request and is not otherwise on a pre-planned vacation.

7.     <u>Miscellaneous</u>.

(a)     <u>Discharge and Release</u>.  Since the Debtors' business has not continued after the Petition Date and the sole goal of the Plan is to generate the maximum amount of Extraordinary Income possible for the benefit of the Holders of Allowed Claims, the Plan does not provide for the discharge of any claims or liabilities.

(b)     <u>Transfers of Claims</u>.  In the event that the holder of any Claim shall transfer such Claim on or after the Effective Date, it shall immediately advise the Liquidating Debtor in writing of such transfer.  The Liquidating Debtor shall be entitled to assume that no transfer of any Claim has been made by any holder unless and until the Liquidating Debtor shall have received written notice to the contrary.  Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Liquidating Debtor shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Plan.

(c)     <u>Term of Injunction or Stays</u>.  Unless otherwise provided in the Confirmation Order, all injunction or stays provided for Chapter 11 cases pursuant to sections 105 or 362 of the Code or previously imposed in this case by the Court or otherwise in existence on the Confirmation Date shall remain in full force and effect until the entry of a final decree or an order dismissing this case.

(d)     <u>Retention of Jurisdiction</u>.  The Court shall retain, and shall exercise,

jurisdiction in this proceeding (i) to adjudicate the validity of all Claims which have not been disposed of prior to the entry of the Confirmation Order; (ii) to make final determinations with respect to any Causes of Action belonging to the Debtor or the Liquidating Debtor; (iii) to consider any applications for professional fees or reimbursement of expenses pursuant to the provisions of this Plan; (iv) to consider and resolve any issues arising under the Plan in connection with the termination or replacement of the President or Director; (v) to consider and resolve any disputes pertaining to settlements or disbursements by the President arising under the Plan; and (vi) to consider and rule on any other matters which may affect the Estates, the Liquidating Debtor, or the consummation of this Plan. This general reservation of jurisdiction shall include, without limitation, the following specific items:

(e)     Jurisdiction. Until this case is closed through the entry of a final decree, the Court shall retain jurisdiction pursuant to Rule 3020(d) to ensure that the provisions and the intent of the Plan are carried out. The Court shall also retain jurisdiction to hear and determine all claims against the Debtor; to hear, determine, and enforce all Causes of Action arising in, arising under, or related to this Case and which may exist on behalf of the Debtors, or the Liquidating Debtor; to hear and resolve all objections to the fees or expenses of Professionals or others as provided for in the Plan; and to confirm, after proper notice and hearing, any proposed sale of assets (although after the Effective Date no such sale of assets would require Bankruptcy Court approval). Nothing contained herein shall prevent the Debtors or the Liquidating Debtor from taking such action as may be necessary in the prosecution of any cause of action which may exist on its or on the Debtors' behalf and nothing contained herein shall prevent any creditor from enforcing any claim it may have against third parties who may be liable as a result of the Debtors' obligation to such creditor except as specifically provided for herein.

(f)    <u>Causes of Action</u>.  Notwithstanding the vesting of assets in the Liquidating Debtor (under the control of the President) upon the confirmation and consummation of the Plan, all rights and standing to assert Causes of Action together with any other rights to commence litigation which may exist on behalf of the Debtors which accrued and were asserted or capable of assertion by the Debtors as a debtors-in-possession as of the Petition Date shall vest in the Liquidated Debtors to be exercised by the President.  Additionally, the Liquidating Debtor shall have the sole and exclusive right to commence, pursue, settle, compromise, abandon, waive, or release any claim or cause of action which may exist on behalf of the Debtor which accrued and was asserted or capable of being asserted by the Debtors as a debtors-in-possession as of the Petition Date or at any time thereafter.

(g)    <u>Settlements</u>.  Subject to the notice provisions infra, the President shall have the power and authority to settle all litigation or threatened litigation pertaining to the Causes of Action.  Through the confirmation of this Plan, all such settlements shall be deemed to be binding upon all holders of Allowed Claims as a complete and final settlement of all matters giving rise to or otherwise pertaining to such Claims.  As provided for above, the Liquidating Debtor may file a motion seeking Court approval of any settlement which the IRS or U.S. Attorney has not approved in writing.

(h)    <u>Employment Contract</u>.  In connection with his or her service as the sole officer of the Liquidating Debtor, the Liquidating Agent shall be provided with an employment contract the terms of which shall be consistent with this Plan.  In the event of any discrepancy between such employment contract and the Plan, the Plan shall control.

