UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:
:
:
MIRABILIS VENTURES, INC.  :  Case No. 6:08-bk-04327-KSJ
:
:
_____/

**FORGE, ARGENT BD, AND ATLANTIC AMERICAN'S RESPONSE TO OBJECTION TO ALLOWANCE OF CLAIMS AND REQUEST FOR HEARING**

Creditors, FORGE CAPITAL PARTNERS, LLC f/k/a MORECO PARTNERS, LLC, ARGENT CAPITAL ADVISORS, LLC f/k/a ATLANTIC AMERICAN CAPITAL ADVISORS, LLC, ATLANTIC AMERICAN CAPITAL GROUP, LLC, ARGENT BD, LLC, ARGENT BD TRANSITION, LLC, ROBERT MOREYRA, PETER COLLINS, BISON MORTGAGE CORP., and SOLUTIONS FUNDING, INC., (hereinafter "Forge and Affiliated Creditors"), by and through their undersigned attorneys, and pursuant to Local Rule 2002-4, and the *Federal Rules of Bankruptcy Procedure*, hereby provide their Response to the "Objection to Allowance of Claim No. 21 Submitted by Forge Capital Partners, LLC," "Objection to Allowance of Claim No. 22 Submitted by Argent, BD, LLC," and "Objection to Allowance of Claim No. 23 Submitted by Atlantic American Capital Group, LLC," (and any other claims of the above stated Affiliated Creditors that were objected to by the Debtor), and give notice that they request a hearing on such Objections and Claims and state as follows:

**BACKGROUND FACTS**

The Debtor's reputation as a tool for the crimes and frauds of Frank Amodeo is well established. Before any bankruptcy filing had occurred, Mirabilis and its officers operated under a cloud of suspicion. On April 25, 2008, the United States of America filed a forfeiture action

1

(U.S.A. v. Real Property, Case Number 6:08-cv-00670-ACC-KRS, United States District Court for the Middle District of Florida) seeking the seizure of all of Mirabilis's assets, including its claims and properties to be accrued in this bankruptcy case. In the civil forfeiture action, the United States government alleged that Frank Amodeo, the controlling principal of Mirabilis, perpetrated a massive fraud whereby he used Mirabilis and its wholly owned subsidiaries to steal payroll taxes and then purchase properties and businesses around the country for his own enrichment.

After a several year investigation, the United States of America brought a criminal action against Frank Amodeo on August 6, 2008 (U.S.A. v. Amodeo, Case Number 6:08-cr-176-Orl-28GJK, United States District Court for the Middle District of Florida). On September 23, 2008, Mr. Amodeo pled guilty to five felonies (including conspiracy, failure to collect and remit payroll taxes, and obstruction of justice) arising out of his massive fraud on the IRS. Mr. Amodeo admitted through his plea agreement that he controlled various companies (including Mirabilis) for the fraudulent and illegal purpose of conspiring to "divert payroll tax funds. . .and utilize those funds for other purposes." Mr. Amodeo admitted that he used the illegally diverted payroll taxes to fund the operations of Mirabilis (which in turn, funded the operations of its subsidiaries including Hoth Holdings, Winpar, and AEM, Inc.). In fact, Mr. Amodeo admitted that he simply used Mirabilis and his other companies to move the proceeds of his fraud to himself and various business associates at his direction.

On October 30, 2008, Mirabilis was indicted on seventeen counts of federal tax law violations, including conspiracy and wire fraud. See United States v. Mirabilis Ventures, Inc., Case No. 6:08-cr-00231-JA-KRS-4. (As stated above, Mirabilis's principal, Frank Amodeo, was also indicted and pled guilty to five charges, including conspiracy, failure to collect and remit payroll taxes, and obstruction of an agency proceeding. See United States v. Amodeo,

Case No. 6:08-CR-00176-JA-GJK-1). Judgment of conviction was entered against Mr. Amodeo on May 27, 2009, and Mr. Amodeo was sentenced to 270 months in prison.

Forge and the Affiliated Creditors were unaware of the massive criminal fraud being perpetrated by Mr. Amodeo. In fact, Forge and the Affiliated Creditors were victims of such fraud as they sold their business and entered into other business agreements with Mirabilis only to be severally damaged by Mirabilis's fraud, or by Mirabilis materially breaching various agreements. As a result of the actions of Mirabilis, Forge Capital Partners, LLC, Argent BD, LLC, and Atlantic American Capital Group, LLC, filed Proofs of Claim (the "Claims") in this case.

