**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| MIRABILIS VENTURES, INC., | : | Case No. 6:08-BK-04327-KSJ |
| | : | |
| Debtor. | : | Chapter 11 |
| | : | |

**SECURE SOLUTIONS, LLC'S RESPONSE TO MIRABILIS VENTURES, INC.'S OBJECTION TO ALLOWANCE OF CLAIM NO. 26**

SecureSolutions, LLC ("Secure Solutions") hereby responds (the "Response") to Mirabilis Ventures, Inc.'s Objection to Allowance of Claim No. 26 Submitted by Secure Solutions, LLC (Docket No. 339) (the "Claims Objection"). In support of the Response, Secure Solutions, by and through its undersigned counsel, respectfully represents:

**Background**

1.  On May 27, 2008, Mirabilis Ventures, Inc., the debtor and debtor-in-possession in the above captioned chapter 11 case (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code").

2.  The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

3. On September 22, 2008, Secure Solutions filed a proof of claim in the Debtor's case in the amount of $1,178,611, which was docketed as Proof of Claim No. 26 (the "Claim").[1]

4. On October 9, 2009, the Debtor filed the Claims Objections, objecting to the Claim.

### Jurisdiction

5. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

6. In the Claims Objection, Mirabilis maintains simply that "SSLLC bases its Claim on payroll taxes allegedly unpaid on its behalf by CPC, a subsidiary of Mirabilis" and that "Mirabilis is not liable for any debt accumulated by its subsidiary, as it is a completely separate entity." Claims Objection ¶ 7.

7. As a preliminary matter, only part of Secure Solutions' Claim relates to amounts that were unpaid by the Debtor's subsidiary. Specifically, Secure Solutions maintains that "Mirabilis, through its subsidiary Common Paymaster deducted payroll taxes from Secure Solutions' accounts for payroll taxes, but did not remit them to the IRS – in the amount of $508,611." Claim at p.1 (emphasis added).

---

[1] The same day, Secure Solutions also filed a second proof of claim in the Debtor's case in the amount of $3,650,000 plus offset of Mirabilis debt or equity claims, which was docketed as Proof of Claim No. 27. The Debtor filed a separate objection with respect to that claim, and Secure Solutions is filing a separate response substantially contemporaneously herewith.

The remainder of Secure Solutions' Claim relates to amounts that were unpaid <u>by the Debtor itself, not its subsidiary</u>.  Specifically, Secure Solutions goes on to maintain that "[i]n a related matter Mirabilis, having taken effective operating control of Secure Solutions . . . , failed to pay state and local taxes approximating $335,000 and an equal amount of interest and penalties, totaling approximately $670,000 to 27 states."  Claim at p. 1.  Therefore, $670,000 of the Claim relates to inaction by the Debtor itself, as opposed to its subsidiary.  Accordingly, the Debtor has not presented any defense with respect to such amount, and the Claim should be allowed, at a minimum, in the amount of $670,000.

8.      Moreover, even with respect to the $508,611 that relates to inaction by the Debtor's subsidiary, Common Paymaster, the mere fact that the claim involves inaction by the Debtor's subsidiary as opposed to the Debtor itself does not preclude allowance of the claim.  Rather, the corporate veil between Common Paymaster and the Debtor may be pierced, and such amounts may be asserted against the Debtor.

9.      Specifically, under Florida law, the corporate veil may be pierced when there is a showing (a) of domination or control such as would make a subsidiary the alter ego of its parent, (b) of other improper conduct, and (c) that such other improper conduct caused injury to the claimant.  See <u>Seminole Boatyard, Inc. v. Christoph</u>, 715 So. 2d 987, 990 (Fla. 4th DCA 1998) (citing <u>Dania Jai-Alai Palace, Inc. v. Sykes</u>, 450 So. 2d 1114, 1121 (Fla. 1984)); <u>Mullin v. Dzikowski</u>, 257 B.R. 356 (S.D. Fla. 2000) (same).

10. The rule is often stated as mere-instrumentality-plus-fraud: "it must be shown not only that the wholly-owned subsidiary is a mere instrumentality of the parent corporation but also that the subsidiary was organized or used by the parent to mislead creditors or to perpetrate a fraud upon them." USP Real Estate Inv. Trust v. Discount Auto Parts, Inc., 570 So. 2d 386, 390 (Fla. 1st DCA 1990) (reversing lower court's refusal to pierce corporate veil).

11. Examples of improper conduct are when the subsidiary is in actuality the alter ego of the parent corporation and was organized or, after organization, was employed by the parent corporation for fraudulent or misleading purposes, or in some fashion that the subsidiary's property was converted or the subsidiary's assets depleted for the personal benefit of the parent corporation, or that the corporate structure was not established in good faith or, in general, that property belonging to the subsidiary can be traced into the hands of the parent corporation. See Walton v. Tomax Corp., 632 So. 2d 178 (Fla. 5th DCA 1994). Examples include the use of a sham corporation to accomplish some ulterior purpose, evade some statute or accomplish some fraud, or use of the subsidiary for fraudulent or misleading purposes, especially of creditors. See Steinhardt v. Banks, 511 So. 2d 336, 339 (Fla. 4th DCA 1987). As another example, the use of a shell subsidiary to hold a lease while the parent company operated its business in the leased premises subjects the parent to liability under alter ego theory for the subsidiary's obligation to the landlord, when the subsidiary had no bank account, capital, or assets, and when the subsidiary executed the lease which provided that the tenant would "operate" an auto

parts store in the premises. USP Real Estate Inv. Trust, 570 So. 2d 386. And a parent corporation must be held liable for its subsidiary's debt when the subsidiary had no bank account, no assets, no capital, and no employees, and the subsidiary had entered into the contract with the creditor knowing that it had no ability to perform the contract because all of its revenues are deposited directly to the parent's account. Ocala Breeders' Sales Co. v. Hialeah, Inc., 735 So. 2d 542 (Fla. 3d DCA 1999).

12. Some bankruptcy courts have even permitted substantive consolidation of Debtor corporations and non-Debtor corporations upon equitable grounds. See, e.g., Morse Operations, Inc. v. Robins Le-Cocq, Inc. (In re Lease-a-Fleet, Inc.), 141 B.R. 869 (Bankr. E.D. Pa. 1992); Munford, Inc. v. TOC Retail, Inc. (In re Munford, Inc.), 115 B.R. 390 (Bankr. N.D. Ga. 1990).

13. Secure Solutions concedes that claim 26 should not be allowed as a priority claim but only as an unsecured nonpriority claim.

WHEREFORE Secure Solutions respectfully requests entry of an order (I) overruling and denying the Claims Objections, but for the objection to the priority status of the claim, and (II) granting Secure Solutions such other and further relief as is just.

Dated: January 18, 2010

/s/ Peter N. Hill
Peter N. Hill.
Fla. Bar No. 368814
Wolff, Hill, McFarlin & Herron, P.A.
1851 W. Colonial Drive
Orlando, FL 32804
Telephone: (407) 648-0058
Fax: (407) 648-0681
Email:  phill@whmh.com

Attorneys for Secure Solutions, LLC

CERTIFICATE OF SERVICE

I certify that on January 18, 2010 a copy of the foregoing was furnished to the following by United States first class mail, post prepaid, or by electronic mail:

Marianne L. Dorris, Esq., Latham, Shuker, Eden & Beaudine, LLP, P.O. Box 3353, Orlando, FL 32802-3353

United States Trustee, 135 West Central Blvd., Suite 620, Orlando, FL 32801

/s/ Peter N. Hill
Peter N. Hill