UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In Re:

Case No. 6:08-bk-04327-KSJ

MIRABILIS VENTURES, INC.

**UNITED STATES' OPPOSITION TO DISBURSEMENT OF PAYMENTS TO
R. W. "BILL" CUTHILL, JR., AND THE LAW FIRMS OF BARRETT, CHAPMAN &
RUTA; MORRIS & WIDMAN P.A.; AND LATHAM SHUKER EDEN & BEAUDINE**

The United States of America, by and through its undersigned Assistant United

States Attorney, hereby files its objection to debtor Mirabilis Ventures, Inc.'s (Mirabilis)

disbursement of funds to R. W. "Bill" Cuthill, Jr., and the law firms of Barrett Chapman &

Ruta; Morris & Widman; and Latham Shuker Eden & Beaudine.[1]

Debtor Mirabilis, through its president, Mr. Cuthill, has advised the United States

of his intention to disburse payments to the law firm of Morris & Widman, P.A., in the

amount of $25,943.78; to the law firm of Barrett Chapman & Ruta P.A., in the amount of

$7,000.00; to the law firm of Latham Shuker Eden & Beaudine in the amount of

$44,005.97; and to himself in the amount of $35,914.98.  The United States objects to

these disbursements as debtors Mirabilis, AEM, Inc., d/b/a Mirabilis HR (AEM), and

Hoth Holdings, LLC (Hoth), are in violation of the Compromise reached in this

bankruptcy case in December 2008.

---

[1]  As the notices of disbursement do not give a breakdown of the services performed for each of the corporate debtors, the United States is filing the same objection in all three cases.

Despite the fact that all of the parties at the time recognized that this Compromise could only take place if the corporations pled guilty, Mr. Cuthill has refused at this point to sign a plea agreement.  The parties have spent months hammering out a plea agreement and, until December 9, 2009, it was understood by all parties that there would be a guilty plea entered by the corporations.[2]

In a lawsuit filed by Frank Amodeo against Richard Berman in the Ninth Judicial Circuit, Circuit Judge Thomas Smith ruled that the guilty plea by Amodeo precluded his lawsuit against Berman.  It was at that point that Mr. Cuthill and his counsel, Richard Widman, became concerned that a plea by the corporations would potentially decimate their case against Berman.  Shortly after December 9, 2009, undersigned counsel was for the first time advised by Lee Barrett, criminal counsel for the corporations, that Mr. Cuthill was refusing to sign the plea agreement at that time.  That refusal has caused the criminal case to be continued until April 2010, as Mr. Cuthill sought additional time to allow Mr. Widman to research the law.  It is Mr. Cuthill's position that if the law precludes him from moving forward against Berman, he will not enter a no contest plea on behalf of the corporations.  The United States submits that the failure to do so would amount to a breach of the Compromise.  Until the issue of the breach of the Compromise is resolved, the United States objects to any disbursements made by Mr. Cuthill.

---

[2]  At the debtors' request, the United States agreed to allow the debtors to plead no contest rather than guilty, which is very much out of the ordinary in a criminal case in this District.

2

The Amodeo plea agreement states:  "The Debtors' assets will be divided between those that will continue to be administered by the Debtors' bankruptcy estate and those forfeited to the USA."  (Cr. Doc. 101 at 6).  After describing how the existing assets will be divided, the agreement provides:  "In addition, the Debtors shall amend the schedules to include an unsecured forfeiture claim in the Mirabilis and AEM cases for USA in the amount of $200,000,000.00 ("Forfeiture Claim").  . . . Any and all funds paid to the USA by the bankruptcy estates shall be forfeited to the USA in partial satisfaction of the money judgment already entered against defendant Amodeo. Because the USA seeks entry of corresponding money judgments against defendants Mirabilis and AEM in the pending Indictment and such money judgments would create joint and several liability against all three defendants, any funds credited towards the money judgment entered against defendant Frank Amodeo would also be in partial satisfaction of any money judgments entered against Mirabilis and AEM."  Id. at 8-9.

