# Exhibit A

*E*

# LEASE AGREEMENT

Between

Gillio Development Incorporated,
*(a Florida Corporation),*
## AS LANDLORD,

And

Frank's Crispies, LLC
*(a Florida Limited Liability Company),*
## AS TENANT

Property Known as
Perkins Restaurant & Bakery
Located @
4120 South Orange Avenue
Edgewood Florida 32806

Effective as of
December 31, 2005

## TABLE OF CONTENTS

Page

ARTICLE 1  LEASE OF PREMISES .......................................................................... 1
    Section 1.1  Certain Definitions........................................................ 1
    Section 1.2  Lease of Premises ......................................................... 1
    Section 1.3  Condition of Premises.................................................. vii
    Section 1.4  Incorporation of Recitals............................................. vii

ARTICLE 2  TERM.................................................................................................. viii
    Section 2.1  Term............................................................................ viii
    Section 2.2  Extension Options....................................................... viii
    Section 2.3  Right of First Refusal.................................................. viii

ARTICLE 3  RENTAL............................................................................................. ix
    Section 3.1  Base Rental ................................................................. ix
    Section 3.2  Tenant's Failure to Pay ............................................... ix
    Section 3.3  True Lease................................................................... ix
    Section 3.4  Net Lease; Additional Rent.......................................... ix
    Section 3.5  Set-off ........................................................................ x
    Section 3.6  Security Deposit.......................................................... x

ARTICLE 4  TAXES AND OTHER EXPENSES ................................................... xi
    Section 4.1  Taxes and Impositions ................................................ xi
    Section 4.2  Tenant's Failure to Pay ............................................... xii
    Section 4.3  Contest of Impositions ............................................... xii
    Section 4.4  Limitation on Tenant's Expenses................................. xii

ARTICLE 5  TENANT'S USE AND ACCESS ....................................................... xiii
    Section 5.1  Use ............................................................................. xiii
    Section 5.2  Tenant's Access To Premises ...................................... xiii

ARTICLE 6  LANDLORD'S ACCESS; LIMITATIONS ON LANDLORD ........... xiii
    Section 6.1  Landlord's Access to Premises .................................... xiii
    Section 6.2  Limitation on Landlord's Rights.................................. xiii

ARTICLE 7  REPAIRS AND MAINTENANCE....................................................... xiii
    Section 7.1  Tenant's Responsibility ............................................... xiii
    Section 7.2  No Landlord Responsibility......................................... xiv

ARTICLE 8  ALTERATIONS AND FIXTURES ..................................................... xiv
    Section 8.1  Alterations by Tenant.................................................. xiv
    Section 8.2  Approval of Plans ....................................................... xv
    Section 8.3  Tenant's Trade Fixtures .............................................. xv
    Section 8.4  Limitations on Landlord's Right to Alter the Building ... xv

ARTICLE 9   FIRE AND OTHER CASUALTY .................................................................... xvi
    Section 9.1   Certain Definitions ........................................................................ xvi
    Section 9.2   Casualty ................................................................................... xvi
    Section 9.3   No Rent Abatement; No Extension ............................................. xvii

ARTICLE 10   LIABILITY ............................................................................................ xvii
    Section 10.1   Waiver of Subrogation ............................................................. xvii
    Section 10.2   Tenant's Indemnity ................................................................. xvii
    Section 10.3   Limitation of Liability ............................................................. xviii
    Section 10.4   Statutory Limitation on Indemnity ........................................... xviii

ARTICLE 11   INSURANCE ........................................................................................... xix
    Section 11.1   Tenant's Insurance .................................................................. xix
    Section 11.2   Tenant's Insurance Policies ..................................................... xix

ARTICLE 12   CONDEMNATION ..................................................................................... xx
    Section 12.1   Certain Definitions .................................................................. xx
    Section 12.2   Total Taking ........................................................................... xx
    Section 12.3   Partial Taking ........................................................................ xxi
    Section 12.4   Claims of Landlord and Tenant ............................................... xxi
    Section 12.5   Distribution of the Award ........................................................ xxi
    Section 12.6   Temporary Taking of Premises ................................................ xxii
    Section 12.7   Restoration ........................................................................... xxii

ARTICLE 13   DEFAULTS AND REMEDIES ...................................................................... xxii
    Section 13.1   Default by Tenant ................................................................... xxii
    Section 13.2   Landlord's Remedies ............................................................. xxiii
    Section 13.3   Landlord Default .................................................................... xxv
    Section 13.4   Attorneys' Fees ..................................................................... xxv
    Section 13.5   Non-Waiver; Forbearance ....................................................... xxv

ARTICLE 14   COMPLIANCE WITH LAWS ...................................................................... xxvi
    Section 14.1   Tenant's Compliance with Laws ............................................. xxvi
    Section 14.2   Contest of Legal Requirements ............................................... xxvi

ARTICLE 15   ASSIGNMENT AND SUBLETTING .............................................................. xxvi
    Section 15.1   Assignment and Subletting by Tenant ...................................... xxvi

ARTICLE 16   QUIET ENJOYMENT ................................................................................ xxvii

ARTICLE 17   PROVISIONS WITH RESPECT TO MORTGAGES .......................................... xxvii
    Section 17.1   Subordination ........................................................................ xxvii
    Section 17.2   Nondisturbance ...................................................................... xxvii
    Section 17.3   Attornment ............................................................................ xxviii
    Section 17.4   Confirming Agreement ............................................................ xxviii

ARTICLE 18   BROKERAGE .......................................................................................... xxviii
    Section 18.1   Broker Commission ................................................................ xxviii
    Section 18.2   Indemnification ...................................................................... xxviii

**ARTICLE 19 EXPIRATION; SURRENDER**................................................................ xxviii

**ARTICLE 20 WORK ON THE BUILDING OR PREMISES** ........................................ xxix
    Section 20.1  Standards for Performance.................................................... xxix
    Section 20.2  Completion of Work .......................................................... xxix
    Section 20.3  Payment of Costs and Expenses .......................................... xxix
    Section 20.4  Mechanic's Liens ............................................................... xxix
    Section 20.5  Tenant's Obligations........................................................... xxx

**ARTICLE 21 HAZARDOUS MATERIALS** .............................................................. xxx
    Section 21.1  Definitions......................................................................... xxx
    Section 21.2  Representations, Warranties and Covenants........................... xxxi

**ARTICLE 22 ESTOPPEL CERTIFICATES**............................................................... xxxv

**ARTICLE 23 MISCELLANEOUS** ......................................................................... xxxvi
    Section 23.1  Notices ............................................................................. xxxvi
    Section 23.2  Headings .......................................................................... xxxvii
    Section 23.3  Exhibits ........................................................................... xxxvii
    Section 23.4  Defined Terms .................................................................. xxxvii
    Section 23.5  Pronouns ......................................................................... xxxvii
    Section 23.6  Binding Effect.................................................................. xxxvii
    Section 23.7  Severability ...................................................................... xxxvii
    Section 23.8  Rights Cumulative ............................................................ xxxvii
    Section 23.9  Time of Essence............................................................... xxxviii
    Section 23.10 Applicable Law................................................................ xxxviii
    Section 23.11 Entire Agreement............................................................. xxxviii
    Section 23.12 Modifications................................................................... xxxviii
    Section 23.13 Holding Over ................................................................... xxxviii
    Section 23.14 No Recording of Lease ..................................................... xxxviii
    Section 23.15 Guaranty of Lease ............................................................ ..........
    Section 23.16 Statements ....................................................................... xxxviii
    Section 23.17 Successors, Assigns ......................................................... xxxix
    Section 23.18 State-Specific Provisions ................................................. xxxix
    Section 23.19 Counterparts.................................................................... xxxix

## EXHIBITS

Exhibit A - Description of Land
Exhibit B - Rental Schedule
Exhibit C - Form of Subordination, Non-disturbance and Attornment Agreement
Exhibit D - Form of Estoppel Certificate
Exhibit E - Form of Memorandum of Lease
Exhibit F - Structural Alterations Threshold, Insurance Proceeds Threshold, and Insurance
Deductibles
Exhibit G - Guaranty
Exhibit H - State Specific Provisions

# LEASE AGREEMENT

*THIS LEASE AGREEMENT* (this "Lease") is made and entered into as of the 31st day of December, 2005, between Gillio Development Incorporated, a Corporation ("Landlord"), Frank's Crispies, LLC *(a Florida Limited Liability Company)*, "Tenant"), with respect to the following facts and circumstances:

## RECITALS:

A.    Immediately prior to the execution and delivery of this Lease, Tennant has acquired the Perkins Restaurant and Bakery Business, Franchise and FF&E from GILLIO DEVELOPMENT Inc., who may or may not simultaneously transfer its other assets (REAL ESTATE) to a new corporation which is the new owner of said property.

B.    Landlord has agreed to lease the Premises to Tenant for the term set forth herein.

C.    Landlord and Tenant intend for this Lease to be a true triple net to Landlord, so that Tenant shall, subject to the terms hereof, assume all obligations and liabilities related to the Premises during the term of this Lease.

*NOW, THEREFORE,* for and in consideration of the foregoing premises, the mutual covenants and agreements set forth herein, the consummation of the transfer of the Premises to Landlord, and other good and valuable consideration, all of which each party agrees constitutes sufficient consideration received at or before the execution and delivery hereof, the parties hereto agree as follows:

## ARTICLE 1.
## LEASE OF PREMISES

**Section 1.1**    **Certain Definitions.** The following terms shall have the following meanings: (a) "Land" shall mean that certain tract or parcel of land more particularly described in Exhibit A, together with all easements, ways and rights appurtenant to, adjoining or crossing the Land, (b) "Building" shall mean the existing Restaurant building on the Land and any and all other buildings, structures and other improvements now or hereafter located on the Land and all fixtures attached or affixed thereto; (c) "Premises" shall mean the Land and the Building, collectively; (d) "Mortgage" shall mean a mortgage, deed of trust, deed to secure debt or other

Security agreement executed by Landlord that encumbers the Premises; (e) "Lender" shall mean the holder of a Mortgage; and (f) "Business Day" shall mean any day that is not a Saturday, Sunday, or a day on which banks in Orlando Florida are required or permitted to be closed.

Section 1.2    **Lease of Premises.** Landlord hereby leases to Tenant, and Tenant hereby leases and takes from Landlord, upon and subject to the covenants, agreements, terms, provisions and conditions of this Lease, for the term and at the rent hereinafter stated, the Premises; subject, however, to all reservations, restrictions, easements and covenants of record. Tenant agrees to perform and discharge any and all duties and obligations, and pay any and all charges, assessments, levies and other amounts due and payable, in connection with any of such reservations, restrictions, easements and covenants which Landlord might otherwise have incurred by reason of the ownership of the Premises. In addition, during the Term (as defined below), Landlord shall not, without the prior written consent of Tenant, (i) cause any zoning change or reclassification with respect to the Premises; or (ii) grant any easements, licenses, covenants, conditions or declarations of use against the Premises.

Section 1.3    **Condition of Premises.** Tenant has accepted the Premises from the Landlord pursuant to this Lease "AS IS," "WHERE IS" and, "WITH ALL FAULTS". Tenant acknowledges that Landlord has made makes and shall make no representations or warranties with respect to the Premises, express or implied. Without limiting the generality of the foregoing, Tenant acknowledges and agrees that Landlord has made, makes and shall make (a) no representation or warranty of tenant ability, habitability, merchantability or suitability with respect to the Premises, (b) no representation or warranty of fitness with respect to any personal property contained therein, and (c) no representation or warranty with respect to the physical condition of the Premises or the operating order or condition of any fixtures, equipment or systems of the Building.    Tenant acknowledges    Tenant has had the full and complete opportunity to inspect the Premises (and to have engineering and other inspection reports prepared by professionals with respect to the Premises), and that Tenant is not relying upon any representations or warranties of Landlord with respect to the tenant ability, habitability, merchantability, suitability, fitness, physical condition, or operating order of the Premises or any of the personal property or fixtures, equipment or systems contained therein.    Tenant acknowledges and agrees that Landlord has no obligation to make any repairs or improvements to the Premises as a condition of either Tenant's acceptance of the Premises or payment of any rent or other amounts due under this Lease and that Tenant has accepted the Premises subject to all Legal Requirements (as defined below), including any existing violations thereof.

Section 1.4    **Incorporation of Recitals.** The recitals set forth in Paragraphs A through C on the first page of this Lease are incorporated herein by this reference and made an integral part of this Lease.

## ARTICLE 2
## TERM

**Section 2.1**      **Term.** The term of this Lease (the "Original Term") shall commence on the date hereof (the "Term Commencement Date") and shall terminate at 11:59 p.m. on the last day of the one hundredth and twentieth (120th) month (i.e. ten (10) Lease Years), or on such earlier date on which the term may expire or be terminated pursuant to the provisions of this Lease or pursuant to law. The last day on which this Lease is in effect is called the "Expiration Date". For purposes of this Lease, the term "Lease Year" shall mean, with respect to the first (1st) Lease Year, the period commencing on the Term Commencement Date and ending on the last day of the twelfth (12th) full calendar month thereafter; and with respect to each subsequent Lease Year, the period commencing on the first (1st) day after the end of the immediately prior Lease Year and ending on the last day of the twelfth (12th) full calen dar month thereafter.

**Section 2.2**      **Extension Options.** Tenant is hereby granted the option to extend the Original Term for up to three (3) additional periods of five (5) years each, at Tenant's sole and exclusive option (each such period hereinafter referred to as an "Extended Term"), and if so extended and unless sooner terminated pursuant to the provisions hereof, each Extended Term shall expire and terminate at 11:59 p.m. on the last day thereof. The Original Term as the same may be extended by this Section 2.2 is referred to herein as the "Term". Each such option to renew shall be exercised by Tenant's giving written notice thereof to Landlord by 12:00 midnight on or before the date which is six (6) months prior to the date upon which the applicable Extended Term, is to commence; provided that at the time Tenant shall give such written notice to Landlord, no Event of Default (as defined below) shall have occurred and be continuing. The terms and conditions of the lease during each Extended Term shall be identical to all of the terms and conditions of this Lease, except that (I) the Base Rental (as defined below) for each Extended Term shall be as set forth on Exhibit B, and (ii) Tenant shall have no further or additional right to renew or extend the Term of this Lease except to the extent of any unexercised Extended Term.

**Section 2.3**      **Right of First Refusal.** Provided Tenant is not then in default and has not previously been in default more than twice (which were cured) under this Lease during the Primary Term or any Renewal Term, Landlord and Tenant agree that if Landlord at any time during the term of this Lease receives any bona fide offer from a third party to purchase the Premises, and if any such offer is acceptable to Landlord, then Landlord agrees to notify Tenant in writing, within five (5) days after Landlord's acceptance of such offer, giving the name and address of the offer or and the price, terms and conditions of such offer. Tenant shall have thirty (30) days from and after the receipt of such notice in which to elect to purchase the Premises for the same consideration and upon the same terms and conditions contained in the bona fide offer by notifying Landlord in writing prior to the expiration of the fifteen (15) day period. If Tenant notifies Landlord timely, the parties shall be legally bound to the terms as disclosed by Landlord and accepted by Tenant. If Tenant does not notify Landlord timely, Landlord shall have the right to sell the Premises to the third party offer or disclosed to Tenant. If Landlord does not complete the sale, Tenant's right of first refusal shall be reinstated.

## ARTICLE 3
## RENTAL

**Section 3.1**      **Base Rental.** Tenant shall pay to Landlord or Landlord's designee as base rent, without prior demand or notice, at Landlord's address for notices set forth herein or elsewhere as directed by Landlord, annual rental (the "Base Rental") in the amount set forth on Exhibit B, payable in equal monthly installments as set forth on Exhibit B, together with any sales, rent or use tax payable thereon pursuant to applicable law. Such monthly Base Rental shall be payable in advance on the first day of each and every month, except that in the event the Term Commencement Date is a date other than the first (1st) day of a calendar month, then on the Term Commencement Date, Tenant shall pay a prorated monthly installment of Base Rental to Landlord for each day from the Term Commencement Date until the first (1st) day of the following calendar month. Tenant further agrees that Base Rental for the month of December 31, 2005 shall be payable on the Term Commencement Date. If requested by Landlord or Lender, such monthly Base Rental shall be payable by wire transfer in immediately available federal funds to such account in such bank as Landlord or Lender, as the case may be, shall designate from time to time in writing.

**Section 3.2**      **Tenant's Failure to Pay.** If any installment of Base Rental is not paid on the date due, Tenant shall pay Landlord interest on such overdue amount at the default rate of interest equal to the "prime rate" of Citibank, N.A. or its successor plus five percent (5%) (The "Default Rate") (but in no event shall Tenant pay an interest rate higher than the highest interest rate permitted by Legal Requirements) accruing from the due date of such payment until the same is paid. If any installment of Base Rental is not paid for a period of three (3) days after written notice of default thereof by Landlord or Lender, Tenant shall pay Landlord a late charge in an amount equal to three percent (3%) of the unpaid amount of such installment of Base Rental, but in no event shall Tenant pay a late charge higher than the highest late charge permitted by Legal Requirements.

