# *TRANSCRIPT OF PROCEEDINGS*

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION



CASE NO.: 2008-4327

IN RE:

MIRABILIS VENTURE,

**FILED**

MAY 05 2010

DEBTOR.

CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

_____/

STATUS CONFERENCE

BEFORE:        THE HONORABLE KAREN S. JENNEMANN

DATE:          FEBRUARY 3, 2010

TIME:          2:00 P.M.

LOCATION:      UNITED STATES BANKRUPTCY COURT
               ORLANDO, FLORIDA 32801



# Realtime Reporters, Inc.

Registered Professional Reporters
Certified Video Technicians

1188 Fox Forrest Circle • Apopka, Florida 32712 • (407) 884-4662 • FAX (407) 884-4664
*Sandra A. Dawkins, President • Professional Reporting Since 1977*

   

2

1                           A P P E A R A N C E S

2    SCOTT SHUKER, ESQUIRE

3    JUSTIN LUNA, ESQUIRE

4        ATTORNEYS FOR LIQUIDATING DEBTOR

5

6    RANDY GOLD, ESQUIRE

7    ANITA CREAM, ESQUIRE

8        ATTORNEYS FOR THE UNITED STATES

9

10   BART VALDES, ESQUIRE

11       ATTORNEY FOR MULTIPLE CREDITORS AND GREEN FORGE

12        AND ATLANTIC AMERICAN

13

14   ERIC ADAMS, ESQUIRE

15       ATTORNEY FOR MIRABILIS VENTURES AND SPECIAL COUNSEL

16

17   LAURA HOWARD, ESQUIRE

18       ATTORNEY FOR O2 HR

19

20   MELISSA YOUNGMAN, ESQUIRE

21       ATTORNEY FOR RKT CONSTRUCTORS, F. DELL KELLEY

22       ROBBIE A. ROBERTS AND ROBBIE A. ROBERTS TRUST

23

24   PAUL GLOVER, PRO SE

25

3

1    PETER HILL, ESQUIRE

2        ATTORNEY FOR SECURE SOLUTIONS, LLC

3

4    GORDON KEISTER, ESQUIRE

5        ATTORNEY FOR THE STATE OF FLORIDA, DEPARTMENT OF REVENUE

6

7    RICHARD LEE BARRETT, ESQUIRE

8        OBSERVER

9

10    ALSO PRESENT:  MR. CUTHILL

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25 .

