# *TRANSCRIPT OF PROCEEDINGS*

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION



CASE NO.: 2008-4327

IN RE:

MIRABILIS VENTURE, INC.,

DEBTOR.

_____/

**FILED**

MAY 05 2010

CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

STATUS CONFERENCE

BEFORE:      THE HONORABLE KAREN S. JENNEMANN

DATE:        APRIL 22, 2010

TIME:        2:00 P.M.

LOCATION:    UNITED STATES BANKRUPTCY COURT
             ORLANDO, FLORIDA 32801



# Realtime Reporters, Inc.

Registered Professional Reporters
Certified Video Technicians

1188 Fox Forrest Circle • Apopka, Florida 32712 • (407) 884-4662 • FAX (407) 884-4664
*Sandra A. Dawkins, President • Professional Reporting Since 1977*









2

1                    A P P E A R A N C E S

2    SCOTT SHUKER, ESQUIRE

3    JUSTIN LUNA, ESQUIRE

4    MARIANNE DORIS, ESQUIRE

5      ATTORNEYS FOR LIQUIDATING DEBTOR

6

7    STACY WILSON, ESQUIRE

8      ATTORNEY FOR GILLIO DEVELOPMENT, INC.

9

10   CAROL IDE, ESQUIRE

11     ATTORNEY FOR THE UNITED STATES

12

13   BRENT WALDROP, ESQUIRE

14     ATTORNEY FOR COASTAL EQUITY PARTNERS, LLC

15

16   ERIC ADAMS, ESQUIRE

17     ATTORNEY FOR MIRABILIS VENTURES AND SPECIAL COUNSEL

18

19   ESTER MAKEEHUE, ESQUIRE

20     ATTORNEY FOR FIFTH THIRD BANK

21

22   MELISSA YOUNGMAN, ESQUIRE

23     ATTORNEY FOR RKT CONSTRUCTORS, DELL KELLEY

24     ROBBIE A. ROBERTS AND ROBBIE A. ROBERTS TRUST

25

3

1    PETER HILL, ESQUIRE

2       ATTORNEY FOR SECURE SOLUTIONS, LLC

3

4    SCOTT PARK, ESQUIRE

5       ATTORNEY FOR THE STATE OF FLORIDA, DEPARTMENT OF REVENUE

6

7    ROY KOBERT, ESQUIRE

8    NICOLETTE VILMOS, ESQUIRE

9       SPECIAL COUNSEL TO MIRABILIS

10

11   ALSO PRESENT:  MR. CUTHILL

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1

5

1                                  I N D E X

2      TESTIMONY OF ROBERT W. CUTHILL

3          DIRECT EXAMINATION BY MR. SHUKER          41

4          CROSS EXAMINATION BY MR. KOBERT           51

5          CROSS EXAMINATION BY MS. IDE              55

6      CERTIFICATE OF OATH                           85

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

6

PROCEEDINGS

1

2      THE CLERK:  ALL RISE.  THE UNITED STATES BANKRUPTCY

3   COURT FOR THE MIDDLE DISTRICT OF FLORIDA IS NOW IN SESSION.

4   THE HONORABLE KAREN S. JENNEMANN PRESIDING. YOU MAY NOW

5   BE SEATED.

6      THE COURT CALLS CASE NUMBER 08-4327, MIRABILIS

7   VENTURES, INCORPORATED AND ALL RELATED ADVERSARIES AND

8   BANKRUPTCY PROCEEDINGS.

9      ALL INTERESTED PARTIES, PLEASE COME FORWARD AND

10   ENTER YOUR APPEARANCES.

11      MR. SHUKER:  GOOD AFTERNOON, YOUR HONOR, SCOTT

12   SHUKER, MARYANN DORIS AND JUSTIN LUNA ON BEHALF OF

13   MIRABILIS.  WITH ME AT COUNSEL TABLE IS MR. CUTHILL, WHO IS

14   THE PRESIDENT.

15      MS. WILSON:  GOOD AFTERNOON, YOUR HONOR, STACY

16   WILSON WITH ATLANTIC LEGAL GROUP ON BEHALF OF GILLIO

17   DEVELOPMENT, INC.

18      MS. YOUNGMAN:  GOOD AFTERNOON, YOUR HONOR, MELISSA

19   YOUNGMAN ON BEHALF OF RKT CONSTRUCTORS, DELL KELLEY,

20   ROBBIE A. ROBERTS AND ROBBIE A. ROBERTS TRUST.

21      MS. IDE:  GOOD AFTERNOON, YOUR HONOR, CAROL IDE ON

22   BEHALF OF THE UNITED STATES.

23      MR. WARDROP:  GOOD AFTERNOON, YOUR HONOR, BRENT

24   WARDROP FROM DEBEAUBIEN, KNIGHT, SIMMONS, MANTZAIUS

25   AND NEAL, LLP, HERE ON BEHALF OF COASTAL EQUITY PARTNERS,

7

1    LLC.

2           MS. MAKEEHUE:  ESTER MAKEEHUE ON BEHALF OF FIFTH

3    THIRD BANK.

4           MR. HILL:  GOOD AFTERNOON, YOUR HONOR, PETER HILL FOR

5    SECURE SOLUTIONS.

6           MR. ADAMS:  GOOD AFTERNOON, YOUR HONOR, ERIC ADAMS

7    OF SHUTTS & BOWEN AND I'M HERE AS SPECIAL OUTSIDE COUNSEL

8    FOR MIRABILIS VENTURES ON SEVERAL OF THE ADVERSARY

9    PROCEEDINGS BEFORE THIS COURT.

10          MR. KOBERT:  GOOD AFTERNOON, YOUR HONOR, ROY

11   KOBERT AND NICOLETTE VILMOS, WE'RE HERE AS SPECIAL

12   COUNSEL TO MIRABILIS HANDLING TEN LAWSUITS PENDING IN

13   DISTRICT COURT OR STATE COURT OUTSIDE OF THIS COURT'S

14   PREVIEW.

15          MR. PARK:  SCOTT PARK, ALSO, ON BEHALF OF THE UNITED

16   STATES.

17          THE COURT:  AND WE'RE HERE TODAY IN CONNECTION WITH

18   A NUMBER OF MOTIONS, CONTESTED MATTERS IN ADVERSARY

19   PROCEEDINGS.

20          MR. SHUKER, IF YOU WOULD JUST GIVE ME AN UPDATE.  I'M

21   HAVING TROUBLE PULLING UP MY FILE.  GIVE ME JUST ONE

22   MINUTE.  THERE IT GOES.  GO AHEAD AND GIVE ME AN UPDATE AS

23   TO WHERE WE ARE ON THE PENDING MOTIONS AND MATTERS AND

24   PROCEEDINGS.

25          MR. SHUKER:  THANK YOU, YOUR HONOR.  I THINK WITH

8

1    EVERYTHING OTHER THAN THE IRS, WHICH WE'VE PUT TO THE END,

2    AND THERE ARE THREE MATTERS WITH THEM.

3        TODAY, WE'RE EITHER ANNOUNCING SETTLEMENTS OR

4    SCHEDULING, FURTHER STATUS CONFERENCES OR HEARINGS.  WE

5    HAVE HANDED UP, I BELIEVE, AN OUTLINE OF THE CALENDAR THAT

6    WE HAVE ORGANIZED IN A MANNER RELATED TO EASIEST TO

7    LEAST.  BUT AT THE END OF THE DAY, THE ONLY POSSIBLE

8    CONTESTED MATTERS WITH WITNESSES AND EVIDENCE WILL BE

9    RELATED TO THE IRS.  AND THERE ARE THREE MATTERS RELATED

10    TO THEM.  A MOTION FILED BY MR. KOBERT TO DETERMINE

11    PROPERTY OF THE ESTATE.  THE OBJECTIONS FILED BY THE IRS TO

12    VARIOUS PROFESSIONAL FEES AND THEN TWO OBJECTIONS TO

13    CLAIMS.  WE WOULD LIKE TO LEAVE THOSE TO THE END.

14        I THINK THE FIRST PART OF THIS WILL TAKE NO MORE THAN

15    15 OR 20 MINUTES THAT WAY, A LOT OF PEOPLE CAN LEAVE.

16        THE COURT:  LET'S DO IT THAT WAY.

17        MR. SHUKER:  ALL RIGHT.  THE FIRST ONE UP IS THE

18    ADVERSARY, MIRABILIS VERSUS ROBBIE --- I WON'T PRONOUNCE

19    THE LAST NAME.  I'LL LEAVE THAT TO MR. ADAMS TO FIGURE OUT.

20    THAT'S WHY WE'RE PAYING HIM --- AND HE'S GOING TO ADDRESS

21    THE FIRST COUPLE OF ITEMS ON THIS CALENDAR THAT WE'VE

22    HANDED UP.

23        THE COURT:  VERY GOOD.  GO AHEAD.  AND THESE ARE IN

24    ADVERSARY PROCEEDINGS 09-815 AND 09-968; IS THAT CORRECT?

25        MR. ADAMS:  I BELIEVE IT'S JUST 09-815 WITH RESPECT TO MR.

9

1    RUPRIREEN.

2         THE COURT:  VERY GOOD.

3         MR. ADAMS:  AND I HANDLE OTHER ADVERSARY

4    PROCEEDINGS.  ONE OF THEM IS AGAINST 02 HR.  THERE'S TWO OF

5    THEM AGAINST 02 HR AND THOSE ARE PROGRESSING CONSISTENT

6    WITH OUR LAST STATUS CONFERENCE WITH THE COURT.

7         BEFORE WE DIVE INTO MR. RUPRIREEN, I'M HANDLING

8    ANOTHER MATTER THAT IS PINELLAS COUNTY STATE COURT

9    OUTSIDE OF THIS COURT'S JURISDICTION AND I WOULD LIKE TO

10   ANNOUNCE WHAT I THINK WILL BE A SETTLEMENT THAT WILL

11   EITHER BE APPROVED BY THE IRS OR THE U.S. ATTORNEY'S OFFICE

12   OR THIS COURT.  IT'S ONE THAT INVOLVES A NOTE BASED UPON

13   THE SALE OF A MIRABILIS BUSINESS.

14        IN THAT CASE, WE CALL IT THE PREMIER CASE OR THE

15   PREMIER SERVICING.  AND THAT'S ONE WHERE, YOU KNOW, AFTER

16   SOME DISCOVERY AND SOME DISCUSSIONS AND LEGAL

17   WRANGLINGS, I THINK WE'RE GOING TO BE ABLE TO SECURE

18   APPROXIMATELY 125,000 DOLLARS FOR THE BENEFIT OF THE

19   MIRABILIS ESTATE AND --- BUT THIS ONE IS ONE THAT'S A LARGER

20   AMOUNT.

21        WE HAVE SECURED A 600,000-DOLLAR PLUS JUDGMENT

22   AGAINST --- JOINTLY AND SEVERELY AGAINST ROBBIE RUPRIREEN,

23   INDIVIDUALLY, ROBBIE RUPRIREEN, AS TRUSTEE OF THE ROBBIE

24   WORLD LAND TRUST, AND ALSO AN ENTITY OF WHICH MR.

25   RUPRIREEN IS THE REGISTERED AGENT, CALLED FLHP-MS, LLC.

10

1       WHEN WE SECURED OUR JUDGMENT, WE INVESTIGATED AND

2   LOOKED FOR ASSETS UPON WHICH WE COULD EXECUTE OUR LEVY,

3   FOUND NONE, AND SO WE'VE EXECUTED --- OR ISSUED SOME

4   DISCOVERY IN AID OF EXECUTION.  IT WENT TO MR. RUPRIREEN

5   WHERE HE RECEIVED THE SERVICE OF PROCESS AT THE ADDRESSES

6   IN WHICH WE HAD FOR HIM, AND WE'RE HEARD RADIO SILENCE.

7       SO IN RESPONSE TO THAT, WE FILED A MOTION FOR AN

8   ORDER TO SHOW CAUSE ASKING FOR THIS COURT TO GRANT THE

9   RELIEF THAT IT THINKS IS APPROPRIATE IN THE CIRCUMSTANCE TO

10  ASK PERHAPS AN ORDER AS WHY IT IS THAT THE DEFENDANT

11  SHOULDN'T BE HELD IN CONTEMPT OF COURT AND SOME SORT OF

12  ORDER TO SHOW CAUSE TO DIRECT THEM IN FRONT OF THIS COURT

13  TO EITHER RESPOND TO THE DISCOVERY OR BE PREPARED TO

14  RESPOND AND OFFER UP WHAT ASSETS ARE OR ARE NOT

15  AVAILABLE FOR EXECUTION OR LEVY.

16      AND SO, I WILL DEFER TO THE COURT'S DISCRETION.  I'M

17  HAPPY TO GIVE MORE BACKGROUND AS TO THE RELIEF WE THINK

18  IS APPROPRIATE, BUT I ALSO THINK THIS COURT IS INFINITELY

19  WELL PREPARED TO MAKE THE RULING THAT IT THINKS IS

20  NECESSARY OR APPROPRIATE.

21      REALLY WHAT WE'RE TRYING TO DO ON BEHALF OF

22  MIRABILIS IS FIGURE OUT WHAT ASSETS MIGHT BE EXECUTED AND

23  LEVIED UPON IN ORDER TO SATISFY THE JUDGMENT.

24      THE COURT:  THANK YOU.  AT THIS POINT, WHAT TYPE OF

25  DISCOVERY IN AID OF EXECUTION HAVE YOU SENT?  IS IT JUST

11

1     INTERROGATORIES?

2         MR. ADAMS:  I JUST ISSUED INTERROGATORIES AT THIS POINT

3     IN TIME.  AND SO, YOU KNOW, THERE'S --- INTERROGATORIES ARE

4     FRAIL, BUT IT WAS A PLACE.  INTERROGATORIES AREN'T PERFECT

5     BECAUSE SOMETIMES YOU GET OBJECTIONS OR CRAFTED

6     ANSWERS.

7         THE COURT:  SURE, SURE.

8         MR. ADAMS:  IF I HAD MY DRETHERS, I WOULD PREFER NOT

9     ONLY THE INTERROGATORY RESPONSES, BUT ALSO, SOME SORT OF

10    SWORN TESTIMONY UNDER OATH, PERHAPS IN THE FORM OF A

11    DUCES TECUM TYPE DOCUMENTS TO SUPPORT WHAT SORT OF

12    ASSETS MIGHT BE LEVIED UPON.  BUT WHAT I THOUGHT FIRST IS I

13    GET THE INTERROGATORY RESPONSES FIRST AS BACKGROUND FOR

14    THAT.

15        BUT WHEN I'M NOT HEARING ANYTHING FROM ANYONE AS

16    FAR AS RESPONSES, AND HE'S JUST KIND OF PLAYING LEGAL

17    OSTRICHAGE, STICKING HIS HEAD IN THE SAND, PRETENDING THIS

18    DOESN'T EXIT.  I WANTED TO COME TO THE COURT TO REQUEST

19    SOME SORT OF JUDICIAL REMEDY TO PUT HIS FEET TO THE FIRE.

20        THE COURT:  IS THERE ANY PROBLEM IN LOCATING THE

21    JUDGMENT DEBTOR?

22        MR. ADAMS:  WE CAN LOCATE THE HOME THAT IS HIS

23    HOMESTEAD UNDER FLORIDA LAW.  SO WE KNOW WHERE HE IS.

24    AND IT'S HE SAME ADDRESS IN CLERMONT WHERE WE HAVE

25    SERVED HIM VIA MAIL DISCOVERY REQUESTS AND WHERE HE WAS

12

1    SERVED WITH PROCESS TO INITIATE THIS PROCEEDING.

2              THE COURT: OKAY.

3              MR. ADAMS: AND SO THERE'S NOT A PROBLEM IN LOCATING,

4    IT'S JUST A PROBLEM IN INITIATING A DIALOGUE.

5              THE COURT: OKAY. I WILL GRANT THE MOTION. CLEARLY,

6    THE JUDGMENT DEBTOR HAS TO PROVIDE THE INFORMATION. I

7    WOULD DIRECT THE JUDGMENT DEBTOR TO PROVIDE --- AND HERE

8    I'M TRYING TO CRAFT SOMETHING THAT MAKES IT --- WHAT --- IN A

9    PERFECT WORLD, WHAT WOULD YOU SEEK AT THIS POINT?

10             MR. ADAMS: I WOULD SEEK RESPONSES TO THE

11   INTERROGATORIES AND THEN REQUIRE HIM, WITHIN A PERIOD OF

12   TIME, PERHAPS, YOU KNOW, 30 TO 40 DAYS FROM NOW, SOME SORT

13   OF, YOU KNOW, SWORN PRESENTATION OF TESTIMONY. AND THE

14   LOCATION ISN'T AS IMPORTANT TO ME. I HAVE AN ORLANDO

15   OFFICE AND HE'S IN THE CENTRAL FLORIDA AREA. I COULD HAVE

16   HIM APPEAR AT THE ORLANDO OFFICE OF SHUTTS AND BOWMAN

17   TO OFFER TESTIMONY AT SOME PERIOD OF TIME. YOU KNOW, 30 TO

18   45 DAYS FROM THIS POINT IN TIME.

