# *TRANSCRIPT OF PROCEEDINGS*

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 08-4327

IN RE:

MIRABILIS VENTURES, INC.,

DEBTOR.

_____/

**FILED**

**OCT 1 4 2010**

**CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION**

HEARING

BEFORE:      THE HONORABLE KAREN S. JENNEMANN

DATE:        SEPTEMBER 15, 2010

TIME:        11:09 A.M.

APPEARANCES:

ON BEHALF OF THE DEBTOR:              SCOTT SHUKER, ESQUIRE
                                      MARIANNE DORIS, ESQUIRE

ON BEHALF OF IRS:                     CAROL IDE, ESQUIRE
                                      ROBERT WELCH, ESQUIRE
                                      DAVID KELLER, ESQUIRE
ON BEHALF OF HANS BYER, ET AL:        MIKE TESSITORI, ESQUIRE
ON BEHALF OF UNITED STATES:           RALPH HAWKINS, ESQUIRE
ON BEHALF OF FORGE CAPITAL:           BART VALDEZ, ESQUIRE
ON BEHALF OF SECURE SOLUTIONS:        PETER HILL, ESQUIRE



Realtime Reporters, Inc.

Registered Professional Reporters
Certified Video Technicians

1188 Fox Forrest Circle • Apopka, Florida 32712 • (407) 884-4662 • FAX (407) 884-4664
*Sandra A. Dawkins, President • Professional Reporting Since 1977*






2

1                              I N D E X

2   TESTIMONY OF MR. CUTHILL

3        DIRECT EXAMINATION BY MR. SHUKER            15

4        CROSS EXAMINATION BY MR. WELCH              96

5   TESTIMONY OF MR. CARPENTER

6        DIRECT EXAMINATION BY MS. IDE               90

7        CROSS EXAMINATION BY MR. SHUKER             95

8        REDIRECT EXAMINATION BY MS. IDE             96

9   CERTIFICATE OF OATH                             149

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1           P R O C E E D I N G S

2           THE CLERK:  THE COURT CALLS CASE NUMBER 08-4327,

3    MIRABILIS VENTURES, INC.

4           ALL INTERESTED PARTIES, PLEASE COME FORWARD AND

5    ENTER AN APPEARANCE.

6           MR. SHUKER:  GOOD MORNING, YOUR HONOR, SCOTT SHUKER

7    AND MARIANN DORIS ON BEHALF OF MIRABILIS.

8           MS. IDE:  GOOD MORNING, YOUR HONOR, CAROL IDE ON

9    BEHALF OF THE UNITED STATES AND WITH ME TODAY, IS ROBERT

10   WELCH, ALSO WITH THE TAX DIVISION OF THE DEPARTMENT OF

11   JUSTICE, AND CHERYL SUMMERS WITH THE INTERNAL REVENUE

12   SERVICE.

13          MR. HAWKINS:  AND RALPH HAWKINS, YOUR HONOR, ON

14   BEHALF OF THE UNITED STATES.

15          THE COURT:  THANK YOU.

16          MR. VALDEZ:  GOOD MORNING, YOUR HONOR, BART VALDEZ,

17   HERE ON BEHALF OF THE FORGE AND ITS AFFILIATED CREDITORS.

18          MR. HILL:  GOOD MORNING, YOUR HONOR, PETER HILL FOR

19   SECURE SOLUTIONS, LLC.

20          MR. TESSATORI:  GOOD MORNING, JUDGE, MIKE TESSATORI,

21   ON BEHALF OF DEFENDANT, HANS BEYER IN ADVERSARY

22   PROCEEDING 00141.

23          THE COURT:  THANK YOU.  WE'RE GOING TO DO TODAY'S

24   HEARING DUE TO MY SCHEDULE ON A SOMEWHAT BIFURCATED

25   BASIS.  I'M GOING TO TAKE THE NON-EVIDENTIARY MAIN CASE

4

1    MATTERS AS WELL AS THE VARIOUS ADVERSARY PROCEEDING,

2    PRE-TRIAL CONFERENCES AND THOSE ISSUES NOW. I NEED TO ASK

3    YOUR INDULGENCE TO BE AS BRIEF AND SUCCINCT AS POSSIBLE

4    BECAUSE I AM WALKING OUT THIS DOOR AT 25 AFTER.

5        WE WILL RETURN AT APPROXIMATELY 1:00. I'LL TRY TO GET

6    BACK. I WILL MAKE EVERY EFFORT TO GET BACK BY 1:00 AND

7    THEN WE'LL CONTINUE WITH THE EVIDENTIARY HEARING ON THE

8    CONTESTED ISSUE, IF IT'S STILL CONTESTED, OBVIOUSLY, AND

9    YOU'LL HAVE MY WHOLE AFTERNOON. THERE WON'T BE ANY

10   OTHER BREAKS. I HOPE YOU GOT THE MESSAGE SO THAT

11   WITNESSES WEREN'T UNNECESSARILY INCONVENIENCE, BUT

12   THAT'S JUST THE WAY LIFE IS RIGHT NOW.

13       SO LET'S GO THROUGH --- MR. SHUKER, IF YOU COULD WALK

14   ME THROUGH THOSE NON-EVIDENTIARY SORT OF STATUS

15   CONFERENCE MATTERS AND THEN WHERE WE GO.

16       MR. SHUKER: I WILL DO SO, YOUR HONOR. IT'S 10:11 NOW,

17   I'LL BE DONE BY 10:16 [SIC].

18       THE COURT: VERY GOOD.

19       MR. SHUKER: SET YOUR CLOCK TO IT.

20       NUMBER ONE, IS THE FINAL EVIDENTIARY HEARING, DOCKET

21   ENTRY 567 THAT WE'RE COMING BACK FOR AT 1:00.

22       THE COURT: RIGHT

23       MR. SHUKER: THAT WILL INVOLVE A COUPLE OF WITNESSES

24   AND PROBABLY A COUPLE OF HOURS.

25       THE SECOND AND THIRD AND FOURTH ITEMS ON THE

5

1    DOCKET, OBJECTIONS TO CLAIM 23, OBJECTIONS TO CLAIM 22 AND

2    OBJECTIONS TO CLAIM 21 HAVE ALL BEEN WITHDRAWN AS PART OF

3    THE SETTLEMENT, WHICH IS DOCKET ENTRY 612 AS WELL AS THE

4    ADVERSARY 1041 COLLINS AND MEREA, WHICH IS ON THE NEXT

5    PAGE, IS SETTLED.  THE PAYMENT IS DUE BY SEPTEMBER 30TH AND

6    IF RECEIVED, WE'LL DISMISS BY OCTOBER 11TH.

7         THAT TAKES CARE UP TO ITEMS FOUR ON THE DOCKET.

8         ITEM FIVE AND SIX ARE OBJECTIONS BY SECURE SOLUTIONS.

9    THE PARTIES HAVE REACHED A SETTLEMENT.  THERE IS AN ISSUE

10   REGARDING THAT SETTLEMENT THAT GAVE RISE TO DOCKET

11   ENTRY 603 TO ENFORCE.  MR. HILL TELLS ME THERE ARE SOME

12   OTHER DOCUMENTS THEY NEED TO LOOK AT AND IF THEY CAN

13   HAVE A COUPLE MORE WEEKS, THIS MAY BE MOOT.  WE ARE FINE

14   WITH THAT.

15        THE COURT:  AND MR. HILL, COME ON, IS THAT CORRECT?

16        MR. HILL:  IT IS, JUDGE, YES.

17        THE COURT:  AND HOW MUCH TIME DO YOU NEED?  DO YOU

18   JUST NEED A COUPLE OF WEEKS?

19        MR. HILL:  YES.

20        THE COURT:  VERY GOOD.  LET ME SEE WHERE WE GO ON

21   EVERYTHING ELSE.  AND BEFORE WE MOVE ON, MR. VALDEZ,

22   WHEREVER.  THERE YOU ARE.  AND ON THE --- I SAW THE

23   WITHDRAWALS OF THE OBJECTIONS.  IS THE PAYMENT GOING TO

24   BE MADE IN CONNECTION WITH ADVERSARY PROCEEDING?

25        MR. VALDEZ:  YES, YOUR HONOR.  THE PAYMENT IS DUE ON

6

1   SEPTEMBER 30TH. WE'VE ALREADY HAVE A WRITTEN SIGNED

2   SETTLEMENT AGREEMENT. WE HAVE GOTTEN THE APPROVAL OF

3   THE GOVERNMENT, THE IRS, ON OUR SETTLEMENT AND IT'S MY

4   UNDERSTANDING FROM COUNSEL FOR THE DEBTOR, WE DON'T

5   NEED ANYTHING FURTHER IN THE WAY OF APPROVALS ON THE

6   SETTLEMENT AND SO WE'VE ALREADY TAKEN OUR STEPS TO GO

7   AHEAD AND COMPLY WITH OUR FIRST OBJECTION, WHICH WAS TO

8   WITHDRAW OUR CLAIMS, WHICH WE HAVE, AND THE PAYMENT

9   WILL BE MADE, THEN THE ADVERSARY PROCEEDINGS WILL BE

10  DISMISSED, WITH PREJUDICE, AS TO MY CLIENTS.

11          THE COURT:  AND THE ADVERSARY PROCEEDING NUMBER

12  AGAIN IS, TELL ME?

13          MR. VALDEZ:  AH.

14          MR. SHUKER:  10141.

15          THE COURT:  THANK YOU.

16          MR. SHUKER:  AND 08-148 IN THE HOFF CASE.

17          THE COURT:  OKAY.

18          MR. SHUKER:  THE FIRST ONE I GAVE YOU WAS IN MIRABILIS.

19          THE COURT:  CORRECT.

20          MR. SHUKER:  SO 10-141, MIRABILIS, WE'LL BE DISMISSING

21  EVERYBODY BUT MR. BEYER, THAT I'LL TALK ABOUT IN A

22  MOMENT.

23          THE COURT:  YES.

24          MR. SHUKER:  AND THEN 08-148, WE'LL BE DISMISSING ALL.

25          THE COURT:  VERY GOOD.  VERY GOOD. THANK YOU, MR.

7

1    VALDEZ.  AND I DIDN'T MEAN TO INTERRUPT, BUT I THOUGHT

2    SINCE WE WERE ON THOSE ISSUES, GO AHEAD.

3         MR. SHUKER:  THAT'S OKAY.  I'M STILL ON TRACK FOR MY

4    10:16 --- 11:16.

5         MR. VALDEZ:  YOUR HONOR, MAY I BE EXCUSED?

6         THE COURT:  THANK YOU, MR. VALDEZ, YES.

7         MR. VALDEZ:  THANK YOU.

8         MR. SHUKER:  YOUR HONOR, THE NEXT ONE, ADVERSARY 10-

9    140, VERSUS SACHS COMMUNICATION.  MY NOTES SHOW A BIG

10   QUESTION MARK.  I THINK THE BROAD AND CASSEL FIRM WAS

11   HANDLING THAT.  I ACTUALLY THOUGHT IT WAS SETTLED.

12        THE COURT:  DO WE HAVE MR. KILBY ON THE LINE?

13        THE CLERK:  NO, YOUR HONOR.

14        THE COURT:  WE'RE A LITTLE DISCOMBOBULATED.  WE'RE

15   ALL SORT OF --- AS YOU KNOW, WHENEVER THERE IS A SOFTWARE

16   CONVERSION, THINGS GO ARRAY.  AND WE'RE A LITTLE ARRAY.

17        SO LET'S SEE IF WE CAN GET MR. KILBY --- MR. KILBY HAD

18   CALLED ON BEHALF OF DEFENDANT, MR. SACHS.

19        MR. SHUKER:  OKAY.

20        THE COURT:  OR THE DEFENDANT CORPORATION AND HE

21   WAS GOING TO PARTICIPATE.

22        MR. SHUKER:  DO YOU WANT ME TO TALK ABOUT THE MR.

23   BEYER ONE IN THE MEANTIME?

24        THE COURT:  WELL, WE'RE GOING TO GET MR. KILBY.

25        (WHEREUPON, A PHONE CALL WAS MADE MR. KILBY.)

8

1     THE COURT:  HELLO, MR. KILBY, ARE YOU ON THE LINE?  WHO

2  DO WE HAVE ON THE LINE?

3     THE CLERK:  HELLO.  MR. KILBY?

4     THE COURT:  I DON'T KNOW.

5     MR. SHUKER:  IF I CAN MAKE A SUGGESTION.

6     THE COURT:  HELLO?

7     MR. KILBY:  GOOD MORNING, THIS IS DOUG KILBY IN

8  TALLAHASSEE, FLORIDA.

9     THE COURT:  VERY GOOD.  WELCOME, MR. KILBY.  WE'RE

10  SORRY, WE'RE DELAYED IN GIVING YOU A CALL.  WE ARE JUST

11  NOW STARTING THE PRE-TRIAL CONFERENCE IN THE ADVERSARY

12  10-140 INVOLVING RON SACHS AND I UNDERSTAND YOU'RE GOING

13  TO REPRESENT THE DEFENDANT, IS THAT CORRECT?

14     MR. KILBY:  THAT IS CORRECT.

15     THE COURT:  AND MR. SHUKER WAS JUST BEGINNING TO ---

16     MR. SHUKER:  RIGHT.  I THINK BROAD AND CASSEL IS

17  HANDLING THIS ONE.  I DON'T KNOW IF HE'S HAD ANY

18  COMMUNICATION FROM THEM, SO THIS ONE WAS NOT ON OUR

19  PLATE FOR OUR FIRM.  I WAS JUST GOING TO SUGGEST IT BE SET

20  FOR ANOTHER STATUS IN 60, WHICH IS WHAT WE'RE GOING TO DO

21  WITH MR. BEYER.

22     THE COURT:  HAVE YOU HAD ANY DISCUSSIONS WITH MR.

23  KOBERT?

24     MR. KILBY:  KILBY, YOUR HONOR.

25     THE COURT:  NO, NO, NO.  REPRESENTING THE TRUSTEE,

1          EXCUSE ME, THE DEBTOR.  BOARD AND CASSEL APPARENTLY IS

2     REPRESENTING THE PLAINTIFF IN THE ADVERSARY PROCEEDING.

3          MR. KILBY:  THE TRUSTEE.

4          THE COURT:  CORRECT.

5          MR. KILBY:  I'M SORRY, TO WHO WAS YOUR QUESTION

6     DIRECTED, YOUR HONOR.

7          THE COURT:  OKAY.  LET'S START BACK.

8          MR. KILBY:  YES.

9          THE COURT:  MR. SHUKER IS GENERAL COUNSEL FOR THE

10    DEBTOR.  HOWEVER, THIS PARTICULAR ADVERSARY PROCEEDING

11    HE UNDERSTANDS IS BEING HANDLED BY ROY KOBERT AT BROAD

12    AND CASSEL ON BEHALF OF THE PLAINTIFF.  AND I UNDERSTAND

13    YOU REPRESENT THE DEFENDANT.  IS THAT CORRECT, MR. KILBY?

14         MR. KILBY:  THAT IS CORRECT, YOUR HONOR.

15         THE COURT:  HAVE YOU HAD ANY COMMUNICATIONS WITH

16    MR. KOBERT?

17         MR. KILBY:  I HAVE NOT.

18         THE COURT:  OKAY.  THAN IT SOUNDS LIKE WE DO NEED TO

19    CARRY THIS OVER FOR A LITTLE BIT OF TIME.  DO YOU AGREE, FOR

20    A PRE-TRIAL CONFERENCE?

21         MR. KILBY:  IS COUNSEL FOR THE TRUSTEE NOT PRESENT?

22         THE COURT:  THAT'S CORRECT.

23         MR. KILBY:  I GUESS I'M --- IF THE COURT FEELS IT IS

24    NECESSARY AND APPROPRIATE TO KICK IT OVER, THAT'S FINE.  I

25    FILED A MOTION TO DISMISS APPROXIMATELY THREE MONTHS

10

1    AGO. I THINK THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION

2    AND I THINK FRANKLY THAT MOTION NEEDS TO BE DEALT WITH,

3    YOUR HONOR.

4        THE COURT:  IF IT IS FILED, I TOTALLY AGREE WITH YOU.  LET

5    ME PULL IT UP.  THERE WAS A MOTION TO DISMISS THAT WAS FILED

6    ON JUNE THE 18TH.  THERE WAS A MOTION TO CONTINUE THAT

7    RESET THIS HEARING FOR TODAY.  AND I --- LET ME SEE WHO WAS

8    NOTICED ON THE ORDER GRANTING THAT.  IT WILL TAKE JUST ONE

9    SECOND, MR. KILBY?

10        MR. KILBY:  IT LOOKS LIKE MS. VILMOS AT BROAD AND

11    CASSEL.

12        MR. SHUKER:  I WAS PRETTY SURE IT WASN'T MY FIRM.

13        THE COURT:  VILMOS AND MR. KOBERT WORK TOGETHER, SO

14    I'M NOT SURE WHERE THE BALL GOT DROPPED, BUT IT DID GET

15    DROPPED AND YOU ARE ABSOLUTELY CORRECT AND I'M SORRY

16    THEY'RE NOT HERE, AND I WILL SET IT OVER JUST FOR A COUPLE OF

17    WEEKS JUST TO MAKE SURE THEY GET NOTICE BECAUSE I DON'T

18    MEAN TO DELAY YOU FURTHER.

19        MR. KILBY:  THAT'S FINE, YOUR HONOR.

20        THE COURT:  WE'LL SET THIS OVER FOR ---

21        MR. TESSATORI:  OCTOBER 20TH.

22        MR. SHUKER:  MR. TESSATORI TELLS ME THERE'S A HEARING

23    SET FOR OCTOBER 20TH IN HIS.

24        THE COURT:  GOOD.  AT WHAT TIME, MR. TESSATORI?

25        MR. TESSATORI:  2:00 P.M. ON OCTOBER 20TH.

11

1      THE COURT: OCTOBER 20TH AT 2:00 P.M. OCTOBER 20TH AT 2:00

2  P.M., AND MR. HILL, WE'LL SET YOURS OVER UNTIL THAT DATE AND

3  TIME TOO AND SECURED SOLUTIONS.

4      MR. HILL: THANK YOU, MA'AM.

5      THE COURT: AND WE WILL MAKE A PERSONAL CALL TO

6  MAKE SURE THAT PLAINTIFF'S COUNSEL KNOWS AND IS PRESENT

7  AT THE NEXT HEARING, MR. KILBY. WE APPRECIATE AND

8  APOLOGIZE THAT YOU WASTED YOUR TIME TODAY.

9      MR. KILBY: WELL, NO APOLOGY NEEDED. WE ALL WANT TO

10  MOVE THE CASE FORWARD AND HOPEFULLY GET IT RESOLVED.

11      THE COURT: VERY GOOD. VERY GOOD. WE'LL SEE YOU

12  BACK THEN. YOU'RE WELCOME TO PARTICIPATE BY TELEPHONE.

13  AGAIN, JUST CALL AND MAKE SURE YOU GET THE PASSWORD AND

14  SUCH.

15      MR. KILBY: WILL DO. I APPRECIATE THAT COURTESY.

16      THE COURT: THANK YOU VERY MUCH. THANK YOU.

17      MR. KILBY: HAVE A GOOD DAY ALL.

18      THE COURT: YOU TOO. THANK YOU.

19      MR. KILBY: GOOD BYE.

20      THE COURT: AND THEN IN ADVERSARY PROCEEDING 141,

21  THAT'S THE ONE INVOLVING MR. BEYER'S AND IT'S THE MOTION

22  FOR SUMMARY JUDGMENT THAT'S SET FOR THAT DATE AND TIME?

23      MR. TESSATORI: THAT'S CORRECT.

24      MR. SHUKER: YOUR HONOR, AND I THINK NOTHING FURTHER

25  NEEDS TO BE DONE. WE ARE IN SETTLEMENT TALKS AND SO,

12

1   HOPEFULLY, IT WILL BE SETTLED BY THEN. IF NOT, SOMEBODY

2   WILL BE FROM MR. KOBERT IN THEORY WILL BE HERE AND I'LL

3   CALL HIM.

4         THE COURT: VERY GOOD. WILL YOU CALL HIM AND MAKE

5   SURE HE KNOWS.

6         MR. SHUKER: I WILL.

7         THE COURT: VERY GOOD. ANYTHING ELSE YOU NEED TO

8   ADD TODAY, MR. TESSATORI?

9         MR. TESSATORI: NO, YOUR HONOR, MAY I BE EXCUSED?

10        THE COURT: YES, THANK YOU.

11        MR. TESSATORI: THANK YOU.

12        THE COURT: AND THEN THE ONLY MATTER IS THE

13  OBJECTION BY THE DEBTOR TO CLAIM 4 IN AEM AND THAT'S JUST A

14  PRE-TRIAL CONFERENCE.

15        MR. SHUKER: AND I SUGGEST, YOUR HONOR, WE ROLL THAT

16  WITH THE ONE. EVERYBODY IS COMING BACK. I'LL TAKE A WILD

17  GUESS HERE, BUT I'M GUESSING MS. IDE AND I AREN'T GOING TO

18  AGREE WHAT SHOULD HAPPEN NEXT. AND I'M MISSING MY 10:16,

19  BUT I DIDN'T KNOW ABOUT THE PHONE, SO THERE'S NO REASON TO

20  ARGUE THAT NOW.

21        THE COURT: IS THAT OKAY WITH YOU, MS. IDE? I MEAN,

22  UNLESS THERE'S SOMEONE HERE THAT WE NEED TO DISCUSS THAT

23  WON'T BE COMING BACK AT 1:00.

24        MS. IDE: NO, YOUR HONOR, WE HAD SENT DEBTOR'S

25  COUNSEL A COUPLE WEEKS AGO A DRAFT PRE-TRIAL STATEMENT.

13

1    WE HAVEN'T HAD A CHANCE TO GET ANY FEEDBACK ON THAT AND

2    I THINK THOUGH IN THE NEXT MONTH OR SO WE CERTAINLY CAN. I

3    BELIEVE OCTOBER 20TH IS A GOOD DAY IF THAT'S THE DAY, YOUR

4    HONOR.

5         THE COURT:  WHY DON'T WE JUST SET IT OVER FOR A

6    PRETRIAL CONFERENCE FOR OCTOBER THE 20TH.

7         MR. SHUKER:  THAT'S FINE.

8         THE COURT:  AND THAT WAY WE DON'T HAVE TO RAISE THAT

9    AGAIN.

10        IS THERE ANYTHING ELSE OR ANY SCHEDULING ISSUES ON

11   THE WITNESSES THIS AFTERNOON THAT I COULD HELP YOU GUESS

12   WITH TO SORT OF MAKE IT MORE EFFICIENT THIS AFTERNOON?

13        MR. SHUKER:  I DON'T THINK SO.  I THINK THAT WE'LL HAVE

14   AMPLE TIME.  I'M GOING TO HAVE ONE WITNESS, MR. CUTHILL,

15   WHO WILL BE ABOUT AN HOUR AND A HALF.  AND I THINK THE IRS

16   HAS ONE WITNESS.  SO.

17        THE COURT:  VERY GOOD.  VERY GOOD.  AND MS. IDE,

18   ANYTHING FROM YOUR PROSPECTIVE THAT WE CAN ADDRESS

19   NOW?

20        MS. IDE:  NO, YOUR HONOR.

21        THE COURT:  VERY GOOD.  THANK YOU.  AND I'M SORRY

22   WE'RE DOING THIS ON A BIFURCATED BASIS, BUT THAT'S THE WAY

23   IT IS.

24        MR. SHUKER:  THANK YOU.

25        THE COURT:  THANK YOU.  THE COURT IS IN RECESS UNTIL

14

1      1:00.

2              THE CLERK:  ALL RISE.

3              (WHEREUPON, A RECESS WAS HAD.)

4              THE CLERK:  ALL RISE.  THE UNITED STATES BANKRUPTCY

5      COURT FOR THE MIDDLE DISTRICT OF FLORIDA IS NOW IN SESSION.

6      THE HONORABLE KAREN S. JENNEMANN PRESIDING.  YOU MAY BE

7      SEATED.

8              THE COURT:  AND LET'S GO AHEAD AND PROCEED WITH THE

9      EVIDENCE IN CONNECTION WITH THE ADMINISTRATIVE CLAIM OF

10     THE IRS.

11             MR. SHUKER:  THANK YOU, YOUR HONOR.  DO YOU WANT

12     OPENINGS OR JUST JUMP?

13             THE COURT:  I DO NOT WANT ANY OPENINGS, BUT THANK

14     YOU.

15             MR. SHUKER:  OKAY.  THAN AS OUR FIRST WITNESS, WE

16     WOULD CALL MR. CUTHILL.

17             THE COURT:  AND MR. CUTHILL, IF YOU'LL COME FORWARD

18     AND BE SWORN.

19                     ROBERT W. CUTHILL, JR.,

20     HAVING BEEN DULY SWORN, WAS EXAMINED, AND TESTIFIED AS

21     FOLLOWS:

22             THE CLERK:  AND WILL YOU PLEASE STATE YOUR FULL NAME

23     AND ADDRESS FOR THE RECORD.

24             THE WITNESS:  ROBERT W. CUTHILL, JR., 341 NORTH

25     MAITLAND AVENUE, SUITE 210, MAITLAND, FLORIDA 32751.

15

1          THE CLERK:  THANK YOU.

2          MR. SHUKER:  MAY I APPROACH, YOUR HONOR?

3          THE COURT:  YES, PLEASE.

4          MR. SHUKER:  MAY I INQUIRE, YOUR HONOR?

5          THE COURT:  YES.

6          MR. SHUKER:  THANK YOU.

7          THE COURT:  AND LET ME JUST ASK.  BEFORE WE BEGIN, ARE

8    THERE ANY WITNESSES THAT NEED TO BE SEQUESTERED?

9          MR. SHUKER:  MS. SUMMERS IS THE CORPORATE REP, THE

10   30B(6), THEN NO.

11         MS. IDE:  YOUR HONOR, GEORGE CARPENTER HAS BEEN SENT

12   OUTSIDE.

13         THE COURT:  VERY GOOD.  JUST WANTED TO MAKE SURE SO

14   WE CAN AVOID A PROBLEM.  GO AHEAD AND PROCEED.

15         MR. SHUKER:  THANK YOU.

16                    DIRECT EXAMINATION

17   BY MR. SHUKER:

18         Q     MR. CUTHILL, WHEN YOU FIRST BECOME INVOLVED WITH

19   MIRABILIS?

20         A     IN MAY OF 2008.

21         Q     AND WHAT WERE YOUR DUTIES?

22         A     I WAS APPOINTED PRESIDENT OF MIRABILIS ON MAY 27, 2008

23   AND MY DUTIES ACTUALLY AS PRESIDENT WERE VERY LIMITED.  I WAS

24   ESSENTIALLY PUT IN THERE TO DO THE SAME DUTIES I WOULD AS A

25   LIQUIDATING TRUSTEE OR SAY A CHAPTER 11 TRUSTEE FOR A COMPANY

16

1    THAT CONTEMPLATED LIQUIDATION.

2        Q      AND YOU'VE BEEN A CHAPTER 11 TRUSTEE BEFORE;

3    CORRECT?

4        A      I HAVE.

5        Q      OKAY.  AND FOR YOUR SERVICES AS PRESIDENT AND

6    LIQUIDATING THE ASSETS OF MIRABILIS, HOW WERE YOU INITIALLY

7    PAID?

8        A      I WAS PAID ON AN HOURLY BASIS, $400.00 AN HOUR BASED

9    ON THE HOURS WORKED, WHICH TOTALLY VARIED FROM TIME-TO-TIME.  I

10   DIDN'T PAY MYSELF ON A REGULAR BASIS IN THE BEGINNING.  SINCE THE

11   COMPANY STARTED OUT IN BANKRUPTCY WITH --- I BELIEVE IT WAS

12   UNDER $300.00 IN THE BANK ACCOUNT.

13       Q      OKAY.  AND DID YOU HAVE THAT CHARACTERIZED AS AN

14   INDEPENDENT CONTRACTOR OR W-2 EMPLOYEE?

15       A      AS AN INDEPENDENT CONTRACTOR AND THIS WOULD HAVE

16   BEEN CONSISTENT WITH SOME OF THE PRIOR CASES THAT I HAD BEEN

17   INVOLVED WITH.

18       Q      OKAY.  FROM A FINANCIAL PERSPECTIVE, WAS THERE

19   REASON TO PAY AS AN INDEPENDENT CONTRACTOR?

20       A      WELL, IT CERTAINLY SAVED THE ESTATE MONEY AND THAT

21   WAS ONE OF THE CONSIDERATIONS.  I WAS THE ONLY PERSON WORKING

22   FOR THE ESTATE.  MY DUTIES AS THE PRESIDENT WERE NOMINAL.  AND

23   MY DUTIES, LET ME USE THE TERM LIQUIDATOR, WERE SUBSTANTIAL.

24   THOSE WERE UNLIKE WHAT A NORMAL EMPLOYEE WOULD DO.  AND I

25   CONSULTED WITH MY CPA FIRM EARLY ON.  THEY WERE PREPARING THE

1   BOOKS AND RECORDS AND ULTIMATELY WROTE ALL THE CHECKS FOR

2   ME.  BUT FROM AN ECONOMIC STANDPOINT, IF I PAID MYSELF AS AN

3   EMPLOYEE, I WOULD FILE ABOUT 13 DIFFERENT PAYROLL TAX RETURNS,

4   STATE AND FEDERAL EACH YEAR, WHICH COSTS A CPA FIRM MONEY TO

5   DO.  AND THE EMPLOYER, THE DEBTOR, WOULD ALSO PAY THE

6   EMPLOYER'S SHARE OF FICA TAXES AS WELL AS MEDICARE TAXES.

7           AS A SELF-EMPLOYED PERSON, I WOULD PAY 100-PERCENT OF

8   ALL OF THOSE TAXES AND THERE WOULD BE NO CPA COSTS.  SO

9   SUBSTANTIALLY LESS ECONOMICALLY TO THE ESTATE.

10          Q       OKAY.  AND DID YOU INDIVIDUALLY PAY YOUR

11  WITHHOLDING TAXES?

12          A       ACTUALLY, I PAY SELF-EMPLOYMENT TAXES.

13          Q       OKAY.

14          A       BECAUSE I TREATED MYSELF ON THE BASIS OF WHAT MY CPA

15  FIRM HAD ADVISED ME TO DO, TO TREAT MYSELF AS A SELF-EMPLOYED

16  PERSON, I PAID QUARTERLY ESTIMATED TAX PAYMENTS AND ALL OF THE

17  INCOME TAXES THAT WERE DUE AS WELL AS SELF-EMPLOYMENT TAXES,

18  THE EQUIVALENT OF MEDICARE, SOCIAL SECURITY TAXES, 100-PERCENT

19  OF THOSE WERE PAID BY ME.

20          Q       AND OVER THE COURSE OF THE CASE, HOW MUCH DID YOU

21  PAY TO THE IRS RELATED TO MIRABILIS, BALLPARK?

22          A       I DON'T KNOW, $150,000.00, MAYBE.

23          Q       OKAY.  THAT'S BEEN PAID TO THEM?

24          A       OH YES.

25          Q       OKAY.  NOW, DID THERE COME A TIME WHEN YOU LEARNED

18

1    THAT THE IRS DISPUTED THIS TREATMENT?

2         A    YES.

3         Q    WHAT HAPPENED?

4         A    I GOT A NOTICE FROM THE IRS ABOUT JUNE OF 2009, I

5    BELIEVE.

6         Q    OKAY.

7         A    THAT SAID THAT THE COMPANY HAD NOT FILED 941 FORMS

8    AND IT HAD SOME 941 FORMS ATTACHED TO IT THAT THEY HAD

9    PREPARED BASED ON THE DEBTOR'S MONTHLY OPERATING REPORTS.

10             MR. SHUKER:  AND, YOUR HONOR, WE'LL BE GENERALLY

11        GOING IN ORDER, BUT THIS ONE IS THE LAST EXHIBIT.

12             THE COURT:  IT DOESN'T MATTER.

13             MR. SHUKER:  I'M GOING TO START WITH EXHIBIT 29, OR

14        NEXT TO LAST EXHIBIT.

15   BY MR. SHUKER:

16        Q    MR. CUTHILL, IF YOU COULD TURN TO THAT.

17        A    TWENTY-NINE?

18        Q    YES.

19        A    OKAY.

20        Q    DO YOU RECOGNIZE THAT AS THE CORRESPONDENCE YOU

21   RECEIVED FROM THE IRS FOLLOWED BY SOME CORRESPONDENCE BACK

22   FROM YOU?

23        A    YES.  THE CORRESPONDENCE IS DATED JUNE 25TH.  I BELIEVE I

24   RECEIVED IT THE NEXT DAY ON JUNE 26TH.

25        Q    OKAY.

19

1          MR. SHUKER:  YOUR HONOR, WE WOULD LIKE TO ADMIT

2     EXHIBIT 29.

3          THE COURT:  AND IS THERE ANY OBJECTION?

4          MR. WELCH:  IF I MAY, YOUR HONOR.  HE HAS NOT --- MR.

5     CUTHILL HASN'T IDENTIFIED ALL OF THE PARTS.  THIS IS SEVERAL

6     DIFFERENT, QUITE DISTINCT DOCUMENTS BETWEEN HIMSELF AND

7     APPARENTLY THE INTERNAL REVENUE SERVICE.  HOWEVER, THE ---

8          THE COURT:  I'LL SUSTAIN THE OBJECTION.  YOU'LL NEED TO

9     GO.  THANK YOU.  I'LL SUSTAIN THE OBJECTION.  YOU'LL NEED TO

10    GO THROUGH EACH OF THE DOCUMENTS.

11         MR. SHUKER:  THAT'S FINE, YOUR HONOR.

12    BY MR. SHUKER:

13         Q     THE SECOND PAGE, WHAT IS THE SECOND PAGE?

14         A     WELL, THE LETTER FROM THE INTERNAL REVENUE SERVICE

15    IS THE FIRST TWO PAGES.

16         Q     RIGHT.

17         A     THE SECOND LETTER ON MIRABILIS' LETTERHEAD IS MY

18    RESPONSE TO THE INTERNAL REVENUE SERVICE THAT I DRAFTED ON

19    JUNE 26, 2009.

20         Q     THIS IS IN RESPONSE TO THE IRS' REQUEST?

21         A     RIGHT.  I DRAFTED THE LETTER ON JUNE 26, 2009 AND THEN

22    THE NEXT TWO PAGES ARE A STRING OF E-MAILS WHERE I SENT THE

23    DRAFT LETTER TO MY CPA TO GET THEIR APPROVAL TO SEND IT TO THE

24    IRS.

25         Q     AND DID YOU DRAFT THESE LETTERS AND CORRESPONDENCE

20

1    IN THE ORDINARY COURSE OF YOUR DUTIES AS PRESIDENT?

2          A      YES.

3          Q      AND DID YOU MAINTAIN THESE AS BUSINESS RECORDS FOR

4    MIRABILIS?

5          A      I DID.

6                 MR. SHUKER:  YOUR HONOR, WE WOULD LIKE TO ADMIT

7    EXHIBIT 29,  THE FIRST ONE BEING AN ADMISSION, THE NEXT FEW

8    BEING BUSINESS RECORDS.

9                 THE COURT:  AND ANY OBJECTION?

10               MR. WELCH:  MY ONLY OBJECTION TO THIS, YOUR HONOR, IS

11   THE VERY LAST PAGE APPEARS TO CUT OFF.  IT APPEARS TO BE A

12   LONG STRING OF E-MAILS.  OBVIOUSLY, IT WOULD BE INTERESTING

13   TO KNOW WHAT CAME BEFORE THE --- THERE'S --- THE WORDS

14   ORIGINAL MESSAGE ARE CUT IN HALF, SO YOU REALLY CAN'T TELL

15   WHAT CAME BEFORE WHATEVER IS ON THE LAST PAGE OF THE

16   EXHIBIT.

17               THE COURT:  MR. CUTHILL, DO YOU KNOW, CAN YOU

18   RESPOND?

19               THE WITNESS:  YES.

20               THE COURT:  WOULD YOU PLEASE?

21               THE WITNESS:  ACTUALLY, I HAD MARYANNE GARTNER, WHO

22   IS AN ACCOUNTANT WITH BALDWIN AND COMPANY, CPAS.  I HAD

23   HER SEND ME THESE E-MAILS A FEW DAYS AGO AND I CUT OFF THE

24   COVER PART OF THE E-MAIL WHERE SHE SENT THEM TO ME TWO

25   DAYS AGO.

21

1        THE COURT:  OKAY.  ANY FURTHER OBJECTION?

2        MR. WELCH:  WELL, YOUR HONOR, I JUST STILL QUESTION

3   WHY IT SAYS ORIGINAL MESSAGE, IF IT'S ONLY THE CAPTION OF

4   THE E-MAIL.

5        THE COURT:  OVERRULED.  EXHIBIT 29 WILL BE ADMITTED.

6        MR. SHUKER:  THANK YOU, YOUR HONOR.

7   BY MR. SHUKER:

8        Q      SO WHAT DID YOU TELL --- ON THE THIRD PAGE, WHAT DO

9   YOU TELL THE IRS?

10       A      THE ESSENCE OF MY RESPONSE IS THAT I TREATED MYSELF

11  AS AN INDEPENDENT CONTRACTOR BASED ON MY CPA'S ADVICE, THAT I

12  DID NOT SIGN THE 941 FORMS THAT THEY HAD SENT ME.  THEY HAD

13  PREPARED THOSE BASED ON THE --- BASED ON THE MONTHLY OPERATING

14  REPORTS FOR THE DEBTOR AND THEN I ASKED THEM A QUESTION THAT I

15  ASKED THEM TO CONFIRM WITH ME THAT THIS SETTLES ---- I USED THE

16  TERM PLEASE CONFIRM THAT THIS SETTLES THE SERVICES INQUIRY

17  ABOUT THIS MATTER.

18       Q      OKAY.  AND SO THIS IS JUNE 26TH, 2009?

19       A      YES.  IT WAS THE DAY AFTER I --- OR ACTUALLY, THE DAY I

20  RECEIVED THE INQUIRY.  THE INQUIRY IS DATED JUNE 25TH, BUT I

21  RECEIVED IT IN THE MAIL ON JUNE 26TH AND I RESPONDED THAT DAY.

22       Q      OKAY.  DID YOU GET A RESPONSE FROM THE IRS IN JULY

23  2009?

