# *TRANSCRIPT OF PROCEEDINGS*

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 08-4327

IN RE:

MIRABILIS VENTURES, INC.,

DEBTOR.

_____/

**FILED**

NOV - 8 2010

CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

EVIDENTIARY HEARING

BEFORE:        THE HONORABLE KAREN S. JENNEMANN

DATE:          OCTOBER 20, 2010

TIME:          1:23 P.M.

APPEARANCES:

ON BEHALF OF THE DEBTOR:        SCOTT SHUKER, ESQUIRE

ON BEHALF OF MIRABILIS:         ERIC ADAMS, ESQUIRE
ON BEHALF OF RON SACHS:         DOUG KILBY, ESQUIRE
ON BEHALF OF DEBTOR:            NICOLETTE VILMOS, ESQUIRE
ON BEHALF OF IRS:               BRIAN HARRIS, ESQUIRE
ON BEHALF OF IRS:               CAROL IDE, ESQUIRE

# Realtime Reporters, Inc.

Registered Professional Reporters
Certified Video Technicians

1188 Fox Forrest Circle • Apopka, Florida 32712 • (407) 884-4662 • FAX (407) 884-4664
*Sandra A. Dawkins, President • Professional Reporting Since 1977*






2

1                               I N D E X

2    TESTIMONY OF MS. SUMMERS

3         DIRECT EXAMINATION BY MS. IDE                    22

4         CROSS EXAMINATION BY MR. SHUKER                  85

5         REDIRECT EXAMINATION BY MS. IDE                  105

6         RECROSS EXAMINATION BY MR. SHUKER                109

7    CERTIFICATE OF OATH                                   115

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1                   P R O C E E D I N G S

2          THE CLERK:  ALL RISE.  THE UNITED STATES BANKRUPTCY

3   COURT FOR THE MIDDLE DISTRICT OF FLORIDA IS NOW IN SESSION.

4   THE HONORABLE KAREN S. JENNEMANN PRESIDING.  YOU MAY BE

5   SEATED.

6          THE COURT CALLS BANKRUPTCY CASE 08-4327, MIRABILIS

7   VENTURES, INC., AND RELATED ADVERSARY PROCEEDING 09-813,

8   09-814, 10-140, 10-141, HOTH HOLDINGS ADVERSARY PROCEEDINGS

9   08-148, AND AEM, INC., 08-4681.  ALL INTERESTED PARTIES, PLEASE

10  COME FORWARD AND ENTER AN APPEARANCE.

11         MR. SHUKER:  GOOD AFTERNOON, YOUR HONOR, SCOTT

12  SHUKER, ON BEHALF OF THE THREE DEBTORS.  WITH ME IS MR.

13  CUTHILL.

14         MS. IDE:  GOOD AFTERNOON, YOUR HONOR, CAROL IDE, ON

15  BEHALF OF THE UNITED STATES INTERNAL REVENUE SERVICE AND

16  WITH ME IS CHERYL SUMMERS OF THE INTERNAL REVENUE

17  SERVICE.

18         THE COURT:  VERY GOOD.

19         MR. HARRIS:  GOOD AFTERNOON, BRIAN HARRIS, FOR THE

20  UNITED STATES.

21         MR. WELCH:  GOOD AFTERNOON, JUDGE, ROBERT WELCH, FOR

22  THE UNITED STATES.

23         MS. VILMOS:  YOUR HONOR, NICOLETTE VILMOS, ON BEHALF

24  OF THE DEBTOR IN ADVERSARIES 140 AND 141.

25         MR. ADAMS:  AND YOUR HONOR, ERIC ADAMS, ON BEHALF OF

4

1    THE DEBTOR IN RELATIONSHIP TO THE TWO 08HR ADVERSARIES,

2    WHICH I BELIEVE ARE 813 AND 814, YOUR HONOR.

3          THE COURT: VERY GOOD. WE HAD CONTINUED SOME

4    MATTERS OVER FOR A PRETRIAL CONFERENCE AND I WANT TO

5    TAKE THOSE FIRST, SO THOSE PARTIES CAN BE GONE BEFORE WE

6    PROCEED WITH THE CONTINUATION OF THE EVIDENTIARY HEARING

7    ON THE ISSUES BETWEEN THE UNITED STATES AND THE DEBTOR.

8          WE HAD CONTINUED THE ISSUES RELATING TO SECURE

9    SOLUTIONS IN THE MIRABILIS MAIN CASE, AND I DIDN'T SEE

10   ANYTHING FURTHER IN CONNECTION WITH THOSE IN THE DOCKET

11   AND I DIDN'T KNOW WHAT THE STATUS WAS. MR. SHUKER.

12         MR. SHUKER: AT THE LAST HEARING, YOUR HONOR, WE

13   AGREED TO ALLOW MR. HILL THIRTY DAYS TO LOOK THROUGH THE

14   DOCUMENTS AND --- BECAUSE WE HAVE THE PENDING MOTION TO

15   ENFORCE SETTLEMENT AGREEMENT.

16         THE COURT: CORRECT.

17         MR. SHUKER: AND, TO MY KNOWLEDGE, THEY NEVER CAME

18   TO LOOK AT THE DOCUMENTS.

19         MALE SPEAKER: THEY DID COME AND LOOK ONE DAY.

20         THE COURT: YES.

21         MALE SPEAKER: AND WE TOLD THEM, ANY TIME THEY

22   WANTED TO COME LOOK, MAKE AN APPOINTMENT AND COME

23   LOOK, AND I'VE TALKED TO THE PRESIDENT OF SECURED

24   SOLUTIONS TWICE.

25         THE COURT: YES.

1      MR. ADAMS: AND HE TOLD ME HE HAS NOT HAD TIME TO

2  COME LOOK.

3      MR. SHUKER: SO, YOUR HONOR, THE ISSUE WAS THERE'S

4  MONEY IN OUR TRUST, WE WOULD LIKE TO RELEASE IT. I HAVEN'T

5  HEARD BACK FROM MR. HILL AS TO THEIR POSITION TODAY, SO IT'S

6  PERHAPS NOT FAIR TO HEAR THE MOTION TO ENFORCE WITH HIM

7  NOT HERE, BUT WE WOULD LIKE IT SET FOR HEARING, WHICH IS

8  DOCKET ENTRY 617 OR ALTERNATIVELY, GRANTED. THEY HAD

9  THEIR 30 DAYS AND ARE NOT HERE TO ARGUE AGAINST IT. BUT

10  WITH MR. HILL NOT HERE, THAT SEEMS NOT APPROPRIATE.

11      I GAVE YOU THE WRONG DOCUMENT NUMBER. SORRY.

12  DOCKET ENTRY 603.

13      THE COURT: RIGHT. I HAVE THAT. IN THE HEARING WHERE

14  WE CONTINUED IT WAS ON SEPTEMBER 15TH.

15      MR. SHUKER: YES.

16      THE COURT: TODAY IS THE 20TH. WE DID NOTICE TODAY'S

17  HEARING AND PROVIDE THAT IT WOULD BE HEARD TODAY. MR.

18  HILL VERY GOOD AT PARTICIPATING IF HE IS HIRED AND RETAINED

19  TO DO SO.

20      MR. SHUKER: YES.

21      THE COURT: SO I'M ASSUMING HE PERHAPS IS NO LONGER

22  REPRESENTING THE CREDITOR.

23      MR. SHUKER: I HAVEN'T HEARD BACK SINCE THAT HEARING

24  AND HE JUST SAID THAT THE CLIENT WOULD COORDINATE ALL

25  THAT, AND THEN I HAVEN'T HEARD BACK FROM A COUPLE OF

6

1    PHONE CALLS.

2         THE COURT: I WILL GRANT THE MOTION TO ENFORCE THE

3    SETTLEMENT AGREEMENT. I WILL SUSTAIN THE OBJECTION TO

4    CLAIM. WE HAVE GIVEN THEM TIME.

5         MR. SHUKER: THANK YOU, YOUR HONOR. WE'LL SUBMIT

6    ORDERS.

7         THE COURT: THANK YOU.

8         IN ADVERSARY PROCEEDINGS, 09-813 AND 814.

9         MR. SHUKER: MR. ADDISON.

10        MR. ADDISON: YOUR HONOR, THIS IS MIKE ADDISON IN

11   TAMPA. I INITIALLY DIDN'T ANNOUNCE MY APPEARANCE BECAUSE

12   THINGS MOVED TOO QUICKLY TO CALL THE CASE.

13        THE COURT: NO PROBLEM.

14        AND MR. ADAMS IS HERE; CORRECT?

15        MR. ADAMS: YES, MA'AM, ON BEHALF OF THE DEBTOR. I'VE

16   BEEN WORKING WITH MS. HOWARD AND MR. ADDISON AND HIS

17   OFFICE TO EXCHANGE INFORMATION. THIS IS A SUIT ON A NOTE.

18   WE HAD A MOTION FOR PARTIAL SUMMARY JUDGMENT BEFORE

19   THE COURT, WHICH WAS DENIED BECAUSE AN ISSUE OF FACTS

20   CAME UP. WE NEED TO PARTICIPATE IN MEDIATION, BUT IT IS A

21   VERY INFORMATION INTENSIVE ISSUE.

22        IT'S INVOLVED THE EXCHANGE OF CONFIDENTIAL

23   INFORMATION AFTER THE NEGOTIATION OF A CONFIDENTIALITY

24   AGREEMENT. IT'S GOING TO INVOLVE SOME RANDOM SAMPLING

25   OF INFORMATION TO SEE WHICH INDIVIDUALS OR WHICH

7

1    ACCOUNTS ACTUALLY DID TRAVEL OVER AS A RESULT OF THE

2    KNOWN SALE AND TO DO THE CALCULATION OF THE FORMULA

3    INSIDE OF THE NOTE.

4        AND SO I KNOW THERE WAS AN UNOPPOSED MOTION FOR AN

5    EXTENSION FOR US TO HAVE A MEANINGFUL MEDIATION FILED BY

6    02HR AND WE DON'T HAVE AN OPPOSITION TO IT, BECAUSE IN

7    ORDER FOR US TO, YOU KNOW, EXPLORE AND INTERROGATE AND

8    FOR US TO HAVE A MEANINGFUL MEDIATION, THERE'S GOING TO

9    BE THE NEED FOR THAT INTERROGATION.

10       BY PURPOSES OF --- OR BY WAY OF THE PRETRIAL

11   CONFERENCE, I JUST RESPECTFULLY REQUEST THAT THE

12   UNOPPOSED MOTION FILED 02HR BE GRANTED AND THEN AT THE

13   APPROPRIATE TIME, THE COURT CALL US BACK AS THE COURT

14   MIGHT SEE FIT FOR A CONTINUE STATUS CONFERENCE OR

15   PRETRIAL CONFERENCE.

16       THE COURT:  AND MR. ADDISON, ANYTHING YOU WANT TO

17   ADD TO THAT?

18       MR. ADDISON:  NO, I THINK MR. ADAMS ADDRESSED IT

19   ELOQUENTLY.

20       MR. ADAMS:  THERE'S A FIRST TIME FOR EVERYTHING, YOUR

21   HONOR.

22       THE COURT:  I WILL GRANT BOTH MOTIONS IN BOTH

23   ADVERSARY PROCEEDINGS TO EXTEND THE TIME TO CONDUCT THE

24   MEDIATION TO THE REQUESTED DATE OF JANUARY THE 18TH IS THE

25   DATE THAT YOU'VE REQUESTED AND THAT'S FINE.

8

1    WE'LL SET A CONTINUED PRETRIAL CONFERENCE AFTER

2  JANUARY THE 18TH AND I'LL NEED TO GET A DATE FOR THAT.

3    MR. ADAMS:  THANK YOU, YOUR HONOR.

4    THE COURT:  WHAT'S A GOOD DATE?  WAIT, ONE SECOND, MR.

5  ADAMS.

6    MR. ADAMS:  OH I APOLOGIZE.

7    THE COURT:  MR. MINOS.  IT WILL BE A DATE WHERE WE SET

8  EVERYTHING ELSE OVER TOO.

9    MALE SPEAKER:  SO THAT WOULD BE FEBRUARY THE 10TH AT

10  10:00 A.M.

