UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                              CASE NO. 6:08-BK-04327-KSJ

MIRABILIS VENTURES, INC.,                           CHAPTER 11

                  Debtor.

_____/

FINDINGS OF FACT AND CONCLUSIONS OF
LAW REGARDING (I) THE EMERGENCY OBJECTION
TO ALLOWANCE OF CLAIM NO. 36 SUBMITTED BY THE
INTERNAL REVENUE SERVICE; AND (II) THE MOTION TO
ENFORCE PLAN AND CONFIRMATION ORDER AND FOR
TURNOVER OF PROPERTY TO THE LIQUIDATING DEBTOR

THIS CONTESTED MATTER came on for hearing September 15, 2010 and October 20,

2010 ("Hearing"), upon the following: (i) Mirabilis Ventures, Inc.'s ("Mirabilis") Emergency Objection to

Allowance of Claim No. 36 Submitted by the Internal Revenue Service, filed on June 15, 2010 (Doc. No.

567) ("Claim Objection"); (ii) Mirabilis' Motion to Enforce Plan and Confirmation Order and for Turnover

of Property to the Liquidating Debtor, filed on September 24, 2010 (Doc. No. 617) ("Turnover Motion");

(iii) the United States of America, Internal Revenue Service's ("IRS") Trial Brief Regarding Debtor's

Objection to Allowance of Claim No. 36, filed on September 13, 2010 (Doc. No. 613) ("Response"); (iv)

IRS' Amended Request for Payment of Administrative Expenses, filed on September 2, 2010 (Doc. No.

605) ("IRS Administrative Claim"); and (v) IRS' Opposition to Mirabilis' Motion to Enforce Plan and

Confirmation Order and for Turnover of Property to the Liquidating Debtor, filed on October 18, 2010

(Doc. No. 624) ("Opposition") (collectively, the Claim Objection, Turnover Motion, Response, IRS

EXHIBIT A

Administrative Claim and the Opposition, shall be referred to as the "Contested Matters"). Upon

consideration of the Claim Objection, Response, the IRS Administrative Claim, the Turnover Motion and

the Opposition, and based upon the evidence presented by Mirabilis and the IRS, the Court makes the

following findings of fact and conclusions of law:

## FINDINGS OF FACT

### JURISDICTION AND VENUE

1.    This Court has jurisdiction over the Contested Matters pursuant to 28 U.S.C. §§ 1334 and

157.

2.    Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3.    The Claim Objection and the Turnover Motion are core proceedings pursuant to 28 U.S.C.

§ 157(b)(2)(A), (B), (E) and (O).

### PROCEDURAL AND FACTUAL BACKGROUND

4.    On May 27, 2008, ("Mirabilis Petition Date") Mirabilis and Hoth filed voluntary petitions

for relief under Chapter 11 of the Bankruptcy Code. (Doc. No. 1). On June 5, 2008 ("AEM Petition

Date"), AEM, Inc. ("AEM") also filed a Chapter 11 bankruptcy petition (collectively, Mirabilis, Hoth, and

AEM shall be referred to as "Debtors"). The Chapter 11 filings came primarily as a result of an *in rem*

civil forfeiture action commenced by the United States Attorney ("US Attorney") on behalf of the United

States of America ("United States") against certain assets of Mirabilis, which effectively caused Mirabilis

to be unable to collect assets and pursue claims and litigation against various third parties[1]. (Doc. No. 185,

---

[1]    On April 25, 2008, the US Attorney instituted *in rem* civil forfeiture proceedings ("Civil Complaint"), in the United States District Court for the Middle District of Florida, case no. 6:08-cv-00670-ACC-KRS, against certain property owned by Mirabilis. On September 4, 2008, the US Attorney amended the Civil Complaint to add additional

¶ 2). The *in rem* civil forfeiture action was filed based upon the criminal investigation of Mr. Amodeo[2]. In an effort to preserve equity for all creditors, Mirabilis, AEM and Hoth deemed a Chapter 11 liquidation plan as in the best interest of all creditors. See id.

5.    Although the US Attorney did not originally approve of the filing of the Chapter 11 bankruptcy petitions and the use of the Bankruptcy Code to liquidate the assets of the Debtors for the benefit of all creditors, the United States did ultimately agree that is was in the best interests of all parties to have some of the assets administered in the bankruptcy proceedings. (Doc. Nos. 41, 48). As such, on November 25, 2008, the Debtors and the US Attorney reached a settlement agreement ("Settlement") which provided for: (i) the division of assets between the bankruptcy estates and the United States; (ii) the allowance of a $200,000,000 unsecured forfeiture claim; (iii) agreed terms of a plan of liquidation and the consolidation of the Debtors' bankruptcy estates; and (iv) all pending motions filed by the US Attorney in the bankruptcy cases and by the Debtors against the United States to be withdrawn with prejudice upon approval of the Settlement. (Doc. No. 101, ¶ 24-31).

6.    At the time the Settlement was reached, the Debtors had a pending Joint Amended Plan of Liquidation, which was filed on June 1, 2009. (Doc. No. 193). The Joint Amended Plan of Liquidation was subsequently modified on August 14, 2009 and October 15, 2009 (collectively, the "Plan"). As contemplated by the Settlement, the Plan incorporated the terms of the Settlement.

---

property, some of which was owned by Mirabilis.  On October 30, 2008, the US Attorney indicted AEM and Mirabilis for conspiracy, wire fraud, and forfeiture; case no. 6:08-cr-00231-JA-KRS ("Indictment").  On June 17, 2010 the District Court entered an order accepting the *nolo contendere* pleas of the Debtors to the Indictment.

[2] On August 6, 2008, the US Attorney indicted Frank L. Amodeo for conspiracy, failure to remit payroll taxes, wire fraud, and obstruction of an agency investigation; case no. 6:08-cr-176-Orl-28-GJK.

7.    On August 4, 2009, the Court entered an Order Approving the Disclosure Statement, Scheduling Confirmation Hearing for September 16, 2009, Establishing Confirmation, Compensation, and Administrative Claims Hearing Procedures, and Fixing Time for Filing Acceptances or Rejections of Plan (Doc. No. 228).  The Plan was distributed to creditors and parties-in-interest on and after August 14, 2009.  Thereafter, on September 1, 2009, the Court entered an amended order rescheduling the hearing on confirmation of the Plan for October 16, 2009 ("Amended Order") (Doc. No. 266).

8.    On October 16, 2009, the Bankruptcy Court conducted a hearing ("Confirmation Hearing") to consider confirmation of the Plan, and on October 27, 2009, the Bankruptcy Court entered an order confirming the Plan ("Confirmation Order") (Doc. No. 375).  On January 5, 2010, the Confirmation Order became a final order.

