UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

MIRABILIS VENTURES, INC.,              Case No. 6:08-bk-04327-KSJ

      Debtor.

_____/

**NOTICE OF FILING UNITED STATES' PROPOSED
FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING
DEBTOR'S OBJECTION TO ALLOWANCE OF CLAIM NO. 36
("IRS ADMINISTRATIVE CLAIM") AND DEBTOR'S MOTION FOR TURNOVER**

      The creditor, United States of America, submits the attached proposed Findings of

Fact and Conclusions of Law Regarding Debtor's Objection to Allowance of Claim No. 36

("IRS Administrative Claim") and Debtor's Motion for Turnover in accordance with this

Court's request.

                           Respectfully submitted,

                           JOHN A. DICICCO
                           Acting Assistant Attorney General

                          _s/ Carol Koehler Ide_____
                           CAROL KOEHLER IDE
                           Trial Attorney, Tax Division
                           U.S. Dept. of Justice
                           P.O. Box 14198
                           Washington, DC 20044
                           Telephone: (202) 514-5887
                           Telefax: (202) 514-4963
                           E-mail: Carol.Koehler.Ide@usdoj.gov

Of Counsel:
      ROBERT E. O'NEILL
      United States Attorney

                                                 4714888.1

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

MIRABILIS VENTURES, INC.,                    Case No. 6:08-bk-04327-KSJ

      Debtor.

_____/

### FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING DEBTOR'S OBJECTION TO ALLOWANCE OF CLAIM NO. 36 ("IRS ADMINISTRATIVE CLAIM") AND DEBTOR'S MOTION FOR TURNOVER

The debtor, Mirabilis Ventures, Inc., has objected to the Internal Revenue Service's Request for Payment of Internal Revenue Taxes, as amended, and has requested a refund of payroll taxes in the amount of $234,486.18, as well as turnover of funds and attorneys' fees and costs for alleged violations of the automatic stay. (DE 567, 617.[1]) These matters were tried on September 15, 2010, and October 20, 2010.

### FINDINGS OF FACT

1.    Mirabilis Ventures, Inc., and AEM, Inc., were two of several companies controlled through 2007 by convicted tax offender Frank L. Amodeo. *See Mirabilis Ventures, Inc. v. Saxon, Gilmore, etc. (In re Mirabilis Ventures, Inc.)*, 2010 WL 2509624 (M.D. Fla. June 18, 2010). Mirabilis Ventures, AEM, and Amodeo jointly owe the United States $200,000,000 in evaded payroll taxes, pursuant to judgments of criminal restitution. *United States v. AEM, Inc.*, Case No. 6:08-cr-231 (M.D. Fla. July 27,

_____

[1] Unless otherwise indicated, references to "DE" are to the docket entries in this bankruptcy case.

2010) (DE 157); *United States v. Frank L. Amodeo*, Case No. 6:08-cr-176 (M.D. Fla. July 2, 2009) (DE 140). In addition to its tax claims in these consolidated bankruptcy cases, the United States has a $200,000,000 general unsecured claim for restitution and forfeiture. (DE 101, ¶28; 145.)

2.      On May 27, 2008, R. William Cuthill was appointed President of Mirabilis Ventures, and the company filed a Chapter 11 petition in bankruptcy. Its case was administratively consolidated with those of two related debtors, Hoth Holdings, LLC, and AEM, Inc.

3.      By order entered August 4, 2009, amended September 1, 2009, the debtors' joint amended disclosure statement was approved. (DE 228, 266.) The order and amended order approving the debtors' joint disclosure statement and scheduling the confirmation hearing provide, *inter alia*, that creditors and parties in interest that assert post-petition claims "file applications for the allowance of such claims with the court no later than [September 21, 2009]". (DE 228, 266.) This requirement specifically exempts claims arising after the Administrative Claims Bar Date. (*Id.*)

4.      The Internal Revenue Service filed timely applications for payment of post-petition taxes on behalf of the United States.

5.      The orders approving the disclosure statement further contemplate that not all post-petition, administrative claims will be adjudicated at confirmation: they provide that applications for payment of post-petition expenses not heard at the confirmation hearing would be scheduled for hearing in the normal course. (DE 228, 266.)

4714888.1

*Confirmation*

6.    On October 27, 2009, the debtors' joint amended plan of reorganization was

confirmed. (DE 234, 371, 375.)

7.    The plan provides that the liquidating debtors will not continue in business and will

not receive a discharge. (DE 371, p.16, Art. IX(7).)

8.    The plan provides that Allowed Administrative Claims will be paid 100% of the

Claim as of the plan's Effective Date or as soon thereafter as it becomes an Allowed

Claim. Applicants who filed an application for payment of post-petition expenses did

not need to file another application prior to the Administrative Claims Bar Date.

(DE 234, p.17, Art. IV(A); DE 371, p.7, Art. VI(10); DE 375, p.9, ¶I.GG.)

9.    The confirmed amended plan specifically addresses administrative claims for taxes:

The Debtor and Liquidating Debtor agree that the compensation for
Mr. Cuthill, both pre and post confirmation, shall be treated as employee
compensation pursuant to 26 U.S.C. §3121(d)(1). The Liquidating Debtor and
Debtors shall have sixty (60) days following Confirmation to prepare and file
appropriate tax returns and to have the Liquidating Debtor [] pay the required
payroll tax. ...

(DE 371, ¶IX(6)(c).) Thus, pre- and post-confirmation compensation to the debtors'

President, Mr. Cuthill, shall be treated as employee compensation pursuant to

26 U.S.C. § 3121(d).

10.    The debtor filed payroll tax returns by the plan's deadline but has not paid the

required payroll tax liabilities.

4714888.1

11.    The plan requires the debtor to timely file corporate income and payroll tax returns

and timely pay all applicable taxes. Its exculpation clause does not prospectively

relieve the debtor or any responsible person (as defined by the provisions of 26 U.S.C.

§§ 3505, 6672) related to federal taxes, specifically:

> [The exculpation clause] shall not eliminate any liability for Allowed [T]ax
> Claims nor shall it relieve the Liquidating Debtor from its responsibility for
> timely filing both corporate [income] and payroll tax returns and from timely
> paying all applicable taxes. Moreover, the Exculpation Clause does not
> prospectively release the Liquidating Debtor or any responsible person related
> to federal taxes; ...

(DE 375, p.2.)

12.    The plan provides that injunctions and stays remain in effect, except as otherwise

provided: in particular, creditors are permitted to set off debts owed to one debtor

against those owed by its related debtors:

> [F]or purposes of determining the availability of the right of setoff, under
> section 553 of the Bankruptcy Code, the Debtors shall be treated for purposes
> of the Plan as one entity so that, subject to the other provisions of section 553
> of the Bankruptcy Code, *debts due to any of the Debtors may be set off against
> the debts of any of the Debtors*.

(DE 371, p.16, Art. IX(7)(c); DE 375, p.7 ¶I(Y)(v) (emphasis added).)

*Pre-Petition Tax Claims –*
*Mirabilis Ventures, Inc.*

13.     Prior to the petition date, on or before October 16, 2006, Mirabilis Ventures filed its

corporate income tax return for the year 2005 showing $63,173 in income tax due.

(DE 325, Exh. A; Gov. Exh. 6.)[2]

14.     On May 14, 2007, Mirabilis Ventures delivered to the IRS a personal check in the

amount of $400,000, apparently to pay its Form 941 payroll taxes. (DE 567, ¶7 &

Exh. A; Debtor's Exh. 9.) For many reasons, not the least of which was that Mirabilis

Ventures was under criminal investigation at the time, the IRS refused the check and

required Mirabilis Ventures make its tax payments by cashier's or certified check.

(Testimony of Insolvency Specialist Sherrill Summers, Transcript, October 20, 2010

("Tr. II"), p.43:18 - 44:7.) Later that day, Mirabilis Ventures tendered to the IRS a

cashier's check in the amount of $400,000, bearing the notation: "Voluntary Payment:

Mirabilis Ventures AEM, Inc. April 2007."  (DE 567, ¶7 & Exh. B; Gov. Exh. 16;

Tr. II, p.45:2 - 46:1.)

15.     As of May 14, 2007, neither Mirabilis Ventures nor AEM had filed a Form 941

payroll tax return for the first or second quarter 2007. (Gov. Exh. 1, ¶¶2, 3.) The only

outstanding liability of record in May 2007 for either Mirabilis Ventures or AEM was

Mirabilis Ventures' income tax liability (Form 1120) for the year 2005. (Gov. Exh. 5,

---

[2] References to "Debtor's Exh. __" and "Gov. Exh. __" are to those exhibits admitted into
evidence in the referenced contested matters heard September 15 and October 20, 2010.

