UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

|  |  |  |
|---|---|---|
| In re | ) | |
| | ) | |
| MIRABILIS VENTURES, INC., | ) | Case No.  6:08-bk-04327-KSJ |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

## INITIAL
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The debtor, Mirabilis Ventures, Inc., and the Internal Revenue Service dispute which party has a superior claim to tax overpayments made by the debtor before it filed this case.  The debtor contends it is entitled to a tax refund because the overpayments are property of the estate. The IRS argues the debtor is not entitled to a tax refund because no refund is yet due and, because a joint debtor, AEM, Inc., owes more in pre-petition taxes than the amount of the overpayments, the IRS is entitled to a setoff in the amount of the overpayments against its claim in the AEM case.[1]  As explained below, the Court holds:  (i) Mirabilis is not entitled to a tax refund *at this time*, (ii) the IRS has not waived its right of setoff, (iii) the IRS has violated the automatic stay by failing to seek relief from stay before taking steps to effectuate a setoff, and (iv) Mirabilis is not liable for penalties and interest on its 941 employee withholding tax liabilities.  The Court will determine the remaining issues, including AEM's liability and the exact amount of the overpayments, at an evidentiary hearing set for **April 22, 2011, at 9:00 a.m.**

## Contentious History

Before setting forth the chronology of the relevant events, the Court first needs to comment on the openly hostile and antagonist relationship between Mirabilis and the IRS. Mirabilis is one of numerous companies affiliated with Frank L. Amodeo, who used the

---

[1] A hearing to resolve the debtor's objection to IRS' Claim No. 4 filed in the AEM case is scheduled for April 22, 2011 (Doc. No. 162).  As such, whether AEM owes the IRS or not is an unresolved issue.

companies to perpetrate one of the largest payroll-processing frauds in U.S. history. Amodeo personally stole millions of dollars in federal income and Social Security withholding taxes received from various Mirabilis subsidiaries and their clients rather than pay the amounts to the IRS. He now is serving a 22-year sentence in federal prison after being convicted of various tax crimes.[2]

In connection with Amodeo's tax fraud, on April 25, 2008, the U.S. Attorney instituted *in rem* civil forfeiture proceedings in the United States District Court for the Middle District of Florida against certain properties owned by Mirabilis.[3] As a consequence of the civil forfeiture proceedings, and in order to effect an orderly liquidation of their assets, on May 27, 2008, Mirabilis (the debtor) and its related entity, Hoth Holdings, LLC,[4] filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.[5] On June 5, 2008, another related entity, AEM, Inc., filed its Chapter 11 bankruptcy petition[6] (Mirabilis, Hoth, and AEM are collectively referred to as the "Debtors"). At this time, Mirabilis' sole director elected an experienced liquidating trustee and receiver, R. William Cuthill, as President of Mirabilis to oversee the Debtors' liquidation. At first, the IRS objected to the filing of the bankruptcy cases and Cuthill's authority to liquidate the Debtors' assets; however, by November 2008, the parties had reached a

---

[2] On August 6, 2008, the U.S. Attorney indicted Amodeo for conspiracy, failure to remit payroll taxes, wire fraud, and obstruction of an agency investigation (Case. No. 6:08-cr-176-Orl-28-GJK). Amodeo soon pleaded guilty, which plea Judge Antoon accepted on May 22, 2009. On May 26, 2009, Judge Antoon sentenced Amodeo to 270 months imprisonment, consisting of five consecutive 54-month terms on Counts 1, 7, 8, 10, and 27. (Doc. No. 125, 126, and 140 in the criminal case).

[3] Case No. 6:08-cv-00670-ACC-KRS. This case was closed on March 12, 2010. On October 30, 2008, the U.S. Attorney also indicted AEM and Mirabilis for conspiracy, wire fraud, and forfeiture (Case No. 6:08-cr-00231-JA-KRS). On June 17, 2010, the District Court entered an order accepting the *nolo contendere* pleas of the Debtors to the indictment.

[4] Case No. 6:08-bk-04328-KSJ.

[5] Doc. No. 1.

[6] Case No. 6:08-bk-04681-KSJ.

settlement allowing the Debtors to confirm a Chapter 11 plan of liquidation.[7]  The IRS received an allowed claim of $200 million against Mirabilis to account for Amodeo's fraud.

Mirabilis later refused, however, to plead guilty to the pending criminal charges against it.  Cuthill argued that if a guilty plea were entered he would face dismissal of many of the then pending adversary proceedings[8] filed to recover monies for all creditors.[9]  As such, all creditors, including the IRS, potentially would forfeit substantial recoveries on their claims if the Debtors pled guilty.  For nearly a year, the IRS and the U.S. Attorney consistently have frustrated Cuthill's efforts to recover funds on behalf of the Debtors' unsecured creditors.  The irony is that the United States is *the* largest unsecured creditor in these bankruptcy cases, holding its $200 million unsecured civil forfeiture claim.   Cuthill understandably is baffled at the IRS' counterproductive behavior.  With this contentious history in mind, the Court now presents a chronology of the relevant facts.

## **Chronology**

May 14, 2007—Mirabilis delivered a check to the IRS in the amount of $400,000 for "salary & wages: 7900-941 Tax E."[10]  The IRS refused to accept the check.

---

[7] On August 14, 2008, the U.S. Attorney sought to stay the Debtors' bankruptcy cases, pending resolution of the then ongoing criminal proceedings in District Court.  On November 25, 2008, the Debtors and the U.S. Attorney reached a settlement agreement that provided for: (i) the division of assets between the bankruptcy estates and the United States; (ii) the allowance of a $200,000,000 unsecured forfeiture claim; (iii) agreed terms of a plan of liquidation and the consolidation of the Debtors' bankruptcy estates; and (iv) the withdrawal with prejudice of all pending motions filed between the U.S. Attorney and the Debtors (Doc. No. 140).

[8] The Debtors collectively have initiated 13 adversary proceedings to recover monies from various banks, law firms, and individuals between May 27, 2008, and November 1, 2010.  The parties have settled or dismissed all but three of these proceedings (Adv. Nos. 08-148, 08-222, 08-223, 08-227, 08-228, 09-968, 10-30, 10-140, 10-141, and 10-281).  The three adversary proceedings still pending before this Court are Adv. Proc. Nos. 09-813, 09-814, and 09-815.

[9] The IRS is by far the largest unsecured creditor with a claim of $200 million against Mirabilis.  However, numerous other unsecured creditors have filed claims in the approximate aggregate amount of $186,871,237.  Therefore, although the IRS is the primary creditor, Cuthill is working to recover monies to pay all unsecured creditors on a pro-rata basis.

[10] Mirabilis Ex. 6.

