UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:                                      )
                                            )    Case No.  6:08-bk-04327-KSJ
MIRABILIS VENTURES, INC.,                   )    Chapter 11
                                            )
          Debtor.                           )
_____         )

# MEMORANDUM OPINION DENYING
# DAVID M. RICHARDSON'S FEE APPLICATION

The Debtor, Mirabilis Ventures, hired Professor David Richardson, who specializes in tax law, as an expert witness in a malpractice lawsuit filed against the Debtor's former attorneys. Although paid over $110,000 for his work, Richardson seeks an additional $41,000 that the Debtor contests, arguing the expert did more work than requested.  The Court agrees and denies any further payment on Richardson's fee application.

The Debtor's Chapter 11 reorganization primarily resulted from its pursuit of a failed business strategy that relied upon the deliberate nonpayment of payroll taxes.[1]  Debtor's former attorneys, Richard Berman and Elena Wildermuth (the "Malpractice Defendants"), allegedly provided legal and tax advice regarding the viability of this strategy, which ended disastrously. On December 5, 2008, the Debtor instituted a lawsuit against Malpractice Defendants alleging negligence, negligent misrepresentation, breach of fiduciary duty, and malpractice for failing to provide adequate legal advice.[2]

---

[1] *See* Doc. No. 25 in Case No. 6:09-CV-00175 Second Amended Complaint in *Mirabilis v. Berman et al.*
[2] Adversary Proceeding No. 6:08-ap-00222-KSJ, later Case No. 6:09-CV-00175, after the District Court for the Middle District of Florida granted the Defendant's Motion to Withdraw the Reference. Doc. No. 24 in Case No. 6:09-CV-175.

The Debtor hired Bob Widman to serve as lead counsel for the malpractice litigation; he was later replaced by Todd Norman.[3] On August 15, 2010, Mr. Widman retained Richardson, a tax attorney and professor, to serve as the Debtor's expert witness. The Debtor's former president and liquidating agent, Robert W. Cuthill, agreed to pay Richardson $400 per hour plus costs for his work.  Richardson was directed to complete an expert report that examined the existence and extent of the malpractice in a very short time— by September 30, 2010.

Richardson immediately started working and finished his 50-page expert report on time, concluding that the Malpractice Defendants indeed had had committed malpractice because they failed to advise the Debtor that its proposed business strategy was illegal.[4] The Debtor accepted the Expert Report and promptly paid Mr. Richardson $81,000 for his work through September 30, 2010.[5]

After completing his Expert Report, Richardson's only remaining task was to provide expert testimony, as needed, in a deposition and at trial.  The Debtor knew Richardson would bill for additional time he spent preparing for any expert testimony, including his deposition, originally scheduled for December 2, 2010.[6] Moreover, because the deposition was rescheduled several times, the Debtor acknowledges that Richardson is entitled to receive compensation for additional time spent preparing for each reset deposition.

But, neither Cuthill nor any representative of the Debtor, knew that Richardson continued to edit and, by his testimony, "improve" his Expert Report based on additional documents supplied by Cuthill.  In March 2011, Mr. Norman, then lead counsel in the litigation, first learned that Richardson had continued to rewrite his Expert Report. Norman directly told Richardson at that point that the trial court absolutely would not accept any type of modified or supplemental

---

[3] Todd Norman was lead counsel for the Debtor in the malpractice case from October 2010 to May 2011.
[4] Debtor's Exhibit 8 (the "Expert Report").
[5] Richardson Exhibit 1.
[6] Richardson Exhibit 2.

expert report from him. Richardson knew, or should have known, that his testimony necessarily must come from his initial Expert Report of September 30, 2010.[7] Although no representative of the Debtor expressly told Richardson to stop changing his Expert Report, the Court specifically finds that, as an attorney, a professor, and an expert, Richardson, at a minimum, knew he was acting outside the scope of his assignment when he continued to alter his original report.

On May 2, 2011, Richardson published a supplemental report (the "Supplement").[8] A few days later, on May 14, he submitted a second invoice for $71,308.87[9], for the work he performed from November 12, 2010 to May 10, 2011, the date the Malpractice Defendants agreed to settle the dispute for $1.9 million.[10] Richardson testified that the fee for his additional services was probably higher than anyone expected because he spent additional time preparing for his deposition that was rescheduled four times, and each time he had to review the files to re-familiarize himself with the case.[11] The fee also was unexpectedly high due to Richardson's work on the Supplement.

Cuthill understandably was surprised by the amount of the second invoice. He agreed to pay an additional $30,000 to compensate Richardson for his time reviewing documents upon request, conferring with the Debtor, and generally preparing for deposition.[12] The Debtor refused to pay Richardson the remaining $41,000, asserting the extra work was not authorized. Cuthill explained the reduced fee to Richardson in a reply letter, stating:

> I informed you when the depos kept being postponed, I anticipated you would not be deposed and there would not be a trial. However you continued to work on new tangents, which may or may not have been allowed by the Court in the trial. The defendants certainly would have objected as Todd [Norman] and I told you.

---

[7] Referring to the District Court's Case Management and Scheduling Order, Paragraph I(E), which states "Expert testimony on direct examination at trial will be limited to the opinions, bases, reasons, data, and other information disclosed in the written expert report disclosed pursuant to this Order."
[8] Richardson's Exhibit 6.
[9] Debtor's Exhibit 1.
[10] Richardson's Exhibit 2.
[11] Debtor's Exhibit 2.
[12] Debtor's Exhibit 2.