(i)    <u>Specific Retention of Powers</u>.  In addition to the general provisions set forth above, the Court shall retain sole jurisdiction of this Case pursuant to the provisions of Chapter 11 of the Code for the following purposes, among others:

(1)     to classify, allow, or disallow Claims and Interests, to direct distributions of funds under the Plan, and to hear and resolve any controversies pertaining thereto;

(2)     to hear and determine any and all applications, adversary proceedings, or other matters arising out of or related to the Plan;

(3)     to enter and implement such orders as may be appropriate in the event that the Confirmation Order is reversed, stayed, revoked, or vacated for any reason;

(4)     to liquidate or estimate the amount of any Claim, or to determine the manner and time for such liquidation or estimation, in connection with any contingent or unliquidated Claim;

(5)     to adjudicate all disputes with respect to Claims or any Liens on any property of the Debtors or proceeds from the sale or other disposition thereof;

(6)     to adjudicate all claims or controversies arising in connection with this Case or the Debtors' estates to the extent provided for herein prior to the entry of a final decree in this case;

(7)     to recover all assets and properties of the Debtors, wherever located, including recoveries on all claims and Causes of Action brought by the Debtors prior to the Effective Date or which could have been brought by the Debtors or the Liquidating Debtor prior to or subsequent to the Effective Date which are not released, settled or otherwise compromised by the terms of this Plan;

(8)     to hear and determine matters covering federal, state, and local taxes pursuant to Sections 346, 1146, 505, and 525 of the Code;

(9)     to allow fees and the reimbursement of expenses of professional persons employed during this case or any other person or entity applying for compensation for

services rendered prior to the Effective Date and to resolve any disputes pertaining to the payment of professional fees for services rendered after the Effective Date as provided for herein;

(10)    to construe or enforce the Plan so as to effectuate payments thereunder or to compel performance by any person reasonably necessary to implement the terms and intent of this Plan;

(11)    to make and enforce such orders as are necessary or appropriate to carry out the provisions and intent of this Plan;

(12)    to enter such orders as may be necessary and proper for the orderly administration of the Debtors and Liquidating Debtor affairs; and

(13)    to decide such other matters as may be provided for in the Confirmation Order including, without limitation, matters related to the recovery of Extraordinary Income.

(j)    Consent to Jurisdiction. By accepting any distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by voting on the Plan, or by entering an appearance in the Case (except appearance to defend a Cause of Action), all Creditors and other parties in interest, including foreign Creditors and foreign parties in interest, have consented, and shall be deemed to have expressly consented, to the jurisdiction of the Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Plan or the Case. The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in the jurisdictional provisions of this Plan.

8.    Section 1146 Exemption. Pursuant to Section 1146(c) of the Code, the making or delivery of any instrument of transfer pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or the revesting, transfer or sale of any real or personal Property

(including the Real Property) of, by or in the Debtors or the Liquidating Debtor pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.

9.    <u>Corporate Actions</u>.  All matters provided for under the Plan involving the corporate structure of the Debtors or the Liquidating Debtor, or any corporate action to be taken by or required of the Debtors or the Liquidating Debtor or the President, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by any entity.

10.    <u>Successors and Assigns</u>.  The rights, benefits, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

11.    <u>No Liability for Certain Tax Claims</u>.  Unless a taxing governmental authority has asserted a Claim against the Debtors before the Bar Date or Administrative Claims Bar Date established therefore, no Claim of such governmental authority shall be Allowed against the Debtors or Liquidated Debtors for taxes, penalties, interest, additions to tax or other charges arising out of the failure, if any, of the Debtors, any of its Affiliates, or any other Person or entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period, or arising out of an audit of any return for a period, before the Petition Date.

12.    <u>Conditions Precedent to Occurrence of Effective Date</u>.  The Effective Date shall not occur until each of the following conditions has been satisfied, waived by the Liquidating Debtor, or deemed to have been satisfied by the Court:

a.    The entry of the Confirmation Order by the Court and all other necessary Orders of any court having jurisdiction for confirmation of the Plan.

b.      The President has been selected.

c.      The expiration of the appeal period with respect to the Confirmation Order and with respect to all other Orders necessary for the implementation of the Plan, provided that, if an appeal of the Confirmation Order or any other such Order is filed but no stay is granted in connection with such an appeal, the Liquidating Debtor may elect to permit the Effective Date to occur notwithstanding the pendency of the appeal.