The Debtor now objects to such Claims on only two (2) grounds. First, Mirabilis claims that it is not liable for the debts of its subsidiaries because they are "completely separate entities." Second, Mirabilis asserts that there is no "evidence in the Debtors' books and records that Mirabilis received value" for the Claims. These objections, however, are factually incorrect and legally deficient.

**ARGUMENT**

**I. MIRABILIS WAS FULLY CONTROLLED BY FRANK AMODEO IN ORDER TO COMMIT MASSIVE CRIMINAL TAX FRAUD. AS SUCH, ALL OF ITS SUBSIDIARIES ARE MERE SHAM ENTITIES AND ARE ALTER EGOS OF MR. AMODEO OR MIRABILIS.**

Mirabilis lacks an independent corporate identity. The company is a sham that served primarily the goal of furthering Mr. Amodeo's various criminal and fraudulent schemes. A company that was used chiefly in the past as a sham for an individual to perpetrate various frauds on creditors cannot shield itself from the claims of creditors in a bankruptcy proceeding. See, Feltman v. Prudential Bache Securities, 122 B.R. 466 (S.D. Fla. 1990). "Under Florida law, the separate identity of a corporation will be disregarded on proof that it is a 'mere instrumentality' of, that is to say, it is completely dominated by, another corporation or individual, and that it is a

device or sham to mislead creditors or exists for some other fraudulent purpose." <u>Bendiz Home Systems, Inc. v. Hurston Enterprises</u>, 566 F.2d 1039 (5th Cir.1978).  In instances where an entity exists solely as an instrumentality of fraud, controlled by an individual who has used that entity for fraudulent purposes, courts must disregard the corporate status of the entity.  <u>Kanov v. Bitz</u>, 660 So.2d 1165 (Fla. 3d DCA 1995) (holding that the critical issue in the determination of whether the corporate veil will be pierced for the imposition of personal liability is whether the corporate entity was organized or operated for an improper or fraud purpose.); <u>Plank v. Arban</u>, 241 So.2d 198 (Fla. 4th DCA 1970)(holding that equity will not allow a corporate veil to cover fraud or injustice, and to prevent such the corporate entity may be disregarded and the corporation and individual or individuals owning all of its stock and assets treated as identical).

     Mr. Amodeo used Mirabilis and its wholly owned subsidiaries as sham corporations to mask his illegal activity and funnel cash to Mirabilis and himself.  The Debtor and its subsidiaries are nothing more than shell companies created for the purpose of furthering the criminal activity of Frank Amodeo, as admitted by Frank Amodeo himself under penalty of perjury.  At all times Forge and the Affiliated Creditors believed that their dealings were with Mirabilis through, in part, its wholly-owned, and completely controlled, subsidiaries.  Indeed, for all practical, and legal, purposes there was no distinction between Mirabilis and its subsidiaries.  For example, but not by way of limitation, the principal places of business were identical, the companies were controlled by Mr. Amodeo, the funds for the operations came through Mirabilis, any monies used to fund the obligations of the subsidiaries came from Mirabilis, all communications went to, and came from, Mirabilis employees, and it was represented (by Mr. Amodeo and others) that the subsidiaries had no independence at all from Mirabilis.  As such, Forge and the Affiliated Creditors can, and should be permitted, to maintain their Claims against Mirabilis.

## II. THE AFFILIATED CREDITORS ARE ENTITLED TO MAKE CLAIMS AS A RESULT OF DAMAGES THAT AROSE FROM THE FRAUD OR BREACH OF CONTRACT OF MIRABILIS.

The Bankruptcy Act only requires two (2) elements in order for a proof of claim to be valid. The proof of claim must be a writing which contains (1) a demand by the creditor on the debtor's estate and (2) an intent to hold the debtor liable for the debt. In re Guardian Mortg. Investors, 15 B.R. 284 (M.D. Fla. 1981); Hoos & Co. v. Dynamics Corp. of America, 570 F.2d 433 (2d Cir. 1978); In Re Thompson, 227 F. 981 (3d Cir. 1915); 3 Collier on Bankruptcy P 57.03 (14th Ed. 1977). These requirements are not "stricti juris" in the sense that any deviation will be fatal. In re Guardian Mortg. Investors, 15 B.R. 284 (M.D. Fla. 1981). Further, claims in bankruptcy must be liberally construed. 3 Collier on Bankruptcy P 57.03 (14th Ed. *287 1977). As the court noted in In re Franciscan Vineyards, Inc., 597 F.2d 181 (9th Cir. 1979):

> The point simply is that "there must have been presented, within the time limit, by or on behalf of the creditor, some written instrument which brings to the attention of the court the nature and amount of the claim."