The United States agreed to a $200 million forfeiture claim against the corporations, because, as reflected in the Indictment, that is the amount of proceeds the United States' alleged had been obtained as a result of the conspiracy charged in Count One.  The fact that the debtors agreed to honor a claim in that amount reflects the parties' collective understanding that a guilty plea would be entered, resulting in the entry of a $200 million forfeiture judgment.  The United States has no ability to seek a money judgment under any civil forfeiture statute[3] and, absent a conviction in the

---

[3]  Civil forfeiture is limited to property traceable to criminal proceeds or property involved in money laundering.

corporate criminal case, would not have any legal entitlement to the $200 million.[4] Moreover, debtors Mirabilis, AEM, and Hoth's decisions to enter into the Compromise itself evidences that a plea agreement was contemplated, because the defense costs associated with a criminal trial would threaten the viability of the bankruptcy. Additionally, the last sentences from the Compromise cited above, regarding joint and several liability, were written solely to prevent the United States from receiving a double recovery from the corporations and Frank Amodeo.

Debtors' counsel has contended that a plea would render the defendants' assets valueless.  It is difficult to imagine how counsel for the United States could have more clearly articulated to Mr. Cuthill and corporate counsel that the decision to file and pursue the criminal indictment was an exercise of our law enforcement function, which would not be influenced by any financial benefit possibly obtained by allowing the corporations to escape their criminal liability.  Mirabilis, AEM, and Hoth's criminal counsel, Lee Barrett, who participated in these meetings, has confirmed to Roy Kobert, counsel overseeing the malpractice actions, that this is so.  In negotiating the plea agreement on behalf of the corporations, Mr. Barrett hired Robert Griscti, an attorney who specializes in forfeiture law, to assist in the negotiations of the criminal plea.[5] Counsel for the United States repeatedly indicated that their belief was that the criminal plea would "kill" the malpractice suits, but were insistent that a guilty plea nonetheless

---

[4]  A $180 million money judgment was entered against Frank Amodeo as part of his criminal judgment, but the remaining $20 million could only be recovered through a criminal forfeiture in the corporate case.

[5]  Mr. Griscti was paid with funds from the bankruptcy estate with this Court's approval.

be pursued.  Elizabeth Green and Jimmy Parrish, then debtors' counsel, after consultation with Jennifer Eden, disagreed with the assessment by the United States of the viability of the malpractice suits and, therefore, wanted to proceed.  The United States does not believe that the guilty plea has any impact on the other litigation; and, even if it does, the United States has repeatedly made it clear that it had no interest in recovering assets based upon legal theories in conflict with those advanced in Frank Amodeo's criminal case and the pending corporate indictment, which the United States believes accurately represent the facts.

In the over eighteen months since this bankruptcy was instituted, and over twelve months since the United States reached the Compromise with the debtors, the predominant entities and persons who have benefitted from this bankruptcy are the president of the companies and the professionals.  Pursuant to the Compromise, the United States allowed the debtor to receive approximately $500,000.00, which represented a payment due from a note.  That money has now been dissipated.  Other funds, however, have been brought into the estate.  Post-petition accounts payable as of November 30, 2009, are over $1,000,000.00, almost all of which is to professionals. The United States and the creditors are the only entities and individuals who have not received any payments.  "Bankruptcy estates should not be administered for the sole or primary benefit of the professionals appointed to administer such estates."  See e.g., In re Khan's Corp., 184 B.R. 398, 401 (Bankr. S.D. Fla. 1995) (citations omitted).  The United States submits that, so far, the primary beneficiaries are the professionals and no further fees should be paid, especially in light of the breach of the compromise.

Wherefore, for the above stated reasons, the United States submits that Mr.

Cuthill be precluded from making any disbursements at the present time.

Respectfully submitted,

A. LEE BENTLEY, III
Attorney for the United States,
Acting Under Authority Conferred by
    28 U.S.C. § 515


By:    *s/I. Randall Gold*
    I. Randall Gold
    Assistant United States Attorney
    Deputy Chief, Orlando Division
    Florida Bar No. 0268062
    501 West Church Street, Suite 300
    Orlando, Florida 32805
    Telephone:   (407) 648-7500
    Facsimile:    (407) 648-7643
    E-Mail:       Randy.Gold@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

All participants in the CM/ECF System

*s/ I. Randall Gold*
I. Randall Gold
Assistant United States Attorney
Deputy Chief, Orlando Division
Florida Bar No. 268062
501 W. Church Street - Suite 300
Orlando, Florida 32805
Telephone:   (407) 648-7500
Facsimile:    (407) 648-7643
E-mail:        randy.gold@usdoj.gov