**Section 3.3**      **True Lease.** Landlord and Tenant agree that, for federal income tax purposes, this Lease is a true lease and does not represent a financing arrangement, regardless of the treatment for accounting or financial reporting purposes. Landlord and Tenant agree that for federal income tax purposes Landlord will report its position as the owner of the Premises and Tenant will report its position as the tenant of the Premises.

**Section 3.4**      **Net Lease; Additional Rent.** It is the purpose and intent of Landlord and Tenant that the Base Rental payable under this ARTICLE 3 be absolutely net to Landlord, so that this Lease shall yield, absolutely net to Landlord, the Base Rental specified in this ARTICLE 3 for each relevant time period of this Lease. Tenant therefore covenants and agrees with Landlord to pay and discharge on a timely basis in accordance with this Lease, as additional rental hereunder, all costs, expenses, and obligations of every kind and nature whatsoever relating to the Premises which may arise or become due during the Term of this Lease (including, without limitation, all utility charges imposed or incurred with respect to the operation or occupancy of the Premises). In furtherance of the foregoing, Tenant acknowledges and agrees that whenever (I) it makes a request of Landlord or seeks Landlord's consent or approval to any matter with respect to this Lease, (ii) Tenant assigns its interest in this Lease, (iii) a Casualty (as defined below) or Taking (as defined below) occurs or (iv) there is a default by Tenant or an Event of

Default under this Lease, Tenant shall pay all reasonable out-of-pocket costs and expenses incurred by Landlord (including without limitation, reasonable attorney's fees and expenses) in pursuing its rights or obligations arising out of the foregoing.

Section 3.5    Set-off. Except as otherwise specifically provided herein, all Base Rental, additional rent, and other sums of money due and payable by Tenant to Landlord under the terms of this Lease shall be paid without deduction, set-off or abatement of any nature whatsoever, and no such deduction, set-off or abatement shall be interposed or asserted by the payor in any action or proceeding brought under this Lease; any such right to interpose or assert any such deduction, set-off or abatement being hereby expressly waived by both Landlord and Tenant. Tenant waives all rights which are not expressly stated herein but which may now or hereafter otherwise be conferred by law to quit, terminate or surrender this Lease or any of the Premises. In any action commenced by Landlord, Tenant shall have the right to interpose or assert valid defenses and compulsory counterclaims, and in a separate action commenced by Tenant, assert a counterclaim, which rights shall be independent of Tenant's continuing obligation to pay Base Rental, additional rent and other sums of money due and payable by Tenant to Landlord under the terms of this Lease without deduction, set-off or abatement.

Section 3.6    Security Deposit. On the date of execution of this Lease by Tenant, there shall be due and payable to Landlord by Tenant a security deposit in an amount equal to the first month's rent, to be held by Landlord for the performance by Tenant of Tenant's covenants and obligations under this Lease, it being expressly understood that the deposit shall not be considered at any time an advance payment of rental, last month's rent, a measure of Landlord's damage in case of default by Tenant or breach by Tenant of Tenant's covenants under this Lease. Upon the occurrence of any event of default by Tenant, Landlord at its option may use such deposit to the extent necessary to apply toward any arrears of rent, or to apply toward any other damage, injury or expense caused to Landlord by such event of default. Landlord shall have the right to retain and expend such deposit toward the cost of cleaning and repairing the premises if Tenant shall fail to deliver up such premises at the termination of this Lease in the condition delivered, less ordinary wear and tear.

## ARTICLE 4
## TAXES AND OTHER EXPENSES

**Section 4.1**    **Taxes and Impositions.**

(a)    At least ten (10) days prior to the date on which the same become due, but in no event later than December 31st of each year, and before any fine, penalty, interest or cost may be added thereto, or become due or be imposed by operation of law for the nonpayment thereof, Tenant shall pay directly to the taxing, assessing or levying authority an amount equal to the amount of all taxes, assessments, excises, levies, license fees and other governmental charges, general and special, ordinary and extraordinary, unforeseen and foreseen, of any kind and nature whatsoever with respect to the Premises and/or the Base Rental or additional rent payable pursuant to this Lease, or whether imposed upon or assessed against Landlord, Tenant or the Premises (collectively, "Impositions") which at any time prior to or accruing during the Term of this Lease may be assessed, levied, confirmed, imposed upon, or become due and payable out of or in respect of, or become a lien on, (a) the Premises or any part thereof, (b) any use or occupation of the Premises, and (c) such franchises as may be appurtenant to the use of the Premises, this transaction (including the rent payable under this Lease) or any document to which Tenant is a party, creating or transferring an interest or estate in the Premises. Tenant shall be entitled to any discount allowed on said Impositions in the event Tenant pays the Impositions prior to the date when said Impositions are due in full. In addition, Tenant shall pay all charges for utilities at the Premises as and when due pursuant to its existing contracts and other agreements with such utility providers. With respect to any Impositions that may be lawfully paid in installments over a period of years, Tenant shall be obligated to pay hereunder only an amount equal to the amount of such installments as are required to be paid during the Term of this Lease. For the calendar year in which the Term of this Lease terminates, Tenant shall only be responsible to pay an amount equal to the portion of such Impositions as are properly allocable to the period in such year during which this Lease is in force. Promptly following its payment of the Impositions to be paid hereunder, but in all events at least five (5) days prior to the date on which the same become delinquent, Tenant shall furnish to Landlord receipted bills or other written evidence that Tenant has discharged the Impositions due.

(b)    If at any time during the Term of this Lease the methods of taxation prevailing at the Term Commencement Date shall be altered so as to cause the whole or any part of the Impositions now levied, assessed or imposed on real estate and the improvements thereon to be levied, assessed and imposed wholly or partially as a capital levy or otherwise, on the rents received there from , or if as a result of any such alteration of the methods of taxation, any income, gross receipts or franchise tax, assessment, levy or other tax (including, but not limited to, any municipal, state or federal levy) or charge, or any part thereof, shall be measured by or based, in whole or in part upon the Premises and shall be imposed upon Landlord, or in the event after the date of this Lease any additional federal or state law is enacted for the purpose of taxation on leases, or any interest therein, which imposes a tax either directly or indirectly on this Lease, or on Landlord, then all such taxes, assessments, levies, or charges or the part thereof so measured or based, shall be deemed to be included within the term "Impositions" for the purposes hereof, and Tenant shall pay and discharge the same as herein provided in respect of the payment of Impositions. Each such tax, assessment, levy or charge, as aforesaid, shall be deemed to be an item of additional rent hereunder.

**Section 4.2**    **Tenant's Failure to Pay.** In the event that Tenant shall fail to pay any of the Impositions or other charges required by this ARTICLE 4 to be paid by Tenant, Landlord may (but shall be under no obligation to) pay the same, together with any fine, penalty, interest or cost added thereto; and any amounts so advanced there for by Landlord shall become an additional obligation of Tenant hereunder, which amounts shall constitute additional rental hereunder, payable by Tenant immediately upon receipt of demand there for , together with interest thereon at a rate equal to the Default Rate from the date paid by Landlord until reimbursed by Tenant.

**Section 4.3**    **Contest of Impositions.** Tenant shall have the right to contest or review by legal proceedings or in such manner as Tenant in its opinion shall deem advisable (which proceedings or other steps taken by Tenant if instituted shall be conducted diligently at its own expense and free of any expense to Landlord) any and all Impositions levied, assessed or imposed against the Premises or taxes in lieu thereof required to be paid by Tenant, provided that such contest shall not operate to prevent a sale, mortgage or other encumbrance of the Premises by Landlord and will not result in a tax sale of the Premises or any portions thereof. At the request of Tenant, Landlord will cooperate with Tenant and make available to Tenant upon demand any and all information in the possession of Landlord which Tenant may reasonably require, join in any such contest or proceeding, and execute any documents or pleadings that are reasonably required, including any agreement in settlement of any of those contests or proceedings if it is necessary to do so to prosecute such proceedings, but Tenant in those circumstances shall indemnify, defend and hold harmless Landlord from any liability, loss and expense (including, without limitation, reasonable attorneys' fees and out-of-pocket expenses, other than general overhead costs of Landlord, actually incurred) in connection therewith. In any event, no such contest shall defer or suspend Tenant's obligations to pay any Imposition as herein provided; but if Tenant is required by law to first pay the Imposition and then seek a refund from the taxing authority, Tenant shall do so. If Tenant does not pay the Imposition during the pendancy of any contest or review hereunder, Tenant shall provide Landlord as security for such contest or review, an amount of cash or bond equal to 125% of the amount being contested, or other form of security satisfactory in the reasonable opinion of Landlord to assure the payment, including all costs, attorneys' fees, interest and penalties, in the event that the contest or review is unsuccessful. No such security shall be required if the amount involved in the contest or review shall not exceed $15,000.00. Nothing in this Section 4.3 shall be in derogation of Landlord's right to contest or review any Imposition by legal proceeding or in such other manner as may be available to Landlord upon ten (10) days' prior written notice to Tenant. Tenant shall receive the benefit of any reduction in Impositions resulting from a contest of such Impositions permitted hereunder.

**Section 4.4**    **Limitation on Tenant's Expenses.** Nothing contained in this Lease shall require Tenant to pay any income taxes (whether federal, state, or local) assessed against Landlord, or any capital levy, corporation franchise, excise, profits, estate, succession, inheritance, or transfer taxes of Landlord, unless such taxes are imposed or levied upon or assessed as a total or partial substitute for, or in lieu of, any real estate taxes, assessments or other charges required to be paid by Tenant as additional rental pursuant to this ARTICLE 4, in which event such taxes shall be paid by Tenant. Furthermore, nothing contained in this Lease shall require Tenant to pay, or shall impose any liability on Tenant for the payment of, any mortgage indebtedness of Landlord or any fees, charges, or expenses incurred by Landlord in

connection with any mortgage financing relating to the Premises, other than those charged by Lender pursuant to Section 3.4 above.

## ARTICLE 5
## TENANT'S USE AND ACCESS

Section 5.1    Use. Tenant may use and occupy the Premises for any lawful purpose (Perkins Restaurant or any other business with prior written approval from Landlord). Tenant shall not use or occupy the Premises, or permit the Premises to be used or occupied, in violation of any Legal Requirement, or in any manner that would violate any certificate of occupancy with respect to the Premises or that would constitute a public or private nuisance.

Section 5.2    Tenant's Access to Premises. Tenant shall have access to the Premises at all times, 24 hours per day, every day of the year, during the Term of this Lease.

## ARTICLE 6
## LANDLORD'S ACCESS; LIMITATIONS ON LANDLORD

Section 6.1    Landlord's and Lender's Access to Premises. Landlord and Lender, and their respective employees, agents and contractors, shall have the right to enter and pass through the Premises or any part or parts thereof (a) at any time in emergencies and (b) otherwise during normal business hours, in a manner to minimize interference with Tenant's business and upon one (1) Business Day prior written notice:  (I) to examine and inspect the Premises (including an environmental inspection) and to show them to consultants and contractors and to prospective purchasers, mortgagees or insurers, and their respective agents and consultants, (ii) for making such repairs or changes in or to the Premises or in or to the Building or its facilities as may be permitted by this Lease or as may be mutually agreed upon by the parties (but Tenant acknowledges that Landlord has no obligation to make any such repairs or changes in or to the Premises or in or to the Building or its facilities), (iii) for ascertaining whether Tenant has complied with its obligations and agreements under this Lease or (iv) at any time within nine (9) months prior to the expiration of the Term of the Lease, to show the same to prospective tenants. Nothing in this Section shall be interpreted as imposing an obligation on Landlord or Lender to enter into or inspect the Premises.

Section 6.2    Limitation on Landlord's Rights. Landlord shall not, unless an Event of Default shall have occurred and is continuing, or unless Tenant shall have consented thereto, participate in the maintenance, repair, operation or management of the Premises or of any components or systems of the Building.

## ARTICLE 7
## REPAIRS AND MAINTENANCE

Section 7.1    Tenant's Responsibility. Tenant agrees that, during the Term of this Lease, it will at its own cost and expense (a) keep the Premises in a clean, orderly and sanitary condition; (b) comply in all material respects with and make all repairs, replacements and improvements to the Premises required by Legal Requirements (as such term is defined in Section 14.1 below), provided, however that notwithstanding the foregoing, Tenant shall fully comply with Legal Requirements at the specific request or demand of (I) any governmental

authority or agency and (ii) with respect to the reservations, restrictions, easements and covenants which affect the Premises, any party thereto other than Landlord; (c) comply in all material respects with the requirements of Tenant's casualty insurance coverage, and (d) operate and maintain the Building, all components and systems thereof, and the grounds and paved areas surrounding same, including, without limitation, the structure, roof, walls, foundation, heating, ventilating and air-conditioning systems, plumbing, mechanical, and electrical systems, parking lot, paving, landscaping, exterior lighting and signage, in good order and repair, ordinary wear and tear, Casualty and Taking excepted, provided, however, that if at any time ordinary wear and tear brings the condition of the Premises below good order and repair, then Tenant shall make such repairs or restorations to maintain such level of repair in the Building. Tenant shall not commit or suffer to be committed any waste upon or about the Premises and shall promptly at its sole cost and expense make all necessary repairs, restorations, renewals, and replacements to the Premises, whether interior or exterior, structural or non-structural. Such repairs, restorations, renewals and replacements shall, to the extent practicable, be at least equivalent in quality to the work or property replaced. Tenant shall be responsible for any upgrades required by Perkins Corporate.

Section 7.2    No Landlord Responsibility. Landlord shall have no responsibility or obligation whatsoever to maintain, repair, replace, restore, or keep safe the Building or the Land, and Landlord shall not be required to make any repairs, replacements, alterations, or renewals of any nature or description to the Premises or to the Building, whether interior or exterior, ordinary or extraordinary, structural or non-structural, foreseen or unforeseen, or to make any expenditure whatsoever in connection with this Lease or to inspect or maintain the Premises in any way.

## ARTICLE 8
## ALTERATIONS AND FIXTURES

Section 8.1    Alterations by Tenant. Subject to the limitations set forth in this ARTICLE 8, Tenant shall have the right, at its sole cost and expense, to make alterations (including, without limitation, landscaping), additions, or improvements to the Premises (collectively, "Alterations") during the Term hereof as often as and whenever it deems proper, so long as no Event of Default exists and is continuing on the part of Tenant hereunder, and provided Tenant obtains the written consent of Landlord prior to commencing any such Alterations, which consent shall not be unreasonably withheld, conditioned or delayed. Notwithstanding the foregoing, Tenant shall have the right to perform, without Landlord's consent, any Alterations which are non-structural or are structural but the cost of which do not exceed, either individually or in the aggregate with all other structural Alterations that have not been expressly approved by Landlord within the preceding two (2) year period, the amount set forth on Exhibit F identified as the Structural Alterations Threshold. Tenant shall have no right to make any such Alterations which, and Landlord's withholding of consent if Landlord's consent is required shall be deemed to be reasonable if such Alterations, (a) will, in Landlord's reasonable opinion, diminish the value of the Premises to Landlord; (b) are not permitted by applicable Legal Requirements or pursuant to a Mortgage or are not permitted or consented to or approved (if required) by Lender; or (c) require a rezoning of the Land or a variance or special use permit under the zoning then applicable to the Land. Landlord's consent shall not be required with respect to Alterations to any interior space in the Building which do not affect the

Building's structure or mechanical, electrical, plumbing, or heating, ventilation and air-conditioning systems.

Section 8.2    Approval of Plans. With respect to any Alterations which are required to be approved by Landlord, Tenant shall deliver to Landlord architectural plans and specifications for the work (by an architect of Tenant's choice and reasonably acceptable to Landlord), at least thirty (30) days before the beginning of such Alterations, which plans and specifications shall be subject to the approval of Landlord, which approval shall not be unreasonably withheld, conditioned, or delayed. Upon receipt of such plans and specifications, Landlord shall have twenty-five (25) days to review and approve same, or to notify Tenant in writing of any modifications to the plans and specifications which Landlord requires, in which event Tenant shall thereafter make such modifications as reasonably required by Landlord and resubmit revised plans and specifications for Landlord's final approval. Landlord shall have ten (10) Business Days to review and approve such resubmitted plans and specifications, and Landlord's failure to approve or disapprove the same within such time period shall be deemed approval thereof by Landlord. Any and all work approved by Landlord hereunder shall be performed substantially in accordance with said approved plans and specifications, and in compliance with all applicable Legal Requirements. Upon completion of same, Tenant shall furnish Landlord with as-built plans and drawings depicting any and all such Alterations. All Alterations which may be made to the Premises by Tenant shall, upon expiration or sooner termination of the Term, by lapse of time or otherwise, become the property of Landlord and remain upon and be surrendered with the Premises, other than Trade Fixtures (as defined below). Notwithstanding the foregoing, Landlord may condition its consent to any such proposed Alterations, at Landlord's option, on Tenant's agreement to remove such Alterations from the Premises, at Tenant's expense, upon the expiration or sooner termination of the Term of this Lease, provided, however, if Landlord has not conditioned its consent on Tenant removing such Alterations, Tenant shall have no obligation to remove such Alterations.