4

1            P R O C E E D I N G S

2            THE CLERK:   ALL RISE.  UNITED STATES BANKRUPTCY COURT

3    FOR THE MIDDLE DISTRICT OF FLORIDA IS NOW IN SESSION.  THE

4    HONORABLE KAREN S. JENNEMANN PRESIDING.  YOU MAY BE

5    SEATED.

6            CASE NUMBER 2008-4327, CHAPTER 11, MIRABILIS VENTURE,

7    ADVERSARY 09-813, MIRABILIS VENTURES VERSUS O2HR AND

8    ADVERSARY 09-814, ALSO, CASE NUMBER 2008-4328, CHAPTER 11,

9    HOFF HOLDINGS, ADVERSARY 08-148 HOFF HOLDINGS VERSUS

10   COASTAL EQUITY PARTNERS.  AND CASE NUMBER 2008-4681,

11   CHAPTER 11, AEM, INC.

12           ALL INTERESTED PARTIES, PLEASE COME FORWARD AND

13   ENTER YOUR APPEARANCES.

14           MR. GOLD:  RANDY GOLD AND ANITA CREAM ON BEHALF OF

15   THE UNITED STATES.

16           MR. VALDES:  GOOD MORNING, YOUR HONOR, BART VALDES

17   ON BEHALF OF MULTIPLE CREDITORS AND GREEN FORGE AND

18   ATLANTIC AMERICAN.

19           MR. SHUKER:  GOOD AFTERNOON, YOUR HONOR, SCOTT

20   SHUKER AND JUSTIN LUNA ON BEHALF OF THE LIQUIDATING

21   DEBTOR, MR. CUTHILL IS PRESENT.

22           MR. ADAMS:  GOOD AFTERNOON, YOUR HONOR, ERIC ADAMS

23   ON BEHALF OF MIRABILIS VENTURES, AS SPECIAL COUNSEL IN TWO

24   ADVERSARY PROCEEDINGS, MATTERS 813 AND 814, WHICH ARE THE

25   O2 HR MATTERS.

5

1      MS. HOWARD:  LAURA HOWARD, YOUR HONOR, AND I

2  REPRESENT O2 HR IN THE ADVERSARY PROCEEDINGS.

3      THE COURT:  THANK YOU.

4      MS. YOUNGMAN:  GOOD AFTERNOON, YOUR HONOR, MELISSA

5  YOUNGMAN ON BEHALF OF RKT CONSTRUCTORS, F. DELL KELLEY,

6  ROBBIE A. ROBERTS AND ROBBIE A. ROBERTS TRUST.

7      MR. GLOVER:  GOOD AFTERNOON, YOUR HONOR, PAUL

8  GLOVER, PRO SE.

9      MR. HILL:  GOOD AFTERNOON, YOUR HONOR, PETER HILL

10  REPRESENTING SECURE SOLUTIONS, LLC.

11      MR. KEISTER:  GOOD AFTERNOON, YOUR HONOR, GORDON

12  KEISTER FOR THE STATE OF FLORIDA, DEPARTMENT OF REVENUE.

13      MR. BARRETT:  RICHARD LEE BARRETT HERE, YOUR HONOR,

14  JUST AS AN OBSERVER.  MY FEE APP IS ONE OF THE ONES BEING

15  CONSIDERED.

16      THE COURT:  ANYBODY ELSE CARE TO MAKE AN

17  APPEARANCE?

18      MR. KOBERT:  I'M SORRY, YOUR HONOR, ROY KOBERT.  I ALSO

19  HAVE A FEE APP THAT IS UP AT ISSUE TODAY.

20      THE COURT:  VERY GOOD.  THANK YOU.

21      WE'RE HERE TODAY IN CONNECTION WITH ADVERSARY

22  PROCEEDING PRE-TRIAL CONFERENCES IN THREE SEPARATE

23  ADVERSARY PROCEEDINGS, 09-813, 814 AND THEN 08-148 AS WELL

24  AS A NUMBER OF PENDING OBJECTIONS, WHICH WE ARE HERE FOR

25  EITHER PRE-TRIAL OR ADVERSARY --- OR FOR, PERHAPS, FINAL

6

1    RESOLUTIONS.  AND THERE HAVE BEEN RECENTLY OBJECTIONS

2    FILED TO CERTAIN DISBURSEMENTS REQUIRED UNDER THE

3    CONFIRMED PLAN OF REORGANIZATION.

4         AND MR. SHUKER, IF YOU'LL JUST BRING ME UP TO SPEED AS

5    TO WHERE WE ARE ON THE VARIOUS PENDING MOTIONS AND

6    MATTERS AND THE MOST EXPEDITIOUS WAY TO GET THROUGH

7    THEM.

8         MR. SHUKER:  THANK YOU, YOUR HONOR.  AS YOU KNOW,

9    WE'RE HERE ON TWO BROAD ISSUES.  FIRST, CONSIDERATION OF

10   SOME PENDING CLAIMS, OBJECTIONS IN SOME ADVERSARIES.  I

11   DON'T THINK THERE'S GOING TO BE ANY LITIGATED MATTERS IN

12   THOSE TODAY.  THEY'RE ALL SCHEDULING OR HAVE BEEN

13   SCHEDULED.

14        AND THEN SECOND, THE OBJECTIONS BY THE UNITED STATES,

15   WHICH IS OBJECTED TO OR OPPOSED, AND THAT WILL TAKE

16   PROBABLY SOME TIME.

17        SO WHAT I WOULD LIKE TO DO IS GO OVER THE STATUS OR

18   SETTLED ONES, LEAVE THE UNITED STATES UNTIL THE END, AND I

19   HAVE --- I'VE TAKEN THE CALENDAR AND ADJUSTED IT FOR WHERE

20   WE'RE AT, IF I MAY APPROACH?

21        THE COURT:  CERTAINLY.  WE'VE UPDATED IT SOME.  I KNOW

22   IT DIDN'T GET UPDATED UNTIL VERY RECENTLY.

23        MR. SHUKER:  YOUR HONOR, THE FIRST ONE ON THERE IS THE

24   ADVERSARIES 813 AND 814, THE STATUS CONFERENCE AND A

25   MOTION TO STRIKE, WHICH I THINK IS SETTLED.  MR. ADAMS IS IN

7

1      THE COURTROOM AND CAN BRING THE COURT UP TO SPEED AND

2      DISCUSS WHERE THEY GO NEXT IN THAT.

3           THE COURT:  VERY GOOD.  MR. ADAMS, IF YOU WOULD

4      APPROACH, PLEASE.

5           MR. SHUKER:  AND THE PERSON ON THE PHONE IS HERE FOR

6      THOSE AS WELL.

7           THE COURT:  YES.  MS. HOWARD.

8           MS. HOWARD:  YES, YOUR HONOR.  WITH REGARD TO THE

9      MOTION TO STRIKE, I'LL REPRESENT TO THE COURT THAT WE HAVE

10     NO OBJECTION TO THE GRANTING OF THAT MOTION.  WE

11     ACKNOWLEDGE THAT WE ARE NOT ENTITLED TO A JURY TRIAL.

12          THE COURT:  THANK YOU VERY MUCH, MS. HOWARD.

13          AND MR. ADAMS, IF YOU COULD JUST BRING ME UP TO SPEED

14     OVERALL ON THE STATUS AND OF THE NON-JURY ADVERSARY

15     PROCEEDINGS.

16          MR. ADAMS:  YES, MA'AM.  THEY'VE BEEN INITIATED.

17     THEY'VE BEEN SERVED.  THEY'VE BEEN ANSWERED.  SO

18     ~~ESSENTIALLY, THE PLEADINGS ARE CLOSED AS THEY STAND NOW.~~

19     WE SERVED SOME LIMITED PAPER DISCOVERY FOR SOME

20     ACCOUNTING RECORDS THAT WE THINK WILL FACILITATE A

21     SETTLEMENT COMMUNICATION OR SETTLEMENT DISCUSSION.

22          IN MY COMMUNICATIONS WITH MS. HOWARD AND HER

23     PARTNER YESTERDAY, WE COLLECTIVELY ANTICIPATE THAT WE

24     CAN HAVE A PRODUCTIVE SETTLEMENT CONFERENCE AFTER SOME

25     MUTUAL DISCOVERY IN FOUR TO SIX MONTHS.  AND IF IT DOES NOT

8

1   SETTLE AT THAT POINT IN TIME, WE ANTICIPATE PREPARING FOR

2   TRIAL AND BEING ABLE TO TRY TO THING, FOUR TO SIX MONTHS

3   AFTER THE UNSUCCESSFUL SETTLEMENT CONFERENCE.

4       WE DO THINK THAT EVEN THOUGH THEY'RE TWO SEPARATE

5   ADVERSARY PROCEEDINGS, BECAUSE THEY DEAL WITH TWO

6   SEPARATE MIRABILIS SUBSIDIARIES, TWO SEPARATE SETS OF

7   NOTES, THEY DO INVOLVE VERY COMMON ISSUES OF FACT AND

8   LAW, AND SO, WE MAY DECIDE IF THE COURT DECIDES TO HAVE A

9   LATER SETTLEMENT CONFERENCE, IT MAY BE EXPEDITIOUS TO

10   CONSIDER CONSOLIDATING THE MATTERS FOR PURPOSES OF TRIAL.

11       THE COURT:  VERY GOOD.

12       MR. ADAMS:  MS. HOWARD, IF THERE'S ANYTHING YOU

13   WOULD LIKE TO ADD, I JUST WANTED TO COVER EVERYTHING.  I'M

14   NOT TRYING TO SPEAK OVER YOU OR SPEAK FOR YOU.

15       MS. HOWARD:  THAT COVERS IT PRETTY MUCH, YOUR HONOR.

16   WE AGREE THAT CONSOLIDATION WOULD PROBABLY BE OKAY AT

17   THE END IF WE CAN'T SETTLE THE CLAIMS BECAUSE EVEN THOUGH

18   THEY'RE TWO SEPARATE CONTRACTS, TWO SEPARATE ENTITIES,

19   IT'S REALLY THE SAME ISSUES, THE SAME EXPERTS WHO WOULD

20   PROBABLY HAVE TO TESTIFY, BUT WE HAVE NO OBJECTION TO

21   THAT.

22       THE COURT:  VERY GOD.  ARE THE PARTIES REQUESTING OR

23   DO YOU THINK IT WOULD BE ADVANTAGEOUS TO REQUIRE

24   MEDIATION?

25       MR. ADAMS:  WE HAVE ATTEMPTED TO HAVE EXCHANGES OF

9

1    DOCUMENTS AND SETTLEMENT INFORMATION ON OUR OWN AND

2    WHILE WE HAVE A GOOD RAPPORT, YOU KNOW, I ALWAYS THINK A

3    MEDIATOR ADDS SOME VALUE AND WOULD FACILITATE A

4    POTENTIAL SETTLEMENT.  SO IF THE COURT WERE SO INCLINED, I

5    THINK THAT IT WOULD --- IT WOULD DEFINITELY INCREASE THE

6    LIKELIHOOD OF SETTLEMENT. IT WOULD INCREASE THE

7    POSSIBILITY.

8         THE COURT:  WHAT IS THE POSITION OF YOUR CLIENT, MS.

9    HOWARD, ON THAT ISSUE?

10        MS. HOWARD:  I AGREE WITH MR. ADAMS.  I THINK THAT

11   HAVING A MEDIATION --- A DEADLINE FOR MEDIATION IMPOSED BY

12   THE COURT WILL MAKE MY CLIENT REACT A LITTLE FASTER AND

13   WILL FACILITATE RESOLUTION.

14        THE COURT:  VERY GOOD.  VERY GOOD.  ARE THE --- IS THERE

15   A POSSIBILITY THAT YOU COULD SETTLE ONE BUT NOT THE OTHER.

16   I DON'T WANT TO GET INTO ANY SETTLEMENT DISCUSSIONS, I'M

17   JUST WONDERING WHY WE DON'T GO AHEAD AND CONSOLIDATE

18   THEM NOW.

19        MR. ADAMS:  YOUR HONOR, I DON'T KNOW.  IT IS ENTIRELY

20   POSSIBLE THAT SOME MIGHT --- ONE MIGHT SETTLE AND THE

21   OTHER MIGHT NOT.  BUT THEY ARE SO INTERTWINED.

22   ESSENTIALLY, THEY ARE SALES OF BOOKS OF BUSINESS FROM A

23   PEO ENTITY TO ANOTHER OPERATING PEO THAT THEY'RE LIKELY

24   TO BE DISCUSSED IN COMMON AND SO, I THINK IT'S UNLIKELY

25   THAT THEY WOULD SETTLE SEPARATELY.  I THINK IF THEY'RE

10

1    GOING TO SETTLE AT ALL, THEY'D PROBABLY SETTLE

2    COLLECTIVELY.  BUT IT'S A POSSIBILITY.

3        THE COURT:  VERY GOOD.  WE'LL KEEP THEM SEPARATE AT

4    THIS JUNCTURE.  I WILL ORDER MEDIATION.  I WILL BRING YOU

5    BACK FOR A FURTHER PRE-TRIAL CONFERENCE.

6        AND DID YOU SUGGEST APPROXIMATELY 90-DAYS, IS THAT

7    WHAT YOU SAID, OR 120 DAYS?  WHAT DO YOU SUGGEST?

8        MR. ADAMS:  I THINK WE COULD HAVE A PRODUCTIVE

9    SETTLEMENT CONFERENCE BECAUSE WE'RE GOING TO DO A LITTLE

10    BIT OF A MUTUAL PAPER DISCOVERY IN BETWEEN FOUR TO SIX

11    MONTHS.

12        THE COURT:  OKAY.

13        MR. ADAMS:  SO I THINK IT'S 120 DAYS WOULD BE THE

14    SOONEST THAT WE COULD MEDIATE BECAUSE SOME OF THE

15    INFORMATION NEEDS TO BE COLLECTED AND THEN REVIEWED BY

16    ACCOUNTANTS.

17        THE COURT:  SO AT LEAST THAT, MAYBE A LITTLE BIT

18    LONGER.

19        MS. HOWARD:  RIGHT.

20        MR. ADAMS:  YOUR HONOR?

21        THE COURT:  YES.

22        MR. ADAMS:  BY WAY OF EFFICIENCY BECAUSE I ANTICIPATE

23    WANTING TO --- I PRACTICE IN TAMPA WITH MS. HOWARD AS WELL.

24        THE COURT:  CERTAINLY.

25        MR. ADAMS:  IF THE COURT WERE SO INCLINED FOR THE

11

1    NEXT PRE-TRIAL CONFERENCE AS LONG AS IT DIDN'T IMPAIR YOUR

2    ABILITY TO HEAR ARGUMENT OR HEAR WHAT WE NEED TO SAY,

3    COULD I APPEAR WITH MS. HOWARD ON THE PHONE, SO I COULD BE

4    JUDICIOUS WITH MIRABILIS' LEGAL FEES.

5          THE COURT: NO PROBLEM.

6          MR. ADAMS: I APPRECIATE IT. THANK YOU, YOUR HONOR.

7          THE COURT: WELL, I'M GOING TO GIVE YOU A DATE.

8          MR. ADAMS: OKAY.

9          THE COURT: WHAT'S THE DATE?

10         UNIDENTIFIED SPEAKER: JUNE 17TH AT 2:00 P.M.

11         THE COURT: JUNE 17TH --- DID YOU SAY 10?

12         UNIDENTIFIED SPEAKER: 2:00 P.M.

13         THE COURT: 2:00 P.M.

14         MS. HOWARD: JUNE 17TH AT 2:00 P.M.

15         THE COURT: YES. AND THAT WILL JUST BE A PRE-TRIAL