19             THE COURT: I WILL GRANT THE MOTION TO DIRECT THE

20   JUDGMENT DEBTOR TO FILE WRITTEN RESPONSES, UNDER OATH, TO

21   THE INTERROGATORIES ON OR BEFORE MAY THE 21ST. AND TO

22   APPEAR FOR A DEPOSITION TO BE SET IN YOUR OFFICES ON OR

23   BEFORE JUNE THE 25TH AND TO PROVIDE AT THE DEPOSITION

24   DOCUMENTS --- ACTUALLY, I'M GOING TO LET YOU DO A SEPARATE

25   DOCUMENT REQUEST. I'M NOT GOING TO GET INTO THAT AT THIS

13

1    JUNCTURE.

2         MR. ADAMS:  I UNDERSTAND.

3         THE COURT:  BUT JUST THAT A DEPOSITION ON OR BEFORE

4    JUNE THE 25TH.  IF THE JUDGMENT DEBTOR FAILS TO TAKE EITHER

5    OF THOSE ACTIONS, THEN I WILL HAVE A HEARING ON --- LET'S SEE

6    --- WHAT DO WE HAVE ON JULY THE 22ND?  WE DON'T HAVE

7    ANYTHING IN THE AFTERNOON AT THIS JUNCTURE, DO WE?

8         UNIDENTIFIED SPEAKER:  NO, WE DON'T, JUDGE.

9         THE COURT:  JULY THE 22ND AT 2:00 P.M. TO CONSIDER

10   WHETHER THE JUDGMENT DEBTOR IS IN CONTEMPT OF COURT OR

11   NOT.

12        MR. ADAMS:  YOUR HONOR, WOULD YOU LIKE FOR ME TO

13   PREPARE AN ORDER ---

14        THE COURT:  IF YOU WOULD.

15        MR. ADAMS: --- AND SUBMIT IT TO THE COURT?

16        THE COURT:  IF YOU WOULD, PLEASE.

17        MR. ADAMS:  I'D BE HAPPY TO.

18        THE COURT:  DID YOU HAVE ANY QUESTIONS OR IS THERE

19   ANYTHING ELSE YOU NEED FROM ME?

20        MR. ADAMS:  NO, MA'AM.  I APPRECIATE THE COURTESY, AND

21   I'LL PREPARE AN APPROPRIATE ORDER AND SUBMIT IT TO THE

22   COURT.

23        THE COURT:  VERY GOOD.  THANK YOU.

24        MR. ADAMS:  THANK YOU, YOUR HONOR.

25        MR. SHUKER:  YOUR HONOR, THE NEXT MATTERS ON WHAT

14

1    WE'VE HANDED TO YOU UP THROUGH THE PAGE WHERE WE START

2    ON THE IRS WILL BE HANDLED BY MS. DORIS.

3        THE COURT:  VERY GOOD.  HAVE YOU SHARED THIS OUTLINE

4    WITH OTHER PEOPLE?  I DON'T WANT ANYBODY TO BE IN THE

5    DARK.  THERE'S NOTHING SECRET ABOUT THE OUTLINE.

6        MS. DORIS:  IT HAS BEEN.  AND THERE ARE EXTRA --- A

7    COUPLE EXTRA COPIES.

8        THE COURT:  IF YOU HAVE EXTRA COPIES, IF YOU COULD

9    JUST SHARE THEM JUST SO EVERYBODY WILL KNOW WHERE WE'RE

10   HEADING.  VERY GOOD.  GO AHEAD.

11       MS. DORIS:  GOOD AFTERNOON, YOUR HONOR.  THE NEXT

12   MATTER THAT I HAD ON THE OUTLINE THAT WE PREPARED WAS

13   THE ADVERSARY WITH FIFTH THIRD BANK, WHICH IS 09-968.  I

14   BELIEVE MS. MAKEEHUE IS HERE ON BEHALF OF FIFTH THIRD.

15       THE COURT:  AND MS. MAKEEHUE.  IT LOOKS LIKE YOU JUST

16   NEED TO CONTINUE PRE-TRIAL CONFERENCE?

17       MS. DORIS:  YES, YOUR HONOR.  THE PARTIES --- WE HAVE

18   SERVED DISCOVERY AND WE WOULD JUST REQUEST A CONTINUED

19   PRE-TRIAL IN 60 DAYS.

20       MS. MAKEEHUE:  I WOULD AGREE WITH THAT, EXCEPT I HAD

21   PROPOSED TO DEBTOR'S COUNSEL THAT WE DO EARLY ON

22   MEDIATION.  THAT WAS NOT WELL RECEIVED.  I'M JUST

23   CONCERNED THAT IF WE HOLD OFF ON DOING MEDIATION, THE

24   PARTIES WOULD HAVE EXPENDED TOO MUCH MONEY FOR

25   MEDIATION EVER TO BE SUCCESSFUL AND OUR CHANCES EARLY

15

1       ON.

2               THE COURT:  VERY GOOD.  WHAT IS THE AMOUNT OF THE

3       CLAIM AGAINST YOUR CLIENT, MS. MAKEEHUE?

4               MS. MAKEEHUE:  $135,000.00.

5               THE COURT:  OKAY.  AND WHY WOULD A MEDIATION NOT BE

6       APPROPRIATE?

7               MS. DORIS:  TWO REASONS, YOUR HONOR.  IT WAS INDICATED

8       TO ME THAT MEDIATION COULD ONLY OCCUR IF THERE WAS NO

9       DISCOVERY EXCHANGED BETWEEN THE PARTIES.  IT WAS

10      REPRESENTED THAT IF THE BANK HAD TO EXPEND THE TIME IN

11      ANSWERING OUR DISCOVERY THAT WE SERVED THAT'S DUE

12      MAY5TH, IT WOULD NOT BE INTERESTED OR IT WOULD BE

13      FINANCIALLY BURDENSOME FOR THEM TO SETTLE AFTER HAVING

14      TO EXPEND ALL THE COSTS ASSOCIATED WITH RESPONDING TO

15      DISCOVERY.

16              HOWEVER, FROM THE PLAINTIFF'S PERSPECTIVE, WE CAN'T

17      SETTLE IN THE DARK, AND THE AMOUNT IS LOW, $135,000.00, TO

18      INCUR MEDIATION COSTS BETWEEN TWO TO THREE GRAND TO

19      RECEIVE A NOMINAL SETTLEMENT OFFER OR SOMETHING BELOW

20      WHAT WE HAVE SET AS A THRESHOLD IN EARLY DISCUSSIONS WITH

21      MR. FOSTER.  IT JUST DIDN'T SEEM THAT IT WOULD BE VERY

22      FRUITFUL USE OF OUR TIME.

23              THE COURT:  AND MS. MAKEEHUE, WHAT RESPONSE, IF ANY,

24      DO YOU HAVE TO THAT?

25              MS. MAKEEHUE:  WELL, I WOULDN'T USE THAT THE

16

1    DISCOVERY WAS HELD OFF AS A THREAT.  IT'S JUST PRACTICAL OF -

2    --

3            THE COURT:  SOONER BETTER THAN LATER.

4            MS. MAKEEHUE:  AND WHEN WE START SPENDING MONEY,

5    ALL THE SETTLEMENT NUMBERS ARE GOING TO START CHANGING.

6    OF COURSE, WE'RE WILLING TO SPLIT THE MEDIATION FEES, IF

7    THAT HELPS SOME OF THE CONCERN.

8            THE COURT:  I AM GOING TO DIRECT MEDIATION.  I'M NOT

9    WAIVING ANY RESPONSE TO DISCOVERY TIME.  PERHAPS YOU CAN

10   WORK IT OUT.  BUT I'M NOT WAIVING THE DISCOVERY

11   OUTSTANDING OR THE RESPONSE TIME OR EXTENDING IT.  BUT I

12   WILL DIRECT MEDIATION TO OCCUR BETWEEN THE PARTIES.  THE

13   ORDER ROUTINELY REQUIRES THE COST TO BE SPLIT BETWEEN THE

14   PARTIES.  I WOULD DIRECT THAT IT BE CONCLUDED ON OR BEFORE

15   JULY THE 22ND.  AND WE'LL HAVE A CONTINUED PRE-TRIAL

16   CONFERENCE ON JULY THE 22ND AT 2:00.

17           SO IF YOU CAN SETTLE THIS, IT CERTAINLY WILL BE A LOT

18   EASIER NOW THAN LATER.  AND I WOULD AGREE THAT PLAINTIFF'S

19   PROBABLY DO NEED SOME INFORMATION FROM THE BANK AND I

20   CAN'T BELIEVE THAT'S TERRIBLE ONEROUS.

21           MS. MAKEEHUE:  UNDERSTOOD, YOUR HONOR.  NO PROBLEM.

22           THE COURT:  ANY QUESTIONS OR ANYTHING ELSE WE NEED

23   TO DO?  NO.  VERY GOOD.  THANK YOU.

24           MS. MAKEEHEE:  THANK YOU.  YOUR HONOR, MAY I BE

25   EXCUSED?

1      THE COURT:  YES.

2      AND THEN ON YOUR SCHEDULE, WHICH IS FINE FOR US TO ---

3  WE SWITCH TO ADVERSARY 1030.

4      MS. DORIS:  YES, YOUR HONOR.

5      THE COURT:  THAT HAS ALL BEEN SETTLED, HAS IT NOT?

6      MS. DORIS:  YES, IT HAS, YOUR HONOR.  MR. GLOVER,

7  ADVERSARY 10-30 IS SETTLED IN CONJUNCTION WITH THE

8  OBJECTIONS TO CLAIM NUMBER FIVE AND SIX, WHICH WAS FOUR

9  ON THE COURT'S CALENDAR, SO I LUMPED THOSE ALL TOGETHER.

10     THE AGREED ORDER ON THE CLAIM WAS ENTERED LAST

11  WEEK, APRIL 16TH, DOCKET NUMBER 528, AND THE JOINT

12  STIPULATION FOR THE DISMISSAL FOR THE ADVERSARY WAS FILED

13  THAT SAME DAY, APRIL 16TH.

14     THE COURT:  VERY GOOD.  IF YOU WOULDN'T MIND, JUST

15  SUBMITTING A SEPARATE ORDER DISMISSING THE ADVERSARY

16  PROCEEDING.

17     MS. DORIS:  OKAY.

18     THE COURT:  I'LL NOTE --- OBVIOUSLY, THE OBJECTION WAS

19  RESOLVED BY THE ORDER IN THE MAIN CASE.

20     MS. DORIS:  YES, YOUR HONOR.

21     THE COURT:  THANKS.  AND THE NEXT MATTER IS

22  ADVERSARY PROCEEDING 08-148 IN THE HOTH HOLDING

23  COMPANY'S CASE.

24     MS. DORIS:  YES, YOUR HONOR.  AND THAT'S ALSO COMBINED

25  WITH THE OBJECTIONS TO CLAIM NUMBER 23, 22 AND 21.

18

1          THE COURT:  IN THE HOTH CASE OR IN THE MIRABILIS CASE?

2          MS. DORIS:  THERE'S --- THE CLAIM OBJECTIONS ARE IN

3   MIRABILIS, THE ADVERSARY WAS IN HOTH.

4          THE COURT:  GOT IT.

5          MS. DORIS: SO MIRABILIS, DOCKET NUMBERS ONE, TWO AND

6   THREE.  I APOLOGIZE, YOUR HONOR.

7          THE COURT:  NO PROBLEM.  AND WHAT IS THE SITUATION?

8   I'M JUST READING YOUR ---

9          MS. DORIS:  THE DISCOVERY ON THE CLAIMS OBJECTIONS

10  HAS --- AND THE ADVERSARY HAVE BEGUN.  THE PARTIES ARE

11  EXPECTED TO EXCHANGE DOCUMENTS, PERFORM DOCUMENT

12  REVIEW NEXT WEEK.  WE EXPECT WITHIN THE NEXT TWO TO THREE

13  WEEKS, WE'LL BE ABLE TO SET AND SCHEDULE DEPOSITIONS AND

14  THEN GO FROM THERE.

15         THE COURT:  VERY GOOD.  WHAT ABOUT THE POTENTIALITY

16  OF MEDIATION IN THIS CASE?  AND THAT'S REALLY MORE FOR THE

17  DEFENDANTS, CLAIMANTS.

18         MS. DORIS:  THE PARTIES HAVE PREVIOUSLY MEDIATED THIS

19  CASE AND IT WAS UNSUCCESSFUL.

20         THE COURT:  AND FROM THE CREDITOR'S PERSPECTIVE, DO

21  YOU AGREE WITH ALL OF THAT?

22         MR. PARK:  I DO, YOUR HONOR.

23         THE COURT:  ABOUT SETTING IT OVER FOR A PRE-TRIAL

24  CONFERENCE FOR JULY THE 22ND?

25         MR. PARK:  THAT'S FINE WITH US.  WHAT'S THE DATE AGAIN,

19

1       YOUR HONOR?

2            THE COURT:  JULY 22ND AT 2:00 P.M.  AND THAT WILL BE ON

3       THE THREE CLAIMS OBJECTIONS IN MIRABILIS AS WELL AS IN

4       ADVERSARY PROCEEDING 10 --- 08-148.

5            AND IS THERE ANYTHING ELSE I CAN DO TODAY THAT

6       WOULD FACILITATE THE LITIGATION OR MAKE IT GO FASTER?

7            MR. PARK:  I DON'T BELIEVE SO AT THIS POINT, YOUR HONOR.

8            THE COURT:  VERY GOOD.  THANK YOU.

9            MR. PARK:  THANK YOU, JUDGE.

10           THE COURT:  AND THEN WE'RE TO THE RKT PARTIES; IS THAT

11      CORRECT WITH MS. YOUNGMAN.

12           MS. DORIS:  YES, YOUR HONOR.  THEY ARE CALENDAR

13      NUMBERS FIVE THROUGH 11, I BELIEVE IN MIRABILIS.

14           THE COURT:  AND YOUR RESPONSE INDICATES:  DISCOVERY

15      IS PROCEEDING, BUT YOU DO NOT QUITE YET KNOW WHETHER

16      YOU'RE GOING TO SETTLE OR NO; IS THAT CORRECT?

17           MS. YOUNGMAN:  THAT'S CORRECT, YOUR HONOR.  WE

18      INTEND TO MAKE ONE FINAL SETTLEMENT OFFER AND IF THAT

19      DOESN'T WORK, WE'RE READY TO GO TO FINAL HEARING.

20           THE COURT:  VERY GOOD.

21           MS. DORIS:  WE THINK THIS COULD BE SET OVER FOR AN

22      EVIDENTIARY HEARING BEFORE JULY 22ND.  ALL OF THE DISCOVERY

23      IS DONE.  IT'S WHETHER OR NOT --- IF THE OFFER DOES NOT WOK,

24      YOU'RE JUST GOING TO HAVE TO DECIDE IT, YOUR HONOR.

25           THE COURT:  HOW MUCH TIME ARE YOU ASKING ME TO

20

1       RESERVE?

2               MS. YOUNGMAN:  A HALF DAY.

3               MS. DORIS:  A HALF DAY, WE THINK.

4               THE COURT:  YOU'RE NOT GOING TO GET A HALF DAY

5       BETWEEN NOW AND JULY 22ND.  WHEN WILL YOU KNOW WHETHER

6       YOU'RE GOING TO RESOLVE IT OR NOT?

7               MS. YOUNGMAN:  WE'LL PROBABLY KNOW THAT WITHIN THE

8       NEXT THREE WEEKS, I WOULD IMAGINE.

9               THE COURT:  I DON'T MIND HAVING A QUICK EARLIER DATE,

10      BUT I'M NOT GOING TO --- RIGHT NOW, WE'RE BOOK ALMOST

11      THROUGH SEPTEMBER.  I'M SQUEEZING THINGS IN, BUT I DON'T

12      REALLY PLAN ON SQUEEZING A WHOLE LOT MORE IN.  SO I'LL BE

13      GLAD TO SET AN EARLIER JUST QUICK STATUS CONFERENCE O

14      THESE MATTERS TO SEE IF WE DO NEED TO SET SOME TIME ASIDE,

15      THAT WAY, YOU'LL GET IT SET AS EARLY AS I CAN.

16              MS. DORIS:  OKAY.

17              THE COURT:  AND WE CAN JUST PUT IT ON SOME WEDNESDAY

18      JUST ON THESE PARTICULAR MATTERS, PROBABLY MAY --- THE

19      WEEK OF MAY THE 18TH.  I WOULD THINK YOU WOULD KNOW BY

20      THAT POINT.  YOU THINK?

21              MS. YOUNGMAN:  OUR DEPOSITIONS ARE SCHEDULED FOR

22      THE 10TH AND 11TH.  WE HOPE TO HAVE AN OFFER BEFORE THEN.

23              THE COURT:  VERY GOOD.  THE WEEK OF MAY THE 18TH.  SO

24      MAY 19TH?

25              UNIDENTIFIED SPEAKER:  MAY 19TH IN THE AFTERNOON AT

21

1    2:00 P.M.