24       A      NO.

25       Q      AUGUST 2009?

22

1      A     NO.

2      Q     SEPTEMBER 2009?

3      A     NO.

4      Q     OCTOBER 2009?

5      A     NO.

6      Q     DID YOU EVER GET A RESPONSE FROM THE IRS TO YOUR

7  LETTER?

8      A     I DID NOT.

9      Q     OTHER THAN SENDING AN AGENT OUT TO TALK TO YOU

10  ABOUT YOUR PERSONAL LIABILITY, THEY DID THAT?

11     A     HE DID NOT COME OUT TO TALK TO ME ABOUT THIS LETTER.

12     Q     BUT HE CAME TO TALK TO YOU ABOUT THE SUBSTANCE OF

13  THE TAXES; IS THAT CORRECT?

14     A     NO.  HE CAME OUT TO TALK TO ME ABOUT MY PERSONAL ---

15          MR. WELCH:  OBJECTION, YOUR HONOR, I THINK HE'S

16  JUMPING AHEAD.  HE REALLY HASN'T GOTTEN IN TO WHO CAME TO

17  SEE HIM, WHEN OR ANYTHING ELSE ABOUT THIS.

18          MR. SHUKER:  I'LL GO IN A DIFFERENT COURSE.

19          THE COURT:  SUSTAINED.

20          MR. WELCH:  HE JUMPED IN THIS ENTIRE THING ABOUT THE

21  AGENT.

22  BY MR. SHUKER:

23     Q     IN ANY EVENT, DID MIRABILIS AND THE IRS ULTIMATELY

24  RESOLVE THE DISPUTE REGARDING PAYMENT OF EMPLOYMENT TAXES?

25     A     THEY DID NOT.

23

1      Q     NO.  DID MIRABILIS AND THE IRS RESOLVE HOW YOU WOULD

2  BE TREATED AND HOW THE TAXES WOULD BE PAID?

3      A     OH YES.

4      Q     OKAY.

5      A     THE INDEPENDENT CONTRACTOR QUESTION?

6      Q     YES.

7      A     YES.

8      Q     HOW AND WHEN?

9      A     ACTUALLY, PRIOR TO THE CONFIRMATION HEARING, I

10  AGREED TO TREAT MYSELF AS A W-2 EMPLOYEE, AS AN EMPLOYEE,

11  STATUTORY EMPLOYEE AND FILE 941 RETURNS AND THAT ENDED UP

12  BEING PART OF THE CONFIRMATION PLAN.

13      Q     OKAY.  AND WOULD YOU TURN TO EXHIBIT 1, PLEASE.

14      A     ALL RIGHT.

15      Q     DO YOU RECOGNIZE THIS AS THE MODIFICATIONS TO THE

16  JOINT PLAN FILED ON OCTOBER 15TH IN THIS CASE, DOCKET ENTRY 371?

17      A     I DO.

18      MR. SHUKER:  YOUR HONOR, WE WOULD LIKE TO ADMIT

19  EXHIBIT 1.

20      THE COURT:  ANY OBJECTIONS.

21      MR. WELCH:  NO OBJECTION.

22      THE COURT:  IT WILL BE ADMITTED.

23  BY MR. SHUKER:

24      Q     COULD YOU TURN TO PARAGRAPH --- PAGE 13, PARAGRAPH C.

25      A     OKAY.

24

1    Q    DOES THAT REFLECT THE DEAL REACHED WITH THE IRS

2    REGARDING PAYMENT OF THE --- HOW YOU WOULD BE TREATED FOR TAX

3    PURPOSES?

4    A    YES

5    Q    OKAY.  AND IT READS IN THE FOURTH, FIFTH LINE DOWN:

6    PREPARE AND FILE THE APPROPRIATE TAX RETURNS AND TO HAVE THE

7    LIQUIDATING DEBTOR PAY THE REQUIRED PAYROLL TAXES.  DID I READ

8    THAT CORRECTLY?

9    A    YES.

10   Q    IT DOESN'T SAY ANYTHING ABOUT PENALTIES AND

11   INTEREST, DOES IT?

12   A    NO.  ACTUALLY, THAT WASN'T THE DEAL.

13        MR. WELCH:  OBJECTION, YOUR HONOR, I THINK THIS

14   DOCUMENT SPEAKS FOR ITSELF.

15        THE COURT:  THE QUESTION WAS ANSWERED, MR. WELCH.

16   GO AHEAD, MR. SHUKER.

17        MR. SHUKER:  CERTAINLY.

18   BY MR. SHUKER:

19   Q    NOW, DID WE ALSO ANNOUNCE THIS DEAL AT THE

20   CONFIRMATION HEARING ON OCTOBER 16TH, 2009?

21   A    YES, IT WAS VERBALLY DISCUSSED AT THE CONFIRMATION

22   HEARING.

23   Q    YOU WERE AT THAT HEARING?

24   A    YES.

25   Q    OKAY.  WOULD YOU TURN TO EXHIBIT 2, PLEASE.

25

1       A       ALL RIGHT.

2       Q       THE FIRST PAGE, DOES THIS STATE THAT THIS IS A

3   TRANSCRIPT OF THE CONFIRMATION HEARING HELD ON OCTOBER 16TH,

4   2009?

5       A       YES.

6       Q       WOULD YOU TURN TO PAGE 14, PLEASE.

7       A       ALL RIGHT.

8       Q       COULD YOU READ LINES 3 THROUGH 15, PLEASE, OUT LOUD.

9       A       MODIFICATIONS ALSO MAKE CLEAR THAT MR. CUTHILL,

10  BOTH UP UNTIL NOW AND PROSPECTIVE, WILL BE TREATED AS AN

11  EMPLOYEE WITH W-2.  THERE WAS A DISPUTE.  HE HAD TREATED IT

12  BASED ON ADVICE FROM HIS ACCOUNTANT AND AN INDEPENDENT --- AS

13  AN INDEPENDENT CONTRACTOR.  THE IRS DIDN'T AGREE WITH THAT

14  TREATMENT AND FILED THE ADMINISTRATIVE CLAIM.  WE'VE RESOLVED

15  THAT BY AGREEING THAT HE WILL BE TREATED AS AN EMPLOYEE GOING

16  BACK AND GOING FORWARD.  WE'LL HAVE 60 DAYS TO FILE THE

17  NECESSARY PAYROLL TAX RETURNS AND FORWARD THE ESTATE TO PAY

18  THE PAYROLL TAXES.

19              MR. CUTHILL HAS AGREED THAT HE'S GOING TO HAVE TO

20  FILE AMENDED RETURNS BECAUSE HE PAID SELF-EMPLOYMENT.  ONCE

21  HE GETS THAT BACK, HE'LL CONTRIBUTE THAT BACK TO THE ESTATE.

22      Q       NOW, WHAT I SAID THERE, WAS THAT CONSISTENT WITH

23  YOUR UNDERSTANDING?

24      A       YES.

25      Q       OKAY.  AND MS. IDE WAS PRESENT AT THE CONFIRMATION

26

1   HEARING; CORRECT?

2       A    OH YES.

3       Q    DO YOU RECALL ANY OBJECTION BEING VOICED TO WHAT I

4   SAID?

5       A    NO.

6       Q    AND DOES IT SAY ANYTHING ABOUT PAYING PENALTIES AND

7   INTEREST?

8       A    IT DOES NOT.

9       Q    OKAY.  WOULD YOU TURN TO PAGE --- READ PAGE 23 --- OR

10  TURN TO PAGE 23, PLEASE?  THAT'S ABOUT TWO PAGES FURTHER.

11      A    ALL RIGHT.

12      Q    AND WOULD YOU READ FROM LINE 10 TO LINE 17.

13      A    NOW, OBVIOUSLY, WE'RE GOING TO GO BACK AND DO THE

14  941 TAXES AND I WOULDN'T WANT MR. CUTHILL HIT WITH LATE FEES

15  AND PENALTIES, PERSONALLY, FOR WHAT WAS AN HONEST DIFFERENCE

16  OF OPINION AS TO HOW THEY SHOULD BE PAID.  SO I THINK YOU CAN

17  MODIFY THE EXCALPATION CLAUSE TO SAY THAT IT WON'T ---

18          THE COURT:  JUST FOR THE RECORD, IF YOU'RE RECITING IT,

19      IT NEEDS TO BE ACCURATE.

20          THE WITNESS:  PARDON.

21          THE COURT:  YOU'RE INSERTED WORDS INTO THAT.  IF YOU

22      COULD START OVER AGAIN, PLEASE.

23          THE WITNESS:  OKAY.  I APOLOGIZE.

24          STARTING AT LINE 10:  NOW, OBVIOUSLY, WE'RE GOING TO

25      GO BACK AND DO THE 941 TAXES AND I WOULDN'T WANT MR.

27

1      CUTHILL HIT WITH LATE FEES AND PENALTIES, PERSONALLY, FOR

2      WHAT WAS AN HONEST DIFFERENCE OF OPINION AS TO HOW THEY

3      SHOULD BE PAID, SO I THINK YOU CAN MODIFY THE EXCULPATION -

4      --

5   BY MR. SHUKER:

6      Q      EXCULPATION.

7      A      YEAH, I ALWAYS HAVE TROUBLE WHAT THAT ONE.

8   EXCULPATION CLAUSE.  I MESSED UP THE PARAGRAPH AGAIN.

9           THE COURT:  THAT'S OKAY.  KEEP GOING.

10          THE WITNESS:  TO SAY THAT IT WON'T RELIEVE THE ESTATE

11     OR RESPONSIBLE OFFICER FOR LIABILITIES TO PAID OWED AND DUE

12     TAXES AND I THINK THAT ADDRESSES THEIR CONCERN.

13  BY MR. SHUKER:

14     Q      AND IS THAT CONSISTENT WITH YOUR UNDERSTANDING?

15     A      YES, IT IS.

16     Q      AND AGAIN, MS. IDE WAS HERE PRESENT AND DIDN'T

17  OBJECT?

18     A      CORRECT.

19     Q      AND IS IT YOUR UNDERSTANDING WITH EXHIBIT 1 IN PLACE

20  AND WHAT WAS ANNOUNCED IN COURT, THE IRS ACTUALLY SUPPORTED

21  CONFIRMATION?

22     A      ACTUALLY, THEY DID.  ALL OF THESE --- THIS WAY OF

23  PAYING THE PAYROLL TAXES AND HOW THEY WOULD BE REMEDIED ---

24  THE DIFFERENCE OF OPINION BE REMEDIED, WAS ALL NEGOTIATED

25  BEFORE THE CONFIRMATION AND AGREED TO.

28

1      Q      OKAY. AND YOU'RE AWARE THAT THE IRS HAD THE

2   OPPORTUNITY TO REVIEW AND REVISE THE CONFIRMATION ORDER

3   BEFORE IT WAS SUBMITTED?

4      A      YES.

5      Q      OKAY. AND TURN TO EXHIBIT 3, PLEASE.

6      A      ALL RIGHT.

7      Q      DO YOU RECOGNIZE THIS AS THE CONFIRMATION ORDER

8   ENTERED BY THIS COURT ON OCTOBER 27TH, '09, DOCKET ENTRY 375.

9      A      I DO.

10     Q      WOULD YOU TURN TO PAGE 2.

11     A      ALL RIGHT.

12     Q      AND READ BEGINNING WITH SUB CLAUSE C, WHERE IT SAYS

13   THE EXCULPATION. SORRY TO DO THAT WORD TO YOU AGAIN.

14     A      THAT'S OKAY. MY ENGLISH TEACHER FROM HIGH SCHOOL

15   WOULD LOVE YOU.

16            AND LET ME JUST FIND ---

17     Q      IT'S THE LAST PARAGRAPH.

18     A      IT'S THE LAST PARAGRAPH AND YOU WANT ME TO START?

19     Q      AT C, THE EXCULPATION CLAUSE.

20     A      OKAY. THE EXCULPATION CLAUSE SET FORTH IN ARTICLE 9

21   OF THE PLAN SHALL NOT ELIMINATE ANY LIABILITY FOR ALLOWED TAX

22   CLAIMS NOR SHALL IT RELIEVED THE LIQUIDATING DEBTOR FROM ITS

23   RESPONSIBILITY FOR TIMELY FILING BOTH CORPORATE AND PAYROLL

24   TAX RETURNS AND FROM TIMELY PAYING ALL APPLICABLE TAXES.

25     Q      THAT'S FINE. IS THAT CONSISTENT WITH YOUR

29

1    UNDERSTANDING?

2        A    YES.

3        Q    AND DOES IT SAY ANYWHERE THERE PENALTIES AND

4    INTEREST OR JUST TAXES?

5        A    IT DOES NOT.

6        Q    OKAY.

7            MR. SHUKER:  I DON'T KNOW IF I ADMITTED, YOUR HONOR,  I

8    WOULD LIKE TO HAVE EXHIBIT 3 ADMITTED?

9            THE COURT:  DID YOU SEEK 2?

10           MR. SHUKER:  I DON'T THINK I DID.

11           THE COURT:  YOU HAVE NOT SOUGHT THE ADMISSION OF 3.

12    MY QUESTION WAS:  ARE WE COMPLETED WITH EXHIBIT 2?

13           MR. SHUKER:  WE ARE.

14           THE COURT:  DID YOU WANT TO SEEK THAT?

15           MR. SHUKER:  I FORGOT.  MAY I ADMIT EXHIBIT 2?

16           THE COURT:  ANY OBJECTIONS TO EXHIBIT 2 OR 3?

17           MR. WELCH:  NO OBJECTION, YOUR HONOR.

18           THE COURT:  THEY'LL BE ADMITTED.

19           MR. SHUKER:  AND 3?

20           THE COURT:  YES.  THEY WILL BE ADMITTED.

21           MR. SHUKER:  THANK YOU, YOUR HONOR.

22    BY MR. SHUKER:

23        Q    NOW, WOULD YOU TURN TO EXHIBIT 4, PLEASE.

24        A    ALL RIGHT.

25        Q    DO YOU RECOGNIZE THIS AS THE REQUEST FOR PAYMENT.

30

1    IT'S FILED AS A PROOF OF CLAIM, BUT IT IS FOR ADMINISTRATIVE CLAIMS

2    BY THE IRS DATED SEPTEMBER 9TH, 2010.

3         A      YES.

4                MR. SHUKER:  YOUR HONOR, I WOULD LIKE TO ADMIT

5         EXHIBIT 4.

6                THE COURT:  ANY OBJECTION?

7                MR. WELCH:  NO OBJECTION, YOUR HONOR.

8                THE COURT:  IT WILL BE ADMITTED.

9    BY MR. SHUKER:

10        Q      WHAT IS THE AMOUNT OF JUST THE TAX PORTION THERE?

11        A      $136,908.07.

12        Q      OKAY.  IS THAT THE AMOUNT YOU AGREED TO PAY --- OR

13   MIRABILIS AGREED TO PAY?

14        A      THAT'S THE AMOUNT MIRABILIS AGREED TO PAY.

15        Q      CORRECT.  NOT THE PENALTIES AND INTEREST?

16        A      CORRECT.

17        Q      OKAY.

18                MR. SHUKER:  YOUR HONOR, SO I KEEP, IF YOU WILL, A LITTLE

19        STREAMLINE WHILE FLOWING TO TESTIMONY, WHAT I WOULD LIKE

20        TO DO IS READ A FEW HIGHLIGHTED PARTS OF THE MODIFICATION

21        AND THE CONFIRMATION ORDER.  I ACTUALLY SAW MR. BUSEY DO

22        THIS IN THE GOING GEM CASE AND IT ALLOWED A MORE EFFICIENT

23        PRESENTATION RATHER THAN HAVING MR. CUTHILL READ THE

24        EXCERPTS.

25                THE COURT:  GO AHEAD.  GO AHEAD.

31

1          MR. SHUKER:  THANK YOU.

2          THE COURT:  JUST TELL ME WHAT YOU WANT ME TO READ.

3          MR. SHUKER:  I'M GOING TO START WITH THE PLAN, SO

4    THAT'S EXHIBIT 1, AND I WOULD JUST NOTE PAGE 3.

5          THE COURT:  THE MODIFICATIONS.

6          MR. SHUKER:  THE MODIFICATIONS TO THE PLAN, DOCKET

7    ENTRY 373.  AND NOTE ON PAGE THREE, THERE ARE THREE

8    CLASSES.  THERE IS NO CLASS FOR SECURED CLAIM.  AND THEN

9    ARTICLE 5.

10          THE COURT:  AND JUST --- I'M TRYING TO MAKE THE RECORD

11    CLEAR.  IT'S ON PAGE 5 OF THE MODIFICATIONS IS WHAT YOU'RE

12    ASKING ME TO REVIEW?

13          MR. SHUKER:  I'M SORRY, NO.  PAGE 3 OF THE

14    MODIFICATIONS.  IT IS ARTICLE THREE AS WELL IN EXHIBIT 1.

15          THE COURT:  THANK YOU.

16          MR. SHUKER:  AND THERE LISTS A, B AND C, THE THREE

17    CLASSES.

18          THE COURT:  OKAY.

19          MR. SHUKER:  AND THEN AFTER THAT THERE'S THE ALLOWED

20    PRIORITY TAX CLAIM TREATMENT.

21          THE COURT:  YES.

22          MR. SHUKER:  NEXT, YOUR HONOR, ON PAGE 16, UNDER

23    HEADING 7, SUBHEADING C, IT IS TERM OF INJUNCTION OR STAY,

24    UNLESS OTHERWISE PROVIDED IN THE CONFIRMATION ORDER, ALL

25    INJUNCTIONS OR STAYS PROVIDED FOR CHAPTER 11 CASES

32

1   PURSUANT TO SECTIONS 105 OR 362 OF THE CODE OR PREVIOUSLY

2   IMPOSED IN THIS CASE BY THE COURT OR OTHERWISE IN

3   EXISTENCE ON THE CONFIRMATION DATE SHALL REMAIN IN FULL

4   FORCE AND EFFECT UNTIL ENTRY OF THE FINAL DECREE OR AN

5   ORDER DISMISSING THIS CASE.

6        CONTINUING.

7        MR. WELCH:  OBJECTION, YOUR HONOR, IS THERE A

8   QUESTION HERE?  OR IS MR. SHUKER TESTIFYING?

9        THE COURT:  NO.  HE EXPLAINED THE PROCEDURE, WHICH IS

10  PERFECTLY FINE.  HE'S PUBLISHING PORTIONS OF DOCUMENTS

11  ALREADY ADMITTED TO CLARIFY AND EXPEDITE THE TESTIMONY.

12       MR. WELCH:  THANK YOU, YOUR HONOR.

13       THE COURT: HE'S NOT TESTIFYING, HE'S JUST PUBLISHING

14  CERTAIN PORTIONS.

15       MR. SHUKER:  THANK YOU.

16       I'M NEXT GOING TO PAGE 21, PARAGRAPH 11.  NO LIABILITY

17  FOR CERTAIN TAX CLAIMS.  PAGE 21, UNLESS A TAXING

18  GOVERNMENTAL AUTHORITY HAS ASSERTED A CLAIM AGAINST

19  THE DEBTORS BEFORE THE BAR DATE OR ADMINISTRATIVE CLAIMS

20  BAR DATE ESTABLISHED THEREFORE.  NO CLAIM OF SUCH

21  GOVERNMENTAL AUTHORITY SHALL BE ALLOWED AGAINST THE

22  DEBTORS OR LIQUIDATED DEBTORS FOR TAXES, PENALTIES,

23  INTEREST, ADDITIONS TO TAX OR OTHER CHARGES ARISING OUT OF

24  THE FAILURE, IF ANY, OF THE DEBTORS, ANY OF ITS AFFILIATES OR

25  ANY OTHER PERSONS OR ENTITY TO HAVE PAID THE TAX OR TO

33

1    HAVE FILED ANY TAX RETURN, INCLUDING ANY INCOME TAX

2    RETURN OR FRANCHISE TAX RETURN IN AND FOR ANY PRIOR YEAR

3    OR PERIOD OR ARISING OUT OF AN AUDIT OF ANY RETURN FOR A

4    PERIOD BEFORE THE PETITION DATE.

5         I'M DONE WITH THE PLAN, YOUR HONOR.  I WOULD TURN TO

6    EXHIBIT 3, THE CONFIRMATION ORDER.  I'M GOING TO PUBLISH

7    THREE PARAGRAPHS FROM HERE.

8         THE COURT:  GIVE ME JUST A MINUTE.  GO AHEAD.

9         MR. SHUKER:  THANK YOU, YOUR HONOR, I'M IN EXHIBIT 3,

10   DOCKET ENTRY 375, PARAGRAPH 4 OF YOUR HONOR'S ORDER

11   DATED OCTOBER 27TH, 2009.  IT'S ON PAGE 11 OF THE ORDER.

12        IN ACCORDANCE WITH SECTION 1141 OF THE BANKRUPTCY

13   CODE, THE PROVISIONS OF THE PLAN IN THIS CONFIRMATION

14   ORDER ARE BINDING ON THE DEBTORS, LIQUIDATING DEBTOR,

15   EACH CREDITOR AND EVERY OTHER PARTY IN INTEREST IN THIS

16   CASE IN EACH OF THE RESPECTIVE SUCCESSORS AND ASSIGNS

17   (WHETHER OR NOT SUCH CREDITORS OR PARTIES IN INTEREST

18   VOTED TO ACCEPT THE PLAN, WHETHER OR NOT THEY ARE

19   IMPAIRED UNDER THE PLAN AND WHETHER OR NOT ANY SUCH

20   HOLDER HAS FILED OR IS DEEMED TO HAVE FILED A PROOF OF

21   CLAIM OR PROOF OF INTEREST) AND ANY PERSONS GIVING,

22   ACQUIRING OR RECEIVING PROPERTY UNDER THE PLAN AND ANY

23   LESSOR OR LESSEE OF PROPERTY TO OR FROM THE DEBTOR.

24        THE RIGHTS AFFORDED IN THE PLAN, AND THE TREATMENT

25   OF ALL CLAIMS IN INTEREST THEREIN, SHALL BE IN EXCHANGE

34

1    FOR, AND IN COMPLETE SATISFACTION OF ALL CLAIMS IN INTEREST

2    OF ANY NATURE WHATSOEVER, KNOWN OR UNKNOWN, INCLUDING,

3    EXCEPT AS EXPRESSLY PROVIDED IN THE PLAN, INTEREST

4    ACCRUED ON OR EXPENSES INCURRED IN CONNECTION WITH SUCH

5    CLAIM FROM AND AFTER THE ORDER FOR RELIEF AGAINST THE

6    LIQUIDATING DEBTOR OR ITS PROPERTY OR ITS INTEREST IN

7    PROPERTY.

8         TURNING TO THE NEXT PAGE, YOUR HONOR, PARAGRAPH 6

9    OF YOUR HONOR'S ORDER ENTERED OCTOBER 27TH, '09.  IN

10   ACCORDING WITH SECTIONS 524 AND 105(A) OF THE BANKRUPTCY

11   CODE AND EXCEPT AS OTHERWISE PROVIDED IN THE PLAN IN THIS

12   CONFIRMATION ORDER.

13        ON AND AFTER THE EFFECTIVE DATE, ALL PERSONS ARE

14   PERMANENTLY ENJOINED FROM AND RESTRAINED AGAINST

15   COMMENCING OR CONTINUING IN ANY COURT, ANY SUIT, ACTION

16   OR OTHER PROCEEDING OR OTHERWISE ASSERTING ANY CLAIM OR

17   INTEREST SEEKING TO HOLD LIABLE A, THE LIQUIDATING DEBTOR,

18   AND ALL OFFICERS AND DIRECTORS NOTED IN THE CONFIRMATION

19   AND B, THE PROPERTY OF THE LIQUIDATING DEBTOR FROM ANY

20   CLAIM, OBLIGATION, RIGHT, INTEREST, DEBT OR LIABILITY THAT

21   HAS BEEN DISCHARGED OR RELEASED PURSUANT TO THE PLAN

22   AND FOR ANY AND ALL CLAIMS ARISING UNDER BANKRUPTCY OR

23   NON-BANKRUPTCY LAW, RELATING IN ANY WAY TO THE DEBTORS,

24   LIQUIDATING DEBTOR OR ITS BUSINESS, EXCEPT FOR ANY CLAIMS

25   OR ACTIONS RELATED TO GROSS NEGLIGENCE OR FROM ITS

35

1    CONDUCT.

2         FINALLY, YOUR HONOR, PARAGRAPH 7, RIGHT BELOW.  IN

3    ACCORDANCE WITH SECTION 1141(B) OF THE BANKRUPTCY CODE

4    AND THE PLAN, TITLE TO THE DEBTOR'S ASSETS SHALL VEST IN THE

5    LIQUIDATING DEBTOR ON THE EFFECTIVE DATE.  UNTIL THE

6    EFFECTIVE DATE, THE DEBTORS AND CUTHILL SHALL CONTINUE TO

7    PERFORM THEIR DUTIES UNDER THE CODE.

8         EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN

9    AND IN THE CONFIRMATION ORDER, ALL ASSETS AND PROPERTY OF

10   THE DEBTOR SHALL BE VESTED IN THE LIQUIDATING DEBTOR, FREE

11   AND CLEAR OF ALL LIENS, SECURITY INTEREST, CLAIMS, AND

12   INTEREST OF HOLDERS OF CLAIMS OR INTEREST AND ALL SUCH

13   LIENS, SECURITY INTEREST, CLAIMS AND INTERESTS ARE HEREBY

14   EXTINGUISHED.

15        FINALLY, YOUR HONOR, I'M GOING TO TURN TO --- WELL, I

16   CAN --- I'M NOT WITH THE PUBLISHING.  I WAS THEN GOING TO

17   MOVE TO EXHIBIT 5.

18   BY MR. SHUKER:

19        Q     MR. CUTHILL, WOULD YOU TURN TO EXHIBIT 5, PLEASE.

20        A     ALL RIGHT.

21        Q     DO YOU RECOGNIZE THIS AS THE CLAIM FILED BY THE IRS IN

22   THE MIRABILIS CASE, 613-08, CLAIM 2-1?

23        A     YES.

24        MR. SHUKER:  I WOULD LIKE TO ADMIT EXHIBIT 5, PLEASE,

25   YOUR HONOR.

36

1          THE COURT:  ANY OBJECTION?  ANY OBJECTION?

2          MR. WELCH:  NO, YOUR HONOR.

3          THE COURT:  IT WILL BE ADMITTED.

4    BY MR. SHUKER:

5      Q    WHAT DOES BOX 4 SAY, MR. CUTHILL?

6      A    BOX 4 IS BLANK.

7      Q    WHAT IS IT ENTITLED, SORRY.

8      A    IT'S FOR SECURED CLAIMS.

9      Q    OKAY.

10     A    AND THE ENTIRE SECTION IS BLANK.

11     Q    AND ON PAGE 2 OF THE CLAIM, YOU SEE HOW THERE IS A

12   DENOTATION FOR UNSECURED PRIORITY CLAIM AND UNSECURED

13   GENERAL CLAIMS; IS THAT CORRECT?

14     A    YES.

15     Q    IS THERE ANY THIRD ONE FOR SECURED CLAIM?

16     A    THERE IS NOT.

17     Q    AND WOULD YOU READ THE FIRST SENTENCE, PLEASE, OF

18   THAT, UP ABOVE, THE UNITED STATES?

19     A    WHERE IT STARTS THE UNITED STATES?

20     Q    YES, SIR.

21     A    THE UNITED STATES HAS NOT IDENTIFIED A RIGHT OF SET

22   OFF OR COUNTER CLAIM.

23     Q    OKAY.  SO LET'S TALK --- GO BACK TO THESE 941'S.  WE

24   CONFIRMED THERE WAS AN AGREEMENT AND YOU HAD 60 DAYS TO PAY -

25   -- TO FILE RETURNS AND PAY.  LET'S LOOK FROM WHAT HAPPENED

37

1    THEREAFTER. TURN TO EXHIBIT 6, PLEASE.

2       A    ALL RIGHT.

3       Q    DO YOU RECOGNIZE EXHIBIT 6?

4       A    I DO.

5       Q    WHAT DO YOU RECOGNIZE EXHIBIT 6 TO BE?

6       A    EXHIBIT 6 IS A LETTER OR A NOTICE. I GUESS I WOULD CALL

7    IT A NOTICE SINCE IT CALLS ITSELF A NOTICE THAT I RECEIVED FROM THE

8    INTERNAL REVENUE SERVICE. IT'S DATED NOVEMBER 16TH, 2009 AND I

9    RECEIVED IT RIGHT ABOUT THAT TIME.

10            MR. SHUKER: YOUR HONOR, WE WOULD LIKE TO ADMIT

11       EXHIBIT 6, PLEASE.

12            THE COURT: ANY OBJECTION?

13            MR. WELCH: NO OBJECTION, YOUR HONOR.

14            THE COURT: IT WILL BE ADMITTED.

15    BY MR. SHUKER:

16       Q    WOULD YOU PLEASE READ THE FIRST SENTENCE BELOW

17    REMINDER.

18       A    OUR RECORDS SHOW WE APPLIED CREDITS OR PAYMENTS

19    TOTALING $400,000.00 TO THE TAX PERIOD SHOWN ABOVE.

20       Q    AND NOW, THERE ARE NOTES ON HERE. WHAT DO THOSE

21    REFLECT?

22       A    THOSE ARE THE NOTES THAT I PUT ON THIS. I TALKED TO --- I

23    DIALED THE 800 NUMBER THAT'S LISTED IN THIS NOTICE AND I WAS

24    CONNECTED WITH A LADY NAMED MRS. YIP, Y-I-P. THE PHONE NUMBER

25    IS ON HERE AND I TALKED TO HER ON NOVEMBER 18TH, '09 AND THE

38

1   NOTES ARE ABOUT THE CONVERSATION I HAD WITH HER.

2        Q       AND WHAT DID YOU LEARN FROM MS --- WELL, FIRST OF ALL,

3   WHAT DID YOU ASK MS. YIP?

4        A       WELL, THE REASON I CALLED IS I WANTED TO KNOW HOW I

5   COULD GET A REFUND TO THE 400,000-DOLLARS.

6        Q       OKAY.  AND DID YOU ASK HER THAT?

7        A       YES.  THAT WAS MY PRIMARY QUESTION.

8        Q       AND WHAT DID SHE SAY?

9        A       SHE TOLD ME I NEEDED TO FILE THE 941'S BECAUSE THEY

10  HAD NOT BEEN FILED.

11       Q       OKAY.  DID SHE SAY TO YOU THAT WHILE THERE'S A

12  CRIMINAL INVESTIGATION, SO YOU WON'T GET THE MONEY?

13       A       NO.

14       Q       DID SHE SAY WELL ---

15               MR. WELCH:  OBJECTION, YOUR HONOR.  HE'S LEADING THE

16  WITNESS.

17               THE COURT:  SUSTAINED.

18               MR. WELCH:  COULD HE ASK QUESTIONS, PLEASE.

19               THE COURT:  SUSTAINED.

20               MR. SHUKER:  YOUR HONOR, I WANT TO PUBLISH THEN --- LET

21  ME BACK UP.

22  BY MR. SHUKER:

23       Q       YOU SAID SHE TOLD YOU TO FILE THE RETURNS?

24       A       SHE TOLD ME TO FILE THE FIRST QUARTERS 941 AND I

25  EXPLAINED TO HER THAT I BELIEVE THAT THEY WERE EMPLOYEES IN THE

1    SECOND QUARTER OF 2007 AND THAT I WOULD NEED TO FILE AT LEAST

2    THE FIRST AND SECOND QUARTER OF 2007.

3        Q        AND WHERE THESE SOME OF THE SAME RETURNS YOU WERE

4    GOING TO BE FILING IN 60 DAYS ANYHOW PURSUANT TO THE AGREEMENT

5    WE JUST DISCUSSED?

6        A        NO.

7        Q        OKAY.  HOW ARE THEY DIFFERENT?

8        A        THE AGREEMENT IN THE PLAN ONLY CONTEMPLATED FILING

9    FOR THE PERIODS, THE THIRD QUARTER OF 2008 THROUGH A CURRENT

10    DATE, WHICH AT THAT POINT WOULD HAVE BEEN THE THIRD QUARTER

11    OF 2009.

12        Q        OKAY.  SO IT EXPANDED THE SCOPE OF WHAT YOU WERE

13    GOING TO FILE?

14        A        YES.  I WENT AND LOOKED TO SEE IF MIRABILIS EVER HAD

15    EMPLOYEES AND THE ONLY TIME I COULD EVER DETERMINE IT HAD

16    EMPLOYEES WERE THE SECOND QUARTER OF 2007 FOR ABOUT FIVE OR

17    SIX WEEKS, IT HAD FIVE OR SIX EMPLOYEES AND I SEARCHED FOR THE

18    PAYROLL TAX RETURNS TO SEE IF THEY HAD FILED, AND I COULD NEVER

19    FIND THEM.  I SUBSEQUENTLY LEARNED THEY HAD FILED THOSE

20    RETURNS, BUT I FILED AND DUPLICATED THEIR FILING.

21        Q        OKAY.  AND WOULD YOU TURN TO EXHIBITS ---

22            THE COURT:  AND I NEED TO GET THE TIME PERIOD AGAIN

23    WHEN THE FIVE OR SIX EMPLOYEES OF THE DEBTOR THAT YOU

24    LOCATED AND DUPLICATE FILED, WHEN WAS THAT?

25            THE WITNESS:  IT WAS FROM APRIL 1, 2007 THROUGH ABOUT

40

1       JUNE 30, 2007.

2           THE COURT:  THANK YOU.

3           THE WITNESS:  AND THEY WERE EMPLOYED --- IT MAY HAVE

4       BEEN A LITTLE SHORT OF JUNE 30TH.  IT WAS ABOUT SIX TO EIGHT

5       WEEKS.

6           THE COURT:  THANK YOU.

7   BY MR. SHUKER:

8       Q    MR. CUTHILL, WOULD YOU TURN TO EXHIBIT 7, PLEASE.

9       A    ALL RIGHT.

10      Q    AND THIS IS A TRANSCRIPT OF THE DEPOSITION OF MS. YIP.

11          MR. SHUKER:  YOUR HONOR, I'M GOING TO PUBLISH SEVERAL

12   LINES IN HERE.  IF I MAY DO IT.  THIS IS THE DEPOSITION WE TOOK

13   OF MS. YIP IN DENVER ON AUGUST 17TH, 2010.

14          THE COURT:  ANY OBJECTION?

15          MS. IDE:  YOUR HONOR, WE HAVE NO OBJECTION.  HOWEVER,

16   THE DEPOSITION TRANSCRIPT IS INCOMPLETE AND WE WOULD

17   RESERVE THE RIGHT TO ALSO PUBLISH PORTIONS OF THE

18   DEPOSITION, IF NEEDED.

19          THE COURT:  HOW LONG IS THE TOTAL DEPOSITION, 33

20   PAGES?

21          MR. SHUKER:  YES.  DO YOU WANT THE WHOLE THING?

22          THE COURT:  YES, PLEASE.  I WOULD LIKE TO ADMIT EXHIBIT

23   7 AS THE WHOLE THING.