11    THE COURT:  FEBRUARY THE 10TH AT 10:00 A.M.

12    MR. ADAMS:  THANK YOU, YOUR HONOR.

13    THE COURT:  AND THAT WILL JUST BE A CONTINUED

14  PRETRIAL CONFERENCE TO SEE WHERE WE GO AFTER MEDIATION.

15    MR. ADAMS:  WOULD YOU LIKE FOR ME TO PREPARE, OR MR.

16  ADDISON TO PREPARE, ORDERS FOR THE COURT WITH RESPECT TO

17  THE TWO MOTIONS?

18    THE COURT:  YES, PLEASE.  WHO WILL BE --- YOU'LL DO

19  THAT?

20    MR. ADAMS:  I'LL COORDINATE THAT WITH MR. ADDISON.  WE

21  GET ALONG WELL ENOUGH TO FIGURE OUT WHO IS GOING TO BE

22  DOING WHAT, SO.

23    THE COURT:  VERY GOOD.  I'LL LOOK FOR THE ORDER THAN.

24    MR. ADAMS:  THANK YOU, YOUR HONOR.

25    THE COURT:  THANK YOU.

1      MR. ADDISON:  THANK YOU, YOUR HONOR.

2      THE COURT:  YOU'RE WELCOME.

3      AND THEN IN ADVERSARY PROCEEDING 10-140 AND 141.

4      MR. KILBY:  GOOD AFTERNOON, YOUR HONOR, DOUG KILBY

5  ON BEHALF OF RON SACHS COMMUNICATIONS IN THE CASE 00140.

6      THE COURT:  VERY GOOD. THANK YOU.

7      MS. VILMOS:  YOUR HONOR, NICOLETTE VILMOS.  FIRST OF

8  ALL, I WANT TO APOLOGIZE TO THE COURT AND TO COUNSEL FOR

9  NOT SHOWING UP FOR THE PREVIOUS PRETRIALS.  IT WAS A

10  CALENDARING ERROR ON OUR PART, BUT I WANTED EVERYBODY

11  TO KNOW IT WAS INTENTIONAL TO NOT APPEAR.

12      AND IN MR. KILBY'S MATTER, MATTER 140, THE RON SACHS

13  COMMUNICATIONS, WE HAVE EXCHANGED SOME DOCUMENTS.

14  I'VE RECEIVED SOME DOCUMENTS WITH MR. KILBY.  WE'RE

15  CURRENTLY IN SETTLEMENT NEGOTIATIONS.  DURING THIS TIME, I

16  HAVE DONE THIRD PARTY DISCOVERY ALSO.

17      I EXPECT THAT THE CASE WILL EITHER SETTLE THIS WEEK,

18  AND IF IT DOESN'T, BASED ON THE THIRD PARTY DISCOVERY AND

19  THE DOCUMENTATION FROM MR. KILBY, WE WOULD FILE AN

20  AMENDED COMPLAINT AND JUST PROCEED BECAUSE WE'VE

21  NARROWED THE ISSUES BASED ON THE INFORMATION THAT'S BEEN

22  PROVIDED, BUT I'M HOPING THAT WE CAN RESOLVE IT.

23      THE COURT:  VERY GOOD.  AND MR. KILBY.

24      MR. KILBY:  YOUR HONOR.  THERE IS CURRENTLY PENDING

25  BEFORE THE COURT OUR MOTION TO DISMISS.  FRANKLY, I DON'T

10

1    THINK COUNSEL FOR THE DEBTOR CONTESTS THE ISSUES RAISED,

2    THE DEFECTS POINTED OUT IN THE COMPLAINT. WE ARE ENGAGED

3    IN SETTLEMENT DISCUSSIONS. I WOULD, I GUESS, YOUR HONOR,

4    RESPECTFULLY REQUEST THAT YOU GRANT THE MOTION TO

5    DISMISS, GIVING THE DEBTOR SOME REASONABLE PERIOD OF TIME

6    IN WHICH TO AMEND IF WE'RE NOT ABLE TO GET THE MATTER

7    SETTLED. THEN IF WE'RE NOT, I REALLY WOULD LIKE A

8    SCHEDULING ORDER, IF WE COULD, YOUR HONOR, TO JUST MOVE

9    THIS CASE TO COMPLETION.

10    THE COURT: HOW MUCH TIME WOULD YOU LIKE TO FILE THE

11    AMENDED COMPLAINT?

12    MS. VILMOS: TWO WEEKS.

13    THE COURT: THAT'S FINE.

14    MR. VILMOS: IT'S PREPARED.

15    THE COURT: VERY GOOD.

16    AND THEN, HOW MUCH TIME WOULD YOU LIKE TO ANSWER,

17    MR. KILBY? IS 30 DAYS, IS THAT ENOUGH TIME?

18    MR. KILBY: THAT'S MORE THAN SUFFICIENT, YOUR HONOR.

19    THE COURT: VERY GOOD. I WILL GRANT THE MOTION TO

20    DISMISS. I WILL GIVE THE PLAINTIFF THE OPPORTUNITY TO FILE AN

21    AMENDED COMPLAINT ON OR BEFORE NOVEMBER THE 5TH. AN

22    ANSWER WILL BE DUE ON OR BEFORE DECEMBER THE 3RD. I'LL SET

23    A FURTHER PRETRIAL CONFERENCE FOR FEBRUARY THE 10TH AT

24    10:00 A.M. I WOULD DIRECT THE PARTIES TO --- IF THE CASE IS STILL

25    PENDING --- TO HAVE A CASE MANAGEMENT CONFERENCE. YOU

11

1    ALL COME UP WITH YOUR OWN SCHEDULE IN TERMS OF

2    DISCOVERY CUTOFF, DISCOVERY PLAN AND JUST A BASIC RULE 16

3    CONFERENCE SO THAT YOU CAN GIVE ME SOME GUIDANCE AS TO

4    HOW FAST OR HOW SLOW OR WHAT IS YOUR PARTICULAR NEEDS

5    ARE. I'LL BE GLAD TO ISSUE A SCHEDULING ORDER WHEN WE

6    COME BACK BASED UPON THE PARTY'S REQUEST.

7         MR. KILBY: THANK YOU, YOUR HONOR.

8         THE COURT: BUT I HATE TO HAVE YOU DO ALL THAT WORK

9    IF YOU'RE GOING TO RESOLVE IT IN THE NEXT FEW DAYS. I

10   CERTAINLY WILL ASK IF MEDIATION WILL BE HELPFUL OR NOT, SO

11   YOU MAY WANT TO DISCUSS THAT.

12        AND I WILL DO THIS SHORT ORDER, BUT IS THERE ANYTHING

13   ELSE THAT NEEDS TO HAPPEN IN THIS ADVERSARY PROCEEDING?

14        MS. VILMOS: NO, YOUR HONOR.

15        THE COURT: VERY GOOD. AND THEN IN CONNECTION WITH

16   ADVERSARY PROCEEDING 10-141.

17        MS. VILMOS: YES, YOUR HONOR. WE HAVE ACTUALLY

18   SETTLED THIS MATTER. PROBABLY ABOUT AN HOUR AND A HALF

19   AGO, I FILED A NOTICE OF DISMISSAL AS TO DEFENDANTS COLLINS

20   AND MORREA AND WE'RE WORKING ON A SETTLEMENT DOCUMENT

21   WITH MR. BEYER, WHICH SHOULD BE EXECUTED HOPEFULLY WITH

22   IN THE NEXT COUPLE OF WEEKS.

23        THE COURT: PERFECT. I'M GLAD TO HEAR THAT. IF I SET IT

24   OVER FOR A PRETRIAL CONFERENCE UNTIL FEBRUARY 10TH, IS

25   THAT TOO FAR OUT? IT PROBABLY WON'T BE HERE.

12

1        MS. VILMOS: YES. IT'S GOING TO BE RESOLVED, SO.

2        THE COURT: OKAY. I'LL JUST SET IT OVER SO WE DON'T

3    LOSE IT. I'LL SET A PRETRIAL CONFERENCE CONTINUATION UNTIL

4    FEBRUARY THE 10TH AT 10:00.

5        VERY GOOD. THANK YOU.

6        MS. VILMOS: THANK YOU, YOUR HONOR.

7        MR. KILBY: THANK YOU, YOUR HONOR.

8        THE COURT: THANK YOU VERY MUCH.

9        ON THE CALENDAR, WE HAD THE CASE OF ADVERSARY 8-148.

10   I DOUBT THAT ANYONE IS HERE ON THAT, BUT THERE WAS A

11   STIPULATED DISMISSAL, WITH PREJUDICE THAT WAS FILED, SO

12   THAT ADVERSARY PROCEEDING IS DISMISSED.

13       AND IS THERE ANYTHING ELSE OTHER THAN THE ISSUES

14   RELATING TO THE PRETRIAL CONFERENCE ON THE DEBTOR'S

15   OBJECTION IN AEM AS WELL AS THE CONTINUED EVIDENTIARY

16   HEARING. ANY THING ELSE THAT WE NEED TO DISCUSS BEFORE WE

17   ---

18       MR. SHUKER: THERE WAS ONE ON THE CALENDAR, BUT IT

19   WAS ALREADY SETTLED, SO I ASSUME IT'S NOT ON THE CALENDAR

20   ANYMORE. THAT WAS IN MIRABILIS. THERE WAS A PRETRIAL AND

21   THE OBJECTION BY THE DEBTOR TO CLAIM NUMBER 32, DOCKET

22   ENTRY 345. THAT WAS SETTLED AND THERE WAS ACTUALLY AN

23   ORDER ENTERED, DOCKET 604.

24       THE COURT: WE TOOK THAT OFF.

25       MR. SHUKER: THAT CAN BE TAKEN --- WELL, IT ALREADY

13

1    WAS.

2            THE COURT:  IT WAS TAKEN OFF.

3            MR. SHUKER:  OTHERWISE, NO.

4            THE COURT:  VERY GOOD.  LET'S DO --- TELL ME WHERE WE

5    ARE AT AEM AT THIS POINT.  YOU ALL TELL ME WHAT MAKES THE

6    MOST SENSE?  I'M YOURS FOR THE AFTERNOON NOW.

7            MR. SHUKER:  WE COULD PROBABLY TAKE THE PRETRIAL AT

8    THE END OF THE OBJECTION TO CLAIM AND THE MOTION TO

9    ENFORCE TO COMPEL COMPLIANCE WITH THE PLAN, DEPENDING

10   ON HOW YOU RULE OR IF YOU RULE, WILL IMPACT SOME OF THE

11   URGENCY, TO SOME EXTENT, ON THE AEM.

12           IF YOU ULTIMATELY RULE THAT THEY HAVE TO COMPEL

13   WITH THE PLAN AND TURN OVER THE 1.4-MILLION, THE ESTATE,

14   THE LIQUIDATING DEBTOR IS NOT AS PRESSED AND IS NOT LOSING

15   PROFESSIONALS AS IT WOULD BE IF YOU EITHER DEFER RULING OR

16   RULE AGAINST US, AND THEN WE HAVE TO HAVE AEM RESOLVED,

17   PRIOR TO DETERMINING TURNOVER OF THIS 1.4-MILLION, IN WHICH

18   CASE WE'RE ALREADY READY TO TRY IT, BUT THE IRS HASN'T

19   EVEN FINISHED ITS AUDIT, SO I KNOW ITS GOING TO BE ASKING FOR

20   MORE TIME.

21           BUT WE MAY BE MORE AMENABLE TO THAT MORE TIME,

22   DEPENDING ON HOW THE RULING GOES AND THE IMPACT IT HAS ON

23   THE LIQUIDATING DEBTOR AND ITS PROFESSIONALS.  SO I THINK

24   WE CAN JUST SIMPLY JUMP INTO WHAT REMAINS OF THE

25   OBJECTION TO THE ADMIN CLAIM AND THE MOTION TO COMPEL

14

1  PERFORMANCE WITH THE PLAN.  WE'VE ALREADY PUT ON OUR

2  EVIDENCE.

3      THE COURT:  RIGHT.

4      MR. SHUKER:  IT'S THE IRS' TURN, THEN IT WILL BE LEGAL

5  ARGUMENT ON BOTH ISSUES.

6      THE COURT:  AND MR. HARRIS.

7      MR. HARRIS:  YES, YOUR HONOR.  WITH RESPECT TO AEM, I

8  DON'T KNOW HOW THE COURT'S RULING IN MIRABILIS MIGHT

9  AFFECT DISCOVERY.  I DON'T KNOW THAT IT WOULD HAVE A

10  GREAT BEARING ON WHAT WE WANT, SO I'M PREPARED TO DISCUSS

11  AEM RIGHT NOW AND WE ARE IN THE MIDDLE OF DISCOVERY ON

12  AEM.

13      AS YOUR HONOR IS PROBABLY AWARE, WE'RE TRYING TO

14  UNRAVEL THE FINANCES OF AEM AND THREE RELATED

15  CORPORATIONS WITH RESPECT TO EMPLOYMENT TAXES FOR THE

16  FIRST AND SECOND QUARTERS OF 2007.

17      THE UNITED STATES HAS DONE THREE ROUNDS OF WRITTEN

18  DISCOVERY TO AEM TO TRY AND DETERMINE WHAT THEY KNOW

19  ABOUT THE FINANCES OF AEM AND THOSE OTHER THREE ENTITIES

20  DURING THE TIME PERIODS THAT WE'RE TALKING ABOUT.  AND

21  WHAT WE'VE REALLY GOTTEN BACK FROM AEM IS THAT NO ONE

22  INVOLVED IN THE COMPANY RIGHT NOW, PRIMARY MR. CUTHILL,

23  HAS PERSONAL KNOWLEDGE OF WHAT WAS GOING ON BACK IN

24  2007 AND NO ONE CAN SAY --- OR AT LEAST NO ONE AT THE

25  COMPANY RIGHT NOW CAN SAY WITH ANY CERTAINTY GIVE US

15

1    THE ANSWERS TO OUR QUESTIONS. WHICH IS: HOW ARE THE

2    FINANCES OF AEM RELATED TO THESE OTHER THREE ENTITIES? SO

3    WE ARE NOW HAVING TO --- ON THAT SAME NOTE, AEM HAS NOT

4    BEEN ABLE TO PROVIDE ANY DOCUMENTS OR SUFFICIENT

5    DOCUMENTS WITH RESPECT TO THAT TIME FRAME.

6         SO WHERE WE ARE RIGHT NOW IS WE'VE HAD TO TURN BACK

7    TO THE SOURCE DOCUMENTS. NAMELY, SENDING SUBPOENAS TO

8    THE BANKS TRYING TO GET THE RECORDS FOR THESE FOUR

9    ENTITIES AND REBUILD, RECONSTRUCT WHAT WAS HAPPENING IN

10   THAT TIME FRAME OURSELVES. WE ARE STARTING THAT PROCESS.

11   THE SUBPOENAS ARE OUT, BUT GIVEN THE SIZE OF THE COMPANIES,

12   THE TRANSACTIONS, THE BANK ACCOUNTS, STATEMENTS, THINGS

13   LIKE THAT, WE LIKE WE WOULD NEED AT LEAST ANOTHER 120

14   DAYS TO COMPLETE THAT PROCESS.

15        SO WE WOULD ASK THE COURT TO SET A FURTHER STATUS

16   HEARING OR A PRETRIAL CONFERENCE, WHATEVER THE COURT

17   WANTS TO DETERMINE IN 120 DAYS, AT WHICH TIME, I THINK WE

18   WOULD HAVE A MUCH BETTER SENSE OF WHAT HAS RESULTED

19   FROM THAT, AND WHETHER WE ARE READY TO GO FORWARD WITH

20   THE TRIAL OR WHAT, IF ANY, ADDITIONAL DISCOVERY REMAINS TO

21   BE DONE IN THE CASE.

22        THE COURT: VERY GOOD. THANK YOU. AND I'LL DETERMINE

23   WHAT DATE THAT WILL BE WHEN WE CONCLUDE TODAY'S

24   TESTIMONY.

25        MIRABILIS IS DONE WITH ITS PRESENTATION AND WE TOOK A

16

1    BREAK BECAUSE WE DIDN'T GET IT DONE, SO MY EXPECTATION

2    WAS MS. SUMMERS.  IS THERE ANY OTHER WITNESSES THAT THE

3    GOVERNMENT PLANS TO CALL?

4         MS. IDE:  NO, YOUR HONOR.

5         THE COURT:  VERY GOOD.  LET'S GO AHEAD AND GET HER ON

6    THE STAND.

7         MS. IDE:  ACTUALLY, YOUR HONOR, BEFORE WE CALL MS.

8    SUMMERS, AS YOU MAY RECALL WHEN WE FIRST BEGAN THIS

9    TRIAL, YOUR HONOR, DETERMINED THAT SOME MATTERS THAT

10   WERE IN THE DEBTOR'S EXHIBITS COULD BE PUBLISHED TO THE

11   COURT AND I WOULD LIKE TO TAKE A FEW MINUTES TO CALL TO

12   THE COURT'S ATTENTION SOME OF THE MATTERS THAT WERE NOT

13   PRESENTED BY THE DEBTORS THAT THE UNITED STATES FEELS ARE

14   IMPORTANT FROM THE EXHIBITS THAT HAVE ALREADY BEEN

15   ADMITTED.

16        THE COURT:  AND GO AHEAD.

17        MS. IDE:  OKAY.  YOUR HONOR, I'LL TRY TO --- I WON'T DO

18   THESE TOPICALLY.  I'LL DO THESE IN ORDER OF THE EXHIBITS.  I

19   THINK IT WILL JUST BE QUICKER TO GET THEM IN THE RECORD.

20        REGARDING DEBTOR'S EXHIBIT 1, WHICH WERE

21   MODIFICATIONS TO THE JOINT AMENDED PLAN OF LIQUIDATION.

22   ON PAGE 13, SUBPARAGRAPH C.  THERE'S A PARAGRAPH THAT

23   DEALS WITH THE TAX TREATMENT.

24        THE DEBTOR AND LIQUIDATING DEBTOR AGREE THAT THE

25   COMPENSATION FOR MR. CUTHILL, BOTH PRE AND POST-

17

1  CONFIRMATION, SHALL BE TREATED AS EMPLOYEE

2  COMPENSATION, PURSUANT TO 26 USC SECTION 3121.D1.  THE

3  LIQUIDATING DEBTOR AND DEBTORS SHALL HAVE 60 DAYS

4  FOLLOWING CONFIRMATION TO PREPARE AND FILE APPROPRIATE

5  TAX RETURNS AND TO HAVE THE LIQUIDATING DEBTOR TO PAY

6  THE REQUIRED PAYROLL TAX.

7      THE JOINT AMENDED PLAN, YOUR HONOR, WHICH IS NOT AN

8  EXHIBIT, BUT IS DOCKET ENTRY 234.  I WOULD JUST LIKE TO CALL

9  YOUR ATTENTION ON THAT TO PAGE 16, ARTICLE 4A,

10  ADMINISTRATIVE EXPENSE CLAIMS.  THERE'S A PROVISION IN

11  THERE THAT ANY ONE WHO RENDERS SERVICES TO THE DEBTOR

12  DURING THE COURSE OF THE CASE OR OTHERWISE OCCURS A

13  VALID ADMINISTRATIVE EXPENSE HAS A CERTAIN TIME PERIOD TO

14  FILE AN ADMINISTRATIVE.

15      THE PROVISION GOES ON:  PROVIDED, HOWEVER, THAT

16  APPLICANTS OR MOVANTS WHO HAVE PREVIOUSLY FILED

17  APPLICATIONS, MOTIONS OR REQUESTS WITH THE COURT NEED

18  NOT FILE ANOTHER SUCH PAPER FOR THE SAME CLAIM.

19      CONTINUING ON IN THAT SECTION, THE SECTION DOES

20  PROVIDE THAT ALL ALLOWED ADMINISTRATIVE CLAIMS WILL BE

21  PAID IN FULL.

22      TURNING TO DEBTOR'S EXHIBIT 2, WHICH IS A TRANSCRIPT

23  OF THE HEARING, OCTOBER 16, 2009.  ON PAGE 19, GOVERNMENT

24  COUNSEL IS DISCUSSING THE EXCULPATION CLAUSE IN THE PLAN.

25  STARTING WITH LINE 17.

18

1          THE COURT: I DON'T HAVE THAT PAGE.

2          MS. IDE: IT SHOULD BE IN EXHIBIT 2.

3          THE COURT: IT'S NOT.

4          MS. IDE: THE ENTIRE HEARING TRANSCRIPT WAS ORDERED.

5    I'LL JUST READ BEGINNING PAGE 19, LINE 17.

6          WE DON'T KNOW WHAT MIGHT HAPPEN --- THIS IS A

7    DISCUSSION OF THE EXCULPATION CLAUSE. AS I MENTIONED, THE

8    DEBTOR MAY BE ON LATE FILING TAX RETURNS AND PAYING

9    PAYROLL TAX AND WE'RE NOT GOING TO RELIEVE THAT DEBTOR

10   OR MR. CUTHILL AS THE CENTRAL RESPONSIBLE OFFICER OF THOSE

11   LIABILITIES, THAT'S CONTRARY TO THE INTERNAL REVENUE CODE.

12         TURNING TO EXHIBIT 3, WHICH IS YOUR HONOR'S ORDER

13   CONFIRMING THE JOINT AMENDED PLAN OF LIQUIDATION, DOCKET

14   NUMBER 375, AT PAGE 2, DEALING WITH THE EXCULPATION

15   CLAUSE, THE SECOND FULL PARAGRAPH, STARTING AT C.

16         THE EXCULPATION CLAUSE SET FORTH IN ARTICLE 9 OF THE

17   PLAN SHALL NOT ELIMINATE ANY LIABILITY FOR ALLOWED TAX

18   CLAIMS, NOR SHALL IT RELIEVE THE LIQUIDATING DEBTOR FROM

19   IT'S RESPONSIBILITY FOR TIMING FILING BOTH CORPORATE AND

20   PAYROLL TAX RETURNS AND FROM TIMELY PAYING ALL

21   APPLICABLE TAXES.

22         MOREOVER, THE EXCULPATION CLAUSE DOES NOT

23   RESPECTIVELY RELEASE THE LIQUIDATING DEBTOR OR ANY

24   RESPONSIBLE PERSON RELATING TO FEDERAL TAXES.

25         CONTINUING ON IN THAT EXHIBIT AT PAGE 7, PARAGRAPH 7,

1    SUBSECTION 5. FOR PURPOSES OF DETERMINING THE

2    AVAILABILITY OF THE RIGHT OF SET OFF UNDER SECTION 554 OF

3    THE BANKRUPTCY CODE, THE DEBTOR SHALL BE TREATED FOR

4    PURPOSES OF THE PLAN AS ONE ENTITY SO THAT SUBJECT TO THE

5    OTHER PROVISIONS OF SECTION 553 OF THE BANKRUPTCY CODE,

6    DEBTS DUE TO ANY OF THE DEBTORS MAY BE SET OFF AGAINST

7    THE DEBTS OF ANY OF THE DEBTORS.

8         AND CONTINUING IN EXHIBIT 3, PAGE 12, PARAGRAPH 6. I'M

9    SORRY, PARAGRAPH 7, REGARDING THE VESTING OF ASSETS IN THE

10   LIQUIDATING DEBTOR.

11        EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN

12   AND IN THIS CONFIRMATION ORDER, ALL ASSETS AND PROPERTY

13   OF THE DEBTOR SHALL BE VESTED IN THE LIQUIDATING DEBTOR

14   FREE AND CLEAR OF ALL LIENS, SECURITY INTERESTS, CLAIMS AND

15   INTEREST OF HOLDERS OF CLAIM OR INTEREST AND ALL SUCH

16   LIENS, SECURITY INTEREST CLAIMS AND INTEREST ARE HEREBY

17   EXTINGUISHED.

18        TURNING TO EXHIBIT 6. YOUR HONOR, THIS IS A LETTER TO

19   MIRABILIS FROM THE INTERNAL REVENUE SERVICE REQUESTING

20   MIRABILIS FILE A DELINQUENT FEDERAL TAX RETURN. THE

21   DOCUMENT DOES INDICATE THAT THE RETURN HAS NOT BEEN

22   FILED. WE'RE TALKING ABOUT THE TAX RETURN FOR THE

23   PREPETITION, FIRST QUARTER, 2007. I JUST WANT TO CALL YOUR

24   HONOR'S ATTENTION TO THE PROVISION THAT SAYS:

25        IF YOU ARE LIABLE FOR FILING THIS RETURN, PLEASE DO SO

20

1    TODAY AND SEND IT TO THE ADDRESS SHOWN ABOVE. WE WILL

2    APPLY THE CREDIT TO THE TAX YOU OWE AND REFUND ANY

3    REMAINING OVERPAYMENT IF YOU OWE NO OTHER TAXES OR

4    OBLIGATIONS.

5        IN EXHIBIT 7, THERE IS A DISCUSSION AT PAGES 18 AND 19,

6    AND I WON'T READ THAT. THAT'S THE DEPOSITION OF MS. YIP AND

7    SHE'S DISCUSSING HER CONVERSATION WITH MR. CUTHILL WHERE

8    SHE ADVISED HIM TO FILE THE TAX RETURN, DID NOT COMMIT TO

9    GETTING A REFUND, BUT DISCUSSED THE REQUIREMENT TO FILE

10   THAT DELINQUENT TAX RETURN.

11       TURNING TO EXHIBIT 11, AT THAT BOTTOM --- THAT'S AN E-

12   MAIL EXCHANGE BETWEEN COUNSEL. AT THE BOTTOM OF THAT

13   PAGE, THE UNITED STATES EXPLAINS --- AND THIS IS IN MARCH OF

14   2010.