## IRS ADMINISTRATIVE CLAIM: POST-PETITION 941 TAXES

9.    On May 27, 2008, Mr. Moecker, as the sole director of Mirabilis, elected Mr. Cuthill as President of Mirabilis and authorized Mr. Cuthill, on behalf of Mirabilis, to file Chapter 11 bankruptcy petitions. September 15, 2010 Transcript, p.15. As President, Mr. Cuthill performed the same duties as a liquidating trustee or a chapter 11 trustee for the bankruptcy estates of the Debtors. See id. As such, Mr. Cuthill, upon the advice of Russell Baldwin, a certified public accountant with Baldwin & Co., caused Mirabilis to treat him as an independent contractor rather than as an employee. See id. at pp. 16-20.

10.    On June 25, 2009, the IRS sent Mirabilis a form letter notifying it that it had failed to file 941 Forms for the quarters ending September 30, 2008, December 31, 2008, and March 31, 2009, and a 940 Form for the tax period ending 2008 ("IRS 941 tax Letter"). Mirabilis Exh. 29. On June 26, 2009, Mr. Cuthill, on behalf of Mirabilis, responded to the IRS 941 tax letter advising the IRS that Mirabilis did

not need to file these returns because it had no employees during these tax periods ("Response Letter").

Mirabilis Exh. 29. Mr. Cuthill went on to explain that even though he is the President of Mirabilis, he is

engaged in an independent contractor capacity. See id. Furthermore, Mr. Cuthill advised the IRS that he

included the income from Mirabilis in his personal income tax return and paid self-employment taxes on this

income. See id.

11.    Despite being aware of Mirabilis' expectation of a response, the IRS chose to ignore the

Response Letter[3]. September 15, 2010 Transcript, p.21; October 20, 2010 Transcript, pp. 87-88. Rather

than acting with the expected professionalism and diligence, the IRS and the US Attorney engaged in

vitriolic and inflammatory correspondence regarding Mr. Cuthill and set in motion an investigation (the

TFRP, otherwise known as a Trust Fund Recovery Penalty investigation) into Mr. Cuthill's personal liability

for the alleged unpaid 941 taxes[4]. Mirabilis Exh. 26, 27, 28.

12.    During this time the only public action taken by the IRS was to file "Requests for Payments

of Internal Revenue Taxes," which were docketed as proofs of claim (Claim No. 36-1, 36-2, and 36-3),

---

[3] On July 15, 2009, Diane E. Martin, the Revenue Officer who sent the IRS Tax Letter, e-mailed Sherrill R. Summers, the Bankruptcy Specialist handling the bankruptcy cases, and inquired "…[d]epending on CI/Randy Gold's response, will you be contacting Mr. Cuthill? Or do you want me to respond? I hesitate to do anything in writing, yet it isn't appropriate customer service to ignore his letter.  A phone call would probably suffice.  And, it wouldn't be good to have Mirabilis tell the judge IRS didn't respond." Mirabilis Exh. 28.

[4] On May 21, 2009, prior to advising Mirabilis and Mr. Cuthill of the 941 tax issue, Ms. Summers e-mailed Richard Smith, the Special Agent with the IRS Criminal Investigation division, and advised that she "would like to get an RO to determine TFRP" and "file an administrative claim for the undeposited and unfiled taxes." Mirabilis Exh. 26. Subsequently, on July 14, 2009, Ms. Summers again e-mailed S.A. Smith and opined "[m]y parting shot is that the circumvention of payment of employment tax is what got Mirabilis and its related entities and Amodeo in trouble with the IRS in the first place.  It doesn't look like anything was learned." Mirabilis Exh. 27. On July 15, 2009, in response to Ms. Summer's request to file an administrative claim, Mr. Randall Gold with the U.S. Attorney's office, responded "Let Civil proceed. Cuthill can't have it both ways."  Id.  It is unclear to this Court what Mr. Gold was referring to, but it is clear Mr. Gold was implying that somehow Mr. Cuthill was acting inappropriately in his capacity as a fiduciary to the Mirabilis bankruptcy estate.  There is no evidence that Mr. Cuthill did anything inappropriate in any of the Debtors' bankruptcy cases.

and an Objection to Confirmation of Joint Amended Plan of Liquidation ("Confirmation Objection") (Doc.

No. 366). Even though the Confirmation Objection raises the issue of post-petition employment taxes,

the IRS never sought to have Claim 36 scheduled for hearing as an application for administrative claim.

Confirmation Objection, ¶ 3.

        13.    Prior to the Confirmation Hearing, the Debtors and the IRS reached an agreement on the

treatment of Mr. Cuthill as an employee versus an independent contractor, and the payment of post-petition

941 taxes. September 15, 2010 Transcript, pp. 23-30. As testified to by Mr. Cuthill at the Hearing and

as set forth in the Plan, the IRS and the Debtor agreed that "the compensation for Mr. Cuthill, both pre and

post confirmation, shall be treated as employee compensation pursuant to 26 U.S.C. §3121(d)(1). The

Liquidating Debtor and Debtors shall have sixty (60) days following Confirmation to prepare and file

appropriate tax returns and to have the Liquidating Debtor to pay the required payroll tax." Mirabilis Exh.

1, p.13, ¶(c). In addition, the Debtors and the IRS agreed that Claim No. 36 would be allowed in the

amount of $136,908.07, and would not include penalties or interest. September 15, 2010 Transcript, pp.

29-30;  Mirabilis Exh. 2(October 16, 2009 Transcript), p. 14, 23; Mirabilis Exh. 3 and 4.

        14.    At the Hearing, the IRS offered no evidence to contradict the aforementioned settlement

with the Debtors[5]. Accordingly, this Court finds that the IRS and the Debtors agreed to the following: (i)

Claim 36 would be allowed in the amount of $136,908.07; (ii) Claim 36 would not include penalties or

interest if the Debtors filed the appropriate tax returns within sixty (60) days; and (iii) if the IRS did not

---

[5] At the Hearing, Ms. Ide asked Ms. Summers: "In the amended plan, and the order of confirmation, there was a provision that the debtor would file 941's and treat its officer as an employee; correct?" Ms. Summers replied: "Well, I know that we had some contention over whether he was or not. So if you want to characterize it, I guess it was for purposes of resolving the dispute." October 20, 2010 Transcript, p. 106.

agree with the calculations set forth in the filed tax returns, then the IRS would advise the Debtors and the Court and have Claim 36 rescheduled for hearing. Mirabilis Exh. 2(October 16, 2009 Transcript), p. 14, 23.

15.     As such, this Court finds that the only amount owed by Mirabilis for post-petition employment taxes is $136,908.07, and the IRS is not entitled to penalties or interest because of the agreement reached with the Debtors and for the reasons discussed below.