4714888.1

6; Tr. II, p.47:5-9). Therefore, IRS Revenue Officer Morris applied the $400,000

payment to the Form 1120 liability for 2005. (Gov. Exh. 5; Tr. II, p.45:13 - 46:1.)

16.    As a result of the $400,000 payment, on or about June 25, 2007, Mirabilis Ventures

received an income tax refund for the year 2005 in the amount of $4,940.69, and on or

about July 2, 2007, Mirabilis Ventures received an income tax refund for the year

2005 in the amount of $308,120.99. (Gov. Exh. 1, ¶¶ 6, 8; Gov. Exh. 5; Tr. II, p.36:6-

17.) At that point, the debtor's account for its 2005 income tax liability reflected a

balance due of zero. (Gov. Exh. 1, ¶9; *see* Tr. II, p.50:5-8.)

17.    On or about June 26, 2007, apparently at the request of Mirabilis Ventures made

through the IRS Supervisory Special Agent, the IRS took steps to transfer the

$400,000 payment to AEM, Inc.'s Form 941 liability for the first quarter 2007. (Gov.

Exh. 1, ¶7.) The transfer was not completed until the first quarter of 2008. At that

time, $400,000 was transferred from Mirabilis Ventures' Form 1120 tax account for

2005 to Mirabilis Ventures' Form 941 account for the first quarter 2007. (Gov.

Exh. 6, p.MIR-IRS-00146; Tr. II, p.37:1-2.)

18.    The transfer of a $400,000 payment out of the income tax account and into the

Form 941 account resulted in a balance due or "debit balance" for Mirabilis Ventures'

income tax liabilities for the year 2005. (Gov. Exh. 5; Tr. II, p.34:16-23 & 37:12-19.)

The transfer also resulted in a $400,000 credit showing on Mirabilis Ventures' payroll

tax account for the first quarter 2007, a period for which no tax return had been filed.

(Gov. Exh. 7, p.MIR-IRS-00141; Tr. II, p.42:20-25.)

4714888.1

19.     On June 13, 2008, the IRS filed a timely proof of claim for Mirabilis Ventures' 2005

federal income tax liabilities. (Claim no. 2-1; Debtor's Exh. 5.) As of the petition

date, based on its tax return as filed, Mirabilis Ventures owed a pre-petition 2005

income tax liability of $312,376.29 in tax, plus interest and penalties. (*Id*.; Tr. II,

p.34:16-23 & 37:12-19.)

20.     On the face of the IRS tax claim it stated, as of the claim date:

> The United States has not identified a right of setoff or counterclaim.
> However, this determination is based on available data and is not intended to
> waive any right to setoff against this claim debts owed to this debtor by this or
> any other federal agency. *All rights of setoff are preserved and will be asserted
> to the extent lawful.*

(Emphasis added.)

21.     In its bankruptcy Schedules Mirabilis Ventures had listed a $1.2 million "tax refund"

(DE 36, Schedule B), and claimed that its income tax liability was subject to setoff

against the refund claim (DE 36, Schedule E). However, as of the petition date and as

of the date the proof of claim was filed, the debtor had made no claim for a tax refund

in accordance with the tax law. (Tr. II, p.34:10-15.) As of the confirmation date there

was no determination that Mirabilis Ventures had a tax overpayment. (Tr. II, p.107:17

- 109:4.)

22.     On or about September 15, 2009, well after the May 27, 2008 petition date and after

the deadline for filing objections to confirmation (September 9, 2009 (DE 228)),

Mirabilis Ventures filed grossly delinquent income tax returns for pre-petition years

(2006, 2007) and an amended income tax return for the pre-petition year 2005,

4714888.1

claiming an overpayment in excess of $1 million due to application of a claimed net operating loss ("NOL") carryback from pre-petition year 2006 (26 U.S.C. § 172). (DE 325; Gov. Exh. 5.)

23.   Mirabilis Ventures failed to file a claim for refund in accordance with 26 U.S.C. § 6511 until on or after September 15, 2009, when Mirabilis Ventures filed the amended income tax return for the year 2005. (DE 325; Tr. II, p.96:21 - 97:18 & 108:5 - 109:4.)

24.   On October 9, 2009, the income tax claim was objected to on the ground that an amended income tax return had been filed three weeks prior. (DE 325, 390.) The IRS undertook an examination of the tax returns.

25.   On November 16, 2009, the IRS sent the debtor a notice that there was a $400,000 credit on its Form 941 account for the first quarter 2007. (DE 567, Exh. C.) The IRS requested that the debtor file (or, if filed, re-file) a tax return for that period, or otherwise contact the IRS to determine proper application of the credit. (Debtor's Exh. 6.)

26.   On November 18, 2009, the debtor contacted the IRS (Ms. Yip) and confirmed that there was a $400,000 credit on Mirabilis Ventures' Form 941 account for the first quarter 2007. The debtor was advised that no tax return had been filed for that period, and again requested that the debtor file the tax return, at which point it could be determined what to do with the credit. (Debtor's Exh. 6 & 7 (Deposition of Dinny Yip), p.18:19 - 19:23.)

4714888.1

27.    On or about December 4, 2009, the debtor filed its delinquent payroll tax returns

(Forms 941) for the first quarter 2007 to the present, seeking refund of the $400,000

credit, or such portion as was legally available. (DE 567.) On April 12 and 19, 2010,

the requests were denied. (Gov. Exh. 14.)

28.    Six months after confirmation, in mid-April 2010, the amount of $400,000 was

returned from Mirabilis Ventures' Form 941 payroll tax account for the first quarter

2007 to Mirabilis Ventures' Form 1120 income tax account for the year 2005, where

it originally had been applied, to correct the erroneous application. (Debtor's Exh. 15;

Gov. Exhs. 1, ¶12 & 6, p.MIR-IRS-00147; Tr. II, p.40:18 - 41:11 & 43:18 - 44:9 &

47:22 - 48:9.)

29.    The United States' right to retain the $400,000 pre-petition credit was explained to

debtor's counsel in March 9 and 10, 2010 e-mails, and in a March 26, 2010 letter.

(Debtor's Exh. 11; DE 624-2, 624-3.)

30.    Although the debtor was unable to substantiate the entire amount of the claimed NOL

for 2006, the debtor had substantiated enough of the claimed loss to allow a NOL to

be carried back to the 2005 tax year and negate the claimed income tax liability for

the 2005 tax year. The United States conceded as much at the April 22, 2010 hearing

on the objection to the income tax claim. (Debtor's Exh. 17, p.28:16 - 29:5.) This

Court then sustained the objection to claim, without prejudice to the parties

continuing the examination of the debtor's delinquent tax returns and calculating the

amount of any NOLs, liabilities, or overpayments. (DE 548.)

4714888.1

31. After resolution of the expedited audit regarding Mirabilis Ventures' income taxes, the $400,000 payment was taken into account in the calculation of Mirabilis Ventures' income tax overpayment for 2005. (Tr. II, p.52:13-15.)

32. On or about July 12, 2010, at the conclusion of the examination, the parties agreed that Mirabilis Ventures overpaid its income tax liabilities for 2005 and 2006 by $1,054,308.78 and $68,539.51, respectively. (Gov. Exh. 5; Tr. II, p.38:7-25.)

33. The IRS formally withdrew its income tax claim in *Mirabilis Ventures*. (Claim 2-2; Debtor's Exh. 19.)

34. The pre-petition income tax overpayments are claimed as a setoff against the pre-petition payroll tax liability of the joint debtor, AEM, Inc. (Amended Claim No. 4-2, filed August 6, 2010), in accordance with the provisions of the confirmed plan (DE 375, p.7 ¶I(Y)).

35. At no time during this bankruptcy proceeding has the IRS "paid itself," seized Mirabilis Ventures' assets, or levied funds. (Tr. II, p.85:1-13.)

*Pre-petition Tax Claims –*
*AEM, Inc.*

36. AEM, Inc., was one of several professional employer organizations or PEOs controlled by Amodeo and used in his tax evasion and money laundering scheme. *See Mirabilis Ventures, Inc. v. Saxon, Gilmore, etc. (In re Mirabilis Ventures, Inc.)*, 2010 WL 2509624 (M.D. Fla. June 18, 2010); *In re Mirabilis Ventures, Inc.*, 2010 WL 1644915 (M.D. Fla. Apr. 21, 2010).

4714888.1

37.    In 2007, Amodeo filed a payroll tax return (Form 941) for AEM and related PEOs, claiming a tax liability for the second quarter 2007 of $5,553,824.93, deposits made, and a balance due. (Debtor's Exh. 22 (*In re Aem, Inc.*, Case No. 6:08-bk-04681-KSJ (Bankr. M.D. Fla.) (DE 162).)