April 2007—Mirabilis submitted a cashier's check in the amount of $400,000 with the notation "voluntary payment: Mirabilis Ventures, AEM, Inc. April 2007." The IRS placed the $400,000 payment in Mirabilis' 1120 corporate income tax account.[11]

May 2007—The IRS transferred the $400,000 credit to Mirabilis' 941 employee withholding account for 2007.[12] At that point, Mirabilis' 1120 corporate tax account for 2005 showed a debit balance of $312,376.29.

May 27 and June 5, 2008 – Debtors file these bankruptcy cases.

June 13, 2008—The IRS filed its Claim No. 2 for payment of Mirabilis' outstanding 1120 corporate taxes in the amount of $438,173.48, which amount includes penalties and interest accruing since October 16, 2006.

July 10, 2008—The IRS filed its Claim No. 4 in the AEM bankruptcy case in the amount of $2,492,059.53 for unpaid "WT-FICA" taxes (i.e. Social Security withholding taxes). (A final hearing on AEM's objection to this claim is set for April 22, 2011.)

May 22, 2009—The IRS filed its Claim No. 36 in the Mirabilis bankruptcy case as an administrative expense claim for unpaid post-petition 941 employment taxes in the amount of $44,873.48.

June 1, 2009—The Debtors submitted a Joint Plan of Liquidation.[13]

June 25, 2009—The IRS sent Mirabilis a form letter stating that Mirabilis had failed to file 941 and 940 tax returns for payment of employment taxes on Cuthill's wages for the post-petition years ending 2008 and 2009, and for unemployment taxes for the same period.[14]

---

[11] Gov't Ex. 5.
[12] Gov't Ex. 6.
[13] Doc. No. 193.
[14] Mirabilis Ex. 29.

<u>June 26, 2009</u>—Cuthill, on behalf of Mirabilis, sent a letter to the IRS stating that Mirabilis did not need to file Form 941 returns because it had no employees post-petition.[15]  In his letter, Cuthill further stated that, although he was designated the President of Mirabilis, he was "engaged in an independent contractor capacity" and had "included the income [he received] from Mirabilis in [his] personal income tax return and paid self-employment taxes on his income" on the advice of his accountant.[16]  Cuthill's decision to treat himself as an independent contractor personally cost him significant funds because he was required to pay his own self-employment taxes, rather than having Mirabilis pay its share.  No one disputes that Cuthill timely filed his personal tax returns during the period he contended he was acting as an independent contractor.

<u>July 14 and 15, 2009</u>—IRS agents Sherrill Summers and Diane Martin, and, separately, Summers, IRS agent Richard Smith, and Assistant U.S. Attorney Randy Gold, sent emails to each other discussing Cuthill's tax treatment.[17]  The emails show the IRS disagreed with the Debtors' accountant's assessment that Cuthill should be treated as an independent contractor.[18] The IRS agents all believed Mirabilis was liable for 941 employment taxes because Internal Revenue Code § 3121(d)[19] defines "employee" as any officer of a corporation and Cuthill is Mirabilis' president.[20]

<u>August 4, 2009</u>—This Court entered an Order Approving the Debtors' Disclosure Statement[21] and setting a hearing to consider confirmation of the Debtors' joint plan of liquidation for September 16, 2009 (later rescheduled for October 16, 2009).[22]

---

[15] *Id.*
[16] *Id.*
[17] Mirabilis Ex. 28.
[18] Mirabilis Ex. 28.
[19] 26 U.S.C. § 3121(d).
[20] Mirabilis Ex. 28.
[21] Doc. Nos. 221 and 226.
[22] Doc. No. 228.

August 14, 2009—The Debtors submitted a Joint Amended Plan of Liquidation.[23]

August 31, 2009—The IRS filed an amendment to its Claim No. 36 for post-petition 941 employment taxes, raising the amount requested to $148,109.24, including penalties and interest.

September 15, 2009—Mirabilis filed with the IRS amended 1120 corporate income tax returns for the tax periods ending in December of 2005 and 2006.[24]  The amended 2006 return shows Mirabilis generated a net operating loss of $18,044,400.  On the returns, this net operating loss is carried back to offset all income generated in 2005, which wiped out the then existing 1120 account debit balance of $312,376.29 (for which the IRS filed Claim No. 2) and resulted in a tax overpayment of at least $1,010,769.  Because the net operating loss has since been verified by the IRS, as of September 2009, Mirabilis had no outstanding 1120 corporate tax obligation due to the IRS.

October 9, 2009—Mirabilis filed an objection to the IRS' Claim No. 2, seeking to have the claim disallowed on the basis that the amended Form 1120 return resulted in a tax overpayment.[25]

October 9, 2009—The IRS filed an objection to confirmation asserting its position that Mirabilis was liable for unpaid post-petition 941 taxes for Cuthill's employment.[26]

October 15, 2009—The Debtors filed further modifications to the plan to incorporate their agreement with the IRS "that the compensation for Mr. Cuthill, both pre- and post-confirmation, shall be treated as employee compensation pursuant to 26 U.S.C. §3121(d)(1). The Liquidating Debtor and Debtors shall have sixty (60) days following Confirmation to

---

[23] Doc. No. 234.
[24] Mirabilis Ex. 12 and Doc. No. 325, Ex. A.
[25] Doc. No. 325.
[26] Doc. No. 366.

prepare and file appropriate tax returns and to have the Liquidating Debtor pay the required payroll tax."[27]

    <u>October 16, 2009</u>—The Court held a hearing to consider confirmation of the Debtors' Joint Amended Plan of Liquidation, as modified.[28]  In discussing the amendments relating to the tax treatment of Cuthill's income, Debtors' counsel, Scott Shuker, expressed the parties' disagreement about an exculpation clause in the plan as: whether it "provide[s] for some kind of release for either payment of 941 taxes or *if they're not paid*, responsible officer liability…"  He then stated "…I don't read it as such nor was it met [sic] to be such."[29]  Shuker then went on to say that he "wouldn't want Mr. Cuthill hit with late fees and penalties personally for what was an honest difference of opinion as to how they should be paid.  So I think you can modify the exculpation to say that it won't relieve the estate or responsible officer for liabilities to pay owed and due taxes and I think that addresses their concern."[30]  The IRS raised no objection to Shuker's statement that no penalties or interest would accrue on Mirabilis' 941 tax liability because it was essentially an "honest difference of opinion" as to whether Cuthill was an employee or an independent contractor.  The Court specifically finds that, based on the IRS' tacit acceptance and as part of the settlement between the Debtors and the IRS, the IRS agreed that no penalties or interest would accrue on Mirabilis' 941 tax liability associated with Cuthill's employment as long as Mirabilis timely filed the required 941 returns within 60 days of confirmation.

---

[27] Doc. No. 371, p. 13, ¶ 6(c).
[28] Doc. No. 234, as modified by Doc. No. 371.
[29] October 16, 2009, Transcript, p. 23, ¶¶ 6-9 (emphasis added).
[30] October 16, 2009, Transcript, p. 23, ¶¶ 10-13.