This additional work, which neither Todd or I authorized or anticipated, added little or no value to the case.[13]

On July 11, 2011, the Debtor sent a check to Richardson for $30,000 as full payment for the bill, which Richardson cashed promptly on July 15, 2011.[14] Eight months later, Richardson filed a lawsuit in state court to recover the remaining $41,000.[15] He also filed an application in this bankruptcy case seeking a first priority administrative expense claim of $41,000 because, as he argues, the additional tasks he performed were necessary and resulted in substantial benefit to the Debtor's estate, specifically $1.9 million from the settlement.[16] Richardson claims the entire $71,000 bill was justified because Cuthill and Norman knew he was continuing to revise his original report, no one ever told him to stop working on the project, and every additional hour he spent understanding the case was necessary, appropriate, and covered in the original scope of work he was hired to perform.[17]

The Debtor disputes it owes Mr. Richardson any more money contending Richardson's additional work was excessive and not authorized. Alternatively, the Debtor argues that, even if the Court does find that Richardson is owed the additional amount, Florida accord and satisfaction law prevents Richardson from claiming the additional $41,000 because he cashed the $30,000 check in full satisfaction of the disputed invoice.[18]

The Court agrees with the Debtor that Richardson is not entitled to any further payment or an administrative expense claim. Richardson was hired to draft an Expert Report and provide needed testimony. He timely completed his Expert Report on September 30, 2010. The trial court's case management order specifically prohibited any revision to the report. Debtor's attorney, Mr. Norman, directly told Richardson the same thing. Yet, Richardson continued to

---

[13] Debtor's Exhibit 2.
[14] Debtor's Exhibit 4, Check 1213 for $30,000 written on July 11, 2011 and cashed on July 15, 2011.
[15] Case No. 2012-CA-5315 filed in Orange County, Florida, Ninth Judicial Circuit.
[16] Doc. No. 758.
[17] Debtor's Exhibit 3; Doc. No. 758 David M. Richardson's Application for Administrative Expense Claim.
[18] Referencing Fla. Stat. § 673.3111.

revise and amend his report. No party anticipated that Richardson would continue to research, investigate, or create additional reports. The Debtor was fully satisfied with the initial Expert Report.[19] Richardson simply took it upon himself to continue his own investigation. Indeed, he testified that he would not have stopped even if asked.[20] Richardson's rogue project while perhaps helpful to his work as a law professor was not part of his expert assignment, was never authorized by his client, and is not an expense that this Debtor should bear.

Richardson certainly was hired to provide expert testimony at depositions or trial. Although neither was necessary, the Court specifically finds that the extra amount of $30,000 paid to Richardson amply (and probably over) compensates him for any and all time he spent preparing for the rescheduled depositions and reviewing any extra documents.

Although professional fees may not be cast aside or reduced merely because they appear excessive in hindsight,[21] a professional must exclude any excessive, unnecessary, or redundant fees from his fee application[22] to ensure that the client receives the work requested.[23] Here, the Debtor bargained for the Expert Report and related testimony. Contrary to Richardson's testimony, there is absolutely no evidence that the Supplement was used to induce settlement or for any purpose. In fact, Cuthill testified that he had not seen the Supplement before the parties agreed to settle the dispute.

---

[19] Mr. Richardson's initial report concluded "Berman and Wildermuth deviated from the applicable standard of conduct expected of attorneys in Florida in connection with their representation of Mirabilis Ventures, Inc." Debtor's Exhibit 8 at 1. The report outlined the Debtor's plan to sell Sunshine Company's assets to prevent the IRS from seizing assets to satisfy unpaid taxes, and definitively concluded that the parties committed malpractice in this case. *Id.* at 6. The report also indicates that Mr. Berman knew of the scheme because he had attended a meeting at which the scheme was discussed for hours. *Id.* at 19.

[20] Testimony of Mr. Richardson on February 26, 2013 (Mr. Richardson testified that stopping the additional research "would have been a problem.").

[21] *In re ASARCO, L.L.C.,* 702 F.3d 250, 259 (5th Cir. 2012).

[22] *In re Blue Stone Real Estate*, 487 B.R. 573, 577 (Bankr. M.D. Fla. 2013) (citing *Franklin v. Hartford Life Ins. Co.,* 2010 WL 916682, *3 (M.D. Fla. March 10, 2010) and *ACLU of Ga. v. Barnes,* 168 F.3d 423 (11th Cir.1999) and referencing 11 U.S.C. § 303).

[23] *Matter of Liberal Mkt., Inc.,* 24 B.R. 653, 658 (Bankr. S.D. Ohio 1982) (stating "it is the duty of the Court to insure that the debtor receives what was 'bargained for.'").

The Court understands that with a large settlement of $1.9 million Richardson would like to receive the additional $41,000.  Given that the parties relied exclusively on Richardson's initial Expert Report, not the Supplement, in reaching the settlement, the Court cannot conclude that Richardson is entitled to any payment for his extra, volunteer work.  His Application for an Administrative Expense[24] is disallowed. A separate order consistent with this memorandum opinion shall be entered.

DONE AND ORDERED in Orlando, Florida, on May 20, 2013.

*[signature]* K.O.

KAREN S. JENNEMANN
Chief United States Bankruptcy Judge

---

[24] Doc. No. 758.