13.    Provisions for Impaired Creditors not accepting the Plan / Cramdown.    The Proponents reserve the right to seek confirmation of the Plan pursuant to Section 1129(b) of the Code, notwithstanding the failure of any impaired Class to accept this Plan.  With respect to any Class of creditors which is composed of Impaired Claims that does not accept this Plan by the requisite majority in number of members and two-thirds (2/3) in dollar amount of those casting ballots, adequate protection for the realization by them of the value of their claim shall be provided in the Confirmation Order by such method as will, in the opinion of the Court and consistent with the circumstances of the case, fairly and equitably provide such protection in accordance with the applicable provisions of the Code.

14.    Provisions for Amendment of Plan.  The Debtors may seek to amend or modify this Plan in accordance with § 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such a manner as may be necessary to carry out the purpose and intent of this Plan.

15.    Further Assurances.  The President, as appropriate, is authorized to execute and deliver any and all papers, documents, contracts, agreements and instruments which may be necessary to carry out and implement the terms and conditions of the Plan.

16.    Exculpation.  Mr. Cuthill, as President of the Debtors and as President of Liquidating

Debtor, and any respective members, employees, advisors, attorneys, accountants, consultants, other professionals employed by Debtors or Liquidating Debtor, or agents thereof shall not have or incur any liability for or to any holder of a Claim or Interest for any act or omission in connection with, or arising out of, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan except in the case of willful misconduct or gross negligence. Mr. Cuthill shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

17.    Barton Doctrine. Deleted.

18.    Notices. Any notice required to be provided to parties in interest under the Code or Rules or pursuant to the Plan shall be in writing, addressed to the appropriate party, and served by (a) regular mail, postage prepaid, (b) hand delivery, or (c) overnight courier service. Correct copies of any such notice shall be also be sent the Liquidating Agent, as appropriate. The following are correct mailing addresses for certain parties in interest although such addresses are subject to change from time to time; the Liquidating Agent, as appropriate, shall retain an up to date list of addresses for, at a minimum, the following entities:

President
c/o R.W. Cuthill, Jr.
341 N. Maitland Ave., Ste. 210
Maitland, FL 32751

With a copy to:

R. Scott Shuker, Esquire
Latham, Shuker, Eden & Beaudine, LLP
390 N. Orange Avenue, Suite 600
Orlando, FL   32801

United States Trustee:
135 West Central Blvd, Suite 620
Orlando, Florida 32801

19.  <u>Headings</u>. Article, section, and paragraph headings have been used herein for ease of reference only and shall not affect the interpretation or the construction of any provision of this Plan.

20.  <u>Governing Law</u>. Except to the extent that federal law (including the Code or the Rules) is applicable, or where the Plan or the provision of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

21.  <u>Entire Agreement</u>.  The Plan and the Disclosure Statement set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions and documents.  No Person shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

**DATED** this 15th day of October 2009.

/s/ R. Scott Shuker, Esq.
R. Scott Shuker, Esq.
Florida Bar No. 984469
**LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
390 N. Orange Avenue, Suite 600
Orlando, Florida  32801
Telephone: (407) 481-5800
Facsimile: (407) 481-5801
Attorneys for Debtors

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE:                                CASE NO. 6:08-bk-04327-KSJ
                                      CASE NO. 6:08-bk-04328-KSJ
MIRABILIS VENTURES, INC.,             CASE NO. 6:08-bk-04681-KSJ
et al.,
                    Debtor.           CHAPTER 11
_____/


**Certificate of Service**

    **I HEREBY CERTIFY** that a true copy of this **MODIFICATIONS TO JOINT AMENDED PLAN OF LIQUIDATION**, has been furnished by either electronic transmission and/or U.S. mail, postage-paid, to: Mirabilis Ventures, Inc., c/o R.W. Cuthill, Jr., President, 341 N. Maitland Ave, Suite 210, Maitland, Florida 32751; the 1007-2 Parties-in-Interest list, as shown on the attached matrix to the original filed with the Court; and the U.S. Trustee, 135 West Central Boulevard, Suite 620, Orlando, Florida 32801, this 15th day of October 2009.


                             /s/ R. Scott Shuker_____
                             R. Scott Shuker, Esquire

### UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

In re:                                    **CASE NO. 6:08-bk-04327-KSJ**

**MIRABILIS VENTURES, INC.,**             **CHAPTER 11**

                **Debtor.**

_____/

### SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Settlement Agreement"), is made and entered into this 30th day of September 2009, by and between Mirabilis Ventures, Inc. ("Mirabilis" or "Debtor") and Diane Hendricks, individually and as Trustee of the Kenneth & Diane Hendricks Irrevocable Trust ("Hendricks").