Documentary evidence needed to establish and verify a proof of claim cannot be reduced to bright-line test; rather, it must be determined on case-by-case basis. In re Moreno, 341 B.R. 813 (Bkrtcy. S.D. Fla. 2006).

The Claims filed by Forge and the Affiliated Creditors contain a demand on the Debtor and an intent to hold the Debtor liable for its breaches of various agreements and its fraudulent conduct. This is not an administrative claim where the claimant has to prove some benefit to the estate of the debtor. On the contrary, the subject claims are for damages the Debtor has caused to the claimants. As such, although the Debtor has received numerous benefits from its improper conduct (including, but not limited to, the transfer of stock, the receipt of a broker-dealer's

5

license, etc.), this is not the appropriate standard of review. This Court, therefore, should overrule the objections and allow the Claims.[1]

### III. MIRABILIS HAS NO AUTHORITY TO OBJECT TO THE CLAIMS IN THIS MATTER.

On or about October 24, 2004, an entity known as Stellar Industries, Inc., filed Amended and Restated Articles of Incorporation and became Mirabilis Ventures, Inc. (also referred to as "Mirabilis"). Since that filing, and through the date of the filing of this bankruptcy action, Mirabilis has operated under the Amended and Restated Articles of Incorporation. Importantly, the Amended and Restated Articles of Incorporation provide in "Article VIII- Amendments" that "**this corporation reserves the right to amend**, alter, change or repeal any provision contained in . . .**its Bylaws in the manner now or hereafter prescribed by** . . .**the corporation's Bylaws**. . ." (Emphasis added). As such, any amendment to the Bylaws must be in the manner prescribed by the Bylaws.

On or about October 1, 2005, Mirabilis enacted the "Bylaws of Mirabilis Ventures, Inc." The Bylaws provide the exclusive manner for the election of members of the Board of Directors. According to Article III, Section 3.04 of the Bylaws of Mirabilis, any vacancy on the Board of Directors must be filled by "the affirmative vote of two-thirds (2/3) **of the issued and outstanding shares** of the Corporation." The Bylaws, therefore, mandate that all new directors be must approved by a vote of 2/3 of all outstanding shareholders. <u>Under no circumstances can the Board of Directors fill any vacancies</u>. Rather, the election of directors must be done solely by the shareholders pursuant to the Bylaws.

---

[1] Also, at a minimum, the resolution of the Objections and the validity of the Claims, will require an evidentiary hearing.

The Bylaws also provide the sole and exclusive manner in which they can be amended. Pursuant to Article IX, Section 9.02 B., in order to amend the Bylaws, "the Board of Directors shall propose the amendment. . .to the shareholders who shall have thirty days (30) in which to object to the amendment." As such, as a condition precedent to any valid amendment to the Bylaws, the Board of Directors **must** do two things (neither of which were done in this matter). First, the Board of Directors must provide notice of the proposed amendment to the shareholders. Second, the Board of Directors must give the shareholders no less than thirty (30) days to object. If, and only if, these conditions are met, and then only if there is no objection, can the Bylaws be amended.

Clearly aware of the requirement that only "shareholders" could fill vacancies on the Board of Directors, and that any amendment required at least thirty (30) days notice, on or about May 27, 2008, two members of the Board of Directors (<u>with no notice to the shareholders</u>) attempted to amend the Bylaws of Mirabilis. It is undisputed that the Board of Directors did not comply with Section 9.02 B., of the Bylaws because the Board of Directors did not provide the required notice and wait thirty (30) days. Instead, with no notice to the shareholders, and without waiting the required thirty (30) days, the Board of Directors passed "Amendment No. 1 to the Bylaws" and purported to amend both the provision of the Bylaws relating to filling vacancies on the Board of Directors as well as the provision regarding amendments to the Bylaws. Of course, the intended result of the invalid amendment was to allow the Board of Directors to vote to fill its own vacancies and to allow the Board to amend the Bylaws without notice to the shareholders. These actions were wholly contrary to the restrictions set forth in the Bylaws and impair the rights given to the shareholders.