Section 8.3    Tenant's Trade Fixtures. Tenant may, at its option and expense and at any time and from time to time prior to the expiration of the Term of this Lease, install and replace in and remove from the Premises its trade fixtures including, but not limited to, equipment, racking, partitions, walls and wall systems, furniture and furnishings, (collectively, "Trade Fixtures") provided the same are not components of the Building (e.g., HVAC, plumbing, electrical or sprinkler systems, loading dock doors or other integral parts of the Building), are owned (or leased from a third party) by Tenant and the removal thereof can be accomplished without material damage to the Premises or the Building.

Section 8.4    Limitations on Landlord's Right to Alter the Building. Unless required by any Legal Requirement or otherwise specifically permitted pursuant to the terms of this Lease, Landlord shall not, at any time during the Term of this Lease or any extension thereof, make any addition or alteration to the Building or make any other alteration or change to the Premises, and Tenant acknowledges that Landlord has no obligation to make any alteration or changes to the Premises.

## ARTICLE 9
### FIRE AND OTHER CASUALTY

Section 9.1 **Certain Definitions.** For the purposes of this Lease, the following terms shall have the following meanings: (a) "Casualty" shall mean damage to or destruction of the Premises or any portion thereof by fire or other casualty or sudden destructive event; (b) "Date of Casualty" shall mean the date on which the Casualty occurs; and (c) "Proceeds" shall mean the amounts recovered as compensation or damages on account of a Casualty, including insurance payments, less the reasonable costs and expenses incurred in collecting such amount. Tenant shall give Landlord prompt written notice of any Casualty to the Premises, which notice shall specifically detail the nature of the Casualty and the extent of damage to the Premises. In the event the Proceeds exceed the amount set forth on Exhibit F identified as the Insurance Proceeds Threshold, Landlord (or if required by the Mortgage, Lender) shall be entitled to payment of the Proceeds, which shall be disbursed in accordance with Section 9.2 below.

Section 9.2 **Casualty.** If a Casualty occurs and the Premises is partially or totally destroyed, then Tenant shall diligently and with reasonable dispatch reconstruct, restore or repair the damaged portions of the Premises to a condition substantially equivalent to their condition immediately prior to the Casualty. Tenant shall be obligated to complete such reconstruction, restoration or repair at its sole cost and Landlord (or Lender) shall promptly make all of the Proceeds (to the extent received) available to Tenant for such reconstruction, restoration or repair after Tenant provides Landlord and Lender with reasonable assurances that all additional funds in excess of the Proceeds required to complete such reconstruction, restoration or repair will be available when needed. Tenant shall be responsible for paying all deductibles required by any and all insurance companies. If the Proceeds are held by Landlord or Lender, such Proceeds shall be made available to Tenant pursuant to commercially reasonable disbursement procedures as such reconstruction, restoration or repair progresses. Notwithstanding the above, if more than fifty (50%) percent of the Premises are destroyed, Tenant shall have the right and option within thirty (30) days after the date of the Casualty to elect to purchase the Premises in its "As Is" damaged condition for a Termination Value determined by the Landlord. The closing shall take place within thirty (30) days after such notice given by Tenant; Tenant shall pay all closing costs; and the Premises shall be sold in its "AS IS" condition without any warranties as to condition or fitness by Landlord.

If any Casualty to the Premises occurs, Tenant shall give Landlord Lender immediate notice thereof.. So long as no Event of Default exists, Tenant is hereby authorized to negotiate all claims under any of the insurance policies required by Article 11 (except public liability insurance claims payable to a person other than Tenant, Landlord or Lender) and to execute and deliver all necessary proofs of loss, receipts, vouchers and releases required by the insurers and Landlord shall have the right to join with Tenant therein. Any final adjustment, settlement or compromise of any such claim shall, however, be subject to the prior written approval of Landlord, which shall not be unreasonably withheld or delayed, and Landlord shall have the right to prosecute or contest, or to require Tenant to prosecute or contest, any such claim, adjustment, settlement or compromise. If an Event of Default exists, Tenant shall not be entitled to adjust, collect or compromise of the net award payable in connection with a Casualty. Tenant agrees to sign, upon the request of Landlord, all such proofs of loss, receipts, vouchers and releases. Each insurer is hereby authorized and directed to make payment under said policies, including return

of unearned premiums, directly to Landlord or, if required by the Mortgage, to Lender instead of to Landlord and Tenant jointly, and Tenant hereby appoints each of Landlord and Lender as Tenant's attorneys-in-fact to endorse any draft therefore. The rights of Landlord under this Paragraph 9.2 shall be extended to Lender if and to the extent that any Mortgage so provides.

Notwithstanding anything contained in this Agreement to the contrary, so long as Tenant complies with the insurance requirements contained in Article 11 of this Agreement, Tenant shall only be liable to reconstruct, restore, or repair the damaged portions of the premises to the extent possible through net insurance proceeds received as a result of such casualty.

Section 9.3    No Rent Abatement; No Extension. The Base Rental and additional rent due hereunder shall not abate while any reconstruction, restoration or repair work is performed at the Premises or the Premises are otherwise untenantable as a result of such Casualty; provided, however, that all net rental loss insurance proceeds received by Landlord shall be applied against and shall reduce the Base Rental otherwise due from Tenant while such reconstruction, restoration or repair work is being performed. Notwithstanding the foregoing, no Casualty to the Premises, nor any reconstruction, restoration or repair by Tenant in connection therewith shall extend the Term of this Lease nor give Landlord or Tenant any right to terminate this Lease. The provisions of this Lease are intended to govern Tenant's rights and obligations in the event of a Casualty in lieu of any statutory provisions.

## ARTICLE 10
## LIABILITY

Section 10.1    Waiver of Subrogation. Tenant hereby waives any and all rights of recovery against Landlord and Lender, or against their respective officers, employees, agents or representatives, for loss of or damage to property or the property of others under its control, if such loss or damage is covered by any insurance policy (whether or not described in this Lease) in force, or required by the terms of this Lease to be in force at the time of such loss or damage. Tenant shall obtain for the benefit of Landlord and Lender on any property insurance policy required hereunder a waiver of any right of subrogation which the insurer might otherwise acquire against Landlord or Lender (or such party's officers, employees, agents or representatives) by virtue of the payment of any loss covered by insurance or otherwise.

Section 10.2    Tenant's Indemnity.    SUBJECT TO SECTION 10.4 BELOW, TENANT AGREES TO DEFEND, PAY, PROTECT, INDEMNIFY, SAVE AND HOLD HARMLESS ON AN AFTER-TAX BASIS LANDLORD AND LENDER, ANY ENTITY CONTROLLED BY LANDLORD OR LENDER AND EACH OF THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, SHAREHOLDERS, AGENTS, MEMBERS AND PARTNERS AND EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS (COLLECTIVELY, THE "LANDLORD AND LENDER INDEMNITEES"), FROM AND AGAINST ANY AND ALL LIABILITIES, LOSSES, DAMAGES, PENALTIES, COSTS, EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES AND EXPENSES), CAUSES OF ACTION, SUITS, CLAIMS, DEMANDS OR JUDGMENTS OF ANY NATURE WHATSOEVER, HOWSOEVER CAUSED, ARISING PRIOR TO THE

EXPIRATION OR EARLIER TERMINATION OF THIS LEASE FROM (A) AN OCCURRENCE OR EVENT ARISING IN, ON OR ABOUT THE PREMISES, (B) THE USE, NON-USE, OCCUPANCY, CONDITION, DESIGN, CONSTRUCTION, MAINTENANCE, REPAIR, OR REBUILDING OF ANY OF OR OTHERWISE RELATING TO, THE PREMISES, INCLUDING, BUT NOT LIMITED TO, ANY INJURY TO OR DEATH OF ANY PERSON OR PERSONS OR ANY LOSS OF OR DAMAGE TO ANY PROPERTY, REAL OR PERSONAL, IN ANY MANNER ARISING THEREFROM CONNECTED THEREWITH OR OCCURRING THEREON, OR (C) ANY DEFAULT BY TENANT OR EVENT OF DEFAULT UNDER THIS LEASE (COLLECTIVELY, "LOSSES"), WHETHER OR NOT LANDLORD HAS OR SHOULD HAVE KNOWLEDGE OR NOTICE THEREOF, IF ANY, CAUSING OR CONTRIBUTING TO SAID LOSS AND WHETHER OR NOT THE EVENT IN QUESTION AROSE PRIOR TO OR AFTER THE DATE OF THIS LEASE. IN CASE ANY ACTION OR PROCEEDING IS BROUGHT AGAINST LANDLORD OR LENDER BY REASON OF ANY SUCH LOSS, TENANT COVENANTS UPON NOTICE FROM LANDLORD OR LENDER TO DEFEND LANDLORD AND/OR LENDER IN SUCH ACTION, WITH THE EXPENSES OF SUCH DEFENSE PAID BY TENANT, AND LANDLORD OR LENDER WILL COOPERATE AND ASSIST IN THE DEFENSE OF SUCH ACTION OR PROCEEDING IF REASONABLY REQUESTED TO DO SO BY TENANT. THE OBLIGATIONS OF TENANT UNDER THIS SECTION 10.2 SHALL SURVIVE THE EXPIRATION OR EARLIER TERMINATION OF THIS LEASE.

Section 10.3    Limitation of Liability.    Tenant agrees to look solely to Landlord's interest in the Premises and the rent and other income and proceeds derived there from (including any Proceeds and Awards held by Landlord or Lender if not being applied as required pursuant to the terms of this Lease) for the recovery of any monetary judgment against Landlord. Accordingly, Landlord's obligations and liability with respect to this Lease shall be limited solely to Landlord's interest in the Premises and proceeds there from , as such interest is constituted from time to time, and neither Landlord nor any trustee, member, officer or employee of Landlord shall have any personal liability whatsoever with respect to this Lease.

Section 10.4    Statutory Limitation on Indemnity.    Except as otherwise provided in Section 10.1 above (entitled "Waiver of Subrogation"), nothing contained in this Lease shall be construed as purporting to indemnify Landlord, Lender or the Landlord and Lender Indemnities against or hold Landlord, Lender or the Landlord and Lender Indemnities harmless from liability for damages arising out of bodily injury to persons or damage to property resulting from the gross negligence or willful misconduct of Landlord, Lender or the Landlord and Lender Indemnities , in violation of any provisions of applicable law. Landlord and Tenant agree that any provisions of said Section 10.1 that may be construed as indemnifying Landlord or Lender against liability for damages arising out of bodily injury to persons or damage to property resulting from the gross negligence or willful misconduct of Landlord, Lender or the Landlord and Lender Indemnities, are not intended to be in violation of any provisions of applicable law.

## ARTICLE 11
## INSURANCE

**Section 11.1    Tenant's Insurance.** Tenant shall maintain at all times during the Term of this Lease, at its sole cost and expense: (a) all-risk insurance under an ISO "Special Form" Policy (or its equivalent), covering the Building in an amount equal to the full replacement cost thereof; including, without limitation, terrorism insurance, wind insurance, sink hole ,erosion, flood insurance (if the Premises is located in a flood zone) and earthquake insurance (if customarily required by lenders for property similar to, and in an area which has a similar earthquake potential as, the Premises). Such policy shall include other commercially available coverage's customarily carried in respect of comparable buildings unless the cost of obtaining any additional coverage is economically unreasonable, (b) commercial general liability insurance (including contractual) with minimum limits of $3,000,000 (or such lesser amount provided that Tenant maintains the limit set forth in clause (c) below) for injury to or death of one or more persons in any one occurrence, and $3,000,000 (or such lesser amount provided that Tenant maintains the limit set forth in clause (c) below) for damage to or destruction of property in any one occurrence; (c) excess liability insurance over the insurance required by clause (b) of this Section such that the Tenant maintains a combined, minimum coverage of $10,000,000 for such lines of insurance; (d) worker's compensation insurance up to statutory limits; (e) rental loss insurance covering at least twelve (12) months of the then current Base Rental and additional rent under this Lease; and (f) such other insurance coverage as is customarily carried in respect of comparable buildings, provided such insurance is commercially available and the cost thereof is economically reasonable. The minimum limits of the liability policies maintained pursuant to clause (b) above shall be adjusted for inflation every five (5) Lease Years based on the percentage increase in the Consumer Price Index-Urban Wage Earners and Clerical Works, U.S., All Items, 1982-1984 = 100, since the last increase in such limits. Tenant shall have the right, but not the obligation, to maintain the required liability insurance in the form of a blanket policy covering other locations of Tenant in addition to the Premises; provided, however, that Tenant shall provide Landlord with a certificate of insurance specifically naming the location of the Premises and naming Landlord and Lender as additional insured's and certificate holders as required by Section 11.2, the limits of which coverage are to be in the amounts set forth in this Section. With respect to terrorism coverage, the parties acknowledge that while the cost for obtaining such coverage is currently economically reasonable, such conditions could change in the future. Accordingly, it is agreed that in the event the cost of obtaining terrorism coverage becomes economically unreasonable, Tenant shall nevertheless have an obligation to obtain to the extent available such coverage, but Tenant shall only be obligated to expend for such coverage an amount equal to ten percent (10%) of the premium for the property policy (if it did not contain terrorism coverage) required by Section 11.1(a). In other words, under the conditions described above, Tenant would be relieved from the obligation to obtain terrorism coverage with a limit equal to the full replacement cost of the Building, but would be required to obtain such coverage with such limit that can be purchased for the above mentioned premium.

**Section 11.1    Tenant's Insurance Policies.** The insurance required to be maintained by the Tenant hereunder shall be written by companies headquartered in the United States and governed by the state of Florida having an A. M. Best rating of "A minus" or better and a financial category of "VII" or better (except for the insurance required by Section 11.1(a), where the A.M. Best rating shall be "A" or better and a financial category of VIII or better) and legally

qualified to issue such insurance, and shall include as additional insured's and certificate holders Landlord and Lender as their interests may appear. Landlord and Lender shall be the only additional insured's on the insurance required by Section 11.1(a). Each such policy may have a deductible not to exceed the amounts set forth on Exhibit F, (except for the rental loss insurance required under Section 11.1(e) above where the insurer shall agree, and state so on the certificate of insurance, that there will be no deductible to the extent any proceeds are recoverable by Landlord), and shall provide that it will not be terminated, canceled or materially modified except after not less than thirty (30) days' written notice to Landlord and Lender. Tenant shall deliver to Landlord and Lender certificates of insurance evidencing the existence and renewal of all insurance which is required to be maintained by Tenant hereunder (and specifically confirming that such policy shall not be terminated, canceled or materially modified except after not less than thirty (30) days' written notice to Landlord and Lender), such delivery to be made promptly after such insurance is obtained and at least thirty (30) days prior to the expiration date of any such insurance policy. Landlord and Tenant agree that, without limitation, any modification to the insurance policies with respect to a reduction in the limits below the amounts required hereunder, any increase in the deductibles set forth herein or the naming of additional insured's to the policy set forth in Section 11.1(a) or the deletion of Landlord or Lender as additional insured's as required herein, shall be deemed a material modification, and the certificates of insurance shall so state the foregoing. In the event of an Event of Default under Section 13.1(g) below, Landlord or Lender shall be entitled to procure such insurance. Any reasonable out-of-pocket costs (but not including general overhead costs of Landlord) expended by Landlord or Lender in procuring such insurance shall be additional rent and shall be repaid by Tenant, together with interest thereon at the Default Rate, from the time of payment by Landlord or Lender until fully paid by Tenant immediately upon written demand there for by Landlord or Lender, as the case may be. Any insurance required hereunder may be provided under such blanket policies as are then customary for comparable buildings, provided that the coverage allocated to the Premises is not less than the coverage contemplated by this Lease as separately stated in this ARTICLE 11.

## ARTICLE 12
## CONDEMNATION

Section 12.1    Certain Definitions. The following terms shall have the following meanings: (a) "Taking" shall mean the transfer of the use, occupancy or title of the Building or the Premises or any portion thereof to an entity exercising the power of eminent domain in any actual or threatened action or proceeding pursuant to any law, general or special, and shall include any such transfer made in settlement of any such threatened action or proceeding; (b) "Date of Taking" shall mean the earlier of the Date upon which the use, occupancy or title of the Building or the Premises or any portion thereof is vested in, or possession thereof is taken by, such entity; and (c) "Award" shall mean the amounts recovered as compensation or damages on account of a Taking, including all amounts paid pursuant to any agreement with such entity which has been made in settlement or under threat of any such action or proceeding, less the reasonable costs and expenses incurred in collecting such amounts.

Section 12.2    Total Taking. If there shall occur a Taking of all of the Building or of all of the Premises (other than for temporary use or occupancy), then this Lease shall terminate effective as of the Date of Taking, and such date shall be the Expiration Date; provided,

however, that such termination shall be without prejudice to the rights of Landlord and Tenant to recover an Award and to apportion such Award in accordance with the terms of this Lease.