16   CONFERENCE. IF I COULD GET YOU, MR. ADAMS TO SUBMIT AN

17   ORDER THAT GRANTS THE MOTION TO STRIKE THE JURY TRIALS IN

18   ~~BOTH OF THE ADVERSARY PROCEEDINGS AND SETS THE~~

19   CONTINUED PRE-TRIAL CONFERENCE FOR THAT DATE AND TIME.

20         MR. ADAMS: YES, MA'AM.

21         THE COURT: AND THEN I WILL SEPARATELY PREPARE AN

22   ORDER DIRECTING MEDIATION TO BE CONCLUDED ON OR BEFORE

23   JUNE THE 17TH. THAT WILL GIVE YOU FLEXIBILITY TO SETTLE --- TO

24   FINISH OR AT LEAST GET FURTHER ALONG IN DISCOVERY AND SEE

25   IF YOU CAN SETTLE IT ON YOUR OWN, AND IF NOT, STILL HAVE

12

1     TIME TO DO THE MEDIATION.

2           MR. ADAMS:  YES, MA'AM.

3           THE COURT:  IS THERE ANYTHING ELSE THAT WE NEED TO DO

4     IN EITHER ADVERSARY PROCEEDING?

5           MR. ADAMS:  NOT FROM OUR END, YOUR HONOR.

6           MS. HOWARD:  NOT FROM OUR END EITHER, YOUR HONOR.

7           THE COURT:  VERY GOOD.  THANK YOU VERY MUCH.  MS.

8     HOWARD, WILL YOU BE HANGING UP ON US NOW?

9           MS. HOWARD:  YES, YOUR HONOR.  THANK YOU SO MUCH FOR

10    LETTING ME APPEAR BY PHONE.

11          THE COURT:  YOU'RE WELCOME.  THANK YOU.

12          AND MR. SHUKER.

13          MR. SHUKER:  THANK YOU, YOUR HONOR.  THE NEXT

14    GROUPINGS AS LISTED BEFORE YOU ARE BOTH THE ADVERSARY IN

15    THE HOFF CASE, 08-148, AND THEN CLAIM OBJECTIONS, WHICH I

16    BELIEVE SHOW AS CALENDAR ITEMS ONE THROUGH THREE IN THE

17    MIRABILIS' CASE.  IT'S THE OBJECTION TO CLAIM NUMBER 23,

18    ~~WHICH IS DOCKET ENTRY 335 AND THE RESPONSE, OBJECTION TO~~

19    CLAIM 22, WHICH IS DOCKET ENTRY 334 AND THE RESPONSE, AND

20    OBJECTION TO CLAIM 21, WHICH IS DOCKET 333 AND THE RESPONSE.

21          THE COURT:  RIGHT.

22          MR. SHUKER:  MR. VALDES REPRESENTS, I BELIEVE, ALL OF

23    THE PARTIES.  I BELIEVE WE'VE AGREED THAT OUR PLAINTIFFS

24    WILL AMEND THE COMPLAINT NO LATER THAN FEBRUARY 12TH OF

25    THIS YEAR.  DISCOVERY ON THE CLAIMS HAS BEGUN AND WE

13

1   THINK THAT IT SHOULD PROBABLY BE SET OVER FOR 60 TO 90 DAYS

2   TO SEE WHERE WE ARE ON BOTH THE ANSWER TO THE AMENDED

3   COMPLAINT, ANY DISCOVERY ISSUES. IT'S PROBABLY TOO EARLY

4   TO KNOW WHETHER MEDIATION WILL HELP BECAUSE THEY

5   HAVEN'T EVEN SEEN THE AMENDED COMPLAINT. PROBABLY AT

6   THAT NEXT 90 DAYS, IF BOTH SIDES CAN AGREE, WE WOULD ASK

7   FOR AN ORDER DIRECTING MEDIATION. AND THAT'S WHERE THIS

8   ONE IS. I THINK I'VE GOT IT CORRECT.

9          THE COURT: AND MR. VALDES.

10         MR. VALDES: YES. MR. SHUKER ALMOST GOT IT CORRECT. I

11  AM RECOMMENDING TO MY CLIENTS THAT WE AGREE TO THE

12  AMENDMENT, BUT I HAVEN'T BEEN ABLE TO CONFIRM THAT YET.

13  BUT I BELIEVE CERTAINLY, THEY'RE GOING TO FILE IT NO MATTER

14  WHAT. I BELIEVE IT WILL BE AN AGREED TO AMENDMENT.

15         WE AGREE --- I MEAN, I'VE ALREADY AGREED TO EXTEND.

16  WE STARTED SOME DISCOVERY AND WE'VE AGREED TO GIVE THEM

17  AN EXTENSION OF TIME. SO IF THINGS ARE GETTING A LITTLE

18  DELAYED, WE WOULD ASK FOR 90 DAYS, ANOTHER PRE-TRIAL

19  CONFERENCE, THEN WE'LL COME BACK AND SEE YOU, AND DECIDE

20  WHERE WE GO FROM THERE.

21         THE COURT: VERY GOOD. VERY GOOD. ANYTHING

22  FURTHER?

23         THEY DON'T NEED YOUR CONSENT. THERE'S NO ANSWER

24  FILED, SO THEY'RE WELCOME TO FILE AN AMENDED COMPLAINT AT

25  ANY POINT THAT THEY LIKE.

14

1          MR. VALDES: SURE.

2          THE COURT: WITH ALL DUE DEFERENCE TO YOUR CLIENTS, I

3    DON'T REALLY CARE. AND SO YOU'RE CERTAINLY WELCOME. I

4    WOULD ASK THAT YOU FILE IT TIMELY SO WE CAN GET IT ISSUE

5    BEFORE WE RESUME.

6          I WILL SET A CONTINUED PRE-TRIAL CONFERENCE FOR

7    PROBABLY SOMEWHERE IN BETWEEN THE JUNE 17TH AND THE ---

8          UNIDENTIFIED SPEAKER: APRIL 22ND.

9          THE COURT: YES, THAT'S GOOD. APRIL 22ND AT 2:00 P.M. IS

10   THAT CORRECT?

11         UNIDENTIFIED SPEAKER: YES.

12         THE COURT: AND WE'LL SEE WHERE WE'RE GOING AT THAT

13   JUNCTURE. BUT I HOPE YOU'RE AT ISSUE AND AT LEAST HAVE

14   DISCUSSED DISCOVERY PLANS OR ISSUES AT THAT POINT.

15         MR. VALDES: WE WILL. THANKS.

16         THE COURT: SHOULDN'T WE FORMALLY CONSOLIDATE

17   THESE THINGS TOO.

18         ~~MR. SHUKER: I HAVE NO OBJECTIONS TO THAT.~~

19         THE COURT: DO YOU HAVE ANY OBJECTION TO THAT, TO

20   CONSOLIDATE THE OBJECTIONS WITH THE ADVERSARY

21   PROCEEDING? THEY SEEM PART AND PARCEL TO ME.

22         MR. VALDES: NO. I THOUGHT WE AGREED TO THAT LAST

23   TIME, SO I THINK WE JUST NEED ---

24         THE COURT: I DIDN'T SEE ANY ORDER OR ANYTHING THAT

25   FORMALLY DID THAT, AND I MAY HAVE MISSED IT.

15

1    MR. VALDES:  WE DIDN'T.  WE'LL WORK ON ONE TOGETHER

2    AND UPLOAD IT.

3    MR. SHUKER:  SURE.

4    THE COURT:  SO DO YOU WANT TO MAKE AN ORE TENUS

5    MOTION SO I CAN RECORD SOMETHING ON THE ---

6    MR. SHUKER:  YOUR HONOR, I MAKE AN ORE TENUS MOTION

7    TO CONSOLIDATE THE CLAIMS OBJECTIONS WITH THE

8    ADVERSARIES.

9    THE COURT:  VERY GOOD.  AND I WILL GRANT IT.  AND IF YOU

10   --- AND THE PROCEEDING MEMO WILL JUST PROVIDE THAT THE

11   AMENDED COMPLAINT WILL BE FILED ON OR BEFORE --- WILL IT BE

12   FILED BY FEBRUARY THE 12TH?

13   MR. SHUKER:  YES, FEBRUARY 12TH.

14   THE COURT:  VERY GOOD.  ANYTHING ELSE THAT WE NEED

15   TO DO?

16   MR. SHUKER:  I DON'T BELIEVE SO.

17   MR. VALDES:  THAT'S ALL ON THAT ONE, YOUR HONOR.

18   THE COURT:  VERY GOOD.  THANK YOU VERY MUCH.

19   MR. SHUKER:  YOUR HONOR, NEXT, IS A PRE-TRIAL

20   CONFERENCE, A STATUS CONFERENCE, IT'S CALENDAR FOUR,

21   OBJECTION TO CLAIM NUMBER 24, DOCKET ENTRY 336 AND THE

22   RESPONSE THERETO.  A SETTLEMENT AGREEMENT HAS BEEN FILED

23   AS HAS A MOTION TO APPROVE THE COMPROMISE --- A

24   COMPROMISE CONTROVERSY, THAT'S DOCKET ENTRY 481, AFTER

25   THE PERIOD RUNS, WE'LL GO AHEAD AND UPLOAD AN ORDER.

16

1    THE COURT: WE'LL PROVIDE ON THE MEMO THAT IT SETTLED

2    PURSUANT TO THE PARTIES' AGREEMENT.

3    MR. SHUKER: NEXT, IS THE OBJECTION TO CLAIM 34, DOCKET

4    ENTRY 347 AND THE RESPONSE. WE HAVE SETTLED AND WE'LL

5    UPLOAD AN AGREED ORDER. MR. LEAD WILL HAVE $169,617.05

6    UNSECURED CLAIM.

7    THE COURT: VERY GOOD. AND I WILL LOOK FOR THAT.

8    WE'LL NOTE ON THE PROCEEDING MEMO THAT IT SETTLED.

9    MOTION TO BE FILED.

10    MR. SHUKER: THANK YOU, YOUR HONOR.

11    THE COURT: YOU'RE WELCOME.

12    MR. SHUKER: THE NEXT MATTER IS THE OBJECTION TO

13    CLAIM, NUMBER 33, DOCKET ENTRY 346 AND THE RESPONSE. THAT

14    HAS ALSO BEEN SETTLED ALLOWING MR. SULLIVAN $150,000.00

15    UNSECURED CLAIM AND WE WILL UPLOAD AN ORDER.

16    THE COURT: A SIMILAR ENTRY. VERY GOOD.

17    MR. SHUKER: THE NEXT TWO, YOUR HONOR, IS OBJECTION

18    TO CLAIM FIVE AND SIX, AND MR. GLOVER, WHO IS HERE PRO SE.

19    THOSE ARE DOCKET ENTRIES 326 AND 327. WE ALSO FILED A

20    MOTION TO CONTINUE THE FINAL EVIDENTIARY HEARING, WHICH

21    IS  DOCKET 482. THE REASON WE REQUESTED A CONTINUANCE IS

22    THAT WE FILED YESTERDAY AN ADVERSARY ACTION FOR BREACH

23    OF FIDUCIARY DUTY, FRAUDULENT TRANSFER AND AMENDED THE

24    CLAIM OBJECTION. THAT'S ADVERSARY 1030. AND OBVIOUSLY,

25    NOTHING YET HAS HAPPENED IN THAT OTHER THAN WE'LL BE

17

1    ISSUING A SUMMONS. MR. GLOVER IS HERE.

2         THE COURT: I WAS GOING TO SAY, I'M LOOKING FOR MR.

3    GLOVER. THERE ARE YOU. WHY DON'T YOU COME ON UP, LET'S

4    WEIGH IN AND DISCUSS THE ISSUES BECAUSE WE'LL BE SEEING

5    MORE OF EACH OTHER.

6         HAVE YOU GOTTEN THE ADVERSARY PROCEEDING OR KNOW

7    THAT IT WAS FILED AT THIS POINT?

8         MR. GLOVER: NO, WE HAVEN'T.

9         THE COURT: SO NOW, YOU'RE IN YET ANOTHER LEVEL OF

10   LITIGATION. SO TYPICALLY, WHEN THOSE ADVERSARY

11   PROCEEDINGS ARE FILED, WE SET AN INITIAL PRE-TRIAL

12   CONFERENCE BECAUSE OF THE --- THIS PARTICULAR ONE, I'LL SET

13   A SEPARATE TIME FOR THAT. HOPEFULLY, WE'VE CAUGHT IT. WE

14   MAY NOT, BUT WE WILL SET THE PRE-TRIAL CONFERENCE FOR

15   EITHER THE APRIL OR JUNE DATE. I REALLY DON'T CARE.

16        MR. SHUKER: YOUR HONOR, I THINK TO GIVE SOME TIME,

17   AND ESPECIALLY, IF MR. GLOVER IS GOING TO HIRE COUNSEL NOW

18   THAT THERE'S AN ADVERSARY, PROBABLY THE JUNE DATE. BUT

19   I'LL DEFER TO HIM.

20        THE COURT: IT REALLY IS YOUR CHOICE.

21        MR. GLOVER: THE SOONER, THE BETTER.

22        THE COURT: SO YOU'LL JUST AS SOON DO THE APRIL. I WILL

23   GRANT THE MOTION TO CONTINUE DOCKET NUMBER 482. I WILL

24   CONSOLIDATE THE OBJECTION TO CLAIMS FIVE AND SIX WITH THE

25   RECENTLY FILED ADVERSARY PROCEEDING. YOU MAY AS WELL

18

1    KEEP THEM ALL IN ONE PACKAGE.  AND WE WILL HAVE THE INITIAL

2    PRE-TRIAL CONFERENCE ON APRIL 22ND AT 2:00.  IT WILL BE A NON-

3    EVIDENTIARY PRE-TRIAL CONFERENCE, BUT THAT WAY, WE'LL BE

4    ABLE TO SEE WHAT DISCOVERY IS NEEDED.  YOU MAY WANT TO

5    HIRE AN ATTORNEY AT THIS POINT.  YOU MAY NEED TO HIRE AN

6    ATTORNEY AT THIS POINT.

7          MR. GLOVER:  OKAY.

8          THE COURT:  WE'LL SEE WHAT HE OR SHE SUGGESTS.

9          DO YOU HAVE ANY QUESTIONS TODAY THOUGH, MR.

10   GLOVER?

11         MR. GLOVER:  NO, THANK YOU, YOUR HONOR.

12         THE COURT:  IF YOU'LL SUBMIT THE ORDER GRANTING THE

13   CONTINUANCE AND THEN CONFIRMING THE CONSOLIDATION ---

14         MR. SHUKER:  I WILL DO SO, YOUR HONOR.

15         THE COURT:  --- AND THE PRE-TRIAL CONFERENCE DATE.

16         MR. SHUKER:  THANK YOU.

17         THE COURT:  THANK YOU VERY MUCH.

18         MR. SHUKER:  THE NEXT ITEMS TOGETHER, YOUR HONOR, MS.

19   YOUNGMAN REPRESENTS I BELIEVE.  IT'S OBJECTION TO CLAIM 38

20   OF RKT, WHICH IS DOCKET ENTRY 350 AND THE RESPONSE.

21   OBJECTION TO CLAIM NUMBER 39, 40 AND 41 OF FD KELLEY,

22   DOCKET ENTRY 351 AND 352 AND THE RESPONSE.  THE OBJECTION

23   TO CLAIMS NUMBER 42 THROUGH 52 OF ROBI ROBERTS, DOCKET

24   ENTRY 354 TO 64 AND THE RESPONSE BY MR. ROBERTS OR MS.

25   ROBERTS.

19

1    YOUR HONOR, WE HAVE STARTED DISCOVERY, AND

2    ANTICIPATE BEING READY FOR TRIAL, IF NECESSARY, IN THE NEXT

3    30 TO 45 DAYS FROM OUR PROSPECTIVE.