2        THE COURT:  VERY GOOD.  MAY THE 19TH AT 2:00 P.M. AND

3    THAT'S JUST A QUICK HEARING TO DETERMINE WHETHER WE NEED

4    TO SET EVIDENTIARY TIME OR NOT IN CONNECTION WITH THOSE

5    CONTESTED MATTERS.

6        ANYTHING ELSE WE NEED TODAY ON THOSE?  NO.  VERY

7    GOOD.  THANK YOU.

8        MS. YOUNGMAN:  THANK YOU.

9        THE COURT:  AND THEN IN CONNECTION WITH THE MOTION

10   BY GILLIO.

11       MS. DORIS:  I APOLOGIZE, YOUR HONOR.  I HAD SAID IT WAS

12   FIVE THROUGH 11, BUT THAT WAS ACTUALLY FIVE THROUGH NINE.

13   TEN AND 11 ARE OUR OBJECTIONS TO SECURE SOLUTIONS, IT'S THE

14   SAME LAW FIRM.  I APOLOGIZE.

15       THE COURT:  VERY GOOD.

16       MS. DORIS:  WE HAVE --- MR. HILL IS HERE.  WE HAVE BEEN IN

17   DISCUSSIONS.  THE PARTIES ARE STILL DISCUSSING.  I THINK WE'RE

18   FALLING BACK AND FORTH SETTLEMENT OFFERS.  I THINK WE'RE

19   GOING TO KNOW SHORTLY WHETHER OR NOT WE'RE GOING TO

20   HAVE TO FILE AN ADVERSARY PROCEEDING TO ULTIMATELY

21   RESOLVE ALL THE ISSUES ASSOCIATED WITH THE CLAIMS.  SO I

22   THINK THE JULY 22ND HEARING WOULD BE FINE.  AND BY THEN, WE

23   CERTAINLY WILL HAVE FILED THE ADVERSARY IF WE'RE GOING TO.

24       THE COURT:  VERY GOOD.  DO YOU AGREE WITH THAT, MR.

25   HILL?

22

1      MR. HILL: YES, JUDGE, THAT WORKS FOR US.

2      THE COURT: JULY THE 22ND AT 2:00 P.M.

3      AND LET ME JUST SORT OF CLARIFY AND SET SOME

4  GUIDANCE HERE. ON THE MATTERS THAT I'M SETTING OVER, THE

5  MATTERS AND HOPEFULLY THE FORGE CAPITAL. I WILL BE SETTING

6  EVIDENTIARY HEARINGS AT THE NEXT DOCKET. I'M NOT GOING TO

7  CONTINUALLY CARRY THEM OVER AT THIS JUNCTURE UNLESS

8  THERE'S A VALID, YOU KNOW, GOOD REASON TO DO SO. BUT I WILL

9  ANTICIPATE SETTING EVIDENTIARY HEARINGS ON MATTERS THAT

10 ARE NOT RESOLVED BETWEEN NOW AND THEN, SO THIS WILL BE

11 INCLUDED IN YOUR --- HOPEFULLY, YOU'LL SETTLE IT BEFORE. BUT

12 IF NOT, IT SHOULD BE ---

13      MR. HILL: SHOULD WE BE READY TO GO ON JULY 22ND?

14      THE COURT: WELL, NOT --- NO. WE WILL SET THE

15 EVIDENTIARY HEARING ON JULY 22ND. I JUST WANTED YOU ALL TO

16 KNOW THAT IF YOU CAN SETTLE IT BEFORE THE HEARING IS SET,

17 THIS IS THE TIME TO DO SO.

18      MR. HILL: I GOT YOU.

19      THE COURT: OKAY.

20      MR. HILL: THANK YOU, JUDGE.

21      THE COURT: AND NOW TO THE MOTION BY GILLIO

22 DEVELOPMENT AND I'M SURE I'M MISPRONOUNCING THAT.

23      AND THIS IS A MOTION TO SET ASIDE AN ORDER THAT WAS

24 ENTERED AND MS. WILSON, IT LOOKS LIKE THE DEBTOR IS GOING

25 TO CONSENT TO THAT; IS THAT CORRECT?

23

1    MS. WILSON: YES.

2    THE COURT: AND THEN WE NEED TO SET THE OBJECTION TO

3    CLAIM 32. WHAT DO YOU ANTICIPATE IN TERMS OF THAT

4    OBJECTION, HAVE YOU LOOKED AT THE RESPONSE?

5    MS. DORIS: WE'VE LOOKED INTO IT. WE LOOKED INTO THE

6    ACCOUNTING RECORDS OF MIRABILIS AND MONEY THAT WAS

7    EXCHANGED BETWEEN MIRABILIS AND THE LANDLORD. IT HAS

8    RAISED ADDITIONAL QUESTIONS AS OFTEN HAPPENS UPON

9    FURTHER INVESTIGATION. SO NOW WE PROBABLY WILL HAVE TO

10    TAKE SOME LIMITED DISCOVERY ON THE CLAIM OBJECTION TO

11    UNDERSTAND THE REASONS THAT PAYMENTS WERE MADE BY

12    MIRABILIS TO THE LANDLORD AND SEE SOME OF THE MORE

13    UNDERLYING DOCUMENTS ASSOCIATED AT THAT TIME.

14    I THINK BEING SET AT THE 22ND AND THEN BEING SET FOR A

15    FINAL HEARING IS APPROXIMATE WITH THIS CLAIM AS WELL, YOUR

16    HONOR.

17    THE COURT: ANY OBJECTION TO THAT, MS. WILSON? IF I

18    GRANT THE MOTION AND SET ASIDE THE ORDER SUSTAINING THE

19    OBJECTION, BUT SET A NON-EVIDENTIARY STATUS CONFERENCE ON

20    OBJECTION TO CLAIM 32 ON JULY 22ND?

21    MS. WILSON: NO, YOUR HONOR.

22    THE COURT: OKAY. WOULD YOU SUBMIT AN ORDER ON

23    THAT, IF YOU DON'T MIND?

24    MS. DORIS: YES.

25    THE COURT: THANK YOU.

24

1          MS. WILSON:  MAY I BE EXCUSED?

2          THE COURT:  YES, YOU MAY.  THANK YOU.

3          MS. DORIS:  ONE CLAIM RESOLVED, YOUR HONOR, AEM.  THE

4    FIRST ON THE DOCKET WAS THE CLAIM BY THE FLORIDA

5    DEPARTMENT OF REVENUE.  THEY HAVE WITHDRAWN THE CLAIM

6    AND REFILED A WITHDRAWAL OF OUR OBJECTION TO THE CLAIM

7    YESTERDAY, WHICH IS DOCKET NUMBER 225.

8          THE COURT:  VERY GOOD.  AND THEN DOES THAT JUST LEAVE

9    THE ISSUES RELATING TO THE DISBURSEMENTS AND THE INTERNAL

10   REVENUE SERVICE?

11         MS. DORIS:  YES, IT DOES, YOUR HONOR.

12         THE COURT:  VERY GOOD.

13         MS. DORIS:  YOUR HONOR, IF I COULD INQUIRE.  I APOLOGIZE.

14   THE FIFTH THIRD, THE CONTINUED PRE-TRIAL, ARE WE GOING TO

15   BE SETTING THE TRIAL FOR FIFTH THIRD ON JULY 22ND AS WELL OR

16   DID YOU --- OR WAS YOUR --- WE WERE GOING TO BE SETTING FINAL

17   EVIDENTIARY HEARINGS LIMITED TO THE CLAIM OBJECTIONS?

18         THE COURT:  ALL I MEANT TO EXPRESS WAS THAT AT OUR

19   NEXT MEETING, WHENEVER THAT MAY BE, I WILL BE SETTING THE

20   FINAL HEARINGS ON THE MATTERS.

21         MS. DORIS:  OKAY.

22         THE COURT:  SO I WILL ISSUE AN ORDER DIRECTING

23   MEDIATION AS TO FIFTH THIRD, ADVERSARY 09-968.  IT WILL JUST

24   BE A STATUS CONFERENCE ON JULY 22ND.

25         MS. DORIS:  BUT AT THAT STATUS CONFERENCE, IT YOUR

25

1      INTEND TO SET IT FOR TRIAL?

2              THE COURT:  ABSOLUTELY.

3              MS. DORIS:  THANK YOU.

4              THE COURT:  ON THAT AND THE OTHER MATTERS THAT I CAN.

5              MS. DORIS:  GREAT.  THANK YOU, YOUR HONOR.

6              THE COURT:  YOU'RE WELCOME.

7              AND THEN ON THE ISSUES RELATING TO THE UNITED STATES.

8              MR. SHUKER:  THANK YOU, YOUR HONOR.

9              THE WAY WE WOULD LIKE TO PROCEED IS, I GUESS, LEAST TO

10     MOST.  SO THE LEAST DISCUSSION AND THE ONE THAT DOESN'T

11     REQUIRE FACTUAL WITNESSES IS WHAT'S LABELED AS 18, OR AT

12     LEAST, WE DON'T THINK IT REQUIRES FACTUAL WITNESSES, THE

13     MOTION BY DEBTOR TO CONFIRM PROPERTY OF THE ESTATE.

14     THAT'S MR. KOBERT'S.  AFTER THAT, WE WOULD LIKE TO GO TO

15     THE NUMEROUS OPPOSITIONS TO PAYING PROFESSIONS AND THEN

16     DEAL WITH THE TWO CLAIM OBJECTIONS TO THE IRS CLAIMS AND

17     THEN THE IRS REQUEST TO TREAT THIS AS A STATUS CONFERENCE.

18             SO IF I CAN TURN TO MR. KOBERT.

19             THE COURT:  BEFORE WE DO THAT, I WOULD LIKE TO HEAR

20     MS. IDE AND THE UNITED STATES' POSITION ON THE VARIOUS

21     MATTERS.  I JUST WANT TO GET A BACKGROUND SO I GET A SENSE

22     AS TO WHAT THE POSITION IS.

23             MS. IDE:  CERTAINLY, YOUR HONOR.  ON THE CLAIMS'

24     OBJECTIONS, WOULD YOU PREFER THAT FIRST?

25             THE COURT:  GENERALLY.  THE WHOLE BALL OF WAX.  GIVE

1    ME, YOU KNOW, JUST A SHORT SUMMARY OF THE POSITIONS.

2            MS. IDE:  CERTAINLY, YOUR HONOR.

3            IN THE AEM CASE, AEM IS ONE OF SEVERAL EMPLOYEE

4    LEASING COMPANIES OWED OR CONTROLLED BY MIRABILIS.  IT

5    WAS A SUBSIDIARY OF MIRABILIS IN ONE OF THE ENTRIES THAT, AT

6    LEAST, IN THE CRIMINAL PLEA AND THE FORFEITURE ACTION, MR.

7    AMADEO HAS ADMITTED TO CONTROLLING.

8            AEM FILED AN EMPLOYMENT TAX RETURN, A FORM 941, FOR

9    THE SECOND QUARTER OF 2007 AND THERE REMAINS A BALANCE

10    DUE AND THAT IS THE BASIS FOR OUR PROOF OF CLAIM.

11            THE PRIORITY AMOUNT OF THAT CLAIM IS JUST TWO AND A

12    HALF MILLION DOLLARS.  THAT'S FOR THE SECOND QUARTER OF

13    2007.  THE DEBTOR HAS OBJECTED TO --- AND THEN THERE'S

14    ANOTHER 700,000-DOLLARS IN PENALTY, THAT'S A GENERAL

15    UNSECURED CLAIM.

16            THE DEBTORS HAVE OBJECTED TO THAT CLAIM CONTENDING

17    THAT AEM ERRONEOUSLY PAID OVER PAYROLL TAXES THAT

18    SHOULD HAVE BEEN ATTRIBUTED TO THREE OTHER MIRABILIS

19    RELATED ENTITIES.  NOW, WHAT WE'RE TALKING ABOUT IS

20    PAYROLL TAX AND WE ARE IN THE MIDDLE OF DISCOVERY.  IN

21    FACT, OUR SECOND ROUND OF DISCOVERY, THE RESPONSES WERE

22    JUST RECEIVED A WEEK AGO.  THAT'S THE STATUS OF THAT

23    PARTICULAR CASE.

24            WE DO NOT BELIEVE SINCE WE'VE ONLY HAD THE LAST OF

25    THE --- WHAT WE HOPE IS THE LAST OF THE DOCUMENTATION WE

27

1    REQUESTED FOR UNDER A WEEK THAT THAT IS READY FOR A FINAL

2    EVIDENTIARY HEARING.  WE FILED A MOTION TO TREAT THIS AS A

3    SCHEDULING CONFERENCE AND THAT WAS NOT OPPOSED.

4         IN THE MIRABILIS ---

5         THE COURT:  OH, THERE WAS AN OPPOSITION.  IT MAY HAVE

6    BEEN JUST RECENTLY FILED, BUT THERE WAS AN OPPOSITION FILED

7    IN AEM IS MY RECOLLECTION.

8         MS. IDE:  IT WAS NOT AS OF TUESDAY MORNING, YOUR

9    HONOR.

10        MR. SHUKER:  THAT WAS JUST IN MIRABILIS.

11        THE COURT:  JUST IN MIRABILIS.  OKAY.  SO THERE IS NO

12   OPPOSITION.

13        MS. IDE:  IN THE MIRABILIS CASE, THE IRS FILED A PROOF OF

14   CLAIM FOR INCOME TAX LIABILITIES FOR THE YEAR 2005, AND

15   THAT'S A PRIORITY CLAIM OF 395,000 AND THERE'S A LITTLE BIT OF

16   PENALTY AND THAT IS BASED ON THE TAX RETURN AS FILED.

17        THAT CLAIM WAS OBJECTED TO ON THE GROUNDS THAT

18   MIRABILIS' FORM 1120 FOR THE FOLLOWING YEAR, 2006, SHOWS AN

19   18-MILLION DOLLAR NET OPERATING LOSS THAT CAN BE CARRIED

20   BACK TO REDUCE --- NOT ONLY REDUCE THAT 395,000-DOLLARS

21   LIABILITY, BUT TO GENERATE AN OVERPAYMENT OF ABOUT ONE

22   MILLION DOLLARS.

23        WE HAVE REVIEWED.  WE'RE IN THE MIDDLE OF AUDITING

24   THE 2006 INCOME TAX RETURN.  AND YOUR HONOR, THESE ARE

25   CONSOLIDATED RETURNS.  MIRABILIS IS THE PARENT IN ABOUT

1    HALF OF ITS SUBSIDIARIES ARE AFFILIATES ON BOTH OF THESE

2    1120'S.  THE ONLY ITEM OF REAL INTEREST IS WHETHER THE

3    DEBTOR CAN SUBSTANTIATE THE PAYMENT OF WAGES AND

4    SALARIES AND COMPENSATION OF OFFICERS ON THE 2006, FORM

5    1120, AND THAT'S ABOUT 17 AND ONE-HALF MILLION DOLLARS.