24          MS. IDE:  THANK YOU, YOUR HONOR.

25          THE COURT:  AND I PLAN TO READ THE WHOLE THING.  IF YOU

1        WOULD LIKE TO PUBLISH A PORTION, YOU'RE WELCOME TO DO SO.

2        MR. SHUKER: HERE IS FOR THE DEPUTY AND FOR YOUR

3        HONOR. IF YOU COULD JUST REPLACE IT WITH EXHIBIT TAG 7.

4        THE COURT: YES. VERY GOOD.

5        MR. SHUKER: THANK YOU, YOUR HONOR.

6        THE COURT: AS I SAID, IF EITHER PARTY CHOOSES TO

7        PUBLISH SMALL PORTIONS. I STRESS THE SMALL PORTIONS.

8        MR. SHUKER: I WILL.

9        THE COURT: BUT IF THERE'S SOMETHING THAT YOU WOULD

10       LIKE ME SPECIFICALLY TO LOOK AT, DO.

11       MR. SHUKER: YES.

12       THE COURT: BUT I WILL READ THE WHOLE THING.

13       MR. SHUKER: THANK YOU, YOUR HONOR. I'M GOING TO

14       START --- THEY ARE JUST TWO PAGES AND A FEW LINES THERE.

15       ON PAGE 15, LINE 7, THESE ARE QUESTIONS BY ME AND

16       ANSWERS BY MS. YIP.

17       QUESTION: THE IRS SENT THIS FORM TO MIRABILIS

18       VENTURES AND THEN MR. CUTHILL CALLED YOU ABOUT THIS

19       FORM. IS THAT YOUR UNDERSTANDING?

20       ANSWER: YES.

21       QUESTION: EXHIBIT 2 REFLECTS YOUR UNDERSTANDING OF

22       THE CONVERSATION YOU HAD WITH HIM; CORRECT?

23       ANSWER: YES.

24       EXHIBIT 3, IS IT YOUR UNDERSTANDING THAT REFLECTS

25       THAT AS OF THIS DATE, THERE WAS A 400,000.00 OVERPAYMENT

42

1        RELATED TO 941 TAXES?

2            ANSWER:  YES.

3            IT WAS A VERY QUICK DEPO.

4            QUESTION:  DID YOU HAVE ANY REASON AT THAT TIME TO

5    BELIEVE THAT THERE WASN'T A 400,000 OVERPAYMENT?

6            ANSWER:  I SEE IT IN ACCOUNT.  I TELL HIM YES.

7            AND THEN FINALLY, YOUR HONOR, PAGE 18, LINES 9

8    THROUGH 25.

9            YOU HAD NOTHING BEFORE YOU, NO CONTEMPORARY

10   RECORD TO SAY THAT MIRABILIS DID NOT HAVE A 400,000-DOLLAR

11   CREDIT?

12           ANSWER:  I JUST TELL HIM WHAT I SAW.  WHY THAT'S A

13   CREDIT, I HAVE NO AUTHORITY TO KNOW.

14           LINE 14, QUESTION:  MR. CUTHILL'S RECORDS SAYS THAT

15   BASED ON THE HANDWRITING THAT HE TALKED TO YOU AND THAT

16   YOU TOLD HIM TO FILE THE 941'S FOR THE FIRST AND SECOND

17   QUARTER OF 2007.  IS THAT WHAT YOU TOLD HIM?

18           I TELL HIM TO FILE THE FIRST QUARTER.  HE ASKED ME THAT

19   HE HAS THIS MUCH CREDIT WAS SITTING IN AN ACCOUNT BASED

20   ON THE NOTICE HE HAD RECEIVED.  I SAW IT.  I CONFIRMED YES, I

21   DO SEE THE CREDIT.  AND THEN THAT TIME THE RETURN IS NOT

22   FILED.  THEN HE ASKED ME HOW CAN I GET THAT MONEY?  I JUST

23   SAY YOU NEED TO FILE THE --- CONTINUING TO THE NEXT PAGE ---

24   THE TAX RETURN.

25   BY MR. SHUKER:

43

1      Q      MR. CUTHILL, I WOULD LIKE TO TURN TO EXHIBIT 8.

2      A      ALL RIGHT.

3      Q      DO YOU RECOGNIZE THIS AS A REPORT THAT WE

4   SUBPOENAED FROM THE UNITED STATES REGARDING THE STATUS OF THE

5   ACCOUNT THAT MS. YIP WAS JUST TALKING ABOUT AS OF OCTOBER 16TH,

6   2009?

7      A      RIGHT.  IT'S THE CERTIFICATE OF WHAT THEY PROVIDED.

8      Q      OKAY.

9            MR. SHUKER:  YOUR HONOR, I WOULD LIKE TO ADMIT

10   EXHIBIT 8.

11            THE COURT:  IS THERE ---

12            MR. WELCH:  NO OBJECTION, YOUR HONOR.

13            THE COURT:  IT WILL BE ADMITTED.

14   BY MR. SHUKER:

15      Q      AND ON PAGE 2, DOES IT REFLECT THAT AS OF THE DATE FOR

16   THE --- OF OCTOBER 16TH, 2009, WHICH IS AS CLOSE AS WE COULD GET TO

17   CONFIRMATION, THERE WAS A 400,000-DOLLAR CREDIT RELATED TO THE

18   941 TAX PERIOD FOR MIRABILIS?

19      A      YES.

20      Q      OKAY.  DID YOU DO ANYTHING TO LOOK IN THE BUSINESS

21   RECORDS TO SEE IF, IN FACT, MIRABILIS PAID THIS 400,000?

22      A      OF COURSE.

23      Q      OKAY.  DID YOU GO BACK AND LOOK THROUGH THE

24   RECORDS MAINTAINED IN THE ORDINARY COURSE OF MIRABILIS'

25   BUSINESS, THE ACCOUNTING RECORDS, DID YOU GO BACK AND LOOK

44

1    THROUGH THOSE?

2        A    YES.  I WENT BACK AND LOOKED THROUGH THE

3    ACCOUNTING RECORDS AS WELL AS I LOOKED FOR PAYROLL TAX

4    RETURNS FOR THOSE PERIODS.

5        Q    TURN TO EXHIBIT 9, WHAT DOES THIS --- WHAT DO THESE

6    PAGES REFLECT?  WHAT'S THE FIRST PAGE?

7        A    THE FIRST PAGE IS A PRINTOUT OF THE QUICKBOOKS ---

8            MR. WELCH:  YOUR HONOR, I OBJECT.  I DON'T BELIEVE ---

9        UNLESS I AM MISSING SOMETHING --- EXHIBIT 9 IS IN EVIDENCE

10       YET, IS IT?

11           THE COURT:  IT IS NOT.

12           MR. SHUKER:  I'M JUST ASKING HIM TO DESCRIBE WHAT THEY

13       ARE AND THEN I'LL SEE.

14           THE COURT:  VERY GOOD.

15   BY MR. SHUKER:

16       Q    WHAT IS IT IN GENERAL, IT'S A PRINTOUT OF?

17       A    IT'S A PRINTOUT OF A PORTION OF THE QUICKBOOKS

18   ACCOUNTING SYSTEM FOR MIRABILIS VENTURES, INC.

19       Q    AND WHAT'S THE NEXT PAGE?

20       A    THE NEXT PAGE IS A CHECK THAT WAS WRITTEN THAT

21   RELATES TO THE FIRST PAGE.

22       Q    OKAY.

23       A    IT'S THE CHECK UNDERLYING THE TRANSACTION THAT IS

24   SHOWN IN THE ACCOUNTING RECORDS.

25       Q    WHAT'S THE NEXT PAGE?  IS THAT THE BANK RECORDS?

45

1       A       THE NEXT PAGE IS THE --- AN EXTRACT OF THE BANK

2   STATEMENT THAT THE CHECK WAS WRITTEN ON.

3       Q       AND THE NEXT PAGE?

4       A       AND THE NEXT PAGE IS A CASHIER'S CHECK THAT WAS

5   SUBSTITUTED FOR THE MIRABILIS CHECK.

6       Q       OKAY.  AND FINALLY, THE LAST PAGE?

7       A       THE LAST PAGE IS ANOTHER, THE FRONT AND BACK OF THE

8   CASHIER'S CHECK.

9               MR. SHUKER:  YOUR HONOR, WE WOULD LIKE TO ADMIT

10      EXHIBIT 9 AS BUSINESS RECORDS OF MIRABILIS?

11              MR. WELCH:  WELL, I DON'T BELIEVE THEY'RE ALL BUSINESS

12      RECORDS OF MIRABILIS, YOUR HONOR, BUT WE DON'T OBJECT TO

13      THE EXHIBIT.

14              THE COURT:  THANK YOU.  THANK YOU, MR. WELCH.  EXHIBIT

15      9 WILL BE ADMITTED.

16  BY MR. SHUKER:

17      Q       AND WHAT DID YOU DETERMINE FROM THE BUSINESS

18  RECORDS?

19      A       MIRABILIS MADE A PAYMENT FOR PAYROLL TAXES TO THE

20  INTERNAL REVENUE SERVICE FOR 400,000-DOLLARS BACK IN MAY OF 2007.

21      Q       AND ON PAGE 2, IS THAT THE NOTATION ON THE ORIGINAL

22  CHECK ABOUT HALF-WAY DOWN, WHAT DOES IT READ?

23      A       IT HAS THE ACCOUNT NUMBERS, WHICH IS 7240 SALARIES

24  AND WAGES AND 941 TAX.

25      Q       AND THEN THIS CHECK WAS REPLACED WITH A CASHIER'S

1    CHECK TWO PLACES OVER, IS THAT THE CASHIER'S CHECK?

2        A    IT IS.

3        Q    OKAY.  AND WHAT DOES IT SAY AT THE BOTTOM THERE ON

4    THE HANDWRITING?

5        A    IN THE HANDWRITING IT SAYS, VOLUNTARY PAYMENT AND

6    THEN A COLON, MIRABILIS VENTURES AEM, INC., APRIL 2007.

7        Q    THANK YOU.  SO AFTER YOU GOT NOTICE OF THIS PAYMENT

8    AND STARTED TO DO THE TAX RETURNS, QUARTERLY TAX RETURNS,

9    WHAT DID YOU DO NEXT?

10        A    WELL, I ASKED MY CPA FIRM TO PREPARE THE PAYROLL TAX

11   RETURNS AND I SHOWED THEM MY NOTICE FROM THE IRS AND MY

12   CONVERSATION WITH MRS. YIP AND ASKED THEIR ADVICE ABOUT USING

13   THE CREDIT TO PAY THE PAYROLL TAXES.  AND THEY PREPARED THE

14   PAYROLL TAX RETURNS, STARTING FROM THE FIRST QUARTER OF 2007 OF

15   WHICH THERE WAS NO TAX LIABILITY, BUT THE IRS HAD SHOWN THE

16   CREDIT IN THAT QUARTER, SO WE FILED A RETURN FOR THAT QUARTER

17   AND WE FILED RETURNS FROM THE FIRST QUARTER OF 2007 THROUGH

18   THE THIRD QUARTER OF 2009.

19        Q    OKAY.

20        A    AND WE USED THE CREDIT STARTING IN THE SECOND

21   QUARTER OF 2007.

22        Q    AND TURN TO EXHIBIT 10, PLEASE.

23             THE COURT:  AND BEFORE YOU DO THAT, I NEED YOU TO

24   RESTATE WHAT THE HANDWRITTEN NOTATION IS ON THE CHECK IN

25   EXHIBIT 9.  I CAN READ MOST OF IT AND I DIDN'T HEAR ONE WORD,

47

1         SO I'M NOT GOING TO TELL YOU WHICH WORD I DIDN'T HEAR.

2              THE WITNESS:  ALL RIGHT.  MY READING OF IT --- AND I HAVE

3    NO IDEA WHO PUT THIS NOTATION ON THERE.

4              THE COURT:  ALL RIGHT.

5              THE WITNESS:  IT SAYS:  VOLUNTARY PAYMENT AND THEN A

6    COLON, MIRABILIS VENTURES AEM, INC., APRIL 2007.

7              THE COURT:  OKAY.  OKAY.  THANK YOU.

8              MR. SHUKER:  MAY I CONTINUE, YOUR HONOR?

9              THE COURT:  YES, PLEASE.

10   BY MR. SHUKER:

11        Q    TURN TO EXHIBIT 10, PLEASE.

12        A    ALL RIGHT.

13        Q    DO YOU RECOGNIZE THIS AS THE E-MAIL YOU SENT TO MS.

14   IDE CONTAINING THE DRAFT 941 FORMS?

15        A    YES.  SHE HAD ASKED ME RIGHT AROUND THE

16   CONFIRMATION HEARING TO PROVIDE HER WITH COPIES OF THE 941

17   BECAUSE IT'S HARD FOR HER TO GET THEM THROUGH THE SYSTEM, SO I

18   TOLD HER WHEN I HAD MY CPA FIRM PREPARE THEM, I WOULD E-MAIL

19   THEM TO HER, AND SO THIS IS EITHER DAY BEFORE I FILED THEM OR THE

20   DAY I FILED THEM, I E-MAILED THEM TO HER.

21        Q    OKAY.

22             MR. SHUKER:  I WOULD LIKE TO ADMIT EXHIBIT 10, PLEASE,

23   YOUR HONOR.

24             THE COURT:  ANY OBJECTION?

25             MR. WELCH:  NO, YOUR HONOR.

48

1        THE COURT:  IT WILL BE ADMITTED.

2    BY MR. SHUKER:

3        Q    AND SO --- I'M SORRY, WHY DID YOU SAY YOU SENT THEM TO

4    MS. IDE, WHAT DID SHE ASK?

5        A    SHE ASKED ME TO PROVIDE HER COPIES BECAUSE IT WAS

6    HARD FOR HER TO GET THEM THROUGH THE SYSTEM.

7        Q    AND THIS IS ALL OF THE 941 TAXES CARRYING FORWARD THE

8    400,000?

9        A    YES.  THIS SHOULD BE THE FIRST QUARTER OF 2007 THROUGH

10   THE THIRD QUARTER OF 2009.

11       Q    AND ULTIMATELY, WHAT WAS LEFT OVER, DO YOU HAVE A

12   RECOLLECTION?

13       A    IN THE THIRD QUARTER OF 2009, THE REMAINING BALANCE IS

14   --- THIS IS ABOUT FOUR, FIVE PAGES IN --- AND THE BOTTOM, LINE 15, IT

15   SAYS OVERPAYMENT, $234,486.18.

16       Q    OKAY.  SO THAT WOULD BE THE AMOUNT THAT WOULD BE

17   RETURNED OR BE THE NET AMOUNT AFTER AFFECTING THAT?

18       A    CORRECT.

19       Q    OKAY.  SO YOU SENT THESE TO MS. IDE ON NOVEMBER 30;

20   CORRECT?

21       A    IF THAT'S THE DAY OF MY E-MAIL, YES.

22       Q    OKAY.  AND THEN YOU ULTIMATELY DID SEND THEM TO THE

23   IRS, DID YOU?

24       A    I BELIEVE I MAILED THEM TO THE IRS ON DECEMBER 4TH.

25       Q    OKAY.

49

1          A       AT LEAST I HAVE A CERTIFIED RETURN/RECEIPT COPY WHERE

2    I MAILED THEM AND THEY RECEIVED THEM. I MAILED THEM ON THE 4TH.

3    THEY RECEIVED THEM ON THE 8TH.

4          Q       OKAY. SO DECEMBER 4TH, YOU MAIL THE FORMS. MS. IDE

5    HAD THE E-MAIL, DID YOU HEAR ANYTHING BY JANUARY 4TH?

6          A       FROM?

7          Q       ANYBODY?

8          A       NO.

9          Q       FROM THE IRS, FEBRUARY 4TH?

10         A       ACTUALLY, I DIDN'T RECEIVE ANYTHING ABOUT THESE

11   RETURNS FROM ANYBODY IN JANUARY OR FEBRUARY.

12         Q       AND UP THROUGH MARCH 9TH, YOU NEVER HAD A RESPONSE,

13   IS THAT CORRECT?

14         A       THAT'S CORRECT.

15         Q       ULTIMATELY, DID YOU ASK YOUR COUNSEL TO INQUIRE AS

16   TO THE STATUS OF THE REFUND?

17         A       YES. I WANTED TO KNOW WHERE THE REFUND WAS, SO I

18   ASKED HER TO CONTACT THE BANKRUPTCY DEPARTMENT OF THE IRS IN

19   JACKSONVILLE.

20         Q       OKAY. TURN TO EXHIBIT 11, PLEASE.

21         A       ALL RIGHT.

22         Q       THE SECOND E-MAIL ON THE FIRST PAGE, WHO IS THAT E-

23   MAIL FROM?

24         A       IT IS FROM CAROL IDE TO MARYANN DORRIS.

25         Q       AND DO YOU RECOGNIZE THIS AS THE RESPONSE OF MS. IDE,

50

1    SOME 94 DAYS LATER AS TO THE STATUS OF THINGS?

2        A    YES.

3            MR. SHUKER:  YOUR HONOR, WE WOULD LIKE TO ADMIT

4        EXHIBIT 11.

5            THE COURT:  ANY OBJECTION?

6            MR. WELCH:  ONE SECOND, YOUR HONOR, PLEASE.

7            THE COURT:  CERTAINLY.  TAKE YOUR TIME.

8            MR. WELCH:  NO OBJECTION, YOUR HONOR.

9            THE COURT:  IT WILL BE ADMITTED.

10   BY MR. SHUKER:

11       Q    AND I'M GOING TO READ SOMETHING FOR YOU, FROM THIS,

12   AND SEE IF I'VE READ IT CORRECTLY.  THERE IS A 400K CREDIT ON THE

13   FORM 941 ACCOUNT FOR 2007 03, PAREN, MOVED THERE FROM A

14   MIRABILIS FORM 1120 ACCOUNT IN MAY OF 2007.  BUT BECAUSE

15   MIRABILIS HAS A BALANCE DUE ON ITS FORM 1120 LIABILITIES, PAREN,

16   FOR 2005, END PAREN, THAT CLAIMED CREDIT CANNOT NOT BE APPLIED

17   FORWARD UNLESS AND UNTIL THE OBJECTION TO CLAIM IS RESOLVED BY

18   AGREEMENT OR IN FINAL, NON-APPEALABLE ORDER.

19           DID I READ THAT CORRECTLY?

20       A    YES.

21       Q    DID THIS SAY --- SO THIS DOESN'T SAY THAT IT WILL BE PAID

22   AGAINST THE TAX, AND IF THAT DOESN'T WORK, MOVED OVER TO AEM,

23   DOES IT?

24       A    NO.

25       Q    IT SAYS IT'S GOING TO BE HELD PENDING ---

51

1            MR. WELCH: YOUR HONOR, I THINK THE DOCUMENT SPEAKS

2     FOR ITSELF. HE REALLY DOESN'T NEED HIS ARGUMENT.

3            THE COURT: I AGREE.

4            MR. WELCH: AND HIS TESTIMONY.

5            THE COURT: I AGREE.

6     BY MR. SHUKER:

7       Q     DID MS. YIP TELL YOU ANYTHING ABOUT HOLDING THE

8     400,000 UNTIL THE 1120 WAS RESOLVED?

9       A     NO. SHE SIMPLY ANSWERED MY QUESTION ABOUT HOW DO I

10    GET A REFUND, THAT I SHOULD FILE THE 941 FORM.

11      Q     OKAY. AND THIS REFERENCES A CLAIM OBJECTION. ARE

12    YOU FAMILIAR WITH THE OBJECTION TO THE IRS CLAIM IN MIRABILIS?

13      A     YES.

14      Q     TURN TO EXHIBIT 12.

15      A     ALL RIGHT.

16      Q     DO YOU RECOGNIZE THAT AS YOUR EXHIBIT, DOCKET ENTRY

17    325?

18      A     YES.

19            MR. SHUKER: YOUR HONOR, I WOULD LIKE TO ADMIT

20    EXHIBIT 12.

21            THE COURT: ANY OBJECTION?

22            MR. WELCH: NO OBJECTION, YOUR HONOR.

23            THE COURT: IT WILL BE ADMITTED.

24    BY MR. SHUKER:

25      Q     WOULD YOU TURN TO EXHIBIT 13, PLEASE?

52

1      A      ALL RIGHT.

2      Q      AND LET ME BACK UP.  MR. CUTHILL, BASED ON MS. IDE'S E-

3  MAIL AND SAY HOLDING IT UNTIL THE RESOLUTION OF THIS CLAIM

4  OBJECTION, WHAT DID YOU EXPECT?

5      A      WELL, THERE WAS AN ONGOING IRS EXAMINATION OF THE

6  FEDERAL INCOME TAX RETURNS FOR THE YEARS 2006, 7 AND 8.  I FILED

7  THOSE RETURNS THE FIRST WEEK OF SEPTEMBER IN 2009, AND I

8  IMMEDIATELY ASKED FOR A QUICK AUDIT OF THEM, SO I COULD RESOLVE

9  THE AUDIT AND CARRY BACK THE LOSS TO GET A REFUND OF 1.01-

10  MILLION DOLLARS FROM 2005.  THAT AUDIT BEGAN IN DECEMBER OF 2009

11  AND EVEN THOUGH THE INTERNAL REVENUE SERVICE AND THE U.S.

12  ATTORNEY'S OFFICE HAD BEEN TOLD A YEAR AND A HALF BEFORE THAT,

13  THAT THE AUDIT WAS --- THAT THE RETURNS WOULD BE FILED AND THE

14  REFUND WOULD BE COMING, THEY ACKNOWLEDGED OR TOLD ME.

15          MR. WELCH:  OBJECTION, YOUR HONOR, THIS EXTREME OF

16      CONSCIOUSNESS OF THEY TOLD ME AND HE TOLD ME REALLY ISN'T

17      CLEAR.  IT'S NOT RESPONSIVE TO A QUESTION.  HE'S JUST GOING ON

18      ABOUT WHAT HE ---

19          THE COURT:  SUSTAINED.

20          MR. WELCH:  --- MAY OR MAY NOT HAVE THOUGHT.

21  BY MR. SHUKER:

22      Q      FROM MS. IDE'S LETTER, DID YOU EXPECT THAT IF YOU WERE

23  SUCCESSFUL IN THE CLAIM OBJECTION, THE BALANCE OF THE 400

24  OVERPAYMENT WOULD BE RETURNED TO MIRABILIS?

25      A      YES.

53

1          Q          THANK YOU.  AND DID YOU CONDUCT THIS ESTATE, AND

2     HIRING AND PAYING PROFESSIONALS BASED ON THAT EXPECTATION AND

3     THAT REPRESENTATION?

4          A          ABSOLUTELY.

5          Q          TURN TO ---

6                     THE COURT:  WHEN DID THE AUDIT START, DID YOU SAY

7     NOVEMBER OF 2009?

8                     THE WITNESS:  IT REALLY STARTED IN DECEMBER OF 2009.

9                     THE COURT:  DECEMBER.  THANK YOU.

10    BY MR. SHUKER:

11         Q          AND THIS AUDIT WAS TIED TO THIS CLAIM OBJECTION,

12    WHICH WAS EXHIBIT 12; CORRECT, IS RELATED TO THE EXHIBIT 12 CLAIM

13    OBJECTION?

14         A          YES.

15         Q          AND EXHIBIT 13, WAS THE IRS' RESPONSE; CORRECT?

16         A          YES.

17         Q          DOCKET ENTRY 390, FILED NOVEMBER '09, ABOUT THE TIME

18    THE AUDIT STARTED.

19                    MR. SHUKER:  YOUR HONOR, WE WOULD LIKE TO HAVE

20         EXHIBIT 13 ADMITTED.

21                    THE COURT:  ANY OBJECTION?

22                    MR. WELCH:  NO OBJECTION, YOUR HONOR.

23                    THE COURT:  IT WILL BE ADMITTED.

24    BY MR. SHUKER:

25         Q          IF YOU COULD TAKE A QUICK GANDER OF THAT RESPONSE.

54

1    HAVE YOU SEEN IT BEFORE?

2        A     I HAVE.

3        Q     HAVE YOU READ IT?

4        A     I HAVE.

5        Q     ANY MENTION IN THERE OF THE WORD SET-OFF, LIEN ---

6              MR. WELCH:  OBJECTION, YOUR HONOR, THIS DOCUMENT

7    SPEAKS FOR ITSELF.  IT'S A FILE ---

8              THE COURT:  AND MR. WELCH, YOU NEED TO TONE IT DOWN.

9    YOU'RE WELCOME TO MAKE OBJECTIONS.

10             MR. WELCH:  THANK YOU, YOUR HONOR.

11             THE COURT:  BUT YOU NEED TO TONE IT DOWN.  NOW, WHAT

12   IS YOUR OBJECTION?

13             MR. WELCH:  WELL, HE'S ASKING FOR AS I'M

14   UNDERSTANDING INTERPRETATION OF THE UNITED STATES'

15   RESPONSE, AND THE RESPONSE SPEAKS FOR ITSELF, YOUR HONOR.

16             THE COURT:  I SUSTAIN THAT OBJECTION.

17             MR. SHUKER:  YOUR HONOR, I'LL PHRASE IT THIS WAY.

18   BY MR. SHUKER:

19       Q     IS THE WORD SET-OFF ANYWHERE IN THIS DOCUMENT?

20       A     NO.

21             MR. WELCH:  THE SAME OBJECTION, YOUR HONOR.

22             THE COURT:  IT WAS AFTER THE ANSWER.

23             MR. SHUKER:  OKAY.

24             THE COURT:  GO AHEAD AND PROCEED.

25             MR. SHUKER:  I'LL MOVE ON.

55

1    BY MR. SHUKER:

2        Q      NOW, TELL ME ABOUT THE SUBSTANCE OF THE CLAIM

3    OBJECTION.  YOU WERE TALKING ABOUT THE AUDIT AND THE REFUND,

4    TELL ME WHAT THE SUBSTANCE OF THIS WAS, WHAT'S THE DISPUTE?

5        A      CLAIM NUMBER 2 WAS FILED BY THE GOVERNMENT, THE

6    INTERNAL REVENUE SERVICE, ORIGINALLY, STATING THAT THERE WAS

7    SOME APPROXIMATELY 400,000-DOLLARS WORTH OF TAXES, PENALTIES

8    AND INTEREST DUE FROM THE 2005 FEDERAL INCOME TAX RETURN FOR

9    MIRABILIS.  I, ON BEHALF OF MIRABILIS, OBJECTED TO THAT CLAIM ON

10   THE BASIS THAT THERE WAS NO BALANCE DUE AND EVENTUALLY FILED

11   THE 2006, 7 AND 8 FEDERAL INCOME TAX RETURNS FOR MIRABILIS,

12   CARRIED BACK LOSSES OF TENS OF MILLIONS OF DOLLARS TO ELIMINATE

13   ANY TAX LIABILITY FOR THE 2005 RETURN, AND THE AMENDED

14   RETURNED THAT WAS FILED FOR 2005 HAD A REFUND OR OVERPAYMENT

15   OF APPROXIMATELY $1,010,000.00.

16       Q      OKAY.  AND ULTIMATELY, WAS THIS CLAIM OBJECTION SET

17   FOR HEARING ON APRIL 22, 2010?

18       A      IT WAS.

19       Q      TURN TO EXHIBIT 14, PLEASE.

20       A      ALL RIGHT.

21       Q      THIS IS DOCKET ENTRY 548.  DO YOU RECOGNIZE THIS AS THE

22   ORDER ON THAT CLAIM OBJECTION RELATED TO THE AUDIT?

23       A      I DO.

24       Q      ENTERED BY THIS COURT?

25       A      YES.

56

1          MR. SHUKER:  YOUR HONOR, WE WOULD LIKE TO ADMIT

2     EXHIBIT 14.

3          THE COURT:  ANY OBJECTION?

4          MR. WELCH:  NO OBJECTION, YOUR HONOR.

5  BY MR. SHUKER:

6     Q     AT ANY POINT IN TIME UP UNTIL THIS HEARING, DID THE IRS

7  EVER TELL YOU THAT THEY ACTUALLY PAID THE 400,000 CLAIM, CLAIM 2,

8  FROM THE OVERPAYMENT PRIOR TO THIS HEARING?

9     A     NO.

10    Q     DID THEY EVER SAY IT IN COURT THAT DAY?

11    A     NO.

12    Q     DID YOU SUBSEQUENTLY COME TO LEARN THAT, IN FACT, IN

13  THE BEGINNING OF APRIL 2010, THE IRS PAID THIS CLAIM?

14    A     YES.

15    Q     AND ANYWHERE IN THIS ORDER, DOES IT SAY THAT THEY ---

16  IT'S DISALLOWED YOUR OBJECTION IS SUSTAINED BECAUSE THEY

17  ACTUALLY ALREADY PAID THEMSELVES?

18    A     NO.  I DON'T THINK ANYBODY KNEW.  CERTAINLY IN COURT

19  THAT DAY, NOBODY KNEW ABOUT THE 400,000-DOLLAR PAYMENT AND I

20  DIDN'T FIND OUT ABOUT IT UNTIL TWO MONTHS LATER.

21    Q     AND WAS IT YOUR EXPECTATION BASED ON THIS ORDER

22  THAT THAT WAS ONE MILLION DOLLAR REFUND THAT WOULD COME TO

23  THE ESTATE?

24    A     YEAH.  I HAD BEEN TRYING TO GET THE REFUND.  THAT'S

25  WHY I ASKED FOR A QUICK AUDIT.

57

1    Q    AND HAD ---

2    A    IT TOOK SIX MONTHS.

3    Q    HAD YOU BEEN COMMUNICATING WITH PROFESSIONALS AND

4    OTHERS INVOLVED TELLING THEM TO BE PATIENT, FUNDS WERE COMING?

5    A    YES.

6    Q    DID YOU RELY ON THE REPRESENTATION AND THE ABILITY

7    TO GET THIS REFUND AND ADMINISTER THIS ESTATE?

8    A    I NOT ONLY RELIED ON IT AND NOTIFIED ALL OF THE

9    PROFESSIONALS, BUT I ALSO NOTIFIED THE LARGEST CREDITOR, THE

10   INTERNAL REVENUE SERVICE AS WELL AS THE U.S. ATTORNEY'S OFFICE

11   OF WHAT MY INTENTIONS WERE.  I WAS FILING REGULAR REPORTS WITH

12   THEM AND GIVING THEM ESTIMATES OF CASH FLOW IN THE CASE, WHICH

13   INDICATED HOW I --- HOW AND WHEN I THOUGHT I WOULD GET THIS

14   REFUND.

15   Q    OKAY.  TURN TO EXHIBIT 15, PLEASE.

16   A    ALL RIGHT.

17   Q    THIS IS AN E-MAIL FROM MS. SUMMERS, WHO IS HERE IN

18   COURT, AND IT IS DATED MARCH 16, 2010 WITH A PAGE BEHIND IT.

19   YOU'VE SEEN THESE DOCUMENTS BEFORE, HAVEN'T YOU?

20   A    I HAVE.

21        MR. SHUKER:  YOUR HONOR, WE WOULD LIKE TO ADMIT

22   EXHIBIT 15 AS AN ADMISSION.

23        THE COURT:  ANY OBJECTION?

24        MR. WELCH:  NO OBJECTION, YOUR HONOR.

25        THE COURT:  IT WILL BE ADMITTED.

58

1    BY MR. SHUKER:

2        Q      AND WHAT'S THE FIRST SENTENCE SAY AT THE TOP?

3        A      PLEASE PROCESS THE TAX CREDIT TRANSFER, MOVING

4    400,670, DATED 05/21/2007 FROM 01/20/0703 TO --- IT'S THE ABBREVIATION, I

5    THINK FOR A BALANCE, BAL, DUE ON 02/200512.

6        Q      IS IT YOUR UNDERSTANDING --- HAVE YOU COME TO LEARN

7    THAT THIS WAS MS. SUMMERS --- ABOUT A MONTH BEFORE THE HEARING

8    --- ASKING TO MOVE THE 400,000 OVERPAYMENT TO PAY THE DISPUTED

9    TAX?

10       A      RIGHT.  THEY MOVED THE 400,000 FROM THE PAYROLL TAX

11   ACCOUNT TO THE INCOME TAX ACCOUNT TO PAY CLAIM 2.

12       Q      THE CLAIM THAT WE WERE OBJECTING TO AND ULTIMATELY,

13   OUR OBJECTION WAS SUSTAINED?

14       A      YES.

15       Q      WOULD YOU TURN TO EXHIBIT 16, PLEASE?

16       A      ALL RIGHT.

17       Q      DO YOU RECOGNIZE THIS AS THE IRS --- OR THE U.S. ---

18   UNITED STATES ANSWERS TO OUR FIRST REQUEST FOR ADMISSIONS?

19       A      YES.  THIS IS ON CLAIM NUMBER 36.

20       Q      YES.

21              MR. SHUKER:  YOUR HONOR, I WOULD MOVE TO ADMIT

22   EXHIBIT 36.

23              THE COURT:  ANY OBJECTION?

24              MR. WELCH:  NO OBJECTION, YOUR HONOR.

25              THE COURT:  THANK YOU.  IT WILL BE ADMITTED.

59

1    BY MR. SHUKER:

2        Q    TURN TO PAGE 6, PLEASE.

3        A    ALL RIGHT.

4        Q    I'M GOING TO READ THIS ANSWER.  TELL ME IF I'VE READ IT

5    CORRECTLY.

6            IT SAYS ANSWER, DENY.  IT'S IN RESPONSE TO QUESTION 15.

7            BUT ADMIT THAT THE UNDERSIGNED AND JOHN LORTY, IRS

8    COUNSEL ATTORNEY, ADVISED THE INSOLVENCY SPECIALIST THAT THEY

9    HAD NO OBJECTION TO THE IRS RETURNING THE 400,000 PAYMENT TO THE

10   PROPER TAX ACCOUNT, MIRABILIS FORM 1120, ACCOUNT FOR TAX YEAR

11   2005, AND THAT CHERYL SUMMERS, THE IRS INSOLVENCY SPECIALIST,

12   IMPLEMENTED THE CORRECTION ON OR ABOUT THE WEEK OF APRIL 12,

13   2010.