15       BECAUSE MIRABILIS HAS A BALANCE DUE ON ITS FORM 1120

16   LIABILITIES FOR 2005, THAT CLAIMED CREDIT --- REFERRING TO A

17   400,000-DOLLAR CREDIT --- CANNOT BE APPLIED FORWARD UNLESS

18   OR UNTIL THE OBJECTION TO CLAIM IS RESOLVED BY AGREEMENT

19   OR IN A FINAL NON-APPEALABLE ORDER. IN THE MEANTIME,

20   INTEREST AND PENALTIES ARE ACCRUING ON ALL OF THE FORM 941

21   LIABILITIES.

22       TURNING TO EXHIBIT 12, THE OBJECTION TO THE

23   ALLOWANCE OF THE INTERNAL REVENUE SERVICES CLAIM, THAT'S

24   DOCKET ENTRY 325, FILED OCTOBER 9, 2009. I JUST WANT TO CALL

25   YOUR HONOR'S ATTENTION TO THE AMENDED INCOME TAX

1   RETURNS OF MIRABILIS VENTURES, WHICH ARE ATTACHED TO

2   THAT EXHIBIT, THE EIGHTH PAGE IN, AND THAT'S THE FIRST

3   INDICATION OF A REFUND CLAIM THAT THE DEBTOR HAD FILED.

4       MR. SHUKER:  OBJECTION, YOUR HONOR, THAT GOES BEYOND

5   PUBLISHING AND THAT'S A COMMEND UPON IT.  I WOULD POINT

6   OUT THAT SCHEDULE B FILED AT THE BEGINNING OF THE CASE

7   SAID WE WERE OWED A TAX REFUND OF 1.2-MILLION.  SO IF

8   THEY'RE GOING TO MAKE COMMENTS, IF YOU WANT TO READ IT,

9   THAT'S FINE.  LET'S NOT HAVE COMMENTARY.

10      THE COURT:  GO AHEAD AND PROCEED.  WHAT'S THE NEXT

11  ONE?

12      MS. IDE:  EXHIBIT 14, IS YOUR HONOR'S ORDER SUSTAINING

13  MIRABILIS' OBJECTION TO CLAIM NUMBER 2, DOCKET 548,

14  PARAGRAPH 2 OF THE ORDER, THAT'S CLAIM NUMBER 2 FILED BY

15  IRS IS DISALLOWED.  HOWEVER, THE ENTRY OF THIS ORDER IS

16  WITHOUT PREJUDICE AS TO ANY FURTHER DETERMINATION OF THE

17  DEBTOR'S CLAIMED NET OPERATING LOSS (NOL) DEDUCTION FOR

18  INCOME TAX YEAR ENDING DECEMBER 31, 2006 OR OF THE

19  DEBTOR'S CLAIMED OVERPAYMENT OR TURNOVER WITH RESPECT

20  TO INCOME TAX YEAR ENDING DECEMBER 31, 2005 OR OF THE

21  DEBTOR'S CLAIMED CARRY FORWARD OF THE NOL DEDUCTION.

22      EXHIBIT 18 IS AN E-MAIL BETWEEN COUNSEL AGAIN. THIS

23  ONE IS DATED JUNE 4TH, IN THE SECOND --- THIRD I GUESS, FULL

24  PARAGRAPH, WE ADVISED COUNSEL.

25      CONSEQUENTLY, AS THE MOVEMENT OF THE 400,000-

22

1      DOLLARS FROM THE FORM 1120 ACCOUNT TO THE FORM 941

2      ACCOUNT, CREATED A BALANCE DUE ON THE OLDER FORM 1120

3      ACCOUNT, THE FUNDS SHOULD NOT COUNT AS A CREDIT ON THE

4      FORM 941 ACCOUNTS AND SHOULD ACTUALLY BE RETURNED,

5      REAPPLIED TO THE FORM 1120 ACCOUNT.  WE ALERTED YOU TO THE

6      SETOFF ISSUE IN OUR MARCH 9, 2010 E-MAIL.

7           THAT'S IT, YOUR HONOR, AND WE'RE PREPARED TO CALL MS.

8      SUMMERS.

9           THE COURT:  VERY GOOD.  MS. SUMMERS, IF YOU'D

10     APPROACH AND BE SWORN.

11                        CHERYL SUMMERS,

12     HAVING BEEN DULY SWORN, WAS EXAMINED AND TESTIFIED AS

13     FOLLOWS:

14          THE CLERK:  PLEASE STATE YOUR FULL NAME AND ADDRESS

15     FOR THE RECORD.

16          THE WITNESS:  CHERYL SUMMERS, 400 WEST FAY STREET,

17     JACKSONVILLE, FLORIDA 32202.

18          THE CLERK:  THANK YOU.  YOU MAY BE SEATED.

19          THE WITNESS:  THANK YOU.

20          MS. IDE:  YOUR HONOR, IF I MAY APPROACH WITH OUR

21     PROPOSED EXHIBITS?

22          THE COURT:  CERTAINLY.  THANK YOU.

23          HERE YOU GO, LET ME GIVE YOU THIS TOO.

24          MS. IDE:  THE DEBTOR'S EXHIBIT.

25          THE COURT:  GO AHEAD AND LET HER USE THAT.  I'VE

23

1    ALREADY WRITTEN ON MY COPY, SO THAT'S NOT GOING TO BE

2    USEABLE.  YEP.

3        MS. IDE:  THOSE ARE ---

4        THE COURT:  YOU WON'T BE ABLE TO TAKE THEM.

5        MS. IDE:  OKAY.

6        THE COURT:  I HAVE NOTATION ON THOSE.

7                    DIRECT EXAMINATION

8    BY MS. IDE:

9        Q    MS. SUMMERS, PLEASE DESCRIBE WHAT YOU DO AT THE

10   INTERNAL REVENUE SERVICE.

11       A    I'M A BANKRUPTCY SPECIALIST, PRETTY MUCH EVERYTHING

12   REGARDING TO CLAIMING TAX LIABILITIES IN A BANKRUPTCY CASE.  I

13   SOMETIMES ADD NEW CASES TO OUR AUTOMATED INSOLVENCY SYSTEM

14   BASED ON THE ELECTRONIC NOTICE OR IF A REVENUE OFFICER ALERTS

15   US TO THE FACT A BANKRUPTCY HAS BEEN FILED, I REVIEW THE CASE,

16   THE DOCUMENTS IN THE COURT AND IRS ACCOUNT RECORDS TO SEE IF

17   THEY ACTUALLY OWE US ANY TAX.

18            I PREPARE CLAIMS, CORRESPONDING WITH THE DEBTOR OR

19   THE DEBTOR'S ATTORNEY OR OUR ATTORNEYS OR OTHER IRS

20   PERSONNEL, AREA COUNSEL, EXAM AGENTS, CRIMINAL AGENTS, REVIEW

21   THE PLANS TO MAKE SURE THAT THEY ADEQUATELY PROVIDE FOR THE

22   CLAIM, AGAIN, CORRESPONDING WITH ATTORNEYS TO GET AN

23   APPROPRIATE PLAN ON RECORD.

24            IF THE PLAN DOESN'T CONFORM TO THE EXPECTATIONS OF

25   THE GOVERNMENT, THEN I'LL ASK FOR OUR ATTORNEYS TO OBJECT TO

24

1   THE PLAN OR CONFORMATION.

2          WHEN THE PLAN GETS CONFIRMED, THEN WE --- AND I DO

3   MONITOR PLAN PAYMENTS TO ENSURE THAT THE DEBTOR'S PAY THE

4   CLAIM OF THE IRS AS STATED IN THE PLAN.

5          AND SHOULD THEY COMPLETE THE PLAN, THEN WE ALSO IN

6   OUR OFFICE DO ADJUSTMENTS AT THE END OF THE PLAN TO CONFORM TO

7   --- IF IT'S A 13, THE DEBTOR'S DISCHARGE OR IN AN 11, TO THE

8   CONFIRMATION ORDER CLOSING THE CASE.  IF WE NEED TO RELEASE

9   LIENS, IF WE NEED TO REFILE LIENS, IF WE NEED TO FILE LIENS, WE DO

10  ALL OF THAT.

11         WE HAVE ISSUED LEVYS.  I'VE ISSUED LEVYS.  SO IT'S PRETTY

12  MUCH THE COLLECTION SPECTRUM OF A CASE IN BANKRUPTCY.

13      Q      AND HOW LONG HAVE YOU WORKED AS A BANKRUPTCY

14  SPECIALIST WITH THE INTERNAL REVENUE SERVICE?

15      A      I DON'T KNOW THE YEARS, BUT I'VE BEEN THERE SINCE 1989.

16      Q      DO YOU HAVE ANY SPECIALIZED TRAINING TO SERVE AS A

17  BANKRUPTCY SPECIALIST?

18      A      WE DO CPA'S.

19      Q      WHICH IS?

20      A      CONTINUING PROFESSIONAL EDUCATION.  WE DO THEM

21  LOCALLY EVERY OTHER YEAR AND THEN WE ALSO HAVE ONE WITHIN

22  THE TERRITORY ON THE ALTERNATE YEARS.  WE GO TO CLASSES,

23  DEPENDING ON WHAT THE GOVERNMENT OFFERS, THAT WE NEED.  WE

24  TAKE CLASSES.  WE CAN DO THEM ONLINE OR SOMETIMES THEY'LL

25  ACTUALLY OFFER CLASSES IN OUR BUILDING.

1      Q      YOU'VE BEEN AN INSTRUCTOR AS WELL AT SOME CLASSES?

2      A      I'VE TAUGHT CLASSES. I'VE TAUGHT BANKRUPTCY PHASE

3   MATERIALS. I DID ONE FOR THE BAPAC, BANKRUPTCY ABUSE AND

4   PREVENTION AND WHATEVER THE REST OF THAT IS. I FORGET RIGHT

5   NOW.

6            BUT YEAH, I'VE DONE A NUMBER OF INSTRUCTOR CLASSES.

7   I'VE PARTICIPATED IN SOME NATIONAL OFFICE PROJECTS. THE STAND UP

8   OF THE CENTRALIZED INSOLVENCY OFFICE IN PHILADELPHIA AND AN IRM

9   REWRITE.

10     Q      IRM IS THE?

11     A      INTERNAL REVENUE MANUAL.

12     Q      THERE ARE PROVISIONS IN THE MANUAL REGARDING

13   DEALING WITH BANKRUPTCY MATTERS?

14     A      YES, THERE'S A WHOLE SECTION OF INTERNAL REVENUE

15   MANUAL THAT DEALS STRICTLY WITH BANKRUPTCY.

16     Q      AND WHEN YOU WERE DESCRIBING YOUR ROLE AS A

17   BANKRUPTCY SPECIALIST, YOU MENTIONED THAT YOU CONSULT WITH A

18   NUMBER OF OTHER PARTS OF THE INTERNAL REVENUE SERVICE,

19   CONSULTING WITH COUNSEL, DID YOU INCLUDE DEPARTMENT OF

20   JUSTICE COUNSEL IN THAT OR JUST IRS COUNSEL?

21     A      DEPARTMENT OF JUSTICE COUNSEL, OUR AREA COUNSEL,

22   THE OFFICE OF THE UNITED STATES ATTORNEY.

23     Q      AND THEN OTHER SECTIONS WITHIN THE INTERNAL REVENUE

24   SERVICE AS WELL, WHAT ARE THEY?

25     A      MOST OFTEN, IT'S EXAM, MEDICATION. WE HAVE A CASE

26

1    THAT HAS A CRIMINAL INVESTIGATION GOING.  REVENUE OFFICERS, WE

2    WORK CLOSELY WITH THOSE.  IT COULD BE REALLY ANYBODY.

3         Q       OKAY.  DO YOU HAVE ACCESS IN YOUR POSITION TO THE

4    COMPUTERIZED HISTORY NOTES OF ALL THESE OTHER SECTIONS?

5         A       YES.

6         Q       OKAY.  AND DOES THAT INCLUDE LIKE THE CUSTOMER

7    SERVICE SECTIONS?

8         A       YES, IT DOES.  I CAN ASSESS CUSTOMER SERVICE

9    REPRESENTATIVE NOTES, REVENUE OFFICER CASE HISTORIES.

10        Q       OKAY.

11        A       THERE'S CERTAIN FUNCTIONS THAT WE DON'T HAVE ACCESS

12   TO BECAUSE IT'S NOT ALWAYS A NEED, LIKE THE --- IT USED TO BE THE

13   PROBLEM RESOLUTION OFFICE AND I DON'T REMEMBER WHAT IT'S

14   CALLED NOW, TAX PAYER ASSISTANCE OFFICE OR SOMETHING.  THEY

15   HAVE THEIR OWN COMPUTER SYSTEM AND WE DON'T HAVE ACCESS

16   DIRECTLY TO THOSE NOTES, BUT IF WE NEEDED THOSE NOTES, THEY

17   COULD SHARE.

18            SO THERE ARE SOME THINGS THAT WE DON'T HAVE DIRECT

19   ACCESS TO, BUT WE MORE THAN LIKELY COULD GET COPIES OF THEM.

20        Q       OKAY.  NOW, FILING A PROOF OF CLAIM, DESCRIBE THE STEPS

21   YOU GO THROUGH WHEN YOU RECEIVE NOTICE OF A CHAPTER 11 FILING,

22   AND YOU ARE STARTING UP THE CASE AND ASKED TO FILE A PROOF OF

23   CLAIM, WHAT DO YOU DO?

24        A       WELL, WE HAVE A --- WE HAVE A COUPLE OF NEW

25   PROGRAMS.  OUR AUTOMATED INSOLVENCY SYSTEM IS ON A NEW

1    PLATFORM NOW AND IT DOES MORE INTERFACES WITH DIFFERENT

2    PROGRAMS THAT WE HAVE AT INTERNAL REVENUE SERVICE.  ONE OF

3    THEM IS THE AUTOMATED LIEN SYSTEM AND IT INTERFACES WITH OUR

4    IDRS, WHICH IS THE INTEGRATED DATA RETRIEVAL SYSTEM.

5            IRS IS BIG ON --- WHAT IS IT?  ACRONYMS, I THINK THAT'S THE

6    WORD.

7            BUT THE LIEN SYSTEM IS WHERE ALL OF THE LIENS OF

8    INTERNAL REVENUE SERVICE RESIDE AND THEN THE IDRS IS THE TAX

9    ACCOUNT.  IT IS THE RECORD OF WHEN THE RETURN WAS FILED, WHEN

10   TAX WAS ASSESSED.  THE TAX DEPOSITS THAT ARE MADE, THINGS LIKE

11   THAT, AND OUR NEW PROGRAM INTERFACES WITH BOTH OF THOSE

12   SYSTEMS, SO IN THE BACKGROUND ALMOST AS SOON AS WE GET A CASE,

13   THESE PROGRAMS RUN.  THEY CHECK FOR LIENS AND NOTE THE CASE

14   FILE IF A LIEN IS FOUND.

15           THEY ALSO CHECK FOR BALANCE DUES ON THE ACCOUNT

16   AND THEY WILL GO IN AND ATTEMPT TO DRAFT A CLAIM.

17           THEN, WHEN WE GET TO THE CASE, THERE ARE SOME TIMES

18   THINGS THAT THIS SYSTEM WON'T DO.  LIKE IT WON'T BE ABLE TO

19   CALCULATE THE AMOUNT OF A SECURED CLAIM BECAUSE IT CAN'T READ

20   THE STATEMENT OF FINANCIAL AFFAIRS AND SCHEDULES, SO WE HAVE

21   TO GO IN AND MANUALLY DO SOME TWEAKING TO THE CLAIM, AND

22   THAT'S WHEN WE GET INVOLVED WITH THE CLAIM IS IF THERE ARE SOME

23   FLAGS THAT THE SYSTEM IS SAYING I CAN'T DO THIS.

24           IT FLAGS FOR SECURED CLAIM.  IT WILL FLAG IF THERE IS AN

25   EXAM INDICATOR ON AN ACCOUNT.  IT FLAGS IF THERE IS A CRIMINAL

1   INDICATOR ON THE ACCOUNT.  THERE IS A WHOLE LIST OF DIFFERENT

2   FLAGS AND WE WILL GO IN AND RESOLVE THOSE FLAGS THROUGH

3   FURTHER RESEARCH TO GIVE US THE INFORMATION NECESSARY TO

4   RESOLVE THE FLAG AND GET THE CLAIM IN A FORMAT THAT WE CAN

5   SEND TO THE COURT.  AND WE ALSO SEND THE CLAIM TO THE COURT

6   ELECTRONICALLY.

7       Q       AND YOU CAN FILE A PROOF OF CLAIM IN THE CLAIMS

8   REGISTER ELECTRONICALLY?

9       A       IN THE CLAIMS REGISTER, WE CAN FILE A PROOF OF CLAIM

10  ELECTRONICALLY.

11      Q       CAN YOU FILE AN ADMINISTRATIVE CLAIM OR A REQUEST

12  FOR PAYMENT OF INTERNAL REVENUE TAXES IN THE DOCKET OF A

13  BANKRUPTCY CASE?

14      A       NO, MA'AM, WE DO NOT HAVE THAT CAPABILITY.

15      Q       HOW ARE THOSE DONE?

16      A       WE HAVE TO REFER THEM TO ATTORNEYS.  IF THEY ARE IN

17  THE JACKSONVILLE DISTRICT, WE REFER THEM TO OUR AREA COUNSELS,

18  WHO ARE ASSIST --- SPECIAL ASSISTANT UNITED STATES ATTORNEYS AND

19  THEY HAVE THE CAPABILITY.  OUTSIDE OF THAT, WE CAN REFER THEM TO

20  THE U.S. ATTORNEY'S OFFICE OR WE CAN REFER THEM TO DEPARTMENT

21  OF JUSTICE, DEPENDING ON WHO WE'RE WORKING WITH ON A

22  PARTICULAR CASE.

23      Q       AT SOME POINT, DID REQUEST FOR PAYMENT OF POST-

24  PETITION TAXES, ADMINISTRATIVE CLAIMS TO USE THE JARGON, WERE

25  THEY GETTING FILED IN THE CLAIMS REGISTER?

29

1       A       YES, INITIALLY.

2       Q       AND THEN WHAT HAPPENS TO THEM?

3       A       THEY DON'T GO ANYWHERE REALLY.  WE ALERT ANY

4    ATTORNEY THAT IS WORKING WITH US ON THE CASE TO HAVE THEM

5    DOCKETED IN THE DOCKET BECAUSE THAT'S SUPPOSEDLY WHERE

6    THEY'RE SUPPOSED TO BE.  WE JUST DON'T HAVE THAT CAPABILITY TO

7    PUT THEM THERE.

8       Q       IN THIS PARTICULAR CASE, YOU PREPARED REQUESTS FOR

9    PAYMENT OF INTERNAL REVENUE TAXES FOR MIRABILIS' POST-PETITION

10   TAXES; CORRECT?

11      A       YES.

12      Q       AND THOSE GOT FILED IN THE CLAIMS REGISTER,

13   ORIGINALLY?

14      A       YES.

15      Q       AND THEY THEN GOT MOVED TO THE DOCKET, DO YOU

16   KNOW HOW THAT HAPPENED?

17      A       NO, I DON'T REALLY.  I DON'T KNOW IF THE COURT NOTICED

18   IT, WAS IN ERROR.  I'M NOT REAL SURE.

19      Q       OKAY.  THE MOST RECENT REQUEST FOR PAYMENT OF POST-

20   PETITION TAXES GOT DOCKETED --- GOT FILED IN THE DOCKET THROUGH;

21   CORRECT?

22      A       YES.

23      Q       OKAY.  NOW, WHEN YOU WERE PREPARING THE PROOF OF

24   CLAIM FOR PRE-PETITION TAXES, FOR MIRABILIS, YOU GOT ASSIGNED

25   THESE THREE CASES WHEN?

1    A    '08. I GOT MIRABILIS AND THEN AEM AND THEN HOTH.

2    Q    OKAY. AND WHAT DID YOU DO WHEN YOU FIRST RECEIVED

3 THESE CASES? WHAT MATERIALS DID YOU REVIEW?

4    A    THE FIRST THING I GENERALLY DO IS LOOK AT THE IDS, THE

5 TAX ACCOUNTS TO SEE: DO THEY OWE US TAX? OR IS THERE ANY

6 INDICATION THAT THEY MIGHT OWE US TAX IN THE FUTURE. LIKE IF

7 THERE IS AN EXAM INDICATOR ON ANY OF THE ACCOUNTS, THAT IS AN

8 INDICATION THAT THEY MIGHT HAVE A POTENTIAL LIABILITY IN THE

9 FUTURE, BUT EXAM HAS NOT MAYBE FINISHED.

10    LOOKING FOR FREEZE CONDITIONS OR ANY KIND OF

11 CONDITIONS THAT WOULD ALERT ME THAT THERE'S SOMETHING GOING

12 ON IN THIS ACCOUNT AND WHILE IT MAY BE INITIALLY PERHAPS A NO

13 TAX DUE, THE CONDITIONS ON THE ACCOUNT WOULD LEAD ME TO

14 BELIEVE THAT THERE MAY BE A LIABILITY OR SOME KIND OF ACTIVITY

15 IN THE FUTURE.

16    AND ONCE I LOOKED AT THE TAX ACCOUNT, THEN I GO TO

17 THE PACER, WHICH IS PUBLIC ACCESS FOR COURT ELECTRONIC RECORDS

18 AND I DON'T THINK THAT WAS IRS ACRONYM. I THINK THE COURT DID

19 THAT ITSELF. BUT THEN I LOOK THERE TO REVIEW THE DOCUMENTS

20 THAT HAVE BEEN FILED, SUCH AS THE STATEMENT OF FINANCIAL

21 AFFAIRS, THE SCHEDULES, THE PLAN IF IT HAS BEEN FILED. SOMETIMES I

22 LOOK AT MOTIONS BY OTHER CREDITORS BECAUSE THEY HAVE ON SOME

23 OCCASIONS BEEN A WEALTH OF INFORMATION ABOUT THE DEBTORS IN

24 BANKRUPTCY CASES THAT WE WOULDN'T HAVE OTHERWISE KNOWN.

25    I MAY OR MAY NOT AT THIS POINT LOOK AT CLAIMS OF

1  OTHER CREDITORS JUST TO SEE WHAT'S BEING FILED, AND THEN I'M

2  GOING TO LOOK TO SEE WHERE THE CLAIM IS IN OUR AUTOMATED

3  PROCESS AND WHAT NEEDS TO BE TWEAKED WITH IT TO REFLECT DATA

4  IN THE DOCUMENTS I REVIEWED OR IN THE TAX ACCOUNT, AND THEN

5  I'LL DO THE CLAIM.

6      Q    WHEN YOU WERE PREPARING THE PROOF OF CLAIM IN THE

7  MIRABILIS CASE --- AND IF I MAY APPROACH, YOUR HONOR, TO SHOW HER

8  DEBTOR'S EXHIBIT 5.

9          THE COURT:  DO WE KNOW WHERE THEY ARE, THE EXHIBITS?

10         IS SHE FINDING THEM?

11         THE CLERK:  YES.

12         THE COURT:  DO YOU HAVE A COPY FOR RIGHT NOW?

13         MS. IDE:  I DO.  I HAVE ONE COPY.

14         THE COURT:  SHE DOES NOT HAVE A COPY.

15         MS. IDE:  SHE DOES NOT HAVE A COPY.

16         THE COURT:  RIGHT.  WE ARE TRYING TO GET THEM

17  DELIVERED DOWN TO US.  BUT GO AHEAD AND HAND HER YOURS

18  FOR RIGHT NOW.

19         MS. IDE:  THANK YOU, YOUR HONOR.

20         MR. SHUKER:  YOUR HONOR, I HAVE AN EXTRA IF THAT

21  WOULD HELP.

22         THE COURT:  THE ONLY CONCERN I HAVE IS THINGS HAVE

23  BEEN SLIGHTLY DIFFERENT SINCE THE LAST HEARING, THAT

24  WOULD BE MY ONLY CONCERN.  NOT INTENTIONALLY BY ANY

25  IMPLICATION, BUT I THINK IT PROBABLY WOULD BE BETTER IF WE

32

1       JUST WAIT.

2               MR. SHUKER:  I ACTUALLY JUST FOUND SOME NOTES OF MINE

3       ON HERE.

4               THE COURT:  THAT'S MY CONCERN.

5               THE WITNESS:  DO YOU NEED TO LOOK AT IT WITH ME?

6               THE COURT:  NO, NO, I HAVE ONE, BUT I HAVE MY NOTES ON

7       MINE, WHICH IS WHY YOU CAN'T LOOK AT MINE.

8               THE WITNESS:  OKAY.

9               THE COURT:  SO LET'S MAKE DUE.  WE HAVE ORDERED THEM.

10      THE CASE MANAGER IS GOING TO BE BRINGING THEM DOWN.

11              MS. IDE:  THANK YOU, YOUR HONOR.

12      BY MS. IDE:

13          Q       MS. SUMMERS, DEBTOR'S EXHIBIT 5, IS THAT THE PROOF OF

14      CLAIM THAT YOU FILED IN THE MIRABILIS BANKRUPTCY?

15          A       NOW, YOU'RE TALKING ABOUT THIS AND NOT THE BOOK?

16          Q       CORRECT.

17          A       THIS THING?

18          Q       THE ONE I JUST HANDED TO YOU.

19          A       YES, MA'AM.

20          Q       OKAY.  AND LOOKING AT THE SECOND PAGE, AT THE VERY

21      TOP WHERE IT SAYS SECURED CLAIM, WHAT'S --- IN THE SECURED CLAIM

22      SECTION, WHAT'S IN THERE?

23          A       DO YOU WANT ME TO READ IT?

24          Q       YES.

25          A       OR JUST TELL YOU WHAT ---

33

1    Q    YES.

2    A    THE UNITED STATES HAS NOT IDENTIFIED A WRITE OFF OF

3    SET OFF OR COUNTER-CLAIM.  HOWEVER, THIS DETERMINATION IS BASED

4    ON AVAILABLE DATA AND IS NOT INTENDED TO WAIVE ANY RIGHT TO

5    SETOFF AGAINST THIS CLAIMED DEBTS OWED TO THIS DEBTOR BY THIS

6    OR ANY OTHER FEDERAL AGENCY.  ALL RIGHTS OF SETOFF ARE

7    PRESERVED AND WILL BE ASSERTED TO THE EXTENT LAWFUL.  THIS

8    CLAIM IS SECURED BY ANY CLAIMS DEBTOR MAY HAVE AGAINST THE U.S.

9    Q    IS THAT SOMETHING THAT YOU PUT IN ALL PROOFS OF

10   CLAIM?

11   A    YES, MA'AM.

12   Q    AND THEN WERE THERE ANY NOTICES OF FEDERAL TAX LIEN

13   FILED WITH RESPECT TO THE MIRABILIS VENTURES AT THE TIME YOU

14   PREPARED THIS PROOF OF CLAIM?

15   A    I DON'T REMEMBER THAT THERE WAS.

16   Q    IF THERE WERE, WOULD THE CLAIM SHOW THAT IN THE

17   SECURED SECTION?

18   A    WELL, INSTEAD OF IT BEING PRIORITY, IT WOULD HAVE BEEN

19   REFLECTED AS A SECURED CLAIM AND WE WOULD HAVE ON THE RIGHT

20   HAND SIDE LISTED THE NOTICE OF FEDERAL TAX LIEN, THE FILING DATE

21   AND THE LOCATION OF THE LIEN, WHETHER IT WOULD BE IN THE

22   SECRETARY OF STATE AT TALLAHASSEE OR IN THE COUNTY OF

23   COURTHOUSE.

24   Q    SO AT THE TIME YOU FILED THE PROOF OF CLAIM, THERE

25   WASN'T A NOTICE OF DEDERAL TAX LIEN AND THE TAX IS CONSIDERED

34

1    AN UNSECURED PRIORITY ---

2        A      YES, MA'AM.

3        Q      --- TAX AND THERE IS A GENERAL UNSECURED PORTION AS

4    WELL; CORRECT?

5        A      CORRECT.

6        Q      OKAY.  WAS THERE ANY INDICATION --- IF I MAY RETRIEVE,

7    YOUR HONOR.

8              THE COURT:  CERTAINLY.

9    BY MR. SUMMERS:

10       Q      WAS THERE ANY INDICATION AT THE TIME YOU FILED THIS

11   PROOF OF CLAIM, THAT MIRABILIS HAD A RIGHT TO A REFUND OR A

12   CLAIM FOR A REFUND ON FILE WITH THE INTERNAL REVENUE SERVICE?

13       A      NO, MA'AM, NOT THAT I RECALL.  THAT'S ONE THING WE DO

14   CHECK WHEN WE'RE LOOKING AT IDS TO SEE IF THERE'S ANY

15   REFUNDABLE CREDIT THAT WE COULD USE TO SECURE OUR CLAIM.

16       Q      NOW, THE PROOF OF CLAIM FILED IN MIRABILIS SHOW THAT

17   THERE WAS AN INCOME TAX LIABILITY FOR 2005, WHAT DID YOU BASE

18   THAT ON?

19       A      THE TAX ACCOUNTS.  THE RETURN WAS FILED.  THEY OWED

20   SOME TAX.  THEY HAD A CREDIT OR TWO.  THERE WAS AN ADJUSTMENT

21   MADE THAT CREATED AN OVERPAYMENT, THAT WAS REFUNDED.  AND

22   THEN A CREDIT WAS TAKEN OUT AND MOVED TO ANOTHER PERIOD AND

23   THAT LEFT THEIR ACCOUNT IN A DEBIT BALANCE.

24       Q      WELL, LET'S GO OVER THIS, IF YOU COULD TURN

25   GOVERNMENT EXHIBIT 5.

35

1          MS. IDE:  YOUR HONOR, THESE ARE CERTIFIED TRANSCRIPTS.

2    THEY'RE SELF-AUTHENTICATING.  I MOVE FOR THE ADMISSION OF

3    GOVERNMENT 5.

4          THE COURT:  ANY OBJECTION, MR. SHUKER?

5          MR. SHUKER:  I DON'T KNOW WHAT SHE MEANS BY SELF-

6    AUTHENTICATING.  IS THAT WHAT?  IF THAT'S A RULE, I'M

7    UNAWARE OF.

8          MS. IDE:  THEY'RE CERTIFIED RECORDS OF OFFICIAL

9    DOCUMENTS.

10          THE COURT:  I'M GOING TO ADMIT AS I TYPICALLY WOULD

11    DO.

12          MR. SHUKER:  OKAY.

13          MS. IDE:  THANK YOU, YOUR HONOR.

14          THE COURT:  PRECISELY THOUGH, I DON'T KNOW THE

15    ANSWER TO THE QUESTION, BUT I WILL ADMIT THE EXHIBIT.

16          MS. IDE:  IT'S UNDER RULE 901, YOUR HONOR.

17          THE COURT:  THANK YOU.

18    BY MS. IDE:

19          Q     MS. SUMMERS, IF YOU COULD IDENTIFY THE FIRST PAGE IN

20    GOVERNMENT 5 OR THE FIRST DOCUMENT, WHAT IS THIS?

21          A     THIS IS AN OFFICIAL TRANSCRIPT FOR MIRABILIS VENTURS,

22    CORPORATE INCOME TAX RETURN, FORM 1120 FOR THE PERIOD ENDING

23    DECEMBER 31, 2004.

24          Q     AND IF YOU COULD TURN TO THE SECOND AND THIRD PAGES,

25    OR THE NEXT PAGES OF THIS EXHIBIT, DOES IT SHOW A BALANCE DUE

36

1    FOR 2004?

2        A    NO, MA'AM.

3        Q    THEN TURN ON TO THE NEXT PIECE OF THIS EXHIBIT IS THE

4    1120 ACCOUNT FOR MIRABILIS FOR THE YEAR 2005; IS THAT CORRECT?

5        A    YES, MA'AM.

6        Q    AND THIS TRANSCRIPT IS DATED JULY 14, 2010.  COULD YOU

7    SHOW US WHERE IN THIS TRANSCRIPT THE EVENTS YOU INDICATED ---

8    YOU JUST TESTIFIED ABOUT OCCURRED?  YOU SAID THAT THERE WAS AN

9    OVERPAYMENT AND A REFUND GENERATED?

10       A    I'M NOT SURE HOW TO COUNT THESE PAGES, BUT IF YOU'RE

11   LOOKING AT THE TRANSCRIPT, ON PAGE TWO THERE IS A CREDIT ON THE

12   ACCOUNT.  IN FACT, THERE'S TWO CREDITS; A 400,000-DOLLAR CREDIT

13   AND A 1-MILLION DOLLAR CREDIT.

14            AND IF YOU'RE FOLLOWING DOWN THE TRANSCRIPT AND UP

15   OVER INTO PAGE 3, THERE WERE ADJUSTMENTS MADE ON THE ACCOUNT

16   FOR ABATEMENT OF SOME PENALTIES.  IT CREATED A REFUND.  AND IN

17   THE MIDDLE OF THAT PAGE, IT SHOWS A REFUND OF $308,120.99.  AND

18   THEN IT ALSO SHOWS THAT A CREDIT OF 400,000 WAS REMOVED FROM

19   THE ACCOUNT.

20       Q    IF I MAY STOP YOU, THIS IS THE SEVENTH PAGE OF EXHIBIT 5,

21   BUT IT'S LABELED PAGE 3 OF THE 2005 TRANSCRIPT?

22       A    RIGHT.

23       Q    SO THAT REFUND --- I'M SORRY.  THE 400,000-DOLLARS

24   YOU'RE REFERRING TO, THAT'S THE ONE DATED MAY 21, 2007?

25       A    YES, MA'AM.

37

1    Q    WHERE DID THAT 400,000-DOLLARS GO?

2    A    TO THE 941 FOR MIRABILIS, FIRST QUARTER 941 OF 2007.

3    Q    YOU CAN TELL THE FIRST QUARTER OF 2007 BY WHAT

4    NOTATION?

5    A    RIGHT UNDERNEATH IT, IT SAYS 941 2007 AND '03 IS THE FIRST

6    QUARTER BECAUSE IT ENDS IN MARCH, AND THAT CORRESPONDS TO

7    THREE.  IF IT ENDS IN SIX, THAT CORRESPONDS TO JUNE, WHICH IS THE

8    SECOND QUARTER.  NINE IS THE THIRD QUARTER AND 12 WOULD BE THE

9    FOURTH QUARTER.

10    Q    AND 941 TAXES ARE GENERALLY FILED QUARTERLY?

11    A    THEY ARE FOR CONVENIENT SAKE.

12    Q    OKAY.  NOW TURNING TO THE NEXT PAGE OF GOVERNMENT

13    EXHIBIT 5, THERE'S A --- ACTUALLY, LET ME GO BACK.  AFTER THE 400,000-

14    DOLLARS WAS TRANSFERRED TO THE 941 LIABILITY FOR THE FIRST

15    QUARTER OF 2007, WAS THERE A BALANCE DUE ON THIS ACCOUNT?

16    A    YES, MA'AM.

17    Q    AT THAT POINT, IS THAT WHAT YOU PUT ON THE PROOF OF

18    CLAIM?

19    A    YES, IT IS.

20    Q    AT SOME POINT, THE 400,000-DOLLARS CAME BACK INTO THIS

21    ACCOUNT.

22    A    YES.

23    Q    CORRECT?  AND WHERE IS THAT SHOWN, IS THAT---

24    A    THAT'S ON PAGE 4 OF THE TRANSCRIPT.

25    Q    NOW THAT HAS THE SAME DATE OF MAY 21, 2007?

1    A    YES, MA'AM.

2    Q    WHY IS THAT?

3    A    THE CREDITS WILL ALWAYS CARRY THE SAME DATE FOR

4    INTEREST AND PENALTY COMPUTATIONS, BUT WE KNOW WHEN THEY

5    COME BACK INTO THE ACCOUNT BECAUSE OF THE CYCLE DATE OF THE

6    YEAR WHEN THE ADJUSTMENTS ARE MADE.

7    Q    WE'LL TALK ABOUT THAT IN A MINUTE LOOKING AT

8    ANOTHER TRANSCRIPT.  SO ON --- CONTINUING DOWN ON EXHIBIT 5, FOR

9    2005 ON PAGE 4, IT SHOWS A COUPLE MINUS ACCOUNTS AND THEN ON THE

10   LAST PAGE OF THIS PAGE 6 OF 2005, IT SHOWS A NEGATIVE BALANCE,

11   WHAT DOES THAT MEAN?

12   A    WELL, THAT IS A RESULT OF THE AUDIT THAT WAS DONE AND

13   THEY ALLOWED THE OPERATING LOSS.  IT'S A CREDIT ON THE ACCOUNT

14   RIGHT NOW.  IT'S JUST A CREDIT.  WE HAVEN'T MOVED IT OR REFUNDED

15   OR ANYTHING ELSE.  IT'S JUST A CREDIT SITTING ON THE ACCOUNT.

16   Q    IN THE AMOUNT OF?

17   A    1,054,308.78.

18   Q    TURNING OT THE NEXT PAGE IN GOVERNMENT EXHIBIT 5,

19   THIS IS A TRANSCRIPT OF WHAT?

20   A    THIS IS MIRABILIS' FORM 1120 FOR CORPORATE INCOME TAX

21   FOR THE TAX YEAR ENDING DECEMBER 31, 2006.

22   Q    DOES THAT ALSO SHOW A CREDIT?

23   A    YES, MA'AM, THAT'S ON PAGE 3 OF THAT TRANSCRIPT.

24   Q    IN WHAT AMOUNT?

25   A    $68,539.51.

1      Q      AND WERE EITHER OF THESE TWO CREDITS REFUNDED TO

2  THE DEBTOR?

3      A      NO, MA'AM.

4      Q      TURNING TO THE NEXT SECTION OF EXHIBIT 5, THE

5  TRANSCRIPT FOR INCOME TAX LIABILITY FOR 2007, WHICH IS A POST-

6  PETITION YEAR; CORRECT?  NO, I'M SORRY.

7      A      PRE-PETITION?

8      Q      THAT'S A PRE-PETITION YEAR, DOES THAT SHOW A BALANCE

9  TOO?

10     A      NO, MA'AM.

11     Q      NOW, YOU HAD TALKED MS. SUMMERS ABOUT THE --- ABOUT

12  THE CYCLE, IF YOU COULD TURN TO WHAT'S BEEN MARKED

13  GOVERNMENT EXHIBIT 6.  COULD YOU IDENTIFY THAT, PLEASE?

14     A      THIS IS WHAT I REFER TO AS AN IRDS TAX ACCOUNT.  THIS IS

15  THE FORM 1120, 2005 TAX ACCOUNT FOR MIRABILIS.

16     Q      IS THIS A RECORD REGULARLY KEPT IN THE COURSE OF THE

17  INTERNAL REVENUE SERVICES BUSINESS?

18     A      YES, MA'AM, THIS IS HOW WE OPERATE.

19     Q      AND ARE YOU FAMILIAR WITH THIS KIND OF RECORD?

20     A      VERY FAMILIAR.

21     Q      AND DO YOU USE THIS IN THE ORDINARY COURSE OF YOUR

22  JOB?

23     A      EVERYDAY.

24            MS. IDE:  I WOULD MOVE FOR ADMISSION OF GOVERNMENT 6.

25            THE COURT:  WHAT IS THE DEBTOR'S POSITION?

40

1            MR. SHUKER:  NO OBJECTION.

2            THE COURT:  IT WILL BE ADMITTED.

3    BY MS. IDE:

4        Q       NOW, MS. SUMMERS, HOW DO YOU KNOW THAT THIS IS

5    MIRABILIS' INCOME TAX ACCOUNT FOR 2005?

6        A       AT THE VERY TOP, THERE'S  THE LETTERS TXMODA, AND

7    THEN THERE'S THE FEDERAL EMPLOYER IDENTIFICATION NUMBER THAT

8    IS UNIQUE TO MIRABILIS.  THE MFT IS ANOTHER ACRONYM AND IT IS A

9    TAX CLASS.  O2 IS ATTRIBUTABLE TO FORM 1120.  THE TAX PERIOD IS 2005

10   12 AND THAT TELLS ME THAT THIS IS A CALENDAR YEAR 2005 1120

11   INCOME TAX RETURN.

12       Q       OKAY.  SO LOOKING DOWN ON THIS FIRST PAGE, THE SECOND

13   TO THE LAST LINE SHOWS A CODE, NUMBER 150 AND WHAT DOES THAT

14   LINE INDICATE?

15       A       THE 150 CODE IS THE ORIGINAL RETURN POSTING.

16       Q       THAT SHOWS A TAX CLAIM DUE OF $1,073,942?

17       A       FROM THE ORIGINAL RETURN, YES, MA'AM.

18       Q       OKAY.  YOU TALKED ABOUT THE CYCLES, CAN YOU IDENTIFY

19   FOR US, WHERE IN THIS TRANSCRIPT IT INDICATES THE 400,000-DOLLAR

20   AMOUNT COMING BACK INTO THE MIRABILIS 1120 ACCOUNT?

21       A       IT'S ON PAGE 5 OF THE TRANSCRIPT OR THE TAX RECORD.  IT

22   SHOWS THE 670, WITH A TRANSACTION DATE OF MAY 21, 2007.

23       Q       WHAT'S THAT 670 CODE?

24       A       I'M SORRY, 670 IS A PAYMENT.

25       Q       OKAY.

41

1      A      IT IS NOT A FEDERAL TAX DEPOSIT.  THEY GET A DIFFERENT

2   CODE.  BUT A SUBSEQUENT PAYMENT IS THE 670.

3      Q      AND THEN IT SHOWS 400,000?

4      A      400,000-DOLLAR CREDIT AND THEN RIGHT TO THE RIGHT OF

5   THAT IS THE CYCLE.  THE YEAR OF THIS TRANSFER OR POSTING YEAR

6   WAS 2010 AND THE 15TH WEEK OF 2010.

7      Q      WHICH IS ABOUT WHEN?

8      A      IT WOULD BE SOMETIME IN THE MIDDLE OF APRIL.

9      Q      THAT'S WHEN THE 400,000-DOLLARS MOVED BACK INTO THE

10  ACCOUNT?

11     A      YES, MA'AM.

12     Q      AND THEN UNDER THAT, THERE'S A LINE THAT SAYS

13  PENDING TRANSACTIONS SECTION.

14     A      YES, MA'AM.

15     Q      AND IS THERE SOMETHING IN THERE THAT INDICATES THAT

16  THERE IS A PENDING OVERPAYMENT?  ACTUALLY, IT MAY BE FURTHER

17  DOWN ON THE LAST PAGE.

18     A      I DON'T THINK THE EXAM ADJUSTMENT IS REFLECTED IN

19  THIS.

20     Q      WHAT'S THE DATE OF THIS TAX MONTH?

21     A      MAY 19TH.

22     Q      AND WHEN WAS THE EXAM COMPUTATION FINALIZED?

23     A      OH GEE.  IT HASN'T BEEN VERY LONG AGO, BUT I DON'T

24  REMEMBER THE EXACT DATE.  IT'S NOT REFLECTED HERE, SO IT WASN'T

25  DONE AS OF THE MAY 19TH TRANSCRIPT OF THIS.

42

1      Q      BUT THE 400,000-DOLLARS WAS RETURNED TO THE ACCOUNT

2    AS OF MAY 19TH?

3      A      YES, MA'AM.

4      Q      TURNING TO WHAT'S BEEN MARKED GOVERNMENT EXHIBIT

5    7.  CAN YOU IDENTIFY THAT?

6      A      THIS IS THE TAX MOD ACCOUNT FOR MIRABILIS' FORM 941

7    FOR THE FIRST QUARTER OF 2007.

8      Q      AND AS WITH EXHIBIT 6, THIS IS A DOCUMENT KEPT --- USED

9    BY THE INTERNAL REVENUE --- CREATED BY THE INTERNAL REVENUE

10   SERVICE AND USED IN THE ORDINARY COURSE OF YOUR DUTIES AT THE

11   INTERNAL REVENUE SERVICE?

12     A      YES, MA'AM.

13            MS. IDE:  WE MOVE FOR THE ADMISSION OF GOVERNMENT

14        EXHIBIT 7.

15            THE COURT:  AND WHAT IS THE DEBTOR'S POSITION.

16            MR. SHUKER:  NO OBJECTION.

17            THE COURT:  IT WILL BE ADMITTED.

18            MS. IDE:  THANK YOU, YOUR HONOR.

19   BY MS. SUMMERS:

20     Q      THIS IS THE TRANSCRIPT FOR MIRABILIS' 941 OR

21   EMPLOYMENT TAX ACCOUNT FOR THE FIRST QUARTER OF 2007.  LOOKING

22   AT THE FIRST PAGE, DOES THIS SHOW A TAX RETURN FILED?

23     A      YES, MA'AM.

24     Q      AND WHEN WAS THAT FILED?

25     A      THE RETURN WAS POSTED MAY THE 10TH, 2010.

43

1    Q    SO THAT WAS TIMELY OR UNTIMELY?

2    A    WELL, IT WAS NOT TIMELY.  THE RETURN IS DUE APRIL 30TH

3  OF 2007 AND IT WAS RECEIVED ON DECEMBER 8TH OF 2009.

4    Q    TURNING TO THE SECOND PAGE, THERE IS THE  --- RIGHT

5  UNDER THE POSTED TRANSACTION SECTION, THERE'S AN AMOUNT OF

6  400,000-DOLLARS, WHAT DOES THAT INDICATE?