### THE SETOFF

16.     On November 18, 2009, Mirabilis received a notification from the IRS advising Mirabilis that according to the records of the IRS, Mirabilis had a $400,000.00 credit applied to the March 31, 2007 tax period ("IRS Notice"). Mirabilis Exh. 6. As such, according to the records of the IRS, as of the Mirabilis Petition Date and the Confirmation Hearing, Mirabilis had a $400,000.00 credit in its Form 941 Account. Mirabilis Exh. 8.

17.     The genesis of the $400,000.00 credit dates back to on or about May 14, 2007, when Mirabilis first attempted to deliver a check to the IRS in the amount of $400,000.00 for "salary & wages: 7900-941 Tax E." Mirabilis Exh. 9. The IRS, however, would not accept the check and requested Mirabilis provide a cashier's check. As such, Mirabilis delivered to the IRS a cashier's check in the amount of $400,000.00 as a "voluntary payment: Mirabilis Ventures, AEM, Inc. April 2007." Mirabilis Exh. 9.

18.     Upon receipt of the IRS Notice, Mirabilis contacted the IRS to determine how to obtain a refund of the $400,000.00 credit. September 15, 2010 Transcript, pp. 37-40. On November 18, 2009, Mr. Cuthill spoke to Ms. Dinny Yip, a customer service representative with the IRS. Ms. Yip confirmed

the existence of the $400,000.00 credit and informed Mr. Cuthill that in order to obtain a refund of the $400,000.00, Mirabilis needed to file the appropriate 941 tax returns. September 15, 2010 Transcript, pp. 37-40; Mirabilis Exh. 7 (Deposition of Ms. Yip), pp.18-19.

19.    On November 30, 2009, Mr. Cuthill sent by e-mail to Ms. Carol Koehler Ide, an attorney with the U.S. Department of Justice, copies of the 941 tax returns he intended to file on behalf of Mirabilis. Mirabilis Exh. 10. In the 941 tax returns, Mr. Cuthill applies the $400,000.00 credit to the outstanding 941 tax liability for Mirabilis and requests a refund for the difference[6]. September 15, 2010 Transcript, pp. 46-48. Mr. Cuthill specifically requested Ms. Ide to provide any comments to the 941 tax returns before he filed them with the IRS. See id. Ms. Ide did not provide any comments to Mr. Cuthill or counsel for Mirabilis. See id at. p. 49. On or about December 4, 2009, Mr. Cuthill mailed the 941 tax returns to the IRS which were received on December 8, 2009. See id.

20.    On March 9, 2010, after having received neither the requested refund nor a response from Ms. Ide for over three months, counsel for Mirabilis e-mailed Ms. Ide inquiring about the status of the refund from the $400,000.00 credit. Mirabilis Exh. 11. For the first time, Ms. Ide informed counsel for Mirabilis that the $400,000.00 credit could not be applied forward because according to the IRS Mirabilis had a balance due on its Form 1120 liabilities for tax pear ending 2005[7]. See id. Ms. Ide further advised

---

[6] Mirabilis prepared quarterly returns for the first quarter of 2007 through the third quarter of 2009. However, the IRS did not file a claim for the unpaid pre-petition employment taxes, and as such, are not entitled to be paid on those amounts. Accordingly, the requested refund from the $400,000.00 credit should have been $263,091.93, not $234,486.18 as stated in line 15 of the third quarter of 2009 Form 941.

[7] On June 13, 2008, the IRS filed claim no. 2 in the Mirabilis bankruptcy case in the amount of $438,173.48 based on income tax liabilities for 2005 ("Claim No. 2") On October 9, 2009, Mirabilis filed an Objection to Allowance of the Claim No. 2 ("Claim No. 2 Objection") (Doc. No. 325). The basis for the objection to Claim No. 2 was that Mirabilis generated a net operating loss in the tax year ending December 31, 2006, which was sufficient to offset all income generated in 2005. As such, Mirabilis owed no income taxes for 2005 and was owed a refund in the amount

that once the pending Claim No. 2 Objection was resolved by agreement or in a final, non-appealable order, then the $400,000.00 credit could be applied. See id.

21.    Despite Ms. Ide's agreement to return the overpayment, on March 16, 2010, Ms. Summers submitted an "Account Adjustment Voucher" requesting the $400,000.00 credit be moved to Mirabilis' Form 1120 Account. Mirabilis Exh. 15. Then, on or about April 12, 2010, while the Claim No. 2 Objection as still pending, the IRS internally transferred and the applied the $400,000.00 credit to Claim No. 2. Mirabilis Exh. 16. The IRS did not seek Court permission to apply the $400,000.00 credit to the disputed Claim No. 2.

22.    Moreover, the IRS did not notify the Court that it had transferred the $400,000.00 credit to pay Claim No. 2. Rather, on April 22, 2010, the scheduled final evidentiary hearing on the Claim No. 2 Objection, the IRS intentionally omitted from its opening summation that the IRS had paid itself on Claim No. 2. Mirabilis Exh. 17 (April 22, 2010 Transcript), pp.27-30. Moreover, even though the IRS conceded that Mirabilis had sufficiently substantiated the claimed deductions to generate the requested $1,010,769 refund and sustain the objection, the IRS still proceeded to request the Court to continue the Claim No. 2 Objection hearing based on alleged inability to "compromise" the claim. See id.

23.    Ms. Ide stood before this Court knowing that the IRS had transferred the $400,000.00 credit to pay Claim No. 2 and that Mirabilis was entitled to the claimed $1,010,769 refund. At this point, the IRS' attempt to continue the prosecution of the Claim No. 2 Objection was frivolous[8].

---

of at least $1,010,769.

[8]  On April 22, 2010, this Court previously found the actions of the IRS and its counsel to be borderline sanctionable for presenting and prosecuting baseless objections to post-confirmation disbursements.  In summarizing the Court's view of these actions, the Court stated "I really think we're dangerously close to

24.     On May 10, 2010, the Court entered an Order Sustaining the Claim No. 2 Objection (the "Claim No. 2 Order")(Doc. No. 548). In the Claim No. 2 Order, the Court specifically notes that entry of this order is without prejudice to: (i) the determination of the Debtor's claim to a Net Operating Loss ("NOL") deduction for income tax year ending December 31, 2006; (ii) the Debtor's claimed overpayment or turnover with respect to income tax year ending December 31, 2005; and (iii) the Debtor's claimed carry forward of the NOL deduction. The Claim No. 2 Order makes no mention of any alleged setoff rights of the IRS with respect to the claimed overpayment.

25.     Subsequently, on June 4, 2010, Ms. Ide finally notifies counsel for the Debtors that the IRS has administratively moved and applied the $400,000.00 credit to the Form 1120 Account. Mirabilis Exh. 18. In addition, Ms. Ide further advised the Debtors that "now that the Form 1120 NOL issue is resolved, the Service will recompute the 2005 liability and determine the amount of that year's overpayment, taking into account that the $400,000.00 has been returned to that year's account. Id.