38.    On July 10, 2008, the IRS filed a proof of claim for AEM, Inc.'s pre-petition payroll tax liabilities for the second quarter 2007 in the total amount of $3,195,661.83 as of the petition date. (*In re AEM, Inc.*, Case No. 6:08-bk-04681-KSJ (Bankr. M.D. Fla.), claim no. 4-1; Debtor's Exh. 21.)

39.    On the face of the IRS tax claim filed in *AEM* it stated, as of the claim date:

    The United States has not identified a right of setoff or counterclaim.
    However, this determination is based on available data and is not intended to
    waive any right to setoff against this claim debts owed to this debtor by this or
    any other federal agency. *All rights of setoff are preserved and will be asserted
    to the extent lawful.*

    (Emphasis added.)

40.    Well after the petition date, in December 2009, AEM filed delinquent payroll tax returns, including one for the pre-petition first quarter 2007, and an amended payroll tax return for the pre-petition second quarter 2007, claiming overpayments totaling over $26 million. An objection to claim is pending. (*In re AEM, Inc.*, *supra* (DE 162, 179).)

41.    After the Mirabilis Ventures income tax audit was complete, on August 6, 2010, the IRS amended its proof of claim in *AEM* to reflect the Mirabilis Ventures pre-petition overpayments as setoffs. Thus, the claim was reclassified to reflect that $1,122,848.29

- 11 -

of the claim is secured by the pre-petition overpayments of Mirabilis Ventures and the remainder is an unsecured priority claim. (*In re AEM, Inc.*, Case No. 6:08-bk-04681-KSJ (Bankr. M.D. Fla.), claim no. 4-2; Debtor's Exh. 25; Tr. II, p.55:12 - 56:17;11 U.S.C. § 506(a)(1).) This claim was made in reliance on the plan provision allowing setoff. (Tr. II, p.92:3-8.)

*Post-Petition Tax Claim –*
*Mirabilis Ventures, Inc.*

42.    In accordance with usual procedure, on June 25, 2009, the IRS sent the debtor notice that its payroll tax returns for 2008 and 2009 were delinquent. (Gov. Exh. 11.) The debtor immediately replied that it thought it was not required to file such returns. (*Id.* at 12.) The debtor asserted it relied on the advice of its accountant but has no evidence of that advice other than the self-serving testimony of its President. (Testimony of R. William Cuthill, Transcript, September 15, 2010 ("Tr. I"), p.109:7 - 110:13.)

43.    In fact, Mr. Cuthill held himself out as an employee during this proceeding to avoid the requirement of filing an application for payment of professional fees. (Tr. I, p.132:21 - 133:24; *Mirabilis Ventures, Inc. v. Rachlin Cohen Holtz, LLP, etc. (In re Mirabilis Ventures, Inc.)*, Case No. 6:09-cv-271 (M.D. Fla.) (Deposition testimony of R.W. Cuthill, April 21, 2010, p.51:2-21).)

44.    The debtor contends that the IRS failed to respond to its June 26, 2009 assertion that it was not required to file post-petition payroll tax returns. (*See* Tr. I, p.21:18 - 22:8;

Tr. II, p.90:16-19.) To the contrary: the IRS had filed requests for payment of post-petition taxes and an objection to confirmation belying the debtor's assertion that it was not required to file payroll tax returns. (DE 279, 280, 281, 366, 605, 606; Tr. II, p.72:14 - 73:7.)

45.    The IRS filed several requests for payment of post-petition, pre-confirmation tax liabilities in *Mirabilis Ventures, Inc.*: May 22, 2009 (DE 279); July 8, 2009 (DE 280); August 31, 2009 (DE 281); March 17, 2010 (claim no. 36-4; DE 606); and September 2, 2010 (DE 605; Debtor's Exh. 4). The first three requests were estimated due to the debtor's failure to file post-petition payroll tax returns. (*Id*; Tr. II, p.57:17 - 58:1.) The fourth request reflected the amounts reported on the payroll tax returns the debtor filed in December 2009. The fifth request simply updates the interest and penalties owed on account of these liabilities. (DE 605; Tr. II, p.58:7 - 59:13.)

46.    As of September 15, 2010, the post-petition tax liabilities of the debtor total $208,235.90 (plus additional interest and penalties to the date of payment), based on tax returns as filed, as follows:

4714888.1

| Type of Tax | Period | Tax | | Interest | | Penalty | |
|---|---|---|---|---|---|---|---|
| Withholding/ FICA | 09/30/2008 | $ | 39,846.96 | $ | 4,110.75 | $ | 19,325.77 |
| | 12/31/2008 | $ | 17,774.20 | $ | 1,559.30 | $ | 8,442.74 |
| | 03/31/2009 | $ | 29,771.27 | $ | 2,168.65 | $ | 13,694.78 |
| | 06/30/2009 | $ | 31,924.73 | $ | 1,902.74 | $ | 14,206.50 |
| | 09/30/2009 | $ | 17,590.91 | $ | 727.20 | $ | 5,189.32 |
| FUTA | 2008 | $ | 0 | $ | 0.08 | $ | 0 |

(Gov. Exhs. 1, ¶14 & 3; Tr. II, p.59:20-22.)

47.    The debtor contends that it owes no post-petition taxes because a pre-petition credit of $400,000 should be applied to not only satisfy the post-petition liability but generate a refund for post-petition periods. In April 2010 the IRS denied the requested application and, for post-petition periods, demanded payment. (Gov. Exh. 14.)

48.    The IRS is not permitted to set off pre-petition overpayments against post-petition tax liabilities. (Tr. II, p.71:14-20.)

49.    No portion of the post-petition taxes has been paid. (Tr. II, p.59:3-7 & 75:23-25.)

50.    Penalties and interest accrue as part of the unpaid post-petition payroll taxes. (Gov. Exh. 9; Tr. II, p.60:15 - 63:4.) The debtor has not requested relief from the penalties or interest in accordance with the internal revenue law. (Tr. II, p.70:11-16 & 80:22 - 81:13.)

4714888.1

51.     The debtor contends that it owes only the portion of the post-petition taxes that is "tax" admitted due because of a "deal" struck during the confirmation process. No settlement was made to abate penalties or interest; rather, the settlement reflects only an agreement to treat Mr. Cuthill as an employee in accordance with law. (Tr. II, p.106:3-25.)

52.     Because the debtor failed to pay post-petition payroll taxes, the IRS initiated an investigation into whether Mr. Cuthill or others were personally responsible for payment of the "trust fund" portion of those taxes, in accordance with 26 U.S.C. § 6672. The investigation was suspended as a courtesy to the debtor, with no final determination yet made. (Tr. II, p.83:11-14 & 84:21-25; Testimony of Revenue Officer Carpenter, Tr. I, p.92:11-15 & 95:7-12.)

## CONCLUSIONS OF LAW

**I.      The IRS Timely and Properly Filed an "Administrative Claim" That Should Be Allowed**

1.      Well before the Administrative Claims Bar Date the IRS filed requests for payment of post-petition payroll taxes. That the requests initially were filed in the claims registry and moved to the case docket by the clerk of court is immaterial. The IRS request, as amended, is proper and timely and must be paid in full regardless of any perceived procedural irregularity.

2.      The IRS is not required to file a claim for post-petition taxes, but does so as a courtesy to the debtor and other creditors.

4714888.1

3.       Section 503 of the Bankruptcy Code provides:

(a) An entity *may* timely file a request of payment of an administrative expense, ...

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title [pertaining to involuntary cases], including –

                                    ***

         (B) any tax –
                  (i) incurred by the estate, ... except a tax of a kind specified in section 507(a)(7) of this title [pre-petition taxes]; ...

         (C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph; and

         (D) *notwithstanding the requirements of subsection (a), a governmental unit shall not be required to file a request for the payment of an expense described in subparagraph (B) or (C), as a condition of its being an allowed administrative expense*; ...

11 U.S.C. § 503 (emphasis added).

4.       Pursuant to 11 U.S.C. § 503(b)(1)(D), post-petition taxes incurred by a bankruptcy

estate are allowable as an administrative expense, *regardless of whether the*

*Government files an application for payment*. Any accruing interest and penalties on

these taxes also are allowable administrative expenses, pursuant to

Section 503(b)(1)(C) and *United States v. Cranshaw (In re Allied Mechanical*

*Services, Inc.)*, 885 F.2d 837, 839 (11th Cir. 1989) (holding Government entitled to

administrative expense priority on its claim in Chapter 7 liquidation for interest

accrued on tax liability incurred while debtor was operating under Chapter 11

reorganization).