The Court confirmed the Debtors' joint plan at this hearing.  The plan contains the following provision:

> (c)  Term of Injunction or Stays.  Unless otherwise provided in the Confirmation Order, all injunction [sic] or stays provided for in Chapter 11 cases pursuant to sections 105 or 362 of the Code or previously imposed in this case by the Court or otherwise in existence on the Confirmation Date shall remain in full force and effect until the entry of a final decree or an order dismissing the case.[31]

October 27, 2009—The Court entered its order confirming the Debtors' Joint Plan of Liquidation,[32] and, among others, made the following findings of fact and conclusions of law:

> J.  …Pursuant to Bankruptcy Rule 3016(c), both the Plan and Disclosure Statement have described in specific and conspicuous language all acts proposed to be enjoined and identified all entities subject to the injunction contained in the Plan.
>
> * * *
>
> Y.  …(v) for purposes of determining the availability of the right of setoff, under section 553 of the Bankruptcy Code, the Debtors shall be treated for purposes of the Plan as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be set off against the debts of any of the Debtors.
>
> * * *
>
> 4.  In accordance with § 1141(a) of the Bankruptcy Code, the provisions of the Plan and this Confirmation Order are binding on the Debtors, Liquidating Debtor, each Creditor, and every other party-in-interest in this case and each of their respective successors and assigns (whether or not such Creditors or parties-in-interest voted to accept the Plan, whether or not they are Impaired under the Plan, and whether or not any such Holder has filed, or is deemed to have filed a proof of Claim or proof of Interest), and any other Person giving, acquiring, or receiving property under the Plan, and any lessor or lessee of Property to or from the Debtor.  The rights afforded in the Plan and the treatment of all Claims and Interests therein shall be in exchange for and in complete satisfaction of all Claims and Interests of any nature whatsoever, known or unknown, including, except as expressly provided in the Plan, interest accrued on or expenses incurred in connection with such Claims from and after the Order for Relief, against, the Liquidating Debtor or its property or interests in property.
>
> * * *

---

[31] Doc. No. 371, p. 16, ¶ 7(c).
[32] Doc. No. 375.

6.  In accordance with §§524 and 105(a) of the Bankruptcy Code, and except as otherwise provided in the Plan and this Confirmation Order on and after the Effective Date all Persons are permanently enjoined from and restrained against, commencing or continuing in any court any suit, action, or other proceeding, or otherwise asserting any Claim or Interest seeking to hold liable: …(b) the property of Liquidating Debtor, for any claim, obligation, right, interests, debt or liability that has been discharged or released pursuant to the Plan and for any and all claims arising under bankruptcy or nonbankruptcy law relating in any way to the Debtors, Liquidating Debtor or its business, except for any claims or actions related to gross negligence or willful misconduct.

* * *

7.  In accordance with §1141(b) of the Bankruptcy Code and the Plan, title to the Debtors' assets, [sic] shall vest in the Liquidating Debtor on the Effective Date…Except as otherwise expressly provided in the Plan and in this Confirmation Order, all assets and property of the Debtors shall be vested in the Liquidating Debtor, free and clear of all Liens, security interests, Claims and Interests of the holders of Claims and Interests, and all such Liens, security interests, Claims and Interests are hereby extinguished.

The confirmation order also notes that at the October 16, 2009, confirmation hearing counsel for Debtors made the following *ore tenus* modification to the plan, among others:

…(c) the Exculpation Clause set forth in Article IX [sic][33] of the Plan shall not eliminate any liability for Allowed tax [sic] Claims nor shall it relieve the Liquidating Debtor from its responsibility for timely filing both corporate and payroll tax returns and from timely paying all applicable taxes.  Moreover, the Exculpation Clause does not prospectively release the Liquidating Debtor or any responsible person related to federal taxes…

November 9, 2009—The IRS filed its response to Mirabilis' objection to Claim No. 2.[34]

November 16, 2009—The IRS sent a letter to Mirabilis informing it of a $400,000 credit applied to Mirabilis' 941 account for the tax period ending March 31, 2007.[35]  The letter states the IRS has no record of receiving a tax return for that period and requests a return be filed promptly.

---

[33] The reference should be to Article VIII, ¶ 16, there being no Article IX in the original filed plan (Doc. No. 234).
[34] Doc. No. 390.
[35] Mirabilis Ex. 6.

November 18, 2009—Cuthill contacted IRS customer service representative Dinny Yip, who confirmed the existence of the $400,000 credit and told Cuthill that Mirabilis needed to file its 941 return for 2007 *before* the IRS could determine whether to issue a refund.

November 30, 2009—Cuthill sent by email to IRS attorney Carol Ide copies of the 941 returns he intended to submit to the IRS and requested her review and comment.[36] Ide never responded.

December 4, 2009—Cuthill timely filed the required 941 returns within the 60-day filing deadline set by the confirmation order. On the returns, Mirabilis' accountant applied the $400,000 credit on Mirabilis' 2007 941 account towards Mirabilis' liability for the second quarter of 2007 and for all post-petition 941 taxes due for 2008 and 2009. This resulted in a purported overpayment in the amount of $234,486.18 as of the third quarter of 2009. Cuthill requested that this amount be refunded to the debtor.[37]

March 9, 2010—When no refund was received, Debtors' attorney Mariane Dorris emailed Ide to inquire about the status of the refund. The same day, Ide responded by email, stating:

> There is a $400K credit on the Form 941 account for 2000703[38] (moved there from a Mirabilis Form 1120 account in May 2007), but because Mirabilis has a balance due on its Form 1120 liabilities (for 2005) *that claimed credit cannot be applied forward unless and until the objection to claim [no. 2] is resolved by agreement or in a final, non-appealable order.* In the meantime, interest and penalties are accruing on all of the Form 941 liabilities. The IRS will amend its admin. claim [Claim No. 36] to comport with the returns you had prepared (dated November 24, 2009), and will show accrued interest and penalties.[39]

---

[36] Mirabilis Ex. 10.
[37] *Id.*
[38] This notation refers to the third quarter of 2007.
[39] Mirabilis Ex. 11 (emphasis added).

March 16, 2010—IRS Insolvency Specialist Sherrill Summers submitted an "Account Adjustment Voucher" requesting the IRS move the $400,000 941 account credit to Mirabilis' 1120 corporate tax account.[40]

April 12, 2010—The IRS honored Summers' request and transferred the $400,000 credit to Mirabilis' 1120 account, unbeknownst to the Debtors or this Court.[41]

April 22, 2010—Ten days later, the Court held a hearing on Mirabils' objection to Claim No. 2. The IRS did not disclose the reallocation of the $400,000 credit at the hearing. Ide represented that the IRS' only concern with the objection was substantiating the amount of the claimed net operating loss on Mirabilis' amended 2006 1120 return. Ide also admitted that the documentation then available to the IRS confirmed *at least* a $5,000,000 net operating loss, which still resulted in a substantial tax overpayment by Mirabilis for 2005 and 2006.[42] Recognizing that Mirabilis had overpaid its 1120 corporate taxes, the Court sustained Mirabilis' objection to claim and disallowed Claim No. 2.[43] Mirabilis has no outstanding pre-petition 1120 corporate tax obligation.