### WITNESSETH:

(A)    On April 16, 2007, Hendricks filed a complaint against Mirabilis and various other parties for breach of several agreements, in the case styled *Hendricks v. Mirabilis*, Case No. 8:07-cv-661-T-17EAJ (case reassigned on August 11, 2009 as Case No. 8:07-cv-661-T-33AEP), pending in the U.S. District Court in Tampa (the "Federal Case"). On November 7, 2007, Mirabilis filed its Amended Answer, asserting counterclaims against Hendricks. On August 11, 2008, Hendricks also filed a complaint against Mirabilis and various other parties in the case styled *Hendricks v. Mirabilis*, Case No. 2008-CA-2002, pending in state court in Orange County, Florida (the "State Case").

(B)    On April 22, 2009, Hendricks filed her amended proof of claim in Mirabilis Ventures, Inc. (Claim No. 20-2). In the Hendricks' claim, Hendricks alleges that she is owed $2,802,075.25 from Mirabilis based on a note between Mirabilis and Hendricks ("Note") and that the Note is fully secured by the following "collateral": (1) a Presidion Solutions, Inc. promissory note and its related assets; (2) assignment of rents relating to the lawsuit and judgment against William Leyton and Strategic Capital Investments, LLC, in the lawsuit captioned *Kenneth A. Hendricks and Diane M. Hendricks v. Strategic Capital Investments, LLC, William J. Leyton, et al.*, Case No. CV04-9639-SVW, in the United States District Court, Central District of California, Western Division; and (3) all proceeds from the aforementioned collateral (collectively, the "Collateral").

(C)    Debtor and Hendricks have been attempting to reach a consensual resolution of the disputes related to the Note and Collateral. Debtor and Hendricks are

EXHIBIT 1

executing this Settlement Agreement to settle all issues arising from the Note, Collateral and the State and Federal Cases.

**NOW THEREFORE**, in consideration of the foregoing recitals and the mutual promises contained herein, together with the Assurance of Further Cooperation (as those terms are defined herein below), the receipt and sufficiency of each of which is hereby acknowledged by each party hereto, the parties hereby agree as follows:

(1)    **Allowance of Claim**. Mirabilis will allow one (1) claim by Hendricks against all of the Debtors addressed in the Joint Plan of Liquidation (the "Plan"), filed with this Court June 1, 2009, which addresses the following entities: Mirabilis (6:08-bk-04327), Hoth Holdings, LLC (6:08-bk-04328) ("Hoth") and AEM, Inc. (6:08-bk-04681) (collectively, the "Bankruptcy Cases"), for a total amount of $2,887,997.28 (the "Claim"). The Claim will be a single unsecured claim.

(2)    **Dismissal of Federal and State Court Claims**. Mirabilis and Hendricks will enter into a dismissal with prejudice of all claims between them in the State Case and the Federal Case, as described above in Paragraph (B).

(3)    **Reclassification of Bankruptcy Claim**. Hendricks will agree that it will share pro rata in any distribution to unsecured creditors and receive the same treatment as such creditors, all as set forth in the Plan.

(4)    **Agreement to Vote for Plan**. The Claim will share pro rata in any distribution to unsecured creditors and receive the same treatment as such creditors, all as set forth in the Plan. Hendricks agrees to vote her/its Class 1 Claim in favor of the Plan.

(5)    **Assurance of Further Cooperation**. As additional consideration for obligations owed by Hendricks with respect to the Bankruptcy Cases, Hendricks promises to continually cooperate with Debtor and its attorneys as may be reasonably required in all contested matters now pending or arising from the Bankruptcy Cases. The representatives of Hendricks shall cooperate by serving as both a formal and informal witness, without service of a subpoena, and further agree to cooperate in good faith with Debtor and its attorneys, in the prosecution of any contested matters now pending or arising from the Bankruptcy Cases, to the extent consistent with Hendricks' duties to any other parties. Notwithstanding the foregoing, Debtor shall bear all reasonable expenses for travel and/or other out-of-pocket expenses incurred by Hendricks while serving as an informal or formal witness.

(6)    **Representations and Warranties**. Each of the parties to the Settlement Agreement hereby represents and warrants to the other party that each such warranting party is the sole and exclusive owner of all claims released or compromised by each such warranting party herein, has not assigned the same or any part thereof to any other person, and will indemnify the beneficiaries of such warranties against, and hold such beneficiaries harmless from, any and all liabilities, costs, damages, claims, and expenses, including, without limitation, reasonable attorneys' fees and court costs, incurred by such beneficiaries, in connection with any

EXHIBIT 1

breach by each such warranting party of any representation, warranty, or covenant of each such warranting party contained in the Settlement Agreement.