Following the purported amendment to the Bylaws, and still on May 27, 2008, the only two remaining members of the Board of Directors (Jay Stollenwerk and Shane Williams) executed the "Action of Directors by Written Consent" and appointed a new director, Michael Moecker. Mr. Stollenwerk and Mr. Williams then promptly resigned from their positions on the Board of Directors.[2] The new director, Mr. Moecker, then appointed R.W. Cuthill as the President of Mirabilis. It was then Mr. Cuthill who retained the Debtor's current counsel to represent Mirabilis in the bankruptcy action. All of this was orchestrated so that Mirabilis could file bankruptcy to try to prevent a final judgment from being entered against one of its subsidiaries in Richmond, Virginia. (As stated above, just one day after this maneuver, on May 28, 2008, Mirabilis filed for Chapter 11 bankruptcy).

The Affidavit of Tom Broadhead was filed with the Bankruptcy Court on August 24, 2009. (DKT. 260) In his Affidavit, Mr. Broadhead, who was the Secretary of Mirabilis, states in pertinent part as follows:

> "2. I was Secretary for the MVI Board of Directors from October 2005 until January 2006...
> 4. Contrary to the factual assertions contain in [Mirabilis's Memo of Law]. . .I personally attended the MVI Shareholder meeting in October of 2005 in which the shareholder(s) ratified and adopted both the MVI Shareholder Agreement. . .and MVI Bylaws."

The sole record evidence is that the Bylaws were actually adopted by the shareholders. As such, since there was no valid amendment to the Bylaws, there could not be a valid election of the Board of Directors of Mirabilis on May 27, 2008. Based, therefore, on the failure of Mirabilis to comply with its own Bylaws, any actions taken by the current officers and directors have no

---

[2] Although it is unclear as to whether Mr. Stollenwerk or Mr. Williams were ever even duly elected members of the Board of Directors, since they have resigned and because Mr. Moecker is not duly elected, there is currently no Board of Directors of Mirabilis and any and all actions it

8

legal force or effect. Additionally, Mirabilis's current counsel does not have the proper authority to act on its behalf. As such, Mirabilis has no authority to object to the Claims because the current principals of Mirabilis have no authority to act on behalf of the Debtor.

## **CONCLUSION**

The Creditors' Claims should be allowed in the full amount of such Claims and the Creditors' request a hearing on the Objections filed by the Debtor.

Dated: November 6, 2009.

        /s/ Bart R. Valdes
        DAVID H. SIMMONS, ESQ.
        Florida Bar Number 240745
        deBeaubien, Knight, Simmons,
         Mantzaris & Neal, LLP
        332 North Magnolia Avenue
        Orlando, Florida 32802-0087
        Telephone: (407) 422-2454
        Facsimile: (407) 849-1845
        dhs77@dbksmn.com

        BART R. VALDES
        Florida Bar Number 323380
        de Beaubien, Knight, Simmons,
        Mantzaris & Neal, LLP
        609 West Horatio Street
        Tampa, Florida 33606
        Telephone: (813) 251-5825
        Facsimile: (813) 254-1063
        brv11@dbksmn.com
        Attorneys for Creditors

---

has taken since the resignation of Mr. Stollenwerk or Mr. Williams have been unauthorized actions.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2009, a true copy of the foregoing has been furnished via the CM/ECF system to Debtor, Mirabilis Ventures, Inc., c/o R. W. Cuthill, Jr., President, 341 N. Maitland Ave., Suite 210, Maitland, Florida 32751; Debtor's counsel, Elizabeth Green, Esq., Latham, Shuker, Barker, Eden & Beaudine, 390 North Orange Avenue, Suite 600, Orlando, Florida 32801; Randy Gold, Esq., Assistant U.S. Attorney, United States Attorney's Office, 501 West Church Street, Suite 300, Orlando, Florida 32805; and all others receiving electronic notice as per the attached matrix.

/s/ Bart R. Valdes
DAVID H. SIMMONS, ESQ.
Florida Bar Number 240745
deBeaubien, Knight, Simmons,
 Mantzaris & Neal, LLP
332 North Magnolia Avenue
Orlando, Florida 32802-0087
Telephone: (407) 422-2454
Facsimile: (407) 849-1845
dhs77@dbksmn.com

BART R. VALDES
Florida Bar Number 323380
de Beaubien, Knight, Simmons,
Mantzaris & Neal, LLP
609 West Horatio Street
Tampa, Florida 33606
Telephone: (813) 251-5825
Facsimile: (813) 254-1063
brv11@dbksmn.com
Attorneys for Creditors