Section 12.3    Partial Taking. If there shall occur a Taking of only a part of the Building or the Premises (other than for temporary use or occupancy), then Landlord shall give Tenant prompt notice thereof and the part so taken shall no longer constitute part of the Premises, but this Lease shall continue in force and effect as to the part not so taken; provided, however, that Tenant may elect to terminate this Lease if such a partial Taking (a) deprives Tenant of more than fifteen (15%) percent of the Premises (excluding land which is vacant) or the Building, (b) materially and adversely affects Tenant's access to the Premises or use of the loading docks at the Premises unless sufficient access or loading docks can be available after restoration and, if necessary, a replatting of the Premises, all at a reasonable cost to Tenant in excess of the Award, or (c) reduces the number of parking spaces available to Tenant below the number required by applicable Legal Requirements, unless sufficient replacement parking spaces can be provided on the Land to satisfy such Legal Requirements after, if necessary, a replatting of the Premises, all at a reasonable cost to Tenant in excess of the Award. Notwithstanding the foregoing, Tenant shall not have the right to terminate this Lease unless Tenant, as a result of such Taking (taking into account the completion of any restoration work), can no longer operate its business at the Premises in substantially the same manner as its business was operated prior to such Taking. Tenant may give notice to Landlord of any election to terminate at any time after the Date of Taking but not later than sixty (60) days after notice of such Taking is given by Landlord to Tenant in accordance with Section 23.1 hereof. The date specified in Tenant's notice (which shall not be more than sixty (60) days thereafter) shall be the Expiration Date. Upon a partial Taking and the completion of any restoration work, the Base Rental (but not additional rent and other sums payable by Tenant hereunder) shall be reduced equitably, based upon the part or parts of the Building or the Premises so taken, to the extent that any portion of the Building or the Premises is not usable by Tenant for the purposes for which it was leased, provided, however, in the event the Mortgage does not permit a reduction in monthly debt service payments as a result of a partial Taking, the Award to which Landlord is entitled shall be assigned to Tenant, in which event there shall be no reduction in the Base Rental, additional rent and other sums payable by Tenant hereunder.

Section 12.4    Claims of Landlord and Tenant. Landlord shall be entitled to receive the entire Award in any proceeding with respect to any Taking provided for in this ARTICLE 12 without deduction there from for any estate vested in Tenant by this Lease, and Tenant shall receive no part of such Award, except as hereinafter expressly provided. Provided, it does not diminish the Award that Landlord is entitled to receive as heretofore provided, Tenant shall have the right to make a separate claim with the condemning authority for (a) any moving expenses incurred by Tenant as a result of such condemnation; (b) the value of Trade Fixtures and Movable Equipment (as defined below), if any, that is taken; (c) business interruption costs; and (d) the value of any savings resulting from any below-market rent payable by Tenant hereunder.

Section 12.5    Distribution of the Award. The aggregate amount of the Award shall be paid to Landlord (other than any Award to Tenant pursuant to Tenant's separate claims as set forth above), regardless of the apportionment of the Award in any agreement with the condemning authority or in any proceeding. Tenant acknowledges that pursuant to the terms of the Mortgage, Landlord may be obligated to pay over the Award to Lender.

Section 12.6    Temporary Taking of Premises.  If all or any part of the Premises shall be the subject of a temporary Taking, this Lease shall nevertheless remain in full force and effect, and Tenant shall continue to be responsible for all of its obligations hereunder insofar as such obligations are not affected by such Taking.  In addition, the Base Rental, additional rent and other sums payable by Tenant hereunder shall not abate as a result of such Taking.  The Award for any such temporary Taking shall be paid to Tenant.

Section 12.7    Restoration.  In the event of a Taking which does not result in the termination of this Lease, Tenant shall restore the remainder of the Premises to an architectural whole, and Landlord or Lender shall make the Award available to Tenant for such restoration pursuant to commercially reasonable disbursement procedures as the restoration progresses.  Except as provided by the last sentence of Section 12.3, Landlord (or Lender) shall be entitled to any portion of the Award remaining after the restoration is completed.  The provisions of this Lease are intended to govern Tenant's rights and obligations in the event of a Taking in lieu of any statutory provisions.

## ARTICLE 13
## DEFAULTS AND REMEDIES

Section 13.1    Default by Tenant.  In addition to the circumstances set forth elsewhere in this Lease, the occurrence of any of the following events shall constitute a material breach and default of this Lease by Tenant (sometimes referred to herein as an "Event of Default"):

(a)    Tenant's failure to pay any Base Rental, within five (5) Business Days after written notice of such failure is provided.

(b)    Tenant's failure to pay any additional rental or other payment to be made by Tenant hereunder within ten (10) days after written notice of such failure is provided

(c)    Tenant's failure to promptly and fully perform any provision of this Lease not addressed in Subparagraphs (a), (b) and (d) through (f) of this Section 13.1 and Tenant fails to cure such default within thirty (30) days after written demand by Landlord that the default be cured, provided if such default is not capable of being cured within such thirty (30)-day period, Tenant shall have such longer period, as may be necessary to cure such default if Tenant has promptly commenced the cure of such default within such original thirty (30)-day period and is diligently, continuously, and in good faith pursuing the cure of such default.

(d)    The filing of any voluntary petition or similar pleading under any section or sections of any bankruptcy or insolvency act by or against Tenant, or the institution of any voluntary proceeding in any court or tribunal to declare Tenant insolvent or unable to pay Tenant's debts or an involuntary petition or proceeding for such purpose that is not dismissed within sixty (60) days from the date it is filed, or the making of an assignment for the benefit of its creditors by Tenant, or the appointment of a trustee or receiver for Tenant or for the majority of Tenant's property.

(e)    Tenant shall do or permit to be done any act which results in a lien being filed against the Land, and such lien is not released or transferred to bond or other security within

sixty (60) days after Tenant receives written notice (from Landlord or any other party) of its existence.

(f)        Tenant's interest in the Lease or the Premises shall be subjected to any attachment, levy or sale pursuant to any order or decree entered against Tenant in any legal proceeding and such order or decree shall not be vacated within sixty (60) days of entry thereof.

(g)        Tenant's failure to renew insurance as required by Section 11.2 or receipt of notice that any insurance is being terminated, canceled or modified so as to be non-compliant with the provisions of ARTICLE 11, and Tenant fails to cure such default within ten (10) days after written notice thereof is provided.

Section 13.2        Landlord's Remedies.  Upon the occurrence and during the continuance of an Event of Default by Tenant, Landlord shall, to the maximum extent permitted by applicable law, have the option to do and perform any one or more of the following in addition to, and not in limitation of, any other remedy or right permitted it by law or in equity or by this Lease:

(a)        Landlord, with or without terminating this Lease, may immediately or at any time thereafter re-enter the Premises and correct or repair any condition which shall constitute a failure on Tenant's part to keep, observe, perform, satisfy or abide by any term, condition, covenant, agreement, or obligation of this Lease or of any written notice given Tenant by Landlord pursuant to the terms of this Lease, and Tenant shall fully reimburse and compensate Landlord on demand, as additional rental hereunder, for all payments made and sums reasonably incurred by Landlord on account thereof and all necessary and incidental out-of-pocket costs and expenses (but not including general overhead of Landlord), including, without limitation, all reasonable attorneys' fees and expenses actually incurred, together with interest thereon at the Default Rate from the date paid, the date such payment was due, or the date such cost was incurred, as applicable, through and including the date reimbursed to Landlord.

(b)        Landlord, with or without terminating this Lease, may immediately or at any time thereafter demand in writing that Tenant vacate the Premises and thereupon Tenant shall vacate the Premises and remove there from all property thereon belonging to or placed on the Premises by, at the direction of, or with consent of Tenant, within ten (10) days of receipt by Tenant of such notice from Landlord, where upon Landlord shall have the right to re-enter and take possession of the Premises.  Any such demand, re-entry and taking possession of the Premises by Landlord shall not of itself constitute an acceptance by Landlord of a surrender of this Lease or of the Premises by Tenant and shall not of itself constitute a termination of this Lease by Landlord.

(c)        Provided Tenant has not vacated the Premises after demand by Landlord pursuant to Section 13.2(b) above, Landlord, with or without terminating this Lease, may immediately or at any time thereafter, re-enter the Premises and remove there from Tenant and all property belonging to or placed on the Premises by, at the direction of, or with the consent of Tenant.  Any such re-entry and removal by Landlord shall not of itself constitute an acceptance by Landlord of a surrender of this Lease or of the Premises by Tenant and shall not of itself constitute a termination of this Lease by Landlord.

(d)        Landlord, with or without terminating this Lease, may immediately or at any time thereafter, without any obligation to do so, re let the Premises or any part thereof for such time or times, at such rental or rentals and upon such other terms and conditions as Landlord in its sole discretion may deem advisable, and Landlord may make any alterations or repairs to the Premises which it may deem necessary or proper to facilitate such re letting; and Tenant shall pay all reasonable costs of such re letting including but not limited to the cost of any such alterations and repairs to the Premises, attorneys' fees, leasing inducements, and brokerage commissions, together with interest thereon at the Default Rate from the date incurred through and including the date paid; and if this Lease shall not have been terminated, Tenant shall continue to pay all rent and all other charges due under this Lease up to and including the date of beginning of payment of rent by any subsequent tenant of part or all of the Premises, and thereafter Tenant shall pay monthly during the remainder of the Term of this Lease the difference, if any, between the rent and other charges collected from any such subsequent tenant or tenants and the rent and other charges reserved in this Lease, but Tenant shall not be entitled to receive any excess of any such rents collected over the rents reserved herein.

(e)        Landlord may terminate this Lease by written notice to Tenant specifying a date there for , which shall be no sooner than five (5) days following notice to Tenant, and this Lease shall then terminate on the date so specified as if such date had been originally fixed as the expiration date of the Term of this Lease; upon such termination Landlord shall recover from Tenant all damages Landlord may suffer by reason of such termination including, without limitation, all arrearages in rentals, costs, charges, additional rentals, and reimbursements, the cost (including court costs and reasonable attorneys' fees actually incurred) of recovering possession of the Premises, and the cost of any alteration of or repair to the Premises which is necessary or proper to prepare the same for re letting.

(f)        Landlord may at its option, declare the difference, if any, between (I) the entire amount of Base Rental which would become due and payable during the remainder of the Term, discounted to present value using a discount rate equal to eight and one-half (8.5%) percent, and (ii) the fair rental value of the Premises during the remainder of such Term (taking into account, among other factors, the anticipated duration of the period the Premises will be unoccupied prior to re letting and the anticipated cost of re letting the Premises), also discounted to present value using a discount rate equal to eight and one-half (8.5%) percent, to be due and payable immediately, in which event such sum shall be due and payable immediately and Tenant agrees to pay the same at once, together with all Base Rental, additional rent and other sums theretofore due; it being understood and agreed that such payment shall be and constitute Landlord's liquidated damages with respect to Base Rental, and for additional rent and other sums theretofore payable by Tenant under this Lease, Landlord and Tenant acknowledging and agreeing that it is difficult or impossible to determine the actual damages Landlord would suffer from Tenant's breach hereof and that the agreed upon liquidated damages are not punitive or penalties and are just, fair and reasonable. If Landlord exercises the election set out in this subparagraph, Tenant hereby waives any right to assert that Landlord's actual damages are less than the amount calculated hereunder; and Landlord waives any right to assert that Landlord's actual damages for Base Rental, and for additional rent and other sums theretofore payable by Tenant under this Lease are greater than the amount calculated hereunder.

(g)        If Landlord re-enters the Premises or terminates this Lease pursuant to any of the remedies provided to Landlord in this Section 13.2, Tenant hereby waives all claims for damages which may be caused by such re-entry or termination by Landlord. No such re-entry or termination shall be considered or construed to be a forcible entry.

Section 13.3        Landlord Default. If Landlord fails to promptly and fully perform any provision of this Lease and Landlord does not cure such default within thirty (30) days after written demand by Tenant that the default be cured, provided if such default is not capable of being cured within such thirty (30)-day period, Landlord shall have such longer period as may be necessary to cure such default if Landlord has promptly commenced the cure of such default within such original thirty (30)-day period and is diligently, continuously, and in good faith pursuing the cure of such default, then Tenant may cure such default on Landlord's behalf and make a claim against Landlord for the reasonable out-of-pocket expenses incurred by Tenant in curing such default by Landlord. If Landlord fails to reimburse Tenant for the reasonable and actual out-of-pocket costs (but not including general overhead costs of Landlord) of such repairs within ten (10) days after receipt from Tenant of a statement of such costs, then Tenant may bring a separate action against Landlord to recover such cost, but in no event may Tenant offset or deduct such amounts against or abate any Base Rental or additional rental or terminate this Lease.

Section 13.4        Attorneys' Fees. If any rent or other debt owing by Tenant to Landlord hereunder is collected by or through an attorney at law, Tenant agrees to pay Landlord's reasonable attorneys' fees plus documented expenses of the attorney(s) representing Landlord. In the event Landlord and Tenant are involved in a dispute under this Lease the resolution of which is determined in a court of law, the prevailing party shall be entitled to recover from the other, as part of the judgment rendered in such judicial proceeding, an amount equal to the attorneys' fees plus documented expenses of the attorney(s) representing the prevailing party in such proceeding.

Section 13.5        Non-Waiver; Forbearance. Landlord's or Tenant's pursuit of any one or more of its stated remedies shall not preclude pursuit of any other remedy or remedies provided for in this Lease or any other remedy or remedies provided for or allowed by law or in equity, separately or concurrently, or in any combination. Landlord's or Tenant's pursuit of any one or more of the remedies provided in this Lease shall not constitute an election of remedies excluding the election of another remedy or other remedies, or a forfeiture or waiver of any damages or other sums accruing to Landlord or Tenant by reason of the other's default. Forbearance in pursuing or exercising one or more remedies shall not be deemed or construed to constitute a waiver of any default or any remedy. No waiver by Landlord or Tenant of any right or remedy on one occasion shall be construed as a waiver of that right or remedy on any subsequent occasion or as a waiver of any right or remedy then or thereafter existing. No failure of Landlord or Tenant to pursue or exercise any of its powers, rights or remedies or to insist upon strict and exact compliance by the other with any agreement, term, covenant, condition, requirement, provision or restriction of this Lease, and no custom or practice at variance with the terms of this Lease, shall constitute a waiver by Landlord or Tenant of the right to demand strict and exact compliance with the terms and conditions of this Lease.

## ARTICLE 14
## COMPLIANCE WITH LAWS

**Section 14.1**    **Tenant's Compliance with Laws.**  Tenant, at its expense, shall comply in all material respects with any valid and applicable laws, rules, orders, ordinances, regulations and other requirements, including any reservations, restrictions, easements and covenants, present or future, ordinary or extraordinary, foreseen or unforeseen, (collectively, "Legal Requirements"), affecting the Premises, the Building or the Land that are promulgated by any governmental authority or agency having jurisdiction or which are of record, including, without limitation, all Legal Requirements affecting the design, construction and operation of the Building or relating to the Land or relating to the performance by Tenant of any duties or obligations to be performed by it hereunder.  Without limiting the foregoing, Tenant shall comply or cause the Building to comply in all material respects with all present and future energy conservation and fire and safety laws, regulations and codes, and Tenant shall comply or cause the Premises to comply with the Americans with Disabilities Act.  Notwithstanding the foregoing, Tenant shall fully comply with Legal Requirements at the specific request or demand of (I) any governmental authority or agency, and (ii) with respect to reservations, restrictions, easements and covenants which affect the Premises, any party thereto other than Landlord.

**Section 14.2**    **Contest of Legal Requirements.**  Tenant, at its expense and by appropriate proceedings diligently prosecuted, may contest the validity or applicability of any Legal Requirement, and may postpone its compliance therewith until such contest shall be decided, provided such postponement does not subject Landlord, Lender or the Premises to loss, damage or civil or criminal liability.

## ARTICLE 15
## ASSIGNMENT AND SUBLETTING

**Section 15.1**    **Assignment and Subletting by Tenant.**  Provided no Event of Default has occurred and is continuing, Tenant may sublet the Premises or any part thereof, or assign this Lease, or grant concessions or licenses or other rights for the occupancy or use of the Premises or any part thereof without first obtaining the written consent and approval of Landlord.

(a)    Notwithstanding any subletting, assignment or occupancy as provided hereunder or any language contained in such sublease or assignment to the contrary, Tenant shall not be relieved of any of Tenant's monetary or affirmative obligations or covenants under this Lease (such as, but not limited to, obligations to pay Base Rental or any other sum of money under this Lease; or obligations to undertake repairs to the Premises), and Tenant shall remain fully liable hereunder for such obligations and covenants, except as provided in Section 15.1(e) below.

(b)    Notwithstanding anything to the contrary set forth in this Section 15.1, if Tenant desires to sublet all or any portion of the Premises or assign all or any portion of Tenant's interest in this Lease, Tenant shall notify Landlord in writing of the terms of the proposed subletting or assignment, the identity of the proposed sub lessee or assignee, the area proposed to be sublet or covered by the assignment, and such other information as Landlord may reasonably request, including, without limitation, a copy of the proposed sublease or assignment document.

Tenant shall provide such information to Landlord whether or not Landlord has the right to approve or disapprove such action.