4    THE COURT: AND MS. YOUNGMAN, WHERE ARE YOU AT

5    FROM YOUR DISCOVERY AND YOUR PROSPECTIVE?

6    MS. YOUNGMAN: WE'RE BOTH ENGAGED IN DISCOVERY AND

7    WE EVEN STARTED SETTLEMENT TALKS IN AT LEAST TWO OF THE

8    CLAIMS.

9    THE COURT: VERY GOOD. VERY GOOD. SHOULD WE SET IT

10    OVER FOR A FURTHER PRE-TRIAL CONFERENCE ON THE APRIL DATE

11    RATHER THAN SET AN EVIDENTIARY HEARING? IF YOU'RE

12    DISCUSSING SETTLEMENT, THAT'S ---

13    MR. SHUKER: I THINK THAT MAKES SENSE.

14    MS. YOUNGMAN: THAT'S FINE, YOUR HONOR.

15    THE COURT: I WILL SET IT OVER FOR ONE FURTHER PRE-

16    TRIAL CONFERENCE ON APRIL THE 22ND AT 2:00. IF THE

17    PROCEEDING MEMO CAN PROVIDE, WE WILL SET AN EVIDENTIARY

18    HEARING AT THE NEXT MEETING SO THAT EVERYBODY WILL KNOW

19    WE ARE WORKING FORWARD TO THAT.

20    DO THE PARTIES RECOMMEND OR SUGGEST MEDIATION? OR

21    ARE YOU WORKING TOGETHER? WHATEVER IS THE MOST

22    EXPEDITIOUS IS FINE?

23    MS. YOUNGMAN: YOUR HONOR, I THINK THAT THE PARTIES

24    HAVE A GOOD RAPPORT AND WE'LL PROBABLY BE ABLE TO SETTLE

25    IT ON OUR OWN.

20

1       THE COURT: OKAY. WHAT DO YOU THINK, MR. SHUKER?

2       MR. SHUKER: AND I AGREE.

3       THE COURT: VERY GOOD. THAN WE'LL SEE YOU BACK FOR

4   THE FINAL PRE-TRIAL CONFERENCE ON APRIL THE 22ND AT 2:00 ON

5   THOSE MATTERS.

6       MS. YOUNGMAN: THANK YOU, YOUR HONOR.

7       THE COURT: THANK YOU VERY MUCH, MS. YOUNGMAN.

8       MR. SHUKER: WE'RE MOVING ALONG. WE HAVE --- I THINK

9   IT'S NUMBER 11 ON THE CALENDAR, OBJECTION TO CLAIM NUMBER

10  14 FILED BY PROFESSIONAL BENEFIT, THAT'S DOCKET ENTRY 329, A

11  RESPONSE BY PROFESSIONAL BENEFIT, DOCKET ENTRY 431 AND

12  OUR MOTION BY THE DEBTOR TO STRIKE THE RESPONSE, DOCKET

13  ENTRY 471. THIS WAS ANOTHER ONE FILED BY MR. AMADEO.

14      WE MOVED TO STRIKE BECAUSE YOU CAN'T APPEAR PRO SE

15  PURSUANT TO RULE 9010(A) AND 1654, SO WE'RE ASKING THAT

16  THAT ORDER BE ENTERED. THE RESPONSE BE STRICKEN AND THEN

17  THE OBJECTION BE SUSTAINED.

18      THE COURT: IS THERE ANY OTHER PARTY THAT TAKES AN

19  INTEREST IN THAT PARTICULAR MATTER? HEARING NONE, AND

20  BASED UPON THE PRIOR RULINGS OF THE COURT IN CONNECTION

21  WITH THE LAST HEARING, I WILL GRANT THE DEBTOR'S MOTION TO

22  STRIKE AND SUSTAIN THE DEBTOR'S OBJECTION TO CLAIM 14.

23      FOR THE PARTIES, JUST PURE INFORMATION, THERE WAS AN

24  APPEAL THAT MR. AMADEO FILED. YOU MAY NOT HAVE EVEN GOT

25  NOTICE BECAUSE I DON'T THINK ANYBODY GOT NOTICE. BUT

1   THERE WAS A PLETHORA OF DEFICIENCIES IN THE APPEAL AND

2   THERE WILL BE AN ORDER DISMISSING IT.

3          MR. SHUKER:  OKAY.  THANK YOU, YOUR HONOR.

4          THE COURT:  OKAY.

5          MR. SHUKER:  NEXT ON I SHOW 13 AND 14 AS CALENDAR

6   ENTRIES OBJECTION BY THE DEBTOR TO CLAIM 27 FILED BY SECURE

7   SOLUTIONS, DOCKET ENTRY 340 WITH ITS RESPONSE, THE

8   OBJECTION BY DEBTOR TO CLAIM NUMBER 26, FILED BY SECURE

9   SOLUTIONS, DOCKET ENTRY 339 AND ITS RESPONSE.  MR. HILL

10  REPRESENTS SECURE SOLUTIONS.

11         WE'VE BEGUN TALKING SETTLEMENT MAKING SOME

12  PROGRESS.  WE ALSO MAY BE FILING AN ADVERSARY.  IF WE CAN

13  SET THIS OVER FOR THE APRIL 22ND, I THINK THAT WOULD BE

14  SUFFICIENT.

15         THE COURT:  AND MR. HILL, WHAT'S YOUR POSITION?

16         MR. HILL:  THAT'S FINE, JUDGE.  THAT WORKS FOR US.

17         THE COURT:  WE'LL SET IT OVER FOR A FURTHER PRE-TRIAL

18  CONFERENCE, NON-EVIDENTIARY STATUS CONFERENCE FOR APRIL

19  THE 22ND AT 2:00.

20         MR. HILL:  THANK YOU.

21         THE COURT:  YOU'RE VERY WELCOME.  THANK YOU.

22         MR. SHUKER:  NEXT, YOUR HONOR, IN THE AEM CASE, WHICH

23  IS 4681, THERE IS OBJECTION BY THE DEBTOR TO THE STATE OF

24  FLORIDA'S DEPARTMENT OF REVENUE CLAIM 164 AND THE

25  RESPONSE THERETO BY DOCKET NUMBER 180.  MR. KEISTER IS

22

1    HERE. WE HAVE SUBMITTED AN AMENDED RETURN. WE ARE

2    WAITING FOR THE FLORIDA DEPARTMENT OF REVENUE TO REVIEW

3    THAT. I THINK THAT CAN GO TO THE APRIL 22ND ---

4         THE COURT: HAVE YOU RECEIVED THE RETURN YET, MR.

5    KEISTER?

6         MR. KEISTER: YES, YOUR HONOR, AND THEY'RE IN

7    TALLAHASSEE GOING THROUGH THEIR WORKUP. WE GOT THE

8    RETURNS EIGHT DAYS AGO AND WE STILL NEED SOME MORE TIME. I

9    THINK 30 DAYS WOULD BE SUFFICIENT. WE'LL BE AMENDING OUR

10   CLAIM AND THEN ABSENT ANY OBJECTION TO THE AMENDED

11   CLAIM, IT SHOULD BE ALLOWED TO STAND. SO I THINK THIS

12   OBJECTION TO THIS CLAIM SHOULD BE MOOT AT THIS POINT.

13        THE COURT: VERY GOOD. WE'LL WAIT FOR THE AMENDED

14   CLAIM TO BE FILED.

15        MR. KEISTER: OKAY.

16        THE COURT: I'LL SET IT OVER FOR A STATUS, BUT I DOUBT

17   THAT IT WILL BE RIPE FOR RESOLUTION. I'LL ASSUME YOU'LL

18   WITHDRAW IT IF AN AMENDED CLAIM IS FILED.

19        MR. KEISTER: OKAY. AND IF IT IS SET FOR FURTHER

20   HEARING, MAY I APPEAR TELEPHONICALLY?

21        THE COURT: ABSOLUTELY.

22        MR. KEISTER: ALL RIGHT. THANK YOU, YOUR HONOR.

23        THE COURT: AND IT WILL BE --- AT THIS POINT, UNLESS THE

24   OBJECTION IS WITHDRAWN, IT WILL BE SET OVER FOR JUST A

25   STATUS CONFERENCE ON APRIL 22ND AT 2:00 P.M. YOU'RE

1    WELCOME TO PARTICIPATE BY PHONE, BUT AS LONG AS YOU FILE

2    AN AMENDED CLAIM THAT THE DEBTOR DOESN'T STRONGLY

3    OBJECTION TO ---

4            MR. KEISTER:  DO I NEED TO FILE A MOTION FOR THAT

5    TELEPHONIC APPEARANCE?

6            THE COURT:  NO.  THERE ARE PROCEDURES ON THE WEBSITE.

7    YOU MIGHT WANT TO LOOK AT THAT.

8            MR. KEISTER:  OKAY.

9            THE COURT:  IT HASN'T WORKED SO WELL BECAUSE I

10   HAVEN'T HAD A DEVOTED COURTROOM DEPUTY TO CALL, BUT

11   THAT POINT, I WILL.  BUT IF YOU JUST CALL A WEEK IN ADVANCE,

12   WE'LL GET YOU ON THE CALENDAR.

13           MR. KEISTER:  THANK YOU, JUDGE.

14           THE COURT:  OKAY.

15           MR. SHUKER:  YOUR HONOR, AN ULTIMATE ONE BEFORE WE

16   GET TO THE UNITED STATES IS AGAIN, IN THE AEM, THE OBJECTION

17   TO CLAIM NUMBER 9 OF ILLINOIS DEPARTMENT OF REVENUE,

18   DOCKET ENTRY 167 AND THE RESPONSE, WE HAVE SETTLED AND

19   WILL UPLOAD AN AGREED ORDER WITH THE ILLINOIS HAVING A ---

20   THE PRIORITY CLAIM WILL BE DISALLOWED BY ALMOST 1,000.00-

21   DOLLARS AND ALLOW BY A SMALLER AMOUNT.  AND WE'VE

22   AGREED ON THE NUMBERS WITH THEM AND WE'LL UPLOAD THE

23   ORDER.

24           THE COURT:  VERY GOOD.  THANK YOU.

25           AND BEFORE WE PROCEED WITH THE REMAINING MATTERS

24

1    ON THE DOCKET, I'M GOING TO CALL CASE NUMBER 08-9645 --- YOU

2    ALL CAN SIT --- AND ADVERSARY PROCEEDING 932, IT'S THE

3    TRUSTEE VERSUS MR. AND MRS. BRIVIC.

4        (WHEREUPON, THE JUDGE HAD A SHORT RECESS TO CALL

5    ANOTHER CASE.)

6        THE COURT:  WE'LL RETURN TO THE CASE OF THE VARIOUS

7    MIRABILIS RELATED ENTITIES.  THE REMAINING ISSUE ON THE

8    CALENDAR PENDING IN EACH OF THE CASES IS THE OBJECTION BY

9    THE UNITED STATES OF AMERICA TO THE DISBURSEMENT OF

10   VARIOUS PROFESSIONAL FEES AND COSTS.  AND MR. GOLD.

11       MR. GOLD:  THANK YOU, YOUR HONOR.  I DON'T KNOW IF THE

12   COURT HAS IT BEFORE IT AS WELL.  WE ACTUALLY FILED ANOTHER

13   OBJECTION.

14       THE COURT:  YOU KNOW, IT'S LISTED ON THE CALENDAR.  I

15   HAVEN'T HONESTLY SPENT ANY TIME WITH IT, BUT I SEE IT'S ON

16   THE CALENDAR.

17       MR. GOLD:  EFFECTIVELY, THEY ARE THE SAME OBJECTIONS.

18   IT'S JUST FOR THE SUBSEQUENT MONTH.

19       THE COURT:  VERY GOOD.

20       MR. GOLD:  AND THERE ARE TWO SEPARATE, BUT

21   INTERRELATED REASONS FOR THE OBJECTION TO THE

22   DISBURSEMENTS.

23       THE FIRST OF WHICH IS AS PART OF THE COMPROMISE, THE

24   ONLY WAY --- AND MS. CREAM CAN EXPLAIN IT TO THE COURT

25   BETTER THAN I CAN, BUT IN ORDER TO GET TO THE COMPROMISE,

25

1    IT CONTEMPLATED A PLEA OF GUILTY BY THE CORPORATIONS.  WE

2    THOUGHT WE WERE ON THE RIGHT TRACK WITH A GUILTY PLEA.

3    UP UNTIL NOVEMBER --- AND MR. BARRETT IS HERE AS WELL --- WE

4    HAVE BEEN WORKING TOWARD THAT GOAL.