6         IF THAT CAN BE SUBSTANTIATED, THEN THE 18-MILLION

7    DOLLAR NET OPERATING LOSS CAN BE CARRIED BACK TO 2005,

8    WHIP THINGS OUT, WE HAVE A MILLION DOLLAR REFUND.  THERE

9    WILL BE LEFT OVER NET OPERATING LOSSES TO CARRY FORWARD

10   TO 2007, 2008, POTENTIALLY 2009.

11        WE RECEIVED A RESPONSE TO OUR SECOND ROUND OF

12   DISCOVERY ON --- IN MID-FEBRUARY.  WE HAVE CONTINUED TO

13   EXCHANGE E-MAIL TO TRY TO FLESH OUT --- AND INFORMAL

14   DISCOVERY IN THE CONTEXT OF THE AUDIT --- TO TRY AND FLESH

15   OUT WHAT EXACTLY THE SUBSTANTIATION IS.

16        THE INTERNAL REVENUE SERVICE IS PREPARED TO ALLOW

17   ABOUT A FIVE AND A HALF MILLION DOLLAR DEDUCTION FOR

18   WAGES PAID, THAT'S AN ESTIMATION BASED ON AVERAGING

19   WAGES AND I'M KIND OF GIVING THE DEBTOR THE BENEFIT OF THE

20   DOUBT ON WHAT WE SEE AS AN UTTER LACK OF SUBSTANTIATION,

21   WITH THE UNDERSTANDING THAT THE DEBTOR DID PAY WAGES TO

22   SOMEBODY, IT JUST HASN'T ALL BEEN TIED TOGETHER.

23        THAT ALLOWED DEDUCTION WOULD STILL RESOLVE IN AN

24   18-MILLION DOLLAR NET OPERATING LOSS OR IT WOULD STILL

25   RESULT IN A NET OPERATING LOSS, NOT OF 18-MILLION.

29

1        THE COURT:  NOT OF 18-MILLION.

2        MS. IDE:  THAT WOULD GET CARRIED BACK.  IT WOULD STILL

3    GENERATE THE MILLION DOLLAR OVERPAYMENT, BUT THERE

4    PROBABLY WOULDN'T BE ANYTHING LEFT TO CARRY FORWARD TO

5    OTHER YEARS.

6        THE COURT:  OKAY.

7        MS. IDE:  WHETHER WE HAVE A TWO DAY TRIAL ON

8    SUBSTANTIATION OF A TAX DEDUCTION OR WHETHER THE

9    DEBTORS AGREE TO A FIVE AND HALF MILLION DOLLAR

10   DEDUCTION, WE GET TO THE SAME BASIS PLACE.

11       BUT AGAIN, WE'RE NOT IN A POSITION BECAUSE THERE'S NO

12   DOCUMENTATION --- THIS IS REALLY THE BASIS OF OUR MOTION TO

13   TREAT THIS AS A SCHEDULING CONFERENCE --- WE HAVE TO HAVE

14   TESTIMONY FROM MR. CUTHILL AND THE CPA, MR. BOCOX, TO TRY

15   TO TIE THE PAPER DISCOVERY THEY HAVE GIVEN US TO WHAT WE

16   WOULD EXPECT OF SUBSTANTIATION.  FOR EXAMPLE, WE DON'T

17   HAVE PAYROLL RECORDS.  THEY HAVEN'T PRODUCED PAYROLL

18   RECORDS FOR EACH SUBSIDIARY.

19       BUT IF THEY CAN TIE THAT TOGETHER THROUGH ORAL

20   TESTIMONY, WE MAY BE ABLE TO ALLOW THE DEDUCTION IN THE

21   FULL AMOUNT.  SO THAT'S WHERE WE ARE.  WE HAVEN'T HAD

22   OPPORTUNITIES TO TAKE THE DEPOSITIONS.  REQUEST FOR

23   MEETINGS INVOLVING COUNSEL HAVE BEEN REBUFFED.

24       THERE'S ALSO AN ISSUE, MIRABILIS ALSO FILED SOME 941 ---

25   SOME EMPLOYMENT TAX RETURNS.  THERE'S AN ISSUE WITH THAT.

1    THERE'S AN INFORMAL OBJECTION, BUT WE HAVE --- THE IRS DID

2    FILE A REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSES

3    AND THAT'S A LITTLE OVER 200,000.00.  THE DEBTOR CONTENDS

4    THAT THERE IS AN OVERPAYMENT OUT THERE SOMEWHERE WITH

5    RESPECT TO MIRABILIS THAT WILL WHIP OUT THAT LIABILITY AND

6    THAT'S SIMPLY INCORRECT.

7            AT SOME POINT, THAT REQUEST FOR PAYMENT WILL HAVE

8    TO BE SCHEDULED AND THAT ISSUE WILL HAVE TO BE BROUGHT TO

9    A HEAD.

10            THE COURT:  BUT THAT'S NOT AT THIS POINT INCLUDED IN

11   EITHER THE CLAIM OR THE OBJECTION?

12            MS. IDE:  THAT'S CORRECT, YOUR HONOR.

13            THE COURT:  OKAY.  THANK YOU.

14            MS. IDE:  AND I THINK THAT WITH THE EXCEPTION OF THE

15   SETTLEMENT WITH THE U.S. ATTORNEY'S OFFICE, THAT'S WHERE

16   WE ARE.

17            THE COURT:  OKAY.  AND A SETTLEMENT WITH THE U.S.

18   ATTORNEY'S OFFICE.

19            SO YOU ARE NOT REPRESENTING THE OPPOSITION TO THE

20   DISBURSEMENTS?

21            MS. IDE:  WE ARE OPPOSING THE DISBURSEMENTS, YOUR

22   HONOR.

23            THE COURT:  AND GIVE ME THE SHORT SUMMARY VERSION

24   OF WHY.

25            MS. IDE:  THE REASON FOR THAT IS NOT SPECIFICALLY ON

31

1    THE AMOUNT OF FEES BILLED.  THERE ARE SEVERAL --- AS WE

2    DEALT WITH IN THE CONFIRMATION ORDER, MONTHLY, MR.

3    CUTHILL ADVISES US OF DISBURSEMENTS HE WOULD LIKE TO

4    MAKE TO HIMSELF AND TO THE NUMEROUS PROFESSIONALS

5    EMPLOYED.

6         SOME OF THOSE REQUESTS FOR DISBURSEMENT THAT WE

7    HAVE NOT OBJECTED TO.  OTHERS WE HAVE OBJECTED TO

8    BECAUSE NOT SO MUCH WE HAVEN'T GONE THROUGH AND

9    LOOKED AT THE ITEMIZED FEES TO SEE WHETHER THERE'S

10   EXCESSIVE BILLING OR DOUBLE BILLING OR, YOU KNOW,

11   EXCESSIVE MAILINGS OR THINGS LIKE THAT, WHICH THERE VERY

12   WELL MAY BE.

13        BUT OUR POINT IS THAT NO MONEY OTHER THAN ABOUT

14   24,000-DOLLARS HAS BEEN BROUGHT INTO THE ESTATE SINCE MAY

15   OF 2008, ASIDE FROM ABOUT A HALF OF MILLION DOLLARS THAT

16   THE UNITED STATES PROVIDED AS WE CALL IT, SEED MONEY, TO

17   GET THIS CASE ROLLING.

18        AND WE DON'T BELIEVE THAT ANY FURTHER DISTRIBUTION

19   SHOULD BE MADE TO PROFESSIONALS UNTIL NUMBER ONE, THE IRS

20   ADMINISTRATIVE CLAIM IS PAID.  AND TWO, WE SEE SOME MONEY

21   THAT IS GOING TO STAY IN THE ESTATE AND BENEFIT THE

22   CREDITORS.  THE UNITED STATES HAS TAX CLAIMS AND WE

23   UNDERSTAND THEY ARE IN DISPUTE.

24        BUT WE ALSO HAVE A TWO HUNDRED MILLION DOLLAR

25   UNSECURED CLAIM BASED ON THE TAX EVASION THAT THESE TWO

32

1    DEBTORS, MIRABILIS AND AEM, WERE INSTRUMENTAL IN

2    PERPETUATING, AND WE FEEL VERY STRONGLY THAT THE 200,000-

3    DOLLARS IS AN IMPORTANT --- THE 200-MILLION DOLLARS IS AN

4    IMPORTANT CLAIM, AND WE SHOULD SEE HOPE OF SOME

5    RECOVERY FROM THIS ESTATE BEFORE WE MAKE CONTINUING

6    DISTRIBUTIONS TO THESE PROFESSIONALS.

7            THE COURT: OKAY. AND JUST AGAIN, ON SORT OF A

8    SUMMARY BASIS SO I CAN UNDERSTAND THE ARGUMENT, WHAT

9    REVIEW WERE YOU GIVEN IN THE CONFIRMATION ORDER? I DON'T

10    RECALL ANY OF THE DETAILS OR THE NUANCES.

11            MS. IDE: MS. CUTHILL IS TO PROVIDE US WITH AN

12    ANNOUNCEMENT OF WHAT THE MONTHLY BILL IS. AND HE HAS

13    BEEN VERY PROMPT WITH PROVIDING US WITH INVOICES AS WELL,

14    SO WE HAVE A SENSE OF WHAT IS GOING ON. WE ALSO HAVE

15    MONTHLY LITIGATION REPORTS INDICATING WHAT EFFORTS ARE

16    HAPPENING, WHAT IS GOING ON IN THE CASE TO TRY AND BRING

17    ASSETS INTO THE CASE.

18            AND THERE ISN'T A LOT OF PROGRESS REPORTED IN THE SIX

19    MONTHS SINCE CONFIRMATION AND THE YEAR SINCE THE

20    SETTLEMENT WITH THE UNITED STATES PROVIDING THE SEED

21    MONEY, AS WE CALL IT, WAS APPROVED BY THIS COURT.

22            THE COURT: ANSWER MY QUESTION. WHAT WERE YOU

23    GIVEN? WHAT IS YOUR REVIEW?

24            MS. IDE: WE JUST HAVE ---

25            THE COURT: WHAT IS THE INFORMATION?

33

1        MS. IDE: JUST THE INFORMATION. WE HAVE A NOTICE. WE

2   INTEND TO DISTRIBUTE 46,000-DOLLARS TO MR. CUTHILL. WE

3   INTENDED TO DISTRIBUTE 54,000-DOLLARS TO THIS LAW FIRM.

4        THE COURT: OKAY. THANK YOU.

5        MS. IDE: THANK YOU, YOUR HONOR.

6        THE COURT: AND NOW, MR. SHUKER, GIVE ME YOUR SIDE OF

7   WHERE IN YOUR WORLD YOU WOULD LIKE TO SEE US GO?

8        MR. SHUKER: YOUR HONOR, WE CAN POSTPONE OR SET FOR

9   EVIDENTIARY THE AEM, IT'S A LITTLE MORE COMPLEX. I THINK

10  FROM WHAT MS. IDE JUST SAID, WE JUST WON THE CLAIM

11  OBJECTION. WHAT SHE TOLD YOU IS THAT THEY ADMIT TO FIVE.

12  NOW, I HAVE A LETTER FROM HER SAYING THEY ADMIT TO 11, BUT

13  SHE JUST SAID HERE IN OPEN COURT, THEY ADMIT TO FIVE AND

14  THAT WOULD ELIMINATE THE CLAIM IN '05. THAT'S ALL WE'RE

15  HERE FOR, OBJECTION TO CLAIM NUMBER 2 IN THE AMOUNT OF

16  WHATEVER AND SHE SAID THAT THE AMOUNT THEY AGREED TO

17  WHIPS THAT OUT. SO THE CLAIM OBJECTION SHOULD BE

18  SUSTAINED. THAT SEEMS SIMPLE.

19       THE COURT: AND THEN ANY REFUND OR FURTHER CARRIED

20  FORWARD WOULD BE RESERVED FOR ANOTHER DAY. IS THAT

21  CORRECT?

22       MR. SHUKER: RIGHT. AND IT'S PROBABLY GOING TO BE AN

23  ADVERSARY BECAUSE THEY'VE TOLD US THEY'RE NOT GOING TO

24  PAY US, SO WE'RE GOING TO HAVE TO BRING A TURNOVER

25  ADVERSARY OR WHATEVER FORM IS NECESSARY, BUT WE AT

34

1    LEAST, GET THE CLAIM OBJECTION OUT OF THE WAY WITH, SO

2    THAT CAN'T BE HELD OVER OUR HEAD.

3        THE COURT:  DO YOU HAVE ANY REASON TO OPPOSE THAT

4    REQUEST?

5        MS. IDE:  YOUR HONOR, IT'S A MATTER --- IT WOULD BE A

6    COMPROMISE BECAUSE WE WOULD BE WITHDRAWING OUR 395,000-

7    DOLLAR CLAIM, BECAUSE OF THE DOLLAR AMOUNT, THAT CAN BE

8    DONE WITHIN MY OFFICE.  WE CAN PROCESS IT IN TWO TO FOUR

9    WEEKS.  I BELIEVE WE HAVE THE IRS ON BOARD.

10        BUT BECAUSE IT IS ESTIMATION OF A DEDUCTION, AND NOT

11    ACTUAL PROOF, WE DO HAVE TO RUN IT THROUGH CHANNELS AS A

12    PARTIAL CONCESSION.  BUT YES.  THE SHORT ANSWER IS YES, WE

13    CAN DO IT AS A PARTIAL CONCESSION.

14        MR. SHUKER:  YOUR HONOR, WE'RE READY TO PUT ON OUR

15    CASE.  WE'VE BEEN GETTING THE RUN AROUND FOR SO LONG.  MS.

16    IDE WAS HERE BACK IN DECEMBER AND SAID, OH, IT WOULD ONLY

17    TAKE 30 DAYS TO REVIEW.  NOW, WE'RE BEING TOLD THE '06 WILL

18    TAKE EIGHT MORE MONTHS TO REVIEW.  WE ASKED FOR SPEEDY

19    RESPONSES IN SEPTEMBER WHEN WE FILED THE FIRST AMENDED

20    RETURN.  AND YOU KNOW, REVENUE AGENTS TELL US THAT

21    THEY'RE DONE, BUT THEY CAN'T TALK TO US ANYMORE.

22        WE'RE READY TO PUT ON OUR CASE AND THIS IS TEED UP AS

23    AN EVIDENTIARY HEARING.

24        MS. IDE:  YOUR HONOR, IF I MAY?

25        THE COURT:  YES.

35

1      MS. IDE:  WHAT WAS SAID AT THE CONFIRMATION HEARING

2    IN OCTOBER, AND WHAT HAS BEEN SAID AT EVERY SCHEDULING

3    CONFERENCE WE'VE HAD IN THIS CASE IS:  IF THE UNITED STATES

4    RECEIVES THE SUBSTANTIATION FOR THE DEBTOR'S POSITION, WE

5    CAN EXPEDITE OUR AUDIT.  WE HAVE DONE TWO SUBSTANTIVE

6    ROUNDS OF DISCOVERY AS WELL AS DISCOVERY THROUGHOUT

7    THE COURSE OF THE AUDIT.

8      SO IF WE HAD RECEIVED ALL OF THIS DOCUMENTATION IN

9    OCTOBER, WE WOULD BE DONE IN ALL LIKELIHOOD.  AN AUDIT

10    TYPICALLY TAKES EIGHT MONTHS AND WE HAVE DONE IT IN HALF

11    THAT TIME, YOUR HONOR.

12      THE COURT:  THANK YOU.

13      THIS IS WHAT I'M GOING TO DO BECAUSE AS MUCH AS I

14    WANT TO HEAR ALL THE MINUTIA RIGHT NOW, I DON'T REALLY

15    THINK IT'S NECESSARY TODAY.  WHEN WE GET TO THE ACTUAL

16    REFUND AMOUNT AND THE CARRY FORWARD, ABSOLUTELY, IT

17    WILL BE NECESSARY.  BUT AT THIS JUNCTURE, BASED UPON THE

18    STATUS OF THE CASE, I'M GOING TO SUSTAIN THE OBJECTION

19    WITHOUT PREJUDICE TO THE RESOLUTION OF THE FUTURE ISSUES

20    THAT WILL RELATE TO THE NET OPERATING LOSS, THE

21    DETERMINATION OF THAT, ANY REFUND POTENTIAL OR ANY

22    CARRY FORWARD ALLOWED FOR THIS DEBTOR.

23      SO IF YOU GO TO YOUR UPPER --- YOUR HIGHER UPS AND

24    THERE'S A BIG PROBLEM, THEN YOU CAN MOVE FOR

25    RECONSIDERATION AND I'LL RECOMBINE THE WHOLE BALL OF

36

1  WAX, BUT IT DOESN'T SEEM TO ME A VERY EFFICIENT USE OF TIME

2  TO DO EVIDENTIARY MINUTIA TODAY WHEN EVENTUALLY WE

3  VERY WELL MAY NEED TO GET THERE.  BUT LET'S GET THERE ON

4  WHAT REALLY MAKES SENSE AND IT'S NOT THERE YET.

5      BECAUSE IF YOU'RE GOING TO HAVE TO TEE UP AN

6  ADVERSARY PROCEEDING ANYWAY, THEN YOU HAVE A FORM TO

7  TEE IT UP.  IF YOU FILE A MOTION FOR RECONSIDERATION, IF THIS

8  REALLY GETS SOME ATTENTION, THEN I'LL PUT THE MOTION FOR

9  RECONSIDERATION WITH THE ADVERSARY PROCEEDING.

10     MS. IDE:  YOUR HONOR, JUST SO THAT EVERYONE IS AWARE,

11  IF WE CANNOT RESOLVE THIS WITH THE IRS AND THE POWERS

12  THAT BE AT THE DEPARTMENT OF JUSTICE, BECAUSE, OF COURSE, A

13  TRIAL ATTORNEY DOESN'T HAVE SETTLEMENT AUTHORITY.

14     THE COURT:  RIGHT.  AND I'M NOT ASKING YOU TO SAY YOU

15  DO.  THAT'S THE WHOLE POINT OF THIS.

16     MS. IDE:  I UNDERSTAND THAT.  I KNOW, YOUR HONOR IS

17  FAMILIAR WITH OUR SETTLEMENT PROCEDURES.

18     THE COURT:  YES.

19     MS. IDE:  WE, IN ALL LIKELIHOOD, WILL FILE A MOTION FOR

20  RECONSIDERATION WITHIN TEN DAYS IF WE HAVE NOT BEEN ABLE

21  TO RESOLVE IT, BUT WE ARE HAPPY TO --- YOU KNOW, HAPPY TO

22  CERTAINLY TRY.

23     THE COURT:  I WILL SUSTAIN THE OBJECTION.

24     MR. SHUKER:  THANK YOU, YOUR HONOR.  WE'LL PREPARE A

25  FORMAL ORDER.

37

1    AND YOU ASKED ME TWO QUESTIONS.  ON THE BEST DAY,

2  YOU SAID, WHAT WOULD BE MY DRETHERS AND I ANSWERED ONE-

3  HALF.  THE OTHER PART ON THE DISBURSEMENTS, WE'RE READY TO

4  MOVE FORWARD ON THEIR OBJECTION.  MS. IDE CAN PUT ON HER

5  FACT WITNESS THAT SUPPORTS HER OBJECTION.  WE'RE READY TO

6  PUT ON MR. CUTHILL.

7    THE COURT:  YES.  WE NEED TO GO AHEAD AND GET THOSE

8  ISSUES RESOLVED, SO WE WILL TURN TO THE DISBURSEMENTS AND

9  THEN THE MOTION TO CONFIRM.

10    MR. SHUKER:  DO YOU HAVE A PREFERENCE ON THE ORDER?

11  I DON'T THINK THERE ARE ANY FACT WITNESSES ON THE

12  DISBURSEMENTS --- ON THE MOTION TO CONFIRM PROPERTY OF

13  THE ESTATE.  MR. KOBERT IS HANDLING THAT.

14    THE COURT:  I'M NOT GOING TO RULE UNTIL I HEAR

15  EVERYTHING, SO I'D JUST AS SOON HEAR THE EVIDENCE FIRST.

16    MR. SHUKER:  OKAY.  IT'S MS. IDE'S OBJECTION TO OUR

17  DISBURSEMENTS, SHE CAN CALL HER FIRST WITNESS.

18    MS. IDE:  YOUR HONOR, THIS ISN'T A MATTER THAT REQUIRES

19  AN EVIDENTIARY HEARING.  IT'S A MATTER OF JUDICIAL NOTICE.

20  THESE CONSOLIDATED BANKRUPTCY CASES HAVE AS, YOUR

21  HONOR, CAN SEE FROM ANY LITIGATION REPORTS FILED BY MR.

22  CUTHILL, THE LIQUIDATING AGENT AS OF MARCH 31ST, 2010 HAS

23  COLLECTED $24,000.00.  THE OTHER HALF A MILLION DOLLARS WAS

24  FUNDS PROVIDED BY THE UNITED STATES IN CONNECTION WITH

25  THE SETTLEMENT THAT THIS COURT APPROVED BACK IN MAY OF

38

1   LAST YEAR.

2        NO FUNDS OTHER THAN 24,000-DOLLARS HAS BEEN BROUGHT

3   IN TO THE ESTATE AND WE HAVE HAD DISTRIBUTIONS TO

4   PROFESSIONALS OF JUST UNDER --- HOLD ON ONE SECOND, YOUR

5   HONOR --- ACCORDING TO MR. CUTHILL'S REPORTS, I WANT TO GET

6   THE MOST RECENT ONE, WHICH IS AS OF 3-31.

7        THE  TOTAL DISBURSEMENTS, WHICH INCLUDE

8   PROFESSIONAL FEES OF $544,620.35, TOTAL $592,820.94.  SO

9   SOMETHING NORTH OF 90-PERCENT OF THE FEES FRONTED BY THE

10  UNITED STATES, WHEN YOU ADD IT TO THE 24,000 COLLECTED IN

11  THE YEAR AND A HALF THIS CASE BEEN PENDING, HAS GONE TO

12  PROFESSIONALS AND THERE'S NOTHING BEING DISTRIBUTED TO

13  THE LARGEST CREDITORS IN THE CASE.

14       UNDER THESE CIRCUMSTANCES, YOUR HONOR, AS A MATTER

15  OF LAW, WE THINK THAT THIS COURT SHOULD EXERCISE ITS

16  DISCRETION AND DELAY FULL DISBURSEMENT OF THE FUNDS WE

17  HAVE OBJECTED TO IN OUR RECENT OBJECTIONS UNTIL SUCH TIME

18  AS THERE IS MONEY IN THE ESTATE FOR THE OTHER CREDITORS.

19       WE WOULD BE HAPPY TO HAVE, FOR EXAMPLE, THE IRS

20  ADMINISTRATIVE CLAIM PAID, AND THEN DISTRIBUTIONS TO

21  PROFESSIONALS OR HALF OF THE FUNDS PUT INTO RESERVE, HALF

22  THE FUNDS PAID TO THE PROFESSIONALS.  WE UNDERSTAND THESE

23  PEOPLE ARE WORKING, YOUR HONOR, BUT WE'RE NOT SEEING ANY

24  BENEFIT TO THE CREDITORS.

25       THANK YOU, YOUR HONOR.

39

1          THE COURT: THANK YOU. MR. SHUKER.

2          MR. SHUKER: YOUR HONOR, THE ADMINISTRATIVE CLAIM.

3    I'M GOING TO GO BACKWARDS FIRST IS A FICTION. THERE IS --- YOU

4    CAN CHECK THE DOCKET, THERE IS NO APPLICATION FOR

5    ADMINISTRATIVE CLAIM. MS. IDE DID NOT GIVE YOU ONE. WHAT

6    THEY DID WAS FILE A PROOF OF CLAIM ONE MONTH AGO AND

7    LABELED IT ADMINISTRATIVE, AND I'LL SHOW YOU THROUGH MR.

8    CUTHILL HOW DISINGENUOUS THIS SHOWS THE IRS THAT THEIR

9    CLAIM, THE OLD OKEE DOKE, JUST FURIOUSLY TRYING TO

10   WITHHOLD MONEY FROM US, WHILE AT THE SAME TIME

11   COMPLAINING THAT WE'RE SPENDING TOO MUCH MONEY, IT IS A

12   COMPLETE TURNS IT ON OUR HEADS.

13          WHILE WE'RE TRYING TO GET MONEY FOR THEM. I'M HAPPY

14   TO PUT MR. CUTHILL ON TO TALK ABOUT WHERE THE VARIOUS

15   LAWSUITS ARE. I THINK THAT WOULD TAKE ABOUT FIFTEEN

16   MINUTES, SO YOU'LL HAVE AN EVIDENTIARY BASIS AND THEN HOW

17   THIS ADMINISTRATIVE CLAIM IS SO EGREGIOUS IN TERMS OF WHAT

18   ~~THE IRS HAS DONE IN ATTEMPTING TO WITHHOLD MONEY FROM US.~~

19          THE REALITY YOU'LL FIND, YOUR HONOR, IS THAT THE

20   UNREBUTTED DOCUMENTS SHOW THAT IN NOVEMBER, THE IRS

21   SENT US A LETTER SAYING HEY, YOU HAVE $400,000 SITTING HERE

22   FOR OVERPAYMENT FOR TAX. OKAY.

23          AND YOU'LL RECALL THAT THERE WAS DISPUTE OVER HOW

24   MR. CUTHILL SHOULD BE TREATED, W-2 OR INDEPENDENT

25   CONSULTANT AND SO WE AGREED TO GO BACK AND TREAT HIM AS

40

1   W-2, AND SO HE PUT IN ALL THE 941'S AND SAID, WELL, THANKS

2   FOR TELLING ME ABOUT THE 400,000, APPLY IT, AND THAT LEAVES

3   243 LEFT, PLEASE GIVE IT TO US.  THE IRS THEN SAID, I DON'T KNOW

4   WHAT YOU'RE TALKING ABOUT.

5        WELL, FIRST MS. IDE SAID, NO, THAT 400, WE DECIDED TO

6   APPLY TO INCOME TAX, WHICH THERE'S NO DOCUMENTS ON, AND

7   THEN SHE SAID, I DON'T KNOW WHAT YOU'RE TALKING ABOUT

8   THIS 243 AND I'LL SHOW YOU THE EVIDENCE.

9        NOW, FINALLY, TO ADD INSULT TO INJURY, ONE MONTH AGO

10   IN THE SLIGHT OF HAND --- THE BEST SLIGHT OF HAND, THEY FILED

11   THIS PROOF OF CLAIM, NOT AN APPLICATION FOR ADMINISTRATIVE

12   CLAIM, AFTER THE ADMINISTRATIVE CLAIM BAR DATE, BASED ON

13   THE UNPAID WITHHOLDING TAXES WHEN MR. CUTHILL SAID HE

14   WOULD BE A W-2.

15        IT DEFIES CREDIBILITY.  SO I THINK YOU NEED TO SEE THAT

16   EVIDENTIARY PRESENTATION TO UNDERSTAND WHAT WE'RE

17   DEALING WITH, SO THEN WHEN WE SAY TO YOU:  WE ARE DOING

18   OUR BEST, WE HAVE PROFESSIONALS WORKING FOR FREE.  WE

19   HAVE EXPERTS THREATENING TO QUIT.  THEY'RE SAYING YOU

20   HAVEN'T GOTTEN TO ANYTHING.  WELL, WE CAN'T PAY

21   MEDIATORS.  WE CAN'T PAY EXPERTS BECAUSE EACH TIME WE DO

22   A REQUEST FOR DISBURSEMENTS, OBJECTION.

23        SO IF I CAN TAKE --- WITH THE COURT'S INDULGENCE, 15 OR

24   20 MINUTES WITH MR. CUTHILL.