14           DID I READ THAT CORRECTLY?

15       A    YES.

16       Q    SO HAVE YOU SUBSEQUENTLY COME TO LEARN THAT TWO

17   WEEKS BEFORE A HEARING BEFORE THIS COURT, THE IRS PAID ITSELF

18   THIS DISPUTED CLAIM?

19       A    THAT'S WHAT I SUBSEQUENTLY LEARNED.

20       Q    DID THE IRS GET PERMISSION TO GET RELIEF FROM THE

21   CONFIRMATION ORDER AND THE INJUNCTION CONTAINED THEREIN TO

22   MOVE THAT MONEY AND PAY THEMSELVES IN THIS DISPUTED CLAIM?

23       A    NOT THAT I KNOW OF.

24       Q    AND THAT CLAIM WAS ULTIMATELY DISALLOWED, WAS IT?

25       A    THE CLAIM WAS DISALLOWED IN THE APRIL HEARING.

60

1    Q    I THINK I ASKED YOU THIS EARLIER.  AT ANY TIME PRIOR TO

2    THE 4/22 HEARING, DID THE IRS REQUEST PERMISSION TO PAY

3    THEMSELVES FROM THE 400,000 ON CLAIM 2?

4    A    NOT THAT I KNOW OF.

5    Q    WERE YOU PRESENT AT THE 4/22 HEARING?

6    A    I WAS.

7    Q    COULD YOU TURN TO EXHIBIT 17, PLEASE?

8    A    ALL RIGHT.

9    Q    I WANT TO SEE IF YOU RECALL THESE COMMENTS BY MS. IDE.

10    THIS IS THE TRANSCRIPT OF THAT HEARING.  ON PAGE 30, LINE 1.  THERE'S

11    AN INFORMAL OBJECTION ---

12    A    LET ME GET TO ---

13    Q    OKAY.

14    A    --- THAT POINT.

15         THE COURT:  AND DO YOU HAVE A FULL COPY OF THE

16    DEPOSITION --- OF THE TRANSCRIPT?

17         MR. SHUKER:  OF THE TRANSCRIPT?

18         THE COURT:  THIS IS A TRANSCRIPT.  NEVER MIND.  GO

19    AHEAD.

20         MR. SHUKER:  OKAY.

21         THE COURT:  I'M SORRY.

22         MR. SHUKER:  THAT'S OKAY.

23         THE WITNESS:  ALL RIGHT.  PAGE 30, LINE 1.

24    BY MR. SHUKER:

25    Q    THERE IS AN INFORMAL OBJECTION THAT WE HAVE, THE IRS

61

1    DID FILE A REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSES, AND

2    THAT'S A LITTLE OVER 200,000.  THE DEBTOR CONTENDS THAT THERE'S

3    AN OVERPAYMENT OUT THERE SOMEWHERE WITH RESPECT TO THE

4    MIRABILIS THAT WILL WIPE OUT--- ACTUALLY IT SAYS WHIP OUT --- THAT

5    LIABILITY AND THAT'S SIMPLY INCORRECT.  AT SOME POINT, THAT

6    REQUEST FOR PAYMENT WILL HAVE TO BE SCHEDULED AND THAT THE

7    ISSUE WILL HAVE TO BE BROUGHT AHEAD.

8          THE COURT:  BUT THAT'S NOT AT THIS POINT INCLUDED IN

9    EITHER OF THE CLAIM OR THE OBJECTION.

10         MS. IDE:  THAT'S CORRECT, YOUR HONOR.

11         DO YOU HAVE A RECOLLECTION OF THAT TAKING PLACE?

12         A     I DO.

13         Q     DID MS. IDE TELL THE COURT THAT THE IRS HAD ACTUALLY

14   PAID ITSELF?

15         A     THE ---

16         MR. WELCH:  YOUR HONOR, I OBJECT, HIS

17   CHARACTERIZATION WITH WHAT MS. IDE TOLD THIS COURT.  IF HE

18   WANTS TO GET INTO THAT, I THINK IT MUST BE IN THE RECORD OR

19   PERHAPS MS. IDE CAN ADDRESS IT, BUT IT'S HEARSAY.

20         THE COURT:  I'LL READ THE TRANSCRIPT.  I WILL SUSTAIN

21   THE OBJECTION.

22         MS. IDE:  YOUR HONOR, IF I MAY CLARIFY, ARE WE

23   SUBSTITUTING THE ENTIRE HEARING TRANSCRIPT?

24         THE COURT:  IT SHOULD BE IN THE COURT FILE ALREADY.

25   YES.

62

1          MS. IDE:  THANK YOU, YOUR HONOR.

2          THE COURT:  IF IT'S NOT, IT SHOULD BE.  I AGREE.

3          MS. IDE:  THANK YOU.

4          THE COURT:  NO ONE'S OFFERED THE ADMISSION OF THE

5    EXHIBIT.

6          MR. SHUKER:  YOUR HONOR, MAY I OFFER EXHIBIT 17, THE

7    TRANSCRIPT FROM THAT HEARING?

8          THE COURT:  OF THE FULL TRANSCRIPT, ANY OBJECTION?

9          MR. WELCH:  NO OBJECTION, YOUR HONOR.

10         THE COURT:  IT WILL BE ADMITTED.

11         MR. SHUKER:  THANK YOU, YOUR HONOR.  I APOLOGIZE.

12   BY MR. SHUKER:

13     Q      SO AFTER THE APRIL HEARING, DID THE IRS EVER TELL YOU

14   THAT IT HAD PAID ITSELF ON A DISALLOWED CLAIM FROM THE 400,000?

15     A      THEY NEVER TOLD ME DIRECTLY.  I FOUND OUT ABOUT IT A

16   COUPLE OF MONTHS LATER.

17     Q      OKAY.  DID YOU HAVE COUNSEL INQUIRE AFTER THE APRIL

18   HEARING, WHERE WAS THE REFUND OF THE 236,000?

19     A      WELL, I WAS LOOKING FOR BOTH THE REFUND OF THE 236

20   PLUS THE INCOME TAX EXAMINATION HAD BEEN COMPLETED AT THAT

21   POINT, SO I WAS LOOKING FOR THE REFUND OF THE 1,010,000.

22         THE COURT:  OKAY.  WHERE DID 236 COME FROM?

23         THE WITNESS:  I'M SORRY, IT'S 234.

24         THE COURT:  OKAY.

25         THE WITNESS:  AND IT'S THE --- FROM THE 941.

63

1            THE COURT:  YES.  OKAY.

2            MR. SHUKER:  I USED THE WRONG NUMBER.  I APOLOGIZE.

3    BY MR. SHUKER:

4        Q        MR. CUTHILL, TURN TO EXHIBIT 18.

5        A        18?

6        Q        YES.

7        A        ALL RIGHT.

8        Q        DO YOU RECOGNIZE THIS AS A RESPONSE FROM MS. IDE TO

9    MS. DORRIS DATED JUNE 4, 2010?

10       A        YES.

11           MR. SHUKER:  YOUR HONOR, WE WOULD LIKE TO ADMIT

12       EXHIBIT 18.

13           THE COURT:  ANY OBJECTION?

14           MR. WELCH:  NO OBJECTION, YOUR HONOR.

15           THE COURT:  IT WILL BE ADMITTED.

16   BY MR. SHUKER:

17       Q        WOULD YOU --- ON THE SECOND PAGE, IT SAYS PAGE 2 OF 3,

18   READ THAT, PLEASE, THE PARAGRAPH --- THE MIDDLE PARAGRAPH, NOW,

19   THAT ---

20       A        NOW, THAT THE FORM 1120 NOL ISSUE IS RESOLVED, THE

21   SERVICE WILL RECOMPUTE THE 2005 LIABILITY AND DETERMINE THE

22   AMOUNT OF THAT YEAR'S OVERPAYMENT, TAKING INTO ACCOUNT THAT

23   THE 400,000 HAS BEEN RETURNED TO THAT YEAR'S ACCOUNT.

24       Q        IS THIS THE FIRST TIME YOU'VE LEARNED THAT THE IRS PAID

25   ITSELF THE DISALLOWED CLAIM FROM THE 400,000?

1     A    YES.

2     Q    OUT OF CURIOSITY, DO YOU SEE IN THE LAST PARAGRAPH.

3  I'M GOING TO READ THIS.  SEE IF I READ IT RIGHT.

4       I UNDERSTAND YOUR FRUSTRATION ABOUT THE ISSUE.

5  AFTER THE NOTICES ABOUT THE CREDIT BALANCE AND MR. CUTHILL'S

6  CONVERSATION WITH MS. YIP (WHO PROPERLY ADVISED HIM TO FILE

7  MIRABILIS' DELINQUENT RETURNS) BUT AS I UNDERSTAND IT, MADE NO

8  PROMISES ABOUT REFUNDING ANY MONEY.

9       DID I READ THAT CORRECTLY?

10    A    YES.

11    Q    DOES THAT IMPLY TO YOU THAT AS OF JUNE 4TH, MS. IDE HAD

12  TALKED TO MS. YIP?

13    A    YES.

14    Q    WOULD YOU TURN BACK TO EXHIBIT 7, PLEASE?

15    A    ALL RIGHT.

16       MR. SHUKER:  THIS IS THE DEPOSITION OF MS. YIP, YOUR

17  HONOR.

18       THE COURT:  AND WHAT PAGE?

19       MR. SHUKER:  PAGE 28, YOUR HONOR.

20       THE COURT:  THANK YOU.

21       MR. SHUKER: I'M GOING TO PUBLISH THIS PORTION.

22       ANSWER: E-MAIL JULY 14TH, 2010.

23       QUESTION FROM ME:  WAS THIS THE FIRST E-MAIL YOU EVER

24  RECEIVED FROM HER?  YOUR HONOR, I CUT IT OFF BECAUSE I'M

25  TALKING ABOUT MS. IDE.

65

1          YES.

2          HAD YOU EVER SPOKEN TO HER ON THE PHONE?

3          YES, ABOUT SCHEDULING THE CONFERENCE ROOM.

4          QUESTION:  HAD YOU EVER SPOKEN TO HER ON THE PHONE

5    BEFORE JULY 14TH, 2010 E-MAIL?

6          NO. ANSWER:  NO.

7          OTHER THAN DISCUSSING THE SCHEDULING, HAVE YOU EVER

8    HAD ANY OTHER CONVERSATIONS WITH HER?

9          ANSWER:  NO.

10         SO LET ME BE CLEAR, AS OF JUNE 4TH, 2010, YOU HAD NEVER

11   SPOKEN WITH MS. IDE?

12         ANSWER:  DID YOU SAY JUNE 4TH?

13         QUESTION:  CORRECT.

14         ANSWER:  NO.

15   BY MR. SHUKER:

16         Q    WELL, MR. CUTHILL, AFTER THE APRIL ORDER AND THE

17   DISALLOWANCE OF THE CLAIM, DID THE IRS FILE YET ANOTHER CLAIM IN

18   MIRABILIS RELATED TO THIS CLAIM 2?

19         A    THEY DID.

20         Q    WOULD YOU TURN TO EXHIBIT 19, PLEASE?

21         A    ALL RIGHT.

22         Q    WHAT DO YOU RECOGNIZE THIS TO BE?

23         A    THIS IS ANOTHER ONE OF THEIR --- I GUESS YOU WOULD SAY

24   AN AMENDMENT.  IT'S THE SECOND AMENDMENT TO CLAIM 2 THEY FILED

25   ON JUNE 17TH, 2010.

66

1    Q    ALMOST TWO MONTHS AFTER THE CLAIM HEARING?

2    A    YES.

3         MR. SHUKER:  YOUR HONOR, WE WOULD LIKE TO ADMIT

4    EXHIBIT 19.

5         THE COURT:  ANY OBJECTION?

6         MR. WELCH:  NO OBJECTION, YOUR HONOR.

7         THE COURT:  IT WILL BE ADMITTED.

8    BY MR. SHUKER:

9    Q    WHAT IS THE DOLLAR AMOUNT?

10   A    ZERO.

11   Q    AND TURN TO PAGE 2.

12   A    ALL RIGHT.

13   Q    WHAT IS THE INITIAL --- OR THE BLOCK SAY THERE, DOES IT

14   READ SECURED CLAIM?

15   A    IT'S LISTED UNDER SECURED CLAIM.

16   Q    AND WHAT DOES IT SAY TO THE FAR RIGHT ABOVE THE

17   DOUBLE ZEROS?

18   A    RIGHT TO SET-OFF.

19   Q    IS THIS THE FIRST CLAIM, THE FIRST TIME, THE IRS EVER

20   ASSERTED THIS RIGHT TO SET-OFF IN THE CLAIMS REGISTER OR

21   ANYWHERE ELSE?

22   A    THE FIRST TIME IT'S EVER BEEN A SECURED CLAIM OR RIGHT

23   TO SET-OFF WAS INDICATED.

24   Q    THIS WAS APPROXIMATELY18 MONTHS AFTER THE BAR

25   DATE?

1      A      APPROXIMATELY.  A COUPLE OF YEARS AFTER THE FIRST

2  CLAIM WAS FILED.

3      Q      WERE THOSE PHRASES SECURED CLAIM OR RIGHT TO SET OFF

4  IN THE FIRST CLAIM 2?

5      A      NO.

6      Q      OR ITS AMENDMENT?

7      A      NO.

8      Q      OKAY.  DID YOU PUT THE IRS ON NOTICE EARLY IN THIS CASE

9  THAT YOU WERE SEEKING A REFUND RELATED TO THE 1120'S?

10     A      VERY EARLY.

11     Q      WOULD YOU TURN TO EXHIBIT 20, PLEASE?

12     A      ALL RIGHT.

13     Q      DO YOU RECOGNIZE THIS AS BUSINESS NOTES PRODUCED BY

14  THE IRS WITH THE NOTES DATED ON OR ABOUT JULY 16TH ---- AT LEAST

15  THE BOTTOM ONE --- 2008?

16     A      YES.

17            MR. SHUKER:  YOUR HONOR, I WOULD LIKE TO ADMIT

18  EXHIBIT 20.

19            THE COURT:  ANY OBJECTION?

20            MR. WELCH:  I HAVE --- JUST ONE MINUTE, YOUR HONOR.

21            THE COURT:  CERTAINLY.

22            MR. WELCH:  YOUR HONOR, I WOULD ASK ONLY THAT THIS

23  BE MADE COMPLETE.  I BELIEVE THIS IS AN INCOMPLETE PORTION

24  OF THE HISTORY NOTES PROVIDED TO THE DEBTOR'S COUNSEL.

25            THE COURT:  DO YOU HAVE AN UNREDACTED VERSION?

68

1          MR. SHUKER:  THEY REDACTED IT.

2          THE COURT:  WELL, THAT'S WHAT I ASSUMED.  DO YOU HAVE

3     AN UNREDACTED VERSION?

4          MR. SHUKER:  NO.

5          MR. WELCH:  NOT UNREDACTED, YOUR HONOR.  I BELIEVE

6     THIS IS ONLY TWO PAGES OF A LONGER DOCUMENT.

7          MR. SHUKER:  THERE'S 10,000 PAGES THEY GAVE US.  WE'RE

8     PICKING THESE TWO FOR NOW.

9          THE COURT:  YOU'RE WELCOME TO SUPPLEMENT IT ANY WAY

10    YOU'D LIKE.

11         MS. IDE:  THANK YOU, YOUR HONOR.

12         MR. WELCH:  THANK YOU, YOUR HONOR.

13         THE COURT:  BUT I WILL ADMIT EXHIBIT NUMBER 20.  AND I'M

14    SORRY I MISUNDERSTOOD THE OBJECTION.

15    BY MR. SHUKER:

16         Q    MR. CUTHILL, WHAT DOES IT SAY ON THE VERY BOTTOM

17    LINE, SCHEDULE E, COULD YOU READ THAT, CONTINUING ON THE TOP OF

18    THE PAGE?

19         A    SCHEDULE E LISTS THE IRS CLAIM AS CONTINGENT AND

20    DISPUTED CITING THEY ARE OR WILL BE OWED A 1.2-MILLION DOLLAR

21    REFUND.

22         Q    SO AT LEAST TWO YEARS, OVER TWO AND HALF YEARS AGO

23    OR CERTAINLY INTO THE CASE --- PUT IT THIS WAY --- TWO YEARS

24    BEFORE THE ALLEGED SECURED CLAIM, THE IRS KNEW THAT YOU WERE

25    SEEKING A REFUND?

69

1      A      ABSOLUTELY. I ACTUALLY GAVE THEM REPORTS SHOWING

2   THE REFUND WITHIN THE FIRST THREE MONTHS OF THE CASE, THE IRS AS

3   WELL AS THE U.S. ATTORNEY'S OFFICE.

4      Q      DID YOU ALSO PREPARE A REPORT SHOWING HOW YOU WERE

5   GOING TO FUND THE ESTATE AND THE SOURCES OF FUNDING?

6      A      I DID.

7      Q      AND DID IT INCLUDE THIS 1.2-MILLION?

8      A      ABSOLUTELY.

9      Q      AND WAS THAT ONE OF THE WAYS YOU PROVED

10   ADMINISTRATIVELY SOLVENCY AT CONFIRMATION?

11      A      ABSOLUTELY.

12      Q      DID THE IRS EVER COME UP TO YOU AT ANY POINT IN TIME

13   AND SAY, YOU CAN'T INCLUDE THAT IN THAT REPORT, WE HAVE A RIGHT

14   OF SET-OFF?

15      A      NO.

16      Q      NOW, YOU'RE AWARE RECENTLY THE BALL HAS MOVED YET

17   AGAIN, AND NOW, THE IRS IS SAYING THAT EVEN IF IT CAN'T SET IT OFF

18   AGAINST THE DISALLOWED CLAIM, IT CAN USE THE 400,000 AND THE

19   MILLION TO REFUND AEM?

20      A      CORRECT.

21      Q      OR TO SET-OFF AGAINST AEM? I APOLOGIZE.

22      A      TO SET-OFF. THEY FILED ANOTHER AMENDMENT TO THEIR

23   CLAIM IN THE AEM.

24      Q      AND IS THERE A PENDING OBJECTION AS TO THE AEM CLAIM?

25      A      YES. THERE'S BEEN A PENDING OBJECTION FOR A COUPLE OF

1    YEARS ALMOST.

2        Q        OKAY. WOULD YOU TURN TO EXHIBIT 21, PLEASE?

3        A        ALL RIGHT.

4                MR. SHUKER: YOUR HONOR, AND I HAVE ABOUT 15 MINUTES

5    LEFT. WE'RE ALMOST DONE.

6                THE COURT: THAT'S FINE.

7                MR. SHUKER: OKAY.

8    BY MR. SHUKER:

9        Q        DO YOU RECOGNIZE THIS AS CLAIM 41 FILED BY THE IRS IN

10   THE AEM CASE?

11       A        YES.

12               MR. SHUKER: I WOULD LIKE TO ADMIT EXHIBIT 21, YOUR

13   HONOR.

14               THE COURT: ANY OBJECTION?

15               MR. WELCH: NO OBJECTION, YOUR HONOR.

16               THE COURT: IT WILL BE ADMITTED.

17   BY MR. SHUKER:

18       Q        AND THE CLAIM WAS FILED JULY 10, 2008, IS THAT WHAT IT

19   SAYS AT THE TOP?

20       A        IT DOES.

21       Q        WHAT AMOUNT IS SHOWED FOR THE SECURED CLAIM? IS

22   THERE ANYTHING?

23       A        IT DOES NOT SHOW A SECURED CLAIM. BOX 4 IS TOTALLY

24   BLANK.

25       Q        OKAY. COULD YOU TURN TO PAGE 2?

71

1     A    ALL RIGHT.

2     Q    DO YOU SEE ANY REFERENCE ON PAGE 2 FOR A SECURED

3  CLAIM?

4     A    NO.

5     Q    DO YOU SEE AN UNSECURED PRIORITY CLAIM AND AN

6  UNSECURED GENERAL CLAIM; IS THAT CORRECT?

7     A    THERE'S AN UNSECURED PRIORITY CLAIM FOR ALMOST 2.5-

8  MILLION DOLLARS AND AN UNSECURED GENERAL CLAIM OF 703,000 AND

9  CHANGE.

10    Q    OKAY.  AND WOULD YOU READ THAT FIRST SENTENCE TO ME

11  AGAIN.

12    A    THE UNITED STATES HAS NOT IDENTIFIED A RIGHT OF SET-

13  OFF OR COUNTER-CLAIM.

14    Q    WOULD YOU TURN TO EXHIBIT 22, PLEASE?

15    A    ALL RIGHT.

16    Q    WHAT DO YOU RECOGNIZE EXHIBIT 22 TO BE?

17    A    THIS IS AEM'S OBJECTIONS TO THE CLAIM NUMBER 4.

18    Q    AND WHEN WAS IT FILED?

19    A    OCTOBER 9, 2009.

20       MR. SHUKER:  I WOULD LIKE TO ADMIT EXHIBIT 22, YOUR

21  HONOR.

22       THE COURT:  ANY OBJECTION?

23       MR. WELCH:  NO OBJECTION, YOUR HONOR.

24       THE COURT:  IT WILL BE ADMITTED.

25  BY MR. SHUKER:

72

1      Q      AND SPEAKING OF THE CLAIM OBJECTION, WHEN DID ---

2   WHAT'S YOUR KNOWLEDGE OF WHAT THE IRS HAS DONE REGARDING

3   THAT?

4      A      THEY --- ACTUALLY BACK AT THIS POINT IN TIME WHEN THE

5   OBJECTION WAS FILED AND THIS WAS RIGHT AROUND THE

6   CONFIRMATION HEARING, THEY TOLD ME AS WELL AS THE COURT, THAT

7   THEY WERE GOING TO AUDIT ---

8            MR. WELCH: YOUR HONOR, I OBJECT TO THIS ALL AS BEING

9         HEARSAY.  WHAT THE IRS SAID, HE CAN ASK THE IRS PEOPLE

10        ABOUT, BUT.

11           THE COURT:  WELL, IT'S NOT HEARSAY IF IT WAS A

12        STATEMENT AGAINST ADMISSION.  IT'S AN ADMISSION.  SO I WILL

13        OVERRULE THAT OBJECTION.

14           MR. WELCH:  THANK YOU, YOUR HONOR.

15  BY MR. SHUKER:

16     Q      OKAY.  WHAT DID THEY SAY?

17     A      THEY STATED THAT THEY WERE GOING TO AUDIT THE

18  RETURNS, THE AEM'S AMENDED RETURNS, AND REQUESTED,

19  SPECIFICALLY REQUESTED --- NOW, THIS WAS MS. IDE THAT

20  SPECIFICALLY REQUESTED TO ME IN THIS COURTROOM --- THAT I FILE

21  AMENDED RETURNS TO SUBSTANTIATE MY OBJECTION.  I TOLD HER THAT

22  MY --- THE PAPERWORK BACKING UP MY OBJECTION WOULD BE

23  ESSENTIALLY THE SAME, BUT SHE WANTED THE RETURNS ACTUALLY ---

24  THE AMENDED RETURNS ACTUALLY FILED.

25           SO I ACTUALLY HIRED KPMG TO PREPARE THE AMENDED

73

1   RETURNS. I HAD THE AMENDED RETURNED PREPARED AND I FILED THEM.

2       Q       WHEN? ABOUT --- PARDON ME.

3       A       DECEMBER OF '09.

4       Q       OKAY.

5       A       AND AN AUDIT WAS STARTED VIRTUALLY IMMEDIATELY.

6   I'M NOT SURE IF THE AUDIT WAS STARTED DECEMBER '09 OR JANUARY

7   '10, BUT IT WAS STARTED. THE AUDITOR WAS IN ATLANTA, GEORGIA.

8       Q       AND WHAT'S YOUR UNDERSTANDING OF WHERE WE ARE

9   ALMOST NINE MONTHS LATER?

10      A       I UNDERSTAND THE AUDIT REALLY HASN'T GONE

11  ANYWHERE.

12      Q       AND DID THE IRS STILL PROMISE TO GET US A QUICK

13  RESPONSE?

14      A       AS WITH ALL OF THESE RETURNS, I HAVE DONE EVERYTHING

15  I COULD TO PROVIDE THE IRS WITH ALL OF THE INFORMATION SO THEY

16  COULD MAKE A QUICK DETERMINATION OF THIS.

17      Q       OKAY.

18      A       THERE ARE LOTS OF PEOPLE COUNTING ON THE OUTCOME

19  AND THE RESULTS OF THESE TAX RETURNS BEING FILED AND THE

20  EXAMINATION, AND I'M VERY FRUSTRATED TO SAY, THAT THE PROGRESS

21  HAS BEEN PAINFULLY SLOW.

22      Q       TURN TO EXHIBIT 23, PLEASE.

23              THE COURT: AND I MAY --- WAS EXHIBIT 22 ADMITTED?

24              MR. SHUKER: IT WAS, YOUR HONOR. IF IT WASN'T, I'LL DO IT

25  AGAIN. I WOULD REQUEST ---

1        THE COURT:  I JUST DIDN'T WRITE IT DOWN.  YOU HAD NO

2    OBJECTION TO EXHIBIT 22?

3        MR. WELCH:  NO, YOUR HONOR.

4        THE COURT:  THAT WAY WE DON'T HAVE TO FIGURE IT OUT.

5    THANK YOU.

6    BY MR. SHUKER:

7        Q    DO YOU RECOGNIZE EXHIBIT 23 AS THE RESPONSE OF THE

8    UNITED STATES TO THE AEM OBJECTION?

9        A    I DO.

10       Q    FILED ON OR AROUND NOVEMBER 9, 2009?

11       A    YES.

12       Q    HAVE YOU READ IT?

13       A    I HAVE.

14       Q    OKAY.  IS THE WORD SET-OFF OR LIEN ANYWHERE IN THIS

15    DOCUMENT?

16       A    IT IS NOT.

17       MR. WELCH:  OBJECTION AGAIN, YOUR HONOR, IT SPEAKS

18    FOR ITSELF.

19       THE COURT:  SUSTAINED.

20    BY MR. SHUKER:

21       Q    NOW, AT THE TIME, ARE YOU AWARE AT CONFIRMATION, THE

22    THREE COMPANIES BECAME SUBSTANTIVELY CONSOLIDATED?

23       A    YES.

24       Q    IS IT YOUR UNDERSTANDING THAT TAKES THE THREE

25    ENTITIES AND MAKES THEM ONE?

75

1      A      I UNDERSTAND THAT THE LIQUIDATING DEBTOR, WHICH WAS

2    ONE OF THE THREE ENTITIES ENDED UP ABSORBING ALL OF THE ASSETS

3    AND LIABILITIES OF THE OTHER TWO, YES.

4      Q      AND AS OF THIS TIME, THE ONLY CLAIM OF AEM, WE JUST

5    SAW --- OF THE IRS AND AEM, WE JUST SAW IN EXHIBIT 21 WAS 4/1 AND

6    THERE WAS NO SECURED CLAIM ASSERTED.  IS THAT YOUR

7    UNDERSTANDING?

8      A      THAT'S CORRECT.

9      Q      WOULD YOU TURN TO EXHIBIT 24, PLEASE?

10     A      ALL RIGHT.

11     Q      DO YOU RECOGNIZE EXHIBIT 24 AS THE RECENTLY FILED IRS

12   CLAIM 4-2 RELATED TO AEM?

13     A      YEAH, THIS IS AN AMENDMENT TO CLAIM NUMBER 4 FILED

14   AUGUST 6TH, 2001.

15     Q      ALMOST 11 MONTHS AFTER CONFIRMATION?

16     A      YEAH, ABOUT THREE WEEKS AGO --- THREE OR FOUR WEEKS

17   AGO.

18     Q      OKAY.  AND IS THIS THE FIRST TIME A --- WELL, LET'S LOOK

19   AT IT.  IS THERE FINALLY NOW FOR THE FIRST TIME SOMETHING

20   INCLUDED IN THE SECURED CLAIM BOX?

21     A      THERE IS.

22     Q      AND DO THEN ON THE SECOND PAGE, THERE IS A PROVISION

23   THAT SAYS SECURED CLAIM?

24     A      THERE IS.

25     Q      SO PRESUMABLY, THE IRS KNEW HOW TO ASSERT A SECURED

76

1    CLAIM IF IT WANTED TO?

2              MR. WELCH: OBJECTION, YOUR HONOR.

3              THE COURT: SUSTAINED.

4              MR. SHUKER: I'LL WITHDRAW IT.

5    BY MR. SHUKER:

6        Q      AND YOU'RE AWARE, AREN'T YOU, THAT THE PLAN AND THE

7    CONFIRMATION ORDER SAYS THAT ALL ASSETS OF THE DEBTOR IS VEST

8    IN THE DEBTOR'S --- LIQUIDATING DEBTOR FREE AND CLEAR OF ALL

9    LIENS AND CLAIMS?

10       A      THAT'S WHAT THE CONFIRMATION OF THE PLAN AND THE

11   CONFIRMATION ORDER SAY.

12       Q      AND DID YOU RELY ON THAT MOVING FORWARD WITH THE

13   PROFESSIONALS AND THE ESTATE AND HOW TO ADMINISTER THIS CASE?

14       A      CERTAINLY.

15       Q      I WANT TO WRAP UP WITH SOME THINGS, MR. CUTHILL.

16              HAS THIS BEEN A LONG JOURNEY FOR YOU?

17       A      LONGER THAN MOST OF MY CASES, YES. NOT IN THE PERIOD

18   OF TIME.

19       Q      WHY IS THAT?

20       A      WELL, IT'S BEEN --- IT'S BEEN QUITE TRYING WHEN THE

21   MAJOR CREDITOR IN THE CASE AND THE PERSON THAT I'M PROBABLY

22   MOST RESPONSIBLE FOR RECOVERING MONEY FROM HAS CAUSED ME TO

23   FIGHT AGAINST THEM AND SPEND ACTUALLY AT THIS POINT, WELL OVER

24   A HALF A MILLION --- SOMEWHERE BETWEEN A HALF A MILLION AND A

25   MILLION DOLLARS FIGHTING WITH THE MAJOR CREDITOR ON VARIOUS

77

1    ISSUES. IT'S VERY FRUSTRATING.

2         Q      HAS IT BEEN FROM YOUR PERSPECTIVE AN ISSUE WHERE YOU

3    CUT A DEAL WITH THE IRS, WHETHER IT WAS ON PAYMENT OF

4    PROFESSIONALS OR OTHER MATTERS, OR ON PAYMENT OF TAXES, YOU

5    CUT THE DEAL, YOU GET A COURT ORDER AND THEN THEY JUST CHANGE

6    THEIR MINDS AND DO SOMETHING DIFFERENT?

7              MR. WELCH:  YOUR HONOR, I OBJECT.  I DON'T KNOW WHAT

8         DEAL HE'S REFERRING TO.

9              THE COURT:  SUSTAINED.

10             MR. SHUKER:  OKAY.

11   BY MR. SHUKER:

12        Q      DID YOU HAVE AN AGREEMENT WITH THE IRS REGARDING

13   PAYMENT OF PROFESSIONALS?

14        A      YES.

15        Q      WAS THAT INCORPORATED INTO A COURT ORDER?

16        A      THAT WAS PART OF THE CONFIRMATION ORDER AND THE

17   COURT HAD APPROVED --- ACTUALLY, PRE-CONFIRMATION, THE COURT

18   APPROVED PAYMENT OF PROFESSIONALS.  POST-CONFIRMATION, THE

19   MAJOR CREDITOR AND THE U.S. ATTORNEY'S --- THE IRS AND THE U.S.

20   ATTORNEY'S OFFICE HAD THE ABILITY TO OBJECT ON 20 DAYS NEGATIVE

21   NOTICE.

22        Q      AND DID THE IRS POST-CONFIRMATION ATTACH A GROUND

23   TO THAT THAT YOU PLEAD GUILTY OR HAVE MIRABILIS PLEAD GUILTY IN

24   THE CRIMINAL CASE?

25        A      YES.

78

1    Q    AND DID THEY OBJECT TO FEES BECAUSE THEY DIDN'T LIKE

2    THE DEAL THEY GOT?

3         MS. IDE:  OBJECTION, YOUR HONOR.  THIS IS ---

4         MR. SHUKER:  IT GOES TO THE EQUITABLE NATURE, YOUR

5    HONOR.

6         MS. IDE:  YOUR HONOR, THIS IS MISSTATING WHAT'S GOING

7    ON.  IT'S CONFUSING THE CRIMINAL ACTION WITH THE

8    CONFIRMATION AND THEY ARE TWO SEPARATE PROCEEDINGS.

9         THE COURT:  THEIR ARGUMENT IS THAT THEY'RE RELATED.  I

10   WILL OVERRULE THE OBJECTION.

11        I AM GOING TO TAKE A SHORT RECESS AT THIS POINT.  IF YOU

12   WOULD FINALIZE ALL OF THE QUESTIONS YOU WOULD LIKE TO ASK

13   MR. CUTHILL, WE'LL COME BACK AND FINISH, THAT WAY WE

14   WON'T HAVE TO TAKE A BREAK TO CONCLUDE MR. CUTHILL'S

15   TESTIMONY.  BUT I AM GOING TO TAKE A BREAK AT THIS POINT.

16        MR. SHUKER:  I'M SORRY.  DID YOU WANT ME TO FINISH THE

17   QUESTIONS WITH HIM?

18        THE COURT:  NO, NO, NO, NO.  I'M TAKING A BREAK.

19        MR. SHUKER:  OKAY.

20        THE COURT:  I WOULD LIKE YOU TO GET TOGETHER

21   EVERYTHING YOU WOULD STILL LIKE TO ASK MR. CUTHILL.

22        MR. SHUKER:  THERE ARE 11 QUESTIONS, SO.

23        THE COURT:  VERY GOOD.  VERY GOOD.  AND THEN WE'LL

24   COME BACK.  YES.  AND THAT'S WHAT WE'LL DO.

25        MR. SHUKER:  OKAY.

79

1        THE COURT: TEN MINUTE OR SO.  NOT LONG.

2        THE CLERK:  ALL RISE.

3        (WHEREUPON, A SHORT RECESS WAS HAD.)