7    A    THAT'S A CREDIT ON THE ACCOUNT.

8    Q    AND THAT 400,000-DOLLARS REVERSED AT SOME POINT?

9    A    YES, MA'AM, IT WAS.

10    Q    WHEN WAS THAT?

11    A    IT WAS REVERSED IN 2010 IN CYCLE 15, WHICH WAS ABOUT

12  THE MIDDLE OF APRIL.

13    Q    AND SO IF WE'RE GOING DOWN PAGE, THE PAGE 2, IT'S --- ARE

14  YOU REFERRING TO THE LINE THAT STARTS WITH 672?

15    A    YES, MA'AM.

16    Q    IS THERE A LIABILITY FOR THIS QUARTER?

17    A    NO, MA'AM, THERE WAS NOT.

18    Q    THE 400,000 PAYMENT THEN THAT WAS APPLIED TO THE 1120

19  ACCOUNT, WERE YOU ASKED TO RESEARCH HOW THIS HAPPENED?

20    A    I DON'T REMEMBER IF I WAS ASKED, BUT I DID RESEARCH IT

21  TO FIGURE OUT WHAT WAS GOING ON WITH IT.

22    Q    WHAT DID YOU DISCOVER IN THE COURSE OF YOUR

23  INVESTIGATION?

24    A    I SPOKE WITH THE REVENUE OFFICER THAT WAS ASSIGNED

25  AND FOUND OUT THAT THERE WAS AN ORIGINAL 400,000-DOLLAR

44

1   PAYMENT THAT CAME IN ON MIRABILIS' CHECKING ACCOUNT AND IT

2   WAS REQUESTED THAT MIRABILIS GET A CERTIFIED CHECK INSTEAD OF

3   THEIR OWN CHECK BECAUSE OF THE PROBLEMS THAT THE GOVERNMENT

4   HAD HAD WITH MIRABILIS' PAYMENT OR LACK OF PAYMENT AND THEIR

5   CRIMINAL ACTIVITIES.  SO THE PAYMENT THAT WAS SUBSEQUENTLY

6   TENDERED TO THE GOVERNMENT WAS A CASHIER'S CHECK AND THAT IS

7   WHAT --- THAT WAS WHAT WAS POSTED ON THE ACCOUNT.

8          I THINK I ALSO FOUND OUT THAT THROUGH HAPPENSTANCE,

9   IT WAS POSTED TO THE 941 FOR MIRABILIS.

10      Q     IT WAS --- ACTUALLY, LET ME GO BACK.  YOU DON'T HAVE

11  DEBTOR'S EXHIBIT 9 IN FRONT OF YOU, BUT IF YOU COULD TURN TO

12  GOVERNMENT EXHIBIT 16, WHICH IS A PORTION OF DEBTOR'S EXHIBIT 9.

13         THE COURT:  ARE WE GETTING CLOSE TO GETTING THE

14  EXHIBITS?

15         THE CLERK:  YES, MA'AM.

16         MS. IDE:  YOUR HONOR, IF I MAY.  IN DEBTOR'S EXHIBIT 9,

17  THERE WAS A PAGE STAMPED MVI-ADM 00593 AND WE JUST

18  DUPLICATED THAT AS GOVERNMENT EXHIBIT 16 FOR EASE OF

19  REFERENCE.

20         THE COURT:  JUST ONE SECOND, MS. SUMMERS.

21         THE WITNESS:  YOU DON'T HAVE NOTES ON THERE THAT I

22  SHOULDN'T SEE, DO YOU?

23         THE COURT:  NO.

24         THE WITNESS:  OKAY.

25         THE COURT:  HERE YOU GO.

45

1    BY MS. IDE:

2        Q        TURNING TO GOVERNMENT EXHIBIT 16, CAN YOU IDENTIFY

3    THAT?

4        A        THIS IS THE CHECK THAT WAS SUBSEQUENTLY TENDERED BY

5    MIRABILIS TO THE IRS.

6               MS. IDE:  YOUR HONOR, WE MOVE FOR THE ADMISSION OF

7        GOVERNMENT 16.

8               THE COURT:  I ASSUME YOU HAVE NO OBJECTIONS SINCE IT'S

9        PART OF EXHIBIT 9?

10              MR. SHUKER:  CORRECT.

11              THE COURT:  IT WILL BE ADMITTED.

12   BY MS. IDE:

13       Q        AND HOW DO YOU KNOW THAT THIS WAS THE CHECK THAT

14   WAS DEPOSITED INTO MIRABILIS' FORM 1120 ACCOUNT FOR 2005?

15       A        WELL, THERE --- THE IRS PUTS CODING ON THE BACK OF

16   CHECKS TO ENABLE US TO TRACK THEM IN THE EVENT THAT SOMEBODY

17   SAYS:  OH, I MADE A PAYMENT AND WE DON'T HAVE A RECORD OF IT,

18   AND IF YOU SEND US THE FRONT AND BACK OF YOUR CANCELLED CHECK,

19   THEN IT ENABLES US TO FIND OUT WHERE WE ACTUALLY PUT THE

20   MONEY.

21              AND IF YOU LOOK ON THE BACK OF THE CHECK, THERE'S A

22   BIG LONG STRING OF NUMBERS HERE.

23       Q        THAT'S STARTS WITH MR ---

24       A        MIRA.  AND THE VERY END OF THOSE NUMBERS IS MIRABILIS'

25   FEDERAL ID NUMBER AND THEN STARTING ON THE NEXT LINE, THERE'S

46

1    2005 12 AND THE ACTUAL RECEIPT DATE OF THE CHECK.

2         Q      SO THEN YOU SAID THAT THIS MONEY WENT TO THE 941

3    ACCOUNT AT SOME POINT?

4         A      YES, MA'AM.

5         Q      HOW DID THAT HAPPEN?

6         A      WELL, I DON'T REALLY KNOW.  I DON'T KNOW IF THE

7    REVENUE OFFICER PUT IT THERE OR IF HE WAS INSTRUCTED BY THE

8    CRIMINAL AGENT TO PUT IT THERE.  IT'S NOT TO ME CERTAINLY

9    EXTREMELY CLEAR THAT MIRABILIS WAS SURE IT WAS TO GO, BUT IT

10   WOUND UP ON THE 941 WHERE IT SAT AS A CREDIT FOR A WHILE.

11        Q      YOU MENTIONED BEING NOT SURE THAT MIRABILIS KNEW

12   WHERE IT WAS SUPPOSED TO GO.  IF YOU COULD LOOK AGAIN AT EXHIBIT

13   16, ON THE FACE OF THE CHECK --- AND I REALIZE THAT THIS ISN'T THE

14   BEST COPY --- BUT IS THERE A DESIGNATION BY MIRABILIS OF WHERE

15   THIS MONEY SHOULD GO?

16        A      IT SAYS VOLUNTARY PAYMENT, MIRABILIS VENTURES, AEM,

17   MAY --- I THINK THAT'S MAY 14, 2007.

18        Q      WHAT WOULD THAT INDICATE TO YOU TO WHAT TAX

19   ACCOUNT THIS MONEY WOULD GO?

20             MR. SHUKER: OBJECTION.  IT'S SPECULATION.

21             THE COURT:  AND YOUR RESPONSE?

22             MS. IDE:  YOUR HONOR, I'M ASKING WHAT SHE AS AN IRS

23        EMPLOYEE WOULD INTERPRET THAT DESIGNATION TO BE.

24             THE COURT:  SHE'S ALREADY SAID THAT SHE DOES NOT ---

25        SHE DIDN'T HAVE ANY --- YOU DIDN'T HAVE ANYTHING TO DO

47

1        WITH THIS PARTICULAR APPLICATION?

2                THE WITNESS:  NO, MA'AM, I DIDN'T.

3                THE COURT:  I WILL SUSTAIN THE OBJECTION.

4    BY MS. IDE:

5        Q        IS THERE ANY INDICATION --- WAS THERE ANY INDICATION IN

6    YOUR INVESTIGATION OF THE 400,000-DOLLARPAYMENT OF WHY IT WAS

7    APPLIED TO THE 1120 ACCOUNT OF MIRABILIS?

8        A        BECAUSE THAT WAS THE ONLY BALANCE DUE WHEN THE

9    CHECK WAS RECEIVED.

10        Q        NOW, YOU TESTIFIED THAT IT THEN HAD BEEN MOVED TO

11    THE 941 ACCOUNT AND IT SAT THERE AS A CREDIT.  WHAT WAS THE

12    RESULT ON THE INCOME TAX ACCOUNT FROM MOVING THE 400,000?

13        A        IT PUT THE INCOME TAX ACCOUNT IN ABOUT 300,000 DEBIT

14    BALANCE BECAUSE THE --- THERE WERE ADJUSTMENTS MADE TO THE

15    ACCOUNT WHEN THE CREDIT WAS THERE AND WE ISSUED A REFUND TO

16    MIRABILIS OF ABOUT THREE HUNDRED AND SOME ODD THOUSAND, SO

17    WHEN WE MOVED THE CREDIT OFF, IT PUT THE ACCOUNT IN THE DEBIT

18    BALANCE FOR THE AMOUNT OF THE REFUND.

19        Q        AND THAT WAS PRE-PETITIONED AND THAT'S WHAT YOU

20    FILED A CLAIM FOR; RIGHT?

21        A        YES, MA'AM.

22        Q        OKAY.  AT SOME POINT DURING THE COURSE OF THIS CASE, IT

23    WAS DETERMINED THAT THE 400,000-DOLLARS SHOULD BE MOVED BACK

24    TO THE 1120 ACCOUNT; CORRECT?

25        A        YES, MA'AM.

48

1      Q      TELL ME ABOUT THAT?

2      A      AS THE CASE PROGRESSED, THE DEBTOR STARTED FILING

3  SOME OF THE DELINQUENT PRE-PETITION RETURNS AND THEY FILED

4  POST-PETITION RETURNS AND ONCE THE RETURNS WERE FILED, IT

5  ENABLED US TO DETERMINE IF THE CREDIT WAS AN OVERPAYMENT OR

6  NOT.  AT THAT POINT, IT BECAME AN OVERPAYMENT AND WE HAD A

7  CORRESPONDING PRE-PETITION DEBIT.  THE PRE-PETITION

8  OVERPAYMENT.  IT'S LOGICAL AND AS FAR AS I KNOW, IT'S AUTHORIZED.

9  WE CAN SETOFF A PRE-PETITION CREDIT TO A PRE-PETITION DEBT.

10     Q      NOW, DID YOU ACTUALLY MOVE THE 400,000 TO --- BACK TO

11  THE 1120 ACCOUNT?

12     A      AFTER CONSULTING WITH EVERYBODY AND THEIR BROTHER,

13  AGAIN, BECAUSE THIS WAS A CRIMINAL CASE, YOU --- AT IRS, YOU JUST

14  CAN'T GO WILLY NILLY DOING THINGS WITHOUT MAKING SURE THAT

15  YOU'RE ACTIONS DO NOT IMPACT SOME OTHER ASPECT OF THE

16  ORGANIZATION.

17     Q      WHO DID YOU CONSULT WITH THEN?

18     A      I CONSULTED WITH AREA COUNSEL IN FORT LAUDERDALE.  I

19  CONSULTED WITH THE CRIMINAL AGENT, MR. SMITH.  I TALKED TO MY

20  DEPARTMENT OF JUSTICE ATTORNEY, MS. IDE.  I PROBABLY TALKED WITH

21  THE REVENUE OFFICER THAT HAD BEEN ASSIGNED TO THE CASE JUST TO

22  MAKE SURE THAT MOVING THIS DOESN'T MESS UP ANYBODY'S ONGOING

23  OR PARALLEL INVESTIGATION OR CASE WORK OR WHAT HAVE YOU.

24     Q      AND THEN WHEN DID YOU REQUEST THAT THE FUNDS BE

25  RETURNED TO THE 2005 INCOME TAX ACCOUNT?

49

1      A      THAT WAS IN MARCH OF 2010.

2      Q      YOU HAVE --- DO YOU HAVE THE DEBTOR'S EXHIBITS WITH

3   YOU, MS. SUMMERS?  IF YOU COULD TURN TO DEBTOR'S EXHIBIT 15.

4            THE WITNESS:  YOUR HONOR?

5            THE COURT:  YES.

6            THE WITNESS:  I'M SORRY, BUT THE LITTLE THINGY CAME

7   OPEN AND IT CAME LOSE.  IS THAT OKAY FOR ME TO PUT THEM

8   BACK IN?

9            THE COURT:  YES, GO AHEAD.  IF YOU HAVE ANY TROUBLE

10  JUST LET ME KNOW.

11           THE WITNESS:  I'M SORRY.  I JUST DON'T WANT YOU ALL TO

12  THINK I'M TAPPERING.

13           THE CLERK:  THIS IS EXHIBIT NUMBER 7.

14           THE WITNESS:  JUST LEAVE IT OVER THERE, IF I NEED IT, I'LL

15  COME BACK TO IT.  THERE'S TOO MUCH IN THIS BOOK.  IT'S WRONG.

16  FIFTEEN?

17  BY MS. SUMMERS:

18     Q      FIFTEEN.  IS THAT YOUR REQUEST TO MAKE THE

19  ADJUSTMENT?

20     A      YES, MA'AM.

21     Q      AND YOU MADE THIS REQUEST TO MOVE THE --- TO RETURN

22  THE 400,000-DOLLARS WHEN?

23     A      MARCH 16, 2010.

24     Q      WHEN WAS IT ACTUALLY AFFECTED IN THE RECORDS OF THE

25  INTERNAL REVENUE SERVICE?

50

1      A      THAT WOULD HAVE BEEN MID-APRIL 2010. THERE IS A TIME

2  DELAY BETWEEN THE TIME YOU REQUEST AN ACTION TO THE IDS

3  ACCOUNT AND THE TIME THAT IT ACTUALLY GETS POSTED TO THE IDS

4  ACCOUNT AND IT'S BETWEEN TWO AND THREE WEEKS.

5      Q      AFTER THE 400,000-DOLLARS WAS RETURNED THEN TO THE

6  FORM 1120 ACCOUNT WHERE IT WAS ORIGINALLY APPLIED, WAS THERE A

7  BALANCE DUE ON THAT ACCOUNT?

8      A      NO, MA'AM.

9      Q      OKAY. AND WHAT DID YOU DO WITH THE PROOF OF CLAIM

10  THEN?

11      A      THEN WE WITHDREW IT.

12      Q      DO YOU NORMALLY WITHDRAW IT BY FILING A ZERO CLAIM?

13      A      WELL, IN THE OLD DAYS BEFORE WE HAD OUR AUTOMATED

14  ELECTRONIC SYSTEMS, WE WOULD SEND IN A LETTER TO THE COURT

15  SAYING THAT WE WERE WITHDRAWING THE CLAIM. WE CAN'T DO THAT

16  NOW. SO WE ZERO THE CLAIM OUT, WHICH HAS THE SAME AFFECT.

17      Q      AND YOU DID THAT IN THIS CASE?

18      A      YES, MA'AM.

19              MS. IDE: ONE MOMENT, YOUR HONOR.

20  BY MS. IDE:

21      Q      IF YOU COULD TURN TO DEBTOR'S EXHIBIT 19. IS THAT THE

22  ZEROED OUT CLAIM YOU WERE JUST REFERRING TO?

23      A      YES, MA'AM.

24      Q      NOW, THE MIRABILIS ---

25              MS. IDE: ACTUALLY, IF I MAY, YOUR HONOR, MS. SUMMERS,

51

1          DO YOU NEED A BREAK OR ARE YOU OKAY?

2                THE WITNESS: IT WOULD BE GOOD IF I COULD HAVE ONE. I'M

3     GETTING A LITTLE DRY.

4                MS. IDE: COULD WE TAKE A FIVE MINUTE BREAK, YOUR

5     HONOR?

6                THE COURT: CERTAINLY, CERTAINLY.

7                MS. IDE: THANK YOU.

8                THE COURT: THE COURT IS IN RECESS.

9                THE CLERK: ALL RISE.

10               (WHEREUPON, A SHORT RECESS WAS HAD.)