26.     However, on June 17, 2010, the IRS filed an amended proof of claim without obtaining leave of court and after Claim No. 2 had been disallowed. The IRS in its amended proof of claim failed to complete the "secured claim" section of the form, however, the attachment identifies a "right to setoff" for a secured claim in the amount of $0.00. Mirabilis Exh. 19. This was the first time the IRS asserted a right to setoff with respect to its claims against Mirabilis. This belated assertion by the IRS did not resurrect a prior waived right of setoff.

---

sanctionable actions in this case. So think long and hard if you want to continue down this road, and know that every attorney all you really have is your reputation." Mirabilis Exh. 17 (April 22, 2010 Transcript), p. 83.

27.     In addition, previously, on July 10, 2008, the IRS filed claim no. 4 in the related AEM

bankruptcy case in the amount of $3,195,661.83 based on 941 taxes for 2007 ("Claim No. 4"). Mirabilis

Exh. 21. Claim No. 4 stated that it was an unsecured priority claim in the amount of $2,492,059.53 and

a general unsecured claim in the amount of $703,602.30.   Thereafter, on August 6, 2010, over three

months after Claim No. 2 had been disallowed, the IRS filed an amended proof of claim without obtaining

leave of court. Mirabilis Exh. 24.   The amended proof of claim attempts to assert a setoff right of

$1,122,848.29, which is comprised of the $1,010,769 refund and the $400,000.00 credit.  The amended

proof of claim essentially asserted a new secured claim against the Liquidating Debtor based upon the

previously waived secured claim against Mirabilis.

28.     The Debtors contend and this Court agrees that the transfer and application of the

$400,000.00 credit to Claim No. 2 was a violation of the post-confirmation injunction contained in the Plan

and the Confirmation Order.   Furthermore, the attempt to assert a setoff right against the $1,010,769

refund is also a violation of the post-confirmation injunction contained in the Plan and the Confirmation

Order.  As discussed more fully below, the $400,000.00 credit and the $1,010,769 refund were pre-

petition property of the estate which vested in the Liquidating Debtor free and clear of all Liens, security

interests, Claims and Interests of the holders of Claims and Interests, and all such Liens, security interests,

Claims and Interests were extinguished.

### IRS WAIVED SETOFF RIGHTS

29.     The Court established November 23, 2008 as the claims bar date for filing proofs of claim

by a governmental unit in the Mirabilis bankruptcy case, and December 2, 2008 as the claims bar date for

filing proofs of claim by a governmental unit in the AEM bankruptcy case.

30.    When the IRS filed Claim No. 2, the IRS stated that it was an unsecured priority claim in the amount of $395,023.11 and a general unsecured claim in the amount of $43,150.37. <u>Mirabilis Exh. 5</u>. Although the proof of claim form includes a section requiring a secured creditor, including a creditor with a right of setoff, to indicate their secured status, the IRS did not complete the "secured claim" section of the form. Claim No. 2 did, however, state that the "United States has not identified a right of setoff or counterclaim. However, this determination is based on available data and is not intended to waive any right of setoff ..." <u>Id</u>.

31.    Likewise, the IRS filed Claim No. 4, the IRS stated that it was an unsecured priority claim in the amount of $2,492,059.53 and a general unsecured claim in the amount of $703,602.30.[9] <u>Mirabilis Exh. 21</u>. Although the proof of claim form includes a section requiring a secured creditor, including a creditor with a right of setoff, to indicate their secured status, the IRS did not complete the "secured claim" section of the form. Claim No. 4 did, however, state that the "United States has not identified a right of setoff or counterclaim. However, this determination is based on available data and is not intended to waive any right of setoff ..."

32.    As of the Confirmation Hearing, the IRS had not asserted any claim or right of setoff to either the $400,000.00 credit or the $1,010,769 refund by virtue of the proofs of claim filed or by motions for relief from the automatic stay to setoff Claim No. 2 or Claim No. 4.

---

[9] On October 9, 2009, AEM filed an Objection to Allowance of the Claim No. 4 ("Claim No. 4 Objection") (AEM Doc. No. 162). The basis for the objection to the Claim No. 4 was that the IRS had miscalculated the 941 taxes owed by AEM, and that AEM had actually overpaid its withholding taxes. AEM filed amended first and second 941 quarterly returns for 2007 requesting a refund in the total amount of $25,155,522. On November 9, 2009, the IRS filed a Response to the Claim No. 4 Objection (AEM Doc. No. 179). In the response, the IRS did not dispute the validity of the claimed overpayment, but simply requested an opportunity to substantiate the amount of federal payroll tax deposits. At this time, the IRS still did not assert a lien, security interest or claim to any overpayment.

33.    The IRS claims that it had no knowledge of either the $400,000.00 credit or the $1,010,769 refund; however, this Court does not find that position credible. First, the IRS knew of the $400,000.00 in May of 2007, because the IRS received and cashed the cashier's check. Mirabilis Exh. 9. Secondly, the IRS administratively moved the $400,000.00 from Mirabilis' Form 1120 Account to Mirabilis' Form 941 Account, where the money stayed until April 2010. Mirabilis Exh. 25. The IRS had actual knowledge of the $400,000.00 for almost two and half years before Confirmation.

34.    With respect to the $1,010,769 refund, the IRS knew Mirabilis was claiming a refund due to a pre-petition overpayment of income taxes for almost a year and half before Confirmation. Mirabilis Exh. 20. On July 11, 2008, Mirabilis filed its Schedules and specifically identified on Schedule B an anticipated tax refund in the estimated amount of $1,200,000.00. Mirabilis Exh. 31. On July 16, 2008, an employee of the IRS reviewed the Schedules and noted that the Schedules list "the IRS claim as contingent & disputed, citing they are, or will be, owed a $1.2M refund ... IRS' proof of claim still stands at $438K for 02/200512." Mirabilis Exh 20, pp. 24-25. The IRS then attended the continued §341 meeting of creditors on July 21, 2008, and confirmed that "Cuthill stated there is a potential refund due the debtor of $1.2M from carryback of NOL on 2006 & 2007, that will more than FP the bal due for 2004 & 2005." Id. at 25. Then, on September 15, 2009, Mirabilis filed the amended 2005 tax return claiming the $1,010,769 refund. Mirabilis Exh. 12. The IRS knew of the estimated refund claim for almost a year and half before Confirmation and of the actual submitted claim for the refund almost a month before Confirmation. The IRS failed to file an amended claim prior to Confirmation.