- 16 -

5.   To seek payment of post-petition taxes the IRS typically files a "Request for Payment of Internal Revenue Taxes (Bankruptcy Code Cases – Administrative Expenses)" as it did in this case. (Tr. II, p.57:17 - 59:13.) Where the IRS has filed such a form, prior to the plan confirmation hearing, it is a sufficient "administrative claim." *Kinney v. IRS (In re Kinney)*, 123 B.R. 889, 891 (Bankr. D. Nev. 1991) (holding that such Request complied with Bankruptcy Code Section 503(a): it put the debtor on notice of the existence of a tax claim that would be allowed unless an objection was made and that confirmation hearing satisfied Section 503(b) requirement).

6.   Here, the IRS filed periodic requests for payment of estimated post-petition taxes well in advance of the confirmation hearing, placing the debtor on notice that the IRS contended the debtor owed post-petition payroll taxes. The debtor knew the specific amount of its liability when it filed its delinquent tax returns in December 2009. The debtor provided that post-petition taxes would be paid in its confirmed plan, properly noticed and set for hearing. When the debtor finally filed the tax returns required by law, the IRS filed an amended request, in the exact amounts calculated by the debtor. The debtor failed to request relief from penalties, nor has it established reasonable cause for relief from penalties. Thus, the debtor's claim that the IRS request should be disallowed is wholly unfounded and its objection is overruled.

4714888.1

**II.    A Credit in the Amount of $400,000 Was Properly Applied to Mirabilis Ventures' Form 1120 Liability for the Year 2005, Retained as an Overpayment, and Set off Against the Joint Debtor's Tax Liabilities Rather than Applied to Post-petition Taxes**

7.    After Mr. Cuthill's appointment as President of Mirabilis Ventures on May 27, 2008, he became an employee: it is long-standing law that a corporate officer is an employee. 26 U.S.C. § 3121(d). As such, the corporation is required to withhold income and FICA taxes from his wages, and pay the withheld taxes, along with the corporation's share of FICA and FUTA tax, over to the United States. 26 U.S.C. §§ 3101, 3102, 3111, 3301. This was not done; hence, in May 2009 the IRS filed a claim estimating the amount of accruing post-petition tax liabilities.

8.    Before confirmation of the joint plan, Mirabilis Ventures had improperly treated Mr. Cuthill as an independent contractor not subject to such payroll tax. In accordance with the internal revenue laws and the terms of the confirmed plan, however, Mirabilis Ventures corrected this error and, on December 6, 2009, Mirabilis Ventures filed the overdue Forms 941, treating Mr. Cuthill as an employee and admitting tax due as follows:

4714888.1

| Tax Period | Tax Due Per Return | Tax Due Per IRS |
|---|---|---|
| 03/31/2007 | $0 | $0 (pre-petition period) |
| 06/30/2007 | $28,605.75 | $0 (pre-petition period – paid in full prior to the bankruptcy) |
| ----------------- | ------------------------------ | ------------------------------------------------- |
| 09/30/2008 | $39,846.96 | $39,846.96 |
| 12/31/2008 | $17,774.20 | $17,774.20 |
| 03/31/2009 | $29,771.27 | $29,771.27 |
| 06/30/2009 | $31,924.73 | $31,924.73 |
| 09/30/2009 | $17,590.91 | $17,590.91 |

9.     As noted above, in mid-November 2009 Mirabilis Ventures was notified of a

$400,000 "credit" on its payroll tax account for the first quarter 2007 (for which no

tax return had been filed). After it filed that and other delinquent tax returns, Mirabilis

Ventures requested that the $400,000 "credit" be applied to its liability for the second

quarter 2007 despite the fact that the company had paid that liability two years prior.

Mirabilis Ventures requested the sum be "carried forward" to the post-petition

liabilities for the third quarter 2008 and forward, paying them in full and resulting in a

claimed refund of $234,486.18.

10.    By notices dated April 12 and 19, 2010, the IRS denied Mirabilis Ventures' requests.

11.    In mid-April 2010, the IRS returned the $400,000 payment from the payroll tax

account for the first quarter 2007 to the income tax account for the year 2005. Then,

- 19 -

when the income tax audit was complete, computed income tax overpayments for the

2005 and 2006 tax years, taking into account the $400,000 reapplied.

<u>The Actions of the United States Did Not Violate the Automatic Stay</u>

12.    The automatic stay provision of the Bankruptcy Code provides, in relevant part, that

the filing of a bankruptcy petition generally operates as a stay of –

(3)    any act to obtain possession of property of the estate or of property from the
estate or to exercise control over property of the estate; ...

(6)    any act to collect, assess, or recover a claim against the debtor that arose
before commencement of the case under this title;

(7)    the setoff of any debt owing to the debtor that arose before the commencement
of the case under this title against any claim against the debtor; ...

11 U.S.C. § 362(a)(3), (6), (7).

13.    "[F]or cases filed after October 17, 2005, 11 U.S.C. § 362(b)(26) permits the IRS to

setoff a pre-petition income tax overpayment against a pre-petition income tax

liability without seeking relief from the automatic stay," so setoff is not a stay

violation. *In re Gould*, 603 F.3d 1100 (9th Cir. 2010), *cert. denied, Gould v. United

States*, 2010 WL 3727185 (U.S. Nov. 8, 2010).

14.    To prevail on its claim that the United States violated the automatic stay by moving a

tax credit from one pre-petition period to another and not applying the credit to post-

petition periods, the debtor must establish that the United States' retention of the

funds involved "property of the estate" or was something other than an authorized

setoff. It cannot, and the debtor's request is denied.

4714888.1

<u>The $400,000 Credit and Any Overpayment Is Not Property of the Estate</u>

15.    Section 541(a)(1) of the Bankruptcy Code defines property of the bankruptcy estate as

"all legal or equitable interests of the debtor in property as of the commencement of

the case." An "interest" in a pre-petition tax refund or a contingent claim for a refund

is property of the estate. *Kokoszka v. Belford*, 417 U.S. 642, 648 (1974); *In re*

*Barowsky*, 946 F.2d 1516, 1518-19 (10th Cir. 1991).

16.    There is a difference between a right to a refund or a contingent claim for a refund

and the funds themselves. *In re Sissine*, 432 B.R. 870, 881 (Bankr. N.D. Ga. 2010).

17.    The Internal Revenue Code (26 U.S.C.) ("I.R.C.") draws an important distinction

between a "tax overpayment" and a "tax refund." I.R.C. Section 6402(a) provides

that a taxpayer is only entitled to a tax refund <u>after</u> the Service has exercised its

discretion to credit a claimed overpayment against any other tax liability owed by the

taxpayer.[3] 26 U.S.C. § 6402(a); 26 C.F.R. §§ 301.6402-3(a)(6), 301.6402-4.

18.    "Until the [Service] exercises this discretion [to set off mutual debts], the taxpayer

has no right to payment." *In re Gould*, 401 B.R. 415, 424 (B.A.P. 9th Cir. 2009),

*aff'd*, 603 F.3d 1100 (9th Cir. 2010), *cert. denied, Gould v. United States*, 2010 WL

3727185 (U.S. Nov. 8, 2010), *citing Pettibone Corp. v. United States*, 34 F.3d 536,

538 (7th Cir. 1994); *see In re Luongo*, 259 F.3d 323, 335 (5th Cir. 2001) (finding that

---

[3] Section 6402 also provides that the Service must apply any overpayment towards certain other liabilities before issuing a refund, such as past-due support payments and debts owed to other federal agencies. 26 U.S.C. § 6402(b) and (c).

4714888.1

"under 26 U.S.C. § 6402(a) the debtor is generally only entitled to a tax refund to the extent that her overpayment exceeds her unpaid tax liability"); *In re Sissine*, 432 B.R. at 882 ("Debtor only becomes entitled to a tax refund when the Secretary has made any pertinent § 6402(c) adjustments."); *In re Pigott*, 330 B.R. 797, 800 (Bankr. S.D. Ala. 2005) (holding "taxpayer only has a refund right after the IRS has credited any overpayment to other unpaid taxes."); *Lyle v. Santa Clara County Dept. of Child Support Servs.*, 324 B.R. 128, 131 (Bankr. N.D. Cal. 2005) (holding "the express provisions of the Internal Revenue Code make it clear that the debtor's interest in a refund is contingent on the subsequent statutory determination of what portion of the overpayment, if any, the debtor is entitled to receive as a refund."); *see also In re Ryan*, 64 F.3d 1516, 1524 (11th Cir. 1995) (holding that IRS may apply an overpayment to any earlier tax liability regardless of taxpayer's designation of payment, because "[p]ursuant to clear statutory authority and the implementing Treasury Regulations, the IRS has the discretion to designate the application of overpayments among a taxpayer's various tax liabilities.").