June 4, 2010—Ide sent Debtors' attorney Dorris an email confirming that the IRS had substantiated the $18,044,400 net operating loss carry back. In her email, Ide stated: "now that the Form 1120 [net operating loss] issue is resolved, the Service will recompute the 2005 liability and determine the amount of that year's overpayment, taking into account that the $400,000 has been returned to that year's account."[44] The IRS' official records of Mirabilis' 1120 corporate tax account, dated July 14, 2010, show a $1,054,308.78 credit on account for 2005 and a $68,539.51 credit on account for 2006.[45] The credits are apparently the result of the net

---

[40] Mirabilis Ex. 15.
[41] Gov't Ex. 6.
[42] Doc. No. 541, pp. 34-36.
[43] Doc. No. 548.
[44] Mirabilis Ex. 18.
[45] Gov't Ex. 5.

operating loss carry back *and* the transfer of the $400,000 941 credit to the 2005 1120 account.[46] The debtor, however, claims it has overpaid in the aggregate amount of $1,410,769, comprised of its 1120 account overpayment for 2005 in the amount of $1,010,769 and the $400,000 941 credit. Because the Court cannot resolve this discrepancy as to the exact amount Mirabilis overpaid on the record presented, the Court generically will refer to the still undetermined aggregate amount of Mirabilis overpayment, as the "Overpayments." The parties are directed to present additional evidence on the exact amount of the Overpayments at the upcoming hearing in the AEM case on **April 22, 2011**.

June 15, 2010—Having just learned from Ide that the IRS unilaterally moved the $400,000 credit previously applied to Mirabilis' 941 account to its 1120 account, Mirabilis filed an Emergency Objection to Claim No. 36 of the IRS.[47]

August 6, 2010—The IRS filed an amendment to its Claim No. 4 in AEM's bankruptcy case. The original proof of claim is for an unsecured priority claim in the amount of $2,492,059.53, and an unsecured general claim in the amount of $703,602.30, for a total aggregate claim in the amount of $3,195,661.83. The amended proof of claim asserts the same aggregate claim amount ($3,195,661.83) but asserts a secured claim in the amount of $1,122,848.29 (the amount by which the IRS asserts the debtor has overpaid its taxes) secured by a "Right to Setoff," and an unsecured priority claim in the amount of $2,072,813.54.

September 2, 2010—The IRS filed another amendment to its Claim No. 36, raising the total amount of its claim for unpaid post-petition employment taxes to $208,235.90, comprised of $136,908.07 in unpaid taxes and $71,327.83 in accrued penalties and interest.

---

[46] That is, the IRS asserts its accounting for the debtor's 2005 1120 account includes the transfer of the $400,000 to that account. Thus, the IRS takes the position that the debtor overpaid its 1120 taxes for 2005 by $654,308.78, while the debtor asserts it overpaid by $1,010,769.

[47] Doc. No. 567. On June 16, 2010, the IRS filed its response (Doc. No. 568), and, on June 17, 2010, Mirabilis filed its reply (Doc. No. 571).

September 15, 2010—The Court held an initial evidentiary hearing on Mirabilis' emergency objection, which was continued until October 20, 2010.

September 24, 2010—Mirabilis filed its Motion to Enforce Plan and Confirmation Order and for Turnover of Property of the Liquidating Debtor,[48] which reiterated its objection to the IRS' reallocation of the $400,000 941 account credit and raised new objections to the IRS' attempt to exercise a setoff on its Claim No. 2 filed against Mirabilis and Claim No. 4 filed against AEM.

October 20, 2010—The Court completed the evidentiary hearing on Mirabilis' emergency objection and its motion to enforce and for turnover.  The parties later submitted proposed findings of fact and conclusions of law.[49]

## **Issues**

Although the parties' statements of the issues differ vastly,[50] the Court limits her ruling to the following four questions with a short answer that the Court will explain at length below:

1.  Is the debtor entitled to tax refunds for its overpayments to the IRS?  Not at this time.

2.  Did the IRS waive its right of setoff by failing to assert its right before confirmation of the Debtors' joint plan of liquidation? No.

3.  Has the IRS violated the automatic stay imposed by § 362(d) of the Bankruptcy Code by asserting a right of setoff without first seeking relief from stay? Yes.

4.  What is the allowed amount of the IRS' Claim No. 36 for post-petition 941 employment taxes? $136,908.07.

---

[48] Doc. No. 617.
[49] Doc. Nos. 640 and 641.
[50] Emergency Objection to Claim No. 36 of the IRS (Doc. No. 567); Response to Debtor's Emergency Objection to Claim (Doc. No. 568); Limited Response to United State's Response (Doc. No. 571); Trial Brief of the IRS (Doc. No. 613); Motion to Enforce Plan and Confirmation Order and for Turnover of Property of the Liquidating Debtor (Doc. No. 617); Response to Debtor's Motion for Turnover and to Enforce Plan (Doc. No. 624); and proposed Findings of Fact and Conclusions of Law (Doc. Nos. 640 and 641).

**<u>The debtor is not entitled to a tax refund for the Overpayments at this time.</u>**

Section 541(a)(1) of the Bankruptcy Code defines property of the bankruptcy estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." An "interest" in a pre-petition tax refund or a contingent claim for a refund is property of the estate.[51] Therefore, if the amounts Mirabilis overpaid to the IRS before it filed this case are "tax refunds," those amounts are property of the estate.

The Internal Revenue Code[52] however draws an important distinction between a "tax refund" and a "tax overpayment." Internal Revenue Code sections 6402(a) and (c) provide that a taxpayer is only entitled to a tax refund after the IRS has exercised its discretion to credit a claimed overpayment against any other tax liability owed by the taxpayer.[53] "Until the Service exercises this discretion [to offset mutual debts], the taxpayer has no right to repayment."[54] Thus, "[a] debtor's claim to a potential refund is distinct from a debtor's interest in the funds themselves." If the debtor never had an interest in the funds at issue, there is no refund, and the overpaid funds never became property of the estate.

Here, although Mirabilis has overpaid *both* its employee withholding *and* its corporate income taxes, the debtor's request for a refund of such overpayments does not automatically establish its right to receive a refund. The IRS, pursuant to § 6402(c) of the I.R.C., first must analyze whether there were other past due obligations owed by the Debtors, collectively, before the Overpayments become a refund to which the debtor was entitled. Only then will a refund "vest" and become property of the estate.