(7) **Mutual Release**. Debtor and its affiliates, agents, successors, and assigns, or any one claiming under Debtor, and Hendricks and her/its affiliates, directors, agents, successors, and assigns, or anyone claiming under Hendricks, do hereby release, remise and forever discharge the other from any and all claims, demands, actions, causes of action, rights of action, debts, covenants, contracts, agreements, representations, judgments, executions, costs, expenses, obligations, or liabilities of any nature whatsoever, known or unknown, at law or in equity or by statute, that any of them now have or that may subsequently accrue to any one of them that are based upon, arise out of, or in any way relate to Mirabilis, specifically excluding that Proof of Claim referenced in Paragraph 1 hereinabove. This Settlement Agreement, including this mutual release, shall not in any way release, impair, reduce or otherwise affect any complaints, or claims objections whether now pending or hereafter filed, by Debtor against any person or entity other than Hendricks.

(8) **Miscellaneous**.

(a) <u>Governing Law; Jurisdiction</u>. The Settlement Agreement is to be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving affect to the principles of comity or conflicts of laws thereof. In the event any litigation or other formal legal or equitable proceeding (collectively, "Litigation") between or among any of the parties hereto (or their affiliates, heirs, officers, directors, agents, successors, or assigns) is instituted in connection with the construction, interpretation, or enforcement of the Settlement Agreement, the party commencing such Litigation shall be required to institute the same in Bankruptcy Court, or if jurisdiction cannot be found in the Bankruptcy Court, then in the federal or state courts with jurisdiction in Orange County, Florida. Each party hereto hereby consents to the exclusive personal jurisdiction and venue of the Bankruptcy Court, or where appropriate, to the federal and state courts with jurisdiction in Orange County, Florida, for a resolution of all disputes arising out of the construction, interpretation, or enforcement of any term or provision of the Settlement Agreement, and each party hereby waives the claim or defense that any such court in which any such Litigation is properly commenced as provided for herein constitutes an inconvenient forum.

(b) <u>Effect of Delay and Waivers</u>. No delay or omission to exercise any right or power accruing prior to or upon any breach, omission, or failure of performance hereunder shall impair any such right or power, or shall be construed to be a waiver thereof, and any such right or power may be exercised from time to time and as often as may be deemed expedient. In the event of any breach of any provision contained in the Settlement Agreement and/or ancillary agreements otherwise referred to herein, by a party hereto, thereafter waived by another party, such waiver shall be limited to the particular waiving party and to the particular breach in question and no other. No waiver or release of any term or provision of the Settlement Agreement shall be established by conduct, custom, or course of dealing, but solely by a document in writing duly authorized and executed by the waiving or releasing party.

EXHIBIT 1

(c)    Notices.  Whenever any party hereto desires or is required to provide any notice, demand, or request with respect to the Settlement Agreement, each such communication shall be in writing and shall be effective only if it is delivered by personal service (which shall include delivery by delivery service, express mail delivery service, telecopy or telefax) or mailed, by United States certified mail, postage prepaid, and addressed as follows:

If to Debtor:          R. Scott Shuker, Esq.
                       Latham, Shuker, Eden & Beaudine, LLP
                       390 N. Orange Avenue, Suite 600
                       Orlando, Florida 32801
                       Attorney for Mirabilis Ventures, Inc.

If to Hendricks:       Charles A. Carlson, Esq.
                       Barnett, Bolt, Kirkwood, Long & McBride, P.A.
                       601 Bayshore Boulevard, Suite 700
                       Tampa, Florida  33606
                       Attorney for Diane Hendricks, Individually and as
                       Trustee of the Kenneth A. & Diane M. Hendricks ITA

Such communications, when personally delivered, shall be effective upon receipt, but, if sent by certified mail in the manner set forth above, shall be effective three (3) business days following deposit in the United States mail.  Any party may change its address for such communications by giving notice thereof to the other parties in accordance with the requirements of this section.

(d)    Survival of Representations and Warranties, Etc.  All representations, warranties, covenants, agreements, obligations, and duties of the respective parties hereto contained herein or provided for in the Settlement Agreement or any agreement to be prepared under the terms of said Settlement Agreement shall survive the execution, delivery, and performance of the Settlement Agreement and the mutual release contained herein.