(c)    If the Premises or any part thereof is sublet or occupied by a party other than Tenant or this Lease is assigned, Landlord may, during the continuance of an Event of Default by Tenant, collect rent from the subtenant, assignee or occupant, and apply the net amount collected to the Base Rental and any other sums herein reserved. No such subletting, assignment, occupancy, or collection shall be deemed (i) a waiver of any of Tenant's covenants contained in this Lease, (ii) a release of Tenant from further performance by Tenant of its covenants under this Lease, or (iii) a waiver of any of Landlord's other rights hereunder.

(d)    Landlord hereby subordinates to any and all of Tenant's lenders each and every right which Landlord now has, or may hereafter have, under the laws of the United States of America and the State in which the Premises is located, or by virtue of any lease now or hereafter in effect, to levy or distrain upon for rent in arrears, in advance, or both, or to claim or assert any right or title to, interest in or lien upon Tenant's Trade Fixtures, Movable Equipment or any other personal property which is unattached to the Premises and owned by Tenant ("Personal Property"). Tenant shall have the absolute right from time to time during the Term hereof and without Landlord's further approval, written or otherwise, to grant and assign a mortgage or other security interest in Tenant's interest in this Lease and all of Trade Fixtures, Movable Equipment or any other Personal Property to Tenant's lenders in connection with Tenant's financing arrangements. Landlord agrees not too unreasonably with hold, condition or delay its consent to executing such confirmation of the foregoing, as Tenant's lenders may reasonably request in connection with any such financing.

## ARTICLE 16
## QUIET ENJOYMENT

Provided Tenant performs the terms, conditions and covenants of this Lease and no Event of Default hereunder shall have occurred and be continuing, Landlord covenants and agrees to allow Tenant the quiet and peaceful possession of the Premises for the Term of this Lease, without hindrance, claim or molestation by Landlord.

## ARTICLE 17
## PROVISIONS WITH RESPECT TO MORTGAGES

Section 17.1    Subordination. Subject to Tenant receiving an executed subordination, non-disturbance and attornment agreement as set forth in Section 17.4 below from the holder of any such Mortgage, Tenant agrees that this Lease shall be automatically subject and subordinate to each Mortgage, including any modifications, extensions or renewals thereof and advances there under now or from time to time hereafter in effect, on the terms and conditions set forth in this ARTICLE 17.

Section 17.2    Non-disturbance. The subordination of this Lease to any Mortgage is subject to the condition that Lender shall be deemed to have agreed that, unless an Event of Default exists and is continuing on the part of Tenant hereunder (a) Tenant will not be named or joined in any proceeding to enforce the Mortgage unless required by law in order to perfect the

proceeding; (b) enforcement of any Mortgage shall not terminate or modify this Lease or any provision of this Lease or disturb Tenant in the possession and use of the Premises; and (c) any party succeeding to the interest of Landlord as a result of the enforcement of any Mortgage shall be bound to Tenant, under all the terms, covenants, and conditions of this Lease for the balance of the Term of this Lease, with the same force and effect as if such party were the original Landlord under this Lease.

Section 17.3    Attornment. Subject to the provisions of the preceding Section, Tenant agrees to recognize and attorn to any party succeeding to the interest of Landlord as a result of the enforcement of any Mortgage, and to be bound to such party under all the terms, covenants, and conditions of this Lease, for the balance of the Term of this Lease, with the same force and effect as if such party were the original Landlord under this Lease.

Section 17.4    Confirming Agreement. Within fifteen (15) days of a request by Landlord or Lender, Landlord and Tenant agree to execute a subordination, non-disturbance and attornment agreement confirming the provisions of this ARTICLE 17, substantially in the form attached here to as Exhibit C. Tenant agrees to make such changes to the aforesaid form as a prospective Lender may reasonably request, provided such changes do not adversely affect (except to a de minimis extent) Tenant under such document, this Lease and the Tri-party Agreement.

**ARTICLE 18**
**BROKERAGE**

Section 18.1    Brokerage Commission. Landlord and Tenant mutually represent and warrant to each other that they have not dealt with any real estate broker or agent with respect to this Lease who by reason of such dealings has a claim for any real estate fee or commission

Section 18.2    Indemnification. LANDLORD AGREES TO INDEMNIFY TENANT AND HOLD IT HARMLESS AGAINST ANY CLAIMS FOR COMMISSIONS THAT MAY BE ASSERTED IN CONNECTION WITH THIS LEASE BASED UPON ACTS OF LANDLORD (OTHER THAN BY BROKER), AND TENANT AGREES TO INDEMNIFY LANDLORD AND HOLD IT HARMLESS AGAINST ANY CLAIMS FOR COMMISSIONS THAT MAY BE ASSERTED IN CONNECTION WITH THIS LEASE BY BROKER OR BASED UPON ACTS OF TENANT.

**ARTICLE 19**
**EXPIRATION; SURRENDER**

This Lease shall terminate on the Expiration Date, except with respect to obligations and liabilities of Tenant hereunder, actual or contingent, which have arisen on or prior to the Expiration Date, upon payment by Tenant of all rental and other sums then due and payable hereunder, to and including the Expiration Date. On the Expiration Date, Tenant shall surrender the Premises to Landlord in the condition in which it is required to be maintained pursuant to Section 7.1, except as repaired, rebuilt, restored, altered or added to as permitted or required hereby (provided Tenant shall remove any Alterations required by Landlord to be removed as a condition of Landlord's approval of such Alterations, and repair any damage caused by such

removal), and except for ordinary wear and tear and damage by Casualty or Taking not required to be repaired by Tenant hereunder. Tenant may remove from the Premises on or prior to the Expiration Date all Personal Property situated therein including, without limitation, Trade Fixtures and all movable office equipment and similar movable equipment that does not constitute fixtures or building mechanical, electrical or plumbing equipment (collectively, the "Movable Equipment"). Landlord agrees that the Movable Equipment is the property of Tenant and not of Landlord. Tenant shall, on or prior to the Expiration Date, remove all of the Movable Equipment. Property not so removed shall become the property of Landlord (unless the removal thereof has been delayed or prevented by Landlord), and Landlord may at Tenant's expense remove such property from the Premises and dispose thereof without liability to Tenant.

## ARTICLE 20
## WORK ON THE BUILDING OR PREMISES

**Section 20.1** Standards for Performance. Whenever in this Lease Tenant is permitted or required to maintain and repair, or make Alterations, substitutions or replacements, or reconstruct or restore the Building or the Premises, Tenant shall cause such work (the "Work") to be done and completed in a good, substantial and workmanlike manner, free from faults and defects, and in material compliance (or full compliance, as applicable, in the circumstances set forth in Section 14.1) with all Legal Requirements, and shall utilize only, first-class materials and supplies. Tenant shall be solely responsible for construction means, methods, techniques, sequences and procedures, and for coordinating all activities related to the Work, and Landlord shall have no duty or obligation to inspect the Work, but shall have the right to do so.

**Section 20.2** Completion of Work. Whenever Tenant is required to perform any Work upon the Building or the Premises, Tenant shall promptly commence the Work and, once the Work is commenced, diligently and continually pursues the Work and complete the Work within a reasonable time. Tenant shall supervise and direct the Work utilizing its best efforts and reasonable care, and shall assign such qualified personnel to the Work as may be necessary to cause the Work to be completed in an expeditious fashion.

**Section 20.3** Payment of Costs and Expenses. In performing any Work, Tenant shall (a) provide and pay for all labor, materials, goods, supplies, equipment, appliances, tools, construction equipment and machinery and other facilities and services necessary for the proper execution and completion of the Work; (b) promptly pay when due all costs and expenses incurred in connection with the Work; (c) pay all sales, consumer, use and similar taxes required by law in connection with the Work; (d) secure and pay for all permits, fees and licenses necessary for the performance of the Work; and (e) at all times maintain the Premises free and clear from any and all liens, claims, security interests and encumbrances arising from or in connection with the Work, including, without limitation, liens for materials delivered, supplied or furnished, or for services or labor performed or rendered. All materials, supplies, goods, appliances and equipment incorporated in the Work shall be free from any liens, security interests or title retention arrangements, other than the lien or security interest (if any) of the holder of any Mortgage placed upon the Premises by Landlord.

**Section 20.4** Mechanic's Liens. No work performed by Tenant pursuant to this Lease, whether in the nature of erection, construction, alteration or repair, shall be deemed to be for the

immediate use and benefit of Landlord so that no mechanic's or other lien shall be allowed against the estate of Landlord by reason of any consent given by Landlord to Tenant to improve the Premises. Tenant shall pay promptly all persons furnishing labor or materials with respect to any work performed by Tenant or its contractors on or about the Premises. In the event any mechanic's or other lien shall at any time be filed against the Premises by reason of work, labor, services or materials performed or furnished, or alleged to have been performed or furnished, to Tenant or to anyone holding the Premises through or under Tenant, Tenant shall forthwith and in any event within sixty (60) days of receiving notice of the filing thereof cause the same to be discharged of record or bonded to the reasonable satisfaction of Landlord. If Tenant shall fail to cause such lien forthwith to be so discharged or bonded within sixty (60) days after being notified of the filing thereof, then, in addition to any other right or remedy of Landlord, Landlord may bond or discharge the same by paying the amount claimed to be due, and the amount so paid by Landlord, including reasonable attorneys' fees incurred by Landlord either defending against such lien or in procuring the discharge of such lien, together with interest thereon at the Default Rate from the date incurred by Landlord until reimbursed by Tenant, shall be due and payable by Tenant upon demand by Landlord as additional rental hereunder.

Section 20.5      Tenant's Obligations. In performing any Work, Tenant shall (a) be responsible for the acts and omissions of all of its employees and all other persons performing any of the Work; (b) be responsible for initiating, maintaining and supervising all necessary safety precautions and programs in connection with the Work; (c) take all reasonable precautions for the safety of, and provide all reasonable protection to prevent damage, injury or loss to, the Work, all persons performing the Work, all other persons who may be involved in or affected by the Work, all materials and equipment to be incorporated in the Work and all other property in the Building or on the Land or adjacent thereto; and (d) purchase and maintain in full force and effect, and cause its contractors and subcontractors to purchase and maintain in full force and effect, such insurance (if any) in addition to that otherwise required of such party under this Lease as may be necessary to protect Tenant from claims under worker's compensation acts and other employee benefit acts, from claims for damages because of bodily injury, including death, and from claims for damage to property which arise out of performance of the Work. Such additional insurance policies, if any, shall meet the requirements set forth elsewhere herein with respect to the insurance policies otherwise required to be obtained and maintained by Tenant under this Lease.

## ARTICLE 21
## HAZARDOUS MATERIALS

Section 21.1      Definitions. For the purposes of this ARTICLE 21, the terms listed below shall have the meanings ascribed herein:

(a) "Environmental Claim" means any claim, action, investigation or written notice by any person, including any governmental authority, alleging potential liability (including, without limitation, potential liability for Remedial Work, investigatory costs, cleanup costs, governmental response costs, natural resource damages, property damages, personal injuries or penalties) arising out of, based on or resulting from (A) the release or threatened release of, or contamination by, any Materials of Environmental Concern on, in, under, at or emanating from the Premises,

or (B) circumstances forming the basis of any violation, or alleged violation, of any Environmental Law.

(b) "Environmental Laws" shall include all Legal Requirements (along with common law or strict liability provisions, and any legally binding judicial or administrative interpretations thereof, including any applicable judicial or administrative orders or judgments) relating to health, safety, industrial hygiene, Materials of Environmental Concern, pollution, or the environment, including, but not limited to each of the following, as enacted as of the date hereof or as hereafter amended; the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §9601 et seq.; the Resource Conservation and Recovery Act of 1976, 42 U.S.C. §6901 et seq.; the Toxic Substance Control Act, 15 U.S.C. §2601 et seq.; the Water Pollution Control Act (also known as the Clean Water Act), 33 U.S.C. §1251 et seq.; the Clean Air act, 42 U.S.C. §7401 et seq.; and the Hazardous Materials Transportation Act, 49 U.S.C. §1801 et seq.

(c) "Environmental Site Assessment" means that certain Environmental Site Assessment prepared by ENVIRON International Corporation delivered by Tenant to Landlord in connection with Landlord's acquisition of the Premises on the date hereof, as the same may have been supplemented from time to time.

(d) "Materials of Environmental Concern" means any hazardous or toxic waste, hazardous or toxic substance, pollutant, contaminant, oil or petroleum product, or other solid, liquid, or gaseous substance or product (I) that is currently or hereafter listed, regulated, or designated as, or is determined to be (in whole or in part), toxic, hazardous, or harmful (or words of similar meaning and regulatory effect), or with respect to which governmental regulatory obligations (including, without limitation, recordkeeping, remedial or closure obligations) may be imposed, under any Environmental Laws, or (ii) exposure to which may pose an environmental, health, or safety threat or hazard.

(e) "Regulated Activity" means the use, presence, release or threatened release, discharge, generation, manufacture, recycling, transportation, processing, refinement, treatment, storage, disposal or other handling of Materials of Environmental Concern.

(f) "Remedial Work" means any investigation, characterization, testing, sampling, monitoring, removal, response, remedial actions, transportation, disposal, restoration, cleanup, and similar activities undertaken in response to a release of, or contamination by, Materials of Environmental Concern.

## Section 21.2   Representations, Warranties and Covenants.

(a) Tenant covenants that it (I) will comply, and will cause the Premises to comply in all material respects, with all Environmental Laws applicable to the Premises; (ii) will not use, and shall prohibit the use of, the Premises for Regulated Activities (other than the storage, use or handling of Materials of Environmental

Concern in connection with operations conducted at the Premises in the ordinary course of its business and in commercially reasonably quantities, subject to compliance in all material respects with applicable Environmental Laws); (iii) will not install or permit the installation on the Premises of any underground storage tanks, pits, sumps or surface impoundments for the handling of Materials of Environmental Concern without the advance written consent of Landlord (iv) shall respond to releases or threatened releases of, or contamination by, Materials of Environmental Concern on, in or under the Premises in accordance with Sections 21.2(b) and (f), Landlord and Tenant agreeing that in the event that Tenant or Landlord believes that applicable law requires reporting to governmental authorities with respect to the Premises or environmental conditions at the Premises, it shall, if practicable while complying with applicable legal obligations to report, first promptly notify the other party in writing, and the parties shall reasonably cooperate in determining whether such requirements apply before any such reporting requirements are addressed; (v) shall cause any Alterations of the Premises to be completed in a manner which complies, in all material respects, with applicable Environmental Laws relating to exposure of persons working on or visiting the Premises to Materials of Environmental Concern and, in connection with any such Alteration, shall remove any Materials of Environmental Concern present upon the Premises which are not in compliance, in all material respects, with applicable Environmental Laws (including for avoidance of doubt those relating to health, safety and industrial hygiene); (vi) shall not install in the Premises, or permit to be installed in the Premises, asbestos or any asbestos-containing materials in any form that is or could be friable; and (vii) shall cause the Premises to be operated and maintained in such a manner so that mold, other indoor air pollutants, and/or other materials, the exposure to which may pose human health risks, do not violate, in any material respect, Environmental Laws (including for avoidance of doubt those relating to health, safety and industrial hygiene).

(b) If, at any time during the Term, Materials of Environmental Concern shall be found in, on, at, under or emanating from the Premises, then Tenant shall (without cost to Landlord and Lender, except to the extent otherwise provided in Section 21.2(d)) promptly conduct such Remedial Work as is provided in Section 21.2(f) of this Lease.

(c) During the Term of this Lease, Tenant and Landlord (to the extent Landlord receives written notice) shall provide prompt written notice to one another and Lender of any of the following matters:

(i) Any material Environmental Claim affecting the Premises;

(ii)     knowledge of the presence of contamination by Materials of Environmental Concern in, on, under, or migrating toward, the Premises, or any written notice received by Tenant or Landlord of any occurrence or condition on any real property adjoining or in the vicinity of the Premises, which in either case reasonably could be expected to (A) lead to the Premises or any portion thereof being (x) in violation, in any material respect, of any

Environmental Laws, (y) subject to any deed recordation or restriction on ownership, occupancy, transferability or use under any Environmental Laws or Legal Requirements, or (z) impacted by Materials of Environmental Concern so as to become subject to a remedial obligation under Environmental Laws, or (B) subject Tenant, Landlord, or Lender to any material Environmental Claim; and

(iii)   The commencement of any Remedial Work, the status of the Remedial Work on an ongoing basis, and completion of the Remedial Work.