5        A RULING OVER IN STATE COURT IN THE AMADEO VERSUS

6    BERMAN MATTER CAUSED THEM TO THEN HAVE CONCERNS ABOUT

7    THEIR ABILITY TO ENTER INTO A PLEA AGREEMENT EVEN THOUGH

8    WE WERE WILLING --- WHICH IS VERY UNUSUAL TO LET THEM PLEA

9    NO CONTEST.

10       AT THIS POINT IN TIME, WE DON'T HAVE A PLEA AGREEMENT.

11   I KNOW THAT MR. BARRETT AND SOMEONE IN MR. KOBERT'S

12   OFFICE HAVE NOW KIND OF TRIED TO TAKE A LOOK AT IT AGAIN TO

13   TRY AND GET THINGS GOING, BUT I'M NOT REAL CONVINCED THAT

14   WE'RE GOING TO WIND UP WITH A PLEA.

15       IF THAT IS THE CASE, THEN WE'RE GOING TO HAVE TO MOVE

16   TO SET ASIDE THE COMPROMISE BECAUSE THE COMPROMISE

17   COULD NOT COME ABOUT WITHOUT A PLEA, AND MR. BARRETT

18   CAN ADDRESS THAT, HIS UNDERSTANDING AS WELL BECAUSE HE

19   WAS INTIMATELY INVOLVED.

20       NOW, KNOWING THAT WE MAY VERY WELL MOVE TO SET

21   ASIDE THE COMPROMISE, WITH THESE DISBURSEMENTS,

22   EFFECTIVELY WHAT THEY'RE SEEKING FOR JUST DECEMBER AND

23   JANUARY, ABOUT 174,000-DOLLARS BETWEEN THE MORRIS

24   WOODMAN FIRM, MR. CUTHILL, MR. SHUKER'S FIRM AND MR.

25   BARRETT'S FIRM.

26

1    AND WHAT I DID WAS I WENT BACK AND I TOOK A LOOK AT

2    ALL THE FEES.  NOW, THIS IS JUST UP TO CONFIRMATION.  AND BY

3    SEPTEMBER OF '09, THE ESTATE HAD BROUGHT IN APPROXIMATELY

4    ONE MILLION TWO OR ONE MILLION THREE OF WHICH THE UNITED

5    STATES FUNDED 500,000-DOLLARS TO START.

6    THROUGH SEPTEMBER OF '09, MR. CUTHILL HAD BEEN PAID

7    ABOUT 435,000-DOLLARS, AND THE COURT HAD ENTERED AN ORDER

8    ON THE FINAL FEE APPS UP UNTIL THAT POINT OF I BELIEVE --- IT

9    WAS ABOUT 771,000-DOLLARS, THE COURT ALLOWED 80-PERCENT

10    TO BE PAID, WHICH WAS ABOUT 616,000-DOLLARS.

11    SO JUST TO THE PROFESSIONALS RIGHT NOW, WE'RE

12    TALKING ABOUT ONE MILLION FORTY THOUSAND DOLLARS, OUT

13    OF MAYBE ONE MILLION TWO OR ONE MILLION THREE THAT HAD

14    BEEN COLLECTED.  NOTHING HAS BEEN GIVEN TO THE

15    GOVERNMENT.  THE FEES TO THE PROFESSIONALS ARE NOT THE

16    ONLY FEES IN THIS CASE, AND NOW THAT WE'RE SEEING A

17    POTENTIAL COLLAPSE OF THIS, WE'RE NOW LOOKING AT ANOTHER

18    170,000-DOLLARS FOR TWO MONTHS, AND WE ARE VERY MUCH

19    CONCERNED WITH ANY DISBURSEMENTS BEING MADE TO ANY OF

20    THE PROFESSIONALS AT THIS POINT UNTIL THIS ISSUE CAN GET

21    RESOLVED.

22    I MEAN, AS IT IS, THIS BANKRUPTCY IS GOING ON, IN MAY, IT

23    WILL BE ITS SECOND BIRTHDAY.  AND EFFECTIVELY, THE ONLY

24    MONIES THAT HAVE BEEN BROUGHT INTO THE ESTATE BY MR.

25    CUTHILL WERE ABOUT 750,000 OR 800,000.  EVERYTHING ELSE IS

27

1    GOING TO HELP PRETTY MUCH THE PROFESSIONALS.

2         SO WE'RE OBJECTING TO THE DISBURSEMENTS.  IF THE

3    COURT WOULD LIKE MS. CREAM TO EXPLAIN HER --- YOU KNOW,

4    THE BASIS OF THE COMPROMISE RELATING TO THE FORFEITURES,

5    I'LL BE HAPPY TO HAVE HER DO THAT.

6         THE COURT:  WHEN DO YOU ANTICIPATE FILING A MOTION TO

7    REVOKE THE COMPROMISE?  I DON'T KNOW WHAT YOU'RE GOING

8    TO CALL IT, BUT ---

9         MR. GOLD:  WELL, WE'VE GOT AN APRIL 1ST TRIAL DATE IN

10   FRONT OF JUDGE ANTON.  IT'S BEEN CONTINUED SEVERAL TIMES

11   TO TRY AND RESOLVE THIS.  WE AS OF NOVEMBER THOUGHT WE

12   WERE GOING TO HAVE IT WORKED OUT, BUT THE PIN GOT PULLED

13   ON US.  MR. CUTHILL ASKED I BELIEVE UNTIL THE END OF

14   FEBRUARY TO TRY AND HAVE THE WOODMAN LAW FIRM TO DO

15   RESEARCH TO SEE IF A NO CONTEST PLEA WOULD KNOCK OUT

16   THEIR MALPRACTICE SUIT AGAINST MR. BERMAN AND THAT'S

17   WHAT THIS IS REALLY ABOUT IS, THEY'RE CONCERNED THAT IF, IN

18   FACT, THEY PLEAD GUILTY, THEY BELIEVE THAT THEY WILL LOSE

19   THE MALPRACTICE ACTION AGAINST MR. BERMAN.

20        THE QUESTION WAS WHAT A PLEA OF NO CONTEST WOULD

21   DO.  AND I WAS PRESENTED YESTERDAY WITH AN UPDATED PLEA

22   AGREEMENT FROM THE FACTS, WHICH IS TOTALLY

23   UNACCEPTABLE.  I'VE ADVISED BOTH MR. BARRETT AND MR.

24   COLBERT OF THAT.  I'M JUST NOT REAL HOPEFUL.  BUT WE'RE NOT

25   QUITE TO THAT POINT BECAUSE I NEED TO SEE IF WE CAN GET

1       THROUGH THIS PLEA.

2              BUT IN ANY EVENT, ON TOP OF THAT, WE'RE LOOKING AT

3       PROFESSIONAL FEES THAT HAVE PRETTY MUCH TOTALLY

4       DISSIPATED ALL OF THE FUNDS IN THE ESTATE AT THIS POINT, AND

5       I DON'T THINK IT'S FAIR TO THE GOVERNMENT.

6              SO IF YOU WANT MS. CREAM TO ADDRESS, YOU KNOW ---

7              THE COURT:  LET ME HEAR THE OTHER POSITIONS BECAUSE

8       THAT SEEMS TO GO MORE TO THE MERITS OF THE SETTLEMENT

9       THAN WHAT YOU'RE SUGGESTING.

10             MR. GOLD:  OKAY.

11             THE COURT:  SO LET ME HEAR THE PARTY'S POSITIONS AT

12      THIS POINT.  MR. SHUKER.

13             MR. SHUKER:  THANK YOU, YOUR HONOR.

14             MAY I APPROACH?

15             THE COURT:  YOU CAN.

16             MR. SHUKER:  YOUR HONOR, THESE ARE THREE PREVIOUSLY

17      PLEADINGS OR ORDERS IN THIS COURT, THE COMPROMISE OF

18      CONTROVERSY, THE ORDER OF PROOFING AND THE ORDER

19      CONFIRMING, I WOULD LIKE THOSE TO BE ADMITTED, PLEASE.

20             THE COURT:  ANY OBJECTION?  VERY GOOD.  WITHOUT

21      OBJECTION, THEY'LL BE ADMITTED.

22             MR. SHUKER:  THANK YOU, YOUR HONOR.

23             I THINK THE BEST WAY TO UNDERSTAND HOW HEAVY

24      HANDED MR. GOLD'S TACTICS ARE AND HIS ACTS ARE IS TO VIEW IT

25      FROM WHAT HE DID NOT DO.  WHAT HE DID NOT DO, BECAUSE HE

1    ARGUES THAT WE BREACHED AN AGREEMENT, EITHER AN ORDER,

2    SETTLEMENT ORDER, OR THE CONFIRMATION ORDER, AND BOTH OF

3    THOSE ARE CONTRACTS.

4        IF THIS WERE TRUE, THE PROPER VEHICLE FOR HIM TO TEE

5    THIS UP, INSTEAD OF BEATING THE PROFESSIONALS OVER THE

6    HEAD WOULD BE TO FILE A MOTION TO COMPEL COMPLIANCE WITH

7    THE COURT ORDER OR MOTION FOR ORDER TO SHOW CAUSE WHY

8    MR. CUTHILL SHOULD NOT BE HELD IN CONTEMPT FOR FAILING TO

9    COMPEL WITH THIS COURT'S ORDER.  HOWEVER, AND THE REASON I

10   PUT THESE INTO EVIDENCE, NO WHERE IN THE FOUR CORNERS OF

11   THESE DOCUMENTS, NO WHERE, IS THE WORDS:  MIRABILIS AGREES

12   TO PLEAD GUILTY.  YOU WON'T FIND THOSE WORDS ANYWHERE IN

13   THEM NOR IS IT INFERRED.

14       SO BECAUSE MR. GOLD CAN'T FILE A MOTION FOR ORDER TO

15   SHOW CAUSE AND BECAUSE THOSE ORDERS ARE FINAL ORDERS,

16   NON-APPEALABLE, WHAT HE DOES INSTEAD IS DOES WHAT HE

17   ALWAYS HAS DONE IN THIS CASE, THREATEN THE PROFESSIONALS.

18   I'M GOING TO COME AFTER YOU.  I'M GOING TO GO GET YOUR FEES.

19   BOY, YOU'RE MAKING THIS EXPENSIVE.  REALLY?  I WONDER WHY

20   WE'RE MAKING IT EXPENSIVE.  THESE KIND OF SILLY FIGHTS

21   BECAUSE HE'S NOT GETTING HIS WAY.

22       AGAIN, IF YOU TAKE A LOOK, YOUR HONOR, AT BOTH THE

23   SETTLEMENT AGREEMENT AND THE CONFIRMATION ORDER AND

24   THE ORDER APPROVING IT, ALL THAT THE DEBTOR HAS AGREED TO

25   DO IS ALLOW A 200-MILLION DOLLAR CLAIM FOR THE

1      GOVERNMENT, PERIOD.  AND THAT CLAIM, OR ANY ASSETS WE

2      RECOVERED THAT WE DISBURSED TO THEM, GET FORFEITED TO

3      SETTLE A JUDGMENT, 180-MILLION DOLLAR JUDGMENT AGAINST

4      AMADEO.

5          IF MR. GOLD SAID PLEAD GUILTY, HE SHOULD HAVE PUT IT IN

6      THERE.  AND IF HE FELT THAT THEN THERE WAS A BREACH OF THAT

7      INFERRED PROMISE, HE SHOULD HAVE FILED A MOTION FOR ORDER

8      TO SHOW CAUSE.

9          YOUR HONOR, I THINK ANOTHER WAY TO SEE HOW

10     RIDICULOUS THIS IS, IS IF THIS SO-CALLED SETTLEMENT

11     AGREEMENT THAT HAD AN OBLIGATION TO PLEAD GUILTY WAS

12     BINDING, THE ORDER APPROVING THE COMPROMISE HAS BEEN

13     PENDING SINCE MARCH 9TH, THE U.S. SAT SILENT.

14         WE WENT TO CONFIRMATION AND THE U.S. ULTIMATELY

15     WITHDREW ITS OBJECTIONS, BUT IMPORTANTLY, YOUR HONOR, A

16     GROUND TO OBJECT WAS NOT THAT WE WERE IN VIOLATION OF

17     YOUR COURT'S ORDER ON THE SETTLEMENT BECAUSE IF WE WERE

18     IN VIOLATION OF YOUR COURT'S ORDER ON THE SETTLEMENT,

19     THAT WOULD HAVE BEEN A GROUND TO OBJECTION UNDER

20     1129(A)(2) FOR FAILING TO COMPLY WITH THE TITLE XI, SILENCE.