25        THE COURT:  YES.  GO AHEAD.

1    MR. SHUKER:  GO AHEAD.  WE'LL CALL MR. CUTHILL TO THE

2    STAND.

3        THE COURT:  IF YOU WOULD COME FORWARD, SIR, AND BE

4    SWORN.

5                ROBERT W. CUTHILL,

6    HAVING BEEN DULY SWORN, WAS EXAMINED, AND TESTIFIED AS

7    FOLLOWS:

8        THE CLERK:  PLEASE STATE YOUR FULL NAME AND ADDRESS

9    FOR THE RECORD.

10       THE WITNESS:  ROBERT WILLIAM CUTHILL, JR., 341 NORTH

11   MAITLAND AVENUE, SUITE 210, MAITLAND, FLORIDA 32751.

12       THE CLERK:  THANK YOU.  YOU MAY BE SEATED.

13       MR. SHUKER:  MAY I INQUIRE, YOUR HONOR?

14       THE COURT:  YES.

15       MR. SHUKER:  AND IF I CAN APPROACH, I HAVE ONE EXHIBIT

16   AS A COMPOSITE.  THIS IS FOR YOU AND THIS IS FOR THE JUDGE.

17       UNIDENTIFIED SPEAKER:  THANK YOU.

18       MR. SHUKER:  MAY I APPROACH THE WITNESS, YOUR HONOR?

19       THE COURT:  YES, PLEASE.

20       MR. SHUKER:  THANK YOU.

21                DIRECT EXAMINATION

22   BY MR. SHUKER:

23   Q    MR. CUTHILL, WHAT IS YOUR ROLE WITH MIRABILIS?

24   A    I'M THE PRESIDENT AND SOLE DIRECTOR OF MIRABILIS, THE

25   LIQUIDATING DEBTOR.

42

1    Q    OKAY. AND HOW LONG HAVE YOU BEEN INVOLVED WITH

2    THE MIRABILIS CASE?

3    A    I WAS APPOINTED PRESIDENT OF MIRABILIS ON MAY 27, 2008

4    AND HAVE BEEN IN THAT POSITION SINCE THEN.

5    Q    AND WHAT ARE YOU TRYING TO DO AS PRESIDENT OF

6    MIRABILIS?

7    A    I HAD THREE PRIMARY ROLES IN MIRABILIS. ONE WAS TO

8    IDENTIFY WHAT HAPPENED IN MIRABILIS AND IF THERE WERE

9    RECOVERABLE ASSETS, SO TO IDENTIFY THE ASSETS OF THE COMPANY.

10    THE SECOND ROLE WAS TO RECOVER THOSE ASSETS, AND

11    THIRDLY, IS THE DISTRIBUTE THE ASSETS. IN DOING THOSE THREE

12    THINGS, I WOULD --- WE WENT THROUGH A CHAPTER 11 BANKRUPTCY.

13    THERE WERE CLAIMS FILED AND CLAIM OBJECTIONS IN THAT PROCESS,

14    BUT THOSE THREE AREAS ARE THE THREE PRIMARY AREAS.

15    I AM IN THE SECOND PHASE RIGHT NOW AND I HAVE NOT

16    APPROACHED THE THIRD PHASE. IT WOULD BE NORMAL IN A CASE LIKE

17    THIS.

18    Q    OKAY. AND IN TERMS OF THE PHASE OF RECOVERY OF

19    ASSETS, THERE ARE A NUMBER OF ADVERSARIES PENDING; CORRECT?

20    A    THERE ARE ABOUT 17 CURRENT CASES PENDING AND ---

21    EITHER IN THIS COURT, DISTRICT COURT AND A COUPLE IN STATE COURTS

22    AND I'M GETTING READY TO FILE TWO MORE WITHIN THE NEXT TWO

23    WEEKS OR SO.

24    Q    THE TWO MORE WITHIN THE NEXT TWO WEEKS, HOW MUCH

25    ARE THEY SEEKING AND FROM WHOM?

43

1       A       THERE'S A CASE AGAINST A SPECIALTY UNDERWRITERS

2   INSURANCE COMPANY AND UNIVERSAL INTERNATIONAL REINSURANCE

3   COMPANY.  THEY WERE TWO OF THE WORKMEN'S COMP INSURERS FOR

4   AEM AND THE DAMAGES BEING REQUESTED.  THIS IS A RETURN OF

5   PREMIUM CASE AND A RETURN OF COLLATERAL BEING HELD BY THE

6   REINSURER.  WE'RE ASKING FOR APPROXIMATELY 8-MILLION DOLLARS

7   PLUS COSTS AND INTEREST.

8       Q       AND ---

9       A       THE SECOND CASE WILL BE AGAINST THE PETER COLLINS,

10  ROBERT MARARA AND HANS CHRISTIAN BEYER.  AND THE AMOUNT OF

11  DAMAGES IN THAT CASE ARE UNSPECIFIED.

12      Q       OKAY.  AND IN GENERAL, THESE LAWSUITS, YOU HAVE SOME

13  PROFESSIONAL MALPRACTICE LAWSUITS; CORRECT?

14      A       THERE ARE FOUR PROFESSIONAL MALPRACTICE LAWSUITS

15  THAT ARE SEEKING DAMAGES OF 200-MILLION DOLLARS EACH.  THE

16  INSURANCE COVERAGES IN THE --- THE MALPRACTICE INSURANCE

17  COVERAGE IN THE FOUR CASES IS APPROXIMATELY 25-MILLION DOLLARS.

18      Q       OKAY.  AND IN GENERAL, YOU'VE DONE THIS BEFORE.

19  YOU'VE HANDLED LITIGATION FOR PONZI SCHEMES AND OTHER TYPE

20  CASES BEFORE; CORRECT?

21      A       THAT'S WHAT I SPECIALIZE IN.

22      Q       IN GENERAL, IS THIS LITIGATION THE KIND OF SIMPLE RED

23  CAR, BLUE CAR, WHO HIM WHOM, OR IS THIS COMPLEX, IN THIS CASE,

24  FEDERAL COURT LITIGATION?

25      A       I DON'T CONSIDER THIS COMPLEX LITIGATION COMPARED TO

1  SAY MY EVERGREEN CASE, I HAD 157 SEPARATE PIECES OF LITIGATION IN

2  FOUR DIFFERENT COUNTRIES.  THIS IS SIMPLE LITIGATION FROM MY

3  STANDPOINT.

4       NOW, THE POINTS WE'RE LITIGATING ARE SOMEWHAT COMPLEX

5  AND THE DOLLAR AMOUNTS ARE LARGE, BUT FROM MY VIEWPOINT, THE

6  TYPE OF LITIGATION IS SIMPLE.  OF COURSE, I'M NOT A LAWYER AND I

7  MIGHT BE OVERSIMPLIFYING.  I'M NOT A LAWYER.

8       Q     ARE THE DEFENDANTS PUTTING UP PRETTY SIGNIFICANT

9  BATTLES AGAINST YOU?

10      A     YES, THEY ARE.  THE DEFENDANTS PARTICULARLY IN THE

11  MALPRACTICE CASES, BUT ALSO, SOME OF THE CASE CASES, VERY

12  COMPETENT LAWYERS, TWO OF THEM ARE SITTING ON THE BACK ROW,

13  AND THEY'RE DOING A GOOD JOB.

14      Q     AND SEVERAL APPEALS HAVE BEEN FILED, INCLUDING JUDGE

15  JENNEMANN'S ORDER DENYING THE MOTION TO DISMISS?

16      A     JUDGE JENNEMANN'S BEEN APPEALED MULTIPLE TIMES.  SHE

17  WAS JUST SUSTAINED I GUESS --- OPINION WAS SUSTAINED YESTERDAY, I

18  BELIEVE.

19      Q     AFFIRMED.

20      A     BY THE DISTRICT COURT.

21      Q     AFFIRMED.  IT'S CALLED AFFIRMED.

22      A     AFFIRMED.  ALL RIGHT.  I SAID I WASN'T A LAWYER.

23      Q     AND LET'S TALK A LITTLE BIT ABOUT THE U.S. ATTORNEY

24  AND THE IRS.  HAS MR. GOLD --- DO YOU KNOW WHO MR. GOLD IS?

25      A     YES.

45

1    Q      WHO IS HE?

2    A      MR. GOLD IS THE PROSECUTOR IN THE AMADEO CASE AND HE

3  IS ALSO THE PROSECUTOR IN SIX CORPORATIONS WHICH WERE INDICTED,

4  WHICH INCLUDE MIRABILIS, HOTH, AEM AND THREE OF AMADEO'S

5  CORPORATION, OF WHICH HE DISMISSED --- OR FILED A MOTION TO

6  DISMISS THOSE INDICTMENTS.

7    Q      AND THE UNITED STATES IS THE LARGEST CREDITOR IN THIS

8  CASE; CORRECT?

9    A      THEY'RE IN EXCESS OF 97-PERCENT OF ALL THE UNSECURED

10  CREDITORS.

11    Q      NOW, HAS MR. GOLD BEEN HELPFUL IN PROSECUTING THIS

12  LITIGATION?

13    A      ABSOLUTELY NOT.

14    Q      IN FACT, WAS THERE A MEDIATION RECENTLY ON ONE OF

15  THE PROFESSIONAL MALPRACTICE CASES WHERE HE ATTENDED?

16    A      YES.

17    Q      I DON'T WANT TO KNOW DETAILS, BUT DID HE CALCUS WITH

18  OUR SIDE TO STRATEGIZE HOW TO GET MORE MONEY OR DID HE CALCUS

19  WITH THE OTHER SIDE?

20    A      ACTUALLY, HE SAT WITH THE ATTORNEYS FOR MR. AMADEO.

21    Q      OKAY.  AND DID THE DEFENDANTS SETTLE AT THAT

22  MEDIATION?

23    A      THEY DID NOT.

24    Q      AFTER THAT, THE MEDIATION, DID THE DEFENDANTS PURSUE

25  A DISMISSAL AS TO AMADEO ON *IMPERIO DELICTO*?

46

1      A      THEY DID.

2      Q      AND AS TO AMADEO, WAS THAT GRANTED?

3      A      IT WAS IN THE --- I DON'T THINK IT'S *IMPERIO DELICTO* IN THE

4   STATE COURT MATTER, BUT IT'S THE SAME LEGAL ARGUMENT AND

5   JUDGE SMITH RULED AGAINST AMADEO, THE PLAINTIFF, IN ALL OF HIS

6   COUNTS BECAUSE OF HIS UNCLEAN HANDS AS THE PLAINTIFF.

7      Q      OKAY.  AND AGAIN, YOUR VIEW OF MR. GOLD'S ROLE IN

8   THAT?

9      A      MR. GOLD HAD APPROVED THE PLAINTIFF --- AMADEO'S

10   PLAINTIFF'S LAWYER AND THEIR COMPENSATION ARRANGEMENT AND

11   THE SPLIT OF ANY PROFITS FROM THAT LITIGATION WOULD HAVE BEEN

12   SPLIT 45-PERCENT TO THE PLAINTIFF'S ATTORNEY ON A CONTINGENCY

13   FEE BASIS, WHICH WOULD INCLUDE COSTS, AND 55-PERCENT WOULD GO

14   TO THE U.S. GOVERNMENT, ZERO GOING TO THE PLAINTIFF, MR. AMADEO.

15      Q      BUT THE ESTATE WAS ALSO PURSUING THAT?

16      A      ACTUALLY, THE INITIAL LITIGATION --- THE PRE-LITIGATION

17   WAS COMBINED, MIRABILIS AND AMADEO VERSUS VARIOUS

18   PROFESSIONAL FIRMS. I MET WITH MISTER --- THE ATTORNEY

19   REPRESENTING BOTH MIRABILIS AND MR. AMADEO AND TOLD THE

20   ATTORNEY HE HAD A CONFLICT OF INTEREST AND HE NEEDED TO PICK

21   BETWEEN MIRABILIS AND AMADEO.  HE CHOSE AMADEO.

22          I HIRED SEPARATE COUNSEL AND FILED A SEPARATE

23   COMPETING LAWSUIT.  SO IN ESSENCE, THE GOVERNMENT WAS

24   COMPETING AGAINST THE BANKRUPTCY ESTATE'S LITIGATION IN THE

25   MALPRACTICE --- FOUR MALPRACTICE CLAIMS, TWO OF THE FOUR.

47

1       Q       ON THE ONE THAT YOU WERE AT THE MEDIATION ON, WOULD

2   THE U.S. HAVE RECEIVED MORE IF AMADEO GOT THE MONEY OR IF THE

3   BANKRUPTCY ESTATE?

4       A       MIRABILIS.

5               MS. IDE:  OBJECTION, YOUR HONOR, THIS IS HYPOTHETICAL.

6               THE COURT:  SUSTAINED.

7               MS. IDE:  AND IT'S GOING INTO THE REALM OF SETTLEMENT.

8               THE COURT:  SUSTAINED.

9               MS. IDE:  THANK YOU, YOUR HONOR.

10  BY MR. SHUKER:

11      Q       OKAY.  YOU'RE SUING FIFTH THIRD RIGHT NOW; CORRECT?

12      A       THAT'S CORRECT.

13      Q       AND YOU'RE AWARE THAT THERE HAVE BEEN ATTEMPTS TO

14  BE SETTLEMENT DISCUSSIONS?

15      A       I'M AWARE OF THAT.

16      Q       OKAY.  ARE YOU AWARE THAT FIFTH THIRD SAID THAT THEY

17  WERE INFORMED BY MR. GOLD THAT THEY'RE ALL ONE IN THE SAME

18  ENTITY AND THEREFORE, THEY SHOULDN'T SETTLE?

19      A       YES.

20      Q       AND AFTER THAT TIME, DID FIFTH THIRD CEASE SETTLEMENT

21  DISCUSSIONS WITH US?

22      A       THEY ESSENTIALLY WENT SILENT FOR A WHILE.

23      Q       SO IS IN YOUR VIEW THAT THE GOVERNMENT THOUGH BEING

24  THE LARGEST BENEFICIARY, HAS BEEN THE MAJOR HINDRANCE IN

25  PROSECUTING THESE LAWSUITS?

48

1      A      I WOULD CALL THE DEFENSE ATTORNEYS FOR THE

2   DEFENDANTS THE MAJOR HINDRANCE, BUT THE GOVERNMENT

3   CERTAINLY HAS NOT HELPED ME.  AND IN MANY CASES, HAS

4   OBSTRUCTED WHAT I'M TRYING TO DO IN SOME OF THE LITIGATION

5   CASES.

6      Q      ALL RIGHT.  LET'S TURN TO THIS 400,000.

7             MR. SHUKER:  AND YOUR HONOR, I THINK I'VE GIVEN YOU

8   BECAUSE MS. IDE SAID THE OTHER REASON IS THEY HAVE AN

9   ADMINISTRATIVE CLAIM.

10             MS. IDE:  YOUR HONOR.

11             THE COURT:  YES.

12             MS. IDE:  AS TO THE MERITS OF THE REQUEST FOR PAYMENTS

13   OF THE ADMINISTRATIVE EXPENSES, THAT IS NOT BEFORE THE

14   COURT TODAY.  IF MISTER --- SO I WOULD OBJECT TO THIS LEADING

15   TO ANY RULING ON THE MERITS OF THAT REQUEST FOR PAYMENTS

16   OF ADMINISTRATIVE EXPENSES.

17             WE HAVE --- WE DO NOT HAVE THE INSOLVENCY OFFICIAL

18   WHO PREPARED THAT CLAIM.  WE DON'T HAVE COPIES OF THE TAX

19   RETURNS.  WE DON'T HAVE COPIES OF THE TRANSCRIPTS

20   DETAILING TRANSFERS OF PAYMENTS AND THE DICTATION BY THE

21   DEBTORS WHERE MONEY SHOULD GO.

22             SO FOR THE LIMITED PURPOSE OF THIS SHOWING WHETHER

23   THE ADMINISTRATIVE PROFESSIONALS HAVE ACTUALLY DONE

24   ANYTHING TO BENEFIT THE ESTATE, I HAVE OBJECTION TO

25   TESTIMONY ALONG THIS LINE, BUT IF IT IS AS TO THE VALIDITY OF

49

1    THE REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSES, WE

2    STRENUOUSLY OBJECT, IT'S NOT BEEN NOTICED FOR HEARING.

3         THE COURT: IS IT PART OF YOUR ARGUMENT?  ARE YOU STILL

4    RELYING ON IT AS A BASIS TO OBJECT TO THE DISBURSEMENTS?

5         MS. IDE:  WE'RE RELAYING ON THE EXISTENCE OF THE CLAIM,

6    YES.  AS YET ANOTHER OUTSTANDING ADMINISTRATIVE EXPENSE

7    THAT IS SUPPOSED TO HAVE BEEN SATISFIED WITH CONFIRMATION

8    THAT HAS NOT BEEN.

9         THE COURT:  AND THIS IS THE CLAIM THAT WAS FILED ON

10   MARCH THE 17TH?

11        MS. IDE:  YES, YOUR HONOR.

12        THE COURT:  OF THIS YEAR?  AND WHEN WAS

13   CONFIRMATION?  DECEMBER?

14        MR. SHUKER:  OCTOBER.

15        THE COURT:  OCTOBER.

16        MS. IDE:  THE ORDER CONFIRMING WAS AT THE END OF

17   OCTOBER, YES, YOUR HONOR.

18        THE COURT:  OKAY.  AND THE PERIOD IN WHICH YOU'VE

19   LISTED THE FICA AND FUTA TAXES IS FROM SEPTEMBER '08 UNTIL

20   DECEMBER 31ST OF '09, SO EVERY QUARTER DURING THOSE TAX

21   YEARS?

22        MR. SHUKER:  YES.  MR. CUTHILL'S EMPLOYMENT.

23        MS. IDE:  YES, THE THIRD QUARTER OF 2008 THROUGH THE

24   LAST QUARTER OF 2009, AND OF COURSE, IT CONTINUES.

25        THE COURT:  VERY GOOD.

50

1     MR. SHUKER:  YOUR HONOR, IF I COULD.  WE AGREE THAT IT

2  MAY NOT NECESSARILY BE BINDING FOR AN OBJECTION, BUT IT

3  ALSO GOES TO THE FRUSTRATION AND HOW MUCH HARDER THIS

4  HAS BEEN MADE.  IF I CAN GO THROUGH THIS, THIS IS TEN MINUTES

5  THAT I THINK IS REALLY IMPORTANT.

6     THE COURT:  I UNDERSTAND YOUR ARGUMENT.  I DON'T

7  NEED THE DETAILS, HOWEVER, I THINK THE PLEADING PRETTY

8  MUCH SPEAKS FOR ITSELF.

9     MR. SHUKER:  OKAY.  IF I CAN THEN FOCUS ON THE 400,000

10 THEN THEY CLAIMED DISAPPEARED.  THAT GOES TO ---

11    THE COURT:  I REALLY DON'T NEED IT.

12    MR. SHUKER:  OKAY.

13    THE COURT:  I DON'T NEED IT.

14    MR. SHUKER:  ALL RIGHT.

15    THE COURT:  THAT'S NOT GOING TO BE THE BASIS FOR MY

16 OBJECTION --- FOR MY RULING AND I JUST ---

17    MR. SHUKER:  I UNDERSTAND, YOUR HONOR.

18    THE COURT:  I DON'T NEED THE TESTIMONY.  I DON'T WANT

19 TO GET INTO THAT ISSUE.  I DON'T WANT TO CREATE AN

20 EVIDENTIARY ISSUE THAT I DON'T THINK WE EVERY NEED TO GET

21 TO ON THIS ISSUE.

22    MR. SHUKER:  I AGREE.  AND WITH THAT, I WILL REST.

23    THE COURT:  THANK YOU.  MR. KOBERT.

24    MR. KOBERT:  THANK YOU, JUDGE.  VERY BRIEFLY.  MY FEES

25 ARE ALSO AT ISSUE.

51

1                              CROSS EXAMINATION

2    BY MR. KOLBERT:

3        Q        MR. CUTHILL, MY FIRM, BROAD AND CASSELL, WE WERE

4    HIRED POST CONFIRMATION IN OCTOBER 2009.

5        A        THAT'S CORRECT.

6        Q        OKAY.  AND MY FIRM WAS BROUGHT IN TO HANDLE

7    PRIMARILY DISTRICT COURT ACTIONS OR STATE COURT ACTIONS NOT

8    BEFORE THIS COURT?

9        A        YES.

10       Q        OKAY.

11       A        THEY HANDLED THE MALPRACTICE CASES OR BE CO-

12   COUNSEL OF THE MALPRACTICE CASE AND FUTURE CASES, POST-

13   CONFIRMATION CASES THAT WERE BEING FILED.

14       Q        AND WE APPROXIMATELY HAVE ABOUT TEN PIECES OF

15   DISTRICT COURT LITIGATION PENDING PRIMARILY BEFORE JUDGE

16   PRESNELL OR JUDGE ANTON?

17       A        THAT'S CORRECT.

18       Q        SINCE OCTOBER 2009, HOW MUCH IN COSTS HAVE YOU PAID

19   MY LAW FIRM?

20       A        I  BELIEVE IT'S A SINGLE DIGIT, ZERO.

21       Q        AND HOW MUCH IN FEES HAVE YOU PAID MY LAW FIRM

22   SINCE WE'VE GOTTEN RETAINED IN OCTOBER OF 2009?

23       A        THE SAME AMOUNT, NOTHING.

24       Q        HAVE YOU PAID MR. WOODMAN, OUR MALPRACTICE CO-

25   COUNSEL, PAID HIM ANY FEES OR COSTS?

52

1    A    I HAVE NOT PAID HIM ANY FEES OR COSTS.  HE'S FRONTING

2  ALL THE COSTS HIMSELF.

3    Q    DO YOU UNDERSTAND, SIR --- HAVE YOU BEEN TRYING TO

4  EXPEDITE THE DISTRICT COURT LITIGATION THAT THE GOVERNMENT IS

5  CONCERNED ABOUT?

6    A    YES.

7    Q    AND IS IT TRUE THAT SOME OF THE DISTRICT COURT

8  LITIGATION ACTUALLY STARTED AS ADVERSARIES IN BANKRUPTCY

9  COURT, BUT THE DEFENDANTS, SOME OF THEM SITTING IN THE BACK OF

10  THE ROOM, SUCCESSFULLY REMOVED THOSE TO DISTRICT COURT?

11    A    ALL FOUR OF THE MALPRACTICE CASES STARTED AS

12  ADVERSARIES AND WERE ALL REMOVED TO DISTRICT COURT.

13    Q    AND YOU REALIZE THAT WE'RE COMING UP TO TRIAL IN

14  SOME OF THOSE DISTRICT COURT MATTERS; IS THAT CORRECT?

15    A    THAT'S CORRECT.  THERE'S A --- WE HAVE A SCHEDULE THAT

16  WE'RE FOLLOWING AND SOME OF THE TRIALS WILL BE, YOU KNOW, IN

17  THE LATTER PART OF THIS YEAR OR THE EARLY PART OF NEXT YEAR.

18    Q    RIGHT.  BUT IN DISTRICT COURT YOU HAVE EARLIER

19  DEADLINES.  IT'S NOT A GUESSING GAME, BUT I'LL TELL YOU IN THE

20  BUCHANAN INGERSOLL DISTRICT COURT LITIGATION, YOU HAVE A JUNE 1

21  DEADLINE FIVE WEEKS FROM NOW TO DISCLOSE YOUR EXPERTS.

22    A    THAT'S CORRECT.

23    Q    HAVE YOU RETAINED AN EXPERT?

24    A    IN THE BUCHANAN INGERSOLL LITIGATION.

25    Q    YES.

53

1        A        I HAVE.

2        Q        OKAY.  HAVE YOU PAID THAT EXPERT ANY SORT OF

3   REQUIRED RETAINER THEY SEEK?

4        A        I HAVE NOT PAID THAT EXPERT BECAUSE I DON'T HAVE THE

5   FUNDS TO PAY HIM.

6        Q        OKAY.  AND HAVE YOU RETAINED ANY OTHER EXPERTS FOR

7   DEADLINES COMING UP LATER THIS SUMMER AND DO YOU HAVE THE

8   MONEY TO PAY THOSE EXPERTS?

9        A        I HAVE RETAINED SEVERAL EXPERTS, INCLUDING EXPERTS IN

10  THE SUA LITIGATION THAT I'M GETTING READY TO FILE, A FORENSIC

11  EXPERT THAT WAS IN THE CASE PRE-CONFIRMATION, MR. YOEKUM.  MR.

12  YOEKUM HAS BEEN PAID 80-PERCENT OF HIS PRE-CONFIRMATION FUNDS,

13  BUT HE CONTINUES TO WORK AND NOT BE PAID AS DO ALL OF THE OTHER

14  PROFESSIONALS AS WELL AS MYSELF.

15       Q        RIGHT.  BUT SOME OF THE NEW EXPERTS YOU WANT TO HIRE,

16  THEY REQUIRE A PRE-RETAINER PRIOR TO COMMENCING WORK?

17       A        ACTUALLY, PROFESSOR RICHARDSON TOLD ME THIS PAST

18  WEEK THAT HE WOULD NOT ISSUE HIS REPORT WITHOUT PAYMENT.

19       Q        OKAY.  NOW, YOU ALSO HIRED AN ACCOUNTING FIRM TO DO

20  TAX RETURNS REQUIRED BY THE GOVERNMENT?

21       A        I HAVE TWO ACCOUNTING FIRMS THAT PREPARE TAX

22  RETURNS, BALDWIN AND COMPANY, WHO IS NOT BEING PAID, BUT

23  CONTINUES TO DO WORK.  AND CONTINUES TO DO THE ACCOUNTING

24  THAT REQUIRES BY THE LIQUIDATION PLAN TO REPORT TO THE

25  GOVERNMENT ON A MONTHLY BASIS.

54

1    Q    OKAY.

2    A    AS WELL AS KPMG, WHO PREPARED THE INCOME TAX

3  RETURN AND THE AMENDED PAYROLL TAX RETURN IN THE AEM MATTER

4  AND HAVE REPRESENTED ME IN THE IRS AUDIT OF THOSE TAX RETURNS.

5    Q    SO THE ---

6    A    THEY ARE ALSO NOT BEING PAID.

7    Q    I'M SORRY.  SO THE PROFESSIONALS THAT ARE REQUIRED TO

8  DO WORK THAT MS. IDE REQUESTED ARE NOT BEING PAID?

9    A    THAT'S CORRECT.

10    Q    OKAY.  NOW, YOU'VE GONE TO MEDIATION IN SOME OF YOUR

11  CASES, HAVE YOU PAID MR. COHEN, THE MEDIATOR?

12    A    I HAVE NOT.

13    Q    OKAY.  YOU'RE SCHEDULED TO GO TO MEDIATION

14  ACTUALLY IN THE MOORE DISTRICT COURT MALPRACTICE CASE ON MAY

15  13TH, DO YOU HAVE THE MONEY TO PAY MR. COHEN AS THE MEDIATOR?