4        THE CLERK:  ALL RISE.  THE COURT IS BACK IN SESSION.

5        THE COURT:  IF YOU WOULD WANT TO RESUME WITH

6    QUESTIONING.

7        MR. SHUKER:  YOUR HONOR, ONE HOUSEKEEPING MATTER.  I

8    DON'T THINK I ASKED FOR 24 TO BE ADMITTED.  WE WOULD

9    REQUEST THAT EXHIBIT 24 BE ADMITTED.  IT'S THE CLAIM, THE

10   RECENTLY FILED CLAIM IN AEM.

11       THE COURT:  ANY OBJECTION?

12       MR. WELCH:  NO OBJECTION, YOUR HONOR.

13       THE COURT:  IT WILL BE ADMITTED.

14            CONTINUED DIRECT EXAMINATION

15   BY MR. SHUKER:

16       Q    MR. CUTHILL, I WANT TO FOLLOW UP OR FINALIZE ON A

17   COUPLE OF THINGS THAT WE WERE --- NOW, YOU'VE SEEN A NUMBER OF

18   E-MAILS AND WE'LL TALK ABOUT A FEW OF THEM FROM MS. SUMMERS,

19   WHO IS HERE TODAY AND THE CORPORATE REP OF THE IRS.

20            HAVE YOU EVER MET MS. SUMMERS IN PERSON?

21       A    I HAVE NOT.

22       Q    HAVE YOU EVER TALKED TO HER ON THE PHONE?

23       A    I HAVE ONCE OR TWICE.

24       Q    WHAT DID SHE TELL YOU?

25       A    SHE TOLD ME SHE HAD TO TALK TO MS. IDE BEFORE SHE

80

1   COULD TALK TO ME.

2        Q        AND DID SHE EVER TELL YOU ANYTHING SUBSTANTIVE?

3        A        NO.  ACTUALLY, SHE REFUSED TO TALK TO ME.

4        Q        OKAY.  LET'S THEN LOOK AT SOME OF HER PROS DESPITE

5   THIS LIMITED INVOLVEMENT.  TURN TO EXHIBIT 25, PLEASE.

6        A        ALL RIGHT.

7        Q        DO YOU RECOGNIZE THIS AS THE INTERNAL RECORDS OF THE

8   INTERNAL REVENUE SERVICE, IN THIS CASE, MS. SUMMERS, REGARDING

9   MIRABILIS?

10       A        IT'S PART OF IT, YES.

11               MR. SHUKER:  YOUR HONOR, WE WOULD LIKE TO ADMIT

12   EXHIBIT 25.

13               THE COURT:  ANY OBJECTION?

14               MR. WELCH:  NO OBJECTION, YOUR HONOR.

15               THE COURT:  IT WILL BE ADMITTED.

16   BY MR. SHUKER:

17       Q        I WOULD LIKE TO PUBLISH AND READ FOR YOU THE FIRST

18   ENTRY DATED 4/28/2010.  PLEASE MAKE TFRP INVESTIGATION THROUGH

19   ASSERTION.  WILLIAM CUTHILL IS THE PRESIDENT AND I BELIEVE THE

20   ONLY EMPLOYEE FOR PERIODS ENDING 01/2008/09 AND FORWARD, FWD.

21   DUE TO LITIGATION AND THE SENSITIVE HIGH DOLLAR CASE, I HAVE

22   OBTAINED THE APPROVAL OF CID AGENT, RICHARD SMITH, 3214412671,

23   AND AUSA RANDY GOLD, 407-647-7506, FOR THE TFRP INVESTIGATION.

24               DID I READ THAT CORRECTLY?

25       A        YES.

81

1     Q     DO YOU KNOW WHAT TFRP IS?

2     A     I DO NOT.

3     Q     WOULD IT SURPRISE YOU TO KNOW IT IS TRUST FUND

4    RECOVERY PROGRAM OR PENALTY?

5     A     IT COULD BE THE IRS HAS SO MANY ACROMINS, IT IS HARD

6    TO KEEP TRACK OF IT.

7     Q     AND THIS WAS DATED APRIL 28, 2010?

8     A     YES.

9     Q     OKAY.  SO THAT'S ABOUT SIX DAYS AFTER THE COURT

10   ENTERED THE ORDER OR HELD THE HEARING WHERE THE CLAIM IN

11   MIRABILIS WAS DISALLOWED?

12     A     YEAH, A WHOLE BUNCH OF THINGS HAPPENED RIGHT AT

13   THAT TIME.

14     Q     NOW, WHATEVER THE TFRP OF MR. CUTHILL  IS --- AGAIN,

15   WERE YOU PAYING YOUR WITHHOLDING TAXES DURING THE TIME YOU

16   WERE AN INDEPENDENT CONTRACTOR?

17     A     WELL, I PAID SELF-EMPLOYMENT TAXES ---

18     Q     SELF-EMPLOYMENT, I'M SORRY.

19     A     --- THROUGH MY ESTIMATED TAX PAYMENTS.  YOU PAY

20   ESTIMATED TAX PAYMENTS ON A QUARTERLY BASIS AND MOST OF MY

21   INCOME IS NON W'2 INCOME.  IT'S EITHER SELF-EMPLOYMENT TAX OR

22   INVESTMENT --- SELF-EMPLOYMENT INCOME OR INVESTMENT INCOME

23   AND SO I WOULD PAY SELF-EMPLOYMENT TAXES AS WELL AS INCOME

24   TAXES THROUGH ESTIMATED --- QUARTERLY ESTIMATED TAX PAYMENTS.

25     Q     I BELIEVE YOU SAID YOU PAID BALLPARK, $150,000.00

1   RELATED TO MIRABILIS?

2       A      THAT WOULD BE MY GUESS.  YES.

3       Q      AND WAS THE AGREEMENT THEN WHEN YOU GOT THAT

4   REFUNDED AFTER THE PARTIES --- AFTER BOTH SIDES SWITCHED HOW

5   THEY WERE DOING THEIR RETURNS, YOU WOULD CONTRIBUTE THAT TO

6   THE ESTATE?

7       A      YEAH, THE PLAN AS WELL AS THE ORDER CONTEMPLATED

8   THAT I WOULD FILE AMENDED PERSONAL INCOME TAX RETURNS.  I

9   WOULD GET A REFUND BECAUSE THERE WOULD BS SUBSTANTIAL

10  WITHHOLDING, W-2 WITHHOLDING FROM TREATING ME AS AN EMPLOYEE

11  AND THAT WOULD HAVE THE TAX PAID TWICE.

12      Q      OKAY.

13      A      I WOULD GET A REFUND AND THEN I WOULD REFUND THAT

14  MONEY TO MIRABILIS.

15      Q      HAVE YOU REFUNDED IT TO MIRABILIS YET?

16      A      NO, I HAVEN'T.

17      Q      WHY IS THAT?

18      A      WELL, I HAVEN'T GOTTEN A REFUND ON MY PERSONAL

19  RETURN BECAUSE THE W-2 WITHHOLDING WAS DISALLOWED BY THE

20  INTERNAL REVENUE SERVICE.

21      Q      BECAUSE OF THIS DISPUTE?

22      A      BECAUSE OF SWITCHING THE 400,000-DOLLARS.

23      Q      DID YOU WIFE GET PERSONAL LETTERS AS WELL?

24      A      BOTH OF US ARE GETTING PERSONAL LETTERS

25  INDEPENDENTLY ONCE A MONTH THAT ARE QUITE DISTRESSING.

83

1     Q     TURN TO EXHIBIT 26, PLEASE.

2     A     ALL RIGHT.

3     Q     DO YOU RECOGNIZE THIS AS MORE INTERNAL NOTES OF MS.

4 SUMMERS, THESE ARE ACTUALLY SOME E-MAILS, IN THE MAY 21ST, 2009

5 TIME PERIOD?

6     A     YEAH. I THINK THESE ARE E-MAILS.

7     Q     OKAY.

8           MR. SHUKER:  YOUR HONOR, WE WOULD LIKE TO ADMIT

9 EXHIBIT 26.

10          THE COURT:  ANY OBJECTIONS?

11          MR. WELCH:  NO OBJECTION, YOUR HONOR.

12          THE COURT:  THEY WILL BE ADMITTED.

13          MR. SHUKER:  I'M GOING TO PUBLISH THE ONE ON THE

14 SECOND PAGE, YOUR HONOR. IT'S AN E-MAIL FROM MS. SUMMERS

15 TO MR. SMITH DATED 5/22/09. IT'S ON THE SECOND PAGE.

16          MIRABILIS IS PAYING RW CUTHILL, JR. AS ITS PRESIDENT,

17 APPROXIMATELY 30K MONTHLY AND PART OF ITS MONTHLY

18 OPERATING REPORT IT SHOWS CUTHILL AS CONTRACT LABOR, YET

19 IN OTHER PARTS OF THE REPORT, IT CALLS HIM AN EMPLOYEE. IRC

20 3121(D) STATES THAT THE TERM EMPLOYEE MEANS ONE, ANY

21 OFFICER OF A CORPORATION. MIRABILIS HAS NOT DEPOSITED NOR

22 FILED FORM 941940 RETURNS TO COVER ITS PAYMENTS TO CUTHILL

23 AS AN EMPLOYEE, BUT RATHER, IS USING THE TERM CONTRACT

24 LABOR TO AVOID WITHHOLDING. I WOULD LIKE TO GET AN RO TO

25 DETERMINE TFRP AND I WOULD ALSO LIKE TO FILE AN

84

1    ADMINISTRATIVE CLAIM FOR THE UNDEPOSITED AND UNFILED

2    TAXES.

3        AND THEN ON THE FIRST PAGE, YOUR HONOR, ABOUT HALF

4    WAY THROUGH, IT'S FROM MR. GOLD TO MR. SMITH, MAY 21ST, 2009

5    TELL HER TO GO FOR IT.

6  BY MR. SHUKER:

7        Q    MR. CUTHILL, INSTEAD OF GOING FOR IT, DID MR. GOLD OR

8  MS. IDE REACH OUT TO DISCUSS WHAT WAS HAPPENING IN MAY OF 2009?

9        A    NO.  ON THE CONTRARY, WHEN I TRIED TO TALKED TO THE

10  INTERNAL REVENUE SERVICE THROUGH MS. SUMMERS, SHE REFUSED TO

11  TALK TO ME.

12        Q    AND SO THIS EXHIBIT 26, MAY OF 2009, I GUESS THEN LEAD TO

13  THEN WHAT WAS EXHIBIT 29, THE NOTICE THAT YOU GOT; CORRECT?

14        A    YES.

15        Q    AND THEN YOU RESPONDED TO THAT NOTICE THE NEXT DAY,

16  YOU'VE ALREADY SAID; CORRECT?

17        A    YES.

18        Q    AND WOULD YOU THEN TURN TO EXHIBIT 27?

19        A    ALL RIGHT.

20        Q    AGAIN, THESE ARE E-MAILS FROM VARIOUS PEOPLE WITHIN

21  THE IRS INCLUDING --- OR THE U.S. ATTORNEY'S OFFICE, MR. GOLD, MS.

22  SUMMERS.

23        MR. SHUKER:  YOUR HONOR, WE WOULD LIKE TO ADMIT

24    EXHIBIT 27.

25        THE COURT:  ANY OBJECTION?

85

1          MR. WELCH: NO OBJECTION, YOUR HONOR.

2          THE COURT: THEY'LL BE ADMITTED.

3   BY MR. SHUKER:

4      Q      SO THIS IS JULY 2009.  THIS IS AFTER YOU RESPONDED?

5      A      IT IS.

6      Q      OKAY.  AND ON THE SECOND PAGE, IT READS: CUTHILL

7   RESPONDED ON MIRABILIS' LETTERHEAD AND THEN IT HAS VERBIAGE.

8          DOES THAT ACCURATELY SAY WHAT YOU WROTE IN YOUR

9   LETTER?

10     A      YES.

11         MR. SHUKER: I'M GOING TO PUBLISH PORTIONS OF THIS

12   BOTTOM, YOUR HONOR.

13         THE THIRD PARAGRAPH, THIRD LINE, THIRD LINE --- THE

14   FOURTH LINE INTO IT.  HOW CAN HE CALL HIMSELF AN

15   INDEPENDENT CONTRACTOR WHEN HE IS THE PRESIDENT --- AND

16   THIS IS MS. SUMMERS' E-MAIL TO MR. SMITH, COPIED TO DIANE

17   MARTIN.  IF I AM MISSING SOMETHING, PLEASE ENLIGHTEN ME.  IS

18   IT POSSIBLE FOR HIM TO GET PAID AS AN INDEPENDENT

19   CONTRACTOR, YET BE THE PRESIDENT OF MIRABILIS? IF EVERYONE

20   IS IN AGREEMENT THAT WE SHOULD GO FULL STEAM AHEAD THEN I

21   PRESUME THAT WOULD BE FOR R.O. MARTIN TO SIGN AND

22   FORWARD THE RETURNS UNDER 6020(B) AS WELL AS FOR OUR

23   ADMIN CLAIM TO STAND.

24         MY PARTING SHOT IS THAT THE CIRCUMVENTION OF

25   PAYMENT OF EMPLOYMENT TAX IS WHAT'S GOT MIRABILIS AND ITS

86

1    RELATED ENTITIES AND AMADO IN TROUBLE WITH THE IRS IN THE

2    FIRST. IT DOESN'T LOOK LIKE ANYTHING IS LEARNED.

3    BY MR. SHUKER:

4        Q    MR. CUTHILL, WERE YOU CIRCUMVENTING PAYMENT OF

5    EMPLOYMENT TAX?

6        A    CERTAINLY NOT.

7        Q    THEN GO ---

8            MR. SHUKER: I'M GOING TO PUBLISH ON THE FIRST PAGE, MR.

9    GOLD'S E-MAIL TO MR. SMITH, JULY 15TH. LET CIVIL PROCEED.

10   CUTHILL CAN'T HAVE IT BOTH WAYS.

11   BY MR. SHUKER:

12       Q    WERE YOU HAVING IT BOTH WAYS, MR. CUTHILL?

13       A    WELL, AS IT TURNED OUT, I ENDED UP PAYING INCOME TAX

14   BOTH WAYS, SO --- OR DOUBLE.

15       Q    THAT WOULD BE TAKING IT BOTH SAYS.

16       A    SO I THINK THIS WOULD BE --- THE REVERSE OF THAT WOULD

17   BE TAKING IT BOTH WAYS. SO I DON'T SEE HOW I WAS TAKING IT BOTH

18   WAYS WHEN ALL THE TAXES HAVE PREVIOUSLY BEEN PAID AND HAD

19   PREVIOUSLY BEEN PAID PRIOR TO THIS.

20       Q    TURN TO EXHIBIT 28, PLEASE? AGAIN, THESE ARE MORE E-

21   MAILS ON OR ABOUT JULY 15TH, 2009 FROM MS. SUMMERS AND FROM

22   DIANE MARTIN.

23           MR. SHUKER: YOUR HONOR, I WOULD LIKE TO ADMIT

24   EXHIBIT 28.

25           THE COURT: ANY OBJECTION?

87

1          MR. WELCH: NO OBJECTION, YOUR HONOR.

2          THE COURT: IT WILL BE ADMITTED.

3          MR. SHUKER: I'M GOING TO PUBLISH THE LAST E-MAIL. THIS

4     IS FROM MS. DIANE MARTIN TO CHERYL SUMMERS DATED JULY

5     15TH. THANKS FOR THE INFO, CHERYL. DEPENDING ON CI, RANDY

6     GOLD'S RESPONSE, WILL YOU BE CONTACTING MR. CUTHILL? OR DO

7     YOU WANT ME TO RESPOND? I HESITATE TO DO ANYTHING IN

8     WRITING, YET IT ISN'T APPROPRIATE CUSTOMER SERVICE TO

9     IGNORE HIS LETTER. A PHONE CALL WOULD PROBABLY SUFFICE

10    AND IT WOULD BE GOOD TO HAVE --- IT WOULDN'T BE GOOD TO

11    HAVE MIRABILIS TELL THE JUDGE THE IRS DIDN'T RESPOND …

12    BY MR. SHUKER:

13          Q     DID THEY CALL YOU AFTER THIS?

14          A     NO.

15          Q     DID THEY WRITE YOU?

16          A     NO.

17          Q     DID THEY EVER REACH OUT TO TRY AND SETTLE THIS

18    DISPUTE UNTIL WE FINALLY SETTLED IT AS PART OF CONFIRMATION?

19          A     NO, ON THE CONTRARY. I ACTUALLY CALLED THEM AND

20    THEY REFUSED TO TALK TO ME.

21          Q     NOW, I THINK IT'S BEEN STIPULATED, THE IRS NEVER

22    ACTUALLY FILED THE ADMINISTRATIVE CLAIM AS A PLEADING. IT WAS

23    FILED AS A PROOF OF CLAIM AND THEN SOMEBODY WITHIN THE COURT

24    MOVED IT ON THE DOCKET. IS THAT YOUR UNDERSTANDING?

25          A     RIGHT. IT STAYED AS A PROOF OF CLAIM FOR --- OH I DON'T

1   KNOW --- MAYBE UP TO THE CONFIRMATION.  I FORGET WHEN IT WAS

2   MOVED, BUT IT WAS MOVED WAY INTO THE CASE.

3       Q      OKAY.  AND IT WASN'T MOVED BY REQUEST OF THE IRS,

4   SOMEBODY INTERNALLY WITHIN THE COURT DID THAT.

5       A      I DON'T KNOW WHO MOVED IT.

6       Q      OKAY.  AND DID THE IRS EVER REQUEST THAT THE

7   ADMINISTRATIVE CLAIM BE SET FOR HEARING?

8       A      NOT THAT I'M AWARE OF.

9       Q      FINALLY, MR. CUTHILL, EXHIBIT 30.  I JUST WANT TO SEE IF

10   YOU RECOGNIZE IT.  DO YOU RECOGNIZE EXHIBIT 30 AS THE

11   CONFIRMATION ORDER ENTERED IN THE JOINT PLAN FOR EVERGREEN

12   SECURITY?

13      A      I DON'T HAVE AN EXHIBIT 30 IN MY BOOK.

14             THE COURT:  HERE YOU GO.

15             THE WITNESS:  THANK YOU.

16             AND WOULD YOU REPEAT YOUR QUESTION.

17   BY MR. SHUKER:

18      Q      DO YOU RECOGNIZE THIS AS THE CONFIRMATION ORDER IN

19   THE EVERGREEN CASE?

20      A      I DO.

21      Q      DOCKET ENTRY 1146.

22      A      YES.

23             MR. SHUKER:  YOUR HONOR, WE WOULD LIKE TO HAVE

24   EXHIBIT 30 ADMITTED.

25             MR. WELCH:  YOUR HONOR, MY ONLY OBJECTION IS A

1    RELEVANCE OBJECTION. I CAN'T IMAGINE WHAT IT HAS TO DO

2    WITH THIS.

3         THE COURT: AND WHAT'S YOUR RESPONSE, MR. SHUKER?

4         MR. SHUKER: THE SAME FOUR PARAGRAPHS IN THE

5    CONFIRMATION IS STANDARD PARAGRAPHS WHERE PROPERTY

6    WAS FREE AND CLEAR. THERE'S AN EXTENDED INJUNCTION,

7    PARTIES ARE ENJOINED ARE IN THIS ORDER AND IT WILL BE PART

8    OF MY CLOSING ARGUMENTS.

9         MR. WELCH: I RENEW MY OBJECTION. IT'S NOT RELEVANT

10   TO THIS WHAT EVERGREEN DID.

11        THE COURT: OVERRULED. IT WILL BE ADMITTED. I'LL GIVE

12   IT WHATEVER RELEVANCE I ULTIMATELY DEEM IT DUE, BUT

13   THERE'S CERTAINLY NOTHING, ANYTHING UNTOWARD

14   INTRODUCING AN ORDER IN ANOTHER BANKRUPTCY CASE.

15        MR. WELCH: THANK YOU, YOUR HONOR.

16        THE COURT: I'LL ADMIT EXHIBIT 30.

17        MR. SHUKER: I HAVE NO FURTHER QUESTIONS. THANK YOU,

18   MR. CUTHILL.

19        MR. WELCH: COULD WE HAVE JUST A FEW MINUTES, YOUR

20   HONOR.

21        THE COURT: THAT'S WHY WE TOOK A BREAK. I'M SORRY.

22   YOU'LL NEED TO PROCEED.

23        MS. IDE: ACTUALLY, YOUR HONOR, IF WE COULD, WE

24   DISCUSSED WITH MR. SHUKER BEFORE, WE HAVE A COUPLE OF

25   VERY BRIEF QUESTIONS TO ASK MR. CARPENTER. WE CONDUCTED

90

1    THE TRUST RECOVERY INVESTIGATION AND HE HAS A 3:30

2    APPOINTMENT, IF WE COULD TAKE OUT OF TURN.

3        THE COURT:  I DON'T MIND DOING THAT AT ALL.  IF YOU'LL

4    JUST TAKE A SEAT OVER THERE, MR. CUTHILL, YOU'LL BE BACK IN

5    MUST A MINUTE.

6        MR. CUTHILL:  THANK YOU.

7        THE COURT:  OH THANK YOU.  THANK YOU.

8        AND MR. CARPENTER, IF YOU COULD COME FORWARD AND

9    BE SWORN.

10       GEORGE D. CARPENTER,

11    HAVING BEEN DULY SWORN, WAS EXAMINED AND TESTIFIED AS

12    FOLLOWS:

13        THE CLERK:  WOULD YOU PLEASE STATE YOUR FULL NAME

14    AND ADDRESS FOR THE RECORD?

15        THE WITNESS:  GEORGE D. CARPENTER, 850 DOGAR COURT,

16    SUITE 200, MAITLAND, FLORIDA 32751.

17        DIRECT EXAMINATION

18    BY MS. IDE:

19        Q    GOOD AFTERNOON, MR. CARPENTER, YOU'RE A REVENUE

20    OFFICER WITH THE INTERNAL REVENUE SERVICE AND HAVE BEEN ONE

21    FOR APPROXIMATELY 19 YEARS AND YOUR JOB IS TO SECURE TAX

22    RETURNS, COLLECT TAXES, IS THAT CORRECT?

23        THE COURT:  MS. IDE, IF YOU WOULD LIKE TO ASK A NON-

24    LEADING QUESTION, YOU MAY BE SO.

25        MS. IDE:  I'M SORRY.  AS A PRELIMINARY MATTER, YOUR

91

1          HONOR, I'M JUST TRYING TO EXPEDITE THINGS.

2    BY MS. IDE:

3          Q       MR. CARPENTER, PLEASE STATE YOUR JOB WITH THE

4    INTERNAL REVENUE SERVICE?

5          A       I FUNCTION AS A REVENUE OFFICER WITH THE U.S.

6    TREASURY, IRS.

7          Q       AND WHAT DO YOU DO AS A REVENUE OFFICER?

8          A       PRIMARILY, I CONDUCT FEDERAL TAX INVESTIGATIONS IN

9    RESPECT TO OUTSTANDING TAX AND OUTSTANDING TAX RETURNS.

10         Q       DO YOU --- AND YOU'VE BEEN DOING THIS FOR HOW LONG?

11         A       NINETEEN PLUS YEARS.

12         Q       DO YOU CONDUCT WHAT'S CALLED TRUST FUND RECOVERY

13   PENALTY INVESTIGATIONS?

14         A       YES, MA'AM.

15         Q       AND WHAT ARE THEY?

16         A       THE TRUST FUND RECOVERY PENALTY INVESTIGATION IS AN

17   INVESTIGATION WHERE THE SERVICE INTERVIEWS CORPORATE OFFICERS

18   IN RESPECT TO OUTSTANDING PAYROLL TAX OF THE TRUST FUND

19   PORTION OF THAT TAX, WHICH IS THE WITHHOLDING AND HALF OF THE

20   SOCIAL SECURITY.

21         Q       AND IS THAT A LIABILITY --- IS THE TRUST FUND TAX --- OR

22   THE TRUST FUND RECOVERY PENALTY ALSO KNOWN AS THE 100-PERCENT

23   PENALTY OR THE RESPONSIBLE OFFICER PENALTY?  IS THAT A PHRASE

24   THAT IS USED TO DESCRIBE THAT?

25         A       THAT IS CORRECT.

92

1    Q    AND IS THAT LIABILITY SEPARATE FROM THE

2    CORPORATION'S LIABILITY FOR EMPLOYMENT TAX?

3    A    IF AN ASSESSMENT WERE TO BE MADE, IT WOULD BE AN

4    INDIVIDUAL ASSESSMENT.

5    Q    AGAINST AN INDIVIDUAL YOU MEAN?

6    A    THAT IS CORRECT.

7    Q    AND THE CORPORATION HAS ITS OWN ASSESSMENTS OR TAX

8    LIABILITIES SEPARATE FROM THAT INDIVIDUALS; CORRECT?

9    A    WHICH WOULD BE THE PAYROLL TAX LIABILITIES

10   THEMSELVES.

11   Q    IN APRIL OF 2010, YOU WERE ASSIGNED TO INVESTIGATE

12   WHETHER MR. CUTHILL MIGHT BE LIABLE FOR THE UNPAID TRUST FUND

13   TAXES OF MIRABILIS VENTURES, INC. FOR THE BANKRUPTCY TIME

14   PERIODS, 2008 TO 2009.  IS THAT CORRECT?

15   A    THAT IS CORRECT.

16   Q    WHEN YOU --- YOU RECEIVED THE ASSIGNMENT FROM HIM.

17   A    I RECEIVED THE ASSIGNMENT FROM MRS. SUMMERS OUT OF

18   INSOLVENCY UNIT.

19   Q    DID MRS. SUMMERS INDICATE TO YOU WHO MIGHT BE THE

20   SUBJECT OF YOUR INVESTIGATION?

21   A    YES, SHE DID.

22   Q    AND WHO WAS THAT?

23   A    MR. CUTHILL.

24   Q    WHY?

25   A    PARDON ME.

93

1      Q      WHY MIGHT MR. CUTHILL BE THE SUBJECT OF YOUR TRUST

2    FUND RECOVERY PENALTY INVESTIGATION?

3            MR. SHUKER:  OBJECTION, YOUR HONOR, I THINK SHE'S

4    ASKING WHAT MS. SUMMERS' TOLD HIM AND THAT'S HEARSAY.

5            THE COURT:  AND YOUR RESPONSE?

6            MS. IDE:  I'M A LITTLE CONFUSED.  I'LL REPHRASE THE

7    QUESTION.

8    BY MS. IDE:

9      Q      WHAT WAS YOUR UNDERSTANDING OF YOUR ASSIGNMENT?

10           MR. SHUKER:  OBJECTION, YOUR HONOR, THE FOUNDATION

11   WOULD HAVE TO BE FROM WHAT HE WAS TOLD BY SOMEBODY

12   ELSE.

13           THE COURT:  I'LL OVERRULE.  HE CAN ANSWER THE

14   QUESTION, MR. CARPENTER.

15           MR. CARPENTER:  THE BASIS OF MY INVESTIGATION WAS TO

16   CONDUCT THE TRUST FUND RECOVERY PENALTY INVESTIGATION

17   IN WHICH MR. CUTHILL WAS INDICATED TO BE THE SOLE OFFICER.

18   BY MS. IDE:

19     Q      IN PREPARATION FOR YOUR INVESTIGATION, WHAT KIND OF

20   DATA DID YOU GATHER?

21     A      I GATHERED DATA FROM OUR INTEGRATED DATA RETRIEVAL

22   SYSTEM, IDRS, AND I ALSO GATHERED INFORMATION FROM OUR

23   INTERGRADED COLLECTION SYSTEM, OUR ICS HISTORY.

24     Q      DID YOU CONFIRM THAT MIRABILIS HAD UNPAID TAXES ON

25   THE BOOKS OF THE IRS FOR 2008 AND 2009?

1      A      YES, I DID.

2      Q      AND DID YOU ALSO LOOK INTO WHETHER MR. CUTHILL HAD

3  ANY LIABILITIES OR WAS IN COMPLIANCE WITH FILING TAX RETURNS?

4      A      YES, I DID.

5      Q      IS THAT ROUTINE?

6      A      YES, IT IS.

7      Q      WHAT WAS YOUR RESOLVE?  AT THE TIME YOU WERE

8  ASSIGNED THE CASE, HAD MR. CUTHILL FILED HIS PERSONAL INCOME

9  TAX RETURNS THAT WERE DUE AFTER THAT DATE?

10     A      HE HAD.

11     Q      HE HAD?

12     A      YES, MA'AM, HE HAD.

13     Q      DID HE HAVE --- WAS HE CURRENT WITH PAYMENT OF HIS

14  PERSONAL INCOME TAX LIABILITIES?

15     A      NO, MA'AM.

16     Q      WHEN DID YOU LAST REVIEW WHETHER MR. CUTHILL WAS

17  CURRENT ON PAYMENT OF HIS PERSONAL INCOME TAX LIABILITIES?

18     A      AS OF SEPTEMBER 14TH, THIS YEAR.

19     Q      AND WHAT WAS THE RESULT?

20     A      THERE WERE EXISTING LIABILITIES FOR THE 1040 FOR YEAR

21  2008.