11               THE CLERK: ALL RISE. THE COURT IS NOW BACK IN SECTION.

12    THE HONORABLE KAREN S. JENNEMANN RESIDING. YOU MAY BE

13    SEATED.

14               THE COURT: OKAY. LET'S GO AHEAD AND CONTINUE.

15               MS. IDE: THANK YOU, YOUR HONOR.

16    BY MS. IDE:

17         Q     MS. SUMMERS, BEFORE OUR BREAK, WE WERE TALKING

18    ABOUT THIS 400,000-DOLLAR PAYMENT. THE 400,000-DOLLAR PAYMENT

19    WAS RETURNED TO THE FORM 1120 ACCOUNT SHORTLY AFTER YOU

20    REQUESTED IT IN MARCH OF THIS YEAR; RIGHT?

21         A     YES, MA'AM.

22         Q     OKAY. THERE WAS AN AUDIT OF MIRABILIS' 1120

23    CORPORATE INCOME TAX LIABILITIES GOING ON. IS THAT CORRECT?

24         A     YES, IT IS.

25         Q     WAS THAT AUDIT STILL OPEN AT THE TIME THE FUNDS WERE

52

1    RETURNED TO THE 1120 ACCOUNT?

2        A    YES, MA'AM.

3        Q    AT SOME POINT THE AUDIT WAS CONCLUDED; CORRECT?

4        A    CORRECT.

5        Q    AND WHAT WAS THE RESULT OF THAT AUDIT?

6        A    THEY WOUND UP --- MIRABILIS WOUND WITH A LITTLE OVER

7    A MILLION IN LOSS CARRY BACK, WHATEVER ITS CALLED, AND THAT

8    WAS ON THE 05 1120 AND IT WOUND UP WITH ABOUT 68,000 CREDIT ON

9    THE 2006 1120.

10       Q    AND WE LOOKED AT THOSE PRECISE NUMBERS IN

11   GOVERNMENT EXHIBIT 5?

12       A    WITH THE TRANSCRIPTS, YES.

13       Q    OKAY.  THE 400,000-DOLLAR AMOUNT, WAS THAT TAKEN

14   INTO ACCOUNT COMPUTING THOSE OVERPAYMENTS?

15       A    YES.

16       Q    IF MIRABILIS --- THIS IS ALL POST CONFIRMATION; CORRECT?

17       A    THE AUDIT CONCLUSION, YES.

18       Q    YES.  HAD MIRABILIS --- LET ME GO BACK.  IS IT YOUR

19   UNDERSTANDING THAT IN CONFIRMATION, THE THREE DEBTORS; HOTH

20   HOLDINGS, AEM AND MIRABILIS WERE CONSOLIDATED?

21       A    YES.

22       Q    IF NONE OF THESE THREE DEBTORS HAD A LIABILITY OF

23   RECORD, WOULD THE MILLION DOLLAR OVERPAYMENT HAVE BEEN

24   REFUNDED?

25       A    YES.

53

1      Q      AND THE 68,000-OVERPAYMENT?

2      A      YES, MA'AM, THAT'S CORRECT.

3      Q      NOW, THE INCOME TAX RETURNS, THE 2005 AMENDED

4   INCOME TAX RETURN AND THE 2006 INCOME TAX RETURN THAT WAS THE

5   SUBJECT OF THIS AUDIT THAT OCCURRED DURING THIS BANKRUPTCY, DO

6   YOU KNOW WHEN THEY WERE FILED?

7      A      THE AMENDED RETURNS, I DON'T KNOW IF THEY WERE FILED

8   WITH THE 941s OR NOT. I WANT TO SAY SOME TIME IN DECEMBER OF '09.

9      Q      IF YOU COULD LOOK AT DEBTOR'S EXHIBIT 12. IT'S IN THE

10  BLACK BINDER. ARE YOU FAMILIAR WITH THAT DOCUMENT?

11     A      YES, MA'AM.

12     Q      ATTACHED TO MIRABILIS VENTURE OBJECTION TO CLAIM

13  ARE TAX RETURNS, IF YOU COULD TURN TO THOSE TAX RETURNS AND

14  TELL ME WHEN THEY WERE FILED, PLEASE?

15     A      THEY WERE SIGNED ON SEPTEMBER 15TH OF '09.

16     Q      OKAY. SO THAT'S AFTER THE PETITION DATE?

17     A      YES, IT IS.

18     Q      ALL RIGHT. NOW, MR. CUTHILL HAD TESTIFIED THAT HE

19  ASKED FOR A QUICK AUDIT OF THESE INCOME TAX RETURNS, IS THAT THE

20  SAME THING AS A PROMPT DETERMINATION?

21     A      I'M NOT SURE WHAT A QUICK AUDIT IS. I KNOW WHAT A

22  PROMPT DETERMINATION IS.

23     Q      WHAT IS A PROMPT DETERMINATION?

24     A      IT'S A REQUEST AND IT'S USUALLY A CHAPTER 7 TRUSTEE.

25  HE REQUESTS THAT THE INTERNAL REVENUE SERVICE REVIEW THE FINAL

54

1   RETURNS OF THE ESTATE SO THAT HE CAN CLOSE IT OUT, AND HE

2   REQUESTS WHAT IS KNOWN AS A PROMPT DETERMINATION OF THE TAX

3   LIABILITY.

4      Q      OF THE BANKRUPTCY ESTATE?

5      A      YES.

6      Q      WAS THERE A PROMPT DETERMINATION REQUESTED FOR

7   THESE PRE-PETITION INCOME TAX RETURNS?

8      A      NOT TO MY KNOWLEDGE.

9      Q      THEY WERE AUDITED AS PART OF THE CLAIM OBJECTION.  IS

10  THAT CORRECT?

11     A      YES.

12     Q      AND DURING THE COURSE OF YOUR ASSIGNMENT TO THE

13  MIRABILIS AND AEM BANKRUPTCY CASES, I BELIEVE YOU TESTIFIED YOU

14  MONITORED THE AUDIT.  IS THAT RIGHT?

15     A      I PERIODICALLY CHECKED WITH THE REVENUE AGENT TO

16  SEE HOW IT WAS PROGRESSING, SO I WOULD KNOW WHEN WE COULD GO

17  FORWARD WITH ANY AMENDMENT TO CLAIM OR GIVE COUNSEL A

18  STATUS REPORT SO THAT THEY WOULD KNOW.

19     Q      AND WHEN THE AUDIT WAS CONCLUDED, YOU TESTIFIED

20  BEFORE THAT YOU FILED AS ZERO CLAIM ON MIRABILIS.  DID --- HAD YOU

21  FILED A PROOF OF CLAIM IN THE AEM CASE FOR PRE-PETITION TAXES?

22     A      YES.

23     Q      IF YOU COULD TURN TO DEBTOR'S EXHIBIT 21, PLEASE.  IS

24  THAT PROOF OF CLAIM YOU FILED IN THE AEM CASE?

25     A      YES, MA'AM.

55

1    Q    DOES THAT SHOW ANY SECURED LIABILITY?

2    A    NO, MA'AM, IT DOES NOT.

3    Q    DOES IT IDENTIFY A RIGHT OF SETOFF?

4    A    YES, IT DOES.

5    Q    HOW SO?  COULD YOU READ THAT SECTION, PLEASE?

6    A    THE UNITED STATES HAS NOT IDENTIFIED A RIGHT OF SETOFF

7    OR COUNTER-CLAIM.  HOWEVER, THIS DETERMINATION IS BASED ON

8    AVAILABLE DATA AND IS NOT INTENDED TO WAIVE ANY RIGHT TO

9    SETOFF AGAINST THIS CLAIM.  DEBTS OWED TO THIS DEBTOR BY THIS OR

10   ANY OTHER FEDERAL AGENCY.  ALL RIGHTS OF SETOFF ARE PRESERVED

11   AND WILL BE ASSERTED TO THE EXTENT LAWFUL.

12   Q    AT THE TIME YOU FILED THE PROOF OF CLAIM IN THE AEM

13   CASE, DID AEM OR MIRABILIS HAVE ANY OVERPAYMENTS?

14   A    NOT ANY OVERPAYMENTS.  THERE WAS STILL THAT CREDIT,

15   BUT IT WASN'T AN OVERPAYMENT.

16   Q    AT SOME POINT, DID YOU DETERMINE THAT THERE WAS AN

17   OVERPAYMENT THAT COULD BE SETOFF AGAINST AEM'S LIABILITY THAT

18   WAS SHOWN ON THIS PROOF OF CLAIM?

19   A    YES, I DID.

20   Q    AND WHEN WAS THAT?

21   A    WHEN THE AUDIT WAS COMPLETED AND THE ADJUSTMENTS

22   WERE MADE TO REFLECT THE CREDIT FROM THE OPERATING LOSS ON

23   THE '05 AND '06 1120s.

24   Q    OF MIRABILIS?

25   A    OF MIRABILIS.

56

1      Q      IF YOU COULD TURN TO DEBTOR'S EXHIBIT 24.  IS THAT THE

2  AMENDED CLAIM YOU FILED IN THE AEM CASE?

3      A      YES, IT IS.

4      Q      HOW DOES THAT DIFFER FROM THE ORIGINAL CLAIM?

5      A      IN THE ORIGINAL CLAIM, WE HAD NO SECURED AMOUNT,

6  AND IN THE AMENDED CLAIM, WE'RE SHOWING A 1.1-MILLION DOLLAR

7  SECURED CLAIM AND WAS SECURED BY OUR RIGHT OF SETOFF.

8      Q      AND THAT'S A RIGHT OF SETOFF ARISING FROM WHAT?

9      A      THE EXAM OF MIRABILIS' 1120s FOR 2005 AND 2006 AND THE

10  RESULTING CREDITS.

11      Q      DID YOU CHANGE THE TOTAL AMOUNT OF THE CLAIM IN THE

12  AEM CASE?

13      A      NO, MA'AM, IT'S JUST BETWEEN SECURED AND UNSECURED

14  AMOUNT.

15      Q      DID YOU ADD ANY ADDITIONAL TAX YEARS OR TAX

16  PERIODS?

17      A      NO, MA'AM.

18      Q      LET ME TURN BACK TO MIRABILIS.  WHEN YOU WERE FIRST

19  ASSIGNED THIS CASE, DID MIRABILIS HAVE ANY OUTSTANDING FORM 941

20  LIABILITIES, ANY PAYROLL TAX LIABILITIES?

21      A      NO, MA'AM.

22      Q      HAD IT FILED ALL OF ITS PRE-PETITION RETURNS?

23      A      NO, MA'AM.

24      Q      DID YOU MAKE AN ESTIMATED CLAIM FOR 941 LIABILITIES?

25      A      NO, MA'AM.

57

1    Q    WHY NOT?

2    A    THE CRIMINAL INVESTIGATION AGENT DID NOT WANT IT

3  DONE.

4    Q    COULD YOU HAVE ESTIMATED A CLAIM BASED ON THE

5  INFORMATION YOU HAD AT THE TIME OF THE FILING?

6    A    CERTAINLY AND I WOULD HAVE, HAD IT NOT BEEN FOR THE

7  INSTRUCTIONS FROM MR. SMITH, THE AGENT.

8    Q    THE SECOND QUARTER, 2007 --- WAS THERE A SECOND

9  QUARTER 2007 941 LIABILITY AT THE TIME MIRABILIS FILED ITS

10  BANKRUPTCY?

11    A    I DON'T THINK IT WAS A LIABILITY.  I'M NOT POSITIVE.  I

12  KNOW ONE OF THE RETURNS WAS FILED AND PAID AND I THINK IT WAS

13  THAT ONE.

14    Q    DID YOU ULTIMATELY RECEIVE FORMS 941 FOR MIRABILIS

15  FOR BOTH PRE AND POST-PETITION PERIODS?

16    A    YES, MA'AM.

17    Q    BEFORE YOU RECEIVED THE POST-PETITION FORMS 941 FOR

18  MIRABILIS, HAD YOU FILED AN ESTIMATED REQUEST FOR PAYMENT OF

19  POST-PETITION TAXES?

20    A    YES, I HAD.

21    Q    WHEN DID YOU FILE --- DO YOU RECALL WHEN YOU FILED

22  THE FIRST ONE?

23    A    I WANT TO SAY IT WAS IN MAY OF '09.

24    Q    AND WAS THAT BASED --- WAS THAT ESTIMATED OR BASED

25  ON TAX RETURNS?

58

1      A      IT WAS ESTIMATED.

2      Q      AT SOME POINT, DID YOU --- AT SOME POINT, YOU RECEIVED

3   TAX RETURNS, POST-PETITION TAX RETURNS FOR MIRABILIS; CORRECT?

4      A      CORRECT.

5      Q      OKAY.  DO YOU RECALL WHEN THAT WAS?

6      A      AGAIN, I THINK THAT WAS IN DECEMBER OF '09.

7      Q      OKAY.  AND DID YOU THEN AMEND THE ADMINISTRATIVE

8   CLAIM, THE REQUEST FOR PAYMENT OF POST-PETITION TAXES?

9      A      I AMENDED IT I WANT TO SAY IT WAS IN FEBRUARY OR

10  MARCH OF '10 AFTER THOSE RETURNS FOR THE MOST PART HAD BEEN

11  PROCESSED.

12           MS. IDE:  I APOLOGIZE, YOUR HONOR, I DIDN'T WANT TO

13           DUPLICATE TOO MANY EXHIBITS, SO I AM TRYING TO WORK OFF OF

14           TWO BOOKS.

15  BY MS. IDE:

16      Q      IF YOU COULD RETURN TO DEBTOR'S EXHIBIT 4.  IS THAT THE

17  MOST RECENT AMENDED REQUEST FOR PAYMENT OF POST-PETITION

18  TAXES THAT YOU PREPARED?

19      A      YES, IT IS.

20      Q      AND LOOKING AT THE TAX DUE COLUMN, WHERE DID YOU

21  GET THOSE NUMBERS?

22      A      THOSE ARE FROM THE RETURN.

23      Q      OKAY.  AND THEN YOU CALCULATED INTEREST AND

24  PENALTY ON THAT?

25      A      CORRECT.

59

1    Q    TO WHAT DATE?

2    A    THIS WAS CALCULATED TO SEPTEMBER 15, 2010.

3    Q    HAS THE TAX SHOWN DUE, JUST THE TAX PORTION OF THESE

4 INTERNAL REVENUE TAXES, HAS THAT BEEN PAID?

5    A    NO, MA'AM.

6    Q    AND SO INTEREST AND PENALTIES CONTINUE TO ACCRUE?

7    A    YES, MA'AM.

8    Q    THE TAX PORTION SHOWN DUE, YOU SAY THOSE ARE BASED

9 ON THE TAX RETURNS FILED IN DECEMBER '09?

10    A    I BELIEVE THAT'S WHEN MOST OF THEM WERE FILED.

11    Q    OKAY.  THAT WAS PRE OR POST-CONFIRMATION?

12    A    I THINK THE CONFIRMATION HEARING WAS IN OCTOBER, SO

13 I'M GOING TO SAY POST-CONFIRMATION.

14    Q    IF YOU COULD TURN TO DEBTOR'S EXHIBIT 10, PLEASE.

15 THESE ARE COPIES OF THE DEBTOR'S FORMS 941.  AT LEAST IN MY COPY --

16 - THEY'RE NOT IN ORDER --- BUT DO THESE APPEAR TO BE THE TAX

17 RETURNS THAT YOU RECEIVED COPIES SOME TIME AFTER --- SOME TIME

18 IN EARLY DECEMBER 2009?

19    A    YES, IT IS.

20    Q    AND YOU USED THESE TO DO THE AMENDED REQUEST FOR

21 PAYMENT OF POST-PETITION TAXES; CORRECT?

22    A    YES, MA'AM.

23    Q    OKAY.  IF YOU COULD LOOK AT GOVERNMENT'S EXHIBITS 3

24 AND 4.

25        MS. IDE:  YOUR HONOR, GOVERNMENT'S EXHIBITS 3 AND 4

60

1      ARE ALSO CERTIFIED OFFICIAL RECORDS.  WE MOVE FOR THEIR

2      ADMISSION.

3           THE COURT:  ANY OBJECTION?

4           MR. SHUKER:  NO, YOUR HONOR.

5           THE COURT:  THEY WILL BE ADMITTED.

6           MS. IDE:  THANK YOU, YOUR HONOR.

7   BY MS. IDE:

8      Q      COULD YOU IDENTIFY EXHIBIT 3, PLEASE?

9      A      EXCUSE ME, THE FIRST ONE IN HERE IS THE FORM 941,

10  CERTIFIED TRANSCRIPT FOR MIRABILIS FOR THE THIRD QUARTER 2008.

11     Q      AND DOES THAT SHOW AS THE TAX DUE --- THE AMOUNT OF

12  TAX --- DOES THAT COMPORT WITH THE TAX RETURNS THAT WERE FILED

13  IN DECEMBER '09?

14     A      YES, MA'AM.

15     Q      OKAY.  THERE ARE ALSO PENALTIES ON THERE.  CAN YOU

16  EXPLAIN HOW THOSE PENALTIES WERE COMPUTED?

17     A      THE LATE FILING PENALTY IS A PENALTY --- IT'S A LATE

18  FILING PENALTY.  IF YOUR RETURN ISN'T FILED TIMELY, WE CAN ASSERT

19  FAILURE TO FILE PENALTY AND DEPENDING ON WHETHER FAILURE TO

20  PAY IS ALSO APPLICABLE, FAILURE TO FILE CAN BE UP TO 22 AND ONE-

21  HALF PERCENT OF THE TAX, IF FAILURE TO PAY APPLIES.  IF NOT, IT CAN

22  BE AS HIGH AS 25-PERCENT OF THE TAX.

23          THERE'S A FEDERAL TAX DEPOSIT PENALTY IN TWO

24  DIFFERENT AMOUNTS.  THE FIRST ONE WAS 10-PERCENT.  A FEDERAL TAX

25  DEPOSIT PENALTY IS A TIERED PENALTY AND IT CAN GO FROM TWO

1   PERCENT TO 15-PERCENT.

2            THE FIRST PENALTY THAT WAS ASSESSED IS 10-PERCENT AND

3   JUST ROUGHLY, THE SECOND ONE THAT WAS ASSESSED, WAS 5-PERCENT

4   OF THE TOTAL TAX.  SO THE MAXIMUM 15-PERCENT FOR FAILURE TO

5   DEPOSIT HAS BEEN ASSESSED.

6        Q      AND ONLY 941S ARE REQUIRED --- 941 TAXES ARE REQUIRED

7   TO BE DEPOSITED?

8        A      FAILURE TO DEPOSIT CAN APPLY TO ANY TAX RETURN.  FOR

9   THE MOST PART, DEPOSITS ARE GENERALLY, MOST OFTEN SEEN IN 941s.

10  BUT IT COULD APPLY TO A 943, WHICH IS A FARMER TAX RETURN.  IT

11  COULD APPLY TO A 720, WHICH IS AN EXCISE TAX RETURN.  SO IT CAN

12  APPLY TO OTHER FORMS.

13       Q      OKAY.  THE NEXT PENALTY ON EXHIBIT 3 IS A FAILURE TO

14  PAY.

15       A      CORRECT.  THAT'S A ONE-HALF PERCENT PER MONTH.  I

16  THINK THE MAXIMUM ON THAT ONE I WANT TO SAY IS 25-PERCENT.

17       Q      AND THEN THERE'S ALSO INTEREST ASSESSED; CORRECT?

18       A      THAT'S CORRECT.

19       Q      OKAY.  AND THAT'S JUST INTEREST AS OF THAT ASSESSMENT

20  DATE OF APRIL 12, 2010?

21       A      RIGHT.  IT CAN --- INTEREST ACCRUES.  IT WON'T

22  NECESSARILY --- I DON'T THINK IT'S REFLECTED ON THIS TRANSCRIPT,

23  BUT INTEREST DOES ACCRUE AND SO DOES FAILURE TO PAY PENALTY.  IT

24  MAY NOT ALWAYS BE ASSESSED, BUT WE CAN CALCULATE THE

25  ACCRUALS UP TO ANY DATE.

62

1      Q      OKAY. TURNING TO THE NEXT CERTIFICATE OF OFFICIAL

2  RECORD IN EXHIBIT 3, THAT'S FOR THE QUARTER ENDING DECEMBER 31,

3  2008?

4      A      YES, THE 941 FOR MIRABILIS ENDING DECEMBER 31, 2008.

5      Q      AND ON THE NEXT --- THE NEXT PAGE, IT SHOWS THE TAX

6  DUE AS SHOWN ON THE 941?

7      A      YES.

8      Q      AND WE HAVE THE SAME KIND OF PENALTIES, THE SAME

9  RULES --- AND INTEREST, THE SAME RULES APPLY AS YOU JUST TESTIFIED

10  TO?

11      A      CORRECT.

12      Q      TURNING TO THE NEXT TAX PERIOD, THE ONE ENDING

13  MARCH 31, 2009, DOES THAT TRANSCRIPT ALSO REFLECT TAX DUE AS

14  SHOWN ON THE RETURNS FILED IN DECEMBER OF 2009?

15      A      YES, MA'AM.

16      Q      WITH THE SAME KIND ---

17      A      THE SAME KIND OF PENALTIES AND INTEREST.

18      Q      AND TURNING TO THE NEXT TRANSCRIPT FOR THE QUARTER

19  ENDING JUNE 30, 2009, DOES THAT ALSO REFLECT TAX AS SHOWN ON THE

20  RETURNS FILED IN DECEMBER 2009?

21      A      YES, MA'AM.

22      Q      AND THE SAME FOR INTEREST AND PENALTIES?

23      A      CORRECT.

24      Q      TURNING TO THE NEXT TRANSCRIPT IN EXHIBIT 3, IT'S FOR

25  THE TAX PERIOD ENDING SEPTEMBER 30, 2009, DOES THAT ALSO REFLECT

63

1   TAXES SHOWN ON THE RETURNS FILED IN DECEMBER OF 2009?

2        A     YES, MA'AM.

3        Q     WITH INTEREST AND PENALTIES?

4        A     YES, MA'AM.

5        Q     TURNING TO GOVERNMENT EXHIBIT 4, WHAT ARE THESE?

6        A     THE FIRST ONE IS MIRABILIS' FEDERAL UNEMPLOYMENT TAX

7   RETURN, FORM 940, ENDING DECEMBER 31, 2008.

8        Q     AND WERE FORMS 940 FILED FOR THIS DEBTOR?

9        A     I DON'T REMEMBER THAT THEY WERE.

10       Q     IT DOES SHOW ON THE TRANSCRIPT RETURN FILED JANUARY

11  19, 2010.

12       A     YES, THAT'S CORRECT.

13       Q     OKAY.  IS THERE A 940 LIABILITY?

14       A     NO, MA'AM.

15       Q     OKAY.  NOW, TURNING BACK TO THE 941'S THAT WERE IN

16  DEBTOR'S EXHIBIT 10.  WHEN YOU REVIEWED THOSE IN EARLY 2010, WERE

17  YOU --- WHEN YOU INITIALLY RECEIVED THOSE, WERE YOU AWARE THAT

18  THE DEBTOR WAS ATTEMPTING TO USE A 400,000-DOLLAR CREDIT TO PAY

19  THE 941 LIABILITIES?

20       A     WHEN I FIRST LOOKED AT THEM, I WASN'T SURE WHAT WAS

21  GOING ON.  THE 2007 I BELIEVE SECOND QUARTER RETURN WAS ALREADY

22  FILED AND I WAS LOOKING AT THE POST-PETITION  RETURNS MORE

23  HEAVILY AND THE CREDITS THAT THEY WERE SHOWING, WHEN I LOOKED

24  AT THEM, I JUST LOOKED AT THEM AND THOUGHT, I DON'T KNOW WHERE

25  THESE AMOUNTS ARE COMING FROM BECAUSE THEY WERE --- IF YOU

64

1    WANT TO EVEN LOOK AT THEM --- AMOUNTS LIKE 284,001.82 FROM 2009

2    SECOND QUARTER, AND SO NOW THEY'RE CLAIMING AN OVERPAYMENT

3    OF $252,077.09 AND I DIDN'T ---

4         Q    ACTUALLY, MS. SUMMERS, CAN YOU TELL US WHAT

5    PARTICULAR RETURN YOU WERE LOOKING AT?

6         A    YES, THE 2009 FORM 941 FOR THE SECOND QUARTER.

7         Q    OKAY.  SO THAT WOULD BE DEBTOR'S EXHIBIT 10, IT SAYS 941

8    FOR 2009.

9         A    APRIL, MAY AND JUNE.

10        Q    APRIL, MAY AND JUNE, THE LITTLE BOX NUMBER 2 IN THE

11   UPPER RIGHT HAND CORNER WAS CHECKED.

12        A    YES.

13        Q    OKAY.  SO THAT SHOWS A TAX DUE OF HOW MUCH?

14        A    WELL, IT SHOWS A TAX DUE OF $31,924.73.

15        Q    ON LINE 10?

16        A    YES.

17        Q    AND THEN ON LINE 11, IT SHOWED A $284,001.82 AS TOTAL

18   DEPOSITS OR OVERPAYMENTS AND I LOOKED AT --- THERE WAS NO

19   DEPOSITS AND THERE --- I COULDN'T FIND A $284,001.82 OVERPAYMENT,

20   SO WHEN I FIRST LOOKED AT THEM, THEY ALL HAD DIFFERENT AMOUNTS

21   OF CREDIT ON LINE 11 AND I --- IT KIND OF STOPPED ME COLD SO I COULD

22   FIGURE OUT WHAT IT WAS THEY WERE TRYING TO DO BECAUSE THE

23   NUMBERS MADE NO SENSE, INITIALLY.

24        Q    AND AT SOME POINT --- AT SOME POINT, YOU SORTED THIS

25   OUT?

1        A      YEAH.

2        Q      WHAT DID YOU DECIDE?

3        A      IT TOOK ME A HOT MINUTE OR SO, BUT I FINALLY FIGURED

4   OUT WHAT WAS GOING ON.  THEY HAD FILED THE FIRST QUARTER 2007

5   REFLECTING NO TAX DUE AND THEY WERE USING THAT 400,000-DOLLAR

6   CREDIT TO CARRY FORWARD TO EACH SUCCESSIVE RETURN.  I THINK

7   THEY EVEN TRIED TO REPAY THE SECOND QUARTER 2007, WHICH HAD

8   ALREADY BEEN PAID, AND SO THEN, THEY MOVED THAT CREDIT

9   FORWARD, FORWARD, FORWARD ON THESE RETURNS UNTIL THEY GO TO

10  WHERE THEY DIDN'T HAVE ANYMORE TAX LIABILITY TO PAY AND THEN

11  THEY WERE EXPECTING THAT CREDIT TO BE A REFUND.

12       Q      AND SO THAT WAS A PRE-PETITION CREDIT, BUT BEING

13  CARRIED FORWARD ON POST-PETITION RETURNS?

14       A      YES.

15       Q      OKAY.  AND DID MR. CUTHILL CONTACT YOU ABOUT THE

16  STATUS OF THESE 941s?

17       A      I THINK HE CALLED ME MORE SO ABOUT THE 400,000-DOLLAR

18  CREDIT THAN THE STATUS OF THE RETURNS.  I BELIEVE I SPOKE WITH HIM

19  ONCE AND I THINK I HAD TWO CALLS FROM HIM.  IT SEEMS LIKE TO ME IT

20  WAS LATE APRIL, THE FIRST CALL, WHERE WE ACTUALLY DID TALK

21  ABOUT THE CREDIT.  AND HE INFORMED ME THAT HE HAD GOTTEN THE

22  NOTICE AND THAT HE HAD TALKED TO A CUSTOMER SERVICE

23  REPRESENTATIVE WHO TOLD HIM TO FILE RETURNS AND HE WANTED TO

24  KNOW WHAT THE STATUS OF 400,000-DOLLAR CREDIT WAS AND I TOLD

25  HIM, I WOULD HAVE TO LOOK INTO THAT AND ALSO, TO TALK WITH

66

1  ATTORNEYS AND THE PEOPLE INVOLVED BEFORE I COULD GIVE HIM A

2  RESPONSE.

3     Q     WHEN HE TALKED TO YOU ABOUT THE NOTICE, IS YOUR

4  UNDERSTANDING THAT THAT IS THE NOTICE THAT'S AT DEBTOR'S

5  EXHIBIT 6?

6     A     YES, MA'AM.

7     Q     AND YOU ADVISED HIM THAT YOU WERE LOOKING INTO IT?

8     A     YES, MA'AM.

9     Q     AND ULTIMATELY, DID YOU RESPOND FURTHER TO MR.

10  CUTHILL?

11     A     HE CALLED ANOTHER TIME AND LEFT A MESSAGE AND I

12  ULTIMATELY RETURNED THE CALL AND LEFT A MESSAGE FOR HIM THAT I

13  WAS WAITING FOR SOME RESPONSE FROM ATTORNEYS AND UNTIL I GOT

14  IT, THAT, YOU KNOW, WE WOULDN'T BE ABLE TO TALK TO HIM, GIVE HIM

15  ANY INFORMATION ABOUT IT AND THAT EITHER I OR THE ATTORNEY

16  WOULD CALL HIM BACK AND LET HIM KNOW.

17     Q     AT THIS POINT IN THE APRIL, MAY 2010, WERE THERE

18  PENDING OBJECTIONS TO THE IRS CLAIMS?

19     A     I BELIEVE THERE WERE.

20     Q     IF YOU COULD TURN TO GOVERNMENT EXHIBIT 14, PLEASE.

21  CAN YOU IDENTIFY THESE RECORDS?

22     A     THESE ARE NOTICES GENERATED BY THE OGDEN SERVICE

23  CENTER TO MIRABILIS.

24     Q     AND WHAT ARE THE DATES IN GENERAL?

25     A     THE MAJORITY OF THEM APPEAR TO BE EITHER APRIL 12, 2010

67

1    OR APRIL 29, 2010.

2        Q        ARE THESE NOTICES --- YOU SAID THESE ARE NOTICES

3    GENERATED BY THE INTERNAL REVENUE SERVICE, OGDEN SERVICE

4    CENTER?

5        A        YES, MA'AM.

6        Q        ARE THESE PRODUCED IN THE ORDINARY COURSE OF THE

7    INTERNAL REVENUE SERVICE OPERATIONS?

8        A        YES, MA'AM.

9        Q        AND ARE YOU FAMILIAR WITH THESE NOTICES IN THE

10    COURSE OF YOUR DUTIES?

11        A        I DON'T OFTEN SEE THESE.  THESE ARE GENERATED OUT OF

12    THE SERVICE CENTER AND THEY'RE SENT DIRECT TO THE DEBTORS, BUT

13    WE DO IN THE TAX ACCOUNTS, THERE'S GENERALLY A RECORD OF THE

14    NOTICES THAT ARE SENT OUT AND WE CAN DETERMINE IN MOST

15    SITUATIONS, WHAT NOTICES HAVE BEEN SENT BY REVIEW OF OUR

16    RECORDS.

17        Q        AND YOU'RE FAMILIAR WITH THESE PARTICULAR NOTICES?

18        A        YES.

19            MS. IDE:  YOUR HONOR, THE RECORDS COMPILED AT

20    GOVERNMENT EXHIBIT 14 WERE PRODUCED BY THE DEBTOR, WE

21    MOVE FOR THE ADMISSION OF GOVERNMENT'S EXHIBIT 14.

22            THE COURT:  ANY OBJECTION, MR. SHUKER?

23            MR. SHUKER:  NO.

24            THE COURT:  THEY WILL BE ADMITTED.

25            MS. IDE:  THANK YOU, YOUR HONOR.

68

1   BY MS. IDE:

2       Q       MS. SUMMERS, TURNING TO GOVERNMENT EXHIBIT 14, THE

3   FIRST NOTICE DATED APRIL 19, 2010 REGARDS TAX PERIOD ENDING

4   DECEMBER 31, 2007, AND WHAT IS THE --- WHAT IS THIS LETTER DOING?

5   WHAT IS THE PURPOSE OF THIS NOTIFICATION?

6       A       THIS WAS AS A RESULT OF THE RETURN BEING FILED, ASKING

7   FOR A CREDIT TO BE APPLIED.  THE RETURNS GIVE AN OPTION TO ELECT A

8   CREDIT TO BE CARRIED FORWARD TO ANOTHER YEAR AND THE DEBTOR

9   ELECTED THIS OPTION, BUT THE SERVICE CENTER IS NOTIFYING THE

10  DEBTOR THAT THEY WERE UNABLE TO MOVE $371,394.25 TO THE NEXT

11  PERIOD BECAUSE ONE OF THESE FOLLOWING REASONS.  THEY GIVE FIVE

12  DIFFERENT REASONS.  THERE WAS AN ERROR ON YOUR RETURN.  YOU

13  HAD AN OUTSTANDING BALANCE ON ANOTHER ACCOUNT.  A PENALTY

14  AMOUNT WAS CHARGED TO YOUR ACCOUNT.  THE PAYMENTS CLAIMED

15  ON YOUR RETURN WERE MORE THAN THE TOTAL AMOUNT CREDITED TO

16  YOUR ACCOUNT OR A CONDITION ON YOUR ACCOUNT WILL NOT ALLOW

17  THE APPLICATION OF YOUR CREDIT AT THIS TIME.

18          THEN IT GOES ON TO SAY IF YOU BELIEVE THAT SOMETHING

19  IS WRONG, PLEASE CALL THE NUMBER OR IF CREDIT --- OR IF CONDITIONS

20  ONE, TWO OR THREE APPLY, THEN YOU SHOULD GET A SEPARATE NOTICE

21  EXPLAINING THE DECREASE IN YOUR OVERPAYMENT.

22      Q       SO THIS NOTICE WENT OUT FOR THE LAST QUARTER FOR 2007

23  AND IT LOOKS LIKE SIMILAR NOTICES WENT OUT FOR WHICH

24  SUBSEQUENT QUARTERS?

25      A       THE FIRST QUARTER 941 OF 2008.  THE SECOND QUARTER 2008,

69

1   FORM 941.

2       Q      IT LOOKS LIKE THE NEXT NOTICE REGARDING SEPTEMBER 30,

3   2008 IS A LITTLE BIT DIFFERENT.

4       A      THAT'S CORRECT.

5       Q      WHAT'S THIS NOTICE?

6       A      THIS NOTICE IS TELLING THE DEBTOR THAT THERE IS A

7   DISCREPTENCY BETWEEN THE AMOUNTS CREDITED ON THEIR ACCOUNT

8   AS FEDERAL TAX DEPOSITS AND THE AMOUNT THAT WAS REPORTED ON

9   THEIR TAX RETURN AND IT IS ALSO STATING THAT THE $331,547.29 THAT

10  THEY REQUESTED TO BE APPLIED TO THEIR NEXT QUARTER RETURN WAS

11  NOT AVAILABLE.

12      Q      AND IT SHOWS A BALANCE DUE?

13      A      YES, IT DOES.

14      Q      THIS WAS A POST-PETITION PERIOD?

15      A      YES, IT IS.

16      Q      THIS NOTICE ALSO LOOKS LIKE IT EXPLAINS THE ACCRUALS

17  OF PENALTY AND INTEREST, IS THAT CORRECT?

18      A      YES, MA'AM, IT DOES.  IT ALSO IDENTIFIES THAT THE DEBTOR

19  IS IN A BANKRUPTCY PROCEEDING AND IT TELLS HIM THAT WE CAN FILE

20  A PROOF OF CLAIM FOR THE TAXES COVERED BY THE BANKRUPTCY

21  PROCEEDING AND THAT THEY ARE NOT REQUIRED TO PAY FOR THOSE

22  AMOUNTS OWED.  HOWEVER, IT ADVISES THEM THAT THEY NEED TO PAY

23  ALL POST-PETITION AMOUNTS OWED.

24      Q      AND THIS IS ON THE  PAGE, STAMPED AT THE BOTTOM, MVI ---

25      A      ADM, CORRECT.

70

1    Q    223?

2    A    YES, IT IS.

3    Q    OKAY.

4    A    IT'S ACTUALLY PAGE 2 OF THE NOTICE.

5    Q    ALL RIGHT.

6    A    THEN IT IDENTIFIES THE PENALTIES AND HOW THE

7    PENALTIES ARE CALCULATED.  IT GOES ON TO LET YOU KNOW OR LET

8    THE PERSON RECEIVING THE NOTICE IF THEY HAVE A REASONABLE

9    CAUSE FOR ADJUSTMENT OR ABATEMENT OF THE PENALTY.  IT ALSO

10   SHOWS HOW INTEREST WAS CALCULATED.

11   Q    NOW, THE SECTION THAT TALKS ABOUT REMOVING PENALTY

12   FOR REASONABLE CAUSE, IT SAYS THAT THE DEBTOR --- THIS IS ON PAGE

13   4 OF NOTICE --- THE DEBTOR SHOULD SENT A SIGNED EXPLANATION.

14        HAS THE INTERNAL REVENUE SERVICE RECEIVED ANY SUCH

15   REQUEST FROM THIS DEBTOR?

16   A    I HAVE NOT.

17   Q    TURNING TO THE NEXT NOTICE, WHICH IS DATED APRIL 19,

18   2010 FOR THE TAX PERIOD DECEMBER 31, 2008, THIS IS SIMILAR TO THE

19   ONE FOR THE PRIOR QUARTER SHOWING A BALANCE DUE?

20   A    YES, IT IS.

21   Q    THAT'S THE FOURTH QUARTER OF 2008.  THE NEXT NOTICE IS

22   FOR WHAT PERIOD?

23   A    THE FIRST QUARTER OF 2009.

24   Q    THE IRS IS DECLINING TO APPLY THE REQUESTED AMOUNT?

25   A    YES, THEY'RE SHOWING AGAIN THAT THE AMOUNTS

71

1    CLAIMED AS TAX DEPOSITS ON THE RETURN DIFFERS FROM WHAT WAS

2    CREDITED TO THE ACCOUNT AND ACCORDINGLY, THERE IS A BALANCE

3    ON THE ACCOUNT AND THE $284 AND CHANGE THAT WAS REQUESTED TO

4    BE APPLIED TO THE NEXT TAX PERIOD IS NOT AVAILABLE.

5        Q       WHAT'S THE NEXT PERIOD FOR WHICH THERE IS A

6    NOTIFICATION?

7        A       THE 941 ENDING JUNE 30, 2009.

8        Q       THEN THERE'S ALSO ONE FOR THE 941 ENDING SEPTEMBER 30,

9    2009?