35.    The IRS has no explanation why it did not file a claim asserting a right of setoff with respect to the $400,000.00. The IRS claims that it could not have filed an amended claim prior to Confirmation

asserting a right of setoff for the estimated $1.2 million refund because "due to the past criminal activity of the Debtor, the records being in exam, I would have waited to make certain that this is truly a credit that is available to us." October 20, 2010 Transcript, p. 97. However, the IRS also admitted that it files estimated claims, and did so in this case with Claim No. 36. This Court does not find Ms. Summers testimony on this issue to be credible. The IRS had ample knowledge, opportunity and notice to file a secured claim in the Mirabilis bankruptcy case asserting either the $400,000.00 or the estimated $1.2 million refund. The IRS failed to timely assert it known right of setoff prior to Confirmation, and prior to Claim No. 2 being disallowed.

36.    In addition, the Plan contains three classes of Claims and Interests, and provides for the payment of Allowed Priority Tax Claims in Cash upon the Effective Date, or in quarterly payments with interest. Mirabilis Exh. 1. The Plan does not classify any Claim or Interest as secured, and does not provide for any distribution or satisfaction of any secured claims. See id. The only Claims in existence as of the Confirmation Hearing were priority claims pursuant to 11 U.S.C. §507(a) and general unsecured claims.

37.    The Confirmation Order made the following findings of fact and conclusions of law which are relevant to the Claim Objection and the Turnover Motion:

> 4.    In accordance with § 1141(a) of the Bankruptcy Code, the provisions of the Plan and this Confirmation Order are binding on the Debtors, Liquidating Debtor, each Creditor, and every other party-in-interest in this case and each of their respective successors and assigns (whether or not such Creditors or parties-in-interest voted to accept the Plan, whether or not they are Impaired under the Plan, and whether or not any such Holder has filed, or is deemed to have filed a proof of Claim or proof of Interest), and any other Person giving, acquiring, or receiving property under the Plan, and any lessor or lessee of Property to or from

the Debtor. The rights afforded in the Plan and the treatment of all Claims and Interests therein shall be in exchange for and in complete satisfaction of all Claims and Interest of any nature whatsoever, known or unknown, including, except as expressly provided in the Plan, interest accrued on or expenses incurred in connection with such Claims from and after the Order for Relief, against, the Liquidating Debtor or its property or interests in property.

* * *

6.   In accordance with §§524 and 105(a) of the Bankruptcy Code, and except as otherwise provided in the Plan and this Confirmation Order on and after the Effective Date all Persons are permanently enjoined from, and restrained against, commencing or continuing in any court any suit, action, or other proceeding, or otherwise asserting any Claim or Interest, seeking to hold liable: … (b) the property of Liquidating Debtor, for any claim, obligation, right, interests, debt or liability that has been discharged or released pursuant to the Plan and for any and all claims arising under bankruptcy or nonbankruptcy law relating in any way to the Debtors, Liquidating Debtor or its business.

* * *

7.   In accordance with §1141(b) of the Bankruptcy Code and the Plan, title to the Debtors' assets, shall vest in the Liquidating Debtor on the Effective Date … Except as otherwise expressly provided in the Plan and in this Confirmation Order, all assets and property of the Debtors shall be vested in the Liquidating Debtor, free and clear of all Liens, security interests, Claims and Interests of the holders of Claims and Interests, and all such Liens, security interests, Claims and Interests are hereby extinguished. Mirabilis Exh. 3.

38.     Moreover, the Plan also provides "unless otherwise provided in the Confirmation Order, all injunction or stays provided for in Chapter 11 cases pursuant to sections 105 or 362 of the Code or previously imposed in this case by the Court or otherwise in existence on the Confirmation Date shall remain in full force and effect until the entry of a final decree or an order dismissing this case." Mirabilis Exh. 1, p. 16.

39.     Pursuant to the Plan and Confirmation Order, the $400,000.00 credit and the $1,010,769

refund vested in the Liquidating Debtor on the Effective Date, free and clear of all Liens, security interests,

Claims and Interests of the holders of Claims and Interests, and all such Liens, security interests, Claims

and Interests were extinguished.  Furthermore, the Plan and Confirmation Order prohibit the IRS from

commencing or continuing in any court any suit, action, or other proceeding, or otherwise asserting any

Claim or Interest, seeking to hold liable the property of Liquidating Debtor, for any claim, obligation, right,

interests, debt or liability that has been discharged or released pursuant to the Plan and for any and all

claims arising under bankruptcy or nonbankruptcy law relating in any way to the Debtors, Liquidating

Debtor or its business.

40.     This Court finds that the IRS agreed to be and is bound by the provisions in the Plan with

respect to the treatment of its Allowed Priority Tax Claims and General Unsecured Claims filed in the

Mirabilis and AEM bankruptcy cases.  The IRS cannot now belatedly seek to have its claims treated as

secured claims.  Accordingly, this Court finds that the IRS waived any right of setoff it may have had.

## CONCLUSIONS OF LAW

1.     The Liquidating Debtor asserts the following: (i) Claim No. 36 should only be

allowed in the amount of $136,908.07, and neither penalties nor interest should be allowed because of the

agreement reached between the IRS and Mirabilis and because of the conduct of the IRS; (ii) the IRS

waived its right of setoff with respect to the $400,000.00 credit and the $1,010,769 refund due to failing

to preserve the claim of lien in the proofs of claim, therefore by virtue of the Confirmation Order and 11

U.S.C. §1141, all property of the estate in Mirabilis vested in the Liquidating Debtor, except as otherwise

provided for in the Plan; (iii) even if the IRS had cause not to timely assert its right of setoff, the Plan and

Confirmation Order preclude the assertion of a right to setoff post-confirmation; and (iv) moreover, even if the Court were to assume the IRS is entitled to assert a right of setoff, the Court has the discretion to prohibit the IRS' exercise of setoff for equitable reasons.

2.      The IRS denies the Liquidating Debtor's allegations and asserts that: (i) there was no agreement on the payment or amount of Claim No. 36, only that Mr. Cuthill would be treated as an employee rather than as an independent contractor; (ii) the IRS did not have to assert the right of setoff in the proof of claim because the claim of lien did not arise until the IRS determined that the $1,010,769 refund was in fact due and owing to the Debtor; and (iii) the Plan and Confirmation Order permit the IRS to apply the right of setoff to Claim No. 4.