19.     This distinction is essential here: while a tax *refund* is property of the estate, a tax *overpayment* is not.

20.     Recently, the Northern District of Georgia bankruptcy court held that "[a] taxpayer's overpayment does not create a right to the funds. Rather, the IRS must first determine that the overpayment should become a refund [after making any pertinent Section 6402(c) adjustments]. Only then does the taxpayer have a right to receive the

funds." *In re Sissine*, 432 B.R. at 882; *see In re Luongo*, 259 F.2d at 335 ("Because

the prior unpaid tax liability exceeded the amount of the overpayment, the debtor was

not entitled to a refund and the tax [overpayment] did not become property of the

estate."); *Beaucage v. United States Internal Revenue Service*, 342 B.R. 408, 411 (D.

Mass. 2006) (rejecting Debtor's position that "a tax overpayment is an asset of the

debtor's estate rather than a property right contingent on the [Service's] exercise of

discretion."); *In re Pigott*, 330 B.R. at 802 ("26 U.S.C. § 6402(a) precludes the [ ] tax

overpayment of the [Debtors] from being part of the bankruptcy estate until the

Secretary of the Treasury releases it to them as a refund"); *In re Shortt*, 277 B.R. 683,

688 (Bankr. N.D. Tex. 2002) (determining that if the amount of the tax overpayment

is completely offset "there is no net refund to become property of the estate"). Simply

put, until the IRS determines that there is a refund due the debtor, the funds are not

property of the bankruptcy estate.

21.     Judge Briskman faced a similar issue in *Henkel v. United States (In re Carpenter)*,

367 B.R. 850 (Bankr. M.D. Fla. 2006), a Chapter 7 case. There, the debtors had

requested that part of a pre-petition income tax overpayment (for 2004) be applied to

a post-petition income tax liability (for 2005). Post-petition, the debtors filed an

amended income tax return showing an additional pre-petition liability (for 2003).

The IRS initially honored the debtors' request to apply the overpayment to the post-

petition period, but reversed it during the bankruptcy. 367 B.R. at 852. The trustee

filed an adversary proceeding for turnover, to recover a fraudulent transfer, to recover

a post-petition transfer, and for an injunction. The debtors agreed that the pre-petition liability for 2003 could be set off against the pre-petition overpayment for 2004, but they also requested that the post-petition liability for 2005 be set off against the 2004 overpayment. *Id*. at 854. The Court held that the debtors' "position is contrary to the relevant statutory and case law. They are not entitled to setoff any [post-petition] 2005 tax liability against the overpayment." *Id*. & at 857-858. It further held that the debtors and the IRS owed each other mutual pre-petition debts, so the IRS had a right to setoff the 2003 liability against the 2004 overpayment; only that portion of the overpayment remaining <u>after</u> setoff would be property of the estate, to be turned over to the trustee. *Id*. at 856-857. *Accord In re Braniff Airways, Inc.*, 42 B.R. 443, 451-452 (Bankr. N.D. Tex. 1984) (holding that after setoff of debtor's pre-petition claim against the Government and the Government's pre-petition claim against debtor, there were no remaining funds available to setoff against post-petition debt, so "the post-petition Payroll Taxes will have to be paid in cash pursuant to [the plan].").

22.    While Mirabilis Ventures itself has no outstanding pre-petition tax liabilities for which a claim was filed, its joint debtor, AEM, Inc., does. The confirmed joint plan provides that "the Debtors shall be treated for purposes of the Plan as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be set off against the debts of any of the Debtors." (DE 375, p.7 ¶I(Y).) The only applicable provision of Section 553 is that the debts to be set off be mutual: be pre-petition and involve the same parties. 11 U.S.C. § 553(a);

*Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995). Thus, Mirabilis Ventures'

tax overpayments may be set off against AEM's tax debts.

23.     In this case, the $400,000 credit has been incorporated into the calculation of a pre-

petition income tax overpayment by Mirabilis Ventures and set off against the pre-

petition payroll tax liabilities of the joint debtor, AEM. AEM's liabilities exceed the

overpayment amounts.

24.     Even if the $400,000 credit were returned to Mirabilis Ventures' Form 941 account

for the first quarter of 2007 and held there as an overpayment (because there is no tax

due from Mirabilis Ventures for that quarter), it properly would be set off against the

pre-petition payroll tax liabilities of the joint debtor, AEM.

25.     Just as in the cases cited above, the unpaid pre-petition tax liabilities of the debtor,

AEM, exceed the amount of the pre-petition overpayments of the joint debtor,

Mirabilis Ventures. After setoff there is no refund due to the debtor or the estate.

Consequently, there was no "property of the estate" against which the IRS exercised

control. The IRS did not violate the automatic stay by either moving the subject funds

or retaining the overpayments. And for the reasons set forth *infra*, the funds are not

subject to turnover.

26.     In sum, the United States' retention of the $400,000 payment did not involve property

of the estate or an act to collect a claim, rather, its use in calculating an overpayment

and consequent setoff is in accordance with Section 362 and the provisions of the

debtors' confirmed plan.

4714888.1

III.     **The Corporate Debtor Is Not Entitled to Attorneys' Fees, Costs or Other Damages for the United States' Retention of a Tax Credit or Overpayment**

27.     Even if the United States' retention of the $400,000 in any fashion had violated the automatic stay – and for the reasons discussed above it did not – the debtor would not be entitled to any relief.

28.     Bankruptcy Code Section 362(k) provides a remedy to an "individual" who has been damaged by a violation of the automatic stay. 11 U.S.C. § 362(k). Although the Bankruptcy Code does not define the term individual, the United States Court of Appeals for the Eleventh Circuit has construed the term narrowly based upon the statute's plain meaning, concluding that "the term 'individual' is limited to natural persons and does not include corporations or other artificial entities." *Jove Engineering, Inc. v. IRS*, 92 F.3d 1539, 1552-1553 (11th Cir. 1996).

29.     The debtor corporation is not entitled to damages even if there were a stay violation.

30.     Nor is the debtor entitled to attorney fees and costs under 11 U.S.C. § 105. Bankruptcy Code § 362 and Sections 7430 and 7433 of the Internal Revenue Code are the exclusive remedies for recovery of attorney fees and costs for a violation of the automatic stay by the United States. 26 U.S.C. § 7433(e)(2)(B). *See, cf., Kovacs v. United States*, 614 F.3d 666, 673 (7th Cir. 2010) ("The exclusivity provision of 26 U.S.C. § 7433 is exceedingly clear and explicitly states that it applies "notwithstanding" 11 U.S.C. § 105. Because it is the "exclusive" remedy available to [debtor] prior to recovering for a willful violation of 11 U.S.C. § 524 [or § 362], a

- 26 -

party must comply with the requirements of 26 U.S.C. § 7433 that may divest a

bankruptcy court of jurisdiction."); *see also In re Lowthorp*, 332 B.R. 656 (Bankr.

M.D. Fla. 2005) (holding that debtors must comply with the jurisdictional

prerequisites of 26 U.S.C. §§ 7430 and 7433 prior to recovery due to a willful

violation of 11 U.S.C. § 524).

31.    Even if the debtor were entitled to seek attorneys' fees and costs under any of these

statutes, this Court would lack jurisdiction over that claim because the debtor has

failed to exhaust its administrative remedies. 26 U.S.C. § 7430(b)(1), 7433(d)(1);

26 C.F.R. § 301.7433-1(e), (h).

32.    To the extent the debtor may be claiming that the post-petition tax liabilities should

be abated as a sanction for a stay violation, its request must be denied. Even if the stay

were violated, "the punishment for violating the automatic stay is payment of

damages, costs, and fees, not abatement of previously assessed [liabilities]. 11 U.S.C.

§ 362[k]." *Matter of Carlson*, 126 F.3d 915, 924 (7th Cir. 1997); *see In re Innovation

Instruments, Inc.*, 228 B.R. 313, 316 (Bankr. N.D. Fla. 1998).

33.    Nor may this Court deny a creditor's valid setoff rights in lieu of awarding damages

even if there were a stay violation. *United States v. Ruff (In re Rush-Hampton Indus.,

Inc.)*, 98 F.3d 614, 616 (11th Cir. 1996). In other words, the United States is entitled

to exercise its setoff rights regardless of whether it violated the stay.

34.    Here there was no stay violation under any reading of the facts. The debtor may desire

to have its post-petition taxes paid through application of a pre-petition credit or

4714888.1

overpayment, or as some sort of sanction, but this Court cannot allow it. This Court is

a court of equity, but "it cannot use its equitable power to circumvent the law."

*Matter of Carlson*, 126 F.3d at 920.

    **IV.**    **The Debtor Is Liable for Interest and Penalties on its Post-Petition Tax Liabilities**

35.    The debtor is liable for the claimed post-petition interest and penalties on its unpaid

payroll tax liabilities.