---

[51] *Kokoszka v. Belford*, 417 U.S. 642, 648 (1974); *In re Barowsky*, 946 F.2d 1516, 1518-19 (10th Cir. 1991).
[52] Title 26 of the United States Code.
[53] 26 U.S.C. § 6402(a), (c); 26 C.F.R. §§ 301.6402-3(a)(6), 301.6402-4.
[54] *In re Gould*, 401 B.R. 415, 424 (B.A.P. 9th Cir. 2009), *citing Pettibone Corp. v. United States*, 34 F.3d 536, 538 (7th Cir. 1994); *see also Gordon v. Unites States (In re Sissine)*, 432 B.R. 870, 882 (Bankr. N.D. Ga. 2010) ("The Internal Revenue Code is clear that a debtor's claimed refund is contingent until it is determined that a debtor is entitled to a refund.").

Because the Debtors' objection to Claim No. 4 in the AEM case is still pending resolution, the Court cannot at this time determine whether the debtor is entitled to a refund. The IRS' original Claim No. 4 is for unpaid withholding taxes, penalties, and interest for the period ending June 30, 2007, in the amount of $3,195,661.83—$2,492,059.53 as a priority claim under § 507(a)(7) of the Bankruptcy Code and $703,602.30 as an unsecured claim. The Debtors have objected to this claim because they allege AEM overpaid its withholding taxes and are entitled to a refund. Until this objection to Claim No. 4 is resolved, the Court cannot determine whether the Debtors collectively owe more to the IRS than the amounts Mirabilis overpaid in taxes. If the Debtors' succeed on their objection *and* the IRS has no other claims for unpaid prepetition taxes against the Debtors, Mirabilis then, and only then, would, under § 6402(c) of the Internal Revenue Code, be entitled to a refund of the amount overpaid to the IRS that exceed the IRS' aggregate tax claims.

### The IRS did not waive its right of setoff.

The debtor argues that the IRS waived its right of setoff by not timely asserting such right prior to confirmation of the Debtors' joint plan of liquidation. First, Mirabilis argues that the IRS waived its setoff right by failing to "act like" a secured creditor prior to confirmation, despite the debtor listing a $1.2 million tax refund on its schedules. Second, the debtor argues that under the confirmed plan and confirmation order, the Overpayments became property of the estate under § 1141(b) of the Bankruptcy Code[55] and the IRS' claims to such Overpayments, including any right to set off such amounts against its claims, were extinguished; therefore, the IRS' attempt post-confirmation to assert its right of setoff is, under § 1141(a) (which binds all

---

[55] Section 1141(b) states in full: "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."

creditors to the provisions of a confirmed plan),[56] barred by the doctrine of *res judicata*.  Both

arguments fail.

The debtor first argues the IRS waived its setoff right by not asserting it prior to the

confirmation hearing.  The debtor listed a $1.2 million tax refund on its schedules; therefore, the

debtor argues, the IRS was on notice of its claim to a refund and did nothing to preserve its setoff

rights.  In general, "[a] creditor waives its right of setoff unless it takes affirmative steps

necessary to effectuate offset.  A creditor [may also] waive[] its right to setoff by conduct that is

inconsistent with exercising the right of setoff."[57]

The IRS here has neither sat on its rights nor acted inconsistently with regard to its setoff

right.  The IRS, irrespective of the Debtors' schedules, could not have known it would have a

right to setoff until the debtor filed its amended 1120 corporate tax returns on September 15,

2009, literally days before the confirmation hearing on October 16, 2009.  Moreover, Mirabilis'

request for a refund of the $400,000 credit relating to its 941 employee tax returns was not made

until December 4, 2009, over a month *after* the confirmation hearing.

The IRS' pre-confirmation proofs of claims stated as much in a disclaimer, which reads:

> The United States has not identified a right of setoff or counterclaim.
> However, this determination is based on available data and is not intended
> to waive any right to setoff against this claim debts owed to this debtor by
> this or any other federal agency.  All rights of setoff are preserved and will
> be asserted to the extent lawful.

As the disclaimer notes, at the time the IRS initially filed its proofs of claims, it did not have any

data by which to assess the debtor's claimed refunds, even though the debtor listed a $1.2 million

refund on its schedules.  Listing the debtor's claim to a tax refund on its bankruptcy schedules

was not enough.  As noted above, it is a taxpayer's request for a refund that initiates the IRS'

---

[56] Section 1141(a) states, in part, that "the provisions of a confirmed plan bind the debtor…, and any creditor…, whether or not the claim or interest of such creditor…is impaired under the plan and whether or not such creditor…has accepted the plan."

[57] *McCarty v. Nat'l Bank of Alaska, N.A. (In re United Marine Shipbuilding, Inc.)*, 198 B.R. 970, 978 (Bankr. W.D. Wash. 1996).

review process.  The IRS could not have asserted a right to setoff before confirmation because the debtor did not file an amended corporate tax return until one month before confirmation, and did not file a Form 941 return until *after* confirmation.  Accordingly, the IRS did not waive its right to setoff by not asserting it before confirmation.

Second, the debtor argues that the terms of the confirmed plan and related confirmation order prevent the IRS from asserting a right to setoff.  This argument fails, in part, because the Court already has found that the Overpayments did not automatically constitute tax refunds and are not yet "property of the estate" under § 1141 of the Bankruptcy Code.  But even if the Court eventually sustains the Debtors' objection to Claim 4 in AEM's case and concludes that Mirabilis is entitled to a refund of some portion of the Overpayments, the cases[58] cited by the debtor for the proposition that a creditor is estopped from asserting a right of setoff post-confirmation have significant factual distinctions.  Unlike the cases cited by the debtor, the plan and confirmation order in this case do not specifically enjoin creditors from exercising their setoff rights.  Indeed, paragraph J of the confirmation order provides that "both the Plan and Disclosure Statement have described in specific and conspicuous language all acts proposed to be enjoined and identified all entities subject to the injunction contained in the Plan."[59]  But neither the confirmed plan nor the disclosure statement[60] specifically prohibits *any* creditor from exercising a right of setoff.

In fact, the confirmation order contemplates that creditors may still exercise their right of setoff post-confirmation. As noted above, subsection (v) of paragraph Y of the order

---

[58] *In re Suncruz Casinos, LLC*, 342 B.R. 370, 380 (Bankr. S.D. Fla. 2006); *In re Lykes Bros. Steamship Co., Inc.*, 217 B.R. 304, 310 (Bankr. M.D. Fla. 1997).

[59] Doc. No. 375.