(e)    Time of the Essence.  Time is of the essence in the performance of the Settlement Agreement by each party.

(f)    Severability.  If any provision of the Settlement Agreement is ultimately determined to be invalid or unenforceable, such provision shall be deemed limited by construction in scope and effect to the minimum extent necessary to render the same valid and enforceable, and, in the event no such limiting construction is possible, such invalid or unenforceable provision shall be deemed severed from the Settlement Agreement without affecting the validity of any other provision hereof.

(g)    Entire Agreement.  The Settlement Agreement and all other documents executed and delivered by the parties hereto to consummate the transactions contemplated herein, constitute the entire understanding and agreement of the parties hereto with respect to the subject matter thereof, and supersede all prior written and contemporaneous oral agreements, understandings, inducements, and conditions, express or implied, among the parties with respect

EXHIBIT 1

thereto. The express terms of the Settlement Agreement control and supersede any course of performance or usage of trade inconsistent with any of the terms hereof.

   (h)   Counterparts. The Settlement Agreement may be executed in any number of counterparts, each of which shall be an original as against any party whose signature appears thereon, and all of which together shall constitute one and the same agreement.

   (i)   Construction of Agreement.   The Settlement Agreement has been negotiated by the respective parties hereto, and the language hereof shall not be construed for or against any party.  The titles and headings herein are for convenience and reference only, and shall not in any manner limit the construction of the Settlement Agreement which shall be considered as a whole.  All additions or deletions of provisions from and all drafts of the Settlement Agreement shall be of no force or effect in interpreting the terms of the Settlement Agreement or the intentions of the parties hereto.

   (j)   Settlement Purposes Only.   The Settlement Agreement represents a negotiated settlement of a dispute and, as such, in the event the Settlement Agreement does not become binding upon the parties hereto, contents of the Settlement Agreement and the results obtained thereby shall, except as to any litigation seeking to enforce the Settlement Agreement, be of no force and effect and shall have no evidentiary value in any future litigation on any of the subjects or events described herein.

   (k)   Approval of Bankruptcy Court.  This Agreement is subject to the approval of the Bankruptcy Court for the Middle District of Florida, Orlando Division.

   **IN WITNESS WHEREOF**, the parties hereto have duly executed the Settlement Agreement as of and effective the date first written above.

**DIANE M. HENDRICKS, individually**
**and as Trustee of the KENNETH A. &**
**DIANE M. HENDRICKS ITA**

_[signature]_

MIRABILIS VENTURES, INC.


_____
R.W. Cuthill, Jr., Authorized Agent
of Mirabilis Ventures, Inc.

EXHIBIT 1

thereto.  The express terms of the Settlement Agreement control and supersede any course of performance or usage of trade inconsistent with any of the terms hereof.

   (h) <u>Counterparts</u>.  The Settlement Agreement may be executed in any number of counterparts, each of which shall be an original as against any party whose signature appears thereon, and all of which together shall constitute one and the same agreement.

   (i) <u>Construction of Agreement</u>.  The Settlement Agreement has been negotiated by the respective parties hereto, and the language hereof shall not be construed for or against any party.  The titles and headings herein are for convenience and reference only, and shall not in any manner limit the construction of the Settlement Agreement which shall be considered as a whole.  All additions or deletions of provisions from and all drafts of the Settlement Agreement shall be of no force or effect in interpreting the terms of the Settlement Agreement or the intentions of the parties hereto.

   (j) <u>Settlement Purposes Only</u>.  The Settlement Agreement represents a negotiated settlement of a dispute and, as such, in the event the Settlement Agreement does not become binding upon the parties hereto, contents of the Settlement Agreement and the results obtained thereby shall, except as to any litigation seeking to enforce the Settlement Agreement, be of no force and effect and shall have no evidentiary value in any future litigation on any of the subjects or events described herein.

   (k) <u>Approval of Bankruptcy Court</u>.  This Agreement is subject to the approval of the Bankruptcy Court for the Middle District of Florida, Orlando Division.

  **IN WITNESS WHEREOF**, the parties hereto have duly executed the Settlement Agreement as of and effective the date first written above.

**DIANE M. HENDRICKS, individually**
**and as Trustee of the KENNETH A. &**
**DIANE M. HENDRICKS ITA**

            **MIRABILIS VENTURES, INC.**

_____

            _____
            R.W. Cuthill, Jr., Authorized Agent
            of Mirabilis Ventures, Inc.

EXHIBIT 1