(d) TENANT SHALL BE SOLELY RESPONSIBLE FOR AND SHALL DEFEND, REIMBURSE, INDEMNIFY AND HOLD LANDLORD AND LENDER, ANY AFFILIATES OF THE FOREGOING, AND EACH OF THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, SHAREHOLDERS, MEMBERS, PARTNERS, AGENTS, SUCCESSORS AND ASSIGNS (INCLUDING, WITHOUT LIMITATION, ANY PARTICIPANTS IN A LOAN BY LENDER) (EACH SUCH PERSON BEING AN "INDEMNIFIED PARTY") HARMLESS FROM AND AGAINST ALL DEMANDS, CLAIMS, ACTIONS, CAUSES OF ACTION, ASSESSMENTS, LOSSES, DAMAGES, LIABILITIES, INVESTIGATIONS, OR WRITTEN NOTICES, INCLUDING COSTS AND EXPENSES OF ANY KIND (INCLUDING WITHOUT LIMITATION, DIMINUTION IN PROPERTY VALUE AND EXPENSES OF INVESTIGATION BY ENGINEERS, ENVIRONMENTAL CONSULTANTS AND SIMILAR TECHNICAL PERSONNEL AND FEES AND DISBURSEMENTS OF COUNSEL), ARISING OUT OF, IN RESPECT OF OR IN CONNECTION WITH (I) TENANT'S BREACH OF ITS REPRESENTATIONS, WARRANTIES, COVENANTS OR OTHER OBLIGATIONS IN THIS LEASE; (II) THE OCCURRENCE OF ANY REGULATED ACTIVITY AT, ON OR UNDER THE PREMISES AT ANY TIME DURING OR PRIOR TO THE TERM OF THIS LEASE; (III) ANY ENVIRONMENTAL CLAIM WITH RESPECT TO THE PREMISES AGAINST ANY INDEMNIFIED PARTY OR ANY PERSON WHOSE LIABILITY FOR SUCH ENVIRONMENTAL CLAIM ANY INDEMNIFIED PARTY OR TENANT HAS OR MAY HAVE ASSUMED OR RETAINED, OR MAY BE CHARGED WITH, EITHER CONTRACTUALLY OR BY OPERATION OF LAW (PROVIDED THAT AFTER THE COMMENCEMENT DATE LANDLORD SHALL NOT CONTRACTUALLY ASSUME LIABILITY FOR AN ENVIRONMENTAL LIABILITIES WHICH LANDLORD WOULD NOT OTHERWISE HAVE BY OPERATION OF LAW WITHOUT THE CONSENT OF TENANT); (IV) THE RELEASE, THREATENED RELEASE OR PRESENCE OF ANY MATERIALS OF ENVIRONMENTAL CONCERN AT, ON, UNDER, IN, EMANATING FROM OR MIGRATING TO OR FROM, THE PREMISES, REGARDLESS OF HOW DISCOVERED BY TENANT, LANDLORD OR ANY THIRD PARTY, EXCEPT TO THE EXTENT THAT TENANT CAN DEMONSTRATE THAT SUCH RELEASE, THREATENED RELEASE OR PRESENCE OCCURRED

SOLELY SUBSEQUENT TO THE TERM OF THIS LEASE; (V) ANY
REMEDIAL WORK REQUIRED TO BE PERFORMED PURSUANT TO ANY
ENVIRONMENTAL LAW OR THE TERMS HEREOF WITH RESPECT TO
MATTERS ARISING OR OCCURRING PRIOR TO OR DURING THE
TERM; (VI) ANY MATTERS ARISING UNDER OR RELATING TO ANY
ENVIRONMENTAL LAW AND RELATING TO THE TENANT, THE
PREMISES OR ACTIVITIES AT THE PREMISES, OR (VII) ALL OTHER
DIRECT OR INDIRECT CONSEQUENTIAL DAMAGES (INCLUDING,
WITHOUT LIMITATION, ANY THIRD PARTY TORT CLAIMS OR
GOVERNMENTAL CLAIMS, FINES OR PENALTIES) RELATING TO THE
FOREGOING.    TENANT SHALL NOT BE RESPONSIBLE, NOR BE
REQUIRED TO REIMBURSE, INDEMNIFY, OR HOLD A PARTICULAR
INDEMNIFIED PARTY HARMLESS, TO THE EXTENT THAT THE
SUBJECT OF THE INDEMNIFICATION IS CAUSED BY OR ARISES OUT
OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT (WHICH
GROSS NEGLIGENCE OR WILLFUL MISCONDUCT TENANT SHALL
ESTABLISH) OF THAT INDEMNIFIED PARTY AND SUCH INDEMNIFIED
PARTY AGREES TO INDEMNIFY AND HOLD TENANT HARMLESS TO
SUCH EXTENT.

(e) Upon Landlord's or Lender's request, at any time as Landlord or Lender
has reasonable grounds to believe that (I) the Premises may be in violation, in any
material respect, of the Environmental Laws, (ii) the Premises may be subject to a
remedial obligation under Environmental Laws, or (iii) an Environmental Claim has
been asserted with respect to the Premises, Tenant shall provide, at Tenant's sole cost
and expense, an inspection or audit of the Premises prepared pursuant to a scope of
work acceptable to Landlord and Lender, by a hydro geologist or environmental
engineer or other appropriate consultant approved by Landlord and Lender reasonably
addressing the subject matter of the request.    If Tenant fails to provide such
environmental reports within thirty (30) days after such request or such longer period
as is reasonable under the circumstances and approved by Landlord, Landlord may, at
Tenant's expense, order the same; and Tenant hereby grants to Landlord and Lender
and their respective employees and agents access to the Premises upon reasonable
notice and a license to undertake such inspection or audit. The foregoing
notwithstanding, in the event of an emergency, Landlord or Lender may have any
such inspection or audit conducted immediately at Tenant's expense.

(f) Consistent with its obligations under Sections 21.2(b), 21.2(d), and 21.2(e)
of this Lease, Tenant shall conduct Remedial Work to the extent required for
purposes of compliance, in all material respects, with Environmental Laws and shall
conduct such Remedial Work in compliance, in all material respects, with
Environmental Laws. Tenant, with approval and concurrence of Landlord, not to be
unreasonably withheld, will negotiate with the relevant governmental authorities
regarding the nature and extent of environmental conditions to be remediated and the
work plans and/or remedial action plans to be performed by Tenant. Landlord and
Tenant agree to work together to approve cleanup criteria and Remedial Work for the
Premises that comply, in all material respects, with applicable Environmental Laws

and are consistent with (I) commercial/industrial uses at the Premises compatible with then existing zoning for the Premises, and (ii) with commercial/industrial redevelopment of the Premises in the future. If Tenant proposes cleanup criteria for soils that would permit contaminants to remain in place and that would require (a) special handling of soils in connection with redevelopment activities, (b) additional cost for offsite disposal of soils, or (c) governmental approval for disturbance of soils following closure, then approval of those cleanup criteria shall be subject to the approval of Landlord, not to be unreasonably withheld. If Tenant proposes cleanup criteria for groundwater that would require a deed restriction or otherwise limit or prohibit the use of groundwater at the Premises, then approval of those cleanup criteria shall be at the sole discretion of the Landlord. Any other restrictions proposed to be included as part of a final confirmation of closure issued for all or any part of the Premises must be approved by Landlord, not to be unreasonably withheld. For purposes of the entirety of this Section 21.2(f), to the extent Landlord is required to be reasonable hereunder, a determination by Landlord to withhold approval of any action or criteria proposed by Tenant shall not be deemed unreasonable to the extent that such action or criteria would, as determined by Landlord in its reasonable judgment, either (i) impair the value of the Premises, except to a de-minimis extent (in which event Tenant shall have the obligation to reimburse Landlord such de-minimis amount upon demand), or (ii) impede the sale, financing or redevelopment (for commercial or industrial use) of the Premises compatible with then existing zoning for the Premises.

(g) The obligations of the Tenant (including, without limitation, the indemnity obligations) and the rights and remedies of the Landlord under this ARTICLE 21 shall survive the expiration or earlier termination of this Lease. Persons indemnified under this Lease will continue to be afforded the protections under ARTICLE 21 notwithstanding the assignment or other transfer of this Lease by such Persons.

(h) Notwithstanding anything contained in this ARTICLE 21 to the contrary, to the extent Tenant is obligated to comply in all materials respects with Environmental Laws, at the specific request or demand of any governmental authority or agency, Tenant shall fully comply, in all respects, with Environmental Laws as specified in such request or demand.

## ARTICLE 22
## ESTOPPEL CERTIFICATES

Tenant and Landlord will, from time to time upon fifteen (15) days prior request by the other, but not more than two (2) times in any calendar year, execute, acknowledge and deliver to the requesting party, Lender, any prospective purchaser or mortgagee of the Premises, or other

appropriate party, a certificate of Tenant or Landlord, as applicable, substantially in the form attached hereto as Exhibit D or in such other form as is reasonably acceptable to Tenant and Landlord and such other Lender, prospective purchaser, mortgagee or other party. Any such certificate may be relied upon by the requesting party, any prospective purchaser or mortgagee of the Premises, and such other party.

## ARTICLE 23
## MISCELLANEOUS

Section 23.1    Notices.    Any notice, demand, request, consent, approval or communication under this Lease shall be in writing and shall be deemed duly given or made: (I) when deposited, postage prepaid in the United States mail, certified or registered mail with a return receipt requested, addressed to Landlord or Tenant (as the case may be) at the addresses of each shown below; or (ii) when delivered by courier providing for a signed receipt (e.g., Federal Express, United Parcel Service) to Landlord or Tenant (as the case may be) at the addresses of each shown below, The parties may designate a different address or additional addresses for receiving notices hereunder by notice to the other party.

(a)    Notice to the Landlord shall be addressed to the Landlord identified on the signature page hereto, and the initial address of such Landlord is as follows:

> Gillio Development Inc. or assigns
> Attention: Matthew M. Gillio
> 657 Caledonia Place
> Sanford, Florida 32771

With copy to:

> The Law Firm of Oswald & Oswald
> 600 Courtland Street , Suite # 100, Winter Park, Florida

(b)    Notice to the Tenant shall be addressed to the Tenant identified on the signature page hereto, and the primary address of such Tenant(s) are as follows:

The primary address of Corporate Tenant is:

> Frank's Crispies, LLC, *(a Florida Limited Liability Company),*
> 2875 S. Orange Avenue, Suite 500
> Orlando Florida 32806

With a copy to:

> Richard E. Berman, Esq.
> Berman, Kean, & Riguera, P.A.
> 2101 West Commercial Blvd., Suite 2800
> Fort Lauderdale, Florida 33309

If Landlord shall have advised Tenant by notice in the manner aforesaid that a Lender holds a Mortgage against the Premises and stating in said notice Lender's address for the receipt of notices, then simultaneously with the giving of any notice by Tenant to Landlord, Tenant shall serve one or more copies of such notice upon Lender in the manner aforesaid.

Section 23.2 **Headings.** The use of headings, captions and numbers in this Lease is solely for the convenience of identifying and indexing the various paragraphs and shall in no event be considered otherwise in construing or interpreting any provision in this Lease.

Section 23.3 **Exhibits.** Each and every exhibit referred to or otherwise mentioned in this Lease is attached to this Lease and is and shall be construed to be made a part of this Lease by such reference or other mention at each point at which such reference or other mention occurs in the same manner and with the same effect as if each such exhibit were set forth in full and at length every time it is referred to or otherwise mentioned.

Section 23.4 **Defined Terms.** Capitalized terms used in this Lease shall have the meaning ascribed to them at the point where first defined, irrespective of where their use occurs, with the same effect as if the definitions of such terms were set forth in full and at length every time such terms are used.

Section 23.5 **Pronouns.** Wherever appropriate in this Lease, personal pronouns shall be deemed to include the other genders and the singular to include the plural.

Section 23.6 **Binding Effect.** Subject to ARTICLE 15 hereof, all provisions contained in this Lease shall be binding upon, inure to the benefit of, and be enforceable by, the respective successors and permitted assigns of Landlord and Tenant to the same extent as if each such successor and permitted assign were named as a party hereto.

Section 23.7 **Severability.** If any term, covenant, condition or provision of this Lease, or the application thereof to any person or circumstance, shall ever be held to be invalid or unenforceable, then in each such event the remainder of this Lease or the application of such term, covenant, condition or provision to any other person or any other circumstance (other than those as to which it shall be invalid or unenforceable) shall not be thereby affected, and each term, covenant, condition and provision hereof shall remain valid and enforceable to the fullest extent permitted by law.

Section 23.8 **Rights Cumulative.** All rights, remedies, powers and privileges conferred under this Lease on the parties shall be cumulative of and in addition to, but not restrictive of or in lieu of, those conferred by law.

Section 23.9     Time of Essence.  Time is of the essence of this Lease and each and every provision hereof in which any date or time is specified.

Section 23.10     Applicable Law.  This Lease shall be governed by, construed under and interpreted and enforced in accordance with the laws of the state in which the Premises are located.

Section 23.11     Entire Agreement.  Except as otherwise provided herein, this Lease (including the exhibits provided for herein) contains the entire agreement of Landlord and Tenant with respect to the leasing of the Premises, and no representations, warranties, inducements, promises or agreements, oral or otherwise, between the parties not embodied in this Lease shall be of any force or effect other than that certain Representations and Warranties Agreement, of even date herewith, made by Tenant in favor of Landlord and its successors and assigns.

Section 23.12     Modifications.  This Lease shall not be modified or amended in any respect except by a written agreement executed by Landlord and Tenant in the same manner as this Lease is executed.  If Tenant receives notice from Landlord that the terms of the Mortgage require Lender's consent to any modification or amendment of this Lease, no such modification or amendment between Landlord and Tenant will be effective unless and until consented to in writing by Lender.

Section 23.13     Holding Over.  If Tenant remains in possession of the Premises after the Expiration Date with Landlord's acquiescence but without any modification of this Lease or other written agreement between the parties, Tenant shall be a tenant at will at 125% of the Base Rental payable during the last Lease Year of the Term calculated in accordance with ARTICLE 3 hereof; and subject to all the other terms and provisions hereof (except as to term), and there shall be no renewal of this Lease by operation of law.  Notwithstanding the foregoing, any holding over without Landlord's consent shall entitle Landlord, in addition to collecting Base Rental at a rate of one hundred fifty percent (150%) thereof, to exercise all rights and remedies provided by law or in equity, including the remedies of Section 13.2 above.

Section 23.14     No Recording of Lease.  Neither Landlord nor Tenant shall file this Lease for record without the other party's prior written consent, which may be granted or withheld in such party's sole and absolute discretion.  On the Term Commencement Date, Landlord, Tenant and Unisource shall enter into a Memorandum of Lease in the form attached hereto as Exhibit E, and Landlord and Tenant shall cause the Memorandum of Lease to be recorded in the applicable real estate records for the Premises.  The cost of recording the Memorandum of Lease shall be paid by Tenant.

Section 23.15     Guaranty of Lease.  Mirabilis Ventures, Inc., a Nevada corporation, shall be required to execute a Guaranty of all Tenants' obligations under the Lease, which shall be executed simultaneously with the Lease and shall be in the form attached hereto as Exhibit G.

Section 23.16     Statements.  Upon request by Landlord if not readily publicly available, Tenant shall submit to Lender and Landlord (I) within sixty (60) days of the end of each of the first three fiscal quarters of each fiscal year of Tenant, quarterly balance sheets, income and cash

flow statements of Tenant, certified by a senior financial officer of Tenant; and (ii) within ninety (90) days of the end of each fiscal year, annual balance sheets, income and cash flow statements for Tenant certified by an independent public accountant.  Quarterly 10Qs as filed with the Securities and Exchange Commission shall satisfy the requirements contained in (I) herein. Copies of the 10Ks filed with the Securities and Exchange Commission will satisfy the requirement contained in (ii) herein. The obligations of Tenant in this Section 23.16 shall also apply to the Tenant named herein in the event the Tenant named herein has assigned this Lease and is not released from liability pursuant to Section 15.1(e).

Section 23.17    Successors, Assigns.  The covenants of this Lease shall run with the Land and bind Tenant, the heirs, distributes, personal representatives, successors and assigns of Tenant (including any assignee of Tenant's interest under this Lease) and shall inure to the benefit of and bind Landlord, its successors and assigns. The term "Landlord" as used in this Lease, so far as covenants or obligations on the part of Landlord are concerned, shall be limited to mean and . include only the owner or owners of the Premises or holder of the Mortgage in possession at the time in question of the Premises and in the event of any transfer or transfers of the title of the Premises, the Landlord herein named (and in case of any subsequent transfers or conveyances, the then grantor) shall be automatically freed and relieved from and after the date of such transfer and conveyance of all personal liability as respects the performance of any covenants or obligations on the part of Landlord contained in this Lease thereafter to be performed provided that the transferee assumes all of the Landlord's obligations under this Lease from and after the date of such transfer.

Section 23.18    State-Specific Provisions.   The provisions set forth on Exhibit H are hereby incorporated by reference into this Lease, as applicable.

Section 23.19    Counterparts.  To facilitate execution, this Lease may be executed in as many counterparts as may be required; the facsimile transmission of executed counterparts shall be deemed originals; and it shall not be necessary that the signature of, or on behalf of, each party, or that the signatures of all persons required to bind any party, appear on each counterpart; but it shall be sufficient that the signature of, or on behalf of, each party, or that the signatures of the persons required to bind any party, or that the signatures of the persons required to bind any party, appear on one or more of such counterparts. All counterparts shall collectively constitute a single document.

*IN WITNESS WHEREOF*, Landlord and Tenant have executed this Lease as of the day and year first above written.