21         CERTAINLY, THERE HAD BEEN DISCUSSIONS ABOUT

22     PLEADING GUILTY AND WE KNEW THAT WAS IMPORTANT, BUT WE

23     NEVER AGREED TO IT, AND THAT'S WHY IT'S NOT IN THE

24     DOCUMENT.  BUT WE HAVE DISCUSSED IT, AND TO THAT EXTENT,

25     YOUR HONOR, YESTERDAY, WE SENT A FORM OF NO CONTEST PLEA.

31

1          AND THE POINT OF THIS --- OF WHY WE WOULDN'T HAVE

2     AGREED TO PLEAD GUILTY IS BECAUSE MOST OF THE ASSETS,

3     OTHER THAN A TAX RETURN THAT THE IRS IS IMPROPERLY

4     HOLDING UP, ARE MALPRACTICE CAUSES OF ACTION THAT GET

5     DISMISSED FOR *IMPERIO DELICTO* IF YOU PLEAD GUILTY, WHICH IS

6     WHY THE SETTLEMENT WITH BERMAN FELL APART BECAUSE

7     JUDGE SMITH TOSS THE CASE BY AMADEO AGAINST BERMAN FOR,

8     WHAT A SHOCKER, *IMPERIO DELICTO.*

9          SO WE CAN'T PLEAD GUILTY.  WE'VE KNOWN THAT FROM

10    THE BEGINNING.  WE HAVE SAID WE WOULD DISMISS IF THERE WS A

11    CREATIVE WAY TO PLEAD OR PLEAD NO CONTEST.  SURE.  BUT WE

12    DIDN'T PUT IT IN THE DOCUMENT.  HE DIDN'T ASK FOR IT TO BE PUT

13    IN THE DOCUMENT.

14         BUT WE DID JUST YESTERDAY SEND HIM WHAT WE COULD

15    AGREE TO IN A NO CONTEST PLEA BASED ON FACTS THAT WERE

16    WITHIN MR. CUTHILL'S KNOWLEDGE.  YOU'VE HEARD MR. GOLD

17    SAY, WELL, THAT'S NOT ACCEPTABLE.

18         SO, YOUR HONOR, NOT ONLY IS HE TELLING YOU THAT THERE

19    IS SOME INFERRED AGREEMENT TO PLEAD GUILTY, THAT'S NOT IN

20    THE DOCUMENTS.  HE'S KNOW TELLING YOU, NOT ONLY DO WE

21    HAVE TO DO THAT, WE HAVE TO DO IT JUST AS HE SAYS.  IF WE

22    DON'T DO IT JUST AS HE SAYS, NOBODY GETS PAID.  I'LL KILL THE

23    WHOLE CASE.

24         AND HE SAID, HE DOESN'T CARE IF HE GETS A DIME.  WELL,

25    THIS IS BANKRUPTCY COURT.  BANKRUPTCY COURT INVOLVES

32

1    CLAIMS AND ASSETS. WE DO CARE ABOUT THIS. AND WE'RE NOT

2    JUST GOING TO LAY OVER AND PLEAD GUILTY TO WHATEVER HE

3    SAYS WE SHOULD BECAUSE A, A LOT OF THEM ARE FACTS OUTSIDE

4    THE PREVIEW OF MR. CUTHILL. AND B, IT WOULD KILL THE CASE.

5    HE'S GOT A TRIAL SET. LET HIM GO TO TRIAL.

6        SO I AM JUST APPALLED AT THE HEAVY HANDED ATTACKS,

7    YOUR HONOR, TO GO AFTER THE PROFESSIONALS BECAUSE HE

8    DIDN'T CRAFT A DOCUMENT THE WAY HE WANTED TO. IF THERE IS

9    A MISTAKE, IT'S A UNILATERAL MISTAKE ON THE PART OF MR.

10    GOLD. AND IF HE CAN POINT TO YOU TO A SINGLE PARAGRAPH

11    THAT SAYS, MIRABILIS WILL PLEAD GUILTY, THEN I'M WRONG.

12    THANK YOU.

13        THE COURT: THANK YOU. LET ME TAKE THE POSITIONS OF

14    ANY OTHER INTERESTED PARTY TO THE EXTENT ANYONE ELSE

15    CARES TO PARTICIPATE. MR. VALDES.

16        MR. VALDES: YOUR HONOR, A RECENT RULING BY JUDGE

17    SMITH, WE BELIEVE, CONFIRMS WHAT WE PREVIOUSLY ARGUED IN

18    THE MOTION TO DISMISS BEFORE YOUR HONOR, OR AT LEAST,

19    ISSUES RELATED TO THAT. AND WE CERTAINLY SUPPORT THE

20    POSITION OF THE GOVERNMENT TO THE EXTENT THAT AS WE

21    ARGUED PREVIOUSLY, THIS CASE SHOULD NOT HAVE BEEN A

22    CHAPTER 11, IT SHOULD BE A CHAPTER 7 AND THERE'S NOT GOING

23    TO BE ANYTHING LEFT AFTER THE PAYMENT TO THE

24    PROFESSIONALS. SO WE DO SUPPORT THE GOVERNMENT'S

25    POSITION ON THIS, YOUR HONOR.

33

1  THE COURT: THANK YOU. AND MS. CREAM, I DIDN'T ALLOW

2  YOU TO SPEAK ON THE SETTLEMENT AND THEN, OF COURSE, MR.

3  SHUKER STOOD UP AND GAVE ME THE SETTLEMENT AND WENT

4  INTO DETAIL, SO PLEASE DO. FEEL FREE TO RESPOND, AND TO THE

5  EXTENT YOU CAN RESPOND TO THE DEBTOR'S ARGUMENT, DO SO.

6  MS. CREAM: YOUR HONOR, IF YOU WERE TO LOOK AT PAGES

7  EIGHT AND NINE OF THE COMPROMISE. IN FACT, BEGINNING ON

8  PAGE SIX.

9  THE COURT: AND LET ME BE SURE I HAVE THE ACTUAL

10 COMPROMISE. I HAVE THE MOTION.

11 MR. SHUKER: IT'S EXHIBIT 1. IT'S WITHIN THE MOTION, YOUR

12 HONOR.

13 MS. CREAM: ACTUALLY, YOUR HONOR, AT THE BOTTOM OF

14 PAGE EIGHT, IT'S PARAGRAPH 28.

15 THE COURT: I HAVE IT.

16 MS. CREAM: OKAY. OF COURSE, MR. SHUKER IS RIGHT THAT

17 THERE IS NO WHERE IN THIS AGREEMENT THAT SAYS THAT

18 MIRABILIS WILL PLEAD GUILTY. BUT THE ENTIRE AGREEMENT

19 CONTEMPLATES THAT GUILTY PLEA AS DID ALL OF THE

20 DISCUSSIONS BETWEEN COUNSEL THAT TOOK PLACE AS WE WERE

21 DRAFTING IT. MR. BARRETT IS HERE. HE PARTICIPATED IN THOSE

22 DISCUSSIONS AND I WOULD ASK THAT HE HAVE THE OPPORTUNITY

23 TO EITHER DISAGREE WITH MY REPRESENTATIONS ABOUT WHAT

24 WAS SAID THERE OR INDICATE THAT I'M ACCURATELY

25 REPRESENTING THEM.

34

1    IT'S SORT OF LIKE SAYING THAT IN DRAFTING A PRE-NUPTIAL

2    AGREEMENT; THE PARTIES DIDN'T INTEND TO GET MARRIED.  IT IS

3    SO FUNDAMENTAL TO THE ISSUE OF THIS FORFEITURE THAT THERE

4    WOULD BE A GUILTY PLEA, THAT CLEARLY WE ERRED; WE ALL

5    COLLECTIVELY ERRED IN NOT STATING IT.

6    THE BASIS OF THE 200-MILLION DOLLAR CLAIM THAT'S

7    REFERENCED ON PAGES EIGHT THROUGH NINE OF THE

8    COMPROMISE COMES STRAIGHT OUT OF THE CRIMINAL

9    INDICTMENT.  WHEN THE CORPORATIONS WERE INDICTED, THE

10   GOVERNMENT PUT THEM ON NOTICE THAT IT SOUGHT THE

11   FORFEITURE OF THE 200-MILLION.  IN MR. AMADEO'S CRIMINAL

12   CASE, WE SOUGHT ONLY 180-MILLION FOR REASONS THAT ARE

13   PROBABLY TOO COMPLICATED TO GET INTO HERE, BUT THE 200-

14   MILLION WAS THE ENHANCED FIGURE THAT WE SOUGHT FROM THE

15   CORPORATIONS.

16   AS PART OF THE GUILTY PLEA, WE HAD MADE CLEAR THAT

17   WE WOULD INSIST UPON THE ENTRY OF A FORFEITURE MONEY

18   JUDGMENT IN THAT AMOUNT.  THE LAST FEW SENTENCES TALK

19   ABOUT THE FACT THAT ANY MONEY COLLECTED FROM THE

20   BANKRUPTCIES AND APPLIED TO THAT CLAIM, WOULD BE

21   CREDITED BOTH TO MR. AMADEO JUDGMENT AND ANY JUDGMENT

22   ENTERED AGAINST THE CORPORATIONS.  THAT LANGUAGE IS

23   INCLUDED BECAUSE THERE WAS A CONCERN THAT THE

24   GOVERNMENT WOULD BE DOUBLE DIPPING.

25   IN OTHER WORDS, FRANK AMADEO'S 180-MILLION DOLLAR

35

1    JUDGMENT IS A SUBSET OF THE CORPORATION'S 200-MILLION

2    DOLLAR DEBT.  IF WE WERE ALLOWED TO COLLECT FROM MR.

3    AMADEO AND NOT CREDIT THAT EQUALLY TO THE 200-MILLION

4    DOLLAR CLAIM, WE COULD, THEORETICALLY, RECOVER MUCH

5    MORE THAN WE WERE ENTITLED TO.

6         AND SO ALL OF THIS LANGUAGE ON PAGES EIGHT AND NINE,

7    CAN ONLY TAKE PLACE IF THERE'S A CRIMINAL PLEA.  WE HAVE ---

8    OR A CONVICTION.  IT'S HARD TO IMAGINE WHY THEY WOULD

9    AGREE TO ALLOW US A CLAIM THAT WE WOULD ONLY HAVE IF WE

10   PREVAILED, WHILE SIMULTANEOUSLY INTENDING TO CHALLENGE

11   OUR RIGHT TO THAT PLEA OR TO THAT JUDGMENT RATHER.

12        THE COURT:  IS THERE ANYTHING THAT INDICATES TO YOU

13   THAT THE DEBTORS ARE CONTESTING THE CRIMINAL LIABILITY?

14        MS. CREAM:  CONTESTING?

15        THE COURT:  YES.  YOU JUST SAID THAT THEY'RE OPPOSING

16   THE CRIMINAL ACTIONS AND INDICTMENT OR INFORMATION OR

17   WHAT --- I'M NOT A CRIMINAL LAWYER.  I'M SURE I'M USING ALL

18   THE WRONG WORDS.

19        MS. CREAM:  AND I APOLOGIZE, YOUR HONOR, LET ME BACK

20   UP A SET FURTHER.

21        IN A CRIMINAL CASE, THE ONLY WAY WE CAN GET A

22   FORFEITURE JUDGMENT IS AN ELEMENT, AN ELEMENT OF THE

23   DEFENDANT'S SENTENCE, SO IT HAPPENS POST-CONVICTION OR

24   ADJUDICATION OF GUILT.

25        SO IF THERE IS NOT GOING TO BE A PLEA, THEN THERE

1   NECESSARILY HAS TO BE A TRIAL, WE WOULD ONLY BE ENTITLED

2   TO A MONEY JUDGMENT IF WE PREVAILED AT TRIAL.

3          THE COURT:  RIGHT.

4          MS. CREAM:  AND SO THAT GETS US BACK TO THE DILEMMA

5   HERE.  WHY A PARTY WOULD CONSENT TO A JUDGMENT THAT CAN

6   ONLY BE A PART OF CRIMINAL JUDGMENT ENTERED AT

7   SENTENCING IF THEY INTENDED TO CONTEST THE CRIMINAL CASE.

8   IT'S NON-SYNDICAL.

9          THE COURT:  BUT THAT'S MY SECOND.  IS THERE ANYTHING

10  THAT INDICATES TO YOU THAT THEY ARE CONTESTING THE

11  CRIMINAL CHARGES OTHER THAN THE FACT THAT HE WON'T SIGN

12  THE CONSENT?

13         MS. CREAM:  THAT HE WON'T PLEAD GUILTY.

14         THE COURT:  THAT HE WON'T PLEAD GUILTY, THAT'S IT.

15         MS. CREAM:  THAT'S IT.  YES.

16         THE COURT:  OKAY.

17         MS. CREAM:  THE OTHER THING, YOUR HONOR.  AGAIN, MR.

18  BARRETT WAS A PART OF ALL OF THESE CONVERSATIONS.  FROM

19  THE EARLIEST POINT THAT THE BANKRUPTCY COUNSEL BEGAN

20  DISCUSSING WITH THE UNITED STATES WHAT WAS GOING TO

21  HAPPEN HERE, WE PUT THEM ON NOTICE THAT THERE WAS STILL

22  AN ONGOING INVESTIGATION BECAUSE ORIGINALLY, IT WAS ONLY

23  MR. AMADEO THAT HAD BEEN INDICTED.  WE PROMPTLY PROVIDED

24  THEM WITH A COPY OF THE INDICTMENT ONCE THE CORPORATIONS

25  HAD BEEN INDICTED AND HAD MULTIPLE DISCUSSIONS ABOUT OUR

37

1    CONCERNS OR OUR BELIEFS RATHER, THAT IF NOT THE

2    INDICTMENT, THEN CERTAINLY A CONVICTION OF THE

3    CORPORATIONS WOULD, FOR LACK OF A MORE ARTFUL TERM, KILL

4    THE MALPRACTICE ACTIONS.

5        AND WE WERE REPEATEDLY TOLD THAT WE WERE

6    INCORRECT IN THAT ASSESSMENT BECAUSE NEITHER MR. GOLD

7    NOR I ARE EXPERTS IN MALPRACTICE LAW.  OUR OPINION WAS NOT

8    DISPOSITIVE, BUT WE CERTAINLY SHARED IT READILY THAT WE

9    HAD VERY GRAVE CONCERNS ABOUT THE VIABILITY OF THESE

10   ACTIONS.  AND MR. BARRETT AND MS. GREEN WERE NOT ONLY

11   AWARE OF THAT, BUT ACTIVELY TRIED TO LOBBY US TO TAKE ON A

12   DIFFERENT VIEW.

13       MR. SHUKER:  YOUR HONOR.

14       THE COURT:  EXCUSE ME.  MR. SHUKER.

15       MR. SHUKER:  IF SHE WANTS TO CALL MS. GREEN, SHE CAN

16   DO SO.  BUT THIS IS THEIR HEARING.  THIS IS AN EVIDENTIARY

17   HEARING.  I'VE TRIED TO ALLOW SOME LEEWAY TO NOT BOG IT

18   ~~DOWN, BUT TO TALK ABOUT WHAT MS. GREEN SAID, WHO IS NOT~~

19   HERE, NOT SUBPOENAED, IS NOT PROPER AND IS NOT EVIDENCE.

20       THE COURT:  AND WE DON'T NEED TO GO FAR DOWN THAT

21   ROAD.

22       MS. CREAM:  WE CERTAINLY DON'T.  MR. BARRETT IS HERE

23   AND I BELIEVE PREPARED TO COMMENT ON HIS PARTICIPATION IN

24   THE NEGOTIATIONS.

25       AND AS TO THE ISSUE ABOUT WHY THE GOVERNMENT DIDN'T

38

1    SAY SOMETHING AT THE MARCH CONFIRMATION OR SOME TIME

2    PREVIOUS, AS MR. GOLD HAS INDICATED, EACH TIME THERE'S BEEN

3    A STATUS CONFERENCE IN THE CRIMINAL PROCEEDING, MR.

4    BARRETT, ON BEHALF OF THE CORPORATIONS HAS NOTIFIED THE

5    COURT THAT THE PARTIES ARE ACTIVELY WORKING TOWARDS A

6    RESOLUTION, THAT WE'RE GETTING CLOSER AND WE'VE ASKED

7    FOR A CONTINUATION OF THE TRIAL DATE FOR THAT REASON.

8         AND AS INDICATED TO THE OPPOSITION TO THE

9    DISBURSEMENT, IT WAS NOT UNTIL I BELIEVE IT WAS IN DECEMBER

10   THAT THE UNITED STATES HAD ANY INDICATION OR REASON TO

11   BELIEVE THAT A PLEA AGREEMENT WOULD NOT BE SIGNED.

12        THE COURT:  VERY GOOD.  ANYTHING FURTHER THAT YOU

13   CARE TO OFFER, MR. GOLD OR IS THAT ---

14        MR. GOLD:  WELL, ONLY IF THE COURT WANTS TO, YOU

15   KNOW, ASK MR. MR. BARRETT WHAT HIS UNDERSTANDING WAS.

16   HE'S HERE.  HE WAS REPRESENTING MIRABILIS, AEM AND HOFF.

17   HE'S THE ONE THAT THEY HIRED.  HE HAD FORFEITURE COUNSEL

18   THROUGH THESE NEGOTIATIONS.

19        THE COURT:  IS THE DEBTOR GOING TO PERMIT MR. BARRETT

20   TO TESTIFY?

21        MR. SHUKER:  NO.

22        MR. GOLD:  ON WHAT BASIS?  IT'S NOT FOR ANY ATTORNEY-

23   CLIENT PRIVILEGE ON THE DISCUSSIONS HE HAD WITH US.  IT'S NOT

24   ATTORNEY-CLIENT PRIVILEGE.

25        MR. SHUKER:  THEN THEY ARE SETTLEMENT DISCUSSIONS.

1    WE DON'T NEED TO GO BEYOND THE FOUR CORNERS OF THE TWO

2    CONTRACTS, THE ORDER APPROVING THE COMPROMISE AND THE

3    COMPROMISE AND THE CONFIRMATION ORDER.

4         MR. GOLD:  JUDGE, IF THE COURT WANTS TO GET TO THE

5    TRUTH OF THIS MATTER, I THINK IT'S IMPORTANT FOR THE COURT

6    TO HEAR FROM MR. BARRETT.  THEY DON'T WANT HIM TO TALK TO

7    YOU BECAUSE THEY KNOW HE IS GOING TO CONFIRM EXACTLY

8    WHAT WE JUST SAID.

9         MR. SHUKER:  YOUR HONOR, WE DON'T WANT HIM TO TALK

10   BECAUSE HE COULD SAY ABOUT WHAT MIRABILIS AGREED TO

11   WOULD BE ATTORNEY-CLIENT PRIVILEGE OR SETTLEMENT

12   DISCUSSIONS AND HE DIDN'T DO THE COMPROMISE, MS. GREEN DID.

13        THE COURT:  I'M NOT GOING TO PRECLUDE THE

14   GOVERNMENT FROM CALLING MR. BARRETT, BUT I THINK WE HAVE

15   TO DO A RECORD ON A QUESTION-BY-QUESTION BASIS, RATHER

16   THAN A BROAD BRUSH, THIS IS WHAT HE MAY OR MAY NOT SAY.

17   I'M CERTAINLY NOT GOING TO PRECLUDE YOU FROM CALLING MR.

18   BARRETT.

19        MR. GOLD:  YOUR HONOR, COULD I JUST HAVE ONE SECOND?

20        THE COURT:  YES.  WHY DON'T WE TAKE JUST A SHORT

21   BREAK AND THEN WE'LL COME BACK.

22        THE CLERK:  ALL RISE.

23        (WHEREUPON, A SHORT RECESS WAS HAD.)