16    A    I DO NOT.

17    Q    OKAY.  IN THE PLAXSOR DISTRICT COURT LITIGATION, DO

18  YOU THINK THE GOVERNMENT HAS TAKEN ANY EFFORTS OR STEPS TO

19  UNDER MIND YOUR PROSECUTION OF THAT CASE?

20    A    WELL, PLAXSOR FILED A MOTION TO ELIMINATE ONE OF THE

21  PLAINTIFFS, WHICH IS NEXIA, NEXIA STRATEGY.  THE GOVERNMENT ALSO

22  FILED A MOTION TO NOT ALLOW ME TO CHANGE COUNSEL TO BROAD

23  AND CASSELL, YOUR FIRM, IN THAT SAME CASE.  IN OTHER WORDS, THEY

24  WOULD LEAVE BOTH NEXIA STRATEGY AS WELL AS MIRABILIS WITHOUT

25  COUNSEL IN THAT CASE.

55

1        I BELIEVE THE GOVERNMENT'S POSITION AS WELL AS THE

2   DEFENDANT'S POSITION IN THAT CASE IS THEY WOULD LIKE THE CASE TO

3   DISAPPEAR.

4        Q    SO IN TERMS OF PROSECUTING THAT CASE, THE

5   GOVERNMENT HAS OBJECTED TO MY RETENTION OF THE CASE AND

6   PROSECUTION OF THE CASE?

7        A    THAT'S CORRECT.

8             MR. KOBERT:  THANK YOU.

9             THE COURT:  AND MS. IDE.

10            MS. IDE:  THANK YOU, YOUR HONOR.

11            THE COURT:  YOU'RE WELCOME.

12                     CROSS EXAMINATION

13   BY MS. IDE:

14        Q    MR. CUTHILL, IN YOUR LAST LITIGATION REPORT THAT WAS

15   AS OF THE END OF MARCH 2010, YOU INDICATED THE STATUS OF NUMBER

16   OF LAWSUITS, WHETHER THEY WERE IN THE DISTRICT COURT OR THE

17   STATE COURT OR BEFORE THIS COURT.

18            ARE YOU FAMILIAR WITH THAT REPORT?

19        A    I AM.

20        Q    AND I DON'T BELIEVE THAT --- FOR ANY OF THOSE --- FOR

21   ONE CASE, THE ONE WE HEARD ABOUT EARLIER TODAY, MIRABILIS

22   VERSUS RUPIREEN, ASIDE FROM THAT, I DON'T BELIEVE THERE HAVE

23   BEEN ANY JUDGMENTS ENTERED IN FAVOR OF THE ESTATE.  IS THAT

24   CORRECT?

25        A    THERE HAVE BEEN NO JUDGMENTS ENTERED, BUT IT WAS

1    ANNOUNCED IN OPEN COURT THAT ONE OF THOSE SETTLED THIS WEEK.

2    THE PREMIER.

3        Q        AND YOU'VE COLLECTED HOW MUCH FROM THOSE

4    LAWSUITS, THOSE 17 OR SO LAWSUITS?

5        A        WELL, THOSE ARE ONLY THE OPEN LAWSUITS.  SO THE ONES

6    I'VE COLLECTED ON AREN'T ON THAT LIST.

7        Q        AND HOW MUCH HAVE YOU COLLECTED?

8        A        I'VE COLLECTED 75,000-DOLLARS TO DATE FROM

9    SETTLEMENTS OF LAWSUITS.

10        Q        AND WHEN YOU STARTED THIS VENTURE, HOW MUCH

11    MONEY DID YOU START OUT WITH, DID THE ESTATE START OUT WITH?

12        A        LESS THAN 300-DOLLARS.

13        Q        AND IT WENT UP TO A LITTLE OVER 5000,000 AS A RESULT OF

14    WHAT?

15        A        IT ACTUALLY WENT UP TO --- THE AMOUNT OF RECOVERY TO

16    DATE IS ABOUT 1.3-MILLION DOLLARS.  THE GOVERNMENT, YOURSELF,

17    HAS STATED THAT MOST OF THAT MONEY CAME FROM THE

18    GOVERNMENT.  THAT IS AN INCORRECT STATEMENT.  IF YOU'LL GO

19    THROUGH MY MONTHLY OPERATING REPORTS I FILED WITH THIS COURT,

20    YOU WILL SEE THAT MOST OF THE MONEY WAS NOT PROVIDED TO ME BY

21    THE GOVERNMENT AS YOU HAVE PREVIOUSLY STATED AND STATED

22    AGAIN TODAY.  BUT IT WAS RECOVERED THROUGH THE EFFORTS OF THE

23    BANKRUPTCY ESTATE.

24        Q        I APOLOGIZE, MR. CUTHILL.  IN YOUR REPORT, YOU INDICATE

25    THAT YOU HAD CASH RECOVERED OF 589,000-DOLLARS.

57

1    A    YOU'RE LOOKING AT THE POST-CONFIRMATION REPORT.

2    THAT'S A STARTING POINT IN OCTOBER.  OBVIOUS, WHEN I STARTED ---

3    Q    PRIOR TO THAT, THERE WAS AN ADDITIONAL 500,000, IS THAT

4    CORRECT THEN?

5    A    DO YOU WANT ME TO NOW ANSWER YOUR FIRST QUESTION

6    AND ANSWER THAT QUESTION?

7    Q    I JUST WANTED TO CLARIFY, YOU SAID YOU BROUGHT IN

8    OVER ONE MILLION DOLLARS.  SO PRIOR TO CONFIRMATION, THERE WAS

9    ABOUT 500,000-DOLLARS, POST-CONFIRMATION THERE WAS ---

10    THE COURT:  DON'T REPEAT HIS TESTIMONY.  HIS TESTIMONY

11    WAS 1.3 MILLION DOLLARS.

12    WHY DON'T YOU BREAK IT DOWN FOR US, MR. CUTHILL?

13    THE WITNESS:  OKAY.  I'VE RECOVERED A LITTLE OVER 1.3-

14    MILLION DOLLARS TO DATE.  SOME OF THAT WAS DONE PRE-

15    CONFIRMATION AND SOME WAS DONE POST-CONFIRMATION.

16    YOU'RE LOOKING AT THE POST-CONFIRMATION REPORT, WHICH

17    ONLY INCLUDES THE UNSPENT MONEY AS THE BEGINNING

18    BALANCE, POST-CONFIRMATION, AND WOULDN'T BE CUMULATIVE,

19    INCLUDING THE PRE-CONFIRMATION AMOUNT.

20    WITHOUT HAVING MY PRE-CONFIRMATION  MONTHLY

21    OPERATING REPORT IN FRONT OF ME, I CAN'T QUOTE YOU THE

22    NUMBERS, BUT I KNOW WHAT THE TOTAL IS BECAUSE I TRACKED

23    THE TOTAL BASED ON AN ESTIMATE I GAVE MR. GOLD TWO YEARS

24    AGO OF WHAT I THOUGHT I WOULD RECOVER IN THE CASE, AND I

25    STATED THIS IN OPEN COURT BEFORE THAT I STATED RECOVER

58

1       NORTH OF 25-MILLION DOLLARS.

2            I'M STILL FAIRLY HAPPY WITH THAT ESTIMATE.  I THINK IT'S

3       ACTUALLY ON THE LITTLE LOW END NOW.

4   BY MS. IDE:

5       Q      THANK YOU FOR CLARIFYING THAT AND I APOLOGIZE IF I

6   MISINTERPRETED THE TWO REPORTS.

7            YOU ALSO INDICATED THAT MIRABILIS, HOTH AND AEM AND

8   THREE OTHER CORPORATE DEFENDANTS HAVE BEEN INDICTED, BUT

9   THOSE INDICTMENTS HAVE BEEN DISMISSED.  WHICH INDICTMENTS HAVE

10  BEEN DISMISSED?

11      A      THE THREE AMADEO CORPORATIONS, MR. GOLD FILED A

12  MOTION TO --- AND I DON'T KNOW IF DISMISS IS THE CORRECT LEGAL

13  TERM --- WITHDRAW THE INDICTMENTS.

14           THE COURT: IS IT THE REFERENCE?  IS THAT WHAT WE'RE

15  TALKING ABOUT?

16           THE WITNESS: NO, THESE ARE CRIMINAL INDICTMENTS.

17           THE COURT:  CRIMINAL INDICTMENTS.

18           THE WITNESS:  THERE WERE SIX CORPORATIONS CRIMINALLY

19  INDICTED.  THE THREE AMADEO CORPORATIONS, WHICH WERE

20  ACME STRATEGY AND TWO OTHERS, WELLINGTON CAPITAL IS THE

21  SECOND AND I DON'T RECALL THE THIRD.

22           THEY WERE ALL BEING --- THEY HAD A JOINT STATUS

23  CONFERENCE, SO THE STATUS CONFERENCES I ATTENDED IN JUDGE

24  ANTON'S COURT.  THERE WERE ALL SIX OF THE DEFENDANTS.  THE

25  THREE AMADEO DEFENDANTS HAD NO ATTORNEY IN THEIR

59

1    REPRESENTATION, AND FOR A CORPORATION TO BE CRIMINALLY

2    INDICTED THEY CANNOT BE TRIED WITHOUT REPRESENTATION.

3        MR. GOLD FILED A MOTION TO EITHER WITHDRAW THE

4    INDICTMENT OR JUST --- WHATEVER THE LEGAL TERM IS --- TO GET

5    RID OF THE INDICTMENT.  MR. AMADEO ACTUALLY FILED A

6    MOTION OBJECTING TO THAT.

7        THE THREE INDICTMENTS AGAINST MIRABILIS, HOTH AND

8    AEM CONTINUE.

9    BY MS. IDE:

10       Q    AND AS I UNDERSTAND THE STATUS OF THE CRIMINAL CASE

11   IN WHICH MIRABILIS, HOTH AND AEM ARE DEFENDANTS, THERE ARE PLEA

12   DISCUSSIONS ONGOING.  IS THAT CORRECT?

13       A    THAT'S CORRECT.

14       Q    YOU MENTION THAT ASSISTANT UNITED STATES ATTORNEY

15   GOLD PARTICIPATED IN MEDIATION OF A CASE.  WHICH CASE WAS THAT?

16       A    THE BERMAN

17       Q    AND WAS IT JUST THE ONE CASE OR WAS IT FOUR CASES?  I

18   GOT CONFUSED.

19       A    THE BERMAN CASE, MIRABILIS VERSUS BERMAN AND

20   THERE'S A COMPETING CASE, AMADEO VERSUS BERMAN.

21       Q    AND IS THERE A TRIAL DATE FOR THAT?

22       A    THERE IS, BUT I --- IN THE AMADEO CASE OR THE MIRABILIS

23   CASE?

24       Q    IN EITHER ONE, ARE THERE TRIAL DATES?

25       A    IN THE AMADEO CASE, I DON'T THINK THERE'S A TRIAL DATE.

60

1   THE PLAINTIFF HAS BEEN STRIPPED OF ALL COUNTS WITH THE EXCEPTION

2   OF RECOVERY OF FEES.  ALL THE OTHER COUNTS WERE THROWN OUT ON

3   THE BASIS OF THE PLAINTIFF HAVING UNCLEAN HANDS.

4            IN THE MIRABILIS VERSUS BERMAN CASE, THE TRIAL DATE IS

5   IN 2011 AND I DON'T HAVE THE EXACT DATE IN FRONT OF ME.

6        Q       YOU ALSO TESTIFIED THAT THE UNITED STATES --- IN

7   RESPONSE TO MR. KOBERT'S QUESTIONING, THAT THE UNITED STATES

8   HAS OBJECTED TO ACTIONS HIS FIRM HAVE REQUESTED IN A PARTICULAR

9   LAWSUIT.  ARE YOU REFERRING TO THE MIRABILIS AND NEXIA LAWSUIT?

10       A       YES, I WAS.

11       Q       AND ---

12       A       MR. GOLD OBJECTED TO BROAD AND CASSELL, ACTUALLY

13  CHANGE OF COUNSEL MOTION THAT WAS FILED WHERE I WOULD

14  SUBSTITUTE BROAD AND CASSELL AS COUNSEL FOR MY THEN EXISTING

15  COUNSEL, WHICH I BELIEVE WAS BAULCH AND BINGA.

16       Q       AND YOUR INTENTION WAS TO HAVE BROAD AND CASSELL

17  REPRESENT BOTH MIRABILIS AND NEXIA?

18       A       YES.  THE COMPROMISE AGREEMENT HAD GIVEN ME THAT

19  CASE.

20            MS. IDE:  THAT, YOUR HONOR --- TO BREAK BRIEFLY, THAT'S

21            THE SUBJECT OF MR. KOBERT'S MOTION TO CLARIFY.  SO THERE'S A

22            DISPUTE AS TO WHO OWNS NEXIA.

23  BY MS. IDE:

24       Q       MR. CUTHILL, WE HAVE OBJECTED TO JANUARY FEES YOU

25  INTENDED TO DISBURSE TO BROAD AND CASSELL AND TO SHUTTS AND

61

1    BOWEN AND ALSO TO FEES --- FEBRUARY FEES AND EXPENSES PROPOSED

2    FOR DISTRIBUTION TO LATHAM, SHUKER AND ALSO TO MORRIS AND

3    WIDEMAN, P.A.

4         MORRIS AND WIDEMAN IS THE CPA FIRM.  IS THAT CORRECT?

5    A    NO.

6    Q    WHAT'S MORRIS AND WIDEMAN?

7    A    MORRIS AND WIDMAN ---

8    Q    WIDMAN, I APOLOGIZE.

9    A    --- P.A. ARE MY PRIMARY COUNSEL IN THE FOUR

10   MALPRACTICE SUITS.  BROAD AND CASSELL IS THEIR CO-COUNSEL.

11   Q    AND I'M CONFUSED.  I THOUGHT YOU TESTIFIED THAT WE

12   HAD OBJECTED TO DISBURSEMENTS TO THE ACCOUNTANTS AND I DON'T

13   SEE IN ANY OF OUR OBJECTIONS THAT WE HAD --- WAS IT YOUR

14   UNDERSTANDING THAT WE HAD A BROAD OBJECTION TO PAYMENT OF

15   ANY FEES?

16   A    NO.  AND I DON'T BELIEVE I STATED THAT YOU HAD

17   OBJECTED TO THE ACCOUNTANTS.  IF I DID, I MISSPOKE.

18   Q    THANK YOU FOR CLARIFYING THAT.

19        MS. IDE:  NOTHING FURTHER, YOUR HONOR.

20        THE COURT:  THANK YOU.  ANYTHING FURTHER?  THANK

21   YOU, MR. CUTHILL.  YOU CAN SIT DOWN.

22        DOES ANY PARTY HAVE ANY FURTHER EVIDENCE THEY

23   WOULD LIKE TO PRESENT?

24        MR. SHUKER:  NO, YOUR HONOR.

25        MS. IDE:  NO, YOUR HONOR.

62

1      MR. KOBERT:  NO, YOUR HONOR.

2      THE COURT:  I'M GOING TO GO DOWN THE CALENDAR ON

3   EVERYTHING EXCEPT FOR WHAT I'M GOING TO TAKE REMAINING

4   ORAL ARGUMENT ON.

5      WHAT I'M GOING TO TAKE ORAL ARGUMENT ON IS THE

6   OPPOSITION BY THE INTERNAL REVENUE SERVICE TO

7   DISBURSEMENTS AS WELL AS THE INTERNAL REVENUE SERVICE

8   OBJECTION, DOCUMENT NUMBER 520.

9      AND THE OTHER ONE IS STYLED A LITTLE BIT DIFFERENTLY.  I

10  WANT TO MAKE SURE I GET THE PARTIES RIGHT.

11     AND THEN THE THIRD OBJECTION IS STYLED JUST BY THE

12  UNITED STATES AND I UNDERSTAND THE CLOSENESS OR THE

13  NEXUS BETWEEN THE TWO, BUT WE HAVE TWO ARMS OF THE

14  GOVERNMENT, ONE IS OF COURSE, THE U.S. ATTORNEY'S OFFICE

15  AND ONE IS THE INTERNAL REVENUE SERVICE, WHOM MS. IDE

16  REPRESENTS.

17     SO I WILL TAKE ORAL ARGUMENT ON THOSE THREE

18  OBJECTIONS AS WELL AS MR. KOBERT'S TO CONFIRM PROPERTY OF

19  THE ESTATE, DOCUMENT NUMBER 526.

20     BUT I'M GOING TO GIVE US JUST A BREAK HERE.  I'M GOING

21  TO GO DOWN THE CALENDAR AND MAKE SURE WE HAVE

22  EVERYTHING RIGHT.  SORT OF LET EVERYTHING SETTLE IN FOR A

23  MINUTE AND THEN WE'LL CONCLUDE WITH THAT ORAL

24  ARGUMENT.

25     I'M STARTING AT THE BEGINNING OF THE CALENDAR.  ITEMS

63

1    LISTED ON THE CALENDAR ONE THROUGH THREE WILL BE A

2    STATUS CONFERENCE ON JULY 22ND AT 2:00 P.M. AT THAT POINT, I

3    WILL SET A FINAL EVIDENTIARY HEARING FOR A FUTURE MATTER.

4         ITEM NUMBER FOUR WAS SETTLED PURSUANT TO DOCUMENT

5    NUMBER 528.

6         ITEMS NUMBER FIVE THROUGH NINE WILL BE THE SUBJECT

7    OF A SHORT STATUS CONFERENCE ON MAY THE 19TH AT 2:00 TO

8    ASSESS WHETHER A FURTHER EVIDENTIARY HEARING IS NEEDED

9    OR NOT. IF SO, IT WILL BE SET IN THE NEAR FUTURE.

10        ITEMS NUMBER TEN AND 11 WILL BE --- THERE WILL BE A

11   STATUS CONFERENCE ON JULY THE 22ND AT 2:00. AND AGAIN, WE'LL

12   ASSESS THE NEED FOR A FURTHER EVIDENTIARY HEARING AT THAT

13   TIME.

14        IN CONNECTION WITH ITEM NUMBER 12, THE MOTION TO SET

15   ASIDE AN ORDER SUSTAINING THE OBJECTION TO CLAIM NUMBER

16   32 FILED BY GILLIO DEVELOPMENT, INC., THAT MOTION WILL BE

17   GRANTED AND A NON-EVIDENTIARY STATUS CONFERENCE WILL BE

18   HELD ON THE PENDING OBJECTION BY THE DEBTOR TO CLAIM 32 ON

19   JULY THE 22ND AT 2:00.

20        ON THE DEBTOR'S OBJECTION TO CLAIM TWO OF THE

21   INTERNAL REVENUE SERVICE, THAT WILL BE SUSTAINED, WITHOUT

22   PREJUDICE, TO THE DETERMINATION OF THE DEBTOR'S NET

23   OPERATING LOSS FOR 2006 AS WELL AS ANY CLAIMS FOR PAYMENT

24   OR FUTURE COURT CARRY FORWARD OF THAT NET OPERATING

25   LOSS.

64

1        IN CONNECTION WITH ITEM NUMBER 14 BY THE MOTION FOR

2    THE INTERNAL REVENUE SERVICE TO RESCHEDULE THE HEARING

3    ON THE OBJECTION TO CLAIM, THAT WILL BE DENIED AS

4    UNNECESSARY IN LIGHT OF THE RULING ON THE OBJECTION TO

5    CLAIM.

6        IN CONNECTION WITH ADVERSARY PROCEEDING 09-815, I

7    GRANTED THE PLAINTIFF'S REQUEST FOR AN ORDER TO SHOW

8    CAUSE AND THAT WILL BE SUBMITTED.  A FURTHER STATUS

9    CONFERENCE WILL BE JULY THE 22ND AT 2:00.

10       IN CONNECTION WITH ADVERSARY 09-968, I WILL ORDER

11   MEDIATION TO BE CONCLUDED BEFORE THE NEXT PRE-TRIAL

12   CONFERENCE ON JULY THE 22ND AT 2:00 AND THEN WE WILL ASSESS

13   WHETHER A FURTHER EVIDENTIARY HEARING IS NEEDED.

14       IN CONNECTION WITH ADVERSARY PROCEEDING 10-30, THAT

15   CASE, THAT ADVERSARY WILL BE DISMISSED AND AN ORDER WILL

16   BE SUBMITTED PURSUANT TO THE SETTLEMENT REACHED BY THE

17   PARTIES.

18       IN CONNECTION WITH ADVERSARY PROCEEDING 08-148, WE

19   SET THAT OVER FOR FURTHER STATUS CONFERENCE --- OR PRE-

20   TRIAL CONFERENCE ON JULY THE 22ND AT 2:00.

21       IN CONNECTION WITH THE AEM CASE, THE OBJECTION BY

22   THE FLORIDA DEPARTMENT OF REVENUE.  THE CLAIM WAS

23   WITHDRAWN AS WAS THE DEBTOR'S OBJECTION.

24       AS TO THE OBJECTION BY THE DEBTOR TO CLAIM FOUR OF

25   THE INTERNAL REVENUE SERVICE, WE NEED TO SET A FINAL

65