22     Q      DID YOU CONTACT MR. CUTHILL AND INTERVIEW HIM

23  REGARDING MIRABILIS' EMPLOYMENT TAX LIABILITIES?

24     A      I MADE DIRECT CONTACT WITH MR. CUTHILL IN LIGHT OF

25  PAYROLL TAX LIABILITIES ASSOCIATED WITH MIRABILIS VENTURES AND

1   THAT WAS IN CONJUNCTION WITH THE INVESTIGATIVE REQUEST TO

2   CONDUCT THE TRUST FUND RECOVERY PENALTY INVESTIGATION.

3   Q     DID YOU MAKE AN APPOINTMENT WITH MR. CUTHILL?

4   A     YES, I DID.

5   Q     AND YOU MET WITH HIM ---

6   A     YES, I DID.

7   Q     --- AT THE APPOINTED TIME?  WAS YOUR INVESTIGATION

8   SUSPENDED AT THE REQUEST OF COUNSEL?

9   A     YES, IT WAS.

10   Q     SO YOU'VE MADE NO FINAL CONCLUSIONS REGARDING THE

11   TRUST FUND RECOVERY PENALTY?

12   A     I HAVE NOT.

13   Q     OKAY.

14         MS. IDE:  THANK YOU.  I HAVE NOTHING FURTHER.

15         THE COURT:  MR. SHUKER.

16                    CROSS EXAMINATION

17   BY MR. SHUKER:

18   Q     SIR, YOU WERE, OF COURSE, TOLD THERE WAS AN

19   UNDERLYING DISPUTE BEING LITIGATED IN THE BANKRUPTCY COURT;

20   CORRECT?

21   A     I WAS NOT.

22   Q     YOU WEREN'T?  AND YOU WERE, OF COURSE, TOLD BY MS.

23   IDE THAT THE $400,000.00 CREDIT COULD BE USED FOR THE 941 TAXES AS

24   SOON AS THE CLAIM OBJECTION WAS RESOLVED?

25         MS. IDE:  OBJECTION, YOUR HONOR, THIS IS BEYOND THE

96

1          SCOPE.

2                MR. SHUKER:  SHE ASKED HIM ABOUT THE DATA HE LOOKED

3          AT.

4                THE COURT:  UNFORTUNATELY, YOU DID.  THAT DOOR IS

5          OPEN.

6                THE WITNESS:  I WAS NOT, SIR.

7    BY MR. SHUKER:

8          Q     AND YOU WERE TOLD THAT THERE WAS AN ORDER BY THIS

9    COURT DISALLOWING THE IRS CLAIM TOO?

10          A     I WAS NOT, SIR.

11          Q     OKAY.  AND ACTUALLY, IT'S NOT VERY COMMON FOR YOUR

12    TO GO INVESTIGATE AN INDIVIDUAL WHEN THERE'S SUCH AN ONGOING

13    DISPUTE, IS IT?

14          A     IT IS COMMON FOR ME TO CONDUCT TRUST FUND RECOVERY

15    PENALTY INVESTIGATIONS.

16          Q     BUT IT'S UNCOMMON TO DO SO IN THE FACE OF A DISPUTE,

17    WHEN THERE'S ONGOING LITIGATION ON THE ISSUE?

18          A     I WOULD AGREE WITH THAT.

19          Q     IT'S NOT TYPICAL?

20          A     NOT IN CONJUNCTION WITH LITIGATION.

21                MR. SHUKER:  OKAY.  I HAVE NO FURTHER QUESTIONS.

22                MS. IDE:  JUST BRIEFLY, YOUR HONOR.

23                THE COURT:  CERTAINLY.

24                      REDIRECT EXAMINATION

25    BY MS. IDE:

97

1       Q       REVENUE OFFICER CARPENTER, WAS THERE LITIGATION

2   REGARDING MR. CUTHILL'S PERSONAL LIABILITIES AT THE TIME YOU

3   BEGAN YOUR TRUST FUND RECOVERY PENALTY INVESTIGATION?

4       A       NO, MA'AM.

5               MS. IDE:  THANK YOU.  I HAVE NOTHING FURTHER AND I ASK

6       THAT HE BE EXCUSED.

7               THE COURT:  CAN MR. CARPENTER LEAVE?

8               MR. SHUKER:  YES, YOUR HONOR.

9               THE COURT:  THANK YOU VERY MUCH.

10              THE WITNESS:  THANK YOU, YOUR HONOR.

11              THE COURT:  THANK YOU FOR YOUR PATIENCE THIS

12      AFTERNOON.  I KNOW IT WAS LARGELY MY FAULT.

13              THE WITNESS:  THANK YOU SO MUCH.

14              THE COURT:  I APPRECIATE IT.  THANK YOU.

15              MR. CUTHILL, IF YOU'D LIKE TO RETURN TO THE STAND.

16              MR. WELCH:  MAY I PROCEED, YOUR HONOR?

17              THE COURT:  YES, PLEASE.

18              MR. WELCH:  THANK YOU, YOUR HONOR.

19                          CROSS EXAMINATION

20  BY MR. WELCH:

21      Q       GOOD AFTERNOON, MR. CUTHILL.

22      A       GOOD AFTERNOON.

23      Q       MR. CUTHILL, IN YOUR CONVERSATION WITH MR. SHUKER,

24  YOU WENT OVER THE HISTORY OF YOUR INVOLVEMENT WITH VARIOUS

25  ENTITIES AND I BELIEVE YOU TESTIFIED BEFORE CONCERNING YOUR

98

1    HISTORY AS A CPA. IS THAT CORRECT?

2        A    YES.

3        Q    YOU'VE GIVEN UP YOUR CPA LICENSE?

4        A    I DID AT THE END OF 2008.

5        Q    OKAY. WHY DID YOU GIVE UP YOUR CPA LICENSE?

6        A    WELL, I HAVEN'T PRACTICE AS A CPA SINCE 2000 --- SINCE I

7    RETIRED FROM MY CPA FIRM IN 2001, AND I DIDN'T NEED THE LICENSE TO

8    CONTINUE TO DO WHAT I HAVE BEEN DOING.

9        Q    ALL RIGHT. WHAT WOULD YOU SAY --- YOU SAID YOU DON'T

10    NEED YOUR LICENSE TO DO WHAT --- I'M SORRY, I DIDN'T UNDERSTAND

11    YOU.

12        A    TO CONTINUE DOING WHAT I HAVE BEEN DOING FOR THE

13    LAST NINE YEARS, WHICH HAS GENERALLY BEEN ACTING AS A

14    BANKRUPTCY TRUSTEE OR AN EXAMINER, OR AN EXPERT WITNESS.

15        Q    ALL RIGHT. AND SO SINCE WHAT YEAR HAVE YOU BEEN

16    PRIMARILY ACTING AS A BANKRUPTCY TRUSTEE OR EXAMINER?

17        A    I STARTED THE PROCESS OF CONVERTING FROM BEING AN

18    AUDIT PARTNER IN MY FIRM IN THE MIDDLE 1990S. ACTUALLY, IT

19    STARTED IN THE MIDDLE OF THE 1980S, BUT IN ERNEST IN THE MIDDLE

20    1990S. I RETIRED FROM MY FIRM JULY 21, 2001 AND HAVE DEVOTED ALL

21    OF MY TIME TO LITIGATION EFFORTS, MOSTLY SURROUNDING THE

22    BANKRUPTCY COURT AND MAJOR FRAUD CASES SINCE THEN.

23        Q    ALL RIGHT. SIR, NOW, FROM THE PERIOD 2000 THROUGH 2002,

24    WOULD YOU SAY THAT YOU WERE AN ACCOUNTANT FOR CHAPTER 11

25    DEBTORS?

1      A      I MAY HAVE ACTED IN THAT CAPACITY, BUT THAT WASN'T

2   THE PRIMARY THING I DID.

3      Q      WHAT WAS THE PRIMARY THING THAT YOU DID?

4      A      IN THE PERIOD --- YOU SAID 2001 THROUGH 2002?

5      Q      2000 THROUGH 2002, YES.

6      A      2000 THROUGH 2002. ALL RIGHT. IN 2000 THROUGH JULY 21,

7   2001, I WAS STILL A PARTNER IN THE FIRM --- THE CPA FIRM OF CUTHILL

8   AND EDDY, LLP.

9            IN 2000 --- JULY 21, 2001 I RETIRED. AT THAT POINT, I BECAME

10  THE DIRECTOR OF BANKRUPTCY AND INSOLVENCY PRACTICE FOR

11  QUANTUM CONSULTING GROUP, LLP, WHICH WAS SUBSIDIARY OF

12  CUTHILL AND EDDY. I BECAME AN EMPLOYEE. MY DUTIES AT THAT

13  POINT WERE PRIMARY IN THE AREA OF BEING EITHER AN EXPERT

14  WITNESS OR A BANKRUPTCY TRUSTEE IN THE WORLD VISION

15  ENTERTAINMENT, INC. AND THE EVERGREEN SECURITY LIMITED CASES.

16     Q      AND HOW LONG DID YOUR PRACTICE AS A BANKRUPTCY

17  TRUSTEE PROCEED THEN AFTER THAT DATE?

18     A      WELL, I HAVE ACTED ON AND OFF AS A BANKRUPTCY

19  TRUSTEE SINCE THE MIDDLE 90S. I THINK THE LAST CASE I WAS A

20  TRUSTEE IN WAS THE EVERGREEN CASE, WHICH WHEN IT CONVERTED, I

21  CHANGED FROM BEING A TRUSTEE TO AN OFFICER OF THE COMPANY

22  THAT IN ESSENCE HAS BEEN LIQUIDATING --- A SELF-LIQUIDATING

23  COMPANY.

24     Q      WHAT WAS THE BUSINESS OF EVERGREEN?

25     A      IT WAS PONZI SCHEME. IT WAS A PHONY OFF-SHORE MUTUAL

1    FUND THAT WAS A PONZI SCHEME RUN OUT OF ORLANDO, FLORIDA.

2        Q        AND WHEN DID THAT CASE WIND UP?  WHEN DID YOUR

3    INVOLVEMENT WITH EVERGREEN END?

4        A        I HAS NOT ENDED.

5        Q        NOW, SIR, IN THE PERIOD OF 2003 TO 2004, WERE YOU THE

6    CHIEF RESTRUCTURING OFFICER FOR A 20-MILLION DOLLAR PLUS

7    DISTRIBUTOR IN CHAPTER 11 IN ORLANDO?

8        A        I WAS.

9        Q        AND WHAT CASE WAS THAT?

10        A        LENTEK INTERNATIONAL.

11        Q        AND WAS THAT IN BANKRUPTCY?

12        A        IT WAS IN CHAPTER 11.

13        Q        ALL RIGHT.  AND YOU WERE THE CHIEF RESTRUCTURING

14    OFFICER.  WHAT DID THAT ENTAIL?  WHAT IS THE CHIEF RESTRUCTURING

15    OFFICER?

16        A        THAT'S KIND OF A LARGE TERM THAT CAN MEAN MANY

17    THINGS.  I TRIED TO GET THE COMPANY SOLD TO EITHER A VENTURE

18    CAPITAL OR ANOTHER GROUP OF INVESTORS THAT WOULD BRING IN

19    CAPITAL AND ALLOW THE COMPANY TO REORGANIZE ITSELF.

20        Q        OKAY.  AND AS RESTRUCTURING OFFICER, WERE YOU, IN

21    FACT, AN OFFICER OF --- WHAT WAS THE NAME OF THE COMPANY AGAIN?

22        A        LENTEK INTERNATIONAL.

23        Q        OKAY.  WERE YOU ACTUALLY AN OFFICER OF LENTEK

24    INTERNATIONAL?

25        A        I THINK THAT WAS THE TITLE.  I DON'T THINK I WAS AN

101

1    OFFICER IN THE SENSE OF THE PRESIDENT OF THE COMPANY OR THE VICE

2    PRESIDENT OF THE COMPANY.

3        Q    ALL RIGHT.  WELL, THEN IN WHAT SENSE WERE YOU AN

4    OFFICER?

5        A    IT WAS A TITLE.

6        Q    WHEN YOU SAY IT WAS A TITLE, IN WHAT SENSE WAS IT A

7    TITLE, WHO GAVE YOU THIS TITLE?

8        A    I BELIEVE THE COURT DID.

9            THE COURT:  YES.

10   BY MR. WELCH:

11       Q    SO THE COURT APPOINTED YOU AS AN OFFICER?

12       A    I THINK THE DEBTOR AT THE TIME REQUESTED THAT I BE

13   APPOINTED AS THE CHIEF RESTRUCTURING OFFICER.

14       Q    AND DID THAT MAKE YOU PRESIDENT OF THE CORPORATION

15   OR --- I'M CONFUSED AS TO WHAT EXACTLY THAT MET.

16       A    NO, THE CORPORATION HAD ITS OWN OFFICERS AND

17   DIRECTORS.

18       Q    SO WERE YOU A RESTRUCTURING OFFICER ONLY FOR

19   PURPOSES OF THE BANKRUPTCY.  IS THAT A BANKRUPTCY TITLE RATHER

20   THAN A CORPORATE TITLE?

21       A    I DON'T KNOW HOW TO ANSWER THE QUESTION.

22       Q    WELL, HOW DID YOU VIEW YOURSELF?

23       A    I DID NOT VIEW MYSELF AS AN OFFICER OF THE

24   CORPORATION, A VOTING OFFICER OF THE CORPORATION.

25       Q    DID YOU VIEW YOURSELF AS A NON-VOTING OFFICER OF THE

102

1    CORPORATION IN SOME CAPACITY?

2          A    NO.

3          Q    I'M STILL CONFUSED, SIR.  THEN WHAT EXACTLY --- WHAT

4    KIND OF AN OFFICER ---

5                MR. SHUKER:  OBJECTION, YOUR HONOR.

6          Q    --- WERE YOU?

7                MR. SHUKER:  IT'S BEYOND THE SCOPE OF THE DIRECT.  IT'S

8    NOT RELEVANT.

9                THE COURT:  YEAH.  WHERE ARE WE GOING ON THIS?

10                MR. WELCH:  YOUR HONOR, I'M TRYING TO GET AN

11    UNDERSTANDING SINCE MR. CUTHILL TESTIFIED IN GREAT DEPTH

12    WITH MR. SHUKER CONCERNING HIS UNDERSTANDING OF HIS

13    POSITION WITH VARIOUS CORPORATIONS, INCLUDING EVERGREEN,

14    WHICH IS NOT INVOLVED IN THIS CASE AND HOW THAT RELATES

15    TO WHETHER OR NOT HE WAS AN EMPLOYEE OR AN INDEPENDENT

16    CONTRACTOR OF VARIOUS ENTITIES, AND I'M TRYING TO EXPLORE,

17    HOPEFULLY, HIS RELATIONSHIP WITH OTHER ENTITIES IN THAT

18    REGARD BEFORE BANKRUPTCY COURTS OVER A PERIOD OF TIME.

19                THE COURT:  BUT HOW IS THAT RELEVANT TO THE DEBTOR'S

20    LIABILITY?

21                MR. WELCH:  I AM SORRY, YOUR HONOR.

22                THE COURT:  HOW IS THAT RELEVANT TO THE DEBTOR'S

23    LIABILITY?

24                MR. WELCH:  YOUR HONOR, THEY BROUGHT UP THE ISSUE OF

25    THE EMPLOYMENT TAX LIABILITY AND MR. CUTHILL'S

103

1    RELATIONSHIP TO THAT, AND I BELIEVE THAT PART OF THIS CASE

2    INVOLVES THE PENALTIES AND INTEREST INVOLVING THIS

3    COMPANY, AND SO, MR. CUTHILL IS THE ONE WHO HAS TESTIFIED

4    CONCERNING THAT AND AS TO WHETHER OR NOT --- AND I BELIEVE

5    THIS WOULD BE THEIR DEFENSE --- THAT THERE WAS SOME SORT

6    OF ACTION BY THE UNITED STATES WHICH WOULD SANCTIFY THE

7    TREATMENT THAT THE DEBTOR HAD, AND OBVIOUSLY, MR.

8    CUTHILL BEING THE ONE WHO WAS INVOLVED IN THAT

9    NEGOTIATION, HIS UNDERSTANDING OF HIS ROLE WOULD BE

10   RELEVANT.

11        THE COURT:  BUT HOW IS HIS ROLE IN LENTEK, A CASE

12   THAT'S TEN YEARS OR SO OLD, RELEVANT?

13        MR. WELCH:  WELL, IT WOULD BEAR ON MR. CUTHILL'S

14   UNDERSTANDING OF THE WHOLE PROCESS.  HE'S TESTIFIED THAT

15   HIS PROCESS WITH THE IRS IN THIS CASE AND IS RAISING THAT ---

16   THE DEBTOR IS RAISING THAT AS AN DEFENSE AGAINST PENALTIES

17   AND INTEREST IN THIS CASE, AND SINCE MR. CUTHILL WAS THEIR

18   REPRESENTATIVE, I BELIEVE HIS UNDERSTANDING OF THE ENTIRE

19   PROCESS IS RELEVANT TO THIS CASE.

20        THE COURT:  OH HEAVENS.  SO I NEED TO --- I WILL SUSTAIN

21   THE OBJECTION.

22        MR. WELCH:  I'M SORRY, YOUR HONOR.

23        THE COURT:  THE OBJECTION IS SUSTAINED.

24        MR. WELCH:  YES, YOUR HONOR.

25   BY MR. WELCH:

104

1       Q       MR. CUTHILL, YOU'VE TESTIFIED ON DIRECT THAT YOU

2   CONSULTED WITH AS YOU PUT IT, YOUR CPA, CONCERNING YOUR

3   POSITION AS AN EMPLOYEE OR INDEPENDENT CONTRACTOR IN THE

4   EARLY PART OF THE BANKRUPTCY IN THIS CASE. THAT IS, BEFORE

5   CONFIRMATION. IS THAT CORRECT?

6       A       YES.

7       Q       AND WHO WAS THAT --- WHO, SPECIFICALLY, DID YOU

8   CONSULT WITH?

9       A       I TALKED TO BOTH MARYANNE GARTNER AND RUSTY

10  BALDWIN.

11              THE COURT:  AND I JUST DIDN'T HEAR, RUSTY?

12              THE WITNESS:  BALDWIN.

13              THE COURT:  THANK YOU.

14              THE WITNESS:  B-A-L-D-W-I-N. AND GARDNER IS G-A-R-T-N-E-

15      R.

16              THE COURT:  THANK YOU.

17  BY MR. WELCH:

18      Q       ALL RIGHT. WE'LL TAKE THE FIRST ONE, MARYANNE, I'M

19  SORRY.

20      A       GARTNER.

21      Q       GARTNER. AND WHO IS SHE AND WHAT FIRM IS SHE WITH?

22      A       SHE'S AN ACCOUNTANT WITH BALDWIN AND COMPANY

23  CPA'S. THEY'RE LOCATED AT 2185 NORTH PARK AVENUE, WINTER PARK,

24  FLORIDA.

25      Q       OKAY. AND WAS SHE THE FIRST PERSON THAT YOU SPOKE

1    WITH CONCERNING YOUR POSITION AS AN EMPLOYEE OR INDEPENDENT

2    CONTRACTOR IN THIS MATTER?

3        A    THE FIRST PERSON AT THAT FIRM?

4        Q    YES.

5        A    I DON'T RECALL WHETHER I TALKED TO MR. BALDWIN FIRST

6    OR MS. GARTNER FIRST OR I TALKED TO THEM TOGETHER.

7        Q    ALL RIGHT.  YOU SAID WITH THIS FIRM.  WAS THERE A PRIOR

8    CONTACT THAT YOU HAD CONCERNING YOUR POSITION AS AN EMPLOYEE

9    OR INDEPENDENT CONTRACTOR?

10        A    WITH MIRABILIS?

11        Q    YES.

12        A    IN WAS THERE PRIOR CONVERSATION WITH WHOM?

13        Q    WELL, YOU SAID WITH THIS FIRM, WHICH MIGHT IMPLY THAT

14    THERE WAS PRIOR FIRM THAT YOU SPOKE WITH.  WHO IS THE FIRST

15    PERSON OR ENTITY THAT YOU SPOKE WITH CONCERNING YOUR POSITION

16    AS AN EMPLOYEE OR INDEPENDENT CONTRACTOR CONCERNING

17    MIRABILIS, AEM OR ANY OTHER OF THE CONSOLIDATED DEBTORS?

18        A    THE FIRST PERSON I WOULD HAVE TALKED TO ABOUT THAT

19    WAS MY COUNSEL.

20        Q    AND WHO WAS THAT?

21        A    ELIZABETH GREENE.

22        Q    AND WHEN DID YOU SPEAK WITH MS. GREENE?

23        A    PRIOR TO ME BECOMING THE PRESIDENT OF THE COMPANY,

24    SO PRIOR TO MAY 27, 2008.

25        Q    OKAY.  AND DO YOU RECALL WHEN YOU SPOKE WITH HER?

106

1      A    IT WAS EITHER THAT DAY, MAY 27TH OR IMMEDIATELY

2   PROCEEDING THAT DAY, WITHIN A DAY OR TWO. WE TALKED ABOUT

3   WHAT MY ROLE WOULD BE WITH THE COMPANY.

4      Q    AND IS MS. GREENE WITH A LAW FIRM?

5      A    SHE IS.

6      Q    AND WHAT LAW FIRM IS THAT?

7      A    ACTUALLY, TODAY, SHE'S WITH BAKER, HOSTETTLER, I

8   BELIEVE.

9      Q    AND WHO WAS SHE WITH AT THE TIME THAT YOU SPOKE

10  WITH HER ON MAY 27, 2008?

11     A    LATHAM, SHUKER, EDEN AND BEAUDINE, MY CURRENT

12  COUNSEL.

13     Q    YOUR CURRENT COUNSEL. AND SO YOU SPOKE WITH

14  SOMEBODY WITH THE FIRM THAT MR. SHUKER IS WITH. SHE WAS WITH

15  THAT FIRM AT THAT TIME?

16     A    SHE WAS A PARTNER IN THAT FIRM AT THAT TIME AND SHE

17  WAS HANDLING THE MIRABILIS CASE.

18     Q    ALL RIGHT. SO SHE'S THE FIRST PERSON THAT YOU SPOKE

19  WITH ON MAY 27TH?

20     A    ON OR ABOUT MAY 27TH. IT COULD HAVE BEEN JUST PRIOR

21  TO MAY 27TH.

22     Q    AND CAN YOU TELL ME WHAT HAPPENED DURING THAT

23  CONVERSATION?

24        MR. SHUKER: OBJECTION, YOUR HONOR. THAT'S AS CLOSE

25      AS YOU CAN GET TO ATTORNEY-CLIENT.

1        THE COURT:  YES.  SUSTAINED.

2        MR. WELCH:  I'M SORRY, YOUR HONOR, YOU SUSTAINED?

3        THE COURT:  YOU CAN'T INQUIRE INTO ATTORNEY-CLIENT

4    PROTECTED PRIVILEGES.

5        MR. WELCH:  YES, YOUR HONOR.

6  BY MR. WELCH:

7        Q      ALL RIGHT.  WHO DID YOU SPEAK WITH NEXT, MR. CUTHILL?

8        A      ABOUT WHAT?

9        Q      ABOUT THE ISSUE OF YOUR POSITION AS EITHER AN

10  INDEPENDENT CONTRACTOR OR AN EMPLOYEE OF ANY OF THE

11  CONSOLIDATED DEBTORS.

12        A      THE NEXT PERSON I DISCUSSED IT WITH THAT I RECALL

13  WOULD HAVE BEEN WITH MS. GARTNER OR MR. BALDWIN.

14        Q      AND THEY WERE BOTH CPAS?

15        A      THEY ARE NOT BOTH CPAS.  MR. BALDWIN IS A CPA AND MS.

16  GARTNER IS AN ACCOUNTANT WITH THE CPA FIRM.

17        Q      ALL RIGHT.  AND WHEN DID YOU SPEAK WITH WHICHEVER

18  ONE OF THOSE PEOPLE YOU SPOKE WITH FIRST?

19        A      RIGHT AT THE BEGINNING OF THE CASE, AND IT WOULD

20  HAVE BEEN LET ME USE THE TIME FRAME WITHIN TWO WEEKS AFTER THE

21  BEGINNING OF THE CASE, SO WITHIN TWO WEEKS AFTER MAY 27TH, I MET

22  WITH --- AND I DON'T RECALL IF IT WAS MS. GARTNER, MR. BALDWIN OR

23  BOTH AT THE SAME TIME --- AND ASKED THEM IF THEY WOULD

24  REPRESENT ME OR REPRESENT MIRABILIS.  THEY HAD BEEN THE

25  ACCOUNTANTS FOR THE EVERGREEN BANKRUPTCY FOR YEARS PRIOR TO

108

1   THAT, AND SO I HAD A CONSISTENT RELATIONSHIP WITH THEM AND

2   THEY HAD HANDLED THINGS LIKE PAYROLL, ACCOUNTING, PREPARING

3   CHECKS, ET CETERA, DOING THE MONTHLY OPERATING REPORTS FOR THE

4   BANKRUPTCY.

5            AND SO I MET WITH THEM AND TALKED TO THEM ABOUT THE

6   CASE, AND WE TALKED ABOUT THE WAY PEOPLE WOULD GET PAID IN THE

7   CASE, MYSELF AS WELL AS THEIR FIRM, AS WELL AS OTHER

8   PROFESSIONALS. SO WE TALKED ABOUT HOW THE CASE WOULD WORK.

9       Q     AND CONSIDERING THE ISSUE OF WHETHER YOU WOULD BE

10  AN EMPLOYEE OR INDEPENDENT CONTRACTOR, YOU SPECIFICALLY

11  DISCUSSED THAT ISSUE WITH THEM?

12      A     YES.

13      Q     AND CAN YOU RECALL, AS BEST YOU CAN, THE SUBSTANCE

14  OF THOSE DISCUSSIONS?

15      A     NO.

16      Q     WELL, CAN YOU RECALL WHAT CONCLUSIONS WERE DRAWN

17  CONCERNING WHAT YOUR ROLE SHOULD BE?

18      A     WELL, THE CONCLUSION WAS THAT I WOULD BE TREATED AS

19  AN INDEPENDENT CONTRACTOR. WE TALKED ABOUT HOW I WOULD FILE

20  MY TIME AND HOW I WOULD BE PAID BY MY TIME --- FOR MY TIME,

21  WHETHER OR NOT I NEEDED COURT APPROVAL TO PAY MYSELF. NOW

22  THAT WAS DISCUSSED WITH MY ACCOUNTANTS, AND HOW THEY WOULD

23  BE PAID. GENERALLY, HOW ALL OF THE PARTIES WOULD BE PAID AND

24  THEY ASKED ME TO EXPLAIN TO THEM KIND OF MY PROGNOSIS OF THE

25  CASE. THE ESSENTIAL QUESTION THEY HAD: WAS THE CASE GOING TO BE

1  ABLE TO PAY THEIR FEES.  THAT WAS THE ONE THEY WERE MOST

2  INTERESTED IN.

3         BUT WE DISCUSSED WHAT KIND OF ACCOUNTING SYSTEM

4  THERE WAS, WHAT THEIR RESPONSIBILITIES WOULD BE, APPROXIMATELY

5  HOW MUCH TIME THEY THOUGHT IT WOULD TAKE TO DO THE WORK AND

6  HOW MUCH THEY WOULD CHARGE.

7         Q     OKAY.  NOW, GETTING BACK TO THE QUESTION OF

8  EMPLOYEE AND INDEPENDENT CONTRACTOR, YOURSELF, DID THEY

9  ADVISE YOU THAT YOU SHOULD BE TREATED AS AN INDEPENDENT

10  CONTRACTOR RATHER THAN AN EMPLOYEE, INITIALLY?

11         A     I DON'T RECALL IF THEY ADVISED ME OR I ASKED THEM THE

12  QUESTION.  I JUST --- I DON'T RECALL.  IT WASN'T A GREAT AMOUNT OF

13  EFFORT THAT WAS PUT INTO THE PROCESS OF TRYING TO DETERMINE

14  HOW I GOT PAID.  BUT WE DID DISCUSS THAT BEFORE I EVER GOT PAID.

15         Q     DID THEY GIVE YOU AN OPINION, EITHER ORALLY OR IN

16  WRITING, THAT YOU SHOULD BE TREATED AS AN EMPLOYEE RATHER

17  THAN --- I MEAN, AS AN INDEPENDENT CONTRACTOR RATHER THAN AN

18  EMPLOYEE?

19         A     WELL, THEY DIDN'T GIVE ME AN OPINION IN WRITING AT

20  THAT POINT IN TIME.  HOWEVER, SINCE THEY WERE PREPARING THE

21  PAYROLL FOR THE COMPANY AND PREPARED THE CHECKS THAT PAID ME,

22  THEIR --- AND I DIDN'T DIRECT THEM ON HOW TO DO THAT.  I DIDN'T TELL

23  THEM PAY ME AS AN INDEPENDENT CONTRACTOR OR PAY ME AS AN

24  EMPLOYEE.  I LET THEM MAKE THAT DECISION.  I HAVE NEVER BEEN IN

25  THE TAX AREA OF THE CPA BUSINESS, AND THAT'S WHY I HIRE PEOPLE

110

1    THAT DO THAT.

2        Q       WELL, DID YOU QUESTION THEM CONCERNING HOW YOU

3    SHOULD BE TREATED.  THAT IS, WHETHER TO BE TREATED AS AN

4    INDEPENDENT CONTRACTOR OR AN EMPLOYEE?

5        A       WE DID HAVE A CONVERSATION, WHETHER I RAISED THE

6    QUESTION OR THEY RAISED THE QUESTION, I DON'T RECALL.

7        Q       CAN YOU GIVE ME, TO THE BEST OF YOUR RECOLLECTION,

8    THE SUBSTANCE OF THAT CONVERSATION?

9        A       THIS WAS TWO YEARS AGO.  NO.

10       Q       WELL, CAN YOU GIVE ME THE OUTCOME OF THAT

11   CONVERSATION?

12       A       WELL, THE OUTCOME OF THE CONVERSATION WAS THAT I

13   WOULD BE TREATED AS AN INDEPENDENT CONTRACTOR.  THAT MY ROLE

14   AS AN OFFICER OF THE COMPANY WAS MINISCULE AS OPPOSED TO WHAT

15   I WAS DOING, WHICH WAS VERY SIMILAR TO OTHER CASES, MANY OTHER

16   CASES THAT I HAD BEEN INVOLVED WITH WHERE I WAS IN SOME ROLE,

17   EITHER COURT APPOINTED IN SOME CASES, OR NON-COURT APPOINTED IN

18   OTHER CASES, WHERE I WAS AN INDEPENDENT CONTRACTOR.

19       Q       OKAY.  SIR, I WONDER IF YOU COULD TELL ME ABOUT SOME

20   OF THESE CASES.

21           MR. SHUKER:  OBJECTION, YOUR HONOR.

22           MR. WELCH:  HE'S OPEN THE DOOR TO THIS NOW AND HE

23       RAISED THE ISSUE OF THE PRIOR CASES AND IT BEING CONSISTENT

24       WITH THIS CASE, SO I BELIEVE IT IS FAIR TO ASK HIM ABOUT THOSE

25       CASES.

111

1    THE COURT:  YOUR RESPONSE, MR. SHUKER?

2    MR. SHUKER:  ON DIRECT, WE ONLY ASKED WHETHER,  HE

3 SAID HE DID.  SECOND, IT'S NOT RELEVANT TO THE

4 DETERMINATION OF THE TAX LIABILITY ON WHETHER HE DID OR

5 DIDN'T GET ADVICE.  AND NONE OF THOSE CASES WOULD BE

6 PROBATIVE BECAUSE THEY EACH WOULD BE THEIR OWN UNIQUE

7 SET OF FACTS AND CIRCUMSTANCES WITH THEIR OWN UNIQUE

8 ACCOUNTANTS.

9    MR. WELCH:  YOUR HONOR, IF I MAY, IN HIS EARLY

10 TESTIMONY IN MY NOTES, HE DID SAY THAT HIS POSITION AS AN

11 INDEPENDENT CONTRACTOR WAS QUOTE, CONSISTENT WITH

12 ACTIONS, END QUOTE, PRIOR CASES.  I THINK IT'S FAIR TO ASK HIM.

13    THE COURT:  I WILL OVERRULE THE OBJECTION.  I ROUTINELY

14 ALLOW EXAMINATION BEYOND THE SCOPE OF THE DIRECT, SO

15 THAT IS ARGUABLY AN OBJECTION, BUT ONE OF WHICH I AM GOING

16 TO USE MY DISCRETION AND IGNORE.  THE OTHER, I AGREE THAT'S

17 WHAT MR. CUTHILL JUST SAID, SO YOU CAN ASK WHY.

18    MR. WELCH:  THANK YOU, YOUR HONOR.

19 BY MR. WELCH:

20   Q  ALL RIGHT.  MR. CUTHILL, YOU SAID THAT THIS WAS

21 CONSISTENT WITH YOUR PRACTICE IN PRIOR CASES.  THAT IS, TO BE

22 TREATED AS AN INDEPENDENT CONTRACTOR WHEN YOU WERE, I

23 PRESUMED NOW BASED ON WHAT YOU SAID, AN OFFICER OF A DEBTOR

24 CORPORATION.  IS THAT CORRECT?

25   A  NO.

112

1    Q    ALL RIGHT.  EXPLAIN IF YOU WOULD.

2    A    WHAT I SAID WAS, IT WAS CONSISTENT WITH WHAT I DID IN

3    MANY OF MY PRIOR CASES.  SO I'VE FULFILLED ANY NUMBER OF ROLES

4    FROM APPOINTED POSITIONS, SUCH AS RECEIVER, EXAMINER IN STATE

5    AND FEDERAL COURTS, EXPERT WITNESS, AN ACCOUNTANT, A

6    CONSULTANT, A CRO.

7    Q    WHAT'S A CRO, SIR?

8    A    CHIEF RESTRUCTIONING OFFICER.  AND IN THOSE ROLES, I

9    HAVE ALWAYS TREATED MYSELF AS AN INDEPENDENT CONTRACTOR AS

10   WELL AS THE DEBTORS IN THOSE CASES, THEY HAVE ALSO TREATED ME

11   AS AN INDEPENDENT CONTRACTOR.

12       THE ONLY TIME THAT I HAVE NOT BEEN TREATED AS AN

13   INDEPENDENT CONTRACTOR THAT I RECALL IS WHEN WE CAME OUT OF

14   BANKRUPTCY IN THE EVERGREEN CASE.  THE EVERGREEN CASE WAS A

15   CHAPTER 11 CASE THAT WAS CONFIRMED, AND WE SPECIFICALLY

16   TREATED ME AS A W-2 CONTRACTOR, AND I BELIEVE THE PRIOR --- W-2

17   EMPLOYEE, AND I BELIEVE THE PRIMARY REASON HAD TO DO WITH THE

18   CREDITOR'S COMMITTEE AND I DISCUSSED HOW TO TREAT ME.

19   Q    AND WHAT --- IN ALL THESE PRIOR CASES WHERE YOU SAY

20   YOU WERE TREATED AS AN INDEPENDENT CONTRACTOR, YOU DIDN'T --- I

21   TAKE IT YOU DID NOT HOLD A POSITION AS AN OFFICER OF THE

22   CORPORATION.  IS THAT CORRECT?

23   A    THAT'S CORRECT.

24   Q    BUT IN EVERGREEN, DID YOU HOLD A POSITION AS AN

25   OFFICER OF THE COMPANY?

113

1       A       POST-CONFIRMATION I DID.

2       Q       OKAY.  AND AT THAT POINT, POST-CONFIRMATION, WERE

3  YOU MADE AN EMPLOYEE, W-2 EMPLOYEE OF EVERGREEN?

4       A       I WAS.

5       Q       AND WHEN DID THAT OCCUR?

6       A       MAYBE THE MIDDLE OF 2000'S.  I DON'T RECALL EXACTLY

7  THE DATE.  2003, 4, 5.

8       Q       AND YOU SAID THAT WAS A DISCUSSION YOU HAD WITH THE

9  CREDITOR'S COMMITTEE; IS THAT CORRECT?