10       A       YES, THERE IS.

11       Q       AND IN ALL OF THESE, THE IRS IS DECLINING TO APPLY THE

12   REQUESTED OVERPAYMENTS?

13       A       YES.

14       Q       OKAY.   WHAT'S YOUR UNDERSTANDING ABOUT APPLYING

15   PRE-PETITION CREDITS TO POST-PETITION LIABILITIES BASED ON YOUR

16   YEARS OF SERVICE TO THE IRS?

17       A       IT'S BEEN PROHIBITED.  IT WAS PROHIBITED PRIOR TO

18   BAPACA AND IT IS STILL PROHIBITED AFTER BAPACA.  BAPACA GAVE US

19   SOME LEEWAY IN PRE-PETITION CREDIT, THE APPLICATION, BUT PRE TO

20   POST HAS ALWAYS BEEN RESTRICTED.

21       Q       IN ADDITION TO TELEPHONE CALLS FROM MR. CUTHILL, THE

22   IRS ALSO RECEIVED A LETTER FROM MR. CUTHILL REGARDING 1120

23   LIABILITIES.  IF YOU COULD TURN TO DEBTOR'S EXHIBIT 29.  THIS

24   REGARDS THE 941 AND 940 ACCOUNTS OF MIRABILIS; CORRECT?

25       A       29?

72

1     Q    DEBTOR'S 29, YES.  SORRY.

2     A    GIVE ME A SECOND BECAUSE THIS BOOK HAS A GAP IN IT

3  AND PAGES KEEP FALLING THROUGH IT.

4          THIS WAS REGARDING 941s.

5     Q    OKAY.

6     A    AND ALSO THE 940s.

7     Q    OKAY.  AND THIS WAS THE IRS REQUESTING MIRABILIS FILE

8  THOSE DELINQUENT RETURNS?

9     A    YES.

10     Q    OKAY.  AND THEN ALSO IN EXHIBIT, DEBTOR'S EXHIBIT 29, A

11  COUPLE PAGES IN IS A JUNE 26' 2009 RESPONSE FROM MR. CUTHILL

12  REGARDING THOSE 941s; CORRECT?

13     A    YES, MA'AM, THAT'S CORRECT.

14     Q    OKAY.  NOW, IT DOESN'T LOOK LIKE THERE'S A RESPONSE

15  DIRECTLY TO MR. CUTHILL FROM THE JUNE 26, 2009 LETTER.  DO YOU

16  RECALL RESPONDING TO MR. CUTHILL'S INQUIRES DIRECTLY?

17     A    NO, MA'AM, I DID NOT.

18     Q    OKAY.  WHEN THE 941s WERE EVENTUALLY FILED IN

19  DECEMBER OF 2009 AND YOU REVIEWED THEM, DID THE IRS EVENTUALLY

20  RESPOND TO MR. CUTHILL?

21     A    WELL, I GUESS THROUGH FILING --- POSTING THE RETURNS

22  AND SENDING THE ADMINISTRATIVE CLAIM, THEN WE ALSO HAD

23  DISCUSSIONS THAT WE REQUESTED THE RETURNS TO SHOW THAT HE WAS

24  BEING PAID AS AN EMPLOYEE VERSUS AN INDEPENDENT CONTRACTOR

25  AND ---

73

1      Q      I'M SORRY, THAT AGREEMENT WAS PART OF THE

2   CONFIRMATION?

3      A      I BELIEVE SO.  I WAS GOING TO SAY THAT WAS PART OF THE

4   CONFIRMATION.

5      Q      OKAY.  AND THE OTHER RESPONSE IS THE NOTIFICATIONS IS

6   EXHIBIT 14, GOVERNMENT EXHIBIT 14?

7      A      YES, THAT'S CORRECT.

8      Q      OKAY.  NOW, MS. SUMMERS, ONE OF THE THINGS THAT YOU

9   NEED TO DO WHEN YOU'RE PREPARING A PROOF OF CLAIM, BUT ALSO A

10  REQUEST FOR PAYMENT OF POST-PETITION TAXES IS CALCULATE

11  PENALTIES, AND YOU HAD TESTIFIED EARLIER THAT SOME PENALTIES

12  ARE ASSESSED AUTOMATICALLY BASED ON PERCENTAGES AND SOME

13  ACCRUE.  WHEN YOU PREPARED THE LATEST REQUEST FOR PAYMENT OF

14  POST-PETITION TAXES, YOU INCLUDED PENALTIES ON THAT REQUEST;

15  CORRECT?

16     A      I'LL LOOK AT IT AGAIN, BUT NORMALLY, IF THEY APPLY, I

17  DO.

18     Q      OKAY.  IF YOU COULD TURN TO GOVERNMENT EXHIBITS 8

19  AND 9, COULD YOU IDENTIFY THESE TWO DOCUMENTS FOR US, PLEASE?

20     A      EXHIBIT NUMBER 8 IS A COMMAND CODE AVAILABLE TO US

21  ON THE INTRAGRATED DATA RETRIEVAL SYSTEM THAT CALCULATES THE

22  BALANCE DUE ON ACCOUNTS TO A DATE CERTAIN AND THAT IS FOR ---

23  THIS FIRST ONE IS FOR THE 941 THIRD QUARTER OF '08.  THE

24  INFORMATION BEHIND THAT IS ANOTHER COMMAND CODE THAT IS

25  AVAILABLE THAT WILL CALCULATE A SINGLE LINE OF INTEREST.  BOTH

74

1    OF THOSE SHOULD BE WITH THIS FIRST QUARTER --- I MEAN, THIRD

2    QUARTER 2008.

3          THE NEXT ONE IS FOR THE FOURTH QUARTER 2008.  AND THE

4    ENTRIES BEHIND ARE SINGLE LINE ITEMS OF INTEREST RELATED TO

5    THAT.

6          Q        SO ARE THESE CALCULATIONS THAT YOU DID TO DETERMINE

7    THE PENALTIES DUE ON THE POST-PETITION 941s OF MIRABILIS?

8          A        TO DETERMINE THE TAX, THE PENALTY AND THE INTEREST

9    DUE TO --- THIS ONE WAS DUE JUNE 7TH FOR MIRABILIS' 941s.

10         Q        AND THIS IS YOUR WORK; CORRECT?

11         A        YES.

12         Q        OKAY.

13                   MS. IDE:  WE MOVE FOR THE ADMISSION OF GOVERNMENT

14    EXHIBIT 8.

15                   THE COURT:  ANY OBJECTION?

16                   MR. SHUKER:  NO, YOUR HONOR.

17                   THE COURT:  IT WILL BE ADMITTED.

18    BY MS. IDE:

19         Q        COULD YOU TURN TO GOVERNMENT EXHIBIT 9, PLEASE?  CAN

20    YOU IDENTIFY THIS FOR ME?

21         A        THIS IS A BREAKOUT OF THE ADMINISTRATIVE CLAIM THAT I

22    PREPARED AND IT BREAKS OUT EVERYTHING; THE TAX, THE FAILURE TO

23    FILE PENALTY, THE DATE IT WAS ASSESSED, THE FAILURE TO DEPOSIT

24    PENALTY AND THE DATE IT WAS ASSESSED.  THE FAILURE TO PAY

25    PENALTY, THE DATE IT WAS ASSESSED.  IT SHOWS ACCRUED FAILURE TO

75

1    PAY PENALTY. IT SHOWS THE TOTAL AMOUNT OF PENALTIES AND THE

2    TOTAL AMOUNT OF INTEREST FOR 941s FOR MIRABILIS FROM THE THIRD

3    QUARTER 2008 THROUGH THE FOURTH QUARTER 2009. AND IT ALSO

4    SHOWS THE FORM 940 FOR 2008.

5         Q      THE FORMS 941 HAVE THE 01 IN FRONT OF THEM AND THE 940

6    IS THE 10?

7         A      THE 940 FOR 2008 SHOWS NO TAX DUE.

8         Q      OKAY.

9         A      FOR SOME REASON IT HAD EIGHT CENTS IN ACCRUED

10   INTEREST. THAT PROBABLY WAS DUE TO A PAYMENT COMING IN, MAYBE

11   A DAY LATE OR SOMETHING.

12              AND THEN THE 940 FOR 2009, THE FOURTH QUARTER, EXCUSE

13   ME, 941 FOR 2009 FOURTH QUARTER, SHOWS NO TAX WAS DUE.

14        Q      I APOLOGIZE. YOU DID CREATE THIS DOCUMENT; CORRECT?

15        A      YES, I DID.

16              MS. IDE: I MOVE FOR THE ADMISSION OF GOVERNMENT

17   EXHIBIT 9.

18              THE COURT: ANY OBJECTION?

19              MR. SHUKER: NO, YOUR HONOR.

20              THE COURT: IT WILL BE ADMITTED.

21              MS. IDE: THANK YOU.

22   BY MS. IDE:

23        Q      AND MS. SUMMERS, TO DATE, NONE OF THIS INTEREST IN

24   PENALTIES OR THE TAX HAVE BEEN PAID; CORRECT?

25        A      THAT'S CORRECT.

1    Q    NOW, WHEN YOU FILE A REQUEST FOR PAYMENT OF POST-

2    PETITION TAXES IN CHAPTER 11'S, DO YOU HAVE TO FILE ONE?

3    A    NO, WE DO NOT.

4    Q    WHAT'S YOUR UNDERSTANDING OF WHY YOU DON'T HAVE

5    TO FILE ONE?

6    A    AGAIN, BAPACA SAYS WE DON'T NEED TO FILE AN

7    ADMINISTRATIVE CLAIM TO HAVE IT ALLOWED.

8    Q    BUT YOU NORMALLY FILE ONE?

9    A    YES, WE DO.  WE FIND THAT IT PUTS EVERYBODY ON NOTICE

10   AND IT MAKES THINGS EASIER FOR US.  EVERYBODY IS AWARE OF

11   WHAT'S OWED AND THERE ARE NO SURPRISES.

12   Q    AND I BELIEVE YOU TESTIFIED EARLIER, IT'S YOUR PRACTICE

13   THAT YOU'LL FILE AN ESTIMATED ONE IF NO TAX RETURNS ARE FILED

14   AND THEN IN THIS CASE, YOU AMENDED THAT WHEN TAX RETURNS WERE

15   FILED?

16   A    YES, MA'AM, THAT'S CORRECT.

17   Q    AND YOU UPDATE THOSE PERIODICALLY?

18   A    YES, MA'AM.

19   Q    YOU DECIDED TO FILE THE FIRST REQUEST FOR PAYMENT OF

20   INTERNAL REVENUE TAXES.  I JUST WANT TO MAKE SURE I HAVE THE

21   DATE.  THAT WAS FILED IN MAY 2009.

22   MS. IDE:  FOR THE RECORD, YOUR HONOR, IT'S DOCKET

23   NUMBER 279.

24   BY MS. IDE:

25   Q    WHY DID YOU WAIT UNTIL MAY OF 2009, A YEAR AFTER THE

1   PETITION?

2       A      WELL, THERE WERE A COUPLE OF REASONS REALLY.  ONE OF

3   THEM WAS SOME CONFUSION OVER WHETHER MR. CUTHILL WAS GOING

4   TO BE AN INDEPENDENT CONTRACTOR OR AN EMPLOYER.  AND THEN THE

5   OTHER REASON WAS INITIALLY THE DEBTOR IN POSSESSION REPORTS

6   THAT WERE FILED WERE SHOWING NO COMPENSATION PAID ONE WAY OR

7   THE OTHER, SO IT WASN'T UNTIL THE ISSUE OF WHETHER HE WAS AN

8   EMPLOYEE, IS THE PRESIDENT, OR AN INDEPENDENT CONTRACTOR WAS

9   RESOLVED AND/OR WHEN THERE WAS FIRST COMPENSATION SHOWING IN

10  THE MONTHLY OPERATING REPORTS.

11      Q      AND THE DEBTOR IN POSSESSION REPORTS OR THE MONTHLY

12  OPERATING REPORTS SHOW COMPENSATION GOING TO MR. CUTHILL IN

13  THAT FIRST QUARTER 2009?

14      A      I THINK THAT MUST HAVE BEEN WHEN. I DON'T RECALL IT

15  EXACTLY.

16      Q      OKAY.  IS IT YOUR UNDERSTANDING THAT AS PRESIDENT,

17  MR. CUTHILL IS AN EMPLOYEE?

18      A      YES, THERE'S AN INTERNAL REVENUE CODE SECTION.  I'M

19  NOT EVEN GOING TO TRY TO QUOTE IT, I THINK --- I THINK IT IS 3121D, BUT

20  THERE IS AN INTERNAL REVENUE CODE SECTION THAT STATES THAT THE

21  PRESIDENT, THE OFFICERS ARE EMPLOYEES.

22      Q      AND IS THAT --- YOU BASE THAT AND THE MONTHLY

23  OPERATING REPORTS OR USE THAT FACT IN THE MONTHLY OPERATING

24  REPORTS TO THEN FILE THAT FIRST ESTIMATED CLAIM?

25      A      CORRECT.

78

1      Q      OKAY. THEN YOU FILED AMENDED REQUEST FOR PAYMENT

2   OF POST-PETITION TAXES. I BELIEVE YOU TESTIFIED EARLIER, YOU FILED

3   ONE AFTER THE RETURNS WERE FILED AND THEN AN UPDATED ONE IN

4   SEPTEMBER; CORRECT?

5      A      YES.

6      Q      IF YOU COULD TURN TO GOVERNMENT EXHIBIT 13. COULD

7   YOU IDENTIFY THESE TWO PAGES FOR US, PLEASE?

8      A      THIS IS A RESPONSE FROM THE STATE OF FLORIDA

9   UNEMPLOYMENT TAX BUREAU CERTIFYING WAGES REPORTED TO THEM

10   FOR MIRABILIS VENTURES IN RESPONSE TO MY REQUEST FOR SAME.

11      Q      AND YOU RECEIVED THESE TWO PAGES FROM THE STATE OF

12   FLORIDA?

13      A      YES, I DID.

14      Q      AND YOU HAD REQUESTED THEM IN THE COURSE OF YOUR

15   DUTIES?

16      A      YES, MA'AM.

17            MS. IDE: I MOVE FOR THE ADMISSION OF GOVERNMENT 13.

18            MR. SHUKER: OBJECTION, YOUR HONOR, IT'S HEARSAY.

19            THE COURT: ANY RESPONSE?

20            MS. IDE: YOUR HONOR, THESE ARE BUSINESS RECORDS OF

21   THE INTERNAL REVENUE SERVICE. THEY WERE PROVIDED FROM

22   THE STATE TO THE IRS IN RESPONSE TO AN INQUIRY REGARDING

23   PREPARATION OF OUR PROOF OF CLAIM AS MS. SUMMERS

24   TESTIFIED AND IT'S PART OF THE IRS' BUSINESS RECORDS.

25            THE COURT: DID YOU WANT TO ADDRESS THE HEARSAY

1      EXCEPTION OBJECTION?

2           MS. IDE:  IT'S INCORPORATED AS PART OF THE BUSINESS

3      RECORDS OF THE INTERNAL REVENUE SERVICE USED IN

4      PREPARATION OF THE PROOF OF CLAIM.

5           THE COURT:  IT'S AN INTERESTING ARGUMENT, BUT IT DOES

6      NOT MEET THE HEARSAY EXCEPTION.  IT WILL BE SUSTAINED.

7      BY MS. IDE:

8        Q     MS. SUMMERS, IN PREPARING THE AMENDED REQUEST FOR

9      PAYMENT OF POST-PETITION TAXES FOR MIRABILIS, DID YOU ATTEMPT

10    TO VERIFY WHETHER --- YOU BASED THOSE ON THE TAX RETURNS FILED

11    IN DECEMBER OF 2009; CORRECT?

12     A     YES.

13     Q     DID YOU ATTEMPT TO VERIFY WHETHER THE DEBTOR WAS

14    REPORTING WAGES BEING PAID TO MR. CUTHILL AS ITS PRESIDENT?

15     A     YES, I DID.

16     Q     WHO DID YOU CONSULT WITH?

17     A     I REQUESTED THE STATE CERTIFICATION FROM THE FLORIDA

18    DEPARTMENT OF UNEMPLOYMENT COMPENSATION TO SEE IF WAGES

19    CONSISTENT WITH BEING EMPLOYEES WERE BEING REPORTED TO THE

20    STATE OF FLORIDA.  THIS DOCUMENT NUMBER ---

21          MR. SHUKER:  OBJECTION, YOUR HONOR.

22          THE COURT:  WE JUST WENT THROUGH THIS, THE OBJECTION

23    WAS SUSTAINED.

24          MS. IDE:  THAT'S CORRECT.

25          THE COURT:  EXHIBIT 13 WILL NOT BE ADMITTED.

80

1          MS. IDE:  THANK YOU, YOUR HONOR.

2    BY MS. IDE:

3          Q       DID YOU RECEIVE A RESPONSE FROM THE STATE?

4          A       YES, I DID.

5          Q       AND YOU AMENDED THE REQUEST FOR PAYMENT OF POST-

6    PETITION TAXES?

7          A       YES, MA'AM.

8          Q       OKAY.  MS. SUMMERS, YOU HAD TESTIFIED THAT THERE WAS

9    SOME UNCERTAINTY IN EARLY 2009 AS TO THE DEBTOR'S TREATMENT OF

10   MR. CUTHILL, WHETHER HE WOULD BE TREATED AS AN INDEPENDENT

11   CONTRACTOR OR AN EMPLOYEE, HOW WAS THAT RESOLVED?

12         A       THERE WAS AN AGREEMENT REACHED THAT HE WOULD BE

13   TREATED AS AN EMPLOYEE AND THE ASSOCIATED 941 AND 940'S WOULD

14   BE FILED.

15         Q       AND WAS THAT AGREEMENT INCORPORATED INTO THE

16   MODIFIED PLAN AND THE ORDER CONFIRMING THE PLAN?

17         A       I THINK IT WAS.

18         Q       AND WAS IT YOUR UNDERSTANDING THAT THE POST-

19   PETITION TAX LIABILITIES WOULD BE PAID IN ACCORDANCE WITH THE

20   MODIFIED PLAN AND ORDER OF CONFIRMATION?

21         A       YES, MA'AM.

22         Q       AT ANY TIME, DID THE IRS ABATE POST-PETITION INTEREST?

23         A       NO, MA'AM.

24         Q       AT ANY TIME, DID THE IRS RECEIVE A REQUEST TO ABATE

25   POST-PETITION PENALTIES?

81

1    A    I HAVEN'T SEEN ONE.

2    Q    HAS THE IRS ABATED ANY POST-PETITION PENALTIES?

3    A    NOT TO MY KNOWLEDGE.

4    Q    OKAY. DID THE IRS EVERY AGREE TO NOT ASSERT A CLAIM

5    FOR POST-PETITION INTEREST?

6    A    NOT TO MY KNOWLEDGE.

7    Q    DID THE IRS EVERY AGREE TO WAIVE ANY POST-PETITION

8    PENALTIES?

9    A    NOT TO MY KNOWLEDGE.

10    Q    IS IT YOUR UNDERSTANDING THAT THE ORDER OF

11    CONFIRMATION PROVIDES THAT THE ADMINISTRATIVE CLAIM WILL BE

12    PAID IN FULL?

13    A    YES, MA'AM.

14    Q    LET ME JUST REVIEW A COUPLE OF THINGS. YOU TESTIFIED

15    WHEN YOU FIRST ---

16    THE COURT: LET ME INTERRUPT YOU HERE. HOW MUCH

17    LONGER DO YOU HAVE?

18    MS. IDE: LET THAN 10 MINUTES.

19    THE COURT: OKAY. WE'LL NEED TO TAKE A BREAK AT THIS

20    JUNCTURE, I HAVE TO TAKE A SHORT MEETING IN CHAMBERS.

21    HOW MUCH TESTIMONY WILL YOU HAVE, MR. SHUKER?

22    MR. SHUKER: THE CROSS IS PROBABLY 30 MINUTES.

23    THE COURT: PERFECT. WE'LL RECONVENE AT QUARTER

24    TILL. YOU'LL HAVE UNTIL 4:00 AND YOU'LL HAVE UNTIL 4:30 AND

25    THEN WE'LL DISCUSS HOW WE DO POST-TRIAL BRIEFINGS.

82

1          MR. SHUKER:  THANK YOU.

2          MS. IDE:  THANK YOU, YOUR HONOR.

3          THE COURT:  THE COURT IS IN RECESS.

4          THE CLERK:  ALL RISE.

5          (WHEREUPON, A SHORT RECESS WAS HAD.)