3.      The evidence before the Court is clear that the IRS and the Debtor came to an agreement regarding the treatment of Mr. Cuthill as an employee of Mirabilis, rather than as an independent contractor.  The Debtor agreed and this Court ordered that "the compensation for Mr. Cuthill, both pre and post confirmation, shall be treated as employee compensation pursuant to 26 U.S.C. §3121(d)(1). The Liquidating Debtor and Debtors shall have sixty (60) days following Confirmation to prepare and file appropriate tax returns and to have the Liquidating Debtor to pay the required payroll tax." Mirabilis Exh. 1, p.13, ¶(c).  It would be inconceivable that the IRS would agree to provide the Debtor with sixty (60) days to file the appropriate tax returns, but then still expect to charge the Debtor penalties and interest dating back to September 2008.  Moreover, Mr. Shuker made clear at the Confirmation Hearing, and Ms. Ide did not object, that the Debtor would not be held liable for penalties or late fees with respect to the 941 taxes.  Mirabilis Exh. 2, p.23.

4.      The Debtor filed the appropriate tax returns well within the sixty (60) day time period

provided for in the Plan. Mirabilis Exh. 10. In the 941 tax returns, Mr. Cuthill applied the $400,000.00

credit to the outstanding 941 tax liability for Mirabilis and requested a refund for the difference. September

15, 2010 Transcript, pp. 46-48. Over three (3) months passed before the IRS notified Mirabilis that the

$400,000.00 would not be applied to the 941 tax liability. What followed was an additional three month

period where the IRS failed to properly advise Mirabilis or this Court of the dispute regarding the

Administrative Claim. For over six (6) months, the IRS sat silent, withholding the $400,000.00 credit,

charging penalties and interest, which had been waived, and investigating Mr. Cuthill personally, all the

while knowing that there was a legitimate dispute over the Administrative Claim. The IRS did not act with

professionalism, diligence or good faith. In this case, it would seem that the IRS, and not Mr. Cuthill, was

trying to have it both ways.

     5.    On or about May 14, 2007, Mirabilis delivered to the IRS a cashier's check in the

amount of $400,000 as a "voluntary payment: Mirabilis Ventures, AEM Inc. April 2007." Mirabilis Exh.

9. As of the Mirabilis Petition Date, the $400,000 had not been applied to any outstanding tax liability of

Mirabilis and was sitting in Mirabilis' Form 941 Account as a credit. Mirabilis Exh. 8. In addition, on or

about September 15, 2009, Mirabilis filed an amended 2005 income tax return, which requested a carry

back of Mirabilis' 2006 NOL in the amount of $18,044,400.00. Mirabilis Exh. 12. Due to the NOL, the

income generated by Mirabilis in 2005 was completely offset. Id. As such, the income taxes previously

paid by Mirabilis were available for refund from the IRS in the approximate amount of $1,010,769. Id.

     6.    Property of the estate is defined broadly to include "all legal and equitable interests

of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1)(2005). It is well

established that the proceeds due from a tax overpayment become property of the estate to the extent that

the overpayment was made pre-petition. <u>Kokoszka v. Belford</u>, 417 U.S. 642, 648, 94 S.Ct. 2431, 41

L.Ed.2d 374 (1974); <u>U.S. v. Michaels</u>, 840 F.2d 901, 901-02 (11th Cir. 1988). Accordingly, as of the

Mirabilis Petition Date, the $400,000.00 credit and the $1,010,769 refund were property of the Mirabilis

bankruptcy estate because the related overpayments were made by Mirabilis pre-petition. Moreover, as

of Confirmation, the $400,000.00 credit and the $1,010,769 refund had not been: (i) applied by the IRS

to an existing pre-petition tax liability of Mirabilis; (ii) asserted by the IRS in a proof of claim as a right of

setoff; or (iii) the subject of a motion for relief from the automatic stay.

7.     If a creditor's conduct is inconsistent with a subsequent claim of setoff, that creditor

may be found to have waived the setoff right. <u>In re Holder</u>, 182 B.R. 770, 776 (Bankr. M.D. Tenn. 1995)

(*citing* <u>Cumberland Glass Manufacturing Co. v. Charles De Witt and Co.</u>, 237 U.S. 447 (1915)); <u>In re</u>

<u>Medina</u>, 177 B.R. 335, 350 (Bankr. D. Or. 1994). In its proof of claim, a creditor "must indicate the

amount of its claim and the extent which it is secured or unsecured." <u>In re 183 Lorraine Street Assoc.</u>, 198

B.R. 16, 26 (E.D.N.Y. 1996). The filing of a proof of claim without asserting a setoff right constitutes a

waiver of that right. <u>In re Gehrke</u>, 158 B.R. 465, 468 (Bankr. N.D. Iowa 1993); <u>In re Aquasport, Inc.</u>,

115 B.R. 720, 721-22 (Bankr. S.D. Fla. 1990),aff'd. 155 B.R. 245 (S.D. Fla. 1992), aff'd. 985 F. 2d

579 (11th Cir. 1993). Furthermore, a party may waive its right to setoff by failing to timely assert it and

if a creditor provides information that its claim is not subject to setoff and the debtor relies on that

information to his detriment, then the right to setoff may be waived. <u>In re Apex International Management</u>

<u>Services, Inc.</u>, 155 B.R. 591, 595 (Bankr. M.D. Fla. 1993), aff'd. 1996 WL 172210 (M.D. Fla. 1996).

8.     In the instant case, the actions of the IRS were wholly inconsistent with an assertion

In re: Mirabilis Ventures Inc.
Case. No.6:08-bk-04327-KSJ

19

U.\Bkry\Mirabilis\IRS Claim Obj\pld\ffcl.wpd

of a right of setoff. While the IRS did articulate a general reservation of rights in its proofs of claims, it failed to list its claim as a secured claim, specifically stated in its proofs of claims that it was an unsecured priority tax claim and a general unsecured claim, and failed to object to the classification, treatment, and post-confirmation injunctions provided for in the Plan. Such "reservation of rights" cannot enable creditors to preserve all their rights with this type of language, as this would render the establishment of a bar date illusory and prevent the efficient administration of bankruptcy cases.

       9.      In addition, the IRS has attempted post-confirmation to inappropriately change the status of Claim No. 2 and Claim No. 4 for the first time from a priority and unsecured claim to a secured claim. See In re National Merchandise Co. Inc., 206 B.R. 993, 999-1000 (Bankr. M.D. Fla. 1997). Claimants asserting setoff rights are treated as secured claimants pursuant to §506 of the Bankruptcy Code. See id. The secured claim cannot relate back to the initial claim and is a new claim which is barred by the bar date. In re Alliance Operating Corp., 60 F.3d 1174, 1175 (5th Cir. 1995); In re W.F. Monroe Cigar Co., 166 B.R. 110, 112-113 (N.D. Ill. 1994). As set forth by the Seventh Circuit Court of Appeal in the case Holstein v. Brill, 987 F.2d 1268, 1270-71 (7th Cir. 1993) "post-confirmation amendments … throw monkey wrenches into the proceedings, making the plan infeasible or altering distributions to remaining creditors … To every thing there is a season, and the season for stating the amount of a debt is before the confirmation of a plan of reorganization."