36.    "Required payroll tax" means all lawful tax as well as interest, additions to tax, and

penalties. 26 U.S.C. §§ 6601(e)(1), 6665(a)(2); *see* Debtor's Exhibit 2, October 16,

2009 Hearing, p.19:17-21.

37.    The interest, totaling $10,468.72, is listed on the request; the penalties in issue total

$60,858.81 as of September 15, 2010, itemized as follows:

4714888.1

| Tax Period Ending | Assessed Penalty for Failure to File Return | Assessed Penalty for Failure to Deposit Tax | Assessed and Accrued Penalties for Failure to Pay | Total |
|---|---|---|---|---|
| Sept. 30, 2008 | $    8,965.57 | $       3,984.69 1,992.35 | $       3,386.99 996.17 | $   19,325.77 |
| Dec. 31, 2008 | $    3,999.19 | $       1,777.42 888.71 | $       1,333.06 444.36 | $     8,442.74 |
| Mar. 31, 2009 | $    6,698.54 | $       2,977.13 1,488.56 | $       1,786.28 744.27 | $   13,694.78 |
| June 30, 2009 | $    7,183.06 | $       3,192.47 1,596.24 | $       1,436.61 798.12 | $   14,206.50 |
| Sept.30, 2009 | $    1,583.18 | $       1,759.09 879.55 | $         615.68 351.52 | $     5,189.02 |

38.     Interest on unpaid federal tax liabilities accrues from the due date of the taxes to the date of payment, and is compounded daily. 26 U.S.C. §§ 6601, 6621, 6622. It is undisputed that the debtor has not paid its post-petition tax liabilities. The post-petition taxes were due upon payment of wages to its employee, Mr. Cuthill. The taxes were not timely paid, so the debtor owes applicable interest. There is no provision for mandatory waiver or excuse of interest, nor may this Court abate the interest under its general equitable power. *Matter of Carlson*, 126 F.3d at 920. The Secretary of the Treasury may, in his discretion, abate interest attributable to unreasonable errors or delays on the part of IRS officials, but he has not chosen to do so, and his decision is not subject to review by this Court. 26 U.S.C. § 6404(e), (h)(1).

4714888.1

39.    Section 6651(a)(1) of the Internal Revenue Code imposes a penalty against a taxpayer for failure to file a return on the prescribed date. The penalty is 5% of the tax required to be shown on the return for each month or fractional month for which there is a failure to file, not to exceed 25%. 26 U.S.C. § 6651(a)(1). The penalty is added to the tax owed for the year "unless it is shown that such failure is due to reasonable cause and not due to willful neglect . . . ."  26 U.S.C. § 6651(a)(1).

40.    Section 6651(a)(2) imposes a penalty for failure to pay the tax liability shown on the taxpayer's return on or before the prescribed date. This penalty is added to the tax owed "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." 26 U.S.C. § 6651(a)(2). In a bankruptcy case, if the failure to pay was "pursuant to an order of the court finding probable insufficiency of funds of the estate to pay administrative expenses," the penalty applies <u>only</u> to the trust fund portion of the tax, and is prospective only. 26 U.S.C. § 6658(a) and (b); *In re DuPage Boiler Works, Inc.*, 98 B.R. 907, 909-910 (Bankr. N.D. Ill. 1989) (holding relief available only from date of judicial determination of probable insufficiency of funds, and is subject to reconsideration if additional assets recovered).

41.    The debtor has offered no evidence of probable insufficiency of funds of the estate to pay administrative expenses.

42.    A penalty or addition to tax is imposed for a corporation's failure to make deposits of payroll taxes, based on the amount of its underpayment, unless the failure is due to reasonable cause and not due to willful neglect. 26 U.S.C. § 6656.

4714888.1

43.   The Supreme Court has explained that "Congress' purpose in the prescribed civil

penalty [for late filing] was to ensure timely filing of tax returns to the end that tax

liability will be ascertained and paid promptly." *United States v. Boyle*, 469 U.S. 241,

245 (1985) (establishing a bright line rule that reliance on an agent to file a timely

return when the due date is ascertainable by the taxpayer does not constitute

reasonable cause). "To escape the penalty, the taxpayer bears the heavy burden of

proving both (1) that the failure did not result from 'willful neglect,' and (2) that the

failure was 'due to reasonable cause.'" *Id.*; *see also Staff IT, Inc. v. United States*, 482

F.3d 792, 800-801 (5th Cir. 2007) (explaining that this burden is so heavy that to the

Fifth Circuit's knowledge only one appellate opinion has ever concluded that a

taxpayer's failure to <u>pay</u> payroll taxes in a timely fashion was the result of reasonable

cause and not willful neglect, *citing Eastwind Indus., Inc. v. United States*, 196 F.3d

499 (3rd Cir. 1999)).

<u>Willful Neglect</u>

44.   For purposes of 26 U.S.C. §§ 6651(a)(1) and (2), "the term 'willful neglect' may be

read as meaning a conscious, intentional failure or reckless indifference." *Boyle*, 469

U.S. at 243. Under this standard, willful neglect will be found unless "the failure to

file a return was the result 'neither of carelessness, reckless indifference, nor

intentional failure.'" *Staff IT, Inc.*, 482 F.3d at 798.

4714888.1

<u>Reasonable Cause</u>

45.   Although the term "reasonable cause" is not defined in the Tax Code, "the relevant

Treasury Regulation calls on the taxpayer to demonstrate that he exercised 'ordinary

business care and prudence' but nevertheless was 'unable to file the return within the

prescribed time.'" *Boyle*, 469 U.S. at 246 (*quoting* 26 C.F.R. § 301.6651(c)(1)).

46.   Reasonable cause for failure to pay a tax on time will exist "where the taxpayer

'exercised ordinary business care and prudence in providing for payment of his tax

and was nevertheless either unable to pay the tax or would suffer an undue hardship'

if he paid the tax on time." *Sanford v. United States*, 979 F.2d 1511, 1514 n.8 (11th

Cir. 1992).

47.   The Court must make factual findings for each of the tax periods at issue regarding

whether the debtor has made the statutorily required showing of reasonable cause for

each penalty and each period in question. *See Sanford*, 979 F.2d at 1514.

48.   In determining whether a taxpayer has exercised ordinary business care and prudence,

consideration will also "be given to the nature of the tax which the taxpayer has failed

to pay."  26 C.F.R. § 301.6651-1(c). For example, facts and circumstances which

"may constitute reasonable cause for nonpayment of income taxes may not constitute

reasonable cause for failure to pay over taxes ... that are collected or withheld from

any other person." 26 C.F.R. § 301.6651-1(c). Thus, the Sixth Circuit has held that

the facts and circumstances required to establish reasonable cause must be

"particularly compelling" where the funds at issue are trust fund taxes withheld from

4714888.1

employees' wages. *See Brewery, Inc. v. United States*, 33 F.3d 589, 592 (6th Cir. 1994).

49.     In *Boyle*, the Supreme Court recognized, without having to rule on same, that the IRS has articulated eight reasons for a late filing that the Government considers reasonable cause for exempting penalties for late filing, including the "death or serious illness of the taxpayer or a member of his immediate family." *See Boyle*, 469 U.S. at 243 n.1 (citing Internal Revenue Manual (CCH) § 4350, (24) ¶22.2(2) (Mar. 20, 1980) (Audit Technique Manual for Estate Tax Examiners)); *see also Chamberlin v. Comm'r*, 14 Fed. Appx. 69, 72-73 (2nd Cir. 2001) (recognizing the factors that constitute reasonable cause generally include unavoidable postal delays, death or serious illness of the taxpayer or a member of his immediate family, or reliance on the mistaken legal opinion of a competent tax adviser, lawyer, or accountant that it was not necessary to file a return).

50.     In *Atlas Therapy, Inc., v. United States*, 66 F.Supp.2d 1203, 1207 (N.D. Ala. 1999), the district court found that the bright line rule established in *Boyle* applies equally as well to corporations to prevent such an entity from prevailing against tax penalties simply by showing the corporation relied on an employee to handle payroll taxes. *Atlas Therapy* recognized, however, that *Boyle* distinguished cases involving a taxpayer with a "disability" which precludes compliance with the Tax Code requirements. *Id*. "[A] court may find reasonable cause under § 6651(a)(1) or § 6651(a)(2) if a taxpayer convincingly demonstrates that a disability beyond his control

- 33 -

rendered him unable to exercise ordinary business care." *Sanford*, 979 F.2d at 1514 n.8.

<u>The Debtor Cannot Demonstrate Reasonable Cause for its Failures</u>

51.    It is undisputed that the debtor did not file post-petition tax returns for the third quarter 2008 through the third quarter 2009 until December 2009. Its failure to make deposits of payroll taxes, and to pay the tax admitted due, continues to this day. Imposition of these penalties is appropriate.