[60] Amended Joint Disclosure Statement (Doc. No. 221) and addendum thereto (Doc. No. 226) were approved by this Court on August 4, 2009 (Doc. Nos. 228 and 266).

substantively consolidates the Debtors' estates specifically for the purpose of allowing creditors to exercise setoff rights.  Thus, rather than enjoining creditors from exercising their right of setoff, the plan and confirmation order here appear to expressly condone and contemplate future post-confirmation setoffs by creditors.

On the other hand, the confirmed plan and confirmation order in *In re Lykes Bros. Steamship Co., Inc.,* specifically enjoined anyone holding a claim (other than Class 5 claimants) from asserting a setoff.[61]  Because the federal government later sought to take a setoff, was not included in Class 5, and failed to timely object to its treatment under the plan, the bankruptcy court denied the government's setoff request.  Section 1141(a) of the Bankruptcy Code and the doctrine of *res judicata* bound the government to its treatment under the plan, which precluded any setoff rights.

Likewise, in *In re Suncruz Casinos LLC,* the plan and confirmation order specifically and permanently enjoined *any* holder of a pre-confirmation claim against the debtor from taking any action to assert a right of setoff or recoupment.[62]  The claimant seeking recoupment in that case failed to timely file a claim against the debtor's estate, was given full and fair notice of the plan and disclosure statement, and failed to file any objection to the injunctive language in the plan and confirmation order.  Thus, when it later sought to assert its rights, the bankruptcy court held the creditor's right to assert setoff or recoupment defenses was extinguished by the confirmation order.[63]

In *this* case, the plan and disclosure statement acknowledge post-confirmation setoff rights.  When the IRS did not receive debtor's requests for refunds until days before and after the

---

[61] *In re Lykes Bros. Steamship Co., Inc.*, 217 B.R. at 307.
[62] *In re Suncruz Casinos LLC*, 342 B.R. at 374.
[63] *Id.* at 381.

confirmation hearing and thus could not have reasonably known to assert its rights pre-confirmation, the Court holds the IRS' right to assert setoff is preserved under § 553 of the Bankruptcy Code. As in *Lykes Bros.* and *Suncruz Casinos*, the Court's determination that the IRS' setoff rights survived confirmation of the debtor's plan is based entirely on the facts of this case and not on an interpretation of the interplay between §§ 553 and 1141(a) in the abstract.[64] The IRS, unlike the creditors seeking setoff in *Lykes Bros.* and *Suncruz Casinos*, had no way of knowing its right of setoff might be extinguished by the plan, and therefore had no reason to object to the plan on that ground. In such circumstances, the Court concludes the IRS' right of setoff is preserved by § 553 beyond confirmation of the Debtors' joint plan. As to the extent of the IRS' right to setoff, the Court cannot determine the precise nature, amount, or allocation of any setoff right until the Court resolves the Debtors' pending objection to Claim 4. The full extent of this holding simply is that the IRS has not waived its right to *properly* seek a setoff.

**The IRS violated the automatic stay by attempting to<br>set off mutual debts without first seeking relief from the automatic stay.**

Although the IRS may hold valid setoff rights that survived confirmation of the Debtors' joint plan, the Court next finds that the IRS' prior attempts to effect a setoff violated the automatic stay and are null and void. A creditor seeking to set off a debt owed to the debtor against a claim it has against the debtor must follow the procedures outlined in §§ 553 and 362(d) of the Bankruptcy Code. Section 553 allows a creditor to set off prepetition, mutual obligations between it and a debtor. But setoff cannot be effected unilaterally without court approval when the automatic stay of § 362 is in effect. As the Eleventh Circuit Court of Appeals has stated:

---

[64] The *Suncruz Casinos* court stated it was avoiding "determining whether the effect of confirmation under § 1141 includes the extinguishment of setoff or recoupment of rights if the chapter 11 plan is silent on the subject." *Id.* Similarly, the *Lykes Bros.* court stated that "[u]nder the facts *of this case*, especially in light of the [government's] failure to assert its setoff claim until after confirmation, this Court concludes that facilitating the reorganization process is the overriding policy in this case and that, therefore, the provisions of Section 1141 take precedence over Section 553." 217 B.R. at 310.

> The right of setoff is not absolute.  The right preserved under Section 553 is limited by its own language to the provisions of the automatic stay in Section 362.  *In order to exercise a valid right of setoff, a creditor must move the court for relief from the stay pursuant to the provisions in Section 362(d).  The decision whether to lift the stay lies in the sound discretion of the bankruptcy court.*[65]

By the terms of the confirmed plan, the stays imposed by § 362 remain in effect post-confirmation until entry of a final decree or an order dismissing the case.[66]  Here no final decree or dismissal order has been entered.  The automatic stay thus remains in full force and effect.

The relevant automatic stay provision is § 362(a)(7), which prohibits "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor."  Section 362(d) provides that the bankruptcy court "shall grant relief from the stay" "[o]n request of a party in interest and after notice and a hearing."  Thus, unless the Bankruptcy Code provides an exception to the automatic stay, the IRS was required first to seek relief under § 362(d) and to establish its right at a hearing *before* it could assert its setoff right.

The IRS did not seek relief from stay.  Instead, it simply filed amended proofs of claims asserting its right of setoff.[67]  The IRS did so in apparent reliance, at least in part, on the exception to stay created by § 362(b)(26) of the Bankruptcy Code.

The IRS' reliance on § 362(b)(26), however, is misplaced.  Section 362(b)(26) provides an exception to the automatic stay that permits the IRS "to setoff a pre-petition *income* tax overpayment against a pre-petition *income* tax liability without seeking relief from the automatic stay."[68]  But neither of the setoffs attempted by the IRS involves a pre-petition income tax overpayment against a pre-petition income tax liability.

---

[65] *B.F. Goodrich Employees Federal Credit Union v. Patterson (In Re Patterson)*, 967 F.2d 505 at 509 (11th Cir. 1992) (emphasis added).
[66] Doc. No. 371, p. 16, ¶ 7(c).
[67] Claim No. 2-4 in Mirabilis' case and Claim No. 4-2 in AEM's case.
[68] *In re Gould*, 603 F.3d 1100 (9th Cir. 2010).

As to the first attempted setoff, ten days before this Court held a hearing to address the debtor's objection to Claim No. 2 (for unpaid 1120 corporate income taxes), the IRS moved the $400,000 allocated to Mirabilis' 941 (employment tax) account credit to Mirabilis' 1120 income tax account, satisfying its Claim No. 2.  In light of the timing of this transfer shortly before a scheduled hearing, the fact that the credit had been on Mirabilis' 941 account for nearly three years before the setoff, the fact that the debtor had timely filed its 941 returns for 2007, 2008, and 2009, showing liability but requesting application of the $400,000 credit to pay this liability, and the fact that the IRS failed to disclose the setoff at the hearing held on April 22, 2010, the Court finds this was a clear attempt to set off the $400,000 credit against Claim No. 2 in deliberate violation of the automatic stay.  The IRS' assertion that this was merely an "administrative move" and that the $400,000 credit properly belonged on the Mirabilis' 1120 account and thus was really an income tax overpayment, is simply unbelievable.  Indeed, this assertion is contradicted by the IRS' own amended proof of claim, filed on June 17, 2010, after this Court disallowed Claim No. 2, which asserted a claim of $0.00 and noted a "Right to Setoff."