*[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK;SIGNATURE PAGES FOLLOW]*

WITNESSES:

LANDLORD:

GILLIO DEVELOPMENT INCORPORATED

By: _____
Name:    Matthew M. Gillio
Title:    CEO / President

WITNESS:

TENANT:

Frank's Crispies, LLC
A Florida Limited Liability Company

By: Tenshi Leasing, Inc., a Florida corporation

By: _____
Jodi Jaiman, President

WITNESS:

CORPORATE GUARANTOR:

MIRABILIS VENTURES, INC.
A Nevada Corporation

By: _____
James V. Sadrianna, President

(Landlord Acknowledgment)

STATE OF FLORIDA)

ORANGE COUNTY )

*Matthew M. Gillio*

On this 30th day of December, 2005, before me, and that he, as such OWNER being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of Matthew M. Gillio himself as OWNER of Gillio Development Incorporated.

In witness whereof I hereunto set my hand and official seal.

(NOTARY SEAL)

Notary Public,
Printed Name:
My Commission Expires:

Philip S. Kaprow
Commission # DD311765
Expires June 28, 2008
Bonded thru Fain-Insurance, Inc. 800-385-3019

(Tenant Acknowledgment)

STATE OF FLORIDA)

COUNTY OF ORANGE )

On this 30th day of December, 2005, before me, Jodi Jaiman, the undersigned officer, personally appeared himself, who acknowledged himself to be the President of Tenshi Leasing, Inc., *a Florida Corporation* and sole member of Frank's Crispies, LLC and that she, as President, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of Jodi Jaiman by herself as President of Tenshi Leasing, Inc. *a Florida Corporation* and sole member of Frank's Crispies, LLC..

In witness whereof I hereunto set my hand and official seal.

(NOTARY SEAL)

Notary Public, State of *Florida*

Printed Name:
Notary Commission No.
My Commission Expires:

Philip S. Kaprow
Commission# DD311765
Expires June 28, 2008
Bonded thru Fain-Insurance, Inc. 800-385-3019

## (Corporate Guarantor Acknowledgment)

STATE OF FLORIDA)

COUNTY OF ORANGE )

On this 30th day of December, 2005, before me, James V. Sadrianna, the undersigned officer, personally appeared himself, who acknowledged himself to be the President of Mirabilis Ventures, Inc., *a Florida Corporation* and that he, as President, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of James V. Sadrianna by himself as President of Mirabilis Ventures, Inc. *a Florida Corporation.*

In witness whereof I hereunto set my hand and official seal.

Notary Public, State of *Florida*

(NOTARY SEAL)

Printed Name: _____
Notary Commission No. _____
My Commission Expires: _____



Philip S. Kaprow
Commission # DD311765
Expires June 28, 2008
Bonded Troy Fain · Insurance, Inc. 800-385-7019

## EXHIBIT A

### LEGAL DESCRIPTION OF PREMISES

#### PERKINS RESTAURANT AND BAKERY PROPERTY AND BUISNESS LOCATED AT 4120 SOUTH ORANGE AVENUE, ORLANDO, FLORIDA, ORANGE COUNTY

## EXHIBIT B

### RENTAL SCHEDULE

The Lease agrees to a Ten (10) year Triple-Net- Lease which includes Monthly Principle & Interest, Real Estate Taxes, Insurance, and Property upkeep including Roof.

The Monthly Rent shall be the exact amount owed to the lender, which is GE Capital that has a mortgage on the real estate. The Lessee as previously disclosed has a real estate loan with G.E. Capital which is a variable rate. This rate can change on a monthly basis. The loan is a 20 year note, principle and interest loan, which is owed by Gillio Development, Inc. (a Florida Corporation), or assigns.

Each month the Lessee will provide rent of in the amount of the current month's principle and interest obligation that the Lessor owes to Lender. Lessor, has the right to refinance or sell the property at any time. If Lessor should refinance the property the Lessee will continue to pay whatever the minimum monthly payment is then due and owing to the Lender.

If the Lessee should pay off the real estate loan in full (with the Lessor's approval), the Lessor shall immediately grant the Lessee twenty percent (20%) ownership of the real estate. If this should occur, Lessee would be obligated to pay rent as stated above less twenty percent (20%).

## EXHIBIT C

## [FORM OF] SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT

This Subordination, Non-Disturbance and Attornment Agreement (this "Agreement") is dated as of December 31, between Frank's Crispies, LLC, a Florida Limited Liability Corporation ("Mortgagee"), ("Tenant"), and Gillio Development, Inc., a Florida Corporation ("Landlord").

### RECITALS

1.     Tenant is the tenant under a certain lease with Landlord (the "Lease") dated as of December , 2004, of premises described in Exhibit A attached hereto and made a part hereof (the "Land"), together with the buildings and improvements located on the Land ("Improvements") (collectively, the "Property").     A memorandum or short form of the Lease was recorded approximately simultaneously with the execution of the Lease with the Registry of Deeds/Office of the Clerk in the county or counties and state where the Land is located (the "Registry").

2.     This Agreement is being entered into in connection with a mortgage loan (the "Loan") from Mortgagee to Landlord, secured by, inter alia, a first mortgage, deed of trust or security deed on and of the Property (the "Mortgage") dated as of even date herewith to be recorded with the Registry concurrently with, but prior to, the recording of this Agreement; and a first assignment of lease and rents (the "Assignment of Lease and Rents") contained within and being a part of the Mortgage or pursuant to a separate agreement.

### AGREEMENT

For mutual consideration, including the mutual covenants and agreement set forth below, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.     Subordination.    Subject to Mortgagee's compliance with its agreement of non-disturbance set forth in Section 2 below, Tenant agrees and covenants that the Lease and the rights of Tenant there under, all of Tenant's right, title and interest in and to the Property, and any lease thereafter executed by Tenant covering any part of the Property, are and shall be subject, subordinate and inferior to (a) the Mortgage and the rights of Mortgagee there under, and all right, title and interest of Mortgagee in the Property, and (b) all other security documents now or hereafter securing payment of any indebtedness of the Landlord (or any prior landlord) to Mortgagee which cover or affect the Property (the "Security Documents").    This Agreement is not intended and shall not be construed to subordinate the Lease to any mortgage, deed of trust or other security document other than those referred to in the preceding sentence, securing the indebtedness to Mortgagee.

2.     Non-Disturbance.    Subject to Tenant's compliance with its agreement of subordination set forth in Section 1 above and its agreement of attornment set forth in Section 3 below, Mortgagee agrees that so long no Event of Default is continuing under the Lease and the Lease is otherwise in full force and effect:

(a)    Tenant's possession of the Property under the Lease shall not be disturbed or interfered with by Mortgagee in the exercise of any of its foreclosure rights under the Mortgage or conveyance in lieu of foreclosure,

(b)    Mortgagee will not join Tenant as a party defendant for the purpose of terminating Tenant's interest and estate under the Lease in any proceeding for foreclosure of the Mortgage, unless required by law in order to perfect the proceeding, and

(c)    Enforcement of the Mortgage shall not terminate or modify the Lease or otherwise disturb Tenant's possession and use of the Property.

(3)    Attornment.

(a)    Tenant covenants and agrees that in the event of foreclosure of the Mortgage, whether by power of sale or by court action, or upon a transfer of the Property by conveyance in lieu of foreclosure (the purchaser at foreclosure or the transferee in lieu of foreclosure, including Mortgagee if it is such purchaser or transferee, being herein called "New Owner"), Tenant shall attorn to the New Owner as Tenant's new landlord, and agrees that the Lease shall continue in full force and effect as a direct lease between Tenant and New Owner upon all of the terms, covenants, conditions and agreements set forth in the Lease and this Agreement, provided, however, that New Owner shall recognize and accept the rights of Tenant under the Lease and shall thereafter, as "Landlord", be responsible for the obligations of Landlord under and with respect to the Lease. In no event shall the New Owner be:

(I)    liable for any act, omission, default, misrepresentation, or breach of warranty, of any previous landlord (including Landlord) or obligations accruing prior to New Owner's actual ownership of the Property;

(ii)    subject to any offset, defense, claim or counterclaim which Tenant might be entitled to assert against any previous landlord (including Landlord);

(iii)    bound by any payment of rent, additional rent or other payments, made by Tenant to any previous landlord (including Landlord) for more than one (1) month in advance;

(iv)    Bound by any amendment, or modification of the Lease hereafter made, or by any consent or acquiescence by any previous landlord (including Landlord), without the written consent of Mortgagee; or

(v)    Liable for any deposit that Tenant may have given to any previous landlord (including Landlord) which has not, as such, been transferred (or credited) to New Owner.

(b)    The provisions of this Agreement regarding attornment by Tenant shall be self-operative and effective without the necessity of execution of any new lease or other document on the part of any party hereto or the respective heirs, legal representatives, successors or assigns of any such party. Tenant agrees, however, to execute and deliver upon the request of New Owner, any instrument or certificate which in the reasonable judgment of New Owner

may be necessary or appropriate to evidence such such attornment, including a new lease of the Property on the same terms and conditions as the Lease for the unexpired term of the Lease.

4.    Estoppel Certificate.    Tenant agrees to execute and deliver from time to time, upon the request of Landlord or of any holder(s) of any of the indebtedness or obligations secured by the Mortgage, a certificate regarding the status of the Lease, consisting of statements, if true (or if not, specifying why not), (a) that the Lease is in full force and effect, (b) the date through which rentals have been paid, (c) the date of the commencement of the term of the Lease, (d) the nature of any amendments or modifications of the Lease, (e) to Tenant's knowledge no default, or state of facts which with the passage of time or notice (or both) would constitute a default, exists under the Lease, (f) to Tenant's knowledge, no setoffs, recoupments, estoppels, claims or counterclaims exist against Landlord, and (g) such other matters as may be reasonably requested.

5.    Acknowledgment and Agreement by Tenant.    Tenant acknowledges and agrees as follows:

(a)    Landlord will execute and deliver to Mortgagee in connection with the financing of the Property the Assignment of Leases and Rents. Tenant hereby expressly consents to such assignment and agrees that such assignment shall, in all respects, be superior to any interest Tenant has in the Lease of the Property, subject to the provisions of this Agreement. Until the Loan is paid in full, Tenant will not amend, alter or waive any provision of, or consent to the amendment, alteration or waiver of any provision of the Lease without the prior written consent of Mortgagee. Until the Loan is paid in full, Tenant shall not prepay any Base Rental, additional rental or other sums due under the lease for more than one (1) month in advance of the due date therefore. Tenant acknowledges that Mortgagee will rely upon this instrument in connection with such financing.

(b)    Mortgagee, in making any disbursements to Landlord, is under no obligation or duty to oversee or direct the application of the proceeds of such disbursements, and such proceeds may be used by Landlord for purposes other than improvement of the Property. Notwithstanding the foregoing, provided (i) no Event of Default under the Lease has occurred and is continuing, and (ii) Tenant complies with Mortgagee's commercially reasonable disbursement procedures, Mortgagee shall disburse any Proceeds or Awards (as such terms are defined in the Lease) received by Mortgagee to Tenant to the extent required pursuant to Section 9.2 and Section 12.7, as applicable, of the Lease, notwithstanding any default by Landlord under the Security Documents or any other documents evidencing the Loan.

(c)    From and after the date hereof until the Loan is paid in full, in the event of any act or omission by Landlord which would give Tenant the right, either immediately or after the lapse of time, to terminate the Lease or to claim a partial or total eviction, Tenant will not exercise any such right (I) until it has given written notice of such act or omission to the Mortgagee; and (ii) until the same period of time as is given to Landlord under the Lease to cure such act or omission shall have elapsed following such giving of notice to Mortgagee and following the time when Mortgagee shall have become entitled under the Mortgage to remedy the same, but in any event 30 days after receipt of such notice or such longer period of time as may be necessary to cure or remedy such default, act, or omission including such period of time necessary, with diligent prosecution of the same, to obtain possession of the Property and thereafter cure such default, act, or omission, during which period of time Mortgagee shall be permitted to cure or remedy such default, act or omission; provided, however, that Mortgagee

shall have no duty or obligation to cure or remedy any breach or default. It is specifically agreed that Tenant shall not, as to Mortgagee, require cure of any such default which is personal to Landlord, and therefore not susceptible to cure by Mortgagee.

(d)     In the event that Mortgagee notifies Tenant of a default under the Mortgage, Note, or Security Documents and demands that Tenant pay its rent and all other sums due under the Lease directly to Mortgagee, Tenant shall honor such demand and pay the full amount of its rent and all other sums due under the Lease directly to Mortgagee, without offset, or as otherwise required pursuant to such notice beginning with the payment next due after such notice of default, without inquiry as to whether a default actually exists under the Mortgage, Security Documents or otherwise in connection with the Note, and notwithstanding any contrary instructions of or demands from Landlord.

(e)     Tenant shall send a copy of any notice or statement under the Lease to Mortgagee at the same time such notice or statement is sent to Landlord if such notice or statement has a material impact on the economic terms, operating covenants or duration of the Lease.

(f)     Tenant has no right or option of any nature whatsoever, whether pursuant to the Lease or otherwise, to purchase the Property, or any portion thereof or any interest therein, and to the extent that Tenant has had, or hereafter acquires, any such other right or option, same is hereby acknowledged to be subject and subordinate to the Mortgage and is hereby waived and released as against Mortgagee and any other New Owner.

(g)     This Agreement satisfies any condition or requirement in the Lease relating to the granting of a non-disturbance agreement and Tenant waives any requirement to the contrary in the Lease.

(h)     Mortgagee and any New Owner shall have no obligation nor incur any liability with respect to the erection or completion of the Improvements or for completion of the Property or any improvements for Tenant's use and occupancy, either at the commencement of the term of the Lease or upon any renewal or extension thereof (other than the obligation to disburse Proceeds or Awards as provided in Section 5(b) above).

(I)     Mortgagee and any New Owner shall have no obligation nor incur any liability with respect to any warranties of any nature whatsoever, whether pursuant to the Lease or otherwise, including, without limitation, any warranties respecting use, compliance with zoning, Landlord's title, Landlord's authority, habitability, fitness for purpose or possession.

(j)     In the event that Mortgagee or any other New Owner shall acquire title to the Property, Mortgagee or such New Owner shall have no obligation, nor incur any liability, beyond Mortgagee's or such New Owner's then equity interest (and any Proceeds or Awards [as defined in the Lease] held by Mortgagee or New Owner if not being applied as required pursuant to the terms of the Lease), if any, in the Property, and Tenant shall look exclusively to such interest of Mortgagee or such New Owner, if any, for the payment and discharge of any obligations imposed upon Mortgagee or such New Owner hereunder or under the Lease or for recovery of any judgment from Mortgagee, or such New Owner, and in no event shall Mortgagee, such New Owner, nor any of their respective officers, directors, shareholders,

agents, representatives, servants, employees or partners ever be personally liable for such judgment.

6.  Acknowledgement and Agreement by Landlord. Landlord, as landlord under the Lease and grantor under the Mortgage, acknowledges and agrees for itself and its heirs, representatives, successors and assigns, that: (a) this Agreement does not constitute a waiver by Mortgagee of any of its rights under the Mortgage, Note, or Security Documents, or in any way release Landlord from its obligations to comply with the terms, provisions, conditions, covenants, agreements and clauses of the Mortgage, Note, or Security Documents; (b) the provisions of the Mortgage, Note, or Security Documents remain in full force and effect and must be complied with by Landlord; and (c) Tenant is hereby authorized to pay its rent and all other sums due under the Lease directly to Mortgagee upon receipt of a notice as set forth in paragraph 5(d) above from Mortgagee and that Tenant is not obligated to inquire as to whether a default actually exists under the Mortgage, Security Documents or otherwise in connection with the Note. Landlord hereby releases and discharges Tenant of and from any liability to Landlord resulting from Tenant's payment to Mortgagee in accordance with this Agreement. Landlord represents and warrants to Mortgagee that a true and complete copy of the Lease has been delivered by Landlord to Mortgagee.

7.  Lease Status.  Landlord and Tenant certify to Mortgagee that neither Landlord nor Tenant has knowledge of any default on the part of the other under the Lease or the Triparty Agreement, that the Lease and the Tri-party Agreement are bona fide and contain all of the agreements of the parties thereto with respect to the letting of the Property and that all of the agreements and provisions therein contained are in full force and effect.

8.  Notices. All notices, requests, consents, demands and other communications required or which any party desires to give hereunder shall be in writing and shall be deemed sufficiently given or furnished if delivered by personal delivery, by telegram, telex, or facsimile, by expedited delivery service with proof of delivery, or by registered or certified United States mail, postage prepaid, at the addresses specified at the end of this Agreement (unless changed by similar notice in writing given by the particular party whose address is to be changed). Any such notice or communication shall be deemed to have been given either at the time of personal delivery or, in the case of delivery service or mail, as of the date of first attempted delivery at the address and in the manner provided herein, or, in the case of telegram, telex or facsimile, upon receipt. Notwithstanding the foregoing, no notice of change of address shall be effective except upon receipt. This Paragraph 8 shall not be construed in any way to affect or impair any waiver of notice or demand provided in this Agreement or in the Lease or in any document evidencing, securing or pertaining to the Loan or to require giving of notice or demand to or upon any person in any situation or for any reason.