24        THE CLERK:  ALL RISE.  THE UNITED STATES BANKRUPTCY

25   COURT FOR THE MIDDLE DISTRICT OF FLORIDA IS NOW IN SESSION.

40

1       YOU MAY BE SEATED.

2           THE COURT:  AND WHAT DID YOU DECIDE, MR. GOLD.

3           MR. GOLD:  WE'LL CALL MR. BARRETT.

4           THE COURT:  AND MR. BARRETT, IF YOU'D COME FORWARD

5       AND BE SWORN, SIR.

6                   RICHARD LEE BARRETT,

7       HAVING BEEN DULY SWORN, WAS EXAMINED, AND TESTIFIED AS

8   FOLLOWS:

9           THE CLERK:  THANK YOU.  COULD YOU PLEASE STATE YOUR

10      FULL NAME AND ADDRESS FOR THE RECORD?

11          THE WITNESS:  RICHARD LEE BARRETT, 18 WALL STREET,

12      ORLANDO, FLORIDA 32801.

13          THE CLERK:  YOU MAY TAKE THE STAND.

14                  DIRECT EXAMINATION

15  BY MR. GOLD:

16      Q       GOOD AFTERNOON, MR. BARRETT.

17      A       GOOD AFTERNOON, MR. GOLD.

18      Q       ~~YOU'RE AN ATTORNEY THAT'S LICENSED IN FLORIDA.~~

19      A       I AM.

20      Q       DID THERE COME A TIME WHEN YOU WERE HIRED BY MR.

21  CUTHILL TO REPRESENT MIRABILIS, HOFF AND AEM IN THE CRIMINAL

22  CASE?

23      A       I WAS.

24      Q       AS A RESULT OF BEING HIRED, DID YOU ENGAGE IN

25  DISCUSSIONS WITH THE UNITED STATES ABOUT THE PLEA AGREEMENT?

41

1    A    I DID.

2    Q    EARLY ON, THERE WERE DISCUSSIONS ABOUT A PLEA OF

3  GUILTY RATHER THAN A PLEA OF NO CONTEST; IS THAT CORRECT?

4    A    THAT'S CORRECT.

5    Q    DID THERE COME A TIME WHEN YOU ASKED THE UNITED

6  STATES TO CONSIDER A PLEA OF NO CONTEST?

7    A    YES.

8    Q    DID THE UNITED STATES AGREE TO THAT?

9    A    YES.

10    Q    DID WE GO THROUGH SEVERAL VARIOUS VERSIONS BACK

11  AND FORTH OF THAT PLEA AGREEMENT?

12    A    MANY VERSIONS.

13    Q    OKAY.  DID YOU ATTEND ALL OF THE STATUS CONFERENCES,

14  INCLUDING ONE BY PHONE BEFORE JUDGE ANTON?

15    A    I DID.

16    Q    AND IF YOU COULD TELL THE COURT WHAT YOU TOLD JUDGE

17  ANTON AT THAT TIME?

18    A    IN EACH STATUS CONFERENCE TO DATE, I HAVE ASKED

19  JUDGE ANTON FOR A CONTINUANCE FOR PURPOSES OF GIVING US MORE

20  TIME TO NEGOTIATE A PLEA AGREEMENT OF SOME SORT.

21    Q    PRIOR TO NOVEMBER OF 2009, WAS IT YOUR UNDERSTANDING

22  THAT THE CORPORATIONS WERE GOING TO ENTER INTO A NO CONTEST

23  PLEA?

24    A    IT WAS MY UNDERSTANDING THAT WE WERE WORKING

25  TOWARDS COMING TO AN AGREEMENT, ON A PLEA AGREEMENT, THAT

42

1    WAS SATISFACTORY TO THE PARTIES, THAT'S CORRECT.

2          Q       OKAY.  RIGHT BEFORE NOVEMBER,  WERE THE PARTIES VERY

3    CLOSE?

4          A       I THOUGHT WE WERE.

5          Q       WHAT CHANGED IN NOVEMBER?

6          A       I CAN ONLY TOLD YOU WHAT I TOLD JUDGE ANTON BECAUSE

7    ANYTHING ELSE I KNOW, I KNOW FROM DISCUSSIONS WITH MY CLIENT.

8          Q       THAT'S FINE.

9          A       AT THE LAST STATUS CONFERENCE, WE ADVISED JUDGE

10   ANTON THAT THERE HAD BEEN A RULING IN STATE COURT THAT HAD

11   GIVEN US SOME CONCERNS ABOUT WHAT TYPE OF A PLEA WE COULD

12   ENTER AND THAT WE NEEDED MORE TIME TO INVESTIGATE THAT.  AS A

13   RESULT OF THAT, JUDGE ANTON GAVE US ANOTHER CONTINUANCE.

14         Q       WAS JUDGE SMITH'S ORDER DISCUSSED?

15         A       I DON'T REMEMBER IF WE SPECIFICALLY DISCUSSED JUDGE

16   SMITH, BUT I THINK THAT IS THE ORDER THAT YOU'RE TALKING ABOUT.

17         Q       OKAY.  AND WHAT TIME DID JUDGE ANTON GIVE YOUR

18   CLIENTS IN TERMS OF TRYING TO RESOLVE THIS MATTER?

19         A       I BELIEVE WE HAD A STATUS CONFERENCE ON MARCH 23RD,

20   WITH A TRIAL PERIOD BEGINNING ON APRIL THE 5TH.  ALTHOUGH, I DID

21   ASK JUDGE ANTON, I'M GOING TO BE OUT OF THE COUNTRY ON

22   VACATION FROM MARCH 27TH THROUGH APRIL 15TH AND I DID ASK THE

23   JUDGE IN MY MOTION TO AT LEAST, IF THERE WAS GOING TO BE A TRIAL,

24   TO ASK THAT IT BE HELD IN THE LATER PART OF APRIL.

25         Q       OKAY.  NOW, LET ME STEP BACK A SECOND.  IN TERMS OF

43

1   NEGOTIATING THE PLEASE OF GUILTY OR NO CONTEST, DID YOU EMPLOY

2   ROBERT GRISTLY?

3       A    ROBERT GRISTLY WAS EMPLOYED AT SOME POINT INITIALLY

4   AS AN EXPERT ON FORFEITURE LAW.

5       Q    OKAY.  AND YOU CONSULTED WITH HIM ON FORFEITURE

6   LAW?

7       A    HE WAS, IN FACT, RETAINED BY MIRABILIS AND PAID

8   THROUGH THE BANKRUPTCY COURT, THAT'S CORRECT.

9       Q    BUT YOU HAD DISCUSSIONS WITH HIM CONCERNING THE

10   POSSIBLE GUILTY PLEA?

11       MR. SHUKER:  OBJECTION, YOUR HONOR, NOW WE'RE

12       GETTING INTO ATTORNEY WORK PRODUCT.  HE CAN ASK HIM IF HE

13       HAD DISCUSSIONS WITH HIM, BUT THE SUBSTANCE ---

14       THE COURT:  SUSTAINED.

15       THE WITNESS:  I DID HAVE DISCUSSIONS WITH MR. GRISTLY.

16   BY MR. GOLD:

17       Q    OKAY.  DID YOU HAVE DISCUSSIONS WITH MR. GRISTLY IN

18   MY OFFICE TO DISCUSS THE PLEA, DID HE NOT COME DOWN TO ORLANDO

19   AND HAVE A MEETING WITH US?

20       A    THAT'S CORRECT.

21       Q    OKAY.  AND DURING THAT MEETING, WAS THE ISSUE OF

22   FORFEITURE DISCUSSED?

23       A    IT WAS.

24       Q    NOW, YOU DID NOT ACTUALLY DRAFT THE COMPROMISE

25   AGREEMENT, DID YOU?

44

1       A       I DID NOT.

2       Q       OKAY.  WERE YOU PRESENT AT ANY MEETINGS IN WHICH THE

3   COMPROMISE WAS DISCUSSED?

4       A       I WAS PRESENT --- WELL, I CAN'T SPEAK TO ANY MEETINGS

5   THAT OCCURRED --- IN OTHER WORDS, I CAN'T TELL YOU ABOUT

6   ANYTHING THAT HAD TO DO WITH THE MEETINGS WITH MY COUNSEL ---

7   WITH MY CLIENT.

8       Q       NO.  IN TERMS OF WITH --- LET'S SAY, FOR EXAMPLE, YOU, MS.

9   GREEN AND THE UNITED STATES.

10      A       THERE WERE CONVERSATIONS --- THERE WERE MEETINGS

11  AND CONVERSATIONS BY TELEPHONE BETWEEN MS. GREEN, MYSELF AND

12  YOURSELF AND MS. CREAM.  THE PURPOSE OF MY BEING IN THAT

13  CONVERSATION WAS THE CRIMINAL CASE.  THE PURPOSE OF MS. GREEN

14  WAS THE BANKRUPTCY CASE AND I DO RECALL MS. GREEN DISCUSSING --

15  - MS. GREEN DISCUSSING WITH MS. CREAM THE COMPROMISE.