1    EVIDENTIARY HEARING ON THAT.  I WILL GRANT THE U.S.' MOTION

2    TO TREAT THIS AS A NON-EVIDENTIARY STATUS CONFERENCE.  SO

3    WE DO NEED TO FIND THE DATE AND TIME TO DO THAT AND I NEED

4    A LITTLE MORE INFORMATION BEFORE WE CONCLUDE TODAY.

5         BUT I WANTED TO SORT OF JUST GO OVER EVERYTHING, GIVE

6    EVERYBODY JUST A LITTLE BIT OF TIME.  AND THEN SEE WHERE WE

7    GO ON THESE THREE REMAINING OBJECTIONS TO DISBURSEMENTS.

8         MR. KOBERT, I'M GOING TO LET YOU ARGUE FIRST BECAUSE

9    YOURS IS SORT OF AN UNIQUE ---

10        MR. KOBERT:  YES, YOUR HONOR.

11        THE COURT:  --- AND SORT OF TANGENT ISSUE.

12        MR. KOBERT:  THANK YOU, JUDGE.

13        I'VE ALREADY PASSED OUT, IF I MAY APPROACH, YOUR

14   HONOR?

15        THE COURT:  CERTAINLY.

16        MR. KOBERT:  IT SAYS EVIDENTIARY, AND I AGREE WITH THE

17   GOVERNMENT, THIS IS NOT AN EVIDENTIARY HEARING.

18        THE ONLY PURPOSE OF GIVING THIS TO YOU, JUDGE IS JUST

19   BECAUSE THERE IS SO MUCH PAPER AND SO MUCH ELECTRONIC

20   FILING, I'M STILL A PAPER GUY.

21        ALL YOU HAVE HERE IS --- BEFORE YOU AND I SHARED WITH

22   THE GOVERNMENT BEFORE --- IS BASICALLY THE EXHIBIT TO THE

23   COMPROMISE THAT WE'VE TALKED ABOUT BACK IN FEBRUARY

24   THAT WAS ENTERED BACK IN 2008 BETWEEN THE GOVERNMENT

25   AND THE DEBTOR OVER WHAT WOULD GO TO THE FORFEITURE

66

1    VERSUS THE TENSION BETWEEN THAT AND THE PROPERTY OF THE

2    ESTATE.

3         AND EXHIBIT A, JUDGE, JUST FOR REFERENCE PURPOSES, IS

4    THE GOVERNMENT ASSET LIST OF WHAT THEY GET.

5         AND EXHIBIT B, IS A LIST OF WHAT REMAINS AND STAYS AS

6    THE DEBTOR'S ASSETS.  IT'S PRETTY STRAIGHT FORWARD.

7         AND, YOUR HONOR, WE TALKED ABOUT THIS BACK IN

8    FEBRUARY REGARDING THE GOVERNMENT'S INTERPRETATION OF

9    THAT REGARDING A PLEA BEFORE MONEY WOULD BE DISBURSED.

10   YOUR HONOR FOUND THAT IT WAS DOCUMENT WAS CLEAR AND

11   NOT AMBIGUOUS AND THAT WASN'T REQUIRED.

12        WE'RE BACK HERE AGAIN, JUDGE, IN A ROUNDABOUT WAY

13   ON THE SAME EXACT ISSUE AGAIN; AN INTERPRETATION OF

14   SCHEDULE A AND SCHEDULE B, DOCKET ENTRY 101, FROM

15   NOVEMBER 2008.

16        AND, YOUR HONOR, THE ISSUE HERE THIS TIME ON THIS

17   DOCUMENT THAT I WASN'T THERE BACK THEN, BUT I'M STUCK

18   WITH IT, IT'S APPROVED BY THE COURT, AND WE HAVE TO LIVE

19   WITH IT, IS INVOLVING THE PLAXSOR LITIGATION, JUDGE, THAT

20   YOU HEARD ABOUT EARLIER.

21        ONE OF THE CASES THAT WE'RE HANDLING FOR THE ESTATE

22   IS A DISTRICT COURT ACTION PENDING BEFORE JUDGE ANTON

23   DEALING WITH PLAXSOR.

24        THE PLAXSOR DEFENDANTS HAVE RAISING AN ISSUE SAYING:

25   YOU'RE NOT NEXIA, MR. KOBERT, NEITHER IS MIRABILIS.  YOU

67

1    CAN'T DO ANYTHING TO US IN THIS CASE.

2            AND COINCIDENTALLY, THE GOVERNMENT TOOK THE SAME

3    POSITION AND FILED AN OBJECTION TO US SUBSTITUTING IN AS

4    CONTINUED COUNSEL FOR MIRABILIS. AND ATTACHED TO OUR

5    PLEADING, DOCKET 526, WE ATTACHED THE OBJECTION OF THE

6    GOVERNMENT.

7            THE GOVERNMENT DIDN'T FILE A MOTION OR DIDN'T COME

8    IN AND SUBSTITUTE AS NEXIA. THEY JUST CAME IN TO SAY, WE

9    CAN'T BE NEXIA. SO NEXIA IS OUT THERE UNREPRESENTED.

10           AND JUDGE ANTON HAS A SUMMARY JUDGMENT MATTER

11   PENDING BEFORE HIM. AND IF NEXIA DOESN'T HAVE COUNSEL AND

12   IF NEXIA DOESN'T ARGUE IN DEFENSE OF THE PLAXSOR DEFENSE

13   OF SUMMARY JUDGMENT, THE CASE WILL BE LOST.

14           SO THE ASSET THAT MS. IDE TALKS ABOUT THAT SHE WANTS

15   TO SEE RESULTS, IT'S DIFFICULT TO GET RESULTS IF, IN FACT, WE

16   LOSE THAT CAUSE OF ACTION BECAUSE THE GOVERNMENT HAS

17   NOW OBJECTED TO OUR ABILITY TO PROSECUTE THE CASE ON

18   BEHALF OF BOTH MIRABILIS AND NEXIA.

19           THEY DON'T WANT TO REPRESENT NEXIA, BUT THEY SAY WE

20   CAN'T. SO NOBODY WILL. THE CASE WILL GO AWAY. THAT'S PART

21   OF OUR FRUSTRATION YOU HEAR FROM MR. SHUKER AND MYSELF.

22           MS. IDE POSED THE QUESTION. SHE GOES: WELL, WE'LL

23   DEAL WITH IT LATER. WHAT IS THE DISPUTE? WHO OWNS NEXIA?

24   AND I RESPECTFULLY DISAGREE. THERE IS NO DISPUTE. I CONCEDE

25   TO MS. IDE THAT NEXIA IS OWNED BY THE GOVERNMENT. IT'S

68

1    CLEAR.

2         IF YOUR HONOR LOOKS AT EXHIBIT A, IT'S VERY CLEAR ON

3    THERE, THE GOVERNMENT'S LIST, LOOK AT PAGE TWO --- OR PAGE

4    FOUR, EXCUSE ME, ITEM CC OF EXHIBIT A. IT SAYS, THE ASSETS OF

5    THE FOLLOWING CORPORATIONS, INCLUDING BUT NOT LIMITED TO

6    THESE LAWSUITS OR SETTLEMENTS WILL GO TO THE

7    GOVERNMENT. AND THERE IT IS, NEXIA STRATEGY CORPORATION.

8    NO DISPUTE.

9         AND I AGREE WITH MS. IDE THAT IT IS OWNED BY OUR

10   GOVERNMENT. THEY OWN NEXIA.

11        THE QUESTION IS: WHAT ABOUT THIS LAWSUIT? AND IF YOU

12   TURN TO EXHIBIT B, JUDGE, AND YOU LOOK AT THE FIRST PAGE,

13   AND I'VE HIGHLIGHTED IT ON EVERYONE'S COPY, THERE IT IS

14   SPELLED OUT IN CLEAR LETTERS WHAT LAWSUIT WILL REMAIN AS

15   PROPERTY OF THIS ESTATE, AND THAT INCLUDES THE SECOND ONE

16   ON THE LIST. IT'S BEEN PENDING SINCE 2007, LITERALLY TWO

17   YEARS BEFORE THE SETTLEMENT WAS REACHED. IT'S STYLED

18   MIRABILIS VENTURES, INC. AND NEXIA STRATEGY CORP. VERSUS

19   PLAXSOR GROUP, CASE NUMBER AND REFERENCES THE 2007

20   LITIGATION.

21        AND JUDGE, IF THE GOVERNMENT BELIEVES THAT THEY

22   COULD PROSECUTE NEXIA VERSUS PLAXSOR AND WE'RE SUPPOSED

23   TO DO MIRABILIS VERSUS PLAXSOR, THEY COULD HAVE LISTED

24   NEXIA VERSUS PLAXSOR IN THEIR SCHEDULE A. BUT INSTEAD, IT'S

25   HELD OUT HERE AS SOMETHING WE GET TO PROSECUTE ON BEHALF

69

1   OF MIRABILIS AND ON BEHALF OF NEXIA BECAUSE PRIOR TO THE

2   BANKRUPTCY, MIRABILIS OWNED 100-PERCENT OF THE STOCK OF

3   NEXIA. BUT AS PART OF OUR SETTLEMENT, WE GOT THAT CAUSE

4   OF ACTION TO PROSECUTE THAT.

5       AND THAT'S WHAT WE'VE BEEN DOING FOR TWO YEARS.

6   AND NOW, TWO YEARS LATER, THE GOVERNMENT STEPS UP FOR

7   THE FIRST TIME AND SAYS: BUT YOU'RE NOT NEXIA. IT'S JUST

8   VERY INTERESTING AND FRUSTRATING.

9       JUDGE ANTON IS WAITING BECAUSE NOW THAT THE

10   GOVERNMENT HAS OBJECTED TO OUR SUBSTITUTION AND NOW

11   THAT THE PLAXSOR DEFENDANTS WHO HAVE BEEN SPEAKING

12   WITH THE GOVERNMENT HAVE RAISED THE ISSUE THAT WE'RE NOT

13   NEXIA, JUDGE ANTON WANTS TO KNOW, ARE WE ABLE TO

14   PROSECUTE THIS IN THE NAME OF NEXIA OR NOT. IF WE CAN'T,

15   THAT LITIGATION IS MOST LIKELY LOSS BECAUSE MIRABILIS DOES

16   NOT HAVE THE BETTER CAUSE OF ACTION, NEXIA CLEARLY DOES.

17       WE WON'T RECOVER ANYTHING FOR THE GOVERNMENT, LET

18   ALONE THE OTHER CREDITORS IN THE CASE, BUT THAT DOESN'T

19   SEEM TO BE THE DRIVING ISSUE FOR MY GOVERNMENT.

20       YOUR HONOR, I THINK IT'S CLEAR UNDER TWO THINGS; ONE,

21   RULE OF INTERPRETATION. WE CITED I THINK HORNBOOK LAW

22   THAT WHEN YOU'RE INTERPRETING AN AGREEMENT, THAT THE

23   SPECIFIC OVERRULES THE GENERAL.

24       THE GENERAL IS NEXIA IS YOURS, GOVERNMENT.

25       THE SPECIFIC IS, BUT, THIS LAWSUIT, MIRABILIS AND NEXIA

70

1    VERSUS PLAXSOR IS OURS.

2          AND WHAT IS UNIQUE ABOUT THIS.  REMEMBER, FROM LAW

3    SCHOOL, WE USED TO LEARN LATIN BACK THEN, IT'S A CHOSEN

4    ACTION.  AND IF YOU LOOK AT THE BLACK'S LAW DICTIONARY OF

5    CHOSEN ACTION.  IT IS SOMETHING INDEPENDENT.  IT'S A THING.

6    IT'S A THING.  IT'S A PIECE OF PROPERTY.  IT'S A RIGHT TO PURSUE

7    CERTAIN LITIGATION AND THIS CHOSE OF ACTION IS SPELLED OUT

8    IN SCHEDULE B.

9          IT'S THE SAME REASON WHY, JUDGE, IF YOU LOOK AT

10   EXHIBIT A, NOT ONLY DOES THE GOVERNMENT GET CERTAIN

11   COMPANIES, BUT ABOVE THAT, IT GETS CHOSE AS AN ACTION.  AND

12   THERE'S ONE, TWO, THREE, FOUR, FIVE CHOSE AS AN ACTION

13   LISTED THERE FOR THE GOVERNMENT IN ADDITION TO

14   CORPORATIONS.

15         THE SAME WAY IT IS FOR US, JUDGE, THAT WE GET CERTAIN

16   CHOICES OF ACTION LISTED ON EXHIBIT B.  THERE'S 27 OF THEM,

17   JUDGE, LISTED AND WE ALSO GET CERTAIN CORPORATIONS.  THE

18   EXACT OPPOSITE OF WHAT THE GOVERNMENT GETS.

19         SO YOU GOT THE GENERAL.  YOU'VE GOT THE SPECIFIC AND

20   YOU HAVE A SPECIFIC SET SPELLING OUT CHOOSES IN ACTION.

21         TO MAKE IT EVEN MORE CLEAR, JUDGE, IN PARAGRAPH 27 OF

22   DOCKET ENTRY 101, IT SAYS THE FOLLOWING AND I QUOTE:  ANY

23   AND ALL PROPERTY OF THE DEBTOR'S ESTATE NOT SPECIFICALLY

24   SET FORTH HEREIN SHALL REMAIN PROPERTY OF THE

25   BANKRUPTCY ESTATES.  LIKEWISE, ANY AND ALL PROPERTY SET

71

1    FORTH ON EXHIBIT A, THE GOVERNMENT'S EXHIBIT, AND NOT

2    SPECIFICALLY SET FORTH ABOVE, SHALL BE FORFEITED TO THE

3    U.S.A.

4         THAT'S A CATCH ALL PHRASE, JUDGE.  IT IS MIRABILIS', BUT

5    TO THE EXTENT IT'S ON SCHEDULE A, MIRABILIS HAS LOST IT.

6    EVERYTHING ELSE REMAINS ON SCHEDULE B, AND THE ATTEMPT

7    WAS TO SET FORTH EVERYTHING THAT WOULD STAY WITH

8    MIRABILIS AS THE CATCH ALL.

9         WE  DON'T HAVE TO GO TO THE CATCH ALL, JUDGE, BECAUSE

10   EXHIBIT B IS CLEAR THAT, IN FACT, THOSE CHOSEN ACTION,

11   MIRABILIS AND NEXIA VERSUS PLAXSOR, WOULD COME OVER TO

12   MIRABILIS AND HAS BEEN PROSECUTED FOR THE PASS TWO YEARS.

13        UNFORTUNATELY, NOW, WE'RE BEING UNDERMINED WITH

14   SUMMARY JUDGMENT WITH JUDGE ANTON, AND DEPENDING ON

15   YOUR HONOR'S RULING, WILL DETERMINE, IN FACT, WHETHER

16   THAT CAUSE OF ACTION WILL BE LOST.

17        THANK YOU, JUDGE.

18        THE COURT:  THANK YOU.  MR. SHUKER, DO YOU CARE TO

19   ARGUE AT ALL ON THE --- WELL, LET ME DO IT THIS WAY.  MS. IDE IF

20   YOU WOULD RESPOND TO MR. KOBERT'S MOTION AND THEN RAISE

21   ANY ADDITIONAL OBJECTIONS TO DISBURSEMENTS.  I'LL GIVE YOU

22   THE LAST OPPORTUNITY, MR. SHUKER.

23        MS. IDE:  ACTUALLY, YOUR HONOR, IT'S ASSISTANT UNITED

24   STATES ATTORNEY PARKS ISSUE.

25        THE COURT:  OKAY.  SORRY.

72

1          MR. PARK: THANK YOU, YOUR HONOR.

2          THE COURT: NO PROBLEM, MR. PARKS.

3          MR. PARK: LET ME GIVE YOU A LITTLE BIT OF BACKGROUND

4    BECAUSE I HAVEN'T APPEARED IN FRONT OF YOU BEFORE.  MR.

5    GOLD HAS BEEN DOING IT.

6          THE PLAXSOR CASE WAS STAYED FOR QUITE SOME TIME

7    BECAUSE OF THE CRIMINAL CASE.  AND MY UNDERSTANDING IS, IT

8    WAS RECENTLY REACTIVATED BY JUDGE ANTON.  THERE WAS

9    DISCOVERY TAKEN BECAUSE OF PLAXSOR'S MOTION FOR

10   SUMMARY JUDGMENT FILED TWO YEARS AGO.

11         SO ABOUT THREE MONTH'S AGO, I WAS CONTACTED BY MY

12   CIVIL CHIEF AND TOLD, WE HAVE A COMPANY THAT WE NOW OWN,

13   THAT'S IN LITIGATION.  THAT'S THE FIRST TIME IN 20 YEARS AS AN

14   ASA, I'VE BEEN TOLD THAT I NOW REPRESENT A PRIVATE

15   COMPANY, BUT I DO BECAUSE IT'S OWN BY THE UNITED STATES.

16         SO MR. GOLD GAVE ME THE MOTION FOR SUMMARY

17   JUDGMENT AND SAID: YOU NEED TO MAKE AN INDEPENDENT

18   ~~LITIGATION DECISION.  DOES THIS CASE HAVE MERIT, BECAUSE WE~~

19   OWN NEXIA.  IF IT DOESN'T, WE WANT TO DISMISS THE CASE.  BUT

20   I'M NOT GOING TO MAKE THAT CALL.  I WANT YOU TO MAKE THE

21   CALL.  THAT'S HOW I GOT INVOLVED.  THAT'S WHY I'M HERE.

22   THAT'S WHY I OBJECTED WHEN BROAD AND CASSELL CAME IN TO

23   THE CASE IN FRONT OF JUDGE ANTON AND SAID: WE'RE NOT

24   ACTING AS NEXIA BECAUSE OF WHAT WAS APPROVED BY THIS

25   COURT A YEAR AGO.

73

1    MR. KOBERT ADMITTED THAT WE OWN NEXIA. I AGREE WITH

2    HIS ARGUMENT. YOU LOOK AT THIS. IT SAYS THE UNITED STATES

3    OWN A CORPORATION. AND YET BROAD AND CASSELL IS TAKING

4    THE POSITION THAT BECAUSE OF THE LANGUAGE IN EXHIBIT B,

5    THEY HAVE THE RIGHT TO REPRESENT THAT CORPORATION IN A

6    LAWSUIT.

7    WELL, THE REASON WE TAKE ISSUE WITH THIS IS BECAUSE

8    JUST FROM ASSET FORFEITURE POLICY, THE GOVERNMENT OWNS

9    THIS COMPANY. AND YET, MR. KOBERT AND HIS LAW FIRM ARE

10   ASKING THIS COURT TO ALLOW THEM TO REPRESENT A CAUSE OF

11   ACTION, WHICH NEXIA OWNS IN FEDERAL COURT BECAUSE OF THE

12   WAY IT'S LISTED ON THE TABLE IN THE ORDER THAT THE COURT

13   SIGNED.

14   I DON'T BELIEVE THAT WHAT WAS APPROVED BY THIS

15   COURT A YEAR AGO IS AMBIGUOUS. OUR POSITION IS THAT THE

16   UNITED STATES OWN NEXIA BECAUSE IT WAS FORFEITED TO US.

17   THAT MEANS THAT WE OWN THE INTEREST IN THE LAWSUIT THAT'S

18   NOW PENDING IN FRONT OF JUDGE ANTON.

19   THE FACT THAT THE CAPTION OF THE CASE WAS LISTED ON

20   EXHIBIT B, DOESN'T MEAN THAT BROAD AND CASSEL ON BEHALF

21   OF MIRABILIS CAN ALSO REPRESENT NEXIA, THAT'S INCONSISTENT

22   WITH WHAT THE COURT APPROVED ON EXHIBIT A, FORFEITING

23   THAT COMPANY AND ALL OF ITS STOCK TO THE UNITED STATES.

24   MY POSITION IS, THE GOVERNMENT LAWYER IS, I'M NOT

25   REPRESENTING NEXIA. AND THE REASON THIS IS TAKING TIME IS

74

1   BECAUSE I'M WORKING THROUGH A MOTION FOR SUMMARY

2   JUDGMENT, THE RESPONSE THAT WAS FILED, ALL THE DEPOSITIONS

3   THAT WERE TAKEN AND I'VE GOT TO MAKE A JUDGMENT CALL ON

4   BEHALF OF THE GOVERNMENT AS TO WHETHER OR NOT THIS

5   SHOULD PROCEED OR NOT.

6       AND ONCE I'VE DONE THAT, I'LL HAVE TO MAKE A DECISION

7   WHETHER WE REPRESENT NEXIA AND CONTINUE GOING FORWARD

8   OR WHETHER WE ASK JUDGE ANTON TO DISMISS THE CASE ON

9   BEHALF OF NEXIA AND THEN UNDERNEATH --- UNDER EXHIBIT B,

10  BROAD AND CASSELL IS FREE TO CONTINUE REPRESENTING

11  MIRABILIS' INTEREST IN THE LAWSUIT AGAINST PLAXSOR.

12  THEY'LL JUST BE DOING SO WITHOUT NEXIA AS A PARTY.

13      BUT CLEARLY, WE'RE NOW ON HOLD AND I AGREE, THE

14  COURT HAS GOT TO RESOLVE THIS ISSUE BASED UPON THE PLAIN

15  LANGUAGE OF WHAT WAS APPROVE A YEAR AGO.

16      THE COURT:  THANK YOU.  THANK YOU.  AND MS. IDE, ON THE

17  OBJECTION TO DISBURSEMENTS.

18      MS. IDE:  YOUR HONOR, THERE'S BEEN A LOT OF DISCUSSION

19  TODAY ABOUT THE UNITED STATES HAMPERING THE LIQUIDATING

20  TRUSTEE'S EFFORTS TO TRY AND RESOLVE VARIOUS PIECES OF

21  LITIGATION, AND TO COLLECT VARIOUS ASSETS.

22      THE AMENDED PLAN THAT THIS COURT APPROVED,