10      A       THAT'S MY BEST RECOLLECTION.  NOW, THIS GOES BACK SIX

11 OR SEVEN YEARS AGO, BUT MY BEST RECOLLECTION.  WE HAD A LOT OF

12 NEGOTIATION WITH THE CREDITOR'S COMMITTEE PRIOR TO

13 CONFIRMATION.  THEY HAD FILED A PLAN OF REORGANIZATION AS WELL

14 AS THE DEBTOR HAD FILED THE PLAN OF REORGANIZATION AND THERE

15 WAS A LOT OF DISCUSSION ABOUT HOW TO TREAT MY STATUS.

16      Q       IS THAT THE CONFIRMATION ORDER THAT'S IN EVIDENCE

17 NOW IN THIS CASE, I THINK PERHAPS EXHIBIT 29, THE EVERGREEN?

18              THE COURT:  EXHIBIT 30.

19              THE WITNESS:  YEAH.  THAT'S THE ONE I DON'T HAVE.

20              THE COURT:  YOU DON'T HAVE.

21              THE WITNESS:  NO, THAT'S OKAY.  THE EXHIBIT 30.  I

22 REMEMBER.

23              THE COURT:  DO YOU REMEMBER?

24              THE WITNESS:  I HAVE BEEN LIVING WITH EVERGREEN FOR

25 THE LAST NINE YEARS.

1    BY MR. WELCH:

2        Q      AND YOU SAID EVERGREEN IS ONGOING?

3        A      IT HAS ONE PIECE OF LITIGATION LEFT OUT OF A 157 PIECES

4    OF LITIGATION IT'S BEEN INVOLVED IN.

5        Q      AND ARE YOU STILL AN OFFICER OF THAT COMPANY?

6        A      I GUESS IN TITLE.  YOU KNOW, I DON'T DO ANYTHING

7    ANYMORE.

8        Q      ARE YOU BEING PAID A SALARY STILL?

9        A      ONLY WHEN I DO WORK.

10       Q      HAVE YOU RECEIVED ---

11       A      I MEAN, I HAVEN'T --- I DON'T THINK I PAID MYSELF

12   COMPENSATION IN MONTHS.  MAYBE ONCE OR TWICE THIS YEAR.

13       Q      OVER WHAT PERIOD OF TIME DID YOU PAY YOURSELF

14   COMPENSATION IN THE EVERGREEN CASE?

15       A      POST-CONFIRMATION FORWARD.

16       Q      AND SO, AND CONFIRMATION WAS WHAT YEAR?

17       A      I DON'T RECALL.

18              THE COURT:  IT'S THERE.

19              THE WITNESS:  IT'S IN THE ORDER, YEAH.  THE ORDER FILED

20       JUNE '04.

21   BY MR. WELCH:

22       Q      I'M SORRY.

23       A      THE FILING DATE OF THE ORDER IS JUNE '04.

24       Q      OKAY.  SO SINCE '04, YOU'VE BEEN A W-2 EMPLOYEE OF A

25   CHAPTER 11 DEBTOR, CONFIRMED CHAPTER 11 DEBTOR; CORRECT?

115

1      A      YES.

2      Q      NOW, WAS A CPA FIRM INVOLVED IN CONSULTING ON YOUR

3   POSITION AS A --- OR BECOMING A W-2 EMPLOYEE OF EVERGREEN?

4      A      THE SAME TWO INDIVIDUALS I MENTIONED BEFORE,

5   MARYANNE GARTNER AND RUSSELL BALDWIN.

6      Q      THOSE ARE THE TWO INDIVIDUALS WHO YOU MET WITH

7   CONCERNING YOUR POSITION AS EITHER AN EMPLOYEE OR INDEPENDENT

8   CONTRACTOR IN THIS CASE; CORRECT?

9      A      THAT'S CORRECT.

10     Q      NOW, BACK IN 2004 WHEN YOU BECAME A W-2 EMPLOYEE OF

11  EVERGREEN, WAS THAT THE FIRST TIME THAT YOU DISCUSSED WITH

12  THOSE TWO INDIVIDUALS, CONSIDERING THE POSITION OF AN OFFICER OF

13  A DEBTOR CORPORATION, CHAPTER 11, AS TO WHETHER OR NOT THAT

14  OFFICER SHOULD BE A W-2 EMPLOYEE OR A CONTRACTOR?

15     A      I DON'T RECALL DISCUSSING THAT QUESTION WITH THEM IN

16  THE EVERGREEN CASE.

17     Q      SO THEY WERE NOT INVOLVED IN THE DECISION TO SWITCH

18  YOU FROM BEING A CONTRACTOR TO AN INDEPENDENT --- I MEAN, TO AN

19  EMPLOYEE IN THE EVERGREEN CASE?

20     A      NO. I BELIEVE I TOLD THEM TO BEGIN PAYING ME AS A W-2

21  EMPLOYEE BASED ON THE AGREEMENT WITH THE CREDITOR'S

22  COMMITTEE.

23     Q      DID THEY ASK YOU ANYTHING WHY THAT WAS OCCURRING

24  IN THE EVERGREEN CASE?

25     A      I DON'T RECALL THE CONVERSATION SIX YEARS AGO.

1     Q    SO YOU DIDN'T REALLY RELY ON THEIR ADVICE IN TERMS OF

2   WHETHER OR NOT YOU SHOULD BE TREATED AS A CONTRACTOR OR

3   INDEPENDENT EMPLOYEE --- OR EMPLOYEE IN THE EVERGREEN CASE?

4     A    ACTUALLY, I DID.

5     Q    OH YOU DID.

6     A    YEAH.

7     Q    HOW DID THAT COME ABOUT?

8     A    WELL, THEY WERE PREPARING THE PAYROLL AND THE

9   CHECKS AND CERTAINLY, IF THEY DIDN'T AGREE TO PAY ME AS AN W-2

10  EMPLOYEE, THEY WOULDN'T HAVE.  BY THE SAME TOKEN, IF THEY

11  DIDN'T AGREE TO PAY ME AS AN INDEPENDENT CONTRACTOR, THEY

12  WOULDN'T HAVE.  THEY'RE A GOOD, REPUTABLE CPA FIRM AND THAT'S

13  WHY I HIRE THEM TO MAKE THOSE DECISIONS FOR ME.

14     Q    OKAY.  SO THEY DID, IN FACT, MAKE --- IMPLICITLY FROM

15  WHAT YOU JUST TOLD ME --- IMPLICITLY MAKE THE DECISION THAT YOU

16  SHOULD BE TREATED AS A W-2 EMPLOYEE IN THE EVERGREEN CASE?

17     A    YOU'RE GOING TO HAVE TO --- THEY MADE THE PAYCHECKS

18  OUT.  OKAY.  I INDICATED TO THEM WHEN WE WERE POST-CONFIRMATION

19  THAT I WAS GOING TO BECOME A W-2 EMPLOYEE, AND I THINK THAT WAS

20  --- I DON'T RECALL WHETHER IT WAS PART OF THE PLAN OR ONLY A

21  DISCUSSION WITH THE CREDITOR'S COMMITTEE, BUT THAT'S THE WAY IT

22  WAS DECIDED THAT I WOULD BE TREATED IN THAT CASE AT THAT TIME,

23  AND I HAD TOLD THE CPA FIRM THAT.

24     THE CPA FIRM FOLLOWED THAT AND STARTED PAYING ME AS

25  W-2 EMPLOYEE FOR POST-CONFIRMATION PAY.  PRE-CONFIRMATION, I

1   WAS TREATED AS AN INDEPENDENT CONTRACTOR.

2        Q      YOU SAID YOU RELIED ON THEIR ADVICE THEN.  HOW WERE

3   YOU RELYING ON THEIR ADVICE?

4        A      I TOLD YOU, I DON'T RECALL IF THEY GAVE ME ADVICE AT

5   THAT POINT IN TIME.  THEIR ACTIONS WERE THAT THEY PREPARED

6   PAYROLL AS AN EMPLOYEE AT THAT TIME, AND INDEPENDENT

7   CONTRACTOR, PRE-CONFIRMATION.  W-2 EMPLOYEE, POST-

8   CONFIRMATION.

9        Q      AND DO THERE WAS A BRIGHT LINE TEST THEN AS FAR AS

10  YOU WERE CONCERNED, PRE-CONFIRMATION OR POST-CONFIRMATION IN

11  TERMS OF CREATING YOU AS AN INDEPENDENT CONTRACTOR OR AN

12  EMPLOYEE, IN THE EVERGREEN CASE NOW, SIR?

13       A      MY RECOLLECTION IS THAT IT WAS AN AGREEMENT

14  BETWEEN MYSELF AND THE CREDITOR'S COMMITTEE.  THE CREDITOR'S

15  COMMITTEE WAS NEGOTIATING WITH ME ON HOW MUCH I WOULD BE

16  PAID, HOW I WOULD BE PAID, WHO I WOULD REPORT TO, AND A WHOLE

17  NUMBER OF WAYS THAT I WOULD ACT, AND THEY'RE SUBSTANTIALLY

18  DIFFERENT THAN MIRABILIS.

19       Q      I'M SORRY, WHAT IS SUBSTANTIALLY DIFFERENT?

20       A      MY POSITION AS IN POST-CONFIRMATION IN EVERGREEN.

21       Q      WELL, DID YOUR POSITION CHANGE BETWEEN PRE-

22  CONFIRMATION AND POST-CONFIRMATION IN EVERGREEN?

23       A      IT DID.

24       Q      AND HOW DID IT CHANGE?

25       A      WELL, I WAS THE CHAPTER 11 TRUSTEE PRE-CONFIRMATION.

118

1        Q       OH SO YOU WEREN'T --- YOU WERE NOT AN OFFICER OF THE

2    CORPORATION, PRE-CONFIRMATION?

3        A       NO.

4        Q       OKAY.  BUT YOU BECAME AN OFFICER POST-CONFIRMATION?

5        A       I DID.

6        Q       AND WAS THAT CONCOMERATE IN TIME WITH WHEN --- AT

7    CONFIRMATION, DID YOU BECOME AN OFFICER?

8        A       YES, THAT WAS PART OF THE CONFIRMATION PROCESS IS

9    THAT I BECAME AN OFFICER OF THE CORPORATION AS WELL AS A

10   DIRECTOR.

11       Q       OKAY.  AND IS THAT THE EVENT WHICH TRIGGERED YOU

12   BEING TREATED AS AN EMPLOYEE RATHER THAN AN INDEPENDENT

13   CONTRACTOR?

14              MR. SHUKER:  OBJECTION, YOUR HONOR, WAY BEYOND

15       RELEVANCE AND ASKED AND ANSWERED.

16              THE COURT:  WE REALLY NEED TO MOVE ON, MR. WELCH.

17              MR. WELCH:  YES, YOUR HONOR.  I WILL IF I COULD JUST GET

18       AN ANSWER TO THAT ONE QUESTION.

19              THE WITNESS:  NO, IS THE ANSWER.

20   BY MR. WELCH:

21       Q       I'M SORRY.

22       A       NO IS THE ANSWER.

23       Q       AND NO.  WHY NO?  WHAT WAS THEN THE OPERATIVE EVENT?

24       A       A DISCUSSION WITH THE CREDITOR'S COMMITTEE.

25       Q       AND WHAT WAS THAT BASED ON?

1              MR. SHUKER:  OBJECTION, YOUR HONOR.

2              THE COURT:  SUSTAINED.

3     BY MR. WELCH:

4        Q      ALL RIGHT.  SO GETTING TO THIS CASE.  IN YOUR

5     DISCUSSIONS WITH THE SAME CPA'S, WELL ACCOUNTANTS AND CPA

6     WITH THE CPA FIRM, DID YOU ALL DISCUSS HOW YOU HAD BEEN

7     TREATED IN THE EVERGREEN CASE  RELATIVE TO THIS CASE?

8        A      AS A TOLD YOU BEFORE, I DON'T RECALL THE SPECIFICS OF

9     OUR DISCUSSION OTHER THAN WE SAT DOWN AT THE BEGINNING OF THE

10    CASE WHEN I HIRED THEM AND I TALKED TO THEM, AND THEY TALKED

11    TO ME, ABOUT HOW THE ACCOUNTING WOULD BE DONE, WHAT THEIR

12    ROLES WOULD BE, WHAT MY ROLES WOULD BE AND ESSENTIALLY, HOW

13    EVERYBODY WOULD GET PAID, INCLUDING MYSELF.

14       Q      OKAY.

15       A      I DON'T RECALL THE SPECIFICS OF THE DISCUSSION OTHER

16    THAN WE HAD A MEETING AND WE GENERALLY TALKED ABOUT ALL THE

17    BEGINNING OF THE CASE THINGS THAT I NORMALLY TALK TO MY

18    ACCOUNTANTS ABOUT WHO ARE GOING TO KEEP THE BOOKS AND

19    RECORDS, WRITE THE CHECKS, PREPARE A LOT OF THE MONTHLY

20    REPORTS THAT I PREPARE.

21       Q      AND SO NOW --- I KNOW YOU DON'T REMEMBER THE

22    SPECIFICS OF THE CONVERSATION, YOU'VE ALREADY SAID THAT.

23       A      YEAH.  I KNOW.  YOU'VE ASKED ME THAT THREE TIMES.

24       Q      AND THE CONSENSUS THOUGH OF WHAT YOU AND THE TWO

25    ACCOUNTANTS CAME TO, WAS THAT THE BOOKS WOULD BE KEPT SUCH

120

1    THAT YOU WOULD BE TREATED AS A CONTRACTOR; CORRECT?

2                MR. SHUKER:  OBJECTION, YOUR HONOR.  THIS HAS BEEN

3        ASKED.

4                THE COURT:  SUSTAINED.

5    BY MR. WELCH:

6        Q      NOW, THAT BEING SO, SIR, WHAT CONSIDERATIONS WHEN

7    INTO THAT AS BEST YOU CAN RECALL?

8                MR. SHUKER:  OBJECTION, ASKED AND ANSWERED.  HE SAID

9        HE DOESN'T RECALL.

10                THE COURT:  SUSTAINED.

11   BY MR. WELCH:

12       Q      NOW, SIR, I BELIEVE YOU SAID THAT YOU PAID $150,000.00 IN

13   TAXES AS A RESULT OF YOUR POSITION AS AN INDEPENDENT

14   CONTRACTOR IN THE MIRABILIS CASE.  IS THAT CORRECT?

15       A      I SAID THAT I ESTIMATED THAT I PAID ABOUT $150,000.00 IN

16   INCOME TAXES AND SELF-EMPLOYMENT TAXES IN THE MIRABILIS CASE.

17       Q      OVER WHAT PERIOD OF TIME?

18       A      TWO YEARS.  WELL, IT'S 2008, 2009, BUT I DIDN'T START IN

19   2008 UNTIL MAY 27TH, '08.

20       Q      OKAY.  DO YOU HAVE A ROUGH BREAKDOWN IN YOUR MIND

21   OF HOW MUCH OF THAT IS EMPLOYMENT TAXES VERSUS INCOME TAXES?

22       A      NO, NOT WITHOUT --- I CAN'T EVEN TELL YOU THE TOTAL ON

23   MY INCOME TAX RETURN FROM THE TOP OF MY HEAD.  I DON'T THINK

24   MOST PEOPLE COULD UNLESS IT WAS ZERO.  AND MINE CERTAINLY WAS

25   NOT ZERO.

1      Q      WELL, OF THAT 150,000-DOLLARS, WOULD THE VAST BULK OF

2   IT BE INCOME TAXES REGARDLESS ---

3      A      I DON'T KNOW.  WITHOUT LOOKING AT MY INCOME TAX

4   RETURN, I WOULD JUST PURELY BE SPECULATING, WHICH I'M NOT GOING

5   TO DO.

6      Q      NOW, SIR, CAN AN EMPLOYEE OR IN YOUR EXPERIENCE, CAN

7   AN INDIVIDUAL WHO IS WORKING AS EITHER AN EMPLOYEE OR

8   INDEPENDENT CONTRACTOR FOR A CHAPTER 11 DEBTOR BE BOTH AT THE

9   SAME TIME?

10         MR. SHUKER: OBJECTION, YOUR HONOR, FOUNDATION.  IT'S

11         EITHER A LEGAL OR ACCOUNTING QUESTION.  HE'S A FACT

12         WITNESS.

13         MR. WELCH: I AM ASKING HIM AS HIS UNDERSTANDING OF

14         HIS POSITION IN THESE DIFFERENT ENTITIES, YOUR HONOR.

15         THE COURT:  OVERRULED.  IF YOU CAN ANSWER THE

16         QUESTION, YOU CAN DO SO, MR. CUTHILL.

17         THE WITNESS: I CANNOT ANSWER THE QUESTION.  I'M NOT

18         AN EXPERT IN THE TAX AREA.  I HAVE SEEN INDIVIDUALS WORK IN

19         CORPORATIONS, BOTH IN BANKRUPTCY AND OUTSIDE OF

20         BANKRUPTCY IN DUAL CAPACITIES OF BOTH INDEPENDENT

21         CONTRACTOR AND EMPLOYEES AT THE SAME TIME.

22   BY MR. WELCH:

23      Q      WOULD THAT BE TRUE IF THEY'RE HOLDING JUST ONE

24   POSITION AND IN THAT POSITION, COULD THEY BE BOTH AN

25   INDEPENDENT CONTRACTOR AND AN EMPLOYEE?  SAY IF SOMEONE IS

122

1   THE PRESIDENT OF A CORPORATION IN BANKRUPTCY, COULD HE BOTH BE

2   AN INDEPENDENT CONTRACTOR AND AN EMPLOYEE AT THE TIME THAT

3   HE'S PRESIDENT OF A CORPORATION?  AS BEST YOU UNDERSTAND IT.

4       A      ARE YOU ASKING ME A HYPOTHETICAL QUESTION?

5       Q      WELL, FIRST, YES.  I'M TRYING TO UNDERSTAND THIS.

6              MR. SHUKER:  OBJECTION, YOUR HONOR.

7              THE COURT:  THIS IS A FACT WITNESS.  YOU CAN'T ASK

8   OPINION, HYPOTHETICAL QUESTION.

9   BY MR. WELCH:

10      Q      ALL RIGHT.  IN YOUR UNDERSTANDING, HAVE YOU EVER

11  SEEN A SITUATION WHERE SOMEONE WHO IS AN OFFICER OF A DEBTOR

12  CORPORATION IN CHAPTER 11, BE BOTH AN INDEPENDENT CONTRACTOR

13  AND AN EMPLOYEE?

14      A      YES.

15      Q      OKAY.  CAN YOU TELL ME ABOUT THAT?

16      A      WHEN THEY'RE ACTING IN DUAL ROLES AS AN OFFICER AND

17  A DIRECTOR AND THEY'RE RECEIVING DIRECTOR'S PAY AS AN

18  INDEPENDENT CONTRACTOR AND OFFICER'S PAY AS AN EMPLOYEE.

19      Q      ALL RIGHT.  WHAT IF THEY'RE ONLY AN OFFICER, NOT A

20  DIRECTOR, HAVE YOU EVER IN YOUR EXPERIENCE SEEN A SITUATION

21  WHERE AN INDIVIDUAL COULD BE BOTH, AN INDEPENDENT CONTRACTOR

22  AND AN EMPLOYEE?

23      A      ARE YOU STILL ASKING ME A HYPOTHETICAL?

24      Q      WELL, I'M ASKING IF YOU'VE EVER SEEN SUCH A THING?

25      A      YES.

1     Q    OKAY. CAN YOU TELL ME WHEN YOU SAW THAT, SIR?

2     A    WHEN THEY WERE ACTING AS AN EMPLOYEE AND A

3   CONSULTANT TO THE COMPANY, TWO ROLES.

4     Q    OKAY. AND COULD YOU TELL ME ABOUT THAT SITUATION

5   WHERE YOU SAW IT WHERE THAT HAPPENED?

6     A    I'M TRYING TO DETERMINE IF IT HAPPENED IN THE MIRABILIS

7   CASE ALREADY BECAUSE I HAVEN'T --- I HAVE A CONTRACTOR THAT HAS

8   BEEN WORKING IN THE MIRABILIS CASE AND I'M TRYING TO DETERMINE

9   IF HE WAS ACTING AS AN EMPLOYEE AND A CONSULTANT

10   SIMULTANEOUSLY. BUT AGAIN, YOU'RE ASKING ME TAX LAW

11   QUESTIONS.

12     Q    NO. I'M JUST ASKING YOU IF YOU EVER SAW THAT

13   SITUATION, IF YOU EVER KNOW OF A SITUATION WHERE THAT HAPPENED.

14   I'M NOT ASKING YOU FOR YOUR LEGAL OPINION, SIR?

15     A    OKAY. I DON'T RECALL. I DON'T RECALL A SPECIFIC WHERE

16   YOU HAD A PERSON WHO WAS SOLELY AN OFFICER OF A CHAPTER 11

17   DEBTOR AND WAS ACTING IN NO OTHER CAPACITY. THAT'S YOUR

18   QUESTION; RIGHT?

19     Q    YES, SIR.

20     A    I DON'T RECALL THAT SITUATION, NO.

21     Q    YOU'VE NEVER SEEN THAT OCCUR?

22     A    I DON'T RECALL SEEING IT.

23     Q    OKAY. OKAY.

24     A    I'M NOT SAYING I HAVEN'T SEEN IT BECAUSE I'VE BEEN

25   INVOLVED IN THESE BANKRUPTCY CASES FOR AT LEAST 15 YEARS NOW.

124

1    Q    YES, SIR. NOW, I WONDER IF YOU COULD GO BACK TO YOUR

2  TIME FROM WHEN YOU FIRST BECAME PRESIDENT OF THE CONSOLIDATED

3  DEBTORS. WHERE YOU ORIGINALLY PRESIDENT OF ALL OF THE

4  CONSOLIDATED DEBTORS?

5    A    NO.

6    Q    JUST MIRABILIS?

7    A    YES. ON MAY 27TH, I WAS APPOINTED THE PRESIDENT OF

8  MIRABILIS.

9    Q    OKAY. AND IF YOU COULD, RUNNING US UP TO NOW, CAN

10  YOU TELL ME WHAT YOUR POSITION WAS OVER THE VARIOUS TIMES

11  SINCE 2000 --- MAY 27, 2008 AND TODAY, AND WHETHER YOUR POSITION

12  CHANGED VIS-A-VIA THE CORPORATION, THE DEBTORS?

13    A    MIRABILIS?

14    Q    YES, YOUR HONOR --- I'M SORRY, MR. CUTHILLL.

15    A    I BECAME A DIRECTOR OF MIRABILIS AT THE POINT OF

16  CONFIRMATION. MR. MEEKER RESIGNED AS THE DIRECTOR. HE HAD

17  BEEN THE DIRECTOR FROM THE FILING OF THE BANKRUPTCY UP UNTIL

18  THE CONFIRMATION.

19        AT THE CONFIRMATION, THE CONFIRMATION PLAN AND I'M

20  NOT SURE IF THE ORDER INCLUDES THIS, BUT CERTAINLY THE PLAN DID,

21  CONTEMPLATED THAT I WOULD BE THE PRESIDENT OF THE COMPANY AS

22  WELL AS THE SOLE DIRECTOR OF THE COMPANY. I ALSO --- BECAUSE

23  UNDER NEVADA LAW REQUIRES THAT A CORPORATION TO EXIST HAVE A

24  SECRETARY AND TREASURER. I'M ALSO THE PRESIDENT, SECRETARY

25  AND TREASURER OF MIRABILIS.

125

1      Q      AND THAT HAPPENED POST-CONFIRMATION?

2      A      PRE AND POST. THE DIRECTORSHIP IS POST. THE SECRETARY

3   AND TREASURER ARE PRE IN THAT IN ORDER TO EXIST AS A

4   CORPORATION, YOU HAVE TO HAVE SOMEBODY FILLING THREE OFFICER

5   POSITIONS IN THE STATED --- THAT'S UNDER THEIR STATE LAW.

6      Q      OKAY. SO YOU WERE IN THREE OFFICER POSITIONS PRE-

7   CONFIRMATION?

8      A      IN TITLE. I CAN'T SAY I WAS FULFILLING ANY OF THE THREE

9   ROLES. I WAS THE LIQUIDATOR. I WAS LIQUIDATING THE COMPANY.

10     Q      WAS THERE EVER AN ORDER APPOINTING YOU LIQUIDATOR

11  OF THE CORPORATION. THAT IS, AN ORDER FROM THE BANKRUPTCY

12  COURT?

13     A      NO, I'M JUST TELLING YOU WHAT I WAS DOING.

14     Q      YOU VIEWED YOURSELF AS A LIQUIDATOR?

15     A      AS I'VE STATED BEFORE, I VIEWED MYSELF AS AN OFFICER

16  OF THE CORPORATION ONLY FROM THE STANDPOINT THAT SOMEBODY

17  HAD TO REPRESENT THE CORPORATION AND SOMEBODY HAD TO SIGN

18  PAPERS FOR THE CORPORATION. BUT WHAT I WAS DOING WAS THE SAME

19  THING I DID IN MANY OTHER CASES.

20     Q      DID YOU SIGN ALL OF YOUR CORRESPONDENCE RELATIVE TO

21  THE DEBTORS AS PRESIDENT?

22     A      I THINK I GENERALLY SIGNED MY LETTER CORRESPONDENCE

23  USING THAT TITLE. MY E-MAILS, I DON'T USE THAT TITLE AT ALL.

24     Q      BUT IN YOUR ---

25     A      SO THE MAJORITY OF MY CORRESPONDENCE, THE ANSWER

126

1    TO THAT IS NO.

2        Q       BECAUSE THEY WERE E-MAILS?

3        A       RIGHT.  I WRITE LOTS MORE E-MAILS, PROBABLY TEN TIMES

4    MORE E-MAILS THAN I DO LETTERS.

5        Q       WHERE IS THE CORPORATION INCORPORATED?

6        A       IN NEVADA.

7        Q       AND WHERE YOU LISTED AS THE PRESIDENT ON THE

8    VARIOUS LEGAL FORMS IN NEVADA?

9        A       I AM.

10       Q       AND WERE YOU AS OF 2007 --- I'M SORRY, MAY 27, 2008?

11       A       I DO NOT RECALL WHEN WE SPECIFICALLY FILED IN NEVADA

12   INDICATING THAT I WAS AN OFFICER.

13       Q       WAS IT SOON AFTER MAY 27, 2008?

14       A       I DON'T RECALL AT ALL.  I DON'T RECALL THE DATE.  WE DID

15   FILE.

16       Q       ALL RIGHT.  SO UP TO CONFIRMATION, YOU WERE THE

17   PRESIDENT AND WHAT WERE THE OTHER OFFICER POSITION?

18       A       I BELIEVE IT IS SECRETARY/TREASURER.  ALTHOUGH, TO

19   TELL YOU THE TRUTH, I WOULD HAVE TO LOOK AT THE ANNUAL REPORT

20   BECAUSE I NEVER ACTED IN THE DUTIES --- IN THOSE DUTIES.  I MEAN,

21   IT'S REQUIRED TO HAVE THAT TO BE INCORPORATED IN THE STATE OF

22   NEVADA.

23       Q       BUT YOU DID ACT AS PRESIDENT?

24       A       IN A LIMITED CAPACITY, YES.

25       Q       WHEN YOU SAY IN A LIMITED CAPACITY, WHAT DO YOU

127

1    MEAN?

2              MR. SHUKER: OBJECTION, YOUR HONOR, ASKED AND

3        ANSWERED. HE ALREADY TALKED ABOUT BEING THE LIQUIDATOR.

4              THE COURT: SUSTAINED.

5              MR. WELCH: MAY I ASK HIM, YOUR HONOR, WHAT HE MEANS

6        BY BEING A LIQUIDATOR?

7              THE COURT: YOU ALREADY HAVE.

8    BY MR. WELCH:

9        Q    ALL RIGHT. SIR, IN YOUR POSITION THEN, HOW MANY HOURS

10   A WEEK OVER THE PERIOD BEGINNING IN MAY 27TH OR 28TH OF 2008, GOING

11   FORWARD, DID YOU WORK ON THE MIRABILIS LIQUIDATION ISSUES?

12       A    I DON'T RECALL. WITHOUT MY TIME RECORDS, I DON'T

13   RECALL.

14       Q    WELL, CAN YOU GIVE ME A BALLPARK FIGURE BASED ON

15   QUARTER OR MONTH OR YEAR?

16       A    DURING THE CASE TO DATE, SOMEWHERE BETWEEN 1,500

17   AND 2,000 HOURS.

18       Q    A YEAR?

19       A    NO, TOTAL.

20       Q    OVER?

21       A    SINCE THE BEGINNING OF THE CASE.

22       Q    SINCE THE BEGINNING OF THE CASE. ALL RIGHT. WAS THAT

23   SPREAD OUT EVENLY OVER THE CASE OR DID IT COME IN SPURTS?

24       A    OH NO. IT DOESN'T COME ANYWHERE EVENLY. SOME WEEKS

25   COULD BE 80 HOURS. SOME WEEKS COULD BE ZERO.

128

1      Q      ALL RIGHT. UP TO --- BEFORE CONFIRMATION THEN, CAN ---

2   OCTOBER 27, 2009, CAN YOU GIVE ME SOME ESTIMATE OF HOW MUCH OF

3   THAT 1,500 HOURS WERE ACCUMULATED?

4      A      I DON'T RECALL SPECIFICALLY. HOWEVER, I'VE BEEN

5   REPORTING MY TIME TO MS. IDE FOR YEARS, FOR THE LAST COUPLE OF

6   YEARS, AND I REPORT, INCLUDING TO MS. IDE, ON A MONTHLY BASIS HOW

7   MUCH I AM BEING PAID.

8      Q      WHEN YOU SAY REPORT TO MS. IDE, DO YOU MEAN, IS THAT

9   REPORT SPECIFICALLY TO HER OR IS IT TO THE COURT?

10     A      SPECIFICALLY TO MS. IDE AS WELL AS TWO OTHER PEOPLE.

11     Q      WHO ARE THOSE TWO OTHER PEOPLE?

12     A      THERE'S A POST-CONFIRMATION REPORT REQUIREMENT IN

13  THE CONFIRMATION PLAN.

14     Q      OH IT'S IN THE PLAN.

15     A      THAT REQUIRES ME TO REPORT TO THREE PEOPLE. THOSE

16  THREE PEOPLE ARE RANDY GOLD, THE U.S. PROSECUTOR IN THE CASE,

17  RICHARD SMITH, THE CRIMINAL INVESTIGATION IRS AGENT, AND MS. IDE,

18  WHO REPRESENTS THE IRS.

19     Q      NOW, THAT'S AN AGREEMENT YOU MADE ---

20     A      THAT'S NOT AN AGREEMENT. THAT'S AN ORDER BY THIS

21  COURT. MS. IDE, FROM TIME-TO-TIME, HAS ASKED ME SPECIFICALLY TO

22  GIVE HER MY DETAILED TIME RECORDS, WHICH I'VE COMPLIED WITH

23  EACH TIME SHE'S ASKED ME.

24     Q      OKAY. THANK YOU. NOW, DID YOU EVER ACT IN ANY

25  CAPACITY THEN UP UNTIL YOU BECAME THE DIRECTOR OTHER THAN AS

129

1   A PRESIDENT AND THESE OTHER TWO NOMINAL POSITIONS THAT YOU'VE

2   HELD. THAT IS, WERE YOU EVER ANY KIND OF A CONSULTANT TO THE

3   COMPANY, FROM THE TIME OF THE FILING OF THE CHAPTER 11 UP UNTIL

4   CONFIRMATION?

5        A     WELL, I SAW MY ROLE PRIMARILY AS A NON-OFFICER

6   POSITION, AS AN INDEPENDENT CONTRACTOR. I MEAN, THAT'S WHAT I

7   THOUGHT MY ROLE WAS, WAS TO ESSENTIALLY IDENTIFY THE ASSETS OF

8   THE COMPANY, RECOVER THE ASSETS AND DISTRIBUTE THEM TO THE

9   CREDITORS.

10           DURING THE PROCESS OF THAT, WE TOOK THE COMPANY

11  THROUGH CHAPTER 11, GOT A CONFIRMED PLAN, ACTUALLY A PLAN OF

12  LIQUIDATION AND CONTINUED THAT PROCESS POST-CONFIRMATION. MY

13  ROLES AND I'VE STATED THIS BEFORE, MY ROLES AS AN OFFICER OF THE

14  COMPANY WERE NOMINAL IN THE FACT THE COMPANY WASN'T

15  OPERATING. IT WAS SIMPLY LIQUIDATING, AND THEY HAD TO HAVE

16  SOMEBODY TO FILL THOSE THREE ROLES, OTHERWISE, THE COMPANY

17  COULD NOT EXIST.

18       Q     OKAY. SIR, DID YOU --- DID YOU EVER SEE YOURSELF, PRIOR

19  TO THE CONFIRMATION ORDER IN THE PLAN, DID YOU EVER SEE

20  YOURSELF AS AN EMPLOYEE OF THE COMPANY OR ANY OF THE

21  CONSOLIDATED DEBTORS?

22       A     PRIOR TO CONFIRMATION?

23       Q     YES.

24       A     YES. I AGREED TO CHANGE MY STATUS TO AN EMPLOYEE

25  STATUS WITH THE IRS. PRIOR TO CONFIRMATION, WE NEGOTIATED THE

130

1    FACT THAT I HAD BEEN TREATING MYSELF AS AN INDEPENDENT

2    CONTRACTOR AND THE IRS POINTED OUT TO ME THAT THE POSITION,

3    SINCE I WAS AN OFFICER OF THE COMPANY, I SHOULD BE TREATING

4    MYSELF AS AN STATUTORY EMPLOYEE OR W-2 EMPLOYEE AND I AGREED

5    TO CHANGE AND I AGREED TO FILE THE RETURNS AND MAKE THE

6    PAYROLL TAX PAYMENTS, FILE AMENDED PERSONAL RETURNS, REPAY

7    THE COMPANY.  THE SAME THING THAT WE WENT OVER --- I WENT OVER

8    IN MY DIRECT TESTIMONY.

9        Q    YES, SIR.

10       A    THAT'S IN THE SEVERAL PLACES, THE PLAN ITSELF, THE --- I

11   GUESS THE AMENDMENTS TO THE PLAN AND SOME OF THE TRANSCRIPTS

12   FROM THE CONFIRMATION HEARING.

13       Q    BUT PRIOR TO THAT TIME, PRIOR TO THESE NEGOTIATIONS

14   WITH THE IRS, WHICH WERE THEN MEMORIALIZED IN THE CONFIRMATION

15   ORDER AND PLAN, DID YOU PRIOR TO THAT TIME, EVER VIEW YOURSELF

16   AS AN EMPLOYEE?

17       A    NO.

18       Q    YOU DID NOT?

19       A    NOT AT ALL.

20            MR. WELCH:  IF I COULD JUST ONE SECOND, YOUR HONOR?

21            THE COURT:  CERTAINLY.

22   BY MR. WELCH:

23       Q    MR. CUTHILL ---

24            MR. WELCH:  IF I MAY, YOUR HONOR.

25            THE COURT:  CERTAINLY.

1          MR. WELCH:  THANK YOU.

2    BY MR. WELCH:

3          Q      DO YOU RECALL HAVING YOUR DEPOSITION TAKEN IN THIS

4    CASE BY A GENTLEMAN BY THE NAME OF JOSEPH DEMARA?

5          MR. SHUKER:  OBJECTION, YOUR HONOR, THIS IS A

6    TRANSCRIPT OF A DEPO IN ANOTHER CASE.  IT'S IMPROPER

7    IMPEACHMENT.  IT'S NOT THIS CASE.

8          THE COURT:  YOU HAVE TO USE THE DEPOSITION TO

9    CORRECT AN INCONSISTENCY.

10          MR. WELCH:  OH, I THINK I CAN, YOUR HONOR.

11          THE COURT:  THAN YOU NEED TO DO IT PROPERLY.

12          MR. WELCH:  THANK YOU, YOUR HONOR, THAT'S WHY I'M

13    ASKING IF HE RECALLS HAVING HIS DEPOSITION TAKEN IN THIS

14    CASE IN RE:  MIRABILIS VENTURES, INC., BANKRUPTCY NUMBER

15    6:08-BK-04237-KSJ, ON APRIL 21, 2010.