6          THE CLERK:  ALL RISE.  THE COURT IS NOW BACK IN SESSION.

7      THE HONORABLE KAREN S. JENNEMANN PRESIDING.  YOU MAY BE

8      SEATED.

9          THE COURT:  GO AHEAD.

10          MS. IDE:  THANK YOU, YOUR HONOR.

11              CONTINUED DIRECT EXAMINATION

12    BY MS. IDE:

13      Q     MS. SUMMERS, WHEN YOU RECEIVE A NEW BANKRUPTCY

14    CASE, JUST LIKE WITH THIS CASE, DO YOU TYPICALLY REVIEW THE

15    SCHEDULES THAT ARE FILED?

16      A     YES, I DO.

17      Q     AND DID YOU DO THAT IN THIS CASE?

18      A     YES, I DID.

19      Q     DO YOU RECALL SEEING ANY REFUND CLAIMS LISTED IN THE

20    SCHEDULES OF MIRABILIS?

21      A     I'M SORRY, BUT I DON'T.

22      Q     OKAY.  YOU TYPICALLY RECEIVE THE MONTHLY OPERATING

23    REPORTS OF CHAPTER 11 DEBTORS?

24      A     WE DON'T RECEIVE THEM, BUT THEY'RE AVAILABLE ONLINE,

25    SO WE DO HAVE ACCESS TO THEM.

83

1  Q  DID YOU LOOK AT THEM IN THIS CASE?

2  A  I LOOK AT THEM IN ALL OF MY CHAPTER 11'S.

3  Q  OKAY.  IF THOSE MONTHLY REPORTS SHOW EXPECTED

4 REFUNDS, DO YOU ASK COUNSEL TO OBJECT TO THAT OR TAKE SOME

5 STEPS TO INVESTIGATE THAT?

6  A  I DON'T REMEMBER ANY OF THAT SHOWN ANTICIPATED

7 REFUNDS.

8  Q  IF THERE WERE, WOULD YOU DO SOMETHING?

9  A  I WOULD PROBABLY ASK SOMEBODY ABOUT IT, BUT I DON'T

10 REMEMBER ANY THAT HAVE.

11  Q  IN THIS CASE IN APRIL 20 --- IN APRIL 2010, YOU REQUESTED

12 THAT A REVENUE OFFICER BEGIN A  TRUST FUND RECOVERY PENALTY

13 INVESTIGATION; CORRECT?

14  A  YES.

15  Q  WHY DID YOU DO THAT?

16  A  WE HAD JUST COMPLETED AN ANNUAL TRUST FUND

17 RECOVERY PENALTY ASED REPORT.

18  Q  WHAT'S AN ASED REPORT?

19  A  I'M SORRY, ASSESSMENT STATUTE EXPIRATION DATE.

20  Q  OKAY.

21  A  WHERE WE GO IN AND WE LOOK AT ALL OF THE CHAPTER

22 11'S TO VERIFY THAT THE POTENTIAL ASSESSMENT STATUTE FOR TRUST

23 FUND RECOVERY PENALTIES IS NOT NEAR AND THAT AN INVESTIGATION

24 IS EITHER ONGOING OR HAS BEEN COMPLETED TO DETERMINE WHETHER

25 THERE ARE ANY RESPONSIBLE PERSONS THAT THE TRUST FUND

1    RECOVERY SHOULD BE ASSERTED AGAINST.

2            I THINK REVENUE OFFICER DIANE MARTIN HAD BEEN

3    ASSIGNED TO THE CASE INITIALLY AND NORMALLY WHEN A REVENUE

4    OFFICER IS ASSIGNED TO THE CASE, THEY WOULD COMPLETE THAT AS

5    PART OF THEIR ASSIGNMENT, BUT SHE RECEIVED A PROMOTION AND HAD

6    LEFT THE CASE AND WHEN WE COMPLETE THE REPORT, THAT WAS ONE

7    OF THE CASES THAT WAS REVIEWED AND THE RETURNS HAVING JUST

8    BEEN FILED AND NONE OF THE TAXES WERE PAID, THERE WAS TRUST

9    FUND UNPAID, SO ---

10        Q    I'M SORRY TO INTERRUPT, BUT TRUST FUND TAXES ARE

11   WHAT?

12        A    THE TOTAL TAX ON A 941 IS COMPOSED OF TRUST FUND AND

13   NON-TRUST FUND, AND TRUST FUND TAXES ARE THOSE THAT ARE

14   WITHHELD FROM THE EMPLOYEE'S PAYROLL TO BE TURNED OVER TO

15   THE GOVERNMENT AND NONE OF THE TAX HAD BEEN PAID, SO IT WAS

16   EVIDENT THAT THERE NEEDED TO BE AN INVESTIGATION TO PROTECT

17   THE TRUST FUND RECOVERY PENALTY ASSESSMENT STATUTE AND TO DO

18   --- PART OF MY JOB IS TO DO THAT REVIEW AND MAKE SURE THAT THERE

19   IS SOMEONE DOING THAT INVESTIGATION OR MAKING THAT

20   ASSESSMENT.

21        Q    AND THE TRUST FUND RECOVERY PENALTY INVESTIGATION

22   WAS INITIATED; CORRECT?

23        A    YES, IT WAS.

24        Q    AND WHAT'S THE STATUS OF THAT INVESTIGATION?

25        A    IT HAS BEEN SUSPENDED AT THIS TIME.

85

1      Q      OKAY.  YOU WERE HERE AT THE FIRST PART OF THE TRIAL

2   AND HEARD SOME --- AND HEARD TESTIMONY THAT CHARACTERIZED THE

3   ACTIONS REGARDING THE 400,000-DOLLARS AT ISSUE IN THIS

4   PROCEEDING AS PAYING --- AS THE IRS PAYING ITSELF.

5           POST-PETITION, HAS THE IRS LEVIED ANY FUNDS OWED TO

6   THIS DEBTOR TO PAY ITSELF ---

7      A      NO, MA'AM.

8      Q      --- ANY TAX LIABILITY?

9           HAS THE IRS POST-PETITION SEIZED ANY ASSETS OWNED BY

10  THE DEBTOR?

11     A      NO, MA'AM.

12     Q      OKAY.  DID THE IRS IN ANY WAY PAY ITSELF ANY MONEY?

13     A      NO, MA'AM.

14     Q      THE 400,000-DOLLAR PAYMENT, WHETHER IT'S APPLIED TO

15  THE FORM 1120 ACCOUNT OR THE PRE-PETITION FORM 941 ACCOUNT,

16  DOES THAT MAKE A DIFFERENCE?

17     A      WELL, IT DOES IN THE FACT THAT IT PAID OFF THE FORM 1120,

18  BUT AS FAR AS TO THE AMOUNT OF THE CREDIT AVAILABLE, NO,

19  BECAUSE IF WE HAVE IT ON THE FORM 941, IT'S THERE AS A 400,000-

20  DOLLAR CREDIT, BUT THE BALANCE DUE THAT WAS ON THE 1120 CAUSES

21  THE NEGATIVE OPERATING LOSS THAT EXAM ALLOWED TO BE REDUCED

22  BY THAT 300,000-DOLLAR DEBIT THAT WAS ON THE ACCOUNT.

23     Q      SO THE OVERPAYMENT ON THE 1120 WILL BE LOWER IF

24  THERE'S A CREDIT ON THE 941?

25     A      IF YOU MOVED THE 400,000 BACK TO THE 941, THE NEGATIVE

86

1   OPERATING LOSS ADJUSTMENT THAT EXAM MADE TO THE FORM 1120 FOR

2   2005 WILL BE REDUCED BECAUSE IT WOULD PAY OFF THE BALANCE THAT

3   WOULD BE OWED IF THAT CREDIT HAD BEEN MOVED.

4                MS. IDE:  I HAVE NOTHING FURTHER AT THIS TIME.

5                THE COURT:  THANK YOU.  MR. SHUKER.

6                MR. SHUKER:  THANK YOU, YOUR HONOR.

7                THE COURT:  AND JUST FOR THE RECORD, LET ME CORRECT,

8   WE HAVE BEEN HERE TWO AND HALF HOURS OR SO ON MS.

9   SUMMERS' TESTIMONY OR OTHER MATTERS, PROBABLY MORE LIKE

10  TWO HOURS, I DIDN'T MEAN TO LIMIT YOU TO EXACTLY 30

11  MINUTES, THAT WAS NOT ---

12               MR. SHUKER:  I UNDERSTAND.  I APPRECIATE IT.

13               THE COURT:  WE ARE NOT GOING TO GO LATE, HOWEVER.

14               MR. SHUKER:  I APPRECIATE THAT AS WELL.

15               THE COURT:  SO GO AHEAD AND PROCEED.

16               MR. SHUKER: MAY I INQUIRE?

17               THE COURT:  CERTAINLY.

18               MR. SHUKER:  THANK YOU.

19                              CROSS EXAMINATION

20  BY MR. SHUKER:

21       Q     GOOD AFTERNOON, MS. SUMMERS.

22       A     HELLO.

23       Q     I WANT TO SEE IF I CAN PUT BASED ON THE EXHIBITS, AND

24  I'M ONLY GOING TO BE WORKING FROM OUR BOOK, THE DEBTOR'S BOOK.

25  PUT SOME CHRONOLOGY TO THIS PROCESS AND SEE IF YOU AGREE WITH

87

1    ME BECAUSE I WANT TO GET THIS STRAIGHT.

2            IN SEPTEMBER 25, '09, AND THIS IS EXHIBIT 29, YOU CAN LOOK

3    AT IT IF YOU DON'T REMEMBER, BUT YOU PROBABLY REMEMBER.

4    SEPTEMBER 25TH, THE IRS WRITES TO MR. CUTHILL AND SAYS, HEY, YOU

5    OWE PAYROLL TAXES, YOU'RE NOT PAYING.  YOU'RE AN OFFICER, PAY

6    THEM.  CORRECT?

7        A    I THINK THAT WAS JUNE OF '09.

8        Q    JUNE 25, '09; CORRECT?

9        A    YES.

10       Q    OKAY.  AND ONE DAY LATER, MR. CUTHILL RESPONDS AND

11   SAYS, NO, I'M NOT.  I'M NOT RESPONSIBLE FOR THEM BECAUSE I'M NOT

12   AN EMPLOYEE; CORRECT?

13       A    YES, HE DID SEND A LETTER.

14       Q    OKAY.  ONE DAY LATER; RIGHT?

15       A    THE LATER IS DATED JUNE 26TH.  THAT'S CORRECT.

16       Q    AND THEN YOU NEVER RESPONDED TO THAT LETTER.  YOU

17   DIDN'T CALL HIM; CORRECT?

18       A    THAT WAS SENT TO MS. MARTIN.

19       Q    MS. MARTIN DIDN'T CALL HIM EITHER?

20       A    NOT TO MY KNOWLEDGE.

21       Q    RIGHT.  AND YOU DIDN'T CALL HIM?

22       A    NO, SIR.

23       Q    OKAY.  SO WE SIT SILENT AND THEN WE GET TO OCTOBER,

24   THE CONFIRMATION HEARING, SO JULY, AUGUST, SEPTEMBER, OCTOBER,

25   FOUR MONTHS, AND THE DEBTOR AND THE IRS CUT A DEAL REGARDING

1    THIS DISPUTE; RIGHT?

2         A    I THINK THAT WAS AT THE CONFIRMATION.

3         Q    RIGHT.  SO THERE WAS CLEARLY A DISPUTE.  THE DEBTOR

4    CUT A DEAL AND THAT DISPUTE WAS INCLUDED IN EXHIBIT 1, WHICH

5    YOU SAID YOU LOOKED AT, THE MODIFIED PLAN.  REMEMBER, YOU SAID

6    YOU LOOKED AT THAT AND THAT THAT WAS WHAT WAS AGREED TO

7    WHERE MR. CUTHILL SAID THAT HE WOULD HAVE 60 DAYS AND HE

8    WOULD FILE THE RETURNS AND PAY THE TAX; RIGHT?

9         A    I BELIEVE SO.

10        Q    SO YOU WENT SILENT ON US FOR FOUR MONTHS.  WE THEN

11   SETTLED RIGHT AT CONFIRMATION AND SO THEN THE NEXT THING THAT

12   HAPPENS AFTER WE SETTLE THIS DISPUTE, MR. CUTHILL HAS 60 DAYS TO

13   PAY, IS THAT OUT OF THE BLUE ON NOVEMBER 14TH, THE IRS TELLS US,

14   HEY, WE OWE YOU 400,000-DOLLARS, THAT'S EXHIBIT 6, NOVEMBER 16TH,

15   YOU REACH OUT TO US AND SAY WE OWE YOU 400,000; RIGHT?  YOU HAVE

16   A CREDIT.

17        A    ACTUALLY, IT SAID WE HAVE NOT RECEIVED YOUR RETURN

18   AND WE HAVE CREDITS OR PAYMENTS, BUT IT DOESN'T SAY WE OWE

19   YOU. IT SAYS, IF YOU ARE LIABLE FOR FILING THE RETURN, PLEASE DO

20   SO.  WE WILL APPLY THE CREDIT TO THE TAX THAT YOU OWE AND

21   REFUND ANY REMAINING OVERPAYMENT IF YOU OWE NO OTHER TAXES

22   OR OBLIGATIONS.

23        Q    OKAY.  AND IN LAYMAN'S TERM, IT SAYS:  OUR RECORDS

24   SHOW WE'VE APPLIED CREDITS OR PAYMENTS TOTALING 400,000.  IS THAT

25   WHAT IT SAYS?

89

1          MS. IDE:  OBJECTION, ASKED AND ANSWERED.

2          THE COURT:  OVERRULED.

3          THE WITNESS:  YES, IT DOES.

4    BY MR. SHUKER:

5          Q     OKAY.  AND YOU KNOW THAT MS. YIP SAID THAT ACCORDING

6    TO THE IRS AS OF THAT DATE, THERE WAS A CREDIT AND THE 941

7    ACCOUNT FOR MIRABILIS OF 400,000; RIGHT?

8          A     CORRECT.

9          Q     NOBODY MOVED ANYTHING.  NOBODY PLAYING A SHELL

10   GAME.

11         MS. IDE:  OBJECTION, YOUR HONOR, TO THE

12   CHARACTERIZATION OF ANYTHING AS A SHELL GAME.

13         THE COURT:  AND YOU NEED TO CALM YOUR VOICE DOWN,

14   MS. IDE.

15         MR. SHUKER:  I'M SORRY.

16         MS. IDE:  YOUR HONOR, MR. SHUKER IS GETTING AWFULLY

17   CLOSE IN HIS TONE OF VOICE TO BAGGERING THIS WITNESS AND I

18   WOULD LIKE TO TONE BOTH OF US DOWN.

19         THE COURT:  THE OBJECTION IS OVERRULED.  CONTINUE MR.

20   SHUKER.

21         MR. SHUKER:  THANK YOU.

22   BY MR. SHUKER:

23         Q     NOW, SO WE CUT THE DEAL AND MR. CUTHILL HAD 60 DAYS

24   TO FILE THE RETURNS AND HE DID THAT, HE FILED THE RETURNS AND

25   USED THE 400,000 CREDIT AND YOU SEE THERE ON EXHIBIT 10, HE TOLD

1    MS. IDE THAT HE WAS DOING THAT.  HE FILED THEM RIGHT THERE AT THE

2    END OF NOVEMBER, BEGINNING OF DECEMBER AND YOU SAID OKAY,

3    THANKS FOR THE 400,000.  HERE ARE THE RETURNS PURSUANT TO THE

4    DEAL AND PLEASE APPLY IT.  SO HE FILED THE RETURNS WITHIN THE 60

5    DAYS; CORRECT?

6        A    HE DOES ENCLOSE THE RETURNS THAT HE INTENDS TO FILE.

7        Q    AND THEN HE DID, IN FACT, FILE THEM WITHIN THE 60 DAYS

8    AS PROMISED; CORRECT?

9        A    HE FILED THEM I THINK IN EARLY DECEMBER.  I DON'T

10   REMEMBER IF THAT'S THE EXACT 60 DAYS, BUT THEY WERE FILED IN

11   EARLY DECEMBER.

12       Q    RIGHT.  AND HE USED THE 400,000 THAT THE IRS TOLD HIM HE

13   HAD, CORRECT, THAT'S WHAT REFLECTED ON THE 941'S, THAT'S WHERE

14   THE CREDIT COMES FROM IN THE THIRD QUARTER.

15       A    HE CLAIMED THE CREDIT IN THE ---

16       Q    SO THIS IS IN DECEMBER OF '09 AND AGAIN, WE GO INTO A

17   GREAT PERIOD OF SILENCE AND THERE IS NO RESPONSE FROM THE IRS

18   FOR ALMOST FIVE MONTHS WHEN THE IRS IN APRIL, APRIL 23RD OF '10

19   SAID, YOU APPLIED FOR THE CREDIT OF THE 371,000, BUT WE DENIED IT.

20   DO YOU REMEMBER YOU READ ALL OF THOSE NICE NOTICES.

21       A    CORRECT.

22       Q    SO AFTER THE FIVE MONTHS OF SILENCE, YOU THEN FINALLY

23   TELL US, BUT IN THE MEANTIME, IN THE MEANTIME, WITHOUT COURT

24   AUTHORITY, WITHOUT LETTING ANYBODY KNOW, YOU ASKED THAT THE

25   400,000 BE MOVED BACK TO THE 1120 IN MARCH OF '10; RIGHT?

91

1     A     I CONSULTED WITH MY ATTORNEYS AND BASED ON ADVICE

2  THAT I RECEIVED, I DID MOVE THE MONEY.

3     Q     OKAY.  DID YOU GET COURT PERMISSION, DO YOU KNOW?

4     A     I THINK THAT WAS IN THE CONFIRMATION ORDER.

5     Q     DID YOU GET AN ORDER AUTHORIZING YOU TO MOVE IT?

6     A     NO.

7     Q     AND DO YOU KNOW WHETHER MS. IDE AT THE HEARING ON

8  THIS CLAIM OBJECTION TO THE 1120 CAME IN AND SAID OH, WE ALREADY

9  MOVED THE MONEY, SO THAT'S WHY THERE'S NO CLAIM?

10     A     I DON'T KNOW.

11     Q     OKAY.  BUT PRIOR TO A HEARING ON A CLAIM OBJECTION TO

12  THE 1120 TAX, YOU REQUESTED THAT THIS 400 BE MOVED AND CREDITED

13  AGAINST THIS DISPUTED TAX THAT WAS SUBJECT TO A HEARING BEFORE

14  JUDGE JENNEMANN?

15          MS. IDE:  OBJECTION, YOUR HONOR, ARGUMENTATIVE.

16          THE COURT:  OVERRULED.

17          THE WITNESS:  I'M SORRY, CAN YOU REPEAT IT.

18  BY MR. SHUKER:

19     Q     YOU KNOW THERE WAS AN OBJECTION TO THE 1120 2005 TAX;

20  RIGHT?

21     A     YES.

22     Q     AND YOU KNEW THAT WAS PENDING BEFORE JUDGE

23  JENNAMANN?

24     A     CORRECT.

25     Q     AND YOU KNOW IT WENT FOR HEARING IN APRIL 2010?

92

1       A     I DON'T REMEMBER THE EXACT DATE, BUT I KNOW WE HAD A

2    HEARING.

3       Q     OKAY. AND PRIOR TO THAT TIME, EVEN THOUGH YOU KNEW

4    THAT THERE WAS A DISPUTED, CONTESTED CLAIM OBJECTION HEARING

5    BEFORE THIS COURT, YOU ASKED THAT THE MONEY BE MOVED AND PAID

6    TO THIS DISPUTED CLAIM; CORRECT?

7       A     WE HAD A RIGHT OF SETOFF. IT WAS IN THE CONFIRMATION

8    ORDER. I SECURED ADVICE FROM OUR ATTORNEY AND I MOVED IT.

9       Q     OKAY. AND WE'LL GET THERE. AND SO, WE START IN JUNE

10   IN 2009, AND ONE DAY MR. CUTHILL EXPLAINS HIS POSITION, IRS GOES

11   SILENT FOR FIVE MONTHS, MR. CUTHILL COMPLIES WITH THE DEAL. IRS

12   GOES SILENT FOR FIVE MONTHS. THEN YOU MOVE THE MONEY AND

13   START A PERSONAL INVESTIGATION ON MR. CUTHILL. IS THAT ABOUT

14   ACCURATE?

15      A     MR. CUTHILL AND --- WELL, I'LL SAY THE COURT AND THE

16   RECORD SHOWS THAT WE DID FILE ADMINISTRATIVE CLAIMS, BUT UNTIL

17   THE 941 FOR THE FIRST QUARTER OF 2007 WAS FILED, WE COULDN'T

18   DETERMINE THAT THERE WAS ANY CREDIT THAT WAS AVAILABLE TO BE

19   MOVED FORWARD, BACKWARD OR ANY OTHER DIRECTION. SO THERE

20   WAS A CLAIM. ON A NUMBER OF OCCASIONS, AN ADMINISTRATIVE

21   CLAIM FILED SHOWING THE TAXES AND UNTIL THAT 941 WAS FILED IN

22   DECEMBER, WE COULDN'T DO ANYTHING TO SUBSTANTIATE THE CREDITS

23   ON THE RETURNS AS OVERPAYMENTS OR OTHERWISE. SO BEING SILENT

24   FOR FIVE MONTHS HAD A LOT TO DO WITH THE RETURN NOT BEING FILED

25   FOR US TO SUBSTANTIATE ANY TYPE OF A CREDIT.

1    Q    THE RETURN WASN'T FILED BECAUSE THERE WAS A DISPUTE,

2    REMEMBER, MR. CUTHILL DISPUTED ON JUNE 26, 2009 THAT HE HAD TO

3    FILE ANY REPORTS, DIDN'T HE?

4    A    THIS WAS A PRE-PETITION RETURN AND IT DIDN'T HAVE

5    ANYTHING TO DO WITH MR. CUTHILL'S EMPLOYMENT.  IT WAS A PRE-

6    PETITION RETURN OF THE DEBTOR WHERE THE CREDIT WAS SITTING.

7    Q    BUT YOU WERE SAYING YOU DIDN'T KNOW WHAT TO DO

8    BECAUSE YOU DIDN'T HAVE THE 941'S FOR THE ADMINISTRATIVE CLAIM;

9    RIGHT?

10    A    FOR THE ADMINISTRATIVE CLAIM, THE 941'S NEEDED TO BE

11    FILED, BUT THE CREDIT ON THE FIRST QUARTER OF 2007 THAT THE

12    ADMINISTRATIVE CLAIMS WAS CLAIMING AS A CARRY FORWARD, THAT

13    RETURN HAD NOT BEEN FILED AND IT WAS A PRE-PETITION RETURN AND

14    UNTIL IT WAS FILED IN DECEMBER, WE WOULD NOT VERIFY THAT THERE

15    WAS ANY CREDIT TO MOVE FORWARD OR BACKWARD.

16    Q    I SEE.  LET'S GO TO THE PLAN.  YOU JUST SAID YOU THINK

17    THE PLAN --- WELL, LET'S --- EXHIBIT 1 IS THE MODIFIED PLAN, YOU SAID

18    YOU REVIEWED THAT.  IN FACT, I THINK YOU SAID THAT ONE OF YOUR

19    JOB DUTIES IS YOU REVIEW PLANS TO MAKE SURE THEY ADEQUATELY

20    PROVIDE FOR YOUR CLAIM.  IS THAT WHAT YOU SAID YOU DO?

21    A    YES, SIR, TO THE EXTENT THAT I'M ABLE TO DO IT, I'M NOT

22    AN ATTORNEY, BUT I DO A FAIRLY DECENT JOB OF IT.

23    Q    EXHIBIT 1 IS THE MODIFIED PLAN THAT THE IRS SUPPORTED

24    AND DIDN'T OBJECT TO.  IS THAT YOUR UNDERSTANDING, THE IRS DIDN'T

25    OBJECT TO THE PLAN?

1          A      I DON'T THINK WE DID.

2          Q      OKAY.  AND I'M INTERESTED, IF YOU'LL TURN TO PAGE 3,

3   TELL ME ON PAGE 3 WHERE YOU SEE A SECURED CLAIM OF THE IRS THAT

4   WOULD ALLOW A SETOFF?

5                 THE COURT:  AND I'M SORRY, WHAT PAGE?

6                 MR. SHUKER:  PAGE 3 OF EXHIBIT 1, YOUR HONOR.

7                 THE WITNESS:  THERE IS NONE ON PAGE 3.

8   BY MR. SHUKER:

9          Q      OKAY.  THEN LET'S KEEP GOING, AND TAKE A LOOK AT ALSO

10  PAGE 3, BELOW THAT, ALLOWED PRIORITY TAX CLAIMS BECAUSE YOU

11  HAD FILED AN ALLOWED PRIORITY TAX CLAIM, SO THAT'S PRESUMABLY

12  THE TREATMENT.  READ THAT FOR ME TO YOURSELF.  TELL ME WHERE

13  THE WORD SETOFF APPEARS IN THERE.

14         A      IN FULL SATISFACTION OF ITS ALLOWED CLAIMS, HOLDERS --

15  -

16         Q      I SAID YOU COULD READ IT SILENTLY, SEE IF YOU SEE  THE

17  WORD SETOFF IN THERE.

18         A      NOT ON PAGE 3.  DO YOU WANT ME TO CONTINUE READING?

19         Q      YOU MAY.

20         A      NO, SIR, I DO NOT.

21         Q      AND, IF FACT, WHAT SAYS IS IF WE HAVE ENOUGH CASH AND

22  YOU HAVE AN ALLOWED CLAIM, WHICH IS A DEFINED WORD TO MEAN

23  AFTER THE JUDGE DECIDES, WE'LL PAY IT IN CASH.  AND IF YOU DON'T,

24  AFTER THE JUDGE DECIDES WHAT YOUR ALLOWED CLAIM IS, WE'LL PAY

25  IT OVERTIME; RIGHT, QUARTERLY PAYMENTS?

95

1      A     RIGHT.

2      Q     WHY WOULD WE EVER DO THAT IF WE WERE JUST GOING TO

3  LET YOU SETOFF OUR 1.2-MILLION?

4          MS. IDE:  OBJECTION, YOUR HONOR, IT CALLS FOR A

5      HYPOTHETICAL.

6          THE COURT:  SUSTAINED.

7  BY MR. SHUKER:

8      Q     AND YOU SAID YOU BELIEVE SOMEWHERE IN HERE THAT

9  YOU WERE --- THAT IT SAYS YOU CAN GO AHEAD AND SETOFF?

10     A     I THINK IT WAS IN THE CONFIRMATION ORDER.

11     Q     AND YOU THINK IT SAYS YOU GET A RIGHT OF SETOFF OR IF

12  YOU OTHERWISE HAVE ONE?

13     A     I DON'T REMEMBER THE EXACT WORDING.

14     Q     OKAY.

15     A     BUT I THINK IT'S IN THERE.

16     Q     OKAY.  NOW, AT THE TIME OF CONFIRMATION, WHICH IS JUST

17  TO REFRESH YOUR RECOLLECTION, DECEMBER OF '09, THE IRS HAD NOT

18  FILED A SECURED CLAIM; CORRECT?

19     A     CORRECT.

20     Q     IT HAD FILED A PRIORITY UNSECURED CLAIM WITH THE

21  GENERAL RESERVATION THAT'S IN ALL OF THE IRS CLAIMS, HEY, WE'RE

22  NOT WAIVING SETOFF.  IF WE HAVE ONE, WE'LL LET YOU KNOW; RIGHT?

23     A     YES.

24     Q     AND YOU SAID THAT YOU MAKE THAT DECISION BASED ON

25  THE AVAILABLE DATA TO YOU; RIGHT?

96

1      A      THAT'S CORRECT.

2      Q      NOW, BUT YOU KNEW, THE AVAILABLE DATA TO YOU

3  INCLUDED THE DEBTOR'S SCHEDULES FILED IN JULY OF '08 THAT

4  SHOWED ON SCHEDULE B A 1.2-MILLION DOLLAR TAX REFUND; RIGHT?

5      A      I'M GOING TO GO WITH YOUR CHARACTERIZATION OF THAT,

6  BUT UNTIL IT'S ACTUALLY IN THE ACCOUNT BY EITHER THE AUDIT

7  ADJUSTMENT OR BY FILING OF THE RETURN, I DON'T HAVE ANYWAY TO

8  VERIFY THAT.  DEBTORS PUT THINGS IN THEIR SCHEDULES ALL THE TIME

9  THAT AREN'T ACCURATE.

10      Q      BUT YOU KNEW THAT THE DEBTOR WAS SAYING YOU OWED

11  IT MONEY, SO IF YOU HAD A RIGHT OF SETOFF, YOU SHOULD HAVE FILED

12  A SECURED CLAIM.

13      A      NOT UNTIL I SEE THE MONEY AND ESPECIALLY DEALING

14  WITH THIS DEBTOR THAT WAS A CRIMINAL DEBTOR, AND WHO KNOWS

15  WHAT THEIR RECORDS REFLECTED.  THEY COULD HAVE BEEN

16  INACCURATE AND WHEN THE SCHEDULES WERE PREPARED, THEY COULD

17  HAVE BEEN PREPARED BASED ON INACCURATE DATA.

18      Q      I SEE.  SO UNTIL YOU SAY IT'S OWED, IT'S NOT THE DEBTORS;

19  IS THAT YOUR UNDERSTANDING?

20      A      NOT UNTIL I SAY IT'S OWED.

21      Q      LET'S MOVED ON.  THE DEBTOR ACTUALLY FILED IT'S TAX

22  REFUND IN SEPTEMBER '09, A MONTH --- A LITTLE OVER A MONTH BEFORE

23  CONFIRMATION; RIGHT, OR ITS TAX RETURNS FOR MIRABILIS '05?

24      A      THE 2005 1120?

25      Q      YES.

1      A      I DON'T REMEMBER THAT DATE, BUT IF THAT'S YOUR

2   CHARACTERIZATION OF IT, I'LL GO WITH IT.

3      Q      IT WAS.  YOU CAN PULL IT OUT IF YOU WOULD LIKE, BUT IT

4   WAS.

5      A      NO, I'M NOT GOING TO ARGUE WITH THAT.  I DON'T THINK

6   YOU WOULD MISSTATE IT.

7      Q      AND IN THAT TAX RETURN, IT SAID, IRS, YOU OWE US ABOUT

8   1.2-MILLION OR 1.4-MILLION I THINK IT WAS; CORRECT?