       10.      Moreover, Mirabilis relied to its detriment on the information contained in Claim No. 2 and Claim No. 4. This is apparent from the Plan's classification of specific creditors. Based upon information known to Mirabilis, Mirabilis identified all known claimants asserting secured claims, priority claims and general unsecured claims and placed them in the appropriate class. Based upon the information

In re: Mirabilis Ventures Inc.
Case. No.6:08-bk-04327-KSJ

20

U:\Bkry\Mirabilis\IRS Claim Obj\pld\ffcl.wpd

provided by the IRS, Mirabilis identified the IRS as a priority claimant and an unsecured claimant. The IRS

did nothing, until after Confirmation, to assert its right of setoff.

11.    As such, this Court finds that the IRS waived its rights of setoff pursuant to the Plan

and Confirmation Order, and should not be permitted to amend Claim No. 2 and Claim No. 4 and create

a "new secured claim" which was not provided for in the Plan or the Confirmation Order.

12.    As such, the $400,000.00 credit and the $1,010,769 refund were property of Mirabilis'

bankruptcy estate and remained property of the estate until the Effective Date.  By virtue of the

Confirmation Order and 11 U.S.C. §1141, all property of the estate in Mirabilis vested in the Liquidating

Debtor, except as otherwise provided for in the Plan. Accordingly, as of the Effective Date, the

$400,000.00 credit and the $1,010,769 refund vested in the Liquidating Debtor free and clear of all Liens,

security interests, Claims and Interests of the holders of Claims and Interests, and all such Liens, security

interests, Claims and Interests were extinguished. As such, this Court finds that the IRS has no claim or

right to the $400,000.00 credit and the $1,010,769 refund.

13.    However, even if the IRS had cause not to timely assert its right of setoff, the Plan and

Confirmation preclude the assertion of a right to setoff post-confirmation. The IRS' setoff claim is barred

by the doctrine of *res judicata* because the Plan and Confirmation Order expressly provide for the

treatment of the allowed priority tax claims and general unsecured claims of the IRS, and the provisions of

11 U.S.C. §1141(b) and Confirmation Order take precedence over the statutory right of the IRS granted

by 11 U.S.C. §553 and 26 U.S.C. §6402(a).

14.    In the instant case, the Plan and Confirmation Order specifically enjoin any creditor from

"asserting any Claim or Interest, seeking to hold liable ... the property of Liquidating Debtor, for any claim,

obligation, right, interests, debt or liability that has been discharged or released pursuant to the Plan and

for any and all claims arising under bankruptcy or nonbankruptcy law relating in any way to the Debtors,

Liquidating Debtor or its business." Mirabilis Exh. 3 (Confirmation Order), p. 12. In addition, the IRS filed

priority tax claims and general unsecured claims, voted in favor of the Plan as an unsecured creditor, failed

to object to those provisions prohibiting the retention of Liens, security interests, Claims and Interests of

the holders of Claims and Interests, and because the Plan was confirmed and no appeal was taken, the

IRS' assertion of its setoff rights is barred by *res judicata*.

15.    Section 553 of the Bankruptcy Code provides, in pertinent part, "except as otherwise

provided ... this title does not affect any right of a creditor to offset a mutual debt owing by such creditor

to the debtor." 11 U.S.C. §553(a). Section 1141(a) provides that the provisions of a confirmed plan bind

(among others) "any creditor . . . whether or not the claim or interest of such creditor . . . is impaired under

the plan and whether or not such creditor . . . has accepted the plan," with two exceptions, one of which

is tangentially relevant in the instant case. Under §1141(d)(3), the confirmation of a chapter 11 plan does

not discharge a debtor if (as here):

> (a) the plan provides for the liquidation of all or substantially all of the
> property of the estate;
>
> (b) the debtor does not engage in business after consummation of the plan;
> and
>
> (c) the debtor would be denied a discharge under section 727(a) of this
> title if the case were a case under chapter 7 of this title. 11
> U.S.C.§1141(2005).

16.    The net effect of the provisions of §1141(d)(3) is that a corporate debtor which is liquidated under chapter 11 and does not continue in business after its chapter 11 plan goes into effect does not receive a bankruptcy discharge. However, irrespective of §1141(d)(3), the plan is still binding on the creditors and other parties-in-interest, including post-confirmation injunctions and releases contained within the plan. In re Suncruz Casinos LLC, 342 B.R. 370, 380 (Bankr. S.D. Fla. 2006).

17.    In Suncruz Casinos the debtors filed and confirmed a liquidating plan which provided in pertinent part that upon the effective date: (i) all property of the debtors vested free and clear in the liquidating debtor; and (ii) all entities which held pre-confirmation claims against the estates were permanently enjoined from asserting a setoff of any kind against any obligation due to the liquidating debtors. See In re Suncruz Casinos LLC, 342 B.R. at 380. The issue before the court was whether the plan could extinguish a right to setoff even though the debtor was liquidating and did not receive a discharge. See id. The court held that since the plan prohibited the assertion of any setoff rights, the provisions were binding on creditors and parties-in-interest to the case because: (i) the plan and disclosure statement were properly served; and (ii) all parties had full opportunity to object to the proposed prohibition. See id. at 381.

18.    In the case In re Lykes Bros. Steamship Co. Inc., 217 B.R. 304, 307 (Bankr. M.D. Fla. 1997)[10] the Government (Commodity Credit Corp.) attempted to assert a right of setoff post-confirmation in contravention to the injunction provisions of the confirmed plan. One of the issues before the court was

---

[10]    On October 24, 2005, the United States District Court entered an order affirming the bankruptcy court's decision in the case styled United States of America v. Lykes Bros. Steamship Co. Inc., case no. 8:98-cv-00518-HLA-TGW (Doc. No. 20). The United States then appealed the decision to the Eleventh Circuit Court of Appeals. The appeal to the Eleventh Circuit was dismissed on February 23, 2006, pursuant to a motion to dismiss filed by the United States.

whether the confirmed plan and the provisions of §1141 of the Bankruptcy Code could override the provisions of §553 of the Bankruptcy Code and abrogate a creditor's right of setoff. See id. at 309-310. The court held that given the overriding policy favoring reorganization, the provisions of Section 1141 take precedence over Section 553. See id. at 310. As such, the court reasoned that although the two Bankruptcy Code sections appeared to be in conflict, the competing policy of "facilitating a reorganization found to be in the interest of all creditors" mandated the disgorgement of an asset belonging to a debtor. Id. Accordingly, the court determined that a plan could prohibit the assertion of setoff rights. Id.