52.    The debtor's president, Mr. Cuthill, claims that he was advised by his tax advisor that he could treat himself as a "1099 worker," that is, as an independent contractor, not an employee. There is no documentary evidence that the debtor's tax advisor rendered such an opinion. No such advisor testified at trial. Mr. Cuthill's self-serving testimony carries little weight. *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir.1985) (holding "conclusory allegations without specific supporting facts have no probative value"). This is particularly true given that Mr. Cuthill was a licensed Certified Public Accountant for nearly 30 years. (Tr. I, p.98.)

53.    Regardless, there is no debate that a corporate officer, performing the extensive duties Mr. Cuthill has testified he performs, is an employee under the Internal Revenue Code. 26 U.S.C. § 3121(d); 26 C.F.R. § 31.3121(d)-1(b). As such, there is no question that the debtor had a duty to withhold and pay over payroll taxes, and file appropriate payroll tax returns. The debtor cannot demonstrate reasonable cause for its failures. *See Van Camp & Bennion v. United States*, 251 F.3d 862, 869 (9th Cir.

- 34 -

2001) (holding that legal standards to determine whether an officer is an employee were clear, and this taxpayer did not justify abatement of penalties); *Boles Trucking, Inc. v. United States*, 77 F.3d 236, 242 (8th Cir. 1996) (holding officer running corporation with no other employees did not demonstrate reasonable cause for failure to pay taxes); *see also Yeagle Drywall Co., Inc. v. Comm'r*, 54 Fed.Appx. 100, 104 (3d Cir. 2002) (holding corporation lacked reasonable basis for not treating its officer as an employee under Section 530 of the Revenue Act of 1978, P.L. 95-600, as amended). Therefore, the claimed interest and penalties are allowed.

54.    The debtor suggested that the notice it received from the IRS about the $400,000 credit misled it into thinking it lawfully could apply that amount to its post-petition liabilities, and that the United States is equitably estopped from denying such an application. The face of the notice and the deposition testimony of IRS customer service representative Dinny Yip belie such a claim: the notice and subsequent conversation made clear that before anything could be done with the credit, Mirabilis Ventures had to file its delinquent tax returns. There was no promise of a refund.

55.    Regardless, "it is far from clear that the doctrine of equitable estoppel may even be applied against a government agency." *Savoury v. United States Attorney General*, 449 F.3d 1307, 1318 (11th Cir. 2006). "The Supreme Court's decisions indicate that even if estoppel is available against the Government, it is warranted only if affirmative and egregious misconduct by government agents exists." *Sanz v. United States Security Insurance Co.*, 328 F.3d 1314, 1319-20 (11th Cir. 2003).

4714888.1

56.    "Affirmative misconduct" requires more than governmental negligence or inaction. *Savoury*, 449 F.3d at 1319. Neither the Supreme Court nor the Eleventh Circuit has ever found affirmative misconduct sufficient to support a claim of equitable estoppel against the government. *See Savoury*, 449 F.3d at 1318.

57.    The Southern District of Alabama recently discussed a number of Eleventh Circuit cases where, despite incorrect statements or arguable misrepresentations made by government officials, no affirmative misconduct was found. *United States v. Miller*, 2010 WL 2202776 *4-5 (S.D. Ala. May 28, 2010) (holding estoppel inapplicable where, at worst, government official implied collection action would begin at a later date). Here, the debtor's claim does not even implicate negligence on the part of the IRS, much less affirmative misconduct.

58.    The debtor also has suggested that the doctrine of laches precludes the United States from receiving payment of its administrative claim. The United States is not bound by a claim of laches. *United States v. Summerlin*, 310 U.S. 414, 416 (1940).

### V.    This Court Lacks Jurisdiction to Consider the Propriety of the United States' Investigation of a Trust Fund Recovery Penalty Liability

59.    The debtor contends that the IRS improperly investigated whether the debtor's sole officer, Mr. Cuthill, may be personally liable for the trust fund portion of the debtor's unpaid post-petition payroll taxes pursuant to 26 U.S.C. § 6672. The debtor contends that IRS Revenue Officer Carpenter acted improperly in scheduling a meeting with Mr. Cuthill, interviewing Mr. Cuthill about the debtor's non-payment of its post-

petition taxes and his potential personal liability for the trust fund portion of those

taxes, and asking that Mr. Cuthill sign two forms: a collection information statement

and a report of interview.

60.    This Court lacks jurisdiction to consider these matters.

61.    Regardless, the IRS did nothing improper and nothing which merits consideration of

sanctions in any form.

62.    Section 6672 of the Internal Revenue Code allows the United States to collect the

unpaid trust fund portion of a company's tax liabilities from those people responsible

for withholding, collecting, or paying over Social Security and income taxes withheld

from employees' wages, who willfully failed to carry out that responsibility.

26 U.S.C. §§ 6672, 7501. The "trust fund recovery penalty" is "separate and distinct

from that imposed on the employer under sections 3102 and 3402 of the Internal

Revenue Code. ..." *United States v. Huckabee Auto Co.*, 783 F.2d 1546, 1548-49

(11th Cir. 1986) (citations omitted). Therefore, the jurisdiction of the bankruptcy

court "does not ... extend to the separate liabilities of taxpayers who are not debtors

under the Bankruptcy Code." *Id*. Mr. Cuthill is not in bankruptcy.

63.    Thus, Mr. Cuthill's potential Section 6672 liability is not something this Court can

adjudicate, and consideration of that potential liability in this contested matter is

inappropriate.

64.    Moreover, Section 7433 of the Internal Revenue Code provides the exclusive remedy

for taxpayers to challenge alleged unauthorized collection activities by IRS officials,

whether they are a debtor challenging a violation of the discharge injunction or automatic stay, or a non-debtor challenging routine collection actions. 26 U.S.C. § 7433(a), (e).

65.    In either instance taxpayers first must exhaust their administrative remedies. 26 U.S.C. § 7433(d)(1); 26 C.F.R. § 301.7433-2; *Delvecchio v. Smith*, 558 F.Supp.2d 1243, 1249 (S.D. Fla. 2008).

66.    To the extent the debtor seeks damages or sanctions against the United States for an alleged violation of the automatic stay or discharge injunction, or for unauthorized collection action in connection with the trust fund recovery penalty investigation, it is premature until Mirabilis Ventures exhausts its administrative remedies and brings an appropriate action in the district court.

**VI.    The United States Is Not Required to Turn over the Debtor's Income Tax Overpayments; Rather, it May Setoff the Overpayments Against the Joint Debtor's Payroll Tax Liabilities**

67.    Section 542 of the Bankruptcy Code provides that "an entity that owes a debt that is *property of the estate ... shall pay such debt to, ... the trustee, except to the extent that such debt may be offset* under section 553 of this title against a claim against the debtor." (Emphasis added.) The provision is clear: to prevail in its Motion for turnover the debtor must demonstrate both that the overpayment and credit are property of the estate and that they are not subject to setoff. It cannot.

68.    The debtor disingenuously claims that "[a]s of the Mirabilis Petition Date, Mirabilis was owed a refund from the IRS in the approximate amount of $1,410,769, which

- 38 -

consisted of an income tax refund for 2005 in the amount of $1,010,769, and a

Form 941 Account credit in the amount of $400,000.00..." and that this "refund" is

property of the estate. It also contends that AEM's claim for refund actually <u>is</u> a

refund subject to turnover. (DE 617.)

69.     The debtor misstates the law, as explained *supra*. The overpayments are subject to

setoff and therefore are not property of the estate subject to turnover. That the United

States' right of setoff was not <u>quantified</u> until the debtor, post-petition, filed the tax

returns that gave rise to the right, is of no moment.

70.     The debtor suggests that it was owed a refund as of the petition date because its claim

for refund is for a pre-petition year, and that the IRS' failure to assert a quantified

claim for setoff in its proof of claim precludes assertion of the setoff now. The debtor

is incorrect.

71.     Until the debtor filed its delinquent income tax return for the 2006 tax year and

amended its income tax return for the 2005 tax year in September 2009, no claim for

refund existed. There was no information from which the IRS or any other creditor

could determine the validity of such a claim. 26 U.S.C. §§ 6402, 6511; 26 C.F.R.

§ 6402-1. Until the validity of the claim for refund was determined – here, in July

2010 – the United States could not claim setoff. The debtor cannot ignore the filing

requirements of the internal revenue laws, then attempt to use its delinquency to the

detriment of the fisc.

4714888.1

**VII.    Mirabilis Ventures' Tax Overpayments Are Subject to Setoff Authorized by the Provisions of the Confirmed Plan**

72.    The debtor's income tax overpayments are subject to setoff by an express provision of the Order of confirmation.

73.    The United States has a statutory right of offset. It preserved that right in its timely-filed proof of claim. The provisions of the amended plan preserve that right.