As to the IRS' second attempt to offset the Form 1120 overpayment against its Claim No. 4 in AEM's case, there is no doubt this also is not a setoff of an income tax overpayment against an income tax liability.  The IRS' Claim No. 4 in the AEM bankruptcy case is for unpaid Social Security withholding taxes,[69] not Form 1120 income taxes.

Therefore, the Court finds the IRS violated the automatic stay twice.  First, it improperly and secretly moved the $400,000 placed in Mirabilis' 941 employee tax account to effectuate a setoff of Claim No. 2, a claim for Mirabilis' income tax liability.  Second, it has applied overpayments of Mirabilis' income tax obligations to set off amounts against AEM's 941

---

[69] The notation on the proof of claim form is "WT-FICA," referring to withholding for Federal Insurance Contributions Act taxes, e.g. Social Security taxes, arising under 26 U.S.C. § 3111(a).

employee withholding tax obligations.  Both actions were taken without permission of the Court or any possible exception to the automatic stay.  Moreover, both actions were done intentionally and with full knowledge of the continuing applicability of the automatic stay post-confirmation and thus were willful violations of the stay.  Pursuant to § 105 of the Bankruptcy Code, both actions are null and void.  The IRS must treat the debtor's overpaid funds exactly as they were before the improper setoff attempts.[70]  As such, Mirabilis has a $400,000 credit in its 941 account and an overpayment of at least $722,848.29 in its 1120 corporate tax account.  (As noted above, the exact amount of Mirabilis' tax overpayment remains unresolved.)

In defense of its actions, the IRS argues that the confirmation order expressly allows creditors to exercise their rights of setoff without first seeking relief from the automatic stay.  The Service's interpretation of the confirmation order, however, is cherry-picking *par excellence*.  It relies on the following subsection in section Y of the Confirmation Order:

> … (v) for purposes of determining the availability of the right of setoff, under section 553 of the Bankruptcy Code, the Debtors shall be treated for purposes of the Plan as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, *debts due to any of the Debtors may be set off against the debts of any of the Debtors*.[71]

The IRS interprets the emphasized portion of this sentence as giving a proverbial green light to *all* creditors to exercise their rights of setoff, at will and without court supervision.  But this completely ignores the very first clause of the quoted paragraph: "for purposes of *determining the availability* of the right of setoff."  Giving meaning to every word and clause of this section, but especially this first clause, this paragraph does nothing more than substantively consolidate the joint Debtors' estates and allow creditors to seek court permission to take a

---

[70] Under Eleventh Circuit Court of Appeals precedent, the bankruptcy court may, under § 105 of the Bankruptcy Code and under its inherent equitable powers, enforce the automatic stay even when the debtor is a corporation, even though § 362(k)(1) provides a remedy for a stay violation only to "individuals."  *Jove Engineering, Inc. v. IRS*, 92 F.3d 1539, 1553-55 (11th Cir. 1996).  Although the court in *Jove* held the IRS in contempt of court for willful violations of the automatic stay, it declined to sanction the IRS.  *Id.* at 1555-57.  Likewise, here, the Court is not sanctioning or punishing the IRS at this time; it is merely undoing what the IRS has improperly attempted to do.
[71] Doc. No. 375, p. 7 (emphasis added).

setoff.  The provision does *not* allow creditors to forgo the well-established procedures outlined in §§ 553 and 362(d) for seeking relief from stay to set off mutual debts.

The IRS apparently recognizes its own procedural deficiencies in asserting its setoff rights.  In its reply to debtor's motion for turnover, in the midst of its argument that the confirmation order allowed the United States to exercise its right of setoff, the IRS states *in a footnote* that: "In the event the Order of confirmation alone is deemed insufficient to allow the United States to exercise its right of setoff, the United States hereby moves for relief from the stay to exercise that right, under 11 U.S.C. § 362(d)(1)."[72]  This is ridiculous.  Not only does the Court deem the confirmation order insufficient to allow the IRS to exercise its right of setoff, the Court also deems this "attempt" to move for relief from stay *grossly* inadequate.  To obtain relief from the automatic stay, a creditor must file a motion, give notice, and the Court must hold a hearing to allow the movants to establish cause for modifying the stay.  None of this is accomplished in a subterfuge footnote discretely hidden in a responsive pleading.

The IRS has played fast and loose with the well established rules governing setoff in bankruptcy proceedings.  The IRS, like every other creditor, must comply with the provisions of the automatic stay.  Although the IRS indeed may have a right of setoff, it failed to first seek relief from stay from this Court in order to effect that right.  As such the attempted setoffs are void; the IRS is directed to return the $400,000 credit to Mirabilis' 941 account.  The Court declines to award any further sanctions or damages against the IRS at this time, and the IRS is not precluded from properly seeking relief from stay in the future.

### The IRS is entitled to an administrative claim of $136,908.07 but is not entitled to penalties or interest.

The IRS is not entitled to penalties and interest on the debtor's post-petition Form 941 taxes (Claim No. 36) for two reasons.  First, the IRS agreed to waive such penalties and interest

---

[72] Doc. No. 624, p. 10, fn. 7.

when it agreed to allow the debtor 60 days after the entry of the confirmation order within which to filed its 941 tax returns.  Second, even if the IRS did not intend to waive such penalties and interest, penalties are inappropriate in this case because of the debtor's honest mistake in treating Cuthill as an independent contractor for tax purposes.

Regardless of whether the IRS has a statutory basis for charging the debtor penalties and interest, the Court finds the IRS agreed to waive such penalties and interest on the eve of confirmation of the joint plan of liquidation.  As noted above, the parties had an honest disagreement over how to treat Cuthill's compensation for tax purposes.  On October 15, 2009, on the eve of confirmation, the parties agreed to amend the Debtors' joint plan to provide that the debtor would have "sixty (60) days following Confirmation to prepare and file appropriate tax returns and to have the Liquidating Debtor pay the required payroll tax."[73]  The amendment language is silent on whether the debtor is liable for penalties and interest.  Then, at the confirmation hearing on October 16, 2009, debtor's attorney Shuker expressed his concern that only the debtor, and not Cuthill personally, would be liable for 941 taxes.[74]  His statements make clear that, under the parties' agreement, the debtor was liable for penalties and interest *only* if the debtor failed to timely file the appropriate returns.  The IRS' attorney participated in this hearing and did nothing to correct the oral rendition of their agreement.  The Court thus finds the parties intended the debtor would *not* be assessed penalties and interest on its post-petition 941 taxes, as long as the returns were timely filed.  Therefore, because the debtor timely filed its 941 returns for 2008 and 2009 within the 60-day deadline, the IRS cannot now impose penalties and interest.