9.  Miscellaneous.

(a)  This Agreement supersedes any inconsistent provision of the Lease.

(b)  Nothing contained in this Agreement shall be construed to derogate from or in any way impair, or affect the lien, security interest or provisions of the Mortgage, Note, or Security Documents.

(c)  This Agreement shall inure to the benefit of the parties hereto, their respective successors and permitted assigns, and any New Owner, and its heirs, personal representatives, successors and assigns; provided, however, that in the event of the assignment or transfer of

the interest of Mortgagee and assumption thereof by such transferee, all obligations and liabilities of the assigning Mortgagee under this Agreement shall terminate, and thereupon all such obligations and liabilities shall be the responsibility of the party to whom Mortgagee's interest is assigned or transferred; and provided further that the interest of Tenant under this Agreement may not be assigned or transferred without the prior written consent of Mortgagee.

     (d)    THIS AGREEMENT AND ITS VALIDITY, ENFORCEMENT AND INTERPRETATION SHALL BE GOVERNED BY THE LAWS OF THE STATE OF FLORIDA AND SEMINOLE OR ORANGE COUNTY AND APPLICABLE UNITED STATES FEDERAL LAW EXCEPT ONLY TO THE EXTENT, IF ANY, THAT THE LAWS OF THE STATE OR COMMONWEALTH IN WHICH THE PROPERTY IS LOCATED NECESSARILY CONTROL.

     (e)    The words "herein", "hereof", "hereunder" and other similar compounds of the word "here" as used in this Agreement refer to this entire Agreement and not to any particular section or provision.

     (f)    This Agreement may not be modified orally or in any manner other than by an agreement in writing signed by the parties hereto or their respective successors in interest.

     (g)    If any provision of the Agreement shall be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality or unenforceability shall not apply to or affect any other provision hereof, but this Agreement shall be construed as if such invalidity, illegality, or unenforceability did not exist.

### [SIGNATURES FOLLOW ON NEXT PAGE]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and sealed as of the date first above written.

ADDRESS OF MORTGAGEE:                    MORTGAGEE:

_____          _____

_____          a_____

_____          _____

_____          By:_____

_____          Name:_____

Attention:_____          Title:_____


ADDRESS OF TENANT:                       TENANT:

_____          _____

_____          _____

_____          By:_____

_____          Name:_____

Attention:_____          Title:_____


ADDRESS OF LANDLORD:                     LANDLORD:

_____          By:_____

_____          Name:_____

Attention:_____          Title:_____

STATE OF FLORIDA

COUNTY OF ORANGE

This instrument was ACKNOWLEDGED before me, on the _____ day of _____,
2005, _____, the _____ of
_____, a _____, on behalf
of said _____.

[SEAL]

My Commission Expires:

_____
Notary Public, State of _____


_____
_____
Printed Name of Notary Public

STATE OF FLORIDA

COUNTY OF ORANGE

    This instrument was ACKNOWLEDGED before me, on the _____ day of
_____, 2005, by _____, the _____ of
_____, a _____, on behalf of said
_____.

[SEAL]

My Commission Expires:

_____

Notary Public, State of _____

_____

Printed Name of Notary Public

STATE OF FLORIDA

COUNTY OF ORANGE

This instrument was ACKNOWLEDGED before me, on the _____ day of _____, 2005, by _____, the _____ of _____, a _____, on behalf of said _____.

[S E A L]

My Commission Expires:

Notary Public, State of _____

_____

Printed Name of Notary Public

## EXHIBIT "A"

### LEGAL DESCRIPTION OF THE LAND
### THE LAND BUILDING AND IMPROVEMENTS BEING LEASED IS:

#### LOCATED AT 4120 SOUTH ORANGE AVENUE IN
#### EDGEWOOD, ORANGE COUNTY, FLORIDA

#### AND IS KNOWN AS:

#### THE PERKINS RESTAURANT AND BAKERY

## EXHIBIT D
## FORM OF TENANT ESTOPPEL CERTIFICATE

TO:    [Lender][Purchaser]

[Insert address]

The undersigned, as Tenant of approximately 4700 square feet on foundation under that certain Lease dated _____, _____ (the "Lease") made with GILLIO DEVELOPMENT INCORPORATED, Landlord, covering space in Landlord's building in Orange County, Florida, known as Perkins Restaurant & Bakery, located at 4120 South Orange Ave., Edgewood, Florida, 32806, hereby certifies as follows:

(1)    That attached hereto as Exhibit "A" is a true, correct and complete copy of the Lease, together with all amendments thereto;

(2)    That the Lease is in full force and effect and has not been assigned, modified, supplemented or amended in any way except as set forth in Exhibit "A";

(3)    That the Lease, as amended as indicated in Exhibit "A", represents the entire agreement between the parties as to the letting of the Premises;

(4)    [TENANT ONLY] That the undersigned has accepted delivery and taken legal possession of the Premises and Landlord has no obligation to make any improvements or alterations to the Premises under the Lease;

(5)    That the commencement date of the term of the Lease was March 1, 2006;

(6)    [TENANT ONLY] That the expiration date of the current term of the Lease is February 28, 2025, and the undersigned has no rights to renew or extend the term of the Lease except as expressly set forth in the Lease;

(7)    [TENANT ONLY] That all conditions of the Lease to be performed by Landlord under the Lease have been satisfied;

(8)    To Tenant's knowledge, that there are no defaults by any party to the Lease and no event has occurred or situation exists which would, with the passage of time, constitute a default under the Lease. [TENANT ONLY] All improvements or work required under the Lease to be made by Landlord to date, if any, have been completed to the satisfaction of the undersigned. Charges for all labor and materials used or furnished in connection with improvements and/or alterations made for the account of the undersigned in the building have been paid in full except as follows: _____;

(9)    That no rents have been prepaid more than one (1) month in advance and full rental, including basic minimum rent, if any, has commenced to accrue;

(10)    [TENANT ONLY] That on this date there are no existing defenses, offsets, claims or credits which the undersigned has against the enforcement of the Lease except for prepaid rent through _____ (not to exceed one month);

(11)    [TENANT ONLY] The undersigned has paid to Landlord a security deposit in the amount of $_____(monthly principle and interest due to lender of lessor).

(12)    [TENANT ONLY] That as of this date there are no actions, whether voluntary or otherwise, pending against the undersigned under the bankruptcy or insolvency laws of the United States or any state thereof.

The undersigned understands that [Lender/Purchaser] will rely upon the certifications and agreements in this Certificate. [Image Group USA, Inc.] The undersigned further understands that in connection with such loan, Landlord's interest in the rentals due under the Lease will be assigned to [Lender] pursuant to an assignment of leases by Landlord in favor of [Lender]. The undersigned agrees that if [Lender] shall notify the undersigned that a default has occurred under the documents evidencing such loan and shall demand that the undersigned pay rentals and other amounts due under the Lease to [Lender], the undersigned will honor such demand notwithstanding any contrary instructions from Landlord.

EXECUTED this _____ day of _____, 2005.

Frank's Crispies, LLC
A Florida Limited Liability Company

By: _____
Name:

_____

Title: _____

## EXHIBIT E

## FORM OF MEMORANDUM OF LEASE

THIS INSTRUMENT PREPARED BY:

_____
_____
_____

AFTER RECORDATION RETURN TO:

_____
_____
_____

RETURN BY:  MAIL (X)  PICK UP( )

## MEMORANDUM OF LEASE

THIS MEMORANDUM OF LEASE (this "Memorandum") is made as of December 30, 2005, by and between Gillio Development Incorporated, located at 657 Caledonia Place, Sanford Florida 32771 ("Landlord"), and Frank's Crispies, LLC, located at 2875 S. Orange Avenue, Suite 500, Orlando Florida 32806, a Florida Company, ("Tenant").

### RECITALS:

WHEREAS, Landlord and Tenant have entered into that certain Lease Agreement dated December 31, 2005 (the "Lease") pursuant to which Tenant leased from Landlord that certain premises commonly known as Perkins Restaurant and Bakery, 4120 South Orange Avenue, Edgewood, Orange County, Florida, and more legally described on Exhibit A attached hereto and made a part hereof (the "Premises").

WHEREAS, contemporaneously with the execution of this Agreement, Landlord acquired the Premises.

WHEREAS, Landlord and Tenant desire to set forth certain terms and provisions contained in the Lease in this Memorandum for recording purposes.

NOW, THEREFORE, for and in consideration of the rents reserved and the covenants and conditions set forth in the Lease, Landlord and Tenant do hereby covenant, promise and agree as follows:

1.      Incorporation by Reference. The foregoing recitals are hereby incorporated herein by reference as if set forth in full in the body of this Memorandum.

2.      Grant of Lease. Pursuant to the Lease and this Memorandum, Landlord hereby demises and leases to Tenant and Tenant hereby leases from Landlord the Premises upon the terms and conditions set forth herein and in the Lease.

3.    Lease Term. The term of the Lease commences on January 1, 2006 and ends on the last day of the (120th) month (i.e. Ten (10) Lease Years (as defined in the Lease)).

4.    Lease Rent. The basic rent due and payable from Tenant to Landlord for the term of the Lease and any extension terms shall be determined and shall be payable pursuant to the terms and provisions of the Lease.

5.    Renewal Options. Tenant has the right to extend the Lease term for three (3) additional periods of five (5) years each as set forth in the Lease, subject to rent increases as set forth therein.

6.    Governing Law. This Memorandum shall be construed in accordance with the laws of the state in which the Premises are located.

7.    Construction Lien Limitation. The Lease Agreement by and between Landlord and Tenant specifically prohibits Tenant from taking any action which would cause the interest of Landlord in the Premises to be subject to liens for improvements made by Tenant. The Lease Agreement specifically prohibits Tenant from taking any action which would subject the Premises to any lien of mechanics, laborers, material men, contractors or subcontractors, or to any other liens or charges whatsoever arising out of the construction, maintenance or repair of the building, structures or other improvements or arising in any other manner. Under the terms of the Lease Agreement, Tenant agrees to discharge promptly any mechanics', material men's or other liens against the Premises which may arise out of or be purported to be due for any labor, services, materials, supplies or equipment alleged to have been furnished to or for Tenant in, upon or about the described Premises.

*[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK;*
*SIGNATURE PAGE FOLLOWS]*

IN WITNESS WHEREOF, Landlord and Tenant have caused this Memorandum of Lease and Tri-party Agreement to be executed and sealed as of the date first above written.

"LANDLORD":

Gillio Development Inc.,
*(a Florida Corporation)*

By: _Matthew M. Gillio_
Name:
Matthew M. Gillio
Title:   CEO / President

and

"TENANT":

Frank's Crispies, LLC, *(a Florida Limited Liability*

*Company),*

By:  Tenshi Leasing, Inc., a Florida corporation

By: _Jodi Jaiman_
Jodi Jaiman, President

**(LANDLORD Acknowledgment)**

STATE OF FLORIDA          )

ORANGE COUNTY )

On this $30^{\underline{a}}$ day of _____, 2005, before me, Matthew M. Gillio, and that he, as such OWNER being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of **Matthew M. Gillio** himself as OWNER of Gillio Development Incorporated.

In witness whereof I hereunto set my hand and official seal.

(NOTARY SEAL)

Notary Public,
Printed Name:
My Commission Expires:

**Philip S. Kaprow**
Commission # DD311765
Expires June 28, 2008
Bonded Troy Fain Insurance Inc. 800-385-7019

### (TENANT Acknowledgment)

STATE OF FLORIDA)

COUNTY OF ORANGE )

On this 30th day of _Dec._ , 2005, before me, Jodi Jaiman, the undersigned personally appeared herself, who acknowledged herself to be the President of Tenshi Leasing, Inc., sole member of Frank's Crispies, LLC Inc. *a Florida Limited Liability Company* and that he, as President, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of Jodi Jaiman, as President of Tenshi Leasing, Inc., sole member of Frank's Crispies, LLC, *a Florida Limited Liability Company.*

In witness whereof I hereunto set my hand and official seal.

(NOTARY SEAL)

Notary Public, State of _Florida_

Printed Name:_____
Notary Commission No._____
My Commission Expires:_____

Philip S. Kaprow
Commission # DD311765
Expires June 28, 2008
Bonded Thru Fain - Insurance, Inc. 800-388-7049

## EXHIBIT F

## STRUCTURAL ALTERATIONS THRESHOLD, INSURANCE PROCEEDS THRESHOLD, AND INSURANCE DEDUCTIBLES

<u>Section 8.1</u> - Structural Alterations Threshold =

<u>Section 9.1</u> - Insurance Proceeds Threshold =

<u>Section 11.2</u> - Deductible Amounts:

The maximum deductible for the insurance required under <u>Section 11.1(a)</u> shall be $1,000.00

The maximum combined deductible for the insurance required under <u>Sections 11.1(b)</u> and <u>11.1(c)</u> shall be $1,000.00.

The maximum deductible for the insurance required under <u>Section 11.1(d)</u> shall be the maximum deductible permitted by applicable law.

## EXHIBIT G
CORPORATE GUARANTY

Mirabilis Ventures, Inc., a Nevada corporation ("Guarantor"), agrees to guaranty all financial obligations set forth for the Tenant in that Lease Agreement by and between Gillio Development, Inc., a Florida corporation ("Landlord"), and Frank's Crispies, LLC, a Florida limited liability company ("Tenant") on the following terms and conditions:

1.  This guaranty shall not trigger unless and until Frank's Crispies, LLC shall be and remain in default for a period of five (5) days.

2.  Upon triggering of this guaranty, Landlord shall provide written notice to Mirabilis Ventures, Inc., at 111 North Orange Ave., Suite 2000, Orlando, Florida 32801. Upon receipt of notice, Guarantor shall satisfy any such defaulted financial obligation of Tenant within ten (10) days of receipt of said written notice.

3.  In the event the financial obligation is not properly cured within ten (10) days, then Landlord may seek to recover from Guarantor any remedy to which it would be entitled to recover from Tenant.


Gillio Development, Inc.                          Mirabilis Ventures, Inc.


_____                          _____
Matthew M. Gillio, President                     James V. Sadrianna, President

## EXHIBIT H

## STATE-SPECIFIC PROVISIONS

A.      If the Premises are in the State of Florida, the following provisions shall constitute a part of this Lease:

1.      RADON GAS - RADON IS A NATURALLY OCCURRING RADIOACTIVE GAS THAT, WHEN IT HAS ACCUMULATED IN A BUILDING IN SUFFICIENT QUANTITIES, MAY PRESENT HEALTH RISKS TO PERSONS WHO ARE EXPOSED TO IT OVER TIME. LEVELS OF RADON THAT EXCEED FEDERAL AND STATE GUIDELINES HAVE BEEN FOUND IN BUILDINGS IN FLORIDA.    ADDITIONAL INFORMATION REGARDING RADON AND RADON TESTING MAY BE OBTAINED FROM YOUR COUNTY PUBLIC HEALTH UNIT.

2.      Until Tenant obtains the consent from the State of Florida to directly pay to the State of Florida the sales and use tax on the rent hereunder, Tenant shall pay and remit such taxes as the agent of Landlord. If Tenant is nevertheless not permitted to pay such taxes directly, Tenant shall remit such taxes, no later than ten (10) Business Days prior to the date when due, to Landlord and, at Landlord's request, shall cooperate with Landlord in the preparation of any required tax reports. Landlord shall prepare and file such tax reports and pay such taxes until Tenant has obtained permission to do so, and Tenant shall, within ten (10) days after demand, reimburse Landlord for its reasonable expenses in connection therewith. Promptly after the date hereof, whether or not the State of Florida accepts Tenant's payment of such taxes, Tenant shall endeavor to obtain permission to file all applicable tax reports and pay such taxes directly to the State of Florida and shall notify and provide evidence to Landlord promptly after it obtains such permission.

# Exhibit B

1/3/10

matt:

Got your recent letter. sorry for
the delay in responding.

Hope you had a happy, healthy and
safe holiday season. It was nothing
special, as you can imagine. That was
fine. I never enjoyed all the fuss
about the holidays.

I try to walk every day - even a
little bit. It is getting cold, in the
20's and 30's so we will see how
it goes. No weights here so no
lifting. I'm not sure I would
do that anyway.

You should have no trouble
getting your claim re-instated.
especially since I was in prison
when the notice and motion were
sent. further, I was suspended
at that time. make sure you
tell these to your @ lawyer.
you should not be penalized
because of this.

good luck with the upcoming
depo, as I refused to tell people

- and I told you once - not answer
the questions. Don't wait and
listen to the question

expect internet access sometime
this year. The prison is required
to get the system upand running,
when this happens, it will
be a lot easier to communicate. I'm
not a great letter writer

Your divorce will be over soon
enough. Just remember - it is only
stuff. Plus, she knows how to
push your buttons. Don't let her.

Hang out with more twenty-
something women. Enjoy yourself.
Just, no long term commitments.

well, I just wanted to drop you
a quick note. I will write again
soon.

John