16      Q       OKAY.  AND DURING THAT CONVERSATION, THE ISSUE OF

17  THE CORPORATE PLEA AND THE FORFEITURE CAME UP?

18      A       YES.

19      Q       OKAY.  NOW, YOU'RE A PRETTY EXPERIENCED CRIMINAL

20  DEFENSE ATTORNEY, AREN'T YOU?

21      A       I WOULD LIKE TO THINK SO.

22      Q       OKAY.  COULD THIS COMPROMISE HAVE BEEN ENTERED

23  WITHOUT THE CONTEMPLATION OF EITHER A GUILTY PLEA OR NO

24  CONTEST PLEA?

25          MR. SHUKER:  OBJECTION, YOUR HONOR, THAT'S

45

1    SPECULATIVE, EXPERT OPINION. WE'RE HERE TO SEE IF HE

2    NEGOTIATED EXHIBIT 1, WHICH HE JUST TESTIFIED HE DIDN'T.

3    THAT WAS IT. THEY HAVEN'T EVEN GOT TO WHETHER THE

4    DOCUMENTS AMBIGUOUS.

5         THE COURT: SUSTAINED. WE ARE NOT HERE ON THE MERITS

6    OF THE SETTLEMENT ITSELF.

7         MR. GOLD: IF I COULD HAVE ONE SECOND.

8         YOUR HONOR, AS I UNDERSTAND THE COURT'S RULING,

9    WE'RE GOING TO BE PRECLUDED FROM ASKING HIM QUESTIONS IN

10   TERMS OF HIS UNDERSTANDING ABOUT THE COMPROMISE AND THE

11   FORFEITURE?

12        THE COURT: I THINK THAT IS --- NO. THAT IS CORRECT. AND

13   LET ME EXPLAIN THE RULING IN CASE IT EVER BECOMES RELEVANT

14   LATER.

15        I DO NOT BELIEVE IT IS APPROPRIATE TO DIVULGE

16   SETTLEMENT NEGOTIATIONS UNLESS THERE IS SOME CONTESTED

17   MATTER THAT GOES TO THE HEART OF THE SETTLEMENT. YOU'RE

18   ~~ASKING ME TO STOP PAYMENTS AND DISBURSEMENT OTHERWISE~~

19   AUTHORIZED UNDER THE SETTLEMENT AGREEMENT AND OTHER

20   ORDERS OF THIS COURT. BUT IN TERMS OF WHAT THE SETTLEMENT

21   MEANS, IN TERMS OF PAROLE EVIDENCE AND SUCH, I DO NOT

22   BELIEVE IT'S APPROPRIATE WITHOUT ANY CONTESTED MATTER

23   ATTEMPTING TO CHALLENGE THE SETTLEMENT AGREEMENT BEING

24   FILED. THAT GOES INTO EITHER SETTLEMENT DISCUSSIONS.

25        I DO AGREE WITH THE DEBTORS' COUNSEL IN THIS. I

46

1    CERTAINLY WOULD NOT IN ANYWAY DIVULGE ATTORNEY-CLIENT

2    PRIVILEGE, BUT FURTHER DISCUSSIONS WITH THE GOVERNMENT I

3    THINK GO DIRECTLY TO SETTLEMENT NEGOTIATIONS THAT THE

4    DEBTOR IS ENTITLED TO EXERCISE THAT.

5        MR. GOLD:  UNDERSTANDING THAT, I DON'T HAVE ANY MORE

6    QUESTIONS FOR MR. BARRETT.  WE CAN PROCEED TO ANOTHER

7    ISSUE AT A LATER TIME FOR THAT.

8        THE COURT:  RIGHT.

9        MR. GOLD:  BUT THERE'S ALSO THE ISSUE OF ALTHOUGH

10   CERTAIN PAYMENTS ARE AUTHORIZED UNDER THE AGREEMENT,

11   THEY CAN'T EFFECTIVELY GAUGE THE GOVERNMENT.

12       THE COURT:  ANY MORE QUESTIONS FOR MR. BARRETT?  HE'S

13   SITTING ON THE STAND THERE.  THANK YOU.  MR. SHUKER.

14       MR. SHUKER:  MAY I APPROACH, YOUR HONOR?

15       THE COURT:  CERTAINLY.

16       MR. BARRETT: IF YOU WANT ME TO READ THIS, YOU HAVE TO

17   LET ME GET MY GLASSES.

18       MR. GOLD:  YOUR HONOR, WE'LL STIPULATE THAT THE

19   WORDS GUILTY OR NOT ARE IN THERE IF THAT'S ALL HE'S TRYING

20   TO GET MR. BARRETT TO DO,

21       THE COURT:  THANK YOU.  THANK YOU.  AND I DON'T KNOW

22   IF IT IS OR IF IT ISN'T, BUT I'LL ACCEPT THE STIPULATION.

23       MR. SHUKER:  MAY I  INQUIRE?

24       THE COURT:  CERTAINLY.

25            CROSS EXAMINATION

47

1    BY MR. SHUKER:

2       Q     EXHIBIT ONE BEFORE YOU IS A MOTION TO APPROVE A

3 COMPROMISE BETWEEN THE DEBTOR AND THE UNITED STATES; IS THAT

4 CORRECT?

5       A     THAT'S WHAT IT SAYS.

6       Q     OKAY.  DID YOU DRAFT THAT DOCUMENT?

7       A     I DID NOT.

8       Q     DID YOU REVISE THAT DOCUMENT?

9       A     I DID NOT.

10      Q     DID YOU PLAY ANY DIRECT ROLE IN NEGOTIATING OTHER

11 THAN BEING ON A CONFERENCE CALL WHERE IT MAY HAVE BEEN

12 DISCUSSED?

13      A     I DID NOT.

14      MR. SHUKER:  THANK YOU, YOUR HONOR.  NO FURTHER

15 QUESTIONS.

16      THE COURT:  ANYTHING FURTHER FOR MR. BARRETT?

17      MR. GOLD:  NO, YOUR HONOR.

18      THE COURT:  I GUESS YOU WALK LINES LIKE THIS EVERYDAY,

19 BUT I'M SURE THIS IS NOT PLEASANT FOR YOU, MR. BARRETT?

20      MR. BARRETT:  IT'S NOT.  I'VE HAD TWO CASES IN FRONT OF

21 YOUR HONOR AND BEEN ON THE WITNESS STAND TWICE.

22      THE COURT:  I KNOW.  WHO COULD FIGURE?

23      MR. BARRETT:  I'M NOT COMING BACK.

24      THE COURT:  ANYWAY.  ANY FURTHER EVIDENCE FROM ANY

25 PARTY IN INTEREST?

48

1    MR. GOLD:  NO, YOUR HONOR.

2    THE COURT:  THANK YOU.  ANY FURTHER ARGUMENT?

3    MR. GOLD:  JUST VERY BRIEFLY, WHAT I STARTED TO SAY

4    AND I APOLOGIZE FOR MR. BARRETT BEING UP THERE.

5    THE COURT:  NO, NO, NO.

6    MR. GOLD:  BUT CERTAINLY, PAYMENTS ARE AUTHORIZED,

7    YOU KNOW, TO PROFESSIONALS, BUT WHAT WE'RE SEEING HERE IS

8    ALL OF THE MONEY THAT'S BEEN COLLECTED IS GOING TO

9    PROFESSIONALS FOR THE MOST PART, GOING ON TWO YEARS.

10   WE FUNDED 500,000-DOLLARS OF THE MONEY THAT WENT IN,

11   AND THERE'S GOT TO COME A POINT WHERE THE BLEEDING STOPS

12   IF THERE'S NO MONEY COMING IN.  I MEAN, I DON'T EVEN WANT TO

13   GET TO THE ISSUE OF POSSIBLE DISGORMENT LATER, BUT I THINK

14   AT SOME POINT THIS COURT HAS TO LOOK AT THE FEES AND THE

15   REASONABLENESS OF THEM.  WE'VE SEEN NO INVOICES.  WE'VE

16   SEEN NO BREAKDOWN BY CORPORATION.  I FINALLY GOT A

17   FINANCIAL STATEMENT FOR JANUARY YESTERDAY.  ALTHOUGH, I

18   WAS UNDER THE IMPRESSION WE WERE SUPPOSED TO BE GETTING

19   THEM POST-CONFIRMATION.

20   BUT I HAD TO ASK FOR THAT YESTERDAY.  SO AT THIS POINT,

21   I DON'T KNOW WHAT'S COMING IN, WHAT'S GOING OUT, AND TO

22   NOW KICK OUT ANOTHER 170,000-DOLLARS ON TOP OF THE

23   AMOUNTS ALREADY KICKED OUT, I THINK UNDER THE

24   CIRCUMSTANCES, THIS COURT SHOULD TAKE A VERY CLOSE LOOK

25   AT.

49

1      THE COURT:  VERY GOOD.  AND ANY FURTHER COMMENTS

2  FROM THE DEBTORS OR MR. KOBERT, DID YOU CARE TO BE HEARD.

3      MR. KOBERT:  YES, YOUR HONOR.  I'M SPECIAL COUNSEL

4  HANDLING BOTH THE MALPRACTICE ADVERSARIES WITH MR.

5  WOODMAN AND OTHER LAWSUITS NOT PENDING BEFORE YOUR

6  HONOR.  THEY'VE BEEN REMOVED TO DISTRICT COURT AS WELL AS

7  OTHER MATTERS NOT PENDING IN THE BANKRUPTCY COURT.

8      YOUR HONOR, I GUESS MY FEES WERE CALLED INTO

9  QUESTION.  I WANT THE COURT TO KNOW THAT THOUGH WE'VE

10  SUBMITTED THOSE INVOICES AND MR. CUTHILL HAS PROVIDED

11  NOTICE  TO THE GOVERNMENT, UNTIL THERE IS RESULTS

12  OBTAINED, MR. CUTHILL MADE IT VERY CLEAR THAT I'M WORKING

13  ON AN HOURLY CONTINGENCY BASIS, IF YOU WILL.

14      IN OTHER WORDS, YOUR HONOR, I HAVEN'T BEEN PAID

15  ANYTHING BECAUSE WE HAVEN'T ACHIEVED RESULTS YET.  SO

16  THAT IS THE WAY MR. CUTHILL HAS BEEN HANDLING THE CASE

17  AND THAT'S THE WAY I HAVE BEEN TREATED.  THERE IS NOTHING

18  TO DISGORGE BECAUSE I HAVEN'T BEEN PAID.

19      THE COURT:  AND ANYTHING FURTHER FROM THE DEBTOR?

20      MR. SHUKER:  NO, YOUR HONOR.

21      THE COURT:  THANK YOU.  GIVE ME JUST ONE SECOND.  IT'S

22  SLOW TO COME UP.  I WANT TO LOOK AT ONE THING FIRST.

23      IN CONNECTION WITH THE MOTIONS THAT ARE FILED, I

24  GUESS REALLY ONE IS THE OBJECTION BY THE UNITED STATES TO

25  DISBURSEMENT OF PAYMENTS TO VARIOUS PROFESSIONALS,

1    INCLUDING MR. CUTHILL, AS WELL AS THE OPPOSITION BY THE

2    UNITED STATES TO THE DISBURSEMENT AGAIN OF MR. CUTHILL

3    AND OTHER FIRMS, DOCUMENTS NUMBER 474 AND 480 IN THE CASE

4    OF MIRABILIS.  SIMILAR MOTIONS OR OBJECTIONS ARE FILED IN

5    THE CASE OF HOFF HOLDINGS AT DOCUMENT NUMBERS 159 AND

6    162. AND FINALLY, THERE'S THE OBJECTION IN AEM, DOCUMENT

7    NUMBER 28.  THEY ALL RAISE THE SAME ISSUE.

8         AND THE ISSUE IS WHETHER MR. CUTHILL SHOULD BE

9    ENTITLED TO CONTINUE TO PAY PROFESSIONALS TO ADMINISTER

10   ASSETS IN THE ESTATE PURSUANT TO HIS AUTHORITY AND

11   PURSUANT TO THE POWER GRANTED TO HIM BY THE

12   CONFIRMATION ORDER OF THE PLAN AND THE RELATED

13   DOCUMENTS AS WELL AS PURSUANT TO THE SETTLEMENT

14   AGREEMENT BETWEEN THE DEBTORS AND THE UNITED STATES OF

15   AMERICA THAT WAS FILED WITH THE COURT --- I DON'T KNOW THE

16   EXACT DOCUMENT NUMBER, BUT IT WAS DATED NOVEMBER 25,

17   2008.

18         IT WAS APPROVED.  IT WAS CONTESTED.

19         MR. SHUKER:  101.

20         THE COURT:  THANK YOU.  DOCUMENT NUMBER 101. IT WAS

21   CONTESTED AND ULTIMATELY APPROVED IN MARCH OF 2009.  THE

22   CASE CONTINUED.  THE CONFIRMATION HEARING WAS IN OCTOBER.

23   THERE WAS A CONFIRMATION ORDER ENTERED SHORTLY

24   THEREAFTER.  AND THEN WE'VE BEEN PROCEEDING ON.

25         THE SETTLEMENT AGREEMENT DOES MANY, MANY THINGS.

1    IT'S CERTAINLY NOT A SIMPLE SETTLEMENT AGREEMENT THAT

2    YOU MIGHT FIND, BUT IT IS FAIRLY COMPLEX.  AT THE TIME THE

3    SETTLEMENT WAS ENTERED, THERE WAS A MOTION TO DISMISS

4    FILED BY THE UNITED STATES AND THERE WERE A NUMBER OF

5    CONTESTED MOTIONS AND MATTERS THAT THE SERVICE --- EXCUSE

6    ME, I KEEP SAYING THE SERVICE.  I DON'T MEAN THAT TO BE SO

7    LIMITING, BUT THE UNITED STATES HAD BROUGHT CHALLENGING

8    THE LEGITIMACY OF THESE DEBTORS TO FILE THIS CHAPTER 11

9    CASE.  THEIR AUTHORITY, ANY NUMBER OF VARIOUS OBJECTIONS

10    AND THEY WERE ALL --- IT WAS A VERY CONTESTED CASE.

11        THE SETTLEMENT WAS REACHED.  THE SETTLEMENT DID

12    AGREE --- THE DEBTORS IN THE SETTLEMENT CERTAINLY AGREED

13    TO A 200-MILLION DOLLAR JUDGMENT AND CLAIM THAT THE ---

14    CLAIM THAT THE UNITED STATES WOULD HAVE IN THESE CASES.

15        THEY ALSO DIVIDED THE ASSETS OF THE DEBTOR BETWEEN

16    WHAT THE GOVERNMENT WOULD RETAIN AND ADMINISTER AND

17    WHAT THE TRUSTEE, MR. CUTHILL, OR PRESIDENT OF THE DEBTOR, I

18    GUESS.  WHATEVER YOU'RE --- I DON'T KNOW IF YOU'RE A

19    LIQUIDATING TRUSTEE, PRESIDENT, OR WHATEVER YOU ARE NOW.

20    BUT POST-CONFIRMATION, MR. CUTHILL'S ADMINISTRATION OF

21    THE ESTATE OF THE DEBTOR.  SO IN EXHIBITS A AND B TO THE

22    SETTLEMENT, IT DIVIDED THAT UP AND IT DID VARIOUS OTHER

23    THINGS.

24        THE GOVERNMENT CONTENDS THAT THE TRUSTEE HAS

25    ADMINISTER --- IN ESSENCE, ADMINISTER THE CASE POORLY IN SO

52

1    FAR AS THE PROFESSIONAL FEES HAVE EATEN UP ALL OF THE

2    RECOVERIES AND THAT HE IS ACTING IN BAD FAITH IN SO FAR HE

3    REFUSES TO ENTER INTO A GUILTY PLEA, WHICH WAS, ACCORDING

4    OT THE GOVERNMENT'S POSITION, AN UNDERPINNING OF THE

5    SETTLEMENT AGREEMENT.

6        THE SETTLEMENT AGREEMENT CERTAINLY DOES NOT SAY

7    THAT.  NO ONE CONTENDS THAT IT DOES.  AND IT CERTAINLY

8    POSSIBLE THAT THE PARTIES' DISCUSSED HOW THE CRIMINAL

9    CHARGES AGAINST THE DEBTORS WOULD PROCEED.  IT MAY HAVE

10   BEEN THE GOVERNMENT'S UNDERSTANDING THAT A GUILTY PLEA

11   WOULD BE ENTERED.  IT MAY HAVE BEEN DISCUSSED THAT THAT

12   WAS LIKELY WHAT WAS GOING TO HAPPEN.  HOWEVER, THAT IT

13   WAS AN UNDERPINNING OF THE SETTLEMENT AGREEMENT IS NOT

14   DEMONSTRATED IN THE DOCUMENTS, CERTAINLY, NOR IF IT WAS

15   SUCH AN ASSUMPTION, I DON'T UNDERSTAND HOW YOU COULD

16   HAVE FURTHER NEGOTIATIONS FOR CLOSE TO A YEAR --- WELL, IT

17   HAS BEEN OVER A YEAR SINCE THE SETTLEMENT AGREEMENT WAS

18   SIGNED.

19       IF IT WAS AN ASSUMPTION, THEN I DON'T UNDERSTAND WHY

20   IT WOULD TAKE EIGHT YEARS, MULTIPLE CONTINUANCES IN THE

21   CRIMINAL CASE AND ALL OF THE TIME THAT HAS PASSED IN WHICH

22   MANY SIGNIFICANT THINGS HAVE OCCURRED.  NOT THE LEAST OF

23   WHICH IS CONFIRMATION OF THE DEBTORS' PROPOSED PLAN OF

24   REORGANIZATION.

25       THE UNITED STATES DID OBJECT TO CONFIRMATION.  THOSE

53

1    OBJECTIONS WERE RESOLVED. AS I SAID, THE CONFIRMATION

2    HEARING WAS EXTENSIVE AND CONTESTED AND AT THE

3    CONFIRMATION HEARING, THE U.S. OBJECTED TO IT. ULTIMATELY

4    RESOLVED IT, NONE OF WHICH RELATED TO THIS ISSUE.

5         SO I UNDERSTAND THAT YOU WOULD LIKE TO REQUIRE AT

6    THIS POINT, MR. CUTHILL TO SIGN THE PLEA AGREEMENT, BUT I

7    DON'T SEE ANYTHING IN THIS DOCUMENT THAT REQUIRES HIM TO

8    DO SO NOR DO I THINK YOU CAN CREDIBLY ARGUE THAT IT WAS

9    AUTOMATIC GIVEN THE FACT OF THE EVENTS THAT HAVE

10   TRANSPIRED SINCE THE DATE THE SETTLEMENT AGREEMENT WAS

11   SIGNED.

12        WHETHER MR. CUTHILL COULD HAVE SQUEAKED ANOTHER

13   DIME OUT OF PROFESSIONALS OR SHOULDN'T BE PAYING THESE

14   PROFESSIONALS, THAT'S A WHOLE DIFFERENT BALL OF WAX, BUT

15   IT IS NOT AN APPROPRIATE VEHICLE TO ARGUE THAT BECAUSE HE

16   FAILS TO SIGN THE FEE AGREEMENT THAT SOMEHOW HE SHOULD

17   NOT HIRE AND PAY THESE PROFESSIONALS, PARTICULARLY WHEN

18   ~~MANY OF THEM ARE COURT ORDERED AND MANY OF THEM ARE~~

19   DOING EXACTLY WHAT THEY ARE REQUIRED TO DO AND IT'S JUST

20   WHAT IT COSTS.

21        I DON'T THINK ANYBODY --- THIS IS JUST SUPPOSITION, AND I

22   MAYBE SHOULDN'T EVEN BE SAYING THIS --- BUT I DON'T THINK

23   ANYBODY THOUGHT THAT THERE WAS GOING TO BE ANY

24   SUBSTANTIAL RECOVERIES IN THESE CASES ABSENT RECOVERY IN

25   THE ADVERSARY PROCEEDINGS. I MEAN, THAT WAS A CLEAR

54

1    UNDERSTANDING.  AND THE FACT THAT IT COSTS MONEY IS A

2    GIVEN.

3        SO I JUST DON'T UNDERSTAND THE BEEF OTHER THAN I DO

4    UNDERSTAND YOU WOULD LIKE TO GET THE CRIMINAL CHARGES

5    RESOLVED, BUT I DON'T THINK YOU'RE ENTITLED TO FORCE IT AND

6    I CERTAINLY DON'T THINK YOU'RE ENTITLED TO DENY

7    PROFESSIONALS COMPENSATION WHEN THEY'VE CLEARLY BEEN

8    RETAINED.  THEY'VE CLEARLY BEEN WORKING FOR THE PURPOSES

9    WHICH EVERYONE KNEW WHAT THEY WERE HIRED FOR AND WHAT

10    THEY WERE SUPPOSED TO DO AND I DO NOT BELIEVE THAT THE

11    OBJECTIONS IN OPPOSITION HAVE MERIT.

12        SO I WILL OVERRULE, DENY, WHATEVER I NEED TO DO, THE

13    OBJECTIONS AND ALLOW MR. CUTHILL TO ADMINISTER THE CASE.

14        NOW, IF THERE ARE OTHER MOTIONS OR MATTERS THAT ARE

15    RELEVANT, I AM NO WAY PRECLUDING THE FILING OF ANY OTHER

16    RELATED MATTERS, BUT THIS ONE DID NOT SEEM TERRIBLY

17    PERSUASIVE TO ME.

18        SO MR. SHUKER, IF YOU COULD JUST DO SUMMARY ORDERS

19    PURSUANT TO THE RULING DENYING THEM IN EACH OF THE THREE

20    PENDING CASES, AND I'LL BE --- LIKE I SAID, IF SOMETHING ELSE IS

21    FILED, I'LL BE GLAD TO SET IT.  IF IT HAS OTHER ISSUES, I'LL BE

22    GLAD TO CONSIDER THEM.

23        MR. SHUKER:  THANK YOU, YOUR HONOR.  I'LL DO THEM

24    PURSUANT TO RULE 7052.

25        THE COURT:  WE HAVE THE COMING --- THE COMING

1    HEARINGS ON APRIL 22ND AND JUNE 17TH, BUT IS THERE ANYTHING

2    ELSE THAT WE DIDN'T GET ON THE CALENDAR OR MISSED OR ---

3         MR. SHUKER:  I THINK WE DID IT ALL.  THANK YOU FOR YOUR

4    TIME.

5         THE COURT:  YOU'RE WELCOME.  I'VE GOT TO FINISH MY

6    NOTES, BUT COURT IS IN RECESS.

7         (WHEREUPON, THE HEARING WAS CONCLUDED AT 3:31 P.M.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

56

# CERTIFICATE OF OATH

STATE OF FLORIDA

COUNTY OF SEMINOLE


I, MARGIE A. GREEN, NOTARY PUBLIC, CERTIFY THAT I WAS

AUTHORIZED TO AND DID TRANSCRIBE, FROM CD-R, THE FOREGOING

PROCEEDINGS AND THAT THE TRANSCRIPT IS A TRUE RECORD

I FURTHER CERTIFY THAT I AM NOT A RELATIVE, EMPLOYEE,

ATTORNEY OF COUNSEL OF ANY OF THE PARTIES, NOR AM I FINANCIALLY

INTERESTED IN THE ACTION.

DATED THE 30TH DAY OF APRIL 2010.


MARGIE A. GREEN

NOTARY PUBLIC – STATE OF FLORIDA

MY COMMISSION NO.: DD0714428

MY COMMISSION EXPIRES: 9/13/2011