23  SPECIFICALLY TASKED THE UNITED STATES WITH REVIEWING ALL

24  SETTLEMENTS AND WITH REVIEWING ALL REQUESTS FOR

25  DISBURSEMENTS.  THAT IS SOMETHING THAT WE REQUESTED AND

75

1    WE TAKE THAT SERIOUSLY.  SO WHAT WE HAVE DONE IS DO THAT.

2        WE ARE, AS MR. CUTHILL TESTIFIED, IN CONNECTION WITH

3    THE FORFEITURE CLAIM AS WELL AS THE TAX CLAIMS, THE BIG

4    GORILLA IN THIS CASE, 97-PERCENT CREDITOR.

5        THE CASE WHICH NORMALLY BE UNCONFIRMABLE SINCE

6    THE ONLY ASSETS ARE CAUSES OF ACTION WAS ALLOWED TO GO

7    FORWARD IN LARGE PART BECAUSE THERE WERE CAUSES OF

8    ACTION THAT THE UNITED STATES THOUGHT A LIQUIDATING

9    TRUSTEE COULD PURSUE MORE EFFICIENTLY THAN THE UNITED

10   STATES COULD.

11       IT WAS REPRESENTED TO THE UNITED STATES THAT IT

12   WOULD COST MORE THAN ABOUT ONE MILLION DOLLARS TO

13   PURSUE THESE AND RECOVER UP TO 25-MILLION.  THAT SEEMED AT

14   THE TIME TO BE A VERY GOOD RETURN ON OUR INVESTMENT.

15   THAT WAS A LOT OF THE REASONING BEHIND THE SETTLEMENT

16   WHERE THE UNITED STATES DECLINED TO FORFEIT CERTAIN

17   ASSETS AND THAT WAS A LOT OF REASONS WHY WE ULTIMATELY

18   SUPPORTED THE AMENDED PLAN AND THE PLAN THAT WAS

19   ULTIMATELY CONFIRMED.

20       SO WE DO TAKE SERIOUSLY THOUGH, PROPOSED

21   SETTLEMENTS, AND WE HAVE NOT OBJECTED TO SOME OF THOSE,

22   AND THE REQUEST FOR DISBURSEMENT.

23       OUR CONCERN IS DESPITE THE TRUSTEE OVER THE COURSE

24   OF THE ENTIRE CASE HAVING RECOVERED ABOUT $700,000.00, WHEN

25   YOU INCLUDE THE PRE AND POST-CONFIRMATION MONEY, IT'S ALL

76

1    GOING TO FUND PROFESSIONALS AND WE UNDERSTAND THAT THE

2    PROFESSIONALS NEED TO BE PAID TO PURSUE THESE LAWSUITS

3    THAT THE UNITED STATES COULDN'T PURSUE IN FORFEITURE.

4         BUT WE'RE NOT SEEING ANY RETURN TO THE UNITED

5    STATES, EITHER AS THE ADMINISTRATIVE CLAIMANT OR AS A

6    GENERAL CREDITOR.

7         IN LIGHT OF THIS FACT AND THE FACT THAT WE DON'T SEE

8    ANY OTHER MONEY COMING INTO THIS ESTATE ANYTIME SOON, WE

9    WOULD JUST LIKE SOME REASONABLENESS PLACED ON THESE

10   DISBURSEMENTS.  PAY HALF, PAY A PORTION OF THEM, ALLOW

11   PART OF THEM TO PAID BECAUSE WE UNDERSTAND THE LAWSUITS

12   NEED TO MOVE FORWARD, EXPERTS, MEDIATORS, ET CETERA NEED

13   TO BE PAID.

14        BUT THE UNITED STATES, AS AN ADMINISTRATIVE CREDITOR,

15   NEEDS TO BE PAID.  THE UNITED STATES NEEDS TO SEE SOME LIGHT

16   AT THE END OF THE TUNNEL.

17        THE COURT:  THANK YOU.  AND MR. SHUKER.

18        MR. SHUKER:  YOUR HONOR, I THINK YOU SAID IT BEST THE

19   LAST TIME WE WENT THROUGH THIS GROUNDHOG'S DAY TYPE DO

20   IT OVER AGAIN.  THIS IS HOW THESE TYPES OF CASES WORK.  YOU

21   HAVE TO PUT A LOT OF GROUNDWORK IN, A LOT OF EFFORT TO GET

22   TO THE POINT WHERE YOU EITHER GET SETTLEMENTS OR HAVE TO

23   GO TO TRIAL.  SO THAT'S HOW VISION WORKED.  THAT'S HOW

24   VENTURES WORKED.  THAT'S HOW EVERGREEN WORKED.

25        THE UNITED STATES --- AND THEY KNOW THAT.  AND THEY

77

1    SIGNED UP FOR THIS.

2         HAD THEY CHOSEN AT THE BEGINNING OF THE CASE TO SAY:

3    YOU KNOW WHAT?  KILL IT ALL, THEN WE WOULDN'T BE HERE.

4         BUT THEY CUT THE DEAL.  THEY NOW SEEM TO HAVE GOT

5    BUYER'S REMORSE.  AND SO EVERY EFFORT HAS BEEN THIS

6    STUDYING CONTRADICTION.  THEY SAY, DON'T SPEND TOO MUCH

7    MONEY, BUT I GET FIRST REQUEST TO PRODUCE, SECOND REQUEST

8    TO PRODUCE, THIRD REQUEST TO PRODUCE FROM MS. IDE.  WE

9    SPEND OVER 75-PERCENT OF OUR TIME IN THIS CASE DEALING WITH

10   MS. IDE AND PRODUCING THE SAME DOCUMENTS OVER AND OVER

11   ONLY TO BE TOLD WE'RE NOT READY.  WE'RE NOT READY.  WE'RE

12   NOT READY.

13        TODAY, SHE WANTED TO DELAY A CLAIM OBJECTION

14   HEARING THAT SHE, HERSELF, ADMITTED WAS CORRECT.  IT'S MIND

15   NUMBING TO BE TOLD YOU'RE SPENDING TOO MUCH ON THE ONE

16   HAND AND THEN ON THE OTHER HAND SAY:  GIVE ME THIS

17   DOCUMENT FOR THE 14TH TIME.

18        THEN ON THE SAME HAND, YOUR HONOR, ON THE OTHER

19   ASPECT THEY SAY, YOU HAVEN'T PRODUCED ENOUGH, BUT WE

20   DON'T WANT TO PAY ANYBODY TO PRODUCE IT, MAKE YOU ALL ON

21   HOURLY CONTINGENCY FEES.

22        IT IS ABSURD AND THEY HAVE SIGNED UP FOR THIS DEAL

23   AND THEY NEED TO BE BOUND BY IT.  THIS IS THE SAME ACTION

24   WITH MR. KOBERT.  THEY AGREED THAT THIS LAWSUIT WAS GOING

25   TO GO WITH THE ESTATE, AND SAT SILENT FOR YEARS AND EVEN

78

1    ONCE IT WAS REOPENED, SAT SILENT, SO WE ASSUMED THAT WE

2    WERE PURSUING IT WITH THE NAME, WHICH YOU OFTEN DO IN

3    TRUSTEE TYPE CASES, WITH THE NAME OF NEXIA, BUT WITH THE

4    CHOSEN ACTION BEING OWNED BY THE ESTATE.

5        I GUESS AT CONFIRMATION, WE COULD HAVE SAID, HEY, YOU

6    HAVE TO EXECUTE ALL DOCUMENTS ALL NECESSARY TO IT,

7    EXECUTE AN ASSIGNMENT.  AND HAD THEY RAISED THIS THEN, WE

8    WOULD HAVE SAID, EXECUTE THE ASSIGNMENT OF CAUSE OF

9    ACTION.  THE ORDER, I THINK, SPEAKS FOR ITSELF.

10       BUT IT'S THE SAME KIND OF THING.  I THINK WE NEED TO PUT

11   A STOP TO IT.  LET US PROCEED AND TRY AND RECOVER MONEY

12   FOR THEM AND STOP BURDENING THIS COURT WITH USELESS

13   HEARINGS AND USELESS TIME AND BE EFFICIENT.

14       WE HAVE A LOT OF OTHER BETTER THINGS TO DO ALL OF US.

15       SO WE WOULD RESPECTFULLY REQUEST, YOUR HONOR, THAT

16   YOU OVERRULE THIS CLEARLY AND DEFINITELY AND SO THAT IF

17   WE GET THE SAME GROUNDHOG'S DAY AGAIN, THEN WE CAN TAKE

18   APPROPRIATE ACTION UNDER THE FEDERAL RULES FOR FILING A

19   FRIVOLOUS PLEADING.  THANK YOU.

20       THE COURT:  THANK YOU.

21       MR. KOBERT:  VERY BRIEFLY.

22       THE COURT:  CERTAINLY.

23       MR. KOBERT:  JUST ON PLAXSOR THAT I'M FOCUSING ON,

24   YOUR HONOR, BECAUSE WHATEVER YOUR HONOR DECIDES, WE

25   WANT TO OBVIOUSLY LET JUDGE ANTON KNOW HOW TO PROCEED

79

1    IN THE DISTRICT COURT ACTION.

2         AND I HEARD FROM THE U.S. ATTORNEY WHO I MET HERE

3    FOR THE FIRST TIME AND I TAKE HIM AT HIS WORD THAT IT'S HIS

4    FIRST TIME DEALING WITH REPRESENTING A PRIVATE COMPANY AS

5    THE GOVERNMENT, WHICH I CAN UNDERSTAND THE PERPLEXITY

6    OF DEALING WITH THAT, AND I'M SORRY THAT THEY HAD TO DEAL

7    WITH THAT.

8         AND BEEN ASKED TO ANALYZE BY THE GOVERNMENT IF THE

9    CASE HAS MERIT.  I DON'T KNOW IF THAT ANALYSIS IS DONE.  I

10   DIDN'T HEAR A YES OR A NO ON THAT IN TERMS OF THEIR

11   PARTICIPATION IN THE CASE, IF ANY.

12        BUT IF THEY WANT TO PARTICIPATE ON THE PENDING

13   SUMMARY JUDGMENT, IT'S TOO LATE.  SO THAT WOULD BE

14   MALPRACTICE BECAUSE THE DEADLINE HAVE ALL COME. IT'S

15   CLOSED.  EVERYTHING IS CLOSED WITH JUDGE ANTON NOW.

16        THERE'S BEEN NO PARTICIPATION BY THE GOVERNMENT IN

17   CASE MANAGEMENT IN VIOLATION OF JUDGE ANTON'S ORDERS

18   AND IF IN FACT, MIRABILIS DOESN'T OWN THE CHOSEN ACTION

19   PURSUANT TO SCHEDULE B, THEN THAT CAUSE OF ACTION WILL BE

20   LOST.

21        SO IF THE GOVERNMENT HAS CONCLUDED THAT IT DOES NOT

22   HAVE ANY MERIT AND THEY DON'T WISH TO PROSECUTE IT, THEN

23   LET US PROSECUTE IT AND DERIVE MONEY FOR OUR 95 OR 97-

24   PERCENT CREDITOR.  BUT IT'S DIFFICULT WHEN YOU HAVE A

25   CREDITOR WHO IS NOT MOTIVATED BY MONEY.

80

1    THE COURT:  IN CONNECTION WITH THE PENDING MOTIONS

2    UPON WHICH ORAL ARGUMENT HAVE JUST OCCURRED ON THE

3    OPPOSITION TO DISBURSEMENTS, DOCUMENTS NUMBER 514, 520

4    AND 524, AND THE MOTION BY THE DEBTOR TO CONFIRM WHAT

5    WAS AND WAS NOT INCLUDED UNDER THE COMPROMISE BETWEEN

6    THE DEBTOR AND THE UNITED STATES, IT IS ALWAYS DIFFICULT

7    FROM A JUDICIAL STANDPOINT TO ASSESS THE UNDERPINNINGS OF

8    WHAT'S GOING ON TRULY IN A CASE.

9    I SEE A FINAL PRODUCT.  I SEE SPECIFIC PORTIONS.  I SEE

10   THROUGH A SMALL WINDOW.  I DON'T GET THE BROADER PICTURE

11   THAT THE PARTIES MOST INVOLVED DO.

12   BUT I WILL TELL YOU WHAT I SEE THROUGH THAT SMALL

13   WINDOW IN THIS CASE TROUBLES ME GREATLY.  IT BREAKS MY

14   HEART TO SEE COUNSEL WHO I HAVE REGARDED HIGHLY, I THINK,

15   TAKE AN INAPPROPRIATE STANCE IN A CASE LIKE THIS.  I DO NOT

16   BELIEVE THAT THE GOVERNMENT'S ARGUMENT IS FORTHRIGHT

17   AND I DO NOT THINK IT'S FOR THE PURPOSES STATED.

18   IN 2008, THE GOVERNMENT REACHED AN AGREEMENT WITH

19   THE DEBTOR TO DIVIDE ASSETS.

20   ON DECEMBER THE 9TH, 2009, WE HAD A HEARING.  AT THAT

21   POINT, RAISED BY THE U.S. DEPARTMENT OF ---- U.S. ATTORNEY'S

22   OFFICE, THAT SETTLEMENT INCLUDED A REQUIREMENT THAT THIS

23   DEBTOR PLEAD GUILTY.  WHEN HE WENT TO THE HEARING, THE

24   SETTLEMENT WAS CONCLUDED, NOT TO HAVE REQUIRED THAT

25   ACTION.  I FOUND THAT THE OBJECTIONS TO THE DISBURSEMENTS

81

1    TO PROFESSIONALS RAISED AT THAT TIME WERE NOT PROHIBITED,

2    AND THEY WERE MADE. I ASSUME THEY WERE MADE ANYWAY.

3    THEY WERE AUTHORIZED.

4        NOW, TODAY, WE HAVE A REPRESENTATIVE OF THE

5    INTERNAL REVENUE SERVICE RAISING SIMILAR OBJECTIONS,

6    WHICH I THINK ARE GROUNDLESS.

7        THE FEES THAT ARE INCURRED BY THESE PROFESSIONALS

8    WERE ANTICIPATED, CONTEMPLATED, KNOWN AND MR. CUTHILL IS

9    ALMOST RIGHT ON THE MONEY FOR WHAT THEY'RE COSTING.

10       THE RECOVERY IS STILL APPROXIMATELY WHAT HE

11   ANTICIPATED TWO YEARS AGO OR ROUGHLY TWO YEARS AGO.

12   THE COST IS STILL ABOUT WHAT HE THOUGHT, ALTHOUGH, THE

13   DEFENDANT'S ACTIONS ARE AGGRESSIVE AND STRENUOUS AND

14   THIS IS THE PART THAT I FIND THE MOST TROUBLING, IS THAT

15   THERE IS AT LEAST ALLEGATIONS --- I'M NOT MAKING A FINDING

16   AT THIS POINT --- BUT AT LEAST ALLEGATIONS OF POTENTIAL

17   MANIPULATION AND SABOTAGE BY OUR GOVERNMENT TO DEFEAT

18   HIS ABILITY TO COLLECT ASSETS THAT WOULD GO TO THE

19   GOVERNMENT'S BENEFIT. I DON'T KNOW IF IT'S IN ORDER TO

20   INDUCE A GUILTY PLEA OR NOT. I DON'T KNOW IF THERE'S

21   ANOTHER REASON THE GOVERNMENT IS TAKING THESE ACTIONS.

22       BUT I AM INCREDULOUS AT THE POSITION THAT IS BEING

23   TAKEN.

24       TO SAY IT BREAKS MY HEART IS NOT QUITE AN

25   UNDERSTATEMENT. I AM SPEECHLESS.

82

1    I WILL OVERRULE THE OBJECTIONS TO DISBURSEMENTS.

2    THERE WERE MANY ARGUMENTS MADE TODAY, NONE OF THEM

3    HAVE BEEN ESTABLISHED.  THE PROFESSIONAL FEES ARE NOT OUT

4    OF LINE AS TO WHAT WAS INITIALLY ESTIMATED.

5    MR. CUTHILL IS BEING HAMPERED AT EVERY AVENUE IN

6    PURSUING RECOVERY OF LITIGATION FOR THE BIGGEST CREDITOR,

7    WHICH IS IRONICALLY, THE UNITED STATES, ALTHOUGH, OTHER

8    CREDITORS DO EXIST.

9    THERE IS NOTHING THAT HE HAS OFFERED TO DO THAT IS IN

10   ANYWAY CONTRARY TO WHAT HE INITIALLY PROMISED TO DO,

11   AND WHICH IS IN THE BEST INTEREST OF THE CREDITORS IN THIS

12   ESTATE.

13   THERE WERE ARGUMENTS MADE THAT YOU SHOULD

14   RESERVE A PORTION OF IT.  NO EXPLANATION GIVEN WHY I

15   SHOULD RESERVE A PORTION OF THE PROFESSIONAL FEES IN THE

16   POST-CONFIRMATION CASE, JUST THAT I SHOULD HOLD SOME BACK

17   OR THAT YOU HAVEN'T SEEN ANY PROGRESS YET IN THE CASE.

18   WELL, MY GOODNESS, THESE ARE COMPLEX LITIGATIONS.  I

19   KNOW MR. CUTHILL SAID THEY WERE SIMPLE, BUT DURING THE

20   LIMITED PERIOD OF TIME A FEW OF THEM WERE HERE IN THIS

21   COURT, THEY DID NOT APPEAR PARTICULARLY SIMPLE.  AND THEY

22   ARE BEING LITIGATED AND THEY DO TAKE TIME AND IT IS NOT A

23   FAST SYSTEM AND THE FACT YOU HAVEN'T GOTTEN RECOVERY

24   YET IS EXPECTED AND YOU GUYS KNOW THAT.

25   AND THAT IS WHAT'S SO TROUBLING.  YOU ALL KNOW HOW

83

1    THIS WORKS.  AND YOU ARE NOT --- YOU'RE NOT BLIND TO THE

2    FACT THAT THIS TAKES TIME AND IT COSTS MONEY.

3         YOU RETAIN THESE PEOPLE.  THE GOVERNMENT APPROVED

4    THE RETENTION OF THESE ATTORNEYS.  YOU SPECIFICALLY

5    DIVIDED IT UP IN THE SETTLEMENT AND YET NOW, YOU SAY YOU ---

6    I DON'T KNOW IF YOU WANT A SECOND BITE OF THE APPLE.  AS I

7    SAY, I DON'T KNOW THE MOTIVATION, BUT IT IS NOT THAT WHICH

8    WAS STATED IN COURT.

9         SO I WILL OVERRULE ALL THE OBJECTIONS TO

10   DISBURSEMENTS.

11        IN CONNECTION WITH THE SPECIFIC ISSUE RAISED AS TO

12   NEXIA, I DO NEED TO GO BACK AND READ THE FULL SETTLEMENT

13   AGREEMENT.  I WANT TO SEE IF THERE'S ANYTHING ELSE THAT

14   PERSUADES ME EITHER WAY ON THAT.  BUT I WILL ISSUE A RULING

15   BY NEXT THURSDAY, SO IT WON'T DELAY THE DISTRICT COURT

16   PROCEEDING, AND I WANT TO GET INTO THE DETAILS OF THAT.  I

17   DON'T FEEL COMFORTABLE DOING THAT ORALLY.  BUT I WILL

18   ISSUE A RULING ON THAT.  SO I WILL TAKE THAT ONE MATTER

19   UNDER ADVISEMENTS.

20        BUT I REALLY THINK WE'RE DANGEROUSLY CLOSE TO

21   SANCTIONABLE ACTIONS IN THIS CASE.  SO THINK LONG AND HARD

22   IF YOU WANT TO CONTINUE DOWN THIS ROAD, AND KNOW THAT

23   EVERY ATTORNEY ALL YOU REALLY HAVE IS YOUR REPUTATION.

24   THAT'S WHAT YOU SELL.

25        THAT'S WHAT YOU BENEFIT FROM AND THAT'S WHAT YOU

84

1      GO UPON, AND WHEN YOU CUT AWAY AT THAT, WHEN YOU LESSEN

2      ONES PERCEPTION OF YOUR PROFESSIONAL INTEGRITY, THAT'S A

3      VERY SAD THING TO LOSE.

4            AND WITH THAT SAID, COURT IS IN RECESS.  I'LL SEE YOU

5      BACK ON MAY THE ---

6            (WHEREUPON, THE HEARING WAS CONCLUDED AT 3:51 P.M.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

85

1                    CERTIFICATE OF OATH

2    STATE OF FLORIDA

3    COUNTY OF SEMINOLE

4

5        I, MARGIE A. GREEN, NOTARY PUBLIC, CERTIFY THAT I WAS

6    AUTHORIZED TO AND DID TRANSCRIBE, FROM CD-R, THE FOREGOING

7    PROCEEDINGS AND THAT THE TRANSCRIPT IS A TRUE RECORD

8        I FURTHER CERTIFY THAT I AM NOT A RELATIVE, EMPLOYEE,

9    ATTORNEY OF COUNSEL OF ANY OF THE PARTIES, NOR AM I FINANCIALLY

10   INTERESTED IN THE ACTION.

11       DATED THE 22ND DAY OF NOVEMBER 2005.

12

13

14

15       MARGIE A. GREEN

16       NOTARY PUBLIC – STATE OF FLORIDA

17       MY COMMISSION NO.:  DD0714428

18       MY COMMISSION EXPIRES:  9/13/2011

19

20

21

22

23

24