16          THE WITNESS:  HE TOOK MY DEPOSITION IN AN ADVERSARY,

17    BUT NOT IN THIS BANKRUPTCY CASE.  IT'S OVER IN FEDERAL

18    COURT.

19    BY MR. WELCH:

20          Q      YES.  DO YOU RECALL THAT?

21          A      YES.  HIS NAME IS MR. DEMARIA.

22          Q      DEMARIA.  THANK YOU.  DO YOU RECALL THAT DEPOSITION?

23          A      I DO.

24          Q      AND DO YOU RECALL MR. DEMARIA ASKING YOU ---

25          MR. SHUKER:  OBJECTION, YOUR HONOR, THIS IS IMPROPER

132

1    IMPEACHMENT. IN ADDITION, WE DID A REQUEST TO PRODUCE FOR

2    ALL DOCUMENTS THEY INTENDED TO USE IN THIS, AND THEY

3    NEVER PRODUCED THIS TRANSCRIPT.

4         THE COURT: REBUTTAL TESTIMONY, IMPEACHMENT

5    TESTIMONY WOULD NOT BE INCLUDED IN THAT REQUEST. THE

6    ONLY THING THAT MR. WELCH CAN DO AT THIS POINT IS

7    PUBLISHED INCONSISTENT STATEMENTS. IF THAT IS WHAT YOU

8    INTEND TO DO, YOU MAY DO SO.

9         MR. WELCH: THANK YOU, YOUR HONOR.

10   BY MR. WELCH:

11        Q    DO YOU RECALL BEING DEPOSED IN THAT CASE?

12        A    I DO.

13        Q    AND DO YOU RECALL MR. DEMARIA ASKING YOU ISSUES

14   CONCERNING YOUR POSITION WITH THE DEBTOR, MIRABILIS?

15        A    YES.

16        Q    ALL RIGHT. NOW, SIR, DO YOU RECALL --- AND IF I MAY

17   PUBLISH THIS, YOUR HONOR.

18        THE COURT: YES, YOU MAY.

19        MR. WELCH: ASKING THIS QUESTION AND GIVING THESE

20   RESPONSES.

21        QUESTION BY MR. DEMARIA: OKAY. NOW, A COUPLE OF

22   QUESTIONS THOUGH, FIRST. UNDER THE ARRANGEMENT THAT YOU

23   HAVE PRE, POST-CONFIRMATION, WHILE IT WAS A DEBTOR IN

24   POSSESSION, DID YOU HAVE TO SEEK APPROVAL FOR PAYMENTS OR

25   DID YOU JUST SIMPLY HAVE TO GIVE A COPY TO THE DEPARTMENT

133

1    OF JUSTICE OR IRS OR HOW WOULD THAT WORK, BECAUSE I DON'T

2    SEE APPLICATIONS IN THE FILE.

3        ANSWER:

4        MR. SHUKER:  OBJECTION, YOUR HONOR, THIS WASN'T

5    ASKED.

6        THE COURT:  HOW IS THIS INCONSISTENT WITH ANY

7    TESTIMONY?

8        MR. WELCH:  YOUR HONOR, I'M GETTING TO THAT IF I MAY.

9    IF I MAY HAVE JUST A LITTLE LEEWAY.  IT GETS IN TO HIS POSITION

10    AS TO WHETHER HE WAS AN EMPLOYEE OR AN INDEPENDENT

11    CONTRACTOR, WHICH WE'VE BEEN GOING OVER.

12        THE COURT:  I'LL GIVE IT TO YOU.  GO AHEAD.

13        MR. WELCH:  THANK YOU, YOUR HONOR.

14        ANSWER:  FOR PAYMENT TO WHOM?

15        QUESTION:  TO YOURSELF?

16        ANSWER:  NO.

17        QUESTION:  HOW DID IT WORK?

18        AND YOUR ANSWER:  I WAS AN EMPLOYEE OF THE COMPANY,

19    AND EMPLOYEES DON'T --- AREN'T REQUIRED TO SEEK PAYMENTS

20    THROUGH THE PROFESSIONAL PAYMENT YOU'RE TALKING ABOUT,

21    FEE APPLICATIONS.

22        QUESTION:  OKAY.

23        ANSWER:  I WAS NOT REQUIRED TO FILE.  AN EMPLOYEE IS

24    NOT REQUIRED TO FILE A FEE APPLICATION.

25  BY MR. WELCH:

134

1       Q      ALL RIGHT, SIR.  CAN YOU EXPLAIN HOW THAT SQUARES

2    WITH YOUR TESTIMONY HERE TODAY THAT YOU WERE NOT AN

3    EMPLOYEE?

4       A      YES.  WHEN I USE THE TERM EMPLOYEE, GENERICALLY, AN

5    EMPLOYEE TO ME COULD BE AN INDEPENDENT CONTRACTOR OR A W-2

6    EMPLOYMENT.  THAT'S WHY I ALWAYS PREFERENCE THE EMPLOYEE

7    WITH W-2 EMPLOYEE.

8       Q      I'M NOT FOLLOWING, SIR.

9       A      I GENERICALLY USE THE TERM EMPLOYEE TO BE SOMEBODY

10   WORKING FOR THE COMPANY, NOT IN A STATUTORY SENSE AND I

11   NORMALLY PREFERENCE MY STATEMENTS OF AN EMPLOYEE AS A W-2

12   EMPLOYEE. I TRIED TO DO THAT TODAY IN MY TESTIMONY.

13      Q      WELL, YOU SAID HERE THAT AN EMPLOYEE IS NOT REQUIRED

14   TO FILE A FEE APPLICATION, WITH THE COURT I TAKE IT.  IS THAT

15   CORRECT?

16      A      YES.  IF THAT'S WHAT THAT TESTIMONY SAYS, IT IS.

17      Q      ALL RIGHT.  DO YOU REMEMBER GIVING THIS TESTIMONY?

18      A      NOT SPECIFICALLY, NO.  BUT I REMEMBER GIVING ---

19      Q      MAY I HAVE YOU LOOK AT IT.

20          MR. SHUKER:  YOUR HONOR, I DON'T KNOW WHAT HE'S

21   IMPEACHING.

22          THE COURT:  I DON'T EITHER.

23          MR. WELCH:  YOUR HONOR, IT SEEMS TO ME THAT YOU CAN'T

24   BE AN EMPLOYEE FOR ONE PURPOSE AND NOT FOR ANOTHER, AND

25   IF HE'S SAYING THAT HE'S AN EMPLOYEE FOR PURPOSES OF FILING

1    FEE APPLICATIONS, THEN HE MUST BE AN EMPLOYEE FOR OTHER

2    PURPOSES.

3         THE COURT:  JUST OUT OF BANKRUPTCY, FEE APPLICATIONS

4    ARE FOR RETAINED PROFESSIONALS, THAT'S WHO FILES FEE

5    APPLICATIONS.  SO I DON'T UNDERSTAND THE IMPEACHMENT

6    QUALITY OF THE STATEMENT THAT YOU'VE JUST READ BECAUSE

7    OF THAT DISTINCTION.

8         MR. WELCH:  WHAT I'M TRYING TO GET AT ---

9         THE COURT:  MR. CUTHILL HAS BEEN RETAINED IN MANY

10   CAPACITIES, IN MANY DIFFERENT CASES.  IN SOME OF THOSE, HE'S

11   RETAINED AS A PROFESSIONAL.  THOSE PROFESSIONALS HAVE TO

12   OBTAIN FEE APPLICATION AND COURT ORDER FOR PAYMENT.

13   THERE'S NOTHING IN THAT STATEMENT THAT YOU READ TO ME

14   THAT IMPINGES UPON ANYTHING THAT HE SAID.  AND I THINK IT'S

15   JUST BECAUSE OF THE NUANCE OF THE BANKRUPTCY AND I

16   UNDERSTAND THAT YOU'RE WANTING TO MAKE IT MORE THAN IT

17   IS, BUT I JUST DO NOT SEE THE IMPEACHMENT QUALITY.

18        MR. WELCH:  ALL RIGHT.  YOUR HONOR, IF YOU DON'T SEE

19   IMPEACHMENT.

20        THE COURT:  YEAH.

21        MR. WELCH:  THEN IT WON'T BE USED.

22        THE COURT:  OKAY.

23        MR. WELCH:  THANK YOU, YOUR HONOR.

24   BY MR. WELCH:

25        Q     MR. CUTHILL, DID YOU EVER GET COURT APPROVAL TO

136

1  OPERATE MIRABILIS AS A DEBTOR IN POSSESSION?

2          MR. SHUKER: OBJECTION, FOUNDATION, YOUR HONOR. YOU

3      DON'T NEED COURT APPROVAL.

4          MR. WELCH: I'M JUST ASKING WHETHER HE DID. I DON'T

5      KNOW WHETHER.

6          THE COURT: I'LL OVERRULE.

7          THE WITNESS: I DON'T RECALL.

8  BY MR. WELCH:

9      Q    DO YOU KNOW WHETHER YOU HAVE COURT APPROVAL NOW

10  FOR THAT POSITION?

11      A    ON A --- FROM A LEGAL STANDPOINT, I REALLY WOULD HAVE

12  TO ASK MY ATTORNEY. I MEAN, I'M AWARE OF THE CONFIRMATION

13  ORDER, THE CONFIRMATION PLAN, WHETHER THAT IS WHAT YOU CALL

14  LEGAL APPROVAL, TO ME, THAT SEEMS LIKE A LEGAL TERM. I'M NOT A

15  LAWYER.

16      Q    NO. I JUST ASK YOU WHETHER OR NOT YOU GOT A COURT ---

17  COURT APPROVAL THAT YOU KNOW OF.

18      A    YEAH. I HEARD WHAT YOU ASKED ME. OKAY? BUT I DON'T

19  KNOW IF I UNDERSTAND WHAT YOU ASKED ME. I HEARD THE WORDS,

20  BUT I DON'T KNOW IF I UNDERSTAND. YOU ASKED ME INITIALLY. LET ME

21  REPEAT IT AND SEE IF I HEARD YOUR QUESTION.

22      Q    CERTAINLY.

23      A    OKAY. AND I DIDN'T, MAYBE YOU COULD REASK THE

24  QUESTION TO ME. WHAT I HEARD YOU ASK ME WAS: WHETHER I HAD

25  COURT APPROVAL TO OPERATE THE DEBTOR?

137

1      Q      AS BEST YOU UNDERSTAND?

2      A      RIGHT.  AND THAT'S A LEGAL QUESTION.

3      Q      NO.  I'M ASKING YOUR UNDERSTANDING.  NOT WHETHER OR

4   NOT, YOU BELIEVE YOU LEGALLY HAD IT.  I'M ASKING WHETHER OR NOT

5   TO YOUR UNDERSTANDING, NOT AS LEGAL MATTER, YOU HAD SUCH

6   APPROVAL.

7      A      WELL, CERTAINLY PRIOR TO FILING BANKRUPTCY, I DIDN'T

8   HAVE A COURT APPROVAL TO DO ANYTHING BECAUSE THE COURT

9   DIDN'T HAVE JURISDICTION IF I FILED BANKRUPTCY AT THAT POINT IN

10   TIME.  NOW, YOU'RE GETTING INTO LEGAL QUESTIONS OF ---

11      Q      AFTER THE BANKRUPTCY WAS FILED, DO YOU KNOW ---

12   OBVIOUSLY, THE COURT COULDN'T GIVE YOU ANY KIND OF AN

13   INSTRUCTION BEFORE THAT.  BUT PRIOR TO FILING BANKRUPTCY, DO

14   YOU KNOW WHETHER OR NOT YOU RECEIVED ANY COURT APPROVAL?

15      A      PRIOR TO FILING BANKRUPTCY?

16      Q      NO.  POST-BANKRUPTCY, POST-PETITION?

17      A      I DON'T KNOW WHAT YOUR QUESTION MEANS.  I'M SORRY.  I

18   REALLY DON'T KNOW.

19      Q      NOW, SIR, I THINK YOU TALKED TO MR. SHUKER ABOUT

20   MEETING WITH PROFESSIONALS CONCERNING WHAT YOU SAID THE

21   REFUNDS THAT YOU BELIEVE WERE COMING FROM THE INTERNAL

22   REVENUE SERVICE.  IS THAT CORRECT?

23      A      I'M SORRY, COULD YOU ---

24      Q      YOU SAID THAT YOU MET WITH CERTAIN --- IN YOUR DIRECT

25   TESTIMONY, YOU SAID THAT YOU MET WITH CERTAIN PROFESSIONS,

1  REPRESENTING THAT AS BEST YOU KNEW A REFUND WAS COMING FROM

2  THE INTERNAL REVENUE SERVICE?

3       A      I DON'T RECALL SAYING I MET WITH MR. SHUKER.

4       Q      NO, I SAID DURING YOUR TESTIMONY WITH MR. SHUKER, YOU

5  SAID THAT YOU MET WITH CERTAIN PROFESSIONALS CONCERNING WHAT

6  YOU PERCEIVED TO BE A REFUND, WHICH WOULD BE COMING FROM THE

7  INTERNAL REVENUE SERVICE.

8       A      I'M SORRY, I DIDN'T --- I THINK WHAT MY STATEMENT WAS

9  AND IT MAY HAVE BEEN MORE THAN ONE STATEMENT THAT I MET WITH

10  THE INTERNAL REVENUE SERVICE U.S. PROSECUTOR IN THE CASE.  MY

11  OWN COUNSEL, SOME OF THE OTHER PROFESSIONALS THAT I HAVE HIRED

12  IN THE CASE AND HAD DISCUSSION WITH ALL OF THOSE PARTIES ABOUT

13  THE REFUNDS THAT I ANTICIPATED.

14       Q      NOW, I THINK THIS IS MORE, SIR, IF I COULD DIRECT YOUR

15  ATTENTION BACK TO YOUR TESTIMONY CONCERNING THE FACT THAT

16  YOU REPRESENTED TO VARIOUS ENTITIES AND PROFESSIONALS WHO

17  PERHAPS WERE LOOKING FOR PAYMENT --- I'M NOT SURE --- FROM THE

18  DEBTOR THAT YOU SHOULD BE GETTING A REFUND FROM THE INTERNAL

19  REVENUE SERVICE.

20       A      IF I USED THE TERM REPRESENTED THOSE PROFESSIONALS, I

21  CERTAINLY DON'T REPRESENT THE PROFESSIONALS.

22       Q      NO.  YOU REPRESENTED TWO ---

23       A      I HIRED THEM.

24       Q      NO.  DID YOU --- LET ME ASK THE QUESTION THIS WAY:  DID

25  YOU REPRESENT TO VARIOUS ENTITIES OR INDIVIDUALS THAT YOU

139

1    BELIEVED THAT THE DEBTOR WOULD BE RECEIVING REFUNDS FROM THE

2    INTERNAL REVENUE SERVICE?

3        A    YES.

4        Q    ALL RIGHT.  AND WHEN DID YOU DO THAT?

5        A    I DON'T RECALL.

6        Q    WELL, WAS IT PRIOR TO THE TIME OF THE CONFIRMATION

7    ORDER?

8        A    YES.

9        Q    ALL RIGHT.  AND CAN YOU RECALL WHO YOU REPRESENTED

10   THAT TO?

11       A    NO.

12       Q    WELL, SIR, WERE THESE MATERIAL REPRESENTATIONS IN

13   TERMS OF YOUR RELATIONSHIP TO THESE VARIOUS ENTITIES OR

14   INDIVIDUALS AS BEST YOU WERE CONCERNED?

15       A    I DIDN'T UNDERSTAND THAT.

16       Q    WHY DID YOU MENTION IN YOUR DIRECT TESTIMONY THAT

17   YOU WERE TELLING VARIOUS ENTITIES AND INDIVIDUALS THAT YOU

18   ANTICIPATED THAT THE DEBTOR WOULD BE RECEIVING REFUNDS FROM

19   THE INTERNAL REVENUE SERVICE?

20       A    BECAUSE THE INDIVIDUAL PROFESSIONALS HAD ASKED ME

21   WHEN I WAS GOING TO PAY THEM.

22       Q    ALL RIGHT.  SO IT WAS IMPORTANT IN YOUR RELATIONSHIP

23   WITH THESE ENTITIES AND PROFESSIONALS THAT THEY WOULD BE

24   RECEIVING --- OR THE DEBTOR WOULD BE RECEIVING PAYMENTS IN THE

25   FORM OF A REFUND FROM THE INTERNAL REVENUE SERVICE; CORRECT?

1      A     NOT ENTIRELY. TO STATE IT THAT WAY WOULD BE A

2 MISSTATEMENT OF THE FACT. I HAD PREPARED AN ANALYSIS OF WHAT I

3 THOUGHT WAS RECOVERABLE IN THE CASE, WHICH INCLUDED THE

4 REFUNDS FROM THE INTERNAL REVENUE SERVICE AND I PROVIDED THAT

5 ANALYSIS TO MANY OF MY PROFESSIONALS, BUT NOT ALL AND I

6 PROVIDED THAT TO THE INTERNAL REVENUE SERVICE, SPECIFICALLY,

7 MR. MCCABE AND MR. SMITH, THE TWO CID AGENTS, MR. GOLD, ANITA

8 CREAM, AND POSSIBLY A COUPLE OF OTHER GOVERNMENT FOLKS AND

9 THAT WAS ALL STARTED VERY EARLY IN THE CASE AND CONTINUED

10 THROUGHOUT THE CASE AND STILL CONTINUES. I'M STILL PROVIDING

11 THAT INFORMATION. ACTUALLY, I SENT MS. IDE AND MR. GOLD AND MR.

12 SMITH A REPORT THAT HAD THAT INFORMATION, I DON'T KNOW, WITHIN

13 THE LAST TEN DAYS.

14      Q     DID YOU SEND THIS REPORT TO ANY INDIVIDUALS TO WHOM

15 MIRABILIS OR ANY OF THE CONSOLIDATED DEBTORS OWED MONEY?

16      A     PROFESSIONALS?

17      Q     YES.

18      A     YES.

19      Q     WHO WAS THAT?

20      A     AS I TOLD YOU BEFORE, I DON'T RECALL SPECIFICALLY WHO

21 I COMMUNICATED THAT WITH.

22      Q     DID YOU SEND IT TO ANY --- OTHER THAN PROFESSIONALS,

23 WERE THERE ANY OTHER CREDITORS WHO YOU SENT THIS INFORMATION

24 TO?

25      A     NOT THAT I RECALL.

141

1      Q    AND WHAT WAS THE POINT OF YOUR SENDING THIS

2  MATERIAL TO THE ENTITIES AND INDIVIDUALS TO WHOM YOU SENT IT?

3      A    WELL, IT DEPENDS ON WHICH PROFESSIONAL YOU'RE

4  TALKING ABOUT. I MEAN, IF YOU'RE TALKING SPECIFICALLY ABOUT MY

5  BANKRUPTCY ATTORNEY, I THINK THAT WOULD BE --- MY

6  COMMUNICATION BACK AND FORTH WITH MY BANKRUPTCY ATTORNEY

7  GETS BACK INTO A PRIVILEGED AREA.

8      Q    ALL RIGHT. WAS THERE ANYBODY OTHER THAN YOUR

9  BANKRUPTCY ATTORNEY WHO YOU SENT IT TO?

10      A    AS I STATED BEFORE, I DON'T RECALL WHO I SENT IT TO,

11  WHICH PROFESSIONALS.

12      Q    ALL RIGHT. WAS IT MATERIALS, AS BEST YOU --- I KNOW YOU

13  SENT IT TO THESE PROFESSIONALS. AS BEST YOU UNDERSTAND IT, WAS

14  THIS A MATERIAL ISSUE WITH THE PROFESSIONALS TO WHOM YOU SENT

15  IT? WAS THIS AN IMPORTANT ISSUE TO THEM, WHETHER OR NOT THEY

16  WOULD --- THE DEBTORS WERE GOING TO GET A REFUND?

17      THE COURT: YOU DON'T NEED TO OBJECT. LET ME. WHAT IS

18  THE RELEVANCE OF WHAT AN UNPAID PROFESSIONAL HAS TO THIS

19  DETERMINATION?

20      MR. WELCH: YOUR HONOR, MR. CUTHILL TESTIFIED IN

21  AFFECT THAT THE ISSUE OF WHETHER OR NOT HE WAS GOING TO

22  GET A REFUND FROM THE INTERNAL REVENUE SERVICE WAS

23  IMPORTANT AND THESE PEOPLE RELIED ON HIS REPRESENTATION

24  THAT THEY --- THAT THE DEBTORS WERE GOING TO GET THIS

25  REFUND FROM THE INTERNAL REVENUE SERVICE AND I'M TRYING

142

1    TO FIND OUT WHO IT WAS THAT RELIED ON HIS REPRESENTATIONS

2    CONCERNING THIS POSSIBLE REFUND.

3        THE COURT: WHY IS THAT RELEVANT TO THE

4    DETERMINATION OF THE DEBTORS' TAX LIABILITY?

5        MR. WELCH: I DON'T THINK IT IS, YOUR HONOR, BUT THEY

6    BROUGHT IT UP AND GOT INTO IT AND I WANT TO FIND OUT WHY IT

7    MIGHT BE RELEVANT BECAUSE IT APPEARS THAT IT MIGHT BE A

8    DEFENSE RAISED BY THE DEBTORS.

9        THE COURT: OH. WE'RE NOT GOING TO GO FISHING. MR.

10   WELCH, IF YOU CAN ARTICULATE A HOOK THAT MAKES THIS

11   RELEVANT, I'LL LET YOU CONTINUE.

12       MR. WELCH: YOUR HONOR, IT ONLY IS RELEVANT TO A

13   POSSIBLE DEFENSE.

14       THE COURT: WHAT DEFENSE?

15       MR. WELCH: THE DEFENSE OF WHETHER OR NOT THERE WAS

16   SOME SORT OF RELIANCE BY THE DEBTOR ON THIS REFUND

17   COMING THROUGH. IF THAT'S NOT AN ISSUE, THEN IT'S NOT

18   RELEVANT.

19       THE COURT: BUT THAT'S NOT WHAT YOU'RE INQUIRING

20   ABOUT.

21       MR. WELCH: NO, I'M TRYING TO FIND OUT WHETHER OR NOT

22   THERE WERE ANY DEBTORS, NOT DEBTORS, OTHER CREDITORS OR

23   INDIVIDUALS WHO MAY HAVE RELIED UPON THIS MONEY COMING

24   IN.

25       THE COURT: THAT'S A DIFFERENT QUESTION.

143

1          MR. WELCH: WELL, THAT'S WHAT I'M TRYING TO FIND OUT

2    FROM HIM AS TO WHETHER OR NOT THERE WERE ANY WHO RELIED

3    UPON IT.

4          THE COURT: OKAY. LET'S MOVE ON. THIS AREA IS NOT

5    RELEVANT TO MY DETERMINATION.

6          MR. WELCH: ALL RIGHT.

7    BY MR. WELCH:

8          Q    NOW, SIR, I THINK YOU SAID DURING YOUR TESTIMONY

9    WHEN YOU WERE BEING EXAMINED BY MR. SHUKER THAT YOU AND

10    YOUR WIFE WERE RECEIVING LETTERS FROM THE INTERNAL REVENUE

11    SERVICE.

12          A    YES, EACH MONTH.

13          Q    AND WHAT ARE THESE LETTERS?

14          A    THE INTERNAL REVENUE SERVICE BECAUSE THE 400,000-

15    DOLLAR CREDITOR WAS MOVED ON THE 941 WOULD NOT ALLOW THE

16    WITHHOLDING TAX THAT MIRABILIS HAD REPORTED TO THE INTERNAL

17    REVENUE SERVICE ON MY 2008 W-2, AND THE INTERNAL REVENUE

18    SERVICE INITIALLY SENT MY WIFE AND I, COMBINED, A NOTICE, SAYING

19    THAT THEY WERE ASSESSING TAXES OF IT'S IN THE NEIGHBORHOOD OF

20    $4,000 PLUS PENALTIES AND INTEREST, OF WHICH I WROTE THE INTERNAL

21    REVENUE SERVICE AND REQUESTED AN IN-PERSON CONFERENCE, OF

22    WHICH THEY IGNORED MY IN-PERSON CONFERENCE REQUEST AND HAVE

23    CONTINUED TO SEND, INDIVIDUALLY NOW, EACH MONTH, A COMPUTER

24    GENERATED LETTER INCREASING THE PENALTIES AND INTEREST, EACH

25    MONTH. IT'S UP TO ABOUT MAYBE 6,000, TOTAL, AT THIS POINT.

1           MR. CARPENTER TESTIFIED EARLIER THAT I OWE TAX. THE

2   IRS IS CLAIMING I OWE TAX. I'M CLAIMING THAT WHEN I FILED MY

3   AMENDED RETURN, I HAD A 34,000 REFUND, OF WHICH I WAS GOING TO

4   USE TO REPAY THIS DEBTOR. BUT SINCE THE 400,000 WAS MOVED, IT

5   IMPACTED ME, PERSONALLY, SO THAT WAS MY ANSWER TO YOUR

6   QUESTION.

7       Q    SO THESE LETTERS ARE CONCERNING A 4,000 TO 6,000-

8   DOLLAR INCOME TAX LIABILITY?

9       A    I BELIEVE THE INCOME TAX LIABILITY IS LIKE 4,000 AND

10  CHANGE AND THERE'S PENALTIES AND INTEREST.

11      Q    ON YOUR ---

12      A    ON MY PERSONAL AND MY WIFE'S PERSONAL 1040.

13      Q    RIGHT. YOUR JOINT RETURN FOR WHAT YEAR?

14      A    2008.

15           MR. WELCH: IF I MAY HAVE JUST A MINUTE, YOUR HONOR.

16           THE COURT: CERTAINLY.

17           MR. WELCH: THANK YOU, MR. CUTHILL, NO FURTHER

18  QUESTIONS.  THANK YOU, YOUR HONOR.

19          THE COURT: YOU'RE VERY WELCOME, MR. WELCH.

20         MR. SHUKER, ANYTHING FURTHER?

21         MR. SHUKER: NOTHING, YOUR HONOR. THANK YOU.

22         THE COURT: THANK YOU, MR. CUTHILL.

23         WHO WOULD YOUR NEXT WITNESS BE, MR. SHUKER?

24         MR. SHUKER: WE REST. WE HAVE NO FURTHER WITNESSES

25  OR EVIDENCE.

145

1  　　　　　THE COURT:  THANK YOU.  WHO WOULD THE GOVERNMENT

2  OFFER?

3  　　　　　MS. IDE:  YOUR HONOR, WE CALL CHERYL SUMMERS.

4  　　　　　THE COURT:  AND HOW LONG DO YOU THINK HER TESTIMONY

5  WILL BE?

6  　　　　　MS. IDE:  WELL, I THINK, YOUR HONOR, IT WILL BE

7  UNFORTUNATELY, IT WILL BE ABOUT AN HOUR AND A HALF.

8  　　　　　THE COURT:  THEN WE WILL NOT BE BEGINNING IT TODAY.

9  　　　　　MS. IDE:  OKAY.

10  　　　　　THE COURT:  WE'RE GOING TO HAVE TO FIND TIME TO COME

11  BACK.  WHAT OTHER WITNESSES DO YOU ANTICIPATE ON BEHALF

12  OF THE GOVERNMENT?

13  　　　　　MS. IDE:  JUST MS. SUMMERS, YOUR HONOR.

14  　　　　　THE COURT:  OKAY.  AND ANY OTHER ADDITIONAL

15  REBUTTAL EVIDENCE OF ANY KIND?

16  　　　　　MR. SHUKER:  NO, YOUR HONOR.

17  　　　　　THE COURT:  SO IF I RESERVE ABOUT THREE HOURS, IS THAT -

18  -- IS THAT EVEN REMOTELY CLOSE TO WHAT WE NEED?

19  　　　　　MR. SHUKER:  IT WILL STUN ME IF I TAKE MORE THAN A HALF

20  AN HOUR ON CROSS.

21  　　　　　THE COURT:  VERY GOOD.  THREE HOURS IS NOT IN --- I WANT

22  TO GET THIS OVER WITH AS SOON AS YOU GUYS DO, BUT THREE

23  HOURS OF COURT TIME RIGHT NOW IS HARD TO FIND.

24  　　　　　MR. SHUKER:  YOUR HONOR, I THINK WE ONLY --- HOW LONG

25  DID SHE SAY ON DIRECT?

146

1      THE COURT: AND HOUR AND A HALF, AND YOU NEED A HALF

2   HOUR AND THEN YOU'RE GOING TO NEED CLOSING ARGUMENTS, SO

3   YOU'RE GOING TO NEED THREE HOURS.

4      SO LET'S DO THIS, LET TAKE A SHORT BREAK. I'M GOING TO

5   ASK MR. THOMPSON TO GET WITH THE COURTROOM DEPUTY WHO

6   DOES ALL OF MY SCHEDULING BECAUSE I FIND WHEN I DO IT, I

7   MESS IT UP MORE THAN I HOPE, SO. IF WE COULD TAKE JUST A

8   SHORT BREAK TO FIGURE OUT GOOD DATES, THAT WAY YOU ALL

9   CAN GET YOUR CALENDARS OUT ALSO AND MAKE SURE IT IS AS

10   CONVENIENT AS WE CAN TO EVERYBODY ELSE, AND PLEASE, MR.

11   THOMPSON AS SOON AS WE CAN GET BACK, I WOULD LIKE US TO

12   GET THIS RESOLVED, SO I REALLY WOULD LIKE US TO RESUME

13   SOON.

14      BUT COURT IS IN RECESS SO WE CAN DO THAT. I'LL BE RIGHT

15   BACK.

16      THE CLERK: ALL RIGHT.

17      (WHEREUPON, A SHORT RECESS WAS HAD.)

18      THE CLERK: ALL RISE. THE COURT IS BACK IN SESSION.

19      THE COURT: I UNDERSTAND THAT EVERY ONE IS AVAILABLE

20   ON OCTOBER THE 20TH. IS THAT THE CORRECT DATE?

21      THE CLERK: CORRECT.

22      THE COURT: AND WE ALREADY HAVE A COUPLE --- THE ONLY

23   MATTER WE HAVE RIGHT NOW IS WHAT WE SET OVER FROM THIS

24   MORNING, WHICH IS THE SUMMARY JUDGMENT MOTION AND MR.

25   BEYER'S SUMMARY JUDGMENT MOTION. THE PRE-TRIAL

147

1    CONFERENCE IN THE AEM ADVERSARY, NOT ADVERSARY

2    PROCEEDING, BUT IN THE MAIN CASE ON THE PROOF OF CLAIM AND

3    ITS OBJECTION, AND THEN THIS.

4         MY SUGGESTION IS WE START AT 1:00, THAT WAY WE'LL

5    HAVE ENOUGH TIME TO DO EVERYTHING. I WILL DO THE ORAL

6    ARGUMENTS AND THE PRE-TRIAL CONFERENCES FIRST. SO I

7    WOULDN'T HAVE YOUR WITNESSES HERE UNTIL LIKE 1:30. MS.

8    SUMMERS IS WELCOME TO COME EARLIER IF YOU WANT.

9         BUT WE'LL START AS SOON AS WE CAN AFTER THAT. THAT

10   WILL GIVE US THREE SOLID HOURS TO DO IT AND WE'LL SEE IF WE

11   CAN GET THROUGH.

12        IS THERE ANY --- ALL OF THE DEBTOR'S PROPOSED EXHIBITS

13   WERE ADMITTED. I THINK WE HAVE THE SUBSTITUTES OF THE

14   FULL TRANSCRIPTS. I'LL LOOK AT THEM BETWEEN NOW AND THAT

15   TIME. I'LL READ THE TRANSCRIPTS OF THOSE THAT WERE

16   ADMITTED IN FULL.

17        IS THERE ANYTHING ELSE THAT WE NEED TO DO TODAY

18   BEFORE WE RECESS?

19        MR. SHUKER: DID YOU WANT NEW EXHIBIT TAGS, I HAVE

20   BLANK EXHIBIT TAGS.

21        THE COURT: I DON'T CARE. IF MR. THOMPSON DOES, YES,

22   BUT I DON'T CARE.

23        THE CLERK: THAT'S OKAY.

24        THE COURT: AND ANYTHING ELSE?

25        MR. SHUKER: NO, YOUR HONOR.

148

1        MS. IDE:  NO, YOUR HONOR.

2        THE COURT:  VERY GOOD.  THANK YOU AGAIN FOR YOUR

3    PATIENCE TODAY AND I WILL SEE YOU BACK ON OCTOBER THE 20TH.

4        MS. IDE:  THANK YOU, YOUR HONOR.

5        THE COURT:  THANKS.

6        (WHEREUPON, THE HEARING WAS CONCLUDED AT 4:42 P.M.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

149

CERTIFICATE OF OATH

STATE OF FLORIDA

COUNTY OF SEMINOLE


    I, MARGIE A. GREEN, NOTARY PUBLIC, CERTIFY THAT I WAS

AUTHORIZED TO AND DID TRANSCRIBE, FROM CD-R, THE FOREGOING

PROCEEDINGS AND THAT THE TRANSCRIPT IS A TRUE RECORD

    I FURTHER CERTIFY THAT I AM NOT A RELATIVE, EMPLOYEE,

ATTORNEY OF COUNSEL OF ANY OF THE PARTIES, NOR AM I FINANCIALLY

INTERESTED IN THE ACTION.

    DATED THE 10TH DAY OF OCTOBER 2010.




MARGIE A. GREEN

NOTARY PUBLIC – STATE OF FLORIDA

MY COMMISSION NO.:  DD0714428

MY COMMISSION EXPIRES: 9/13/2011