9      A      I WOULD SAY SO.  IT WAS SUBJECT TO (INAUDIBLE), SO.

10     Q      BUT BASED ON THE AVAILABLE DATA AT THE TIME, YOU

11   COULD HAVE THEN COME DOWN, AMENDED YOUR CLAIM BEFORE

12   CONFIRMATION AND EVERYBODY WENT FORWARD AND SAID OH, WE

13   HAVE A SECURED CLAIM IN THIS AMOUNT, YOU REALLY DON'T HAVE A

14   REFUND, WE HAVE SETOFF; RIGHT?

15     A      I DON'T --- I MEAN, I COULD HAVE, BUT AGAIN, DUE TO THE

16   PAST CRIMINAL ACTIVITY OF THE DEBTOR, THE RECORDS BEING IN EXAM,

17   I WOULD HAVE WAITED TO MAKE CERTAIN THAT THIS IS TRULY A CREDIT

18   THAT IS AVAILABLE TO US.

19     Q      BUT THE INFORMATION AVAILABLE TO THE IRS AS OF

20   CONFIRMATION, BOTH IN TERMS OF THE SCHEDULES AND IN TERMS OF

21   THE TAX REFUND OR THE TAX RETURN ACTUALLY FILED SHOW THAT THE

22   DEBTOR WAS CLAIMING A 1.2-MILLION DOLLAR TAX REFUND; CORRECT?

23     A      CORRECT.

24     Q      SO HOW MANY TIMES HAVE YOU MET MR. CUTHILL IN

25   PERSON?

98

1       A       ONCE AT THE LAST HEARING AND I DON'T KNOW THAT I WAS

2   INTRODUCED TO HIM, BUT HE WAS PRESENT AND I WAS PRESENT.

3       Q       OKAY.  AND I THINK YOU SAID YOU HAD TWO PHONE CALLS

4   WITH HIM?

5       A       CORRECT.

6       Q       WERE THESE HEATED PHONE CALLS WITH HARSH WORDS

7   EXCHANGED?

8       A       I ACTUALLY ONLY SPOKE TO HIM ONCE AND IT WASN'T

9   HEATED.  HE WAS A LITTLE AGGRAVATED, BUT IT WASN'T HEATED.

10      Q       OKAY.  AND IN YOUR COMMUNICATIONS WITH HIM, JUST

11  BRIEF AND FACTUAL?

12      A       PRETTY MUCH.

13      Q       OKAY.  WELL, IS IT COMMON FOR YOU TO DEVELOP SUCH A

14  DISTAIN FOR SOMEONE YOU'VE NEVER MET IN PERSON AND ONLY HAD

15  BRIEF PHONE CALLS WITH?

16          MS. IDE:  OBJECTION, YOUR HONOR, MISSTATING THE

17      EVIDENCE.

18          THE COURT:  OVERRULED.

19          THE WITNESS:  I DON'T HAVE DISTAIN FOR MR. CUTHILL, I

20      DON'T KNOW HIM.

21  BY MR. SHUKER:

22      Q       REALLY?  WELL, DID MR. GOLD OR MS. IDE TELL YOU THAT

23  MR. CUTHILL WAS INVOLVED IN CRIMINAL ACTIVITY?

24      A       NO, I'M NOT AWARE THAT HE IS.

25      Q       WELL, TURN TO EXHIBIT 27 FOR ME IF YOU WILL.

99

1        A        27?

2        Q        YES, MA'AM.  IT SHOULD BE AN E-MAIL.  DO YOU HAVE IT

3    THERE, MA'AM?

4        A        RIGHT.

5        Q        OKAY.  IN THE SECOND PAGE, THE LAST PARAGRAPH, I'M

6    GOING TO READ IT.  TELL ME IF I READ IT CORRECTLY.  WELL, THIS IS

7    SOMETHING YOU WROTE; CORRECT?

8        A        CORRECT.

9        Q        AND YOU WROTE IT ON JULY 14TH OF '09; CORRECT?

10       A        CORRECT.

11       Q        AND YOU WROTE:  MY PARTING SHOT IS IF --- EXCUSE ME ---

12   MY PARTING SHOT IS THAT THE CIRCUMVENTION OF PAYMENT OF

13   EMPLOYMENT TAXES IS WHAT GOT MIRABILIS AND ITS RELATED

14   ENTITIES AND AMADEO IN TROUBLE WITH IRS IN THE FIRST PLACE, IT

15   DOESN'T LOOK LIKE ANYTHING WAS LEARNED.

16            DID I READ THAT CORRECTLY?

17       A        YES.

18       Q        OKAY.  ARE YOU SAYING THAT MR. CUTHILL ENGAGED IN

19   CIRCUMVENTION OF THE PAYMENT OF EMPLOYMENT TAXES, IS THAT

20   YOUR UNDERSTANDING?

21       A        NO, THAT'S NOT WHAT I SAID.

22       Q        WELL ---

23       A        MR. CUTHILL, ON BEHALF OF MIRABILIS HAD NOT FILED 941'S

24   OR 940'S ---

25       Q        AS PART OF A SCHEME TO BE FRAUDULENT AND CRIMINAL?

1    A    I DON'T KNOW IF HE HAS ONE OR NOT. I DIDN'T SAY THAT.

2    Q    BUT YOU KNEW THERE WAS AN HONEST DISPUTE; CORRECT?

3    A    I KNEW WHAT I KNEW. THE INTERNAL REVENUE CODE SAYS

4    THAT A PRESIDENT IS AN EMPLOYEE. HE WAS PAYING HIMSELF OR

5    LISTING HIMSELF BOTH AS AN EMPLOYEE AND AN INDEPENDENT

6    CONTRACTOR IN THE DEBTOR IN POSSESSION REPORTS. THERE WAS A

7    QUESTION IN MY MIND AS TO WHY THE RETURNS WEREN'T BEING FILED

8    AND I HAD TO REFLECT ON THE KNOWLEDGE OF THE CASE AND THE

9    CRIMINAL ACTIVITIES OF BOTH MR. AMADEO AND MR. MIRABILIS AND I

10   DID HAVE REASON TO QUESTION WHY THE 941'S WEREN'T FILED.

11   Q    SO YOU PICKED ---

12   A    BUT WHETHER MR. CUTHILL DIDN'T FILE THEM AS PART OF A

13   SCHEME, I DON'T KNOW THAT. YOU WOULD HAVE TO ASK HIM.

14   Q    SO YOU PICKED UP THE PHONE AND SAID TO HIM: HEY, WHY

15   AREN'T YOU FILING THESE?

16   A    I ALREADY FILED AN ADMINISTRATIVE CLAIM, SO HE KNEW

17   WE WERE LOOKING FOR THOSE.

18   Q    AND WHAT EXACTLY YOU SAY, IT DOESN'T LOOK LIKE

19   ANYTHING WAS LEARNED. WHAT DID YOU WANT MR. CUTHILL TO

20   LEARN? HE DIDN'T THINK HE HAD TO PAY THEM.

21   A    I'M TALKING ABOUT MIRABILIS, ITSELF.

22   Q    IF YOU COULD TURN TO THE FIRST PAGE, THIS IS MR. GOLD,

23   HE WRITES IN RESPONSE, YOU SEE THERE AT THE TOP. LET CIVIL

24   PROCEED. CUTHILL CAN'T HAVE IT BOTH WAYS. DID I READ THAT

25   CORRECTLY?

101

1        A        YES, YOU DID.

2        Q        OKAY.  MR. CUTHILL WASN'T AVOIDING THE TAX, HE WAS

3    PAYING IT AS AN INDEPENDENT CONTRACTOR; CORRECT?

4        A        I BELIEVE THAT'S WHAT HE TESTIFIED TO.

5        Q        SO HOW AS HE HAVING IT BOTH WAYS?

6        A        WELL, AGAIN, YOU WOULD HAVE CHECK WITH MR. GOLD.  I

7    DIDN'T WRITE THAT COMMENT.

8        Q        AND TURN TO TAB 28, PLEASE, EXHIBIT 28.

9                 MR. SHUKER:  YOUR HONOR, I JUST WANT TO --- THIS IS --- IT'S

10               SOMEWHAT OF A REBUTTAL EXHIBIT BECAUSE SHE TESTIFIED SHE

11               WASN'T SURE IF IT WAS ON EXHIBIT B.  THIS WASN'T ON OUR

12               ORIGINALS, IT'S ON EXHIBIT B.  I HAD IT BROUGHT OVER JUST SO

13               THE RECORD CAN BE CLEAR.

14               THE COURT:  GO AHEAD.

15               MR. SHUKER:  SCHEDULE B, I'M SORRY.

16               THE COURT:  SCHEDULE B.  IS IT MARKED AS 31, IS THAT

17    WHAT IT'S ---

18               MR. SHUKER:  WE HAVE.

19               THE COURT:  OKAY.

20               MR. SHUKER:  YES, YOUR HONOR.

21               THE COURT:  OKAY.

22               MR. SHUKER:  MAY I APPROACH?

23               THE COURT:  YES, PLEASE.

24    BY MR. SHUKER:

25        Q        JUST SO WE'RE CLEAR, MS. SUMMERS, THIS IS THE DEBTOR'S

1    SCHEDULE B FILED ON JULY 11TH OF '08, YOU SAID YOU REVIEWED

2    SCHEDULES.

3            MR. SHUKER:  YOUR HONOR, WE WOULD LIKE TO HAVE

4        EXHIBIT B ADMITTED.

5            THE COURT:  ANY OBJECTION?

6            MR. SHUKER:  DID I SAY EXHIBIT AGAIN, I'M SORRY,

7        SCHEDULE B.

8            THE COURT:  IT'S SCHEDULE B, EXHIBIT 31.

9            MS. IDE:  YOUR HONOR, IT'S A --- WE HAVE NO OBJECTION,

10       BUT KNOW FOR THE RECORD THAT THIS IS ONLY SCHEDULE B, IT'S

11       NOT THE ENTIRE DOCKET NUMBER OF 36.

12           THE COURT:  CORRECT.  IT WILL BE ADMITTED AS EXHIBIT 31.

13   BY MR. SHUKER:

14       Q     AND JUST TO BE CLEAR, MS. SUMMERS, YOU SAID YOU LOOK

15   AT SCHEDULES IN A CASE; CORRECT?

16       A     CORRECT.

17       Q     SO YOU LOOKED AT THE SCHEDULES IN THIS CASE;

18   CORRECT?

19       A     CORRECT.

20       Q     AND THEN ON QUESTION 21, PERSONAL PROPERTY, INTERNAL

21   REVENUE SERVICE TAX REFUND 1.2-MILLION; CORRECT?

22       A     I SEE IT THERE.  YES, YOU'RE CORRECT.

23       Q     SO YOU KNEW AS OF JULY THAT MIRABILIS WAS SEEKING A

24   REFUND?

25       A     I REVIEWED THE SCHEDULES BACK IN PROBABLY JULY OF '08.

1    IN JULY OF '09, I DON'T KNOW THAT I WOULD HAVE RECALLED THAT THE

2    REFUND REQUEST OR THAT YOU WERE SEEKING A REFUND WAS ON THE

3    SCHEDULES, BUT I'LL ALLOW YOU THAT IT IS THERE.

4        Q    OKAY.  BACK ON EXHIBIT 28, THE E-MAIL FROM MS. MARTIN

5    TO YOU AT THE BOTTOM, THE LAST SENTENCES SAY:  A PHONE CALL

6    WOULD PROBABLY SUFFICE AND IT WOULDN'T BE GOOD TO HAVE

7    MIRABILIS TELL THE JUDGE, IRS DIDN'T RESPOND ….  DID I READ THAT

8    CORRECTLY?

9        A    YES, YOU DID.

10       Q    YOU DIDN'T RESPOND, DID YOU?

11       A    NO, I DID NOT.

12       Q    AND TO YOUR KNOWLEDGE, MS. MARTIN DIDN'T EITHER?

13       A    I DON'T KNOW, BUT I DON'T THINK SO.

14       Q    OKAY.  IT DOESN'T SHOW ANYWHERE IN THE RECORDS, THE

15   COMPUTER DATABASE OF THE IRS?

16       A    NOT TO MY KNOWLEDGE.

17       Q    OKAY.

18           MR. SHUKER:  IF I MAY HAVE ONE MOMENT, YOUR HONOR.

19           THE COURT:  CERTAINLY.

20   BY MR. SHUKER:

21       Q    I'M CURIOUS, MS. SUMMERS, ONE OF THE ISSUES YOU SAID

22   THAT AROUSE YOUR SUSPICION AND THAT YOU LOOKED AT WAS AN

23   OFFICER BEING PAID AS AN INDEPENDENT CONTRACTOR AND YOU

24   LOOKED AT IT IN THIS CASE AND THAT'S WHAT LEAD YOU TO FILE THE

25   ADMINISTRATIVE CLAIM.  IS THAT GENERALLY ACCURATE?

104

1    A    THERE WERE A NUMBER OF REASONS. THAT WAS ONE OF

2    THEM.

3    Q    OKAY. HOW MANY OTHER CHAPTER 11'S HAVE YOU LOOKED

4    AT TO SEE IF THE SITUATION EXISTS?

5    A    EVERY SINGLE ONE THAT OWES 941 LIABILITY, WE MAKE A

6    DETERMINATION OF WHETHER OR NOT THE TAXES ARE BEING PAID AND

7    NORMALLY, THE OFFICERS ARE GETTING W-2 INCOME.

8    Q    OKAY.

9    A    IF THEY'RE BEING FILED, BUT NOT PAID, THEN WE DO HAVE A

10    REVENUE OFFICER INVESTIGATE.

11    Q    HAVE YOU SEEN ONE BEFORE WHERE THERE WAS AN

12    OFFICER BEING PAID, BUT AS AN INDEPENDENT CONTRACTOR?

13    A    A LOT OF OFFICERS DO NOT TAKE WAGES. THEY TAKE A

14    DISTRIBUTION AT THE END OF THE YEAR OR THEY TAKE OUT --- I FORGET

15    WHAT IT'S CALLED --- BUT THEY GO IN AND THEY TAKE OUT MONTHLY,

16    NOT --- IT'S NOT INDEPENDENT CONTRACTOR INCOME, BUT THEY TAKE

17    OUT MONTHLY STIPENS AND WE MAKE REFERRALS TO EXAM FOR THOSE.

18    Q    OKAY. BUT, FOR EXAMPLE, ONE OF THE CASES HERE BEFORE

19    JUDGE JENNEMANN WAS CHURCH, MORTGAGE AND LOAN. I ASSUME IT

20    WAS ONE OF YOUR CASES. YOU HAVE THE CASES IN THIS AREA;

21    CORRECT?

22    A    WHO?

23    Q    CHURCH, MORTGAGE AND LOAN CORPORATION?

24    A    NO, IT WAS NOT MINE.

25    Q    OKAY. HOW ABOUT PLATNIUM PROPERTIES?

105

1    A    NO, SIR.

2    Q    HOW ABOUT FS STATION?

3    A    NO, SIR.

4    Q    WOULD YOU BE SURPRISED TO LEARN THAT IN EACH OF

5  THOSE, THE PRESIDENTS PAID THEMSELVES AS INDEPENDENT

6  CONTRACTORS?

7    A    I WOULD BE SURPRISED.

8    Q    BUT YOU DON'T HAVE ANY KNOWLEDGE ONE WAY OR THE

9  OTHER?

10    A    I DO NOT.

11        MR. SHUKER:  YOUR HONOR, I DON'T HAVE ANY FURTHER

12    QUESTIONS.

13        THE COURT:  THANK YOU. AND MS. IDE.

14        MS. IDE:  THANK YOU, YOUR HONOR.

15        MR. SHUKER:  IT WAS LESS TIME THAN I THOUGHT.

16        THE COURT:  YES, YOU DID.

17                    REDIRECT EXAMINATION

18  BY MS. IDE:

19    Q    MS. SUMMERS, IN JUNE 2009, MR. CUTHILL COMMUNICATED

20  WITH THE IRS AND SAID HE WASN'T LIABLE FOR 941 TAXES; CORRECT?

21    A    CORRECT.

22    Q    IN JUNE OF 2009, DID THE IRS HAVE A REQUEST FOR PAYMENT

23  OF POST-PETITION TAXES ON FILE?

24    A    YES, MA'AM.

25    Q    IS THAT BECAUSE THE IRS DETERMINED THAT MR. CUTHILL --

106

1    - THAT MIRABILIS WAS, IN FACT, LIABLE FOR 941 TAXES?

2        A        CORRECT.

3        Q        IN THE AMENDED PLAN, AND THE ORDER OF CONFIRMATION,

4    THERE WAS A PROVISION THAT THE DEBTOR WOULD FILE 941'S AND

5    TREAT ITS OFFICER AS AN EMPLOYEE; CORRECT?

6        A        I BELIEVE SO.

7        Q        WAS THAT A SETTLEMENT?

8            MR. SHUKER: OBJECTION, YOUR HONOR, TO THE EXTENT SHE

9        CHARACTERIZED, IT'S A LEGAL TERM. IT WAS BROUGHT BEFORE

10       YOUR HONOR. SHE'S NOT IN A POSITION TO GIVE THIS TESTIMONY.

11           THE COURT: I'M GOING TO OVERRULE. YOU CAN ANSWER

12       THE QUESTION IF YOU CAN.

13           THE WITNESS: WELL, I KNOW THAT WE HAD SOME

14       CONTENTION OVER WHETHER HE WAS OR NOT. SO IF YOU WANT TO

15       CHARACTERIZE IT, I GUESS IT WAS FOR PURPOSES OF RESOLVING

16       THE DISPUTE.

17   BY MS. IDE:

18       Q        THE UNITED FILED AN OBJECTION TO CONFIRMATION --- FOR

19   THE RECORD, THAT'S DOCKET ENTRY 366 --- AND ONE OF THE ISSUES ---

20   DO YOU RECALL ONE OF THE ISSUES BEING RAISED, WAS THE TREATMENT

21   OF MR. CUTHILL AS AN EMPLOYEE OR INDEPENDENT CONTRACTOR?

22       A        YES, I DO.

23       Q        AND THAT WAS RESOLVED IN THE ORDER OF CONFIRMATION

24   TO YOUR KNOWLEDGE; CORRECT?

25       A        TO MY KNOWLEDGE.

1      Q      NOW, DEBTOR'S COUNSEL CHARACTERIZED THE TIME PERIOD

2   FROM CONFIRMATION TO THE DISALLOWANCE OF THE CREDITS ON THE

3   POST-PETITION 941'S AS FIVE MONTHS OF SILENCE.  DURING THE PERIOD

4   POST-CONFIRMATION THROUGH THE SUMMER OF 2010, WAS THE

5   INTERNAL REVENUE SERVICE LITIGATING TWO OBJECTIONS TO CLAIM?

6      A      I BELIEVE WE WERE.

7      Q      WAS THERE AN INVESTIGATION GOING ON BY YOURSELF AND

8   THE INTERNAL REVENUE SERVICE OVER PROPER APPLICATION OF A

9   400,000-DOLLAR PAYMENT?

10     A      YES.

11     Q      WAS THE UNITED STATES, THROUGH COUNSEL

12   COMMUNICATING WITH THE DEBTOR ON THE 400,000-DOLLARS?

13     A      YES.

14     Q      AND WERE THERE ADMINISTRATIVE CLAIMS PENDING FILED

15   BY THE IRS?

16     A      YES.

17     Q      AT THE TIME OF CONFIRMATION IN OCTOBER OF 2009, HAD

18   THERE BEEN A FINAL DETERMINATION ON MIRABILIS' REQUEST FOR AN

19   OVERPAYMENT?

20     A      NO, MA'AM.

21     Q      WHEN WAS THAT FINALIZED, MS. SUMMERS?

22     A      IT WAS --- IF YOU'RE TALKING ABOUT THE 1120, IT WAS WHEN

23   THE EXAM WAS COMPLETED, THERE WAS A CREDIT AVAILABLE AND IN

24   THE CASE OF THE 941'S, I BELIEVE THERE IS STILL AN ONGOING AUDIT.

25   THE CREDIT OF 400,000 WAS ESTABLISHED AFTER THE RETURN WAS FILED

108

1    SHOWING THERE WAS NO LIABILITY OWED TO IT.

2         Q      AND THAT'S A CREDIT THAT WAS RETURNED TO THE 2005

3    1120 ACCOUNT?

4         A      RIGHT.

5         Q      NOW, THE DEBTOR FILED THIS 2005 1120 IN SEPTEMBER OF

6    2009. THE DEBTOR ALSO CLAIMED AN INCOME TAX REFUND ON ITS

7    SCHEDULE. YOU HAD TESTIFIED THAT IF YOU KNEW THERE WAS A

8    REFUND CLAIM, YOU COULD HAVE POTENTIALLY FILED A CLAIM FOR

9    SETOFF WHEN YOU FILED THE PROOF OF CLAIM IN THE MIRABILIS CASE,

10   BUT THAT YOU DID NOT. WHY DIDN'T YOU?

11        A      BECAUSE I COULDN'T BE SURE THAT THAT WAS A TRUE

12   CREDIT UNTIL EVERYTHING IS SETTLED. I'VE HAD OTHER CASES WHERE

13   WE'VE HAD THOSE TYPES OF CREDITS AND THEY'RE LISTED IN THE

14   SCHEDULES AND THEY DON'T MATERIALIZE AND I RELIED ON EVIDENCE

15   THAT THERE IS A VERIFIABLE CREDIT ON THE TAX ACCOUNT.

16        Q      SO WHEN YOU FILED THE PROOF OF CLAIM, THE TAX RETURN

17   CLAIMING THE CREDIT HADN'T EVEN BEEN FILED; RIGHT?

18        A      THAT IS CORRECT.

19        Q      OKAY. AND YOU DO SIGN THESE PROOFS OF CLAIM UNDER

20   PENALTY OF PERJURY; CORRECT?

21        A      ABSOLUTELY.

22        Q      THE SCHEDULE B, DEBTOR'S EXHIBIT 31, DOES LIST THE

23   DEBTOR'S CLAIM FOR A REFUND AND WHEN WAS THAT REFUND

24   ACTUALLY CLAIMED?

25        A      WHEN WAS IT CLAIMED? IN THE AMENDED RETURN IN

109

1    SEPTEMBER OF '09.

2         Q      AND THAT WAS WELL AFTER YOU FILED THE PROOF OF

3    CLAIM; CORRECT?

4         A      CORRECT.

5              MS. IDE:  THANK YOU, MS. SUMMERS.

6              THE COURT:  ANYTHING FURTHER FROM MS. SUMMERS?

7                      RECROSS EXAMINATION

8    BY MR. SHUKER:

9         Q      ARE YOU SAYING THE IRS NEVER FILES ESTIMATED CLAIMS?

10        A      NO, SIR, I'M NOT.  WE HAD THEM ON OUR ADMINISTRATIVE

11   CLAIM.

12             MR. SHUKER:  OKAY.  THANK YOU.

13             THE COURT:  THANK YOU VERY MUCH.  I KNOW THIS IS A

14   LONG AFTERNOON, BUT I APPRECIATE YOUR TIME TODAY.  THANK

15   YOU VERY, VERY MUCH.

16             THE WITNESS:  OKAY. DO YOU WANT ME TO GIVE THESE

17   BACK TO YOU OR LEAVE THEM OR WHAT?

18             THE COURT:  YES, IF YOU DON'T MIND.

19             THE WITNESS:  AND I DON'T HAVE THEM IN ORDER.

20             THE COURT:  THAT'S OKAY.

21             THE WITNESS:  AND THIS THING ---

22             THE COURT:  KEEPS COMING APART.

23             THE WITNESS:  RIGHT, IT DOES.

24             THE COURT: JUST GIVE IT TO ME LIKE THAT.  THANK YOU

25   VERY MUCH.

110

1        THE WITNESS: I'LL JUST SET IT RIGHT THERE.

2        THE COURT: THAT SOUNDS GOOD. THANK YOU VERY MUCH.

3        THE WITNESS: WHO GETS THIS ONE, BACK?

4        THE COURT: YOU LEAVE THAT ONE THERE.

5        THE WITNESS: OKAY. THANK YOU.

6        THE COURT: I'LL TAKE CARE OF THAT IN A MINUTE. THANK

7    YOU, MA'AM.

8        DID YOU HAVE ANY OTHER WITNESSES OR EVIDENCE?

9        MS. IDE: NO ADDITIONAL WITNESSES, YOUR HONOR. I

10   WOULD LIKE FOR EASE OF BOTH COUNSEL IN ARGUMENT OR POST-

11   TRIAL BRIEFING, WE HAVE PROPOSED AS GOVERNMENT EXHIBITS 1

12   AND 2, OUR RESPECTIVE ANSWERS TO EACH OTHER'S REQUEST FOR

13   ADMISSION AND WE WOULD LIKE THOSE ADMITTED AS

14   GOVERNMENT'S ONE AND TWO.

15       THE COURT: ANY OBJECTION TO THAT?

16       MR. SHUKER: NO, YOUR HONOR.

17       THE COURT: THEY WILL BE ADMITTED.

18       MS. IDE: THANK YOU, YOUR HONOR, AND JUST FOR THE

19   RECORD, WE DID NOT OFFER GOVERNMENT'S 10, 11, 12 AND 15.

20   THANK YOU, YOUR HONOR. GOVERNMENT RESTS.

21       THE COURT: THE REST WERE EITHER ADDRESSED OR

22   ADMITTED. 13 WAS NOT ADMITTED, THE REMAINDER WERE.

23       MR. SHUKER: CORRECT.

24       MS. IDE: CORRECT, YOUR HONOR. THANK YOU.

25       THE COURT: VERY GOOD. WHAT WOULD THE PARTIES

111

1    PREFER FOR POST-TRIAL ARGUMENT ON BOTH THE APPLICATION,

2    OBJECTION TO THE ADMINISTRATIVE CLAIM AS WELL AS THE

3    MOTION TO ENFORCE THE PLAN, CONFIRMATION ORDER AND TURN

4    OVER? I SAW THE TRIAL BRIEF AS WELL AS RESPONSE TO THE

5    RELATED MOTION, I WANT SOME CLARITY FROM THE PARTIES

6    BASED UPON THE EVIDENCE THAT'S BEEN SUBMITTED

7    SUBSEQUENTLY, BOTH MR. CUTHILL'S TESTIMONY AND MS.

8    SUMMERS' TESTIMONY, PRIMARILY.

9         I DO WANT YOU TO SUBSTITUTE THE FULL DEPOSITION OF

10    MS. YIP. I NEED TO SEE WHERE THE QUESTIONS START AND STOP. I

11    THINK THAT'S CORRECT. LET ME MAKE SURE. EXHIBIT NUMBER ---

12    NO, IT'S THE TRANSCRIPT THAT'S EXHIBIT 2.

13         MR. SHUKER: WE HANDED IT UP.

14         THE COURT: PERFECT. I KNEW I WAS JUST MISSING SOME

15    AND I WANTED THAT TO BE A COMPLETE RECORD.

16         SO WHAT DO THE PARTIES PREFER?

17         MR. SHUKER: YOUR HONOR, CLEARLY, I DON'T THINK --- WE

18    DON'T NEED THE REDUNDANCY OF ORAL ARGUMENT AND

19    WRITTEN SUBMISSIONS.

20         THE COURT: WE DO NOT.

21         MR. SHUKER: AND IT'S CLEAR YOU'RE NOT DECIDING

22    TODAY.

23         THE COURT: I AM NOT.

24         MR. SHUKER: SO I WOULD THINK --- BUT THE MATTERS HAVE

25    BEEN PRETTY WELL BRIEFED.

1        THE COURT: THEY HAVE.

2        MR. SHUKER: I WOULD THINK THAT SOMETHING IN THE LINE

3    OF TWO WEEKS, WITH THE PAGE LIMIT THAT YOUR HONOR THINKS

4    IS APPROPRIATE TO BE SERVED ON THE OTHER SIDE, BUT NO

5    REPLIES IS THE WAY TO GO.

6        THE COURT: WHAT I REALLY WOULD PREFER, ACTUALLY, IS

7    FINDINGS OF FACT AND CONCLUSIONS OF LAW, WHICH I HARDLY

8    EVER REQUEST. HOWEVER, THAT TENDS TO REDUCE TO SOME

9    EXTENT THE ADVOCACY. IT STILL WILL BE IN THERE AND I

10   UNDERSTAND THAT THAT IS YOUR JOBS, BUT LET ME ASK MS. IDE

11   WHAT SHE THINKS IN TERMS OF TIMING AND WHAT YOU WOULD

12   LIKE TO SUBMIT.

13       I DO WANT WRITTEN SUBMISSIONS. I AGAIN, RARELY ASK

14   FOR THAT, BUT IN THIS CASE, I WOULD REQUEST THAT, SO.

15       MS. IDE: CERTAINLY, YOUR HONOR, AND PROPOSED

16   FINDINGS AND CONCLUSIONS WOULD BE APPROPRIATE. THE ONLY

17   THING I ASK THAT IT NOT BE DONE IN TWO WEEKS, BUT IF WE

18   COULD MAKE IT MID-NOVEMBER. I HAVE A NUMBER OF NEW

19   OBLIGATIONS TO UNDERTAKE IN THE NEXT TWO WEEKS AND THE

20   EXTRA COUPLE OF WEEKS WOULD MAKE A BIG DIFFERENCE.

21       THE COURT: I DON'T THINK THAT'S UNREASONABLE. DO

22   YOU ALL LIKE MONDAYS, FRIDAYS FOR SUBMISSIONS. I WOULD

23   LIKE THEM SUBMITTED RELATIVELY SIMULTANEOUSLY SO THAT I

24   DON'T HAVE TO WORRY ABOUT THAT ARGUMENT.

25       MR. SHUKER: I THINK MONDAY IS FINE, YOUR HONOR.

113

1        THE COURT: A MONDAY?

2        MR. SHUKER: I THINK THE 18TH IS A MONDAY.

3        THE COURT: NOVEMBER ---

4        MS. IDE: THE 15TH IS A MONDAY.

5        THE COURT: THE 15TH IS A MONDAY. THAT'S 26 DAYS AWAY.

6    IF THAT --- I DON'T WANT TO PUSH IT TOO MUCH, BUT WOULD THAT

7    BE A REASONABLE PERIOD, MS. IDE?

8        MS. IDE: YOUR HONOR, THAT WOULD BE FINE. IF YOU WANT

9    IN THE PROPOSED FINDINGS, SPECIFIC REFERENCES TO THE

10    TRANSCRIPT, THE TESTIMONY, THAT WOULD BE CUTTING IT KIND

11    OF CLOSE.

12        THE COURT: I DON'T THINK SO. I DON'T NEED TO DO THAT.

13    YOU OR I OR I GUESS MY LAW CLERK PRIMARILY IF NEED BE CAN

14    LISTEN TO THE TESTIMONY. WE'VE TAGGED, I THINK WE'VE

15    TAGGED EVERYTHING. WE MAY NOT OF THE EARLIER HEARING,

16    BUT IF NOT, IT'S ALL BURNABLE ON A CD SO EASILY ACCESSIBLE. I

17    DON'T NEED THE WRITTEN RECORD TRANSCRIPT REFERENCES.

18        MS. IDE: THAN THAT'S FINE, YOUR HONOR, NOVEMBER 15TH.

19        THE COURT: OKAY. LET'S SAY NOVEMBER 15TH. I WILL TURN

20    MY ATTENTION TO IT SHORTLY AFTER RECEIPT. I DON'T PROMISE

21    IMMEDIATE TURNAROUND, BUT IT WILL NOT BE A LENGTHY

22    TURNAROUND, I CAN GUARANTEE YOU THAT.

23        WE LEFT OPEN THE ISSUE OF WHEN WE COME BACK ON THE

24    AEM OBJECTION TO CLAIM 4. I'M GOING TO KEEP IT ON THE

25    SCHEDULE WITH EVERYTHING ELSE, WHICH IS FEBRUARY THE 10TH

114

1   AT 10:00.  IF THAT TURNS OUT TO BE A PROBLEM AFTER THE

2   RULING, LET SOMETHING KNOW, BUT OTHERWISE, LET'S KEEP IT ON

3   THAT SCHEDULE.  THAT'S ROUGHLY THE REQUESTED 120 DAYS AND

4   WE'LL SEE WHERE WE GO FROM THERE.

5       IS THERE ANYTHING ELSE?  I WILL TAKE THE MATTERS THAT

6   WE'VE HAD THE EVIDENCE ON UNDER ADVISEMENT.  I DON'T HAVE

7   ANY QUESTIONS RELATING TO THE EXHIBITS OR OTHERWISE.  BUT

8   IF THERE IS LET ME KNOW.

9       MR. SHUKER:  THANK YOU, YOUR HONOR.

10      MS. IDE:  THANK YOU, YOUR HONOR.

11      THE COURT:  NO, THANK YOU GUYS VERY MUCH.  AND I'M

12  GOING TO FINISH MY NOTES, BUT COURT IS IN RECESS.

13      (WHEREUPON, THE HEARING WAS CONCLUDED AT 4:34 P.M.)

14

15

16

17

18

19

20

21

22

23

24

25

115

# CERTIFICATE OF OATH

STATE OF FLORIDA

COUNTY OF SEMINOLE


I, MARGIE A. GREEN, NOTARY PUBLIC, CERTIFY THAT I WAS

AUTHORIZED TO AND DID TRANSCRIBE, FROM CD-R, THE FOREGOING

PROCEEDINGS AND THAT THE TRANSCRIPT IS A TRUE RECORD

I FURTHER CERTIFY THAT I AM NOT A RELATIVE, EMPLOYEE,

ATTORNEY OF COUNSEL OF ANY OF THE PARTIES, NOR AM I FINANCIALLY

INTERESTED IN THE ACTION.

DATED THE 5TH DAY OF NOVEMBER 2010.




MARGIE A. GREEN

NOTARY PUBLIC – STATE OF FLORIDA

MY COMMISSION NO.:  DD0714428

MY COMMISSION EXPIRES: 9/13/2011