19.     In the instant case, the Plan and the Confirmation Order bind the IRS to the terms and conditions set forth therein. The IRS cannot now attempt to relitigate the issues resolved by the Plan and approved by a final Confirmation Order. First, the priority tax claims of the IRS were treated in accordance with §1129(a)(9). If the IRS intended to incorporate their rights of setoff to the treatment otherwise being provided by the Plan, then the IRS should have asserted those rights and objected to the Plan. However, the IRS did nothing but accept the proposed classification and payment and otherwise support the Plan. Second, if the IRS intended their rights of setoff to pass through the Plan and Confirmation Order, then the IRS should have asserted those rights and objected to the injunction and release provisions contained within the Plan. However, the IRS did not object to those provisions. Instead the IRS unilaterally and without notice violated those provisions of the Plan and Confirmation Order, and asserted their extinguished setoff rights to the $400,000.00 credit and the $1,010,769 refund.

20.     At the Hearing, the IRS argued that the Confirmation Order did not extinguish their setoff rights, but rather preserved them and enabled the IRS to use the $400,000.00 credit and the $1,010,769 refund owed to Mirabilis to offset Claim No. 4. The IRS bases this argument on paragraph Y of the

Confirmation Order which states, in pertinent part, "for purposes of determining the availability of the right

of setoff under section 553 of the Bankruptcy Code, the Debtors shall be treated for purposes of the Plan

as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to

any of the Debtors may be set off against the debts of any of the Debtors." Mirabilis Exh. 3, p. 7.

21.     However, the IRS misses the point of the above referenced language. This provision does

not resurrect or create any substantive right of setoff. It merely provides that if a creditor has properly

preserved and enforced a right of setoff against one of the Debtors, then it may apply that right of setoff

against any of the Debtors. In this case, the IRS did not preserve or properly enforce a right of setoff

regarding the $400,000.00 credit or the $1,010,769 refund owed to Mirabilis prior to Confirmation. After

Confirmation and without notice, authority, or Court approval, the IRS did setoff Claim No. 2 with the

$400,000.00 credit. However, this act was in violation of the Plan and Confirmation Order and is void.

22.     Accordingly, this Court finds that the Plan and Confirmation Order specifically addressed

the claims of the IRS, including those provisions of the Plan which prohibited the assertion of setoff rights.

The Plan and Confirmation Order should be accorded full *res judicata* effect, and prohibit the IRS'

assertion of its extinguished setoff rights. As of the Effective Date, the $400,000.00 credit and the

$1,010,769 refund vested in the Liquidating Debtor free and clear of all Liens, security interests, Claims

and Interests of the holders of Claims and Interests, and all such Liens, security interests, Claims and

Interests were extinguished. Accordingly, the IRS has no setoff right to either the $400,000.00 credit or

the $1,010,769 refund.

23.     Moreover, even if this Court were to assume that the IRS is entitled to assert a right of

setoff, this Court has the discretion to prohibit the IRS' exercise of setoff for equitable reasons. See In re Securities Group 1980, 74 F.3d 1103, 1114 (11th Cir. 1996) (holding that bankruptcy courts have the discretion to deny setoff on equitable grounds.); see also U.S. v. Norton, 717 F. 2d 767 (3d Cir. 1983). As stated in the case In re Pyramid Industries, Inc., 210 B.R. 445, 451-452 (N.D. Ill. 1997), set off may be denied: (i) where the creditor acted inequitably; (ii) where the setoff would jeopardize the debtor's ability to reorganize; or (iii) in a liquidation context where the setoff would result in either a preference or priority over other unsecured creditors.

24.    In the instant case, the IRS did not act as a secured creditor, but rather acted as a priority tax and unsecured claimant and failed to object to the provisions in the Plan and Confirmation Order which prohibit setoff. The IRS could have asserted its rights of setoff at any time prior to Confirmation, objected to the classification and treatment of its claims, or objected to the injunction and release provisions in the Plan and Confirmation Order. For this Court to reward the IRS now and permit the belated assertion of its rights of setoff would unfairly prefer the IRS over other unsecured creditors and severely prejudice the Liquidating Debtor. The Plan provided for the Liquidating Debtor to pursue all Causes of Action for the benefit of the Allowed Unsecured Claimants (Class 2). Mirabilis made clear to the IRS that the $1,010,769 refund would serve as a source of funds to litigate the Causes of Action, which would hopefully generate a recovery of funds for the distribution to Class 2 creditors. To allow the IRS to now assert a secured claim with respect to the $1,010,769 refund unfairly favors the IRS' unsecured claim over the other Allowed Unsecured Claimants. The IRS would receive substantially more than the other Allowed Unsecured Claimants. This scenario was never disclosed to the other Allowed Unsecured Claimants and should have been as part of the confirmation process.

25.    Moreover, throughout the post-confirmation process the IRS has been attempting to take a second bite at the apple. As stated earlier by this Court, "Mr. Cuthill is being hampered at every avenue in pursuing recovery of litigation for the biggest creditor, which is ironically, the United States, although, other creditors do exist." Mirabilis Exh. 17 (April 22, 2010 Transcript), p. 82. The IRS and its counsel have been less than forthcoming with this Court, and have needlessly increased the cost of litigation in this case. As such, this Court finds that there is ample evidence to conclude that the IRS has acted inequitably in this case.

26.    Accordingly, upon entry of this Order, the IRS is to pay the IRS Administrative Claim in the amount of $136,908.07 from the $1,122,848.29 the IRS is currently holding, and turnover the remaining $985,940.22 to the Liquidating Debtor. This amount represents the amount of setoff stated by the IRS in the August 6, 2010 amendment to Claim No. 4. This Court will reserve jurisdiction to determine the amount of additional funds to be turned over, if the Liquidating Debtor further disputes the amount owed.

_____
Karen S. Jennemann
United States Bankruptcy Judge

Copies to:

Mirabilis Ventures Inc.: President R.W. Cuthill, Jr., c/o R. Scott Shuker, Esq., Latham, Shuker, Eden &Beaudine, LLP, 390 N. Orange Avenue, Suite 600, Orlando, Florida 32801;

Counsel for Liquidating Debtors: R. Scott Shuker, Esq. and Mariane L. Dorris, Esq., Latham, Shuker, Eden & Beaudine, LLP, 390 N. Orange Avenue, Suite 600, Orlando, Florida 32801;

Counsel for IRS: Carol Koehler Ide, Trial Attorney, Tax Division, U.S. Department of Justice, P.O. Box 141 98, Ben Franklin Station, Washington, D.C.;

the Local Rule 1007-2 parties-in-interest list; and

Office of the United States Trustee, 135 West Central Boulevard, Suite 620 Orlando, Florida 32801.

In re: Mirabilis Ventures Inc.
Case. No.6:08-bk-04327-KSJ

28

U:\Bkry\Mirabilis\IRS Claim Obj\pld\ffcl.wpd