74.    To the extent the provision of the plan and order of confirmation may be ambiguous, any ambiguity is to be construed against the debtor. *In re Fawcett*, 758 F.2d 588, 590-91 (11th Cir. 1985).

75.    To the extent the United States must show good cause under Section 362 for implementing the setoff – beyond following the provisions of the confirmed plan – it has done so by demonstrating that the joint debtor owes tax that exceeds the funds available in the estate. (*Compare* DE 626 (estate holding cash of only $390,465.12) with DE 101, 145 (allowing unsecured claim of $200,000,000).)

76.    Unlike the situation in *In re Lykes Bros. S.S. Co., Inc.*, 217 B.R. 304, 310 (Bankr. M.D. Fla. 1997), where Judge Paskay held that the United States waived its right of setoff by not objecting to a plan that negated setoff rights, here the United States' rights were preserved in the Order at page 7, ¶I(Y)(v).

77.    By operation of law, the right of setoff permits a priority or general unsecured claim to be treated as a secured claim. Section 506 of the Bankruptcy Code provides –

An allowed claim of a creditor ... that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest

in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)(1).

78. Here, the *value* of the United States' right of setoff was determined in the objection to claim proceeding, a procedure specifically allowed by this Court in its May 10, 2010 Order. (DE 548.) The United States did not waive its right by not quantifying its value until after confirmation: the value was determined in the ordinary course of the claims objection proceeding, and promptly asserted in an amended proof of claim. *See In re United Marine Shipbuilding, Inc.*, 198 B.R. 970, 978 (Bankr. W.D. Wash. 1996) (finding that notification and litigation of the right preserves the right of setoff); *Matter of Lawndale Steel Co.*, 155 B.R. 990, 992 (Bankr. N.D. Ill. 1993) ("A creditor with the pre-petition right of setoff does not lose its rights by failing to setoff before a bankruptcy petition has been filed. The Bankruptcy Code treats the holder of an unconsummated right of setoff as a holder of a secured claim, to the extent of the right of setoff."). "[C]onfirmation of a debtor's plan of reorganization does not extinguish prepetition setoff rights, especially of secured creditors where the plan does not specifically treat those setoff rights, irrespective of whether any given holder of the right fails to assert it prior to confirmation." *In re Bare*, 284 B.R. 870, 874 (Bankr. N.D. Ill. 2002) (emphasis added) (holding that IRS was not barred from

effecting a setoff after plan confirmation, notwithstanding that it had asserted an

unsecured, priority tax claim and had not objected to confirmation of the plan).

79.     Against this overwhelming case law, Mirabilis Ventures relies on a 23-year-old

opinion by Judge Paskay in a case readily distinguishable from this one. In *Matter of*

*Crabtree*, 76 B.R. 208 (Bankr. M.D. Fla. 1987), the United States objected to

confirmation of the debtor's Chapter 11 plan on the ground that it abrogated the IRS'

right of setoff. The court overruled the objection, finding that the priority tax claim

would be paid in full in accordance with the Bankruptcy Code. The United States then

sought relief from the automatic stay to set off pre-petition debts; the motion was

denied as moot by the order of confirmation. The court found that, under these

circumstances, allowing setoff would grant preferential treatment to the United States

contrary to that provided in the Bankruptcy Code. 76 B.R. at 210.

80.     No court has followed this ruling. The United States District Court for the Northern

District of Illinois expressly rejected it in holding that the IRS could exercise its right

of setoff despite the fact that the confirmed Chapter 11 plan failed to permit setoff. *In*

*re Pettibone Corp.*, 161 B.R. 960, 964 (N.D. Ill. 1993). It cited two other cases with

approval, both of which allow a creditor to assert its right of setoff after confirmation,

as to do otherwise "would render section 553 'meaningless,' an unacceptable result."

161 B.R. at 964 (*citing In re De Laurentiis Entertainment Group, Inc.*, 963 F.2d 1269,

1277 (9th Cir. 1992); *In re Service Decorating Co.*, 105 B.R. 859, 862 (Bankr. N.D.

Ill. 1989)).

4714888.1

81.     Similarly, the IRS was permitted to exercise its right of setoff post-confirmation in

two Chapter 13 cases: *In re Olson*, 175 B.R. 30, 32 (Bankr. D. Neb. 1994) (holding

right to setoff survived confirmation even where plan did not allocate any of IRS'

claim as secured; to deny setoff would give debtor an "unjust windfall"); *In re Dwyer*,

1992 WL 547730 *5 (Bankr. S.D. Ohio Dec. 4, 1992) (holding right of setoff not

precluded by confirmation where plan provision did not provide adequate protection

of IRS); *accord In re Johnson*, 136 B.R. 306, 309-310 (Bankr. M.D. Ga. 1991).

82.     The right of setoff is not waived even if not asserted until post-confirmation. *In re*

*BOUSA Inc.*, 2006 WL 2864964 **4-5 (Bankr. S.D.N.Y. Sept. 29, 2006) (holding no

waiver of known right of setoff where plan not explicit on setoff rights and where

right did not arise until ten years after proof of claim filed, when judgment entered).

In *BOUSA*, the debtor listed a potential lawsuit for recovery of excessive Customs

duties in its bankruptcy schedules, placing itself and other creditors on notice of a

potential asset. Customs, IRS, and other federal agencies filed proofs of claim,

expressly claiming no right of setoff. The IRS' objection to confirmation was

withdrawn, and the debtor's plan was confirmed. No setoff rights formally were

asserted by the federal agencies. Eight years later, judgment was entered in favor of

the debtor and against Customs. The court ruled that the Government had no

judgment against it at the time the proofs of claim were filed and thus no right to

setoff. *Id*. at *4. Accordingly, "[b]ecause no right to setoff of mutual debts arose until

a decade later upon entry of the stipulated judgment, no waiver occurred when the

- 43 -

Government filed proofs of claim for unsecured amounts that did not identify a then

contingent and unmatured potential debt from the Government to [the debtor] that

might never materialize." *Id*. Furthermore, noted the court, the confirmed plan did not

expressly prohibit setoff, so the IRS was not barred from asserting its right. *Id*. at *6.

83.     In *In re SunCruz Casinos LLC*, 342 B.R. 370 (Bankr. S.D. Fla. 2006), cited by the

debtor, the plan specifically prohibited exercise of any right of setoff, and the court

found a creditor violated that provision by withholding benefits post-petition. Here,

there is no specific prohibition against setoff; rather, setoff is permitted by the plan

and by statute. Where a plan specifically *allows* setoff – such as the plan in issue here

– that right is not extinguished.

84.     Thus, the United States' right to setoff has been preserved. Turnover is not warranted.

## CONCLUSION

The debtor is entitled to pre-petition income tax overpayments in excess of

$1.1 million. But the United States, as the present holder of a pre-petition claim in excess of

$3.1 million, is entitled to setoff the overpayments against its claim. Making a claim for

setoff does not violate the automatic stay or plan provisions, nor does it give rise to a

legitimate claim for turnover. The portion of the overpayments consisting of a $400,000 pre-

petition payment cannot be applied to the debtor's self-assessed post-petition taxes. The

debtor has not demonstrated reasonable cause for its failure to pay its post-petition taxes,

either in the first instance, when it failed to properly classify its officer as an employee under

4714888.1

the internal revenue laws and make payment, or after confirmation, when it was subject to an

express order of this Court to pay the claimed taxes.

For the foregoing reasons, the debtor's objection to the IRS' request for payment of

administrative expenses is overruled. The debtor's motion for turnover is denied.


_____
KAREN S. JENNEMANN
United States Bankruptcy Judge

4714888.1

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 15, 2010, I electronically filed the foregoing Notice of Filing United States' Proposed Findings of Fact and Conclusions of Law Regarding Debtor's Objection to Allowance of Claim No. 36 ("IRS Administrative Claim") and Debtor's Motion for Turnover, with proposed order, with the Clerk of the Court by using the CM/ECF system, which will send notice to –

R. Scott Shuker
Mariane L. Dorris
LATHAM, SHUKER, EDEN & BEAUDINE, LLP
390 N. Orange Ave., Suite 600
Orlando, FL 32801
*Attorneys for Debtors*

Elena L. Escamilla
Office of the United States Trustee
135 W. Central Blvd., Suite 620
Orlando, FL 32806
*United States Trustee*

and that I served a copy by first class mail to –

Mirabilis Ventures, Inc.
c/o/ R.W. Cuthill, Jr.
341 N. Maitland Ave., Suite 210
Maitland, FL 32751
*Debtor*

    s/ Carol Koehler Ide
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 14198, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 514-5887
Telefax: (202) 514-9868
E-mail: Carol.Koehler.Ide@usdoj.gov

4714888.1