Moreover, even if the Court errs in finding that the IRS agreed to waive penalties and interest, the debtor still is exempted under § 6656 of the Internal Revenue Code from paying penalties.  Under that section, a penalty or addition to tax is imposed for a corporation's failure

---

[73] Doc. No. 371, p. 13, ¶ 6(c).
[74] October 16, 2009, Transcript, p. 23, ¶¶ 6-17.

to make deposits of payroll taxes, based on the amount of its underpayment, unless the failure is due to reasonable cause and not due to willful neglect.[75]  "To escape the penalty, the taxpayer bears the heavy burden of proving both (1) that the failure did not result from 'willful neglect,' and (2) that the failure was 'due to reasonable cause.'"  The term "willful neglect" means "a conscious, intentional failure or reckless indifference."[76]  Although "reasonable cause" is not defined in the Internal Revenue Code, "the relevant Treasury Regulation calls on the taxpayer to demonstrate that he exercised 'ordinary business care and prudence' but nevertheless was 'unable to file the return within the prescribed time.'"[77]

The debtor has established both that its failure to file 941 tax returns was not because of willful neglect and that the failure was instead due to a reasonable cause.  Cuthill's mistake in not filing 941 returns was not due to willful neglect; it was due to his and the debtor's accountant's reasonable belief that Cuthill should be treated as an independent contractor for tax purposes.  Cuthill's sincerity and credibility is beyond doubt.  When the IRS sent Mirabilis a letter requesting 941 returns for 2008 and 2009, Cuthill promptly explained why he and his accountants believed Mirabilis did not owe employment taxes.  And when the IRS finally responded and engaged Cuthill and Debtors' attorneys on the issue and explained their position, the Debtors agreed to file the requested returns.  He thus did not willfully neglect to file 941 returns.  Indeed, Cuthill promptly filed his own personal tax returns reflecting the income he earned from Mirabilis and paying required employment withholding amounts.  He was not trying to "cheat" the government and, likely to help the Debtors in their recovery efforts, personally

---

[75] 26 U.S.C. § 6656.
[76] *United States v. Boyle*, 469 U.S. 241, 243 (1985).
[77] *Id.* at 246 (*quoting* 26 C.F.R. § 301.6651(c)(1)); *see also Sanford v. United States*, 979 F.2d at 1514.

paid more in self employment taxes than he would have owed if he chose to treat himself as an employee rather than an independent contractor. [78]

The debtor's accountant's mistaken belief that Cuthill should be treated as an independent contractor is also a reasonable cause for not timely filing the Form 941 returns. Cuthill, as the debtor's principal, undoubtedly exercised "ordinary business care and prudence" by trusting the debtor's accountant, and he timely, though perhaps mistakenly, reported all income he received on his personal income tax return and paid self-employment taxes. Cuthill's good faith in doing so is beyond question, especially since he personally paid more in self-employment taxes than he would have as a W-2 employee of the Debtors. Aside from relying on professional advice, Cuthill also genuinely believed he was engaged as an independent contractor and not a W-2 employee because his sole task was to oversee the orderly liquidation of Mirabilis' assets.[79] The debtor therefore exercised "ordinary business care and prudence" by having an accountant advise Cuthill, but nevertheless, due to mistaken advice, was "unable" to timely file the returns.

The IRS thus has no basis to impose penalties and interest on the debtor's post-petition Form 941 employment taxes. Accordingly, the IRS is entitled only to an administrative expense claim in the amount of the unpaid taxes, $136,908.07. Because the Court orders the return of the $400,000 credit to Mirabilis' 2007 941 account, the IRS presently has no reason *not* to honor the debtor's request to apply the credit towards all outstanding 2007, 2008, and 2009 941 tax liabilities, resulting in the full payment of Mirabilis' 941 tax liability for those years and resulting overpayment of $234,486.18. Once the Court determines the total amount of Mirabilis' overpayment at the upcoming hearing, the Court would consider whether this $234,486.18

---

[78] Though the parties submitted no evidence on this point, the Court notes that the self-employment tax rate for 2010 was 15.3%, which consists of 12.4% for Social Security and 2.9% for Medicare. These are taxes the Debtors would have been liable for had they treated Cuthill as an employee.
[79] Sept. 15, 2010, Transcript, p. 129, ¶¶ 5-17.

portion of the overpayment is subject to set off against AEM's tax liability (if any), assuming, of course, the IRS properly files a motion seeking relief from the automatic stay and demonstrates cause.

## **Conclusion**

Until the court resolves the Debtors' objection to Claim No. 4 filed in AEM's case and the amount of the debtor's outstanding Overpayments, no final resolution is possible.  For the purposes of this limited, initial order, the Court holds as follows:  (i) payments Mirabilis made to the IRS before filing their cases, including the Overpayments, are not property of the estate until the IRS has determined Mirabilis paid more in taxes than the Debtors' collective aggregate unpaid tax liabilities to the IRS, (ii) the IRS has not waived its right of setoff under § 553, (iii) the IRS violated the automatic stay of § 362(a)(7) by asserting a right of setoff without first seeking relief from stay and as a consequence must return $400,000 to Mirabilis' 2007 941 account, (iv) the IRS is directed to apply the $400,000 credit towards Mirabilis' outstanding 941 tax liability for tax years 2007, 2008, and 2009, and (v) the IRS' administrative claim against Mirabilis is allowed in the amount of $136,908.07.  All further issues will be resolved at the evidentiary hearing scheduled for **9:00 a.m. on April 22, 2011**.

DONE AND ORDERED in Orlando, Florida, this 28th day of March, 2011.

_____
KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies furnished to:

Debtor: Mirabilis Ventures, Inc., c/o R.W. Cuthill, Jr., 341 N. Maitland Ave. #210, Maitland, FL 32751

Debtors' Attorney:  Latham Shuker Eden & Beaudine LLP, Attn. Justin Luna, 390 N. Orange Ave. Suite 600, Orlando FL 32801

Special Counsel for Debtor: Broad and Cassel, Attn. Roy Kobert, 390 N. Orange Ave., Suite 1400, Orlando, FL 32801

Attorney for USA: Scott H. Park, Assistant U.S. Attorney, ID No. USA084, 501 W. Church St., Suite 300, Orlando, FL 32805

Attorney for USA:  I. Randall Gold, Assistant U.S. Attorney, 501 W. Church Street, Suite 300, Orlando, FL  32805

United States Trustee's Office:  Attn:  Elena Escamilla, 135 W. Central Blvd., Suite 620, Orlando, FL  32801